IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC DIGOXIN AND<br>DOXYCYCLINE ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br>All Direct Purchaser and End-Payer Actions | HON. CYNTHIA M. RUFE |

**SUN PHARMACEUTICAL INDUSTRIES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
INDIVIDUAL MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINTS**

# **TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................................... ii

Introduction ................................................................................................................................3

Summary of Allegations Against Sun .......................................................................................4

        A.      Digoxin: Plaintiffs Allege that Sun Stopped Selling Digoxin Before the Alleged Conspiracy Commenced and Did Not Restart Selling It Until Years After the Conspiracy Allegedly Began .........................................................4

        B.      Doxycycline: Plaintiffs Allege that Sun Did Not Sell Doxy DR and Make No Specific Allegations Regarding Sun's Pricing of Doxycycline Hyclate ..........5

        C.      The Alleged Industry Trade Association Meetings ................................................6

        D.      The Alleged Public Statements ...............................................................................6

Argument ....................................................................................................................................7

        I.       Plaintiffs Do Not Allege that Sun's Prices Increased in Parallel with Their Competitors' Prices ...............................................................................8

        II.      Plaintiffs' Alleged "Plus Factors" Do Not Show Sun Participated in the Alleged Conspiracy ........................................................................................9

Conclusion ................................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................7

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ................................................................................8, 10

*Coon v. Froehlich*,
    573 F. Supp. 918 (S.D. Ohio 1983) ..........................................................................9

*In re Capacitors Antitrust Litig.*,
    106 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................................................................7

*In re Capacitors Antitrust Litig.*,
    154 F. Supp. 3d 918 (N.D. Cal 2015) ....................................................................7, 9

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ....................................................................7

*In re Polyurethane Foam Antitrust Litig.*,
    199 F. Supp. 2d 777 (N.D. Ohio 2011) .....................................................................9

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ........................................................................7

**INTRODUCTION**

Sun[1] should be dismissed from this lawsuit. As explained in Defendants' Motions to Dismiss[2] the DPP and EPP Complaints, Plaintiffs' alleged conspiracy among nine Defendants—only one of whom sold all of the drugs at issue—to "artificially inflate" the prices of two distinct drugs, digoxin and doxycycline, is implausible. But even if Plaintiffs could allege some conspiracy among some Defendants, Plaintiffs have not alleged, and cannot allege, that Sun participated in any such conspiracy.

Plaintiffs do not even come close to pleading facts to show that Sun joined the alleged conspiracy or how Sun participated in it. For example, Plaintiffs' own pleadings acknowledge that Sun was not selling digoxin at the time the alleged conspiracy started, yet Plaintiffs proffer no allegations to explain how Sun allegedly joined the conspiracy. Similarly, Plaintiffs attempt to make broad allegations regarding doxycycline generally, but they gloss over material distinctions among the two different forms of doxycycline allegedly included in the conspiracy – doxycycline hyclate and Doxy DR – including their own allegations that Sun did not sell Doxy

---

[1] Defendant Sun Pharmaceutical Industries, Inc. ("Sun") submits this memorandum of law in support of its Individual Motion to Dismiss Consolidated Amended Complaints ("Sun's Motion"), filed herewith, seeking dismissal of the Direct Purchaser Plaintiffs' ("DPP") Consolidated Amended Complaint ("DPP CAC") (ECF No. 125, Jan. 27, 2017) and the End-Payer Plaintiffs' ("EPP" and, collectively with the DPPs, "Plaintiffs") Corrected Consolidated Amended Complaint ("EPP CAC") (ECF No. 175, Mar. 28, 2017) (collectively, the "Complaints") in the actions captioned above. Sun interprets the DPPs apparently interchangeable references to "Sun," "Sun Pharmaceuticals," "Sun Pharmaceuticals, Inc.," and "Sun Pharmaceutical Industries, Inc." as references to "Sun Pharmaceutical Industries, Inc.," the correct entity. *See* DPP CAC at 1, ¶¶ 36, 173, 173.

