**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC DIGOXIN AND DOXYCYCLINE ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br><br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>**DIRECT PURCHASER ACTIONS AND END-PAYOR ACTIONS** | |

**MEMORANDUM OF LAW IN SUPPORT OF ACTAVIS
HOLDCO U.S., INC'S MOTION TO DISMISS DIRECT
PURCHASER PLAINTIFFS' AND END-PAYOR PURCHASER
PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ........................................................................................................................ 4

A.      Plaintiffs Fail To Plausibly Allege That Actavis Was Involved in Any
Price Fixing or Market Allocating Conspiracy With Respect to
Doxycycline ......................................................................................................... 4

1.      Plaintiffs Do Not Allege Direct Evidence of an Actual Agreement
Involving Actavis ................................................................................................ 5

2.      Plaintiffs Do Not Allege Facts from Which This Court May Plausibly
Infer the Existence of an Unlawful Agreement Involving Actavis ...................... 6

3.      An Average Price Increase Does Not (and Cannot) Establish that
Actavis Increased Prices in Parallel With Competitors .......................... 6

4.      Plaintiffs Have Not Adequately Pled Any Plus Factors Applicable
to Actavis .............................................................................................. 7

i.      There are no well-pled factual allegations implying a "traditional"
conspiracy involving Actavis ..................................................... 8

ii.     Government investigations are not a plus factor here ............................... 9

iii.    The trade association allegations are also insufficient ........................... 10

iv.     Defendants' public statements do not aid Plaintiffs' cause .................... 11

v.      Glazer's and Malek's guilty pleas and the CT AG Complaint are
irrelevant to Actavis ................................................................. 12

B.      Plaintiffs Fail To Plausibly Allege That Actavis Was Involved in Any
Price Fixing or Market Allocating Conspiracy With Respect to Digoxin .......... 13

CONCLUSION ................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amelio v. McCabe, Weisberg & Conway, P.C.*,
No 14-1611, 2015 U.S. Dist. LEXIS 98378 (W.D. Pa. July 28, 2015) ...................................7

*In re Auto. Parts Antitrust Litig.*,
No. 12-CV-00203, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016)......................................14

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999)..........................................................................................6, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................... *passim*

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011).............................................................................................5, 10

*In re Chocolate Confectionary Antitrust Litig.*,
801 F.3d 383 (3d Cir. 2015)..................................................................................................8

*Cole's Wexford Hotel, Inc. v. UPMC*,
127 F. Supp. 3d 387 (W.D. Pa. 2015)..................................................................................15

*Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*,
846 F.2d 284 (5th Cir. 1988) ..............................................................................................10

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004).............................................................................................6, 8

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
No. 09-cv-4050, 2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) ...............................................9

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..................................................................................9

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
647 F. Supp. 2d 1250 (W.D. Wash. 2009).........................................................................9, 13

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010)...............................................................................................4-5

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)..........................................................................................6, 8, 14

*InterVest, Inc. v. Bloomberg, L.P.*,
   340 F.3d 144 (3d Cir. 2003).................................................................................6

*Just New Homes, Inc. v. Beazer Homes*,
   293 F. App'x 931 (3d Cir. 2008) .................................................................. 10-11

*Kaempe v. Myers*,
   *367* F.3d 958 (D.C. Cir. 2004) ...........................................................................7

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984).............................................................................................6

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) .............................................................................8

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)........................14

*Resco Prods. Inc. v. Bosai Minerals Grp. Co.*,
   158 F. Supp. 3d 406 (W.D. Pa. 2016) ......................................................... 6-7, 10

*Robinson v. Prison Health Servs.*,
   No. 10-7165, 2014 U.S. Dist. LEXIS 74609 (E.D. Pa. June 2, 2014).....................5

*RxUSA Wholesale, Inc. v. Alcon Labs., Inc.*,
   661 F. Supp. 2d 218 (E.D.N.Y. 2009), *aff'd*, 391 F. App'x 59 (2d Cir. 2010).......................7

*Schuylkill Health Sys. v. Cardinal Health* 200, LLC,
   No. 12-cv-7065, 2014 U.S. Dist. LEXIS 103663 (E.D. Pa. July 30, 2014) ...........11

*St. Clair v. Citizens Fin. Grp.*,
   340 F. App'x 62 (3d Cir. 2009) ..........................................................................4

