# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC DIGOXIN AND DOXYCYCLINE ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

**DEFENDANT HERITAGE PHARMACEUTICALS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS UNDER FRCP 12(B)(1), (2), AND (6) TO DISMISS DIRECT PURCHASER PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT AND END-PAYER PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I. THE MDL COMPLAINTS FAIL UNDER FRCP 12(B)(1) BECAUSE THEY NEITHER ALLEGE THAT THE NAMED PLAINTIFFS PREVIOUSLY BOUGHT OR REIMBURSED DOXYCYCLINE DR NOR ANY CONTINUING VIOLATION OF LAW WARRANTING AN INJUNCTION AS TO HERITAGE. ......... 2

    A. The Failure To Allege Purchases Or Reimbursements Of Doxycycline DR Renders Any Alleged Injuries Not "Fairly Traceable" To Heritage's Purported Conduct. ................................................................................................ 2

    B. The End Payor Plaintiffs Do Not Allege the Irreparable Injury Necessary For Injunctive Relief. ................................................................................................... 5

II. ALTERNATIVELY, THE MDL COMPLAINTS FAIL UNDER FRCP 12(B)(6) BECAUSE THEY DO NOT ALLEGE PURCHASE OR REIMBURSEMENT OF DOXYCYCLINE DR OR ONGOING THREAT OF RECURRENT VIOLATIONS OF LAW. ............................................................................................................... 6

III. THE MDL COMPLAINTS SHOULD BE DISMISSED UNDER FRCP 12(B)(2), BECAUSE THEY DO NOT SUFFICIENTLY ALLEGE PERSONAL JURISDICTION OVER HERITAGE, WHICH IS NEITHER "ESSENTIALLY AT HOME" IN THIS FORUM, NOR PURPORTED TO HAVE "SUIT-RELATED" CONTACTS CREATING THE NECESSARY "SUBSTANTIAL CONNECTION" WITH THIS FORUM. ............................................................................................... 8

    A. Heritage Is Not "Essentially At Home" In Pennsylvania. ..................................... 8

    B. Heritage's "Suit-Related" Acts Do Not Create A "Substantial Connection" With Pennsylvania. ................................................................................................ 8

    C. The Alleged Conspiracy Is Inadequate To Support Personal Jurisdiction Over Heritage Based On The Alleged Conduct Of Other Parties. ............................... 10

    D. Heritage Has Not Manifested Consent To Exercise Of Personal Jurisdiction Over Plaintiffs' Claims. ....................................................................................... 11

    E. The Clayton Act's Service Of Process Provision Does Not Warrant Exercise Of Personal Jurisdiction Over Heritage. ............................................................. 12

CONCLUSION ..................................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987) ............................................................................................................... 13

*In re Automotive Refinishing Paint Antitrust Litig.*,
    358 F.3d 288 (3d Cir. 2004) ................................................................................................... 12

*Beach v. Citigroup Alt. Invs. LLC*,
    No. 12 Civ. 7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .............................................. 10

*Burger King Corp.* v. *Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................................ 9, 13

*Calder v. Jones*,
    465 U.S. 783 (1984) .................................................................................................................. 9

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986) .................................................................................................................. 7

*Chevron Corp. v. Naranjo*,
    667 F.3d 232 (2d Cir. 2012) ..................................................................................................... 6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ............................................................................................................... 1, 5

*Clapper v. Amnesty Int'l. USA*,
    133 S. Ct. 1138 (2013) ............................................................................................................. 5

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ..................................................................................................... 2, 8, 13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .................................................................................................................. 3

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012) ...................................................................................... 8

*In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*,
    No. 12-cv-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) ........................................................ 8

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd on other grounds*, 683 F.3d 462
    (3d Cir. 2012) ........................................................................................................................... 6

*Ethypharm S.A. France v. Abbott Labs.*,
    707 F.3d 223 (3d Cir. 2013) ................................................................................................. 6, 7

*Hanson v. Denckla*,
   357 U.S. 235 (1958) ..................................................................................................... 9

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ..................................................................................................... 9

