**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC DIGOXIN AND DOXYCYCLINE ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br><br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>**ALL ACTIONS** | |

**DEFENDANT PAR PHARMACEUTICAL, INC.'S SUPPLEMENTAL
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
DIRECT PURCHASER  PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINT AND END-PAYER
PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION
COMPLAINT**

Par Pharmaceutical, Inc. ("Par") joins in the joint motions filed by all Defendants and the joint memoranda submitted therewith.  Par submits this short supplemental memorandum to highlight specific issues that warrant dismissal of the Direct Purchaser Plaintiffs' Consolidated Class Action Complaint and the End-Payer Plaintiffs' Corrected Consolidated Class Action Complaint (collectively "Complaints") as to Par.

## I.   PLAINTIFFS HAVE NOT PLED AN OVERARCHING CONSPIRACY AGAINST PAR INVOLVING BOTH DIGOXIN AND DOXYCYCLINE.

Plaintiffs' assertion that Par manufactured and/or sold both digoxin and doxycycline hyclate ("doxycycline") during the putative class period is misleading at best.  With respect to digoxin, Par did not actually manufacture the product; rather, it distributed digoxin for another company, Covis Pharma ("Covis").  DPP Cplt. ¶ 33; EPP Cplt. ¶ 42.  What is more, Par did not distribute digoxin at all when the alleged unlawful price increase occurred.  Par's distribution agreement with Covis was announced in January 2014—months after the October 2013 digoxin price increase alleged by Plaintiffs.  DPP Cplt. ¶ 33; EPP Cplt. ¶ 42.

As for doxycycline, Plaintiffs allege that a conspiracy to fix prices resulted in higher prices starting in the fall of 2012.  DPP Cplt. ¶ 114; EPP Cplt. ¶ 87.[1]  As Plaintiffs well know, Par did not sell doxycycline at this time; nor did it do so until years later (after the alleged Congressional inquiry and DOJ investigation of the generic industry were announced in 2014).  Instead, Qualitest Pharmaceuticals, Inc. ("Qualitest")—which at the time was unaffiliated with Par—sold doxycycline during this time period.  Par and Qualitest were not affiliated until September 2015 when Endo International plc (Qualitest's parent company) acquired Par and,

---

[1] Direct Purchaser and End-Payer Plaintiffs both identify October 1, 2012 as the beginning of their respective putative class periods.  DPP Cplt. ¶ 229; EPP Cplt. ¶ 206.

1

ultimately, transitioned Qualitest into a subsidiary of Par.[2]  So the company relevant to the

doxycycline allegations is Qualitest, and the Complaints are silent about Qualitest's participation

in any alleged conspiracy.  In fact, Qualitest is never mentioned in the Complaints at all.

Given these facts, any suggestion that Par would have had an incentive (or ability) to

conspire to fix prices or allocate markets for both digoxin and doxycycline is implausible.  Two

separate companies sold the products at the key alleged time periods:  Par distributed digoxin

(pursuant to an authorized generic distribution agreement with Covis) beginning in 2014, while

Qualitest manufactured and sold doxycycline until its parent company acquired Par in 2015.

Accordingly, the allegations against Par fail to support a supposed overarching conspiracy

involving these two separate drugs because Par did not manufacture and sell either drug during

the critical alleged conspiracy periods.

## II.  PLAINTIFFS' ALLEGATIONS REGARDING PAR'S MANUFACTURE AND SALE OF DIGOXIN AND DOXYCYCLINE ARE INSUFFICIENT TO PLEAD AN ACTIONABLE ANTITRUST CONSPIRACY.

Plaintiffs' allegations directed specifically against Par fail to set forth facts constituting

direct or circumstantial evidence of a conspiracy to fix prices for either digoxin or doxycycline.

Without such facts, Plaintiffs' Complaints must be dismissed.

