**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC DIGOXIN AND DOXYCYCLINE ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br>ALL END-PAYER PLAINTIFF ACTIONS | |

---

**CERTAIN DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE END-PAYER PLAINTIFFS'
CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**

---

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... i

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

ARGUMENT ................................................................................................................. 3

I.    EPPS' SHERMAN ACT AND STATE LAW CLAIMS MUST BE DISMISSED
      BECAUSE THEY FAIL TO MEET THE TWOMBLY PLEADING
      STANDARD ........................................................................................................ 4

      A.    EPPs Do Not Allege Direct Evidence of An Agreement to Fix Prices or
            Allocate Customers ................................................................................. 5

      B.    EPPs Do Not Sufficiently Plead Circumstantial Evidence of a Conspiracy .......... 6

            1.    EPPs Cannot Plead Parallel Conduct Through Allegations
                  Regarding the Average Market Price ...................................... 6

            2.    EPPs Do Not Plead Sufficient Plus Factors to Create an Inference of
                  Conspiracy. ............................................................................. 7

II.   EPPS LACK ARTICLE III STANDING TO SUE UNDER THE LAWS OF
      STATES WHERE NO NAMED PLAINTIFF WAS INJURED ....................................... 9

III.  TPPS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY CANNOT
      PLEAD ANTITRUST STANDING OR PROXIMATE CAUSATION ......................... 12

      A.    TPPs Have Not Alleged, and Cannot Establish, Antitrust Standing under
            Associated General Contractors ............................................................... 13

      B.    TPPs Fail to Allege Proximate Causation ................................................. 17

IV.   EPPS' STATE ANTITRUST CLAIMS FAIL FOR STATE-SPECIFIC
      REASONS ........................................................................................................ 19

      A.    Illinois Bars Indirect Purchaser Class Actions .......................................... 19

      B.    No EPP is a Citizen of Utah .................................................................. 20

      C.    EPPs Failed to Give Notice to the State Attorney General as Required by
            Arizona's and Hawaii's Antitrust Statutes ................................................ 20

      D.    EPPs Fail To Allege a Substantial Effect on Intrastate Commerce, as
            Required To State an Antitrust Claim in Several States ................................ 21

      E.    EPPs' Alabama Antitrust Claim is Time Barred ......................................... 25

# TABLE OF CONTENTS
(continued)

**Page**

V.    EPPS' CONSUMER PROTECTION CLAIMS FAIL ........................................ 26

    A.    EPPs Cannot Use Consumer Protection Laws To Recover for Antitrust Claims Barred under States' Substantive Antitrust Laws .................................. 27

    B.    South Carolina's and Montana's Consumer Protection Statutes Bar Class Actions .................................................................................................................. 28

    C.    Consumer Protection Statutes in New Mexico and Rhode Island Are Inapplicable to Antitrust Conduct ..................................................................... 29

    D.    EPPs Fail To Allege Deceptive Conduct as Required Under New York Law ...................................................................................................................... 30

    E.    EPPs Fail to Allege Unconscionable or Deceptive Conduct As Required in Florida and New Mexico ....................................................................................... 31

    F.    North Carolina Law Requires EPPs to Allege Reliance on a Misrepresentation ............................................................................................... 33

    G.    EPPs' Fail to Sufficiently Allege In-State Injury as Required Under Several States' Consumer Protection Laws ........................................................ 34

    H.    Massachusetts Requires Statutory Notice as a Prerequisite to Filing Suit........... 36

    I.    EPPs' Vermont Consumer Protection Claim Fails Because Defendants Do Not Sell Directly to Consumers .............................................................................. 36

    J.    TPPs' Consumer Fraud Claims Fail Because They Are Not Consumers ........... 36

    K.    Businesses Do Not Have Standing to Bring a Claim under Massachusetts's Consumer Protection Law ...................................................................................... 38

    L.    EPPs' Consumer Protection Claim Under Montana Law is Time Barred ........... 39

VI.    EPPS' UNJUST ENRICHMENT CLAIMS FAIL AS A MATTER OF LAW ............. 39

    A.    EPPs Fail to Plead an Unjust Enrichment Claim Under the Law of Any State ...................................................................................................................... 40

    B.    EPPs Cannot Use Unjust Enrichment as an "End Run" Around Illinois Brick ...................................................................................................................... 40

    C.    A Number of States Allow Unjust Enrichment Claims Only Where Plaintiffs Conferred a Direct Benefit on Defendants ............................................ 41

    D.    Unjust Enrichment is Not an Independent Cause of Action in Some States ....... 42

    E.    Tennessee Requires Plaintiffs To Plead Exhaustion of Remedies...................... 43

    F.    Several States Require Plaintiffs To Plead that They Lack an Adequate Legal Remedy ....................................................................................................... 43

## TABLE OF CONTENTS
(continued)

**Page**

G.    EPPs' Unjust Enrichment Claims Under Illinois and South Carolina Law
Fail Because EPPs Have Not Alleged a Special Duty Owed by Defendants ...... 45

CONCLUSION ........................................................................................................... 46

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*,
  369 F.3d 732 (3d Cir. 2004)......................................................................12, 13

*Abbott Labs v. Durrett*,
  746 So. 2d 316 (Ala. 1999)..................................................................22

*In re Aftermarket Filters Antitrust Litig.*,
  MDL No. 1957, 2009 U.S. Dist. LEXIS 104114 (N.D. Ill. Nov. 5, 2009).......................30, 40

*In re Aftermarket Filters Antitrust Litig.*,
  MDL No. 1957, 2010 U.S. Dist. LEXIS 32652 (N.D. Ill. Apr. 1, 2010) ..............................41

*In re Aggrenox Antitrust Litig.*,
  94 F. Supp. 3d 224 (D. Conn. 2015)..............................................................20, 26

*In re Aggrenox Antitrust Litig.*,
  No. 3:14-md-2516, 2016 U.S. Dist. LEXIS 104647 (D. Conn. Aug. 9, 2016)......26, 28, 37, 39

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*,
  228 F.3d 429 (3d Cir. 2000)....................................................................14

*Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc.*,
  746 So. 2d 966 (Ala. 1999)......................................................................22

*In re Asacol Antitrust Litig.*,
  No. 15-cv-12730-DJC, 2016 U.S. Dist. LEXIS 94605 (D. Mass. July 20,
  2016) ...............................................................................21, 27, 38, 39

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................1, 9

*Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983).................................................................... *passim*

*In re Automotive Refinishing Paint Antitrust Litig.*,
  515 F. Supp. 2d 544 (E.D. Pa. 2007) ...........................................................30, 31

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999)......................................................................6

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*,
  118 F.3d 178 (3d Cir. 1997).................................................................12, 13, 14

i

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)....................................................................................1, 4, 7, 9

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
 3 N.Y.3d 200 (2004) ..............................................................................................30

*Bumpers v. Cmty. Bank of N. Va.*,
 747 S.E.2d 220 (N.C. 2013)....................................................................................33

*Burtch v. Milberg Factors, Inc.*,
 662 F.3d 212 (3d Cir. 2011)......................................................................................7

*Cannon v. Wells Fargo Bank, N.A.*,
 926 F. Supp. 2d 152 (D.D.C. 2013) ........................................................................37

*Cargill, Inc. v. Monfort of Colo., Inc.*,
 479 U.S. 104 (1986)................................................................................................12

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*,
 No. 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620 (E.D. Tenn. June 24,
 2015) ............................................................................................................ *passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. 07-5944 SC, 2010 U.S. Dist. LEXIS 145617 (N.D. Cal. Feb. 5, 2010) ...........30

*In re Checking Account Overdraft Litig.*,
 694 F. Supp. 2d 1302 (S.D. Fla. 2010) ...................................................................11

*Clinton Hospital Assoc. v. Corson Group, Inc.*,
 907 F.2d 1260 (1st Cir. 1990)..................................................................................34

*Coastal Physician Servs. of Broward Cty., Inc. v. Ortiz*,
 764 So. 2d 7 (Fla. Dist. Ct. App. 1999) ..................................................................34

*Cole v. Chevron USA, Inc.*,
 554 F. Supp. 2d 655 (S.D. Miss. 2007)....................................................................42

*Community Guardian Bank v. Hamlin*,
 898 P.2d 1005 (Ariz. Ct. App. 1995)......................................................................44

*Conergy AG v. MEMC Elec. Materials, Inc.*,
 651 F. Supp. 2d 51 (S.D.N.Y. 2009)........................................................................23

*Credit Bureau Servs. v. Experian Info. Solutions, Inc.*,
 285 Neb. 526 (Neb. 2013)........................................................................................23

*Crouch v. Crompton Corp.*,
 2004 NCBC LEXIS 6 (N.C. Super. Ct. Oct. 26, 2004) ...........................................16

*D.R. Ward. Const. Co. v. Rohm & Haas Co.*,
    470 F. Supp. 2d 485 (E.D. Pa. 2006) ....................................................................43

*In re Dairy Farmers of Am. Inc. Cheese Antitrust Litig.*,
    No. 9-cv-3690, 2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015)...................14, 17, 27

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 9-cv-3690, 2013 U.S. Dist. LEXIS 119962 (N.D. Ill. Aug. 23, 2013) ......................11, 18

*In re Digital Music Antitrust Litig.*,
    592 F. Supp. 2d 435 (S.D.N.Y. 2008).......................................................................9

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011).................................................................19, 30

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................................11

*Dooner v. Yuen*,
    No. 16-1939, 2016 U.S. Dist. LEXIS 143455 (D. Minn. Oct. 17, 2016) ................................45

*In re Ductile Iron Pipe Fittings (DIPE) Indirect Purchaser Antitrust Litig.*,
    No. 12-169, 2013 U.S. Dist. LEXIS 142466 (D.N.J. Oct. 2, 2013) .......................................11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...............................................................14, 25, 30

*E. Elec. Corp. v. FERD Canst., Inc.*,
    No. 05-cv-303, 2005 U.S. Dist. LEXIS 33256 (D.N.H. Dec. 15, 2005) ...............................44

*Emergency One, Inc. v. Waterous Co., Inc.*,
    23 F. Supp. 2d 959 (E.D. Wis. 1998).......................................................................24

*ERI Max Entm't. Inc. v. Streisand*,
    690 A.2d 1351 (R.I. 1997) .................................................................................29

*Fenerjian v. Nongshim Co.*,
    72 F. Supp. 3d 1058 (N.D. Cal. 2014) .....................................................................11

*In re Fla. Cement & Concrete Antitrust Litig.*,
    746 F. Supp. 2d 1291 (S.D. Fla. 2010) ....................................................................18

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ....................................................................29

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ..............................................................19, 24, 36, 42

*Formula One Licensing, B.V. v. Purple Interactive Ltd.*,
  2001 U.S. Dist. LEXIS 2968 (N.D. Cal. Feb. 6, 2001) .......................................26

*Freeman Indus., LLC v. Eastman Chem. Co.*,
  172 S.W.3d 512 (Tenn. 2005)...................................................................24, 43

*Frullo v. Landenberger*,
  814 N.E.2d 1105 (Mass. App. Ct. 2004) .............................................38

*Furlough v. Spherion Atl. Workforce, LLC*,
  397 S.W.3d 114 (Tenn. 2013)..................................................................45

*In re G-Fees Antitrust Litig.*,
  584 F. Supp. 2d 26 (D.D.C. 2008) ........................................................11

*Gen. Insulation Co. v. Eckman Canst.*,
  992 A.2d 613 (N.H. 2010) ....................................................................42

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y.2d 314 (2002) ..........................................................................35

*In re Graphics Processing Units Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........................................ *passim*

*Griffin v. Dugger*,
  823 F.2d 1476 (11th Cir. 1987) ...........................................................10

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*,
  No. 03-cv-5889, 2005 U.S. Dist. LEXIS 1924 (S.D.N.Y. Feb. 7, 2005)...............23

*Haw. Med. Ass'n v. Haw. Med Serv. Ass'n.*,
  148 P.3d 1179 (Haw. 2006) .................................................................20

*Hill v. Roll Int'l Corp.*,
  128 Cal. Rptr. 3d 109 (Cal. Ct. App. 2011) ...........................................42

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977).......................................................................... *passim*

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
  663 F. Supp. 494 (M.D.N.C. 1987) ......................................................35

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
  No. 13-2664, 2014 U.S. Dist. LEXIS 31188 (D. Minn. Mar. 11, 2014) ...............11

*Jones v. ConAgra Foods, Inc.*,
  No. C 12-01633, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014) .........33

*Kelley v. Coll. of St. Benedict*,
  901 F. Supp. 2d 1123 (D. Minn. 2012) .................................................................44

*Krug v. Am. Family Mut. Ins. Co.*,
  No. 16-c-4531, 2016 U.S. Dist. LEXIS 64961 (N.D. Ill. May 17, 2016) ...............43

*In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*,
  172 F. Supp. 3d 724 (D.N.J. 2016) .......................................................................30

*Lawrence v. UMLIC-Five Corp.*,
  2007 NCBC LEXIS 20 (N.C. Super. June 18, 2007) ...........................................24

*In re Lidoderm Antitrust Litig.*,
  103 F. Supp. 3d 1155 (N.D. Cal. 2015) ...........................................................37, 40

*Loeb Indus., Inc. v. Sumitomo Corp.*,
  306 F.3d 469 (7th Cir. 2002) ...........................................................................16, 17

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004) ...................................................................................6

*Mack v. Bristol-Byers Squibb Co.*,
  673 So. 2d 100 (Fla. Dist. Ct. App. 1996) ...........................................................27

*In re Magnesium Oxide Antitrust Litig.*,
  No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373 (D.N.J. Oct. 20, 2011) .......22

*Martis v. Grinnell Mut. Reinsurance Co.*,
  905 N.E.2d 920 (Ill. App. Ct. 2009) .................................................................43, 45

*Melchior v. New Line Prods., Inc.*,
  131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003) ...........................................................42

*In re Microsoft Corp. Antitrust Litig.*,
  401 F. Supp. 2d 461 (D. Md. 2005) .......................................................................45

*Minn-Chem, Inc. v. Agrium Inc.*
  657 F.3d 650 (7th Cir. 2011) .................................................................................32

*Monsanto Co. v. Spray-Rite Svc. Corp.*,
  465 U.S. 752 (1984) ................................................................................................5

*Montgomery v. New Piper Aircraft, Inc.*,
  209 F.R.D. 221 (S.D. Fla. 2002) ...........................................................................34

*In re Mushroom Direct Purchaser Litig.*,
  No. 06-cv-0620, 2008 U.S. Dist. LEXIS 16595 (E.D. Pa. Mar. 3, 2008) ...........9, 43

