**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>Case No. 2:16-MD-02724<br><br>Hon. Cynthia M. Rufe |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**INTERVENOR UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
CROSS-MOTION TO EXTEND STAY OF DISCOVERY**

Intervenor United States of America respectfully submits this Memorandum in support of its cross-motion to extend the discovery stay for six additional months. The Court has already stayed discovery until after it has resolved the United States' cross-motion, the Defendants' motion to stay discovery pending resolution of their motions to dismiss, and any cross-motions filed by Plaintiffs.[1] *See* ECF Nos. 427, 492. A stay of at least six months from the date the Court rules on this motion is appropriate and would serve to protect the public interest in limiting interference with an important, ongoing criminal investigation.

**I.  BACKGROUND**

The United States is conducting a criminal investigation of companies and individuals in the generic pharmaceutical industry for possible collusion to inflate drug prices and allocate customers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Two former high-level executives of a generic pharmaceutical company have already pled guilty to fixing prices, allocating customers, and rigging bids related to the sale of doxycycline hyclate, and fixing

---

[1] This Memorandum refers to the Direct Purchaser Plaintiffs, End-Payer Plaintiffs, Indirect Reseller Plaintiffs, and state attorneys general collectively as "Plaintiffs."

prices and allocating customers related to the sale of glyburide. *See United States v. Glazer*, 2:16-cr-506-RBS, ECF No. 1 (E.D. Pa. Dec. 12, 2016); *United States v. Malek*, 2:16-cr-508-RBS, ECF No. 1 (E.D. Pa. Dec. 13, 2016). Evidence uncovered during the criminal investigation implicates other companies (including a significant number of the Defendants here) and individual employees in collusion with respect to doxycycline hyclate, glyburide, and other drugs (including a significant number of the drugs at issue here).[2] *See* Phelan Declaration at ¶ 8.[3]

Because civil discovery would interfere with that ongoing criminal investigation, the United States has taken steps to prevent such interference. On May 1, 2017, soon after the Joint Panel on Multidistrict Litigation expanded the scope of the MDL, the United States moved to stay all discovery until 30 days after Plaintiffs filed consolidated amended complaints. ECF No. 279. The United States later moved to extend the discovery stay until after the Court resolves the Defendants' motion to further extend the stay and any related cross-motions. ECF No. 426. The Court granted both motions. *See* ECF Nos. 347, 427. As a result, discovery is currently stayed until at least December 15, 2017 (the day when briefing on Defendant's motion and related cross-motions will be completed). *See* ECF No. 511.

While the present discovery stay has been in effect, the United States met and conferred with Plaintiffs in good faith to explore the possibility that some limited civil discovery could proceed without unduly interfering with the criminal investigation. The Division ultimately determined, however, that allowing civil discovery at this stage presents too great a risk to the

---

[2] Still more companies and individuals, and additional drugs, may be implicated as the investigation continues to develop.

[3] The Declaration of Lisa M. Phelan is being provided to this Court ex parte, in camera.

effective and efficient investigation and prosecution of possible criminal conduct. The United States therefore requests that all discovery be stayed for six more months to enable the criminal investigation to proceed unimpeded and unhindered by competing civil discovery demands.[4] This stay is necessary to protect the public interest in speedy and effective resolution of the criminal matter.

**II.     ARGUMENT**

Defendants contend that, in deciding whether to stay discovery, this Court should "balance the prejudice to the party opposing the stay, the burden that discovery would impose on the moving party, and the effect of a stay on the efficiency of the proceedings." ECF No. 492-1, at 10 (citing *McLafferty v. Deutsche Lufthansa A.G.*, No. 08-1706, 2008 WL 4612856 (E.D. Pa. Oct. 14, 2008)). While that standard may apply in many civil cases, courts in this district have applied a different test in cases like this one, where civil discovery would interfere with an ongoing parallel criminal investigation. Under the framework that applies here, courts balance "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.,* 87 F.R.D. 53, 56 (E.D. Pa. 1980). An appropriate balancing of these factors strongly favors a complete stay of discovery to protect "the public[] interest in effective enforcement of the

---

[4] The United States anticipates that it may seek to further extend the discovery stay if the status of the criminal investigation and this case warrant such an extension.

3

antitrust laws." *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 352 (3d Cir. 2016) (internal quotation marks omitted).

