# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL CASES* | |

# DEFENDANTS' SUBMISSION REGARDING THE PROTECTIVE ORDER

# <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ................................................................................................................................. 3

I.      DISCOVERY IN EACH CASE SHOULD BE PRESUMPTIVELY LIMITED TO
        INFORMATION RELEVANT TO THAT CASE ........................................................... 3

        A.      Defendants' Proposal Properly Balances the Parties' Rights with the Need
                for Coordination ............................................................................................... 6

        B.      Because the Allegations in Each Lead Case Are Different and Case-
                Specific, Discovery Must Be as Well ................................................................ 8

        C.      Plaintiffs' Proposal Would Impose Undue Burdens ........................................... 12

        D.      Plaintiffs' Proposal Undermines the Purpose of the Protective Order ................ 14

CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Am. Standard Inc. v. Pfizer Inc.*,
828 F.2d 734 (Fed. Cir. 1987)..................................................................................15

*Avago Techs. U.S., Inc. v. IPtronics Inc.*,
309 F.R.D. 294 (E.D. Pa. 2015) (Surrick, J.)............................................................12

*Eisai, Inc. v. Sanofi-Aventis US LLC*,
No. 08-4168, 2011 WL 5416334 (D.N.J. Nov. 7, 2011) ...............................9, 17, 20

*First Sealord Sur. v. Durkin & Devries Ins. Agency*,
918 F. Supp. 2d 362 (E.D. Pa. 2013) (O'Neill, J.)....................................................12

*Frank v. Honeywell Int'l Inc.*,
No. 15-MC-00172, 2015 WL 4770965 (E.D. Pa. Aug. 13, 2015) (Pappert, J.) ......12

*In re Auto. Parts Antitrust Litig.*,
MDL No. 2311 (E.D. Mich.) ...................................................................................3, 4

*In re Domestic Drywall Antitrust Litig.*,
300 F.R.D. 234 (E.D. Pa. 2014) (Baylson, J.) ....................................................11, 13

*In re Korean Air Lines Co., Ltd., Antitrust Litig.*,
642 F.3d 685 (9th Cir. 2011) .....................................................................................11

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ...................................................................................11

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
292 F.R.D. 544 (E.D. Tenn. 2013)...............................................................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices &
Prods. Liab. Litig.*,
785 F. Supp. 2d 925 (C.D. Cal. 2011) .......................................................................11

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
No. 15-cv-3183, 2016 WL 7042117 (D. Minn. July 25, 2016) ...................................9

*Mfg. Research Corp. v. Greenlee Tool Co.*,
693 F.2d 1037 (11th Cir. 1982) ...................................................................................9

*Ret. Sys. v. Psychiatric Sols., Inc.*,
No. 13-MC-238, 2014 WL 272088 (E.D. Pa. Jan. 24, 2014) (Sánchez, J.)..............11

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    No. 88-9752, 1991 WL 183842 (E.D. Pa. Sept. 16, 1991) .......................................................9

*United States v. Abbott Labs.*,
    No. 09-4264, 2016 WL 4247429 (E.D. Pa. Aug. 11, 2016) ...................................................7

**STATUTES**

28 U.S.C. § 1407 .......................................................................................................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 .................................................................................................3, 4, 8, 11, 12, 14

Fed. R. Civ. P. 45(d)(1) ..........................................................................................................12

Fed. R. Evid. 404 .................................................................................................................9, 10

Following several months of negotiations, the parties have reached agreement on most aspects of a global Protective Order to facilitate the production of proprietary, commercially sensitive and confidential information, and to protect such information from improper or harmful disclosure.  Only one dispute remains for the Court to resolve.

The difference between the parties' proposals relates to the use the parties can make of discovery produced in any one of the Lead Cases in this MDL.  Each Lead Case concerns a different drug product, and within each Lead Case are cases brought by different plaintiffs (i.e., Direct Purchasers, End-Payers, Indirect Resellers) concerning that drug product.  Defendants propose that discovery produced in a particular case presumptively be available for use in any other case in the same "Lead Case" group, but not presumptively be available for other Lead Cases concerning other drug products with different sets of plaintiffs and defendants.  Plaintiffs' Proposed Protective Order, by contrast, would make all discovery produced by a party in any one Lead Case in the MDL automatically available for use in all of the cases in the MDL, regardless of whether that party is named in those other actions.

