# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724** <br> **16-MD-2724** <br> **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** <br><br> ***ALL ACTIONS*** | |

**CLASS PLAINTIFFS' OPPOSITION TO
(1) DEFENDANTS' MOTION TO STAY DISCOVERY PENDING
RESOLUTION OF DEFENDANTS' MOTIONS TO DISMISS
AND
(2) INTERVENOR UNITED STATES'
CROSS-MOTION TO EXTEND DISCOVERY STAY**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ...........................................................................................5

III.    DEFENDANTS HAVE NOT DEMONSTRATED "GOOD CAUSE" FOR
        CONTINUATION OF THE DISCOVERY STAY.........................................................10

        A.      The Proposed Tailored Discovery Is Appropriate Nowc......................................10

        B.      *Twombly* Does Not Shield Defendants from Discovery .......................................13

        C.      The Class Complaints Are Likely to Withstand Defendants'
                Motions to Dismiss Militates Against the Requested Stay of Discovery .............15

                1.      The Denial of Motions to Dismiss in *Propranolol* Is Highly
                        Significant Here .......................................................................15

                2.      Sweeping and Long-Standing Government Investigations Bolster
                        the Allegations in the Class Complaints ....................................16

        D.      Defendants Will Not Be Prejudiced If the Court Enters the Proposed
                Pretrial Order, Which Allows Targeted Discovery to Proceed.............................18

IV.     PLAINTIFFS' PROPOSED DISCOVERY WILL NOT INTERFERE
        WITH THE CRIMINAL INVESTIGATION.................................................................21

        A.      The Proposed Targeted Discovery Will Not Impede Defendants'
                Cooperation with the DOJ. ..................................................................21

        B.      Civil Discovery Will Not Provide Defendants Early Access to Discovery
                in  the Criminal Matter.........................................................................24

        C.      Much of the Targeted Discovery Plaintiffs Seek Is Entirely Unrelated
                to the Criminal Investigation and Cannot Interfere with It....................................26

V.      THE DOJ'S PROPOSED STAY CONFLICTS WITH ITS PRIOR
        POSITIONS IN THIS CASE AND NUMEROUS OTHER CIVIL MATTERS. .............28

VI.     NUMEROUS COURTS HAVE REJECTED THE UNREASONABLE
        REQUESTS FOR A STAY BY THE DOJ..........................................................30

VII.    CLASS PLAINTIFFS AND THE PUBLIC INTEREST WILL BE PREJUDICED
        BY THE LENGTHY DISCOVERY STAYS PROPOSED BY THE DOJ AND
        DEFENDANTS. ...........................................................................................................31

VIII.   CONCLUSION.............................................................................................................36

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*19th St. Baptist Church v. St. Peters Episcopal Church*,
   190 F.R.D. 345, 350 (E.D. Pa. 2000) ........................................................................... 11

*Adriana Castro, M.D., P.A. v. Sanofi Pasteur Inc.*,
   No. CV 11-7178, 2012 WL 12918261 (D.N.J. July 18, 2012)................................... 19

*Alcala v. Texas Webb Cty.*,
   625 F. Supp. 2d 391, 402 (S.D. Tex. 2009) .............................................................. 26

*Alford v. City of New York*,
   No. CV 2011-0622, 2012 WL 947498 (E.D.N.Y. Mar. 20, 2012) ........................... 18

*Allstate Ins. Co. v. Levy*,
   No. Cv-10-1652, 2011 WL 288511 (E.D.N.Y. Jan. 27, 2011) ................................. 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................... 2

*Brown v. Pro Football Inc.*,
   146 F.R.D. 1 (D.D.C. 1992)......................................................................................... 3

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977).................................................................................................. 33

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ..................................................................................... 2

*Chudasama v. Mazda Motor Corp.*,
   123 F.3d 1353 (11th Cir. 1997) ............................................................................... 13

*Coca-Cola Bottling Co. v. Grol*,
   No. 92-CV-7061, 1993 WL 13139559 (E.D. Pa. Mar. 8, 1993)................................... 11, 12, 18

*Coyle v. Hornell Brewing Co.*,
   No. 08-CV-2729, 2009 WL 1652399 (D.N.J. June 9, 2009)............................... 12, 35

*DSM Desotech Inc. v. 3D Sys. Corp.*,
   No. 08-cv-1531, 2008 WL 4812440 ......................................................................... 14

*Gerald Chamales Corp. v. Oki Data Americas, Inc.*,
    247 F.R.D. 453 (D.N.J. 2007) ................................................................. 11, 19

*Golden Quality Ice Cream Co. v. Deerfield Speciality Papers, Inc.*,
    87 F.R.D. 53 (E.D. Pa. 1980) ................................................................. 26, 32

*Goldlawr, Inc. v. Shubert*,
    169 F. Supp. 677 (E.D. Pa. 1958) ............................................................... 33

*Havoco of Am. Ltd. v. Shell Oil Co.*,
    626 F.2d 549 (7th Cir. 1980) ...................................................................... 13

*Hawaii v. Standard Oil Co.*,
    405 U.S. 251 (1972) .................................................................................. 33

*Howard Hess Dental Labs. Inc. v. Dentsply International, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ........................................................................ 33

*Idan Computer, Ltd. v. Intelepix, LLC*,
    No. 09-4849, 2010 WL 3516167 (E.D.N.Y. Aug. 27, 2010) ............................ 35

*In re Apple In-App Purchase Litig.*,
    No. 11-cv-1758, 2012 U.S. Dist. LEXIS 18970 (N.D. Cal. Feb. 15, 2012) ............ 11

*In re Blood Reagents Antitrust Litig.*,
    756 F. Supp. 2d 623 (E.D. Pa. 2010) ...................................................... 18, 33

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13-md-2476 (S.D.N.Y.) .......................................................................... 34

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL No. 1409, 2002 WL 88278 (S.D.N.Y. Jan 22, 2002) ............................ 11, 15

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) ......................................................... 18

*In re Flash Memory Antitrust Litig.*,
    No. 07-cv-0086, 2008 WL 62278 (N.D. Cal. Jan. 4, 2008) ................................ 14

*In re Flat Glass Antitrust Litig.*, No. 97-mc-550 (W.D. Pa.) ...................................... 34

*In re Generic Digoxin & Doxycycline Antitrust Litig.*,
    222 F. Supp. 3d 1341 (J.P.M.L. 2017) .................................................. 5, 19, 35

*In re Generic Digoxin and Doxycycline Antitrust Litig.*,
   227 F. Supp. 3d 1402 (J.P.M.L. 2016) ................................................. 5

*In re Generic Pharm. Pricing Antitrust Litig.*,
   2017 WL 4582710 (J.P.M.L. Aug. 3, 2017) .............................................. 19

*In re Graphics Processing Units Antitrust Litig.*,
   No. C 06-7417, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ................................. 15

*High Fructose Corn Syrup Antitrust Litig.*,
   Master Case No. 95-cv-1477 (C.D. Ill.) ................................................. 34

*In re Linerboard Antitrust Litig.*,
   296 F. Supp. 2d 568 (E.D. Pa. 2003) .................................................. 34

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004) .................................................. 34

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420, 2013 WL 2237887 (N.D. Cal. May 21, 2013) ........................... 14

*In re Plastics Additives Antitrust Litig.*,
   No. Civ. A-03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ..................... 4, 33

*In re Propranolol Antitrust Litig.*,
   249 F. Supp. 2d 712 (S.D.N.Y. 2017) .......................................... 15-18, 28

*In re Residential Doors Antitrust Litig.*,
   900 F. Supp. 749 (E.D. Pa. 1995) ..................................................... 33

*In re Scrap Metal Antitrust Litig.*,
   No. 02-cv-0844, 2002 WL 31988168 (N.D. Ohio Nov. 7, 2002) ................. 23, 24, 26, 29

*In re SRAM Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................. 18

*In re Sulfuric Acid Antitrust Litig.*,
   231 F.R.D. 331 (N.D. Ill. 2005) ...................................................... 11

*In re Urethane Antitrust Litig.*,
   No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) ........................... 34

*In re Vitamins Antitrust Litig.*,
   209 F.R.D. 251 (D.D.C. 2002) ........................................................ 33

*In re Vitamins Antitrust Litig.*,
    No. 99-197, 2000 WL 1475705 (D.D.C. May 9, 2000) ........................................................ 34

*Klikus v. Cornell Iron Works, Inc.*,
    No. 3:13CV468, 2014 WL 496471 (M.D. Pa. Feb. 6, 2014) .................................................. 11

*Mann v. Brenner*,
    375 Fed. Appx. 232 (3d Cir. 2010) ...................................................................................... 12

*Martinez v. MXI Corp.*,
    No. 15-cv-00243, 2015 WL 8328275 (D. Nev. Dec. 8, 2015) .............................................. 18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................................................ 33

*Moore v. Samsung Electronics America*,
    2017 U.S. Dist. LEXIS 122017 (D.N.J. July 28, 2017) ........................................................ 32

*Morien v. Munich Reinsurance Am., Inc.*
    270 F.R.D. 65 (D. Conn. 2010) ............................................................................................ 11

*New England Carpenters Health & Welfare Fund v. Abbott Labs.*,
    No. 12-c-1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013) .................................................. 14

*Parker v. Stryker Corp.*,
    No. 08-cv-1093, 2008 WL 4457864 (D. Colo. Oct. 1, 2008) ................................................ 11

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,
    269 F. Supp. 540 (E.D. Pa. 1967) ...................................................................................... 34

*Radovich v. Nat'l Football League*,
    352 U.S. 445 (1957) ............................................................................................................ 33

*Rutman Wine Co. v. E&J Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) .............................................................................................. 13

*SEC v. Chakrapani*,
    No. 09 CIV 1043, 2010 WL 2605819 (S.D.N.Y. June 29, 2010) .......................................... 32

*SEC v. Mersky*,
    No. 93-cv-5200, 1994 WL 22305 (E.D. Pa. Jan. 25, 1994) .................................................. 25

*Saunders v. City of Philadelphia*,
    No. 97-cv-3251, 1997 WL 400034 (E.D. Pa. July 11, 1997) ................................................ *25*

*Shim v. Kikkoman Int'l Corp.*,

509 F. Supp. 736 (D.N.J. 1981), *aff'd*, 673 F.2d 1304 (3d Cir. 1981)...................................... 35

*SK Hand Tool Corp. v. Dresser Industries*,
852 F.2d 936 (7th Cir. 1988) ............................................................................................. 13

*Skellerup Indus. Ltd. v. City of L.A.*,
163 F.R.D. 598 (C.D. Cal. 1995) ........................................................................................ 12

