### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724** <br> **16-MD-2724** <br> **HON. CYNTHIA M. RUFE** |

**THIS DOCUMENT RELATES TO:**

***ALL ACTIONS***

### PRETRIAL ORDER NO. 44
### (Allowing Targeted Discovery to Proceed)

**AND NOW,** this 9th day of February 2018, upon consideration of Defendants' Motion to Stay Discovery [Doc. No. 492], The United States' Cross-Motion to Stay Discovery [Doc. No. 516], the Class Plaintiffs' and the Plaintiff States' Joint Cross-Motion to Allow Certain Targeted Discovery [Doc. No. 523], and the responses and replies thereto, it is hereby **ORDERED** that the Motions to Stay Discovery are **DENIED as stated** and the Motion to Allow Certain Targeted Discovery is **GRANTED** as follows:

1.      Except as provided in paragraph 2 of this Order, all discovery (including initial disclosures) in all actions is stayed for three months from the date of entry of this Order.

2.      Subject to paragraphs 3 and 4 of this Order, the following types of discovery may proceed:

> a.      Subpoenas to non-parties (other than current or former employees of parties) calling for only the production of documents and/or data;
>
> b.      Requests for the production of documents and/or data listed in Exhibit A to this Order;
>
> c.      Depositions under Federal Rule of Civil Procedure 30(b)(6) of non-parties, provided that such depositions are directed solely to one or more of the

following issues: (i) a non-party's corporate structure, including the identities of its parents, subsidiaries, and affiliates; (ii) the structure of a non-party's business operations; (iii) how a non-party maintains and/or preserves documents and electronically stored information, including how the non-party utilizes and understands any transaction data it maintains; and (iv) if the non-party is a pharmacy benefits manager ("PBM"), (A) a PBM's own policies and practices; and (B) a PBM's understanding of general industry practices; and

d.      Depositions under Federal Rule of Civil Procedure 30(b)(6) of parties, provided that such depositions are directed solely to one or more of the following issues: (i) a party's connections to Pennsylvania; (ii) a party's corporate structure, including the identities of its parents, subsidiaries, and affiliates; (iii) the structure of a party's business operations, including its facilities, manufacturing processes, and sales and distribution processes; (iv) the identities, titles, locations, and responsibilities of a party's employees; (v) the identities of a party's customers, suppliers, and related chains of distribution; (vi) a party's membership in trade associations and the attendance of its employees at trade association meetings; (vii) a party's policies regarding use of personal or company-owned devices; (viii) how a party maintains and/or preserves documents and electronically stored information, including transaction and cost data; and (ix) how a party's data is structured and its understanding of the fields therein;

2

3.     The parties must not seek and must not respond to discovery about the criminal investigation that the Antitrust Division of the U.S. Department of Justice ("Department of Justice") is conducting into the generic pharmaceuticals industry;

4.     A person responding to a discovery request (*e.g.*, subpoena, request for production of documents, notice of deposition) ("Responding Person") must not disclose what documents or other information has been provided to the Department of Justice in the course of its criminal investigation into the generic pharmaceuticals industry, provided that nothing in this paragraph prohibits a Responding Person from providing documents or other information that previously had been provided to the Department of Justice so long as the production is made in a manner that does not indicate whether those documents or other information previously had been provided to the Department of Justice;

5.     Any party that sends a discovery request to a non-party must provide a copy of this Order to that non-party at the time such request is sent;

6.     Any party that sends a discovery request must provide a copy of such request to the Department of Justice at the time such request is sent;

7.     Any organization that designates a person to testify on its behalf at a deposition in response to a notice or subpoena sent under Federal Rule of Civil Procedure 30(b)(6) must notify the Department of Justice of the identity of its designee at least 7 days before the deposition occurs;

8.     Nothing in this Order precludes a party from communicating with another party or non-party during the limited stay established by this Order about additional discovery that may be sought if this Order is modified;

3

9.      Nothing in this Order precludes a party or non-party from objecting to, moving to quash, or seeking a protective order excusing a response to any discovery request;

10.     If a party takes a deposition under Federal Rule of Civil Procedure 30(b)(6) and paragraph 2 of this Order, the fact of that deposition shall not prejudice that party's ability to conduct additional depositions on other topics after the discovery stay is lifted; and

11.     All other discovery is stayed until **May 7, 2018**; the leadership for all parties shall submit a joint status report no later than **April 16, 2018** as to whether the scope of discovery should be expanded.

