# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**PRIVATE PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN ORDER AUTHORIZING ACCESS TO (1) AN UNREDACTED VERSION OF THE PLAINTIFF STATES' CONSOLIDATED AMENDED COMPLAINT AND (2) CERTAIN MATERIALS OBTAINED BY THE PLAINTIFF STATES**

## I. INTRODUCTION

In the course of their extensive investigation into antitrust violations in the generic pharmaceutical industry, the state Attorneys General (the "Plaintiff States") have expended considerable time and resources to obtain millions of documents from Defendants and third parties by issuing investigative subpoenas under Connecticut law. The documents sought by those subpoenas are the same documents sought by Plaintiffs' First Set of Requests for Production of Documents to Defendants, served on February 23, 2018 — including evidence of conspiratorial communications, corporate structure, market reports and transaction data.[1] Likewise, subpoenas issued by the Plaintiff States to third-party telephone carriers seek phone records showing communications between employees of the Defendants-competitors in the generic pharmaceutical industry. The documents collected pursuant to the Plaintiff States' subpoenas — referred to in this Memorandum as "AG Documents" — are unquestionably relevant to all cases in the MDL.

The Plaintiffs States' Consolidated Amended Complaint (the "Amended Complaint")[2] describes an overarching conspiracy not to compete on the production, pricing, or sale of generic drugs. According to the Amended Complaint, "[t]his overarching agreement is widespread across the generic drug industry and is broader than the Defendants named in this Complaint." Amended Complaint ¶ 92. The Amended Complaint alleges that the named Defendants, and other pharmaceutical companies, followed a "universal understanding and code of conduct" in fixing prices and allocating markets amongst themselves. *Id.* ¶ 105. The public version of the

---

[1] There is very substantial, if not complete overlap between the Plaintiff States' subpoenas and Plaintiffs' First Set of Requests for Production of Documents to Defendants. *Compare, e.g.,* Interrogatories and Subpoena Duces Tecum to Teva Pharmaceuticals USA, Inc. (Exhibit A), *with* Plaintiffs' First Set of Requests for Production of Documents to Defendants (Exhibit B).

[2] *See* Plaintiff States' Consolidated Amended Complaint ("Amended Complaint"), 17-cv-03768, ECF No. 3-1.

Amended Complaint is substantially redacted, and the Private Plaintiffs do not yet have access to the AG Documents on which the Amended Complaint is based.[3]

The information in the AG Documents is relevant to prove the overarching unlawful agreement even if some of the drugs mentioned have not yet been included in this litigation. Indeed, the case law is well settled that anticompetitive activity by Defendants with respect to one drug is relevant to show intentional anticompetitive activity with respect to another.[4]

Because the AG Documents and the unredacted Amended Complaint are readily available, litigation efficiencies would plainly be served by granting Private Plaintiffs access to these materials now. This will enable Plaintiffs to efficiently coordinate among themselves regarding discovery planning and execution, including identifying of potential custodians, deponents, depositions, and third-party discovery targets. The Plaintiff States do not oppose this motion.

On February 13, 2018, the Court entered Pretrial Order No. 45 (Protective Order), ECF 561 (the "Protective Order"), and, in doing so, resolved a key discovery dispute between Plaintiffs and Defendants. Rejecting Defendants' arguments seeking to limit and silo discovery

---

[3] On June 5, 2018 (Dkt. No. 603), this Court granted the AGs' motion to file the Amended Complaint and, in so doing, found that "(f)rom the facts alleged in the CAC which resulted in part from an investigation commenced in 2014 by the State of Connecticut – it is plausible to infer that there was a broader conspiracy." *Id.* at 7 (footnote omitted).

