**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| **THIS DOCUMENT RELATES TO:**<br>*ALL ACTIONS* | |

**DEFENDANTS' JOINT SUPPLEMENTAL MEMORANDUM OF LAW
REGARDING LIFEWATCH SERVICES, INC. V. HIGHMARK INC.**

**I.   INTRODUCTION**

Pursuant to this Court's order, the undersigned Defendants submit this supplemental memorandum of law explaining why the Third Circuit's recent decision in *LifeWatch Services Inc. v. Highmark Inc.*, No. 17-1990, 2018 U.S. App. LEXIS 24318 (3d Cir. Aug. 28, 2018) supports dismissal of the Group 1 drug Complaints of the Direct Purchaser Plaintiffs, End-Payer Plaintiffs, and Indirect Reseller Plaintiffs (collectively, "Private Plaintiffs").[1]  The plaintiff's allegations in *LifeWatch*, that the defendants uniformly adopted and later enforced a defined allegedly anticompetitive policy, stand in stark contrast to the threadbare conspiracy allegations here.  Indeed, each of Private Plaintiffs' Complaints fails to meet the standard that *LifeWatch* applied.

---

[1] The Group 1 case management groups are Digoxin, Pravastatin, Clobetasol, Divalproex ER, Doxycycline, and Econazole.  *See* 16-DG-27241 ECF Doc. No. 81; 16-DG-27242 ECF Doc. No. 139; 16-DG-27243 ECF Doc. No. 48; 16-PV-27241 ECF Doc. No. 70; 16-PV-27242 ECF Doc. No. 114; 16-PV-27243 ECF Doc. No. 33; 16-CB-27241 ECF Doc. No. 77; 16-CB-27242 ECF Doc. No. 129; 16-CB-27243 ECF Doc. No. 39; 16-DV-27241 ECF Doc. No. 79; 16-DV-27242 ECF Doc. No. 102; 16-DV-27243 ECF Doc. No. 24; 16-DX-27241 ECF Doc. No. 92; 16-DX-27242 ECF Doc. No. 162; 16-DX-27243 ECF Doc. No. 57; 16-EC-27241 ECF Doc. No.  67; 16-EC-27242 ECF Doc. No. 114; 16-EC-27243 ECF Doc. No. 23.  The Court's Order permitted each party to file a supplemental memorandum not to exceed five pages.  For efficiency purposes, Defendants submit this joint memorandum in slight excess of the five page limit rather than file several separate memoranda.

The Third Circuit's decision in *LifeWatch* demonstrates why dismissal is appropriate here because it involved detailed allegations regarding the alleged agreement, near-identical conduct by the conspirators, a clear enforcement mechanism for the conspiracy, specific meetings, and actions against the conspirators' interests. No such allegations are made here, and the vast differences between the specific conspiratorial activities alleged in *LifeWatch* and the conclusory and unsupported allegations made in Private Plaintiffs' Complaints shows those Complaints should be dismissed.

The *LifeWatch* opinion, which concerned an alleged non-price restraint, does not change the requirements for pleading a facially plausible claim under Section 1 of the Sherman Act. Consistent with Defendants' pending motions, the Court's opinion in *LifeWatch* leaves no doubt that "a claim based on parallel—even consciously parallel—conduct alone [is] insufficient to survive dismissal." 2018 U.S. App. LEXIS 24318, at *14. Plaintiffs must allege something "more," and *LifeWatch* confirms that, in cases concerning concentrated, oligopolistic markets, that means plaintiffs must set forth non-conclusory factual allegations of "non-economic evidence 'that there was an actual manifest agreement'" among defendants. *Id.* at *10 (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322 (3d Cir. 2010)). The Third Circuit found that LifeWatch alleged the required "more" through specific allegations of "the type of agreement reached by the Blue Plans and the Association, an auditing mechanism by which the agreement is enforced, a particular time when a Blue Plan declined to cover telemetry monitors due to pressure from the Association and other Plans, and the improbability that the same coverage decision would be reached by nearly all the Blue Plans independently." *Id.*

But whereas LifeWatch alleged (i) a defined agreement, (ii) an enforcement mechanism, and (iii) actual enforcement, Private Plaintiffs here have alleged nothing more than pricing

conduct that is consistent with independent decision-making in concentrated markets. Labels and conclusory allegations concerning government investigations, innocuous public statements, market conditions, and opportunities to conspire have never been enough to survive a motion to dismiss, before or after *LifeWatch*.

