UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
|---|---|

| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
|---|---|
| *Marion Diagnostic Center, LLC et al. v. McKesson Corporation, et al.* | Div. No. 2:18-cv-04137-CMR |

MEMORANDUM IN SUPPORT OF MOTION FOR THIRD ELECTRONIC CASE
MANAGEMENT PROTOCOL TO CREATE NEW TRACK FOR ALL
DIRECT PURCHASER FROM DISTRIBUTOR ACTIONS

# Table of Contents

I. No Other Class Is Congruent with the *Marion* Class Comprised of Healthcare Providers Suing McKesson for Purchases in All Fifty States....................3

II. Throwing Together the Marion Direct Federal Claims Covering 50 States and the Private Pharmacy Indirect State Claims Covering 26 States Under Different Statutes Impedes Efficient and Adequate Prosecution of Both Claims..................6

    A. *Marion's* Unique Class Claims Against the McKesson Co-Conspirator Are Irrelevant to the Indirect-Purchaser Pharmacy Claims......................7

    B. Class Certification Issues Differ........................................................7

    C. Class Coverages Are Vastly Different................................................8

    D. The Standing Issues Are Entirely Different........................................8

III. If the Court Is Inclined Now to Reach a Standing, Merits Issue to Resolve This Procedural, Organizational Dispute, Marion Has Federal Standing As a Matter of Law..........................................................................................9

IV. A New Track in No Way Prejudices Prosecution of Other Class Claims and Provides a Needed Path for *Marion* Counsel to Cooperate with Other Plaintiff Counsel ....................................................................................................10

V. Consistently, Marion Also Seeks Establishment of a Plaintiff Steering Committee for Direct Purchaser from Distributor Actions and a Schedule for Consideration of Motions to Dismiss ...........................................................................................11

VI. In the Alternative, Should the Court Not Be Inclined to Create a New Track, *Marion* Should Be Assigned to the Indirect Reseller Plaintiff Track and Its Counsel Given a Leadership Position with the Ability to Assert the Unique Claims of Their Unique Plaintiffs.............................................................................................12

CONCLUSION........................................................................................................12

Pursuant to this Court's Order dated September 7, 2018 (No. 16-MD-2724 ECF 703), *Marion Diagnostic Center, LLC et al. v. McKesson Corporation, et al.* (No. 2:18-cv-04137 ECF 1) ("Marion Complt.") was filed in this Court on September 25, 2018.[1] Pursuant to MDL Pretrial Order No. 1 (No. 16-MD-2724 ECF 2) it was automatically consolidated upon filing with this MDL proceeding.

Herein Marion seeks an amendment to the Second Electronic Case Management Protocol to (a) create a new track for Direct Purchaser from Distributor Actions alleging conspiracy claims where McKesson (or other yet unnamed distributors) are sued as co-conspirators; (b) create a new Plaintiff Steering Committee for this track; and (c) amend Pretrial Order 46 (as amended by Pretrial Order 51) to create a new Group 4 for purposes of the adjudication of any motions to dismiss claims arising from direct purchases from conspiring distributors.

In the alternative, should the Court not be inclined to create a new track for all Direct Purchaser from Distributor Actions including *Marion*, Marion asks that its claims and any similar claims be assigned to the Indirect Reseller Plaintiff (IRP) track with *Marion* counsel Edith Kallas of Whatley Kallas LLP as co-lead counsel with responsibility for the prosecution of all Direct Purchaser from Distributor Actions and all claims on behalf of healthcare providers. These claims are not currently part of the IRP track. The current IRP lead counsel's responsibilities would remain unchanged.

---

[1] Defendant McKesson Corporation was served on September 28, 2018 and McKesson Medical-Surgical, Inc. on October 1, 2018. No. 2:18-cv-04137 ECF 3, 4. These Defendants are collectively referred to herein as "McKesson." The other Defendants have accepted service via stipulation approved by the Court on October 16, 2018. *Id.* ECF 10. All parties in this consolidated *Marion* docket, as well as counsel for other private class plaintiffs, are being served this Motion and Memorandum in Support through the MDL ECF system.

