**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:** | **HON. CYNTHIA M. RUFE** |
| *ALL ACTIONS* | |

**ORDER**

The parties have filed several related discovery motions.  In ruling on these motions, the Court must ensure that discovery in the MDL proceeds in an orderly, proportional fashion in accordance with the Federal Rules of Civil Procedure with due regard for the mechanisms in state law for the conduct of continuing investigations by the state Attorneys General.

**A.      The Motions**

*1.      Certain Defendants' Motion to Enforce this Court's Procedural and Discovery Orders Against State Plaintiffs Connecticut and New York [MDL Doc. No. 593] ("Motion to Enforce")*

Defendants argue that State Plaintiffs (specifically, New York and Connecticut), are attempting to circumvent the Court's orders limiting discovery by issuing subpoenas (including subpoenas upon telephone carriers, including AT&T) through their investigatory authority, and sharing information with Private Plaintiffs through a "common interest agreement."  Defendants argue that the use of investigatory subpoenas by State Attorneys General means that Defendants do not receive notice or an opportunity to object to discovery, move to quash or seek protective orders, or receive the information from the subpoenas, in contravention of the Court' s pretrial orders and the Federal Rules of Civil Procedure.

Defendants also contend that the Connecticut Attorney General lacks authority under Connecticut law to issue subpoenas after filing suit.  Defendants acknowledge that the comparable New York statute does not distinguish between pre-filing and post-filing subpoenas but argue that it nevertheless would be unfair to allow the New York Attorney General to do so and to deprive Defendants of the notice and other protections in the Court's orders and the Federal Rules.

The Connecticut and New York Attorneys General respond that the motion "seeks to eviscerate the law enforcement prerogatives and investigative privileges of the sovereign states to continue to investigate serious antitrust violations once those States elect to institute *any* civil proceedings in federal court."[1]  State Plaintiffs argue that they continue to investigate additional antitrust violations will likely bring additional actions, and the Court's pretrial orders do not and cannot foreclose state investigations into other potential conspiracies.  State Plaintiffs assert that they will conduct discovery relating to the 15 drugs in the Amended Class Action Complaint through the MDL and have stated that they do not require documents relating "solely" to the 15 drugs in response to investigatory subpoenas.  However, State Plaintiffs represent that they are investigating collusion relating to nearly 200 additional drugs over different time periods and that much of the investigation does not address conduct currently under litigation in the MDL. The Connecticut Attorney General's office represents that it provided copies of investigative subpoenas to Private Plaintiffs in response to a Freedom of Information Act request, and that when Defendants filed a similar request, they received the same information.[2]  The New York Attorney General's office maintains that nothing prohibited it from sharing documents with

---

[1] State Plffs.' Conn. & N.Y. Opp. to Mot. to Enforce [MDL Doc. No. 600] at 1.

[2] *Id.* at 7 n.5.

Private Plaintiffs but that "after sharing the documents, New York requested, in an exercise of discretion, that Private Plaintiffs destroy the documents that Plaintiff State of New York had previously provided," which Private Plaintiffs did.[3]

Defendants match State Plaintiffs' rhetoric in the reply:  the motion "concerns foundational principles of the United States civil justice system: compliance with court orders, fundamental fairness, and due process."[4]  Defendants argue that the idea that State Plaintiffs will not use the investigatory subpoenas to compel production of documents that relate "solely" to the 15 drugs currently at issue is gamesmanship:  the investigatory subpoenas that have been issued seeking information concerning "any Generic drug" or "any pharmaceutical drug," and therefore do not relate "solely" to the 15 drugs, but clearly include them.  Defendants point out that the Consolidated Amended Complaint alleges an overarching conspiracy across the generic drug industry, and the documents therefore relate to the MDL.

