IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**END-PAYER PLAINTIFFS' AND DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE REPORT AND RECOMMENDATION OF SPECIAL MASTER DAVID MARION REGARDING APPOINTMENT OF LIAISON COUNSEL FOR DIRECT ACTION PLAINTIFFS**

End-Payer Plaintiffs ("EPPs") and Direct Purchaser Plaintiffs ("DPPs") submit this Memorandum in Support of the April 17, 2019 Report and Recommendation ("R&R") of Special Master David Marion Regarding Appointment of Liaison Counsel for Direct Action Plaintiffs ("DAPs"). The R&R is attached as Exhibit A hereto.

EPPs and DPPs respectfully submit that Special Master Marion's recommended Order, which is identical in substance to Pretrial Orders Nos. 3 and 22 (MDL Dkt. Nos. 37 and 343) entered by this Court to govern Liaison Counsel for Defendants, should be adopted by the Court to govern Liaison Counsel for DAPs. As the Court knows, for the past three years, the lawyers on the respective sides of this case have worked cooperatively with one another in accordance with the terms established by the Court in its Orders. There is no need to vary from that model now, or to grant special treatment to any particular plaintiff.

United HealthCare Services, Inc. ("United") and Humana, Inc. ("Humana") object to the R&R, largely focusing on Special Master Marion's decision not to incorporate their so-called "cooperation clause" into his recommended DAP Liaison Counsel Order. In support, they

complain that Lead and Liaison Counsel have not been sufficiently cooperative with them. But their complaints are belied by several important facts omitted from their briefs. First, EPP Lead Counsel sent United a proposed Common Interest Agreement on April 10, 2019 – more than two weeks *before* United filed its brief. *See* Exhibit B hereto (transmittal e-mail; confidential attachment omitted). United signed that agreement on May 1, 2019. The Common Interest Agreement, along with similar ones between and among other plaintiff groups, will allow United to obtain access to otherwise privileged and/or work-product protected documents and communications where necessary to coordinate discovery, briefing and scheduling, and it will help to avoid unnecessary duplication and burden on the constituent plaintiff groups, as well as Defendants, the Special Masters and the Court. In other words, such agreements have been, and will continue to be, sufficient to fulfill the Court's expectation that Lead and Liaison Counsel will coordinate and cooperate with other plaintiff groups.[1]

Second, EPP and DPP Lead Counsel have been working with counsel for Humana where appropriate, *e.g.*, on matters such as scheduling and briefing Defendants' motions to dismiss. Considering that neither United nor Humana has yet survived a motion to dismiss or served any discovery requests, it is hard to know what more cooperation would have been useful or appropriate. Humana complains that Plaintiffs have "unbeknownst to Humana, engaged in

---

[1] It is regrettable that United chose not to mention the Common Interest Agreement in its brief, much of which is devoted to complaining about the absence of cooperation. It is equally regrettable that United chose to share its version of confidential settlement discussions in a public filing. In any event, for an accurate description of the discussions between EPP Lead Counsel and United's counsel, *see* the April 2, 2019 letter from EPP Lead Counsel to United's counsel (Exhibit B to United Memo.). As that letter makes clear, EPP Lead Counsel did *not* condition future cooperation on an agreed fee arrangement with United. As a courtesy and in an attempt to find common ground, shortly after United entered the case, EPP Lead Counsel informed counsel for United and Humana that EPP Lead Counsel intended to seek entry of an order that would allow them to seek attorneys' fees at a later time from entities, like United and Humana, who opt out of the classes but nevertheless reap the benefit of Class Counsel's work. Unfortunately, no common ground was found.

certain discovery, motion practice, and proceedings before the Special Masters." Humana Memo. at 4. But because Humana has not participated in any of the discovery or motions at issue, it is unclear why anyone would have needed to consult Humana about such matters.

Special Master Marion acted within his discretion in declining to include in his recommended Order the "cooperation clause" proposed by United and Humana. That clause would, among other things, "*order[] all plaintiffs' counsel*" to confer and attempt to agree on all discovery matters. In explaining the clause, United notes that it believes *all* plaintiffs should vet and approve written discovery requests before they are issued; *all* plaintiffs should participate in meet-and-confers; and *all* plaintiffs should work collaboratively to prepare for and take depositions. United Memo. at 4-5.

