IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>Case No. 16-md-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*The Kroger Co., et al v. Actavis Holdco U.S. Inc., et al*, No: 2:18-cv-00284 (CMR) | HON. CYNTHIA M. RUFE |

## KROGER DAPS' OPPOSITION TO DPPS' MOTION FOR A SET-ASIDE

The day before filing their motion for a set-aside, lead counsel for both the End-Payer Plaintiffs ("EPPs") and the Direct Purchaser Plaintiffs ("DPPs") conferred separately with counsel for the Kroger DAPs. On those calls, lead counsel for both classes informed counsel for the Kroger DAPs that, although they were planning to file a set-aside motion, the motion would not apply to the Kroger DAPs.[1] The next day, the EPPs and DPPs filed a motion that applied to the Kroger DAPs.

The EPPs have since confirmed that their motion is not intended and does not apply to the Kroger DAPs, who are not members of the putative EPP class.

However, the DPPs now ask the Court to require the Kroger DAPs to set-aside 10% of any settlements or judgments that they receive to pay DPP counsel for work that supposedly benefitted the Kroger DAPs. Their motion is ill-addressed, misguided, and without merit and should be denied.

This MDL grew out of multi-year governmental investigations by Congress, the Department of Justice, and the State AGs – not the DPPs. The DPPs are now trying to appropriate

---

[1] If necessary, we will file under seal e-mails and other documents that support this and other factual statements about the Kroger DAPs set forth in this Opposition.

the fruits of those years of public effort for themselves by claiming at an early stage of this MDL a private financial stake in the claims asserted by any plaintiffs that elect to retain their own counsel and pursue those claims on a direct action basis.

The Kroger DAPs want to work cooperatively with the other plaintiffs' counsel, because all of us benefit from a plaintiffs' group that works collaboratively and efficiently together.[2] We have every incentive to work together to advance the Plaintiffs' common interest because "many hands make light work." In marked contrast, the DPPs are leveraging work performed by others in order to try to extract economic concessions from other parties,[3] thus undermining the joint prosecution of the case and the public purpose it is supposed to advance. From any perspective, their conduct turns the public purpose embodied in Rule 23 on its head.

For the reasons explained below, the set aside motion is misguided as to all plaintiffs in this MDL – including the named class representatives that retained DPPs' lead counsel, who would be adversely affected by the inefficiencies of the fractured plaintiffs' working group that any set-aside order would effect. As to the Kroger DAPs – who, as this Court knows, have been actively litigating their case for more than 16 months in a joint prosecution agreement with the EPPs and DPPs, as well as the State AGs and IRPs – the DPPs' set-aside request ventures into absurdity.

The Court should deny the set-aside motion for the following reasons:

---

[2] This is how an MDL case should proceed, with parties with common interests on the same side of the "v" coordinating and working together to minimize duplication and maximize efficiency, which benefits the Court and the litigants. These cases are not easy. They typically involve (as does this one) an enormous volume of documents and data, a great many depositions, and extensive motions practice on substantive issues. There is simply too much important work to be done to be distracted by motions unrelated to the merits of the case that are borne of self-interest at the expense of others in the case.

[3] By the DPPs' logic, they should set aside a portion of any recovery and provide it to the State AGs, whose work in this case will provide the DPPs with a roadmap to discovery.

**First**, the legal precedent governing set-aside orders clearly establishes that it is inappropriate for a court to order a DAP to contribute to a common fund in which that DAP has been actively contributing to a case. As this Court knows, the Kroger DAPs' counsel have been actively participating and contributing to the prosecution of this case since January 2018.[4] The "common benefit" doctrine was created to ensure that free riders pay their fair share of costs when they benefit from litigation. However, a party is not a free rider when it actively contributes to a case, and a set-aside order should not apply as to that party. The Court should decline the invitation to get into the business of comparing hours or any other metric to determine the relative contributions of various plaintiff groups that are all actively contributing to the prosecution of this litigation.

**Second**, there is no legal justification for the Court to grant a set-aside motion in this case. In bringing the motion, the DPPs rely on orders in *mass tort cases* that present different case management challenges than *antitrust class actions*. While set-aside orders may be warranted in the mass tort context (in which court-designated counsel may have no other mechanism to recover fees for the thousands of cases that benefit from their work), they are not necessary in early-stage antitrust class actions in which Class Counsel can recover fees from class settlements via Rule 23.

