## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br><br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**EXPERT DECLARATION OF PROFESSOR WILLIAM B. RUBENSTEIN
IN SUPPORT OF PLAINTIFFS UNITED HEALTHCARE SERVICES, INC. AND
HUMANA INC.'S OPPOSITION TO END-PAYER PLAINTIFFS' AND DIRECT
PURCHASER PLAINTIFFS' MOTION FOR ENTRY OF SET-ASIDE ORDERS**

**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724 |
| | 16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | |

**EXPERT DECLARATION OF PROFESSOR WILLIAM B. RUBENSTEIN**

1.      I am the Bruce Bromley Professor of Law at Harvard Law School, the sole author

of *Newberg on Class Actions*, and a leading national expert on class action law and practice.

Plaintiff Humana Inc., through its counsel Lowey Dannenberg, P.C., has retained me to provide

my expert opinion concerning one aspect of End-Payer Plaintiffs' and Direct Purchaser

Plaintiffs' Motion for Entry of Set-Aside Orders (ECF No. 954).  My opinion is qualified in two

regards:  I have only been retained within the past week, so my knowledge of the full record is

accordingly limited; and I render my opinion on the propriety of the 10% set-aside request only

as it applies to two parties – Humana Inc. and United Healthcare Services, Inc. (hereafter Direct

Action Parties, or DAPs) – that have each filed direct actions in the past year.  After setting forth

my qualifications to serve as an expert (Part I, *infra*), I state the following two opinions regarding

the moving parties' entitlement to and calculation of the proposed common benefit set-aside

from these particular DAPs:

- ***Opt out class members are not taxed class counsel fees except in narrow circumstances likely not present as to these DAPs.*** (Part II, *infra*).  Class members enjoy a constitutionally-protected right to opt out of, or to participate in, a class action lawsuit.  Typically, opt outs (or plaintiffs who file direct actions before there is a certification order from which to opt out) litigate through their own attorneys and at

1

their own cost; they do so to protect their own interests, maximize the value of their own claims, and to avoid the risk that the putative class will not be certified. The basic rule of class action law is that these direct plaintiffs and/or opt outs are not taxed class counsel's fees: they have filed separately and/or opted out and as a result they bear their own costs. There is a limited exception to that rule: in a few MDL matters, where opt-out cases remain under the jurisdiction of the MDL forum, MDL courts have taxed opt-out plaintiffs' attorney's fees when the litigation was so "significantly advanced" that there existed a risk that late-filing opt-out attorneys would free-ride on the efforts of class counsel. MDL courts have generally approved set asides in these class action cases only when the litigation has progressed to the point that the class had been certified, discovery substantially completed, and a settlement or trial at hand. Here, putative class counsel have not demonstrated that their work to date, as applied to the currently-objecting DAPs, meets these threshold prerequisites entitling them to a set aside.

- ***Were the Court to find an entitlement to a set-aside at this time as to the objecting DAPs, it should be far lower than 10%, perhaps a simple flat amount.*** (Part III, *infra*). Common benefit set asides normally arise in mass tort MDLs, like *Avandia*, where the set aside from individually-retained plaintiff's attorneys constitute the PSC's core funding for the entire case. In that context, the data show that the average common benefit hold-back is about 7.5% (5% for fees, 2.5% for costs). In putative class actions such as this, class counsel's core fee will come from the class's recovery and a set-aside from opt-out plaintiffs, if any, simply augments that recovery. Such a set-aside ought to be lower than the norm for a mass tort case, yet the present 10% request is about 33% above what is normally awarded to mass tort counsel for litigating an entire case. The present 10% request is even further out of proportion as applied to these DAPs, who have opted out relatively early in the litigation and will bear their own costs going forward. Moreover, common benefit percentages, like class action fees, ought to decrease as fund sizes increase; given that a set aside assessed against these DAPs in this putative class action is likely to be against large recoveries, the facts support a set aside at a lower, not higher, level. Finally, set asides need not be expressed only in percentage terms – sometimes core counsel are simply paid a flat amount for certain work or from certain recoveries. Here, the limited nature of the asserted borrowing that is at issue at this point in this matter, if any, suggests that a flat fee arrangement may be a more appropriate fee approach than granting putative class counsel a percentage of these DAPs' entire recovery.

2.     In sum, several huge corporations are exercising their constitutional rights to pursue their own cases, independent of the putative class action. They inform me that they have already agreed to share in common out-of-pocket expenses and that their counsel have committed to join in the collective prosecution of the coordinated pretrial proceedings actions in

this MDL.  They will therefore necessarily shoulder, and share, what will be enormous litigation costs and efforts going forward.  A common benefit assessment against them in these specific circumstances at this particular time runs the risk of generating distrust and competition among plaintiffs' counsel, in a case management situation calling for cooperative lawyering and voluntary cost sharing.

## I.
## BACKGROUND AND QUALIFICATIONS[1]

3.      I am the Bruce Bromley Professor of Law at Harvard Law School.  I graduated from Yale College, *magna cum laude*, in 1982 and from Harvard Law School, *magna cum laude*, in 1986.  I clerked for the Hon. Stanley Sporkin in the U.S. District Court for the District of Columbia following my graduation from law school.  Before joining the Harvard faculty as a tenured professor in 2007, I was a law professor at UCLA School of Law for a decade, and an adjunct faculty member at Harvard, Stanford, and Yale Law Schools while a litigator in private practice during the preceding decade.  I am admitted to practice law in the Commonwealth of Massachusetts, the State of California, the Commonwealth of Pennsylvania (inactive), the District of Columbia (inactive), the U.S. Supreme Court, six U.S. Courts of Appeals, and four U.S. District Courts.

4.      My principal area of scholarship is complex civil litigation, with a special emphasis on class action law.  I am the author, co-author, or editor of five books and more than a dozen scholarly articles, as well as many shorter publications (a fuller bibliography appears in my appended c.v.).  Much of this work concerns various aspects of class action law.  Since 2008, I have been the sole author of the leading national treatise on class action law, *Newberg on Class*

---

[1] My full c.v. is attached as Exhibit A.

*Actions*, and as of 2017, I had re-written from scratch the entire 10-volume treatise.  In 2015, I wrote and published a 600-page volume (volume 5) of the Treatise on attorney's fees, costs, and incentive awards; this volume has already been cited in numerous federal court fee decisions. For five years (2007–2011), I published a regular column entitled "Expert's Corner" in the publication *Class Action Attorney Fee Digest*.  My work has been excerpted in casebooks on complex litigation, as noted on my c.v.

5.      My expertise in complex litigation has been recognized by judges, scholars, and lawyers in private practice throughout the country for whom I regularly provide consulting advice and educational training programs.  For each of the past nine years, the Judicial Panel on Multidistrict Litigation (JMPL) has invited me to give a presentation on the current state of class action law at the annual MDL Transferee Judges Conference, and I have often spoken on the topic of attorney's fees to the MDL judges.  The Federal Judicial Center invited me to participate as a panelist (on the topic of class action settlement approval) at its March 2018 judicial workshop celebrating the 50th anniversary of the JPML, *Managing Multidistrict and Other Complex Litigation Workshop*.  The Ninth Circuit invited me to moderate a panel on class action law at the 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop.  The American Law Institute selected me to serve as an Adviser on a Restatement-like project developing the *Principles of the Law of Aggregate Litigation*.  In 2007, I was the co-chair of the Class Action Subcommittee of the Mass Torts Committee of the ABA's Litigation Section.  I am on the Advisory Board of the publication *Class Action Law Monitor*.  I have often presented continuing legal education programs on class action law at law firms and conferences.

6.     My teaching focuses on procedure and complex litigation.  I regularly teach the basic civil procedure course to first-year law students, and I have taught a variety of advanced courses on complex litigation, remedies, and federal litigation.  I have received honors for my teaching activities, including:   the Albert M. Sacks-Paul A. Freund Award for Teaching Excellence, as the best teacher at Harvard Law School during the 2011–2012 school year; the Rutter Award for Excellence in Teaching, as the best teacher at UCLA School of Law during the 2001–2002 school year; and the John Bingham Hurlbut Award for Excellence in Teaching, as the best teacher at Stanford Law School during the 1996–1997 school year.

7.     My academic work on class action law follows a significant career as a litigator. For nearly eight years, I worked as a staff attorney and project director at the national office of the American Civil Liberties Union in New York City.  In those capacities, I litigated dozens of cases on behalf of plaintiffs pursuing civil rights matters in state and federal courts throughout the United States.  I also oversaw and coordinated hundreds of additional cases being litigated by ACLU affiliates and cooperating attorneys in courts around the country.  I therefore have personally initiated and pursued complex litigation, including class actions.

8.     I have been retained as an expert witness in roughly 75 cases and as an expert consultant in about another 25 cases.  These cases have been in state and federal courts throughout the United States, most have been complex class action cases, and many have been MDL proceedings.  I have been retained to testify as an expert witness on issues ranging from the propriety of class certification, to the reasonableness of settlements and fees, to the preclusive effect of class action judgments.  I have been retained by counsel for plaintiffs, for defendants, for objectors, and by courts:

    a) In 2018, a Special Master in the national opioid MDL pending in the United States District Court for the Northern District of Ohio retained me as an expert consultant on "highly complex class action settlement structure" issues.[2]

    b) In 2017, the United States District Court for the Eastern District of Pennsylvania appointed me as an expert witness on certain attorney's fees issues in the NFL concussion litigation.  In my final report to the Court, I recommended, *inter alia*, that the Court should cap individual retainer agreements at 22%, a recommendation that the Court adopted.[3]

    c) In 2015, the United States Court of Appeals for the Second Circuit appointed me to argue for affirmance of a district court order that significantly reduced class counsel's fee request in a large, complex securities class action, a task I completed successfully when the Circuit summarily affirmed the decision on appeal.[4]

    9.    One of the functions I can provide as an expert witness is to present empirical evidence of class action practices from other cases.  As part of my scholarly work on class action law, I have created and maintain a database containing data on more than 1,000 class action lawsuits.

    10.    Courts have often relied on expert witness testimony in fee cases.[5]

---

[2] *In re: National Prescription Opiate Litigation*, Case No. 1:17-MD-2804 (N.D. Ohio Aug. 13, 2018) (ECF No. 877).

[3] *In re Nat'l Football League Players' Concussion Injury Litig.*, 2018 WL 1658808, at *1 (E.D. Pa. Apr. 5, 2018) ("I adopt the conclusions of Professor Rubenstein and order that IRPAs' fees be capped at 22% plus reasonable costs.").

