IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>Case No. 16-md-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*The Kroger Co., et al v. Actavis Holdco U.S. Inc., et al*, No: 2:18-cv-00284 (CMR) | HON. CYNTHIA M. RUFE |

# KROGER DAPS' SUR-REPLY IN
# OPPOSITION TO DPPS' MOTION FOR SET-ASIDE

I.      **Introduction**

There is a certain irony in DPPs' Reply questioning our[1] contribution towards the prosecution of this case. As this Court knows, when we applied to serve as DAP Liaison Counsel, we voluntarily disavowed financial compensation for this service despite knowing the considerable work involved,[2] and the Court's Order granting our application provides that we "shall not seek compensation for time incurred performing the liaison services...." PTO No. 89, Dkt. No. 1009 at 2. In working as DAP Liaison Counsel, we are providing many of the same professional services that DPPs' lead counsel are providing *with* an expectation of compensation subject to the Court's approval of a fee application.[3] We are serving as DAP Liaison Counsel without compensation *in addition to* all of the extensive work involved in prosecuting this case on behalf of our clients. This record demonstrates that we do not run from the work necessary in this case, but we run towards it, because we know that doing this work to advance the case serves the interest of the Court and all Plaintiffs, including our clients (and DPPs). Under these circumstances, we respectfully submit that this Court has good reason to question the correctness of DPPs' contention that we are overstating our contribution to this MDL, or that we might do so in the future.

For the reasons set forth below, along with those stated in our Response, Dkt. No. 1000, we respectfully submit that this Court should deny DPPs' motion for a set-aside.

---

[1]     The Kroger DAPs submit this Sur-Reply pursuant to the Court's Policies and Procedures for Civil Matters No. 7.

[2]     Having served as DAP liaison counsel in other MDL antitrust cases, we are keenly aware that done right, the position requires considerable professional time, effort and resources to be managed during the course of an otherwise busy and demanding antitrust practice.

[3]     *E.g.*, preparing for and attending Leadership Conferences; coordinating with Special Masters; coordinating with other plaintiffs' counsel; and preparing and transmitting communications with other plaintiffs' counsel.

1

First, DPPs fail to meet their burden of proving that they have performed any work *on their own* that conferred a benefit on the Kroger DAPs.  The Kroger DAPs – along with the States and IRPs – directly contributed to the vast majority of the claimed common benefit work that DPPs cite in their Reply.  The Third Circuit expressly limits the availability of common benefit awards to those instances in which "benefits may be traced with some accuracy and there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting."  *See In re Diet Drugs*, 582 F.3d 524, 550 (3d. Cir 2009).  DPPs do not meet this standard.

Second, DPPs have not refuted the Kroger DAPs' contention that the relief they seek is unprecedented.  This is an antitrust case, in which a set-aside order is unprecedented except in "*rare circumstances*" in which the litigation is "substantially advanced" – circumstances plainly not present here with the Kroger DAPs.  (Indeed, DPPs' own cases reveal that no Court has imposed a set-aside in an antitrust MDL prior to certifying a Class.)  Given the likely availability of a common fund from class-wide settlements, and also the existence of a fee-shifting provision under the Sherman Act, DPPs fail to demonstrate that they will not be fairly compensated for their efforts in this MDL.

Third, DPPs' papers confirm the Kroger DAPs' worst fears about the effect that a set-aside order would have on the efficient administration of the MDL.  Because of DPPs' (and EPPs') motion, these Classes and Humana and United have become adverse, and these DAPs have been excluded from contributing to certain common-interest projects.  As a result, this has impaired our ability, as DAP Liaison Counsel, "to assure that … communications from and to … any party to this MDL can be transmitted to all DAPs contemporaneously or as promptly as possible" as provided in PTO 89 [Dkt. No. 1009].  This is because we must first screen out any common-

interest work product prepared by Class Counsel. While progress has been made in integrating Humana and United into coordination with DPPs (and EPPs), problems persist.

**II.      Any Assessment Against the Kroger DAPs Would be Legally Improper Because We Have Contributed Substantially to the "Common Benefit Work" Cited by DPPs**

Even in mass-tort cases in which no fee-shifting statute applies and in which lead counsel typically represent a small minority of plaintiffs, the Third Circuit allows common fund awards only when benefits of lead counsel's work "may be traced with some accuracy and there is a reasonable basis for confidence that the costs may be shifted with some precision to those benefitting." *Diet Drugs*, 582 F.3d at 550 & n.51.

