# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>Case No. 16-md-2724-CMR |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE |

## DEFENDANTS' OBJECTION TO SPECIAL MASTER DAVID H. MARION'S REPORT AND RECOMMENDED ORDER SETTING FORTH <u>CASE MANAGEMENT ORDER AND DISCOVERY SCHEDULE</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**INTRODUCTION**...................................................................................................... **1**

**ARGUMENT** ............................................................................................................. **4**

    I.    DEFENDANTS MUST BE ALLOWED TO WITHHOLD DOCUMENTS BASED ON RELEVANCE AND RESPONSIVENESS. ................................... 4

        A.    The R&R's Prohibition Of A Responsiveness Review Is Unlawful. ......... 4

        B.    Plaintiffs' Demand For Full Custodial Files Is Unlawful And Inefficient. ................................................................................................. 9

    II.    DEFENDANTS' PROPOSED CASE MANAGEMENT ORDER IS EFFICIENT AND PRACTICAL. ........................................................... 12

        A.    This Court Can And Should Establish A Suspense Docket. .................... 13

        B.    Phased Discovery Would Not Be Prejudicial And Would Expedite Discovery. ............................................................................................... 14

    III.    THE R&R IS INEFFICIENT, IMPRACTICAL, AND GIVES PLAINTIFFS AN UNDUE ADVANTAGE. ....................................... 17

        A.    Paragraph 3 Of The R&R Violates The Court's Prior Orders And Eliminates 18 Months Of Discovery Efforts. ........................................... 17

        B.    The Deadlines In The R&R Are Impractical And Unrealistic................. 18

        C.    The R&R Provides Plaintiffs An Undue Advantage. .............................. 23

**CONCLUSION** ......................................................................................................... **25**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actos (Pioglitazone Prods. Liab. Litig.)*,
  MDL No. 6:11-md-2299, 2013 WL 4776346 (W.D. La. Sept. 3, 2013) ...............................10

*BancPass, Inc. v. Highway Toll Admin., LLC*,
  No. A-14-CV-1062-SS, 2016 WL 4031417 (W.D. Tex. July 26, 2016) ..................................7

*Banerjee v. Univ. of Tenn.*,
  No. 3:17-CV-526-HSM-HBG, 2019 WL 1062378 (E.D. Tenn. Mar. 6, 2019) .....................10

*Boeynaems v. LA Fitness Int'l., LLC*,
  285 F.R.D. 331 (E.D. Pa. 2012)..............................................................................................5

*Chen-Oster v. Goldman, Sachs & Co.*,
  No. 10 CIV. 6950 (AT), 2014 WL 716521 (S.D.N.Y. Feb. 18, 2014) ....................................7

*In re eBay Seller Antitrust Litig.*,
  No. C07-01882 JF (HRL), 2010 WL 2836815 (N.D. Cal. July 19, 2010) ..............................8

*Equal Employment Opportunity Comm'n v. Univ. of Pa.*,
  850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ........................................................5

*FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*,
  No. 15CV1879-BEN (BLM), 2016 WL 6522807 (S.D. Cal. Nov. 3, 2016) ...........................6

*Freeman v. Wyeth*,
  764 F.3d 806 (8th Cir. 2004) .................................................................................................13

*Gardner v. Cont'l Cas. Co.*,
  No. 3:13-CV-01918 (JBA), 2016 WL 155002 (D. Conn. Jan. 13, 2016)................................6

*General Elec. Co. v. United States*,
  119 F. Supp. 3d 17 (D. Conn. 2015)........................................................................................7

*Illes v. Beaven*,
  Civil No. 1:12-CV-0395, 2013 WL 522075 (M.D. Pa. Feb. 11, 2013)..................................23

*Lafate v. Vanguard Grp., Inc.*,
  No. 13-cv-5555, 2014 WL 4384510 (E.D. Pa. Sept. 5, 2014)...................................................5

*Leyse v. Bank of Am. Nat'l Ass'n*,
  Civ. No. 2:11-cv-7128-SDW-SCM, 2019 U.S. Dist. LEXIS 100213 (D.N.J.
  June 14, 2019)..........................................................................................................................5

*MDAdvantage Ins. Co. of N.J. v. Hasiuk*,
    No. 16-CV-969, 2018 WL 3328049 (E.D. Pa. July 6, 2018)...................................23

*Millsaps v. Aluminum Co. of Am.*,
    MDL 875, Civil No. 10-84924, 2011 WL 6019220 (E.D. Pa. Dec. 2, 2011).........................10

*Newton v. A.C.& S., Inc.*,
    918 F.2d 1121 (3d Cir. 1990)...................................................................6

*Petrucelli v. Bohringer & Ratzinger*, *GMBH*,
    46 F.3d 1298 (3d Cir. 1995)...................................................................23

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ................................................................13

*In re Prempro Prods. Liab. Litig.*,
    No. 4:03-cv-01507-WRW (E.D. Ark. Aug. 2, 2007) ...........................................10

*Russell v. Kiewit Corp.*,
    Case No. 18-2144-KHV 2019 U.S. Dist. LEXIS 93078 (D. Kan. June 4, 2019)...................10

*Stambler v. Amazon.com, Inc.*,
    No. 2:09-CV-310 (DF), 2011 WL 10538668 (E.D. Tex. May 23, 2011)................................8

*Strauch v. Computer Scis. Corp.*,
    3:14-CV-956, 2015 WL 7458506 (D. Conn. Nov. 24, 2015)................................10

*UPMC v. Highmark Inc.*,
    Case No. 2:12-cv-00692-JFC, 2013 WL 12141530 (W.D. Pa. Jan. 22, 2013)......................10

*Wilson v. Rockline Indus., Inc.*,
    Civil No. 08-5191, 2009 WL 10707835 (W.D. Ark. Oct. 22, 2009).........................7

**Rules**

Fed. R. Civ. P. 26.....................................................................................5

**Other Authorities**

*The Sedona Principles, Third Edition: Best Practices, Recommendations &*
    *Principles for Addressing Electronic Document Production*, 19 SEDONA
    CONF. J. 1, Principle 6, 48–50 (2018) ...........................................................8

3 ANTITRUST COUNSELING AND LITIGATION TECHNIQUES § 22.02 (2019).............................8

David Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 11.443 (4th ed.
    2019) .....................................................................................................9

E-Discovery Process, 15 SEDONA CONF. J. 265 (2014) .................................................8

Federal Judicial Center's *Manual of Complex Litigation* ...............................................................9

Defendants jointly submit this objection to Special Master David H. Marion's Report and Recommendation regarding case management and discovery scheduling ("R&R").

## INTRODUCTION

The principal impediment to moving this case forward efficiently has been Plaintiffs' choice to proceed by serial complaints. This has resulted in successive waves of complaints and amended complaints—with more still to come—each one threatening to derail whatever progress has been made in discovery to that point. The Court tasked the parties, and the Special Master, with developing a plan to litigate this case in an orderly and efficient way, leading to litigable bellwether actions. Instead, the R&R proposes to force Defendants to immediately produce millions of documents that all parties—and even Special Master Marion—acknowledge are irrelevant, does nothing to address the practical consequences of the filing of serial complaints and amendments, and disregards both the Federal Rules of Civil Procedure and this Court's Policies and Procedures and Pre-Trial Orders. Three core failures mandate rejection of the R&R, and adoption of a case management order along the lines of Defendants' July 29, 2019 proposal, attached as Appendix A.[1]

**First**, and most critically, the R&R's mandate that Defendants (but not Plaintiffs) are barred from withholding documents for responsiveness contravenes the Federal Rules. The lack of responsiveness review coupled with the expansive scope of Plaintiffs' recently proposed search terms—which include 231 drug names, 59 Defendant names, and more than 360 standalone terms such as "offer," "intel," and "coffee"—will result in exactly the kind of unreasonably broad discovery the recent amendments to the Federal Rules sought to prevent, threatening the business

---

[1] Defendants are also willing to propose a new case management order in light of the Court's guidance on the issues discussed herein. For clarity, Defendants also attach an annotated version of the R&R that notes the specific provisions to which Defendants object. *See* App. B.

