**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>Case No. 16-md-2724-CMR |
| THIS DOCUMENT RELATES TO:<br><br>*The State of Connecticut, et al. v. Teva Pharmaceuticals USA, Inc.* | HON. CYNTHIA M. RUFE<br><br>19-cv-2407-CMR |

**DEFENDANT HERITAGE PHARMACEUTICALS INC.'S REPLY**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE**

Defendant Heritage Pharmaceuticals Inc. ("Heritage") hereby submits this Reply

Memorandum of Law in further support of its Motion to Strike, Dkt. 1154 (Nov. 14, 2019), and

in response to the Plaintiff-States' Memorandum in Opposition.  Dkt. 1162 (Nov. 29, 2019)

("Opposition" or "Opp.").

Heritage filed the Motion to Strike, pursuant to Fed. R. Civ. P. Rule 12(f) and

Paragraph 11 of the Protective Order entered in this case on September 4, 2018, Dkt. 697,

because the Plaintiff-States, led by the Office of the Attorney General for the State of

Connecticut ("Connecticut" or the "Connecticut Attorney General"), again quoted from and

incorporated into its recently-filed amended complaint[1] an email exchange solely between

Heritage's then-CEO and its outside counsel (the "Privileged Email") that is the subject of

Heritage's pending Motion to Enforce Protective Order.  *In re: Generic Pharmaceuticals Pricing*

*Antitrust Litigation*, 2:16-md-2724, Dkt. 1036 (July 9, 2019) (the "Motion to Enforce Protective

Order").

---

[1] *Connecticut, et al v. Teva Pharmaceuticals USA, Inc.*, 2:19-cv-2407, Dkt. 106 (Nov. 1, 2019) ("Amended Complaint") ¶ 1132.

In opposing Heritage's Motion to Enforce Protective Order, the Plaintiff-States failed to articulate any cognizable arguments as to why they had not clearly, deliberately, and—as to the Connecticut Attorney General, repeatedly—violated the Protective Order, Paragraphs 11.2 and 11.3.  Heritage Reply Memorandum in Support of Motion to Enforce Protective Order, Dkt. 1059 (July 26, 2019).  Once again, and for the reasons demonstrated below, in opposing Heritage's Motion to Strike, the Plaintiff-States have failed to offer any cognizable argument that they did not clearly and deliberately violate Paragraphs 11.2 and 11.3 of the Protective Order. Rather, there is no genuine dispute of fact or law as to whether they did, and, for the reasons discussed below, Heritage respectfully asks this Court to grant the relief requested in both Heritage's Motion for Protective Order and its Motion to Strike, and as to the latter, either upon the present motion or in the exercise of the Court's authority under Fed. R. Civ. P. 12(f)(1).

## ARGUMENT

The Plaintiff-States argue that Heritage's motion is improper because, to grant it, "this Court would need to hold that the email used and embedded in the State's Complaint and Amended Complaint is privileged."  Opp. at 8-9.  This is incorrect, and the Plaintiff-States' argument highlights the fundamental failing of their oppositions both to Heritage's Motion for Protective Order and Motion to Strike.  As Heritage has previously demonstrated, the Plaintiff-States indisputably and repeatedly violated the Protective Order *whether or not this Court ultimately determines that the email at issue is or is not privileged.*  The Protective Order imposes on receiving parties two obligations intended to protect even *potentially* attorney-client privileged information, prior to an ultimate determination as to whether such information is in fact privileged.  First, Paragraph 11.3 requires a receiving party who discovers a document that "reasonably appears" to be privileged to notify the producing party of its discovery, and second,

Paragraph 11.2 requires the receiving party to promptly return any documents that the producing party discovers to have been inadvertently produced, and which the producing party seeks to "claw back."  Dkt. 697 ¶¶ 11.2 and 11.3.  The Protective Order does not relieve a receiving party from those obligations if it contends that the subject document is not privileged and, in fact, the receiving party's obligations under those provisions are absolutely mandatory.  *Id.*  Paragraph 11.2 mandates that a party receiving a clawback request "*must* return, sequester or destroy" the subject documents and "*must not* use or disclose" them.  Paragraph 11.3 similarly mandates that upon discovery of a document that "reasonably appears" to be privileged, the receiving party "*must* refrain from further examination of the materials" and notify the producing party.  Finally, Protective Order Paragraph 11.5 explicitly reserves the privilege determination to this Court, and the Plaintiff-States' position that receiving parties can unilaterally opt out of their Paragraph 11 obligations would render those provisions meaningless.  *Id.* ¶ 11.5.  Paragraph 11.5 also makes clear that the privilege determination is to be made *after* the receiving party satisfies its obligations under Paragraph 11.2 or 11.3:  "Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client privilege... by submitting a challenge to the Court."  *Id.*

In sum, not only does this Court not need to make a privilege determination to find that the Plaintiff-States have—yet again—violated the Protective Order, there is no genuine dispute as to whether or not they did, and the Plaintiff-States offer no cognizable argument to the contrary.  That the Plaintiff-States, led by Connecticut, republished the Privileged Email while Heritage's Motion for Protective Order remains pending reflects yet another gross disregard for the Protective Order and the authority of this Court.

