## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| | **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>*ALL ACTIONS* | |

### MEMORANDUM OPINION

**Rufe, J.**                                                              **January 9, 2020**

Defendant Heritage Pharmaceuticals, Inc. contends that Plaintiff State of Connecticut, through the Office of the Attorney General (the "Connecticut AG"), has violated the Protective Order in this case.[1]  Heritage contends that the Connecticut AG included excerpts of a privileged email in the Complaint and Amended Complaint filed in one of the cases in the MDL,[2] publicized those excerpts, and possibly released a sealed document to the press.  Heritage has moved to compel the Connecticut AG to comply with the Protective Order by allowing Heritage to claw back the emails, to strike the Amended Complaint, and for sanctions.  The Connecticut AG opposes the motions, and argues that it is Heritage's unjustified accusations of wrongful conduct that warrant sanctions.

At issue is an exchange of emails on October 3, 2014, between Heritage's outside counsel at the time and Heritage's then-CEO, Jeffrey Glazer.  The email chain begins with the forwarding of a letter sent by members of Congress to Heritage.  After some back and forth, the attorney in the final email relays information received from a colleague representing another company as to the

---

[1] Pretrial Order No.. 53 [MDL Doc. No. 697].

[2] *Connecticut v. Teva Pharmas., Inc.*, Civil Action No. 19-2407 (E.D. Pa.).

coordination of responses among several companies and through a pharmaceutical industry trade association.  Heritage's then-counsel produced the email chain to the Connecticut AG on June 26, 2017, as part of the state investigation.[3]  In addition to conducting the investigation pursuant to Connecticut law, the Connecticut AG, joined by many other States, has filed antitrust actions. The first case brought by the Plaintiff States was conditionally transferred into the MDL on May 3, 2017; the order was made final on August 3, 2017.

An image of the final email in the chain was included (with the names of individuals other than Mr. Glazer redacted) in the sealed, unredacted version of the Plaintiff States' Complaint filed on May 10, 2019.[4]  Although Heritage is not a named Defendant in that case, when the Plaintiff States notified Defendants' Liaison Counsel of their intent to file a motion to unseal the complaint on May 21, 2019, Heritage would have received copies of the motion and the unsealed Complaint as a Defendant in the MDL.  The Plaintiff States filed the motion on June 6, 2019.[5]  Several Defendants, not including Heritage, filed a letter response explaining that because the Complaint had been sent (by whom, the Court does not know, and Plaintiffs have denied doing so) to a news organization and published online, there was no longer any point to maintaining the Complaint under seal.[6]  The Court granted the motion to unseal on June 21, 2019.[7]  Heritage filed its motion the next month.[8]  With the knowledge of the parties to the MDL and the Court, the Plaintiff States filed an Amended Complaint on November 1, 2019, which again reproduces the final email.[9]

---

[3] *See* MDL Doc. Nos. 286, 417.

[4] Civil Action No. 19-2407 Doc. No. 1 at ¶¶ 1031–31.

[5] Civil Action No. 19-2407, Doc. No. 12.

[6] Civil Action No. 19-2407, Doc. No. 45.

[7] Civil Action No. 19-3407, Doc. No. 48.

[8] MDL Doc. No. 1038.

[9] Civil Action No. 19-2407, Doc. No. 106 at ¶ 1132.

2

Heritage, which is still not named as a Defendant in that action, has filed a motion to strike the Amended Complaint.[10]

The parties disagree as to whether the Protective Order in this case applies. There is some room for uncertainty in this regard, but it ultimately does not control the decision as to whether the email must be returned to Heritage. Heritage can prevail only if the emails are covered by attorney-client privilege and the common-interest privilege. The other designations of confidential material covered by the Protective Order—Confidential, Highly Confidential or Outside Counsel Eyes Only— do not apply to the emails, and no in-depth analysis of the interlocking provisions of the Protective Order is necessary for the resolution of the dispute. Instead, the Court will determine whether the emails are privileged. If they are, the Court has the inherent authority to restrict the use of privileged documents in the MDL to preserve the integrity of its judicial proceedings.[11]

### *Attorney-Client and Common-Interest Privilege*

"'[T]he attorney-client privilege may be invoked . . . with respect to: (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'[12] "Although the communications are often relevant and highly probative of the truth, they are protected in order 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"[13] The privilege does not extend to the

---

[10] MDL Doc. No. 1154.

[11] *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992).

[12] *Emmanouil v. Roggio*, 499 F. App'x 195, 199 (3d Cir. 2012) (quoting Restatement (Third) of the Law Governing Lawyers § 68)).

