IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : MDL NO. 2724<br>: 16-MD-2724<br>:<br>: HON. CYNTHIA M. RUFE<br>: |
| ALL ACTIONS | : |

**SPECIAL MASTER DAVID H. MARION'S
AMENDED SECOND REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTION TO COMPEL DIRECT PURCHASER PLAINTIFFS
TO RUN SEARCH TERMS AND PRODUCE CERTAIN DOCUMENTS**

Pursuant to Pretrial Orders Nos. 49 [Doc. No. 667] and 68 [Doc. No. 823], Special Master David H. Marion hereby submits this Amended[1] Second Report and Recommendation regarding Defendants' Motion to Compel Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs"), to run specific search terms and produce certain documents pursuant to those searches.

**I.   BACKGROUND**

On December 13, 2019, Defendants submitted a letter brief to Special Master Marion in support of their motion to compel DPPs and EPPs to run search terms and produce documents related to: (1) all generic drugs at issue in the MDL as of September 1, 2019; (2) all Defendant names as of September 1, 2019; and (3) Activella, a branded drug equivalent.  Defendants' further moved to compel DPPs to run search terms and produce documents related to certain generic pharmaceutical industry events.

---

[1] This amendment is filed for the sole purpose of clarifying that, although the Motion to Compel was originally submitted against both the DPPs and End-Payer Plaintiffs ("EPPs"), the EPPs later agreed to my informal recommendation.  Therefore, this Report and Recommendation is directed only to the DPPs. There are no other substantive changes from the previously filed Second Report and Recommendation.

24171062v.1

On December 20, 2019, the DPPs submitted their response in opposition to Defendants' Motion to Compel.  DPPs argue, among other things, that (1) most of the discovery Defendants now demand from DPPs is already in Defendants' possession because it consists of the generic drug purchasing-related documents and communications that either originated from and/or were exchanged with Defendants in the ordinary course of DPPs' purchasing; (2) there is "no foundation for Defendants' demand that DPPs use as search terms each separate Defendant's name because Defendants' document requests…seek only documents concerning the drugs subject to DPPs' present claims," and a search for company names divorced from any drug at issue would likely include documents with no relevance to this MDL; (3) while DPPs acknowledge that industry events are relevant to DPPs' present claims, they disagree that DPPs' knowledge about and participation in any such events is relevant; and (4) Defendants have failed to articulate any non-conclusory basis for finding that the documents sought are relevant.

On January 10, 2020, I conducted a joint meeting among interested counsel to discuss the above issues and contentions.  At the close of that meeting, the parties were unwilling to agree as to the issues presented, or to move from their asserted positions.  In order possibly to encourage some movement toward agreement, on January 14, 2020, I issued an Informal Report and Recommendation (the "Informal Report").

On January 21, 2020 and January 24, 2020 respectively, the Defendants and EPPs, accepted the Informal Report[2].  The DPPs did not accept the Informal Report, but requested additional time to resolve certain issues with Defendants.  Unfortunately, those issues were not

---

[2] In accepting the Informal Report, the EPPs announced their intention to request an additional meet and confer with Defendants concerning what they characterized as "certain wild card modifiers contained in their requested search terms" as to which they expected to be able to reach agreement, which they did.

-3-

resolved, and therefore I am now recommending entry of the attached Order, which I believe to be a fair and workable solution given the breadth of issues presented in this MDL.

**II.   DISCUSSION**

The Court has broad authority to "construe[], administer[], and employ[]" the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action…"  Fed. R. Civ. P. 1.  Consistent with those goals, on October 24, 2019, the Court entered the Case Management Order and Discovery Schedule, PTO No. 105 (the "CMO") [Doc. No. 1135].  The CMO permitted a relatively broad scope of discovery in this MDL, and set forth a road map to move these cases forward.

