IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : MDL NO. 2724 <br> : 16-MD-2724 <br> : <br> : HON. CYNTHIA M. RUFE <br> : |
| *ALL ACTIONS* | : <br> : |

**SPECIAL MASTER REGARD'S AMENDED REPORT AND RECOMMENDATION RELATING TO GLOBAL SEARCH TERM MODIFICATIONS <u>REQUESTED BY SANDOZ</u>**

Pursuant to Pretrial Orders Nos. 49 [Doc. No. 667], 68 [Doc. No. 823], and 74 [Doc. No. 854] Special Discovery Master for ESI Daniel L. Regard hereby submits this Report and Recommendation regarding the party-specific issues raised by Sandoz Inc. and Fougera Pharmaceuticals Inc. (collectively, "Sandoz") with respect to the application of Defendants' Global Search Terms to the custodial documents of certain Sandoz custodians.

**I.   BACKGROUND OF SANDOZ-SPECIFIC GLOBAL SEARCH TERM DISPUTE**

On January 21, 2020, Sandoz requested a protective order limiting the Global Search Terms to be applied to the custodial documents of its former Chief Executive Officers, Don DeGolyer and Peter Goldschmidt (the "CEOs"). Rather than apply the agreed-upon terms for Tier 1 or Tier 2 custodians, Sandoz proposed a modified set of search terms to apply only to the CEOs ("Sandoz Search Terms"). The proposed Sandoz Search Terms included Defendant Domains, Tier 2 terms for Drug Names and Events, modified Tier 2 terms for Defendant Names, and targeted Stand-alone Terms, while excluding terms for Named Plaintiffs and Employees.

Sandoz contends that because Sandoz is part of Novartis' multinational corporate framework, the CEOs regularly received competitively sensitive information related to corporate

entities that are not parties to the MDL and whose businesses do not involve the pricing or marketing of generic drugs. Sandoz argues that the Global Search Terms are overly broad and ill-suited to identify responsive information within the custodial files of the CEOs and therefore will lead to the production of irrelevant and highly sensitive business information. Due to the increased burden on Sandoz to review hundreds of thousands of non-responsive documents for privilege, production, and clawback, as well as the imperfections associated with the Protective Orders and the clawback process under PTO 105, Sandoz seeks to apply the tailored set of Sandoz Search Terms to the CEOs to target relevant information.

In response, Plaintiffs maintain that the CEOs should be treated as Tier 1 custodians, consistent with the treatment of the CEOs and executives of other Defendants, rather than creating a "Tier 3" category of custodians. Plaintiffs argue that Sandoz has already sought to apply alternative review and production criteria to the custodial documents of the CEOs and that the requested relief has been considered and rejected on several occasions, including as part of Special Master Marion's recommendation related to the production of Defendants' custodial files and the Court's entrance of PTO 105 and as part of Special Master Merenstein's informal recommendation to designate the CEOs as agreed custodians.

## II.   DISCUSSION

Issues associated with Sandoz's request for the application of the Sandoz Search Terms were first raised to me in January 2020 during discussions about the Global Search Terms to be applied to all Defendants' custodial documents. I deferred these issues pending resolution of the Global Search Terms. In March 2020, after those Global Search Terms were finalized by stipulation, I re-opened discussion of the Sandoz party-specific issues. I will not list all of the Joint and Ex Parte communications that were invested in the Sandoz party-specific dispute out of

respect for the confidentiality of those forums, other than to say that I am confident that both parties have had ample opportunity to present oral as well as multiple written informal letter briefs and emails articulating their positions.

When Sandoz initially advised of ongoing discussions with Plaintiffs regarding the application of search terms to the custodial documents of the CEOs, I strongly encouraged the parties to work within the current two-tiered system to resolve the disputed issues. I do not find that circumstances have changed during the intervening time period to merit a departure from my initial guidance.

On December 18, 2019, Special Master Merenstein issued an informal report and recommendation ("iR&R") to identify former Sandoz CEOs Don DeGolyer and Peter Goldschmidt as agreed custodians subject to discovery and PTO 105's requirement for the production of defendant custodial documents prior to a relevancy review. In that underlying dispute, Sandoz urged that the CEOs should be designated as "limited custodians" and the scope of their productions should be limited to only responsive, non-privileged information due to the competitively sensitive content of their documents.

As part of his iR&R, Special Master Merenstein acknowledged that the CEOs may possess responsive documents as Plaintiffs had "identified a number of documents that are likely to be found in these executives' files that relate to the core issues in this case, including pricing and market allocation." The Special Master also reasoned that while appreciative of Sandoz's concerns that the clawback procedures in PTO 105 may lead to the production of non-responsive, non-relevant documents, including highly sensitive business information outside the scope of the MDL, there are several protections in place to address such concerns, including the Court's Protective Order, the automatic designation of all documents as highly confidential for

120 days, and the opportunity to clawback documents under PTO 105. Specifically, the Special Master's iR&R states that the exact concerns raised by Sandoz about the production of commercially sensitive documents had been considered by Special Master Marion, the District Court, and the Third Circuit and that procedures for review and production of custodial file documents pursuant to PTO 105 were found appropriate. The parties accepted Special Master Merenstein's designation of the CEOs as agreed custodians and therefore this dispute was not presented to the Court.

Sandoz has argued for a departure from the Global Search Terms that were negotiated in adherence to PTO 105. Although sensitive to Sandoz's concern that the Tier 1 Global Search Terms may capture a large volume of non-relevant business sensitive documents, the established procedures in this case that have been held to be sufficient to address such a production of sensitive and non-relevant documents.

Based on precedent established by the Courts and the Special Masters, I recommend that the search terms applicable to the CEOs align with the two-tiered system of Global Search Terms, and if necessary, that Sandoz work with the Plaintiffs to resolve any narrow, Sandoz-specific idiosyncratic results after the application of individual terms.

I further recommend that the CEOs be designated as Tier 1 custodians. The exemplar documents presented to Special Master Merenstein indicate that these Sandoz CEOs were in possession of communications that they received or sent regarding pricing and market share – issues Plaintiffs' deem as core to their conspiracy allegations. Evidence of these types communications is consistent with the criteria used by Plaintiffs to identify Tier 1 custodian, including at least 12 other Defendants' CEOs, and Sandoz has not refuted Plaintiffs' designation.

## III. CONCLUSION

In light of all of the above considerations, Special Discovery Master of ESI Regard recommends as follows:

1. Sandoz's request for a protective order to depart from the Global Search Terms and apply a tailored set of Sandoz Search Terms to the custodial files of Sandoz CEOs Don DeGolyer and Peter Goldschmidt should be denied.

2. Plaintiffs' request for the designation of these Sandoz CEOs as Tier 1 custodians subject to the relevant Global Search Terms should be granted.

Respectfully submitted,

/s/ Daniel L. Regard
Daniel L. Regard
Special Discovery Master of ESI
iDiscovery Solutions
3000 K Street NW, Suite 330
Washington, DC 20007
Tel: (202) 248-7877
Email: *dan@idsinc.com*

Dated: June 12, 2020