IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                        **July 13, 2020**

By way of the third report and recommendation of Special Master David Marion ("R&R 3"), the question before the Court is which cases in this MDL should be the first placed on a trial track.[1] There is no single "right" answer to this question; the Court in the sound exercise of its discretion must determine a course that is reasonable and fair and "will promote the just and efficient conduct of" the cases constituting the MDL.[2]

The MDL encompasses allegations that numerous pharmaceutical companies engaged in an unlawful scheme or schemes to fix, maintain, and stabilize prices, rig bids, and engage in market and customer allocations of (to date) 200 generic pharmaceutical products. The first cases were filed as proposed class actions alleging conspiracies to fix the prices of two separate generic drugs (digoxin and doxycycline), and soon expanded to encompass lawsuits alleging separate

---

[1] This process may be described as "bellwether selection." There has been some discussion among the parties as to whether the term bellwether fits this antitrust MDL, and Defendants use the term "case sequencing." The Court agrees with Defendants to the extent that bellwether cases in these antitrust conspiracy cases necessarily differ in kind from those used in mass tort (product liability) cases. Nevertheless, the Court has considered factors including the types of cases in the MDL (alleged conspiracies as to both single drugs and as to overarching conspiracies), and the information that may be gleaned from the selected cases (including the feasibility of class certification and the number of drugs and Defendants that will be included).

[2] 28 U.S.C. § 1407.

conspiracies as to 18 generic drugs. These proposed class actions were filed on behalf of direct purchaser plaintiffs, end-payer plaintiffs, and indirect reseller plaintiffs (collectively, "Private Plaintiffs").[3] Defendants successfully sought the transfer into the MDL of a case filed by the attorneys general of numerous States that alleged an overarching multi-drug conspiracy centering on the actions of Heritage Pharmaceuticals, over the objections of the State Plaintiffs. The State Plaintiffs have since filed a second overarching conspiracy case centering on Teva Pharmaceuticals, and, quite recently, a third action that alleges a wide-ranging conspiracy. While maintaining the individual conspiracy cases, Private Plaintiffs also have filed overarching conspiracy cases that are similar, but by no means identical, to the State Plaintiffs' actions.

In Pretrial Order No. 105 (the "CMO"), the Court directed that the parties meet and confer to identify criteria for selecting bellwether claims or case, and directed Special Master Marion to develop a recommendation in the event the parties could not agree. R&R 3 provides for a path to trial of three single-drug conspiracy cases (clobetasol, clomipramine, and pravastatin) and the State Plaintiffs' Teva-centric case. This is largely the approach favored by Plaintiffs, and numerous Defendants have filed objections to this proposal in favor of their proposal to move forward with the Heritage-centric cases instead. Defendants' objections, and the Plaintiffs' arguments in support, are extensive, and the Court has carefully considered them.[4] Because it had not been addressed in the R&R or in the briefing, the Court requested argument at the General Status Conference on July

---

[3] The Private Plaintiffs also include several entities that do not seek to be part of a class and have filed individual cases. In addition, there are two cases filed by county governments.

[4] Although not discussed herein because of the nature of the objections, the Court has considered the separate objections of Defendant Heritage and the Individual Defendants. The Court also notes that the Department of Justice has expressly declined to state an opinion on this matter.

9, 2020, on the question of which cases may be tried before the MDL Court, which is another factor to be considered.[5]

The Court agrees with the approach set out in R&R 3, which will require Plaintiffs to prove that they can meet the standards for class certification under Rule 23 as to several individual drug conspiracies, and also explore the merits of an overarching conspiracy case that involves many different Defendants and numerous drugs. This is a balanced approach that takes into consideration the different types of cases in the MDL as well as the inclusion of different Plaintiff groups and many of the Defendants. As cases concerning individual drugs were filed directly into the MDL in the Eastern District of Pennsylvania, they may be tried before the MDL Court.

