**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>Case No. 16-MD-2724-CMR |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE |

**SANDOZ INC.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS OBJECTION TO
<u>SPECIAL ESI MASTER REPORT AND RECOMMENDATION</u>**

Margaret A. Rogers
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel. (212) 836-8000
Fax. (212) 836-8689
margaret.rogers@arnoldporter.com

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I.   Plaintiffs Made No Showing That Any of the Disputed Terms Provide the
     Requisite Initial Screen for Relevance ...............................................................................2

     A.   Plaintiffs' Arguments Fail to Demonstrate The Relevance of the Disputed
          Terms or Any Deficiency in Sandoz' Proposed Terms .........................................3

          1.   Plaintiffs Misrepresent the Case Law.........................................................4

     B.   Sandoz' Analyses Demonstrate that the Disputed Terms Are Not Relevant
          and Proportional as Applied to the CEOs .............................................................6

     C.   The Clawback Procedures and Protective Order Alone Do Not Substitute
          for Specific Search Terms That Provide the Initial Screen for Relevance..............8

     D.   Sandoz' Proposed Terms Aim at Identifying Relevant Information and
          Narrow the Production of Irrelevant Sensitive Documents...................................9

     E.   This Dispute Should Be Decided on the Merits ..................................................10

CONCLUSION.............................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BlackBerry Limited v. Facebook Inc.*,
   CV 18-1844-GW (KSx), 2019 WL 4544425, at *6 (C.D. Cal. Aug. 19 2019) ..................... 2, 6

*Digital Ally, Inc. v. TASER Int'l, Inc.*,
   No. 16-cv-2032, 2018 WL 4334297 (D. Kan. Sept. 11, 2018) ............................................ 6, 7

*In re Actavis Holdco U.S., Inc.*,
   No. 19-3549, 2019 WL 8437021 (3d Cir. Dec. 6, 2019) ........................................................ 8

*Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*,
   322 F.R.D. 1 (D.D.C. 2017) .............................................................................................. 2, 4, 5

Sandoz Inc. ("Sandoz") submits this reply memorandum of law in further support of its objection to the Special ESI Master's R&R, ECF No. 1416.[1]

## PRELIMINARY STATEMENT

The issue before the Court is whether Plaintiffs met their burden to prove that the disputed search terms are relevant and proportional as applied to Sandoz' former CEOs and provide the court-ordered "initial screen for relevance." They have not. Sandoz demonstrated that the disputed terms are facially overbroad and, in fact, identify significantly more irrelevant than relevant documents. By contrast, Sandoz' proposed terms properly target relevant and responsive information concerning every product at issue, trade associations and industry meetings, potential competitor communications, and Plaintiffs' core "fair share" conspiracy allegations.

Plaintiffs failed to provide a rationale for any disputed search term or even category of terms. Plaintiffs nowhere explain what information the disputed search terms are designed to locate, how that information is relevant to the claims and defenses, or why Sandoz' terms are in any way deficient in locating that information. Plaintiffs do not dispute that the CEOs have broader roles and responsibilities than the other custodians. Nor do they dispute that the types of competitively sensitive information contained in their files relating to Sandoz' other product lines, infrastructures, or non-party affiliates' businesses are *irrelevant*. Yet, Plaintiffs refused repeated requests to negotiate specific CEO search terms to avoid the production of sensitive information that has no bearing on the issues in this case and could cause great harm to the company, its affiliates, and non-party business partners. The Court should reject Plaintiffs' all-or-nothing approach, sustain Sandoz' objections and issue a protective order limiting disclosure to documents containing Sandoz' proposed search terms.

---

[1] All capitalized terms have the meaning ascribed to them in Sandoz' Objections, ECF No. 1430.

**ARGUMENT**

I. **Plaintiffs Made No Showing That Any of the Disputed Terms Provide the Requisite Initial Screen for Relevance**

As the party seeking to compel production of documents under Rule 34, Plaintiffs have "the burden of informing the court why the opposing party's objections are not justified or why the opposing party's responses are deficient." *BlackBerry Ltd. v. Facebook Inc.*, CV 18-1844-GW (KSx), 2019 WL 4544425, at *6 (C.D. Cal. Aug. 19 2019) (internal citations and quotation marks omitted); *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*, 322 F.R.D. 1, 5-6 (D.D.C. 2017) (movant "bears the initial burden of proving that the opposing party's answers were incomplete, and explaining how the requested information is relevant.") (internal citations and quotation marks omitted).

