# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>*ALL ACTIONS* | MDL NO. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |

**PLAINTIFFS' SUR-REPLY IN SUPPORT OF SPECIAL MASTER REGARD'S AMENDED REPORT AND RECOMMENDATION RELATING TO GLOBAL SEARCH TERM MODIFICATIONS REQUESTED BY SANDOZ**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ........................................................................................................................ 3

    A. Sandoz's Request for Differential Treatment for Its Former CEOs Is Contrary to Law. ........................................................................................................ 3

    B. Sandoz's *In Camera* Submission Does Not Substantiate Its Purported Concern About Irrelevant, Commercially Sensitive Information. ......................... 4

    C. Sandoz Concedes that It Seeks to Exclude Thousands of Relevant and Unique Documents Contained Only in the CEOs' Files. ..................................... 7

III. CONCLUSION .................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*BlackBerry Ltd. v. Facebook, Inc.*,
  No. CV 18-1844-GW (KSx), 2019 WL 4544425 (C.D. Cal. Aug. 19, 2019) ............................ 3

*Digital Ally, Inc. v. TASER Int'l, Inc.*,
  No. 16-cv-2032-CM-TJJ, 2018 WL 4334297 (D. Kan. Sept. 11, 2018) .................................... 3

*Harris v. Union Pacific Railroad Co.*,
  No. 8:16CV381, 2018 WL 2729131 (D. Neb. June 6, 2018) ..................................................... 3

*Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*,
  322 F.R.D. 1 (D.D.C. 2017) .............................................................................................. 1, 3, 4

**I.      INTRODUCTION**

Plaintiffs submit this sur-reply to address arguments made by Defendant Sandoz in reply (ECF No. 1473, "Reply Br."), as well as statements made in connection with Sandoz's *in camera* submission (ECF No. 1478, "Rogers Decl."). Together, these filings affirm that Sandoz lacks both the legal and factual support necessary to justify the departure it seeks from both the Federal Rules of Civil Procedure ("Rules") and discovery processes applicable to every other Defendant in this MDL.

Despite now submitting its *sixth brief* on this topic, Sandoz still fails to cite any legal authority for the notion that its former CEO custodians—Don DeGolyer and Peter Goldschmidt—are, by virtue of their titles alone, entitled to stricter standards of relevance and proportionality than permitted by the Rules or applied to every other custodian in this case through PTO No. 105. Instead, Sandoz accuses Plaintiffs of "grossly" misrepresenting the holding in *Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co.*, 322 F.R.D. 1 (D.D.C. 2017), a case that unambiguously supports Plaintiffs' position. Indeed, following *Oxbow* requires applying the full set of "Tier 1" Global Search Terms to both DeGolyer and Goldschmidt.

Similarly, Sandoz's *in camera* submission does not lend any factual support to its arguments that DeGolyer's and Goldschmidt's files warrant differential treatment. As an initial matter, this submission should not be credited because Sandoz waited nine months to make it, which prevented Plaintiffs from addressing any issues with the Global Search Terms through the negotiation process. Even if the Court considers this submission, however, it fails to actually identify any issues that would warrant adjustment of the Tier 1 terms. Most tellingly, Sandoz fails to identify *a single document* for two of the disputed Global Search Term categories, and therefore fails to substantiate its objections to those two categories. For the remaining two categories, Sandoz identifies *only five documents*, and none evince the sort of common or widespread issue that would require adjustment of the parties' global agreement just for DeGolyer and Goldschmidt. Moreover, it is not apparent that any of the five sample documents

-1-

is actually irrelevant, such that exclusion would even be appropriate.  In other words, despite taking many months to curate this collection of purportedly irrelevant but sensitive documents, Sandoz fails to offer examples that justify its concerns.  Instead, all Sandoz's submission proves is that its concern regarding sensitive information is quite narrow, and readily addressed by application of the appropriate confidentiality designation pursuant to the Protective Order—such as "Outside Counsel Eyes Only"—to protect against disclosure to competitors.

Perhaps most importantly, Sandoz does not deny that *one out of every four documents it seeks to exclude is relevant*, and appears *only* in the CEOs' files.  By Sandoz's own accounting, this would leave *tens of thousands of relevant documents unproduced*, all in the name of excluding a handful of documents that could and should be addressed through production with the appropriate confidentiality designation.  This alone renders Sandoz's proposal deficient.  Similarly, Sandoz does not deny the extensive preliminary record evidence tying DeGolyer and Goldschmidt directly to the conspiracy in this case, other than to assert that most (but not all) of these documents would be captured by Sandoz's proposal.  But the fact that Sandoz was able to tailor its proposal to guarantee it captures documents already produced in discovery says nothing about the efficacy of the Global Search Terms (which also capture all of these documents) or any problems with the Global Search Terms that would necessitate a rewriting just for DeGolyer and Goldschmidt.  The drastic effect of Sandoz's proposal is not warranted by the minimal showing Sandoz makes here.

