# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S OBJECTIONS TO
SPECIAL MASTER MARION'S
AMENDED FOURTH REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    PROCEDURAL HISTORY......................................................................................1

III.   ARGUMENT .........................................................................................................2

     A.     Defendants seek relevant fact discovery that Pennsylvania has no basis to withhold. .......................................................................................................2

          1.     Pennsylvanian agencies possess materials relevant to the claims, allegations, and legal questions at issue in this case. ................................. 3

          2.     Pennsylvania asserts irrelevant arguments and inapposite cases that do not rebut Defendants' explanations of relevance. ............................................. 6

     B.     Pennsylvania has control of the Requested Discovery. ...........................................8

          1.     Pennsylvania law grants the OAG express authority to access agency materials "at all times," and that authority is only limited by what is "necessary" to the performance of the OAG's duties. ................................ 8

          2.     Pennsylvania's suggestion that Section 208 should be interpreted narrowly is not supported by Pennsylvania law or relevant case law. ..................... 12

IV.   CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aluminum Warehousing Antitrust Litig.*,
    833 F.3d 151 (2d Cir. 2016)................................................................5, 6

*Am. Maplan Corp. v. Heilmayr*,
    203 F.R.D. 499 (D. Kan. 2001)................................................................8

*Bd. of Trustees of IBT Local 863 Pension Fund v. C&S Wholesale Grocers*,
    802 F.3d 534 (3d Cir. 2015)................................................................9

*Bro-Tech Corp. v. Thermax, Inc.*,
    2007 WL 2234521 (E.D. Pa. Aug. 2, 2007) (Rufe, J.) ..........................3

*Colorado v. Warner Chilcott*,
    No. 05-cv-002182 (D.D.C. May 8, 2007)................................................15

*Com. of Pa. v. Russell Stover Candies, Inc.*,
    No. CIV. A. 93-1972, 1993 WL 145264 (E.D. Pa. May 6, 1993)..........6

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*,
    105 F.R.D. 16 (S.D.N.Y. 1984) ...........................................................14

*Devon Robotics v. DeViedma*,
    2010 WL 3985877 (E.D. Pa. Oct. 8, 2010)...............................................8

*Federal Trade Commission v. Vyera Pharmaceuticals, LLC*,
    No. 20-cv-00706 (S.D.N.Y. Apr. 16, 2020, Dkt. 4, 91) .........................7

*In re Investigation by Dauphin County Grand Jury*,
    332 Pa. 289 (1938), overruled by *Commonwealth v. Schab*, 477 Pa. 55 (1978) ....................13

*Office of Attorney Gen. v. Patel*,
    2019 WL 5561412 (Pa. Cmwlth. Oct. 29, 2019)...................................13

*In re Opioid Litig.*,
    No. 400000/2017 (N.Y Sup. Ct. Aug. 14, 2019) ....................................15

*In re Standard & Poors Rating Agency Litig.*,
    No. 13-md-02446 (S.D.N.Y. Feb. 21, 2014))..........................................15

*Tennessee Valley Auth. v. Hill*,
    437 U.S. 153 (1978)................................................................10

*In re Thirty-Third Statewide Investigating Grand Jury*,
    No. 85 MM 2012, 2012 WL 8718351 ...................................................7

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Thirty-Third Statewide Investigating Grand Jury,*
    624 Pa. 361 (2014)..................................................................................................9, 13

*United States v. Am. Express Co.,*
    No. 1:10-04496-NGG-RER (E.D.N.Y. July 29, 2011).....................................................14, 15

**Statutes**

71 P.S. § 732-204......................................................................................................10

71 P.S. § 732-204(c) .........................................................................................7, 9, 14, 15

71 P.S. § 732-205......................................................................................................10

71 P.S. § 732-206......................................................................................................10

71 P.S. § 732-207......................................................................................................10

71 P.S. § 732-208.................................................................................................1, 9, 11, 15

73 P.S. § 201-2(4) .......................................................................................................5

73 P.S. § 201-3...........................................................................................................5

73 P.S. § 201-4.1.....................................................................................................5, 6, 8

73 P.S. § 201-8...........................................................................................................5

73 P.S. § 201-8(b) .......................................................................................................4

P.L. 177, No. 175 § 908 (Apr. 9, 1929) ....................................................................................9

P.L. 950, No. 164 § 208 (Oct. 15, 1980)..................................................................................10

**Rules**

Fed. R. Civ. P. 26.................................................................................................. *passim*

Fed. R. Civ. P. 26(b)(1).................................................................................................2, 6

**Other Authorities**

Bureau of Fee-for-Service Programs, Pa. Dep't of Human Servs,
    https://www.dhs.pa.gov/contact/DHS-Offices/Pages/OMAP-
    Bureau%20of%20Fee-For-Service%20Programs.aspx (last visited Aug. 25,
    2020) ..............................................................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

PACE-Prescription Assistance, Pa. Dep't of Aging,
    https://www.aging.pa.gov/aging-services/prescriptions/Pages/default.aspx
    (last visited Aug. 25, 2020)............................................................................................4

Summary Plan Description, Pa. Emp. Benefit Tr. Fund (PEBTF) (April 2014),
    https://www.insurance.pa.gov/Coverage/Documents/EHB 2017/PEBTF
    2014.pdf .......................................................................................................................4

Unrivaled Benefits & Wellness Package, Pa. Turnpike Comm'n,
    https://careers.paturnpike.com/content/Benefits/?locale=en_US (last visited
    Aug. 25, 2020) ............................................................................................................4

## I.      INTRODUCTION

Defendants' request is simple: that Pennsylvania engage in discovery, just like every other civil plaintiff, and produce those documents and materials that fall squarely under Rule 26 of the Federal Rules of Civil Procedure. Pennsylvania refuses. Over the course of this now months-long dispute, Pennsylvania has given a litany of shifting reasons why it should not have to comply with its discovery obligations, even submitting dueling interpretations of its own statute after its first interpretations proved unavailing.[1] Pennsylvania must produce relevant discovery. Special Master Marion's Amended Fourth Formal Report & Recommendation, Dkt. 1471 ("R&R") recognized as much, and granted Defendants' request. Defendants respectfully request that this Court adopt the R&R, ordering Pennsylvania to comply with Rule 26 and produce relevant discovery that is within its control under Pennsylvania statute 71 P.S. § 732-208, which expressly grants the Office of Attorney General ("OAG") access to and control of materials held by Pennsylvanian agencies.

