**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ALLOWING TWO DEPOSITIONS
OF CERTAIN WITNESSES IN ORDER TO PRIORITIZE BELLWETHER
DISCOVERY**

**INTRODUCTION**

The Court has clearly expressed the view that the parties must prioritize discovery so that

the Court can hold early "bellwether" trials and thus advance this MDL as efficiently as

possible.[1]  In order to accomplish that objective, Plaintiffs have proposed that witnesses having

testimony relevant to the Bellwether actions be deposed once during discovery relating to the

Bellwether actions, and then one more time later in the discovery process (if necessary) to

address testimony relating to all other, non-Bellwether cases.  Defendants have objected to that

proposal, arguing that every witness in this MDL should be deposed only once, regardless of the

scope of their testimony and regardless of whether the individual has testimony relevant to both

---

[1] Special Master David Marion's Third Report and Recommendation Relating to Bellwether Selection ("R&R 3") specifically directed in its proposed Order that "[t]he parties shall prioritize discovery and motions and other steps needed to hold the earliest possible jury trial of all claims and issues presented in the States' (Attorneys General) Amended Complaint filed May 10, 2019 (The Teva-centric Complaint)" and "[o]n a parallel and simultaneously proceeding 'track' (Track Two), the class Plaintiffs shall proceed with all discovery, motions and other steps needed to hold a second round of trials of one to three Complaints as selected by class Plaintiffs, consistent with the Special Master's Third Report and Recommendation.  *See* 2:16-md-2724-CMR, Dkt. 1244 and 1244-1.  R&R 3 and the Recommended Order accompanying it were approved by this Court in PTO 132 on July 13, 2020.  Dkt. 1443; *see also* Dkt. 1442 (Memorandum Opinion) at 3 ("The Court agrees with the approach set out in R&R 3").

Bellwether and non-Bellwether cases.  Defendants' proposal is unworkable and inconsistent with this Court's Orders prioritizing the Bellwethers and, the Federal Rules of Civil Procedure.

The Federal Rules contemplate a separate deposition for every case.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii).  Here, there are dozens of different cases in this MDL, relating to different drugs, different time periods, and implicating different combinations of individuals and companies.  For example, the States have filed three large but distinct multi-drug Complaints: (1) the "Heritage Complaint," focusing on the conduct of Heritage and its coconspirators to fix prices and allocate markets relating to 15 drugs; (2) the "Teva Complaint," focusing on the conduct of Teva and its "High Quality" competitors with respect to 114 different drugs; and (3) a "Dermatology Complaint," focusing on the conduct of a core group of manufacturers of topical products (including, for example, Sandoz, Taro and Perrigo) and their coconspirators relating to 80 additional, separate drugs.  Although they implicate many of the same corporate defendants, these three cases relate to different generic drugs and distinct combinations of competitors.  Had these three cases not been consolidated into this MDL, the States would be entitled under the Federal Rules to take depositions of individuals relating to their involvement in each separate case.  Similarly, the Class Plaintiffs have each filed more than a dozen separate individual drug cases, as well as different multi-drug overarching conspiracy cases relating to different generic drugs, which do not all overlap exactly with the cases brought by the States.[2]  Each of these Plaintiffs has a due process right to pursue their own theory of the case, and the creation of this MDL does not abridge those rights.

---

[2] Certain Direct Action Plaintiffs have pled a single conspiracy involving all of the drugs covered by the three State Complaints and the individual Class Plaintiffs' individual drug cases.  Other DAPs have each brought their own actions.  Some mirror the cases brought by the States, while others do not.  Under the Federal Rules, each of these plaintiffs or plaintiff groups would be entitled to separate depositions of individuals having testimony relevant to their respective Complaints.

Here, however, Plaintiffs do not seek separate depositions for each filed case, nor do they seek discovery that would be cumulative or duplicative.  Rather, Plaintiffs are merely proposing two depositions for those individuals who may have testimony relevant to both the Bellwether cases and the non-Bellwether cases: (1) a first, prioritized deposition relating specifically to the Bellwether cases, and (2) a second deposition relating to everything else.  Plaintiffs' approach will allow the Bellwether cases to proceed to trial quickly while preserving the benefits of consolidated discovery contemplated by the MDL.  This Court has broad discretion and authority to issue such an Order.  *See* Advisory Committee Notes to Fed. R. Civ. P. 30(b)(2) ("In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided").