[2] Sun's Motion joins and incorporates by reference Defendants' Memorandum of Law in Support of Joint Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DPP MTD") and Defendants' Memorandum in Support of Their Motion to Dismiss the Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint ("EPP MTD"), which are filed contemporaneously herewith.

DR.  The Complaints offer no plausible explanation as to how or why Sun participated in a doxycycline-related conspiracy when it did not sell Doxy DR.

Moreover, Plaintiffs make no specific allegations about Sun's prices to show that they rose in parallel with other Defendants, and none of the allegations relating to the "plus factors" can carry the day against Sun.  And, even as to the few alleged trade association meetings that Sun allegedly attended, Plaintiffs make no allegations as to what Sun discussed with other alleged co-conspirators at those meetings or how Sun's prices for doxycycline or digoxin rose as a result of the alleged discussion (let alone agreement) with other Defendants.  Simply put, Plaintiffs fail to allege any allegations specific to Sun to "plausibly suggest" that Sun joined and participated in the alleged conspiracy.

## SUMMARY OF ALLEGATIONS AGAINST SUN

**A.    Digoxin: Plaintiffs Allege that Sun Stopped Selling Digoxin Before the Alleged Conspiracy Commenced and Did Not Restart Selling It Until Years After the Conspiracy Allegedly Began**

The allegations regarding Sun's sales of digoxin are sparse and contradictory.  Plaintiffs allege that Sun sold digoxin tablets through its subsidiary Caraco.  DPP CAC ¶ 71; EPP CAC ¶ 43 n.13.  Plaintiffs then allege that Caraco stopped selling digoxin in 2012 – a year before the conspiracy allegedly began in or around October 2013 – and that Sun (through Caraco) did not begin selling digoxin again until "in or around April 2015."  DPP CAC ¶ 74, 81.[3]

---

[3]    The DPP CAC alleges Sun stopped selling digoxin in 2012, and that "Sun began selling digoxin in or around April 2015"."  *Id.* ¶ 74.  The EPP CAC alleges that Sun supplied digoxin through its subsidiary Caraco, that "Caraco had to halt production for nearly three years from June 2009 to August 2012," and that Caraco supplied digoxin "until approximately June of 2014 when Caraco shut down its Detroit facility," and that "[u]pon information and belief, Sun resumed production and distribution of generic digoxin starting in the latter half of 2015."  EPP CAC ¶¶ 43 n.13, 68.

4

Aside from the vague allegation that Sun started selling again in 2015, there are no allegations as to what price Sun started selling digoxin or how Sun's digoxin prices compared with other Defendants' digoxin prices.  *See* DPP CAC ¶ 81 (detailing how and when other specified Defendants raised prices upon starting to sell digoxin without mentioning Sun).  Indeed, all of the other allegations related to digoxin in the complaint fail to even mention Sun.  *See id.* ¶ 81 (detailing alleged price increases of other specific Defendants but not Sun); EPP CAC ¶¶ 76, 81 (same); DPP CAC ¶ 94 (generally referencing Defendants' price increases without a reference to Sun); EPP CAC ¶¶ 78-79 (same).  There are also no allegations regarding whether, which, when, or how much each or any Plaintiff(s) purchased digoxin sold by Sun.

**B.    Doxycycline: Plaintiffs Allege that Sun Did Not Sell Doxy DR and Make No Specific Allegations Regarding Sun's Pricing of Doxycycline Hyclate**

As to doxycycline, Plaintiffs' complaints reference two different products – Doxy DR and doxycycline hyclate.  However, Plaintiffs do not allege Sun sold Doxy DR or make any allegations relating to Doxy DR relating to Sun.  DPP CAC ¶¶ 36, 98 (alleging that Sun and/or its affiliates sold doxycycline hyclate, but not Doxy DR); EPP CAC ¶ 43 (same).