*State of Conn. v. Aurobindo Pharma USA, Inc.*,
   No. 3:16-cv-02056-VLB (D. Conn.)..................................................................4, 13

*Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*,
   490 F. App'x 492 (3d Cir. 2012) .......................................................................8, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL. No. 1827, 2010 U.S. Dist. LEXIS 65023 (N.D. Cal. June 28, 2010) ...........12

*Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*,
   346 U.S. 537 (1954)............................................................................................4

*In re Travel Agent Comm'n Antitrust Litig.*,
   MDL No. 1561, 2007 U.S. Dist. LEXIS 79918 (N.D. Ohio Oct. 29, 2007),
   *aff'd*, 583 F.3d 896 (6th Cir. 2009) .....................................................................7

*TruePosition, Inc. v. LM Ericsson Tel. Co.*,
    844 F. Supp. 2d 571 (E.D. Pa. 2012) ......................................................................5

*United States v. Ashland-Warren, Inc.*,
    537 F. Supp. 433 (M.D. Tenn. 1982) ...................................................................14

*United States v. Kelly*,
    892 F.2d 255 (3d Cir. 1989)...........................................................................13, 15

*Zachair, Ltd. v. Driggs*,
    965 F. Supp. 741 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998) .................14

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
    513 F. Supp. 1100 (E.D. Pa. 1981) ......................................................................10

**Statutes**

Sherman Act...........................................................................................................4, 5, 7

**INTRODUCTION**

Actavis Holdco U.S., Inc. ("Actavis") respectfully submits this motion to dismiss the Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint and the End-Payor Plaintiffs' Corrected Consolidated Class Action Complaint (collectively, "Plaintiffs" and "Complaints"). While Actavis joins in Defendants' joint motion to dismiss the direct purchasers' complaint ("DPP Brief") and Defendants' joint motion to dismiss the end-payor purchasers' complaint ("EPP Brief") – each of which explains in detail why both Complaints should be dismissed – Actavis submits this brief to set out additional reasons why Plaintiffs' claims against Actavis are meritless.

First, although the Complaints allege that Actavis engaged in a single overarching conspiracy to fix prices for *both* digoxin and doxycycline, they do not allege that Actavis sold either digoxin or the "delayed release" variant of doxycycline, "Doxy DR" (the only form of doxycycline at issue in the state government and criminal actions upon which Plaintiffs so heavily rely). Plaintiffs do not even attempt to establish how or why Actavis would conspire to fix prices for drugs they do not allege it sold.

Second, Plaintiffs' Complaints are almost entirely bereft of allegations against Actavis. Neither Complaint includes a single allegation of when or by how much Actavis increased its prices for doxycycline. Nor does either Complaint recount a single statement made by any Actavis employee that could plausibly be construed as indicating involvement in a conspiracy, let alone any communication between Actavis and any alleged co-conspirator.

Ultimately, it appears as though Actavis was named as a defendant in this action for two reasons. Actavis' predecessor, Allergan plc, received a subpoena from the DOJ, along with a great many other manufacturers of generic pharmaceuticals. Actavis sold doxycycline at a time when the average selling price of doxycycline increased (although, as Defendants pointed out in the DPP

Brief, even the allegations of parallel price changes are inadequate).  But these facts are insufficient to create any plausible inference that Actavis engaged in any conspiracy.  The Complaints do not satisfy *Twombly* and *Iqbal* and they fail under various state laws.  Thus, this Court should dismiss Plaintiffs' claims against Actavis in their entirety.

## **FACTUAL BACKGROUND**[1]

With respect to Actavis, Plaintiffs bring class actions on behalf of two groups of individuals and/or entities (direct purchasers and end-payers) who allegedly purchased doxycycline hyclate from October 1, 2012 to the present. (DPP Compl; ¶ 35; EPP Compl. ¶ 36).[2]  The DPPs define "doxycycline" or "doxy" as "generic doxycycline hyclate," including the delayed release ("Doxy DR") version of doxycycline hyclate" (*see* DPP Compl. ¶ 1 n. 1), and the EPPs similarly refer to Doxy DR in their Complaint, although only in passing and not until paragraph 91.  But even a cursory review of the Complaints makes clear that, regardless of how Plaintiffs define the drug, they are two entirely different products, doxycycline hyclate and Doxy DR.  *See, e.g.*, DPP Compl. ¶¶ 96, 98, 105-06, 114; EPP Compl. ¶¶ 96-101.  The Complaints do not allege that Actavis manufactured or sold Doxy DR.  According to the Complaints, only Heritage, Mylan, and Mayne sold Doxy DR.  DPP Compl. ¶¶ 31-39; EPP Compl. ¶¶ 96-101.