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
   516 F. Supp. 2d 324 (D. Del. 2007), *aff'd on other grounds*, 602 F.3d 237 (3d
   Cir. 2010) ................................................................................................................... 12

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998) .................................................................................. 9, 10

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ..................................................................................................... 9

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) ................................................................................................... 13

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) .............................................................................................. 9, 11

*Klein v. Gen. Nutrition Cos.*,
   186 F.3d 338 (3d Cir. 1999) ....................................................................................... 3

*Klinghoffer v. S.N.C. Achille Lauro*,
   937 F.2d 44 (2d Cir. 1991) ....................................................................................... 12

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..................................................................................................... 3

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................... 3

*McCarthy v. Recordex Serv., Inc.*,
   80 F.3d 842 (3d Cir. 1996) ......................................................................................... 8

*In re Niaspan Antitrust Litig.*,
   42 F. Supp. 3d 735 (E.D. Pa. 2014) ........................................................................... 3

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
   496 F.3d 312 (3d Cir. 2007) ....................................................................................... 9

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..................................................................................................... 5

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987) ..................................................................................................... 13

*In re Papst Licensing GMBH & Co. KG Litig.*,
   590 F. Supp. 2d 94 (D.D.C. 2008) ........................................................................... 12

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ................................................................................................... 11

*Selman v. Harvard Med. Sch.*,
   494 F. Supp. 603 (S.D.N.Y. 1980) ............................................................................... 10

*SigmaPharm, Inc. v. Mut. Pharm. Co.*,
   772 F. Supp. 2d 660 (E.D. Pa. 2011),
   *aff'd*, 454 F. App'x 64 (3d Cir. 2011) ............................................................................. 7

*Simon v. E. Ky. Welfare Rights Org.*,
   426 U.S. 26 (1976) ....................................................................................................... 10

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................................. 10

*Sugartown Worldwide LLC v. Shanks*,
   No. 14-cv-5063, 2015 WL 1312572 (E.D. Pa. Mar. 24, 2015) .................................... 11

*United States v. 51 Pieces of Real Property, Roswell, New Mexico*,
   17 F.3d 1306 (10th Cir. 1994) ...................................................................................... 12

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010) ............................................................................................. 7

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ................................................................................. 2, 9, 10, 13

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ....................................................................................................... 6

*Winter v. NRDC*,
   555 U.S. 7 (2008) ........................................................................................................... 6

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012) ........................................................................................... 5

**Statutes**

15 U.S.C. § 26 ...................................................................................................................... 8

**Treatises**

Charles Alan Wright, et al., 4 *Fed. Prac. & Proc. Civ.*
   § 1067.6 & n.9 (4th ed. Jan. 2017 update) ..................................................................... 6

## INTRODUCTION

Heritage Pharmaceuticals Inc. ("Heritage") incorporates by reference the arguments of its Co-Defendants in jointly moving to dismiss under FRCP 12(b)(6) the two operative complaints filed in this multi-district litigation by the Direct Purchaser Plaintiffs ("DPPs") and the End-Payor Plaintiffs ("EPPs") (together, the "MDL Complaints") (DPP Compl., ECF 125; EPP Compl., ECF 175 (corrected)). This memorandum advances three additional, alternative grounds for dismissal as to Heritage.

*First*, under FRCP 12(b)(1), Plaintiffs have failed to establish the existence of an Article III "case or controversy" between them and Heritage, because they have not alleged that their purported injuries-in-fact are fairly traceable to Heritage's conduct. The MDL Complaints allege that Heritage sold Doxycycline delayed release ("DR"), a medication for severe acne, at prices allegedly set in concert with two of the Co-Defendants, identified as Mylan Pharmaceuticals, Inc. and "Mayne Pharma USA, Inc." But they do *not* allege that the named Plaintiffs purchased or paid reimbursement for Doxycycline DR. Instead, the MDL Complaints discuss purchases and reimbursements for generic doxycycline, but Heritage did not sell that medicine. As Plaintiffs themselves allege, generic doxycycline is sold by a different set of companies and was subject to different alleged price-setting conduct from Doxycycline DR. Moreover, the EPPs have not adequately alleged any continuing violation of law by Heritage that would support injunctive relief; their alleged (indirect) payment of anticompetitive prices for generic doxycycline *in the past* cannot meet the requirement of a continuing or impending future injury from current or anticipated purchases of a different product—Doxycycline DR—at purportedly elevated prices. Other than through bald conclusory allegations, the EPPs have not attempted to meet Article III's requirement of a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