---

[2] In lawsuits filed by certain of these same Plaintiffs against Par involving other drugs, Plaintiffs acknowledge that (1) Qualitest was a subsidiary of Endo, (2) Endo completed its acquisition of Par in September 2015, and (3) Qualitest's and Par's generic businesses were, in effect, combined by Endo after September 2015, when Qualitest became a subsidiary of Par Pharmaceuticals, Inc., the defendant in this case.  *See* Complaint at 9, César Castillo, Inc. v. Actavis, No. 17-cv-78 (S.D.N.Y. Jan. 5, 2017) ("In September [2015], Endo International completed an acquisition of Par at which time it created a combined U.S. generics segment that included Par and Qualitest . . . . On information and belief, Qualitest has since merged into Par."); Complaint at 10, Rochester Drug Co-Operative, Inc. v. Actavis, No. 2:16-cv-06672 (E.D. Pa. Dec. 28, 2016) (same); Complaint at 8, Plumbers & Pipefitters Local 178 Health & Welfare Trust Fund v. Actavis, No. 17-cv-0144 (E.D. Pa. Jan. 10, 2017) (same); Complaint at 10, Fraternal Order of Police v. Actavis., No. 2:17-cv-00535 (E.D. Pa. Feb. 6, 2017) (same); Complaint at 9, Philadelphia Federation of Teachers Health and Welfare Fund v. Actavis, No. 2:17-cv-00865 (E.D. Pa. Feb. 24, 2017) (same).

### A.  Digoxin

Plaintiffs allege that the first—and only—allegedly conspiratorial price increase on digoxin occurred in October 2013.  DPP Cplt. ¶¶ 81-82; EPP Cplt. ¶¶ 76, 81.  But they concede that Par did not manufacture digoxin at all, and only began selling digoxin as an authorized generic distributor for Covis months later in January 2014.  DPP Cplt. ¶¶ 33, 71; EPP ¶¶ 42.[3] Plaintiffs nowhere explain how Par participated in a digoxin conspiracy that purportedly began before Par even had rights to sell the product.  Par is not alleged to have "raised" its prices—at most, Plaintiffs allege that Par entered the market and priced its product in a manner consistent with already prevailing market prices.[4]  It is plainly in a company's unilateral self-interest to take account of existing market prices when entering a market.  *See In re Chocolate Confectionary Antit. Litig.*, 801 F.3d 383, 401 (3d Cir. 2015) (holding it not against Hershey's unilateral self-interest to follow Mars' price increase rather than maintaining lower prices to increase market share).  Accordingly, Par's alleged failure to price digoxin below prevailing market prices does not suffice to plead Par's participation in a price fixing conspiracy.

Direct Purchaser Plaintiffs further allege that "[d]espite the entry of new competitors Par and Mylan in 2014 and 2015, however, digoxin prices remained supracompetitive as a result of defendants' unlawful conduct."  DPP Cplt. ¶ 87; *see also* EPP Cplt. ¶ 84 (alleging prices did not

---

[3] Plaintiffs' putative class periods begin in October 2012, presumably because they allege that the first price increase for doxycycline occurred in late 2012.  DPP Cplt. ¶¶ 111, 114; EPP Cplt. ¶ 87.  This, of course, makes no sense for digoxin, the price of which did not allegedly increase until October 2013.

[4] Direct Purchaser Plaintiffs disingenuously suggest that Par increased prices when it entered the market in 2014.  DPP Cplt. ¶ 81.  Par did not and could not "raise prices"—as Plaintiffs acknowledge, it was not selling in the market prior to January 2014.  End-Payer Plaintiffs acknowledge that Par simply "followed" the market pricing when it entered in 2014.  EPP Cplt. ¶77.

fall after entry of Par and Mylan).  But the pricing data included in Plaintiffs' Complaints—even if one were to credit this data as representative of actual market prices charged by Par, which the Court should not for the reasons set forth in Defendants' Joint Memorandum—demonstrates the opposite.  At most, it shows that a single price increase occurred in October 2013, before Par entered the market in January 2014, and that prices declined after that.  DPP Cplt. ¶¶ 85; EPP Cplt. ¶¶78, 79.  In other words, contrary to Direct Purchaser Plaintiffs' assertion that "[p]rices did not fall *despite the new competitors*," DPP Cplt. ¶ 91 (emphasis in original), the very data on which they rely show that prices fell from over $1 per .125 mg tablet to below $0.80 a tablet.  *Id.* ¶ 85.  Even the faulty pricing data set forth in Plaintiffs' Complaints, which does not include any Par-specific pricing, does not set forth facts that support an inference of a digoxin conspiracy involving Par.