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ...................................................................7

*N. Cheyenne Tribe v. Roman Catholic Church ex rel. Dioceses of Great
   Falls/Billings*,
   296 P.3d 450 (Mont. 2013) .....................................................................44

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   350 F. Supp. 2d 160 (D. Me. 2004) ....................................................27, 41

*New York v. Daicel Chem. Indus., Ltd.*,
   42 A.D.3d 301 (N.Y. App. Div. 2007) .....................................................31

*New York v. Daicel Chem. Indus., Ltd.*,
   No. 0403878, 2005 N.Y. Misc. LEXIS 8435 (N.Y. Sup. Ct. Aug. 9, 2005) ..........................18

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   968 F. Supp. 2d 367 (D. Mass. 2013) ................................................19, 20

*In re Niaspan Antitrust Litigation*,
   42 F. Supp. 3d 735 (E.D. Pa. 2014) ...........................................11, 19, 20, 42

*Norman's on the Waterfront, Inc. v. Wheatley*,
   317 F. Supp 247 (D.V.I. 1970) ...................................................................4

*Olstad v. Microsoft Corp.*
   284 Wis. 2d 224 (Wis. 2005) ...................................................................24

*In re Opana ER Antitrust Litig.*,
   162 F. Supp. 3d 704 (N.D. Ill. 2015) ....................................................20, 40

*In re Opana ER Antitrust Litig.*,
   No. 14 C 10150, 2016 U.S. Dist. LEXIS 105915 (N.D. Ill. Aug. 11, 2016) ..........................41

*In re Opana ER Antitrust Litig.*,
   No. 14 C 10150, 2016 U.S. Dist. LEXIS 16700 (N.D. Ill. Feb. 10, 2016) ............................19

*In re OSB Antitrust Litig.*,
   No. 06-826, 2007 U.S. Dist. LEXIS 56584 (E.D. Pa. Aug. 3, 2007) .......................................9

*Osterman v. Sears, Roebuck & Co.*,
   80 P.3d 435 (Mont. 2003) .......................................................................39

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011) ...........................................28, 30, 32

*Paltre v. Gen. Motors Corp.*,
   26 A.D.3d 481 (N.Y. App. Div. 2006) .....................................................31

*Parsons Infrastructure & Tech. Grp., Inc. v. Gilbane Bldg. Co.*,
No. 05-cv-01-PB, 2005 U.S. Dist. LEXIS 27030 (D.N.H. Nov. 7, 2005)..............................44

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc.*,
998 F.2d 1224 (3d Cir. 1993)..................................................................................8

*Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv.*,
67 N.E.3d 556 (Ill. App. Ct. 2016) ...................................................................45

*In re Photochromic Lens Antitrust Litig.*,
No. 8:10-CV-1158-T-27EAJ, 2011 WL 13141933 (M.D. Fla. Oct. 26, 2011) ......................25

*Picker Int'l, Inc. v. Leavitt*,
865 F. Supp. 951 (D. Mass. 1994)..................................................................34

*Pitts v. Jackson Nat 'l Life Ins. Co.*,
574 S.E. 2d 503 (S.C. Ct. App. 2002)...................................................................45

*In re Potash Antitrust Litig.*,
667 F. Supp. 2d 907 (N.D. Ill. 2009) ..............................................11, 14, 32, 42

*In re Refrigerant Compressors Antitrust Litig.*,
No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 98827 (E.D. Mich. July 17, 2012)...................11

*In re Refrigerant Compressors Antitrust Litig.*,
No. 2:09-md-02042, 2013 U.S. Dist. LEXIS 50737 (E.D. Mich. Apr. 9, 2013)...14, 15, 32, 35

*Regence Blueshield v. Philip Morris, Inc.*,
40 F. Supp. 2d 1179 (W.D. Wash. 1999).............................................................19

*Resco Prod., Inc. v. Bosai Minerals Grp. Co.*,
158 F. Supp. 3d 406 (W.D. Pa. 2016)...................................................................7

*Rick-Mik Enters. Inc. v. Equilon Enters., LLC*,
532 F.3d 963 (9th Cir. 2008) ...............................................................................4

*Rindal v.Sohler*,
658 N.W.2d 769 (S.D. 2003) ...............................................................................44

*Samiento v. World Yacht Inc.*,
883 N.E.2d 990 (N.Y. 2008)................................................................................45

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
263 F.R.D. 205 (E.D. Pa. 2009)...................................................................35, 42

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
737 F. Supp. 2d 380 (E.D. Pa. 2010) .........................................................22, 36, 38

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
No. 04-5898, 2010 U.S. Dist. LEXIS 105646 (E.D. Pa. Sept. 30, 2010) ..................................4

*Sherwood v. Microsoft Corp.*,
No. M2000-01850-COA-R9-CV, 2003 Tenn. App. LEXIS 539 (Tenn. Ct.
App. July 31, 2003).................................................................................................................24

*Simon v. E. Ky. Welfare Rights Org.*,
426 U.S. 26 (1976)..................................................................................................................10

*Smith v. Ford Motor Co.*,
462 F. App'x 660 (9th Cir. 2011) ...........................................................................................42

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-02503, 2015 U.S. Dist. LEXIS 125999 (D. Mass. Aug. 14, 2015)...........19, 36, 41

*Soo Line R.R. Co. v. Overton*,
992 F.2d 640 (7th Cir. 1993) ..................................................................................................11

*Southard v. Visa U.S.A. Inc.*,
734 N.W.2d 192 (Iowa 2007) ..................................................................................................18

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*,
493 N.W.2d 137 (Minn. 1992).................................................................................................45

*State v. Ariz. Pension Planning*,
739 P.2d 1373 (Ariz. 1987)......................................................................................................45

*In re Static Random Access Memory Antitrust Litig.*,
No. 07-md-01819 CW, 2010 U.S. Dist. LEXIS 131002 (N.D. Cal. Dec. 8,
2010) .......................................................................................................................................28

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*,
171 F.3d 912 (3d Cir. 1997)........................................................................................15, 17, 18

*Stein v. Marquis Yachts, LLC*,
No. 14-24756-CIV, 2015 U.S. Dist. LEXIS 35088 (S.D. Fla. Mar. 20, 2015) ......................34

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litigation*,
64 F. Supp. 3d 665 (E.D. Pa. 2014) .............................................................................. *passim*

*SunSunoptic Techs., LLC v. Integra Luxtec, Inc.*,
No. 3:08-cv-979, 2009 U.S. Dist. LEXIS 23836 (M.D. Fla. Mar. 17, 2009) .........................32

*Superior Offshore Int'l., Inc. v. Bristow Group Inc.*,
738 F. Supp. 2d 505 (E.D. Pa. 2010) ........................................................................................8

*Supreme Auto Transp. LLC v. Mittal*,
    No. 08-cv-5468, 2017 U.S. Dist. LEXIS 30762 (N.D. Ill. Mar. 3, 2017) .................13, 17, 18

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) .....................................................................................29

*Taylor v. United Mgmt.*,
    51 F. Supp. 2d 1212 (D.N.M. 1999) .......................................................................................31

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
    150 F. Supp. 3d 593 (D.S.C. 2015)..........................................................................................28

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) .................................................................11, 23, 24

*In re TFT-LCD Antitrust Litig.*,
    No. 07-cv-1827, 2009 U.S. Dist. LEXIS 17792 (N.D. Cal. Mar. 3, 2009) ...........................28

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) .............................................................................12, 41

*Thompson v. Bank of Am.*,
    No. 7:09-CV-89-H, 2011 U.S. Dist. LEXIS 109660 (E.D.N.C. Feb. 24, 2011) ...................17

*Trustmark Ins. Co. v. Bank One, Ariz, NA*,
    48 P.3d 485 (Ariz. Ct. App. 2002)..........................................................................................45

*United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) .............................................................................19, 38, 39

*VCS, Inc. v. Utah Community Bank*,
    293 P.3d 290 (Utah 2012)........................................................................................................45

*In re Wellbutrin XL Antitrust Litig.*,
    756 F. Supp. 2d 670 (E.D. Pa. 2010) ......................................................................................19

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009).......................................................................................9, 10, 11

*In re Wellpoint, Inc., Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) ...............................................................................17, 37

*WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*,
    No. 8:07-cv-2093, 2008 U.S. Dist. LEXIS 61428 (M.D. Fla. Aug. 4, 2008)..........................32

**Statutes**

Ala. Code § 6-2-38 .................................................................................................................25

Ala. Code § 6-5-60 .................................................................................................................23

Ariz. Rev. Stat. § 44-1415 .....................................................................................................20

D.C. Code § 28-3901 ..............................................................................................................37

Haw. Rev. Stat. § 480 .......................................................................................................22, 37

Ill. Comp. Stat. § 10/7(2) .......................................................................................................19

Kan. Stats. § 50-101 ...............................................................................................................22

Mass. Gen. Laws ch. 93A  ................................................................................................36, 39

10 Me. Res. Stats. § 1101 .......................................................................................................23

Minn. Stat. § 325D.54 ............................................................................................................23

Mo. Rev. Stat. § 407.025 ........................................................................................................37

Mont. Code Ann.§§ 27-2-102 .................................................................................................39

Mont. Code Ann. § 27-2-211 ..................................................................................................39

Mont. Code Ann. § 30-14-102 ................................................................................................38

Mont. Code Ann. § 30-14-133 ................................................................................................30

N.M. Rev. Stat. § 57-12-2 ..................................................................................................29, 33

N.Y. Gen. Bus. Law § 340 ......................................................................................................23

Neb. Rev. Stat. § 59-801 .........................................................................................................23

Nev. Rev. Stat. Ann. § 598A ...................................................................................................23

R.I. Gen. Laws 6-13.1 ........................................................................................................29, 37

S.C. Code Ann. § 39-5-140 .....................................................................................................28

Vt. Stat. Ann. tit. 9 § 2451 ......................................................................................................36

## INTRODUCTION

End-Payer Plaintiffs ("EPPs") are individual consumers and third party payors who claim to have purchased or reimbursed members for purchases of doxycycline and/or digoxin. EPPs bring federal and state law claims based on a conspiracy theory that their complaint does not actually support with any facts. Just like the flawed complaint filed by the Direct Purchaser Plaintiffs ("DPPs"), which EPPs have chosen to largely mirror, EPPs' Complaint does not meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and its progeny. *See infra* Section I. The EPPs simply do not allege a "plausible" conspiracy to fix the prices of doxycycline or digoxin, and their Complaint must be dismissed for that reason alone.

But even independent of *Twombly*, EPPs' Complaint suffers from additional deficiencies that require many of their claims to be dismissed as a matter of law. First, EPPs lack standing under Article III of the U.S. Constitution to assert many of their claims because they do not have a named class representative who resides in, or who reimbursed members who purchased the drug at issue in, all of the states for which they purport to represent classes. In those states where there is no class representative, EPPs do not have standing to sue and those claims must be dismissed. *See infra* Section II.

Second, many EPPs lack antitrust standing because they are third party payors ("TPPs"). TPPs cannot bring federal and state antitrust claims because their alleged injuries are too remote to establish antitrust standing and more efficient plaintiffs are available. *See infra* Section III.

Third, many of EPPs' claims fail because they do not state a claim under state law. In some instances, EPPs assert state law claims in states that do not permit indirect purchaser lawsuits. In other instances, EPPs fail to allege the elements required under the states' antitrust or consumer protection statutes. *See infra* Sections IV and V.

Finally, unable to manufacture a viable claim for monetary recovery, EPPs resort to a general, nationwide claim for alleged unjust enrichment, but this claim also fails because EPPs do not sufficiently plead any law underpinning their claims. *See infra* Section VI.

None of EPPs' many theories constitute a cognizable claim under any federal or state law. Other courts have routinely rejected claims similar to those at issue here, and this Court should do the same.

## FACTUAL BACKGROUND

### A.     The Parties.

Defendants Actavis Holdco U.S., Inc. ("Actavis"), Lannett Co., Inc. ("Lannett"), Impax Laboratories, Inc. ("Impax"), Mayne Pharma Inc. ("Mayne"), Mylan Pharmaceuticals, Inc. ("Mylan"), Par Pharmaceutical, Inc. ("Par"), Sun Pharmaceutical Industries, Inc. ("Sun"), and West-Ward Pharmaceuticals Corp. ("West-Ward") (collectively, "Defendants")[1] are pharmaceutical companies. According to EPPs' Corrected Consolidated Class Action Complaint (Dkt. 175) ("Complaint" or "EPP Complaint"), Plaintiffs are eleven employee welfare benefits funds (Compl. ¶¶ 22-32) and three individual consumers (*id*. at ¶¶ 33-35) who claim to have purchased, paid, and/or reimbursed their members for purchases of digoxin and/or doxycycline during the alleged class period.

### B.     Doxycycline and Digoxin.

The Complaint defines doxycycline as generic doxycycline hyclate, including the delayed release ("DR") version of doxycycline hyclate in both tablet and capsule form. Compl. ¶1 n.1. Doxycycline is a broad spectrum antibiotic that is used to treat a number of conditions including, bacterial pneumonia, acne, chlamydia, early Lyme disease, cholera, and syphilis. *Id*. at ¶ 6.

---

[1] Heritage Pharmaceuticals, Inc. ("Heritage"), Jeffrey Glazer (Heritage's former Chief Executive Officer), and Jason Malek (Heritage's former President) are also named as Defendants in the Complaint. Compl. ¶ 8.

Digoxin is taken orally in the form of a tablet (*id*. at ¶1 n.1) and is used to treat mild to moderate heart failure in adults. *Id*. at ¶ 5.

As alleged in the Complaint, Defendants Mylan, Par, Sun, and West-Ward sold some form of both doxycycline (hyclate or DR) and digoxin during the alleged class period. *Id*. at ¶¶ 41-44. Actavis, Heritage, and Mayne sold only doxycycline during the alleged class period. *Id*. at ¶¶ 36, 40. And Defendants Impax and Lannett sold only digoxin during the alleged class period. *Id*. at ¶¶ 38-39.

> **C.    EPPs' Claims.**

EPPs purport to represent a class of persons who "purchased, paid and/or provided reimbursement for some or all of the purchase price for Defendants' generic digoxin and/or generic doxycycline hyclate products, other than for resale, from October 1, 2012 through the present." *Id*. at ¶¶ 3, 206. EPPs allege that certain Defendants increased digoxin prices beginning in the fall of 2013 (*id*. at ¶¶ 79-80) and that certain Defendants increased the price for doxycycline beginning "in the fall of 2012." *Id*. at ¶ 87.