> **A.      Staying Civil Discovery Advances the Public Interest in Efficient Prosecution of Criminal Conduct.**

The fifth *Golden Quality* factor calls for an analysis of the public interests at stake in the pending criminal investigation and in this civil case. If coordinated appropriately, both matters have the potential to advance the public interest in effective enforcement of the antitrust laws. But allowing civil discovery to proceed at this time will interfere with and slow down the criminal investigation, potentially undermining the United States' ability to hold companies and individuals criminally accountable.

The Antitrust Division has not always sought to stay all civil discovery while a criminal investigation is ongoing, and in some cases the Division has agreed to certain narrow categories of discovery with the aim of avoiding the worst harms from unlimited discovery. But this experience has demonstrated that a complete stay of discovery in the current case is the best way to ensure that the parallel criminal investigation proceeds unimpeded. Here, the United States carefully considered whether it would be possible to accommodate civil discovery and explored that question in extensive discussions with Plaintiffs. Despite these efforts, the United States concluded that even limited discovery in an MDL of this magnitude threatens to undermine the criminal investigation. *See* Phelan Declaration at ¶ 19. Opening the gates to discovery at this stage threatens to significantly divert the companies and individuals under investigation, many of whom are or may be Defendants in this action, from promptly engaging with the United States about their potential criminal exposure.

As the Antitrust Division has learned, civil defendants' potential exposure can significantly affect their willingness to come forward to the Division with information about

possible criminal conduct.[5] *See* Phelan Declaration at ¶ 18. Criminal investigations, particularly for antitrust violations, advance most effectively when companies not only respond to grand jury subpoenas, but also cooperate with prosecutors voluntarily. In the Division's experience, defendants may be less inclined to do so before the scope of civil claims has been determined. If a company believes that any information it provides to the Department of Justice will be revealed to civil plaintiffs even before those plaintiffs have been determined to have stated valid claims based on facts unearthed by their own independent investigation, that company may decide not to cooperate with the government at all—or may do so only at a greatly reduced level—<u>not</u> in an effort to evade criminal responsibility, but to manage its potential exposure in private civil damages actions. Companies in that situation recognize that private plaintiffs, to maximize potential damages, will understandably use whatever information they can glean from those documents to expand their allegations (consistent, of course, with Rule 11) as much as possible and still be able to withstand a motion to dismiss, even though the facts ultimately may not support every allegation. In this way, private plaintiffs' natural incentives to expand their possible relief and maximize potential damages may interfere significantly with the government's ability to carry out its mission to protect competition and consumers.

Moreover, as companies do not have infinite resources to address legal issues, they likely are forced to triage responses and focus efforts on the nearest deadlines. As a result, companies confronted with civil litigation while also facing a criminal investigation may delay their

---

[5] Congress has also recognized the impact that civil liability can have on decisions whether to cooperate with criminal investigations. In the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Congress provided that a civil defendant that had received criminal leniency from the Antitrust Division may, if it satisfies additional cooperation requirements, limit its liability to single damages without joint and several liability in related civil actions. *See* Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 118 Stat. 661, 665 (2004).

5

decision to cooperate with the criminal investigation and accept responsibility. In a complex antitrust matter, such as in the present case, those resource constraints are heightened. Over time, the Division has seen these practicalities impact the timing of cooperation with criminal investigations. *See* Phelan Declaration at ¶ 18. And when companies must respond not only to a civil complaint but also to extensive discovery demands, they have even fewer resources available to cooperate with criminal enforcers.

In many ways, this MDL illustrates how civil litigation can distract companies from addressing their criminal exposure in a timely fashion. First, there are more than 50 pending civil complaints filed on behalf of private plaintiffs, and the first round of briefing on the first group of drugs entitles Defendants to file approximately 450 pages of briefing in support of their motions to dismiss, even before reply briefs and group two and three drugs are considered.[6] *See* ECF No. 388. Second, the state attorneys general intend to file an amended complaint involving a "significant number" of drugs. ECF No. 498, at 27:8-11. Any new drugs identified in that pleading or any new details revealed about drugs already at issue may cause the private plaintiffs to file additional or further amended complaints, which could moot all of the motions that Defendants have already filed and force the parties and this Court to start over on a new round of briefing to address the new allegations. Third, that process could repeat again and again as new aspects of the criminal investigation become public or the state attorneys general file new civil complaints. Every ounce of effort that Defendants devote to these labors diminishes their focus on the criminal investigation and delays resolution of that investigation, thus ultimately delaying resolution of this MDL.