Defendants' Proposed Protective Order contemplates the possibility that some discovery may be relevant in more than one Lead Case, and accordingly contains provisions to streamline the use of such discovery material in cases involving different products in appropriate circumstances, accomplishing the discovery efficiencies the JPML identified in creating MDL 2724.  Defendants' proposal allows for certain discovery to be produced in multiple Lead Cases, where proper, and provides for a mechanism by which the parties can make tailored requests to use discovery produced in one Lead Case in a different Lead Case, with procedures for expeditiously resolving any disputes.  Unlike Plaintiffs' proposal, Defendants' proposal properly

balances the needs and interests of the parties and promotes the efficiencies identified by the Court and JPML. Therefore, Defendants' proposal should be adopted.

This MDL is different from a typical MDL, which generally involves multiple plaintiffs suing the same defendant or group of defendants, alleging the same underlying conduct. Here, there are 18 different Lead Cases, each involving an alleged conspiracy on different products, for different time periods, among different groups of Defendants. Even named Plaintiffs themselves differ across some cases. Through the definition of "Discovery Materials" in their Proposed Protective Order, Plaintiffs seek a massive expansion of discovery in the different, and separate, cases coordinated as part of this MDL, unbounded by the relevance and proportionality limitations of the Federal Rules of Civil Procedure.

Plaintiffs' Proposed Protective Order should be rejected because it (a) will inject vast quantities of irrelevant discovery into each case, (b) is contrary to the Federal Rules of Civil Procedure and the JPML's order promoting efficient coordination, (c) will impose enormous and undue burdens on the parties (particularly on Defendants), and (d) would result in unnecessarily broad dissemination of competitively sensitive information to Defendants' competitors and customers who have no need for that information in their respective cases. Neither the fact that different cases concerning 18 different drugs are being coordinated in a single MDL for pretrial purposes, nor the fact that some discovery may be produced in more than one case, justifies a different result. The multidistrict litigation device does not expand the bounds of relevance, change nonparties into parties, or alter the substantive rights of any party, as Plaintiffs' proposal would do.

## ARGUMENT

**I.      DISCOVERY IN EACH CASE SHOULD BE PRESUMPTIVELY LIMITED TO INFORMATION RELEVANT TO THAT CASE.**

Unlike most antitrust MDLs, the cases being coordinated as part of MDL 2724 do not all arise from the same nucleus of operative facts.  To the contrary, the different Lead Cases in this MDL concern a different product, a different time period, and a different combination of Plaintiffs and Defendants.  Recognizing these differences, the Court has coordinated these cases by organizing them into 18 separate "Lead Case" groupings, one for each of the products at issue alleged by Plaintiffs.  *See* Pretrial Order No. 24 (Dkt. No. 353).

Discovery should be coordinated along those same lines.  A great deal of the discovery taken in these cases will be relevant only to one of the Lead Cases.  As a general matter, in the Defendants' Proposed Protective Order, discovery produced by a party in a particular Lead Case presumptively will be available for use only in that Lead Case and its constituent sub-cases involving the same drug.  This formulation is consistent with the scope of discovery contemplated by the Federal Rules of Civil Procedure, which limit discovery to information that is "relevant" to the claims or defenses of the parties in a particular case and "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

Defendants' proposal also tracks the scope of disclosure permitted in *In re Auto. Parts Antitrust Litig.*, MDL No. 2311 (E.D. Mich.) ("*Auto Parts*").  That MDL, like this one, coordinates lawsuits alleging conspiracies affecting different products and different, although sometimes overlapping, defendants.  That court, like this one, organized the cases into product-specific groupings, with related cases arising from the same nucleus of operative facts concerning the same product grouped together.  In *Auto Parts*, unlike this MDL, separate protective orders were negotiated and ultimately entered in each of the separate product tracks.

Those separate protective orders generally limit the use of materials produced in discovery to only those cases in the product grouping from which the requests originated.[1]  *See, e.g.*, Wire Harness Protective Order (MDL 2311, Dkt. No. 200); Fuel Senders Protective Order (MDL 2311, Dkt. No. 31); Heater Control Panels Protective Order (MDL 2311, Dkt. No. 27); Instrument Panel Clusters Protective Order (MDL 2311, Dkt. No. 32); Bearings Protective Order (MDL 2311, Dkt. No. 85); Occupant Safety Systems Protective Order (MDL 2311, Dkt. No. 77).