*Solomon Realty Co. v. Tim Donut U.S. Ltd.*,
2:08-cv-561, 2009 WL 2485992 (S.D. Ohio Aug. 11, 2009) .................................................. 14

*State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*,
No. 01-cv-5530, 2002 WL 31111766 (E.D. Pa. Sept. 18, 2002).............................................. 10

*Spathos v. Smart Payment Plan, LLC*,
No. CV 15-8014, 2016 WL 9211648 (D.N.J. Apr. 25, 2016) .................................................. 11

*Tamburo v. Dworkin*,
No. 04-c-3317, 2010 WL 4867346 (N.D. Ill. Nov 7, 2010) .................................................... 14

*United States v. All Funds on Deposit*,
767 F. Supp. 36 (E.D.N.Y. 1991) ......................................................................................... 24

*United States v. Borden*,
347 U.S. 514 (1954).......................................................................................................... 32

*United States v. Gieger Transfer Serv., Inc.*,
174 F.R.D. 382 (S.D. Miss.1997) ........................................................................................ 12

*United States v. One 1967 Buick Hardtop Electra 225*,
304 F. Supp. 1402 (W.D. Pa.1969)...................................................................................... 25

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969).......................................................................................................... 33

## Rules and Statutes

Fed. R. Civ. P. 1 ................................................................................................................... 1

Fed. R. Civ. P. 23(b)(3). ...................................................................................................... 26

Fed. R. Civ. P. 26(d)(2)........................................................................................................ 12

Fed. R. Crim. P. 16(a)(1) ..................................................................................................... 25

18 U.S.C. § 3500.................................................................................................................... 24

**Other Authorities**

Robert Bloch & Gary Winters, *How to Respond to a Criminal Antitrust Investigation: A Practical Approach in Today's Enforcement Environment*, ABA Section Antitrust, Sixth Annual Int'l Cartel Workshop (Apr. 4, 2006) ................................................. 24

Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201 (1990).............. 11, 27

6 James W Moore et al., *Moore's Federal Practice* § 26-105[3][c] (3d ed. 2012)..................... 15

## I.   INTRODUCTION

Defendants and the United States Department of Justice ("DOJ") both seek a continued, lengthy stay of discovery in these actions, some of which have been pending for more than a year and a half.  Defendants seek to continue the stay until decisions are rendered on their motions to dismiss in each Lead Case, which would leave many of these actions languishing well into next year.  The DOJ asks that all discovery be stayed for at least six months beyond the date this Court rules on its Cross-Motion to Extend Stay of Discovery (ECF No. 516), and notes that "*it may seek to further extend the discovery stay*."[1]

The Defendants and the DOJ have not satisfied their heavy burden of showing "good cause" for a continued stay of discovery.  Keeping these cases "on ice" for many more months would cause substantial prejudice to class members and would contravene the overriding purpose of the Federal Rules of Civil Procedure:  "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

In their respective motions, Defendants and the DOJ overstate their legal authorities, ignore the significant public stakes in this litigation, dismiss out-of-hand the substantial prejudice that further delay will work on Class Plaintiffs and Plaintiff States (together, "Plaintiffs"), and exaggerate the supposed burden of limited discovery on Defendants and the purported interference with the DOJ's criminal investigation.  The law, facts, and equities demonstrate that the tailored document discovery and limited, non-merits testimonial discovery that Plaintiffs seek in their Cross-Motion are necessary and appropriate now.

Defendants and the Government rely upon erroneous legal presumptions that this Court should reject.  Contrary to Defendants' assertion of a presumption that a stay is appropriate in

---

[1] Intervenor United States' Mem. in Supp. of Its Cross-Motion to Extend Stay of Discovery ("DOJ Mem."), ECF No. 516-1, at 3 n.4 (emphasis added).

antitrust cases pending adjudication of dispositive motions, numerous cases have held that such stays remain disfavored.  The Government's claim of a policy preference in favor of criminal actions over civil enforcement of the antitrust laws is equally unavailing.  It relies on inapposite case law and disregards the reality that parallel criminal and civil antitrust actions are commonplace and complementary, with civil discovery ordinarily taking place in tandem and without prejudice to the related criminal proceeding.

For their part, Defendants greatly downplay the mounting state and federal government evidence of "pervasive and industry-wide" illegal collusion[2] underpinning these Actions, which underscore the sufficiency of Plaintiffs' Consolidated Class Action Complaints.  Those Complaints are not ones where "there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint,"[3] for which a stay might otherwise be warranted.  Instead, there is far more than a "reasonably founded hope that the [discovery] process will reveal relevant evidence to support a § 1 claim,"[4] thus warranting discovery prior to resolution of the motions to dismiss.

Indeed, the Class Complaints in these Actions are highly likely to survive the motions to dismiss, as they already did in the *Propranolol* Action.  Another court considering the *Clobetasol, Desonide,* and *Fluocinonide* (the "Cortiocosteroids") Actions, now consolidated here, rejected the same arguments for a stay that Defendants have rehashed here, as did the Connecticut Court in the Plaintiff States' case.

---

[2] *See* Pl. States' [Proposed] Consol. Am. Compl. ("Plaintiff States' CAC"), Civ. A. No. 17-cv-3768 (E.D. Pa. Oct. 31, 2017), ECF No. 3-1, at ¶ 11.

[3] Mem. in Supp. of Defs.' Mot. to Stay Discovery Pending Resolution of Defs.' Motions to Dismiss ("Defs.' Mem."), ECF No. 492-1, at 4 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[4] *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).

2

The DOJ's investigation has already yielded two indictments and guilty pleas.  And the on-going civil investigation by the Plaintiff States, who have obtained numerous documents by way of Connecticut AG subpoenas, recently led to their proposed Consolidated Amended Complaint involving 12 new defendants, 13 new generic drugs, and allegations of an anticompetitive conspiracy "across the generic drug industry" consisting of an "overarching understanding about how generic manufacturers fix prices and allocate markets to suppress competition," involving "executives at the highest levels in many of the Defendant companies." Plaintiff States' CAC ¶¶ 2, 10, 11.

Moreover, the robust factual and economic allegations in the Class Complaints reinforce the unlawful conduct already uncovered by DOJ and the Plaintiff States.  Those Complaints each allege that, in a sharp departure from historical practices, prices of generic pharmaceuticals dramatically increased starting in 2012, if not earlier, and in most cases, in near lock-step fashion.  The Class Complaints allege market factors that render the generic pharmaceutical industry unusually ripe for collusion, describe why the unprecedented price increases of this magnitude were against any individual company's self-interest, and describe the extensive contacts among executives in the industry – including direct evidence of agreements to fix prices and allocate markets and customers – as prices were soaring.  Accordingly, the mere pendency of the motions to dismiss does not warrant the stay Defendants seek.

Both Defendants and the DOJ fail to acknowledge the significant public interest implicated in these actions.  This MDL involves numerous generic drug companies agreeing to impose exorbitant price hikes and allocate markets for a multitude of generic drugs, many of which are essential medications on which tens of millions of Americans rely each day due to their historically low cost.  Some of the Class Plaintiffs in these Actions have been awaiting

discovery for some *twenty months* since they first filed their original class complaints in March 2016.  Staying discovery until well into next year would exacerbate the already substantial prejudice to these Class Plaintiffs.  It would also be contrary to "the public's interest in vigorously enforcing national antitrust laws through the expeditious resolution of a private antitrust litigation."  *In re Plastics Additives Antitrust Litig.*, No. Civ. A-03-2038, 2004 WL 2743591, at *8 (E.D. Pa. Nov. 29, 2004) (denying motion to stay discovery).

Defendants offer only conclusory claims of burden.  However, numerous courts have consistently rejected such claims as a basis to warrant a stay, including courts in several of the generic price-fixing cases later transferred to this MDL.  The DOJ's vague assertions of interference with its criminal investigation are not just conclusory, they are flatly contradicted by its prior agreement to the same discovery sought now by Class Plaintiffs, which the DOJ inexplicably reneged upon just hours before Plaintiffs were about to file their responses to Defendants' motion to stay discovery on October 13.  Plaintiffs seek document discovery carefully tailored to avoid interference with DOJ's investigation, third-party discovery (which imposes no burden on Defendants and no risk to the criminal investigation), and limited, non-merits testimonial discovery.  DOJ's arguments are premised on pure speculation – that Defendants "*may* be less inclined" or "*may* delay their decision to cooperate" with DOJ – but offer no evidence to back up such conjecture.  DOJ Mem. at 5-6 (emphasis added). DOJ simply ignores that Plaintiffs have agreed to forgo the only type of discovery that could possibly create these risks – exactly as the DOJ previously requested.

Because many of the documents sought by Plaintiffs' targeted document requests have likely already been identified, gathered and produced by Defendants to the DOJ or to the Plaintiff States, the production of some of those documents in this MDL would not impose undue

cost or burden on the Defendants nor create the "distractions" the DOJ belatedly contends their production would cause.[5]

## II.     BACKGROUND

In early March 2016, the first complaint alleging anticompetitive price fixing of the generic pharmaceuticals Digoxin and Doxycycline was filed in this District.[6]  After additional complaints were filed, the Judicial Panel on Multidistrict Litigation (the "Panel") ordered the transfer of those cases to this Court for centralized coordination and consolidation.  *In re Generic Digoxin and Doxycycline Antitrust Litig.*, 227 F. Supp. 3d 1402 (J.P.M.L. 2016).  Shortly after the *Digoxin and Doxycycline* cases were filed in this District, similar actions were filed alleging price fixing as to other generic pharmaceuticals.  In April 2017, the Panel transferred these actions to this Court for centralization.  *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341 (J.P.M.L. 2017).

On May 1, 2017, DOJ filed a motion to stay discovery until 30 days following Class Plaintiffs' filing of all consolidated amended complaints for all generic drugs to "provide the United States with an opportunity to meet and confer with lead counsel about whether sequencing of and/or conditions on discovery would be adequate to protect the [DOJ's] investigation beyond [that] initial period."[7]  Recognizing that courts must consider prejudice to the parties when assessing a proposed stay, DOJ asserted that Class Plaintiffs would suffer no prejudice because they would have considerable control over the length of the stay by filing their

---

[5] It bears emphasis that Plaintiffs' document requests do not ask Defendants to identify the documents they produced to the DOJ or Plaintiff States.  *See* Plaintiff's Cross-Motion.

[6] *See* Compl., *International Union of Operating Engineers Local 30 Benefits Fund v. Lannett Company, Inc.*, No. 16-990 (E.D. Pa.) (filed on Mar. 2, 2016).