It is so **ORDERED.**

**BY THE COURT:**

**CYNTHIA M. RUFE, J.**

4

## Exhibit A

1.      This request must be answered only if You are contesting the Eastern District of

Pennsylvania's personal jurisdiction over You.  All Documents concerning (a) any business

transacted in the Commonwealth of Pennsylvania by You; (b) contracting to supply services or

things in the Commonwealth of Pennsylvania by You; (c) Your interest in, use of, or possession

of real property in the Commonwealth of Pennsylvania; (d) solicitations for business in the

Commonwealth of Pennsylvania through a local office or agents; (e) occasions on which Your

agents entered the Commonwealth of Pennsylvania to solicit business; (f) advertisements,

listings or bank accounts in the Commonwealth of Pennsylvania; (g) the volume of business

conducted in the Commonwealth of Pennsylvania by You; (h) business registration by You to

conduct business in the Commonwealth of Pennsylvania and (i) meetings in the Commonwealth

of Pennsylvania between You and one or more Defendants, competitors, or third parties

concerning any of Your generic pharmaceuticals, including but not limited to meetings or events

You attended that was held at, hosted by, or sponsored by a pharmaceutical industry trade

association or other host of industry events related to pharmaceuticals.

2.      Organizational charts, personnel directories, and other documents sufficient to show Your

organizational structure, including:

(a)     the identity of Your parent companies, subsidiaries, affiliates, and joint ventures;

(b)     the identity and location of each facility owned, controlled, or operated by You
        that is engaged in the production of any generic pharmaceutical , or of any inputs
        used in the production of any generic pharmaceutical;

(c)     the organization of any division, department, unit, or subdivision of Your
        company that has any responsibilities concerning the acquisition of active
        pharmaceutical ingredient(s) ("API") for, or the production, storage, distribution,
        packaging, marketing, pricing, prices, price reporting, or sales of Your generic
        pharmaceuticals; participation in or involvement with trade associations for
        generic pharmaceuticals, industry conferences related to generic pharmaceuticals,

A-1

or external workshops related to generic pharmaceuticals; professional travel; or antitrust compliance.

(d)     the identity of any officers, directors, employees, committees, subcommittees, or working groups that have any responsibility concerning the acquisition of API for, or production, storage, distribution, packaging, marketing, pricing, prices, price reporting, or sales of Your generic pharmaceuticals;

(e)     the identity of any officers, directors, employees, committees, subcommittees, or working groups that have any responsibility for communications and negotiations with wholesalers, pharmacies, group purchasing organizations ("GPOs"), and pharmacy benefit managers concerning Your generic pharmaceuticals;

(f)     the identity of any officers, directors, employees, committees, subcommittees, or working groups that have any responsibility for communications and negotiations with any other Defendant or any competitor;

(g)     the identity of any officers, directors, employees, committees, subcommittees, or working groups that have any responsibility for antitrust compliance;

(h)     the identity of any officers, directors, employees, committees, subcommittees, or working groups that have any responsibility for participation in or involvement with trade associations related to generic pharmaceuticals, industry conferences related to generic pharmaceuticals, or external workshops related to generic pharmaceuticals;

(i)     the identity of Your information technology ("IT") or information services departments or divisions, including their members' names, or outsourced IT services (including data storage) or temporary consultants; and

(j)     this subpart must be answered only if You are contesting Plaintiffs' service of pre-litigation notice to You as required by Massachusetts General Law Ch. 93A: Documents sufficient to show that you presently maintain: (i) a place of business, and (ii) assets in Massachusetts within the meaning of Mass. Gen. Law. Ch. 93A § 9(3).

3.     Documents sufficient to identify:

(a)     Your directors, officers, and senior managers, as well as any secretaries, administrative assistants, or travel personnel assigned to them;

(b)     any other employee with management or supervisory authority over the manufacture, production, distribution, marketing, pricing, or sale of generic pharmaceuticals; and

(c)     each of Your employees who attended or participated in any trade association event concerning generic pharmaceuticals with any other Defendant or any competitor or was involved in coordinating the attendance or participation of any

>           of Your employees, including any secretaries, administrative assistants, or travel
>           personnel.

4.      Documents sufficient to show any proposed, contemplated, planned, pending or executed
purchases, sales, acquisitions, mergers, joint ventures, divestitures, transfers, spinoffs or any
other change in Your ownership or the ownership of any subsidiaries, corporate affiliates,
departments, business units or other subdivisions of your company involved in the production,
manufacture, distribution, marketing, pricing, or sale of generic pharmaceuticals.

5.      All Board of Director and Board committee agendas, minutes (and drafts thereof), pre-
meeting Board packets, presentations made to or by the Board of Directors and Board
Committees, and notes and communications regarding Board of Director and Board Committee
meetings, except that You may redact any portions of such documents discussing the criminal
investigation conducted by the Antitrust Division of the U.S. Department of Justice into the
generic pharmaceuticals industry, even if those portions would not be subject to redaction for
reasons of attorney-client privilege or the work product doctrine. Any documents responsive to
this request that are redacted solely for reasons other than attorney-client privilege or the work
product doctrine shall be noted with the stamp "Redacted-Subject to Stay" or comparable
notation.