[4] *See, e.g., United States v. Sw. Bus Sales, Inc.*, 20 F.3d 1449, 1456 (8th Cir. 1994) (evidence of a Minnesota conspiracy was admissible to prove a South Dakota conspiracy, where it was "of the exact nature of the charged South Dakota conspiracy, involving bid rigging of bus sales"); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1149 (N.D. Cal. 2009) (acknowledging the general principle that "evidence concerning a prior conspiracy may be relevant and admissible to show the background and development of a current conspiracy," especially in light of the fact that "at least seven of the employees involved are alleged to have had responsibility for NAND flash memory pricing, sales, marketing and operations in the United States. Given these employees' overlapping involvement in controlling DRAM and flash memory pricing, coupled with the significant market power wielded by their employers, it is reasonable to infer that their involvement in the DRAM conspiracy had at least some connection to the alleged conspiracy in this case.").

by individual drug, the Protective Order provides for the sharing of discovery across the MDL, subject, of course, to the Protective Order's terms. As this Court's Protective Order recognizes, Plaintiffs' ability to freely share discovery with each other is essential to the very purpose of this MDL: providing for efficient, non-duplicative discovery, and the just, speedy, and fair resolution of the claims encompassed in this MDL.[5]

Paragraph 1.7 of the Protective Order expressly provides that AG Documents may be treated as Protected Materials under the Protective Order's terms:

> To the extent produced in the Private Action and for the purposes of the State Action, [AG Documents] that are entitled to confidentiality under federal or state laws, regulation or precedent concerning documents in the possession of any Plaintiff State in the State Action, and any information taken from any portion of such document, however that information is recorded or transmitted, may be treated as Protected Materials, as defined below.

The Protective Order further provides that Protected Materials, whether designated as Confidential or Highly Confidential, may be shared, *inter alia*, with "Outside counsel for the Parties" to the Class and State Actions. *See* ¶¶ 5.3(c), 5.4, 1.3. Therefore, the Protective Order provides appropriate confidentiality and procedural protections to permit the Plaintiff States to provide Private Plaintiffs with an unredacted version of their Amended Complaint and the AG Documents. In order to execute the shared discovery contemplated by the Protective Order, the Plaintiff States have expressed the view that it is necessary to obtain a Court Order so as to avoid any issues that might otherwise arise under Connecticut General Statute § 35-42, the statute under which the Plaintiff States obtained the AG Documents.

---

[5] The MDL encompasses actions brought by several different plaintiff groups. The Direct Purchaser Plaintiffs, End-Payer Plaintiffs, and Indirect Reseller Plaintiffs are referred to collectively herein as the "Class Plaintiffs." "Private Plaintiffs" includes both the Class Plaintiffs and the *Kroger* Direct Action Plaintiffs in 18-cv-00284. The "Plaintiff States" refers to the plaintiff States identified in the Amended Complaint. The Private Plaintiffs and Plaintiff States are, together, "Plaintiffs."

Private Plaintiffs accordingly are submitting a proposed Pretrial Order, first, to expressly authorize the Plaintiff States to provide Private Plaintiffs with an unredacted version of the Amended Complaint and access to the AG Documents produced by Defendants to the AGs; and second, after providing notice to third parties as contemplated by the Protective Order (¶ 12), Private Plaintiffs seek access to the AG Documents produced to the AGs by Third Parties. As set forth above, access to and use of these documents will be strictly governed by the Protective Order.

## II. ARGUMENT

The Plaintiff States filed their Amended Complaint under seal, and have maintained the confidentiality of AG Documents, to comply with Connecticut General Statute § 35-42 and *Brown and Brown, Inc. v. Blumenthal* ("*Brown*"),[6] a Connecticut Supreme Court decision regarding the Connecticut statute that governs the AG Documents and the information contained in the allegations of the Amended Complaint. However, *Brown* requires only that the Plaintiff States initially file the at-issue documents and information under seal in order to provide the producing parties with an opportunity thereafter to timely apply to the Court to justify continued sealing.[7] Such application, if timely made, requires a showing that the information consists of trade secrets or other similarly sensitive information for which the "need to maintain their confidentiality overrides the public's interest in viewing them."[8] In that regard, the reviewing court must (i) determine that a legitimate confidentiality interest exists sufficient to override the

---

[6] 297 Conn. 710 (2010).

[7] *Id.* at 736 & n.26.

[8] *Id.* at 736.

public's interest in full disclosure, and (ii) issue an order "no broader than necessary to protect such overriding interest."[9]

The Plaintiff States filed the Amended Complaint in October 2017 – approximately eight months ago – yet no Defendant whose documents and information are quoted or otherwise relied upon in that Complaint and/or who produced any AG Documents has made any application to this Court to maintain the confidentiality of the Amended Complaint as required by *Brown*.[10]

Further, it seems highly unlikely that the redacted information in the Amended Complaint is a trade secret. It is clear from the context of the Amended Complaint that the redacted information is the content of collusive communications between competitors and the identified individuals participating in those communications. Defendants should not be permitted to hide the details of their illegal conduct by claiming it is a trade secret.