## II.  ARGUMENT

In *LifeWatch*, the Third Circuit recognized, consistent with *Twombly*, that lawful, interdependent decision-making is typical and expected in markets with a limited set of competitors.[2]  *Id.* "In cases involving concentrated markets like oligopolies . . . where a small number of sellers or buyers of a particular product dominate the market . . . competitors are more likely to be influenced by each other's behavior even without agreeing to act in concert." *Id.*  In light of these economic realities, the Third Circuit made clear that courts analyzing alleged parallel conduct, such as at issue here, must focus on whether plaintiffs have set forth sufficient allegations of "evidence implying a traditional conspiracy."[3]  *Id.* at *11.

While the *LifeWatch* complaint contained specific allegations of the type of traditional conspiracy evidence that can raise a suggestion of conspiracy under *Twombly*, the Group 1 drug Complaints do not. For instance, LifeWatch alleged an actual agreement, the contours of that alleged agreement, and the method through which the defendants reached that agreement. Specifically, during several meetings that occurred each year, the defendants allegedly discussed

---

[2] The *LifeWatch* complaint alleged a fundamentally different type of conspiracy than the type of conspiracy alleged in this MDL. Nevertheless, the court's analysis of what constitutes "more" is instructive because it applied established Third Circuit law to pleadings significantly more robust and specific than those in this MDL, offering a clear contrast between pleadings that satisfy the requirements of *Twombly* and those, like here, that do not.

[3] "Evidence implying a traditional conspiracy" is one of three "plus factors" regularly recognized by Third Circuit courts, along with motive and actions against self-interest. *LifeWatch*, 2018 U.S. App. LEXIS 24318 at *10. *LifeWatch* and earlier Third Circuit decisions instruct that in cases involving oligopolies, courts are to "de-emphasize" allegations regarding motive and actions against self-interest because they "'largely restate [the] phenomenon of interdependence.'" *Id.* (quoting *Valspar v. E.I Du Pont De Nemours & Co.*, 873 F.3d 185, 193 (3d Cir. 2017)). Despite this clear guidance, Private Plaintiffs' briefs opposing Defendants' motions to dismiss rely heavily on arguments regarding these two plus factors in an attempt to make up for their lack of sufficient allegations of traditional conspiracy evidence. *LifeWatch* is but the latest Third Circuit decision to confirm that those arguments cannot carry the day on a motion to dismiss in an oligopoly case.

and voted on a Model Policy that determined which products should be approved for reimbursement, and then agreed to substantially comply with the Model Policy and adopted its language with "near total uniformity" (the so-called "Uniformity Rule"), resulting in the exclusion of LifeWatch's products from coverage.

LifeWatch also alleged "an auditing mechanism by which the agreement [was] enforced." *Id.* at *14. Insurers that disobeyed the Uniformity Rule allegedly faced sanctions. Indeed, LifeWatch "provide[d] a particular example" of the enforcement mechanism in operation, when one defendant was disciplined for not following the alleged agreement. *Id.* at *13.

Finally, LifeWatch alleged that other insurers routinely covered telemetry monitors as medically necessary, making it "improbab[le]" that the defendants independently reached identical contrary coverage decisions. *Id.*

Based on this combination of specifically alleged facts, the Third Circuit found that the "agreement and enforcement mechanism pled here provide the 'reasonably founded hope that the [discovery] process will reveal relevant evidence.'" (quoting *Twombly*, 550 U.S. at 559)). Put another way, the *LifeWatch* complaint contained the "more" necessary to move the claim in that case beyond the plausibility threshold. Private Plaintiffs' Complaints do not come close to meeting that burden.