Marion has previously (and prematurely) sought similar relief before the filing of its claims.[2] At that time counsel for the Direct Purchaser Plaintiffs (DPPs) and End Payor Plaintiffs (EPPs) tracks advised the Court to place *Marion* (and apparently any similar subsequent claims) in the track now occupied by IRP Plaintiffs.[3]

Creation of a new track is more advisable, *first*, because no other private class claims are congruent with those of the federal *Marion* class and this Court acknowledged such differences in claims as the rationale for creating separate tracks to facilitate coordination among counsel prosecuting different claims. *Second,* this is the best way for the efficient and adequate prosecution of *Marion's* unique federal claims. Moreover, the creation of a new track prevents the inefficient prosecution of the considerably different state, private-pharmacy claims in the IRP Reseller track. As set out below, the indirect claims of these private pharmacies under state law differ radically in multiple respects from the federal, direct-purchaser claims of *Marion*. *Third,* even if this Court were inclined to reach a merits standing issue to resolve a procedural, organizational dispute, Marion has federal standing as a matter of law as a direct purchaser from alleged co-conspirator McKesson. Apparently, as the Direct Purchaser and End Payor argument goes, *Marion* (and any additional Direct Purchaser from Distributor Actions filed in the future) are meritless and unworthy of a new track.[4] Taken to its logical conclusion the assignment of *Marion* to any new *or* existing track is a waste of judicial time since its claims are meritless. To the contrary, under unambiguous findings of the Third, Seventh, Eighth, and Eleventh Circuits, as well as the Southern District of New York, as the first non-conspiring party *purchasing*

---

[2] No. 16-MD-2724 ECF 638, 639, 651, 679-1.

[3] Div. No. 16-MD-2724 ECF 648, 671, 672.

[4] *Id.*

2

*directly from the conspiracy*, Marion has federal standing, and the *Illinois Brick* doctrine banning federal *indirect purchaser* claims does not apply.

### I. No Other Class Is Congruent with the *Marion* Class, Comprised of Healthcare Providers Suing McKesson for Purchases in All Fifty States

Plausible circumstantial evidence (and "plus factors") point to McKesson's participation in the overarching conspiracy.[5] *Marion* alleges that over the last several years it is highly plausible that McKesson has been aware of the conspiracy, has cooperated with it, and has concealed it. Marion Complt. ¶¶ 72-104. This has been facilitated by McKesson's close and continuing business relationships with Defendant Heritage and its two officers who have pled guilty to felonies. *Id.* ¶¶ 81-86. McKesson could not have failed to notice the explosion of prices across the generic drug industry in 2013-14 (which were otherwise unexplained by market or cost-based factors) while its number of sophisticated and experienced buyers made *billions* of dollars of purchases *each year* from the overarching conspiracy. *Id.* ¶¶ 74-80. McKesson also could not have failed to notice the less-than robust and competitive bidding for its most attractive business due to market allocation. *Id.* ¶¶ 77, 79, 83. It has cooperated with the conspiracy, and

---

[5] Marion Complt. ¶ 104. The amended State Attorney General Complaint alleges a "cozy nature of the [generic] industry and opportunities for collusion" and notes that McKesson and other large distributors hold multi-day conferences throughout the year and invite generic manufacturers. *Id.* ¶ 97. *See also id.* ¶¶ 101-03. The SAGs also allege that distributors such as McKesson *benefit* when generic prices are higher. *Id.* ¶ 90 *See also id.* ¶ 95. In March 2018 NPR reported that a market analyst for Sanford Bernstein points out that in an efficient marketplace, generic drug wholesalers and distributors should have kept prices in check, and that "[i]n a market that has only three or four really large distribution organizations, they are sometimes *tempted to maximize their own profits in a way that does not always 100 percent reflect the best interest of their clients.*" *Id.* ¶ 95 (emphasis in the original). In its report *Probe Into Generic Drug Industry Set to Widen* NPR also relates statements by the Connecticut Assistant Attorney General to the effect that "[t]his is what investigators are looking at now" and "planning a new complaint. *Id.* ¶ 99. Further, McKesson has received requests for information and is cooperating with the SAG investigation. *Id.* ¶ 100.