> 2. *Private Plaintiffs' Motion for an Order Authorizing Access to (1) an Unredacted Version of the Plaintiff States' Consolidated Amended Complaint and (2) Certain Materials Obtained by the Plaintiff States [MDL Doc. No. 606] ("Motion for Access")*

The Court already has granted Private Plaintiffs' unopposed request for access to the unredacted version of the State Plaintiffs' Consolidated Amended Complaint.  Still at issue is access to perhaps millions of pages of documents obtained through the use of investigative subpoenas under Connecticut law, including evidence of communications, corporate structure, market reports, transaction data, and phone records obtained from telephone carriers through investigative subpoenas (collectively, the "AG Documents").   Private Plaintiffs "do not here

---

[3] *Id.* at 14 & n.16.

[4] Defs.' Reply [MDL Doc. No. 613] at 1.

seek access to telephone records secured by the State of New York."[5]   State Plaintiffs do not object to providing access to documents if the Court so orders.

Private Plaintiffs argue that the AG Documents directly bear on claims and defenses at issue across the entire MDL and argue that no Defendant whose documents and information were relied upon in the sealed State Plaintiffs' Complaint have filed an application to maintain that confidentiality, and that in any event, the information likely does not constitute a trade secret, which is why it would be entitled to protection under Connecticut law.

Defendants argue that allowing the State Attorneys General to continue issuing subpoenas, and allowing Private Plaintiffs access to current and future investigatory materials, will essentially mean that there can be no orders limiting the scope of discovery in the MDL, as the investigatory process will define that scope.  Defendants argue that granting such access would be fundamentally unfair, especially to Defendants who have not been sued by the State Attorneys General, and would be disproportionate to needs of the MDL, requiring Defendants to counter discovery that is not relevant to Private Plaintiffs' claims.  Defendants also argue that access would violate statutory confidentiality protections, and that the production of all investigative materials will make it extremely difficult for the Special Masters to work effectively.

### 3.    *Certain Defendants' Motion to Quash Private Plaintiffs' Subpoena to AT&T, Inc. [MDL Doc. No. 601] ("Motion to Quash")*

Defendants move for an order to quash a subpoena served by Private Plaintiffs upon non-party AT&T, Inc., which seeks telephone numbers and records for a number of current and former employees of Defendants.  Private Plaintiffs served Defendants with a

---

[5] Private Plffs.' Mot. for Access [MDL Doc. No. 606] at 8 n.13.

notice of the subpoena on March 29, 2018, pursuant to Federal Rule of Civil Procedure 45.  The subpoena referred to and relied upon a February 2018 subpoena served by the New York Attorney General on AT&T.  Defendants maintain that Private Plaintiffs would not have had the telephone numbers that form the basis of the AT&T subpoena if New York had not provided the information to Private Plaintiffs.  AT&T has not produced any documents pursuant to the Private Plaintiffs' subpoena pending resolution of the Motion to Quash.  Defendants argue that the MDL Court has authority to quash a subpoena even though compliance is directed to a different district, that the subpoena improperly seeks access to protected information, and that it is a fishing expedition that imposes an undue burden on the current and former employees of Defendants.

Private Plaintiffs argue that the Motion to Quash is untimely, as it was filed more than a month after the end of the compliance period for the subpoena; that Defendants lack standing to quash a subpoena directed to a non-party; and that Defendants have not shown that the subpoena seeks "protected information" or that it is "unduly burdensome" as required by Rule 45.

### B.      Federal Rule of Civil Procedure 45 and this Court's Orders

Federal Rule of Civil Procedure 45 requires that if a subpoena "commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."[6]  Furthermore, "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion,

---

[6] Fed. R. Civ. P. 45(a)(4).

quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information . . . ."[7]

The Court, with considerable input from all interested parties, has entered several Pretrial Orders [PTOs] to govern discovery in the MDL.  PTO 44, allowing targeted discovery to proceed, authorized the issuance of "[s]ubpoenas to non-parties (other than current or former employees of parties) calling for only the production of documents and/or data" subject to the follow provisions:

3.      The parties must not seek and must not respond to discovery about the criminal investigation that the Antitrust Division of the U.S. Department of Justice ("Department of Justice") is conducting into the generic pharmaceuticals industry;

4.      A person responding to a discovery request (*e.g.*, subpoena, request for production of documents, notice of deposition) ("Responding Person") must not disclose what documents or other information has been provided to the Department of Justice in the course of its criminal investigation into the generic pharmaceuticals industry, provided that nothing in this paragraph prohibits a Responding Person from providing documents or other information that previously had been provided to the Department of Justice so long as the production is made in a manner that does not indicate whether those documents or other information previously had been provided to the Department of Justice;

5.      Any party that sends a discovery request to a non-party must provide a copy of this Order to that non-party at the time such request is sent;

6.      Any party that sends a discovery request must provide a copy of such request to the Department of Justice at the time such request is sent;

7.      Any organization that designates a person to testify on its behalf at a deposition in response to a notice or subpoena sent under Federal Rule of Civil Procedure 30(b)(6) must notify the Department of Justice of the identity of its designee at least 7 days before the deposition occurs;

8.      Nothing in this Order precludes a party from communicating with another party or non-party during the limited stay established by this Order about additional discovery that may be sought if this Order is modified;

---

[7] Fed. R. Civ. P. 45(d)(3)(B).

9.      Nothing in this Order precludes a party or non-party from objecting to, moving to quash, or seeking a protective order excusing a response to any discovery request . . . .[8]

The key provisions of PTO 53, a Protective Order, provide:

1.8 <u>State Action Investigation Materials</u>: Non-privileged materials generated or disclosed either voluntarily or under compulsory process during and/or in connection with the State AGs' antitrust and consumer protection investigations of the generic pharmaceutical industry ("State AGs Investigation") that (a) were exchanged between any Plaintiff State in the State Action and any subpoena recipient in the State AGs Investigation, including any Defendant in the State Action and their affiliated person or entity, either voluntarily or under compulsory process during and/or in connection with the State AGs Investigation; or (b) were exchanged between any Plaintiff State in the State Action and any counsel for any subpoena recipient in the State AGs Investigation, including counsel for any Defendant in the State Action and their affiliated person or entity, either voluntarily or under compulsory process during and/or in connection with the State AGs Investigation.

To the extent produced in the Private Action and for purposes of the State Action, State Action Investigation Materials that are entitled to confidentiality under federal or state laws, regulation, or precedent concerning documents in the possession of any Plaintiff State in the State Action, and any information taken from any portion of such document, however that information is recorded or transmitted, may be treated as Protected Materials, as defined below.

.      .      .

## 12.      OTHER PROCEEDINGS

If, at any time, any CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Material in the possession, custody or control of any Party or person other than the Designating Party is subpoenaed or requested by any court, administrative agency, legislative body or other person or entity, before producing any CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Materials, the Party or person to whom the subpoena or request is directed shall provide prompt written notice to the original Designating Party.  Should the Designating Party oppose the request for production of such documents or materials, the Party or person to whom the subpoena or request is directed shall not take any position concerning the propriety of such request or subpoena or the discoverability of the information sought that is adverse to the Designating Party unless otherwise

---

[8] PTO 44 [MDL Doc. No. 560].  PTO 47 allowed certain additional discovery to proceed. [MDL Doc. No. 582].

ordered by a court of competent jurisdiction.  Other than the obligation to comply with these requirements, this Order is not intended to affect a Party's obligation to respond to such a subpoena or request.[9]

### C.      Relevant State Law

Under Connecticut law:

> Whenever the Attorney General, his or her deputy or any assistant attorney general designated by the Attorney General, has reason to believe that any person has violated any of the provisions of this chapter [pertaining to the antitrust laws], he or she may, prior to instituting any action or proceeding against such person, issue in writing and cause to be served upon any person, by subpoena duces tecum, a demand requiring such person to submit to him or her documentary material relevant to the scope of the alleged violation.[10]