While this proposed language might seem innocuous, in reality it would vastly complicate the plaintiffs' side of this case. Instead of single points of contact among the various constituencies (Lead or Liaison Counsel for DPPs, EPPs, IRPs, States and DAPs), with each Lead and Liaison Counsel canvassing and coordinating the views of its constituent members, the *direct* involvement of counsel for *every plaintiff* would be required *by Court Order*. Removing the important canvassing-and-coordinating function of Liaison Counsel – and ordering that every plaintiff must be directly involved in every discovery decision – would make coordination more difficult, remove the element of flexibility that is important in such a large case, and increase the difficulty in responding quickly and nimbly to the Court, the Special Masters and Defendants. If all plaintiffs must be included in every discovery matter, it would beg the question why have Liaison Counsel at all, as one important purpose of appointing Liaison Counsel is to simplify and

streamline decision-making by coordinating the views of various constituencies.[2]  Moreover, while presently there are only a handful of Direct Action Plaintiffs, more could come along later. Requiring individual consultation with every late-arriving plaintiff on every discovery request and dispute would make the effective and efficient handling of this already complicated MDL virtually impossible. Even worse, it could turn every disagreement by a plaintiff with the decision-making process employed by Lead or Liaison Counsel or their designees into an alleged violation of a Court Order.

United's and Humana's proposed "cooperation clause" is taken from an Order that was entered 10 years ago in the *Urethane Antitrust Litigation*, which involved a single opt-out group and a single class of Plaintiffs in the District of Kansas.  Unlike here, the Order in *Urethane* was agreed to by both plaintiff groups, and there was no pre-existing set of relevant Orders.  Here, all parties except the two late-arriving DAPs agree that the leadership Orders this Court has entered over the past three years are working well and that the DAP Liaison Order should conform to those Orders and fold DAPs into the already existing structure.  Lead and Liaison Counsel have managed and coordinated their constituencies well, without the need for Court supervision or intervention in intramural matters.  There is no need to alter that dynamic.

Finally, United complains that Class Counsel are trying to "exclude United and Humana." United Memo. at 4.  Actually, United and Humana have excluded themselves.  They have decided to litigate on their own, outside of the classes.  They are, of course, free to do that, but having done so, they should litigate their cases.  When United and Humana are prepared to begin discovery, the other plaintiffs will coordinate with them, just as they have with each other

---

[2] Significantly, the cooperation provision proposed by United and Humana would not impose any parallel coordination requirement on Defendants.  Under United's and Humana's proposal, only plaintiffs would be required by Court Order to coordinate with every party on every discovery matter.

throughout this case. But the Class and State Plaintiffs should not have to delay their cases while United and Humana catch up, or confer and attempt to reach agreement with United and Humana (and all future DAPs) on every discovery request, meet-and-confer and other discovery issue that arises.[3] Coordination should be between and among the Lead and Liaison Counsel (and their designees) appointed by the Court, with input provided to each Lead and Liaison Counsel by the constituent plaintiffs in its respective group.

For the past three years, Lead and Liaison Counsel, and the other EPP and DPP Counsel, as well as counsel for the States, the IRPs and Kroger DAPs, have cooperated and successfully coordinated the many moving pieces in this MDL. Discovery activities have been coordinated, and duplication has been avoided – all without Orders dictating that every single plaintiff has to be involved in every decision. The case management Orders previously entered by the Court are serving the Court and parties well. Special Master Marion correctly recognized that the DAP Liaison Order should take the same approach.

For the reasons set forth above, EPPs and DPPs respectfully request that Special Master Marion's April 17, 2019 Report and Recommendation be adopted by this Court.

---

[3] United and Humana intimate that somehow Class Counsel should have been coordinating with them all along on discovery requests that were served long before either of them even filed a complaint and in which they have not joined. United Memo. at 5; Humana Memo. at 4. Indeed it was not until April 26, 2019, that United even entered into a Stipulation with Defendants for the acceptance of service of its complaint. MDL Dkt. 969. It would have been unusual (and perhaps objectionable) to, *e.g.*, include United and Humana in meet-and-confers on discovery requests they did not serve and have not adopted.

| Dated:  May 3, 2019 | Respectfully submitted, |
|---|---|
| */s/ Roberta D. Liebenberg* | */s/ Dianne M. Nast* |
| Roberta D. Liebenberg | Dianne M. Nast |
| FINE, KAPLAN AND BLACK, R.P.C. | NAST LAW LLC |
| One South Broad Street, 23rd floor | 1101 Market Street, Suite 2801 |
| Philadelphia, PA 19107 | Philadelphia, PA 19107 |
| Tel:  (215) 567-6565 | Tel:  (215) 923-9300 |
| Fax: (215) 568-5872 | Fax:  (215) 923-9302 |
| rliebenberg@finekaplan.com | dnast@nastlaw.com |
| *Co-Lead Counsel for the End-Payer Plaintiffs* | *Co-Lead Counsel for the Direct-Purchaser Plaintiffs* |

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 3, 2019 I caused the foregoing document to be filed electronically with the Clerk of Court by using the CM/ECF system which will serve a copy on all interested parties registered for electronic filing and is available for viewing and downloading from the ECF system.

                                                  */s/ Roberta D. Liebenberg*
                                                  Roberta D. Liebenberg