**Third**, the Court should deny the motion because it will wreak havoc on the efficient administration of this MDL. If the Court enters a set-aside order at this early juncture, then all DAPs will be wary of allowing a claimed "common benefit" to inure to them from the work of DPP counsel, meaning that all parties will duplicate work to try to build a record that one conferred or did not confer a benefit on the other. Plainly, the better outcome for this Court and the efficient

---

[4] Before then, the Court had issued a stay of fact discovery, so the case activity primarily involved organization of case leadership and a briefing on motions to dismiss.

administration of this MDL is to reject the set-aside motion to promote the parties' incentives to work together.

For all of these reasons, the Kroger DAPs respectfully request that the Court deny the DPPs' motion with prejudice.

I.   **FACTUAL BACKGROUND**

The DPPs' recitation of the factual background of this case is striking for its omissions.

The DPPs fail to note – not one word – that the Kroger DAPs have actively participated in this case since January 2018, drafting and substantively editing briefs, preparing a discovery plan for the case, strategizing with the State AGs and Classes' counsel regarding numerous issues, attending dozens of hearings before the Court and Special Masters, leading discussions during dozens of meet and confers with Defendants, and coordinating with Class Counsel to achieve benefits for all of the Plaintiffs. The DPPs also downplay the substantial contributions of both the States and the IRPs in moving this MDL forward. Most egregiously, the DPPs fail to acknowledge the substantial amount of time and resources that the Court itself has expended shepherding this massive case along.

Moreover, the Kroger DAPs put in substantial resources investigating their case before filing their claims in this MDL.[5] Indeed, more than half of the drugs identified in the Kroger DAPs' Complaint as subject to collusion were *not* the subject of any class actions filed by the DPPs. Further, the Kroger DAPs investigated their own theory of liability and asserted an overarching conspiracy *before* the DPPs filed their own overarching conspiracy complaint five

---

[5]   We do not intend to put at issue our attorney work product, but instead merely seek to note the fact of this work.

months later. Notably, the Kroger DAPs' theory of liability was the one adopted by United when it filed its own lawsuit in January 2019.[6]

In other words, the Kroger DAPs have made a large number of important contributions to this MDL from which all Plaintiffs – including the DPPs – have and will continue to benefit.

The Kroger DAPs entered this case at a *very early* stage – during a period when all discovery was stayed and prior to the service of any discovery on Defendants, prior to the negotiation of an ESI Protocol, prior to the global discovery disputes, prior to the motion for access to the States' documents, prior to time-consuming individual negotiations with thirty-plus Defendants regarding their discovery responses, and prior to the service of subpoenas on individual employees. As to all of these case events, the Kroger DAPs actively participated.

The DPPs assert that (some hypothetical) DAP might be able to: (i) defeat motions to dismiss principally relying on the opinions that resulted from their work; (ii) obtain access to AG documents and documents from Defendants, employees, and trade associations, simply by asking for them and relying on favorable rulings obtained by DPP Counsel; and (iii) use documents and records across all cases because of the DPPs' success in opposing Defendants' efforts to silo discovery. *See* Set Aside Mem. at 9. The DPPs do not own this Court's rulings, they do not own this case, and they overstate their contribution and underestimate the role of other parties in these case events. In any event, the Kroger DAPs are a far cry from this hypothetical free-riding DAP. The Kroger DAPs have been in the middle of the huddle from the beginning, actively participating to drive this MDL forward. It is unfortunate that, after working well together since January 2018,

---

[6] *Compare* Complaint in *The Kroger Co. et al., v. Actavis Holdco U.S., Inc., et al.*, No. 18-cv-284, Dkt. No. 1, with *United Healthcare Services, Inc., et al., v. Actavis Holdco U.S., Inc.*, No. 19-cv-121, Dkt. No. 1.

the DPPs choose to downplay the States', the IRPs' and the Kroger DAPs' substantial contributions to this MDL.