[4] *See In re Indymac Mortgage-Backed Sec. Litig.*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom. Berman DeValerio v. Olinsky*, 673 F. App'x 87 (2d Cir. 2016).

[5] *See, e.g.*, *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014); *Hale v. State Farm Mut. Auto. Ins. Co*., 2018 WL 6606079, at *10, *14 (S.D. Ill. Dec. 16, 2018); *Krakauer v. Dish Network, L.L.C*., 2018 WL 6305785, at *5 (M.D.N.C. Dec. 3, 2018); *In re Nat'l Football League Players' Concussion Injury Litig.,* 2018 WL 1658808, at *4 (E.D. Pa. Apr. 5, 2018); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *3 (N.D. Cal. July 21, 2017); *Aranda v. Caribbean Cruise Line, Inc*., 2017 WL 1369741, at *5 (N.D. Ill. Apr. 10, 2017), aff'd sub nom. *Birchmeier v. Caribbean Cruise Line, Inc*., 896 F.3d 792 (7th Cir. 2018); *In re High-Tech Employee Antitrust Litig*., 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015); *Asghari v. Volkswagen Grp. of Am., Inc*., 2015 WL 12732462, at *44 (C.D. Cal. May 29, 2015); *In re*

11.     I have been retained in this case to provide an opinion concerning the issues set forth in the first paragraph, above.  I am being compensated for providing this expert report.  I was paid a flat fee in advance of submitting my final report, so my compensation was in no way contingent upon the content of my opinions.

12.     In analyzing these issues, I have reviewed documents from this litigation, a list of which is attached as Exhibit B, and reviewed the applicable case law and scholarship on the topics of this Declaration.

## II.
## PUTATIVE CLASS COUNSEL ARE NOT ENTITLED TO FEES FROM DAPs/OPT-OUT CLASS MEMERS EXCEPT IN NARROW CIRCUSMTANCES THAT DO NOT APPEAR TO BE PRESENT HERE

13.     Putative class counsel's request for a set-aside arises in the context of an MDL consisting of three putative class actions, actions brought by state attorneys general, and three sets of DAPs; this is a fundamentally different type of MDL than a mass tort MDL, in which common benefit set-asides serve a distinct function.  Although class certification has not yet been sought, the set-aside movants refer to themselves as class counsel throughout their briefing, refer to the underlying clients as a class, and clearly envision that the case will culminate in a conventional opt-out class action settlement or judgment.[6]  Within that context, the direct action plaintiffs are putative class members who have essentially opted out of the class litigation and chosen to litigate directly, although no class certification motion has been filed, much less

---

*Syngenta AG MIR 162 Corn Litig.*, 2015 WL 2165341, at *5 (D. Kan. May 8, 2015); *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010); *Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236, at *2 (Mass. Super. Aug. 5, 2013).

[6] End-Payer Plaintiffs' and Direct Purchaser Plaintiffs' Memorandum of Law in Support of Motion for Entry of Set-Aside Orders, ECF 955, *passim* (hereafter "Brief in Support of Set-Aside").

granted.  Because the moving parties envision the case unfolding in the class action framework, they will seek a fee at the conclusion of their own respective cases under Rule 23's specific fee structure and hence be rewarded for their efforts by either a percentage of their clients' recovery or a fee shifted from the defendants.  Unlike a mass tort MDL such as *Avandia*, where the PSC seeks a set aside to fund the litigation itself,[7] here putative class counsel seek a set aside to augment their primary class action fees with a side tax on the fees of those putative class members who chose to litigate directly.  This is a distinct and far rarer form of common benefit fee than that at issue in mass tort MDLs like *Avandia*, and it triggers a distinct set of concerns.  Put simply, while common benefit assessments are the rule that broadly fund mass tort MDLs, they are an exception that narrowly augment class counsel's fees in class action practice.

14.    In class action lawsuits, class members have constitutionally protected rights to participate in or opt out of the class action.[8]  Rule 23 safeguards these rights, directing that notice of a class action inform class members that they "may enter an appearance through an attorney if the member so desires,"[9] and that "the court will exclude from the class any member who

---

[7] PSC members also get contingent fees from their individual clients, though these typically pale in comparison to the common benefit fees and are often waived.

[8] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985) ("If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. . . . Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.  Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.").

[9] Fed. R. Civ. P. 23(c)(2)(B)(iv).

requests exclusion."[10]   In its 2011 decision in the *Wal-Mart* case,[11] the Supreme Court re-emphasized that money damage plaintiffs possess the right to control their own actions by unanimously rejecting the use of a non-opt out (b)(2) class framework for the adjudication of money damage claims.[12]   Similarly, the Third Circuit has recently expressed a preference that large class members with significant claims step up and litigate those claims directly. Specifically, in a case seeking certification of a class of direct purchasers of pharmaceuticals, the Circuit noted that the class was limited to about "twenty-two large and sophisticated corporations, most of which have multi-million dollar claims. . . ."[13]   Interpreting Rule 23(a)(1)'s requirement that the class be so numerous that joinder is impracticable, the Court remanded for more careful consideration of that test in light of specifically-articulated factors.[14]   In doing so, the Court wrote:

> [T]he judges in the majority have never seen a class action where three class members, each with billions of dollars at stake and close to 100% of the total value of class claims between them, have been allowed to sit on the sidelines as unnamed class members. Plaintiffs must satisfy their burden of showing why we should allow this unique putative class to take advantage of this exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.   At this point, they have failed to meet that burden, and any suggestion that this is a run-of-the-mill class action ignores the facts of this case.[15]

---

[10] Fed. R. Civ. P. 23(c)(2)(B)(v).

[11] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

[12] One section of the *Wal-Mart* decision engendered a dissent from four Justices, but not the section holding that money damage class actions require an opt-out right and hence should not be certified under Rule 23(b)(2).   *Id.* at 367 (Ginsburg, J. Breyer, J., Sotomayor, J., and Kagan, J., concurring in part and dissenting in part) ("The class in this case, I agree with the Court, should not have been certified under Federal Rule of Civil Procedure 23(b)(2).").

[13] *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 242 (3d Cir. 2016).

[14] I served as class counsel's expert witness on the numerosity requirement on remand.

[15] *In re Modafinil Antitrust Litig.*, 837 F.3d at 259–60.

15.     Given these core class action principles, the rule in class action lawsuits is that class members that opt out of the class are not responsible for paying class counsel's fees.  A leading case on point is the Illinois appellate court's decision in *In re Chicago Flood Litigation*.[16] The Court there explained:

> [W]e find that class counsel are not entitled to fees from the opt-out plaintiffs.  Once the opt-out plaintiffs exercised their right of exclusion, all of the hallmarks of the attorney-client relationship were destroyed.  To require the opt-out plaintiffs to pay fees to both class counsel and their independently retained counsel would penalize them for exercising their inherent right of exclusion.  We believe this right should remain unrestricted.[17]

This approach is consistent with the underlying principle that private litigants generally do not pay attorneys whose earlier work generated precedents – or even preclusive rulings – that benefit their cases.[18]

---

[16] *In re Chicago Flood Litig.*, 682 N.E.2d 421 (Ill. App. 1997).

[17] *Id.* at 429.  Courts have similarly held that class members who do not benefit from litigation need not share in the costs of it.  *See* William B. Rubenstein, 3 *Newberg on Class Actions* § 9:37 n.13 (5th ed. 2013 & 2019 Supp.) (hereafter "*Newberg on Class Actions*") (citing *Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) ("Absent class members have no obligation to pay attorneys' fees and litigation costs, except when they elect to accept the benefit of the litigation."); *Lankhorst v. Independent Savings Plan Company*, 2015 WL 5724369, *10 (M.D. Fla. 2015) (holding that absent class members "cannot be held liable for their pro rata share of the taxable costs" in part because of the court's finding that the class notice that was sent to the putative class members did not include any warning that a class member could be held liable for a share of the defendant's costs if that member chose not to opt out and the class's claim ultimately failed); *Smith v. MCI Telecommunications Corp.*, 136 F.R.D. 189, 191 (D. Kan. 1991) ("Generally, absent class members have no responsibility for litigation costs or attorney's fees except 'when they elect to accept the benefit of the litigation.'"); *Lamb v. United Sec. Life Co.*, 59 F.R.D. 44, 48 (S.D. Iowa 1973) ("[T]he Court has concluded that members of the class other than plaintiffs, who do not request exclusion, are not parties and would not be liable for costs even though otherwise bound by the judgment, whether favorable or unfavorable.").

[18] Thus, here, for example, the JPML's initial order selecting this forum for this MDL noted that a "federal criminal investigation into defendants' generic drug pricing practices is underway in the Eastern District of Pennsylvania," meaning that "a significant proportion of potential

16.     There is a narrow exception to the basic rule that opt-out class members do not pay class counsel's fees.  In some MDLs, where opt-out cases remain within the MDL forum and under the MDL court's jurisdiction,[19] federal judges have approved orders requiring opt-out attorneys to set aside a portion of their attorney's fees for possible recovery by class counsel when the litigation is so "significantly advanced"[20] that permitting class members to opt out and utilize class counsel's work without compensation would trigger free-riding concerns.[21]  Two

witnesses and documentary evidence will be located within or near the district." Transfer Order, ECF No. 1 at 3 (August 5, 2016); *see also In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1343 (U.S. Jud. Pan. Mult. Lit. 2017) (noting that the United States was "investigating the generic drug market and prosecuting related criminal actions").  The current set-aside motion accordingly lists as an important accomplishment of this litigation to date that putative class counsel "have obtained access to the AG documents."  Brief in Support of Set-Aside, ECF 955 at 14.  Yet it is unlikely that putative class counsel plan on paying a common benefit fee to the government lawyers, upon whose work they build, nor do they suggest that DAPs may seek a common benefit fee from the class for work that the DAPs perform that benefits the class.

[19] When jurisdiction is lacking, MDL courts have rejected requests that opt-outs pay a set aside. *See, e.g., In re OSB Antitrust Litig.,* No. 06-826, 2009 WL 579376, at *4 (E.D. Pa. Mar. 4, 2009) ("In these circumstances, it is apparent that there is no basis for me to assert jurisdiction over the opt-outs.  Accordingly, I cannot order the opt-outs to pay Class Counsel's fees."); *In re Linerboard*, 292 F. Supp. 2d at 664 ("[A]ny order sequestering funds from settlements and other recoveries in the tag-along actions should not extend to non-transferred cases.").

[20] *In re Lidoderm Antitrust Litig.*, 2017 WL 3478810, at *2 (N.D. Cal. Aug. 14, 2017).