In the Kroger DAPs' opposition, we note that DPPs fail to cite a single piece of work product that they completed ***on their own*** that conferred benefit on the Kroger DAPs. In other words, if DPPs had never filed their case and had never participated in this MDL, then the Kroger DAPs would still be in the same position that we are in now. In their Reply, DPPs do not even try to rebut this point.

This fact alone is legally fatal to DPPs' motion, even before accounting for the substantial contributions that the Kroger DAPs have made to this MDL. Because DPPs have not demonstrated any developments in this case that have conferred a "substantial benefit on the Kroger DAPs," and that they can trace *with accuracy* to their own efforts (as opposed to the efforts of the State AGs or the IRPs, for example), any assessment of fees would be legally improper.

Rather than address and meet their legal burden as movant, DPPs take surprising and unwarranted pot shots at our contribution to Plaintiffs' efforts.[4] In doing so, they cherry-pick two examples out of the universe of joint work product conducted by all Plaintiffs in this MDL. DPPs

---

[4] No principled discussion of contribution to the civil prosecution of this case can occur without noting the role of the State AGs.

3

then attempt to quantify and isolate the Kroger DAPs' contributions using a document review project that began this April, and the ESI Protocol, in an attempt to argue that the benefit from common work has flowed in only one direction. These examples actually prove our point that DPPs fail to meet their legal burden as movant.

As DPPs grudgingly acknowledge, the Kroger DAPs *have* contributed to both of these projects and *have not* sought to free-ride off DPPs or any other plaintiff constituency.[5] Instead, DPPs suggest that the Kroger DAPs did not contribute to these two projects on a *pro rata* basis.

Given that the five plaintiff constituencies[6] have been actively litigating this case together in a common-interest agreement[7] for 16 months, there are bound to be certain projects in which one of the groups does less work than others.[8] But there are, of course, many other instances in which the Kroger DAPs have performed more than a *pro rata* share of common-interest work,[9] and likely more work than DPPs themselves.[10]

---

[5] *See, e.g.,* Reply at 4–5 (acknowledging that Kroger DAPs joined negotiations on ESI protocol and have contributed to initial review of documents).

[6] These include: (1) DAPs; (2) States; (3) DPPs; (4) EPPs, and (5) IRPs.

[7] DPPs surprisingly suggest that the Kroger DAPs did not join in a common interest agreement with the Classes until May 2018. This is incorrect. Although the Classes and the Kroger DAPs finalized the express terms of a written common interest agreement in May 2018, they confirmed *in writing* in February 2018 that they were operating under a verbal joint prosecution agreement. We will present the Court with this e-mail upon request.

[8] This is a function of any case, but particularly a MDL case, in which parties with a common interest coordinate to prosecute (or defend) the action. Were this not so, there would be enormous duplication of effort and inefficiency.

[9] The Kroger DAPs do not agree that a *pro rata* standard should apply to evaluate the relative contributions of the different plaintiff constituencies.

[10] As noted below, *infra* at 9, the Kroger DAPs took the lead in writing several motions and legal memoranda filed with the Court on behalf of all Plaintiffs, including DPPs.

4

For example, in their Reply, DPPs argue that they conferred a common benefit on the Kroger DAPs by "prevailing on a number of important discovery disputes" and by "engaging in extensive negotiations and motion practice that will result in the receipt of millions of documents from defendants." But DPPs neglect to acknowledge that, of Plaintiffs' 83 Requests for Production to Defendants that relate to the direct purchaser claims, *the Kroger DAPs* have taken the lead in meet and confer sessions with Defendants on 20 of them. During this process, the Kroger DAPs have participated in hundreds of teleconferences over the past 13 months with the other Plaintiffs (including DPPs) and Defendants. Additionally, the Kroger DAPs principally authored some of the motions referenced by DPPs,[11] and offered extensive edits to others. And this is merely one example – in the event that it is necessary to litigate any fee dispute with DPPs, the Kroger DAPs can easily demonstrate the substantial contributions we have made to all of the common-interest work cite in DPPs' Reply.[12]

DPPs' argument about the relative contribution of Plaintiffs to the document review project is seriously flawed and without merit. In citing numbers regarding the work, they conspicuously fail to disentangle their numbers from EPPs, choosing instead to aggregate, which obscures their actual contribution. DPPs also neglect to mention that, when the document project began six weeks ago, the Kroger DAPs requested that Humana and United be allowed to join in the work, which by DPPs' standard would further increase DAPs' *pro rata* contribution to the effort. DPPs rebuffed this request, and continue to prevent Humana's and United's participation in the

---

[11] Although the Kroger DAPs principally authored these briefs, we allowed them to be filed by Lead Counsel for the Classes, in light of their appointed leadership role and our common interest agreement with them.