1

and personal privacy rights of both Defendants and countless uninvolved non-parties who do business with or interact with them.  And Plaintiffs threaten those rights even further by demanding the production of full custodial files.  It is not reasonable or proportional to force Defendants to provide Plaintiffs (and, by extension, Defendants' competitors) with millions of irrelevant, yet commercially and competitively sensitive documents.  It also makes no sense.  The notion that underlies the R&R and Plaintiffs' position—that Defendants cannot adequately assess responsiveness in line with Plaintiffs' theory of the case—is both factually and conceptually incorrect.  And as a practical matter, accepting that Defendants are entitled to sufficient time to review documents for privilege before production, denying them the ability to review for responsiveness would not result in meaningful time savings.

There is absolutely no basis for imposing what is effectively a discovery sanction on every Defendant.  The Federal Rules and Third Circuit law mandate production of only relevant documents and place the responsibility for determining responsiveness in the hands of the producing party.  The R&R's wholesale abandonment of those laws is clear legal error.

*Second*, the R&R fails to establish a litigation structure that will efficiently focus the parties' efforts on a bellwether case or cases, and meaningfully "suspend" later filed complaints to prevent them from interfering with that focus.  The R&R requires that each time a new complaint is filed, any new drugs or defendants from that complaint must be added as search terms.  That defeats the purpose of the case management order, as Defendants will be forced to repeatedly search for and produce documents every time a new complaint or set of complaints is filed.  This is not a hypothetical concern, as Plaintiffs have promised an untold number of additional complaints in the future.  The solution to the practical problem created by Plaintiffs filing serial complaints is not to reward Plaintiffs with unjustified access to Defendants' documents and on a

schedule that impedes the parties' ability to focus on post-discovery litigation (i.e., class certification and summary judgment).  This sprawling MDL needs a true "Suspense Docket" that would permit the already filed cases to proceed to resolution without disruption and delay each time a new complaint is filed.  Defendants' proposed discovery methodology is sufficiently broad to cover the information relevant to the so-called overarching conspiracy claims as well as the specific drugs in those cases.  And once the States have finished filing new cases, and the other Plaintiffs have finished amending their complaints, the parties can quickly and efficiently conduct one round of clean up discovery, to produce information, if any, specifically needed for later filed suspended cases.

*Third*, a number of the R&R's provisions create discovery obligations that are not provided for in the Federal Rules, are contrary to this Court's rules, and provide Plaintiffs an undue advantage.  Paragraph 4 requires Defendants to identify and provide Plaintiffs with documents regarding "class certification, experts and other economic, or data related issues" without any discovery requests from Plaintiffs.  Paragraphs 10 and 11 allow Plaintiffs to submit expert rebuttal reports but provide Defendants no opportunity to depose Plaintiffs' experts on those reports.  And Paragraph 11 deprives Defendants of their right under the Court's Policies and Procedures to file a Sur-Reply during class certification briefing.

Despite the ever-expanding scope of this already massive MDL, Defendants have acted in good faith to advance the progress of this case: Defendants have consistently and substantively tried to engage with Plaintiffs regarding discovery issues, such as custodians, search terms, subpoenas to third parties, and production from the Connecticut Attorney General's Office.  *All* Defendants served with Plaintiffs' initial February 2018 set of discovery requests have begun producing documents.  And Defendants' proposal provides a fair and efficient structure for moving

3

this case forward.  Accordingly, Defendants respectfully request that the Court reject the sections of the R&R discussed below and enter an Order consistent with Appendix A.

<u>**ARGUMENT**</u>

**I.     DEFENDANTS MUST BE ALLOWED TO WITHHOLD DOCUMENTS BASED ON RELEVANCE AND RESPONSIVENESS.**

**A.     The R&R's Prohibition Of A Responsiveness Review Is Unlawful.**

The R&R provides that "Defendants shall apply the agreed search terms to the agreed custodial files and may review the identified documents for privilege, but may not withhold prior to production any documents based on relevance or responsiveness."  Ex. 1, R&R Ex. A, ¶ 3(b). In other words, the R&R proposes that Defendants produce millions of documents—including sensitive technical developments, highly confidential internal strategy, and communications with countless uninvolved non-parties—without regard for whether any given document has any relevance whatsoever to the parties' claims and defenses in this case.  To Defendants' knowledge, no such requirement has ever been imposed in an antitrust MDL despite the litigation of dozens of such cases in the e-discovery era.  And there is no legal basis for this proposal, which flatly contradicts the Federal Rules of Civil Procedure and the principles on which they are based. Defendants therefore object to this provision and request that the Court modify Paragraph 3(b) to read, "Defendants shall apply the agreed search terms to the agreed custodial files and may review the identified documents for responsiveness, confidentiality, and privilege."

Both Plaintiffs and the Special Master concede that the R&R will result in Defendants producing material that is not relevant to the claims asserted in this MDL.  This is unlawful. Federal Rule of Civil Procedure 26 only permits discovery that "is *relevant* to any party's claim

or defense and proportional to the needs of the case."[2]  Fed. R. Civ. P. 26(b)(1).  The Rule directs that "the court *must* limit" discovery that "is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  These parameters are not discretionary.  The Third Circuit has unequivocally held that relevance is a mandatory requirement for discovery, not a prudential suggestion.  *See Equal Employment Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 979 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) ("Perhaps the single most important word in Rule 26(b) is 'relevant' for it is only relevant matter that may be subject to discovery."); *accord Leyse v. Bank of Am. Nat'l Ass'n*, Civ. No. 2:11-cv-7128-SDW-SCM, 2019 U.S. Dist. LEXIS 100213, at *5 (D.N.J. June 14, 2019) ("[T]he polestar of discovery is relevance to a party's claim or defenses, not their discovery wishes.").

Applying these principles, this Court has recognized that discovery need only be fair, not exhaustive.  *See Boeynaems v. LA Fitness Int'l., LLC*, 285 F.R.D. 331, 333 (E.D. Pa. 2012) (noting in the context of cost sharing for discovery that, "[d]iscovery need not be perfect, but discovery must be fair.").  And this Court has also conclusively rejected the use of discovery to explore amorphous potential claims rather than to test the allegations actually made in the litigation.  *See Lafate v. Vanguard Grp., Inc.*, No. 13-cv-5555, 2014 WL 4384510, at *7-8 (E.D. Pa. Sept. 5, 2014) ("[D]iscovery should not serve as a fishing expedition.").

There is no legitimate basis for requiring production without a relevance and responsiveness review—an approach more befitting a severe discovery sanction than a case management order.  And the R&R does not cite any legal authority for this position.  Rather, the sole reasoning provided in the R&R is that "extensive and broad-ranging discovery is both necessary and appropriate for these cases to be fairly adjudicated; and is also essential for any

---

[2]     Unless otherwise noted, all emphasis is added and internal citations omitted.

meaningful settlement discussions[.]"  *See* Ex. 1, R&R at 3–4.  But the R&R does not explain how the production of irrelevant and non-responsive material is "necessary and appropriate" for the cases to be "fairly adjudicated" or how it would lead to settlement discussions—a factor that should not be considered at all in deciding the appropriate scope of discovery.[3]  The R&R also does not explain how the production of relevant and responsive material would be less likely to achieve these goals.

District courts around the country have expressly rejected the approach adopted in the R&R.  In response to a motion to compel production of all documents hitting on certain search terms, one district court admonished:

> The position taken by plaintiffs is simply untenable—defendant is not obligated to turn over all 38,000 documents, after a review eliminates some on the basis of privilege. . . . As every law school student and law school graduate knows, when performing a computer search on WESTLAW and/or LEXIS, not every case responsive to a search command will prove to be relevant to the legal issues for which the research was performed.  Searching tens of thousands, and hundreds of thousands, of electronic documents is no different.

*Gardner v. Cont'l Cas. Co.*, No. 3:13-CV-01918 (JBA), 2016 WL 155002, at *3 (D. Conn. Jan. 13, 2016) (even where plaintiff showed that responsive documents had been improperly withheld, court directed parties to refine search terms or adopt a quick peek protocol rather than order the production of all documents hitting on plaintiffs' proposed terms); *see also FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15CV1879-BEN (BLM), 2016 WL 6522807, at *8 (S.D. Cal. Nov. 3, 2016) ("[D]espite the parties' efforts to tailor the search terms to the issues in this case, the

---

[3]   The notion that a case management order and discovery plan should be designed as a way to produce settlements is inappropriate.  *See, e.g.*, *Newton v. A.C.& S., Inc.*, 918 F.2d 1121, 1129 (3d Cir. 1990) ("[T]he court's efforts to expedite the settlement of cases must be consistent with the dictates of due process.  Furthermore, these efforts should not unduly pressure or coerce litigants into settlement.").

resulting 'hits' contain many irrelevant and unresponsive documents, and the Court therefore agrees with [the producing party] that culling for relevance is warranted.").