Indeed, the Plaintiff-States acknowledge as such by reminding the Court that when asked when the Plaintiff-States intended to file their amended complaint during the September 24, 2019 status conference, Mr. Nielsen stated that "[w]e haven't done so yet because we have been reluctant to amend and include the email that is the subject of the pending [H]eritage motion in an unsealed fashion again."  Opp. at 5.  The Plaintiff-States' excuse for abandoning that well-placed prudence is that the Court urged them to file their amended complaint "the sooner the better," and Heritage did not at the time object to *their filing the amended complaint.  Id.* at 6. Heritage had no objection to the Plaintiff-States' filing their amended complaint, and their argument that Heritage did not *again* advise the Court of its objection to the publication of the Privileged Email when it did so does not warrant a serious response.[2]

Notably, the Plaintiff-States ignore in their Opposition the option available to them of filing their complaint without the Privileged Email and, thereby, avoid another clear violation of the Protective Order.   The fact that—as previously demonstrated[3] and as further discussed below—the email relates to a response to a Congressional subpoena seeking documents relating to a drug, Doxy IR, that Heritage did not manufacture and did not have the right to sell, *and which is not even among the list of over a hundred drugs in the alleged conspiracies in either case brought by the Plaintiff-States*,[4] only highlights the egregiousness of the republication.

---

[2] The Plaintiff-States' argument has no more merit than would be an argument by a motorist who, having run a red light and in the process sped over a pedestrian's foot, only to back up, drive up on the sidewalk, and do so again, argues that the pedestrian should not be heard to complain because she failed to ask the motorist not to repeat the offense.

[3] Memorandum in Support of Heritage's Motion to Enforce Protective Order, Dkt. 1036-1 (July 9, 2019), 10 (Heritage never sold, nor even had the right to sell, the drug at issue).

[4] *See Connecticut, et al v. Teva Pharma. USA, Inc*., 2:19-cv-2407, Dkt. 106 (Nov. 1, 2019) (Amended Complaint) and *Connecticut, et al. v. Actavis Holdco, U.S., Inc.*, 2:17-cv-3768, Dkt. 15 (June 18, 2018) (Amended Complaint).

The Plaintiff-States also argue that Heritage has failed to articulate a basis under Rule 12(f) for striking the subject email because it is, they argue, not "redundant, immaterial, impertinent, or scandalous. . . . ."  Opp. at 9-10.  This argument also fails.  As previously demonstrated, because the attorney-client privilege is "zealously protected under the law," the courts have invoked Rule 12(f) to strike allegations containing even *potentially* privileged information.  Opening Memo. at 3 (citing *Emmanouil v. Roggio*, No. 06-1068, 2006 WL 2927621, at *2 (D.N.J. Oct. 11, 2006).  *See also Sims v. Roux Labs*, 2007 WL 2571941, No. 06-10454, at *1 (E.D. La. Aug. 31, 2007) ("[W]hen considering a motion to strike, those portions of a complaint that make use of privileged communications may be removed from the complaint."); *Shakima O. v. Westchester Cnty.*, 2014 WL 521608, No. 12-cv-9468, at *5-7 (S.D.N.Y. Feb. 10, 2014) (striking allegation of privileged communication obtained through inadvertent disclosure); *Fodor v. Blakey*, 2012 WL 12893986, No. 11-08496, at *5-6 (C.D. Cal. Dec. 31, 2012) (striking allegation as having "no possible bearing upon the subject matter of the litigation" because the communications were privileged and, therefore, inadmissible); *Otero v. Vito*, No. 5:04-cv-211, 2005 WL 1429755, at *1–2 (M.D. Ga. Jun. 15, 2005) (striking allegation as containing privileged communication).

In any event, the Privileged Email clearly falls within the scope of Rule 12(f).  At a minimum, the email is "immaterial" to the Plaintiffs' claims.  The Plaintiff-States argue that the Privileged Email "directly support[s] the States' allegations that these manufacturers understood their conduct to be illegal and coordinated efforts to cover up that conduct."  Opp. at 10.  The Plaintiff-States misapprehend the nature of their claims.  As the Third Circuit has held, "in price-fixing conspiracies, where the conduct is illegal *per se*, no inquiry has to be made on the issue of intent beyond proof that one joined or formed the conspiracy."  *United States v. Gillen*, 599 F.2d

541, 544-45 (3d Cir. 1979).  This is equally true of all *per se* Section 1 claims.  Thus, a guilty

state of mind is not an element of their claims.  Moreover, whether or not the email is

"scandalous" or "impertinent" (and the Connecticut Attorney apparently believes it to be so, or

he would not be so fond of quoting it in social media, in these cases, and, almost certainly

leaking it to a reporter), [5] is an issue that this Court need not reach.