[13] *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

disclosure of underlying facts incorporated into the communication.[14]  "Where a lawyer provides non-legal business advice, the communication is not privileged"[15]  In addition, particularly where the attorney is providing both business and legal advice, the privilege does not apply when "an attorney is merely conveying to his client the substance of what a third party has conveyed."[16]

The common-interest privilege (also referred to as the community-of-interest privilege) is an exception to the general rule that attorney-client privilege is waived following disclosure to a third party, and it "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others."[17]  To be protected, "the communication must be shared with the *attorney* of the member of the community of interest" as "[s]haring the communication directly with a member of the community may destroy the privilege."[18]  In addition, all members of the community "must share at least a substantially similar legal interest."[19]  This has been interpreted to mean that "the interests must be closer to 'legally identical' than 'legally similar.'"[20]  Moreover, "the party asserting the privilege has the burden of establishing the elements of the attorney-client privilege generally, as well as those of the common-interest privilege."[21]  Thus, "there should be a demonstration that 'the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation.'"[22]

---

[14] *Upjohn*, 449 U.S. at 395–96.

[15] *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007) (internal citations omitted).

[16] *TVT Records, Inc. v. Island Def Jam Music Grp., a Div. of UMG Recordings, Inc.*, No. 02-6644, 2003 WL 749801, at *2 (S.D.N.Y. Mar. 5, 2003) (internal quotation marks and citations omitted)

[17] *In re Teleglobe Comms. Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) (citations omitted).

[18] *Id.*

[19] *Id.* at 365.

[20] *Gelman v. W2 Ltd.*, No. 14-6548, 2016 WL 8716248 at *4 (E.D. Pa. Feb. 5, 2016).

[21] *In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 118 (E.D. Pa. 2011) (citations omitted).

[22] *Leader Tech., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010) (quoting *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389 (Fed. Cir. 1996)).

In the final email, the attorney is conveying information from third parties, not providing legal advice.  The record does not show that Heritage, Mylan, and Teva (the companies referenced in the final email)[23] shared a sufficiently common legal interest in responding to the congressional inquiries, and the communications extended beyond individual companies to an industry trade association (the GPhA), as stated in the final email.  The Court therefore concludes that the final email is not privileged.[24]  The other emails in the chain however, do not contain such communications, and as they may reasonably be construed as seeking legal advice the Court will order that they may not be used in the MDL, except for the congressional inquiry letter itself (which is listed as an attachment but not included in the printout of the document).[25]

### *Sanctions*

Running throughout the motions and responses is an underlying tension among the parties, as demonstrated by dueling requests for sanctions.  The Court previously denied without prejudice

---

[23] Mylan and Teva, both of which are named as Defendants in the relevant Complaint, did not raise any privilege claim as to the final email.

[24] The final email reads as follows:

> Spoke with my colleague [redacted] in DC, who is doing the response letter for Mylan.  Her husband works for [redacted] and he is doing the response for Teva.

> They have both been in contact with GPhA on coordinating a response – and the consensus at this point is that the response will be "polite f-u" letters.

> She told me that Teva authorized [redacted] to schedule a conference call to coordinate the response and make sure everyone is on the same page.

> She said the response can either be a ghost written letter on HPI letterhead or a letter from outside counsel.  Just depends on your preference.

> I'll keep you updated.

[25] Plaintiff States argue briefly that any claim to attorney-client privilege has been waived because the document was produced more than two years before Heritage objected to its use.  Given the massive volume of documents produced in the investigation, the Court will not be quick to find waiver.  Similarly, Plaintiff States' invocation of the crime-fraud exception to the attorney-client privilege is a cursory discussion that puts the cart before the horse by assuming a conspiracy to obstruct a congressional inquiry; the Court will not rule on such an important issue that has not been fully developed. Because the email quoted in the Amended Complaint is not privileged, the Motion to Strike will be denied.

a motion filed by certain Defendants to limit extrajudicial statements.[26]   That motion stemmed from the dissemination to a media outlet of  the then-sealed Complaint and interviews given by the Connecticut AG.  Heritage also cites the use of the final email on social media platforms as a basis for sanctions.  The Connecticut AG vehemently denies that it has leaked any sealed documents to the press.

The Court will not impose sanctions against either party at this time.[27]  The stakes in this MDL are very high for all parties, and the public interest is great.  There is no evidence whatsoever that the Connecticut AG has acted unethically or contravened this Court's orders.  The Court will assume that the intemperate language employed by Heritage reflects those high stakes but cautions all counsel not to let zeal run ahead of facts.  As the Court previously ruled, any party who contravenes the Court's authority with regard to sealed documents would be subject to sanctions, but the Court will not impose limits on extrajudicial statements unless and until such statements jeopardize the fairness of the judicial proceedings.[28]

---

[26] MDL Doc. No. 825.

[27] *See Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (stating that the standards for awarding sanctions are stringent as sanctions "1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes; 2) tend to spawn satellite litigation counter-productive to efficient disposition of cases; and 3) increase tensions among the litigating bar and between the bench and the bar." (internal quotation marks and citations omitted).

[28] MDL Doc. No. 825.