In their brief in support of my August 16, 2019 (First) Report and Recommendation, which later became the basis for the Court's CMO, Plaintiffs contended that discovery from Defendants should proceed covering and including all drugs, whether or not they were yet covered by allegations in an existing complaint, (1) so as to avoid seemingly endless rounds of time-consuming meet-and-confers whenever new drugs or defendants are added to the MDL; and (2) to avoid "having discovery proceed on a piecemeal basis."  *See* Plaintiffs Response to August 16, 2019 Report and Recommended Order from Special Master David H. Marion, at pg. 5 [Doc. No. 1092].  Plaintiffs further stated, "[the Special Master's recommended CMO] calls for discovery to go forward immediately on the full scope of Defendants' anticompetitive conduct, with respect to *all* drugs in the MDL, and in a manner that allows Plaintiffs to pursue evidence supporting their claims of a broad, overarching conspiracy spanning the generic drug industry." *Id.* at pg. 7. (emphasis in original).  In opposition to Defendants' approach to the CMO, which would have placed a "fence" around the pre-May 2019 scope of the MDL involving only approximately thirty drugs, Plaintiffs argued that Defendants' approach would "drag out this

MDL for years; result[ing] in redundancy of discovery efforts (*e.g.* multiple time-consuming searches in the same files for responsive documents, multiple depositions of the same witnesses, multiple productions of each Defendant's transaction-level sales data pulled from the same databases); compound costs and delay; and thwart the goals of judicial economy and efficiency that led to the JPML's creation of this MDL in the first place." *Id*. at 26-27.

I recognize that there are no counterclaims against Plaintiffs alleging unlawful acts by them; nor is it inevitable that discovery should proceed against Plaintiffs within the same parameters as they demanded from the Defendants.  Nevertheless, Plaintiffs may have documents bearing upon both the claims and defenses herein, and fairness and the appearance of fairness dictate that discovery should proceed broadly on both sides of the MDL.  The CMO places all drugs at issue as of a certain date squarely within the scope of discovery, and states that, "discovery involving pre-existing parties may be expanded as appropriate to include newly added defendants and/or drugs."  CMO, ¶ 1.

### III. RECOMMENDED ORDER

Defendants should be entitled to discover information relevant to all drugs in the MDL, even if the DPPs have not expressly brought claims on every one of those drugs and/or did not specifically referred to such in earlier requests for production[3].  Furthermore, the DPPs have asserted overarching conspiracy claims against Defendants, which they allege extend beyond any individual drug to cover a broad industry-wide conspiracy.  Thus, information held by Plaintiffs relating to the drugs, Defendants, and industry events involved in the MDL could bear upon defenses that Defendants are entitled to or might wish to assert.  Both the Court and the Special

---

[3] Notably, since the entry of the CMO, the DPPs have filed a new Complaint, greatly expanding the scope of drugs and Defendants at issue as to those parties.

-4-

24171062v.1

-5-

Masters have permitted the Plaintiffs wide latitude in seeking broad discovery from Defendants, and fairness dictates that the Defendants should have discovery from Plaintiffs broad enough to allow for effectively presenting their defenses to Plaintiffs' claims.

Moreover, the letter brief provided by the DPPs failed to establish that these categories of search terms would be unduly burdensome or disproportionate to the huge scope and high stakes involved in litigating their claims. Therefore, I am recommending an Order granting Defendants' request that DPPs run search terms and produce documents related to (1) all generic drugs currently at issue in the MDL; (2) all Defendant names currently in the MDL; (3) Activella, a brand drug equivalent, and (4) certain generic pharmaceutical industry events. However, I hope and expect that the parties will work with each other and the Special Masters in establishing reasonable search terms encompassing the above. ESI Special Master Regard and I will continue to make ourselves available to assist as these discussions progress.

        Respectfully submitted,

        */s/ David H. Marion*
        David H. Marion, Special Master
        Morgan S. Birch
        WHITE AND WILLIAMS LLP
        1650 Market Street
        One Liberty Place, Suite 1800
        Philadelphia, PA 19103
        Tel: (215) 864-7000
        *mariond@whiteandwilliams.com*

Dated: February 19, 2020