Defendants argue that all of the Heritage-centric cases—those brought by both the Private Plaintiffs and the State Plaintiffs—should move forward together, with a decision on class certification, followed by motions for summary judgment, and then trial on any remaining claims. Defendants argue that the State Plaintiffs' Teva-centric case is "too massive and too complicated," while the Heritage-centric cases are more manageable, would allow for both State and Private Plaintiffs' cases to be tried together, and would provide better guidance to the parties as to the relative strengths of claims and defenses. Defendants' proposal is not unreasonable, but the Court is not persuaded that it is a preferable way forward or that it will advance the litigation as effectively.

---

[5] "In *Lexecon*, the Supreme Court held that transferee courts presiding over multidistrict litigation have no authority to invoke Section 1404 to assign centralized actions to itself for bellwether trials. . . . Following *Lexecon*, transferee courts are limited to conducting bellwether trials (or any other trial or post-trial proceedings) in those actions over which the transferee court has jurisdiction outside the multidistrict context, either because the action was filed directly with the transferee court or because the parties waived their right to remand to the transferor court." *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 n.4 (J.P.M.L. 2012).

The Court does not agree with Defendants' contention that it would be somehow improper to try one of the State Plaintiffs' overarching conspiracy cases before determinations of class certification on the Private Plaintiffs' overarching conspiracy cases. The argument that this would violate Rule 23 is without merit for the simple reason that the State Plaintiffs have not filed a proposed class action, and the Private Plaintiffs are not a party to the State Plaintiffs' cases. Certainly, none of the proposed class actions will be tried without a decision on the propriety of class certification for those cases. The selection of the individual product cases allows for an initial examination of the issue, while reserving for another day the question of certification of an overarching conspiracy case.

Defendants also argue that trying the Heritage-centric cases together will avoid the specter of asymmetrical issue preclusion which they argue will attend to the trial of the State Plaintiffs' Teva-centric case alone because if the States win, Private Plaintiffs will seek to use that ruling against Defendants, while if Defendants win, Private Plaintiffs will argue that they cannot be bound by a proceeding to which they were not a party. However, potential issues of preclusion are complex and ill-suited to abstract discussion, and will depend on the nature of the cases as tried. In addition, as it is possible that none of the State Plaintiffs' cases will be tried by this Court, there is no assurance that any risks of preclusion could be avoided in any event.

Defendants object to the selection of the individual cases, in part because Private Plaintiffs have selected the cases, and maintain that separate, simultaneous trials would be duplicative and could lead to inconsistent results. Defendants have not shown that the chosen cases are outliers in

4

some meaningful way,[6] and in any bellwether process juries (should the cases reach trial) may reach different verdicts based on different presentations or different facts.

The selection of the State Plaintiffs' Teva-centric complaint will require the State Plaintiffs to produce substantial discovery, and Defendants argue that the schedule already has been disrupted as the COVID-19 pandemic has turned the focus of the States away from the production of documents. The pandemic has of course affected the entire country, indeed the world, and the Court will accommodate necessary adjustments to the schedule. However, as discussed at the July 9 conference and at oral argument on these issues, discovery has been proceeding: more than 11 million documents already have been produced in the MDL, and the parties engage in almost weekly discussions regarding the scope of discovery from the State Plaintiffs in particular. Both Plaintiffs and Defendants have discovery obligations and must comply with them, and the Special Masters are prepared to hear any disputes as to delayed discovery and bring recommendations to the Court where necessary. Similarly, the Court will ensure that the schedule provides for the resolution of case-dispositive motions before trial.

In sum, the Court will approve a process that allows for determination of class certification, for filing of summary judgment, and for a clear path forward to test the allegations of both single and overarching conspiracies. The CMO already has been amended, and further amendments as necessary will be granted to ensure that all pretrial proceedings can be completed.

An order will be entered.

---

[6] The Court has considered Defendant Glenmark's letter objection to the selection of pravastatin based on the recent filing of a criminal information, and while existence of criminal proceedings is important to take into account, the Court is aware that investigations continue and thus individual charging decisions cannot dictate the path of the MDL.