Plaintiffs failed to meet their burden to demonstrate that Sandoz' objection to producing a disproportionately large volume of *irrelevant* trade secrets and other strategically sensitive commercial information is not justified. Plaintiffs likewise failed to meet their burden to show that any of the disputed search terms they seek to impose are relevant and proportional as applied to the CEOs and provide "the initial screen for relevance." *See* Nov. 14, 2019 Opinion, ECF No. 1155 at 4. Instead, Plaintiffs argue that (1) the CEOs possess highly relevant and responsive information (Pls. Resp. 9-10), (2) a 24% responsiveness rate demonstrates that the disputed terms are "targeted" (*id.* at 11), (3) the production of irrelevant trade secrets is justified by the clawback procedure and protective order (*id.* at 13); (4) Sandoz' proposed terms do not address its concerns (*id.* at 14); and (5) other Defendants may seek to negotiate specific search terms for CEOs if Sandoz prevails. None of these arguments address the facial overbreadth of the disputed terms or justify Plaintiffs' refusal to negotiate a *single* term to avoid the production of a "large volume of non-relevant business sensitive documents." R&R at 4.

### A. Plaintiffs' Arguments Fail to Demonstrate The Relevance of the Disputed Terms or Any Deficiency in Sandoz' Proposed Terms

Plaintiffs' first argument—that the CEOs possess highly relevant information—is beside the point. Sandoz will search for and produce relevant and non-duplicative information from the CEOs, regardless of the outcome of this dispute.[2] The question is what search terms should be used to locate that information. Sandoz has proposed extensive and comprehensive search terms that target relevant, responsive, and non-duplicative information and avoid the production of irrelevant and commercially sensitive trade secrets and other information. SDZ Obj. at 5-7. Those terms will yield more than 165,800 documents from its CEOs' files, while limiting production of information that could damage the company's (and its affiliates' and business partners') competitive advantage if inadvertently disclosed or misused.

Had Plaintiffs agreed to designate the CEOs as Limited Custodians, the parties could have considered using search terms (like the Tier 1 Global Terms) that do not screen for relevance because the documents would be reviewed for relevance and only responsive information would be produced. Plaintiffs refused that approach, demanding instead that the CEOs be designated as "Agreed Custodians." Having secured that designation, Plaintiffs were obligated to comply with this Court's directive to craft "specific" search terms, Nov. 14, 2019 Memorandum Opinion, ECF No. 1155 at 4, that would do the work of screening the documents for relevance. Instead, Plaintiffs took an all-or-nothing approach to the search term negotiations for the CEOs and refused to negotiate a *single* term. Even after Sandoz demonstrated that at least one term ("rational") generated zero responsive documents, and several other terms generated only 5% to 12% unique

---

[2] Plaintiffs falsely assert that after CMO 105 was entered, Sandoz "no longer wanted its former CEOs' documents subject to discovery." Pls. Resp. at 3. That is not so. Under the new rules, Sandoz objected to designating the CEOs as "Agreed Custodians" as opposed to "Limited Custodians," in part because Plaintiffs made no showing that the CEOs possess *non-duplicative*, relevant information. Sandoz urged Plaintiffs and the Special Discovery Master to designate the CEOs as "Limited Custodians," thereby returning the parties to their original agreement. Ex. A, December 9, 2019 Letter Brief without exhibits.

3

responsive documents, Ex. B, Jan. 21, 2020 Ltr. Br. (without exhibits) at 4; Ex. C, Apr. 6, 2020 Ltr Br. at 3, Plaintiffs did not offer to withdraw, modify, or negotiate any terms.

Plaintiffs cite several CEO business communications in support of their argument that the CEOs possess relevant information.[3] Again, they miss the point. Each of those examples support Sandoz' position because all but one are captured by Sandoz' proposed terms, and that document is also not captured by any of the disputed terms. Throughout these negotiations, Plaintiffs have had access to millions of documents that were provided in response to CTAG's investigative subpoenas. At this stage in the MDL, Plaintiffs have access to tens of millions more. Thus, it is truly remarkable that Plaintiffs failed to demonstrate that *any* of the disputed search terms are truly needed. Any effort to do so for the first time in their sur-reply should be rejected as far too late. Particularly because, as Plaintiffs note, the parties have collectively already submitted eight briefs on this issue.[4]

### 1. Plaintiffs Misrepresent the Case Law

Plaintiffs also argue that the CEOs should be treated like every other custodian and cite *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*, asserting that the court granted a "motion to compel *all documents* belonging to plaintiff's CEO." Pls. Resp. at 11 (emphasis in original); *see also id.* at 12 (representing that the court "compelled production of *all of the CEOs documents* despite the fact that a sample showed less than 12 percent were responsive") (emphasis in original). Plaintiffs' grossly misrepresent the court's ruling in that case. The court did not order

---

[3] Sandoz does not dispute that the cited documents are discoverable, and preserves all objections to the admissibility of any documents at trial.