The fact remains: Special Master Regard's recommendation that DeGolyer and Goldschmidt be Tier 1 custodians is supported by substantial preliminary record evidence tying them to the price-fixing conspiracy at the heart of this case.  Sandoz's own analyses confirms that the Tier 1 search terms isolate a high degree of relevant and unique information within their files that would be entirely excluded under Sandoz's proposal, a result that Sandoz fails to justify with its *in camera* submission.  Plaintiffs therefore respectfully submit that Sandoz's objections to the R&R should be overruled and the R&R should be adopted in its entirety.

## II. ARGUMENT

### A. Sandoz's Request for Differential Treatment for Its Former CEOs Is Contrary to Law.

Sandoz cites no authority for the proposition that CEOs are, by virtue of their title or position alone, subject to a different Rule 26 relevance standard than any other custodian.[1] Instead, Sandoz argues that Plaintiffs "grossly misrepresent" authority supporting Plaintiffs' position—*Oxbow*. Reply at 4. Sandoz is incorrect.

Plaintiffs accurately quoted *Oxbow*'s holding: "Presently ripe for resolution is Defendants' motion to compel, requesting that the Court order Plaintiffs to produce *all documents* belonging to their CEO, the production of which Plaintiffs, in turn, argue would be unduly burdensome and disproportionate to any value the documents might possess to Defendants in this litigation. . . . [T]he Court finds that *Defendants' motion to compel should be granted*." 322 F.R.D. at 3 (emphasis supplied)*; see also* Opp'n Br. at 11 (quoting same). Moreover, Plaintiffs explicitly identified the parties' and court's search term analysis as supportive of Plaintiffs' request here. *See* Opp'n Br. at 12 (noting that the CEO was included as a custodian even though only 12 percent of the CEO's documents that hit upon the search terms were ultimately deemed responsive).

Sandoz notes that the *Oxbow* court adopted the defendants' "proposed search terms," but this obscures the effect of that holding. Reply at 5. In *Oxbow*, the party seeking CEO documents *were the defendants*, not the plaintiffs, and as set forth above in the holding, the Court granted *the entirety* of the CEO discovery sought by the defendants. 322 F.R.D. at 3. In *Oxbow*, as here, that included the *full set* of "previously-agreed-upon search terms," which, as here, also

---

[1] Plaintiffs already addressed the authorities Sandoz cites in Reply in their Response brief. *See* ECF No. 1451 (Opp'n Br.) at 10 (distinguishing *BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSx), 2019 WL 4544425 (C.D. Cal. Aug. 19, 2019)); *id*. at 11 n.8 (distinguishing *Digital Ally, Inc. v. TASER Int'l, Inc.*, No. 16-cv-2032-CM-TJJ, 2018 WL 4334297 (D. Kan. Sept. 11, 2018)). Plaintiffs' criticisms of these authorities stand. Notably, Sandoz appears to have abandoned its citation to *Harris v. Union Pacific Railroad Co.*, No. 8:16CV381, 2018 WL 2729131 (D. Neb. June 6, 2018), which Plaintiffs also addressed and distinguished in their Response brief. *Id*. at 10.

-3-

applied to *every other custodian* in the case. *Id*. at 4. In other words, the *Oxbow* court declined, as this Court should here, to apply different terms to the CEO than were applicable to other custodians in the case, despite the plaintiffs' objections that this would capture irrelevant and duplicative information. *Id*. at 8-10.

Read correctly, *Oxbow* directly supports applying the Tier 1 search terms Plaintiffs propose, in their entirety, to both DeGolyer and Goldschmidt.

### B. Sandoz's *In Camera* Submission Does Not Substantiate Its Purported Concern About Irrelevant, Commercially Sensitive Information.

As an initial matter, the Court should not consider Sandoz's untimely *in camera* submission. Plaintiffs previously noted that Sandoz had never substantiated its concern with either specific examples or analyses of the scope of the purported problem. And for months, Sandoz never endeavored to address this issue, instead speaking always and only in generalities and hypotheticals. It was not until the eleventh hour—a full nine months after first raising this issue and through Sandoz's sixth and final brief on this topic—that Sandoz finally identified the five documents that it has now submitted to the Court for *in camera* review, and even then only in response to "Plaintiffs' invitation."[2] Reply Br. at 9.