## II.      PROCEDURAL HISTORY

Defendants have sought formal discovery from Pennsylvania for more than two years. Despite those efforts, Pennsylvania has yet to produce a *single* document in this case.[2] Through two sets of Requests for Production, served on August 31, 2018 and October 16, 2019, and four separate meet-and-confers, held on August 2, 2019, October 28, 2019, December 6, 2019, and March 19, 2020, Defendants have repeatedly asked Pennsylvania to produce relevant documents and material, and to identify potential sources of responsive documents and data. Pennsylvania

---

[1] Defendants have addressed every argument Pennsylvania has raised in its various briefs, please see Ex. 1.

[2] Pennsylvania claims that it provided state Medicaid data to Defendants, Pl. Br. at 3, but, in fact, has *not* produced *any* Medicaid data. *See* Ex. 2, States' August 1, 2020 Production Log.

has refused, making clear that it does not intend to provide any substantive discovery.[3]  After reaching impasse, Defendants submitted a letter brief to the Special Masters on May 5, 2020, seeking to compel production of relevant, discoverable information. After briefing and a hearing, Special Master Marion issued an informal recommendation on June 8, 2020, recommending that the Defendants' request be granted. Pennsylvania objected and demanded additional briefing. Subsequently, Special Master Marion again agreed with Defendants and issued the R&R. Pennsylvania objected, leading to this dispute. Defendants respectfully request that this Court overrule Pennsylvania's objections and affirm the R&R.

### III.   ARGUMENT

The dispute at issue is straightforward: whether Pennsylvania must produce materials that are relevant to Pennsylvania's claims and accessible to the OAG under Pennsylvania law. Rather than address this issue, Pennsylvania erects a series of straw men and asserts an unduly narrow interpretation of the OAG's statutory authority—conveniently tailored to serve as both a sword and shield for the OAG—that is not supported by the statute's plain text, legislative history, statutory structure, or relevant case law. Defendants urge the Court to reject Pennsylvania's attempts to evade its discovery obligations and affirm the Special Master's R&R.

### A.   Defendants seek relevant fact discovery that Pennsylvania has no basis to withhold.

Pennsylvania, like all civil plaintiffs, must produce non-privileged data and documents that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed.

---

[3] When Defendants issued an interrogatory requesting Pennsylvania to identify sources of information that could be used to support its claims, Pennsylvania stated that it would support its claims with "party data, non-party data, and publicly available sources"—a response so broad that it encompasses every conceivable type of data source. Ex. 3 at 11. In its objections to the R&R, Pennsylvania notes, for the first time, that its disgorgement claims are based on "nonparty pharmacy sales data."  Pl. Br. at 7-8. This response is similarly deficient; it is nearly as broad as the original response and does not actually identify sources of information. The only information Pennsylvania has provided was an informal identification of four agencies with pharmaceuticals benefits functions, which Pennsylvania then refused to even help facilitate productions from.

R. Civ. P. 26(b)(1); *see also, e.g.*, *Bro-Tech Corp. v. Thermax, Inc.*, 2007 WL 2234521, at *3, n.17 (E.D. Pa. Aug. 2, 2007) (Rufe, J.) (explaining that plaintiffs must produce documents "relevant to the subject matter of the litigation"). As explained below, the information and documents requested by Defendants here (the "Requested Discovery") are relevant—and in some instances fundamental—to the claims, allegations, and defenses in this case.

> **1.    Pennsylvanian agencies possess materials relevant to the claims, allegations, and legal questions at issue in this case.**

The Requested Discovery is discoverable because it relates directly to Pennsylvania's claims and factual allegations. For example, Pennsylvania claims that it is entitled to collect civil penalties for *each* alleged violation, including "[e]ach time a request for reimbursement was made to the Commonwealth of Pennsylvania for any of the numerous generic pharmaceutical drugs," and "[e]ach time the Commonwealth of Pennsylvania or a Pennsylvania consumer paid an artificially inflated price for any of the numerous generic pharmaceutical drugs." *See, e.g.,* Am. Compl. ¶ 1641, No. 19-2407, Dkt. 106 (Oct. 31, 2019) ("Teva Compl."). Among other things, Defendants have asked Pennsylvania to produce documents and data concerning: "utilization, reimbursement, or Medicaid Rebate information" for the pharmaceuticals at issue; discounts and rebates received for those products; Pennsylvania's "ability to purchase generic pharmaceuticals at a discounted rate"; and the identities of entities for which Pennsylvania seeks disgorgement. Pl. Br. Ex. B (Defendants' First Requests for Production) at 12.