This is a matter of fundamental importance to Bellwether scheduling and is a key assumption that underlies each of Plaintiffs' respective Bellwether proposals.  If Plaintiffs are not allowed to prioritize the Bellwether cases and are required to depose individuals only once, the schedules proposed by the parties are simply not workable and would have to be substantially revised to account for the significant additional time required to prepare for depositions relating to a broader scope of conduct.  There will be some individuals who have testimony relevant to all three of the States' Complaints (as well as other cases brought by private plaintiffs); other individuals will have relevant testimony relating to at least two of the three.  Compounding the problem is that document production relating to some of the non-Bellwether actions (including the States' recently-filed Dermatology Complaint) will occur on a different (and much later) schedule than the earlier-filed Bellwether cases – further delaying the Plaintiffs' ability to depose individuals with regard to that conduct if they can only be deposed once.  Requiring Plaintiffs to wait, therefore, and depose those individuals only once on a significantly broader scope of

conduct, would fundamentally defeat the purpose of the Bellwethers by preventing those cases from moving forward first.

## ARGUMENT

I.     <u>The Federal Rules allow individuals to be deposed separately in different cases.</u>

Federal Rule of Civil Procedure 26(b)(1) permits a party in any filed case to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 30 governs depositions and states in pertinent part:

> (a) When a Deposition May Be Taken.
>
> (1) *Without Leave.* A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2). The deponent's attendance may be compelled by subpoena under Rule 45.
>
> (2) *With Leave.* A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2):
>
> (A) if the parties have not stipulated to the deposition and:
>
> (i) the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants;
>
> (ii) the deponent has already been deposed ***in the case***;
> ….

Fed. R. Civ. P. 30(a) (emphasis added).  Thus, pursuant to Rule 30(a), "[a] party may, by oral questions, depose *any person*, including a party, *without leave of court*."  Fed. R. Civ. P. 30(a) (emphasis added). Importantly, Rule 30 provides that leave of court is only required to depose an individual if the deponent has already been deposed *in that case.*  The Federal Rules therefore contemplate that an individual can be deposed separately in different cases if he or she has testimony relevant to different cases.  *See, e.g., American Airlines, Inc. v. Ltd.*, No. 4:11-cv-244-Y, 2012 WL 12884824, *2 (N.D. Tex. Sept. 19, 2012) (finding that Rule 30(a)(2)(A)(ii), requiring leave of court to conduct a second deposition, "is only applicable when a party seeks to

4

conduct a second deposition of the same witness in the exact same federal case" and does not apply "where a party is seeking to depose a witness more than once due to the fact that there are two separate but related cases occurring in two different courts").

The creation of this MDL does not abridge those substantive rights.  *See, e.g., In re Asbestos Products Liab. Litig. (No. VI)*, 718 F.3d 236, 243 (3d Cir. 2013) (finding that "the specific form of MDL proceedings does not alter the substantive rights of the litigants").  Here, however, the Plaintiffs are not seeking to depose any individual more than once *regarding the same conduct*.  Rather, they are merely seeking to stage depositions relating to the Bellwether actions first, and reserve depositions relating to non-Bellwether actions until later in the process, even if that means that certain individuals will be deposed more than once in this MDL.  Given the Court's stated goal of prioritizing discovery in the Bellwether actions, Plaintiffs believe that this is the most expeditious and appropriate way to proceed.

II.   <u>Limiting Plaintiffs to only one deposition of any witness will substantially delay the progress of the Bellwether actions.</u>

Many individuals will have testimony relevant to conduct in multiple different cases in this MDL.  Limiting the Plaintiffs to one deposition covering all the alleged conduct – as Defendants seek to do – would require waiting until all documents have been produced regarding all of the non-Bellwether Complaints. This would impose very significant delay, as the great majority of Defendants have not even responded to Plaintiffs' July 2020 document requests, and meet and confers have yet to commence to discuss additional custodians or search terms (among other topics), let alone Defendants' anticipated document production timeline. Depositions cannot move forward on non-Bellwether claims when Defendants have yet to produce documents relevant to those claims.