As to doxycycline hyclate, Plaintiffs allege that Sun began selling the product in late 2012 when it acquired URL Pharma, Inc. ("URL") and that Sun and its wholly-owned subsidiaries have continuously manufactured and distributed various doses of doxycycline hyclate since then.  *Id.*  However, Plaintiffs do not allege anything specific regarding Sun's prices for doxycycline hyclate (*but cf.* EPP CAC ¶¶ 88 (alleging other specific Defendants' doxycycline hyclate prices between 2005 and 2015 but omitting Sun's prices), EPP CAC ¶¶ 89-90 (alleging industry-wide average prices for doxycycline hyclate).  They do not, for example, allege what Sun's prices for doxycycline hyclate were or how its prices compared with other

5

Defendants' prices. Nor do Plaintiffs allege whether, which, when, and how much each or any Plaintiff(s) purchased doxycycline hyclate sold by Sun.

**C.      The Alleged Industry Trade Association Meetings**

Regarding alleged attendance at trade meetings, Sun's representatives are alleged to have attended a handful of trade meetings hosted by GPhA. EPP CAC ¶ 106. Plaintiffs do not allege that Sun's representatives attended any of the other trade events mentioned in the Complaints, including those hosted by the National Association of Chain Drug Stores, the Healthcare Distribution Alliance, the Efficient Collaborative Retail Marketing, or the American Society of Health-System Pharmacists, or the Girls Night Out and Women in Industry Events. EPP CAC ¶ 107-08. Moreover, Plaintiffs make no allegations about what Sun representatives discussed at the trade association meetings, with whom they met, or whether or how the alleged trade association meetings translated into Sun raising its prices for digoxin or doxycycline hyclate prices.

**D.      The Alleged Public Statements**

Plaintiffs also allege that certain investor statements demonstrate the agreement among the Defendants. DPP CAC ¶¶121-146. As to Sun, the Plaintiffs cite four statements. First, a statement that in 2013, Sun's subsidiary had "undertaken price hikes" (without specific reference to a product), and that Sun estimated $60-80 million in revenue for 2014 to come from doxycycline. DPP CAC ¶141. Second, statements that Sun reported in 2013 and 2014 that its "costs," as represented by the "company's material cost and other expenditures as a percentage of net sales, as well as staff costs," were "stable." DPP CAC ¶¶142, 170; EPP CAC ¶ 94. Third, statements describing doxycycline as a "low competition product in the US" and one of the "key drivers" in Sun's sales from 2012 through 2014. DPP CAC ¶143. Finally, Plaintiffs allege that Sun discussed "competitive pressures on some of the products like … Doxycycline … where

6

competitive intensity has increased." EPP CAC ¶ 191.  Contrary to Plaintiffs' contention, none of these statements can plausibly be read to show that Sun participated in the alleged conspiracy.

## ARGUMENT

In a case alleging a violation of Section 1 of the Sherman Act, the "crucial question" is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (internal quotation and alteration omitted).  Plaintiffs cannot sustain their burden by making broad allegations against all Defendants collectively.  Instead, Plaintiffs' claims must provide reasonable notice to each specific Defendant of allegations that "plausibly suggest that the individual defendant actually joined and participated in the conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011); *see also In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) (granting motion to dismiss because "even where some competitors have admitted to meeting to fix prices at or near trade shows and conferences, it is not reasonable to infer that another competitor in attendance at the same meeting had done likewise" (emphasis added)); *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1066 (N.D. Cal. 2015) (a plaintiff "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it" (emphasis added)).  Under *Twombly* and its progeny, courts have dismissed claims against individual defendants against whom the allegations are insufficient.  *See In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 933 (N.D. Cal 2015) (dismissing cartel claim against one defendant when allegations were "too paltry" against that one defendant).  Because Plaintiffs have failed to meet their burden, the Court should dismiss the claims against Sun.

## I. Plaintiffs Do Not Allege that Sun's Prices Increased in Parallel with Their Competitors' Prices

As explained in the DPP MTD, Plaintiffs allege no direct evidence of a conspiracy. Instead, they ground their claims in allegations of circumstantial evidence of parallel pricing and certain "plus factors." Failure to sufficiently allege parallel pricing is in and of itself fatal to Plaintiffs' claims. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011) (affirming dismissal where "allegations fall far short of demonstrating parallel behavior").