Plaintiffs rely on allegations of what they contend is circumstantial evidence of conspiracy, including (1) parallel pricing conduct, (2) attendance at trade association events, (3) statements in earnings calls and (4) the existence of government investigations and other complaints.

On the first point (parallel pricing conduct), Plaintiffs cite National Average Drug

---

[1] Actavis incorporates by reference the factual background included in the DPP Brief and the EPP Brief.

[2] Plaintiffs' Complaints allege various communications and government proceedings involving digoxin, but none of those allegations concern Actavis.  Actavis is not alleged to manufacture or sell digoxin, nor is it alleged to have participated in the digoxin conspiracy.  DPP Compl. ¶ 35; EPP Compl. ¶ 36.

Acquisition Cost ("NADAC") estimates of average aggregate pricing and average prices for doxycycline published in a U.S. Senate Fact Sheet, in an apparent attempt to show price increases for doxycycline.  *See* DPP Compl. ¶¶ 110, 113-14; EPP Compl. ¶¶ 89-91.  Specifically, Plaintiffs copy a chart purporting to show certain "benchmark" prices for one West-Ward doxycycline product.  But these benchmarks have nothing at all to do with Actavis' prices on any product (let alone doxycycline), nor do they show either (a) that any companies' prices moved in parallel or (b) the relative timing of any alleged price increases.  *See* DPP Compl. ¶ 111; EPP Compl. ¶ 88. Indeed, ***Plaintiffs include no allegations about Actavis' actual doxycycline prices at all***.

In addition, and unable to cite ***any*** direct communications among Defendants, Plaintiffs allege that Defendants, without identifying a single employee of Actavis (or any other Defendant, for that matter), attended certain Generic Pharmaceutical Association ("GphA") meetings and other, non-specified trade show conferences.  From this mere attendance, Plaintiffs ask the Court to infer that Defendants must have engaged in illicit communications during those meetings, even though they allege no actual communications.  *See* DPP Compl. ¶¶ 154-157; EPP Compl. ¶¶ 104-07.

Plaintiffs also rely on innocuous statements from certain Defendants' analyst calls and earnings statements or annual reports.  *See* DPP Compl. ¶¶ 137-46; EPP Compl. ¶¶ 110-19. Notably, however, Plaintiffs allege no statements at all from any Actavis earnings call.  The DPP Plaintiffs attempt to fill that gap by citing an earnings call statement made by non-defendant Teva, in which a Teva executive noted that the "overall pricing environment has been quite favorable for generics," even though he did not mention doxycycline.  *See* DPP Compl. ¶ 145.[3]

Plaintiffs also seek to meet their pleading burden by referencing allegations in a different

---

[3] Teva's acquisition of Actavis was not completed until August of 2016.

civil complaint, filed in a different federal court, by the attorneys general of several states regarding different drugs (*i.e.* glyburide and Doxy DR) than those at issue here (the "AG Complaint").[4]  *See* DPP Compl. ¶¶ 16-19.  But even though the AG Complaint was amended on March 1, 2017, it does not name Actavis as a defendant (or even once mention Actavis), but rather focuses entirely on Doxy DR.  *See State of Conn. v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-02056-VLB (D. Conn.), Dkt. No. 1 at ¶ 1.

Finally, Plaintiffs cite to guilty pleas by two former senior executives at Heritage, Jeffrey Glazer and Jason Malek, to charges of conspiring to manipulate the prices of Doxy DR and glyburide.  DPP Compl. ¶ 20; EPP Compl. ¶ 10.  The government informations charging Glazer and Malek do not mention Actavis.  Additionally, there is no suggestion in the guilty pleas or government informations that the conduct encompassed by the pleas involved doxycycline hyclate other than Doxy DR, which (again) Actavis is not alleged to have made.

## ARGUMENT

### A. Plaintiffs Fail To Plausibly Allege That Actavis Was Involved in Any Price Fixing or Market Allocating Conspiracy With Respect to Doxycycline[5]

Pleading and proving an ***agreement*** is an essential requirement of any claim under Section 1 of the Sherman Act and its state law analogues.[6]  *Theatre Enter., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540-41 (1954).  "To allege such an agreement . . . a plaintiff must allege facts plausibly suggesting a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."  *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602

---

[4] Generic digoxin is not even the subject of the AG Complaint.