*Second*, these same pleading failures independently require dismissal under FRCP 12(b)(6) (in addition to the reasons set forth in the Co-Defendants' briefs), because the Plaintiffs have not stated any facially plausible claim. In particular, the Plaintiffs have failed to allege that they purchased or reimbursed Doxycycline DR, which deprives them of antitrust standing. In addition, the EPPs have failed to allege a present or future injury from Heritage's conduct, which means that they have no threatened loss warranting the demanded injunction under the Clayton Act.

*Third*, dismissal is required under FRCP 12(b)(2), because there is no basis for of personal jurisdiction over Heritage. Heritage is not subject to general personal jurisdiction in Pennsylvania. It is incorporated in Delaware with its principal place of business in New Jersey, and is not "essentially at home" in this State. *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). And Heritage is not subject to specific personal jurisdiction in Pennsylvania on Plaintiffs' claims, because they have not alleged "suit-related conduct" by Heritage that "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014). Moreover, specific jurisdiction cannot attach based on the conduct of alleged in-state conspirators or on the pleas of former Heritage executives in separate federal proceedings in this district. Nor can the Clayton Act's service of process provision be distorted to justify personal jurisdiction here.

## ARGUMENT

**I.     THE MDL COMPLAINTS FAIL UNDER FRCP 12(B)(1) BECAUSE THEY NEITHER ALLEGE THAT THE NAMED PLAINTIFFS PREVIOUSLY BOUGHT OR REIMBURSED DOXYCYCLINE DR NOR ANY CONTINUING VIOLATION OF LAW WARRANTING AN INJUNCTION AS TO HERITAGE.**

**A.     The Failure To Allege Purchases Or Reimbursements Of Doxycycline DR Renders Any Alleged Injuries Not "Fairly Traceable" To Heritage's Purported Conduct.**

The MDL Complaints fail to establish Article III standing as to Heritage. They do not allege that the named plaintiffs bought or reimbursed Doxycycline DR, and hence do not allege

injuries-in-fact fairly traceable to *Heritage's* alleged collusive conduct concerning the price of Doxycycline DR—a product different from generic doxycycline that was allegedly subject to a separate conspiracy among separate companies. And, critically, the Complaints do not (and cannot) allege that an alleged conspiracy regarding the price of Doxycycline DR affected the price of generic doxycycline. Of course, under Article III's "case or controversy" requirement, each named plaintiff, "for *each claim* he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (emphasis added), must allege injury-in-fact fairly traceable to the conduct of each defendant and redressable by the relief sought, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Because Plaintiffs do not allege that they purchase the product sold by Heritage, they have not passed this fundamental threshold.[1]

While the MDL Complaints draw on the pleas of former Heritage executives and the AG Complaint in claiming that there was a conspiracy between Heritage, Mylan, and Mayne regarding *Doxycycline DR* (DPP Compl. ¶¶ 193-99; EPP Compl. ¶¶ 97-100), none of the named plaintiffs alleges a purchase or reimbursement of *Doxycycline DR*. *See* DPP Compl. ¶¶ 27-30 (alleging each DPP "paid supracompetitive prices for its generic digoxin and doxycycline purchases"); EPP Compl. ¶¶ 22-32, 34-35 (alleging EPP purchase or reimbursements of generic doxycycline prescriptions). The allegations of transactions involving generic doxycycline cannot be assumed to encompass purchases or reimbursements of Doxycycline DR, because they are different medicines that originate from different "branded counterparts," they are manufactured by different defendants, and they were supposedly the object of different alleged anticompetitive agreements.