Plaintiffs' other allegations similarly provide no facts that support a digoxin conspiracy claim against Par.  For example, Direct Purchaser Plaintiffs cite to a May 2015 presentation by Endo regarding its acquisition of Par (a deal which did not close until months later) noting that "consolidation and maturation of competitors have stabilized the pricing environment" for generic pharmaceuticals.  DPP Cplt. ¶ 146.  This general observation by Endo about historical market dynamics does not constitute evidence of Par's participation in a conspiracy, and includes no reference to digoxin, doxycycline or any other specific drug.[5]  To the extent Plaintiffs cite statements by Lannett's CEO on investor calls, those statements reflect nothing more than one individual's interpretation of another company's general pricing strategy based on market observations—these statements do nothing to plead Par's participation in an antitrust conspiracy involving digoxin.

---

[5] The End-Payer Plaintiffs do not cite to any public statements by or on behalf of Par.

Plaintiffs also fail to identify any meetings, at trade associations or otherwise, where any Par executive met with an executive of another competitor to discuss digoxin.  Mere opportunities to conspire through membership in a trade association do not suffice.  *Chocolate Confectionary,* 801 F.3d at 409 (evidence that defendants' executives were in the same place at the same time insufficient to support a reasonable inference of concerted activity).  Plaintiffs do not identify by name a single Par executive who attended any trade show meeting, industry dinner or "Girls Night Out" where digoxin was discussed.[6]

Finally, Plaintiffs rely extensively on guilty pleas by Heritage executives and allegations made against Heritage, Mylan and Mayne in a complaint filed by certain State Attorneys' General.  None of those proceedings involve Par, nor any drug marketed by Par.  Par does not manufacture Doxy DR (neither did Qualitest), *see* DP Cplt. ¶ 98, and Heritage did not manufacture digoxin or doxycycline (only Doxy DR).

For these reasons, Plaintiffs have failed to allege facts sufficient to plead a digoxin price fixing claim against Par.

## B.  Doxycycline Hyclate

Plaintiffs' allegations as to Par regarding doxycycline are similarly inadequate.  As explained above, Qualitest—not Par—marketed doxycycline prior to the Endo-Par merger in 2015.  Plaintiffs allege no facts whatsoever about any doxycycline prices charged by Par (or Qualitest for that matter).  The only allegation specific to Par regarding doxycycline is the following:  "Par manufactures and sells generic versions of doxycycline."  DPP Cplt. ¶ 102; *see* EPP Cplt. ¶ 73 (alleging only that Par "currently manufacture[s] and/or distribute[s] generic

---

[6] End-Payer Plaintiffs allege that Par's Tony Pera was on the GPhA Board of Directors.  EPP Cplt. ¶ 105.  But they do not allege that he had any role in setting prices for digoxin, nor do they allege that he discussed prices for digoxin at such meetings.

doxycycline"). Plaintiffs literally make no other allegations specific to Par with respect to the doxycycline market, *see* DPP Cplt. ¶¶ 96-119; EPP Cplt. ¶¶ 70-75, or doxycycline prices. DPP Cplt. ¶¶ 96-119; EPP Cplt. ¶¶ 87-95.

As with digoxin, Plaintiffs allege no facts demonstrating that Par ever attended any trade show or other industry meetings where doxycycline prices were discussed, much less fixed. Indeed, all of the GPhA trade meetings identified by Plaintiffs as having been attended by Par took place before Par was acquired by Endo and became affiliated with Qualitest in September 2015. DPP Cplt. ¶ 154; EPP Cplt. ¶ 106. Plaintiffs do not allege that anyone from Qualitest attended any GPhA or other trade association meetings, much less that any Qualitest employees conspired to fix prices of doxycycline at such meetings. There are no facts alleged to support any conspiracy (or even opportunity to conspire) with regards to Qualitest during the key time period when the doxycycline conspiracy was allegedly formed and/or carried out.

Finally, as noted previously, none of the allegations regarding government investigations or proceedings against Heritage (or its former executives), Mylan or Mayne have any relevance to whether Par conspired to fix prices for doxycycline. Par and Qualitest are nowhere referenced in any government complaints, indictments or guilty pleas. And Par and Qualitest never manufactured Doxy DR—the product which was the subject of those proceedings.

For the reasons set forth above, as well as those articulated in Defendants' joint memorandum, Plaintiffs' Complaints should be dismissed with prejudice as to Par.

DATED:  March 28, 2017                     WILLIAMS & CONNOLLY LLP

By: */s/ John E. Schmidtlein*
John E. Schmidtlein (admitted *pro hac vice*)
Sarah F. Teich (admitted *pro hac vice*)
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jschmidtlein@wc.com
steich@wc.com

*Attorneys for Defendant Par Pharmaceutical, Inc.*