EPPs do not allege any direct evidence suggesting that these purported price increases were the result of an actual agreement among Defendants. Instead, EPPs allege, in pure conclusory fashion, that the price increases were the result of "unlawful agreements" among Defendants. *Id*. at ¶ 200. EPPs assert violations of: Sections 1 and 3 of the Sherman Act (First Count); state antitrust statutes (Second Count); state consumer protection statutes (Third Count); and unspecific laws concerning "Unjust Enrichment" (Fourth Count).

## ARGUMENT

EPPs assert 26 state antitrust claims and 14 state consumer fraud claims. EPPs also seek injunctive relief for Defendants' alleged violation of Section 1 of the Sherman Act, 15 U.S.C. §

1.[2] The factual underpinning for the Sherman Act claim and each of the various state law claims is the same: an alleged conspiracy to fix the prices of certain doxycycline and digoxin products. For the same reasons set forth in Certain Defendants' Memorandum of Law in Support of Joint Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Class Action Complaint ("DPP MTD"), EPPs (like the DPPs) have failed to adequately allege a conspiracy that violates the Sherman Act and their claims should be dismissed. *See Rick-Mik Enters. Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 976 n.5 (9th Cir. 2008) ("[S]tate law antitrust claims are derivative of the federal law claims. Because the federal claims fail, the state law claims fail."); *see also Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, No. 04-5898, 2010 U.S. Dist. LEXIS 105646, at *64-65 (E.D. Pa. Sept. 30, 2010) ("[T]he premise of plaintiffs' theory . . . rests upon the presumption of impact on the direct purchasers.") (quoting *Am. Seed Co. v. Monsanto Co.*, 238 F.R.D. 394, 402 (D. Del. 2006), *aff'd*, 271 F. App'x 138 (3d Cir. 2008)).

In addition, even if the DPPs had a claim, EPPs' state law antitrust, consumer protection, and unjust enrichment claims would still fail for the additional reasons described below. A summary of these independent bases for dismissal is provided in Appendix A.

## I.    EPPS' SHERMAN ACT AND STATE LAW CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO MEET THE *TWOMBLY* PLEADING STANDARD.

In their First Claim for Relief, EPPs assert a claim under Section 1 of the Sherman Act seeking solely injunctive relief. To state a claim under Section 1 of the Sherman Act, a plaintiff must allege facts supporting a plausible inference that defendants conspired to unreasonably restrain trade. *See Twombly*, 550 U.S. at 556-57. To plead the existence of such an unlawful

---

[2] Plaintiffs also assert a claim pursuant to 15 U.S.C. § 3. Section 3 extends Section 1's antitrust prohibition to U.S. territories and the District of Columbia but does not otherwise impact the antitrust analysis in this memorandum. *See Norman's on the Waterfront, Inc. v. Wheatley*, 317 F. Supp. 247, 250 (D.V.I. 1970). For this reason, Defendants herein refer to all of Plaintiffs' Sherman Act claims as Section 1 claims.

agreement, a plaintiff must allege either (1) "direct evidence" of an unlawful agreement, or (2) sufficient parallel conduct and "circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme." *Monsanto Co. v. Spray-Rite Svc. Corp.*, 465 U.S. 752, 765 (1984). EPPs do neither.

> **A.      EPPs Do Not Allege Direct Evidence of An Agreement to Fix Prices or Allocate Customers.**

EPPs' Complaint relies on the same basic allegations of conspiracy as the DPPs' Consolidated Amended Class Action Complaint (Dkt. 125): (1) increases in the "average" prices for digoxin and doxycycline; (2) market characteristics; (3) participation in trade associations and customer meetings; (4) statements made during public earnings calls; and (5) the existence of government investigations. Therefore, Defendants incorporate by reference the same arguments for dismissal propounded in their DPP MTD. As described in detail in that motion, EPPs' conclusory allegations fail to support a plausible inference that Defendants unlawfully conspired to restrain trade.

For example, much like DPPs, EPPs fail to plausibly allege a single, unified conspiracy to fix the prices of both digoxin and doxycycline. Digoxin and doxycycline are different products that compete in different markets, without any overlap in pricing or other competitive dynamics. In addition, only *four* of the eleven Defendants named in the EPP Complaint are alleged to have sold some form of both digoxin and doxycycline, and Plaintiffs fail to create a reasonable inference of a single conspiracy to fix the prices of both drugs. *See* DPP MTD at Section I.

EPPs similarly fail to state a plausible claim that Defendants conspired to fix prices for either digoxin or doxycycline, separately, as EPPs' Complaint is devoid of any alleged direct evidence of an agreement between Defendants relating to either digoxin or doxycycline. *See* DPP MTD at Sections II.A.1. & III.A.

**B.      EPPs Do Not Sufficiently Plead Circumstantial Evidence of a Conspiracy.**

EPPs also fail to allege sufficient facts from which the Court could plausibly infer an agreement to fix prices of either digoxin or doxycycline based on circumstantial evidence, *i.e.*, EPPs' allegations of parallel conduct and plus factors are inadequate. *See Lum v. Bank of Am.*, 361 F.3d 217, 230 (3d Cir. 2004) (a complaint alleging an antitrust conspiracy based on circumstantial evidence must allege parallel conduct and "plus factors" that reveal "circumstances under which . . . the inference of rational independent choice [is] less attractive than that of concerted action").

**1.      EPPs Cannot Plead Parallel Conduct Through Allegations Regarding the Average Market Price.**

As an initial matter, EPPs fail even to allege parallel conduct. Instead, they cite *average* prices for digoxin and doxycycline based on the same data sources on which DPPs rely, and fail to allege any facts concerning *the actual pricing behavior of any individual Defendant*. *See* DPP MTD at Sections II.A.2.a. & III.B.1. In particular, EPPs' charts depict average price increases as reported in "National *Average* Drug Acquisition Cost" data. EPP Compl. ¶¶ 78-79, 90-91 (emphasis added). They also attempt to show parallel pricing through reports of changes in the "wholesale acquisition cost" ("WAC") for Impax's and Lannett's digoxin 0.125mg tablets. EPP Compl. ¶¶ 80-81.

By definition, however, average price changes say nothing about if and how any one Defendant's prices actually moved (by way of analogy, if the overall batting average in baseball goes up, it does not mean that any particular player is having a great year at the plate). Indeed, EPPs fail to identify any other Defendant's WAC for digoxin 0.125mg tablets and do not identify the WAC or any prices for any doxycycline products whatsoever. The Third Circuit has found that reliance on average prices of this type is insufficient to demonstrate parallel pricing. *In re*

*Baby Food Antitrust Litig.*, 166 F.3d 112, 129 (3d Cir. 1999); *see also Resco Prod., Inc. v. Bosai Minerals Grp. Co.*, 158 F. Supp. 3d 406, 424 (W.D. Pa. 2016) (finding that plaintiff failed to demonstrate parallel pricing where it asserted that the defendants' prices "doubled during 2003 and 2004 and increased an additional 70 [percent] between 2004 and 2007").

### 2. EPPs Do Not Plead Sufficient Plus Factors to Create an Inference of Conspiracy.

Even if EPPs had successfully alleged parallel conduct (and they do not), their alleged conspiracy claims would still fail as a matter of law because there are no allegations plausibly suggesting that Defendants' alleged conduct was the product of collusion. Without sufficient allegations of plus factors, an allegation of parallel conduct "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557; *see also In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) (citing *Twombly* and holding plaintiff must allege factual allegations that are "largely inconsistent with unilateral conduct [and] largely consistent with explicitly coordinated action").

EPPs plus factor allegations are woefully inadequate. First, EPPs allege certain market characteristics that they claim make the industry "susceptible to collusion." Compl. ¶¶ 142-72. But the law is clear that such allegations of conscious parallelism among manufacturers in a purportedly highly concentrated market are insufficient to imply the existence of an unlawful agreement. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 229 (3d Cir. 2011) ("Appellees' motivation of market behavior are precisely the legally insufficient facts we have cautioned against using as circumstantial evidence of an agreement."); *see also* DPP MTD at Sections II.A.2.b.1. & III.B.2.a.

Next, EPPs claim that Defendants "have many opportunities to meet and conspire at industry meetings," (Compl. ¶ 170), "at conferences held by their customers" (*id.* ¶ 104), and

"through trade associations" (*id.* ¶ 105). But "[p]roof of opportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co. Inc.*, 998 F.2d 1224, 1235 (3d Cir. 1993) (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 894 (3d Cir. 1981)). Courts have universally recognized that membership and participation in trade associations, which is all EPPs allege here, do not give rise to a plausible inference of conspiracy. *Petruzzi's*, 998 F.2d at 1235; *Superior Offshore Int'l., Inc. v. Bristow Group Inc.*, 738 F. Supp. 2d 505, 516 (E.D. Pa. 2010); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007) [hereinafter *GPU I*]; *see also* DPP MTD at Sections II.A.2.b.2.b. & III.B.2.b.2.

In addition, EPPs allege that statements made in public earnings calls are evidence of collusion. Compl. ¶¶ 110-19. Nothing in their allegations, however, provides any factual basis for inferring an unlawful agreement. *See* DPP MTD at Sections II.A.2.b.2.c. & III.B.2.b.3.

Finally, EPPs rely heavily on government investigations into generic drug pricing and criminal plea agreements involving two former Heritage executives. Compl. ¶¶ 7-16, 124-41. But this Court and others have dismissed complaints in similar circumstances, properly holding that the mere existence of a government investigation says nothing about whether the defendants were actually conspiring. *Superior Offshore*, 738 F. Supp. 2d at 516; *see also* DPP MTD at Sections II.A.2.b.2.a. & III.B.2.b.1. In summary, EPPs' Complaint fails to allege a plausible conspiracy, just as the DPP Complaint does. EPPs attempt to glom together a myriad of alleged facts in an effort to support their conclusory conspiracy allegations, but, in the end, zero plus zero plus zero still equals zero. Accordingly, EPPs' Sherman Act claim must be dismissed.

EPPs' state antitrust and consumer protection claims also must be dismissed for the same reason as their Sherman Act claim: there are no well-pled allegations plausibly suggesting that

Defendants conspired to fix the price of digoxin or doxycycline. State claims brought in federal court must meet federal pleading standards. *See GPU I*, 527 F. Supp. 2d at 1025. Accordingly, indirect purchasers must satisfy the federal pleading standards, set forth in *Twombly* and *Iqbal*, when attempting to assert claims under state law in federal court. *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56584 (E.D. Pa. Aug. 3, 2007); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2008 U.S. Dist. LEXIS 16595 (E.D. Pa. Mar. 3, 2008). Because EPPs' antitrust and consumer protection claims fail to meet the *Twombly/Iqbal* standard, EPPs' state law claims also fail as a matter of law. *See In re Digital Music Antitrust Litig.*, 592 F. Supp. 2d 435 (S.D.N.Y. 2008) (dismissing state antitrust and consumer protection claims where underlying federal antitrust claims failed to meet *Twombly* pleading standards). Moreover, every single state law under which EPPs purport to bring an antitrust claim, either by statute or case law, provides that decisions of federal courts on Sherman Act claims are either determinative or highly persuasive with respect to their state analogues. *See* Appendix B. Unsurprisingly, courts therefore regularly dismiss state law antitrust claims when dismissing Sherman Act claims based on the same allegations. This Court should do the same.

## II.     EPPS LACK ARTICLE III STANDING TO SUE UNDER THE LAWS OF STATES WHERE NO NAMED PLAINTIFF WAS INJURED.

In their Second and Third Counts, EPPs assert claims under antitrust and consumer protection laws of 32 states and the District of Columbia. Compl. ¶¶ 232-57, 263-76. However, a number of those claims fail because EPPs simply lack Article III standing.

Under Article III of the U.S. Constitution, EPPs can bring state law antitrust and consumer protection claims in federal court *only* if a named plaintiff resided in, or purchased or made reimbursements for the generic drug, in the state whose laws they seek to invoke. *See, e.g.*, *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 151 (E.D. Pa. 2009). It is EPPs' burden to

allege facts sufficient to demonstrate standing to bring each discrete claim. *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) ("[I]t is not enough that a named plaintiff can establish a case or controversy . . . by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately . . . ."); *Wellbutrin*, 260 F.R.D. at 151 ("A plaintiffs' standing to sue must be analyzed on the basis of *each* claim asserted.") (emphasis added).

Here, EPPs claim to bring antitrust and consumer protection claims under the laws of 32 states and the District of Columbia as a result of Defendants' alleged pricing of digoxin. However, EPPs claim to have resided in, or purchased or made reimbursements for digoxin in, only some of those states. In particular, EPPs do not allege that they purchased or provided reimbursement for digoxin in the District of Columbia or in 10 states for which they purport to bring antitrust and/or consumer protection claims: Arkansas, Hawaii, Michigan, Montana, Nebraska, North Dakota, Oregon, South Dakota, Tennessee, and Vermont. Compl. ¶¶ 22-35. EPPs do not have standing to bring their purported claims as to digoxin under the laws of states where no named plaintiff is located or made purchases or provided reimbursements for digoxin. Similarly, EPPs do not claim that they resided in, or purchased or provided reimbursement for doxycycline in, Oregon. As a result, that claim also must be dismissed.