---

[6] The United States does not know how many pages of briefing were filed in connection with the motions to dismiss because filings were made under seal and the Defendants did not serve copies on the United States.

The adverse effects on cooperation provided to the criminal investigation would be even further compounded if, in addition to responding to Plaintiffs' many and likely expanding allegations, Defendants also had to respond to significant discovery demands at the same time. If the Court allows the discovery to proceed, Defendants would have to concentrate on collecting, reviewing, and producing documents, responding to written interrogatories, and preparing for and attending depositions. All of the hours spent on those projects would be unavailable for other activities that might advance the criminal investigation, such as searching for evidence of additional criminal conduct, participating in interviews, and negotiating resolutions of potential charges.

> **B.** **Staying Civil Discovery Advances the Public Interest in Protecting the Integrity of the Criminal Investigation.**

In addition to concerns that any form of civil discovery will limit Defendants' willingness and ability to cooperate with the criminal investigation, civil discovery would allow Defendants to access information earlier than permitted by the Federal Rules of Criminal Procedure,[7] and before criminal charges are even filed. For example, Defendants might seek discovery from each other or from the state attorneys general to obtain documents that they would not receive from the United States until much later. Indeed, courts have recognized that "through the liberal discovery allowances of our rules of civil procedure, a criminal defendant should not be permitted to secure that to which he is not entitled under the rules of criminal procedure." *United States v. One 1967 Buick Hardtop Electra 225*, 304 F. Supp. 1402, 1403 (W.D. Pa. 1969); *see also Saunders v. City of Philadelphia*, No. 97-3251, 1997 WL 400034, at *4 (E.D. Pa. July 11, 1997) ("Courts that have addressed analogous situations to the one here have sought to

---

[7] *See* Fed. R. Crim. P. 16.

harmonize the differences between civil and criminal discovery rules, so as not to allow a civil litigant to discover through civil discovery what he could not get through criminal discovery."); *S.E.C. v. Mersky*, No. CIV. A. 93-5200, 1994 WL 22305, at *4 (E.D. Pa. Jan. 25, 1994) ("[J]udicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to another.") (internal citation omitted).

### C. Staying Civil Discovery Will Best Serve the Public Interest in Private Antitrust Enforcement.

The United States is "primarily charged by Congress with the duty of protecting the public interest under [the antitrust] laws," and civil lawsuits brought by private plaintiff can only "supplement[] Government enforcement of the antitrust laws[.]" *See United States v. Borden Co.*, 347 U.S. 514, 518 (1954); *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 249 (3d Cir. 2010) (citing *Borden* with approval and noting that "the Government's right and duty to seek an injunction to protect the public interest exist without regard to any private suit or decree"); *Goldlawr, Inc. v. Shubert*, 169 F. Supp. 677, 691 (E.D. Pa. 1958) ("If such a conspiracy affecting the public interest does exist the party to take appropriate action under the antitrust laws in the public interest is the Attorney General, not the plaintiff.").

The public's interest is most directly and immediately served by the prompt completion of a criminal investigation that roots out the unlawful conduct and brings the wrongdoers to justice. The public's interest in recovery of damages through the private class action mechanism, while important, nonetheless is less acute than its interest in a thorough and effective criminal investigation. As the court stated in *Golden Quality*, "the public interest in the vigorous prosecution of private antitrust claims must be less acute where, as here, the United States has decided to devote a part of its prosecutorial resources to bringing a criminal action." 87 F.R.D.

8

at 58; *see also In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *6 (E.D. Pa. May 13, 2003) (citation omitted) ("The public interest is not harmed by staying the civil action…. While the Court agrees that the public has a strong interest in protecting capital markets, the related criminal proceedings serve to advance those same interests. Accordingly, the public interest may be served by staying the civil cases pending resolution of the criminal proceedings."). Indeed, the public's interest is not harmed by the stay of discovery the United States seeks here.