Plaintiffs in this MDL, by contrast, propose that all discovery produced in *any one case* should be available for use in *every other case* in the MDL, regardless of which drug is at issue. This proposal, if adopted, would unduly expand the discovery record in each of the separate Lead Cases, creating enormous and undue burdens for the parties and requiring production of information in cases in which the information is not the proper subject of discovery pursuant to Federal Rule of Civil Procedure 26(b)(1).  For example, a Defendant named only in a single Lead Case, dealing with only one pharmaceutical product, would have to maintain a database and monitor discovery in 17 other Lead Cases involving different products, at enormous expense, in order to know the discovery record available for use in its case, even though most of the discovery from other cases would be irrelevant to the claims at issue in its case.  A Defendant would also need to monitor discovery in all other cases to understand how its own confidential and proprietary documents are being used in other cases, especially considering that Defendants in those cases are often competitors.  This is a particularly burdensome task in this MDL, where no Defendant is in more than half of the Lead Cases, and 20 Defendants are in only one or two

[1] The first protective order entered in *Auto Parts* was negotiated and submitted when all of the cases in the MDL related to only a single product class, automotive wire harness products, and a single alleged conspiracy.  That protective order contains ambiguous language on the issue addressed herein because it was entered prior to the subsequent expansion of the *Auto Parts* MDL to encompass other unrelated products and alleged conspiracies.  *See Auto Parts* Wire Harness Protective Order (MDL 2311, Dkt. No. 200).  Subsequent protective orders clarified the issue that discovery was limited to the alleged conspiracy and product in the case in which the discovery was produced, and could not be used in other cases pertaining to other products within the *Auto Parts* MDL.

Lead Cases.[2]  Plaintiffs' proposal effectively would convert every Defendant in the MDL into an interested party in every Lead Case.

Moreover, Plaintiffs' proposed approach implicates Rule 45, as it effectively converts every discovery request directed to a party in one Lead Case into a nonparty discovery request from parties in other Lead Cases.[3]  That, of course, introduces the likelihood that discovery requests will simultaneously have to be evaluated and, as appropriate, objected to under differing standards applicable under the respective rules, depending on the posture of the party and the nature of the request, which ultimately will complicate rather than streamline discovery.  The additional burdens that this approach would introduce are substantial. Plaintiffs' proposal effectively would convert every Defendant in the MDL into an interested party in every Lead Case.

In addition, Plaintiffs' proposal would expose all parties' proprietary, sensitive and confidential information to a much larger group of recipients who have no legitimate need to access that information.  Given the sheer size of this MDL, and the number of parties it encompasses, the unnecessary risk of such information being mistakenly (or otherwise) disclosed to competitors or the public weighs strongly against adoption of Plaintiffs' proposal.

There are coordination mechanisms available, both generally and in the Protective Order proposed by Defendants, to address discovery that might be relevant and responsive in more than one Lead Case to ensure consistency and to avoid duplication and inefficiency.  Discovery can be coordinated across different Lead Cases as appropriate.  For instance, discovery requests to

---

[2] 12 Defendants (Apotex, Aurobindo Pharma USA, Inc., Breckenridge, Citron, Dr. Reddy's, Epic, Glenmark, Lupin, Mayne, Morton Grove, Teligent, and Wockhardt USA) are only Defendants in one of the 18 Lead Cases in the MDL, and eight others (Akorn, Hi-Tech, Impax, Mutual, Sun, Upsher-Smith, West-Ward, and Zydus) are only defendants for two of the 18 Lead Cases.

[3] This would be true for every single discovery request issued by Plaintiffs in any Lead Case because none of the 25 Defendants is a party to all 18 Lead Cases.

third parties that have information relevant to multiple cases can be issued just once from multiple cases.  Likewise, in appropriate instances, a party can produce discovery with more than one Lead Case Bates number on it, thereby indicating on the face of the discovery that the producing party deems it relevant and responsive (and therefore, can be used) in more than one Lead Case.  These are tools used in other MDL and complex multidistrict litigation cases in the past to positive effect and in accordance with the Federal Rules of Civil Procedure.

In addition, Paragraph 12 of Defendants' Proposed Protective Order provides a procedure for a party to request that specific discovery material from one of the Lead Cases be used in another Lead Case in appropriate circumstances.  Defendants' proposal also contains streamlined deadlines for meet-and-confers and dispute resolution if necessary, thus reducing any prejudice to the requesting party.[4]  Plaintiffs attempt to justify their proposal by citing the need for coordination, but it is actually Defendants' proposal that accomplishes that goal, while still balancing the rights of the parties.  For these reasons and those described below, this Court should adopt Defendants' Proposed Protective Order.