[7] Intervenor United States' Mot. to Stay Discovery at 1, No. 16-md-2724, ECF No. 279.

consolidated amended complaints at any time.[8]  And, the DOJ contended, the limited stay would provide an opportunity for it to negotiate a discovery plan with Plaintiffs that would protect the DOJ's criminal investigation and relieve the Court of the burden of unnecessary motion practice.[9]

During the May 4, 2017 Status Conference, the DOJ explained that its stay request was its way of "communicating to the Court the importance of proceeding in an orderly fashion" with discovery that would not interfere with the DOJ's investigation.  May 4, 2017 Hrg. Tr. 36:23-37:2 (excerpts at Ex. B).  The Court, in response, expressed concern about delaying discovery, recognized the option of "split[ing] the baby" to allow document discovery to proceed, and expressed concern that the DOJ's investigation may be prolonged, leaving the MDL to descend into a "black hole."  *Id.* 39:12-40:7.  The Court also asked the DOJ whether the discovery that had been permitted by other courts who had previously been assigned various Actions had hampered its investigation.  *Id.* 37:14-20.  Rather than answer that question, DOJ contended it was "happy to try [to] work out with the parties for all sides some sort of reasonable accommodation."  *Id.* 40:11-17.  The DOJ also noted that if it had an opportunity to review discovery requests in advance of service, as in the *Corticosteroids* Actions previously pending in the Southern District of New York (where DOJ did not object to document discovery), it might not object to discovery in this MDL.  *Id.* 45:5-10.  Plaintiffs noted their amenability to a time-limited stay *but only* in light of DOJ's interest in conferring to determine a mutually agreeable approach to discovery, and the Court acknowledged the wisdom of this cooperative approach. *Id.* 41:23-42:5; 46:4-20.

---

[8] *Id.* at 3.

[9] *Id.* at 4.

6

Two weeks later, Class Plaintiffs and the DOJ stipulated to a stay of discovery through September 15, 2017 (the deadline for Defendants' stay  motion), subject to meet and confers between the DOJ and Plaintiffs "about the timing and sequencing of appropriate document discovery directed to both parties and third parties."[10]  The Court subsequently approved the stipulation and stayed discovery until September 15, 2017, with a further stay possible.[11]  Class Plaintiffs had agreed to the stipulation because of the DOJ's commitment to work with them to reach a mutually agreeable discovery plan.  Decl. of Paul Costa ¶ 3 (attached as Ex. A).  Shortly thereafter, Class Plaintiffs and DOJ began meeting to discuss a discovery approach that would not interfere with the DOJ's ongoing investigation.

After the Panel transferred the Plaintiff States' Actions to this MDL on August 3, 2017 and Class Plaintiffs filed their consolidated amended complaints on August 15, 2017, Plaintiffs and the DOJ continued their negotiations over the scope and sequencing of discovery in the MDL.  Costa Decl. ¶ 4.  A mutually agreeable Proposed Pretrial Order to govern discovery appeared attainable, so Plaintiffs consented to DOJ's August 25, 2017 motion to extend the stay of discovery through resolution of the anticipated motion to stay discovery by Defendants.[12]  *See* Costa Decl. ¶ 6.  Significantly, in that unopposed motion, the DOJ did *not* state that discovery would interfere with its investigation, and it did *not* oppose all discovery.   To the contrary, the DOJ stated that it would continue negotiations with Plaintiffs to identify areas of limited discovery that *could* proceed.[13]  The Court granted the DOJ's unopposed motion on August 28, 2017 and ordered that discovery remain stayed pending a ruling from the Court on Defendants'

---

[10] *See* Joint Stipulation at ¶ 2.b, attached to PTO No. 23, ECF No. 347.

[11] *Id.*

[12] *See* Intervenor United States' Unopposed Mot. to Extend Stay of Discovery, ECF No. 426, at 1.

[13] *See id.* at 2.

forthcoming stay motion.[14]  On September 15, 2017, Defendants filed a motion to continue the

stay in its entirety until after the Court rules on motions to dismiss in each Lead Case.[15]

Throughout September, Plaintiffs and the DOJ continued their negotiations to ensure

there was ample time for any agreement on a Proposed Pretrial Order regarding discovery to be

internally vetted within the DOJ and approved by Department superiors.  Costa Decl. ¶ 7.

Plaintiffs prepared proposed document requests to be served on Defendants and provided them to

the DOJ for its review, along with draft third-party discovery Plaintiffs would seek from

pharmacy benefit managers, industry trade associations, and the like.  Through phone calls and

e-mails, Plaintiffs and the DOJ edited or eliminated document requests to which the DOJ

objected, and agreed upon discovery limitations that would avoid interference with the DOJ's

investigation.  These include, for example, prohibitions on:  (1) identifying any documents

produced in this MDL as having been previously produced to the DOJ, or disclosure of what

information had been provided to the DOJ; (2) any discovery related to the DOJ's investigation;

and (3) any testimonial discovery on the merits (*i.e.*, merits depositions of individual and

corporate witnesses), as well as requests for admission, and interrogatories.   Costa Decl. ¶ 5 and

Ex. 1 thereto (Initial Proposed Pretrial Order) ¶¶ 3, 4.

Plaintiffs ultimately reached agreement with DOJ on limited document discovery of

Defendants concerning the topics identified in Exhibit A to Plaintiffs' Proposed Pretrial Order;

third-party document discovery; and non-merits depositions only as to the following non-merits

topics:  jurisdiction; organizational structure; business operations; the identity of relevant

document custodians, customers, and suppliers; trade association attendance; document storage

systems and databases; and document preservation, retention, and similar policies.  *See id.* ¶ 2.

---

[14] *See* PTO No. 32, ECF No. 427.

[15] *See* Motion to Stay Discovery, ECF No. 492.

All other discovery was to be stayed.   In addition, Plaintiffs agreed to provide all discovery requests to the DOJ to allow it to object, and similarly agreed to notify DOJ seven days before any Rule 30(b)(6) deposition about the identity of any witness designated to testify so DOJ, if need be, could raise concerns about such designation.  *Id.* ¶¶ 6, 7.  Plaintiffs made each of these accommodations at the DOJ's request to avoid any interference with the criminal investigation and with the good faith belief that a compromise had been achieved that would allow Plaintiffs to finally begin discovery.  Costa Decl. ¶¶ 3, 6.  On September 28, 2017, DOJ confirmed that it agreed to the Proposed Pretrial Order it had negotiated with Plaintiffs.  Costa Decl. ¶ 8.

Under Pretrial Order No. 32, Class Plaintiffs were to file their response to Defendants' motion to stay discovery on October 13, 2017.  *See* ECF No. 427 ¶ 3.  At 4:58 p.m. on October 12, just one day before Plaintiffs' brief was due, the DOJ confirmed that the following representations, to be included in Plaintiffs' brief, were accurate:

> The Agreement contemplates that discovery should proceed promptly and concurrently with the DOJ's parallel criminal investigation, while Rule 26(a)(1) disclosures and the depositions of individual witnesses will be deferred. The Agreement is a compromise that respects the interest of the many class members and States who seek the "the just, speedy, and inexpensive determination," Fed. R. Civ. P. 1, of their claims of sweeping anticompetitive conduct in the generic pharmaceutical industry. It is Plaintiffs' understanding that DOJ concurs in the relief sought here and is contemporaneously filing a memorandum urging the Court to enter the same proposed Pretrial Order submitted herewith.
> ***
> It bears emphasis that while the DOJ had previously sought stays of discovery, it has now agreed that the particular discovery requests set forth in the Agreement will not interfere with its on-going criminal investigation and should be allowed to proceed without further delay.

Costa Decl. ¶ 9.

Then, inexplicably, the very next morning, DOJ undid the many weeks of negotiations and did an about-face, changing its position from complete support of Plaintiffs' proposed partial stay to complete opposition.  Costa Decl. ¶ 10.  During a teleconference on October 13, DOJ attorneys informed Plaintiffs that the DOJ would not be filing the agreed Proposed Pretrial Order, but instead would be asking for a complete stay of discovery of indefinite duration.  When asked to do so, DOJ could not provide any explanation for how the same discovery to which it previously agreed would all of a sudden interfere with its criminal investigation.  Costa Decl. ¶ 10.

As explained herein and in the contemporaneously-filed Joint Cross-Motion to Allow Certain Discovery, the Court should deny the stay motions by Defendants and the DOJ, and impose only the partial stay proposed by Plaintiffs, allowing critical targeted discovery to proceed now.[16]

## III.   DEFENDANTS HAVE NOT DEMONSTRATED "GOOD CAUSE" FOR CONTINUATION OF THE DISCOVERY STAY

### A.    The Proposed Tailored Discovery Is Appropriate Now

Defendants misstate the law in asserting a general presumption that discovery "should not proceed in any case unless and until the Court determines that the complaint . . . states a plausible claim for relief."  Defs.' Mem. at 3.  Defendants cite no authority for that sweeping proposition, nor can they since no such authority exists.  In fact, "[a] stay of a civil case is an 'extraordinary remedy.'"  *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-cv-5530,

---

[16] There is only one difference between the agreed-to Proposed Order accompanying Plaintiffs' Cross Motion and the agreement previously reached with the DOJ.  In consideration of the DOJ's agreement to support immediate commencement of the agreed-upon targeted discovery, Plaintiffs previously agreed to a partial stay of indeterminate duration. Plaintiffs' Proposed Pretrial Order now sunsets the partial stay after three months (¶ 1).  *See* Class Pls.' and the Pl. States' Mem. in Supp. of Their Joint Cross-Motion to Allow Certain Discovery, at 6 & and accompanying Ex. A.