6.      All monthly, quarterly and yearly audited and unaudited financial documents and data,
including profit and loss statements, balance sheets, cash flow statements, and other financial
information concerning any of Your generic pharmaceuticals, that were prepared for or received
by any of Your officers, directors, or senior managers (including the Chief Financial Officer,
treasurer(s), or controller(s)).

7.      All monthly, quarterly and yearly audited and unaudited financial documents and data,
including profit and loss statements, balance sheets, cash flow statements, and other financial

A-3

information concerning Your generic pharmaceutical operations, sales, and marketing that were prepared for or received by any of Your officers, directors, or senior managers (including the Chief Financial Officer, treasurer(s), or controller(s)).

8.      Documents sufficient to show by month, quarter, and year the cost allocations, cost apportioning rules, and accounting practices that are or were used to calculate Your profits, profit margins, or projected profits concerning the sale of any of Your generic pharmaceuticals.

9.      Documents sufficient to show by month, quarter, and year Your profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, or projected profits concerning the sale of any of Your generic pharmaceuticals.

10.     Documents sufficient to show the name and address of each trade association (including committees and subcommittees) of which You or Your employees are or were a member or participant, as well as documents sufficient to show dates of membership and dates of participation in each trade association, including in committees, subcommittees, or on the trade association's board of directors or similar governing body.

11.     All documents concerning meetings of each trade association identified in response to the immediately preceding request and each of its committees, subcommittees, board of directors, or other similar governing body, including meeting invitations, meeting agendas, transcripts, minutes, notes, summaries, attendance lists, expense reports and travel itineraries, handouts, presentations, or correspondence related to such meetings.

12.     All documents that You have sent to or received from any trade association identified in response to Request No. 10 concerning prices, pricing, pricing policies or practices, bids, customers, customer allocation, territory allocation, competitive conditions, antitrust compliance, marketing, or sales of generic pharmaceuticals.

13.     All documents that You have sent to or received from any trade association concerning

any of Your generic pharmaceuticals.

14.     All documents concerning any meeting or event You attended that was held at, hosted by,

or sponsored by a pharmaceutical industry trade association or other host of industry events

related to pharmaceuticals, including any of the following entities:

    (a)     Association for Accessible Medicines (formerly Generic Pharmaceutical
            Association);

    (b)     National Association of Chain Drug Stores

    (c)     Minnesota Multistate Contracting Alliance for Pharmacy;

    (d)     Efficient Collaborative Retail Marketing, including any Efficient Program;
            Planning Sessions, or EPPS;

    (e)     Healthcare Distribution Alliance (formerly Health Distribution Management
            Association);

    (f)     American Society of Health-System Pharmacists;

    (g)     National Pharmacy Purchasing Association; and

    (h)     Health Care Supply Chain Association.

15.     All documents concerning the events known as "Girls Night Out" or "Women in the

Industry" or similar social or professional gatherings of one or more Defendant or competitor,

whether officially sanctioned or informally organized.

16.     All documents concerning any meals (including industry dinners), coffees, or cocktails

attended by more than one Defendant or competitor.

17.     All documents concerning any travel during which more than one Defendant or

competitor met.

18.     For each of Your employees with responsibility for recommending, reviewing,

monitoring, setting, updating, reporting, changing, modifying, announcing, or approving prices

or bids for generic pharmaceuticals:

A-5

(a)     all calendars, appointment books, and appointment notes;

(b)     all trip and travel logs;

(c)     all time sheets or records;

(d)     all expense vouchers or expense reports and supporting documents;

(e)     all telephone number logs, directories, contact management systems, notebooks, and Rolodex-type contact files;

(f)     all handwritten journals or notebooks used to memorialize work activities, including but not limited to, meetings and conference calls;

(g)     all bills, statements, records, databases, and logs concerning the employee's office, home, cellular, or other mobile or landline telephone(s);

(h)     documents sufficient to identify all email addresses, social or industrial/business web-based media accounts (*e.g.,* Facebook®, Twitter®, LinkedIn® Instagram®, Snapchat®, Cluster),cellular phone numbers, office phone, and facsimile numbers, or other telephone numbers assigned by You to each such employee or used by the employee in connection with his or her employment by You; and

(i)     documents sufficient to show the dates of employment, the title and dates of each position held, and job duties.

19.     For each of Your employees with responsibility for marketing or sales of generic

pharmaceuticals:

(a)     all calendars, appointment books, and appointment notes;

(b)     all trip and travel logs;

(c)     all time sheets or records;

(d)     all expense vouchers or expense reports and supporting documents;

(e)     all telephone number logs, directories, notebooks, and Rolodex card files;

(f)     all handwritten journals or notebooks used to memorialize work activities, including but not limited to, meetings and conference calls.

(g)     all bills, statements, records, databases, and logs concerning the employee's office, home, cellular, or other mobile or landline telephone(s);

(h)     documents sufficient to identify all email addresses, social or industrial/business web-based media accounts (*e.g.,* Facebook®, Twitter®, LinkedIn® Instagram®, Snapchat®, Cluster), cellular phone numbers, office phone and facsimile

A-6

numbers, or other telephone numbers assigned by You to each such employee or used by the employee in connection with his or her employment by You; and

(i)     documents sufficient to show the dates of employment, the title and dates of each position held, and job duties.