Indeed, Plaintiffs have reason to believe that Defendants themselves have not maintained the confidentiality of the Amended Complaint or the AG Documents. Plaintiffs asked Defendants "whether any defendant named in the Plaintiff States' consolidated amended complaint ("CAC") has shared with one or more of the defendants in the MDL who are named only in the Private Actions (*i.e.*, defendants not named in the CAC), either (1) the unredacted version of the CAC, or (2) any materials produced to the States during the States' investigation." Excerpt of Email of April 17, 2018 from Costa to Holt (Exhibit C at pp. 2-3). Defendants refused to answer the question, giving rise to the clear inference that Defendants in fact have shared these documents with each other pursuant to joint defense agreements. *See* Excerpt of Email of May 10, 2018 from Holt to Costa (Exhibit C at p.1). If Defendants have

---

[9] *Id.* at 736 & n.25.
[10] *See id.* at 736.

shared any of these materials among themselves, then there is no basis to prevent the State Plaintiffs from sharing them with other Plaintiffs in the MDL.

Consistent with the Protective Order, Private Plaintiffs seek immediate access to the unredacted Amended Complaint and the documents produced to the AGs by Defendants. Private Plaintiffs will work with the Plaintiff States to provide notice to third parties who produced responsive documents to the Plaintiff States, as contemplated by the Protective Order's "Other Proceedings" provision (¶ 12). *See Brown*, 297 Conn. at 736 n.24. Private Plaintiffs understand, however, that the redactions in the Amended Complaint involve only Defendants' documents and information; third-party materials are not known to be implicated by any of the redactions. As a corollary, and to avoid later administrative motion practice, Private Plaintiffs request that the Court's authorization to access an unredacted copy of the Amended Complaint also extend to any subsequent submission to the Court in the Plaintiff States' case.

Granting Private Plaintiffs access to the unredacted Amended Complaint, and to the AG Documents, is consistent with the JPML's Order transferring the Plaintiff States' actions to the MDL. The JPML stressed that even though the Plaintiff States' litigation may be "further advanced with respect to discovery on account of a three-year investigation by the Attorney General of Connecticut that preceded the [Plaintiff States'] complaint . . . [g]iven the significant discovery that remains, there is ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts through coordinated proceedings in the MDL." *In re Generic Pharm. Pricing Antitrust Litig.*, MDL No. 2724, 2017 WL 4582710, at *4 (J.P.M.L. Aug. 3, 2017). The JPML repeatedly emphasized throughout its opinion that a primary objective of its Transfer Order was to eliminate duplicative efforts, particularly as regards discovery. *Id.* at *2-*4. As the Seventh Circuit has observed, the JPML's suggestions on the

6

management of the cases it transfers "must be given great respect" in order to fulfill its statutory duty to "promote the 'just and efficient conduct' of multidistrict litigation[.]" *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1301 (7th Cir. 1980) (quoting 28 U.S.C. § 1407).

As previously discussed in Class Plaintiffs' briefs concerning the Protective Order (*see* MDL Doc. Nos. 520 & 536), there is ample precedent for the coordinated approach suggested by the JPML's Transfer Order. For example, in *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 333, 339-40 (E.D. Pa. 2004), the court held that discovery should be shared across cases subject to a protective order "even if the need for the protected materials is minimal." In the *Upjohn Antibiotics* MDL, the court allowed evidence from the MDL case to be shared with the state plaintiffs, reasoning that "it is the purpose of multi-district litigation to promote the sharing of discovery within the consolidated cases." *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 81 F.R.D. 482 (E.D. Mich. 1979), *aff'd*, 664 F.2d 114, 120 (6th Cir. 1981).[11]

Consistent with the JPML Transfer Orders, the Court has entered a Protective Order that expressly provides for the sharing of evidence across all cases (but restricting the use of such discovery to only the actions encompassed within the MDL). As set forth above, both the Amended Complaint and the AG Documents plainly are relevant to the claims and defenses