*First,* in *LifeWatch*, the plaintiff alleged a written policy that defined the nature and contours of the conspiracy as well as a specific enforcement mechanism. In stark contrast, Private Plaintiffs make only conclusory allegations of agreements and offer no facts – none of the required who, what, where, or when – in support of their allegations that Defendants' alleged pricing conduct resulted from an agreement (as opposed to natural market forces). In fact, certain of the alleged agreements Private Plaintiffs allege defy logic. In the Doxycycline

Complaints, for instance, the purported agreement involves two different products (Doxycycline Regular Release ("Doxy RR") and Doxycycline Delayed Release ("Doxy DR")), different sets of Defendants, different types of alleged anticompetitive conduct, and different timeframes for the alleged wrongdoing.  *See* Defs.' Doxycycline DPP Mem. of Law (ECF Doc. No. 92) at ECF 14.

*Second*, LifeWatch alleged that the insurers uniformly adopted the Model Policy and "use[d] similar or identical language to deny coverage of telemetry monitors." *LifeWatch*, 2018 U.S. App. LEXIS 24318, at *11.  Private Plaintiffs' Complaints do not allege any simultaneous or uniform action.  On the contrary, in their Digoxin Complaints, Private Plaintiffs concede that three Defendants were not even in the market at the time of the initial price increase and that as they entered, prices fell substantially across Defendants in a non-uniform fashion.  Defs.' Digoxin DPP Mem. of Law (ECF Doc. No. 81-1) at ECF 26-27.  In their Pravastatin Complaints, Private Plaintiffs' own allegations make clear that several months elapsed between the Defendants' alleged Pravastatin price increases and also that there were substantial differences between Defendants' respective prices, especially at their supposed peaks.  *See* Defs.' Pravastatin DPP Mem. of Law (ECF Doc. No. 70) at ECF 24-25.  Similarly, the Clobetasol Complaints allege stark differences in the purported levels and timing of the price increases (and decreases) and that one Defendant did not even raise its prices until two years after the initial price movement.  *See* Defs.' Clobetasol DPP Mem. of Law (ECF Doc. No. 77-1) at ECF 16-19.

*Third*, the non-uniform conduct pled in the respective Group 1 drug Complaints highlights another key difference from *LifeWatch*: each of Private Plaintiffs' Complaints lacks any allegation of an enforcement mechanism or a specific example of a noncompliant defendant being disciplined.  For example, the Econazole Complaints contain pricing graphs demonstrating that Defendants adopted very different pricing strategies at very different times and often moved

5

in very different directions.  *See* Defs.' Econazole DPP Mem. of Law (ECF Doc. No. 67-1) at ECF 8-10.  There are no allegations, as in *LifeWatch*, that any Defendant was coerced into uniformity.  Moreover, Private Plaintiffs do not attempt to allege that Defendants selling Doxy DR engaged in parallel behavior at all; their allegations instead reflect that those Defendants competed against each other for market share and customers with no enforcement mechanism "disciplining" their competition.

*Fourth*, unlike *LifeWatch*, Private Plaintiffs do not allege that Defendants actually met to form any of the alleged agreements.  Private Plaintiffs allege only that Defendants had *opportunities* to meet (i) at trade association or social events or (ii) because their offices were in relatively-close proximity to each other.  Plaintiffs do not make any accompanying allegations tying these opportunities to any specific agreement concerning any Group 1 drug or even among specific groups of Defendants.  Attendance at trade association events, open to all types of industry participants, is entirely lawful conduct, and far removed from the series of specific meetings in *LifeWatch* where the defendants allegedly *met and voted* on the policy that they then uniformly implemented.