It may well be that the involvement of unnamed distributors as co-conspirators may extend well beyond McKesson as the government investigations and MDL discovery proceed.

helped to conceal it, because the conspiracy has allowed it to generate *billions* of dollars of extra margins *annually* (due to its routine, largely-fixed mark-ups of the above-competitive pricing). *Id.* ¶¶ 87-94. McKesson admits in multiple SEC filings that it benefits substantially from higher generic prices rise (rather than suffer as a buyer). *Id.* ¶ 90.

The **Federal Marion Class** pursuing these claims seeks to represent "all persons or entities that have directly purchased generic drugs from conspirator McKesson in the United States...." Marion Complt. ¶ 105. The class is largely comprised of hospitals, clinics and other healthcare providers using, like the Marion clinics, generic drugs to treat their patients. These claims are not being asserted by any other plaintiffs, and this alone justifies a separate track for this and any future Direct Purchaser from Distributor Actions under the Court's organizing principle placing markedly-different federal and state claims in different tracks.

The **State End Payor Class** is comprised of "[a]ll persons and entities in [26] End-Payer Damages Jurisdictions that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for [manufacturing] Defendants' generic Drugs at Issue, other than for resale, from March 1, 2011 through the present." End Payor Overarching Conspiracy Complt., No. 2:18-cv-0241 ECF 1 ¶ 692. As the Court recently noted, the End Payor Plaintiffs "are third party payors (including employee welfare benefits funds, labor unions and private insurers) and individual plaintiffs who either allege that they indirectly purchased generic pharmaceuticals manufactured by one or more Defendants or that they provided reimbursements for the drugs." No. 16-MD-2724 ECF 721 at 8.

This class will not represent the interests of the *Marion* healthcare providers. *First,* the End Payor class representatives are not healthcare providers. Further, none of the class representatives have dealt directly with McKesson or other distributors, as the *Marion* class has.

4

Instead, they are one or two steps removed from the overcharging by the manufacturing conspirators, with pharmacy benefit managers and health plan administrators standing between them and McKesson and other distributors. On the other hand, *Marion's* class has no such attenuated, indirect claims (and attendant damage estimation complexities). To the extent that the End Payor Plaintiffs will have to calculate the amount by which damages from the conspiracy were passed on to them, the *Marion* class will not be similarly situated, and its position may even be adverse. *Second, Marion's* healthcare providers have federal damages claims across all 50 states and are not limited to the 26 indirect-purchaser state jurisdictions. Thus End Payor Plaintiffs are not mounting any damage prosecutions in nearly one-half of the United States.

The **Federal Direct Purchaser Class** is comprised of "[a]ll persons that directly purchased one or more of the following drugs, from one or more of the [manufacturing] Defendants, in the United States and its territories and its possessions at any time from March 2011...." Direct Purchaser Overarching Conspiracy Complt., No. 2:18-cv-02641 ECF 1 ¶ 469. These claims also fail to mirror, and conflict with, those of the *Marion* healthcare providers. *First*, the Direct Purchaser federal claims are lodged only against the manufacturing Defendants, not McKesson or any other conspiring distributor. *Second,* members of the *Marion* class sue to *recover* overcharges on direct purchases from conspirator McKesson while the Direct Purchaser class seeks damages *for* conspirator McKesson as an absentee class member. *Third*, the Direct Purchaser class, which by definition purchases directly from the manufacturers, is not congruent with the *Marion* class, which only encompasses healthcare providers purchasing from McKesson.

The **Indirect Reseller (Independent Pharmacy) Class** encompasses: "[a]ll privately held pharmacies in the [26] IRP Damages Jurisdictions that indirectly purchased [manufacturing]

5

Defendants' generic Drugs at Issue from March 1, 2011 through the present." Indirect Reseller (Private Pharmacy) Complt., No. 2-18-cv-02533 ECF 1 ¶ 349. In the prior briefing of these tracking issues, the Direct Purchaser and End Payor counsel contended that *Marion* should be placed into this track.[6] But no Plaintiff counsel has ever articulated a sound reason why healthcare providers, who do not resell prescription drugs (and are not reimbursed on a drug-by-drug basis) should be in the same track as independent pharmacies, which do resell prescription drugs and are reimbursed on a drug-by-drug basis. And it should be uncontroversial that the *Marion* class is not encompassed in the Indirect Reseller class as it is currently constituted. Simply assuming that the Indirect Reseller class will represent the interests of the *Marion* class does not comport with this Court's goal of ensuring that all MDL plaintiffs enjoy due process. Case Management Orders exist "to facilitate the efficient management of the MDL. The Court has no hesitation in making structural adjustments as the needs of the MDL evolve." No. 16-MD-2724 ECF 603 at 9.