The statute also provides that documents shall not be available for public disclosure, but that the Attorney General "shall cooperate with officials of the federal government and the several states, including but not limited to the sharing and disclosure of information and evidence obtained under the purview of this chapter."[11]

In *Brown and Brown, Inc. v. Blumenthal*, the Connecticut Supreme Court held that the state Attorney General "may not disclose the materials and information obtained from [the subject of an antitrust investigation] to persons outside of the [Attorney General's] office in connection with taking oral testimony in pursuance of an antitrust investigation."[12]  In addition, the court held that "if [the Attorney General] chooses to share such materials and information with other government officials pursuant to § 35-42(g), [the Attorney General] first must obtain agreement from those officials that they abide by the same confidential restrictions to which the

---

[9] PTO 53 at ¶¶ 1.7, 12 [MDL Doc. No. 697].

[10] Conn. Gen. Stat. § 35-42(a).

[11] Conn. Gen. Stat. § 35-42(g).

[12] 1 A.3d 21, 36 (Conn. 2010).

[Attorney General] is subject.  Finally, if the [Attorney General] decides to institute an antitrust action and needs to file investigatory materials in conjunction with the action, he should do so in accordance with the lodging procedures" in Connecticut law, which deal with lodging, or submitting under seal, documents, so that the "party from whom the material was obtained then will have an opportunity to file a motion, accompanied by an appropriate memorandum of law, seeking to file the materials under seal or to limit their disclosure."[13]  The Connecticut court rejected arguments that "the bar against sharing subpoenaed documents with third parties, who potentially may be direct competitors of the owner of the documents . . . will cripple [the Attorney General's] ability to investigate possible antitrust violations."[14]

New York law does not contain similar restrictions on the New York Attorney General's use of information; the New York statute provides in relevant part that "[t]he attorney general, his deputy, assistant, or other officer designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate, a court of record or a judge or justice thereof, and require the production of any books or papers which he deems relevant or material to the inquiry."  N.Y. Gen. Bus. Law § 343.

### D.      The Interests of the United States, as Intervenor

The United States, as Intervenor, takes no position on the motions, but seeks to "highlight areas where Private Plaintiffs' proposed order [on the Motion for Access] would depart from the approach set out in PTO 44, which embodies this Court's careful balancing of the need to protect the United States' ongoing criminal investigation with the interests of Plaintiffs and

---

[13] *Id.* at 36, 38 & n.25.

[14] *Id.* at 37.

Defendants."[15]  The United States wants to be sure that the AG Documents encompass only documents collected pursuant to the State Attorneys General's subpoenas and that State Plaintiffs do not provide access to the AG Documents "in a manner that indicates whether those documents previously had been provided to the Department of Justice."[16]

### E.    Analysis

Through the use of PTOs, the parties and the Court have begun the process of coordinating discovery in the MDL that takes account of the varying public and private interests at stake.  It is important to note that since the motions were filed, the Court has appointed a Special Master and a Special Discovery Master to oversee the conduct of discovery in the MDL. The Court anticipates that these appointments will facilitate significantly the ability of the parties to move discovery forward collaboratively.  As to the present motions, the Court will not prevent the State Attorneys General from continuing to investigate pursuant to the authority granted them under the relevant state laws, particularly with regard to the possibility of claims concerning additional drugs and additional parties.  However, this does not foreclose this Court's oversight of discovery in the MDL.

The Connecticut Attorney General represented that the office provided copies of investigative subpoenas to Private Plaintiffs and Defendants in response to Freedom of Information Act requests.[17]  If these documents are available through this mechanism, there is no apparent reason why the subpoenas that relate to current parties to the MDL cannot be served

---

[15] U.S. Statement on Access Mot. [Doc. No. 631] at 1 (footnote omitted).

[16] *Id.* at 3.

[17] State Plffs.' Conn. & N.Y. Opp. to Mot. to Enforce [MDL Doc. No. 600] at 7 n.5.

upon the parties to the MDL in accordance with Federal Rule of Civil Procedure 45 so that the rights of all parties are balanced and there is an opportunity for affected parties to object.