Even more galling is the fact that the DPPs seek to claim fees for work conducted by other Plaintiff groups in this MDL, including the Kroger DAPs. In the eight months between the time the Court appointed the DPPs' Steering Committee and when the Kroger DAPs filed their Complaint, the DPPs cannot point to a single piece of "common benefit work" that they performed on their own that purports to benefit the Kroger DAPs.[7] Prior to January 2018 – when the Kroger DAPs filed their Complaint – the DPPs were devoted almost exclusively to addressing administrative issues that do not affect the Kroger DAPs. For example, the protocols governing the duties and authorities of DPPs' lead counsel and how *class* counsel record their time have no impact whatsoever on the Kroger DAPs. *See* Dkt. Nos. 381 & 507. And the DPPs' efforts to structure the Court's Electronic Case Management protocol, Dkt. No. 353, only served to create ammunition for Defendants to oppose the ability of plaintiffs such as the Kroger DAPs and the State AGs to assert overarching conspiracy claims involving multiple drugs.[8]

Moreover, once the Kroger DAPs filed suit, we did not sit idly by. We actively contributed to the "common benefit" work described in the DPPs' Memorandum. Shortly after filing suit in January 2018, we sought to become DAP Liaison counsel because we anticipated the need, as a well-organized and efficiently managed MDL case is in all parties' interests, including our clients.

---

[7] For example, the IRPs and EPPs submitted their own oppositions to Defendants' Group 1 Motions to Dismiss. Based on the Court's ruling, if only the IRPs had submitted an opposition to the Group 1 Motions, then the Kroger DAPs would still have obtained the same "benefit." *See generally In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018) (ruling on arguments of *all* Group 1 Class Plaintiffs).

[8] *See, e.g.,* Defendants' Opposition to State AGs' Motion to Amend, Dkt. No. 542, 24–30 (arguing that the then-existing electronic case management structure required that the States pursue their claims on a drug-by-drug basis).

We entered into common interest agreements with the Classes and the States so we could begin working together cooperatively. We issued our own discovery in May 2018, shortly after the Classes issued discovery. After meeting and conferring with Defendants' Liaison counsel, we agreed to withdraw our requests as long as Defendants agreed that we would be deemed as signatories to the discovery served by the Classes and the States.

We then coordinated with EPP Counsel to participate on both the global-level meet and confers and individual meet and confers. Our firm took ownership of dozens of Requests for Production ("RFPs"), and led discussions on those RFPs in many individual meet and confers. For more than one year, we have worked cooperatively with the States, the DPPs, the EPPs, and the IRPs in hundreds of meet and confers with Defendants related to the RFPs, document custodians search terms, and search methodologies. When the global-level meet and confers came to an impasse, we principally authored a brief in opposition to Defendants' motions to silo discovery, and we substantively edited dozens of others. We worked with the States, the DPPs, the EPPs, and the IRPs in preparing for the argument before the Special Master in December 2018 on issues related to the global RFP definitions. On January 8, 2019, the Special Discovery Master issued a recommended resolution of these issues.

As DPPs note, many Defendants have claimed a lack of possession, custody or control over key discovery materials. We have actively participated with the States, EPPs, DPPs, and IRPs in serving subpoenas on individual employees, meeting and conferring with counsel for the individual employees, and researching novel issues related to cell phones, social media profiles, and the Fifth Amendment.

We worked with the States, the DPPs, the EPPs, and the IRPs to achieve a substantial victory in obtaining access to documents that the States gathered as part of their investigation.

Leveraging the expertise of our firm's former government lawyers, we actively contributed to briefing this issue and helping other lawyers prepare for the argument.[9]  We conducted research and offered important and material revisions to the initial and reply brief.  We strategized with other lawyers from the DPPs, EPPs, States, and IRPs to determine whether a Kroger-specific supplement was warranted.  On November 14, 2018, the Court granted this motion.  Dkt. No. 758.

We have actively contributed to negotiating the many detailed protocols that form the backbone of this complex MDL.  We worked with the EPPs, DPPs, States, and the IRPs in meeting and conferring to amend the Protective Order to add new provisions.  Dkt. No. 697.  We actively participated in negotiating the ESI protocol (Dkt. No. 583), and we helped draft briefs relating to several discrete issues that the parties were unable to agree on related to the ESI Protocol.  Moreover, we have recently worked with the States, the EPPs, the DPPs, the IRPs, and Humana in drafting the many oppositions to the Defendants' motions to dismiss.

The above are just examples of our numerous contributions.[10]  We also continue to investigate new drugs and additional co-conspirators independently.

## II. THE REQUESTED SET-ASIDE ORDER IS UNNECESSARY AND INAPPROPRIATE

### A. The Motion Should Be Denied Against the Kroger DAPs Who Are Active Participants and Not Free Riders

Courts do not order actively participating DAPs to set-aside funds from their settlements with Defendants.  The Supreme Court created the common benefit doctrine over 100 years ago to

---

[9] We would prefer to make these arguments to the Court and Masters ourselves.  However, we recognize that coordination is key in a MDL, and we give way to others at times to further the common interest and greater good of the plaintiffs' position.