[21] Where free-riding concerns are absent, MDL courts have rejected requests that parties pay a set aside.  *See, e.g., In re Baycol Prod.,* No. MDL 1431MJD/JGL, 2004 WL 1058105, at *8 (D. Minn. May 3, 2004) ("[T]he settlements are not the result of the PSC's work.  Rather, the settlements are the result of the TPPs' own attorneys' work. It is not unfair for the PSC to be denied attorneys' fees under these circumstances. . . . The Court is also not persuaded that the TPPs' attorneys relied on the PSC's work to such an extent that 'the TPPs will reap an unjust enrichment at the expense of the PSC and plaintiffs' individual counsel' [as the PSC argues].  In fact, the PSC has proffered no evidence that any of its work product is being used in negotiations between TPPs and Defendants, or that the PSC has done anything other than represent its clients. The PSC has failed to establish either an implied-in-fact or implied-in-law agreement for attorneys' fees in this situation.").

11

characteristic orders[22] are Judge DuBois's 2003 decision in the *Linerboard* case[23] and Judge

Orrick's 2017 decision in the *Lidoderm* case.[24]   The facts of these MDLs give meaning to the

"significantly advanced" threshold:

- In *Linerboard*, counsel had sought and secured class certification, defended that in the Third Circuit and against a petition for a writ of *certiorari* in the Supreme Court, and, while that was happening, negotiated a settlement with some major defendants. Notice of the settlement was provided to the class simultaneously with their first notice of class certification, hence enabling class members to opt out at that late stage.[25]   Several class members not only exercised their right to opt out but sought to secure from class counsel the discovery materials in the case.[26]   Judge DuBois, understandably concerned that these efforts appeared to be free-riding on class counsel's work, approved application of a set-aside on those opt outs.

- In *Lidoderm*, counsel had sought and secured class certification, and they explained in their papers that prior to seeking a set aside they had [i] "reviewed over 3.4 million pages of documents produced by Defendants (including obtaining certified translations of foreign language documents);" [ii] "deposed more than thirty fact witnesses;" and that [iii] "Collectively, the parties have retained and produced reports from twenty-three experts and engaged in extensive expert discovery, which is nearing completion;" such that [iv] "Over the next three months the parties will brief summary judgment motions and prepare for trial," which was set to begin within six months of the set-aside motion.[27]

---

[22] In the present motion, movants cite only two other <u>class action</u> set-aside cases:  *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009) and *Turner v. Murphy Oil USA, Inc*., 422 F. Supp. 2d 676 (E.D. La. 2006).  The former was closer in nature to a mass tort case and the latter closer in nature to a mass accident matter.  The facts of each are therefore more distant from the present case than the facts of the cases I discuss in the text.

[23] *Linerboard*, 292 F. Supp. 2d at 668-70.

[24] *Lidoderm*, 2017 WL 3478810, at *4-5.

[25] *Linerboard*, 292 F. Supp. 2d at 650  ("The April 14, 2003 Order that preliminarily approved the terms of the Settlement Agreement between class plaintiffs and Temple–Inland, Inc. and Gaylord Container Corporation also directed the parties to notify potential class members of the class certification and the settlement.").

[26] *Id.* at 651-53.

[27] End-Payor Class Counsel's Motion for Entry of a Set-Aside Order at 3, *In re Lidoderm Antitrust Litig*., No. 14-MD-02521-WHO, ECF No. 742 (June 2, 2017).

These MDLs demonstrate that the legal threshold for a set aside order against non-participating putative class members in a class action – that the matter is "significantly advanced" – have been found in situations in which (a) a class had been certified; (b) discovery completed or substantially completed; and (c) a settlement achieved or trial within reach.  It is in these advanced situations that the danger of significant free-riding arises.  Short of that, courts have denied common benefit set-aside requests of precisely this type.[28]

17.    From my cursory review of the facts in this case, it does not appear that the matter has "significantly advanced" to the point that might warrant a set-aside against these DAPs:  (a) no class has been certified; (b) discovery is far closer to its commencement than to its conclusion; and (c) neither a settlement nor trial are on the near horizon.  What's more, this case has several countervailing characteristics.  *First*, putative class counsel's own actions follow on government enforcement actions, so some of the credit they might otherwise deserve for launching the matter is accordingly diluted.  *Second*, some of what putative class counsel has achieved to date involves gaining access to work done by the government enforcement agencies themselves; it is not unimportant that putative class counsel gained access to those materials, but it is not quite the same achievement as producing the discovery oneself.  *Third*, going forward, the litigation will necessarily be multi-headed, with coordination between federal and state government enforcement agencies, putative class counsel, and direct action participants, meaning

---

[28] *See, e.g., In re Neurontin Antitrust Litig.*, No. 02-1390 (FSH), 2011 WL 13141022, at *2 (D.N.J. July 12, 2011) ("[I]t appearing that as no settlement has been reached and no judgment entered in the [direct action plaintiff] action or in the class action, Class Plaintiffs' application to have this Court establish a method under which the [direct action plaintiffs] would compensate the Class Plaintiff's is premature."); *In re Katrina Canal Breaches Consol. Litig.*, No. CIV.A. 05-4182, 2010 WL 2998848, at *4 (E.D. La. July 28, 2010) ("Clearly, as this matter is on appeal and there is no settlement of which the Court is aware, the funds from which a set-aside might be carved is illusory at this time.").

that these DAPs will necessarily spend a significant amount of their own resources proving up their individual cases.  Given the latter fact, it is arguable that any entitlement to a set aside should – as to these DAPs – be primarily backward-looking in nature.

18.    In sum, the specific class action context at issue, coupled with the applicable facts, raises significant doubt as to whether putative class counsel's work is so "significantly advanced" as to entitle them to levy a set aside on these specific parties exercising their constitutional rights to opt out of the putative class action at this particular point in the action.

### III.
### WERE AN ENTITLEMENT FOUND, THE BACKWARD-LOOKING ASSESSMENT SHOULD BE FAR LESS THAN 10% OF THESE DAPs' TOTAL RECOVERIES

19.    As explained above, the request by putative class counsel here is fundamentally different from set-aside requests in mass tort MDLs, whose purpose is to fund the entire action. Yet, empirical evidence demonstrates that the 10% amount sought is far above the norm for such mass tort MDLs.

20.    In the *Newberg* treatise, I provide extensive empirical evidence of the level of common benefit fees in MDLs – primarily mass tort MDLs – where the fees embody the PSC's core funding.  Those data show that across a set of 35 common benefit assessments, the "mean assessment for common benefit fees (separate from any assessment for costs) was 4.99%; the median fee assessment was 4%;"[29] and that in 26 MDLs with data on point, the "mean assessment for common benefit costs (separate from any assessment for fees) was 2.49%; the

---

[29] 5 *Newberg on Class Actions* § 15:117.

median cost assessment was 2%."[30]   Thus, 7.5% is a normal set aside to fund an entire MDL
action.

21.   Those data points accord with this Court's careful analysis in the *Avandia* case,
approving a 6.5% common benefit fee for the PSC's entire work in the matter.   The Court
surveyed awards in 16 similar mass tort MDLs, embodying more than 20 separate data points
(because some MDLs had differing common benefit assessments for differing plaintiffs).[31]   Only
two data points in that entire set were at the level sought here, and both were the high end of
ranges:   the *Yaz* case embodying a 6-10% assessment "depending on timing of participation,"[32]
and the *Bextra* and *Celebrex* Marketing case embodying an 8-12% assessment "depending on
participation level."[33]

22.   In the *Linerboard* case, discussed above, Judge DuBois found that "[t]his is the
rare antitrust case in which major entities and their counsel awaited the development of the case
by designated counsel and only filed suit on the eve of the conclusion of discovery."[34]   In that
context, Judge DuBois approved a negotiated common benefit set-aside that was to be either 5%
or a flat $3 million; direct action counsel chose to pay the $3 million, presumably, Judge DuBois
reasoned, because it was likely to be <u>less than the 5%</u>.[35]   If less than 5% is appropriate following

---

[30] *Id.*

[31] *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 07-MD-01871, 2012 WL
6923367, at *6 (E.D. Pa. Oct. 19, 2012).

[32] *Id.*

[33] *Id.*

[34] *Linerboard*, 292 F.Supp.2d at 661.

[35] *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 343, 351 (E.D. Pa. 2004) ("Direct action
counsel agreed to make an immediate non-contingent three million dollar payment ($2.9 million
for fees, $100,000 for costs) with no right of return of any funds, rather than risk having to pay

class certification and a settlement, surely 10% is too high for the work undertaken by putative class counsel at this point in this matter, as applied to these DAPs; worse, it appears that these particular DAPs are being asked to pay a 10% assessment to both EPP and DPP counsel, or 20%, an assessment level that is, according to my data, literally unprecedented.[36]

23.     It is also important to note that the ultimate amount of a percentage fee award is the product of the multiplication of two numbers:  the percentage and what it is a percentage of. Here, the latter amount (the case's recovery) is likely to be a large number, should the plaintiffs prevail.  In the *Newberg* treatise, I present empirical evidence showing that class action fee awards themselves tend to decrease as fund sizes increase.[37]  Some courts refer to this as a "sliding scale"[38] or "mega-fund" effect.[39]  They capture the intuition that a normal percentage award (of, say, 25%) in a case securing billions of dollars of damages may be a windfall to class counsel.  That same intuition should inform the award of a set-aside:  as the set-aside is calculated as a percentage of the client's recovery, where the client's recovery may be enormous, an enormous set-aside – on top of the core class action fees – would likely amount to a

---

more than $3 million if they were successful in the underlying litigation and were required to pay five percent of all monies recovered from defendants in settlements and judgments.").

[36] 5 *Newberg on Class Actions* § 15:117 (reporting that in 71 instances in which common benefit fees were withheld, 17.25% was the highest fee ever withheld; and that in 29 instances in which common benefit fees were finally approved, 18.5% was the highest award ever approved).

[37] 5 *Newberg on Class Actions* § 15:81.

[38] *Id.* § 15:80.

[39] *Id.* § 15:81.  I am critical of using a mega-fund approach because a lodestar cross-check accomplishes the same result more directly.  *Id.* ("In sum, if the idea persists that a highly multiplied lodestar constitutes, at some point, a windfall to class counsel, the multiplier itself is the best measuring stick for determining when the windfall occurs. A mega-fund approach is a cruder means of getting at the idea, though its value is that it can be done on its face without the need for a lodestar cross-check.").  Yet the empirical evidence clearly demonstrates that fee awards embody this outcome.