[12] If directed by this Court, we will file *en camera* a document substantiating our contribution to Plaintiffs' effort in this case.

5

document review. Thus, if DPPs have any complaints about DAPs' contribution to document review, they have only themselves to hold responsible.

More fundamentally, the numbers that DPPs rely on are an unreliable means to measure counsel's contribution to the MDL. This is because the numbers do not tell the full story, or at times any story, about what is really going on in terms of counsel's contribution to the effort. Numbers can mask inefficiency in (say) document review if, for example, literally every document in a large production is read when technology assisted review, *i.e.*, predictive coding, would yield the same or substantially all of the relevant, helpful documents anyway. Lower numbers also can reflect necessary and desirable coordination among counsel as opposed to a lack of contribution.

Consider, for example, the briefing on Defendants' motions to dismiss Group 1 drug claims. When we filed the Kroger DAPs' Complaint on January 22, 2018, the parties were in the process of briefing the Group 1 dismissal papers. Although we *wanted* to participate in the briefing, we agreed with Defendants that this Court's ruling on the motions to dismiss DPPs, IRPs and EPPs' Group 1 drug claims would inform our and defense counsel's judgment about whether motions or amendment were necessary with respect to the Kroger DAPs' Group 1 claims. As a result, we did not join the briefing on Group 1 drug claims, we and Defendants spared the Court more paper and work, and the Court's ruling had the foreseeable and desirable effect of avoiding more motions or pleadings.

This responsible coordination between the Kroger DAPs and Defendants should be encouraged and the norm in a MDL. Yet DPPs' motion seeks to punish the Kroger DAPs for doing what is surely expected by this Court, namely, avoiding unnecessary motion practice. Because we chose efficiency over make-work by standing down rather than adding more paper to the initial phase of Rule 12 briefing, DPPs now argue that this Court should order us to set aside a

portion of any subsequent settlement recovery by our clients to compensate them for a Court ruling that they do not own.  We think their reasoning is flawed because it sanctions a perverse incentive structure that rewards time, without regard for efficiency, substance or circumstances.  In any case – but particularly *this* MDL, with its scale, complexities and moving parts – such an incentive structure and means of measuring contribution do not serve the Court's or parties' interest in "the just, speedy, and inexpensive determination of every action and proceeding." Fed.R.Civ.P. 1.

### III. Any Set-Aside Order Would Be Unprecedented as Applied to the Kroger DAPs

DPPs contend that the common fund doctrine exists to prevent free-riding, but they do not argue that the Kroger DAPs have engaged in such behavior.  On the basis of their own legal analysis, DPPs' motion as to the Kroger DAPs should be denied.

DPPs primarily rely on two antitrust class actions – *In re Lidoderm Antitrust Litigation*, No. 14-md-02521, 2017 WL 3478810 (N.D. Cal. Aug. 14, 2017) ("*Lidoderm*") and *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 662-63 (E.D. Pa. 2003) ("*Linerboard*") – to support their set-aside claim.  But these cases – which reflect the minority position to begin with[13] – also confirm the lack of legal support for a set-aside against the Kroger DAPs.

In *Lidoderm*, the Court imposed a set-aside only after certifying an end-payer class, because the litigation was "significantly advanced." *Lidoderm*, 2017 WL 3478810 at *2 (imposing set aside order less than four months before trial was scheduled to commence).  *See also* ECF No. 640.  ***More importantly, the Court exempted from its set-aside order the lone end-payer plaintiff***

---

[13] *See, e.g., In re Capacitors Antitrust Litig.*, No. 14-cv-3264, Dkt. No. 922 at 30 (N.D. Cal. Oct. 7, 2015) (rejecting request for a set aside in antitrust class action); *In re Neurontin Antitrust Litig.*, No. 02-1390 (FSH), 2011 WL 13141022 (D.N.J. July 12, 2011) (same); *In re TFT-LCD Flat Panel Antitrust Litig.*, No 07-md-1827, Dkt. No. 2696 at 13 (N.D. Cal. Apr. 30, 2011) (same); *In re OSB Antitrust Litig.,* No. 06-826, 2009 WL 579376, at *4 (E.D. Pa. Mar. 4, 2009) (same). *See also In re Chicago Flood Litig.*, 682 N.E.2d 421 (Ill. App. 1997) ("To require the opt-out plaintiffs to pay fees to both class counsel and their independently retained counsel would penalize them for exercising their inherent right of exclusion.").