Another district court found no basis, legal or otherwise, for ordering production of all documents without review for relevance:

> In our system of law, we allow the party responding to discovery to filter his own documents and produce only those which are relevant to the litigation. In the absence of some showing that relevant information is being withheld -- and here there is none -- there is no basis to make the responding party produce all information. Indeed, to do so would make a mockery of F.R.C.P. 26(b)(1).

*Wilson v. Rockline Indus., Inc.*, Civil No. 08-5191, 2009 WL 10707835, at *1 (W.D. Ark. Oct. 22, 2009). Numerous other courts have reached the same conclusion.[4]

The availability of an *ex post* "clawback" mechanism, *see* Ex. 1, R&R at 4, is not an appropriate or effective substitute for conducting a relevance review prior to production. Such a procedure will inevitably result in satellite litigation over clawbacks, and will necessarily mean that highly confidential but irrelevant information will have been produced in a case that has already seen multiple leaks of sealed documents. And as a matter of law, Plaintiffs are not entitled to review Defendants' documents for responsiveness. It is well-established that the producing party "is best situated to evaluate, select, and implement the procedures, methodologies, and technologies appropriate to meet its preservation and discovery obligations," and that "there should be no preemptive restraint placed on a responding party that chooses to proceed on its own with

---

[4]    *See also Bancpass, Inc. v. Highway Toll Admin., LLC*, No. A-14-CV-1062-SS, 2016 WL 4031417, at *3 (W.D. Tex. July 26, 2016) (party not required to produce all documents hitting on search terms where "there is no reason to believe that [it] has withheld documents it was obligated to produce. Nor is it clear that additional searches with the identified search terms would produce more documents responsive to [the] requests for production."); *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 CIV. 6950 (AT) (JCF), 2014 WL 716521, at *1 (S.D.N.Y. Feb. 18, 2014) (rejecting demand for production of all documents containing search terms); *accord General Elec. Co. v. United States*, 119 F. Supp. 3d 17, 20 (D. Conn. 2015) (holding that the right to conduct responsiveness review prior to production is applicable even in unconventional circumstances, and that responsiveness review is a logical outgrowth of the right to conduct a review for privilege).

determining how best to fulfill its preservation and discovery obligations." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, Principle 6, 48–50 (2018); *see Stambler v. Amazon.com, Inc.*, No. 2:09-CV-310 (DF), 2011 WL 10538668, at *11 (E.D. Tex. May 23, 2011) (producing party is "in the best position to decide whether to review some or all of the e-mails at issue or to produce without review (subject to a reasonable keyword-based privilege screen)"); *see also In re eBay Seller Antitrust Litig.*, No. C07-01882 JF (HRL), 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010) (holding that even where defendant had already produced the documents in question in a related case, it was still entitled to review for relevance in the instant case, and noting that, "it is the litigant responding to discovery requests, and that litigant's own lawyer, who searches for and identifies responsive documents that are relevant to the asserted claims or defenses.  The opposing lawyer does not get that luxury.").

Nearly universal discovery practice mandates that "[p]roducing parties review documents or ESI for relevance and responsiveness *before* they are produced, as well as to determine if any privilege or other exemption is applicable."   Commentary on Achieving Quality in the E-Discovery Process, 15 SEDONA CONF. J. 265 (2014); *see also* 3 ANTITRUST COUNSELING AND LITIGATION TECHNIQUES § 22.02 (2019) ("As with other documentary discovery, electronic discovery must be reviewed for relevance, responsiveness, appropriate level of confidentiality and privilege before it is produced to the other side.").  An up-front review is particularly necessary in this case, where the search terms are excessively broad and the anticipated custodians (including high-level executives) have a wide variety of job functions and can be expected to have highly sensitive documents in their files concerning, for example, potential mergers or other transactions, technical developments, regulatory strategies, and other issues not pertinent to the case.  Once

those sensitive documents are produced to other parties (including Defendants' competitors), the bell cannot be unrung. Clawback procedures are designed as a backstop, not as a justification for intentionally imposing procedures that are certain to require production of highly-sensitive, non-responsive materials.

These concerns are particularly pressing in light of Plaintiffs' September 11, 2019 proposed global search terms to all Defendants, which are staggeringly broad. *See* Ex. 2, Plaintiffs' 9/11/19 Search Term Proposal. The proposed search terms include 231 drug names, every single Plaintiff's name, and numerous common standalone terms such as "speak" and "in person." These terms would yield an untold number of irrelevant and competitively sensitive documents that have absolutely no bearing on the claims at issue here.

The Federal Judicial Center's *Manual of Complex Litigation* instructs that courts should "prevent indiscriminate, overly broad, or unduly burdensome demands—in general, forbid sweeping requests, such as those for 'all documents relating or referring to' an issue, party, or claim, and direct counsel to frame requests for production of the fewest documents possible[.]" David Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 11.443 (4th ed. 2019). The R&R ignores this principle, and instead authorizes a wide-ranging fishing expedition into irrelevant and highly confidential material in an implicit effort to coerce Defendants to settle, rather than litigate, the claims in the case. This is not a proper reason to set aside the Federal Rules.

**B.     Plaintiffs' Demand For Full Custodial Files Is Unlawful And Inefficient.**

During negotiations leading up to the R&R, Plaintiffs baselessly demanded that Defendants provide *all documents*—regardless of relevance—in the files of certain unidentified custodians, without the application of search terms. This is contrary to established law and should not be

included in the case management order.[5]  Courts across the country have sharply rejected blanket

demands for all files in specific custodial possession or locations without review for relevance.

*See, e.g.*, *Russell v. Kiewit Corp.*, Case No. 18-2144-KHV 2019 U.S. Dist. LEXIS 93078, at \*7

(D. Kan. June 4, 2019) ("[P]roducing the entire [employee email file] is 'simply requesting

discovery regardless of relevancy' which most definitely is not the standard under the 2015

amendments to Rule 26(b) . . . .  Plaintiff has not shown how every email he has sent and received

is relevant to this action."); *Banerjee v. Univ. of Tennessee*, No. 3:17-CV-526-HSM-HBG, 2019

WL 1062378, at \*2-3 (E.D. Tenn. Mar. 6, 2019) ("[T]he Court finds Plaintiff's proposal that

Defendant produce the entire [email file], which she will then review, is simply requesting

discovery regardless of relevancy.  This is not the standard under Rule 26(b)"); *Millsaps v.*

*Aluminum Co. of Am.*, MDL 875, Civil No. 10-84924, 2011 WL 6019220, at \*2 (E.D. Pa. Dec. 2,

2011) ("Plaintiff does not contend that all the documents are relevant; far from it, as counsel admits

that there will be many documents that are not relevant or responsive to their requests.  Therefore,

many if not most of the documents are not discoverable, and plaintiff is not entitled to the entire

set of documents."); *Strauch v. Computer Scis. Corp.*, 3:14 CV 956 (JBA), 2015 WL 7458506, at

\*3 (D. Conn. Nov. 24, 2015) ("defendant is correct that it should not be obligated to disclose

clearly irrelevant documents").[6]

---

[5]  While Special Master Marion did not recommend production of Defendants' full custodial files, to the extent Plaintiffs pursue this same argument before the Court, it should be rejected.

[6]  Two of the cases cited by Plaintiffs before Special Master Marion as supporting their request for full custodial files actually involved only discrete personnel files or sales records.  The two that do mention full custodial files are inapposite.  In the first, the defendant agreed to the production of full custodial files, disputing only the number of custodians.  *In re Actos (Pioglitazone Prods. Liab. Litig.)*, MDL No. 6:11-md-2299, 2013 WL 4776346 (W.D. La. Sept. 3, 2013).  In the second, the court directed the production of all documents relating to a single consultant whose entire employment was allegedly to facilitate the claimed unlawful conduct.  *UPMC v. Highmark Inc.*, Case No. 2:12-cv-00692-JFC, 2013 WL 12141530, at \*1 (W.D. Pa. Jan. 22, 2013).  That case is plainly inapposite where the employees at issue here were engaged in a wide range of ordinary business activities, which are in no way alleged to be unlawful.  Plaintiffs' final case was a single-page decision that provided no explanation or reasoning.  Order, *In re Prempro Prods. Liab. Litig.,* No. 4:03-cv-01507-WRW (E.D. Ark. Aug. 2, 2007).