It is axiomatic that publication of a privileged email by the receiving party prejudices the

party who holds the privilege.  The Plaintiff-States press ahead, though, and argue that Heritage

was required to explain *how* it is prejudiced by the republication of an email that it contends—

and plainly is—is privileged.  At the risk of stating the obvious, the disclosure of privileged

communications threatens the confidentiality of the attorney-client relationship and, thereby,

undermines the willingness of clients to entrust their counsel with their confidence, and the

ability of counsel to give candid advice.  That is why the privilege exists.  *See, e.g.*, *Klitzman,*

*Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir. 1984) ("[The attorney-client

privilege's] purpose is to encourage full and frank communications between attorneys and their

clients and thereby promote broader public interests in the observance of law and administration

of justice."); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 360 (3d Cir. 2007) ("It is essential

that parties be able to determine in advance with a high degree of certainty whether

communications will be protected by the privilege.").  The Plaintiff-States' argument can, and

should be, summarily rejected.

For similar reasons, the Court can quickly dispose of the Plaintiff-States' argument that

Heritage should not be heard to claim prejudice because the filing of its motions seeking to

protect the Privileged Email brings more attention to the email itself.  It does.  But,

---

[5] Memorandum in Support of Motion to Enforce Protective Order, Dkt. 1036-1 (July 9, 2019), 3-4.

unfortunately, the Plaintiff-States again give Heritage no choice but to seek the protection of this Court from further publication and to remove from the Plaintiff-States' complaints all references to the email.  Failing to do so would raise the risk of the Plaintiff-States or other Plaintiffs arguing that Heritage not only waived the privilege as to the email, but as to the entire subject matter to which it relates.  *See Green, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 420 (E.D. Pa. 2001) (noting the general rule that voluntary disclosure of privileged attorney-client communications "waives the privilege as to all other communications" on the same subject) (citing *Katz v. AT&T Corp.*, 191 F.R.D. 433,439 (E.D. Pa. 2000)); *see also Dubler v. Hangsterfer's Labs.*, No. 09-5144 RBK JS, 2011 WL 90244, at *5 (D.N.J. Jan. 11, 2011) (finding defendant failed to proffer any evidence regarding "reasonable steps" taken to prevent or "rectify" the inadvertent disclosure thereby waiving any privilege).  The Plaintiff-States left Heritage with no choice but to, again, seek the Court's protection.

Finally, the Plaintiff-States argue that Heritage's motion is improper because it is not named as a Defendant in the Amended Complaint.  Opp. at 8 (quoting Rule 12(f)(2)).  This is red herring.  That complaint is now being adjudicated within the MDL, to which Heritage very much *is* a "party," whether or not it is named as a Defendant in the latest of the Plaintiff-States' complaints to publish the Privileged Email.  Indeed, the fact that Plaintiffs have argued that all Defendants are subject to discovery regarding all products on which all of the Plaintiffs' claims made in all complaints are based, and the Court has agreed, the Plaintiff-States should not now be heard to ask the Court to engage in such fine line-drawing, to the substantial prejudice of Heritage.  Heritage therefore satisfies the requirements of Rule 12(f)(2).  In any event, even if the Plaintiff-States are correct—and they are not—their argument is of no moment because Rule 12(f)(1) empowers a court to strike allegations "on its own."  Either pursuant to Rule 12(f)(1) or

(2), Heritage has amply demonstrated that it is entitled to the relief sought, and the Plaintiff-States have failed to demonstrate otherwise.

## CONCLUSION

The Attorney General of Connecticut, followed by the other States, have again demonstrated a willingness to run roughshod over the rights of producing parties in these cases and to willfully ignore their obligations under the Protective Order, in the apparent believe that they can do so with impunity.  Accordingly, and for the reasons demonstrated in the Opening Memorandum and above, Heritage respectfully requests that this Court grant the Motion to Strike and enter the relief requested therein; and to do so before they strike again.

December 11, 2019                              Respectfully submitted,

_/s/  Edward B. Schwartz_
Edward B. Schwartz, Esq.
Karl E. Herrmann, Esq.
REED SMITH LLP
1301 K Street NW
Suite 1000-East Tower
Washington, DC 20005
Tel: (202) 414-9232
Fax: (202) 414-9299
eschwartz@reedsmith.com
kherrmann@reedsmith.com

*Counsel for Defendant Heritage*
*Pharmaceuticals Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2019, a copy of the foregoing Defendant Heritage

Pharmaceuticals Inc.'s Reply Memorandum of Law in Support of its Motion to Strike was filed

via the Court's ECF system, which will provide service to all registered counsel.


/s/ Karl E. Herrmann
Karl E. Herrmann, Esq.