[4] Notably, in the global search term dispute as to other custodians, Plaintiffs' attempted to submit examples of Defendants' own documents to the ESI Special Master *in camera* to support Plaintiffs' proposal that Defendants apply Defendant manufacturer names without limiters. The ESI Special Master properly rejected Plaintiffs' attempt to hide their arguments from Defendants. Plaintiffs withdrew their declaration and exhibits rather than subject their arguments to scrutiny. The Court should likewise reject any attempt by Plaintiffs to renew that application.

4

the production of all of the CEO's documents, rather it ordered the production of "all *unique and relevant* documents from [the CEO's] records" culled from documents containing defendants' proposed search terms. *Oxbow Carbon & Minerals LLC*, 322 F.R.D. at 11 (emphasis added). Sandoz would accept that ruling here. In *Oxbow*, plaintiff did not object to the discovery on the grounds that it would require the production of irrelevant, competitively sensitive information. Nor did the Court order the production of irrelevant, competitively sensitive documents.

To the extent it is applicable, *Oxbow* supports Sandoz' position. Plaintiff Oxbow, sued defendant railroads, claiming more than $50,000,000 in damages relating to an alleged conspiracy to impose uniform fuel surcharges. Plaintiff refused to apply *any* search terms to the files of its CEO (or produce any documents), arguing that the responsiveness rate was too low to justify the burden of reviewing and producing documents, which it estimated would cost $140,000. Oxbow refused to negotiate more tailored search terms. *Oxbow Carbon & Minerals LLC*, 322 F.R.D. at 5-7. The court rejected Oxbow's sole objection that the expense outweighed the benefits of discovery, reasoning that there were at least some responsive documents in the CEOs' files, Plaintiff had taken an all-or-nothing approach, and the proportionality factors all weighed in favor of production of relevant and responsive information. *Id.* at 7-11. In fact, the court specifically rejected Oxbow's eleventh hour request to renegotiate tailored terms, explaining, effectively that the offer was too-little-too-late, and "inconsistent with its previous position." *Id.* at 10 n.6.

The *Oxbow* court's ruling supports Sandoz' position that only relevant and responsive documents should be produced and parties should not be rewarded for refusing to cooperatively negotiate appropriate search terms. Unlike Oxbow, Sandoz is producing more than 168,500 documents from its CEO files based on search terms that include *every product* at issue in the MDL, *every* defendant manufacturer domain name, *every* agreed trade association and industry

5

event term, *every* defendant manufacturer name with appropriate limiters, and various standalone terms (e.g., "fair share") derived from Plaintiffs' core conspiracy allegations.[5] Further, Sandoz repeatedly offered to negotiate additional terms to resolve this dispute. Plaintiffs refused and have not—and cannot—explain any deficiency. Sandoz' objections should be sustained on these grounds alone.

### B. Sandoz' Analyses Demonstrate that the Disputed Terms Are Not Relevant and Proportional as Applied to the CEOs

Plaintiffs argue that because some of the disputed terms capture some responsive information, they have met their burden. Pls. Resp. 11-12. They also argue that the disputed terms "[t]arget" responsive information from the CEOs, even though Sandoz statistically significant sampling demonstrated that 3 out of 4 documents (*i.e.* 75%) were non-responsive. Plaintiffs are wrong and the disputed terms should be rejected for the additional independent reason that they are facially overbroad. Sandoz demonstrated that even when parties are permitted to withhold irrelevant information from production, courts routinely reject this kind of scrape-the-bottom-of-the-barrel approach to search terms in an effort to locate every scrap of paper that could have some conceivable marginal relevance to the case. SDZ Obj. at 13-15 (citing *e.g.*, *Digital Ally, Inc. v. TASER Int'l, Inc.*, No. 16-cv-2032, 2018 WL 4334297, at *2 (D. Kan. Sept. 11, 2018) ("Generally, search terms for ESI are overly broad when they could conceivably encompass information