Even if the Court does consider Sandoz's *in camera* submission, however, it does not actually identify any issues with the Global Search Terms that would require modification for DeGolyer and Goldschmidt.[3] First, and most tellingly, Sandoz identifies documents for only two of the four disputed categories: "Defendant Name Terms" and "General Standalone Business Terms." Rogers Decl. ¶ 2. Sandoz was apparently unable to locate *a single commercially sensitive document* improperly identified through the remaining two disputed categories:

---

[2] In fact, Plaintiffs did not "invit[e] [Sandoz] to submit exemplar irrelevant sensitive documents for *in camera* review" at this late hour. Reply Br. at 9. Plaintiffs simply noted—again—that Sandoz had failed to *even attempt* any such submission, despite Plaintiffs' prior suggestion that Sandoz endeavor to substantiate its objections. Opp'n Br. at 14.

[3] Though Sandoz initially filed the Rogers Declaration *ex parte* and entirely under seal (*see* ECF No. 1474), at Plaintiffs' request, Sandoz agreed to file a redacted copy.

"Plaintiff Names Terms" and "People Terms." *See* ECF No. 1430 (Sandoz Objs.) at 14-15. Accordingly, Sandoz's objection to application of these two categories to DeGolyer and Goldschmidt is unsubstantiated and should be overruled.

With respect to the two remaining disputed categories, Sandoz identifies only *five* documents that purportedly contain irrelevant and "highly sensitive commercial and strategic information." Rogers Decl. ¶ 2. This offering pales in comparison to the *tens of thousands* of admittedly relevant documents that Sandoz proposes excluding from production by narrowing these categories. *See infra* Section II.C.[4] Moreover, the five documents Sandoz identifies do not evince widespread issues with the application of the Tier 1 Global Search Terms to DeGolyer and Goldschmidt. Instead, Sandoz's submission includes idiosyncrasies that are not likely to pose a large scale problem—or any problem at all. For example, Exhibit 1 from Sandoz's *in camera* submission is a document that was supposedly captured only because the email signature contains a French phrase—"Si cet envoi ne s'adresse pas a vous et que vous l' avez recu **par** erreur, vous devez l'effacer"—that happens to include the name of Defendant "Par." Rogers Decl. ¶ 4. Unless other Defendants also happen to have names that translate into common French words (and Sandoz identifies no other such example), then this is not actually a larger problem with the "Defendant Name Terms" category, as Sandoz suggests.[5] The same is true of Exhibit 3, which Sandoz asserts is captured only because the name of Defendant "Sun" also happens to be the first name of an individual who worked at Sandoz. *Id.* ¶ 8.

Additionally, even if these five documents are commercially sensitive—which Plaintiffs cannot assess given the nature of the submission— it is not clear that they are *also* irrelevant. For example, Exhibit 2 is an email chain including Goldschmidt that concerns Sandoz's global

---

[4] Sandoz's submission does not provide any estimate or analysis about how widespread the purported issues identified in the five sample documents may be. As set forth below, however, the Court has no reason to believe they are extensive.

[5] Sandoz provides no explanation for its assertion that "[t]here are too many common errors of this type to identify and exclude," and none is apparent. Rogers Decl. ¶ 4. However, as set forth below, Plaintiffs do not concede that this document or any of the others submitted for *in camera* review are actually irrelevant, such that exclusion would even be appropriate.

"business performance," which could very well have influenced Goldschmidt's domestic efforts to increase profits through anti-competitive price-fixing and market allocation. *Id*. ¶¶ 2, 5. Exhibit 4 is an email from Sandoz's Global Head of Health, Safety, and Environment regarding "global health and safety incidents at manufacturing facilities." *Id*. ¶¶ 2, 9.  Though it is unclear what this document actually concerns, information about health or safety incidents could be relevant to, for example, product shortages that bear on a generic drug's price.  And Exhibit 5 concerns an acquisition which—even if not executed—could reflect Sandoz's global efforts to purchase competitors and gain market share, a topic certainly relevant to the overarching antitrust conspiracy alleged in this case. *Id*. ¶¶ 2, 11.  In the event that these or any other purportedly sensitive document are relevant, they must still be produced, just with the appropriate confidentiality designation.  Sandoz does not assert and has no reason to believe that the parties would not respect, for example, a document marked "Outside Counsel Eyes Only," to prevent Sandoz's party-competitors from reviewing any sensitive competitive information.