Publicly available information makes clear that Pennsylvanian agencies possess such documents and data because they purchase or reimburse generic pharmaceuticals, or facilitate such transactions. The Pennsylvania Department of Aging, for example, "offer[s] low-cost prescription medication to qualified residents, age 65 and older," if they are not enrolled in the state Medicaid prescription program. The Pennsylvania Employee Benefits Trust Fund also

provides health benefits to Pennsylvania's government employees, including prescription drugs. And the Pennsylvania Turnpike Commission administers its own benefits program, including prescription drug benefits. The Pennsylvania Department of Human Services also processes claims exceptions for pharmacy providers and manages pharmacy benefits by maintaining the "Preferred Drug List, prior authorization[s], drug use review[s], and specialty pharmacy."[4]

Pennsylvanian government entities thus hold information about, for instance, the number of times "a request for reimbursement was made to the Commonwealth of Pennsylvania" for one of the pharmaceuticals at issue; whether and in what quantity each of the pharmaceuticals at issue was *actually purchased* by Pennsylvania and/or its consumers; the price that was actually paid for those pharmaceuticals (which is essential to evaluating whether those prices were "artificially inflated"); and rebates received for those pharmaceuticals. Pennsylvania cannot on the one hand seek civil penalties for each reimbursement paid and purchase made by the Commonwealth, and then, on the other hand, argue that the records of those reimbursements and purchases are irrelevant under Rule 26.[5]

Pennsylvania also alleges that Defendants "deceptively misrepresented the absence of competition"; misrepresented that "prices for the numerous generic pharmaceutical drugs [at issue] were competitive and fair"; and fixed "the prices at which the numerous generic

---

[4] *See* PACE-Prescription Assistance, Pa. Dep't of Aging, https://www.aging.pa.gov/aging-services/prescriptions/Pages/default.aspx (last visited Aug. 25, 2020); Summary Plan Description, Pa. Emp. Benefit Tr. Fund (PEBTF) (April 2014), https://www.insurance.pa.gov/Coverage/Documents/EHB 2017/PEBTF 2014.pdf; Unrivaled Benefits & Wellness Package, Pa. Turnpike Comm'n, https://careers.paturnpike.com/content/Benefits/?locale=en_US (last visited Aug. 25, 2020); Bureau of Fee-for-Service Programs, Pa. Dep't of Human Servs, https://www.dhs.pa.gov/contact/DHS-Offices/Pages/OMAP-Bureau%20of%20Fee-For-Service%20Programs.aspx (last visited Aug. 25, 2020).

[5] Pennsylvania also seeks a $3,000 penalty for each alleged victim age 60 or older pursuant to 73 P.S. § 201-8(b). The Pennsylvania Department of Aging's prescription medication program—which applies to non-Medicaid prescriptions for Pennsylvanians age 65 or older—would certainly include information relevant to the number of alleged victims over age 60.

pharmaceutical drugs [at-issue] were sold, distributed or obtained in Pennsylvania." *See, e.g.*, Teva Compl. ¶¶ 1615-61. The Requested Discovery includes information about Pennsylvania's negotiations for the purchase of pharmaceuticals at-issue, purchasing decisions, the availability of (or desire to obtain) substitutes, and pricing information. That information is directly relevant to whether (i) Defendants' alleged representations about competition and price were misleading, and (ii) the prices allegedly paid by Pennsylvania were competitive.

The Requested Discovery is also relevant to material questions of law. Pennsylvania seeks monetary recovery pursuant to 73 P.S. §§ 201-2(4), 201-3, 201-4.1, and 201-8. *See, e.g.,* Teva Compl. ¶¶ 1615-61. To establish unlawful conduct under 73 P.S. § 201-2(4), Pennsylvania must prove that Defendants engaged in conduct specifically defined by that Section, such as making "false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions." 73 P.S. § 201-2(4). As explained above, the Requested Discovery includes information about price negotiations, rebates offered, and Pennsylvanian entities' purchasing decisions, all of which are directly relevant to whether § 201-2(4) applies to Defendants' alleged conduct. That relevance also applies to Pennsylvania's claims for disgorgement under § 201-4.1, which authorizes disgorgement to "restore to any person in interest any moneys or property, real or personal, which may have been *acquired by means of any violation* of this act." 73 P.S. § 201-4.1 (emphasis added). An abstract justification for the disgorgement will not suffice; Pennsylvania must demonstrate that the funds it seeks to disgorge were acquired by alleged violations of the UTPCPL and were paid by a "person in interest."

The Requested Discovery is also relevant to the legal question of whether Pennsylvania has antitrust standing to assert its claims. *Aluminum Warehousing Antitrust Litig*., 833 F.3d 151, 157 (2d Cir. 2016) ("[a]n antitrust plaintiff must show both constitutional standing and antitrust

standing at the pleading stage"). To establish antitrust injury, a plaintiff must demonstrate that its injury is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id*. Pennsylvania cannot prove antitrust standing without evidence that the Commonwealth *actually purchased* each pharmaceutical at issue and paid a particular price, and that the price was higher than it would have been absent Defendants' alleged conduct. *Com. of Pa. v. Russell Stover Candies, Inc*., No. CIV. A. 93-1972, 1993 WL 145264, at *9 (E.D. Pa. May 6, 1993) ("before any relief may be granted on Pennsylvania's claim as *parens patriae*, plaintiff will have to prove an antitrust injury to the general economy of Pennsylvania").

### 2. Pennsylvania asserts irrelevant arguments and inapposite cases that do not rebut Defendants' explanations of relevance.