Moreover, a "one deposition" limitation would require Plaintiffs to depose Defendants' witnesses on a potentially much broader scope of conduct.  This also would substantially delay meaningful progress in the Bellwether cases.  For example:

- **Armando Kellum**:  Kellum is a named Defendant in the States' Teva Complaint, where he has been implicated in conduct relating to at least 29 drugs.  *See* Amended Complaint, 2:19-cv-2407-CMR, Dkt. 106 (the States' "Teva Complaint"), Count 27, at 390-91.  But Kellum also plays a prominent role in non-Bellwether actions.  For example, Kellum is named as an individual Defendant in the States' Dermatology Complaint, where he has been implicated in conduct relating to 54 additional and different drugs.  *See* Redacted Complaint, 2:20-cv-03539-CMR, Dkt. 1, (States' "Dermatology Complaint"), Count 23 at 469-71.  Kellum will also have testimony relevant to the States' Heritage Complaint, where he was the Vice President of Sales and Marketing at Sandoz during the time of the alleged conduct, and directly supervised the Sandoz employee who allegedly colluded with Heritage, Glenmark and Aurobindo.  *See* Plaintiff States' Consolidated Amended Complaint ("Heritage Complaint"), 2:17-cv-3768-CMR, Dkt. 15 at 76-80.[3]  Kellum, like other individuals noted below,

---

[3] Kellum has pleaded guilty with respect to a much narrower scope of conduct in the context of the DOJ criminal investigation, relating to an ongoing understanding between Sandoz and Taro to fix prices and allocate markets on various products, including but not limited to Clobetasol (one of the individual drug Bellwether cases) and Nystatin Triamcinolone Cream (part of the States' Dermatology Complaint, among others).  *See* 2:20-cr-00065-RBS, Dkt. 1 (Information) and Dkt. 12 (Guilty Plea).  By operation of law, a guilty plea merely defines the minimum parameters of a conspiracy actionable under Section One of the Sherman Act.  *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664-65 (7th Cir. 2004) ("That DOJ has not moved against the alleged HFCS price-fixing conspiracy [does not mean] there must not have been one.  The Justice Department has limited resources…" and different evidentiary standard); *In re Packaged Ice Antitrust Litigation*, 723 F. Supp. 2d 987, 1011-12 (E.D. Mich. 2010)

will also have relevant information regarding the conduct as alleged in cases filed by non-State plaintiffs.

- **James Grauso**:  Grauso is a named Defendant in the States' Teva Complaint, where he has been implicated in conduct relating to 3 drugs while a senior executive at Defendant Aurobindo.  *See* States' Teva Complaint, Count 24, at 384-86.  Like Kellum, Grauso plays an even larger role in other, non-Bellwether cases.  For example, Grauso is named as an individual Defendant in the States' Dermatology Complaint, where he has been implicated in conduct relating to 14 additional and different drugs while an executive at both G&W and Aurobindo. *See* States' Dermatology Complaint, Count 21, at 465-67.  Grauso is also implicated directly in the States' Heritage Complaint, where he is alleged to have colluded with competitors Heritage and Aurobindo with respect to the drug Fosi-HCTZ while he was a senior executive at Glenmark.  *See* States' Heritage Complaint at 76-80 and Count 10.

- **Ara Aprahamian**:  Aprahamian is a named Defendant in the States' Teva Complaint, where he has been implicated in conduct relating to 17 drugs while a senior executive at Taro.  *See* States' Teva Complaint, Count 19, at 374-375. Aprahamian is, however, also named as an individual Defendant with regard to a much broader scope of conduct in the States' Dermatology Complaint, where he

---

("civil litigation" cannot be "circumscribed or defined by the boundaries of the criminal investigations"); *In re Vitamins Antitrust Litigation*, Case No. 99-197, 2000 WL 1475705, at *11 (D.D. C. May 9, 2000) ("[T]he Court rejects the notion that the guilty pleas and cooperation agreements and the class settlements foreclose a broader conspiracy.  Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention.") (citations omitted).

has been implicated in conduct relating to 43 additional and different drugs while an executive at both Actavis and Taro.  *See* States' Dermatology Complaint, Count 18 at 459-61.[4]

- **<u>Mitchell Blashinsky</u>**: Blashinsky, a former executive at Defendant Glenmark, will have testimony relevant to the States' Teva Complaint.  He is directly implicated in the collusion between Teva and Glenmark in May 2013 and is alleged to have communicated directly with Defendant Nisha Patel of Teva to fix prices on several drugs on which Teva and Glenmark overlapped, including Pravastatin.  *See, e.g.,* States' Teva Complaint, ¶ 604.  Blashinsky's role in the MDL, however, goes well beyond his conduct in the States' Teva Complaint.  Blashinsky is also named as an individual Defendant in the States' Dermatology Complaint, where he has been implicated on conduct relating to 8 additional and different drugs while an executive at two different companies, Taro and Glenmark, beginning at least as early as 2011.  *See* States' Dermatology Complaint, Count 19 at 461-63.