Here, Plaintiffs' claims as to Sun fail to allege even parallel pricing, a fundamental first step to even get to consideration of plus factors. The Complaints contain no allegations to show that Sun's prices rose in parallel with any of the other Defendants' prices. Plaintiffs do not even allege Sun sold Doxy DR, which undermines any claim that Sun participated in a conspiracy regarding the price of that product. As to digoxin and doxycycline hyclate, Plaintiffs allege generally that Sun sold these products at different times, but Plaintiffs offer <u>no</u> allegations at all regarding Sun's specific prices for either product.

The implausibility of Plaintiffs' claims is highlighted by Plaintiffs' allegations about Sun's digoxin sales. Plaintiffs acknowledge that Sun was not selling digoxin when the conspiracy allegedly started in 2013 when Plaintiffs allege other Defendants raised their digoxin prices. *See* DPP CAC ¶ 81.[4] In other words, the alleged price increases occurred at a time when Plaintiffs say that Sun was not even selling digoxin, and thus Sun could not have plausibly been part of the conspiracy. While Plaintiffs allege that Sun began reselling digoxin in 2015, they do not include any allegations about what Sun's prices were in 2015, much less that Sun increased its prices for digoxin over time. There are simply no allegations of the actual timing and amount

---

[4] While the EPP CAC names Sun as one of the entities that raised prices between October 2012 and June 2014, they do not allege any specific price increases by Sun. EPP CAC ¶ 77.

of Sun's purported prices, much less any purported price increases that occurred in parallel with others.[5]

As explained in the DPP MTD, all Plaintiffs have offered are general allegations that industry-wide average prices rose at certain points in time.  Such industry-wide average prices are not sufficient to show what any one individual Defendants' price was at any point in time, much less what Sun's prices were or how they allegedly rose in parallel with other Defendants' prices.  Such allegations do not suffice to meet Plaintiffs' burden here.  *See In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d at 933 (dismissing cartel claim against single defendant).

## II. Plaintiffs' Alleged "Plus Factors" Do Not Show Sun Participated in the Alleged Conspiracy

Having failed to sufficiently allege parallel conduct by Sun (which in and of itself is sufficient to dismiss Sun from the complaints), Plaintiffs spend a considerable amount of time simply inventorying Defendants' ordinary course independent business activities and mischaracterizing them as "plus factors."  As explained in the DPP MTD, none of these so-called "plus factors" are sufficient for this Court to infer the conspiracy Plaintiffs' allege.  Even if the allegations could suffice as to some Defendants (which they do not), they certainly cannot support a claim against Sun.  Indeed, most of the allegations of routine business conduct that Plaintiffs' brand as "plus factors" do not even mention Sun, much less relate to it, in any way.

For example, Plaintiffs allege that the conspiracy was facilitated during discussions at trade associations.  However, even under Plaintiffs' cataloging of these events, Plaintiffs allege

---

[5] It follows that without these allegations Plaintiffs cannot argue that Sun was a latecomer to the alleged conspiracy. *See, e.g.*, *Coon v. Froehlich*, 573 F. Supp. 918, 922 (S.D. Ohio 1983) (to hold one liable for all of the conspiracy's acts prior to joining the conspiracy it must be shown that he knew about and participated in the conspiracy after entering it); *see also In re Polyurethane Foam Antitrust Litig.*, 199 F. Supp. 2d 777, 800 (N.D. Ohio 2011) (applying the holding from Coon in the antitrust conspiracy context).  Here, Plaintiffs have not made any such allegation.