[5] As noted above (*supra* n.2), Actavis addresses the doxycycline allegations first because there is no allegation in either Complaint that Actavis ever manufactured or sold digoxin; neither is there any *factual* allegation that Actavis participated in any conspiracy regarding digoxin.

[6] *See, e.g., St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 65 n.2 (3d Cir. 2009) ("the state law antitrust claims are only viable if the corresponding federal claims are sufficient").

F.3d 237, 254 (3d Cir. 2010) (internal quotation marks and citations omitted).

Accordingly, courts in this Circuit routinely dismiss Sherman Act § 1 complaints that fail to allege sufficient facts supporting the existence of an "agreement."  *See Id*.; *Burch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011); *TruePosition, Inc. v. LM Ericsson Tel. Co.*, 844 F. Supp. 2d 571 (E.D. Pa. 2012).  "To adequately plead an agreement, a plaintiff must plead either direct evidence of an agreement or circumstantial evidence."  *Burch*, 662 F.3d at 225 (internal citations omitted).  Plaintiffs do neither here.

### 1. Plaintiffs Do Not Allege Direct Evidence of an Actual Agreement Involving Actavis

The Complaints do not allege facts essential to their § 1 claim: the existence of a conspiracy or unlawful agreement concerning doxycycline hyclate.  Plaintiffs do not identify a single meeting, phone call, or document evidencing Actavis' participation in an unlawful agreement with its competitors regarding doxycycline or otherwise.  They do not identify any Actavis personnel involved in the formation of the alleged doxycycline agreement. They do not say when the alleged doxycycline agreement was formed or what that agreement entailed.

Instead, Plaintiffs offer boilerplate recitations of legal elements and conclusory allegations of agreement (DPP Compl. ¶ 162; EPP Compl. ¶ 123), but those are insufficient under controlling precedent.  As *Bell Atl. Corp. v. Twombly* made clear, "a formulaic recitation of the elements of a cause of action will not do," 550 U.S. 544, 555 (2007), [7] and "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id*. at 557.

---

[7] These standards apply both to the Sherman Act claims, as well as to the state law claims based on the same alleged conduct brought by the EPPs.  *See, e.g., Robinson v. Prison Health Servs.*, No. 10-7165, 2014 U.S. Dist. LEXIS 74609, at *28 (E.D. Pa. June 2, 2014).

**2.    Plaintiffs Do Not Allege Facts from Which This Court May Plausibly Infer the Existence of an Unlawful Agreement Involving Actavis**

In the absence of allegations of direct evidence, Plaintiffs must allege "circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme" to fix the price of doxycycline. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (internal quotation marks and citations omitted).  To meet that burden, they first must allege facts sufficient to establish that "the defendants' behavior was parallel." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 165 (3d Cir. 2003); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 n.11 (3d Cir. 2004) (same).  A plaintiff relying on parallel conduct must also allege circumstantial evidence ("plus factors") from which the court may plausibly infer the existence of the purported conspiracy.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322-23 (3d Cir. 2010).  Once again, Plaintiffs fail on all these requirements.

**3.    An Average Price Increase Does Not (and Cannot) Establish that Actavis Increased Prices in Parallel With Competitors**

Plaintiffs' circumstantial evidence-based claims fail at the outset, because there are no allegations that Actavis charged the same price as its competitors for any doxycycline product or that Actavis instituted price increases in parallel with its competitors.  Indeed, Plaintiffs do not allege a single Actavis price for any doxycycline product, or the amount or timing of any price increase instituted by Actavis or any of its competitors.  Instead, Plaintiffs allege only general market-wide "average" price increases based on NADAC data and a Senate fact sheet.  *See, e.g.*, DPP Compl. ¶¶ 110-14; EPP Compl. ¶¶ 88-91.