---

[1] "It is not sufficient that the 'injury has been suffered by other, unidentified members of the class to which [the named plaintiffs] belong and which they purport to represent.'" *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (quoting *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999) (in turn quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *see Lujan*, 504 U.S. at 560 n.1 (alleged injury-in-fact must be experienced by plaintiff "in a personal and individual way").

Most importantly for these cases, the defendants who manufactured generic doxycycline and Doxycycline DR are not identical, and the alleged collusive conduct by those defendants also was not identical. *See* DPP Compl. ¶¶ 98-106, 114 (distinguishing "generic doxycycline" activity and related alleged cost data by Actavis, Par, West-Ward, Mylan, and Sun, from "Doxy DR" activity by Mylan, Mayne, and Heritage); *compare* EPP Compl. ¶¶ 87, 90, 94 (alleging average cost chart as to doxycycline hyclate capsules and alleged conduct by Actavis, West-Ward, Sun, and Mylan), *with* EPP Compl. ¶¶ 91, 97-100 (alleging average cost chart as to Doxycycline DR and alleged conduct by Heritage, Mylan, and Mayne).

Correspondingly, the medicines have different "branded counterparts" (*see* DPP Compl. ¶¶ 52-54, EPP Compl. ¶¶ 58-60), with generic doxycycline "bioequivalent" to branded Vibramycin,[2] and Doxycycline DR "bioequivalent" to branded Doryx. In addition, while Plaintiffs heavily rely on the AG Complaint (DPP Compl. ¶ 16, EPP Compl. ¶ 14), to the extent that District of Connecticut pleading deserves any weight here, it underscores the differences between generic doxycycline and Doxycycline DR. For example, the AG Complaint describes Doxycycline DR as "also known by the brand name Doryx," and "a tetracycline-class antimicrobial indicated as adjunctive therapy *for severe acne*" (AG Redacted Compl. ¶ 69, No. 3:16-cv-2056 (D. Conn. Dec. 14, 2016), ECF 1) (emphasis added), which contrasts with the considerably wider range of conditions for which doctors are said to prescribe generic doxycycline and for which the World Health Organization lists it as an "essential medicine."[3]

---

[2]  *See* DPP Compl. ¶¶ 98-106 (referring to Vibramycin, Vibra-Tabs, and Monodox), EPP Compl. ¶ 71. A "generic product is 'bioequivalent' to the name brand drug," it is alleged, when they "have the same (i) active ingredient, (ii) maximum amount of drug in the blood at a given time, (iii) total amount of drug in the blood over time, (iv) strength, dosage, dosage form, (v) expected safety and efficacy, and (vi) FDA approval of manufacturing facilities." DPP Compl. ¶ 52.

[3]  *See* DPP Compl. ¶ 96 (generic doxycycline treats "a variety of bacterial infections, including acne, urinary tract infections, eye infections, Lyme disease, intestinal infections, sexually-transmitted diseases, and gum disease, among

To be sure, Plaintiffs attempt to evade the distinction between generic doxycycline and Doxycycline DR by asserting, in the first footnote of each MDL Complaint, that the term "doxycycline" refers to *both* what they dub the DR "version" and generic doxycycline "unless otherwise indicated." DPP Compl., n.1; EPP Compl. ¶ 1 n.1. But such an evasive vocabulary trick in the defined terms cannot establish the "case or controversy" Article III requires.

### B. The End Payor Plaintiffs Do Not Allege the Irreparable Injury Necessary For Injunctive Relief.

Separately, the EPPs have not alleged Article III standing for their claim for injunctive relief under the Sherman Act against Heritage (EPP Compl. ¶¶ 216-25 (First Count)), because they make no nonconlusory allegation that they are being harmed by a *continuing* violation *by Heritage* of any law. As the Third Circuit explained in holding that antitrust plaintiffs lacked Article III standing to seek an injunction in *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012): "Even if the plaintiff has suffered a previous injury due to the defendant's conduct, the equitable remedy of an injunction is 'unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]'" *Id.* at 301-02 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Thus, "a plaintiff may have standing to pursue damages, but lack standing to seek injunctive relief," because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (citing *Lyons*, 461 U.S. at 105, and quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Moreover, the "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l.*

---

others"); EPP Compl. ¶ 6 (generic doxycycline treats "bacterial pneumonia, acne, chlamydia infections, *Clostridium difficile* colitis, early Lyme disease, cholera and syphilis, as well as malaria when used in conjunction with quinine").