That EPPs seek to represent a class does not alter this burden: "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). To the contrary, courts have consistently dismissed indirect purchaser claims brought under the laws of states in which no named plaintiff

resided or was injured. In *Wellbutrin*, for instance, the court dismissed claims under the laws of states where no named plaintiff suffered an injury, i.e., where they did not reside or reimburse for purchases of the drug. 260 F.R.D. at 156-58. The court explained that a "named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim." *Id.* "For example, a plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law . . . ." *Id.* at 152. Following *Wellbutrin*, the courts in *In re Niaspan Antitrust Litigation*, 42 F. Supp. 3d 735, 758-59 (E.D. Pa. 2014), and *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litigation*, 64 F. Supp. 3d 665, 692-94 (E.D. Pa. 2014), held that named plaintiffs lack standing to assert claims under the laws of states in which they do not reside or in which they suffered no injury. Others have done the same.[3]

Further, allowing EPPs' claims to proceed under the laws of states where no named plaintiff is alleged to have resided or made purchases would violate due process of law. "For the application of a state's substantive law to be constitutionally permissible, sufficient contacts with that state must exist to ensure the choice of law is 'neither arbitrary nor fundamentally unfair.'" *Soo Line R.R. Co. v. Overton*, 992 F.2d 640, 644 (7th Cir. 1993) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)). Thus, for this Court to apply the state laws under which EPPs purport to bring claims, EPPs "must be able to allege that the occurrence or transaction giving

---

[3] *Accord, e.g.*, *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2664, 2014 U.S. Dist. LEXIS 31188, at *30-36 (D. Minn. Mar. 11, 2014); *In re Ductile Iron Pipe Fittings (DIPE) Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 U.S. Dist. LEXIS 142466, at *32-33 (D.N.J. Oct. 2, 2013); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-cv-3690, 2013 U.S. Dist. LEXIS 119962, at *26-27 (N.D. Ill. Aug. 23, 2013); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-02042, 2012 U.S. Dist. LEXIS 98827, at *30-34 (E.D. Mich. July 17, 2012); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-1325 (S.D. Fla. 2010); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 35-36 (D.D.C. 2008); *GPU I*, 527 F. Supp. 2d at 1026-27; *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-72 (S.D. Fla. 2001).

rise to the litigation – which is [plaintiff's] purchase of allegedly price-fixed goods – occurred in the various states." *TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-cv-0058, 2011 U.S. Dist. LEXIS 96741, at *11 (N.D. Cal. Aug. 29, 2011) (internal quotation marks omitted) (dismissing on due process grounds plaintiff's claims brought under the laws of states for which it alleged it only received goods but not where plaintiffs resided or purchased goods). EPPs' doxycycline claim under Oregon law and digoxin claims under the laws of Arkansas, District of Columbia, Hawaii, Michigan, Montana, Nebraska, North Dakota, Oregon, South Dakota, Tennessee, and Vermont all fail this fundamental test and must, therefore, be dismissed.[4]

## III. TPPS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THEY CANNOT PLEAD ANTITRUST STANDING OR PROXIMATE CAUSATION.

Eleven of the fourteen named plaintiffs are TPPs, but TPPs do not have antitrust standing. To sustain their federal and state antitrust claims, TPPs must establish that they (1) suffered an antitrust injury and (2) possess antitrust standing. *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997). While the terms "antitrust injury" and "antitrust standing" have at times been used interchangeably, they are in fact two distinct and necessary elements of any private antitrust claim. *2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 739 (3d Cir. 2004); *see generally Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 110 n.5 (1986) ("A showing of antitrust injury is necessary, but not always sufficient, to establish standing . . . because a party may have suffered antitrust injury but may not be a proper plaintiff . . . for other reasons."). TPPs lack antitrust standing because their alleged injuries are too remote. For the same reason, TPPs consumer protection and unjust enrichment claims fail because they do not allege facts supporting proximate causation.

---

[4] EPPs also allege unjust enrichment claims under 48 state laws and the District of Columbia. However, EPPs do not have standing to bring claims as to doxycycline in 3 of these states and they lack standing to bring claims as to digoxin in 18 of these states. *See* Appendix A.

### A.  TPPs Have Not Alleged, and Cannot Establish, Antitrust Standing under *Associated General Contractors*.

TPPs must demonstrate that they are the "proper part[ies] to bring a private antitrust action." *Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) [hereinafter "*AGC*"]; *see also Barton & Pittinos*, 118 F.3d at 182 ("Even a plaintiff who can show antitrust injury may lack antitrust standing, because the remaining *AGC* factors may weigh against allowing him or her to sue under the antitrust laws."). Grounded in common-law principles of proximate cause, *AGC* identified a number of considerations to guide courts in determining whether plaintiffs alleging remote injuries can maintain their causes of action. *AGC*, 459 U.S. at 536-45. Applying *AGC*, the Third Circuit has instructed courts to evaluate the following factors:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*Barton & Pittinos*, 118 F.3d at 181. *AGC* "has been regularly and consistently applied as the passageway through which antitrust plaintiffs must advance," *2660 Woodley Rd. Joint Venture*, 369 F.3d at 741 (citing *City of Pittsburgh v. West Penn Power,* 147 F.3d 256, 264 (3d Cir. 1998)), and it applies to both federal and state antitrust claims.[5] *See, e.g.*, *Supreme Auto Transp.*

---

[5] Four of the 26 states under which TPPs assert state antitrust claims have expressly adopted the *AGC* factors in determining whether plaintiffs have antitrust standing. *See* Appendix C (Arizona, District of Columbia, Iowa, Nebraska). The *AGC* factors have been applied by courts in an additional 11 states. *Id.* (California, Illinois, Maine, Michigan, Minnesota, New York, North Carolina, North Dakota, Tennessee, Vermont, Wisconsin). Of the remaining jurisdictions, an additional 11 states have directed courts to interpret state antitrust statutes in accordance with interpretations of federal antitrust laws. *Id.* (Alabama, Hawaii, Kansas, Mississippi, Nevada, New Hampshire, New Mexico, Oregon, South Dakota, Utah, West Virginia). *AGC*'s directness factors are applicable to TPPs' federal claim for injunctive relief under § 16 of Clayton Act. *Dairy Farmers*, 2013 U.S. Dist. LEXIS 119962, at *33; *Potash*, 667 F. Supp. 2d at 938-39.

*LLC v. Mittal*, No. 08-cv-5468, 2017 U.S. Dist. LEXIS 30762, at \*9-11 (N.D. Ill. Mar. 3, 2017)

(applying *AGC* test to Arizona, California, District of Columbia, Iowa, Kansas, Maine,

Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina,

North Dakota, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin antitrust

claims); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-cv-3690, 2015 U.S. Dist.

LEXIS 84152, at \*24-50 (dismissing California, Kansas, Michigan, Minnesota, New York, and

North Carolina state antitrust claims for lack of antitrust standing); *In re Refrigerant*

*Compressors Antitrust Litig.*, No. 2:09-md-02042, 2013 U.S. Dist. LEXIS 50737, at \*40 (E.D.

Mich. Apr. 9, 2013) (concluding that *AGC* test applies to the state laws in Arizona, California,

District of Columbia, Kansas, Maine, Michigan, Nebraska, New Hampshire, New Mexico, New

York, West Virginia, and Wisconsin); *In re Dynamic Random Access Memory (DRAM) Antitrust*

*Litig.*, 516 F. Supp. 2d 1072, 1094-95 (N.D. Cal. 2007) (applying the *AGC* test to Kansas, Maine,

Michigan, North Carolina, North Dakota, South Dakota, and Wisconsin).

Several of the *AGC* factors weigh against TPPs here. First, TPPs' alleged injury is not the

type for which the antitrust laws were intended to provide redress because TPPs are neither

consumers nor competitors in the relevant space. *See AGC*, 459 U.S. at 539 (noting that plaintiff

union "was neither a consumer nor a competitor in the market in which trade was restrained");

*Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 439 (3d Cir. 2000) (holding that

"costs not incurred as a consumer or a competitor . . . did not fall within congressional antitrust

concern"); *Barton & Pittinos*, 118 F.3d at 181 ("In *AGC*, the Court held that because the plaintiff

was 'neither a consumer nor a competitor in the market in which trade was restrained,' its injury

was not the type of injury that the antitrust laws were designed to prevent.") (quoting *AGC*, 459

U.S. at 539). TPPs, which co-purchase or reimburse for their members' purchases, are analogous

to the health plans in *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, which lacked antitrust standing under *AGC* because they were "not consumers forced to pay higher prices for tobacco products or competitors harmed by defendants' [alleged conspiracy]." 171 F.3d 912, 927 (3d Cir. 1997).

Second, there are numerous links in the chain of distribution before doxycycline or digoxin ultimately reaches consumers, including transactions between manufacturers and wholesalers, wholesalers and distributors, and distributors and retail pharmacists. Further, some pharmacies use pharmacy benefit managers (PBMs), which serve as intermediaries between the pharmacy, the drug manufacturer, and the health insurance plan by (among other things) processing prescriptions, determining reimbursement coverage, and negotiating prices.

The injuries for which TPPs purportedly seek redress are thus four or more distinct steps removed from the actions that EPPs say violated the law. The causal connection is even more attenuated and complicated here than in the typical indirect purchaser case because the TPPs' alleged injuries will depend on the terms of their insurance contracts with their insureds and whether they passed on the increased cost of reimbursement in the form of higher policy premiums. As in *Steamfitters*, "the causal link between defendants' actions and the negative effects that eventually result is not proximate enough to meet the prudential requirements for antitrust . . . standing." *Id*. at 934.

Third, persons with more direct injuries (if any) – DPPs – exist and have also asserted antitrust claims against Defendants based on the same conduct. That these other plaintiffs have also brought suit "diminishes the justification for allowing a more remote party" to enforce the antitrust laws because denial of recovery to TPPs "is not likely to leave a significant antitrust violation undetected or unremedied." *AGC*, 459 U.S. at 542; *see also Refrigerant Compressors*,

15

2013 U.S. Dist. LEXIS 50737, at *52 ("[D]irect purchasers are in fact, *in this litigation*, seeking to enforce the antitrust laws against the alleged conspirators. Thus, there are more direct victims of the alleged conspiracy who can, and are, seeking to enforce the antitrust laws against the alleged conspirators."). TPPs are not in the best position to vindicate the alleged antitrust violations in this case, as their alleged injuries are too remote, and other parties with a closer connection to the alleged restraint – DPPs – have sued for damages arising from the same alleged conduct.

Fourth, that TPPs are "further down the chain" of distribution "increase[s] the economic complexity of apportioning damages." *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 486 (7th Cir. 2002); *accord, e.g.*, *Crouch v. Crompton Corp.*, 2004 NCBC LEXIS 6, at *65-66 (N.C. Super. Ct. Oct. 26, 2004) ("As damage claims move from direct to indirect and the distribution chain becomes more complex, the possibility of factors intervening to affect causation and price multiplies, and claims become more speculative."). Calculating damages for TPPs would require identifying overcharges to wholesalers and tracing those overcharges downstream through multiple levels in the distribution chain, then to TPPs, who "purchased and paid for some or all of the purchase price of one or more" digoxin and/or doxycycline purchases. This either/and/or formulation is completely unwieldy. Besides, among other factors, (i) competition at the wholesale and retail levels for doxycycline and digoxin, (ii) the use of manufacturer discounts and promotions, and (iii) the uniformity (or lack thereof) of any passed-on overcharge (among other factors) could also contribute to the prices that TPPs ultimately paid. There are so many variables that contribute to pricing decisions at different levels of the distribution chain that it would be exceedingly difficult, if not impossible, to isolate the portion of the retail price attributable to the alleged overcharge stemming from the claimed price-fixing conspiracy.

"While it might be possible for economists to factor out each of these considerations . . . , the Supreme Court has decreed a simpler solution: simply restrict the right to recover to those who are more directly affected by the defendant's actions." *Loeb Indus.*, 306 F.3d at 486. "The tortured path that one must follow from the [Defendants'] alleged wrongdoing to the [TPPs'] increased expenditures demonstrates that the plaintiffs' claims are precisely the type of indirect claims that the proximate cause requirement is intended to weed out." *Steamfitters,* 171 F.3d at 930. Allowing TPPs' antitrust claims to proceed risks duplication of damages. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977) (noting that "direct purchasers are not only spared the burden of litigating the intricacies of pass-on but also are permitted to recover the full amount of the overcharge"). Because TPPs have not alleged, and cannot establish, antitrust standing under *AGC*, their claims must be dismissed.

### B.      TPPs Fail to Allege Proximate Causation.

TPPs' consumer fraud and unjust enrichment claims also fail for remoteness. Plaintiffs are required to plead proximate causation as an element of their consumer fraud claims. *See, e.g., Supreme Auto Transp. LLC v. Mittal*, No. 08-cv-5468, 2017 U.S. Dist. LEXIS 30762, at *5, 18 (N.D. Ill. Mar. 3, 2017) (dismissing indirect purchasers' consumer protection and unjust enrichment claims under "each of the fifty states, excluding Ohio and Indiana, and including the District of Columbia" for lack of proximate cause because *AGC* factors were not satisfied); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig*., 2015 U.S. Dist. LEXIS 84152 (N.D. Ill. June 29, 2015) (dismissing consumer protection claims under Arkansas, California, Florida, and North Carolina law as too remote); *In re Wellpoint, Inc., Out-of-Network UCR Rates Litig*., 903 F. Supp. 2d 880, 908, 927-28 (C.D. Cal. 2012) (holding that dismissal of remote plaintiff's Sherman Act claims for lack of antitrust standing required dismissal of California consumer protection claim predicated on same allegations); *Thompson v. Bank of Am*., No. 7:09-CV-8we9-

H, 2011 U.S. Dist. LEXIS 109660, at *37 (E.D.N.C. Feb. 24, 2011) (dismissing NCUDTPA

claim for failure to adequately plead proximate causation); *In re Fla. Cement & Concrete*

*Antitrust Litig.*, 746 F. Supp. 2d 1291, 1322 (S.D. Fla. 2010) (dismissing indirect purchasers'

FDUTPA claim for failure to adequately plead proximate causation); *New York v. Daicel Chem.*

*Indus., Ltd.*, No. 0403878, 2005 N.Y. Misc. LEXIS 8435, at *23-28 (N.Y. Sup. Ct. Aug. 9, 2005)

(dismissing remote consumers' claim under § 349 based on *AGC* factors); *Regence Blueshield v.*

*Philip Morris, Inc.*, 40 F. Supp. 2d 1179, 1181, 1185 (W.D. Wash. 1999) (dismissing remote

plaintiffs' Montana consumer protection claim for lack of proximate causation).

    As *AGC* developed out of common law proximate cause principles,[6] the same reasoning

applies to preclude TPPs' unjust enrichment claims. *Steamfitters*, 171 F.3d at 937 ("We can find

no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we

have determined that the District Court properly dismissed the traditional tort claims because of

the remoteness of plaintiffs' injuries from defendants' wrongdoing."); *see also, e.g.*, *Southard* v.

*Visa U.S.A. Inc.*, 734 N.W.2d 192, 199 (Iowa 2007) (dismissing Iowa unjust enrichment claim

because "this common-law theory is subject to the common-law rule that bars recovery for

remote injuries"). Due to the remote nature of their alleged injuries, TPPs cannot state a claim for

consumer fraud or unjust enrichment and those claims must be dismissed. *Supreme Auto Transp.*,

2017 U.S. Dist. LEXIS 30762, at *16-18 (dismissing indirect purchasers' consumer protection

and unjust enrichment claims for lack of proximate cause because *AGC* factors were not

satisfied).

---

[6] *See AGC*, 459 U.S. at 532-33; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690, 2013 U.S. Dist. LEXIS 119962, at *42-43 (N.D. Ill. Aug. 23, 2013).

## IV.     EPPS' STATE ANTITRUST CLAIMS FAIL FOR STATE-SPECIFIC REASONS.

In the Second Count, EPPs allege violations under 26 state antitrust laws. However, many of them fail as a matter of law for the state-specific reasons set forth below.