When civil actions threaten the integrity of the federal government's ongoing criminal investigation, the public interest is best served by allowing the criminal investigation to fully develop before any parallel civil discovery can interfere. Thus courts have often granted applications to stay parallel civil proceedings when a criminal investigation is pending. *See, e.g.*, *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967) (affirming stay of most discovery pending determination of criminal case, but allowing deposition of seventy-one-year-old plaintiff); *In re Adelphia Commc'ns Sec. Litig.*, No. 02-cv-1781, 2003 WL 22358819 (staying all discovery); *In re J.E. Brenneman Co., Inc.*, Nos. 01-cv-1442, 01-cv-2099, 2003 WL 1560155 (E.D. Pa. Mar. 18, 2003) (staying defendants' depositions); *Saunders*, 1997 WL 400034 (granting temporary stay); *New York Life Ins. Co. v. Daly*, No. 95-cv-6702, 1996 WL 711492, at *1 (E.D. Pa. Dec. 5, 1996) (staying discovery because the criminal allegations were "so intertwined with the claims in the civil action").

### D. The Other *Golden Quality* Factors Favor a Stay.

The four other *Golden Quality* factors also favor a stay. First, Plaintiffs will not suffer any substantial prejudice from further staying discovery. Plaintiffs may indeed benefit from such a stay because they will be able refine their strategies after reviewing the state attorneys general's forthcoming amended complaint, taking account of any decisions that the Court

reaches on the first group of motions to dismiss, and learning about any guilty pleas or convictions that the United States obtains while the criminal investigation advances without interference from civil discovery. *See* 15 U.S.C. §16(a) ("A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant[.]"); *Golden Quality*, 87 F.R.D. at 56 ("[T]here is a real possibility that a disposition favorable to the Government in the overlapping criminal prosecution will obviate much of the expenditure of time and dollars which plaintiffs would otherwise be compelled to invest in their civil suits.").

Second, with respect to the burden of discovery on them, Defendants have argued that "[a]llowing discovery to proceed now … would be particularly prejudicial to Defendants in light of the nature and structure of this particular MDL" in part because "each and every Defendant would be subjected to discovery for months before the Court rules on the viability of the claims asserted against it." ECF No. 492-1 at 14-15.

Third, the convenience of the Court in managing the scope of the MDL would be advanced if discovery was stayed until the universe of Plaintiffs' valid claims is fully known. The state attorneys general have already indicated that they intend to file an amended complaint involving additional drugs. ECF No. 498, at 27:8-11. Identification of new drugs in that pleading, or new details revealed about drugs already at issue, may cause the private plaintiffs to file additional or further amended complaints that may obviate some or all of the Court's ongoing work. As identified in *Golden Quality*, "[t]he mere possibility that a substantial amount

of the court's work, if undertaken now, may shortly prove to have been unnecessary, cautions against undue haste in proceeding with this civil action." 87 F.R.D. at 57.

Fourth, non-parties would benefit from any delay in having to incur the expense and other burdens associated with responding to discovery, especially when the full universe of potential claims, and the attendant discovery obligations associated with those claims, may change as additional and amended complaints are filed.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the United States' cross-motion to extend the discovery stay for six months from the date the Court rules on this cross-motion.

Dated: October 27, 2017　　　　　　　　　Respectfully submitted,
　　　　　Washington, DC

　　　　　　　　　　　　　　　　　　　　　　 /s/ Jay D. Owen
　　　　　　　　　　　　　　　　　　　　　Jay D. Owen
　　　　　　　　　　　　　　　　　　　　　Ryan Danks
　　　　　　　　　　　　　　　　　　　　　Andrew J. Ewalt
　　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice, Antitrust Division
　　　　　　　　　　　　　　　　　　　　　450 Fifth St. NW, Suite 8700
　　　　　　　　　　　　　　　　　　　　　Washington, DC 20530
　　　　　　　　　　　　　　　　　　　　　Tel:　(202) 598-2987
　　　　　　　　　　　　　　　　　　　　　Fax:　(202) 305-0673
　　　　　　　　　　　　　　　　　　　　　jay.owen@usdoj.gov

　　　　　　　　　　　　　　　　　　　　　*Counsel for Intervenor United States of America*

## CERTIFICATE OF SERVICE

      I, Jay D. Owen, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Dated: October 27, 2017                       */s/ Jay D. Owen*
                                                       Jay D. Owen