### A.    DEFENDANTS' PROPOSAL PROPERLY BALANCES THE PARTIES' RIGHTS WITH THE NEED FOR COORDINATION.

Nothing in Defendants' proposal precludes, or even discourages, the type of discovery coordination that the JPML had in mind in creating MDL 2724.  There is no reason why the parties to more than one Lead Case cannot coordinate appropriate discovery requests and responses on issues and discovery that are common across cases.  Document requests or interrogatories on common issues can be served from multiple Lead Cases and responses

---

[4] The parties effectively and successfully used the process proposed by Defendants with regards to Plaintiffs request to use materials produced by Efficient Collaborative Retail Marketing Company, LLC ("ECRM") in the *Propranolol* litigation, which had been pending in the Southern District of New York, in the various Consolidated Amended Complaints filed with this Court on August 15, 2017.  This demonstrates the efficiency and efficacy of the procedures proposed by Defendants in Paragraph 12.

provided in those Lead Cases, and depositions can be cross-noticed in multiple Lead Cases if a witness has knowledge relevant to the issues in more than one Lead Case.

Defendants' Proposed Protective Order includes specific mechanisms that allow, in appropriate circumstances, discovery produced in one Lead Case to be used in another Lead Case, even where there has not been coordination of discovery requests and responses before the discovery was produced.  Specifically, Paragraph 12 delineates an efficient and streamlined procedure that allows for the party wanting to use particular discovery in a Lead Case other than that in which it was produced to request permission from the producing party and to provide the producing party with an opportunity to object to such usage.  *See* Defendants' Proposed Protective Order ¶ 12.  Any objection would need to be lodged by the producing party within three business days following notice, and any disputes not resolved by the parties would be briefed for the Court's consideration within a week.  That mechanism, and the general coordination of discovery permitted in the MDL, allows for appropriate discovery material to be introduced into the discovery record of Lead Cases where it is relevant without opening the floodgates in all of the cases to massive quantities of irrelevant material that would need to be assimilated, at significant and undue expense, by all of the parties in each case.

Individual analysis of a particular discovery request is required to determine whether discovery concerning other allegations, other proceedings, or other products is, in fact, relevant to the claims at issue in whatever Lead Case the discovery is sought and will be produced.  *See United States v. Abbott Labs.*, No. 09-4264, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (Sitarski, M.J.) (granting in part and denying in part motion to compel production of deposition transcripts from prior litigation involving same product and defendant but different alleged

misconduct, after analyzing each deposition separately).  This type of individual analysis can be conducted pursuant to the mechanism included in Defendants' Proposed Protective Order.

The blanket rule proposed by Plaintiffs, by contrast, provides no possibility for individual consideration or analysis, sweeping in wholly irrelevant and potentially prejudicial material.  It would also create excessive burdens for all parties, but particularly for Defendants.  Because Plaintiffs' proposal would result in (a) a vastly overbroad discovery record in every case that proceeds past a motion to dismiss, (b) inefficient and burdensome discovery proceedings, and (c) manifest prejudice to the parties, and because it does not provide adequate safeguards for Defendants' competitively sensitive information, it should be rejected and Defendants' Proposed Protective Order should be adopted.

## B. BECAUSE THE ALLEGATIONS IN EACH LEAD CASE ARE DIFFERENT AND CASE-SPECIFIC, DISCOVERY MUST BE AS WELL.

Plaintiffs' Proposed Protective Order relies on the erroneous assumption that all discovery materials produced in any Lead Case will be relevant to the claims and/or defenses in *all other Lead Cases* in the MDL.  That assumption is clearly unfounded.  Rule 26(b)(1) defines the proper scope of discovery in cases brought in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .

In each Lead Case in this MDL, the products alleged to be the subject of these conspiracies differ from case to case, as do the Defendants alleged to have conspired, the dates of the alleged conspiracies, and the timing and frequency of the alleged price increases.[5]  Discovery concerning those central allegations of collusion will necessarily be product-specific and relevant only to the cases that allege collusion with regard to that particular product.  Numerous courts

---

[5] Defendants deny these allegations and are filing motions to dismiss the complaints.

have held that discovery concerning products and parties not at issue in a particular case is not discoverable pursuant to the Federal Rules of Civil Procedure.  *See, e.g.*, *Eisai, Inc. v. Sanofi-Aventis US LLC*, No. 08-4168, 2011 WL 5416334, at *8 (D.N.J. Nov. 7, 2011) (denying discovery in antitrust case concerning other proceedings involving defendant related to alleged misconduct for products not at issue in case in which discovery was sought); *see also Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183, 2016 WL 7042117, at *6 (D. Minn. July 25, 2016) (limiting scope of discovery in antitrust case to "the patents, products, entities, and instances of anti-competitive conduct specific[ally] alleged in support of the claims or defenses identified in the pleadings"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 551 (E.D. Tenn. 2013) (denying discovery regarding products not at issue in case); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, No. 88-9752, 1991 WL 183842, at *3 (E.D. Pa. Sept. 16, 1991) (Naythons, M.J.) (denying discovery of records from other cases against same defendant involving allegations similar to those in case in which discovery was sought); *accord Mfg. Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1042-43 (11th Cir. 1982) (affirming denial of discovery in unrelated product market even though defendant had market power in that market).