2002 WL 31111766, at *1 (E.D. Pa. Sept. 18, 2002) (declining to stay despite parallel proceedings).  Thus, the proponent of a stay of discovery during the pendency of a dispositive motion bears the burden to demonstrate that "good cause" exists.  *See Spathos v. Smart Payment Plan, LLC*, No. 15-cv-8014, 2016 WL 9211648, at *1 (D.N.J. Apr. 25, 2016); *19th St. Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 350 (E.D. Pa. 2000).  It is well-settled that 'the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay.'"  *Spathos*, 2016 WL 9211648, at *1 (quoting *Gerald Chamales Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007)); *see also Klikus v. Cornell Iron Works, Inc.,* No. 13-cv-468, 2014 WL 496471, at *6 n.3 (M.D. Pa. Feb. 6, 2014).[17]

    As a court in this District emphasized:

> A court should not automatically stay discovery pending a motion
> to dismiss under Rule 12(b).  Had the drafters of the Federal Rules
> of Civil Procedure wanted an automatic stay of discovery pending
> a motion to dismiss they could have so provided.… *Motions to stay
> discovery are not favored because when discovery is delayed or
> prolonged it can create case management problems which impede*

---

[17] Courts throughout the country are in accord.  *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) (noting mere filing of a motion to dismiss does not stay discovery); *In re Currency Conversion Fee Antitrust Litig.,* No. MDL 1409, 2002 WL 88278, at *1 (S.D.N.Y. Jan 22, 2002) (finding "imposition of a stay is not appropriate simply on the basis that a motion to dismiss has been filed, as the Federal Rules make no such provision"); *In re Apple In-App Purchase Litig.*, No. 11-cv-1758, 2012 U.S. Dist. LEXIS 18970, at *3 (N.D. Cal. Feb. 15, 2012) (rejecting a stay of discovery pending a dispositive motion and finding discovery stays "are disfavored because … [they] . . . interfere with judicial efficiency . . . . [B]efore a stay can be issued, the moving party must meet a heavy burden of making a strong showing why discovery should be denied") (citation omitted); *Allstate Ins. Co. v. Levy*, No. 10-cv-1652, 2011 WL 288511, at *1 (E.D.N.Y. Jan. 27, 2011) ("The pendency of the motion to dismiss does not provide an automatic basis to stay discovery."); *Morien v. Munich Reinsurance Am., Inc.*, 270 F.R.D. 65, 66-67 (D. Conn. 2010) (noting a party seeking the stay bears the burden of showing good cause, including "a strong showing that the plaintiff's claim is unmeritorious"; "[t]he pendency of a dispositive motion is not, in itself, an automatic ground for a stay") (citations omitted); *Parker v. Stryker Corp.*, No. 08-cv-1093, 2008 WL 4457864, at *1 (D. Colo. Oct. 1, 2008) (noting a "stay of all discovery is generally disfavored in this District," and denying a stay during pendency of a motion to dismiss).

> *the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.*

*Coca-Cola Bottling Co. v. Grol*, No. 92-CV-7061, 1993 WL 13139559, at *2 (E.D. Pa. Mar. 8, 1993) (emphasis added).

Importantly, the burden of showing "good cause" applies equally to the DOJ:  "In a civil case, there is a strong presumption in favor of discovery, and the government must overcome that presumption in its request for a stay."  *United States v. Gieger Transfer Serv., Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997) (citing Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 209 (1990)).  Indeed, the amended Federal Rules favor *early* discovery, permitting parties to deliver document requests just 21 days following service of the summons, which are considered served at the first Rule 26(f) conference.  Fed. R. Civ. P. 26(d)(2).  As courts have noted, a discovery stay is directly at odds with the Rules' directive for "expeditious resolution" of the action.  *Skellerup Indus. Ltd. v. City of L.A.*, 163 F.R.D. 598, 600-601 (C.D. Cal. 1995); *see also Coyle v. Hornell Brewing Co.*, No. 08-cv-2729, 2009 WL 1652399, at *3 (D.N.J. June 9, 2009) (noting stays of discovery "are not preferred").

Defendants' reliance on the unpublished decision in *Mann v. Brenner*, 375 Fed. Appx. 232 (3d Cir. 2010), is misplaced.  Defs.' Mem. at 5, 6, 14.  In that case, plaintiff's civil rights claim was barred by collateral estoppel, and he failed to state a claim despite being afforded multiple opportunities to amend his complaint.  *See id*. at 234-38.  Despite the plain legal insufficiency of his complaint, plaintiff sought full discovery, unlike the targeted discovery sought here by the Class Plaintiffs.  The Third Circuit in *Mann* merely held that "*[i]n certain circumstances*, it *may* be appropriate to stay discovery while evaluating a motion to dismiss…."  *Id*. at 239 (emphasis added).  It thus upheld the denial of discovery in an obviously baseless lawsuit; it did *not* hold that there is a presumptive bar to discovery during the pendency of a

motion to dismiss, in every case, no matter how meritorious it may be.[18]  This non-binding

decision hardly supports the categorical bar to discovery that Defendants seek here, particularly

in light of the strength of the very detailed Class Complaints.  Indeed, the post-*Mann* decisions

from district courts in this Circuit cited herein rejecting discovery stays correctly recognized that

*Mann* does not require an automatic stay of discovery any time a defendant files a motion to

dismiss.

 Importantly, before consolidation into this MDL, courts that presided over several

generic drug price-fixing actions later transferred here rejected Defendants' motions to stay

discovery.  *See, e.g.*, *In re Topical Corticosteroid Antitrust Litigation*, No. 16-mc-7000, ECF No.

19 (Master Case Order No. 7) (S.D.N.Y. Mar. 27, 2017) (denying defendants' motion for a

discovery stay, noting that "[t]his Court sees no reason why document discovery should not

proceed during the pendency of the motions"); *accord Conn. v. Aurobindo Pharma USA*, No. 16-

cv-2056, ECF No. 268 (D. Conn. Apr. 18, 2017) ("Continued discovery advances the

Multidistrict Litigation process.  Furthermore, the actual filing of a motion to dismiss is not a

basis for staying a case. . . .").  This Court should reach the same conclusion.

### B.     *Twombly* **Does Not Shield Defendants from Discovery**

 Defendants' claim that *Twombly* erected a discovery bar prior to a decision on a motion

to dismiss in antitrust cases is also unfounded.  The Supreme Court did not even discuss stays of

---

[18] Other appellate cases on which Defendants rely to support their motion are similarly
inapposite.  In *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) (Defs.'
Mem. at 6-7), like *Mann*, plaintiff had made a "dubious claim" of "questionable validity."  The
complaint in *Havoco of Am. Ltd. v. Shell Oil Co.*, 626 F.2d 549, 553 (7th Cir. 1980) (Defs.'
Mem. at 7) was similarly plainly deficient.  In a subsequent Seventh Circuit decision, that Court
emphasized that "[d]iscovery need *not* cease during the pendency of a motion to dismiss."  *SK
Hand Tool Corp. v. Dresser Industries*, 852 F.2d 936, 945 n.11 (7th Cir. 1988) (emphasis
added).  And *Rutman Wine Co. v. E&J Gallo Winery*, 829 F.2d 729 (9th Cir. 1987) (Defs.' Mem.
at 7) involved a patently deficient complaint where the Court emphasized there was no
"reasonable likelihood that plaintiffs can construct a claim."  *Id.* at 738.

discovery, and courts have consistently recognized that "*Twombly* and *Iqbal* do not mandate that a motion to stay should be granted every time a motion to dismiss is filed." *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12-cv-1662, 2013 WL 690613, at *3 (N.D. Ill. Feb. 20, 2013) (denying defendants' motion to stay).[19]   Notably, even one of the decisions relied upon by Defendants expressly *rejected* the notion that *Twombly* supports a stay of discovery in antitrust cases during the pendency of a motion to dismiss:

> Defendants' statement that "*Twombly* stands for the proposition that antitrust plaintiffs cannot subject defendants to *any* discovery until the Court determines that the plaintiffs have articulated a 'plausible entitlement to relief' on the face of the complaint" is *incorrect….This order does not read Twombly to erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss*. Defendants' argument upends the Supreme Court's holding; the decision used concerns about the breadth and expense of antitrust discovery to identify pleading standards for complaints, *it did not use pleading standards to find a reason to foreclose all discovery*.

---

[19] *Accord In re Lithium Ion Batteries Antitrust Litig.,* No. 13-md-02420, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013) ("[T]he costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust defendant challenges the sufficiency of a complaint."); *Tamburo v. Dworkin*, No. 04-c-3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 7, 2010) ("*Twombly* and *Iqbal* do not dictate that a motion to stay should be granted every time a motion to dismiss is placed before the Court."); *Solomon Realty Co. v. Tim Donut U.S. Ltd.*, No. 08-cv-561, 2009 WL 2485992, at *3 (S.D. Ohio Aug. 11, 2009) ("Despite the defendants' interpretation of new pleading standards in the wake of *Twombly* and *Iqbal*, the Court is not persuaded that this case presents any need for departure from the general rule that a pending motion to dismiss does not warrant a stay of discovery."); *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08-cv-1531, 2008 WL 4812440, at *3 (N.D. Ill. Oct. 28, 2008) (*Twombly's* concern with the potential costs associated with antitrust discovery "is not … tantamount to an automatic prohibition on discovery in every antitrust case where defendants challenge the sufficiency of a complaint."); *In re Flash Memory Antitrust Litig.*, No. 07-cv-0086, 2008 WL 62278, at *3 (N.D. Cal. Jan. 4, 2008) ("The Court [in *Twombly*] did not hold, implicitly or otherwise, that discovery in antitrust actions is stayed or abated until after a complaint survives a Rule 12(b)(6) challenge. Such a reading of that opinion is overbroad and unpersuasive.").

*In re Graphics Processing Units Antitrust Litig.*, No.  06-cv-7417, 2007 WL 2127577, at *4
(N.D. Cal. July 24, 2007) ("*GPU*") (emphasis added).[20]

Where, as here, the dismissal motion does not raise a pure question of law but instead
challenges the sufficiency of the facts alleged to support the claims, courts have recognized that
the dismissal motion "does not militate in favor of a stay."  *Currency Conversion*, 2002 WL
88278, at *2; *see also* 6 James W. Moore et al., *Moore's Federal Practice* § 26-105[3][c] (3d ed.
2017) (factors relevant to a stay include "whether it is a challenge as a matter of law or to the
sufficiency of the allegations").

C.     **The Class Complaints Are Likely to Withstand Defendants' Motions to
Dismiss, Militating Against the Requested Stays of Discovery**

1.     **The Denial of Motions to Dismiss in *Propranolol* Is Highly
Significant Here**

As noted above, Defendants rely on cases where courts stayed discovery because the
complaints were patently "weak" and thus "any discovery at all would be a mere fishing
expedition."  Defs.' Mem. at 8.  In stark contrast, Class Plaintiffs' Complaints set forth detailed
allegations of direct evidence of concerted action as to certain generic drugs as well as parallel
pricing and plus factors  demonstrating the plausibility of the Complaints.

Indeed, even before transfer by the Panel, the complaints alleging price fixing of the
generic drug Propranolol and related anticompetitive conduct were upheld following multiple
rounds of briefing and oral argument.  *In re Propranolol Antitrust Litig.,* 249 F. Supp. 2d 712,

---

[20] Defendants' brief omits the foregoing passage from their discussion of *GPU*.  Defs.' Mem
at 8, 13.  Their brief also ignores the statement in that opinion expressly recognizing that
discovery should go forward in antitrust cases "where it is almost certain that the complaint is
viable, such as is often true where guilty pleas have already been entered in a parallel criminal
case.  *Of course, in such conditions, at least some discovery should ordinarily proceed despite
any pending motion to dismiss*."  *GPU*, 2007 WL 2127577, at *5 (emphasis added).