20.     All documents concerning any meetings or communications between two or more Defendants, competitors, or third parties concerning any of Your generic pharmaceuticals.

21.     All documents concerning any communication between two or more Defendants or competitors concerning prices, pricing, pricing policies or practices, bids, customers, customer allocation, territory allocation, competitive conditions, marketing, production, or sales of Your generic pharmaceuticals.

22.     All documents concerning any meetings between You and any other Defendant or any competitor, including: (a) calendars, appointment books, appointment notes, or any other handwritten notes; (b) trip and travel logs or itineraries and time sheets or records; (c) receipts or invoices; (d) expense vouchers or expense reports and supporting documents; and (e) telephone bills, statements, and records; and (f) text messages (including any SMS, MMS, or iMessages).

23.     All documents concerning the allocation of customers, territories, or geographic markets for generic pharmaceuticals between two or more Defendants or competitors.

24.     All documents concerning any other Defendant's or any competitor's: (a) pricing policies and practices for generic pharmaceuticals; (b) costs, pricing, or prices for generic pharmaceuticals; or (c) employees with responsibility for generic pharmaceutical production, sales, pricing or marketing.

25.     All documents concerning the deletion, destruction, or erasure of any communications between two or more Defendants or competitors.

26.     All documents concerning the need or desire for secrecy of any communications between two or more Defendants or competitors, including documents regarding how or whether such

A-7

communications should or should not be transmitted.

27.     Irrespective of time period, all statements, affidavits, declarations or other factual material referring to or submitted in connection with any investigation or litigation relating to the pricing or sale of generic pharmaceuticals other than the criminal investigation that the Antitrust Division of the U.S. Department of Justice is conducting into the generic pharmaceuticals industry.

28.     Irrespective of time period, all documents provided to the United States House of Representatives or the United States Senate, or any committee, subcommittee, employee, representative or agent thereof; the Government Accountability Office; any regulatory or investigative agency of any state or the District of Columbia; the Food and Drug Administration; or the United States Department of Health and Human Services in connection with, or in response to, any request for information or documents concerning any of Your generic pharmaceuticals or Your generic drug portfolio generally, including:

     (a)     all documents that You submitted voluntarily;

     (b)     all documents provided or produced subject to subpoena or other investigatory demand issued by any of the entities identified in this Request;

     (c)     all subpoenas and other investigatory demands issued by any of the entities identified in this Request concerning antitrust violations or the pricing of generic pharmaceuticals, including all related correspondence with said entities; and

     (d)     all position papers and prepared remarks (including any drafts or text of such papers or remarks, and communications regarding such remarks) submitted or presented, or intended to be submitted or presented, to any of the entities identified in this Request, and

(e)    all transcripts, notes, summaries,  and recordings of, and communications regarding testimony given to any of the entities identified in this Request in connection with any investigation of antitrust violations or the pricing of generic pharmaceuticals.

29.    All documents concerning Your refusal to join or Your withdrawal from any contract, combination, conspiracy, agreement or understanding to fix, raise, stabilize or maintain the prices of generic pharmaceuticals or to allocate territories, geographic markets for, or customers of generic pharmaceuticals.

30.    All documents relating to any of Your generic pharmaceuticals and concerning any other Defendant or any competitor, except for documents about the criminal investigation conducted by the Antitrust Division of the U.S. Department of Justice into the generic pharmaceuticals industry.

31.    All documents concerning any action, process, method, manner, policy, practice, strategy or procedure that You proposed, considered or used for setting, raising, lowering, changing or maintaining: (a) the prices You offered or charged for generic pharmaceuticals; and (b) Your capacity to produce or distribute generic pharmaceuticals.

32.    All documents concerning prices, pricing, pricing policies or practices, solicited or unsolicited bids, requests for proposals ("RFPs"), customers, customer allocation, territory or market allocation, competitive conditions, marketing production, or sales of any of Your generic pharmaceuticals.

33.    All documents concerning prices, pricing, pricing policies or practices, solicited or unsolicited bids, RFPs, customers, customer allocation, territory or market allocation, competitive conditions, marketing, production, or sales of any of Your generic pharmaceuticals

submitted to the United States House of Representatives or the United States Senate, or any committee, subcommittee, employee, representative or agent thereof; the Government Accountability Office; any regulatory or investigative agency of any state or the District of Columbia; the Food and Drug Administration; or the United States Department of Health and Human Services, including for example, documents submitted to meet product and pricing reporting requirements.

34.     All pricing manuals, matrices, guidelines, policies, formulas, and algorithms for each customer, class of customer, or class of trade or subgroup thereof for any of Your generic pharmaceuticals.