---

[11] *See also Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, 2013 WL 1303622, at *1 (E.D. Mich. Mar. 28, 2013) (quoting *Upjohn* and allowing plaintiffs to use discovery for "other current, related lawsuits"); *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 87 (D.N.J. 1986) (ordering production of discovery materials in related litigation); *Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*, 287 F.R.D. 130, 131 (E.D.N.Y. 2012) (modifying protective order over objection to permit plaintiffs' counsel access to discovery produced in one case for use in other similar cases); *In re Abbott Labs. Sec. Litig.*, No. 92 C 3869, 1993 WL 616693, at *5 (N.D. Ill. Nov. 15, 1993) (rejecting a protective order proposal that was unfair to plaintiffs and would "invite consecutive discovery disputes"); *United States v. Hooker Chems. & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981) ("Use of the discovery fruits disclosed in one lawsuit in connection with other litigation, and even in collaboration among plaintiffs' attorneys, comes squarely within the purposes of the Federal Rules of Civil Procedure. Such cooperation among litigants promotes the speedy and inexpensive determination of every action as well as conservation of judicial resources.") (citations omitted).

already pending across the MDL. Of the 18 manufacturers named in the Amended Complaint, *all* have also been named as Defendants in the *Kroger* complaint, and all but two have already been named as Defendants by the Class Plaintiffs in their respective cases. Thus, the Amended Complaint and the AG Documents directly bear on the claims and defenses at issue across the entire MDL.[12]

Plaintiffs are currently working to coordinate discovery efforts across all cases consistent with the Court's recent entry of Pretrial Order No. 44 (Allowing Targeted Discovery to Proceed), including identification of appropriate document custodians, likely deponents, and third-party discovery targets. The identities of the actors and non-parties that would be identified in an unredacted version of the Amended Complaint and/or the AG Documents are critical to the efficiencies of those efforts. Similarly, access to the AG Documents would enable all Plaintiffs to more efficiently coordinate discovery objectives and priorities, and avoid expensive and burdensome duplication of discovery, as contemplated by the Protective Order and the JPML Transfer Orders.

For example, pursuant to investigative subpoenas, the State of Connecticut has obtained voluminous telephone records showing frequent communication between Defendants' employees.[13] *See, e.g.*, Amended Complaint ¶ 94 (showing 513 inter-Defendant contacts over a one-year period). Indeed, evidence of inter-Defendant communications is at the heart of any price-fixing case and clearly is relevant to all Plaintiffs' claims.

The Plaintiff States can provide this essential material to Private Plaintiffs with the push of a button and at no expense. Alternatively, Private Plaintiffs could seek to obtain the same

---

[12] In addition, Class Plaintiffs are currently working on pleadings that may encompass many, if not all, of the additional Defendants and drugs identified in the Amended Complaint.

[13] Private plaintiffs do not here seek access to telephone records secured by the State of New York.

records by duplicating all of the Plaintiff States' work, which would entail collecting through discovery of Defendants the names and telephone numbers of their employees (over Defendants' objections),[14] then drafting, serving and negotiating subpoenas to more than a dozen telephone carriers, all of which could take months and will impose unnecessary burdens on the Parties and the Court. Such a redundant approach also will impose added burdens on both third parties, who will be required to prepare a duplicative response to a new set of subpoenas, and on this Court to the extent that it must consider motions directed at objections to the production of documents and information that Defendants have already produced and are now in the physical possession of a party in this MDL. Neither the Federal Rules nor the JPML's Transfer Order contemplates such a tremendous waste of time and resources. *See Generic Pharm. Pricing*, 2017 WL 4582710, at *2 (coordinated proceedings should eliminate duplication in discovery and enhance the convenience of the parties).