*Fifth*, LifeWatch's allegations regarding medical necessity made unilateral decisions to deny coverage improbable.  Conversely, as the Third Circuit has explained repeatedly, it is economically rational, and indeed often expected, that firms in interdependent markets (like the ones alleged here) will independently reach similar pricing decisions.  *See, e.g.*, *LifeWatch*, 2018 U.S. App. LEXIS 24318, at *10; *Valspar*, 873 F.3d at 193.  Moreover, in certain Complaints, Private Plaintiffs' own allegations provide specific reasons, other than unlawful agreements, for the alleged price increases.  In the Digoxin Complaints, for example, there were only two generic Digoxin manufacturers in the market at the time of the alleged price increase, and the seller of

brand Digoxin had just significantly increased its price.  *See* Defs.' Digoxin DPP Mem. of Law (ECF Doc. No. 81-1) at ECF 18-32.  In the Divalproex Complaints, judicially noticeable facts establish that the leading generic manufacturer had regulatory problems and ultimately ceased producing Divalproex for sale in the U.S., leaving the other leading manufacturers to cover the gap in production.  Defs.' Divalproex Mem. of Law (ECF Doc. No. 79-1) at ECF 12-13.  In the Doxycycline Complaints, Private Plaintiffs acknowledge that Doxy RR shortages preceded and persisted during the period of the allegedly parallel price increases, reported by the FDA and Center for Disease Control to be caused by both increased demand and manufacturing issues.  *See, e.g.*, Defs.' Doxycycline DPP Mem. of Law at pp. 22-23.  These market events provide obvious alternative explanations for Defendants' allegedly parallel conduct, in sharp contrast to the clinical necessity facts that LifeWatch specifically pled rendering the insurers' independent decision-making improbable.

In short, here Private Plaintiffs fail to allege something more than entirely lawful, parallel conduct in concentrated markets.  As the Third Circuit has recognized, *Twombly* requires dismissal of a conspiracy claim where, ***as here***, "*'common economic experience,' or the facts alleged in the complaint itself*, show that independent self-interest is an *'obvious alternative explanation'* for defendants' common behavior."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 326 (3d Cir. 2010) (emphasis added).  *LifeWatch* merely confirms this well-established law and, thus, lends additional support to Defendants' motions to dismiss.

### III.  CONCLUSION

It is undisputed that under Third Circuit law, as affirmed in *LifeWatch*, a complaint must contain specific factual allegations of agreement to survive a motion to dismiss.  As explained above, Private Plaintiffs' Complaints are devoid of the specific allegations that *LifeWatch* makes

7

clear must be pled to survive a motion to dismiss. Accordingly, Defendants renew their request that this Court dismiss Private Plaintiffs' Group 1 Complaints with prejudice.