> II. **Throwing Together the Marion Direct Federal Claims Covering 50 States and the Private Pharmacy Indirect State Claims Covering 26 States Under Different Statutes Impedes Efficient and Adequate Prosecution of Both Claims**

Throwing together Marion's federal damage claims and the Indirect Resellers' state claims impedes the adequate representation of both sorts of class claims because (a) *Marion's* class claims against the McKesson co-conspirator are irrelevant to the indirect-purchaser pharmacy claims (and conflict with them); (b) class certification issues differ between Marion's clinics and the indirect-purchaser pharmacies; (c) class coverages greatly conflict; and (d) the standing issues are entirely different. There is no reasonable and persuasive way around these important and decisive difficulties.

---

[6] No. 16-MD-2724 ECF 648, 671, 672.

6

**A.** ***Marion's* Unique Class Claims Against the McKesson Co-Conspirator Are Irrelevant to the Indirect-Purchaser Pharmacy Claims.** The *Marion* clinics and other healthcare providers are not pharmacies indirectly purchasing generics from distributors and reselling them, but rather they use them for patient care in their facilities. The pharmacy reseller claims do not allege that McKesson is a co-conspirator[7] and this is not necessary for their showing of pass-on to the pharmacies through distributors not in the conspiracy. Further, counsel for these private pharmacy claims does not have the same incentive to devote its resources to discovery as to McKesson's possible role in the overarching conspiracy. *Marion* counsel alone has incentive to seek aggressive and efficient discovery.

Tellingly, counsel for the indirect-purchaser pharmacy claims has previously not explained why consolidation of claims of the indirect-purchaser pharmacies suing under 26 different state statutes and those of direct purchasers from co-conspirators suing under federal law would not introduce needless inefficiencies and intractable conflicts of prosecution interests impairing prosecution of both sorts of claims.[8]

**B.** **Class Certification Issues Differ.** There are at least two fundamental differences between the indirect-purchaser pharmacy claims and those of *Marion* that will affect class certification. *First*, to show formulaic, class-wide injury the pharmacies must show how pass-on from distributors (not in the conspiracy) has injured the pharmacy class. As a direct purchaser from the conspiracy, Marion need not show this pass-on, and McKesson is directly alleged to have liability. Further, the pharmacies reselling the generic drugs are subject to pass-on *defenses* under some state statutes (that is, they pass on the overcharging to their customers and have no or only partial damages). Marion class claims cannot be so diminished and it need not contend with

---

[7] No. 2:18-cv-02533 ECF 1 ¶¶ 18-61.
[8] No. 16-MD-2724 ECF 671.

7

such defenses econometrically or otherwise. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1986).

*Second*, the claims target different defendants. The pharmacies attack the manufacturing conspirators alone to show pass-on injury through their distributors not in the overarching conspiracy. *Marion* attacks the co-conspirator McKesson as a member of the conspiracy.

**C.     Class Coverages Are Vastly Different.** The *Marion* class includes healthcare providers who purchase generic drugs for use in providing healthcare services. This class is mutually exclusive from the class of independent pharmacies that currently make up the IRP track. Moreover, *Marion* brings damage claims under the Sherman Act against McKesson across the 50 states. The independent pharmacies seek damages only in the 26 states allowing indirect-purchaser standing, and not against McKesson.

**D.     The Standing Issues Are Entirely Different.** Previously, the Direct Purchaser and End Payor counsel have attacked on the merits Marion's standing to bring a direct-purchaser claim against the overarching conspiracy, and while this argument is clearly wrong, it will not be surprising if McKesson similarly attacks Marion's standing. Counsel for the private pharmacies has no incentive to defend Marion's standing (or the merits of its claims otherwise) because the pharmacies are not suing McKesson is a co-conspirator. Nor does *Marion's* counsel have an incentive to establish indirect-purchaser standing under 26 different state statutes or to defend against pass-on defenses against these pharmacies.