The Court also will grant Private Plaintiffs' Motion for Access but will do so in a way that protects the interests of parties and nonparties by requiring the State Attorneys General to comply with the applicable state law.  Specifically, the Court will require the Connecticut Attorney General to protect the confidentiality of documents under PTO 53 and to lodge the documents with this Court in accordance with Connecticut law as explained by the Connecticut Supreme Court in *Brown and Brown*.[18]  The Court will deny the Motion to Quash as Defendants have not shown it is improper, although the subpoena may be moot in light of the Court's ruling on the Motion for Access.[19]  These rulings will allow the MDL to move forward through a comprehensive approach to discovery.

**AND NOW**, this 14th day of November 2018, upon consideration of certain pending discovery motions and the responses and replies thereto, and after oral argument, it is hereby **ORDERED** that:

1. Defendant Perrigo's Motion for Joinder to Other Defendants' Opposition to the Motion to Enforce [MDL Doc. No. 645] is **GRANTED**.

2. Defendants' Motion to Enforce [MDL Doc. No. 593], and Private Plaintiffs' Motion for Access [MDL Doc. No. 606] are **GRANTED in part and DENIED in part** as follows:

   a. The Motion to Enforce is **DENIED** to the extent it seeks to bar State Plaintiffs from continuing to exercise their investigatory authority under state law as such investigation relates to nonparties to the MDL.

   b. State Plaintiffs shall disclose to Private Plaintiffs and Defendants all investigatory subpoenas served on or after the date of the filing of the initial State Complaint and

---

[18] *Brown and Brown*, 1 A.3d at 38-39, discussed above.

[19] The Court agrees with Private Plaintiffs that the Motion to Quash was untimely but does not deny the Motion on that basis.

shall disclose in writing whether documents or other information has been produced in response to such subpoenas.

c.  The parties shall develop a comprehensive coordinated plan as to disclosure of any AG Documents. Any AG Documents to be disclosed must be lodged with this Court in compliance with Connecticut law.  The specifics for this procedure will be addressed by the Special Master and Special Discovery Master with full cooperation of the parties.

d.  In addition to the compliance with Connecticut law, any nonparties to the MDL, Private Plaintiffs or State Plaintiffs must provide notifications required by Paragraph 12 of PTO 53.  Such notifications shall be sent by overnight mail to each nonparty's last known address and by email, where known.  The notifications shall advise the nonparty that unless State Plaintiffs receive an objection within 30 days, the documents will be made available to Private Plaintiffs subject to the restrictions on Discovery Material, including the limitation that such Discovery Material may be used solely for purposes of prosecuting, defending, or attempting to settle the MDL. If a nonparty timely objects, Private Plaintiffs shall not have access to the objecting nonparty's AG Documents until further order of the Court.  All AG Documents in the possession of the Connecticut Attorney General's Office must be lodged with this Court under the procedures delineated by the Connecticut Supreme Court.  The Special Master and Special Discovery Master shall facilitate the phased production of such documents.

e.  All AG Documents are deemed to be Discovery Material and shall be treated as Highly Confidential or Outside Counsel Eyes Only information pending further order of the Court upon recommendation of the Special Master and Special Discovery Master.

f.  No AG Documents shall be produced in a manner that discloses whether the documents were provided to the Department of Justice.  The method for such production shall be developed by the parties and the United States with the assistance of the Special Master and Special Discovery Master, including the determination as to how the costs of such production shall be allocated.

g.  The State Plaintiffs shall not provide access to any correspondence with, or subpoenas or other process issued by, the Department of Justice.

3.  Defendants' Motion to Quash [MDL Doc. No. 601] is **DENIED**.

It is so **ORDERED.**

**BY THE COURT:**

**/s/ Cynthia M. Rufe**
_____
**CYNTHIA M. RUFE, J.**