[10] For the DPPs to seek a set-aside against the Kroger DAPs on *this* record exposes their true motive to act out of self-interest regardless of the merits or the impact of their position on the Court and the need for efficient coordination in this MDL.  Indeed, the ultimate beneficiaries of the DPPs' proposed order – other than DPPs' counsel – will be the Defendants.

"avoid the problem of free-riding." *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006) ("The doctrine rests on the perception that persons who obtain a benefit of a lawsuit *without contributing* to its cost are unjustly enriched at the successful litigant's expense.") (citation omitted and emphasis added).

When counsel for a DAP is actively contributing to the case (and not free-riding), a motion for a set-aside order should be denied summarily. *See In re Air Crash at Florida Everglades*, 549 F.2d 1006, 1019 (5th Cir. 1977) ("One who hires and pays his own lawyer is not a free rider if the attorney is a contributor to the final results. The district judge recognized this by excluding from the 8% contributions attorneys who continued to be active."); *In re TFT-LCD Flat Panel Antitrust Litig.*, No 07-md-1827, Dkt. No. 2696 at 17, 28 (N.D. Cal. Apr. 30, 2011) (denying set-aside motion orally as to DAPs who had been litigating for 18 months and four years, respectively). *See also In re Lidoderm Antitrust Litigation*, No. 14-md-02521, 2017 WL 3478810, at *2 n.1 (N.D. Cal. Aug. 14, 2017) (GEHA, a direct action plaintiff, was "actively litigating this case since its inception," and EPPs agreed to waive any right to an award of fees and costs "associated" with GEHA's claim in the case).

The free rider problem most often occurs when DAPs opt out of a proposed class action settlement *after* a class has been certified and discovery is nearly done. *See, e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 662-63 (E.D. Pa. 2003) ("This is the *rare* antitrust case in which major entities and their counsel awaited the development of the case by designated counsel and only filed suit on the eve of the conclusion of discovery.") (italics added). Indeed, in *Linerboard*, a number of DAPs opted out of the class almost two years after it was certified by the District Court, and after the Third Circuit affirmed the District Court's certification order.

9

Generally speaking, plaintiffs who opt out of a class at such a late date may not have a problem with the case management of the class action or even with the terms of the proposed settlement. Rather, they may opt out to persuade antitrust defendants to settle with them on the same terms as defendants settled with the class without bearing their fair share of attorneys' fees and costs. However, the free rider problem is noticeably absent when, as here with the Kroger DAPs, a putative class member pursues its own claim individually from the outset of the case. In such cases, like this one, parallel class actions and direct actions are pursued together, and class counsel and direct action counsel each benefit from the efforts of the other.

Indeed, the *Linerboard* set-aside order was expressly limited temporally; Judge DuBois' Order applied only to those DAPs that "filed after January 1, 2003, by former class members who opted out of the classes certified by the Court" on September 4, 2001. This was approximately five years after the class case was filed, three years after the Court ruled on motions to dismiss after the Third Circuit had affirmed the District Court's class certification order, and on the eve of the close of fact discovery. *Linerboard*, 292 F. Supp. 2d at 668.

Given the Kroger DAPs' active participation in and substantial contributions to this MDL, the Court should deny the Motion with prejudice as to the Kroger DAPs.

### B. The Court Should Deny the Set-Aside Motion Because Such Orders Are Highly Uncommon in Antitrust Cases

The Court should deny the set-aside order based on the law.

In moving for entry of a "set-aside" order in this antitrust class action, the DPPs primarily rely on mass tort cases in which many hundreds or even thousands of **individual** cases are consolidated for pretrial purposes. *See* Class Mem. at 10–13.[11] Those cases present special

---

[11] *In re Avandia Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 1871, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012) (MDL in which **thousands** of individuals cases were consolidated before this Court for coordinated pretrial proceedings directed by steering

10

problems because there is no statutory fee-shifting mechanism, and because the cases typically involve management of large numbers of claims asserted by individual plaintiffs that did not retain the lead counsel.  Absent a set-aside order, lead counsel in these mass tort cases would not have a mechanism to recover fees and costs for the efforts they expend on behalf of all plaintiffs.