16

windfall.[40]   Where, as here, a Court can estimate in advance that a settlement or plaintiffs' judgment, should one arise, will likely be large, the common benefit set aside may comfortably be predicted at a lower level.

24.     It is also worth noting that set asides need not be percentage based:  in some instances, parties will pay a flat amount to a PSC for their work product.   Should the Court conclude that a set-aside order as to these DAPs is appropriate, it should arguably be limited to the work putative class counsel has undertaken up to this relatively early date in the litigation, as the DAPs will now pay their own way going forward.   Here, the relatively early entry of these parties as DAPs, and the amount of work undertaken by putative class counsel to date compared to the substantial amount of work remaining in the case, suggest that a flat payment capturing that work might be a more appropriate approach – were the Court to order a payment at all – than requiring these DAPs to pay a percentage of their entire recovery.

\* \* \*

---

[40] It is true that the full set aside need not be awarded to counsel at the case's conclusion.  But at the case's conclusion, the Court will likely undertake a lodestar cross-check to see if the full set aside is justifiably awarded to counsel, as this Court did in *Avandia*.  *Avandia*, 2012 WL 6923367, at *9-10.  Setting aside a lot of money up front incentivizes counsel to perpetuate the litigation so as to generate a lodestar, for cross-check purposes, supporting award of the full set-aside at the back end.

25.     I have stated my expert opinions that:

- The moving parties' entitlement to a common benefit set-aside should be assessed in the context of the fact that this is a request from counsel to two putative antitrust class action cases, not from a PSC in a mass tort MDL.   Class members enjoy a constitutionally protected right to exit the class and a set-aside from them is not needed to fund the entire litigation, as in mass tort MDLs.   Fee assessments on class action opt-outs are therefore rare and typically arise in situations of true unjust enrichment, captured by the fact that the case is significantly developed at the time of the party's exit.   Putative class counsel have not demonstrated that they meet that threshold as to these DAPs.

- Even as compared to mass tort MDLs, the moving parties' set-aside calculation is extraordinarily high in relation to other MDLs where set-asides have been ordered:  it is well above what this Court approved in *Avandia* for counsel who had litigated a case to its conclusion; it is a very high number to impose on class members opting out relatively early in the litigation; and it is a particularly high number in what is likely to be a high recovery case.  If the Court were to find that any set-aside is appropriate, a small flat payment in acknowledgment of work undertaken prior to the direct filings may be a more appropriate approach.

_____

May 15, 2019                                           William B. Rubenstein
Cambridge, Massachusetts

18

# EXHIBIT A

# PROFESSOR WILLIAM B. RUBENSTEIN

Harvard Law School - AR323                                         (617) 496-7320
1545 Massachusetts Avenue                                rubenstein@law.harvard.edu
Cambridge, MA 02138

### ACADEMIC EMPLOYMENT

HARVARD LAW SCHOOL, CAMBRIDGE MA
    Bruce Bromley Professor of Law                                       2018-present
    Sidley Austin Professor of Law                                         2011-2018
    Professor of Law                                                       2007-2011
    Bruce Bromley Visiting Professor of Law                                2006-2007
    Visiting Professor of Law                                   2003-2004, 2005-2006
    Lecturer in Law                                                        1990-1996
        *Courses:*      Civil Procedure; Class Action Law; Remedies
        *Awards:*       2012 Albert M. Sacks-Paul A. Freund Award for Teaching Excellence
        *Membership:*   American Law Institute; American Bar Foundation Fellow

UCLA SCHOOL OF LAW, LOS ANGELES CA
    Professor of Law                                                       2002-2007
    Acting Professor of Law                                                1997-2002
        *Courses:*      Civil Procedure; Complex Litigation; Remedies
        *Awards:*       2002 Rutter Award for Excellence in Teaching
                        Top 20 California Lawyers Under 40, *Calif. Law Business* (2000)

STANFORD LAW SCHOOL, STANFORD CA
    Acting Associate Professor of Law                                      1995-1997
        *Courses:*      Civil Procedure; Federal Litigation
        *Awards:*       1997 John Bingham Hurlbut Award for Excellence in Teaching

YALE LAW SCHOOL, NEW HAVEN CT
    Lecturer in Law                                                       1994, 1995

BENJAMIN N. CARDOZO SCHOOL OF LAW, NEW YORK NY
    Visiting Professor                                                   Summer 2005

### LITIGATION-RELATED EMPLOYMENT

AMERICAN CIVIL LIBERTIES UNION, NATIONAL OFFICE, NEW YORK NY
    Project Director and Staff Counsel                                     1987-1995
    -Litigated impact cases in federal and state courts throughout the United States.
    -Supervised a staff of attorneys at the national office, oversaw work of ACLU attorneys
    around the country, and coordinated work with private cooperating counsel nationwide.
    -Significant experience in complex litigation practice and procedural issues; appellate
    litigation; litigation coordination, planning and oversight.

HON. STANLEY SPORKIN, U.S. DISTRICT COURT, WASHINGTON DC
    Law Clerk                                                              1986-87

PUBLIC CITIZEN LITIGATION GROUP,    WASHINGTON DC
    Intern                                                              Summer 1985

**A-1**

EDUCATION

HARVARD LAW SCHOOL, CAMBRIDGE MA
   J.D., 1986, *magna cum laude*

YALE COLLEGE, NEW HAVEN CT
   B.A., 1982, *magna cum laude*
      Editor-in-Chief, YALE DAILY NEWS


SELECTED COMPLEX LITIGATION EXPERIENCE

*Professional Service and Highlighted Activities*

◊   *Author,* NEWBERG ON CLASS ACTIONS (sole author since 2008, sole author of entirely re-written Fifth Edition (2011-2018))

◊   *Speaker,* Judicial Panel on Multidistrict Litigation, Multidistrict Litigation (MDL) Transferee Judges Conference, Palm Beach, Florida (invited to present to MDL judges on recent developments in class action law and related topics (2010, 2011, 2012, 2013, 2014 (invited), 2015, 2016, 2017, 2018)

◊   *Panelist,* Federal Judicial Center, *Managing Multidistrict Litigation and Other Complex Litigation Workshop* (for federal judges) (March 15, 2018)

◊   *Amicus curiae,* authored *amicus* brief in United States Supreme Court on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos,* 139 S. Ct. 1041 (2019))

◊   *Amicus curiae,* authored *amicus* brief in California Supreme Court on proper approach to attorney's fees in common fund cases (*Laffitte v. Robert Half Int'l Inc.,* 376 P.3d 672, 687 (Cal. 2016) (noting reliance on *amicus* brief))

◊   *Amicus curiae,* authored *amicus* brief in the United States Supreme Court filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011))

◊   *Adviser,* American Law Institute, *Project on the Principles of the Law of Aggregate Litigation,* Philadelphia, Pennsylvania

◊   *Advisory Board, Class Action Law Monitor* (Strafford Publications), 2008-

◊   *Co-Chair,* ABA Litigation Section, Mass Torts Committee, Class Action Sub-Committee, 2007

◊   *Planning Committee,* American Bar Association, Annual National Institute on Class Actions Conference, 2006, 2007

◊   *"Expert's Corner"* (Monthly Column)*, Class Action Attorney Fee Digest,* 2007-2011

## *Judicial Appointments*

◊   *Expert consultant.*   Retained by the Special Master as an expert consultant on class certification issues in complex multidistrict litigation (*National Prescription Opiate Litigation,* MDL 2804, Civ. Action No. 1:17-MD-2804 (N.D. Ohio Aug. 13, 2018))

◊   *Expert witness.*   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   *Appellate counsel.*   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016))

## *Expert Witness*

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, relied upon by court in awarding fees (*Hale v. State Farm Mut. Auto. Ins. Co*., 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018))

◊   Submitted expert witness affidavit and testified at fairness hearing concerning second phase fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294 (New Hampshire Superior Court, Merrimack County (2018))

◊   Submitted expert witness report – and rebutted opposing expert – concerning class certification issues for proposed class action within a bankruptcy proceeding (*In re Think Finance,* Case No. 17-33964 (N.D. Tex. Bankrpt. 2018))

◊   Submitted expert witness declaration concerning specific fee issues raised by Court at fairness hearing and second declaration in response to report of Special Master (*In re Anthem, Inc. Data Breach Litigation,* Case No. 15-MD-02617-LHK (N.D. Cal. 2018))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request following plaintiffs' verdict at trial in consumer class action (*Krakauer v. Dish Network, L.L.C.,* Civil Action No. 1:14-cv-00333 (M.D.N.C. 2018))

◊   Submitted three expert witness declarations and deposed by/testified in front of Special Master in investigation concerning attorney's fee issues (*Arkansas Teacher Ret. Sys. v. State St. Bank & Trust Co.*, Civ. Action No. 1:11-cv-10230 (D. Mass. 2017-18))

◊   Retained as an expert witness on issues regarding the preclusive effect of a class action judgment on later cases (*Sanchez v. Allianz Life Insurance Co. of N. Amer.,* Case No. BC594715 (California Superior Court, Los Angeles County (2018))

◊   Retained as an expert witness and submitted report explaining meaning of the denial of a motion to dismiss in American procedure to foreign tribunals (*In re Qualcomm Antitrust Matter,* declaration submitted to tribunals in Korea and Taiwan (2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 3.0-liter settlement, referenced by court in awarding fees (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 3175924 (N.D. Cal. July 21, 2017))

◊   Retained as an expert witness concerning impracticability of joinder in antitrust class action (*In re Celebrex (Celecoxib) Antitrust Litigation,* Civ. Action No. 2-14-cv-00361 (E.D. Va. (2017))

◊   Submitted an expert witness declaration and deposed concerning impracticability of joinder in antitrust class action (*In re Modafinil Antitrust Litigation,* Civ. Action No. 2-06-cv-01797 (E.D. Pa. (2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in 2.0-liter settlement (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation,* 2017 WL 1047834 (N.D. Cal., March 17, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Aranda v. Caribbean Cruise Line, Inc.,* 2017 WL 1368741 (N.D. Ill., April 10, 2017))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*McKinney v. United States Postal Service*, Civil Action No. 1:11-cv-00631 (D.D.C. (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Geancopoulos v. Philip Morris USA Inc.,* Civil Action No. 98-6002-BLS1 (Mass. Superior Court, Suffolk County))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request in sealed fee mediation (2016)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Gates v. United Healthcare Insurance Company,* Case No. 11 Civ. 3487 (S.D.N.Y. 2015))

◊   Retained as an expert trial witness on class action procedures and deposed prior to trial in matter that settled before trial (*Johnson v. Caremark RX, LLC,* Case No. 01-CV-2003-6630, Alabama Circuit Court, Jefferson County (2016))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015))