*that had been actively litigating its claim since early in the case.*[14]  *Id.* at *1 n.1 ("EPP Class Counsel and GEHA reached an agreement whereby Class Counsel waived any right to an award of fees and costs "associated" with GEHA's claims in this litigation.").

Similarly, in *Linerboard,* the court applied a set-aside order to DAPs that opted out more than five years after class counsel filed their case, "on the eve of the conclusion of discovery," and after the Class lawyers had sustained on appeal the ruling certifying the Class.  *See Linerboard*, 292 F. Supp. 2d at 662-63.  Like in *Lidoderm*, the set-aside Order applied prospectively, only to those DAPs that had filed their individual actions more than 15 months after the Court certified the litigation Class.  *See id.* at 668.

At this relatively early stage of this MDL, *before* any meaningful document production has occurred, *before* a single deposition has been noticed, *before* any settlement has been reached or any class has been certified, and *before* a case management schedule has been implemented, *Lidoderm* and *Linerboard* support the denial of DPPs' requested set-aside from the Kroger DAPs.

**IV.    The Proposed Set-Aside Would Wreak Havoc on This MDL and Prove Impossible or Impractical to Administer**

DPPs' request for a set-aside – filed in April 2019 – has already impaired the ability of all Plaintiffs to coordinate their joint prosecution efforts and has made it difficult for us to discharge our duties as DAPs' Liaison Counsel to transmit communications among Plaintiffs as contemplated by PTO 89.[15]

---

[14]    Think here – the Kroger DAPs.

[15]    There are some communications that we would share with Humana's and United's counsel regarding case activities that we are duty bound not to disclose because we receive them pursuant to a common interest agreement among the States and Classes to which Humana and United do not belong.

8

As noted above, while this situation is improving, DPPs continue to exclude Humana and United from certain common interest projects.

Another example of the dysfunction and impairment in coordination caused by DPPs' set-aside motion is provided by the recent briefing on Defendants' motions to dismiss Plaintiffs' overarching conspiracy claims. When Plaintiffs first began preparing their oppositions, DPPs and EPPs proposed an allocation of work for all five plaintiff constituencies. Of the 15 motions filed against the Plaintiffs' working group, the Kroger DAPs were assigned to principally author three of them (which we did). For the remaining 12 common-interest briefs, the Kroger DAPs provided edits and revisions to all of them (including very extensive edits in some instances). But in DPPs' Reply, they cite to this allocation of work – which they (and EPPs) proposed – as evidence of the Kroger DAPs' supposed limited contribution. Thus, if the Court imposes a set-aside, then the Kroger DAPs will be forced to battle with DPPs over who does what work in the future (such as on deposition coverage assignments and motion practice) or risk DPPs trying to use their own proposed allocation of work against the Kroger DAPs in any future fee disputes or the Kroger DAPs will end up duplicating work.

Tellingly, DPPs make much of the fact that the Defendants do not oppose their request for a set-aside as evidence that their request would not create the complications that we (and Humana and United) suggest. *See* DPPs' Reply to Humana and United, Dkt. No. 1015 at 6–7. However, we think there is a more likely and undesirable reason for Defendants' position. Defendants' counsel surely recognize – and the parties' set-aside papers plainly reveal – that DPPs' (and EPPs') set-aside motions drive a wedge between these Classes and DAPs. Experienced defense counsel know that a fractured Plaintiffs' group makes for a less effective and efficient prosecution by all Plaintiffs. For example, in a deposition of an important defense fact witness, the examination is

9

probably not going to be nearly as smooth and effective as it should be if the various Plaintiff groups fail to coordinate and insist (because of the perverse incentives caused by the set-aside) on duplicating questions or taking lots of time that is not available if every party were to question the witness. Defendants surely would not oppose DPPs' set-aside motion unless doing so was in *Defendants'* interest.

## V.     Conclusion

Based on the foregoing analysis, this Court should deny DPPs' set-aside motion.

Dated:  June 26, 2019

Respectfully submitted,

By: _/s/ [signature]_
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Scott E. Perwin, Esquire
Anna T. Neill, Esquire
Samuel J. Randall, Esquire
Joshua B. Gray, Esquire
Brandon S. Floch, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida  33131
Tel:  (305) 373-1000
Fax:  (305) 372-1861
E-mail:  rarnold@knpa.com
           wblechman@knpa.com
           sperwin@knpa.com
           aneill@knpa.com
           jgray@knpa.com
           srandall@knpa.com
           bfloch@knpa.com

*Counsel for Kroger Direct Action Plaintiffs*

602653.1