In addition to being unlawful, Plaintiffs' demand would be extraordinarily inefficient. Plaintiffs' approach would require review of the entire contents of the custodial file for privilege and confidentiality, rather than the smaller percentage of documents selected through search terms. Defendants who have tested the search terms previously proposed by Plaintiffs found that somewhere between 30% and 40% of their custodial documents contain one or more of those terms. Thus, 60% to 70% of custodial documents do not contain even a single term of the broad, expansive terms identified by Plaintiffs, and are presumptively irrelevant. Even when ignoring the inevitable "false positives"—documents that include one or more search terms but nevertheless are irrelevant to the issues—the hit rates observed for Plaintiffs' initial set of extraordinarily broad search terms show that a significant portion of the documents in any full custodial file will be irrelevant and outside the scope of discovery permitted under the Federal Rules.

Plaintiffs' approach also violates the proportionality requirement of the Federal Rules because the burden on Defendants would be massive, compared to the low likelihood of finding a few additional responsive documents that might have been missed by search terms. Even if custodial files were sought from a small number of custodians, the sheer size of a typical file would make the volume of documents to be reviewed for privilege and confidentiality unworkable. Defendants' analysis demonstrates that a single custodial file covering four to six years, collected from an email system that preserves all emails sent and received, will range from a quarter of a million documents to well over a million documents. Given these volumes, even with only a few custodians per Defendant, a full custodial file review approach will result in extraordinarily long review timelines with corresponding delays in production. For example, applying the search terms Sandoz proposed, Sandoz estimated that it would review approximately 2.3 million documents total from its 36 agreed custodians. *See* Ex. 5, Rogers Decl. ¶ 7. Plaintiffs have stated that they

want full custodial files for 11 of Sandoz's custodians, but have not identified which custodians. Sandoz custodians with three or more years of data have custodial files typically ranging between 400,000 and 1.5 million documents. *See id.* at ¶ 3. Therefore, the number of files to be reviewed for 11 full custodial files would far eclipse the 2.3 million documents identified by search terms, as would the time required for review. Contrary to Plaintiffs' suggestion, the production of custodial files is not more efficient and faster. Plaintiffs' suggestion would add a staggering volume of documents and years to the discovery phase of this litigation. This Court should reject any request from Plaintiffs for access to full custodial files.

## II.   DEFENDANTS' PROPOSED CASE MANAGEMENT ORDER IS EFFICIENT AND PRACTICAL.

Defendants proposed a case management order that would provide for a far more efficient litigation of the MDL. Defendants proposed that cases proceed in a phased manner, with discovery on cases filed prior to May 9, 2019 (the "Earlier Filed Cases"), proceeding immediately, and cases filed after that date (the "Later Filed Cases") placed in a "Suspense Docket" until the Earlier Filed Cases are fully resolved.[7] App. A, Attach. 1, ¶¶ 1–2. Defendants also proposed to broaden the scope of discovery conducted with respect to the Earlier Filed Cases to ensure that their searches capture any documents that would support the existence of the alleged overarching conspiracy or that pertain to "relationships" among suppliers in the pharmaceutical industry, so that discovery with respect to the Later Filed Cases would only need to involve limited clean-up discovery on any remaining issues (e.g., transactional data, manufacturing and supply issues). *Id.* at Attach. 1, ¶ 3.

---

[7]   While Defendants' proposal set the line at March 20, 2019, because that was the last day discovery had been served on a Defendant before State Plaintiffs filed their most recent complaint on May 10, 2019, Defendants also believe that May 9, 2019 would be an appropriate line. Ultimately, though, whether the line defining the Earlier Filed Cases is drawn on May 9, 2019, or some other date, a Suspense Docket is critical to ensure the orderly management of this MDL.

### A.     This Court Can And Should Establish A Suspense Docket.

A Suspense Docket is necessary because this is an ever-expanding MDL with no end in sight.  There are now nearly three dozen putative nationwide class actions, as well as multiple direct action lawsuits, involving more than 125 drugs, more than 50 Defendants, and more than 40 Plaintiffs.  And both Private Plaintiffs and State Plaintiffs have clearly indicated that new lawsuits—involving more plaintiffs, more defendants, and more drugs—will be filed and transferred to this MDL.  Placing newly filed complaints in a Suspense Docket is the only way to ensure that this MDL moves forward in an efficient, timely, and meaningful manner, without the need to begin again with each newly-filed complaint.

A phased discovery plan is well within the Court's discretion.  Courts have regularly recognized that "administering cases in multidistrict litigation is different from administering cases on a routine docket … and that to encourage efficiency, MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings."  *Freeman v. Wyeth*, 764 F.3d 806, 809 (8th Cir. 2004); *see also In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) ("A district judge charged with the responsibility of 'just and efficient conduct' of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task.").

Under the R&R, discovery would proceed on all cases—regardless of when they are filed—at the same time, with discovery expanded each time a new case involving new defendants or new drugs is added to the MDL.[8] The R&R claims that Defendants' phased proposal "may risk

---

[8]     Specifically, the R&R provides that "discovery involving pre-existing parties [*i.e.*, those named in the Earlier Filed Cases] may be *expanded* as appropriate to include newly added defendants and/or drugs."  Ex. 1, R&R Ex. A, ¶ 1.  Similarly, the R&R provides that "[a]ny drug or drug manufacturer or seller defendant added hereafter in any new or amended complaint, shall be added to the search terms and searched on a reasonable schedule to be established by the parties with the assistance of Special Master Marion and ESI Master Regard, as necessary."  *Id*. at ¶ 3(a)(ii).

redundancy, multiple depositions of witnesses, and confusion." *See* Ex. 1, R&R at 4.  Under Defendants' proposal, at most, some deponents may be deposed a second time (after clean-up discovery).  This relatively minor risk is offset by the R&R's guarantee that Defendants will need to conduct supplemental searches and make additional productions each time new drugs or new defendants are added to the MDL.

If the Court adopts the R&R, Defendants would be required to engage in massive and expensive discovery, but may *at any time* need to commence additional discovery processes to account for newly-added parties or drugs when Plaintiffs file new cases.  To do so, search protocols will need to be revised to address new drugs and new defendants.  Additional searches will have to be run repeatedly through vast databases, at great expense.  Document reviews will have to be repeatedly supplemented, at even greater expense.  The end result will be delay and the unnecessary waste of the parties' resources.  This constant interruption to the discovery process will jeopardize moving cases forward to class certification and summary judgment.

## B.  Phased Discovery Would Not Be Prejudicial And Would Expedite Discovery.

Under Defendants' proposal, no party would be denied discovery.  In the Earlier Filed Cases, Defendants would provide all of the discovery needed to litigate the first bellwether actions, as well as broad discovery concerning Plaintiffs' overarching conspiracy allegations.  Plaintiffs in Later Filed Cases would immediately receive any documents revealing competitor communications and industry relationships ("relationship documents") that Plaintiffs view as central to their cases.  And parties in the Later Filed Cases would receive the additional discovery to which they are entitled as part of a round of clean up discovery.

Plaintiffs' assertion that they will be prejudiced under Defendants' proposal because traditional discovery methods will deprive them of relationship documents is unfounded and

incorrect.  Insofar as such documents exist, there are several targeted and efficient ways to find them.  For example:

- Defendants can search the names of the key individuals who allegedly engaged in cross-competitor communications.

- Defendants can look for communications with any person employed by a competitor by searching the domain names of competitors (e.g., @company.com).

- To find documents concerning the market and competitive landscape for the drugs at issue in the Earlier Filed Cases, Defendants can search for the drug names.

- Documents relating to Plaintiffs' theory of an alleged "Fair Share" conspiracy can be identified by searching terms or phrases that Plaintiffs already have identified in their complaints, such as "fair share," "sandbox," "rules of the road," "play nice," "rational competitor," "rational behavior," "acting responsibly," "irresponsible competitor" (and other variations on these).