---

[5] Plaintiffs also miss the point when they argue that *Blackberry Ltd. v. Facebook, Inc.*, 2019 WL 4544425 (C.D. Aug. 19, 2019) is distinguished because Blackberry conceded that Facebook's CEO was "'probably far afield of' the issue central in that case.'" Pls. Resp. at 10. The point is that court's routinely acknowledge and account for the differing roles of CEOs when selecting search terms. *Facebook Inc., 2019 WL 4544425,*. at *6 ("The fact that the same search terms were used against other custodians . . . is not sufficient to establish the relevance or proportionality of running searches using those terms against *Zuckerberg's* email."). Sandoz' terms account for Plaintiffs' theories concerning the CEOs. Sandoz has agreed to extensive and comprehensive discovery on every aspect of this case compared with the handful of terms Facebook offered for its CEO. Arguing that Sandoz' CEOs have responsive documents does not demonstrate that the disputed terms are an appropriate mechanism for locating relevant documents from their files. Plaintiffs' refusal to account for the differing roles of the CEOs is without basis in law and fact, and contravenes this Court's directives.

relevant to the litigation but would also likely encompass a significant amount of information unrelated to issues in the case.")).

Sandoz provided detailed objections to each disputed category, explaining how the terms are facially overbroad and why Sandoz' proposal targets relevant and responsive information. SDZ Obj. 14-15. Plaintiffs failed to address any category. Nowhere do they describe the purpose of the four disputed categories, connect any of the disputed terms to a valid request for discovery, or explain why Sandoz' proposal is deficient. Instead, Plaintiffs invent and attempt to impose a new standard on Sandoz to both discuss each of the hundreds of disputed terms on a term-by-term basis (Pls. Resp. 11 n.8), and demonstrate with specific documents that the terms are facially overbroad. *Id*. at 11 (criticizing Sandoz for not citing "any instance where [it] was actually the case" that the term "M/S" w/10 (adjust* OR chang*) captured documents mentioning an adjustment or change having nothing to do with market share at all). That is not the standard. Nevertheless, Sandoz confirms that each of its categorical objections applies to each term within each category, and all of the unique CEO documents containing the example disputed market share term are false hits and do not discuss an adjustment or change in market share. *See* Declaration of Brian E. Auricchio dated July 31, 2020.

Although not required, Sandoz also established the facial overbreadth of the terms by showing that the terms do, in fact, capture "a significant amount of information unrelated to issues in the case." *Digital Ally, Inc.*, 2018 WL 4334297, at *2. Plaintiffs criticized Sandoz' examples that showed as little as 0 to 12% responsiveness as "cherry picked." Pls. Resp. at 12. Thus, Sandoz conducted a broader sampling of all of the disputed terms showing that, category-by-category and across the board, on average, 3 out of 4 documents are non-responsive. In response, Plaintiffs *again* invent a new discovery standard, arguing that Sandoz' results should be disregarded because

7

Sandoz did not "describe what criteria of relevance it is applying." Pls. Resp. 12-13. Plaintiffs' baseless, *ad hominem* attacks on counsel should be summarily rejected. *Id.* (accusing Sandoz of applying a "relevance standard that is at best idiosyncratic and more likely unduly cramped"). Sandoz explained in detail the kinds of *irrelevant* strategic information captured by the disputed terms. SDZ obj. at 12-13 n.3. Notably, Plaintiffs did not argue that Sandoz mistakenly labeled any of that information irrelevant.

### C. The Clawback Procedures and Protective Order Alone Do Not Substitute for Specific Search Terms That Provide the Initial Screen for Relevance

Unable to demonstrate that the disputed terms comply with this Court's directives, Plaintiffs argue that this Court and the Third Circuit have "agreed" that the clawback procedures and protective order alone are sufficient. Pls. Resp. at 14. That is not so. This Court made clear that "the files are to be searched for specific terms [and that] [t]hese search terms provide the initial screen for relevance." November 19, 2019 Memorandum Opinion at 4. The Third Circuit relied on that reasoning stating that: "search terms *aimed at identifying relevant information* that will be applied *are likely to narrow the information produced*." *In re Actavis Holdco U.S., Inc.*, No. 19-3549, 2019 WL 8437021, at *1 (3d Cir. Dec. 6, 2019). Each court that has examined the discovery procedures in place has made clear that the *first* (and only) step to protecting confidential information from disclosure is the application of specific search terms that *aim at identifying relevant information* and *narrow* the information produced. The clawback procedure (coupled with an outside counsel only designation) is a backstop against further disclosure that addresses inevitable imperfections in the process. Neither is a substitute for tailored terms that screen for relevance. The process hinges on appropriate terms to prevent a "large volume of non-relevant business sensitive documents" from leaving the company in the first instance. R&R at 4.