Finally, nothing in Sandoz's submission indicates why any of these concerns are *specific to the CEOs*.  To the extent Sandoz objects that, for example, "[a]pplying Defendant names as standalone terms is impractical and overbroad," this is an argument that would apply with equal force to any other custodian, and which has already been repeatedly rejected. *Id*. ¶ 4.  Nothing in Sandoz's submission explains why this concern is especially acute for the CEOs.  Sandoz simply asserts, without justification, that such issues "are especially problematic when applied to Sandoz CEOs because the breadth of the sensitive information contained in their files pertaining to non-party foreign affiliates." *Id*. ¶ 10.  But this submission was Sandoz's opportunity to demonstrate such "breadth," and it failed to do so.  And as set forth above, there is no basis in the law for the assertion that simply *being a CEO* and/or *interacting with foreign affiliates* is itself enough to warrant application of special discovery rules to a custodian. *See supra* Section II.A.

Accordingly, the Court should reject Sandoz's objections to all four disputed categories because Sandoz fails to demonstrate that any of them actually results in an inordinate collection of irrelevant or "commercially sensitive" information.

### C. Sandoz Concedes that It Seeks to Exclude Thousands of Relevant and Unique Documents Contained Only in the CEOs' Files.

Sandoz does not deny that "*one out of every four documents it seeks to exclude is relevant and responsive*" and appears only in the CEOs' files. Opp'n Br. at 2, 12 (emphasis in original). By Sandoz's own accounting, this would leave tens of thousands of relevant and unique documents unproduced. *See* ECF No. 1435 (Rogers Decl.) ¶¶ 8-9. At best, Sandoz's search term proposal is far too blunt an instrument to address the exceedingly minor (if even existent) concerns Sandoz has raised. This, alone, is reason to overrule Sandoz's objections.

Similarly, Sandoz does not counter the extensive preliminary record evidence tying DeGolyer and Goldschmidt directly to the conspiracy in this case. *See* Opp'n Br. at 4-8 (summarizing and attaching evidence). Sandoz asserts only that "all but one [of these documents] are captured by Sandoz' proposed terms." Reply Br. at 4. This proves nothing other than that Sandoz was capable of tailoring its proposal to documents already produced in discovery. Moreover, the fact that these documents would (with only one exception) *also* be captured by the Global Search Terms just demonstrates that the search terms do, in fact, operate as the "initial screen for relevance" that this Court envisioned. ECF No. 1155 (Nov. 14, 2019 Mem. Op.) at 4. Sandoz therefore fails to meet its burden of establishing that the Global Search Terms will not isolate responsive communications from two admittedly appropriate custodians.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court overrule Sandoz's objections and approve the R&R.

Dated: August 14, 2020                                      Respectfully submitted,

*/s/ Roberta D. Liebenberg*  
Roberta D. Liebenberg  
FINE, KAPLAN AND BLACK, R.P.C.  
One South Broad Street, 23rd Floor  
Philadelphia, PA 19107  
215-567-6565  
rliebenberg@finekaplan.com  

*Lead and Liaison Counsel for the*  
*End-Payer Plaintiffs*

*/s/ Dianne M. Nast*  
Dianne M. Nast  
NASTLAW LLC  
1101 Market Street, Suite 2801  
Philadelphia, PA 19107  
215-923-9300  
dnast@nastlaw.com  

*Lead and Liaison Counsel for the*  
*Direct Purchaser Plaintiffs*

*/s/ Jonathan W. Cuneo*  
Jonathan W. Cuneo  
CUNEO, GILBERT & LADUCA LLP  
4725 Wisconsin Ave. NW, Suite 200  
Washington, DC 20016  
202-789-3960  
jonc@cuneolaw.com  

*Lead Counsel for the*  
*Indirect Reseller Plaintiffs*

*/s/ W. Joseph Nielsen*  
W. Joseph Nielsen  
Assistant Attorney General, State of Connecticut  
55 Elm Street  
P.O. Box 120  
Hartford, CT 06141-0120  
(860) 808-5040  
Joseph.Nielsen@ct.gov  

*Liaison Counsel for the Plaintiff States*

*/s/ William J. Blechman*  
William J. Blechman  
KENNY NACHWALTER, P.A.  
1441 Brickell Avenue, Suite 1100  
Miami, Florida  33131  
(305) 373-1000  
wblechman@knpa.com  

*Counsel for the Kroger Plaintiffs and Liaison*  
*Counsel for the Direct Action Plaintiffs*

-9-

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2020, a copy of the foregoing Sur-Reply in Support of Special ESI Master Daniel Regard's Report and Recommendation Regarding Global Search Term Modifications Requested by Sandoz Inc. was served on all counsel of record via the Court's electronic filing system.

*/s/  Dianne M. Nast*
Dianne M. Nast