Pennsylvania does not, and cannot, demonstrate that the Requested Discovery is irrelevant, but instead asserts that it need not respond to Defendants' requests because the OAG does not intend to rely on materials from Pennsylvanian entities to prove its claims. Pl. Br. at 3, 7. But that is not the standard. Pennsylvania's discovery obligations under Rule 26 are not limited to material on which the OAG intends to rely. Fed. R. Civ. P. 26(b)(1).[6] Indeed, some of the Requested Discovery may not ultimately be used to support Pennsylvania's claims, but could be nonetheless relevant to defenses—and thus must be produced. Pennsylvania also asserts that the Requested Discovery is irrelevant because Pennsylvania seeks disgorgement and civil penalties, not traditional damages. But, again, that also is not the standard. Rule 26 defines the

---

[6] Pennsylvania's assertion that it will prove its claims with data from Defendants and retail pharmacies is not only irrelevant to the discovery standard, it is also inaccurate. Defendants often sell to third-party wholesalers, who in turn sell to Pennsylvania and retail pharmacies in the Commonwealth. Accordingly, many of Pennsylvania's claims cannot be proved with Defendants' and retail pharmacies' data alone, such as claims for disgorgement of funds allegedly "acquired by means of any violation of [the UTPCPL]," 73 P.S. § 201-4.1, and claims for civil penalties sought for "[e]ach time a request for reimbursement was made to the Commonwealth of Pennsylvania." Teva Compl. ¶ 1641.

scope of discovery in terms of relevance to "any party's claim or defense," and does not exclude—as Pennsylvania insists, without support—claims for civil penalties or disgorgement.

Pennsylvania also makes the unbelievable argument that the Requested Discovery is not relevant under Rule 26 because "the Attorney General represents the Commonwealth, not Commonwealth Agencies" and that the OAG and Commonwealth agencies are "distinct legal entities" for the purposes of litigation. Pl. Br. at 5. Assuming, *arguendo*, that the OAG and Commonwealth entities are "distinct legal entities,"[7] it would still have no bearing on the relevance of the Requested Discovery because Pennsylvania's claims and allegations are based on alleged harm to those agencies (and alleged harm to citizens, which would appear in agency documents and data). For example, Pennsylvania seeks civil penalties for "[e]ach time a request for reimbursement was made to the Commonwealth of Pennsylvania." Records of those reimbursement requests are thus relevant discovery regardless of who the OAG "represents."[8]

Finally, Pennsylvania cites *Federal Trade Commission v. Vyera Pharmaceuticals, LLC*, No. 20-cv-00706 (S.D.N.Y. Apr. 16, 2020, Dkt. 4, 91) (Pl. Br., Ex. G), in support of its relevance arguments. But that case, which is based on materially different allegations, has no bearing on the dispute here. The *Vyera* court's one paragraph order focuses only on whether the data requested in that case was relevant to the plaintiffs' disgorgement calculation. As explained above, the purchase and reimbursement information requested by Defendants in this case (which

---

[7] The OAG has asserted in previous litigations that Commonwealth Agencies and the OAG are the same party for the purposes of discovery. See Ex. D, Brief of Resp't Commonwealth Pa., *In re Thirty-Third Statewide Investigating Grand Jury* (2012) (No. 85 MM 2012), 2012 WL 8718351(arguing that a Commonwealth agency and the OAG are the same "client" when applying attorney-client privilege, writing that "the 'client' is the Commonwealth of Pennsylvania," not the individual agency. Further, the Pennsylvania Commonwealth Attorneys Act ("CAA") states that "The Attorney General *shall* represent the Commonwealth and all Commonwealth agencies . . . in *any* action brought by or against the Commonwealth *or* its agencies." 71 P.S. § 732-204(c) (emphasis added).

[8] As explained below, the statute authorizing the OAG to access those materials applies regardless of whether the OAG represents the relevant agencies.

is not limited to data and which is relevant to more than just calculations of equitable relief) goes to the very core of Pennsylvania's allegations, including that Pennsylvania paid artificially inflated prices for the pharmaceuticals at issue, that Defendants fixed or maintained "at artificial and non-competitive levels the prices at which numerous [pharmaceuticals at issue] were sold, distributed or obtained in Pennsylvania," and that "Defendants deceptively misrepresented to the Commonwealth" that prices at which those pharmaceuticals were "sold, distributed, or obtained in Pennsylvania [were] competitive and fair."  Teva Compl. ¶¶ 1633-35. In any event, shortly after issuing the discovery order on which Pennsylvania relies, the *Vyera* court dismissed Pennsylvania's UTPCPL disgorgement claim altogether.[9] *Id.* (Dkt. 229 at 38).

      **B.**     <u>Pennsylvania has control of the Requested Discovery.</u>

      **1.**     **Pennsylvania law grants the OAG express authority to access agency materials "at all times," and that authority is *only* limited by what is "necessary" to the performance of the OAG's duties.**

Pennsylvania has control of the Requested Discovery held by its state agencies because Pennsylvania law expressly grants the OAG authority to obtain those materials. "[F]ederal courts have universally held that documents are deemed to be within the possession, custody or control of a party if the party . . . has the legal right to obtain the documents on demand." *Devon Robotics v. DeViedma*, 2010 WL 3985877, at \*2 (E.D. Pa. Oct. 8, 2010) (citing *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D. Kan. 2001)). Section 208 of the Commonwealth Attorneys Act ("CAA") states, in its entirety, that "[t]he Office of Attorney General shall have the right to access *at all times* to the books and papers of any Commonwealth agency necessary

---

[9] Pennsylvania's assertion that it will prove its claims with data from Defendants and retail pharmacies is not only irrelevant to the discovery standard, it is also inaccurate. Defendants often sell to third-party wholesalers, who in turn sell to Pennsylvania and retail pharmacies in the Commonwealth. Accordingly, many of Pennsylvania's claims cannot be proved with Defendants' and retail pharmacies' data alone, such as claims for disgorgement of funds allegedly "acquired by means of any violation of [the UTPCPL]," 73 P.S. § 201-4.1, and claims for civil penalties sought for "[e]ach time a request for reimbursement was made to the Commonwealth of Pennsylvania." Teva Compl. ¶ 1641.

to carry out his duties under this act." 71 P.S. § 732-208 (emphasis added). The Pennsylvania Supreme Court explained that Section 208 "lists only one condition on the mandate of production: the material sought must be 'necessary' for execution of the OAG's duties." *In re Thirty-Third Statewide Investigating Grand Jury*, 624 Pa. 361, 381 (2014). Despite Pennsylvania's attempts to muddy the waters by inventing unsupported implicit limitations on Section 208, the statute's plain text, legislative history, and structure all unambiguously demonstrate that the General Assembly intended it as a broad grant of authority, qualified only by what is "necessary."