- **<u>Mike Dorsey</u>**:  Dorsey, a former National Account Director at Actavis, will have testimony relevant to all 3 of the States' Complaints.  He is alleged to have colluded directly with various competitors relating to different drugs in each Complaint.  *See* States' Heritage Complaint at 87-90 (Glyburide-Metformin) and 101-104 (Verapamil); States' Teva Complaint at 115-119 (Nortriptyline); States'

---

[4] Aprahamian has been indicted by DOJ with respect to various price fixing and market allocation agreements between Taro and competitors Sandoz and Teva, as well as making false statements to the FBI.  *See* 2:20-cr-00064-RBS, Dkt. 1.  The conduct subject to that indictment implicates both Bellwether and non-Bellwether cases alike.

Dermatology Complaint at 102-107 (Nystatin Ointment), 159-162 (Ciclopirox

Shampoo), 185 (Ammonium Lactate Cream and Lotion), 193 (Desonide Cream),

198-201 (Fluocinonide Solution), 221 (Clobetasol Cream and Lotion) and 399-

406 (Promethazine HCL Suppositories).

- **Michael Aigner**:  Aigner, a sales executive at Defendant Mylan, will also have testimony relevant to all 3 of the States' Complaints.  He is alleged to have colluded directly with various competitors relating to different drugs in each Complaint. *See* States' Heritage Complaint at 49-56 (Doxy DR), 62-67 (Doxy Mono), 80-81 (Glipizide-Metformin) and 101-04 (Verapamil); States' Teva Complaint at 47-48 (Enalapril), 296-303 (Clomipramine); States' Dermatology Complaint at 221, 232-36 (Phenytoin Sodium ER).

- **Erika Vogel-Baylor**:  Vogel-Baylor, a former executive at G&W Laboratories, will have limited but potentially important testimony relevant to the Bellwether actions.  Plaintiffs believe that Vogel-Baylor was directly involved in facilitating collusion between competitors Glenmark and Zydus relating to the drug Pravastatin, which is part of the States' Teva Complaint and one of the individual drug Bellwethers.  Vogel-Baylor's collusion with respect to Pravastatin, however, is dwarfed by her involvement in the non-Bellwether actions.  For example, Vogel-Baylor is named as an individual Defendant in the States' Dermatology Complaint, where she is implicated in conduct relating to 18 additional and different drugs.  *See* States' Dermatology Complaint, Count 26 at 476-78.

- **Daniel Lukasiewicz**:  Lukasiewicz, a former Corporate Account Manager at Zydus in 2013, will likely have testimony relevant to the collusion on Pravastatin

detailed in the States' Teva Complaint and the Class Plaintiffs' individual drug Pravastatin Bellwethers.  Lukasiewicz, however, left Zydus in November 2013 to join Heritage and was thereafter involved in much of the conduct alleged in the States' Heritage Complaint.  The States allege that while at Heritage Lukasiewicz directly colluded with competitors, including Defendant Jim Grauso (then at Glenmark).  *See* States' Heritage Complaint at 76-79.

- **Karen Strelau and Laura Short**:  Strelau and Short were both sales executives at Zydus in 2013 during the collusion on Pravastatin detailed in the States' Teva Complaint and the Class Plaintiffs' individual drug Pravastatin Bellwethers and thus will likely have testimony relevant to those Bellwether cases.  Strelau and Short, however, both left Zydus in late 2013 to join Defendant Citron Pharma LLC, where it is alleged that they colluded with Heritage regarding several drugs, including Glyburide and Fosi-HCTZ.  *See* States' Heritage Complaint at 76-80, 81-87.

    These are only a few examples of individuals with overlapping involvement in the cases in this MDL.  By no means is this an exhaustive list. [7]  As seen above, limiting Plaintiffs to one deposition of each individual, encompassing all of their conduct in all of the cases currently pending in this MDL, would require the parties to prioritize non-Bellwether cases and

---

[7] Additional examples include, but are not limited to Marc Falkin – a former Actavis executive and an individual Defendant in the States' Teva Complaint, who is also alleged to have colluded with several competitors in the States' Heritage Complaint.  Similarly, Kristy Ronco, a former Zydus executive, and Beth Hamilton, a former Apotex executive, will each have testimony relevant to both of the States' Teva and Heritage Complaints.  Robin Hatosy, a former Greenstone sales executive and individual Defendant in the States' Teva Complaint for her role in colluding with Defendant Teva, is also alleged to have colluded directly with Defendant Kellum of Sandoz and another competitor in the States' Dermatology Complaint.

would significantly delay the Bellwether proceedings.  Simply put, doing so would defeat the

purposes of having Bellwether actions in the first place.