9

that Sun attended only a handful of the many trade association events Plaintiffs cite, and there is no specific allegation that Sun attended any of the industry dinners or women's initiative events at which Plaintiffs claim the Defendants met to discuss the conspiracy. Moreover, many of the trade meetings took place during a time the Plaintiffs acknowledge Sun was not selling digoxin. And, at the events Sun allegedly attended, there is no specific allegation regarding with whom or what Sun allegedly discussed, and no allegation that Sun even communicated with any other Defendants during these events, much less about doxycycline hyclate or digoxin. In essence, the allegations related to trade association meetings are merely speculative assertions that the other Defendants had theoretical "*opportunities* to discuss and share competitively sensitive information," but that Sun was, for the most part, not present for these "opportunities." DPP CAC ¶ 155 (emphasis added); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 228 (3d Cir. 2011) (quoting *Twombly*, 550 U.S. at 557).

Equally inapplicable to Sun are the references to the former Heritage executives' guilty pleas and the AG Complaint both of which related to the sale of Doxy DR, which Plaintiffs do not allege that Sun even manufactures or sells. *See* Section B *supra*; Compl. ¶ 1, *Conn. v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-02056-VLB, ECF No. 1 (D. Conn. Dec. 15, 2016).

Finally, Plaintiffs' suggestion that certain Defendants' public statements constitute "plus factors" fares no better. DPP CAC ¶¶ 141-43, 170; *see also* EPP CAC ¶ 94. Plaintiffs claim that such "investor communications" "emphasize the goal of and commitment to increasing generic pharma prices and maintaining them at supracompetitive levels." DPP CAC ¶ 121. However, an examination of the only four cited statements involving Sun say no such thing. For example, one allegation states that Sun's subsidiary had undertaken taken price increases in March 2013, which they imply included doxycycline. DPP CAC ¶ 141. This statement does not show that

10

Sun's alleged price increase was done in parallel with other Defendants' alleged price increase or that there was no non-conspiratorial reason for the price increase.  Another allegation is that "Sun reported that its costs," described by Plaintiffs as "material costs and other expenditures as a percentage of net sales," were "stable."  DPP CAC ¶¶ 142, 170; EPP CAC ¶ 94.  Even if Plaintiffs' recitation regarding the earnings statement was true, which Sun does not concede, it does not show that Sun was participating the alleged conspiracy.  Plaintiffs' other allegations fare no better.  In one, all Plaintiffs allege is that Sun discussed "competitive pressures on some of the products like . . . Doxycycline . . . where competitive intensity has increased."  EPP CAC ¶ 191.  In the other, all Plaintiffs allege is that in one investor presentation Sun described doxycycline as a "low competition product" in the US.  DPP CAC ¶ 143.  Such statements, again, show nothing about a conscious commitment by Sun to the alleged conspiracy or any specific conduct by Sun to engage in the alleged conspiracy.  Moreover, even among the alleged statements Plaintiffs cite, they overlook that none of the statements relate to digoxin, once again instead choosing to try to blur the lines and the differences among the different products at issue.  *See* DPP CAC ¶¶ 141-43; EPP CAC ¶¶ 94, 191.  At the end of the day, as with Plaintiffs' other allegations, these allegations in no way show that Sun was raising prices in parallel with other Defendants or otherwise indicate that Sun was participating in any conspiracy.

## CONCLUSION

For the reasons stated in the DPP MTD and the EPP MTD, Plaintiffs' claims should be dismissed in their entirety. Additionally, for the reasons stated herein, Plaintiffs have failed to state a cause of action against Sun Pharmaceutical Industries, Inc., and their Complaints should therefore be dismissed.

Dated: March 28, 2017

                                            Respectfully submitted,

                                            /s/ J. Douglas Baldridge
                                            J. Douglas Baldridge
                                            Lisa Jose Fales
                                            Danielle R. Foley
                                            Venable LLP
                                            600 Massachusetts Avenue, NW
                                            Washington, D.C. 20001
                                            (202) 344-4000
                                            jbaldridge@venable.com
                                            ljfales@venable.com
                                            drfoley@venable.com

                                            Thomas J. Welling, Jr.
                                            Venable LLP
                                            1270 Avenue of the Americas, 24th Floor
                                            New York, New York 10020
                                            (212) 307-5500
                                            tjwelling@venable.com

                                            *Attorneys for Defendant*
                                            *Sun Pharmaceutical Industries, Inc.*