The Third Circuit has expressly rejected the notion that "trend lines of *average prices* are a reliable indicator of transactional prices."  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 129 (3d Cir. 1999) (emphasis in original).  In the absence of specific, parallel price increase allegations, a price-fixing case premised on circumstantial evidence (like this one) must be dismissed.  *See*

*Resco Prods. Inc. v. Bosai Minerals Grp. Co.*, 158 F. Supp. 3d 406, 424 (W.D. Pa. 2016) (plaintiff's assertions of general price movements could not demonstrate parallel increases absent evidence "of the amount or timing of any of the pricing increases it claim[ed] were the product of collusion."). *See also RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,* 661 F. Supp. 2d 218, 233 (E.D.N.Y. 2009) (dismissing Sherman Act § 1 claim for failure to allege parallel conduct), *aff'd,* 391 F. App'x 59 (2d Cir. 2010); *In re Travel Agent Comm'n Antitrust Litig.*, MDL No. 1561, 2007 U.S. Dist. LEXIS 79918, at *17-18 (N.D. Ohio Oct. 29, 2007), *aff'd*, 583 F.3d 896 (6th Cir. 2009) (dismissing claims because plaintiffs did not "put forth any 'factual matter' suggesting [four defendants] engaged in parallel conduct" (quoting *Twombly*, 550 U.S. at 556)).

Actavis also submits that Plaintiffs' attribution of any price increases to collusion is contradicted by the public record, which identified shortages of doxycycline during the relevant time period.  On January 18, 2013, the FDA reported that "manufacturing delays" left the company unable to supply the market with 50mg capsules and 100mg tablets and capsules and that West-Ward's products likely would not be available again until the end of February or early March.  *See* Exhibit A to the Declaration of David M. Max filed herewith ("Max Decl.").  The CDC also later issued a Health Advisory regarding a shortage of doxycycline products caused by "increased demand and manufacturing issues."  *See* Exhibit B to the Max Decl.[8]

### 4.  Plaintiffs Have Not Adequately Pled Any Plus Factors Applicable to Actavis

Even if Plaintiffs had adequately pled parallelism—and they have not—their claims against Actavis would still need to be dismissed.  Parallel price movement is a necessary, but not sufficient, requirement in alleging a Section 1 violation through circumstantial evidence.  Parallelism, without

---

[8] "While the court accepts all well-pleaded factual allegations in the complaint as true, it need not accept allegations that are internally inconsistent or contradict matters of public record." *Amelio v. McCabe, Weisberg & Conway, P.C.*, No 14-1611, 2015 U.S. Dist. LEXIS 98378, at *12-13 (W.D. Pa. July 28, 2015); *see also Kaempe v. Myers, 367* F.3d 958, 963 (D.C. Cir. 2004).

sufficient allegations of plus factors, "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557; *see also In re Musical Instruments &Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) (citing *Twombly* and holding plaintiff must allege factual allegations that are "largely inconsistent with unilateral conduct [and] largely consistent with explicitly coordinated action.").

The Third Circuit has identified three relevant plus factors: "(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 322. The first two plus factors, however, "are not especially helpful in price-fixing cases where, as here, there are [alleged] parallel price increases by competitors in a concentrated market." *Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*, 490 F. App'x 492, 499 (3d Cir. 2012); *see* CAC ¶ 203. This is because "the first two factors largely restate the phenomenon of interdependence." *In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 398 (3d Cir. 2015) (quoting *In re Flat Glass* at 360). Such allegations, therefore, are not plus factors suggestive of conspiracy. Rather, in a concentrated market like the one for doxycycline, Plaintiffs need to establish their claim through allegations "that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan," *Superior Offshore*, 490 F. App'x at 499, which they have utterly failed to do.

### i. There are no well-pled factual allegations implying a "traditional" conspiracy involving Actavis

Plaintiffs' attempted plus-factor allegations consist of: (1) references to government investigations into the generic drug industry generally; (2) insinuations concerning Defendants' membership in a trade association and attendance at trade association meetings; (3) a few public statements from certain Defendants' executives, but not Actavis's executives, to investors; and (4)

the guilty pleas of two former Heritage executives.  These allegations are neither capable of creating an inference of conspiracy involving Actavis, nor are they sufficiently tailored to Plaintiffs' claims.

### ii.  Government investigations are not a plus factor here

Plaintiffs' allegations regarding government investigations are insufficient. As a general matter, courts assign little to no weight to such allegations.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (holding that existence of investigations "carries no weight" and is "non-factor" in "pleading an antitrust conspiracy claim"); *see also Footbridge Ltd. v. Countrywide Home Loans, Inc*., No. 09-cv-4050, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) ("strik[ing] . . . allegations . . . based on pleadings, settlements, and government investigations"); *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 647 F. Supp. 2d 1250, 1258 (W.D. Wash. 2009) (dismissing claim in which plaintiff had relied on DOJ investigation and criminal charges relating to separate route in the shipping industry involving some of defendants and noting "[s]imilar attempts at cross-fertilization have been rejected by other courts, and the Court finds plaintiffs' invocation of the DOJ investigation equally unavailing"). This approach makes sense because "the mere occurrence of [an] investigation is equally consistent with Defendants' innocence." *Superior Offshore*, 738 F. Supp. 2d at 517.