5

*USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphases added by *Clapper* Court).

The EPPs fall considerably short of those requirements.  Here, the last anticompetitive act purportedly by Heritage occurred in *September 2015* (EPP Compl. ¶ 100), and other than merely conclusory statements (EPP Compl. ¶ 225), they allege no facts showing that they are either currently suffering from a violation of any law by Heritage warranting the "extraordinary remedy" of an injunction, or that they will suffer anything other than "*possible* future injury" from Heritage's conduct now or going forward.  *Winter v. NRDC*, 555 U.S. 7, 22 (2008).

II. **ALTERNATIVELY, THE MDL COMPLAINTS FAIL UNDER FRCP 12(B)(6) BECAUSE THEY DO NOT ALLEGE PURCHASE OR REIMBURSEMENT OF DOXYCYCLINE DR OR ONGOING THREAT OF RECURRENT VIOLATIONS OF LAW.**

In the alternative, the defects identified above also require dismissing the MDL Complaints as to Heritage under FRCP 12(b)(6), in addition to the grounds asserted in the Co-Defendants' briefs.[4]

"For plaintiffs suing under federal antitrust laws, one of the prudential limitations is the requirement of 'antitrust standing.'  It does not affect the subject matter jurisdiction of the court, as Article III standing does, but prevents a plaintiff from recovering under the antitrust laws."  *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 232 (3d Cir. 2013) (citations and footnotes omitted).  A key component of antitrust standing is antitrust injury, which "[g]enerally" is "limited to consumers and competitors in the restrained market and to those whose injuries are the means

---

[4]   This Court has discretion to dismiss Heritage under FRCP 12(b)(6) in the alternative, even though Heritage has also moved for dismissal for lack of subject-matter and personal jurisdiction.  *See* Charles Alan Wright, et al., 4 *Fed. Prac. & Proc. Civ*. § 1067.6 & n.9 (4th ed. Jan. 2017 update) (citing *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 329 (W.D. Pa. 2010), *aff'd on other grounds*, 683 F.3d 462 (3d Cir. 2012)); *see also Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012).

by which the defendants seek to achieve their anticompetitive ends." *Id.* (quoting *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 102 (3d Cir. 2010)).

Here, without allegations that they purchased or reimbursed Doxycycline DR—a product distinct from the generic doxycycline, as the Complaints allege—the MDL Plaintiffs are not "adversely affected market participant[s] in the *restrained* market." *SigmaPharm, Inc. v. Mut. Pharm. Co.*, 772 F. Supp. 2d 660, 673 (E.D. Pa. 2011) (Rufe, J.), *aff'd*, 454 F. App'x 64, 68-69 (3d Cir. 2011). In that regard, generic doxycycline, which is "bioequivalent" to the name-brand drug Vibramycin (DPP Compl. ¶ 99-104 (also referring to Vibra-Tabs and Monodox); EPP Compl. ¶ 71), is described as treating a broad set of illnesses. It is not described as a substitute for Doxycycline DR, a treatment for "severe acne" bioequivalent to the "brand-name Doryx." AG Redacted Compl. ¶ 69. The MDL Complaints contain no allegations that could establish that these two generic drugs, with distinct "branded counterparts," and subject to different alleged price-setting conduct by different companies, are in the same relevant market. *See* DPP Compl. ¶¶ 52-54, EPP Compl. ¶¶ 58-60; *cf. SigmaPharm*, 454 F. App'x at 69 (parties compete in same market when their products or services are "reasonably interchangeable"). This deficiency is fatal to Plaintiffs' claim against Heritage, which only sold Doxycycline DR, as Plaintiffs lack antitrust standing as to Doxycycline DR.