### A.     Illinois Bars Indirect Purchaser Class Actions.

The Illinois Antitrust Act prohibits indirect purchasers from bringing class actions. *See* 740 Ill. Comp. Stat. § 10/7(2) ("[N]o person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General."). This restriction on indirect purchaser class actions is "substantive," "represents a policy judgment as to the feasibility of managing duplicative recovery, which the legislature has entrusted to the Attorney General but not to individual indirect purchasers," and, therefore, "must be applied in federal court." *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010). The Eastern District of Pennsylvania and other federal courts have recognized this prohibition and dismissed class actions asserted by indirect purchasers under Illinois' antitrust statute. *Id.* at 676-77 (denying indirect purchaser plaintiffs' motion to amend complaint to include claims under the IAA); *see also In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 539 (E.D. Pa. 2010) ("In this case, [EPPs] are prohibited from asserting claims under the Illinois Antitrust Act, because the Act does not provide relief to indirect purchasers through class actions."); *Suboxone*, 64 F. Supp. 3d at 700; *Niaspan*, 42 F. Supp. 3d at 764.[7] Because the Illinois Antitrust Act does not provide relief to indirect purchasers through class actions, this Court should dismiss EPPs' claims under Illinois law.

---

[7] *Accord In re Opana ER Antitrust Litig.*, No. 14 C 10150, 2016 U.S. Dist. LEXIS 16700, at *12 (N.D. Ill. Feb. 10, 2016); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2015 U.S. Dist. LEXIS 125999, at *64-66 (D. Mass. Aug. 14, 2015); *United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1083-84 (N.D. Cal. 2014); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408-09 (D. Mass. 2013); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 414-16 (S.D.N.Y. 2011).

### B.      No EPP is a Citizen of Utah.

EPPs fail to meet the statutory citizenship and residency requirements under the Utah

Antitrust Act, so their claims must be dismissed. Although the Utah Antitrust Act permits

indirect purchaser lawsuits, courts in this district and others have consistently dismissed indirect

purchaser claims brought under the Utah Antitrust Act where no named plaintiff was a Utah

citizen or resident. *See Niaspan*, 42 F. Supp. 3d at 759-60 (holding that "at least one named

plaintiff must be a citizen or resident of Utah in order to seek classwide relief under the Utah

Antitrust Act"); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 251-52 (D. Conn. 2015)

(indirect purchasers lacked standing where, despite allegations they purchased products "in all

fifty states," no named plaintiff was a Utah citizen or resident); *In re Opana ER Antitrust Litig.*,

162 F. Supp. 3d 704, 725 (N.D. Ill. 2015) (dismissing claims under the Utah Antitrust Act where

the complaint fails to claim that any of the named plaintiffs are Utah residents); *In re Nexium*

*(Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 410 (D. Mass. 2013) (same). Because EPPs

fail to allege that any of the named plaintiffs is a citizen or resident of Utah, they lack standing

under the Utah Antitrust Act, and their claims should be dismissed. *See* Compl. ¶¶ 22-35.

### C.      EPPs Failed to Give Notice to the State Attorney General as Required by Arizona's and Hawaii's Antitrust Statutes.

EPPs' antitrust claim under the laws of Arizona and Hawaii must be dismissed because

they fail to allege that they served a copy of the Complaint on the Attorneys General of Arizona

and Hawaii, as required by those states' antitrust statutes. *See* Ariz. Rev. Stat. § 44-1415(A) ("A

person filing a complaint . . . for any violation of the provisions of this article shall

simultaneously with the filing of the pleading . . . serve a copy of the complaint . . . on the

attorney general. Proof of service . . . shall be filed with the court."); *Haw. Med. Ass'n v. Haw.*

*Med Serv. Ass'n.*, 148 P.3d 1179, 1209 (Haw. 2006) (concluding that Haw. Rev. Stat. § 480-13.3

enables a private right of action only "if the [State] Attorney General declines to commence an action based on the claim") (quoting Hawaii's legislative history).

Nowhere does the Complaint allege that EPPs complied with either of these procedures. Accordingly, these claims must be dismissed. *See In re Asacol Antitrust Litig*., No. 15-cv-12730-DJC, 2016 U.S. Dist. LEXIS 94605, at *45-48 (D. Mass. July 20, 2016) (dismissing claims under Arizona and Hawaii for failing to provide notice).[8]

### D.    EPPs Fail To Allege a Substantial Effect on Intrastate Commerce, as Required To State an Antitrust Claim in Several States.

The antitrust laws of a number of states – including Alabama, Hawaii, Kansas, Maine, Minnesota, Nebraska, Nevada, New York, North Carolina, Tennessee, and Wisconsin – apply only to intrastate activity and/or conduct that has a substantial effect within the state – and not to a broadly alleged nationwide conspiracy such as that alleged by EPPs. EPPs do not allege that Defendants' conduct took place within any of these states or that the conduct had a substantial effect within any of the states. Rather, they broadly allege that Defendants "engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business *throughout the United States . . .*" Compl. ¶ 21 (emphasis added). Such allegations are insufficient to survive a motion to dismiss. *See In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508, 2015 U.S. Dist. LEXIS 121620, at *74-75 (E.D. Tenn. June 24, 2015) (dismissing antitrust claims under the laws of Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, and Wisconsin because plaintiffs failed to allege a sufficient nexus to intrastate commerce where they alleged the price-fixing scheme impacted the "entire [product] market" and "impacted commerce

---

[8] Even if they had standing, EPPs' claims under the Utah Antitrust Act should be dismissed for failure to notify the state attorney general as required by Utah Code §76-10-3109(9). *See Asacol*, 2016 U.S. Dist. LEXIS 94605, at *47-48  (D. Mass. July 20, 2016) (dismissing Utah antitrust claim where plaintiffs' failed to provide notice).

nationwide"). Without specific allegations or facts connecting the alleged conduct to each state, this Court cannot assess whether the conduct had an incidental or substantial effect – if any at all – on the states under which EPPs bring their claims.

**Alabama**. Alabama's antitrust law is concerned only with intrastate conduct. *See* Ala. Code § 6-5-60. The Alabama Supreme Court has confirmed that allegations of interstate conduct do not state a claim under Alabama's antitrust law. *See Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc*., 746 So. 2d 966 (Ala. 1999). The Alabama Antitrust Act "does not provide a cause of action for damages allegedly resulting from an agreement to control the price of goods shipped in interstate commerce." *Abbott Labs v. Durrett*, 746 So. 2d 316, 339 (Ala. 1999); *accord Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 425 (E.D. Pa. 2010) (finding that a defendant does not violate Alabama antitrust law where its conduct "involves interstate and not purely intrastate, conduct").

**Hawaii.** Hawaii's antitrust law applies only to agreements "in restraint of trade or commerce in the State, or in any section of this State." Haw. Rev. Stats. § 480-4(a) ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce *in the State, or in any section of this State* is illegal.") (emphasis added); *see also In re Magnesium Oxide Antitrust Litig*., No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373, at *26 n.10 (D.N.J. Oct. 20, 2011) (dismissing claim under Hawaii antitrust law for lack of intrastate conduct allegations).

**Kansas.** Kansas' antitrust law prohibits fixing prices "of any article or commodity of merchandise, produce or commerce intended for sale, use or consumption in this state." Kan. Stats. § 50-101; *see* also *Magnesium Oxide,* 2011 U.S. Dist. LEXIS 121373, *26 n.10 (dismissing claim under Kansas antitrust law for lack of intrastate conduct allegations).

22

**Maine.** Maine's antitrust law only applies to agreements in "restraint of trade or commerce in this State." 10 Me. Res. Stats. § 1101; *see also Terazosin,* 160 F. Supp. 2d at 1371 ("None of these statutes [including Maine's] authorizes antitrust actions based on commerce in other states, and the named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief.").

**Minnesota.** Minnesota's antitrust law applies to "any contract, combination, or conspiracy when any part thereof was created, formed, or entered into in this state." Minn. Stat. § 325D.54(a) (scope of legislation: "any contract, combination, or conspiracy *when any part thereof was created, formed, or entered into in this state*") (emphasis added); *see also Terazosin,* 160 F. Supp. 2d at 1371 (dismissing Minnesota claim for failure to allege intrastate activity).

**Nebraska.** Nebraska's antitrust law prohibits agreements "in restraint of trade or commerce, *within this state*." Neb. Rev. Stat. 59-801 (emphasis added); *Credit Bureau Servs. v. Experian Info. Solutions, Inc*., 285 Neb. 526, 531 (Neb. 2013) ("presence in Nebraska" is a "fairly obvious" element of an antitrust claim under Nebraska law).

**Nevada.** Nevada's antitrust law relates only to conduct where "any part of any such activity [occurs] in this state." Nev. Rev. Stat. Ann. § 598A.060.

**New York.** New York's antitrust law, the Donnelly Act, does not apply unless the alleged conduct primarily affects intrastate, rather than interstate, commerce. N.Y. Gen. Bus. Law § 340(1); *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, No. 03-cv-5889, 2005 U.S. Dist. LEXIS 1924, at *12-14 (S.D.N.Y. Feb. 7, 2005); *Cast Iron,* 2015 U.S. Dist. LEXIS 121620, at *69-70 (Donnelly Act was modeled on Sherman Act and is generally to be construed in accordance with federal precedents; but unlike Sherman Act, it only applies to conduct within New York state) (citations omitted); *Conergy AG v. MEMC Elec. Materials, Inc.*, 651 F. Supp.

2d 51, 61-62 (S.D.N.Y. 2009) (dismissing N.Y. Donnelly Act claim where complaint was "devoid of any specific factual allegations" demonstrating effect on New York intrastate commerce).

**North Carolina.** North Carolina's antitrust law requires a plaintiff to establish that "the injuries [alleged] have a 'substantial in-state effect on North Carolina trade or commerce.'" *Flonase*, 692 F. Supp. 2d at 540 (quoting *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *51 (N.C. Super. June 18, 2007)); *see also Terazosin*, 160 F. Supp. 2d at 1371.

**Tennessee.** Tennessee's antitrust law applies to transactions that substantially affect intrastate commerce. *Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9-CV, 2003 Tenn. App. LEXIS 539 (Tenn. Ct. App. July 31, 2003). The Tennessee Supreme Court has held that the alleged anticompetitive affects must affect Tennessee trade or commerce to a substantial degree. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 522 (Tenn. 2005). Where the goods, services, and payment flow between parties in different states, the commerce is predominately *interstate* in nature. *Sherwood*, 2003 Tenn. App. LEXIS 539, at *65 n.23 ("Plaintiffs' conclusory allegations that [Defendant's] conduct had significant, substantial, and 'predominant' effects on trade and commerce inside the state of Tennessee cannot suffice for the absence of even one factual allegation that the effects in Tennessee are predominant over the effects nationwide.").

**Wisconsin.** The Wisconsin Supreme Court has held that a claim under Wisconsin antitrust law must allege either that (1) actionable conduct occurred within the state; or (2) the conduct complained of "substantially affects" the state. *Olstad v. Microsoft Corp.* 284 Wis. 2d 224, 229 (Wis. 2005); *see also Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 969, 971 (E.D. Wis. 1998) (dismissing claim under Wisconsin antitrust statute for failure to

"allege significant and adverse effects on economic competition in Wisconsin"; citing state legislative history in interpreting the scope of Wisconsin antitrust statute to be alleged anticompetitive activity that "significantly and adversely affected trade and economic competition *within* th[e] state" of Wisconsin) (emphasis added); *In re Photochromic Lens Antitrust Litig.*, No. 8:10-CV-1158-T-27EAJ, 2011 WL 13141933, at *5 & n.12 (M.D. Fla. Oct. 26, 2011) (dismissing claim under Wisconsin's antitrust statute for indirect plaintiffs' lack of "allegations establishing that [defendant's] alleged unlawful conduct had a 'substantial affect' in Wisconsin") (citing *Olstad*); *Cast Iron*, 2015 U.S. Dist. LEXIS 121620, at *75 (dismissing indirect plaintiffs' conclusory claims under antitrust statute of Wisconsin for failure to address "any connection between [Wisconsin] and the wrongful conduct").

For each state above, EPPs have not alleged any facts relating to intrastate commerce or any specific facts about how the alleged conduct substantially affects people in those states. Thus, this Court should dismiss EPPs' claims under the antitrust laws of Alabama, Hawaii, Kansas, Maine, Minnesota, Nebraska, Nevada, New York, North Carolina, Tennessee, and Wisconsin.

## E. EPPs' Alabama Antitrust Claim is Time Barred.

A two-year statute of limitations applies to claims under Alabama's antitrust statute. Ala. Cod. § 6-2-38(l) (2007); *cf. DRAM*, 516 F. Supp. 2d at 1097-98. EPPs claim that the alleged conspiratorial price increases began in the "fall of 2012" for doxycycline and in the fall 2013 for digoxin (Compl. ¶¶ 78, 83, 84, 87), but EPPs did not file the first action against Defendants until March 2016, more than 3 years after the alleged conspiracy began. As a result, EPPs' Alabama antitrust claim is time barred.[9]

---

[9] EPPs' claims accrued prior to March 2014. Those claims are based on (i) price increases that occurred in January 2013 and October 2013 (Compl. ¶¶ 76, 88) and were well publicized in 2013 (*id.* ¶ 85 & n.45, ¶ 119 & n.57 (quoting

## V.      EPPS' CONSUMER PROTECTION CLAIMS FAIL.

In the Third Count, EPPs re-label their antitrust claims as consumer protection claims under the laws of the District of Columbia and 13 states – Arkansas, California, Florida, Hawaii, Massachusetts, Missouri, Montana, New Mexico, New York, North Carolina, Rhode Island, South Carolina, and Vermont. Compl. ¶¶ 263-76. EPPs' consumer protection claims fail, however, because EPPs "have not truly pleaded claims under [the various state consumer protection laws] sufficient to show their entitlement to recover under them, as required by Rule 8. Rather, they have pleaded federal antitrust claims. . . and they merely allege that those claims are also actionable under general consumer protection laws . . . ." *Aggrenox*, 94 F. Supp. 3d at 255 (dismissing claims) (internal citations omitted). EPPs' description of the alleged deception makes clear that their consumer protection claims merely repackage their allegations of price-fixing: they claim that Defendants deceived them by "affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which generic digoxin and generic doxycycline were sold, distributed, or obtained in [each state]." Compl. ¶ 268; *see also id.* ¶¶ 265, 271-74, 276. If such allegations were sufficient to state a consumer protection law claim, there would be no need for separate antitrust laws. *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516, 2016 U.S. Dist. LEXIS 104647, at *31-37 (D. Conn. Aug. 9, 2016). Regardless, because the underlying antitrust claims fail, the Court should dismiss EPPs' consumer protection claims. *See e.g.*, *Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 U.S. Dist. LEXIS 2968, at *13 (N.D. Cal. Feb. 6, 2001) ("Where a plaintiff fails to state an antitrust claim, and where an unfair competition claim is based upon the same allegations, such

---

Bloomberg article from December 12, 2013)), and (ii) conduct that took place in the public domain in 2013 (*id.* ¶¶ 110-19 (public earnings calls)).

state claims are properly dismissed."). In addition, EPPs' consumer protection claims fail for the independent reasons described below.