In *Rhone Poulenc Rorer*, the court rejected plaintiffs' argument that evidence from other cases involving similar alleged conduct was relevant to establish "bias and motive" pursuant to Federal Rule of Evidence 404.  *See Rhone Poulenc Rorer*, 1991 WL 183842 at *3.  The court held that plaintiffs' request for materials produced in other proceedings could not be justified by "speculation about potential bias or motive" given the burdens of injecting evidence from other proceedings into the case and the "potential for abuse" inherent in plaintiffs' request.  *Id.*

Those same considerations apply here *a fortiori*.  The fact that Plaintiffs' separate claims and allegations concerning different drugs  all allege price-fixing in one form or another does not make the discovery record in each of the different Lead Cases relevant to the claims asserted in all of the Lead Cases.  In the first place, much of the discovery in the different Lead Cases will address issues other than whether Defendants engaged in the conduct Plaintiffs allege.  For instance, there is likely to be substantial discovery produced concerning the particular contractual relationships that existed between Defendants and their customers and sales and pricing data.  There is no argument that type of information might be relevant in cases involving other alleged conspiracies in other Lead Cases under Rule 404.  Moreover, the Defendants differ in each Lead Case, and each product is in its own separate market, further undermining any even arguable relevance of materials across the different Lead Cases.

At the very least, the relevance of particular discovery materials needs to be assessed on a case-by-case basis, considering the specific discovery sought and the specific allegations of the lawsuits in which that discovery may be used.  Plaintiffs' proposal does not afford that opportunity; instead, they ask the Court just to assume, without basis, that all discovery material relevant to and produced in any Lead Case in the MDL is relevant to and discoverable in all Lead Cases in the MDL.

In this MDL, none of the Defendants are parties to all of the Lead Cases, and many of the Defendants are parties in only one or two Lead Cases.  Nevertheless, under Plaintiffs' definition of "Discovery Materials," each discovery request directed at a Defendant in any one case is essentially issued in all of the MDL cases, irrespective of the product at issue, and any production is made in all of the MDL cases.  That essentially would convert every discovery request into a Rule 45 subpoena for up to 17 other cases, and would require that each discovery

10

request be evaluated under the more stringent standards applicable to nonparty discovery.  *See In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) (Baylson, J.).  When discovery is sought from a third party, "even if the information sought is relevant, discovery is not allowed where no need is shown."  *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 13-MC-238, 2014 WL 272088, at *4 (E.D. Pa. Jan. 24, 2014) (Sánchez, J.).

Nor are there special rules for multidistrict litigation that would justify the discovery expansion that Plaintiffs seek through their Proposed Protective Order.  The fact that cases are being coordinated as part of an MDL proceeding does not change the rules of civil procedure that govern relevance, does not convert nonparties into parties, and does not justify imposing undue discovery burdens.  Multidistrict litigation is a procedural device that enables consistency and efficiency in litigation, but all of the parties "retain their individual identities," and the MDL device "does not change their rights as parties."  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 785 F. Supp. 2d 925, 928 (C.D. Cal. 2011) (denying request to apply California law to all cases in MDL); *In re Korean Air Lines Co., Ltd., Antitrust Litig.*, 642 F.3d 685, 700 (9th Cir. 2011) ("Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over.").  Thus, the relevance of discovery to a particular case coordinated in an MDL must be analyzed in the same way as if it were an individual case.

Plaintiffs' proposal is therefore contrary to the standards for discovery in the Federal Rules of Civil Procedure and should be rejected by the Court.  *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion or on its own, the court must limit the frequency or extent of

discovery allowed by these rules or by local rule if it determines . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).").

### C.   PLAINTIFFS' PROPOSAL WOULD IMPOSE UNDUE BURDENS.

Discovery must be "proportional" to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1). Discovery requests issues in one Lead Case seeking material concerning conspiratorial conduct alleged in another Lead Case, involving different products and other parties, and a different alleged class period is, by definition, disproportionate, because Plaintiffs have shown no particular need that justifies their unbounded proposal.  "[E]ven if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit."  *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013) (O'Neill, J.) (citation omitted).  Plaintiffs' proposal also would place enormous burdens on Defendants, such that the balancing test mandated by Rule 26 cannot weigh in Plaintiffs' favor.