718 (S.D.N.Y. 2017).  In denying the motions to dismiss, the Court pointed not only to parallel

price increases, but also found the following four plus factors particularly persuasive:

- Generic pharmaceutical industry-specific factors giving defendants a common motive to conspire.  *See id.* at 719-20.

- Actions against self-interest in increasing generic pharmaceutical prices, especially given "the magnitude of defendants' price increases."  *Id.* at 720-21.

- A high level of interfirm communications among Defendants' employees who were responsible for setting drug prices.  *Id.* at 722-23.

- A plausible link between the ongoing civil and criminal government investigations into wide-spread collusion in the generic pharmaceutical industry and the class complaints.  *Id.* at 723-24.

Each of these factors applies with equal or greater force to each generic drug at issue

here.[21]

### 2.     Sweeping and Long-Standing Government Investigations Bolster the Allegations in the Class Complaints

Since the *Propranolol* opinion was issued in April 2017, the overlap between the DOJ

and Plaintiff States' investigations and the Class Complaints has become even more apparent,

thereby underscoring the plausibility of the Class Complaints' allegations.  Several years ago, the

DOJ empaneled a grand jury in this District which, based on publicly available information, is

known to have issued subpoenas to many generic pharmaceutical companies, including more

than half of the Defendants in this MDL.  Additionally, two high-level Heritage executives

(including a member of the board of directors of the leading generic pharmaceutical trade

association) entered guilty pleas, and admitted they engaged in price fixing, bid rigging, and

customer and market allocation with their competitors.  They are currently cooperating with the

---

[21] Until transfer, discovery was proceeding in the *Propranolol* action, and defendants and several non-parties produced substantial documents. One non-party that made only a partial production is ready to complete its production but is waiting until this Court lifts the stay.

DOJ and the Plaintiff States, and it has also been reported that at least one corporate Defendant in this MDL is providing cooperation to DOJ in its ongoing investigation.[22]  Present and former employees from several generic pharmaceutical companies have been separately subpoenaed (including employees of Defendants Impax, Heritage, Lannett, and Mylan), and search warrants have been executed on at least Defendants Citron, Mylan, and Perrigo.[23]  The DOJ has repeatedly asserted that "[e]vidence uncovered during the criminal investigation implicates other companies and individuals (including a significant number of the Defendants here and individual employees) in collusion with respect to doxycycline hyclate, glyburide, and other drugs (including a significant number of the drugs at issue here)."  ECF No. 516-1 at 2; *see also* ECF No. 279 at 1-2.

In addition to the federal criminal investigation, the Plaintiff States have gathered extensive evidence of illegal collusion during their multi-year investigation.  On October 31, 2017, the Plaintiff States filed a motion for leave to amend their Complaint, adding 13 additional drugs, a dozen new defendants, and alleging "an overarching conspiracy, the effect of which was to minimize if not thwart competition across the generic drug industry."  Plaintiff States' CAC ¶ 2.  The Plaintiff States also alleged that they "continue to investigate additional conspiracies, involving these and other generic manufacturers, regarding the sale of other drugs not identified in this Complaint, and will likely bring additional actions based on those conspiracies at the appropriate time in the future."  Plaintiff States' CAC ¶ 3.

The scale and scope of the conspiracy (or conspiracies) that is coming to light in these on-going government investigations and their substantial overlap with the Class Complaints,

---

[22] *See* End-Payer Plaintiffs' Consol. Am. Class Action Compl., No. 16-DX-27242, ECF No. 122, at ¶¶ 16-20, 26.

[23] *Id.* at ¶¶ 23-24.

"including a significant number of the drugs at issue here" in this MDL (ECF No. 516-1 at 2),

further demonstrate the legal sufficiency of the Class Complaints.[24]   Because the Class

Complaints are likely to survive Defendants' motions to dismiss entirely or at least substantially,

this weighs heavily in favor of discovery proceeding now without further protracted delay.[25]

### D.   Defendants Will Not Be Prejudiced If the Court Enters the Proposed Pretrial Order, Which Allows Targeted Discovery to Proceed

As explained in the Cross-Motion, there is ample reason for the Court to enter the

Proposed Pretrial Order permitting tailored discovery as agreed among the Class Plaintiffs, the

Plaintiff States (and, until few weeks ago, the DOJ).  This Proposed Pretrial Order was

extensively negotiated by those parties and will allow discovery to proceed without interfering

with the on-going federal and state government investigations.

Defendants balk at *any* discovery being allowed to proceed prior to resolution of the

motions to dismiss, claiming that discovery would be "particularly prejudicial to Defendants in

light of the nature and structure of this particular MDL."  Defs.' Mem. at 14.  Not so.

---

[24] *See, e.g.*, *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 632 (E.D. Pa. 2010) (noting the existence of a "parallel criminal investigation," even without guilty pleas, is "an allegation demonstrating that the government believes a crime may have occurred" and weighs in favor of denying a motion to dismiss); *Propranolol*, 249 F. Supp. 2d at 724 (denying motions to dismiss because of, *inter alia*, plausible link between parallel government investigations and complaints); *In re SRAM Antitrust Litig.*, 580 F. Supp. 2d 896, 903 (N.D. Cal. 2008) (denying motions to dismiss and holding that allegations regarding guilty pleas to price-fixing charges in the DRAM industry supported an inference of conspiracy in the related SRAM industry); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1149 (N.D. Cal. 2009) (guilty pleas to price-fixing charges in the DRAM industry supported inference of conspiracy in the related NAND flash memory industry).

[25] *See Coca-Cola Bottling Co.*, 1993 WL 13139559, at *2 ("Requests to stay discovery are rarely appropriate where resolution of the motion to dismiss will not dispose of the entire case."); *see also Martinez v. MXI Corp.*, No. 15-cv-00243, 2015 WL 8328275, at *6 (D. Nev. Dec. 8, 2015) ("[T]he court is not convinced at this time that plaintiffs will be unable to state any claim for relief.  Proceeding with discovery while defendants' motion to dismiss is pending will further the just and speedy determination of this case"); *Alford v. City of New York*, No. 2011-cv-0622, 2012 WL 947498, at *1 (E.D.N.Y. Mar. 20, 2012) (denying discovery stay where court was "doubtful that defendants will succeed in dismissing all of the claims against them").

First, as discussed extensively below, Class Plaintiffs' and the Plaintiff States' proposed discovery was carefully drafted not only to prevent interference with the DOJ's criminal investigation, but also to limit the discovery to which Defendants would be subjected.  For example, merits depositions would be stayed, relieving Defendants from deposition preparation and business disruption.  The requests for production of documents that Class Plaintiffs would serve on Defendants would not impose undue hardship, expense or burden on them, as many of those documents were likely already identified and produced by Defendants to DOJ or the Plaintiff States.

Second, Defendants have not demonstrated that they would suffer hardship or that they have a particular need for protection.  Instead, Defendants' brief repeatedly asserts that discovery in antitrust cases can be expensive and that discovery is likely to be broad.  Defs.' Mem. at 4, 7, 12-14.  Yet courts in this Circuit and elsewhere have consistently held that similar arguments about the general burden of discovery are insufficient to warrant highly disfavored discovery stays.  *See, e.g.*, *Adriana Castro, M.D., P.A. v. Sanofi Pasteur Inc.*, No.  11-cv-7178, 2012 WL 12918261, at *2 n.2 (D.N.J. July 18, 2012) (concluding that the defendant had not "ma[d]e out a clear case of hardship or inequity in being required to go forward" and noting that producing parties can still seek protection from overbroad and unduly burdensome discovery requests under Fed. R. Civ. P. 26(b).); *Gerald Chamales Corp.*, 247 F.R.D. at 454-55 (same).

Third, the "nature and structure of this particular MDL" (Defs.' Mem. at 14) weigh in favor of discovery proceeding apace.  Defendants ignore a key reason why this MDL was expanded to include many generic pharmaceuticals and the Plaintiff States' lawsuit: coordination of common discovery.  Each action shares a broad common nucleus of operative facts—facts that should be jointly developed in discovery.  *See In re Generic Pharm. Pricing Antitrust Litig.*,

2017 WL 4582710, at *1 (J.P.M.L. Aug. 3, 2017) ("As all [the actions currently in the MDL and the Plaintiff States' Action] arise from the same factual core, they will involve common discovery of defendants and third parties.").  Indeed, in expanding this MDL, the Panel explicitly recognized that:

> Although separate conspiracies are alleged, they may overlap significantly. Thus, the same witnesses are likely to be subject to discovery across all actions. Coordination of this common discovery will be essential to avoiding duplication and inconvenience to the parties, witnesses, and the courts. Such coordination also is necessary because the allegations in these actions (as well as those in the MDL) stem from the same government investigation into price fixing, market allocation, and other anticompetitive conduct in the generic pharmaceuticals industry.

*In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (J.P.M.L. 2017).  Denying Defendants' motion to stay and entering Plaintiffs' Proposed Pretrial Order is consistent with the coordination of discovery envisioned by the Panel and will promote the efficiencies the Panel sought to achieve.

Finally, the Defendants' list of the 30 Defendants currently in the MDL (before the Plaintiff States' new Amended Complaint) exaggerates the complexity and breadth of discovery here.  Defs.' Mem. Ex. A.  Several of the Defendants listed on the chart have the same parent company.  Defendants also place great emphasis on the fact that four of the 30 Defendants are not named in any Group 1 Action.  Of course, the more important point is that the remaining 26 out of the 30 Defendants *are* in Group 1.  Of the four other Defendants, Breckenridge and Upsher-Smith are defendants in cases involving Propranolol, which, as noted above, were sustained upon motions to dismiss and they have already been subject to document discovery.  Similarly, Aurobindo and Citron are both defendants in cases involving Glyburide, a drug as to

which Heritage's senior executives pleaded guilty and DOJ and the Plaintiff States have uncovered substantial direct evidence of conspiratorial behavior.

In sum, Defendants have not carried their heavy burden of showing that allowing discovery to proceed now would cause them to suffer prejudice.  Nor have they demonstrated any need to postpone or silo discovery by waiting for decisions on motions to dismiss on a drug-by-drug basis.  Thus, there is no "good cause" for their requested stay.