35.     All documents concerning written contracts or policies related to Your sales of any generic pharmaceutical, including terms relating to payment, pricing, price protection, chargebacks, rebates, right of first refusal, discounts, and other price or quantity adjustments.

36.     All documents concerning written contracts between You and a purchaser that provide that the purchaser will take delivery of any generic pharmaceutical from a person, firm, corporation, or business entity other than You (such as a wholesaler).

37.     All documents concerning any proposal or offer made by You to any prospective or current buyer to supply any generic pharmaceutical, whether accepted by the buyer or not.

38.     For all of Your generic pharmaceuticals, documents sufficient to show, for each month, for each NDC, Your actual:

    (a)     list price;
    (b)     average sales price (ASP)
    (c)     average wholesale price;
    (d)     average transaction price;
    (e)     wholesale acquisition cost;
    (f)     direct price;

(g)     price under Medicare program;

(h)     price under Medicaid program;

(i)     maximum allowable price;

(j)     average manufacturing price as defined by, and reported to the Centers for Medicare and Medicaid Services;

(k)     average discount off of wholesale price or wholesale acquisition cost;

(l)     net revenue;

(m)     gross sales;

(n)     net sales;

(o)     all measures of margin, income, earnings, and profits;

(p)     unit volumes sold;

(q)     unit volumes sold net of returns;

(r)     chargebacks;

(s)     rebates;

(t)     discounts;

(u)     administrative fees;

(v)     billbacks;

(w)     unit adjustments;

(x)     price adjustments;

(y)     shelf-stock price adjustments;

(z)     returns;

(aa)    third-party returns;

(bb)    error corrections;

(cc)    nominally priced goods;

(dd)    free goods; and

(ee)    total product contribution.

39.     All documents concerning Your actual, potential, expected, or projected production volume, production capacity, unit sales, dollar sales, prices or other terms of sale, forecasts, or profits from any of Your generic pharmaceuticals.

40.     All documents concerning any Defendant's or any competitor's actual, potential, expected, contemplated or projected production volume, production capacity, costs, unit sales,

dollar sales, prices or other terms of sale, or profits from any of Your generic pharmaceuticals.

41.     All documents concerning any contemplated or actual change in Your or any Defendant's or any competitor's production volume, production capacity, costs, unit sales, dollar sales, prices or other terms of sale, or profits from any of Your generic pharmaceuticals.

42.     All documents concerning Your business plans, marketing reports, strategic plans, revenue goals, pricing strategy, or economic analyses concerning any of Your generic pharmaceuticals.

43.     All documents concerning any actual or potential scarcity or shortage of any of Your generic pharmaceuticals, including without limitation, Documents and ESI concerning communications with the U.S. Food and Drug Administration ("FDA") or any other person.

44.     All documents concerning any downgrade by the FDA of any of Your generic pharmaceuticals, including documents concerning communications with the FDA or any other person.

45.     All documents concerning any decision to discontinue or partially discontinue the sale of any of Your generic pharmaceuticals, including documents concerning communications with the FDA or any other person.

46.     Document sufficient to identify Your suppliers of any generic pharmaceutical and any communications about increased or reduced supply.

47.     Documents sufficient to show the manufacturing process (including any API, excipients, and other raw material inputs) used in the production of any of Your generic pharmaceuticals, including the process contained in your ANDA and in any post-approval supplements.

48.     Documents sufficient to identify each entity that supplies You with any API, excipients, and other raw material inputs for any of Your generic pharmaceuticals, and the name and

A-12

location of that entity's facilities that make the ingredient or material supplied to You.

49.     All agreements between You and each entity that supplies You with any API, excipients, and other raw material inputs for any generic pharmaceutical.

50.     Documents sufficient to show the types and monthly amounts and costs, as well as the source, of any API, excipients, and other raw material inputs used to produce any of Your generic pharmaceuticals, including data and documents sufficient to show the relative proportion of cost associated with each component of variable cost and each component of total cost.

51.     All documents concerning any relationship between the costs of producing, distributing, marketing, promoting, or selling any of Your generic pharmaceuticals, and the price or prices at which the generic pharmaceutical was or is sold.

52.     Documents sufficient to show, on a daily basis, Your actual and projected costs and expenses attributable to the manufacture, marketing, and sale of any of Your generic pharmaceuticals, including:

    (a)     fixed costs;

    (b)     overhead costs;

    (c)     variable costs, including disaggregated costs;

    (d)     short-run average variable costs;

    (e)     long-run average variable costs;

    (f)     operating costs;

    (g)     sales and distribution cost;

    (h)     cost of goods sold;

    (i)     costs of purchasing API and other ingredient supplies or inputs;

    (j)     manufacturing costs;

    (k)     energy costs;

A-13

(l)     marketing, advertising, promotional and sales expenses;

(m)     depreciable and capital improvements;

(n)     public relations costs;

(o)     sales force costs;

(p)     co-promotion costs;

(q)     publication costs;

(r)     regulatory compliance;

(s)     licensing fees and royalties paid and received;

(t)     materials cost, by each material;

(u)     labor cost;

(v)     marginal cost;

(w)     transportation costs;

(x)     storage costs; and

(y)     destruction costs.