The Plaintiff States already have possession of the AG Documents and will agree to provide them to Private Plaintiffs upon entry of an appropriate Court Order, thus potentially

---

[14] Many of Defendants' May 24, 2018 responses to Plaintiffs' First Set of Interrogatories Directed to Defendants refuse to provide mobile telephone numbers and/or identify the associated phone carriers, as required by Interrogatory No. 2. *See, e.g.*, Defendant Mylan's Responses and Objections to Plaintiffs' First Set of Interrogatories at 13 (objecting to identifying mobile telephone numbers and associated phone carriers and providing no substantive answer) (excerpt at Exhibit D); Lannett Co., Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories at 12-13 ) (same) (excerpt at Exhibit E (filed under seal)); Def. Zydus Pharmaceuticals (USA), Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories Directed to Defendants at 10-12 (objecting to, and failing to provide, telephone carrier information) (excerpt at Exhibit F (filed under seal)); Defendants Akorn, Inc., Akorn Sales, Inc., and Hi-Tech Pharmacal Co., Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories at 10-11 (same) (excerpt at Exhibit G (filed under seal)); Teligent, Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories at 10-11 (same) (excerpt at Exhibit H (filed under seal)); Aurobindo Pharma USA, Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories at 8-10 (failing to provide telephone carrier information despite stating no objection thereto) (excerpt at Exhibit I (filed under seal)); Par Pharmaceutical, Inc.'s Responses and Objections to Plaintiffs' First Set of Interrogatories at 10-12 (same) (excerpt at Exhibit J (filed under seal)).

eliminating any further burden on Defendants to re-produce such documents for Private Plaintiffs' use. By contrast, Defendants have said they will only produce documents if they are independently responsive to a document request, thus requiring a document-by-document responsiveness review prior to any production to Plaintiffs. And at the current pace of meet and confer discussions it will be months before such review or production occurs. Moreover, Defendants have stated their intention to produce different versions of the AG Documents for use in the MDL, namely, documents bearing different Bates numbers and redactions that mask information that Defendants unilaterally determine to be irrelevant to the claims in the MDL. Granting Private Plaintiffs access to the AG Documents avoids such unnecessary delay and forecloses Defendants from inhibiting cooperation among all Plaintiffs by ensuring Private Plaintiffs and the Plaintiff States are working from the same set of documents. It also avoids placing the Plaintiff States in the impossible position of having to "un-see" material that Defendants would unilaterally redact were they to produce the documents instead, thereby avoiding confusion, complication and inefficiency in discovery.

    Once the AG Documents are obtained from the Plaintiff States, Private Plaintiffs will presumptively treat all of Defendants' documents as Highly Confidential under the Protective Order, and thereafter will negotiate with Defendants to determine how they should be designated under the Protective Order. In addition, Private Plaintiffs will work with the Plaintiff States to ensure appropriate notice is provided to third parties, including telephone carriers, consistent with PTO 45 and Connecticut law.

    Authorizing Private Plaintiffs' access to the AG Documents and the unredacted Amended Complaint also relieves this Court (and the parties) from the burden of potentially litigating a host of discovery disputes if those materials had to be separately produced. This is especially

true given that producing Defendants have made no effort at any time over the last eight months to timely make any of the applications and showings that are required by *Brown*.

In sum, permitting Private Plaintiffs access to the unredacted Amended Complaint and the AG Documents is fully consistent with the Protective Order and the JPML order and serves to avoid the type of duplication, wasted effort, and needless expense this MDL was designed to prevent and will help promote the full and fair resolution of all claims.

### III. CONCLUSION

Private Plaintiffs respectfully request that this Court enter the proposed Pretrial Order expressly authorizing Private Plaintiffs' access to: (1) an unredacted version of the Plaintiff States' Amended Complaint; and (2) the AG Documents.

Dated: June 6, 2018

Respectfully submitted,

/s/ *Roberta D. Liebenberg*
Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
215-567-6565
rliebenberg@finekaplan.com

*Lead Counsel for the*
*End-Payer Plaintiffs*

/s/ *Dianne M. Nast*
Dianne M. Nast
NASTLAW LLC
1100 Market Street, Suite 2801
Philadelphia, PA 19107
215-923-9300
dnast@nastlaw.com

*Lead Counsel for the*
*Direct Purchaser Plaintiffs*

/s/ *Jonathan W. Cuneo*
Jonathan W. Cuneo
CUNEO, GILBERT & LADUCA LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
202-789-3960
jonc@cuneolaw.com

*Lead Counsel for the*
*Indirect Reseller Plaintiffs*

/s/ *William J. Blechman*
William J. Blechman, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida  33131
Tel:    (305) 373-1000
Fax:    (305) 372-1861
E-mail: wblechman@knpa.com

*Counsel for the Kroger Direct Action Plaintiffs*