Respectfully submitted,

| | |
|---|---|
| */s/ Sheron Korpus* | */s/ Anthony C. Porcelli* |
| Sheron Korpus | Anthony C. Porcelli |
| Seth A. Moskowitz | POLSINELLI PC |
| KASOWITZ BENSON TORRES LLP | 150 N. Riverside Plaza, Suite 3000 |
| 1633 Broadway | Chicago, IL 60606 |
| New York, NY 10019 | (312) 819-1900 |
| Tel: (212) 506-1700 | (312) 819-1910 (fax) |
| Fax: (212) 506-1800 | aporcelli@polsinelli.com |
| skorpus@kasowitz.com | |
| smoskowitz@kasowitz.com | Amy D. Fitts |
| | POLSINELLI PC |
| *Counsel for Defendants Actavis Elizabeth, LLC, Actavis Pharma, Inc., and Actavis Holdco U.S., Inc.* | 900 W. 48th Place, Suite 900 |
| | Kansas City, MO 64112 |
| | (816) 753-1000 |
| | (816) 222-0425 (fax) |
| */s/ J. Gordon Cooney, Jr.* | afitts@polsinelli.com |
| J. Gordon Cooney, Jr. | |
| John J. Pease, III | *Counsel for Defendants Akorn, Inc. Akorn Sales, Inc., and Hi-Tech Pharmacal Co., Inc.* |
| Alison Tanchyk | |
| William T. McEnroe | |
| MORGAN, LEWIS & BOCKIUS LLP | */s/ Roger Kaplan* |
| 1701 Market Street | Roger Kaplan |
| Philadelphia, PA 19103 | GREENBERG TAURIG, LLP |
| Tel: (215) 963-5000 | 500 Campus Drive, Suite 400 |
| Fax: (215) 963-5001 | Florham Park, NJ 07932 |
| jgcooney@morganlewis.com | Tel: (973) 360-7900 |
| john.pease@morganlewis.com | Fax: (973) 295-1257 |
| alison.tanchyk@morganlewis.com | kaplanr@gtlaw.com |
| william.mcenroe@morganlewis.com | |
| | Brian T. Feeney |
| Amanda B. Robinson | GREENBERG TRAURIG, LLP |
| MORGAN, LEWIS & BOCKIUS LLP | 2700 Two Commerce Square |
| 1111 Pennsylvania Avenue, NW | 2001 Market Street, Philadelphia, PA 19103 |
| Washington, D.C. 20004 | Tel: (215) 988-7812 |
| Tel: (202) 739-3000 | Fax: (215) 717-5265 |
| Fax: (202) 739-3001 | feeneyb@gtlaw.com |
| Amanda.robinson@morganlewis.com | |
| | *Counsel for Defendant Dr. Reddy's Laboratories, Inc.* |
| Jan P. Levine | |
| Robin P. Sumner | |

Michael J. Hartman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
levinej@pepperlaw.com
sumnerr@pepperlaw.com
hartmanm@pepperlaw.com

*Counsel for Defendant Teva Pharmaceuticals USA, Inc.*

/s/ *James W. Matthews*
James W. Matthews
Katy E. Koski
John F. Nagle
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Tel: (414) 271-2400
Fax: (414) 297-4900
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5644

/s/ *Steven A. Reed*
Steven A. Reed
R. Brendan Fee
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5603
Fax: (215) 963-5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com

Andrew S. Wellin
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6154
Fax: (212) 309-6001
andrew.wellin@morganlewis.com

*Counsel for Defendant Glenmark Pharmaceuticals Inc., USA*

/s/ *Gerald E. Arth*
Gerald E. Arth
Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street
Philadelphia, PA 19103
Tel: (215) 299-2720
Fax: (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com

George G. Gordon
Stephen D. Brown
Julia Chapman
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Tel. 215-994-2000
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

*Counsel for Defendant Lannett Company, Inc.*

9

Fax: (215) 832-5644
THenry@blankrome.com
MCarter@blankrome.com

*Counsel for Defendant Apotex Corp.*

/s/ *D. Jarrett Arp*
D. Jarrett Arp
Daniel W. Nelson
Melanie L. Katsur
Christopher B. Leach
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave., NW
Washington, DC 20036-5306
Tel: (202) 955-8678
Fax:  (202) 530-9527
jarp@gibsondunn.com
dnelson@gibsondunn.com
mkatsur@gibsondunn.com
cleach@gibsondunn.com

*Counsel for Defendant Heritage Pharmaceuticals Inc.*

/s/ *Saul P. Morgenstern*
Saul P. Morgenstern
Margaret A. Rogers
Kathryn L. Rosenberg
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
saul.morgenstern@arnoldporter.com
margaret.rogers@arnoldporter.com
kathryn.rosenberg@arnoldporter.com

Laura S. Shores
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
laura.shores@arnoldporter.com

/s/ *Leiv Blad*
Leiv H. Blad
Zarema A. Jaramillo
Katie R. Glynn
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
kglynn@lowenstein.com

*Counsel for Defendant Lupin Pharmaceuticals, Inc.*

/s/ *Chul Pak*
Chul Pak
Jeffrey C. Bank
WILSON SONSINI GOODRICH & ROSATI, PC
1301 Avenue of the Americas
40th Floor
New York, New York 10019
Tel: (212) 497-7726
Fax: (212) 999-5899
cpak@wsgr.com
jbank@wsgr.com