Thus, should *Marion* be consigned to the indirect-purchaser pharmacy track, there is no reasonable way to meld fundamentally divergent federal, direct-purchaser claims with the indirect-purchaser state claims of the private pharmacies to create a sensible, consolidated complaint.

8

### III. If the Court Is Inclined Now to Reach a Standing, Merits Issue to Resolve This Procedural, Organizational Dispute, Marion Has Federal Standing as a Matter of Law

Marion alleges it has directly purchased from the overarching conspiracy through McKesson, which is plausibly alleged to be a member of this conspiracy. It is not suing as an indirect purchaser.[9] Marion is the first non-conspiring party to purchase (directly) from the conspiracy. As a consequence, it has statutory standing to assert antitrust price injury and damages directly caused by the overall conspiracy. *See In re Processed Egg Products Antitrust Litigation*, 881 F.3d 262, 274 (3d Cir. 2018) ("... [H]ere the Purchasers are pressing claims against price-fixing suppliers from whom they directly purchased products that incorporate a price-fixed component ... The Purchasers were directly injured by wrongful conduct undertaken by their Suppliers."); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 542 (8th Cir. 2015) (holding "that indirect purchasers [have standing to] bring an antitrust [exclusive dealing] claim if they allege the direct [distributor] purchasers are 'party to the antitrust violation' and join the direct purchasers as [conspirator] defendants"); *Paper Systems Inc. v. Nippon Paper Industries Co., Ltd.*, 281 F.3d 629, 634 (7th Cir. 2002) (holding that customers who purchased [directly] from intermediary trading firms in vertical conspiracy with manufacturers of thermal facsimile paper products had standing to sue); *Lowell v. American Cynamid Co.*, 177 F.3d 1228, 1232 (11th Cir. 1999) (holding that farmers who purchased [directly] from dealers in vertical conspiracy with manufacturer of crop protection products had standing to sue); *Laumann v. National Hockey League*, 907 F. Supp. 2d 465, 481 (S.D.N.Y.

---

[9] Marion Complt. ¶ 1 (action on behalf of "direct purchasers ... from a conspiracy" including McKesson); ¶ 105 (class claims for direct purchasers from named co-conspirator McKesson); ¶¶ 110, 116 (antitrust price injury due to direct purchases from conspiracy through defendant McKesson); ¶ 112 (standing as direct purchases from defendant McKesson),

9

2013) ("purchaser[s] [directly] from the dealer who . . . has conspired illegally with the manufacturer" have standing to sue as direct purchasers) (citation omitted).

In any event, even if it were ultimately determined that the *Marion* class cannot bring claims as direct purchaser, Marion's complaint pleads in the alternative an indirect-purchaser class that asserts damage claims under the laws of states that do not apply the *Illinois Brick* rule. For these claims, the *Marion* class still differs from all the existing classes in two fundamental ways. *First*, it encompasses healthcare providers, who purchase a significant amount of generic drugs but are not included in any existing class and thus are unable to represent their interests under the existing MDL structure. *Second*, the *Marion* class seeks damages from McKesson as a co-conspirator, which no other class has done.

## IV. A New Track in No Way Prejudices Prosecution of Other Class Claims and Provides a Needed Path for *Marion* Counsel to Cooperate with Other Plaintiff Counsel

Creating a new track would not prejudice any pretrial preparation by counsel representing the Direct Purchaser, End Payor, and Indirect Reseller claims. Indeed, failure to create the track prejudices prosecution of the latter. The new track (and associated Plaintiff Steering Committee relief) provides a way for Lead Counsel in all tracks with divergent claims to confer on discovery and other pretrial issues in light of the uniqueness of *Marion's* class claims. By way of example, this Court has called a status conference for November 20, 2018. As matters now stand, *Marion* counsel will have no voice here on behalf of their unique federal claims here (or in the drafting of any requested agenda). Nor would they have a voice as to when motions to dismiss aimed at Direct Purchaser from Distributor Actions are to be scheduled in light of the Court's recent disposition of Group 1 motions to dismiss.