This concern does not apply to antitrust MDLs, in which there is no need for a prophylactic set-aside order such as the one requested by the DPPs.  This is because in antitrust actions, the Clayton Act expressly allows for DPPs' counsel to recover "the cost of suit, including a reasonable attorney's fee," *regardless* of whether a class is ever certified.  15 U.S.C. § 15(a).  Additionally, Rule 23(h) expressly allows courts to award reasonable attorneys fees' and costs in the event of a favorable resolution of the case.  Committee Notes to Fed. R. Civ. P. 23(h) ("This subdivision authorizes an award of 'reasonable' attorney fees and nontaxable costs.  This is the customary term for measurement of fee awards under the 'common fund' theory that applies in many class actions used in many fee-shifting statutes.").  The DPPs offer no basis for the Court to conclude, particularly at this early stage of the litigation, that the normal procedure for seeking attorneys' fees in an antitrust class action such as this one will not adequately compensate the DPPs.

Other antitrust MDLs to consider the question have denied motions to "set-aside" funds, noting that while "set-asides" make sense in the mass tort MDLs, they do not make sense in

---

committee); *In re Zyprexa Prods. Liab. Litig.*, 467 F.Supp.2d 256, 265-66 (E.D.N.Y. 2006) (**thousands** of individual lawsuits for personal injury related to bipolar drug consolidated before MDL panel); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 05-CV-01699, 2006 WL 471782, at *1 (N.D. Cal. Feb. 28, 2006) (MDL proceeding in which **over 3000** plaintiffs' cases were coordinated for pretrial proceedings and court created plaintiff steering committee to direct pretrial proceedings); *In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*, No. 1:01-01387, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002) (hundreds of cases related to defective medical device coordinated for pretrial proceedings); *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 2002 WL 441342, at *2 (S.D.N.Y. Mar. 20, 2002) (hundreds of individual lawsuits related to diabetes drug coordinated for pretrial proceedings).

antitrust class actions. For example, *In re TFT-LCD Flat Panel Antitrust Litig.*, No 07-md-1827, Dkt. No. 2696 at 13 (N.D. Cal. Apr. 30, 2011), Judge Illston explained that the use of set-aside orders "makes a lot more sense" in mass tort cases in which there are a large number of individual cases and designated lead counsel. *Id.* at 13. Another court overseeing an antitrust MDL also denied a motion for a set-aside. In *In re Capacitors Antitrust Litig.*, No. 14-cv-3264, Dkt. No. 922 at 30 (N.D. Cal. Oct. 7, 2015), Judge Donato summarily denied a motion for set-aside as to a DAP who had been litigating in the case for months: "I'm very disinclined to order fee shifting at this point. I think it's just too early in the case, and there's no justification for it. I understand how you feel about it. **I just don't see a legal basis for doing it**." (emphasis added).[12]

We are unaware of any precedent that supports the issuance of a set-aside order at this early juncture of a case, prior to class counsel demonstrating that they will not be adequately compensated via the normal procedure of Rule 23(h). In those rare instances in which Courts entered set-aside orders, the cases have been significantly advanced, classes have been certified and sustained on appeal, settlements have occurred, and the majority of all discovery has been taken. *See Linerboard*, 292 F. Supp. 2d at 663 (distinguishing Illinois appellate court's rejection of set-aside motion, because "the opt outs, through counsel, were actively engaged in the cases from the outset. 'Their counsel participated in the early stages of litigation and obtained a settlement on behalf of their clients before the class action had resulted in a judgment or settlement.'") (quoting *In re Chicago Flood Litigation*, 682 N.E.2d 421, 427–28 (1997)). *See also In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 3478810, at *2 n.1 (N.D. Cal. Aug.

---

[12] The DPPs' motion also impermissibly and arguably unconstitutionally impairs a party's Fifth Amendment right to opt out of a class action as set forth in Fed. R. Civ. P. 23 because doing so would expose a putative class member to the DPPs' proposed set-aside. On this point, we incorporate by reference the arguments in Humana's and United's Opposition.

14, 2017) (EPP Class Counsel waived any right to an award of fees and costs associated with an opt out who had been actively litigating since early in the case).