◊   Retained as an expert witness concerning adequacy of putative class representatives in securities class action (*Medoff v. CVS Caremark Corp.,* Case No. 1:09-cv-00554 (D.R.I. (2015))

◊   Submitted an expert witness declaration concerning reasonableness of proposed class action settlement, settlement class certification, attorney's fees, and incentive awards (*Fitzgerald Farms, LLC v. Chespeake Operating, L.L.C.,* Case No. CJ-2010-38, Dist. Ct., Beaver County, Oklahoma (2015))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request, referenced by court in awarding fees (*Asghari v. Volkswagen Grp. of Am., Inc*., 2015 WL 12732462 (C.D. Cal. May 29, 2015))

◊   Submitted an expert witness declaration concerning propriety of severing individual cases from class action and resulting statute of repose ramifications (*In re: American   International Group, Inc. 2008 Securities Litigation,* 08-CV-4772-LTS-DCF (S.D.N.Y. (2015))

◊   Retained by Fortune Global 100 Corporation as an expert witness on fee matter that settled before testimony (2015)

◊   Submitted an expert witness declaration and testified at Special Master proceeding concerning reasonableness of attorney's fee allocation in sealed fee mediation (2014-2015)

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*In re: Hyundai and Kia Fuel Economy Litigation,* MDL 13-02424 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning reasonableness of attorney's fee request (*Ammari Electronics v. Pacific Bell Directory*, Case No. RG0522096, California Superior Court, Alameda County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Deutsche Bank Securities, Inc.,* Case No. CGC-10-497839, California Superior Court, San Francisco County (2014))

◊   Submitted an expert witness declaration and deposed concerning plaintiff class action practices under the Private Securities Litigation Reform Act of 1995 (PSLRA), as related to statute of limitations question (*Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC,* Case No. CGC-10-497840, California Superior Court, San Francisco County (2014))

◊   Retained as expert witness on proper level of common benefit fee in MDL (*In re Neurontin Marketing and Sales Practice Litigation,* Civil Action No. 04-10981, MDL 1629 (D. Mass. (2014))

◊   Submitted an expert witness declaration concerning Rule 23(g) selection of competing counsel,

referenced by court in deciding issue (*White v. Experian Information Solutions, Inc.,* 993 F. Supp. 2d 1154 (C.D. Cal. (2014))

◊   Submitted an expert witness declaration concerning proper approach to attorney's fees under California law in a statutory fee-shifting case (*Perrin v. Nabors Well Services Co.,* Case No. 1220037974, Judicial Arbitration and Mediation Services (JAMS) (2013))

◊   Submitted an expert witness declaration concerning fairness and adequacy of proposed nationwide class action settlement (*Verdejo v. Vanguard Piping Systems,* Case No. BC448383, California Superior Court, Los Angeles County (2013))

◊   Retained as an expert witness regarding fairness, adequacy, and reasonableness of proposed nationwide consumer class action settlement  (*Herke v. Merck,* No. 2:09-cv-07218, MDL Docket No. 1657 (*In re Vioxx Products Liability Litigation*) (E. D. La. (2013))

◊   Retained as an expert witness concerning ascertainability requirement for class certification and related issues (*Henderson v. Acxiom Risk Mitigation, Inc.,* Case No. 3:12-cv-00589-REP (E.D. Va. (2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and performing analysis of Anet expected value@ of settlement benefits, relied on by court in approving settlement (*In re Navistar Diesel Engine Products Liab. Litig.*, 2013 WL 10545508 (N.D. Ill. July 3, 2013))

◊   Submitted an expert witness declaration concerning reasonableness of class action settlement and attorney's fee request (*Commonwealth Care All. v. Astrazeneca Pharm. L.P.*, 2013 WL 6268236 (Mass. Super. Aug. 5, 2013))

◊   Submitted an expert witness declaration concerning propriety of preliminary settlement approval in nationwide consumer class action settlement (*Anaya v. Quicktrim, LLC,* Case No.  CIVVS 120177, California Superior Court, San Bernardino County (2012))

◊   Submitted expert witness affidavit concerning fee issues in common fund class action (*Tuttle v. New Hampshire Med. Malpractice Joint Underwriting Assoc.,* Case No. 217-2010-CV-00294, New Hampshire Superior Court, Merrimack County (2012))

◊   Submitted expert witness declaration and deposed concerning class certification issues in nationwide fraud class action, relied upon by the court in affirming class certification order (*CVS Caremark Corp. v. Lauriello,* 175 So. 3d 596, 609-10 (Ala. 2014))

◊   Submitted expert witness declaration in securities class action concerning value of proxy disclosures achieved through settlement and appropriate level for fee award (*Rational Strategies Fund v. Jhung,* Case No. BC 460783, California Superior Court, Los Angeles County (2012))

◊   Submitted an expert witness report and deposed concerning legal malpractice in the defense of a class action lawsuit (*KB Home v. K&L Gates, LLP,* Case No. BC484090, California Superior Court, Los Angeles County (2011))

◊  Retained as expert witness on choice of law issues implicated by proposed nationwide class certification (*Simon v. Metropolitan Property and Cas. Co.,* Case No. CIV-2008-1008-W (W.D. Ok. (2011))

◊  Retained, deposed, and testified in court as expert witness in fee-related dispute (*Blue, et al. v. Hill,*Case No. 3:10-CV-02269-O-BK (N.D. Tex. (2011))

◊  Retained as an expert witness in fee-related dispute (*Furth v. Furth*, Case No. C11-00071-DMR (N.D. Cal. (2011))

◊  Submitted expert witness declaration concerning interim fee application in complex environmental class action (*DeLeo v. Bouchard Transportation,* Civil Action No. PLCV2004-01166-B, Massachusetts Superior Court (2010))

◊  Retained as an expert witness on common benefit fee issues in MDL proceeding in federal court (*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La. (2010))

◊  Submitted expert witness declaration concerning fee application in securities case, referenced by court in awarding fee (*In re AMICAS, Inc. Shareholder Litigation,* 27 Mass. L. Rptr. 568 (Mass. Sup. Ct. (2010))

◊  Submitted an expert witness declaration concerning fee entitlement and enhancement in non-common fund class action settlement, relied upon by the court in awarding fees (*Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-74 (C.D. Cal. 2010))

◊  Submitted an expert witness declaration concerning class action fee allocation among attorneys (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊  Submitted an expert witness declaration concerning settlement approval and fee application in wage and hour class action settlement (*Salvas v. Wal-Mart*, Civil Action No. 01-03645, Massachusetts Superior Court (2010))

◊  Submitted an expert witness declaration concerning objectors' entitlement to attorney's fees (*Rodriguez v. West Publishing Corp.,* Case No. CV-05-3222 (C.D. Cal. (2010))

◊  Submitted an expert witness declaration concerning fairness of settlement provisions and processes, relied upon by the Ninth Circuit in reversing district court's approval of class action settlement (*Radcliffe v. Experian Inform. Solutions Inc.*, 715 F.3d 1157, 1166 (9th Cir. 2013))

◊  Submitted an expert witness declaration concerning attorney's fees in class action fee dispute, relied upon by the court in deciding fee issue (*Ellis v. Toshiba America Information Systems, Inc.*, 218 Cal. App. 4th 853, 871, 160 Cal. Rptr. 3d 557, 573 (2d Dist. 2013))

◊  Submitted an expert witness declaration concerning common benefit fee in MDL proceeding in federal court (*In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo. (2009))

◊   Submitted an expert witness declaration concerning settlement approval and fee application in national MDL class action proceeding (*In re Wal-Mart Wage and Hour Employment Practices Litigation*, MDL Docket No.1735 (D. Nev. (2009))

◊   Submitted an expert witness declaration concerning fee application in national MDL class action proceeding, referenced by court in awarding fees (*In re Dept. of Veterans Affairs (VA) Data Theft Litigation*, 653 F. Supp.2d 58 (D.D.C. (2009))

◊   Submitted an expert witness declaration concerning common benefit fee in mass tort MDL proceeding in federal court (*In re Kugel Mesh Products Liability Litigation*, MDL Docket No. 1842 (D. R.I. (2009))

◊   Submitted an expert witness declaration and supplemental declaration concerning common benefit fee in consolidated mass tort proceedings in state court (*In re All Kugel Mesh Individual Cases*, Master Docket No. PC-2008-9999, Superior Court, State of Rhode Island (2009))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Warner v. Experian Information Solutions, Inc.*, Case No.   BC362599, California Superior Court, Los Angeles County (2009))

◊   Submitted an expert witness declaration concerning process for selecting lead counsel in complex MDL antitrust class action (*In re Rail Freight Fuel Surcharge Antitrust Litigation*, MDL Docket No. 1869 (D. D.C. (2008))

◊   Retained, deposed, and testified in court as expert witness on procedural issues in complex class action (*Hoffman v. American Express*, Case No. 2001-022881, California Superior Court, Alameda County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Salsgiver v. Yahoo! Inc.*, Case No. BC367430, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in wage and hour class action (*Voight v. Cisco Systems, Inc.*, Case No. 106CV075705, California Superior Court, Santa Clara County (2008))

◊   Retained and deposed as expert witness on fee issues in attorney fee dispute (*Stock v. Hafif*, Case No. KC034700, California Superior Court, Los Angeles County (2008))

◊   Submitted an expert witness declaration concerning fee application in consumer class action (*Nicholas v. Progressive Direct*, Civil Action No. 06-141-DLB (E.D. Ky. (2008))

◊   Submitted expert witness declaration concerning procedural aspects of national class action arbitration (*Johnson v. Gruma Corp.,* JAMS Arbitration No. 1220026252 (2007))

◊   Submitted expert witness declaration concerning fee application in securities case (*Drulias v. ADE Corp.,* Civil Action No. 06-11033 PBS (D. Mass. (2007))

◊   Submitted expert witness declaration concerning use of expert witness on complex litigation matters in criminal trial (*U.S. v. Gallion, et al.*, No. 07-39 (E. D. Ky. (2007))

◊   Retained as expert witness on fees matters (*Heger v. Attorneys' Title Guaranty Fund, Inc.,* No. 03-L-398, Illinois Circuit Court, Lake County, IL (2007))

◊   Retained as expert witness on certification in statewide insurance class action (*Wagner v. Travelers Property Casualty of America*, No. 06CV338, Colorado District Court, Boulder County, CO (2007))

◊   Testified as expert witness concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corporate Derivative Litigation*, Case No. 01098905, California Superior Court, Santa Barbara Cty, CA (2006))