While Plaintiffs have asserted that some internal emails reporting on improper competitor communications will be too vague or coded to be identified absent production of full custodial files (e.g., an email that simply says "call me, I have some information"), they are mistaken.  To the extent they exist, these communications can be found by reviewing *all* communications among key employees at or around the time of an alleged meeting, call, or market event.  Plaintiffs have phone records for most, if not all, custodians in this case, and claim to know the dates of the alleged improper communications.  And many of those alleged communications were already detailed in the complaints filed to date.  Plaintiffs can thus provide dates and names and meet and confer with Defendants to discuss conducting reviews—unconfined by search terms—within discrete time periods to find these documents.  Plaintiffs have not done the work of serving targeted discovery requests that would uncover any relationship documents—instead they want to shift the costs and burdens to the Defendants by seeking drastically overbroad discovery.  This is improper.

Finally, Defendants' proposed discovery plan includes a significant compromise, which alleviates any purported prejudice to Plaintiffs.  Defendants named in both an Earlier Filed Case

and a Later Filed Case have now agreed to conduct a reasonable search for and produce documents responsive to two of Plaintiffs' broadest Requests for Production ("RFP") aimed at relationship documents, unlimited by drug names.  App. A, Attach. 1, ¶¶ 3(a)–(e).  Those RFPs seek "all documents concerning any communications between two or more Defendants or competitors concerning prices, pricing, pricing policies or practices, bids, customers, customer allocation, territory allocation, competitive conditions, marketing production, or sales of [] generic pharmaceuticals," and "all documents concerning the allocation of customers, territories, or geographic markets for generic pharmaceuticals between two or more Defendants or competitors." RFP Nos. 21 and 23.

Although most Defendants had reached agreement with Plaintiffs, before this summer, to narrow the scope of discovery to be provided in response to RFPs 21 and 23, Defendants proposed this further compromise to facilitate efficient and prompt discovery on Plaintiffs' overarching conspiracy allegations.  To accomplish this, Defendants would search for the names of other Defendants with certain limiters (e.g., defendant /10 meet*), which should capture internal communications that refer to or reflect intra-competitor conversations or relationships.  Limiters are necessary in these searches to avoid sweeping in every document in which a manufacturer considers or evaluates the market for the hundreds (sometimes thousands) of products that it sold or considered selling.  With appropriate limiters, however, these searches can locate potential internal communications evidencing or reflecting various types of conduct or communication that may be relevant and responsive to RFPs 21 and 23:

- meetings and communications (e.g., call*, meet*, cocktail*, coffee*, golf* etc.),

- alleged collusive behavior (e.g., agree*, coordinat*, conspire* etc.)

- attempts to cover up or hide alleged misconduct (e.g., delet*, destroy* etc.)

- alleged secretive or concealing behavior (e.g., conceal*, secret* confidential* etc.)

All of the above-described search terms and methods can be used to identify the subset of documents in any given custodial file that will be produced in response to RFPs 21 and 23. This methodology is standard practice in complex cases, and can be adapted by each Defendant (in negotiation with Plaintiffs) to ensure that the population of documents is both comprehensive and targeted, in order to make the document review and production process as efficient as possible.

The Court should reject the R&R to the extent that it provides for immediate discovery in the Later Filed Cases, and order that all Later Filed Cases be placed in a Suspense Docket until after the final resolution of the Earlier Filed Cases.[9]

## III.  THE R&R IS INEFFICIENT, IMPRACTICAL, AND GIVES PLAINTIFFS AN UNDUE ADVANTAGE.

### A.  Paragraph 3 Of The R&R Violates The Court's Prior Orders And Eliminates 18 Months Of Discovery Efforts.

On July 12, 2019, this Court asked the parties to confirm that the "reorganization of how to proceed is not a 360 reversal, it's a modification, right?"  Status Conf., ECF No. 1053 Tr. 10:7–15.  Yet the discovery methodology proposed in Paragraph 3 of the R&R does just that by reversing Pretrial Order 95 ("PTO 95"), which governs the method by which the parties will search for potentially responsive information.  This reversal is inefficient and wasteful, and PTO 95 should not be disregarded in the name of a "creative" solution to a non-existent problem.

PTO 95 was entered after extensive negotiation between the parties.  And in Paragraph 9, this Court ordered that each party would meet and confer concerning the producing party's proposed search methodology (such as search terms).  Each producing party would disclose

---

[9]  Defendants also object to the portion of the R&R that contains a preservation requirement.  *See* Ex. 1, R&R Ex. A, ¶ 2.  The preservation requirement goes far beyond a party's obligations under the Federal Rules, as it requires preservation of all internal and external communications with any other manufacturer of any generic prescription drug, regarding any generic prescription drug.  *Id.*  No party requested such language, and in any event, it is problematically ambiguous and entirely unnecessary given that the parties already have preservation protocols in place that comport with their obligations under federal law.

whether it intends to either (1) produce all non-privileged documents that meet certain search criteria, or (2) subject the documents to a review for responsiveness.  *See* PTO 95 ¶ 9, ECF No. 1045; *see also* 9.2 (describing detailed method of negotiation of search terms "as a means of limiting the volume of information *to be reviewed for responsiveness*").  By setting forth a different method by which Defendants will search for and produce documents, Paragraph 3 of the R&R overrules PTO 95 *sub silentio*.  *See* Ex. 1, R&R Ex. A, ¶ 3.

This comes at great expense to Defendants, who incurred considerable costs to comply with PTO 95.  For example, many Defendants already have made search methodology and/or search term proposals.  After initial negotiations with Plaintiffs earlier this year, all of these proposals have languished in Plaintiffs' inboxes, as weeks or months have gone by without meaningful response by Plaintiffs, who now refuse to negotiate in defiance of PTO 95.  Abandoning this prior work is unjustified, rewards Plaintiffs' waste of resources, and unfairly punishes Defendants by depriving them of the right to make their own determinations as to how to search for responsive information, as directed by the Federal Rules and governing law.  Nothing has changed conceptually in this MDL to warrant Plaintiffs' abandonment of the PTO 95 process.  Defendants have no confidence that Plaintiffs will be motivated to engage in good faith collaborative negotiations going forward if the past year and a half of work on discovery can now be disregarded for no meritorious reason.

### B.    The Deadlines In The R&R Are Impractical And Unrealistic.

The deadlines imposed in the R&R are either impractical or impossible for Defendants to meet and are based on critically mistaken assumptions about discovery in complex litigations like this.  In contrast, Defendants' proposal streamlines the document production process as much as possible, by imposing aggressive but realistic deadlines and incentivizing the parties to work cooperatively so that rolling document productions can continue without undue delay.

*First*, the R&R's time periods for meeting and conferring about search terms and objecting to the Special Masters' proposals for search terms are unrealistic.  In order to tailor search terms appropriately, potential terms need to be tested by each Defendant using their document processing vendors to determine how many documents a term pulls and make an initial estimate of what percentage of those documents are likely to be relevant.  The R&R does not account for this process.  Instead, it provides only ten days for the parties to meet and confer.  *Id.* at ¶ 3(c).  The first step in a productive negotiation of search terms is to test the initial proposal, in order to evaluate which terms or strings appear to be hitting on a disproportionate number of documents.  Given the length and complexity of the terms exchanged thus far, this process likely will take four to six days for an e-discovery vendor to carry out.  *See* Ex. 3, Teich Decl. ¶ 11; *see also* Ex. 4, Becker Decl. ¶ 12; Ex. 5, Rogers Decl. ¶ 6; Ex. 6, Parish Decl. ¶ 5; Ex. 7, Van Nostrand Decl. ¶ 11.  Once the initial terms have been tested, counsel will need multiple days to analyze the results and potentially sample a random subset of the document hits.  After this analysis is done, the parties should meet and confer about where the proposed terms appear to be over-inclusive or under-inclusive.  It will be impossible to have a productive negotiation in a period as short as 10 days, and there certainly will not be sufficient time to test any proposed alternative search terms.

The parties will then be forced to present their inevitable disagreements to Special Masters Marion and Regard (who will be inundated with disputes from most, if not all, Defendants).[10] From there, the Special Masters will make proposals for testing, and Defendants will have only 14 days to test those terms and submit objections.  This is not enough time to run the multiple rounds

---

[10]   Despite the large number of parties and compressed time frame, the parties will not have the benefit of Special Discovery Master Merenstein's assistance, as he was omitted from this process in the R&R—despite his Court-ordered remit.  *See* Pretrial Order 68 ¶ 4, ECF No. 823 (granting referrals for, among other things, "disputes related to production of documents," which necessarily includes search terms).

of testing necessary to provide thoughtful objections and viable solutions to any problematic terms. Defendants' proposal already included an aggressive schedule allowing for only 20 days to conduct testing and prepare objections and alternative proposals—that is the minimum period of time Defendants believe is needed to do a single test and prepare objections.