Plaintiffs also fault Sandoz for purportedly failing to identify "specific non-responsive

8

'sensitive'" documents "either in general terms or for potential *in camera* review by the Special Masters or the Court." Pls. Resp. at 14.  There is no "actual evidence" standard that requires a party to reveal in detail the very trade secrets and information that it seeks to protect from disclosure.  Further, Sandoz presented "actual evidence" that the search terms are facially overbroad and problematic.  It described the types of irrelevant strategic information captured by the disputed terms.  SDZ Obj. at 12-13 n.3 (e.g., mergers and acquisitions considerations, regulatory matters, branded and biosimilar product lines, foreign tax filings, and non-party affiliates' earnings reports etc.).  Nevertheless, Sandoz accepts Plaintiffs' invitation to submit exemplar irrelevant sensitive documents for *in camera* review.  *See* Declaration of Margaret Rogers dated July 31, 2020 and accompanying exhibits.[6]

### D. Sandoz' Proposed Terms Aim at Identifying Relevant Information and Narrow the Production of Irrelevant Sensitive Documents

Plaintiffs' fourth argument is that because Sandoz has not demonstrated that its proposed terms perfectly filter out irrelevant trade secrets, Sandoz' position must be a pretense "to limit production of its CEOs' documents."  Pls. Resp. at 15.  Plaintiffs' argument is preposterous.  Having asked the Court to prohibit Defendants from utilizing a standard responsiveness review to withhold irrelevant information from production, Plaintiffs may not now ascribe ulterior motivations to Sandoz for trying to use the only means it has left to target relevant information and minimize the overproduction of irrelevant competitively sensitive information.  Plaintiffs' position is particularly galling in light of their steadfast refusal to negotiate a *single* CEO term or explain the purpose and relevance of the disputed search terms, and failure to demonstrate that Sandoz'

---

[6] Sandoz' submission of documents for *in camera* review is appropriate and distinguished from Plaintiff's proposed *in camera* submission to the Special ESI Master because Sandoz' submission is comprised of unproduced, highly confidential, irrelevant business information.  Plaintiffs' proposed submission was comprised of Defendants' *own* produced documents.  An *in camera* review would not have protected the content of Defendants' documents from disclosure, it served only to protect Plaintiffs' arguments from scrutiny by Defendants, which is plainly improper.

9

comprehensive search term proposal is in any way deficient.

### E. This Dispute Should Be Decided on the Merits

Sandoz respectfully requests that the Court decide this dispute on the merits of the circumstances presented and not based on a conjured parade of horribles involving what other Defendants may or may not do should Sandoz prevail. Pls. Resp. at 15. It is Plaintiffs' burden to demonstrate the relevance of the discovery they seek from Sandoz, not Sandoz' burden to demonstrate that other Defendants do or do not share the same concerns, or that Sandoz is or is not similarly situated to any other defendant.

Finally, there is simply no support for Plaintiffs' suggestion that adjusting search terms to account for the differing roles and responsibilities of Sandoz' CEOs would somehow "prevent the efficient (and final) resolution of discovery matters." Pls. Resp. at 15. The parties have already adjusted for the roles of other custodians. Further, Sandoz always preserved its right to negotiate search terms on a custodian-by-custodian basis and this dispute has not impeded the progress of discovery by any measure. To this day, Sandoz has still produced more documents than any other party. Further, while Plaintiffs tout the importance of parties adhering to global agreements, it is the Plaintiffs who abandoned the terms of the *agreed* ESI Protocol and then sought the application of extraordinarily overbroad search terms, creating the problems that give rise to this motion.

### CONCLUSION

Having failed to explain the relevance of a single disputed term, the Court should conclude that Plaintiffs failed to meet their burden and their insistence is nothing more than an improper coercion tactic. The Court should sustain Sandoz' objections and issue a protective order limiting discovery to Sandoz' proposed search terms.

Dated: New York, New York
July 31, 2020

Respectfully submitted,

*/s/ Margaret A. Rogers*
Margaret A. Rogers
Brian Auricchio
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel. (212) 836-8000
Fax. (212) 836-8689
margaret.rogers@arnoldporter.com
brian.auricchio@arnoldporter.com

*Attorneys for Sandoz Inc.*