"Statutory interpretation begins with the plain language of the statute and when the language is clear, the court must enforce it according to its terms." *Bd. of Trustees of IBT Local 863 Pension Fund v. C&S Wholesale Grocers*, 802 F.3d 534, 542 (3d Cir. 2015). The plain text of Section 208 could not be more clear: "[t]he Office of Attorney General shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties under this act." 71 P.S. § 732-208. There is no question that access to the Requested Discovery held by Pennsylvania agencies is necessary to the OAG's duties here because those duties include "represent[ing] the Commonwealth and its citizens in any action brought for violation of the antitrust laws." 71 P.S. § 732-204(c). The OAG has chosen to bring such an action and necessarily must comply with valid discovery requests seeking relevant information.

The General Assembly's intent to grant the OAG broad authority to obtain agency materials is also apparent from the legislative history. The original grant of this statutory authority was enacted as Section 908 of the Administrative Code of 1929, which stated that "[t]he Attorney General shall have the right of access at all times to the books and papers of any administrative department, board, or commission of the State Government." P.L. 177, No. 175 §

9

908 (Apr. 9, 1929). When the CAA was enacted in 1980 to amend the Administrative Code, the General Assembly modified that language, adding that the OAG's authority applies to agency materials that are "necessary to carry out his duties under this act," but kept the express mandate that the right to access applies "at all times."  P.L. 950, No. 164 § 208 (Oct. 15, 1980). By adding the "necessity" limitation and keeping the "at all times" mandate, the General Assembly demonstrated that it considered appropriate limitations on the use of Section 208 and determined that as long as Section 208 was being used in fulfilling the OAG's duties, that authority was not limited to a particular time or context. *See Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 187-88 (1978) (when Congress includes certain limitations in an act, it precludes the application of additional implied limitations). Put simply, if the General Assembly intended to limit the OAG's authority to pre-litigation investigations, as the OAG suggests, it would have done so when it modified the language of the statute. Instead, it affirmed that the OAG's right to obtain agency materials applies "at all times."

The structure of the CAA further contradicts Pennsylvania's now self-serving interpretation. Section 208 follows sections in the same chapter that outline powers and duties of the OAG. Separate sections are dedicated to the OAG's powers and duties with respect to civil matters, criminal prosecutions, criminal investigations, furnishing legal advice, and agency memberships. 71 P.S. §§ 732-204, 205, 206, 207. If the General Assembly intended to limit the application of Section 208 to particular OAG duties, it would have included that grant of authority in the specific section(s) covering the applicable duties—such as § 206, which covers investigations—or referenced those sections in Section 208 as it did in other sections of the CAA. *See, e.g., Id.* § 206(a) (granting the OAG "the power to investigate any criminal offense which he has the power to prosecute *under section 205*") (emphasis added). But it did not.

Instead, the General Assembly specifically created a separate section at the end of the chapter to expressly authorize the OAG to access agency materials "at all times," as long as such access is necessary to carrying out the OAG's "duties under this act."

In its efforts to avoid providing discovery in this case, Pennsylvania has thrown a bevy of unsupported arguments at the wall; none stick. First, after failing to make any arguments about Section 208's application in the informal round of briefing, Pennsylvania insisted in its June 30, 2020 letter brief that the *only* appropriate application of Section 208 was as "a pre-complaint investigatory tool unique to the government that may not be used once litigation on the matter has commenced." Ex. 5, June 30, 2020 Ltr. Br. at 2. Pennsylvania now tries a new approach— which is slightly more expansive but no less atextual—suggesting that Section 208 can only be applied "to investigate potentially unlawful behavior by *Commonwealth Agencies* and to litigate claims on behalf of Commonwealth Agencies—*nothing more*." Pl. Br. at 8 (emphasis added).

Setting aside that Pennsylvania cannot even settle on its own interpretation of Section 208, this new theory is devoid of legal support and equally unpersuasive. For example, Pennsylvania argues that "[n]owhere in the CAA does it say the Attorney General has access to Commonwealth Agency documents when the agency is neither a party to litigation nor a subject or target of an investigation," Pl. Br. at 9, but Section 208 expressly states that the OAG "shall have the right to access *at all times* to the books and papers of any Commonwealth agency." Pennsylvania also argues that Section 208 only applies to the "duties" of investigating agencies and formally representing agencies in actions for proprietary damages, but Section 208 states that it applies as "necessary to carry out [OAG's] duties under this act," and those duties include "represent[ing] the Commonwealth and its citizens in any action brought for violation of the antitrust laws." 71 P.S. §§ 732-208; 732-204(c). Pennsylvania even argues that its claims

11

somehow "do not involve Commonwealth Agencies," when those claims expressly state otherwise, seeking monetary recovery for "[e]ach time a request for reimbursement was made to the Commonwealth" and "[e]ach time the Commonwealth of Pennsylvania or a Pennsylvania consumer paid an artificially inflated price." Teva Compl. ¶ 1641.

## 2. Pennsylvania's suggestion that Section 208 should be interpreted narrowly is not supported by Pennsylvania law or relevant case law.