III.    This Court has broad discretion to manage discovery in this MDL by requiring
        multiple depositions.

Case management is of the utmost importance in large MDL proceedings such as this

one, and MDL courts have even greater discretion than regular trial courts "to organize,

coordinate and adjudicate [their] proceedings."  *In re Guidant Corp. Implantable Defibrillators*

*Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007); *see also In re Phenylpropanolamine Prod.*

*Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) ("*In re PPA*") ("administering cases in

multidistrict litigation is different from administering cases on a routine docket …").  This is

particularly true with respect to managing discovery and taking actions designed to move the

cases "in a diligent fashion toward resolution by motion, settlement or trial."  *In re PPA*, 460

F.3d at 1232.

Here, this Court has ordered the parties to prioritize depositions in the Bellwether cases.

*See* Pretrial Order No. 105 ¶ 8.b ("Witnesses associated with bellwether case(s) or claims are to

take priority.")  It is within this Court's authority and discretion to Order that some individuals in

this MDL will need to be deposed twice relating to their roles in different cases, in order to

achieve the Court's stated goal of "determin[ing] a course that is reasonable and fair and 'will

promote the just and efficient conduct of' the cases constituting the MDL." July 13, 2020 Mem.

Op. at 1 (MDL Doc. 1442) (quoting 28 U.S.C. § 1407). Had the MDL's many constituent cases

not been centralized before this Court, these same witnesses would have been exposed to

potentially numerous depositions in different jurisdictions across the country.

In order to ensure that the Bellwether actions move forward as expeditiously as possible,

it is essential to prioritize Bellwether discovery by allowing Bellwether-related depositions to

proceed first.  This Court has the authority to order that certain individuals be required to sit for a

second, non-duplicative deposition relating to his or her conduct in different cases.  *See* 28

U.S.C. § 1407 ("The judge or judges to whom such actions are assigned . . . may exercise the

powers of a district judge in any district for the purposes of conducting pretrial depositions in

such coordinated or consolidated pretrial proceedings").  Not doing so would result in discovery

relating to all cases proceeding together at the same pace, which would defeat the purposes

behind a Bellwether.

## CONCLUSION

For the reasons outlined above, Plaintiffs respectfully request that in order to move the

Bellwethers cases to trial in an efficient and timely fashion, depositions relating to Bellwethers

be prioritized and that a second deposition of witnesses with information relating to other non-

Bellwether cases be allowed at a later date.

Dated: September 9, 2020                    Respectfully submitted,


By: */s/ Roberta D. Liebenberg*            By: */s/ Dianne M. Nast*
     Roberta D. Liebenberg                       Dianne M. Nast
FINE, KAPLAN AND BLACK, R.P.C.             NASTLAW LLC
One South Broad Street, 23rd Floor         1101 Market Street, Suite 2801
Philadelphia, PA  19107                    Philadelphia, PA  19107
215-567-6565                               215-923-9300
rliebenberg@finekaplan.com                 dnast@nastlaw.com

*Lead and Liaison Counsel for the*         *Lead and Liaison Counsel for the*
*End-Payer Plaintiffs*                     *Direct Purchaser Plaintiffs*



By: */s/ Jonathan W. Cuneo*                By: */s/ W. Joseph Nielsen*
     Jonathan W. Cuneo                           W. Joseph Nielsen
CUNEO, GILBERT & LADUCA LLP                Assistant Attorney General
4725 Wisconsin Ave. NW, Suite 200          State of Connecticut
Washington, DC  20016                      55 Elm Street
202-789-3960                               P.O. Box 120
jonc@cuneolaw.com                          Hartford, CT  06141-0120
                                           (860) 808-5040
*Lead Counsel for the*                     Joseph.Nielsen@ct.gov
*Indirect Reseller Plaintiffs*
                                           *Liaison Counsel for the States*


By: */s/ William J. Blechman*
William J. Blechman
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida  33131
(305) 373-1000
wblechman@knpa.com

*Counsel for the Kroger Direct Actions*
*Plaintiffs and Liaison Counsel for DAPs*