And here, Plaintiffs' allegations are especially lacking because the investigations on which they purport to rely (by Congress, the DOJ, and the Connecticut Attorney General) have to do with generic drug prices generally, and Plaintiffs make no attempt to tie these alleged investigations to the specific allegations of this case.  Plaintiffs' failure to do so is unsurprising, since they are unable to point to *any* facts that have emerged from any investigations that would support their allegations about Actavis' involvement in any alleged price fixing of doxycycline, let alone digoxin.  Instead, Plaintiffs merely cite the fact that these investigations exist, but that fact alone

is not a "plus factor" and, thus, cannot possibly save Plaintiffs' claims.

### iii.   The trade association allegations are also insufficient

The Complaints either speculate about the import of Defendants' involvement in the GPhA, *see* DPP Compl. ¶ 148 ("DOJ *is investigating whether* trade organizations are a potential vehicle for collusion") (emphasis added), or regurgitate conclusory allegations from the AG Complaint that "the defendants [excluding Actavis] routinely coordinated their schemes through… industry trade shows[.]"  DPP Compl. ¶ 147.  No deference is due to conclusory allegations lifted from another complaint, and it is black letter law that mere "possibility" is not the same as "plausibility." *Burch*, 662 F.3d at 221.

Plaintiffs do not allege any facts remotely capable of creating a plausible inference that Actavis' mere participation in the GPhA—an organization which includes not just generic drug manufacturers, but distributors, chemical manufacturers, and other goods and service suppliers— facilitated price-fixing on doxycycline.  *Cf. Consol. Metal Prods., Inc. v. Am. Petroleum Inst*., 846 F.2d 284, 293-94 (5th Cir. 1988) ("[A] trade association is not by its nature a 'walking conspiracy.'").  The Complaints contain no specific allegations that Actavis communicated with its competitors about doxycycline through the GPhA or during GPhA meetings; neither do they provide any factual allegations to suggest that the price of doxycycline (or any other drug for that matter) was actually related to GPhA activities.

Courts have universally recognized that "mere membership in a trade association, including attendance at meetings, is insufficient without more to give rise to an inference of conspiracy." *Resco*, 158 F. Supp. 3d at 425 (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co*., 513 F. Supp. 1100, 1149 (E.D. Pa. 1981)); *see also Just New Homes, Inc. v. Beazer Homes*, 293 F. App'x 931, 934 (3d Cir. 2008) ("Membership in a trade association, without more, does not violate the antitrust laws.").  For that reason, courts consistently reject attempts—like

those made by Plaintiffs here—to insinuate that there is something sinister about routine attendance at industry trade association meetings.  *See Schuylkill Health Sys. v. Cardinal Health 200, LLC*, No. 12-cv-7065, 2014 U.S. Dist. LEXIS 103663, at *31-32 (E.D. Pa. July 30, 2014) ("The fact that the Defendants are members of a trade association that hosts annual conferences does not transform Defendants' parallel conduct into a conspiracy.").

### iv.  Defendants' public statements do not aid Plaintiffs' cause

In yet another attempt to create the impression of a conspiracy without any factual basis, Plaintiffs rely on a grab bag of statements from investor communications by various Defendants – for example Lannett's statement that it is a "price leader" rather than a "price follower," CAC ¶ 123, West-Ward's statement about "the exceptional profitability of doxycycline," *Id.* ¶ 137, Sun's reference to doxycyline as a "low competition product," *Id.* ¶ 144, and Par referring to "consolidation and maturation of competitors [having] stabilized the pricing environment."  *Id.* ¶ 146.

Significantly, however, neither Complaint quotes any statements made by ***Actavis***.  The closest Plaintiffs come is a reference in the DPP Complaint to ***Teva executives*** who purportedly "commented on 'some abnormalities' in pricing generic pharmaceuticals and [said] that the 'overall pricing environment has been quite favorable for generics.'"  *Id.* ¶ 145.  That's it.  As concerns Actavis, therefore, all the DPPs have is one modestly bullish statement made by an executive of the company that, at the time, intended to purchase Actavis (but had not yet done so), and the EPPs lack even that.