Alternatively, at a minimum, the injunctive relief claim by the EPPs as to Heritage fails under FRCP 12(b)(6) for failure to allege current or threatened antitrust injury in the purchase of Doxycycline DR, the only product from which a claim as to Heritage could arise. "[T]o seek injunctive relief under § 16 [of the Clayton Act], a private plaintiff must allege *threatened* loss or damage," *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 113 (1986) (emphasis added), requiring "(1) threatened loss or injury cognizable in equity; (2) proximately resulting from the

alleged antitrust violation," *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 856 (3d Cir. 1996); *see* 15 U.S.C. § 26. Lacking injury from transactions concerning the product Heritage sold, and offering no nonconclusory allegations that there is any ongoing violation by Heritage to enjoin, the EPPs cannot meet those requirements as to Heritage. *See, e.g.*, *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, No. 12-cv-169, 2013 WL 5503308, at *6-7 (D.N.J. Oct. 2, 2013) (indirect purchasers lacked "real and immediate danger" warranting injunction where they had no "allegations to suggest ongoing violations").[5]

### III. THE MDL COMPLAINTS SHOULD BE DISMISSED UNDER FRCP 12(B)(2), BECAUSE THEY DO NOT SUFFICIENTLY ALLEGE PERSONAL JURISDICTION OVER HERITAGE, WHICH IS NEITHER "ESSENTIALLY AT HOME" IN THIS FORUM, NOR PURPORTED TO HAVE "SUIT-RELATED" CONTACTS CREATING THE NECESSARY "SUBSTANTIAL CONNECTION" WITH THIS FORUM.

#### A. Heritage Is Not "Essentially At Home" In Pennsylvania.

General personal jurisdiction is unavailable here because Heritage, a Delaware corporation with principal place of business in Eatontown, New Jersey (DPP Compl. ¶ 37; EPP Compl. ¶ 37), is not "essentially at home" in this forum state. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014).

#### B. Heritage's "Suit-Related" Acts Do Not Create A "Substantial Connection" With Pennsylvania.

Specific personal jurisdiction is also unavailable because neither MDL Complaint contains allegations about Heritage's *own* conduct that could rank as "suit-related" acts creating a

---

[5] "[L]ingering monetary injury, without any ongoing threat of recurrent violations [to the plaintiffs], is not sufficient to confer standing to seek an injunction." *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 209 (S.D.N.Y. 2012) (granting motion to dismiss plaintiffs' claim for injunctive relief under § 26 because had they failed to "demonstrate a significant threat of injury from an impending violation . . . or from a contemporary violation likely to continue or recur").

"substantial connection" with this forum state. *See Walden v. Fiore*, 134 S. Ct. 1115 (2014).[6] To make the *prima facie* showing of minimum contacts necessary to support specific personal jurisdiction, the Plaintiffs must allege that *each* defendant's "suit-related conduct" establishes a "substantial connection" between that defendant and the forum. *Walden*, 134 S. Ct. at 1121. That is, they must show that their claims arise from "activities" that Heritage "'purposefully directed' . . . at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King*, 471 U.S. at 472).[7]

The MDL Complaints allege no connection between Heritage's Pennsylvania contacts and the claims asserted that could support personal jurisdiction over Heritage based on those contacts. Indeed, they allege no contacts between Heritage *and Pennsylvania* at all. Nor is Heritage alleged to have transacted or communicated *in Pennsylvania* with other Defendants. Moreover, neither MDL Complaint alleges that the named plaintiffs' claims arose from intentional tortious out-of-forum conduct by Heritage expressly aimed at Pennsylvania under *Calder*.[8]

---

[6] Specific jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The Supreme Court previously had explained that when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), the defendant has sufficient contacts with the forum to support jurisdiction in personam over "a suit arising out of or related to the defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472-73 (1985). For example, *International Shoe Co. v. Washington*, 326 U.S. 310, 321 (1945), held that a state court could hear claims that a nonresident company had employed salesmen within the forum State but failed to make the unemployment-fund payments due *as a result of* those in-state activities.