A. **EPPs Cannot Use Consumer Protection Laws To Recover for Antitrust Claims Barred under States' Substantive Antitrust Laws.**

EPPs cannot avoid the *Illinois Brick* bar by asserting claims under state consumer protection laws. Courts routinely reject attempts, like EPPs' here, to circumvent *Illinois Brick* by recasting antitrust claims as consumer protection claims.

**Florida.** Florida has not passed an *Illinois Brick* repealer law, so courts have held that antitrust claims by indirect purchasers are not permitted under Florida's antitrust statutes. *See Mack v. Bristol-Byers Squibb Co.*, 673 So. 2d 100, 102 (Fla. Dist. Ct. App. 1996). EPPs evidently know this since they did not assert a Florida antitrust claim in their Second Claim for Relief. Compl. ¶¶ 232-57. EPPs cannot circumvent this limitation by dressing up their antitrust claim as a consumer protection claim. *Dairy Farmers*, 2015 U.S. Dist. LEXIS 84152, at *59-61 (dismissing indirect purchaser claims under the Florida Deceptive and Unfair Trade Practices Act as either barred by *Illinois Brick* or for remoteness).

**Missouri.** Missouri follows *Illinois Brick* and thus bars antitrust claims by indirect purchasers. *Suboxone*, 64 F. Supp. 3d at 701-02 (finding that Missouri law prohibits indirect purchaser antitrust claims); *Asacol*, 2016 U.S. Dist. LEXIS 94605, at *40-41 (same). EPPs must recognize this too since they did not assert a Missouri antitrust claim in the Second Count of their Complaint. Compl. ¶¶ 232-57. EPPs "cannot avoid this state law antitrust prohibition on indirect purchaser suits by making the same claim under Missouri's consumer protection statute." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 192 (D. Me. 2004); *accord Suboxone*, 64 F. Supp. 3d at 702 ("[A]llowing a claim under Missouri's consumer protection law would provide an end-run around the state's prohibition of antitrust

27

claims by indirect purchasers."). Accordingly, the Court should dismiss EPPs' claim under the Missouri Merchandising Practices Act.

**Montana.** EPPs lack standing to bring an action under Montana's antitrust law. *See In re TFT-LCD Antitrust Litig.*, No. 07-cv-1827, 2009 U.S. Dist. LEXIS 17792, at *20-22 (N.D. Cal. Mar. 3, 2009) (dismissing Montana antitrust claim). Courts have found that allowing indirect purchasers to bring price-fixing claims under other Montana laws would inappropriately circumvent the limitations in Montana's antitrust law. *See In re Static Random Access Memory Antitrust Litig.*, No. 07-md-01819 CW, 2010 U.S. Dist. LEXIS 131002, at *49 (N.D. Cal. Dec. 8, 2010); *see also In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 661 n.4 (E.D. Mich. 2011) (dismissing indirect purchasers' Montana consumer protection claim).

**South Carolina.** Similarly, EPPs should not be permitted to use South Carolina's Unfair Trade Practices Act as an end-run around *Illinois Brick*. *Aggrenox*, 2016 U.S. Dist. LEXIS 104647, at *36-37 (holding that "Illinois Brick is decisive" in preventing indirect purchasers from bringing antitrust claims under the South Carolina Unfair Trade Practices Act ("South Carolina UTPA")).

## B.     South Carolina's and Montana's Consumer Protection Statutes Bar Class Actions.

South Carolina's statute provides that a person damaged by violation of South Carolina Unfair Trade Practices Act "may bring an action individually, but not in a representative capacity." S.C. Code Ann. § 39-5-140(a); *see also, e.g.*, *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) ("[C]lass actions are not permissible under SCUTPA."). Similarly, Montana allows consumers to "bring an individual but not a class action" under the Montana Consumer Protection Act. *See* Mont. Code Ann. § 30-14-133(1) (consumers "may bring an individual but not a class action"). Thus, EPPs' class action

claims under these statutes must be dismissed. *See In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1163-65 (D. Minn. 2014) (holding that plaintiffs could not maintain class action under consumer protection statutes in Montana or South Carolina).

#### C.      Consumer Protection Statutes in New Mexico and Rhode Island Are Inapplicable to Antitrust Conduct.

EPPs' consumer protection claims under the laws of New Mexico and Rhode Island must be dismissed because those jurisdictions reject consumer protection actions based on allegations of an antitrust conspiracy.

**New Mexico.** EPPs' claims under the New Mexico Unfair Practice Act must be dismissed because it has been held to be inapplicable to antitrust-related claims. *See GPU I*, 527 F. Supp. 2d at 1029-30 (price-fixing is not the kind of conduct prohibited by New Mexico consumer fraud statute); N.M. Stat. Ann. § 57-12-2(D). Because EPPs do not allege conduct prohibited by this statute, this claim should be dismissed.

**Rhode Island.** The Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws 6-13.1-1 *et seq.*, does not prohibit price-fixing activity. Rather, the statute enumerates 20 specific practices that constitute "[u]nfair methods of competition and unfair or deceptive acts or practices." R.I. Gen. Laws 6-13.1-1(6)(i)-(xx). Price-fixing is not included. The Rhode Island Supreme Court has held that a plaintiff alleging an anticompetitive conspiracy did not state a claim under the UTPCPA because "the behavior complained of does not meet the definition of '[u]nfair methods of competition and unfair or deceptive acts or practices.'" *ERI Max Entm't. Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997) (interpreting R.I. Gen. Laws §§ 6-13.1-1); *see also GPU I*, 527 F. Supp. 2d at 1030-31 (dismissing indirect purchaser claim under Rhode Island consumer protection law); *accord In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1161-62 (N.D. Cal. 2009) ("[P]rice fixing is not within the ambit of the

UTPCPA."); *DRAM*, 516 F. Supp. 2d at 1116 ("[T]he court does not find that plaintiffs'

allegations of price-fixing and conspiracy fall within the enumerated list of conduct and activity

that the UTPCPA defines as 'unfair methods of competition and unfair or deceptive acts or

practices.'"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2010 U.S. Dist.

LEXIS 145617, at *113 (N.D. Cal. Feb. 5, 2010) ("[A] conspiracy to fix prices can be redressed

only under Rhode Island's antitrust statute, and not under its UTPCPA."), *adopted by* 738 F.

Supp. 2d 1011, 1025 (N.D. Cal. 2010).

> **D.     EPPs Fail To Allege Deceptive Conduct as Required Under New York Law.**

Section 349 of New York's General Business Law requires "deceptive conduct" and

"does not cover price-fixing or other antitrust violation" absent deception. *In re Aftermarket*

*Filters Antitrust Litig.*, MDL No. 1957, 2009 U.S. Dist. LEXIS 104114, at *39-40 (N.D. Ill. Nov.

5, 2009); *accord Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200,

205-06 (2004); *In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d

724, 752-53 (D.N.J. 2016) (finding that indirect purchaser failed to state a New York consumer

protection claim because the plaintiffs merely alleged anticompetitive conduct and not deceptive

conduct); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 408-10 (S.D.N.Y. 2011)

(dismissing indirect purchasers New York consumer protection claims because "anticompetitive

conduct that is not premised on consumer deception is not within the ambit of the statute" and

"failure to disclose participation in a purported antitrust conspiracy" is an insufficient allegation

of deception); *Packaged Ice*, 779 F. Supp. 2d at 666-67 (dismissing New York consumer

protection claims because indirect purchaser plaintiffs failed "to plead with specificity the

allegedly deceptive acts or practices that form the basis of [the] claim" and noting that the

statutory language "indicates that anticompetitive conduct that is not premised on consumer

deception is not within the ambit of the statute"); *In re Automotive Refinishing Paint Antitrust*

*Litig.*, 515 F. Supp. 2d 544, 555 (E.D. Pa. 2007) (finding that "mere anticompetitive conduct alone does not constitute deceptive conduct under § 349 and that to come within the scope of the statute, the [c]omplaint must allege some additional deception or misrepresentation").

Moreover, even if EPPs allege deception (they do not), federal and state courts have routinely dismissed price-fixing claims brought under the New York consumer protection statute where plaintiffs alleged deceptive acts *not targeted at consumers*. *See Automotive Refinishing Paint*, 515 F. Supp. 2d at 552-54 ("New York courts . . . have consistently held that when the conduct at issue is between two companies and does not involve the ultimate consumer, it cannot be the basis of a claim under §349."); *New York v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 303 (N.Y. App. Div. 2007); *Paltre v. Gen. Motors Corp.*, 26 A.D.3d 481, 483 (N.Y. App. Div. 2006). Here, EPPs do not allege misrepresentations or deception, let alone any targeted at consumers. Their claims under the New York consumer protection statute must, therefore, be dismissed.

**E.      EPPs Fail to Allege Unconscionable or Deceptive Conduct As Required in Florida and New Mexico.**

Many state consumer protection laws require plaintiffs to allege the existence of "deceptive" or "unconscionable" conduct. "In each of these states, pleading unconscionability requires something more than merely alleging that the price of a product was unfairly high." *GPU I*, 527 F. Supp. 2d at 1029. Unconscionability requires EPPs to plead "grossly unequal bargaining power," *GPU I*, 527 F. Supp. 2d at 1030, or allege a "gross disparity" between the price paid for the drugs and the value received, *Taylor v. United Mgmt.*, 51 F. Supp. 2d 1212, 1217 (D.N.M. 1999). EPPs must prove "not only that one of the parties lacked a meaningful choice but also that the terms of the contract are unreasonably favorable to the other party." *GPU I*, 527 F. Supp. 2d at 1030 (citing *Riggs Nat'l Bank of Washington D.C. v. D.C.*, 581 A.2d 1229,

31

1251 (D.C. 1990)). Here, EPPs do not allege any facts to support their consumer fraud claims beyond those that form the basis of their antitrust claims. Thus, EPPs fail to allege deceptive or unconscionable conduct as required under the following states' laws:

**Florida.** To state a claim under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 ("FDUTPA"), a plaintiff must plead with the particularity required by Federal Rule 9(b) conduct that is unconscionable, unfair, or deceptive. *WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093, 2008 U.S. Dist. LEXIS 61428, at *7-8 (M.D. Fla. Aug. 4, 2008); *see also SunSunoptic Techs., LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-979, 2009 U.S. Dist. LEXIS 23836, *6 (M.D. Fla. Mar. 17, 2009) ("Like fraud, a claim pursuant to the FDUTPA . . . must [] meet the heightened pleading standard under Rule 9(b)."). Pursuant to Rule 9(b), a plaintiff must plead "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 947 (N.D. Ill. 2009), *vacated and remanded on other grounds by Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011). Moreover, "in a case involving multiple defendants, the complaint should inform each defendant of the nature of their alleged participation in the fraud." *Id*. Here, EPPs have not satisfied the heightened pleading requirement of Rule 9(b), and the Court should dismiss their FDUTPA claims. *See, e.g.*, *Refrigerant Compressors*, 2013 U.S. Dist. LEXIS 50737, at *67-69 (dismissing FDUTPA claim on price-fixing theory for failure to plead with requisite Rule 9(b) particularity); *Packaged Ice*, 779 F. Supp. 2d at 665 (same).

**New Mexico**. New Mexico's consumer fraud statute defines an unconscionable trade practice as "an act or practice . . . that to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in

a gross disparity between the value received by a person and the price paid." N.M. Rev. Stat. § 57-12-2(E).

Because no EPP alleges any commercial activity with any Defendant, let alone that Defendants made any deceptive representations or exercised power or position over them, this Court must dismiss the statutory consumer fraud claims in Florida and New Mexico.

### F.    North Carolina Law Requires EPPs to Allege Reliance on a Misrepresentation.

To succeed on their consumer protection claims based in North Carolina, EPPs must allege that Defendants made misrepresentations that were material to EPPs' doxycycline or digoxin purchases and EPPs actually relied on those misrepresentations. *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) ("[A] plaintiff must show reliance on the allegedly misrepresented statement"). EPPs do not allege that Defendants made a false promise or misrepresentation or that EPPs relied on any misrepresentations.

Not only do EPPs fail to plead such facts, the facts they do allege show that the opposite is true. For example, the Complaint states that prices for doxycycline and digoxin are inelastic (i.e., price has little effect on demand) and the drugs lacked substitutes. Compl. ¶¶ 154-64. Thus, by EPPs' own admission, the price of doxycycline or digoxin was not material to their decisions to purchase the drugs, and they did not rely on Defendants' representations when buying the drugs. *See, e.g.*, *Jones v. ConAgra Foods, Inc.*, No. C 12-01633, 2014 U.S. Dist. LEXIS 81292, at *65-66 (N.D. Cal. June 13, 2014) (finding plaintiffs failed to show materiality because they would have purchased products despite defendant's representations). In addition, TPPs could not have relied on any misrepresentation because they do not decide to purchase the drugs, or actually purchase the drugs. Instead, they merely reimburse for the drugs purchased by their

members. Because EPPs do not allege actual reliance on any misrepresentation, this court should dismiss their claims under North Carolina.

> **G.    EPPs' Fail to Sufficiently Allege In-State Injury as Required Under Several States' Consumer Protection Laws.**

Some states' laws require consumer protection claims to arise from purely or primarily intrastate conduct – the same rule that applies in some states for antitrust claims, *see supra* Section IV.D. In the present case, however, EPPs' Complaint expressly pleads that the conduct "substantially affected," "interstate trade and commerce." Compl. ¶ 49. For this reason, this Court should dismiss the following state law consumer protection claims:

**Florida.** FDUTPA is designed to protect consumers who suffer injury within the state. *Coastal Physician Servs. of Broward Cty., Inc. v. Ortiz*, 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 1999) (FDUTPA is "for the protection of in-state consumers"). Florida courts have held that the FDUTPA does not apply to actions that occurred outside of Florida. *Stein v. Marquis Yachts, LLC*, No. 14-24756-CIV, 2015 U.S. Dist. LEXIS 35088, at *18 (S.D. Fla. Mar. 20, 2015) (citing *Coastal Physician Servs. of Broward Cty.*, 764 So. 2d at 8); *Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 226-27 (S.D. Fla. 2002) (holding plaintiffs lacked standing to bring FDUTPA claim because "there is no evidence in the record of any putative class members having suffered any alleged injury in Florida"). EPPs do not allege unfair or deceptive trade practices that occurred in Florida.