The Federal Rules require the Court to consider the burden and expense of compliance with discovery, and to deny that discovery if "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  This is true for both party and nonparty discovery.  Under Rule 45, relevant here since all Defendants are nonparties in at least some of the MDL cases, parties to civil litigation have a responsibility to "avoid imposing undue burden or expense" on nonparties who are subject to subpoena. Fed. R. Civ. P. 45(d)(1).  "The 'undue burden' category 'encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money.'" *Avago Techs. U.S., Inc. v. IPtronics Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015) (Surrick, J.) (quoting *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (per curiam)); *see also Frank v. Honeywell Int'l Inc.*, No. 15-MC-00172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015)

(Pappert, J.) (collecting cases).  Courts "should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a non-party." *Domestic Drywall*, 300 F.R.D. at 239.

The rule proposed by Plaintiffs—that the discovery record in *each case* includes all the discovery produced in *every other case*—would, as a practical matter, impose substantial and undue burdens on all Defendants to, at a minimum, maintain databases and monitor discovery for all cases in the MDL.  The many Defendants named in only one or two of the Lead Cases, for example, would have to familiarize themselves with a massive discovery record in as many as 17 other Lead Cases, irrelevant to their own, to analyze whether and how discovery in those cases might ultimately be used in their case and to protect against the improper disclosure or misuse of their Confidential and Highly Confidential information.  Similarly, those Defendants named in multiple Lead Cases should not bear the burden of obtaining, reviewing, and participating in the discovery process for Lead Cases in which those Defendants are not named.

This is a significant burden.  If the actions in this MDL are not dismissed at the pleading stage and discovery proceeds, a substantial number of pages of documents will likely be produced, and there will undoubtedly be dozens of depositions across the different Lead Case groupings.  While some documents might be relevant to more than one Lead Case, and some depositions may properly be cross-noticed in multiple cases, most discovery will pertain only to the Lead Case(s) in which it is produced.  Yet if, as would be the case under Plaintiffs' proposal, all discovery is automatically available for use in all cases, every Defendant in the MDL will need to review and analyze the complete discovery record in every Lead Case to avoid litigation by surprise (the very purpose of the discovery rules in the Federal Rules of Civil Procedure), at enormous unwarranted cost and expense.  For the same reasons, to protect against misuse of their

documents and information, Defendants will likely be compelled to participate in depositions conducted in Lead Cases in which they are not named as Defendants.  And Defendants would have to monitor all motion practice in every Lead Case, again at enormous cost and expense, to protect against unwarranted disclosure or usage of information that would typically not be part of the discovery record in such an unrelated case.  Plaintiffs' Proposed Protective Order, if adopted, would have the paradoxical effect of making discovery less efficient and more burdensome, directly contrary to the mandate of the JPML and the multidistrict litigation statute.  *See, e.g.*, 28 U.S.C. § 1407.

> **D.**      **PLAINTIFFS' PROPOSAL UNDERMINES THE PURPOSE OF THE PROTECTIVE ORDER.**

The underlying purpose of the Protective Order is to safeguard the confidentiality of proprietary, commercially sensitive and otherwise confidential information.  The importance of protecting that information from improper or harmful disclosure is recognized in the Federal Rules, which authorize the Court to enter orders "requiring that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(6).

Recognizing that some trade secrets or commercially sensitive information may be relevant to the claims asserted in a particular Lead Case in that Lead Case, the parties have agreed to procedures to limit the disclosure of such materials only to other parties and persons having a reasonable need to access such materials, with the implicit acknowledgment that broader disclosure could improperly harm the parties' commercial or other interests.  That concern is heightened because Defendants, who would obtain access to each other's produced documents, are, by definition, competitors.  The Protective Order proposed by Defendants is calibrated to balance the need to utilize relevant confidential material in the prosecution or

14

defense within each applicable Lead Case with the need to avoid causing commercial or other harm to the producing party.

Plaintiffs' proposal to make discovery material available for use in all of the cases in the MDL upsets that careful calibration.  Under Plaintiffs' Proposed Protective Order, a party in one Lead Case would be producing such information not only to the limited group of parties in that immediate Lead Case, which might have a legitimate need and use for such information, but also to its competitors and customers who are parties in all other cases in the MDL, none of which will have demonstrated any legitimate need of access or use.  Put simply, Plaintiffs' proposal would result in the unnecessarily broad distribution of competitively sensitive information to a wide range of competitors and customers, which could lead to commercial harm for the parties or competitive harm in the pharmaceutical markets. *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) ("Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to adopt the Protective Order proposed by Defendants.