## IV.   PLAINTIFFS' PROPOSED DISCOVERY WILL NOT INTERFERE WITH THE CRIMINAL INVESTIGATION

As most clearly evidenced by the DOJ's original agreement to the targeted discovery it negotiated with Plaintiffs, and as it expressly acknowledged just hours prior to its last-minute reversal of position, Plaintiffs' proposed discovery will *not* interfere with DOJ's criminal investigation.  In its motion, DOJ offers no contrary evidence whatsoever, instead relying solely on speculation, untethered to the discovery actually proposed by Plaintiffs.  Plaintiffs are not seeking any merits testimony, any discovery about the DOJ's investigation, or any information that would disclose DOJ's investigation targets, methods, or theories.  Like Defendants, DOJ also has failed to demonstrate the requisite "good cause" for a stay of discovery, and its motion likewise should be denied.

### A.     The Proposed Targeted Discovery Will Not Impede Defendants' Cooperation with the DOJ

The DOJ claims that Defendants may decline to cooperate with it for fear that information they may reveal to it will be disclosed in the civil matter.  This argument rests on pure speculation, without any factual support to demonstrate that Defendants "may delay" or "may be less inclined" to cooperate.  DOJ Mem. at 4-5.[26]  Indeed, Defendants' own brief did not

_____

[26] The DOJ suggests that the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 118 Stat 661 (2004) ("ACPERA"), recognizes that civil liability can

state that a continuation of the stay is necessary for them to cooperate with the DOJ and its investigation.

At the DOJ's request, Plaintiffs' proposed document requests do not seek identification of or copies of documents produced by Defendants to the Department of Justice.  *See* Proposed Pretrial Order, Ex. A.  Similarly, under that proposal, when Defendants participate in discovery of any kind, they are prohibited from identifying any documents or information as having been previously provided to the DOJ.  *See id.* ¶ 4.  Moreover, Plaintiffs' proposed discovery forgoes, at this stage, discovery *of any kind* regarding the DOJ's criminal investigation—nothing regarding its scope, nature, drugs at issue, investigational targets, or anything else.  *Id.* ¶ 3. Plaintiffs are also forgoing all testimonial discovery on the merits, *id.* ¶ 2(c) & (d), eliminating the risk that depositions would reveal anything about the investigation.  Under Plaintiffs'

---

impact a Defendant's decision to cooperate.  DOJ Mem. at 5 n.5. To be sure, the benefits that inure to a DOJ ACPERA leniency applicant—relief from treble damages in a civil case— encourage wrong-doers to cooperate with DOJ. But it is the civil litigation that *encourages* rather than discourages cooperation with the Government by providing a carrot to cooperators. And ACPERA inherently expects that civil litigation will proceed concurrently with a Government investigation because the civil cooperation requirements apply whether the leniency agreement is conditional (i.e., cooperation with the government is ongoing) or final (after full cooperation with the DOJ has been provided). *See* U.S. Dep't of Justice, Model Corporate Conditional Leniency Letter (Jan. 26, 2017), *available at* https://www.justice.gov/atr/file/891286/download. ACPERA likewise recognizes the value of civil antitrust litigation in enforcing the antitrust laws by *requiring* an applicant's cooperation in the civil matter. Congress anticipated that ACPERA cooperation provided to civil plaintiffs would be so beneficial "that the total compensation to victims of antitrust conspiracies will be increased." 150 Cong. Rec. S3610, 2004 WL 714783 (daily ed. Apr. 2, 2004) (statement of Sen. Hatch). The discovery stay proposed by both Defendants and the DOJ defeats the purpose of ACPERA. Under ACPERA, affirmative cooperation must be provided to civil plaintiffs in a timely manner. ACPERA § 213(c); *see also* 150 Cong. Rec. S36210 ("[T]he legislation requires the amnesty applicant to provide full cooperation to the victims *as they prepare* and pursue their civil lawsuit.") (emphasis added). It requires, *inter alia*, that the applicant provide to the claimant "a full account" of all potentially relevant facts known to the applicant and all potentially relevant documents.  ACPERA § 213(b). The Defendants' and DOJ's proposed stay prevents that timely cooperation, thus undermining Congressional intent.

discovery proposal, which was extensively negotiated with DOJ, Plaintiffs will be unable to discern from discovery whether a producing Defendant is even the target of a DOJ investigation, much less what information, if any, it has provided.  Given these significant limitations, there is no basis for the DOJ's claim that the proposed discovery would discourage cooperation with it.

Second, the DOJ asserts that Defendants' efforts to respond to the discovery sought by Plaintiffs will distract them and divert resources needed to cooperate with the DOJ because Defendants must "collect[], review[], and produ[e] documents, respond[] to written interrogatories, and prepare[] for and attend[] depositions."  DOJ Mem. at 7.  This presumes that companies involved in a criminal investigation would choose to push criminal investigators to the side to focus on civil claims—again, a notion unsupported by any evidence.  Moreover, DOJ ignores the fact that Plaintiffs do not propose to serve *any* interrogatories or requests for admissions during the period of the limited stay, and, as noted above, the only depositions sought are confined to routine, non-merits topics (organizational structure, etc.) that normally require little preparation by corporate officials involved with the DOJ investigation.  *See* Proposed Pretrial Order ¶ 2.  Courts have rejected comparable "burden" arguments when made by defendants.  *See, e.g.*, *In re Scrap Metal Antitrust Litig.,* No. 02-cv-0844, 2002 WL 31988168, at *5 (N.D. Ohio Nov. 7, 2002).

Significantly, even the Defendants did not argue in their brief that civil discovery would prevent them from responding to the DOJ's investigation.  Defendants are major companies with ample resources, highly skilled and reputable counsel, and extensive litigation experience of all kinds.  They surely can respond to targeted discovery while also dealing with the DOJ and its investigation.

For those Defendants and generic drugs that are the subject of the DOJ's investigation, Plaintiffs' document requests likely encompass many of the same documents sought by DOJ's subpoenas.  Thus, many Defendants will likely have already collected and searched for those same documents and prepared them for production to the DOJ as well as for use in their own defense in these civil actions, obviating any burden.

### B.   Civil Discovery Will Not Provide Defendants Early Access to Discovery in the Criminal Matter

Relying on inapposite case law, the DOJ vaguely asserts that the limited discovery Plaintiffs seek "might" somehow provide Defendants with early access to discovery in the criminal matter.  DOJ Mem. at 7.  The Court should reject that red herring, just as other courts have.  *See Scrap Metal,* 2002 WL 31988168, at *7 (denying proposed stay, noting the government failed to explain precise nature of its concern that defendants may use discovery to obtain information in the criminal matter); *United States v. All Funds on Deposit,* 767 F. Supp. 36, 42 (E.D.N.Y. 1991) ("[M]ere conclusory allegations of *potential* abuse or simply the *opportunity* . . . to exploit civil discovery . . . will not avail on a motion for a stay.") (emphasis in original) (internal quotation marks and citation omitted).  Federal Rule of Criminal Procedure 16(a)(1) limits what discovery a defendant may obtain *from the government* – not from other parties or entities.  As the DOJ itself is aware, nothing prevents Defendants in these Actions or in the criminal action from voluntarily sharing documents and information among themselves as part of a joint defense agreement to advance their own defenses.  Staying document discovery would not change that practical reality.[27]

---

[27] *See, e.g.*, Robert Bloch & Gary Winters, *How to Respond to a Criminal Antitrust Investigation: A Practical Approach in Today's Enforcement Environment*, ABA Section Antitrust, Sixth Annual Int'l Cartel Workshop (Apr. 4, 2006) ("Sharing information [among joint defense counsel whose clients have been subpoenaed] allows counsel to assess the strength and substance of the government's case at an early stage, and enables counsel to monitor and

As noted above, Plaintiffs propose that discovery relating to the Government's criminal investigation remain stayed such that investigative reports, witness statements, grand jury transcripts, DOJ subpoenas and the like may *not* be requested or produced by *any* party. *See* Proposed Pretrial Order ¶¶ 3-4. Thus, Defendants, who will obtain access to these materials in the criminal matter only after indictment,[28] will not be able to gain access to these materials through discovery here. And even if Defendants were to seek document discovery of other Defendants or the Plaintiff States, under Plaintiffs' proposed limitations, Defendants will have no way of knowing whether such documents were produced to the DOJ or whether the producing party is even a target of that investigation.

Moreover, none of the cases relied upon by the DOJ suggests that discovery stays are appropriate in related civil actions in which the government is not itself a litigant. DOJ Mem. at 7-8. Instead, each case pertained to parallel criminal and civil actions in which the government (or one of its branches) was a party in *both* actions.[29] In such cases, either the private party or the government has the opportunity to use discovery in the civil matter to seek documents it

---

evaluate the government's case as it develops."), *available at* http://www.mondaq.com/article.asp?article_id=38876.

[28] *See* Fed. R. Crim. P. 16(a)(1) and 18 U.S.C. § 3500.

[29] *Saunders v. City of Philadelphia*, No. 97-cv-3251, 1997 WL 400034, *6 (E.D. Pa. July 11, 1997) (involving arrestee's Section 1983 civil claim against the City, finding it would be "inequitable" to allow the civil plaintiff to obtain discovery from the City while the City would be unable to obtain similar discovery from the plaintiff in the criminal case); *SEC v. Mersky*, No. 93-cv-5200, 1994 WL 22305, at *4 (E.D. Pa. Jan. 25, 1994) (involving a civil SEC action parallel with DOJ's criminal investigation in which private defendant in both cases sought the investigative reports turned over by the SEC to the DOJ; the court merely held that the defendant in the civil and criminal actions could not circumvent the limitations on discovery in criminal matter by seeking those documents in the civil matter); *United States v. One 1967 Buick Hardtop Electra 225*, 304 F. Supp. 1402 (W.D. Pa. 1969) (involving a civil claim by the government for forfeiture of an asset that was the subject of the criminal action in which private defendant in both cases sought a deposition of a witness in the criminal case).

would not have access to in the criminal matter or use discovery in a manner that creates

inequities.  Such risks are minimized where, as here, the government is not a party in the parallel

civil action.  *See Scrap Metal*, 2002 WL 31988168, at *7 ("As the Government is not a party to

this litigation, any concern that either the Government or the Defendants will abuse the discovery

process is minimized."); *Alcala v. Texas Webb Cty.*, 625 F. Supp. 2d 391, 402 (S.D. Tex. 2009)

(noting the strongest case for a stay "occurs when the federal government has initiated both the

civil and criminal proceedings" but rejecting stay where civil case was brought by private

parties).