53.     All documents concerning any changes to the costs and expenses listed in the immediately preceding request.

54.     Documents sufficient to show the data, publications, and other sources (whether internal or third-party) You use or have used to monitor the costs of raw materials used to produce any of Your generic pharmaceuticals.

55.     All documents concerning any shortages or disruption of the supply of any API, excipients, and other raw material inputs used to produce any of Your generic pharmaceuticals.

56.     All documents concerning the competitive conditions of the United States market(s) (including any geographic subdivisions thereof) for any of Your generic pharmaceuticals, including Your market share and the market share of any other seller of the generic

pharmaceutical.

57.　All documents concerning the impact of acquisitions, sales, mergers, or other changes in corporate ownership of any drug manufacturer or seller on the United States market (including any geographic subdivisions thereof) for any of Your generic pharmaceuticals, including the purchase of individual drugs or molecules as the result of required divestitures.

58.　All documents concerning the entry, attempted entry, non-entry, discontinuation of manufacture or sale, or withdrawal from the market of any branded or generic version of the any of Your generic pharmaceuticals, in the United States and any geographic subdivisions thereof.

59.　All documents concerning any actual or prospective methods, practices, policies, or strategies for gaining or maintaining market share in the market(s) for any of Your generic pharmaceuticals.

60.　All documents concerning the competitive strengths or weaknesses of the manufacturers and sellers of any of Your generic pharmaceuticals.

61.　Documents sufficient to show the data, publications, and other sources (whether internal or third-party) You use or have used to monitor the United States market (including any geographic subdivisions thereof) for any generic pharmaceutical.

62.　All documents concerning the fungibility, substitutability, price elasticity, or interchangeability of any of Your generic pharmaceuticals with any other drug.

63.　All documents sent to or received by the FDA concerning the marketing status, discontinuance of manufacture or sale, ANDA approval status, or withdrawal from the market of any branded or generic version of the any of Your generic pharmaceuticals.

64.　All documents concerning any actual or potential change in the marketing status, discontinuance of manufacture or sale, or withdrawal from the market of any branded or generic

A-15

version of any of Your generic pharmaceuticals.

65.     All documents concerning Your policies, practices, guidelines and training directed to compliance with the antitrust or competition laws of the United States, of any state or the District of Columbia of the United States, or any foreign country, including all documents concerning the creation of such policies, and any statements signed by Your employees involved in the pricing or sale of any of Your generic pharmaceuticals acknowledging their receipt of or compliance with Your antitrust compliance policies.

66.     All documents concerning any other Defendant's or any competitor's antitrust compliance, policies, efforts, programs, trainings, admonitions, warnings, communications, and concerns.

67.     All transaction-level sales (and sales adjustment) data (in digital, computer readable format) concerning Your U.S. sales of any of Your generic pharmaceuticals.  Such data shall be produced in the most disaggregated form (meaning at the individual transaction level, not aggregated by month, quarter, or any other time period).  Such data shall identify, where applicable, for each sale or other transaction (including returns and error corrections):

   (a)     the unique invoice number, unique invoice date, unique purchase order number, unique purchase order date, unique sale date, and unique shipment date;

   (b)     the identity of the particular product, and any and all codes concerning transaction types, as well as descriptions of those transaction types;

   (c)     the quantity and units of measure for each sale;

   (d)     the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity billed or credited for the sale (the bill-to customer) and, in addition, the full name and address of the parent company, if the database or documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse;

   (e)     the name and address of, and all unique codes or identifiers for, the person, firm, corporation, or other business entity to whom You shipped the products (the ship-to customer) and, in addition, the full name and address of the parent company, if

A-16

the database or documents identify a subsidiary, corporate affiliate, division, satellite office, or warehouse;

(f)     the SKU, NDC, UPC, package size in extended units per package, and any and all other unique codes or other identifiers;

(g)     the amount paid for freight and the identity of the freight payor;

(h)     the number of packages sold, returned or otherwise affected by the transaction;

(i)     any price or unit adjustments identified by adjustment type (including discounts, rebates, chargebacks, billbacks, price adjustments, credits, debits, shelf-stock price adjustments, returns, error corrections, free goods, or nominally-priced goods), whether monthly, quarterly or at any other periodicity, involving or concerning sales or transactions of any of Your generic pharmaceuticals, and including all database fields specified above in this request;

(j)     the basis for calculating the price or unit adjustments referenced in subsection (i) (*i.e.* percentage discount off of WAC).