Seth C. Silber
WILSON SONSINI GOODRICH & ROSATI, PC
1700 K Street, NW
Fifth Floor
Washington, DC 20006
Tel: (202) 973-8824
Fax: (202) 973-8899
ssilber@wsgr.com

*Counsel for Defendant Mylan Inc. and Mylan Pharmaceuticals Inc.*

/s/ *John E. Schmidtlein*
John E. Schmidtlein (admitted pro hac vice)
Sarah F. Teich (admitted pro hac vice)

*Counsel for Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc.*

/s/ *Michael Martinez*

Michael Martinez
Steven Kowal
Lauren Norris Donahue
Brian J. Smith
K&L GATES LLP
70 W. Madison St., Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121
Fax: (312) 827-8000
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Defendant Mayne Pharma Inc.*

/s/ *Scott A. Stempel*

Scott A. Stempel
J. Clayton Everett, Jr.
Tracey F. Milich
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
scott.stempel@morganlewis.com
clay.everett@morganlewis.com
tracey.milich@morganlewis.com

Harvey Bartle IV
Francis A. DeSimone
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Fax: (215) 963-5001
harvey.bartle@morganlewis.com
frank.desimone@morganlewis.com

*Counsel for Defendant Perrigo New York, Inc.*

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
steich@wc.com

*Counsel for Defendant Par Pharmaceutical, Inc.*

/s/ *Heather K. McDevitt*

Heather K. McDevitt
Bryan D. Gant
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
Fax: (212) 354-8113
hmcdevitt@whitecase.com
bgant@whitecase.com

*Counsel for Defendant Teligent, Inc.*

/s/ *William A. Escobar*

William A. Escobar
Damon W. Suden
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
wescobar@kelleydrye.com
dsuden@kelleydrye.com

*Counsel for Defendants Wockhardt USA LLC and Morton Grove Pharmaceuticals Inc.*

/s/ *Jan P. Levine*

Jan P. Levine
Robin P. Sumner
Michael J. Hartman
Eric S. Merin
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets

*/s/ Douglas Baldridge*
J. Douglas Baldridge
Lisa Jose Fales
Danielle R. Foley
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
(202) 344-4000
jbaldridge@venable.com
ljfales@venable.com
drfoley@venable.com

Thomas J. Welling, Jr.
Benjamin P. Argyle
VENABLE LLP
1270 Avenue of the Americas
24th Floor
New York, New York 10020
(212) 307-5500
tjwelling@venable.com
bpargyle@venable.com

*Counsel for Defendants Mutual Pharmaceutical Company, Inc., Sun Pharmaceutical Industries, Inc. and Taro Pharmaceuticals U.S.A., Inc.*

Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
levinej@pepperlaw.com
sumnerr@pepperlaw.com
hartmanm@pepperlaw.com
merine@pepperlaw.com

Keith J. Harrison
Shari Ross Lahlou
Astor H.L. Heaven
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Tel. (202) 624-2500
Fax. (202) 624-5116
kharrison@crowell.com
slahlou@crowell.com
aheaven@crowell.com

*Counsel for Defendant West-Ward Pharmaceuticals Corp.*

*/s/ Jason R. Parish*
Jason R. Parish
Bradley J. Kitlowski
Andrew Hope
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street, N.W.
Washington, DC 20006
Tel: (202) 452-7940
jason.parish@bipc.com
andrew.hope@bipc.com

*Counsel for Defendant Zydus Pharmaceuticals (USA), Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2018 a true and correct copy of the foregoing DEFENDANTS' JOINT SUPPLEMENTAL MEMORANDUM OF LAW REGARDING *LIFEWATCH SERVICES, INC. V. HIGHMARK INC.* was served via ECF upon all counsel of record.

/s/ Jan P. Levine
Jan P. Levine