Further, as set out above, the state claims of the Indirect Reseller Plaintiffs are drastically different from those presented by the federal Marion claims. Shoehorning the latter into this private pharmacy track would unnecessarily complicate pretrial strategy.

This Court has indicated that it "has no hesitation in making structural adjustments as the needs of the MDL evolve." No. 16-md-2724 ECF 603 at 9. Accordingly, due to the unique nature of the *Marion* claims, Marion respectfully moves this Court to enter the attached proposed Pretrial Order (Third Electronic Case Management Protocol Order) to establish a new track addressing all Direct Purchaser from Distributor Actions.

V. **Consistently, Marion Also Seeks Establishment of a Plaintiff Steering Committee for Direct Purchaser from Distributor Actions and a Schedule for Consideration of Motions to Dismiss**

Consistent with this tracking relief, Marion also asks the Court to amend Pretrial Order 21 to create a new Plaintiff Steering Committee for all Direct Purchaser from Distributor Actions with Edith M. Kallas and the law firm of Whatley Kallas LLP as Lead Counsel and Liaison Counsel and *ex officio* member of the Committee. In addition Berry Law PLLC and other counsel prosecuting Direct Purchaser from Distributor Actions would be members of this Committee. The application of Edith M. Kallas and the Whatley Firm to serve as Lead and Liaison Counsel in this new track is attached as Appendix A.

In addition, Marion asks the Court to further amend Pretrial Order 46 (as amended by Pretrial Order 51) to adjourn and schedule the adjudication of any motions to dismiss aimed at Direct Purchaser from Distributor Actions in a new Group 4 to allow discovery addressed to these new claims whether or not these Actions are placed in a new track.

### VI. In the Alternative, Should the Court Not Be Inclined to Create a New Track, *Marion* Should Be Assigned to the Indirect Reseller Plaintiff Track and Its Counsel Given a Leadership Position with the Ability to Assert the Unique Claims of Their Unique Plaintiffs.

Should the Court not be inclined to create a new track for Direct Purchaser from Distributor Actions, Marion asks in the alternative that its and similar claims be placed in the Indirect Reseller Plaintiff track

To recognize the marked differences in the claims, however, Marion asks that its counsel Edith M. Kallas and Whatley Kallas LLP be named Co-Lead Counsel with responsibility for coordinating with the IRP Lead and Liaison counsel as to the pretrial prosecution of direct conspiracy claims against McKesson (and other distributors, if the evidence justifies it), and asserting all claims on behalf of healthcare providers, who are currently not part of the IRP track. In addition, Marion's counsel believes that the IRP and *Marion* complaints against an overarching conspiracy would serve as the lead complaints for these two differing parts of the IRP track and ask that *Marion* co-counsel R. Stephen Berry of Berry Law PLLC be placed on the IRP Steering Committee.

### CONCLUSION

For the foregoing reasons, Marion moves that a new track and new Plaintiff Steering Committee be created for all Direct Purchaser from Distributor Actions. In the alternative, Marion seeks to be placed in the IRP track with *Marion* counsel Edith M. Kallas and Whatley Kallas LLP be named Co-Lead Counsel with responsibility for asserting direct conspiracy claims against McKesson (and other distributors, if the evidence justifies it), and asserting all claims on behalf of healthcare providers.

Dated: October 23, 2018

/s/ R. Stephen Berry

**Berry Law PLLC**
R. Stephen Berry
1100 Connecticut Avenue, N.W.
Suite 645
Washington, D.C. 20006
Telephone: (202) 296-3020
Facsimile: (202) 296-3038
sberry@berrylawpllc.com

Respectfully submitted,

/s/ Henry C. Quillen

**Whatley Kallas LLP**
Joe R. Whatley, Jr.
Edith M. Kallas
1180 Avenue of the Americas, 20th Floor
New York, NY 10036
Telephone: (212) 447-7060
Facsimile: (800) 922-4851
jwhatley@whatleykallas.com
ekallas@whatleykallas.com

Henry C. Quillen
159 Middle St., Suite 2C
Portsmouth, NH 03801
Telephone: (603) 294-1591
Facsimile: (800) 922-4851
hquillen@whatleykallas.com

**Attorneys for Plaintiffs**