  C. **The Set-Aside Motion Should Be Denied Because it Would Prevent the Efficient Administration of the MDL**

The Court should deny the set-aside motion because granting such a motion, at this early stage of the case, will wreak havoc on the efficient coordination that has occurred among the Plaintiffs so far and cause other prudential issues that will burden this MDL. Consider four points:

**First**, if the Court grants the motion, all DAPs will be wary of allowing any "common benefit" from DPPs' work to inure to them out of concern that they will have to compensate DPPs at a time later in the litigation. Granting the motion will cause duplication of work on the Plaintiffs' side of the case, and it will discourage DAPs from working with the DPPs or even with each other. For example, in order to build a record to ensure that they cannot be accused of "free-riding" going forward, each DAP will be incentivized to conduct its own discovery, file its own briefs even when doing so duplicates arguments asserted by other Plaintiffs, and otherwise litigate its case independently without coordinating, relying on, or strategizing with the other Plaintiffs. The Court should not sanction a framework that disincentivizes cooperation.[13]

---

[13] The current dispute regarding DAP Liaison Counsel is a practical example of how this disincentive towards cooperation is already playing out due to DPPs' request for a set aside. Humana objected to the Kroger DAPs' application to be DAP liaison counsel based in part on our inability to share certain attorney work product with them because Humana was not a party to Plaintiffs' joint prosecution agreements. As Humana's and United's briefing related to the liaison counsel dispute demonstrates, the DPPs objected to their joining Plaintiffs' joint prosecution agreements unless Humana and United agreed to pay a portion of their recovery to DPPs' counsel. *See* Dkt. No. 967. (We understand that the DPPs agreed only recently to enter into a limited common interest agreement with United and Humana, after United addressed this tactic in a public forum. It remains unclear, however, whether this limited common interest agreement will allow their full participation in the Plaintiffs' joint working group). This Court has issued Orders appointing lead class counsel and providing for efficient case management. DPPs, however, are now seeking to commercialize these Orders and impose financial conditions that impair the very coordination that this Court expects.

**Second**, and relatedly, the proposed set-aside order strongly disincentivizes settlement. In any treble damages antitrust proceeding, a plaintiff has an incentive to settle their claims early, at a discount to what they might recover at trial, both to obtain the certainty that a settlement affords, but also to provide for immediate recovery. Under the regime that would be created by the DPPs' proposed set-aside order, that calculus would change, because a Plaintiff's recovery today could be reduced by 10%, whereas any recovery at a later date (such as at trial) might not support any set-aside at all.

**Third**, DPPs' motion ignores the difficulty inherent in creating a "common fund" in a case that was initiated from government investigations and is being actively litigated by five distinct groups of Plaintiffs (the States, DAPs, DPPs, EPPs, and the IRPs). The DPPs appear to be asking the Court to wade into difficult questions about which Plaintiff group provided a benefit to the others and how much. This is not a case in which one group of class lawyers is seeking funds from DAPs and in which the calculus regarding a common benefit is much simpler. Were the Court to grant the motion, it would necessarily have to figure out the benefit conferred by each group to other groups and embark (on the likely impossible task) of determining credits and debits among five distinct Plaintiffs groups.

**Fourth**, granting the motion will incentivize future opt-outs to file cases outside of the MDL. Under the law, "district courts operating pursuant to their multi-district litigation powers do not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries absent some independent jurisdiction over the state court actions." *In re Lidoderm Antitrust Litigation*, No. 14-md-02521, 2017 WL 3478810, at *2 (N.D. Cal. Aug. 14, 2017) (citation omitted). If the Court grants the current motion, then future opt-outs are more likely to attempt to remain outside the

jurisdiction of the MDL.  This will hinder the successful coordination of all cases related to the present dispute.

### III.     CONCLUSION

The Kroger DAPs respectfully request that the Court deny this motion.  The Kroger DAPs have contributed materially, substantially and substantively to this MDL, and it would be unjust and against the weight of the case law to grant a set aside from an actively contributing DAP.  Furthermore, courts overseeing antitrust class actions that have ruled on the set-aside issue at the relatively early stages of the litigation (as here) have denied such motions summarily.  Such a ruling is sensible given the havoc such an order would bring to the efficient administration of this MDL.

Dated:  May 15, 2019

Respectfully submitted,

By: _____
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Scott E. Perwin, Esquire
Anna T. Neill, Esquire
Samuel J. Randall, Esquire
Joshua B. Gray, Esquire
Brandon S. Floch, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida  33131
Tel:  (305) 373-1000
Fax:  (305) 372-1861
E-mail:  rarnold@knpa.com
            wblechman@knpa.com
            sperwin@knpa.com
            aneill@knpa.com
            jgray@knpa.com
            srandall@knpa.com
            bfloch@knpa.com

*Counsel for Kroger Direct Action Plaintiffs*

600519.1