◊   Submitted expert witness declaration concerning fee application in common fund shareholder derivative case (*In Re Tenet Health Care Corp. Corporate Derivative Litigation*, Case No. CV-03-11 RSWL (C.D. Cal. (2006))

◊   Retained as expert witness as to certification of class action (*Canova v. Imperial Irrigation District*, Case No. L-01273, California Superior Court, Imperial Cty, CA (2005))

◊   Retained as expert witness as to certification of nationwide class action (*Enriquez v. Edward D. Jones & Co.,* Missouri Circuit Court, St. Louis, MO (2005))

◊   Submitted expert witness declaration on procedural aspects of international contract litigation filed in court in Korea (*Estate of Wakefield v. Bishop Han & Jooan Methodist Church* (2002))

◊   Submitted expert witness declaration as to contested factual matters in case involving access to a public forum (*Cimarron Alliance Foundation v. The City of Oklahoma City,* Case No. Civ. 2001-1827-C (W.D. Ok. (2002))

◊   Submitted expert witness declaration concerning reasonableness of class certification, settlement, and fees (*Baird v. Thomson Elec. Co.*, Case No. 00-L-000761, Cir. Ct., Mad. Cty, IL (2001))

*Expert Consultant*

◊   Provided expert consulting services to the ACLU on multi-district litigation issues arising out of various challenges to President Trump's travel ban and related policies (*In re American Civil Liberties Union Freedom of Information Act Requests Regarding Executive Order 13769*, Case Pending No. 28, Judicial Panel on Multidistrict Litigation (2017); *Darweesh v. Trump*, Case No. 1:17-cv-00480-CBA-LB (E.D.N.Y. (2017))

◊   Provided expert consulting services to law firm regarding billing practices and fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to law firm regarding fee allocation issues in nationwide class action (2016)

◊   Provided expert consulting services to the ACLU of Southern California on class action and procedural issues arising out of challenges to municipality's treatment of homeless persons with disabilities (*Glover v. City of Laguna Beach*, Case No. 8:15-cv-01332-AG-DFM (C.D. Cal. (2016))

◊   Retained as an expert consultant on class certification issues (*In re: Facebook, Inc., IPO Securities and Derivative Litigation*, No. 1:12-md-2389 (S.D.N.Y. 2015))

◊   Provided expert consulting services to lead class counsel on class certification issues in nationwide class action (2015)

◊   Retained by a Fortune 100 Company as an expert consultant on class certification issues

◊   Retained as an expert consultant on class action and procedure related issues (*Lange et al v. WPX Energy Rocky Mountain LLC*, Case No. 2:13-cv-00074-ABJ (D. Wy. (2013))

◊   Retained as an expert consultant on class action and procedure related issues (*Flo & Eddie, Inc., v. Sirius XM Radio, Inc.*, Case No. CV 13-5693 (C.D. Cal. (2013))

◊   Served as an expert consultant on substantive and procedural issues in challenge to legality of credit card late and over-time fees (*In Re Late Fee and Over-Limit Fee Litigation*, 528 F.Supp.2d 953 (N.D. Cal. 2007), *aff'd*, 741 F.3d 1022 (9th Cir. 2014))

◊   Retained as an expert on Class Action Fairness Act (CAFA) removal issues and successfully briefed and argued remand motion based on local controversy exception (*Trevino, et al. v. Cummins, et al.*, No. 2:13-cv-00192-JAK-MRW (C. D. Cal. (2013))

◊   Retained as an expert consultant on class action related issues by consortium of business groups (*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La. (2012))

◊   Provided presentation on class certification issues in nationwide medical monitoring classes (*In re: National Football League Players' Concussion Injury Litigation,* MDL No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012))

◊   Retained as an expert consultant on class action related issues in mutli-state MDL consumer class action (*In re Sony Corp. SXRD Rear Projection Television Marketing, Sales Practices & Prod. Liability Litig.*, MDL No. 2102 (S.D. N.Y. (2009))

◊   Retained as an expert consultant on class action certification, manageability, and related issues in mutli-state MDL consumer class action (*In re Teflon Prod. Liability Litig.*, MDL No. 1733 (S.D. Iowa (2008))

◊   Retained as an expert consultant/co-counsel on certification, manageability, and related issues in

nationwide anti-trust class action (*Brantley v. NBC Universal*, No.- CV07-06101 (C.D. Cal. (2008))

◇   Retained as an expert consultant on class action issues in complex multi-jurisdictional construction dispute (*Antenucci, et al., v. Washington Assoc. Residential Partner, LLP, et al.,* Civil No. 8-04194 (E.D. Pa. (2008))

◇   Retained as an expert consultant on complex litigation issues in multi-jurisdictional class action litigation (*McGreevey v. Montana Power Company*, No. 08-35137, U.S. Court of Appeals for the Ninth Circuit (2008))

◇   Retained as an expert consultant on class action and attorney fee issues in nationwide consumer class action (*Figueroa v. Sharper Image*, 517 F.Supp.2d 1292 (S.D. Fla. 2007))

◇   Retained as an expert consultant on attorney's fees issue in complex class action case (*Natural Gas Anti-Trust Cases Coordinated Proceedings*, D049206, California Court of Appeals, Fourth District (2007))

◇   Retained as an expert consultant on remedies and procedural matters in complex class action (*Sunscreen Cases*, JCCP No. 4352, California Superior Court, Los Angeles County (2006))

◇   Retained as an expert consultant on complex preclusion questions in petition for review to California Supreme Court (*Mooney v. Caspari,* Supreme Court of California (2006))

◇   Retained as an expert consultant on attorney fee issues in complex common fund case (*In Re DietDrugs (Phen/Fen) Products Liability Litigation* (E. D. Pa. (2006))

◇   Retained as an expert consultant on procedural matters in series of complex construction lien cases (*In re Venetian Lien Litigation*, Supreme Court of the State of Nevada (2005-2006))

◇   Served as an expert consultant on class certification issues in countywide class action (*Beauchamp v. Los Angeles Cty. Metropolitan Transp. Authority*, (C.D. Cal. 2004))

◇   Served as an expert consultant on class certification issues in state-wide class action (*Williams v. State of California*, Case No. 312-236, Cal. Superior Court, San Francisco)

◇   Served as an exert consultant on procedural aspects of complex welfare litigation (*Allen v. Anderson*, 199 F.3d 1331 (9th Cir. 1999))

*Ethics Opinions*

◇   Retained to provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2017))

◇   Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2013))

◊    Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2011))

◊    Provided expert opinion on issues of professional ethics in implicated by nationwide class action practice (*In re Professional Responsibility Inquiries* (2010))

◊    Provided expert opinion on issues of professional ethics implicated by complex litigation matter (*In re Professional Responsibility Inquiries* (2010))

◊    Provided expert opinion on issues of professional ethics in complex litigation matter (*In re Professional Responsibility Inquiries* (2007))

*Publications on Class Actions & Procedure*

◊    NEWBERG ON CLASS ACTIONS (sole since 2008, sole author of entirely re-written Fifth Edition (2011-2018))

◊    *Profit for Costs*, 63 DEPAUL L. REV. 587 (2014) (with Morris A. Ratner)

◊    *Procedure and Society: An Essay for Steve Yeazell,* 61 U.C.L.A. REV. DISC. 136 (2013)

◊    *Supreme Court Round-Up – Part II*, 5 CLASS ACTION ATTORNEY FEE DIGEST 331 (September 2011)

◊    *Supreme Court Round-Up – Part I*, 5 CLASS ACTION ATTORNEY FEE DIGEST 263 (July-August 2011)

◊    *Class Action Fee Award* Procedures, 5 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2011)

◊    *Benefits of Class Action Lawsuits*, 4 CLASS ACTION ATTORNEY FEE DIGEST 423 (November 2010)

◊    *Contingent Fees for Representing the Government: Developments in California Law*, 4 CLASS ACTION ATTORNEY FEE DIGEST 335 (September 2010)

◊    *Supreme Court Roundup*, 4 CLASS ACTION ATTORNEY FEE DIGEST 251 (July 2010)

◊    *SCOTUS Okays Performance Enhancements in Federal Fee Shifting Cases – At Least In Principle,* 4 CLASS ACTION ATTORNEY FEE DIGEST 135 (April 2010)

◊    *The Puzzling Persistence of the A Mega-Fund@ Concept*, 4 CLASS ACTION ATTORNEY FEE DIGEST 39 (February 2010)

◊    *2009: Class Action Fee Awards Go Out With A Bang, Not A Whimper*, 3 CLASS ACTION ATTORNEY FEE DIGEST 483   (December 2009)

◊    *Privatizing Government Litigation: Do Campaign Contributors Have An Inside Track?*, 3 CLASS ACTION ATTORNEY FEE DIGEST 407   (October 2009)

**A-12**

◊   *Supreme Court Preview*, 3 CLASS ACTION ATTORNEY FEE DIGEST 307 (August 2009)

◊   *Supreme Court Roundup*, 3 CLASS ACTION ATTORNEY FEE DIGEST 259 (July 2009)

◊   *What We Now Know About How Lead Plaintiffs Select Lead Counsel (And Hence Who Gets Attorney's Fees!) in Securities Cases*, 3 CLASS ACTION ATTORNEY FEE DIGEST 219 (June 2009)

◊   *Beware Of Ex Ante Incentive Award Agreements*, 3 CLASS ACTION ATTORNEY FEE DIGEST 175 (May 2009)

◊   *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 CLASS ACTION ATTORNEY FEE DIGEST 87 (March 2009)

◊   *2009: Emerging Issues in Class Action Fee Awards*, 3 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2009)

◊   *2008: The Year in Class Action Fee Awards*, 2 CLASS ACTION ATTORNEY FEE DIGEST 465 (December 2008)

◊   *The Largest Fee Award – Ever!*, 2 CLASS ACTION ATTORNEY FEE DIGEST 337 (September 2008)

◊   *Why Are Fee Reductions Always 50%?: On The Imprecision of Sanctions for Imprecise Fee Submissions*, 2 CLASS ACTION ATTORNEY FEE DIGEST 295 (August 2008)

◊   *Supreme Court Round-Up*, 2 CLASS ACTION ATTORNEY FEE DIGEST 257 (July 2008)

◊   *Fee-Shifting For Wrongful Removals: A Developing Trend?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 177 (May 2008)

◊   *You Cut, I Choose:  (Two Recent Decisions About) Allocating Fees Among Class Counsel,* 2 CLASS ACTION ATTORNEY FEE DIGEST 137 (April 2008)

◊   *Why The Percentage Method?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 93 (March 2008)