***Second***, the deadline for producing documents is unattainable.  The R&R requires that search term disputes be submitted to the Special Masters within 30 days after entry of the R&R—the earliest date would be roughly October 24, 2019.  If the Special Master(s) met with the parties, considered the terms in dispute and issued proposed search terms within only two weeks (an aggressively short period, considering the complexity of the terms that have been proposed thus far and the number of parties that are likely to have disputed terms), the deadline for submitting objections to the recommended terms would be November 21, 2019.  Even assuming the Court ruled on all of those objections within one week (which would mean issuing an Order on Thanksgiving), Defendants would have only three weeks to make their document productions by the R&R's deadline of December 20, 2019.  This would be impossible.

Many Defendants have collected more than 10 million documents (some nearly twice that amount), based on the custodians agreed by the parties and the date range ordered by Special Discovery Master Merenstein.  *See* Ex. 3, Teich Decl. ¶ 5; *see also* Ex. 4, Becker Decl. ¶ 5; Ex. 5, Rogers Decl. ¶ 3; Ex. 6, Parish Decl. ¶ 5; Ex. 7, Van Nostrand Decl. ¶ 3.  Assuming a document population of 10 million documents, application of the search terms would likely take about one week.  *See* Ex. 3, Teich Decl. ¶ 13; *see also* Ex. 4, Becker Decl. ¶ 12; Ex. 5, Rogers Decl. ¶ 6; Ex. 6, Parish Decl. ¶ 9; Ex. 7, Van Nostrand Decl. ¶ 11.  Additionally, setting aside the time necessary to conduct a review for privilege, preparation of the documents for production would take significant additional time.  Preparation of a large set of documents for production is an

unavoidably lengthy process because it involves numerous steps, including identifying the subset of documents to be produced, creating images of each document, applying Bates numbers and confidentiality stamps, exporting all production data, quality control, and compressing and encrypting the production files to a hard drive.  *See* Ex. 3, Teich Decl. ¶ 23; *see also* Ex. 4, Becker Decl. ¶ 20; Ex. 5, Rogers Decl. ¶ 8; Ex. 6, Parish Decl. ¶ 13; Ex. 7, Van Nostrand Decl. ¶ 21.  The length of time needed for this process is correlated to the number of pages being produced:  a discovery consultant will need about seven days to prepare 3 million documents for production, 12 to 16 days to produce 5 million documents and between 20 and 27 days to create a production of 7 million documents.  *See* Ex. 3, Teich Decl. ¶ 24; *see also* Ex. 4, Becker Decl. ¶ 21; Ex. 5, Rogers Decl. ¶ 8; Ex. 6, Parish Decl. ¶ 13; Ex. 7, Van Nostrand Decl. ¶ 22.  Thus, without allocating any time for identification of privileged documents, a Defendant would need a full month—10 days longer than provided for in the R&R—merely to carry out the technical aspects of running the searches, loading the documents, and creating the document production files.  The impossibility of the R&R schedule would be magnified for any Defendant with more than 5 million documents hitting on the final set of search terms.

In addition to the time required to carry out the technological aspects of searching for, loading and producing documents, Defendants must also, at a minimum, be provided time to review their document sets for privileged documents.  For Defendants with 5 to 8 million documents hitting on search terms, it would be impossible to conduct a review for privilege in a week, or even several weeks.  A typical contract review attorney can review approximately 40 documents per hour.  *See* Ex. 3, Teich Decl. ¶ 21; *see also* Ex. 4, Becker Decl. ¶ 16; Ex. 5, Parish Decl., ¶ 11; Ex. 7, Van Nostrand Decl. ¶ 18.  Thus, a review attorney could look at approximately 400 documents per day, and a team of 50 review attorneys could review approximately 20,000

documents per day.  At that rate, it would take 250 working days to conduct a privilege review for 5 million documents.  Moreover, this does not include the time necessary to prepare a privilege log.  A privilege log with clear, specific, and accurate descriptions of each withheld document requires time to prepare, review, and revise.  Cutting this period short will result in Defendants erring on the side of withholding more documents, increasing the length of the logs, and decreasing the quality of the entries in the logs.

The R&R's proposed schedule for document production would deprive Defendants of a meaningful right to protect their attorney-client privilege.  The R&R puts Defendants in the position of having to choose between hiring a huge (and unmanageable) number of contract attorneys to do a manual, document-by-document review in a short period of time (and with no time for quality control) or using search terms to try to find privileged documents, which entails a higher likelihood of inadvertent production of privileged documents.  Neither option is acceptable.  Defendants' undisputed right to withhold privileged documents from production is effectively nullified by the unreasonable schedule imposed in the R&R.

*Third*, the deadlines for production and confidentiality designations impose inefficiency and undue burden.  Instead of permitting Defendants to review each document one time for responsiveness, relevance, privilege and confidentiality, the R&R prohibits a responsiveness review, truncates privilege review to such a degree that Defendants would be unable to simultaneously assess confidentiality during that process, and then sets a second (but still unrealistic) deadline for the application of confidentiality designations.[11]  Ex. 1, R&R Ex. A,

---

[11]   The 120 day period to review and make confidentiality designations is similarly unrealistic.  Broad search terms are likely to hit on documents containing trade secret information and therefore it is necessary to review documents on a document-by-document basis.  Defendants cannot review multiples of millions of documents in a 120 day period.  The R&R orders them to do so on pain of losing the protections afforded under Pretrial Order 53 designations.  At the very least, any documents that are not re-designated should remain Highly Confidential until such time as they can be re-designated by Defendants.

¶ 3(e).  This inefficiency is further compounded by the fact that Defendants are being forced to assess privilege and confidentiality on irrelevant and non-responsive documents.

The Court should accept the deadlines included in Defendants' proposal, which are realistic and attainable and will ensure that document productions continue without undue delay.

### C.      The R&R Provides Plaintiffs An Undue Advantage.

Paragraphs 4(a)(ii) and 4(a)(iii) of the R&R purport to mandate the production of "targeted" documents relating to "class certification, experts and other economic or data-related issues," and unidentified (and seemingly unlimited) additional documents identified through "additional targeted search terms based on review of documents and samples."  Ex. 1, R&R Ex. A, ¶¶ 4(a)(ii)–(iii).  These sections are vague and impractical, and contravene the Federal Rules by requiring Defendants to produce documents without any existing discovery requests from Plaintiffs.[12]

Paragraphs 4(a)(ii) and (iii) also create an unworkable and inefficient process.  Paragraph 4(a)(iii) is particularly problematic, as it requires the production of documents that hit on "additional targeted search terms," with no limitation except that such terms will be selected based on the "review of documents and samples."  *Id.*  Defendants are entitled to at least the limits on

---

[12]   The Federal Rules require discovery to proceed through an orderly, well established process: one party requests documents, the other party has an opportunity to object, all parties negotiate their disagreements, the producing party provides any agreed documents, and then, if required, the party seeking discovery can move to compel further production.  This process is not merely a matter of custom; it reflects the law on discovery, requiring that court orders follow after, and be specific to, particular discovery requests.  *See Petrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298, 1310 (3d Cir. 1995) ("In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent."); *see also MDAdvantage Ins. Co. of N.J. v. Hasiuk*, No. 16-CV-969, 2018 WL 3328049, at *3 (E.D. Pa. July 6, 2018) (party that does not propound discovery requests has no standing to compel responses); *Illes v. Beaven*, Civil No. 1:12-CV-0395, 2013 WL 522075, at *1 (M.D. Pa. Feb. 11, 2013) ("The Third Circuit has found that 'before a party may succeed on a motion to compel discovery, that party must first prove that it sought discovery in the manner required by the rules of procedure.'").  The R&R preempts this process by omitting any provision for the service of supplemental discovery requests or objections thereto.  Instead, the R&R requires Defendants to begin at step three, with meeting and conferring about unspecified and overly broad categories of documents, and then make a production.

discovery imposed by the Federal Rules, and to a process that includes an opportunity for objections, which this provision omits.  Additionally, the four categories on which Defendants are to meet and confer are immensely broad and utterly vague, such that any meet and confer discussions likely will be unwieldy and unproductive.  Although disputes can be brought to the Special Master, the proposed schedule does not permit sufficient time for the number and scope of disputes likely to arise from such an ill-defined starting point.  And once Defendants' massive productions are complete, there will be only three weeks to carry out the collapsed meet-and-confer process pursuant to Paragraphs 4(a)(ii) and 4(a)(iii), leaving little time for either side to be well-informed, thoughtful, or discerning about what already has been produced and what might still be needed.[13]

The R&R also allows for the depositions of Plaintiffs' and Defendants' merits and class certification experts following the service of each side's expert reports, but before rebuttal reports are due, and notes that each expert "is to be deposed only one time."  *Id.* ¶¶ 10(d), 11(b), 11(d).  While Defendants agree that a single round of expert depositions would be the most efficient approach, denying Defendants the opportunity to ask questions about an expert's rebuttal report undermines the core purpose of expert discovery: to rigorously test the methods and conclusions of the experts.  This purpose cannot be served by concluding depositions before the report process is finished.  This Court should impose a single deadline for expert depositions that post-dates the submission of all reports, including rebuttal reports.