Pennsylvania's argument that the R&R would "grant all parties involved in litigation with the Attorney General unfettered access to [agency] documents" is not supported by relevant law or precedent. Pl. Br. at 9. Indeed, the express limitations set out in Section 208 and Rule 26 prevent that outcome.[10] Section 208 limits access to those agency documents that are "necessary to carry out [the OAG's] duties," and Rule 26 limits the scope of discovery based on relevance and proportionality, including burden. Because the Requested Discovery is directly relevant to Pennsylvania's claims and allegations, and Pennsylvania has not raised any burden objection, they are discoverable under Rule 26, which in turn makes them "necessary" under Section 208.[11]

Pennsylvania also attempts to contort this Court's November 2018 Order to support its position that it need not engage in party discovery. *See* Pl. Br. at 14 ("The R&R even ignored this Court's order regarding the use of investigatory authority once litigation has commenced for the same information that is obtainable under the FRCP."). That Order determined that the

---

[10] Defendants do not contend they are entitled to all materials held by all Commonwealth agencies, but rather only those that are relevant to the claims and defenses in the case. Pennsylvania made those materials discoverable when it decided, in its discretion, to assert claims and allegations based in part on the Commonwealth's pharmaceutical purchases, reimbursements, and procurements. Defendants seek nothing more than they are entitled to under Rule 26.

[11] Pennsylvania also makes the illogical argument that application of Section 208 here would somehow usurp the federal discovery rules. Pl. Br. at 13. Section 208 does not supersede or otherwise intrude on the application of Rule 26; it is merely the source of the OAG's control of and authority to obtain the Requested Discovery held by its state agencies. Pennsylvania's argument is akin to a corporate defendant arguing that provisions in its by-laws granting it access to its subsidiaries' documents do not apply once litigation begins because the company's by-laws and Rule 26 cannot both apply.

plaintiff-states could not circumvent the Federal Rules by using their state subpoena power instead of the federally-prescribed discovery processes. Dkt. 758. Here, Defendants are only asking that Pennsylvania be compelled to *comply* with the Federal Rules governing discovery. Rule 26 requires production of the requested documents if Pennsylvania has those documents in its control. The OAG has express statutory authority to obtain those documents, so the OAG has the requisite legal control. The Court's November 2018 order does not affect this analysis.

Further, the cases cited by Pennsylvania only undermine its narrow interpretation of Section 208. Pennsylvania cites *Thirty-Third Statewide*, a case in which the Pennsylvania Supreme Court held, in no uncertain terms, that the *only* limitation on the OAG's ability to access records under Section 208 is that "the material sought must be 'necessary' for execution of the OAG's duties." *In re Thirty-Third Statewide Investigating Grand Jury*, 624 Pa. 361, 381 (2014). The Supreme Court even expressly "recognize[d] that the OAG has a broad array of duties involving Commonwealth agencies beyond criminal investigations, and that the CAA is of correspondingly broad scope. Nevertheless, the authorization remains qualified *only* by what is 'necessary.'" *Id.* (emphasis added).[12] Pennsylvania also cites *Office of Attorney Gen. v. Patel*, 2019 WL 5561412, at *4 (Pa. Cmwlth. Oct. 29, 2019), but that case is equally unhelpful to Pennsylvania. Not only did that case not address Section 208, but it held that Section 919(b) of the Administrative Code—which is unrelated to Section 208—does not apply to enforcement of the UTPCPL, and "does not grant the Bureau the power to enforce, restrain, or bring civil actions." *Id.* Conversely, Section 208 *expressly* applies to the OAG's duties under the CAA,

---

[12] Pennsylvania also inexplicably cites an eighty-two year old, overruled, and entirely inapposite case, *In re Investigation by Dauphin County Grand Jury*. 332 Pa. 289, 298 (1938), overruled by *Commonwealth v. Schab*, 477 Pa. 55 (1978); Pl. Br. at 10, which says nothing about limitations on the OAG's authority.

13

including "represent[ing] the Commonwealth and its citizens in any action brought for violation of the antitrust laws." 71 P.S. § 732-204(c).

Pennsylvania also argues, citing a slew of unrelated case law, that "[s]tate agencies are nonparties in this action." Opp. Br. at 13. The Court does not need to decide that issue because Section 208 does not require the relevant agencies to be joined as independent parties to the action. Still, those cases do not support Pennsylvania's position either. In *American Express*, for example, the court ruled that defendant American Express could not obtain broad discovery from all state agencies that might have possessed any responsive materials. But, crucially, the court contrasted its decision with a prior case in which a government plaintiff *was required* to produce relevant materials from its agencies because those agencies "were the moving forces behind the contracts that formed the basis for suit." Order at 5 n.7, *United States v. Am. Express Co.*, No. 1:10-04496-NGG-RER (E.D.N.Y. July 29, 2011) ("*Amex*") (Pl. Br., Ex. I) (distinguishing *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 34-35 (S.D.N.Y. 1984)). The "moving forces behind the contracts that formed the basis for suit" here are the Pennsylvanian agencies that allegedly overpaid for generic pharmaceuticals and reimbursements, and were allegedly deprived of competitive alternatives. Defendants are entitled to discovery about those allegations. The *Amex* court further explained that the state Attorneys General in that case (which did not include Pennsylvania) did not have "control" of the requested materials because "[l]egally, the State Attorneys General have no more way of compelling production than Amex does if an agency refuses to cooperate." *Id.* at 5. The same cannot be said here. Unlike those Attorneys General, the Pennsylvania OAG has *express statutory authority* to obtain the requested materials, and has successfully exercised that authority in the past with the approval of the Pennsylvania Supreme Court. The *Amex* court

reinforced that point by explaining that "a party's ability to obtain documents when it wants them [is] a particularly relevant, controlling factor" in determining whether a plaintiff-state has "control" of materials sought from a state agency. *Id.* at 5-6, n.8. Because the Pennsylvania OAG is expressly authorized to obtain the requested materials pursuant to 71 P.S. § 732-208, Pennsylvania, unlike the *Amex* plaintiffs, *does* have legal "control" of the requested materials.[13]