The Third Circuit has consistently held that "communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise."  *In re Baby Food*, 166 F. 3d at 126 (internal citation omitted).  Far from "not rising to the level of agreement," the communications on which Plaintiffs rely here

11

*are not even between competitors*, nor do any of the statements plausibly suggest that Actavis participated in any improper communications with other Defendants concerning the pricing and marketing of doxycycline.  Indeed, and as noted above, none of the statements on which Plaintiffs rely were even made by Actavis.  As such, those statements simply cannot constitute a "plus factor" supportive of Plaintiffs' claims against Actavis.

### v.  Glazer's and Malek's guilty pleas and the CT AG Complaint are irrelevant to Actavis

Plaintiffs also spill a great deal of ink describing the charges against – and guilty pleas entered by – former Heritage executives Glazer and Malek,[9] as well as cribbing allegations from the CT AG Complaint.[10]  Once again, however, these allegations are not sufficient to create a plausible inference that Actavis engaged in a conspiracy concerning doxycycline.

In fact, and as an initial matter, Plaintiffs do not allege that Actavis and Heritage are even direct competitors.  According to the Complaints, Actavis sells immediate-release doxycycline while Heritage sells Doxy DR.  *See* DPP Compl. ¶ 98.  Glazer's and Malek's guilty pleas are therefore entirely irrelevant to the claims against Actavis.  And as other courts have held, reliance on guilty pleas concerning other, supposedly "related products," is an insufficient substitute for factual allegations giving rise to a plausible inference of conspiracy.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL. No. 1827, 2010 U.S. Dist. LEXIS 65023 at *16 (N.D. Cal. June 28, 2010) (dismissing complaint relying on guilty pleas where there were insufficient "specific factual allegations to support the conspiracy claims in addition to allegations concerning guilty pleas with respect to the other products or markets."); *see also In re Hawaiian & Guamanian Cabotage*

---

[9] *See* DPP Compl. ¶¶ 13-15, 20-21, 193, 213; EPP Compl. ¶¶ 2, 8-10, 63, 97, 99-101, 127, 141, 170, 174-75, 187.

[10] *See* DPP Compl. ¶¶ 16-19, 155, 194-95, 197-199, 222-23; EPP Compl. ¶¶ 14-16, 108, 133, 135, 170-71, 187-88.

*Antitrust Litig.,* 647 F. Supp. 2d at 1258.

Indeed, presumably because Actavis is not alleged to have sold Doxy DR, the CT AG Complaint does not even name Actavis as a defendant, despite being amended on March 1, 2017. *See State of Conn. v. Aurobindo Pharma USA, Inc.*, No. 3:16-cv-02056-VLB (D. Conn.), Dkt. No. 1 at ¶ 1.  Once again, therefore, Plaintiffs' references to the CT AG Complaint cannot possibly create ***any*** inference sufficient to sustain an antitrust claim against Actavis.

### B. Plaintiffs Fail To Plausibly Allege That Actavis Was Involved in Any Price Fixing or Market Allocating Conspiracy With Respect to Digoxin

While both Complaints allege a single overarching conspiracy concerning digoxin and doxycycline, Actavis did not manufacture or sell digoxin, nor do the Complaints allege that Actavis had any intention of doing so.  Plaintiffs therefore face a significant hurdle, which they fail to surmount, to plead Actavis' involvement in a conspiracy concerning digoxin.

To determine whether allegations related to disparate facts and events can plausibly state a claim of a single, unified conspiracy, the Third Circuit conducts a "three-step inquiry."  *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989).  Under this test, Plaintiffs must allege facts sufficient to plausibly establish that (1) "there was a common goal among the [alleged] conspirators"; (2) the alleged conspirators depended on each other and the "continuous cooperation of the conspirators" to further their common goal; and (3) "the extent to which the participants overlap in the various dealings" that further their common goal.  *Id*.  Plaintiffs cannot satisfy any of these factors as against Actavis because their allegations make no sense.  Accordingly, Plaintiffs' allegations fail *Twombly's* plausibility requirement and fail, in turn, to create an inference of a single conspiracy involving Actavis to fix the prices of both generic digoxin and doxycycline.