[7] "[S]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test . . . . The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *O'Connor*, 496 F.3d at 323 (citation omitted); *cf. Walden*, 134 S. Ct. at 1124 (reasoning that there was specific jurisdiction in California over the defamation defendants in *Calder v. Jones*, 465 U.S. 783 (1984), because "the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens").

[8] As the Third Circuit has explained, *Calder* requires that (1) "[t]he defendant committed an intentional tort"; (2) "[t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) "[t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert*

While the Plaintiffs allege that *they* have ties with the forum, those ties cannot establish personal jurisdiction over Heritage, and are therefore of no moment. *See Walden*, 134 S. Ct. at 1122 ("contacts between the plaintiff (or third parties) and the forum State" are unacceptable to "satisfy the defendant-focused 'minimum contacts' inquiry"). It therefore is inconsequential that DPP Ahold USA Inc. allegedly has a principal place of business in Carlisle, Pennsylvania (DPP Compl. ¶ 30); that EPP Philadelphia Teacher's Fund is based in Pennsylvania (EPP Compl. ¶ 31); or that six of the other EPPs allegedly reimbursed purchases of generic doxycycline prescriptions in Pennsylvania (EPP Compl. ¶¶ 22, 23, 25, 27, 28, 29). None of those plaintiff-centered allegations purports to describe Heritage's conduct in Pennsylvania.

Likewise, any speculation here that there are putative class members in Pennsylvania who were supposedly injured does not establish personal jurisdiction over Heritage. Personal jurisdiction must be measured based on the allegations of the named plaintiffs regarding the defendant's contacts with the forum, which do not establish personal jurisdiction over Heritage.[9]

### C. The Alleged Conspiracy Is Inadequate To Support Personal Jurisdiction Over Heritage Based On The Alleged Conduct Of Other Parties.

While the MDL Complaints draw on the pleas of former executives and the AG Complaint to claim that there was a conspiracy between Heritage, Mylan, and Mayne regarding Doxycycline

---

*AG*, 155 F.3d 254, 265-66 (3d Cir. 1998) (footnote omitted). "[T]o make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266. The MDL Complaints do not allege those elements as to Heritage.

[9] The focus must be on the claims of the named plaintiffs, *see Beach v. Citigroup Alt. Invs. LLC*, No. 12 Civ. 7717, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) (citing *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n.6 (S.D.N.Y. 1980)), given that purported class action status "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong,'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)); *see supra*, note 1.

DR (DPP Compl. ¶¶ 193-99; EPP Compl. ¶¶ 97-100), the alleged conspiracy cannot be the basis for personal jurisdiction over Heritage in this forum.

Even if the conspiracy theory of personal jurisdiction found in Pennsylvania law were valid, Plaintiffs do not meet the requirements of that theory.  "For a non-forum co-conspirator [such as Heritage] to be subject to personal jurisdiction, Pennsylvania law requires that plaintiff must allege that *substantial acts in furtherance of the conspiracy occurred within the forum state* and that the foreign defendant was, or should have been, aware of them. . . . It is not enough that the non-forum co-conspirator is part of the conspiracy as plaintiff must plead the defendant's involvement with specificity."  *Sugartown Worldwide LLC v. Shanks*, No. 14-cv-5063, 2015 WL 1312572, at *4 (E.D. Pa. Mar. 24, 2015) (internal quotation marks and citations omitted) (emphasis added).  The MDL Complaints do not allege any "aware[ness]" by Heritage of in-forum conduct, let alone with the specificity Pennsylvania law has required.

In any event, the Due Process Clause requires that the personal jurisdiction assessment remain defendant-specific: "Each defendant's contacts with the forum State must be assessed individually."  *Keeton*, 465 U.S. at 781 n.13; *see Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to *each defendant*") (emphasis added).  The requirement of individual assessment accordingly forecloses resort to an expansive "conspiracy" theory of personal jurisdiction.