**Massachusetts.** To maintain a claim under Massachusetts's consumer protection statute, Mass. Gen. L. ch. 93A, §§ 1 et seq., the allegedly uncompetitive acts complained of must have occurred "primarily and substantially" in Massachusetts. *Picker Int'l, Inc. v. Leavitt*, 865 F. Supp. 951, 970 (D. Mass. 1994); *see also Clinton Hospital Assoc. v. Corson Group, Inc.*, 907

F.2d 1260, 1265-66 (1st Cir. 1990). EPPs have failed to allege any misconduct that took place in Massachusetts.

New York. New York's consumer protection statute only applies if "the transaction in which the consumer is deceived [] occur[s] in New York." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002); *see also Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 214 (E.D. Pa. 2009) (dismissing plaintiffs' claim under New York consumer protection statute because plaintiffs' allegations of deception did not take place in New York.). EPPs here do not allege any conduct that took place in New York.

North Carolina. The Fourth Circuit construes the North Carolina Unfair Trade Practices Act ("NCUTPA") to address "primarily local concerns." *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987) (quoting *Am. Rockwool, Inc. v. Owens-Corning Fiberglas Corp.*, 640 F. Supp. 1411, 1428 (E.D.N.C. 1986); *see also Cast Iron*, 2015 U.S. Dist. LEXIS 121620, at *93 (dismissing NCUTPA claim because "North Carolina federal courts have interpreted the NCUTPA as addressing 'primarily local concerns'" and "Plaintiffs have failed to meaningfully address intrastate commerce with respect to these claims") (quoting *The 'In' Porters*, 663 F. Supp. at 502). EPPs do not allege that Defendants engaged in any wrongful conduct in North Carolina. *See* Compl. ¶ 273 (alleging only the in-state effects of the alleged out-of-state wrongful conducts). And, North Carolina's consumer protection law does not encompass conduct that causes merely "incidental in-state injury"; the in-state injury must be substantial. *Refrigerant Compressors*, 2013 U.S. Dist. LEXIS 50737, at *61-63. Further, indirect purchasers who buy allegedly price-fixed products at inflated prices suffer only an incidental – not a substantial – in-state injury. *Id.* (dismissing North Carolina claims for failure to allege substantial in-state injury where manufacturers and end-users purchased allegedly price-fixed

component parts and finished products). Thus, the Court should dismiss EPPs' North Carolina consumer protection claim.

### H. Massachusetts Requires Statutory Notice as a Prerequisite to Filing Suit.

This Court should dismiss EPPs' Massachusetts consumer protection claim because Massachusetts requires EPPs to send a written demand for relief before filing a complaint. *See* Mass. Gen. Laws ch. 93A § 9(3). This requirement is a "pre-requisite to suit" and is strictly applied by Massachusetts courts. *Flonase*, 692 F. Supp. 2d at 539-40 (citing *Rodi v. S. New England Sch. Of Law*, 389 F.3d 5, 19 (1st Cir. 2004)); *Sheet Metal Workers,* 737 F. Supp. 2d at 411-12; *Suboxone,* 64 F. Supp. 3d at 701. In this case, EPPs never made such a demand.

### I. EPPs' Vermont Consumer Protection Claim Fails Because Defendants Do Not Sell Directly to Consumers.

Vermont's consumer protection law defines a seller as "a person regularly and principally engaged in a business of selling goods or services to consumers." Vt. Stat. Ann. tit. 9 § 2451a(c) (2011). This Court should dismiss EPPs' Vermont claim because EPPs fail to plausibly allege that Defendants fit within this definition by selling directly to consumers. *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2015 U.S. Dist. LEXIS 125999, at *69-70 (D. Mass Aug. 14, 2015) (dismissing Vermont claims where end-payor plaintiffs failed to plausibly allege that defendant pharmaceutical manufacturers sell directly to consumers "as required to fit Vermont's statutory definition of a seller").

### J. TPPs' Consumer Fraud Claims Fail Because They Are Not *Consumers*.

To recover under the consumer protection laws of several states in EPPs' Third Count, TPPs must show that the alleged deception was directed *towards consumers* or relied upon *by consumers*. TPPs are welfare plans that reimburse their members – i.e., consumers – for purchases of doxycycline and digoxin; TPPs are not consumers of the products themselves and

thus their claims under the consumer fraud statutes of California, District of Columbia, and Vermont must be dismissed. *See WellPoint*, 903 F. Supp. 2d at 898 (California: "[P]rivate enforcement actions may be brought only by 'one who has suffered injury in fact and has lost money or property as a result of the unfair competition.'") (citing *Amalgamated Transit Union, Local 1756 v. Superior Court*, 46 Cal.4th 993, 1000 (2009)); *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 172 (D.D.C. 2013) (D.C. Consumer Protection Procedures Act "applies only to *consumer-merchant* relationships"); *Aggrenox*, 2016 U.S. Dist. LEXIS 104647, at *38 (Vermont: "That definition of 'consumer' allows business to sue as consumers with respect to the products that they *use* as consumers. The fact that Humana's members are consumers, and that Humana co-purchases or reimburses for consumer products that its members use, does not make Humana a consumer of those products.").

In addition, the consumer fraud statutes in the District of Columbia, Hawaii, Missouri, Montana, and Rhode Island limit the class of plaintiffs who may pursue private actions to those who purchased or leased "goods or services primarily for personal, family, or household purposes." D.C. Code § 28-3901(a)(2)(B)(i); Haw. Rev. § 480-1; Mo. Rev. Stat. § 407.025(1); Mont. Code Ann. § 30-14-102(1); R.I. Gen. Laws. § 6-13.1-5.2(a). Because TPPs do not and cannot allege that they purchased doxycycline or digoxin for personal, family, or household purposes, their consumer fraud claims fail as a matter of law for these states. *See Cast Iron*, 2015 U.S. Dist. LEXIS 121620, at *84 (rejecting claims under the District of Columbia Consumer Protection statute where "the ultimate retail transaction" was not "between the final distributor and the individual member of the consuming public"); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1164-65 (N.D. Cal. 2015) (holding that a TPP was not a consumer and therefore dismissing its claim under the consumer protection statutes of the District of Columbia and

Montana, even though it alleged to be a joint "end payor for Lidoderm patches"); *United Food & Commer. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc*., 74 F. Supp. 3d 1052, 1082-83 (N.D. Cal. 2014) (dismissing health plan's claims under Missouri's consumer protection statute because it did not purchase for personal or family consumption); *Cast Iron*, 2015 U.S. Dist. LEXIS 121620, at \*86-87 (dismissing claim under Missouri's consumer protection statue because the indirect plaintiffs did not purchase for personal, family, or household purposes); *Sheet Metal Workers*, 737 F. Supp. 2d at 422-23 (citing *Rhode Island Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris*, 99 F. Supp. 2d. 174, 188-89 (D.R.I. 2000)) (dismissing TPP claims under Rhode Island consumer protection law because the plans did not allege, nor did the facts suggest, that any of its purchases of the defendants' goods were intended to be used primarily for personal, family, or household purposes); *Asacol*, 2016 U.S. Dist. LEXIS 94605, at \*41, 49-50 (same for Hawaii and Missouri).

### K.   Businesses Do Not Have Standing to Bring a Claim under Massachusetts's Consumer Protection Law.

Here, no consumer named plaintiff resides in Massachusetts. EPPs instead rely on certain reimbursements that TPPs made to their members who allegedly purchased digoxin or doxycycline in Massachusetts. However, business organizations, like TPPs, do not have standing to bring indirect purchaser antitrust claims under Massachusetts's consumer protection law. Section 9 of Massachusetts Consumer Protection Law, Chapter 93A, applies to consumers who engage in a transaction for "personal reasons," and Section 11 applies to businesses that are "motivated by business considerations." *Frullo v. Landenberger*, 814 N.E.2d 1105, 1112 (Mass. App. Ct. 2004). TPPs are businesses that must seek relief under Section 11. Section 11 includes a specific provision requiring any action brought under it to be guided by the Massachusetts

38

Antitrust Act, and by association, *Illinois Brick*. *See* Mass. Gen. L. ch. 93A § 11; *Aggrenox*, 2016 U.S. Dist. LEXIS 104647, at *33-36 (quoting *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 57-58 (2002). Thus, Courts have consistently held that non-consumer plaintiffs, like TPPs, may not maintain a cause of action under Massachusetts's consumer protection law when the conduct complained of would give rise to an antitrust claim. *See, e.g., Asacol*, 2016 U.S. Dist. LEXIS 94605, at *42-44 (dismissing Massachusetts consumer protection law claim by Health Fund Plaintiffs because Section 11 must be interpreted consistent with *Illinois Brick*); *United Food & Commercial Workers Local 1776*, 74 F. Supp. 3d at 1086 (concluding that an employee health and welfare plan plaintiff had no standing under Chapter 93A). Thus, this Court should dismiss TPPs' Massachusetts's consumer protection claim.

### L.    EPPs' Consumer Protection Claim Under Montana Law is Time Barred.

The statute of limitations under the Montana Unfair Trade Practices Act is two years after the plaintiff discovered or should have discovered the facts constituting the claim. *See* Mont. Code Ann. § 27-2-211 (applicable limitations period); Mont. Code Ann.§§ 27-2-102(1)-(3) (rules governing accrual of cause of action); *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441 (Mont. 2003). EPPs claim that the alleged conspiratorial price increases began in the "fall of 2012" for doxycycline and in the fall of 2013 for digoxin. Compl. ¶¶ 84, 87. However, the first action was not filed against Defendants until March 2016, more than three years after the alleged conspiracy began. As a result, EPPs are time barred from bringing their Montana consumer protection claim.

## VI.    EPPS' UNJUST ENRICHMENT CLAIMS FAIL AS A MATTER OF LAW.

Like their state antitrust and consumer protection claims, EPPs' unjust enrichment claims also fail as a matter of law for reasons beyond their failure to sufficiently allege an agreement to raise prices.

**A.      EPPs Fail to Plead an Unjust Enrichment Claim Under the Law of Any
State.**

As an initial matter, EPPs' unjust enrichment claims fail because EPPs simply state that

they purport to bring these claims "under the law of the District of Columbia and the laws of all

states and territories of the United States, except Ohio and Indiana" (Compl. Count IV, ¶ 15)

without addressing any of the elements they must satisfy to advance each of these unjust

enrichment claims. Because the elements vary widely from state to state, unjust enrichment

claims "must be brought under the specific laws of each state." *Aftermarket Filters*, 2009 U.S.

Dist. LEXIS 104114, at *41-42. Where "unjust enrichment claims fail to account for any

consequential differences that may exist among the undifferentiated state-law claims . . . [t]he

bald assertion that the alleged antitrust conduct violates dozens of non-antitrust laws, or the

implication that there are no consequential differences between those laws, is not entitled to

deference, because 'the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.'" *In re Opana ER Antitrust Litig.,* 162 F. Supp. 3d

at 726 (quoting *Iqbal,* 556 U.S. at 678). Thus, EPPs "have listed claims under various state laws,

but they have not truly <u>pleaded</u> claims under those laws sufficient to show their entitlement to

recovery under them, as required by Fed. R. Civ. P. 8." *Id.* EPPs' unjust enrichment claims

should be dismissed on this basis alone.

**B.      EPPs Cannot Use Unjust Enrichment as an "End Run" Around *Illinois
Brick*.**

Plaintiffs purport to bring unjust enrichment claims under the laws of 48 states and the

District of Columbia, but 24 of those jurisdictions have not repudiated *Illinois Brick's* prohibition

against indirect purchaser damages actions ("*Illinois Brick* states"). *See* Appendix D. All unjust

enrichment claims brought under the laws of *Illinois Brick* states must be dismissed. *See*

*Lidoderm*, 103 F. Supp. 3d at 1175 (plaintiffs "cannot make an 'end run' around *Illinois Brick* by

40

relying on [their] unjust enrichment claim for states that would allow unjust enrichment claims to proceed"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1191-92 (N.D. Cal. 2009) (allowing plaintiffs to "bring an unjust enrichment claim when that same claim would be barred under state antitrust law . . . would allow plaintiffs to circumvent limitations of state antitrust law"); *New Motor Vehicles,* 350 F. Supp. 2d at 211 ("I conclude that it would subvert the statutory scheme to allow these same indirect purchasers to secure, for the statutory violation, restitutionary relief at common law (or in equity)."); *In re Opana ER Antitrust Litig.*, No. 14 C 10150, 2016 U.S. Dist. LEXIS 105915, at *9 (N.D. Ill. Aug. 11, 2016) ("Allowing EPPs to maintain their Illinois and Rhode Island unjust enrichment claims would enable them to sidestep impermissibly those states' prohibitions on antitrust recovery for indirect purchasers."); *Solodyn*, 2015 U.S. Dist. LEXIS 125999, *71-72 (dismissing unjust enrichment claims under Colorado, Connecticut, Delaware, Georgia, Kentucky, Maryland, Pennsylvania, South Carolina, Texas, and Virginia because those states do not permit indirect purchaser antitrust actions). Accordingly, EPPs' unjust enrichment claims under the laws of Alaska, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Virginia, Washington, and Wyoming must be dismissed.

      **C.    A Number of States Allow Unjust Enrichment Claims Only Where Plaintiffs Conferred a Direct Benefit on Defendants.**

      To recover for unjust enrichment under Alabama, Arizona, the District of Columbia, Florida, Georgia, Idaho, Iowa, Kansas, Maine, Maryland, Michigan, Missouri, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, and Utah law, a plaintiff must confer a benefit directly on the defendant. *See* Appendix E; *see also, e.g., In re Aftermarket Filters Antitrust Litig.*, MDL No. 1957, 2010 U.S. Dist. LEXIS

32652, at *18-20 (N.D. Ill. Apr. 1, 2010) (dismissing indirect purchasers' unjust enrichment

claims under Kansas, Maine, Michigan, North Carolina, Utah, and Wyoming law because they

did not confer a direct benefit on defendant); *Potash*, 667 F. Supp. 2d at 948 (same under

Kansas, Florida and Michigan law); *Flonase*, 692 F. Supp. 2d at 544-46 (same in Florida and

North Carolina); *Sheet Metal Workers,* 263 F.R.D. at 216 (same in New York). Here, EPPs do

not allege that they dealt with directly or conferred a direct benefit on any Defendant. In fact,

EPPs concede that they purchased digoxin and/or doxycycline "indirectly." Compl. ¶ 3. By

definition, *indirect* purchasers do not confer a *direct* benefit on any defendant. EPPs' unjust

enrichment claims under these states, therefore, fail on their own terms.