/s/ J. Clayton Everett, Jr.
Scott A. Stempel
J. Clayton Everett, Jr.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Tel:  (202) 739-3000
Fax:  (202) 739-3001
Scott.stempel@morganlewis.com
Clay.Everett@morganlewis.com

*Counsel for Defendant Perrigo New York, Inc.*

/s/ Sheron Korpus
Sheron Korpus
Seth A. Moskowitz
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com

*Counsel for Defendants Actavis Pharma, Inc.,
Actavis Holdco U.S., Inc.,
and Teva Pharmaceuticals USA, Inc.*

/s/ Jan P. Levine
Jan P. Levine
Robin P. Sumner
Michael J. Hartman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:  (215) 981-4000
Fax:  (215) 981-4750
levinej@pepperlaw.com
sumnerr@pepperlaw.com
hartmanm@pepperlaw.com

*Counsel for Defendant Teva Pharmaceuticals USA, Inc.*

/s/ Devora W. Allon
Jay P. Lefkowitz, P.C.
Devora W. Allon
Erin H. Ogburn
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Tel:  (212) 446-4800
Fax:  (212) 446-4900
jay.lefkowitz@kirkland.com
devora.allon@kirkland.com

Douglas J. Kurtenbach, P.C.
KIRKLAND & ELLIS LLP
600 North LaSalle
Chicago, IL 60654
Tel:  (312) 862-2000
Fax:  (312) 862-2200
dkurtenbach@kirkland.com

*Counsel for Defendants Akorn, Inc. and Hi-Tech Pharmacal Co. Inc.*

/s/ James W. Matthews
James W. Matthews
Katy E. Koski
John F. Nagle
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel:  (617) 342-4000
Fax:  (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Tel:  (215) 569-5644
Fax: (215) 832-5644
THenry@blankrome.com
MCarter@blankrome.com

*Counsel for Defendant Apotex Corp.*

Wayne A. Mack
Seth A. Goldberg
Sean P. McConnell
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1152
wamack@duanemorris.com
sagoldberg@duanemorris.com
spmcconnell@duanemorris.com

*Counsel for Defendant Aurobindo Pharma USA, Inc.*

*/s/ Stacey Anne Mahoney*
Stacey Anne Mahoney
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6930
Fax: (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel for Defendant Breckenridge*
*Pharmaceutical, Inc.*

*/s/ Roger Kaplan*
Roger Kaplan
Aaron Van Nostrand
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Tel:  (973) 360-7900
Fax: (973) 295-1257
kaplanr@gtlaw.com
vannostranda@gtlaw.com

*Counsel for Defendant Dr. Reddy's Laboratories,*
*Inc.*

*/s/ Steven A. Reed*
Steven A. Reed
R. Brendan Fee
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
Tel: (215) 963-5603
Fax: (215) 963-5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com

*Counsel for Defendant Glenmark Pharmaceuticals*
*Inc., USA*

*/s/ Christine C. Levin*
Christine C. Levin
Steven E. Bizar
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel:  (215) 994-4000
christine.levin@dechert.com
steven.bizar@dechert.com

*Counsel for Defendant Citron Pharma LLC*

*/s/ Jeffrey D. Smith*
Jeffrey D. Smith
Thomas A. Abbate
DeCOTIIS, FITZPATRICK, COLE & GIBLIN,
LLP
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, NJ 07666
Tel:  (201) 907-5228
Fax: (201) 928-0588
jsmith@decotiislaw.com
tabbate@decotiislaw.com

*Counsel for Defendant Epic Pharma, LLC*

*/s/ D. Jarrett Arp*
D. Jarrett Arp
Daniel W. Nelson
Melanie L. Katsur
Christopher B. Leach
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC 20036-5306
Tel: (202) 955-8678
Fax:  (202) 530-9527
jarp@gibsondunn.com
dnelson@gibsondunn.com
mkatsur@gibsondunn.com
cleach@gibsondunn.com

*Counsel for Defendant Heritage Pharmaceuticals*
*Inc.*

*/s/ Raymond A. Jacobsen, Jr.*
Raymond A. Jacobsen, Jr.
Paul M. Thompson (Pa. Bar No. 82017)
Lisa A. Peterson
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street NW
Washington, DC 20001
Tel: (202) 756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lpeterson@mwe.com

David L. Hanselman Jr.
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Chicago, IL 60605
Tel: (312) 984-3610
dhanselman@mwe.com

Nicole L. Castle
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
Tel: (212) 547-5400
ncastle@mwe.com

*Counsel for Defendant Impax Laboratories, Inc.*

*/s/ Leiv H. Blad*
Leiv H. Blad
Zarema A. Jaramillo
Katie R. Glynn
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
kglynn@lowenstein.com