### C.  Much of the Targeted Discovery Plaintiffs Seek Is Entirely Unrelated to the Criminal Investigation and Cannot Interfere with It

The DOJ does not attempt to explain, nor could it, why *all* discovery, including non-

merits discovery and discovery of third parties, should be stayed in this MDL.  Such discovery is

irrelevant to and would not be produced in the criminal investigation. And it imposes little or no

burden on Defendants.  *See Golden Quality Ice Cream Co. v. Deerfield Speciality Papers, Inc.*,

87 F.R.D. 53 (E.D. Pa. 1980) (noting interest in proceeding with criminal matter should not

militate against proceeding with that part of the civil case that is not intrusive to the criminal

matter).

For example, Class Plaintiffs seek transaction and cost data necessary to preparation of

the expert opinions for both class certification (to demonstrate that the impact of the conspiracy

can be proven by evidence common to the class) and on the merits (to prove damages based on

common evidence).  *See* Fed. R. Civ. P. 23(b)(3).  Such data is rarely, if ever, sought in criminal

antitrust cases and cannot intrude on a criminal investigation.  Similarly, Plaintiffs seek non-

merits information, such as documents showing, and depositions regarding, Defendants'

organizational structure, their electronic information systems and document retention policies,

and how they preserve and store electronic information, none of which goes to the merits and all of which are critical both to ensuring the preservation of ephemeral documents (*e.g.*, text messages routinely deleted), and to building Plaintiffs' general understanding of Defendants and the industry.  The DOJ cannot claim such discovery would interfere with its investigation.

Similarly, Plaintiffs seek third-party document discovery (such as from pharmacy benefit managers and Defendants' predecessors who hold pricing data important to this case) to ensure such documents are preserved and to better understand the industry.  None of this production poses burdens on Defendants or has anything to do with DOJ's investigation.  Yet, inexplicably, the DOJ now would indiscriminately block all of it.

As Judge Milton Pollack noted:

> [A] general stay of all civil discovery is not by any means the best option available to the court or to the litigants. *Stays can and should be tailored to avoid undue prejudice.* By limiting both the time and subject matter covered in temporary deferrals of particular discovery, a Court can allow civil proceedings to progress as much as possible without prejudicing the relative interests of the litigants.

Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 211 (1990) (emphasis added).

That careful tailoring is precisely what Plaintiffs propose:  document and limited non-merits testimonial discovery crafted through good faith negotiations with the DOJ to avoid any interference with the criminal investigation.  The DOJ's failure to even acknowledge in its own papers the strict limitations on the proposed discovery that resulted from Plaintiffs' negotiations with it and accommodations to it speaks volumes.

## V.      THE DOJ'S PROPOSED STAY CONFLICTS WITH ITS PRIOR POSITIONS IN THIS CASE AND NUMEROUS OTHER CIVIL MATTERS

The DOJ's current position is wholly inconsistent not only with its position in this MDL up until October 13, it is also inconsistent  with positions it has taken in other antitrust matters of equal importance, and in discovery proceedings in individual generic drug price-fixing actions prior to the formation of this MDL.

In the *Propranolol* actions (before transfer), the DOJ initially sought only a limited stay of requests for documents regarding the criminal investigation and drugs other than Propranolol, and depositions of Defendants' current and former employees involved in the pricing of generic drugs.[30]  The DOJ later dropped its request for any stay of document production.[31]  Nevertheless, the court denied even the stay of depositions except for two individuals who had pleaded guilty and were likely to invoke their Fifth Amendment rights.  *Id.* (ECF No. 107) at 1-2.

Similarly, in the *Corticosteroids* matters (before transfer), the DOJ only sought to stay discovery of a single defendant's production of a DOJ subpoena and related communications and non-merits depositions.[32]  DOJ entered into an agreement with Plaintiffs providing that all other discovery could proceed subject to notice to the DOJ when discovery was served.  *Id.*  The DOJ does not and cannot explain why comparable discovery in these matters prior to transfer to the MDL posed no risk to its investigation but the same (and indeed more limited) discovery sought now purportedly would.

---

[30] *See* Mem. in Supp. United States' Motion for Recons. of Mot. for Limited Stay of Certain Discovery, *FWK Holdings LLC v. Actavis Elizabeth, LLC*, No. 16-cv-9901 (S.D.N.Y. Feb. 24, 2017), ECF No. 102 (attached as Ex. C).

[31] Order at 1, *FWK Holdings*, No. 16-cv-9901 (S.D.N.Y. Feb. 28, 2017) (ECF No. 107) (attached as Ex. D).

[32] *See* Endorsed Letter Agreement, *In re Topical Corticosteroid Antitrust Litigation*, No. 16-mc-7000 (S.D.N.Y. Mar. 22, 2017), ECF No. 68 (attached as Ex. E).

The DOJ's stay motion is also inconsistent with positions it has taken in other civil

antitrust matters with parallel criminal matters, where DOJ has generally not objected to limited

discovery comparable to that which Plaintiffs seek here and, in fact, has stipulated to it.[33]

In *In re Parking Heaters Antitrust Litigation*, the DOJ stated that "the United States has

no objection to early document production beginning in civil actions" despite parallel criminal

cases.[34]   There, the DOJ merely objected to the wording of the plaintiffs' stipulation with

defendants to produce documents "as agreed by the parties" because it understood such

agreement to include the defendants' productions to DOJ and sought to prevent the Parties from

deducing which documents had been produced in the criminal action and other information about

that investigation.[35]   It did not object to document production generally.   Nor did DOJ object to

defendants' production of documents already produced to the DOJ in *In re Liquid Aluminum

Sulfate Antitrust Litigation*.[36]   Likewise, in *In re Municipal Derivatives Antitrust Litigation,*

despite the pendency of grand jury proceedings, DOJ agreed that document discovery could

proceed and did not object even to interrogatories directed at identifying those with knowledge

---

[33] *See, e.g.,* Order Granting Stipulation and Order to Stay All Deposition and Interrogatory Discovery, *In re SRAM Antitrust Litig.*, No. 07-md-1819 (N.D. Cal, June 12, 2007), ECF No. 208 (agreeing to stay of depositions and interrogatories) (attached as Ex. F); Stipulation and Order Limiting Scope of Discovery, *In re DRAM Antitrust Litig.*, No. 02-md-1486 (N.D. Cal. Apr. 16, 2003), ECF No. 166 (permitting production of documents produced to the DOJ and third-party depositions, but postponing depositions, interrogatories, and requests to admit except such requests pertaining to statistical data, products sold, and distribution channels (attached as Ex. G); *Scrap Metal,* 2002 WL 31988168, at *3, *5 (denying motion to stay even though the government sought only a stay of depositions and interrogatories).

[34] Letter Br. by U.S. Dep't of Justice, No. 15-mc-940 (E.D.N.Y. Jan. 29, 2016), ECF No. 75 (attached as Ex. H).

[35] *Id.* The court rejected the DOJ's position and permitted the parties to proceed with document production. Minute Order (E.D.N.Y. Feb. 1, 2016) (excerpted docket report attached as Ex. I).

[36] *See* Letter Order at 3, 6, No. 16-md-2687 (D.N.J. July 5, 2016) (ordering production of government productions), ECF No. 209 (attached as Ex. J).

of, and information relevant to, the subject matter of the action (including those with knowledge of the conspiratorial deals) as well as the existence, custodian location, and descriptions of relevant documents.[37]

Until October 13, the DOJ had agreed that "the particular discovery requests set forth in the [the Proposed Pretrial Order] will not interfere with its on-going criminal investigation and should be allowed to proceed without further delay." Costa Decl. ¶ 9. Despite DOJ's unexplained eleventh hour flip-flop, the fact remains that the agreed-upon discovery would neither burden Defendants nor cause harm to the DOJ investigation.

## VI.   NUMEROUS COURTS HAVE REJECTED UNREASONABLE REQUESTS FOR A STAY BY THE DOJ

When the DOJ overreaches, as it has here, courts have not hesitated to reject its requests for unreasonable stays. For example, in *In re Optical Disk Drive Prods. Antitrust Litigation* ("*ODDs*"), the DOJ sought a blanket stay of discovery, advancing many of the same arguments it rehashes here.[38] The *ODDs* court nonetheless denied the blanket stay, ordered the parties to provide Rule 26 disclosures, and permitted plaintiffs to propound discovery after filing their consolidated amended complaints.[39] The Court subsequently permitted document discovery to

---

[37] *See* May 27, 2010 Hrg. Tr. 3:19-23; 5:25-8:2, *Municipal Derivatives*, No. 08-cv-2516 (S.D.N.Y.) (excerpted transcript attached as Ex. K).

[38] *See* United States' Mem. in Supp. of Mot. to Stay Order, *ODDs*, No. 10-md-2143 (N.D. Cal. May 20, 2010), ECF No. 68 (making similar arguments) (attached as Ex. L). Even in *ODDs*, the DOJ agreed to much of the discovery it insists must be stayed here: discovery of the defendants' sales, production capacity, capacity utilization, production costs, inventory levels, sales volumes, products, profitability, market share, costs, prices, shipments, customers; the identity of key employees; electronic storage, retention, and destruction systems; and relating to class certification. *See id.* at 4-5.

[39] *See* Order, *ODDs*, No. 10-md-2143 (N.D. Cal. June 24, 2010), ECF No. 119 (denying DOJ's motion for blanket stay of document and testimonial discovery, rejecting many arguments made here) (attached as Ex. M); *see also* Hrg. Tr. at 52:10-53:24, *ODDs* (N.D. Cal. June 24, 2010) (attached as Ex. N).

go forward prior to resolution of the motions to dismiss the complaints.[40]  Allowance of the discovery did not interfere with the criminal investigation, which subsequently resulted in multiple guilty pleas.[41]

Similarly, in *In re Municipal Derivatives Antitrust Litigation*, the court rejected DOJ's request for a stay of most testimonial discovery as well as production of hundreds of thousands of audio recordings containing conspiratorial communications in a case that (much like this one) had been pending for nearly two years and coincided with a sweeping criminal investigation in which the DOJ had, as yet, issued only one criminal indictment against any of the corporate defendants during that entire time. The Court rejected, in part, the DOJ's request, permitting discovery of all documents and audio tapes and some testimonial discovery to learn the names of witnesses with knowledge of the subject matter.[42]

This Court should similarly reject the DOJ's unreasonable motion for a blanket stay of all discovery for six more months, if not longer.

## VII.   CLASS PLAINTIFFS AND THE PUBLIC INTEREST WILL BE PREJUDICED BY THE LENGTHY DISCOVERY STAYS PROPOSED BY THE DOJ AND DEFENDANTS

As Defendants acknowledge, briefing on the 38 motions to dismiss for Group 1 drugs will not be complete until January 2018.  Assuming that a decision on those motions will not be immediate, Defendants' stay proposal likely would delay *all* discovery from proceeding in some

---

[40] *See* Joint Letter Br. re Discovery Dispute, *ODDs* (N.D. Cal. Mar. 11, 2011); Minute Order, *ODDs* (N.D. Cal. Apr. 7, 2011), ECF Nos. 370 and 379 (attached as Exs. O & P).