(k)     the gross amount in dollars, dollars per package, and dollars per unit, for each sale or transaction or the source of the transaction price;

(l)     the net amount in dollars, dollars per package, and dollars per unit, for each sale or transaction or the source of the transaction price;

(m)     all pricing information concerning the sale, including shipping, tax, or similar charges;

(n)     any discounts, rebates, credits, freight allowances, free goods, or any other pricing adjustment, with sufficient information to attribute these adjustments to individual sales;

(o)     All administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales relating to the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code;

(p)     the currency in which the sale was billed and paid;

(q)     the location from which the generic pharmaceutical was shipped; and

(r)     information sufficient to identify the contract(s) governing the transaction.

68.     All data (in digital, computer-readable format) for each of Your generic pharmaceuticals concerning chargebacks, rebates, discounts, or other price or quantity adjustments, given or

A-17

accrued, whether applicable to direct or indirect sales. Such data shall be produced in the most

disaggregated form (meaning at the transaction level where possible, not aggregated by month or

quarter or any other time period). Such data shall identify:

(a)     each transaction, including the date and type (i.e., chargeback, rebate, discount, or other price or quantity adjustment) thereof;

(b)     the name and address of, and all unique codes or identifiers (including class of trade and those used to differentiate between direct and indirect customers) for, the person, firm, corporation, or other business entity to whom You paid, or on whose behalf You accrued, the chargeback, rebate, discount or other price or quantity adjustment;

(c)     the name and address of, and all unique codes or identifiers for (including class of trade and those used to differentiate between direct and indirect customers), the person(s), firm(s), corporation(s), or other business entity(ies) that made the purchase(s) in respect of which You paid or accrued the chargeback, rebate, discount or other price or quantity adjustment;

(d)     the sales, or group of sales, upon which the chargeback, rebate, discount or other price or quantity adjustment is based, including:

(1)     the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction;

(2)     the bill-to customer;

(3)     the ship-to customer;

(4)     the date(s) of the sales, or group of sales;

(5)     the invoice amount in dollars for the sale(s) or group of sales;

(e)     the amount of the chargeback, rebate, discount, or other price or quantity adjustment;

(f)     in the case of a chargeback transaction, the contract price and wholesale acquisition cost;

(g)     information sufficient to identify the contract, agreement, or other basis governing the payment or accrual of the chargeback, rebate, discount, or other price or quantity adjustment; and

(h)     the basis for calculating the chargeback, rebate, discount, or other price or quantity adjustment (i.e. percentage discount off of WAC).

A-18

69.     With regard to the data requested in Request Nos. 67-68, please provide:

    (a)     a separate product list, including NDC, SKU, UPC, product description, and package size;

    (b)     customer lookup tables or any other tables that list, for each bill-to customer and ship-to customer, the customer number, parent customer number, customer group number, customer identity, contact information, address, class of trade (e.g., SIC code), and description of the class of trade;

    (c)     data dictionaries, decoding documents, lists and definitions for each transaction code, abbreviation, or other field or entry code or value, and indicating whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold; and

    (d)     all datasets and calculations used:

        (1)     to determine accrued rebates or chargebacks; or

        (2)     to periodically reconcile accrued rebates or chargebacks with actual rebates or chargebacks.

    (e)     a key or identification of a set of variables that allows for the correct merging and combining of the data You produce;

    (f)     to the extent that codes or values have changed over time as the result of a database platform shift, redesign, etc., mapping Documents or datasets connecting values in previous periods to their equivalent counterparts.

70.     Documents sufficient to identify Your policies and practices concerning discounts, rebates, credits, freight allowances, free goods or services, or any other price or quantity adjustment of any kind, including any customer contract which refers to or contains any such information;

71.     All documents related to the offer and utilization of coupons or other discounts for any of Your generic pharmaceuticals that You made available to end-payers.

72.     All documents, reports, or analyses concerning copayments or coinsurance attributable to consumers' purchases of any of Your generic pharmaceuticals.

73.     All documents reflecting the chains of distribution for sale of the Any generic

pharmaceutical in the United States.

74.     For each of Your generic pharmaceuticals, documents sufficient to show, for each month,

the prices, dollar sales, and units dispensed attributable to each of:

      (a)     Medicare;

      (b)     Medicaid;

      (c)     Children's Health Insurance Program (CHIP); and

      (d)     Tricare.

75.     All data or reports generated by IMS, CMS or Verispan, or any comparable third-party

(including Medi-Span, ImpactRX, Truven, Symphony Health, Wolters Kluwer, and First

Databank), in whatever format it was received from the third party, relating to the sale,

prescription, marketing, promotion, or detailing of pharmaceuticals for any of Your generic

pharmaceuticals, including the below third-party data, or reports generated by You using such

data.

      (a)     IMS National Prescription Audit or Xponent data, including NDC code, TRx, NRx, extended units, retail sales dollars, retail sales price, wholesale acquisition cost, distribution channel, patient age, patient co-payment, payment type, and geographic information.