◊   *Reasonable Rates: Time To Reload The (*Laffey*) Matrix,* 2 CLASS ACTION ATTORNEY FEE DIGEST 47 (February 2008)

◊   *The "Lodestar Percentage" A New Concept For Fee Decisions?,* 2 CLASS ACTION ATTORNEY FEE DIGEST 3 (January 2008)

◊   *Class Action Practice Today: An Overview, in* ABA SECTION OF LITIGATION, CLASS ACTIONS TODAY 4 (2008)

◊   *Shedding Light on Outcomes in Class Actions*, *in* CONFIDENTIALITY, TRANSPARENCY, AND THE U.S. CIVIL JUSTICE SYSTEM 20-59 (Joseph W. Doherty, Robert T. Reville, and Laura Zakaras eds. 2008) (with Nicholas M. Pace)

◊     *Finality in Class Action Litigation: Lessons From Habeas,* 82 N.Y.U. L. REV. 791 (2007)

◊     *The American Law Institute's New Approach to Class Action Objectors' Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 347 (November 2007)

◊     *The American Law Institute's New Approach to Class Action Attorney's Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 307 (October 2007)

◊     *"The Lawyers Got More Than The Class Did!":  Is It Necessarily Problematic When Attorneys Fees Exceed Class Compensation?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 233 (August 2007)

◊     *Supreme Court Round-Up,* 1 CLASS ACTION ATTORNEY FEE DIGEST 201 (July 2007)

◊     *On The Difference Between Winning and Getting Fees,* 1 CLASS ACTION ATTORNEY FEE DIGEST 163 (June 2007)

◊     *Divvying Up The Pot: Who Divides Aggregate Fee Awards, How, and How Publicly?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 127 (May 2007)

◊     *On Plaintiff Incentive Payments,* 1 CLASS ACTION ATTORNEY FEE DIGEST 95 (April 2007)

◊     *Percentage of What?,* 1 CLASS ACTION ATTORNEY FEE DIGEST 63 (March 2007)

◊     *Lodestar v. Percentage: The Partial Success Wrinkle,* 1 CLASS ACTION ATTORNEY FEE DIGEST 31 (February 2007) (with Alan Hirsch)

◊     *The Fairness Hearing:  Adversarial and Regulatory Approaches*, 53 U.C.L.A. L. REV. 1435 (2006) (excerpted in THE LAW OF CLASS ACTIONS AND OTHER AGGREGATE LITIGATION 447-449 (Richard A. Nagareda ed., 2009))

◊     *Why Enable Litigation?  A Positive Externalities Theory of the Small Claims Class Action*, 74 U.M.K.C. L. REV. 709 (2006)

◊     *What a "Private Attorney General" Is – And Why It Matters*, 57 VAND. L. REV.  2129(2004) (excerpted in COMPLEX LITIGATION 63-72 (Kevin R. Johnson, Catherine A. Rogers & John Valery White eds., 2009)).

◊     *The Concept of Equality in Civil Procedure*, 23 CARDOZO L. REV. 1865 (2002) (selected for the Stanford/Yale Junior Faculty Forum, June 2001)

◊     *A Transactional Model of Adjudication*, 89 GEORGETOWN  L.J. 371 (2000)

◊     *The Myth of Superiority*, 16 CONSTITUTIONAL COMMENTARY 599 (1999)

◊     *Divided We Litigate:  Addressing Disputes Among Clients and Lawyers in Civil Rights Campaigns*,

106 YALE L. J. 1623 (1997) *(excerpted in* COMPLEX LITIGATION 120-123 (1998))

*Selected Presentations*

◊   *Class Action Law Update,* MDL Transferee Judges Conference, Palm Beach, Florida, October 31, 2018

◊   *Attorneys' Fees Issues,* MDL Transferee Judges Conference, Palm Beach, Florida, October 30, 2018

◊   *Panelist,* Federal Judicial Center, Managing Multidistrict Litigation and Other Complex Litigation Workshop (for federal judges) (March 15, 2018)

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 1, 2017

◊   *Class Action Update,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2016

◊   *Judicial Power and its Limits in Multidistrict Litigation,* American Law Institute, Young Scholars Medal Conference, *The Future of Aggregate Litigation*, New York University School of Law, New York, New York, April 12, 2016

◊   *Class Action Update & Attorneys' Fees Issues Checklist,* MDL Transferee Judges Conference, Palm Beach, Florida, October 28, 2015

◊   *Class Action Law,* 2015 Ninth Circuit/Federal Judicial Center Mid-Winter Workshop, Tucson, Arizona, January 26, 2015

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2014

◊   *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 29, 2013

◊   *Class Action Remedies,* ABA 2013 National Institute on Class Actions, Boston, Massachusetts, October 23, 2013

◊   *The Public Life of the Private Law: The Logic and Experience of Mass Litigation – Conference in Honor of Richard Nagareda,* Vanderbilt Law School, Nashville, Tennessee, September 27-28, 2013

◊   *Brave New World: The Changing Face of Litigation and Law Firm Finance*, Clifford Symposium 2013, DePaul University College of Law, Chicago, Illinois, April 18-19, 2013

◊   *Twenty-First Century Litigation: Pathologies and Possibilities: A Symposium in Honor of Stephen Yeazell,* UCLA Law Review, UCLA School of Law, Los Angeles, California, January 24-25, 2013

◊   *Litigation's Mirror: The Procedural Consequences of Social Relationships,* Sidley Austin Professor of Law Chair Talk, Harvard Law School, Cambridge, Massachusetts, October 17, 2012

◊  *Alternative Litigation Funding (ALF) in the Class Action Context – Some Initial Thoughts*, Alternative Litigation Funding: A Roundtable Discussion Among Experts, George Washington University Law School, Washington, D.C., May 2, 2012

◊  *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Brooklyn Law School Faculty Workshop, Brooklyn, New York, April 2, 2012

◊  *The Operation of Preclusion in Multidistrict Litigation (MDL) Cases*, Loyola Law School Faculty Workshop, Los Angeles, California, February 2, 2012

◊  *Recent Developments in Class Action Law and Impact on MDL Cases,* MDL Transferee Judges Conference, Palm Beach, Florida, November 2, 2011

◊  *Recent Developments in Class Action Law,* MDL Transferee Judges Conference, Palm Beach, Florida, October 26, 2010

◊  *A General Theory of the Class Suit*, University of Houston Law Center Colloquium, Houston, Texas, February 3, 2010

◊  *Unpacking The "Rigorous Analysis" Standard,* ALI-ABA 12th Annual National Institute on Class Actions, New York, New York, November 7, 2008

◊  *The Public Role in Private Law Enforcement: Visions from CAFA*, University of California (Boalt Hall) School of Law Civil Justice Workshop, Berkeley, California, February 28, 2008

◊  *The Public Role in Private Law Enforcement: Visions from CAFA*, University of Pennsylvania Law Review Symposium, Philadelphia, Pennsylvania, Dec. 1, 2007

◊  *Current CAFA Consequences: Has Class Action Practice Changed?,* ALI-ABA 11th Annual National Institute on Class Actions, Chicago, Illinois, October 17, 2007

◊  *Using Law Professors as Expert Witnesses in Class Action Lawsuits,* ALI-ABA 10th Annual National Institute on Class Actions, San Diego, California, October 6, 2006

◊  *Three Models for Transnational Class Actions*, Globalization of Class Action Panel, International Law Association 2006 Conference, Toronto, Canada, June 6, 2006

◊  *Why Create Litigation?:  A Positive Externalities Theory of the Small Claims Class Action*, UMKC Law Review Symposium, Kansas City, Missouri, April 7, 2006

◊  *Marks, Bonds, and Labels:  Three New Proposals for Private Oversight of Class Action Settlements*, UCLA Law Review Symposium, Los Angeles, California, January 26, 2006

◊  Class Action Fairness Act, Arnold & Porter, Los Angeles, California, December 6, 2005

◊  ALI-ABA 9th Annual National Institute on Class Actions, Chicago, Illinois, September 23, 2005

◊   Class Action Fairness Act, UCLA Alumni Assoc., Los Angeles, California, September 9, 2005

◊   Class Action Fairness Act, Thelen Reid & Priest, Los Angeles, California, May 12, 2005

◊   Class Action Fairness Act, Sidley Austin, Los Angeles, California, May 10, 2005

◊   Class Action Fairness Act, Munger, Tolles & Olson, Los Angeles, California, April 28, 2005

◊   Class Action Fairness Act, Akin Gump Strauss Hauer Feld, Century City, CA, April 20, 2005

SELECTED OTHER LITIGATION EXPERIENCE

*United States Supreme Court*

◊   Served as *amicus curiae* and authored *amicus* brief on proper approach to *cy pres* award in class action lawsuits (*Frank v. Gaos*, No. 17-961, October Term 2018)

◊   Co-counsel on petition for writ of *certiorari* concerning application of the voluntary cessation doctrine to government defendants (*Rosebrock v. Hoffman*, 135 S. Ct.1893 (2015))

◊   Authored *amicus* brief filed on behalf of civil procedure and complex litigation law professors concerning the importance of the class action lawsuit (*AT&T Mobility v. Concepcion,* No. 09-893, 131 S. Ct. 1740 (2011)

◊   Co-counsel in constitutional challenge to display of Christian cross on federal land in California's Mojave preserve (*Salazar v. Buono*, 130 S. Ct. 1803 (2010))

◊   Co-authored *amicus* brief filed on behalf of constitutional law professors arguing against constitutionality of Texas criminal law (*Lawrence v. Texas*, 539 U.S. 558 (2003))

◊   Co-authored *amicus* brief on scope of *Miranda* (*Illinois v. Perkins*, 496 U.S. 292 (1990))

*Attorney's Fees*

◊   Appointed by the United States District Court for the Eastern District of Pennsylvania as an expert witness on attorney's fees in complex litigation, with result that the Court adopted recommendations (*In re National Football League Players' Concussion Injury Litigation*, 2018 WL 1658808 (E.D.Pa. April 5, 2018))

◊   Appointed by the United States Court of Appeals for the Second Circuit to argue for affirmance of district court fee decision in complex securities class action, with result that the Court summarily affirmed the decision below (*In re Indymac Mortgage-Backed Securities Litigation*, 94 F.Supp.3d 517 (S.D.N.Y. 2015), *aff'd sub. nom.*, *DeValerio v. Olinski*, 673 F. App'x 87, 90 (2d Cir. 2016)).

◊   Served as *amicus curiae* and co-authored *amicus* brief on proper approach to attorney's fees in common

**A-17**

fund cases, relied on by the court in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504, 376 P.3d 672, 687 (2016).