---

[13]  Some provisions of the R&R cut out the meet and confer process entirely, effectively making substantive rulings on issues that have never been debated, litigated, or ruled upon in contravention of Rule 37 and PTO 68 ¶ 1.  For example, Paragraph 5(a) goes beyond setting a deadline for the production of data samples where it defines the specific type of data to be provided (i.e., "transaction level"). Ex. 1, R&R Ex A, ¶ 5(a).

Finally, Paragraph 11 provides the schedule for filing of motions for class certification and *Daubert* motions, but does not allow Defendants to file Sur-Reply memoranda.  This Court permits Sur-Replies, and "[t]he parties need not seek leave of Court to file their Reply and Sur-Reply memoranda."  Judge Cynthia M. Rufe, Policies and Procedures, Civil Matters, ¶ 7.  Accordingly, Defendants request inclusion of a deadline for the service of Sur-Replies on class certification and related *Daubert* motions.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court sustain their objection to the Special Master David H. Marion's Report and Recommendation, and instead adopt a case management order consistent with Defendants' proposal, attached as Appendix A.

Dated:  September 13, 2019                                            Respectfully submitted,

                                                                                  */s/ Devora W. Allon*
                                                                                  _____

                                                                                  Jay P. Lefkowitz, P.C.
                                                                                  Devora W. Allon
                                                                                  Alexia R. Brancato
                                                                                  KIRKLAND & ELLIS LLP
                                                                                  601 Lexington Avenue
                                                                                  New York, NY 10022
                                                                                  Tel.: (212) 446-4800
                                                                                  Fax: (212) 446-4900

                                                                                  *Counsel for Upsher-Smith Laboratories, LLC*

25

*/s/ Sheron Korpus*                             */s/ Anthony C. Porcelli*

Sheron Korpus

Seth A. Moskowitz

KASOWITZ BENSON TORRES LLP

1633 Broadway

New York, New York 10019

Tel: (212) 506-1700

Fax: (212) 506-1800

skorpus@kasowitz.com

smoskowitz@kasowitz.com


*Counsel for Actavis Pharma, Inc.,*
*Actavis Holdco U.S., Inc.*


Anthony C. Porcelli

POLSINELLI PC

150 N. Riverside Plaza, Suite 3000

Chicago, IL 60606

(312) 819-1900

(312) 819-1910 (fax)

aporcelli@polsinelli.com


Amy D. Fitts

POLSINELLI PC

900 W. 48th Place, Suite 900

Kansas City, MO 64112

Tel.: (816) 753-1000

Fax: (816) 222-0425

afitts@polsinelli.com


*Counsel for Akorn, Inc., Akorn Sales, Inc.,*
*and Hi-Tech Pharmacal Co., Inc.*

*/s/ James W. Matthews*
James W. Matthews
Katy E. Koski
John F. Nagle
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Tel: (617) 342-4000
Fax: (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Tel: (414) 271-2400
Fax: (414) 297-4900
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5644
Fax: (215) 832-5644
THenry@blankrome.com
MCarter@blankrome.com

*Counsel for Apotex Corp.*

*/s/ W. Gordon Dobie*
W. Gordon Dobie
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
WDobie@winston.com

*/s/ Irving Wiesen*
Irving Wiesen
LAW OFFICES OF IRVING L.
WIESEN, P.C.
420 Lexington Avenue - Suite 2400
New York, NY 10170
Tel: (212) 381-8774
Fax: (646) 536-3185
iwiesen@wiesenlaw.com

*Counsel for Ascend Laboratories, LLC*

27

/s/ Wayne A. Mack
Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com

*Counsel for Aurobindo Pharma USA, Inc.*


/s/ Stacey Anne Mahoney
Stacey Anne Mahoney
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel.: (212) 309-6930
Fax: (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel for Breckenridge Pharmaceutical, Inc.*


/s/ Helen A. Nau
Henry E. Klingeman
Helen A. Nau
KROVATIN KLINGEMAN LLC
60 Park Place
Suite 1100
Newark, New Jersey 07102
Tel.: (973) 424-9777
hklingeman@krovatin.com
hnau@krovatin.com

*Counsel for David Berthold*


/s/ Thomas H. Suddath, Jr.
Thomas H. Suddath, Jr.
Anne E. Rollins
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia PA 19103
(215) 851-8100
(215) 851-1420 (fax)
tsuddath@reedsmith.com

Michael E. Lowenstein
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
(412) 288-3063 (fax)
mlowenstein@reedsmith.com

*Counsel for Maureen Cavanaugh*

*/s/ Steven E. Bizar*

Steven E. Bizar
John P. McClam
Tiffany E. Engsell
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel.: (215) 994-2000
steven.bizar@dechert.com
john.mcclam@dechert.com
tiffany.engsell@dechert.com

*Counsel for Citron Pharma LLC*

*/s/ Brian T. Feeney*

Brian T. Feeney
GREENBERG TRAURIG, LLP
1717 Arch Street
Suite 400
Philadelphia, PA 19103
Tel.: (215) 988-7812
Fax: (215) 717-5265
feeneyb@gtlaw.com

Roger B. Kaplan
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, NJ 07932-0677
Tel.: (973) 360-7957
Fax: (973) 295-1257
kaplanr@gtlaw.com

*Counsel for Dr. Reddy's Laboratories, Inc.*

*/s/ Jeffrey D. Smith*

Jeffrey D. Smith
Thomas A. Abbate
Amar Mehta
DeCOTIIS, FITZPATRICK, COLE & GIBLIN,
LLP Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, NJ 07666
Tel.: (201) 907-5228
Fax: (201) 928-0588
jsmith@decotiislaw.com
tabbate@decotiislaw.com
amehta@decotiislaw.com

*Counsel for Epic Pharma, LLC*

*/s/ Anna M. Rathbun*

Marguerite M. Sullivan
Anna M. Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel.: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com
anna.rathbun@lw.com

*Counsel for G&W Laboratories, Inc.*

/s/ Steven A. Reed
Steven A. Reed
R. Brendan Fee
Melina R. DiMattio
MORGAN LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103
Tel:  (215) 963-5000
Fax:  (215) 963-5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com
melina.dimattio@morganlewis.com

Andrew S. Wellin
MORGAN LEWIS & BOCKIUS, LLP
101 Park Avenue
New York, NY 10178
Tel:  (212) 309-6154
Fax:   (212) 309-6001
andrew.wellin@morganlewis.com

*Counsel for Glenmark Pharmaceuticals Inc., USA*

/s/ Edward B. Schwartz
Edward B. Schwartz
Jennifer M. Driscoll
Andrew C. Bernasconi
REED SMITH LLP
1301 K Street NW
Suite 1000-East Tower Washington, DC 20005
Tel: (202) 414-9200
Fax: (202) 414-9299
eschwartz@reedsmith.com
jdriscoll@reedsmith.com
abernasconi@reedsmith.com

William J. Sheridan
Courtney B. Averbach
REED SMITH LLP
Reed Smith Centre
225 Fifth Ave.
Pittsburgh, PA 15222
Tel: (412) 288-3131
Fax: (412) 288-3063
wsheridan@reedsmith.com
caverbach@reedsmith.com