But even more problematic, Pennsylvania ignores other cases in which Attorneys General *were* compelled to produce discovery from state agencies. For example, in *In re Opioid Litigation*, the court explained that "[t]he issues framed by the pleadings determine the scope of discovery." *In re Opioid Litig.* No. 400000/2017 (N.Y Sup. Ct. Aug. 14, 2019) (Ex. 6). In that case, the complaint stated that it was "brought on behalf of 'the People of the State of New York.'" *Id.* The court therefore required New York to "search and produce documents from agencies likely to possess responsive documents." *Id.* The same reasoning applies in this case.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule Pennsylvania's objections and enter an Order upholding the R&R.

---

[13] Pennsylvania misquotes *Standard & Poors Rating Agency Litig.* (S.D.N.Y. Feb. 21, 2014) for the proposition that "state agencies should be treated as non-parties for purposes of discovery." Pl. Br. at 13 (citing Ex. H at *4). Pennsylvania omits the portion of that sentence with the qualifier "unless a State attorney general is authorized to represent an agency, or [defendants] make a 'strong showing' that aggregation of state agencies is appropriate." As explained above, 71 P.S. § 732-204(c) expressly states "[t]he Attorney General shall represent the Commonwealth and all Commonwealth agencies…in any action brought by or against the Commonwealth or its agencies," and Defendants provided numerous reasons why discovery from state agencies is appropriate here, including because Pennsylvania's claims and allegations put those agencies' transactions directly at issue.

Pennsylvania additionally cites, without any explanation, *Colorado v. Warner Chilcott* (D.D.C. May 2007). Pl. Br. at 14 (citing Ex. J at *1). The defendants in that case argued broadly that 35 plaintiff-states (none of which were Pennsylvania) should be compelled to produce discovery from their state agencies. Pl. Br., Ex. J at *1. The motion failed for lack of specificity. The court explained that defendants cited just two state statutes and no supporting case law for those statutes, which was "an insufficient basis upon which to conclude, across the board, that the State Attorneys General have a legal right to obtain documents from their respective State Medicaid agencies upon request." *Id* at 10. Defendants here provided express statutory authority and supporting case law demonstrating that Pennsylvania law unambiguously provides the OAG authority to obtain the Requested Discovery.

Dated: August 26, 2020

Respectfully submitted,

_s/ Sheron Korpus_

Sheron Korpus Seth
A. Moskowitz
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
skorpus@kasowitz.com
smoskowitz@kasowitz.com

_Counsel for Defendants Actavis Elizabeth,
LLC, Actavis Holdco U.S., Inc., and Actavis
Pharma, Inc._

_/s/ Steven A. Reed_

R. Brendan Fee
Steven A. Reed
Melina R. DiMattio
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
brendan.fee@morganlewis.com
steve.reed@morganlewis.com
melina.dimattio@morganlewis.com

Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA 15219
Telephone: (412) 560-7455
wendy.feinstein@morganlewis.com

_Counsel for Defendant Glenmark
Pharmaceuticals, Inc., USA_

_/s/ Benjamin F. Holt_

Benjamin F. Holt
Adam K. Levin
Justin W. Bernick
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
benjamin.holt@hoganlovells.com
adam.levin@hoganlovells.com
justin.bernick@hoganlovells.com

_/s/ Jasmeet K. Ahuja_

Jasmeet K. Ahuja
**HOGAN LOVELLS US LLP**
1735 Market Street, 23rd Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
jasmeet.ahuja@hoganlovells.com

_/s/ Jeffrey C. Bank_

Jeffrey C. Bank*
Seth C. Silber
**WILSON SONSINI GOODRICH & ROSATI, PC**
1700 K Street, NW Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8824
jbank@wsgr.com
ssilber@wsgr.com

Chul Pak
Mikaela E. Evans-Aziz
**WILSON SONSINI GOODRICH & ROSATI, PC**
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 497-7726
cpak@wsgr.com
mevansaziz@wsgr.com

*Admitted only in New York. Not Admitted in the
District of Columbia. Practice supervised by a
member of the Bar of the District of Columbia.

_Counsel for Defendants Mylan Inc. and Mylan
Pharmaceuticals, Inc._

16

/s/ Margaret A. Rogers
Margaret A. Rogers
Saul P. Morgenstern
**ARNOLD & PORTER KAYE SCHOLER
LLP**
250 W. 55th Street New
York, NY 10019
Telephone: (212) 836-8000
margaret.rogers@arnoldporter.com
saul.morgenstern@arnoldporter.com

Laura S. Shores
**ARNOLD & PORTER KAYE SCHOLER
LLP**
601 Massachusetts Avenue
Washington, DC 20001
Telephone: (202) 942-5000
laura.shores@arnoldporter.com

*Counsel for Defendants Sandoz Inc. and
Fougera Pharmaceuticals Inc.*

/s/ Leiv Blad
Leiv Blad
Zarema Jaramillo
Meg Slachetka
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Avenue
Washington, D.C. 20037
Telephone: (202) 753-3800
lblad@lowenstein.com
zjaramillo@lowenstein.com
mslachetka@lowenstein.com

*Counsel for Defendant Lupin
Pharmaceuticals, Inc.*

/s/ John E. Schmidtlein
John E. Schmidtlein
Sarah F. Kirkpatrick
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W. Washington,
D.C. 20005
Telephone: (202) 434-5000
jschmidtlein@wc.com
skirkpatrick@wc.com