First, it is nonsensical to suggest that Actavis shared a common goal with its co-defendants

to fix the price of **both** digoxin and doxycycline; the drugs are entirely separate products, made from different active ingredients, used for different purposes, prescribed for different patient populations, and sold in different markets by different companies at different times. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2011 WL 3894376, at *7 (N.D. Cal. Aug. 3, 2011) (dismissing claim of over-arching conspiracy involving multiple optical disk drive devices and different markets as implausible); *In re Auto. Parts Antitrust Litig.*, No. 12-CV-00203, 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016) (denying motion to consolidate claims involving makers of separate component products because complaints "merely advance allegations of separate conspiratorial conduct between different Defendants making different parts" rather than "one, [single] global auto parts conspiracy"). Plaintiffs do not (and cannot plausibly) explain why Actavis would have any interest in the price at which Digoxin was sold by other drug companies. Courts have routinely recognized that it makes no sense for entities to agree or conspire to fix prices in markets where they do not compete. *See, e.g., Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 747 (D. Md. 1997) (dismissing price-fixing claim where plaintiff failed to allege "any facts supportive of an inference that the defendants are competitors"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *United States v. Ashland-Warren, Inc.,* 537 F. Supp. 433, 445 (M.D. Tenn. 1982) ("[P]rice-fixing by means of bid rigging is flatly impossible when the alleged conspirators are not also competitors.").

Second, Plaintiffs allege no facts suggesting "the defendants would not have undertaken their common action without reasonable assurances that all would act in concert." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 322 (discussing "interdependence" prong). Plaintiffs do not even attempt to explain how the alleged price-fixing on digoxin was in any way related to the alleged price-fixing on doxycycline. Given the concrete differences between the two drugs and

their respective markets, Plaintiffs' pleading omissions highlight the implausibility of their single conspiracy claim.

Finally, Plaintiffs fail to allege facts plausibly suggesting any overlap among the various Defendants and their conduct. *Kelly*, 892 F.2d at 259. This factor focuses on whether there is evidence of concerted action in furthering the goals of the conspiracy among the participants. *Id.* at 260. Here again, there is no plausible suggestion in Plaintiffs' Complaints that Defendants were "working in concert" with each other, much less that Actavis was part of any such concerted action. *Id.*. Plaintiffs' failure to allege Actavis' plausible involvement in a conspiracy concerning both digoxin and doxycycline also dooms any claim that Actavis was involved in a separate conspiracy concerning digoxin only. Nor would Actavis' involvement in such a conspiracy make sense in any event, since (as noted above) Actavis does not even sell that drug. The factual allegations of different companies selling different products to treat different conditions compels only one conclusion: there is no overlap.[11]

## CONCLUSION

For all of the foregoing reasons, Actavis respectfully requests that the Court dismiss Plaintiffs' claims against it with prejudice.

---

[11] Plaintiffs' failure to adequately plead a single conspiracy is not a mere technical pleading defect. Allowing Plaintiffs to proceed on a single conspiracy claim against Actavis for a drug that Actavis does not sell, and with no allegations that Actavis has refrained from selling digoxin pursuant to some illicit agreement would expose Actavis to joint and several liability for damages caused by a conspiracy it did not, and could not, engage in. *Cole's Wexford Hotel, Inc. v. UPMC*, 127 F. Supp. 3d 387, 415 (W.D. Pa. 2015) (explaining that antitrust liability is joint and several and that each co-conspirator "is liable for the entire amount of damages caused by the violation regardless of the degree of its culpability in causing the damages"). Plaintiffs' failure to allege Actavis' plausible involvement in a conspiracy concerning both digoxin and doxycycline also dooms any claim that Actavis was involved in a separate conspiracy concerning digoxin only. Nor would Actavis' involvement in such a conspiracy make sense in any event, since (as noted above) Actavis does not even sell that drug.

Dated: March 28, 2017

Respectfully submitted,

*/s/ Sheron Korpus*
Marc E. Kasowitz
Hector Torres
Sheron Korpus
Seth B. Davis
Seth A. Moskowitz
David M. Max
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel. (212) 506-1700
mkasowitz@kasowitz.com
htorres@kasowitz.com
skorpus@kasowitz.com
sdavis@kasowitz.com
smoskowitz@kasowitz.com
dmax@kasowitz.com

*Counsel for Actavis Holdco U.S., Inc.*