      **D.**    **Heritage Has Not Manifested Consent To Exercise Of Personal Jurisdiction Over Plaintiffs' Claims.**

Plaintiffs' reliance on the pleas by the former Heritage executives also does not show Heritage's consent to this Court's personal jurisdiction over these civil actions.  The former executives are parties only in the EPP cases (EPP Compl. ¶¶ 45-46), and, in any event, a "party's consent to jurisdiction in one case extends to that case alone.  It in no way opens that party up to

other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991); *see In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 100-01 (D.D.C. 2008). That principle applies with equal force when the prior case is a "related" criminal proceeding. *See United States v. 51 Pieces of Real Property, Roswell, New Mexico*, 17 F.3d 1306, 1313 (10th Cir. 1994) ("exercise of personal jurisdiction" over criminal defendant "did not automatically confer" jurisdiction as to government's civil forfeiture suit).

### E. The Clayton Act's Service Of Process Provision Does Not Warrant Exercise Of Personal Jurisdiction Over Heritage.

Plaintiffs should not be heard to argue that the Court's personal jurisdiction attaches via the Clayton Act's nationwide service of process provision, *i.e.*, based on "minimum contacts" with the entire United States. The federal antitrust claim fails under FRCP 12(b)(1) and 12(b)(6), as explained above—as well as for the reasons set forth in the Co-Defendants' briefs. That invalid claim thus cannot trigger the Clayton Act's service of process provision; and there is no warrant for construing the Clayton Act to allow "nationwide" jurisdiction solely to adjudicate the state-law damages claims of the EPPs. There accordingly is no need to reach the serious constitutional question whether *Daimler* requires rejecting the "nationwide contacts" approach here as inadequate under the Due Process Clause. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 337-38 (D. Del. 2007) (examining *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004), which involved foreign corporations, and concluding that "the Third Circuit has never applied a 'national contacts' test for establishing personal jurisdiction over a *domestic antitrust defendant*") (emphasis added), *aff'd on other grounds*, 602 F.3d 237 (3d Cir. 2010).

In any event, *Daimler* and *Walden* compel the rejection of the "nationwide contacts" approach as inadequate under the Due Process Clause, and to the extent the Clayton Act purports to provide otherwise, it cannot constitutionally be applied here to Heritage. Contrary to certain pre-*Daimler* cases in the lower courts, *Daimler* rejected the notion that due process can be reduced to a matter of sovereignty. *See* 134 S. Ct. at 753. Instead, the correct focus is on fundamental fairness to defendants. *See id.*, 134 S. Ct. at 761-62; *Burger King*, 471 U.S. at 472; *Walden*, 134 S. Ct. at 1125 n.9 (principal aim of "minimum contacts" inquiry is protection of "the liberty of the nonresident defendant"). Due process thus tolerates assertion of personal jurisdiction only when defendants have sufficient contacts with the particular forum state at issue.[10]

---

[10] The Supreme Court had previously left open the question whether "a federal court could exercise personal jurisdiction, consistent with the Due Process Clause of the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987); *see Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 n.* (1987) (opinion of O'Connor, J.). *Daimler* and *Walden* require answering no. *Cf. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 885 (2011) (plurality) (recognizing "significant" and "undesirable consequences" of "upset[ting] the federal balance" by, *e.g.*, subjecting Florida defendant to suit in Alaska).

## CONCLUSION

The Court should entirely dismiss the MDL Complaints as to Heritage for lack of subject-matter jurisdiction under FRCP 12(b)(1), or for lack of personal jurisdiction under FRCP 12(b)(2), or for failure to state a claim under FRCP 12(b)(6).

Dated: March 28, 2017

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ D. Jarrett Arp*
D. Jarrett Arp
Melanie L. Katsur
1050 Connecticut Ave., NW
Washington, DC  20036
Telephone:  (202) 887-3636
Facsimile:  (202) 530-9658
jarp@gibsondunn.com
mkatsur@gibsondunn.com
***Attorneys for Defendant***
***Heritage Pharmaceuticals Inc.***