> **D.     Unjust Enrichment is Not an Independent Cause of Action in Some States.**

EPPs' claims for unjust enrichment under the laws of California, Mississippi, and New

Hampshire should be dismissed for the additional reason that these states recognize unjust

enrichment only as a remedy, not a standalone cause of action. *See Hill v. Roll Int'l Corp*., 128

Cal. Rptr. 3d 109, 118 (Cal. Ct. App. 2011) ("Unjust enrichment is not a cause of action, just a

restitution claim."); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App.

2003) ("[T]here is no cause of action in California for unjust enrichment."); *Smith v. Ford Motor

Co.*, 462 F. App'x 660, 665 (9th Cir. 2011) (affirming district court's dismissal of California

unjust enrichment claim on basis that "unjust enrichment is not an independent cause of action in

California"); *Cole v. Chevron USA, Inc*., 554 F. Supp. 2d 655, 671 (S.D. Miss. 2007) ("Under

Mississippi law, unjust enrichment is not an independent theory of recovery."); *Gen. Insulation

Co. v. Eckman Canst*., 992 A.2d 613, 621 (N.H. 2010) ("[U]njust enrichment generally does not

form an independent basis for a cause of action.").

Similarly, the viability of an unjust enrichment claim as an independent cause of action is

unsettled in Illinois. *Niaspan*, 42 F. Supp. 3d at 764 (dismissing Illinois unjust enrichment

claim). But even if it were viable under Illinois law, an unjust enrichment claim that "rests on the same improper conduct alleged in another claim . . . [] will stand or fall with the related claim." *Krug v. Am. Family Mut. Ins. Co.,* No. 16-c-4531, 2016 U.S. Dist. LEXIS 64961, at *7-8 (N.D. Ill. May 17, 2016) (dismissing plaintiff's complaint where plaintiff failed to establish that his unjust enrichment claim was based on allegations distinct from the underlying ICFA claim) (quoting *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011)); *see also Martis v. Grinnell Mut. Reinsurance Co.,* 905 N.E.2d 920, 927-28 (Ill. App. Ct. 2009) (dismissing claim for unjust enrichment where underlying claim under the Illinois Consumer Fraud Act was insufficient). EPPs' unjust enrichment claim is based on the same allegations as their claim under the Illinois Antitrust Act, and therefore should be dismissed with that claim.

### E.    Tennessee Requires Plaintiffs To Plead Exhaustion of Remedies.

To recover for unjust enrichment under Tennessee law, a plaintiff must demonstrate that he or she has exhausted all remedies against the party with whom the plaintiff is in privity. *Freeman*, 172 S.W.3d at 525; *see also, e.g.*, *D.R. Ward. Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 509 (E.D. Pa. 2006) (dismissing Tennessee unjust enrichment claim because plaintiffs failed to allege "that, prior to filing suit against defendants, plaintiffs pursued remedies against the parties from which plaintiffs purchased" the allegedly price-fixed product). EPPs have alleged no facts suggesting that they sought to recover damages from the retailers from whom they purchased their products. As a result, EPPs' Tennessee unjust enrichment claim must be dismissed.

### F.    Several States Require Plaintiffs To Plead that They Lack an Adequate Legal Remedy.

Plaintiffs' unjust enrichment claims under several states, including Arizona, Minnesota, Montana, New Hampshire, New York, South Dakota, Tennessee, and Utah fail because they

have not pled that they lack an adequate legal remedy. In Arizona, the *prima facie* claim for

unjust enrichment includes the element of the "absence of an adequate remedy provided by law."

*Community Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995) (citing *City of

Sierra Vista v. Cochise Enter., Inc.*, 697 P.2d 1125, 1131(Ariz. Ct. App. 1984)); *accord State v.

Ariz. Pension Planning,* 739 P.2d 1373, 1376 (Ariz. 1987). The laws of the other states similarly

prevent a plaintiff from pleading an unjust enrichment claim if they have an adequate remedy at

law. *Samiento v. World Yacht Inc*., 883 N.E.2d 990, 996 (N.Y. 2008) ("As to plaintiffs' third

cause of action for unjust enrichment, this action does not lie as plaintiffs have an adequate

remedy at law and therefore this claim was likewise properly dismissed"); *Trustmark Ins. Co. v.

Bank One, Ariz, NA,* 48 P.3d 485, 491 (Ariz. Ct. App. 2002) (plaintiffs must show the absence of

a legal remedy to succeed on an unjust enrichment claim); *Southtown Plumbing, Inc. v. Har-Ned

Lumber Co., Inc.,* 493 N.W.2d 137, 140 (Minn. 1992) ("It is well settled in Minnesota that one

may not seek a remedy in equity when there is an adequate remedy at law"); *Kelley v. Coll. of St.

Benedict*, 901 F. Supp. 2d 1123, 1132-33 (D. Minn. 2012) (dismissing claim for unjust

enrichment because an adequate legal remedy was available); *N. Cheyenne Tribe v. Roman

Catholic Church ex rel. Dioceses of Great Falls/Billings,* 296 P.3d 450, 457 (Mont. 2013)

(noting, in the context of a constructive trust, "claim[s] for unjust enrichment .. . should be

limited to situations in which no other remedy exists"); *E. Elec. Corp. v. FERD Canst., Inc.,* No.

05-cv-303, 2005 U.S. Dist. LEXIS 33256, at *5 (D.N.H. Dec. 15, 2005) ("Equitable remedies are

not available in New Hampshire courts when the plaintiff has an adequate legal remedy.");

*Parsons Infrastructure & Tech. Grp., Inc. v. Gilbane Bldg. Co.,* No. 05-cv-01-PB, 2005 U.S.

Dist. LEXIS 27030, at *2-3 (D.N.H. Nov. 7, 2005) (dismissing an unjust enrichment claim

where plaintiff had an adequate legal remedy); *Rindal v.Sohler*, 658 N.W.2d 769, 772 (S.D.

44

2003) ("An essential element to equitable relief in South Dakota "is the lack of an adequate remedy at law."); *Furlough v. Spherion Atl. Workforce, LLC,* 397 S.W.3d 114, 134 (Tenn. 2013) (holding that equitable relief is unavailable unless plaintiff can show "there is no other available or adequate remedy"); *VCS, Inc. v. Utah Community Bank*, 293 P.3d 290, 299 & n.16 (Utah 2012) (unjust enrichment is only available under Utah law after a party "first 'exhaust[s] all legal remedies available") (citations omitted). These rules apply even if the Court finds that EPPs have failed to sufficiently plead the alternative claims. *See, e.g., Dooner v. Yuen,* No. 16-1939, 2016 U.S. Dist. LEXIS 143455, at *8-9 (D. Minn. Oct. 17, 2016). Accordingly, EPPs' duplicative unjust enrichment claims must be dismissed.

### G. EPPs' Unjust Enrichment Claims Under Illinois and South Carolina Law Fail Because EPPs Have Not Alleged a Special Duty Owed by Defendants.

EPPs' unjust enrichment claims under Illinois and South Carolina law should be dismissed because those states require a special duty to impose liability for unjust enrichment. Under Illinois law, "[f]or a cause of action based on a theory of unjust enrichment to exist, there must be an independent basis that establishes a duty on the part of the defendant to act[,]" so "a plaintiff fails to state a cause of action . . . absent an allegation of duty." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) (*citing Lewis v. Lead Indus. Ass'n*, 792 N.E.2d 869, 876 (Ill. App. Ct. 2003)); *see also Philadelphia Indem. Ins. Co. v. Pace Suburban Bus Serv.*, 67 N.E.3d 556, 570 (Ill. App. Ct. 2016) (requiring a duty on the part of defendant to act in order for a cause of action based on unjust enrichment to exist).

Likewise, under South Carolina law, a plaintiff bringing a claim for unjust enrichment "must establish the existence of a duty owed to him or her by the defendant." *In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) (citing *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E. 2d 868, 873 (S.C. 2000)); *see also Pitts v. Jackson Nat 'l Life*

*Ins. Co.*, 574 S.E. 2d 503, 512 (S.C. Ct. App. 2002) ("[Plaintiff] failed to establish any duty to disclose or other cause of action that would allow recovery for unjust enrichment. . . . There was no breach of fiduciary duty or fraud involved."). Here, EPPs allege no such duty.

## CONCLUSION

For the foregoing reasons, none of EPPs' claims can survive a motion to dismiss. The Court should dismiss EPPs' Complaint, in its entirety, with prejudice.

Dated: March 28, 2017                         Respectfully submitted,

| | |
|---|---|
| */s/ Jan. P. Levine* | */s/ Raymond A. Jacobsen, Jr.* |
| Jan P. Levine | Raymond A. Jacobsen, Jr. |
| Robin P. Sumner | Paul M. Thompson |
| Michael Jay Hartman | Lisa A. Peterson |
| PEPPER HAMILTON LLP | MCDERMOTT WILL & EMERY LLP |
| 3000 Two Logan Square | 500 N. Capitol St. NW |
| 18th & Arch Streets | Washington, D.C. 20001 |
| Philadelphia, PA 19103-2799 | Tel. 202-756-8000 |
| Tel. 215-981-4000 | rayjacobsen@mwe.com |
| levinej@pepperlaw.com | pthompson@mwe.com |
| sumnerr@pepperlaw.com | lpeterson@mwe.com |
| hartmanm@pepperlaw.com | |
| | David L. Hanselman Jr. |
| Jeffrey A. Carr | MCDERMOTT WILL & EMERY LLP |
| PEPPER HAMILTON LLP | 227 W. Monroe St. |
| 301 Carnegie Center, Suite 400 | Chicago, IL 60605-5096 |
| Princeton, NJ 08543-5276 | Tel. 312-984-3610 |
| Tel. 609-951-4116 | dhanselman@mwe.com |
| carrj@pepperlaw.com | |
| | Nicole L. Castle |
| Keith J. Harrison | MCDERMOTT WILL & EMERY LLP |
| Shari Ross Lahlou | 340 Madison Ave. |
| Astor H.L. Heaven | New York, NY 10173 |
| CROWELL & MORING LLP | Tel. 212-547-5400 |
| 1001 Pennsylvania Avenue, NW | ncastle@mwe.com |
| Washington, D.C. 20004-2595 | |
| Tel. 202-624-2500 | *Counsel for Impax Laboratories, Inc.* |
| kharrison@crowell.com | |
| slahlou@crowell.com | |
| aheaven@crowell.com | |
| | |
| *Counsel for West-Ward Pharmaceuticals Corp.* | |

| | |
|---|---|
| */s/ Gerald E. Arth*<br>Gerald E. Arth<br>Theodore H. Jobes<br>Ryan T. Becker<br>FOX ROTHSCHILD LLP<br>2000 Market Street, 20th Floor<br>Philadelphia, PA 19103<br>Tel: (215) 299-2720<br>Fax: (215) 299-2150<br>garth@foxrothschild.com<br>tjobes@foxrothschild.com<br>rbecker@foxrothschild.com<br><br>George G. Gordon<br>Stephen D. Brown<br>Julia Chapman<br>Christopher M. Trueax<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-2382<br>Fax: (215) 655-2240<br>george.gordon@dechert.com<br>stephen.brown@dechert.com<br>julia.chapman@dechert.com<br>christopher.trueax@dechert.com<br><br>*Counsel for Lannett Co., Inc.* | */s/ Marc E. Kasowitz*<br>Marc E. Kasowitz<br>Hector Torres<br>Sheron Korpus<br>Seth B. Davis<br>Seth A. Moskowitz<br>David M. Max<br>KASOWITZ BENSON TORRES LLP<br>1633 Broadway<br>New York, NY 10019<br>Tel. (212) 506-1700<br>mkasowitz@kasowitz.com<br>htorres@kasowitz.com<br>skorpus@kasowitz.com<br>sdavis@kasowitz.com<br>smoskowitz@kasowitz.com<br>dmax@kasowitz.com<br><br>*Counsel for Actavis Holdco U.S., Inc.* |
| */s/ John E. Schmidtlein*<br>John E. Schmidtlein<br>Sarah F. Teich<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 434-5000<br>Facsimile: (202) 434-5029<br>jschmidtlein@wc.com<br>steich@wc.com<br><br>*Counsel for Par Pharmaceutical, Inc.* | */s/ Chul Pak*<br>Chul Pak<br>Jeffrey C. Bank<br>WILSON SONSINI GOODRICH & ROSATI PC<br>1301 Avenue of the Americas, 40th Flr.<br>New York, NY 10019<br>Tel. 212-999-5800<br>jbank@wsgr.com<br>cpak@wsgr.com<br><br>Seth C. Silber<br>WILSON SONSINI GOODRICH & ROSATI PC<br>1700 K. St., 5th Flr.<br>Washington, D.C. 20006<br>silber@wsgr.com<br>HOGAN LOVELLS US LLP<br>Alexander B. Bowerman |

| | |
|---|---|
| | 1835 Market St. 29th<br>Philadelphia, PA 19103<br>Tel. 267-675-4664<br><br>*Counsel for Mylan Pharmaceuticals, Inc.* |
| */s/ Michael Martinez*<br>Michael Martinez<br>Steven Kowal<br>Lauren Norris Donahue<br>Brian J. Smith<br>K&L GATES LLP<br>70 W. Madison St.<br>Suite 3100<br>Chicago, IL 60602<br>Tel. 312-372-1121<br>michael.martinez@klgates.com<br>steven.kowal@klgates.com<br>lauren.donahue@klgates.com<br>brian.j.smith@klgates.com<br><br>*Counsel for Mayne Pharma Inc.* | */s/ J. Douglas Baldridge*<br>J. Douglas Baldridge<br>Lisa Jose Fales<br>Danielle R. Foley<br>VENABLE LLP<br>575 7th Street, NW<br>Washington, DC 20004<br>Tel. 202-344-4000<br>jbaldridge@venable.com<br>ljfales@venable.com<br>drfoley@venable.com<br><br>Thomas J. Welling<br>VENABLE LLP<br>1270 Avenue of the Americas<br>24th Floor<br>New York, NY 10020<br>Tel. 212-307-5500<br>tjwelling@venable.com<br><br>*Counsel for Sun Pharmaceutical Industries, Inc.* |