*Counsel for Defendant Lupin Pharmaceuticals, Inc.*

*/s/ Gerald E. Arth*
Gerald E. Arth
Ryan T. Becker
Evan R. Luce
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 299-2000
Fax: (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com
eluce@foxrothschild.com

George G. Gordon
Stephen D. Brown
Julia Chapman
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-2000
Fax: (215) 994-2222
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

*Counsel for Defendant Lannett Company, Inc.*

*/s/ Michael Martinez*
Michael Martinez
Steven Kowal
Lauren Norris Donahue
Brian J. Smith
K&L GATES LLP
70 W. Madison St., Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-8000
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Defendant Mayne Pharma Inc.*

*/s/ Chul Pak*
Chul Pak
Jeffrey C. Bank
WILSON SONSINI GOODRICH & ROSATI, PC
1301 Avenue of the Americas
40th Floor
New York, NY 10019
Tel: (212) 497-7726
Fax: (212) 999-5899
cpak@wsgr.com
jbank@wsgr.com

Seth C. Silber
WILSON SONSINI GOODRICH & ROSATI, PC
1700 K Street, NW
Fifth Floor
Washington, DC  20006
Tel: (202) 973-8824
Fax: (202) 973-8899
ssilber@wsgr.com

*Counsel for Defendants Mylan Inc. and Mylan*
*Pharmaceuticals Inc.*

*/s/ Saul P. Morgenstern*
Saul P. Morgenstern
Margaret A. Rogers
Alice C.C. Huling
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
saul.morgenstern@apks.com
margaret.rogers@apks.com
alice.huling@apks.com

Laura S. Shores
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
laura.shores@apks.com

*Counsel for Defendants Sandoz Inc. and*
*Fougera Pharmaceuticals Inc.*

*/s/ John E. Schmidtlein*
John E. Schmidtlein
Sarah F. Teich
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5901
Fax: (202) 434-5029
jschmidtlein@wc.com
steich@wc.com

*Counsel for Defendant Par Pharmaceutical, Inc.*

*s/ J. Douglas Baldridge*
J. Douglas Baldridge
Lisa Jose Fales
Danielle R. Foley
VENABLE LLP
600 Massachusetts Avenue NW
Washington, DC 20001
Tel: (202) 344-4000
jbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com

Thomas J. Welling, Jr.
Benjamin P. Argyle
VENABLE LLP
1270 Avenue of the Americas
24th Floor
New York, NY 10020
(212) 307-5500
tjwelling@venable.com
bpargyle@venable.com

*Counsel for Defendants Sun Pharmaceutical*
*Industries, Inc., Mutual Pharmaceutical Company,*
*Inc., and Taro Pharmaceuticals U.S.A., Inc.*

*/s/ Heather K. McDevitt*
Heather K. McDevitt
Bryan D. Gant
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 819-8200
Fax: (212) 354-8113
hmcdevitt@whitecase.com
bgant@whitecase.com

*Counsel for Defendant Teligent, Inc.*

*/s/ Devora W. Allon*
Jay P. Lefkowitz, P.C.
Devora W. Allon
Erin H. Ogburn
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
Tel:  (212) 446-4800
Fax:  (212) 446-4900
jay.lefkowitz@kirkland.com
devora.allon@kirkland.com
erin.ogburn@kirkland.com

*Counsel for Defendant Upsher-Smith Laboratories, LLC*

*/s/ William A. Escobar*
William A. Escobar
Damon W. Suden
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
wescobar@kelleydrye.com
dsuden@kelleydrye.com

*Counsel for Defendants Wockhardt USA LLC and Morton Grove Pharmaceuticals Inc.*

*/s/ Jan P. Levine*
Jan P. Levine
Robin P. Sumner
Michael J. Hartman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:  (215) 981-4000
Fax:  (215) 981-4750
levinej@pepperlaw.com
sumnerr@pepperlaw.com
hartmanm@pepperlaw.com

Keith J. Harrison
Shari Ross Lahlou
Astor H.L. Heaven
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
Tel. (202) 624-2500
Fax. (202) 624-5116
kharrison@crowell.com
slahlou@crowell.com
aheaven@crowell.com

*Counsel for Defendant West-Ward Pharmaceuticals Corp.*

*/s/ Jason R. Parish*
Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, N.W.
Washington, DC 20006
Tel: (202) 452 7940
Fax: (202) 452 7989
jason.parish@bipc.com

Jennifer G. Levy
Jacob M. Boyars
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W.
Washington, DC 20005
Tel: (202) 879-5000
Fax: (202) 879-5200
jennifer.levy@kirkland.com
jacob.boyars@kirkland.com

*Counsel for Defendant Zydus Pharmaceuticals
(USA), Inc.*