[41] *See* DOJ Press Release dated April 30, 2012, *available at* https://www.justice.gov/opa/pr/hitachi-lg-data-storage-inc-executive-agrees-plead-guilty-participating-bid-rigging

[42] Order, *Municipal Derivatives*, No. 08-cv-2516 (S.D.N.Y. May 27, 2010), ECF No. 755 (attached as Ex. Q); *see also* Third Am. Compl. ¶ 3, *Municipal Derivatives*, No. 08-cv-2516 (S.D.N.Y. Mar. 8, 2013) (noting indictment of only one named corporate defendant as of May 2010), ECF No. 1764 (attached as Ex. R).

Actions for well over two years from the filing of the first complaint in March 2016 (and even later for the generic pharmaceuticals in Groups 2 and 3).[43]  The DOJ's proposed six-month stay could result in even longer delays, particularly if it seeks repeated renewals as it suggests in its brief.  *See* DOJ Mem. at 3 n.4.

Notably, the stay sought by the DOJ dramatically exceeds the limited stay in *Golden Quality,* on which the DOJ principally relies.  There, the stay entered lasted only a few months.  *Golden Quality,* 87 F.R.D. at 60 (entering stay in April 1980 but permitting additional requests for further discovery by June 1980).  The stay in this MDL already far exceeds that duration; the DOJ and Defendants would more than double it.  Moreover, *Golden Quality* permitted discovery of documents produced to the grand jury and discovery related to class certification.  *Id.*at 58 (noting that, while the Court would not allow unfettered discovery, it would permit discovery that was not intrusive with respect to the criminal case and plaintiffs "are entitled to begin to educate themselves about the factual circumstances" surrounding the conduct).

Contrary to the DOJ's argument (DOJ Mem. at 8), the law does not favor criminal over civil enforcement of the antitrust laws, and the cases on which the DOJ relies say nothing of the sort.[44]  In fact, the Supreme Court has repeatedly recognized the importance of private

---

[43] *See Moore v. Samsung Elec. Am.*, 2017 U.S. Dist. LEXIS 122017, at *7 (D.N.J. July 28, 2017) (a stay would be inappropriate where the case had already been pending for nearly a year); *S.E.C. v. Chakrapani*, No. 09 CIV 1043, 2010 WL 2605819, at *11 (S.D.N.Y. June 29, 2010) (denying DOJ request for a stay because the court "supports expeditious discovery in the civil action").

[44] The DOJ badly misrepresents *United States v. Borden*, 347 U.S. 514, 518 (1954). There, the Supreme Court merely held that the government was not barred from seeking an injunction for conduct already enjoined by a decree in a private civil action.  *Id*. at 518-519. The government is entitled to enjoin anticompetitive conduct already prohibited by a prior private injunction because (1) the government otherwise had no right to enforce a private decree itself; and (2) the burden of protecting the public interest should not be solely on the shoulders of the private plaintiff. *Id.* Far from suggesting that private actions are subordinate, *Borden* noted that "[t]hese private and public actions were designed to be cumulative, not mutually exclusive. . . .

enforcement of antitrust laws: "By offering potential litigants the prospect of a recovery in three times the amount of their damages, Congress encouraged these persons to serve as 'private attorneys general.'" *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972).  Private actions, such as this, serve as "a chief tool in the antitrust enforcement scheme [by creating] a crucial deterrent to potential violators."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 635 (1985).[45]  Courts have also similarly recognized that class actions play a critical role in that enforcement.  *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 258 (D.D.C. 2002). Accordingly, courts "should not add requirements to burden the private litigant beyond what is specifically set forth by Congress in those laws."  *Radovich v. Nat'l Football League*, 352 U.S. 445, 453-54 (1957).

Stays that impede the progress of civil antitrust actions, as the DOJ and Defendants seek here, create new hurdles and undermine "[t]he public's [great] interest in vigorously enforcing national anti-trust laws through the expeditious resolution of a private antitrust litigation." *Plastics Additives*, 2004 WL 2743591, at *8.[46]

---

they may proceed simultaneously or in disregard of each other." *Id.* (internal quotation marks and citation omitted). *Howard Hess Dental Labs. Inc. v. Dentsply International, Inc.*, 602 F.3d 237 (3d Cir. 2010), is no more instructive as the Third Circuit found, unremarkably, that a private litigant seeking injunctive relief already obtained by the government must still show antitrust injury. *Id.* at 249. And *Goldlawr, Inc. v. Shubert*, 169 F. Supp. 677 (E.D. Pa. 1958), merely found that the private plaintiff had not alleged any private business injury from anticompetitive conduct alleged (*i.e.*, it lacked standing) and that to the extent such conduct resulted in injury to the *general public* (as opposed to the plaintiff), the government is the appropriate party to protect *that* interest. *Id.* at 691.

[45] *See also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 n.10 (1977) (noting Congressional intent to create "an important means of enforcing the law"); *Zenith Radio Corp. v. Hazeltine Research, Inc.* 395 U.S. 100, 130-31 (1969) (noting treble damages and injunctive relief for private actions "serve . . .  the high purpose of enforcing the antitrust laws").

[46] *See also In re Blood Reagents*, 756 F. Supp. 2d at 636 ("[T]he public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution of this class-action lawsuit"); *In re Residential Doors Antitrust Litig.,* 900 F. Supp. 749, 756 (E.D. Pa. 1995) (refusing to stay discovery in part because public interest would be prejudiced by delay in

In fact, civil actions often provide greater benefits and achieve more significant results than federal criminal prosecutions, which face higher burdens of proof. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) (DOJ investigation led to no indictments; more than $970 million in total settlements were achieved in the private class action); *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (S.D.N.Y.) (DOJ investigation led to no indictments; nearly $2 billion in settlements were achieved in the private class action); *In re Flat Glass Antitrust Litig.*, No. 97-mc-550 (W.D. Pa.) (DOJ investigation led to no indictments, but $120 million in total settlements were achieved); *In re High Fructose Corn Syrup Antitrust Litig.*, Master Case No. 95-cv-1477 (C.D. Ill.) (DOJ investigation led to no indictments, but $530 million in total settlements were achieved); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 573-74 (E.D. Pa. 2003) and 321 F. Supp. 2d 619, 623-24 (E.D. Pa. 2004) (nearly $200 million in settlements achieved in a case where DOJ sued only one of the twelve defendants named in the class action). As these and many other cases demonstrate, criminal actions do not determine "the boundaries for civil litigation." *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1475705 at *18 (D.D.C. May 9, 2000) (noting plaintiffs may pursue a theory broader than the criminal matter).

Timely discovery is critical to achieving excellent results such as the foregoing. As demonstrated by the Plaintiff States' latest complaint, their civil investigative powers – similar to discovery in many ways – has enabled them to allege at least 15 express price-fixing and customer- and market-allocation agreements as part of "an overarching conspiracy, the effect of which was to minimize if not thwart competition across the generic drug industry." Plaintiff

---

discovery proceedings); *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 269 F. Supp. 540, 542 (E.D. Pa. 1967) (noting that stays of discovery in antitrust cases undermine the incentive to act as private attorneys general, which is critical to enforcement of the antitrust laws).

States' CAC ¶ 2.  There is no valid reason to stymie civil efforts to combat widespread collusion in the generic pharmaceutical industry, which would occur if the lengthy discovery stays sought by Defendants and DOJ are granted.

A continued discovery stay may also cause intractable case management problems as the Plaintiff States proceed with their cases and investigation relying on the many documents they already have obtained from their subpoenas.  As the Panel noted, "[c]oordination of this common discovery will be *essential*" in this MDL.  *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d at 1343 (emphasis added).  To place the Class Plaintiffs on hold while the Plaintiff States move forward with their investigation would prevent such coordination.  *See Idan Computer, Ltd. v. Intelepix, LLC,* No. 09-4849, 2010 WL 3516167, at *4 (E.D.N.Y. Aug. 27, 2010) (denying motion for partial stay where "piecemeal discovery will only  lead to delay and unnecessary discovery disputes").

Further, if the Court were to grant a continued, lengthy stay of discovery, there will be an increased risk that evidence will disappear, particularly evidence from third parties, and that witnesses' memories will erode over time.  *See, e.g.*, *Coyle v. Hornell Brewing Co.*, 2009 WL 1652399, at *3 (citing cases); *Shim v. Kikkoman Int'l Corp.*, 509 F. Supp. 736, 740 (D.N.J. 1981), *aff'd*, 673 F.2d 1304 (3d Cir. 1981).

The stays Defendants and the DOJ seek here are particularly prejudicial given Defendants' intractable position that they would not (and indeed, are not required to) voluntarily disclose any information from which Plaintiffs might identify appropriate custodians and data sources for preservation purposes.  During their negotiations over the proposed Preservation Order in this MDL, Plaintiffs asked Defendants to agree to disclose their potential custodians and organizational charts to assess the sufficiency of those custodial designations as well as

electronically stored information (ESI) systems and other data sources so that the parties might agree on the presumptive limitations on the scope of preservation early in the case.  Defendants have so far declined to provide such necessary and customary information, necessitating some of the document discovery sought now.

In sum, neither Defendants nor the DOJ have satisfied their heavy burden of showing "good cause" for a continued, lengthy stay of all discovery, and such a stay would cause substantial prejudice to Class Plaintiffs and the overriding public interest in enforcement of the antitrust laws.  Their motions should be denied and the targeted discovery sought in Plaintiffs' Cross-Motion should be allowed.

## VIII.   CONCLUSION

Plaintiffs respectfully request that this Court deny both the DOJ's and Defendants' motions to stay discovery.

Dated: November 9, 2017                          Respectfully submitted,

*/s/ Roberta D. Liebenberg*                       */s/ Dianne M. Nast*
Roberta D. Liebenberg                            Dianne M. Nast
FINE, KAPLAN AND BLACK, R.P.C.                   NASTLAW LLC
One South Broad Street, 23rd Floor               1100 Market Street, Suite 2801
Philadelphia, PA 19107                           Philadelphia, PA 19107
215-567-6565                                     215-923-9300
rliebenberg@finekaplan.com                       dnast@nastlaw.com

*Lead Counsel for the*                            *Lead Counsel for the*
*End-Payer Plaintiffs*                            *Direct Purchaser Plaintiffs*


*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
CUNEO, GILBERT & LADUCA LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
202-789-3960
jonc@cuneolaw.com

*Lead Counsel for the Indirect Reseller Plaintiffs*