      (b)     IMS National Sales Perspective data, including NDC code, total units, extended units, total sales dollars, price, wholesale acquisition cost, and distribution channel.

      (c)     CMS Drug Utilization data, including TRx, Medicaid paid amount and extended units.

      (d)     Verispan Vector One National (VONA) data, including TRx, NRx, extended units, retail sales dollars and retail sales price.

76.     All documents prepared by, submitted to, or received from any consulting firm or agency,

financial or business services firm, investor (actual or contemplated) relating to the production,

A-20

manufacture, distribution, marketing, profitability, pricing, or sale of any of Your generic pharmaceuticals.

77.     All documents about Your communications about any of the lawsuits in the above-captioned MDL with non-parties, including class members, except for documents about the criminal investigation conducted by the Antitrust Division of the U.S. Department of Justice into the generic pharmaceuticals industry.

78.     All documents reflecting or concerning Your communications with any of the plaintiffs named in any of the lawsuits in the above-captioned MDL.

79.     Documents sufficient to identify and describe the systems and structures You use to store, maintain, or utilize Your ESI, including all codes, information, documentation, ESI or programs necessary to utilize any ESI You are producing in response to these requests.

80.     Documents sufficient to identify Your preservation, retention, backup, storage, destruction, and litigation hold policies and practices for documents, electronic communications equipment, and data storage media (including phones, mobile devices, laptops, tablets, pagers, personal computers, servers, removable storage media, cloud storage, and backup media) as well as any changes to, enforcement of, and compliance with, those policies over the Relevant Period.

81.     To the extent not encompassed in Your response to Request No. 80, documents sufficient to show Your policies and practices regarding: (a) the maintenance, transfer, destruction, deletion, or preservation of documents and electronic equipment (including laptops, work stations, mobile and other personal devices) maintained or used by employees who leave Your employment or who transfer to another Department ("off-boarding"); (b) the transfer of documents to new employees or transferred employees ("on-boarding"); and (c) migration of data from retired or replaced electronic communications equipment and systems (for example,

A-21

laptop or personal computer retirement and replacement), as well as any changes to, enforcement of, and compliance with those policies over the Relevant Period.

82.     Documents sufficient to identify all workstations, laptops, mobile devices, storage media and similar electronic equipment or media used by each individual identified in Request No. 3, that are no longer in active use and retained and stored and the location of such stored electronic equipment.

83.     Documents sufficient to identify Your internal telephone systems and services and any databases or storage systems in which records of telephone communications (e.g., call detail records and similar logs of telephone calls made or received and voicemails received) are stored.

84.     Documents sufficient to show any known departure or variance from any of Your policies concerning the retention, storage, or destruction of any document identified in Request Nos. 80 and 81.

85.     All documents concerning the removal, redaction, erasure, alteration or deletion of any computer file or electronic data responsive to any discovery request served by any Plaintiff in this MDL, including file fragments and deleted files.

86.     Documents sufficient to show Your policies and procedures concerning the use of instant messaging services or applications, social media, and mobile devices, including phones, PDAs, and tablets by Your personnel, including any "bring your own device" or "bring your own technology" policies.

87.     Documents sufficient to show Your policies and procedures concerning confidentiality of Your business information.

88.     All documents not requested herein that you produce to any defendant in this MDL.

89.     All of Your transaction-level sales (and sales adjustment) data (in digital, computer

A-22

readable format) for each Drug at Issue concerning indirect sales, together with any discounts, price adjustments or offsets contained in the transaction data. Such data shall be produced in the most disaggregated form (meaning at the transaction level, not aggregated by month or quarter). Such data shall identify, where applicable, for each sale or other transaction (including error corrections):

(a)     wholesaler name;

(b)     wholesaler number;

(c)     wholesaler DEA number;

(d)     indirect customer name;

(e)     indirect customer number;

(f)     indirect customer DEA number;

(g)     indirect customer complete address;

(h)     indirect customer class of trade code;

(i)     indirect customer class of trade code description;

(j)     NDC;

(k)     product description;

(l)     product form;

(m)     product strength;

(n)     product package size;

(o)     date of transaction between the wholesaler and its customer (i.e., the indirect customer);

(p)     contract price;

(q)     wholesale price;

(r)     price paid by the indirect purchaser;

(s)     number of units sold;

(t)     location of transaction (city and state);

(u)     gross profit, net profit, and rate of return; and

(v)     all administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales relating to the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code;

A-23

90.     For the Drug at Issue, documents sufficient to identify the total number of units of the

Drug at Issue sold to end-payers on a monthly, quarterly and annual basis, together with

documents sufficient to show: (a) location of sales (city and state); (b) product description; (c)

product strength; (d) product formulation; (e) package size in terms of units per package; and (f)

NDC, UPC, or SKU.

91.     All documents, studies, reports and analyses identifying or concerning any persons and

entities that indirectly purchased and/or paid for some or all of the purchase price of the Drug at

Issue.