### Consumer Class Action

◊   Co-counsel in challenge to antenna-related design defect in Apple's iPhone4 (*Dydyk v. Apple Inc.,* 5:10-cv-02897-HRL, U.S. Dist. Court, N.D. Cal.) (complaint filed June 30, 2010)

◊   Co-class counsel in $8.5 million nationwide class action settlement challenging privacy concerns raised by Google's Buzz social networking program (*In re Google Buzz Privacy Litigation,* 5:10-cv-00672-JW, U.S. Dist. Court, N.D. Cal.) (amended final judgment June 2, 2011)

### Disability

◊   Co-counsel in successful ADA challenge ($500,000 jury verdict) to the denial of health care in emergency room (*Howe v. Hull*, 874 F. Supp. 779, 873 F. Supp 72 (N.D. Ohio 1994))

### Employment

◊   Co-counsel in challenges to scope of family benefit programs (*Ross v. Denver Dept. of Health*, 883 P.2d 516 (Colo. App. 1994)); *(Phillips v. Wisc. Personnel Com'n*, 482 N.W.2d 121 (Wisc. 1992))

### Equal Protection

◊   Co-counsel in (state court phases of) successful challenge to constitutionality of a Colorado ballot initiative, Amendment 2 (*Evans v. Romer*, 882 P.2d 1335 (Colo. 1994))

◊   Co-counsel (and *amici*) in challenges to rules barring military service by gay people (*Able v. United States*, 44 F.3d 128 (2d Cir. 1995); *Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994) (*en banc*))

◊   Co-counsel in challenge to the constitutionality of the Attorney General of Georgia' firing of staff attorney (*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997))

### Fair Housing

◊   Co-counsel in successful Fair Housing Act case on behalf of group home (*Hogar Agua y Vida En el Desierto v. Suarez-Medina*, 36 F.3d 177 (1st Cir. 1994))

### Family Law

◊   Co-counsel in challenge to constitutionality of Florida law limiting adoption (*Cox v. Florida Dept. of Health and Rehab. Srvcs.*, 656 So.2d 902 (Fla. 1995))

◊   Co-authored *amicus* brief in successful challenge to Hawaii ban on same-sex marriages (*Baehr v. Lewin*, 852 P.2d 44 (Haw. 1993))

### *First Amendment*

◊   Co-counsel in successful challenge to constitutionality of Alabama law barring state funding foruniversity student groups (*GLBA v. Sessions*, 930 F.Supp. 1492 (M.D. Ala. 1996))

◊   Co-counsel in successful challenge to content restrictions on grants for AIDS education materials (*Gay Men's Health Crisis v. Sullivan*, 792 F.Supp. 278 (S.D.N.Y. 1992))

### *Landlord / Tenant*

◊   Lead counsel in successful challenge to rent control regulation (*Braschi v. Stahl Associates Co.*, 544 N.E.2d 49 (N.Y. 1989))

### *Police*

◊   Co-counsel in case challenging DEA brutality (*Anderson v. Branen*, 27 F.3d 29 (2nd Cir. 1994))

### *Racial Equality*

◊   Co-authored *amicus* brief for constitutional law professors challenging constitutionality of Proposition 209 *(Coalition for Economic Equity v. Wilson*, 110 F.3d 1431 (9th Cir. 1997))

### SELECTED OTHER PUBLICATIONS

### *Editorials*

◊   *Follow the Leaders*, NEW YORK TIMES, March 15, 2005

◊   *Play It Straight*, NEW YORK TIMES, October 16, 2004

◊   *Hiding Behind the Constitution*, NEW YORK TIMES, March 20, 2004

◊   *Toward More Perfect Unions,* NEW YORK TIMES, November 20, 2003 (with Brad Sears)

◊   *Don't Ask, Don't Tell, Don't Believe It*, NEW YORK TIMES, July 20, 1993

◊   *AIDS: Illness and Injustice*, WASH. POST, July 26, 1992 (with Nan D. Hunter)

BAR ADMISSIONS

◊   Massachusetts (2008)

◊   California (2004)

◊   District of Columbia (1987) (inactive)

◊   Pennsylvania (1986) (inactive)

◊   U.S. Supreme Court (1993)

◊   U.S. Court of Appeals for the First Circuit (2010)

◊   U.S. Court of Appeals for the Second Circuit (2015)

◊   U.S. Court of Appeals for the Fifth Circuit (1989)

◊   U.S. Court of Appeals for the Ninth Circuit (2004)

◊   U.S. Court of Appeals for the Eleventh Circuit (1993)

◊   U.S. Court of Appeals for the D.C. Circuit (1993)

◊   U.S. District Courts for the Central District of California (2004)

◊   U.S. District Court for the District of the District of Columbia (1989)

◊   U.S. District Court for the District of Massachusetts (2010)

◊   U.S. District Court for the Northern District of California (2010)

# EXHIBIT B

*In re:  Generic Pharmaceuticals Pricing Antitrust Litigation*
Case No. 16-MD-02724
U.S. District Court for the Eastern District of Pennsylvania
Expert Declaration of William B. Rubenstein

**EXHIBIT B**
Partial List of Documents Reviewed by Professor Rubenstein

A.   ***In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, 16-MD-02724**
1. *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724, 2017 WL 4582710 (U.S. Jud. Pan. Mult. Lit. Aug. 3, 2017)
2. Transfer Order from the Judicial Panel on Multidistrict Litigation, ECF No. 1
3. *In re Generic Digoxin and Doxycyline Antitrust Litigation*, 222 F.Supp.3d 1341 (U.S. Jud. Pan. Mult. Lit. 2017)
4. *In re: Generic Drug Pricing Antitrust Litigation*, 227 F.Supp.3d 1402 (U.S. Jud. Pan. Mult. Lit. 2016)
5. Pretrial Order No. 13 (Proposals Regarding Structure of Expanded MDL), ECF No. 196
6. Defendants' Status Report, ECF No. 271
7. Status Report of the Plaintiffs' Steering Committee Pursuant to Pretrial Order No. 13, ECF No. 272
8. Pretrial Order No. 17 (PSC and Defense Liaison Counsel Applications), ECF No. 305
9. Pretrial Order No. 21 (Plaintiffs' Steering Committees) (Superseding Pretrial Order Nos. 6 and 9), ECF No. 342
10. Pretrial Order No. 22 (Defense Liaison Counsel) (Superseding Pretrial Order No. 3), ECF No. 343
11. Pretrial Order No. 37 (Duties and Authority of Lead Counsel) (Superseding Pretrial Order No. 10), ECF No. 507
12. Pretrial Order No. 42 (Change to the End-Payer Plaintiffs' Steering Committee), ECF No. 556
13. Order Incorporating Kroger Into MDL, ECF. No. 568
14. Pretrial Order No. 64 (Status Conferences), ECF No. 797
15. Pretrial Order No. 84 (Changes to the Indirect Reseller Plaintiffs' Steering Committee), ECF No. 933
16. [Proposed] Order Granting Direct Purchaser Plaintiffs' Motion for Entry of a Set-Aside Order, ECF No. 950-1
17. [Proposed] Order Granting End-Payer Plaintiffs' Motion for Entry of a Set-Aside Order, ECF No. 950-2
18. End-Payer Plaintiffs' and Direct Purchaser Plaintiffs' Memorandum of Law in Support of Motion for Entry of Set-Aside Orders, ECF No. 955
19. Plaintiffs Humana, Inc.'s and United Healthcare Services, Inc.'s Motion for an Extension of Time to Respond to End-Payor Plaintiffs' and Direct Purchaser Plaintiffs' Motion for Entry of Set-Aside Orders, ECF No. 960
20. Plaintiffs Humana, Inc.'s and United Healthcare Services, Inc.'s Brief in Support of Motion for an Extension of Time to Respond to End-Payor Plaintiffs' and Direct Purchaser Plaintiffs' Motion for Entry of Set-Aside Orders, ECF. No. 960-1

**B-1**

21. Plaintiff Humana Inc.'s Objections to the April 17, 2019 Report and Recommendation of Special Master David H. Marion on Issue of Appointment of a Liaison Counsel on Behalf of Direct-Action Plaintiffs, ECF No. 966

22. Plaintiff United Healthcare Services Inc.'s Response to Report and Recommendation of Special Master David Marion Regarding Liaison Counsel for Direct Action Plaintiffs, ECF No. 967

23. Exhibit A, United Objections to David Marion Report and Recommendation, ECF No. 967-1

24. Exhibit B, United Objections to David Marion Report and Recommendation, ECF No. 967-2

25. Exhibit C, United Objections to David Marion Report and Recommendation, ECF No. 967-3

26. Exhibit D, United Objections to David Marion Report and Recommendation, ECF No. 967-4

27. Exhibit E, United Objections to David Marion Report and Recommendation, ECF No. 967-5

28. Exhibit F, United Objections to David Marion Report and Recommendation, ECF No. 967-6

29. Exhibit G, United Objections to David Marion Report and Recommendation, ECF No. 967-7

30. Exhibit H, United Objections to David Marion Report and Recommendation, ECF No. 967-8

31. End-Payer Plaintiffs' and Direct Purchaser Plaintiffs' Memorandum in Support of the Report and Recommendation of Special Master David Marion Regarding Appointment of Liaison Counsel for Direct Action Plaintiffs, ECF No. 982

32. The Kroger Direct Action Plaintiffs' Response to United's and Humana's Objections to the Report and Recommendation of Special Master David H. Marion on the Issue of Appointment of a Liaison Counsel for Direct Action Plaintiffs, ECF No. 987

33. Report and Recommended Order from Special Master David H. Marion on the Issue of Appointment of a Liaison Counsel on Behalf of Direct Action Plaintiffs

**B.** ***United Healthcare Services Inc. v. Actavis Holdco U.S., Inc*, Case No. 0:19-cv-00121**
1. Complaint and Demand for Jury Trial, ECF No. 1

**C.** ***Humana, Inc. v. Actavis, LLC*, Case No. 2:18-cv-03299-CMR**
1. Complaint, ECF No. 1
2. Plaintiff Humana Inc.'s Brief in Support of Motion to Incorporate Its Action Into the MDL, ECF No. 22-1
3. Order Incorporating Humana, Inc. Into the MDL, ECF No. 24
4. Amended Complaint, ECF No. 29
5. Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims, ECF No. 73-1
6. Defendants' Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims, ECF No. 104
7. Second Amended Complaint, ECF No. 109
8. Plaintiffs' Joint Response in Opposition to Defendants' Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims, ECF No. 129