*Counsel for Heritage Pharmaceuticals Inc.*

*/s/ David. L. Hanselman, Jr.*
David L. Hanselman, Jr.
MCDERMOTT WILL & EMERY LLP
444 W. Lake St.
Suite 4000
Chicago, IL 60606
Tel.: (312) 984-3610
dhanselman@mwe.com

Raymond A. Jacobsen, Jr.
Paul M. Thompson (Pa. No. 82017)
Lisa A. Peterson
MCDERMOTT WILL & EMERY LLP
500 N. Capitol St. NW
Washington, D.C. 20001
Tel.: (202) 756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lpeterson@mwe.com

Nicole L. Castle
MCDERMOTT WILL & EMERY LLP
340 Madison Ave.
New York, NY 10173
Tel.: (212) 547-5400
ncastle@mwe.com

*Counsel for Impax Laboratories, Inc. and Amneal*
*Pharmaceuticals, Inc.*

*/s/ Catherine Redlich*
Catherine Redlich
DRISCOLL & REDLICH
110 West 40th Street
Suite 1900
New York, New York  10018
Tel: (212) 986-4030
CRedlich@driscollredlich.com

*Counsel for Armando Kellum*

31

/s/ Ryan T. Becker
Gerald E. Arth
Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel.: (215) 299-2000
Fax: (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com

George G. Gordon
Stephen D. Brown
Julia Chapman
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel.: (215) 994-2382
Fax: (215) 655-2240
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

*Counsel for Lannett Company, Inc.*

/s/ Leiv H. Blad
Leiv H. Blad
Zarema A. Jaramillo
Katie R. Glynn
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel.: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
kglynn@lowenstein.com

*Counsel for Lupin Pharmaceuticals, Inc.*

/s/ Robert J. Cleary
Robert J. Cleary
Dietrich L. Snell
David A. Munkittrick
Edward Canter
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
Tel.: (212) 969-3000
rjcleary@proskauer.com dsnell@proskauer.com
dmunkittrick@proskauer.com
ecanter@proskauer.com

*Counsel for Rajiv Malik*

/s/ Brian J. Smith
Michael Martinez
Steven Kowal
Lauren Norris Donahue
Brian J. Smith
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Mayne Pharma Inc.*

 /s/ Jeffrey C. Bank
Chul Pak
Jeffrey C. Bank
Daniel P. Weick
WILSON SONSINI GOODRICH & ROSATI,
PC
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel.: (212) 497-7726
Fax: (212) 999-5899
cpak@wsgr.com
jbank@wsgr.com
dweick@wsgr.com

 /s/ Benjamin F. Holt
Adam K. Levin
Benjamin F. Holt
Justin W. Bernick
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
adam.levin@hoganlovells.com
benjamin.holt@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Mylan Pharmaceuticals Inc.*

 /s/ Peter M. Ryan
L. Barrett Boss
S. Rebecca Brodey
Thomas J. Ingalls
COZEN O'CONNOR
1200 19th Street N.W., Suite 300
Washington, DC 20036
(202) 912-4818
bboss@cozen.com
rbrodey@cozen.com
tingalls@cozen.com

Peter M. Ryan
COZEN O'CONNOR
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 665-2130
pryan@cozen.com

*Counsel for James Nesta*

_/s/ John E. Schmidtlein_
John E. Schmidtlein
Sarah F. Teich
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
steich@wc.com

_Counsel for Par Pharmaceutical, Inc._

_/s/ J. Clayton Everett, Jr._
Scott A. Stempel
J. Clayton Everett, Jr.
Tracey F. Milich
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001
scott.stempel@morganlewis.com
clay.everett@morganlewis.com
tracey.milich@morganlewis.com

Harvey Bartle IV.
Francis A. DeSimone
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000
Fax: (215) 963-5001
harvey.bartle@morganlewis.com
frank.desimone@morganlewis.com

_Counsel for Perrigo New York, Inc._

_/s/ Ilana H. Eisenstein_
Ilana H. Eisenstein
Ben C. Fabens-Lassen
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
Fax: (215) 656-3301
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Edward S. Scheideman
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, D.C. 20004
Tel: (202) 799-4000
Fax: (202) 799-5000
edward.scheideman@dlapiper.com

_Counsel for Pfizer Inc. and Greenstone, LLC._

_/s/ Thomas H. Lee, II_
Thomas H. Lee, II
Jeffrey J. Masters
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000
thomas.lee@dechert.com
jeffrey.masters@dechert.com

_Counsel for David Rekenthaler_

*/s/ Saul P. Morgenstern*
Saul P. Morgenstern
Margaret A. Rogers
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
saul.morgenstern@arnoldporter.com
margaret.rogers@arnoldporter.com

Laura S. Shores
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
laura.shores@arnoldporter.com

*Counsel for Sandoz Inc. and*
*Fougera Pharmaceuticals Inc.*

*/s/ Erik T. Koons*
John M. Taladay
Erik T. Koons
Stacy L. Turner
Christopher P. Wilson
BAKER BOTTS LLP
1299 Pennsylvania Avenue NW
Washington, DC 20004-2400
Tel.: (202) 639-7700
Fax: (202) 639-7890
john.taladay@bakerbotts.com
erik.koons@bakerbotts.com
stacy.turner@bakerbotts.com
christopher.wilson@bakerbotts.com

Lauri A. Kavulich
Ann E. Lemmo
CLARK HILL PLC
2005 Market St, Suite 1000
Philadelphia, PA 19103
Tel.: (215) 640-8500
Fax: (215) 640-8501
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
CLARK HILL PLC
301 Grant St, 14th Floor
Pittsburgh , PA 15219
Tel.: (412) 394-7711
Fax: ( 412) 394-2555
lfouse@clarkhill.com

*Counsel for Sun Pharmaceutical*
*Industries, Inc., Taro Pharmaceuticals*
*U.S.A., Inc., Taro Pharmaceutical*
*Industries Ltd., and Mutual*
*Pharmaceutical Company*

35

*/s/ Heather K. McDevitt*
Heather K. McDevitt
Bryan D. Gant
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
Fax: (212) 354-8113
hmcdevitt@whitecase.com
bgant@whitecase.com

*Counsel for Teligent, Inc.*

*/s/ J. Gordon Cooney, Jr.*
J. Gordon Cooney, Jr.
John J. Pease, III
Alison Tanchyk
William T. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

*Counsel for Teva Pharmaceuticals USA, Inc.*

*/s/ Jan P. Levine*
Jan P. Levine
Robin P. Sumner
Michael J. Hartman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750
levinej@pepperlaw.com
sumnerr@pepperlaw.com
hartmanm@pepperlaw.com

*Counsel for West-Ward Pharmaceuticals, Corp.*

*/s/ Clifford Katz*
William A. Escobar
Clifford Katz
Damon W. Suden
KELLEY DRYE WARREN LLP
101 Park Avenue
New York, NY 10178
Tel.: (212) 808-7800
Fax: (212) 808-7897
wescobar@kelleydrye.com
ckatz@kelleydrye.com
dsuden@kelleydrye.com

*Counsel for Wockhardt USA LLC and Morton Grove Pharmaceuticals Inc.*

| | |
|---|---|
| */s/ Mark A. Robertson* | */s/ Jason R. Parish* |
| Robin D. Adelstein | Jason R. Parish |
| Mark A. Robertson | Bradley J. Kitlowski |
| Gerald A. Stein | Brenda Gonzalez Horowitz |
| NORTON ROSE FULBRIGHT US LLP | BUCHANAN INGERSOLL & ROONEY PC |
| 1301 Avenue of the Americas | 1700 K. Street, N.W., Suite 300 |
| New York, New York 10019 | Washington, D.C. 20006 |
| Tel.: (212) 318-3000 | Tel.: (202) 452-7900 |
| Fax: (212) 808-3400 | Fax: (202) 452-7989 |
| robin.adelstein@nortonrosefulbright.com | jason.parish@bipc.com |
| mark.robertson@nortonrosefulbright.com | bradley.kitlowski@bipc.com |
| gerald.stein@nortonrosefulbright.com | brenda.horowitz@bipc.com |

*Counsel for Valeant Pharmaceuticals North America LLC, Valeant Pharmaceuticals International and Oceanside Pharmaceuticals, Inc.*

*Counsel for Zydus Pharmaceuticals (USA), Inc.*