*Counsel for Defendant Par Pharmaceutical
Inc.*

/s/ Erik T. Koons
Christopher P. Wilson
John M. Taladay
Erik T.Koons
Stacy L. Turner
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue
NW Washington, DC 20004
Telephone: (202) 639-7700
christopher.wilson@bakerbotts.com
john.taladay@bakerbotts.com
erik.koons@bakerbotts.com
stacy.turner@bakerbotts.com

Lauri A. Kavulich Ann E. Lemmo
**CLARK HILL PLC**
2001 Market St, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
**CLARK HILL PLC**
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
lfouse@clarkhill.com

*Counsel for Defendants Sun
Pharmaceutical Industries, Inc. and Taro
Pharmaceuticals USA, Inc.*

17

/s/ Raymond A. Jacobsen, Jr.
Raymond A. Jacobsen, Jr.
Paul M. Thompson (Pa. Bar No. 82017)
Lisa (Peterson) Rumin
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001
Telephone: (202) 756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lrumin@mwe.com

Nicole L. Castle
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, NY 10173
Telephone: (212) 547-5400
ncastle@mwe.com

*Counsel for Defendants Amneal
Pharmaceuticals, Inc., Amneal
Pharmaceuticals LLC, and Impax
Laboratories, Inc.*

s/ Steven A. Bizar
Steven A. Bizar
John P. McClam
Tiffany E. Engsell
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
steven.bizar@dechert.com
john.mcclam@dechert.com
tiffany.engsell@dechert.com

*Counsel for Defendant Citron
Pharma LLC*

/s/ Brian J. Smith
Michael Martinez
Steven Kowal
Lauren Norris Donahue
Brian J. Smith
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 372-1121
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Defendant Mayne Pharma Inc.*

/s/ Jay P. Lefkowitz, P.C.
Jay P. Lefkowitz, P.C.
Devora W. Allon
Alexia R. Brancato
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jay.lefkowitz@kirkland.com
devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Counsel for Defendant Upsher-Smith
Laboratories, LLC*

*/s/ J. Gordon Cooney, Jr.*
J. Gordon Cooney, Jr.
John J. Pease, III
Alison Tanchyk
William T. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
amanda.robinson@morganlewis.com

*Counsel for Defendant Teva
Pharmaceuticals USA, Inc.*

*/s/ Gerald E. Arth*
Gerald E. Arth
Ryan T. Becker
Nathan M. Buchter
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: (215) 299-2000
garth@foxrothschild.com
rbecker@foxrothschild.com
nbuchter@foxrothschild.com

George G. Gordon
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2382
george.gordon@dechert.com
julia.chapman@dechert.com

*Counsel for Defendant Lannett Company,
Inc.*

*/s/ J. Clayton Everett, Jr.*
Scott A. Stempel
J. Clayton Everett, Jr.
Tracey F. Milich
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
scott.stempel@morganlewis.com
clay.everett@morganlewis.com
tracey.milich@morganlewis.com

Harvey Bartle IV
Francis A. DeSimone
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
harvey.bartle@morganlewis.com
frank.desimone@morganlewis.com

*Counsel for Defendant Perrigo New York, Inc.*

*/s/ Wayne A. Mack*
Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com

*Counsel for Defendant Aurobindo Pharma
USA, Inc.*

*/s/ James W. Matthews*
James W. Matthews
Katy E. Koski
John F. Nagle
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone: (617) 342-4000
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
**FOLEY & LARDNER LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Telephone: (414) 271-2400
jmckeown@foley.com
ehaas@foley.com kgehl@foley.com

Steven F. Cherry
April N. Williams
Claire Bergeron
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
steven.cherry@wilmerhale.com
april.williams@wilmerhale.com
claire.bergeron@wilmerhale.com

Terry M. Henry Melanie S. Carter
**BLANK ROME LLP**
One Logan Square 130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5644
THenry@blankrome.com
MCarter@blankrome.com

*Counsel for Defendant Apotex Corp.*

*/s/ Damon W. Suden*
William A. Escobar
Damon W. Suden
Clifford Katz
**KELLEY DRY & WARREN LLP**
101 Park Ave
New York, New York 10178
Telephone: (212) 808-7800
wescobar@kelleydrye.com
dsuden@kelleydrye.com
ckatz@kelleydrye.com

*Counsel for Defendant Wockhardt USA LLC and Morton Grove Pharmaceuticals, Inc.*

*/s/ W. Gordon Dobie*
W. Gordon Dobie
**WINSTON & STRAWN LLP**
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
WDobie@winston.com

*/s/ Irving Wiesen*
Irving Wiesen
**LAW OFFICES OF IRVING L. WIESEN, P.C.**
420 Lexington Avenue – Suite 2400
New York, NY 10170
Telephone: (212) 381-8774
iwiesen@wiesenlaw.com

*Counsel for Defendant Ascend Laboratories, LLC*

*/s/ Ilana H. Eisenstein*
Ilana H. Eisenstein
Ben C. Fabens-Lassen
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

*/s/ Edward S. Scheidman*
Edward S. Scheidman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Edward.scheideman@dlapiper.com


*Counsel for Defendant Greenstone, LLC*

*/s/ Jason R. Parish*
Jason R. Parish
Martin J. Amundson
**BUCHANAN INGERSOLL &
ROONEY PC**
1700 K Street, NW
Washington, DC 20006
Telephone: (202) 452-7900
jason.parish@bipc.com
martin.amundson@bipc.com

*/s/ Bradley Kitlowski*
Bradley Kitlowski
**BUCHANAN INGERSOLL &
ROONEY PC**
Union Trust Building
Pittsburgh, PA 15219
Telephone: (412) 562-8800
bradley.kitlowski@bipc.com

*Counsel for Defendant Zydus
Pharmaceuticals (USA) Inc.*