**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE |

**BRIEF IN SUPPORT OF DEFENDANTS' CASE MANAGEMENT ORDER
SCHEDULING DISCOVERY, MOTIONS, AND OTHER PROCEEDINGS TO BRING
THE BELLWETHER CASES TO TRIAL**

## <u>TABLE OF CONTENTS</u>

I.      Defendants' Proposed Schedule Should Be Adopted Because It is the Most Balanced and
        Reasonable .................................................................................................................1

        A.      Class Certification Sur-Replies.................................................................2

        B.      Merits Experts for Bellwether Cases ........................................................4

        C.      End of Fact Depositions.............................................................................6

        D.      Summary Judgment for Bellwether Cases .................................................7

        E.      Trial Dates for Bellwether Cases ..............................................................8

II.     The Court Should Adopt Defendants' Proposal for a Staggered Class Briefing Schedule
        in the Interest of Judicial Efficiency ..........................................................................9

III.    Conclusion ...................................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re American Medical Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ..................................................................................................5

*In re Domestic Drywall Antitrust Litig.*,
  322 F.R.D. 188 (E.D. Pa. 2017)..............................................................................................3

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)..................................................................................................................9

*In re General Motors LLC Ignition Switch Litig.*,
  14-MD-2543 (JMF), 2017 WL 2880882 (S.D.N.Y. July 5, 2017) ...........................................3

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008).....................................................................................................9

*In re Plastics Additives Antitrust Litig.*,
  No. 03-CV-2038, 2010 WL 3431837 (E.D. Pa. Aug. 31, 2010) ........................................9, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010)..............................................................................................3

### OTHER AUTHORITIES

Fed R. Civ. P. 23 ...........................................................................................................................9, 12

Defendants' proposed bellwether schedule (Doc. No. 1498) presents an aggressive schedule for adjudicating the complex legal and factual issues involved in the bellwether cases. Notably, many of the disputes presented herein are the result of Plaintiffs' last minute change of strategy.  Specifically, after extensive negotiations between Defendants, End-Payer Plaintiffs ("EPPs"), and State Attorneys General ("States") regarding a joint proposed schedule, Defendants thought the EPPs, States, and Defendants would be submitting a joint, agreed-upon schedule with only two open issues.[1]  Specifically, the EPP/States were prepared to accept the positions outlined in Section I, however, on the morning of the would-be joint filing, the EPPs/States unexpectedly and suddenly withdrew their support for the joint submission, thus necessitating this more extended list of issues presented to the Court.

Section I below addresses the scheduling issues on which there had been agreement with the EPPs and States and explains why the Court should adopt the schedule and approach that would have been jointly submitted.  Section II addresses Defendants' proposal for a staggered briefing schedule for the class certification motions to be filed in the three different sets of individual product bellwether cases.  For the reasons outlined herein, Defendants' proposed schedule, including its proposed staggering of class certification motions, should be adopted.

I.      **Defendants' Proposed Schedule Should Be Adopted Because It is the Most Balanced and Reasonable.**

Defendants' proposed schedule is largely the same as that previously agreed upon with

---

[1] Defendants and EPPs/States met and conferred on numerous occasions to negotiate a proposed joint schedule.  Direct Purchaser Plaintiffs ("DPPs") refused to participate.  After much back-and-forth, Defendants and EPPs/States reached an agreement, with the caveat that both sides would submit briefs to the Court on two issues:  (i) whether the briefing schedule for class certification motions in each of the three different sets of individual product cases should be staggered as between products and (ii) whether witnesses would be subject to a single deposition for all cases in the MDL or be required to submit to additional depositions.  This second issue has remained open in the negotiations with the EPPs and the States and is the subject of a separate brief.

the EPPs/States.[2]  The EPPs/States, however, submitted a schedule with certain key differences, each of which is clearly prejudicial to the Defendants.  *First*, the EPPs/States omit the previously agreed upon right of Defendants to submit a sur-reply on the critical issue of class certification. *Second*, the EPPs/States unreasonably accelerate expert discovery and omit the previously agreed upon right of Defendants to depose Plaintiffs' experts on the merits in connection with any rebuttal reports, suggesting that Defendants should never be permitted to inquire into or challenge any rebuttal expert reports Plaintiffs may choose to submit.  Both of these omissions are fundamentally unfair to Defendants.  *Third*, Plaintiffs also omit the very modest additional time the parties had previously agreed to for completing the greater amount of discovery needed for the broader and more complex States' overarching conspiracy claims (as compared to the three sets of individual product cases).  *Fourth*, they unreasonably accelerate the timing of summary judgment motions.  The DPPs' proposal is unreasonable for these same reasons and even more so in other instances.

### A.    Class Certification Sur-Replies

The parties largely agree on the timing of class certification motions,[3] but two critical disputes remain: (a) whether Defendants will have the right to submit sur-replies (briefs after depositions of class Plaintiffs' rebuttal expert reports), and (b) whether the briefing on all of the

---

[2] The only changes were (1) the addition of deadlines by which class certification experts must be deposed, and (2) the addition of approximately two weeks to the date for responding to the complaints in the bellwether cases.  Under the schedule agreed to by the Defendants and the EPPs/States, responses would be due on October 15, 2020.  Defendants believe it would be difficult to meet that deadline, and given the lack of impact on any other date in the schedule, they have included a response date of November 1, 2020 in their proposed schedule.

[3] DPPs' proposal would unnecessarily accelerate motions by one month, as compared to the schedules submitted by Defendants and EPPs/States.

class certification motions in all three sets of individual product cases will be filed at one time or will instead be staggered by product.  Defendants address staggering in Section II below.

Defendants' proposed schedule provides for a sur-reply in each of the three sets of individual product cases on the critical issue of class certification.  That is consistent with this Court's general practice, which allows sur-replies without leave of court, Judge Cynthia M. Rufe Policies and Procedures, Civil Matters, Rule 7, and the EPPs previously agreed to that approach during negotiations regarding the joint proposed schedule.  But the EPPs and the DPPs now apparently contend that they should be free to submit a reply brief along with a rebuttal expert report, without providing Defendants any opportunity to respond.  That is fundamentally unfair, especially on such a critical issue as class certification.  *See In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 205 (E.D. Pa. 2017) (noting that "[w]hether or not antitrust impact can be proven on a classwide basis often hinges on . . . expert testimony").  Defendants agree that leave of Court would be required for Defendants to submit a responsive expert report, and have included that in their proposal.  But Defendants should be permitted to depose Plaintiffs' expert on any rebuttal expert report and to submit a responsive brief thereafter.  *See In re General Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2017 WL 2880882 at *2 (S.D.N.Y. July 5, 2017) (precluding the admission of evidence and data where Defendants lacked opportunity to depose its author); *In re TFT-LCD (Flat-Panel) Antitrust Litig.*, 267 F.R.D. 583, 608 (N.D. Cal. 2010) (same for declaration where Defendants lacked opportunity to depose declarant).  Permitting Defendants to submit sur-replies would not delay merits expert discovery or other subsequent events, including the dates by which the individual product cases would be ready for trial.

**B.     Merits Experts for Bellwether Cases**

There are at least three issues with Plaintiffs' merit expert deadlines: (1) the date for opening expert reports, (2) the time Defendants have to respond to the opening expert reports, and (3) Defendants' inability to depose Plaintiffs' rebuttal experts.

*First*, consistent with the prior agreement between Defendants, the EPPs, and the States, Defendants propose that Plaintiffs submit their merits expert reports on June 6, 2022.  However, the EPPs/States now propose submitting their merits expert reports one month earlier.  The DPPs propose submitting theirs six months earlier.  Defendants' proposal should be adopted, and Plaintiffs' proposals rejected.

The DPPs' proposal to submit their merits expert reports *six* months earlier, in January 2022, is particularly unworkable, as it would impose the burdens of simultaneous merits expert discovery, class certification briefing, and related class expert discovery.  Unlike the schedule proposed by the DPPs, Defendants' schedule provides the advantage of allowing merits expert discovery to proceed *after* class certification briefing has concluded,[4] including if the Court adopts Defendants' proposed staggering of class certification motions.  This will avoid imposing undue burdens on the parties.

Additionally, Defendants' schedule accommodates the significant delays that have occurred in the production of documents and data by the States, in particular (and potential discovery disputes reasonably anticipated given the disputes that have already occurred to date).  The Defendants served the States with document and data requests over two years ago, in *August 2018*, but as of now, the States have hardly produced any documents or data; remain vague in

---

[4] "Merits" expert discovery refers to discovery concerning the experts upon whom Plaintiffs are not relying for purposes of their class certification motions.

4

responding to Defendants' requests for clarity on the relief the States are seeking and the specific documents the States agree to produce; and admit that they *do not plan to substantially complete their productions until at least March 2021*.[5]  Defendants expect that the States' productions may be relevant not only to the States' claims but also to claims in the three sets of individual product bellwether cases.  With the States having stalled for so long on their productions, it is fundamentally unfair not to provide Defendants and their experts sufficient time to review and analyze the States' documents and data before expert discovery.  Thus, the Defendants' proposed June 6, 2022 start of merits expert reports is the earliest realistic start date for expert reports in light of the States' current and continuing delays in producing their discovery.

**Second**, Plaintiffs have unreasonably shortened the amount of time Defendants would have for filing their opposition expert reports.  Indeed, Plaintiffs' proposals would provide Defendants less time for Defendants' opposition expert reports (59 days) than Plaintiffs have for subsequent rebuttal reports (62 days).  That is clearly prejudicial to Defendants, who should have just as much time for their opposition expert reports as Plaintiffs did for their initial expert reports, and certainly more time than Plaintiffs have for their rebuttal expert reports.

**Finally**, Plaintiffs' proposed schedules would deny Defendants the opportunity to depose Plaintiffs' rebuttal experts about their rebuttal expert reports.  Notably, during negotiations, EPPs/States had previously agreed to allow Defendants the opportunity to depose Plaintiffs' rebuttal experts.  This makes sense of course: Defendants should be allowed to depose all of Plaintiffs' experts regarding any report they submit to the Court, so that Defendants can

---

[5] Defendants acknowledge that the States have raised issues about their ability to comply with discovery due to their burdens arising from the COVID-19 pandemic, but that does not justify imposing an undue burden on the Defendants and denying them the time needed to conduct discovery and present their defenses.

understand the bases for Plaintiffs' experts' opinions and challenge them.  To allow anything less would be a violation of Defendants' due process rights.  *Cf.*, *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996).  Allowing this one potential additional round of depositions would not delay the dates by which these cases would be ready for trial.

### C.   End of Fact Depositions

The parties essentially agree on when fact depositions begin but disagree on when those depositions must be completed.  Defendants propose that depositions for the three sets of individual product cases must be completed by June 2, 2022, and depositions for the States' overarching conspiracy claims must be completed by July 2, 2022.  Plaintiffs, on the other hand, propose that all depositions be completed months earlier, by April 25, 2022.

The modest additional time Defendants propose for completing depositions – June 2, 2022 for the individual product cases, and July 2, 2022 for the States' case – makes much more sense given the number of depositions that need to be completed and complexity of the issues.  For example, the States' overarching conspiracy claims are far broader than the claims at issue in the individual product cases.  The States' overarching conspiracy claims involve far more named plaintiffs, far more defendants, and far more products.[6]  Thus, more depositions will be required for the States' case than in the three sets of individual product cases, and more time will be needed to conduct those depositions.  Indeed, the States have represented that they intend to take *hundreds* of depositions, some of which may be of third parties whose schedules are largely outside of the parties' control.  Moreover, Defendants' proposed deadline for completing depositions would not delay the date by which the States' case would be ready for trial.

---

[6] The States' claims involve fifty-three plaintiffs, thirty-seven defendants, and one hundred and thirty products, while the individual product cases involve at most eight plaintiffs (in the EPP's Clobetasol complaint), eleven defendants (in the EPP's Clobetasol complaint), and one product.

### D.        Summary Judgment for Bellwether Cases

Defendants propose that all summary judgment motions be filed on or before January 31, 2023, and briefing conclude by June 2023.  As an initial matter, given the magnitude of the cases involved, a June 2023 end date is much more sensible than Plaintiffs' proposed December 2022 date.  When considering the volume of fact depositions, exchange of millions of documents, and dozens of experts, three months—which Plaintiffs propose—is inadequate and prejudices Defendants.  This is especially so because Defendants agreed to shorten their time for class certification briefing and merits experts discovery in order to have more time for summary judgement briefing.  Defendants' proposal of six months to complete summary judgment briefing is a balanced compromise that will allow the parties time to sift through the material to make cogent arguments that will benefit the Court.

Additionally, Defendants' proposal is consistent with the agreement previously reached with the EPPs/States, and also with the reasonable scheduling of discovery and class certification considering, as the States themselves always tout, the sheer size of their Teva-centric overarching conspiracy case.  The EPPs/States' proposed deadline of September 30, 2022 short-changes expert discovery and is dependent on denying Defendants the right to depose the EPPs/States' experts with respect to rebuttal reports.

DPPs' proposed deadline of June 7, 2022 is even worse.  It overlaps with merits expert discovery (discovery that is often relevant and relied upon at the summary judgment stage) and is likewise dependent on denying Defendants the right to depose DPPs' experts about their rebuttal reports.  Moreover, DPPs' proposed schedule provides Defendants insufficient time to respond to any summary judgment motions filed by DPPs.  While Defendants and EPPs/States recognize at least two months should be provided to respond to summary judgment motions in such complex cases, the DPPs provide only half that time.  And DPPs again provide less time for oppositions

than for replies.  This nonsensical approach should be rejected for the same reasons it should be rejected in merits expert discovery.

Additionally, EPPs/States' proposed schedule for summary judgment briefing makes no mention of *Daubert* motions.  Defendants assume that this was an inadvertent drafting oversight and that the summary judgment deadlines would apply to *Daubert* motions as well, but if not, Defendants oppose this omission.  Defendants should have the opportunity to challenge any of Plaintiffs' experts.

### E.    Trial Dates for Bellwether Cases

Although Defendants believe there is no need to address trial scheduling this far in advance, the DPPs' proposal is particularly problematic.  Specifically, the DPPs propose a single trial for all three of their different individual product cases, even though they each involve different parties, different products, and different alleged conspiracies.  The DPPs also assume that their claims will be tried separately from EPPs' and IRPs', even with respect to identical claims involving the same parties, same product, and same alleged conspiracy.  DPPs' internally inconsistent proposal should be rejected.  Each set of individual product cases should be tried separately, and each trial should include all of the class plaintiffs (DPPs, IRPs,[7] and EPPs), so

---

[7] As Defendants addressed in prior briefing, *all* class cases for the three individual product bellwether cases should be litigated on the same schedule, including the IRP cases.  It would be inefficient and could lead to highly inconsistent results to allow the litigation of the DPPs' claims and the EPPs' claims while excluding the identical IRPs' claims based on the same alleged conspiracies concerning the same products.  The claims of all three sets of class plaintiffs depend upon an alleged overcharge to the DPPs. The IRPs and EPPs both allege the DPPs passed on that alleged overcharge, but each alleges they (rather than the other) absorbed that overcharge.  The inclusion of the IRPs is essential to achieve the Court's purpose in selecting bellwether cases, to achieve the purposes of the MDL process, and to avoid undue and highly unfair prejudice to the Defendants.  *See* Dkt. Nos. 1479, 1487.

that all class claims as to the particular individual product can be resolved at one time to

maximize efficiency and avoid inconsistent rulings.[8]

## II.   The Court Should Adopt Defendants' Proposal for a Staggered Class Briefing Schedule in the Interest of Judicial Efficiency.

In order to maximize efficiency, avoid overburdening the parties and the Court, and to

allow time for the careful consideration and rigorous analysis required for each class certification

motion, the briefing on plaintiffs' motions for class certification in each of the three sets of

individual product cases should be staggered.  Under Defendants' proposal, all class certification

motions as to one bellwether product would be filed on the same day; all class certification

motions as to a second bellwether product would be filed one month later; and all class

certification motions as to the third bellwether product would be filed one month after that.  This

approach would maximize judicial efficiency: the Court would consider all motions against a

particular set of Defendants, involving a particular alleged conspiracy, as to a particular product,

all likely involving the same evidence, at the same time.  Submitting all class certification

motions (6 if only the DPPs and EPPs; 9 if the IRPs are included) and associated expert reports

at the same time would needlessly overwhelm the parties and the Court and prejudice the

Defendants.

Plaintiffs face significant challenges to certifying any class that will survive the

"rigorous analysis" applied to *each* motion prior to granting class certification.  *Gen. Tel. Co. of

the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d

305, 318 (3d Cir. 2008).  For example, for all of their antitrust claims, Plaintiffs must prove

---

[8] While the parties propose differing dates for pretrial conferences, Defendants submit that the ultimate dates will likely depend on the Court's timing in ruling on class certification and summary judgment motions.

antitrust injury or impact. *In re Hydrogen Peroxide*, 552 F.3d at 311. To certify a class, Plaintiffs must show that each proposed class is comprised of only those who have been injured by the alleged conspiracy and therefore have antitrust standing. Proposed classes that contain a not insubstantial number of uninjured plaintiffs fail under Rule 23. *Id.* Moreover, Plaintiffs must demonstrate the ability to demonstrate antitrust impact using evidence that is common to the class. *Id.* Yet, in the generic pharmaceutical industry, pricing is individually negotiated. Thus, while some putative class members may have seen an increase in prices following the alleged conspiracy as to the product at issue in any given case, others may have seen no increase at all in what they paid – and all must show that the price they paid was inflated *as a result of* the alleged conspiracy. *See In re Plastics Additives Antitrust Litig.*, No. 03-CV-2038, 2010 WL 3431837, at *6, 13, 19 (E.D. Pa. Aug. 31, 2010) (denying class certification because, among other reasons, "the prices actually paid by some customers . . . have no relationship with Defendants' price increases"; "individual class members did have an opportunity to avoid paying any increased prices caused by the alleged conspiracy"; and "unrefuted evidence shows that some class members suffered impact while others did not"). Given the complexity of the individual markets and the antitrust injury analysis, an individualized analysis of each separate individual product will be critical to resolution of the class certification issues.

The significant and fundamental differences between each of the individual product cases weigh in favor of staggering class certification briefing. ***First***, and most significantly, each set of individual product cases involves an entirely different alleged conspiracy, each of which is

independent of the other two.[9]  Indeed, there is no allegation that the existence of any of these

three alleged conspiracies, the fact or amount of damages caused by the alleged conspiracy, and

whether a class can ultimately be certified in any one of these three sets of cases is at all

dependent on the other two.

*Second*, and at a more granular level, each set of individual product cases involves a

different product, and hence a different market.  Clobetasol "is a high-potency prescription

corticosteroid used in the treatment of various skin disorders including eczema, psoriasis,

dermatitis, and vitiligo," DPP Clobetasol Compl. ¶ 5, ECF No. 73, while pravastatin is "a lipid-

lowering compound [used] to reduce cholesterol and lower the risk of stroke, heart attack, and

other heart complications," DPP Pravastatin Compl. ¶ 5, ECF No. 67, and clomipramine is a

"prescription oral tricyclic antidepressant used to treat obsessive compulsive disorder, panic

disorder, major depressive disorder, and chronic pain," DPP Clomipramine Compl. ¶ 5, ECF No.

60.  These products have little in common.  The suppliers, retailers, and consumers of these

products will obviously vary substantially, as will the availability of substitute products, pricing,

and other essential factors.

*Third*, the Defendants named in each case vary, and most of them are only named in one

of the three cases.  *Compare* DPP Clobetasol Compl. ¶ 1, ECF No. 73 (Actavis Holdco U.S.,

Inc.; Akorn, Inc.; Fougera Pharmaceuticals Inc.; Hi-Tech Pharmacal Co., Inc.; Morton Grove

Pharmaceuticals, Inc.; Perrigo New York, Inc.; Sandoz Inc.; Taro Pharmaceuticals U.S.A., Inc.;

and Wockhardt USA LLC), *with* DPP Pravastatin Compl. ¶ 1, ECF No. 67 (Apotex Corp.;

---

[9] While the States' Teva-centric overarching conspiracy complaint alleges a broad, industry wide
conspiracy concerning over 100 products (weighing strongly in favor of a single deposition of each
witness), each of the three sets of individual product bellwether cases alleges a far more limited and
independent conspiracy involving just a single and completely different product (weighing heavily in
favor of staggering the class certification motions in those three sets of cases).

Glenmark Pharmaceuticals Inc., USA; Lupin Pharmaceuticals, Inc.; Sandoz Inc.; Teva Pharmaceuticals USA, Inc.; and Zydus Pharmaceuticals (USA), Inc.), *and* DPP Clomipramine Compl. ¶ 1, ECF No. 60 (Mylan Inc.; Mylan Pharmaceuticals Inc.; Sandoz Inc.; and Taro Pharmaceuticals USA, Inc.).

*Fourth*, the alleged class period for the clobetasol complaint differs from that of the pravastatin and clomipramine complaints.  The alleged class period in the clobetasol case spans from June 2014 until present day, DPP Clobetasol Compl. ¶ 7, ECF No. 73, while the alleged class periods for the pravastatin and clomipramine complaints begin over a year earlier, in May 2013, DPP Pravastatin Compl. ¶ 7, ECF No. 67, DPP Clomipramine Compl. ¶ 7, ECF No. 60.

*Finally*, the allegations in each of the three cases are based on different sets of facts.  For example, they each allege separate communications among certain specific (but differing) Defendants, each of whom supplied the particular product with respect to pricing and sale of that particular product to certain customers of that particular product.   Likewise, each set of cases alleges different impacts on prices at different time periods for different Defendants.  *Compare, e.g.*, DPP Pravastatin Compl. ¶¶ 65-86 *with* DPP Clobetasol Compl. ¶¶ 73-95.

These differences highlight the need for each set of individual product cases to proceed on a staggered basis, so that the Court can conduct a "rigorous analysis" of each class certification motion filed for each individual product.  Indeed, in selecting the clobetasol, clomipramine, and pravastatin cases as bellwethers, this Court implicitly recognized the differences between these cases.  As this Court noted in adopting the approach set out by Special Master David H. Marion's Report and Recommended Order on the bellwether case selection, the approach "will require Plaintiffs to prove that they can meet the standards for class certification under Rule 23 as to *several individual drug conspiracies*, and also explore the merits of an

overarching conspiracy case that involves many different Defendants and numerous drugs." Mem. Op. 3, ECF No. 1442.  The Court's selection of three sets of individual product bellwether cases, each for a different product, suggests that each case should be considered separately on its own individual merits to assess the standards for class certification under Rule 23.  A staggered schedule will best organize the cases and class certification motions to allow the Court to engage in the requisite "rigorous analysis."

Any efficiencies that Plaintiffs attribute to their proposed schedule can still be achieved under Defendants' proposed schedule.[10]  For example, in prior discussions, EPPs indicated that they may use the same expert and submit one combined report for all three of their individual product bellwether cases, and would like to avoid having three duplicative depositions of that expert over that same report.  Defendants do not oppose this and made clear they were willing to depose such an expert one time over a single report. Defendants would only seek to ensure that they are provided sufficient time to depose the expert for purposes of evaluating his or her opinions assessing the separate evidence pertaining to each of the three individual product cases.

## III.   Conclusion

For the foregoing reasons, Defendants respectfully request that the Court adopt Defendants' proposed schedule and stagger the briefing on class certification motions in the three sets of individual product bellwether cases.

---

[10] Plaintiffs have not identified any MDL case that has similarly required class certification briefing and expert reports for multiple classes at the same time.

Dated:  September 9, 2020

Respectfully submitted,

*/s/ Steven F. Cherry*
Steven F. Cherry
April N. Williams
Claire Bergeron
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
april.williams@wilmerhale.com
claire.bergeron@wilmerhale.com

James W. Matthews
Katy E. Koski
John F. Nagle
**FOLEY & LARDNER LLP**
111 Huntington Avenue
Boston, Massachusetts 02199
Tel:  (617) 342-4000
Fax:  (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
**FOLEY & LARDNER LLP**
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel:  (414) 271-2400
Fax:  (414) 297-4900
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Terry M. Henry
Melanie S. Carter
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Tel: (215) 569-5644
Fax: (215) 832-5644

*Counsel for Apotex Corp.*

*/s/ Sheron Korpus*
Sheron Korpus
Seth A. Moskowitz
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com

*Counsel for Actavis Holdco U.S., Inc. and*
*Actavis Pharma, Inc.*

*/s/ Steven A. Reed*
Steven A. Reed
R. Brendan Fee
Melina R. DiMattio
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: +1.215.963.5000
Facsimile:  +1.215.963.5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com
melina.dimattio@morganlewis.com

Wendy West Feinstein
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA 15219-6401
Telephone: +1.412.560.7455
Facsimile:  +1.412.560.7001
wendy.feinstein@morganlewis.com

*Counsel for Glenmark Pharmaceuticals Inc., USA*

 */s/ Gerald E. Arth*

Gerald E. Arth
Ryan T. Becker
**FOX ROTHSCHILD LLP**
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel.: (215) 299-2000
Fax: (215) 299-2150
garth@foxrothschild.com
rbecker@foxrothschild.com

George G. Gordon
Stephen D. Brown
Julia Chapman
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104-2808
Tel.: (215) 994-2382
Fax: (215) 655-2240
george.gordon@dechert.com
stephen.brown@dechert.com
julia.chapman@dechert.com

*Counsel for Lannett Company, Inc.*

*/s/ John E. Schmidtlein*

John E. Schmidtlein
Sarah F. Kirkpatrick
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com
skirkpatrick@wc.com

*Attorneys for Par Pharmaceutical, Inc.*

*/s/ Jason R. Parish*

Jason R. Parish
Martin J. Amundson
**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW
Washington, D.C. 20006
Telephone: (202) 452-7900
jason.parish@bipc.com
martin.amundson@bipc.com

Bradley Kitlowski
**BUCHANAN INGERSOLL & ROONEY PC**
Union Trust Building
501 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 562-8800
bradley.kitlowski@bipc.com

*Counsel for Zydus Pharmaceuticals (USA) Inc.*

*/s/ Saul P. Morgenstern*

Saul P. Morgenstern
Margaret A. Rogers
**ARNOLD & PORTER
  KAYE SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
saul.morgenstern@arnoldporter.com
margaret.rogers@arnoldporter.com

Laura S. Shores
**ARNOLD & PORTER
  KAYE SCHOLER LLP**
601 Massachusetts Avenue
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
laura.shores@arnoldporter.com

*Counsel for Sandoz Inc. and Fougera Pharmaceuticals Inc.*

*/s/ Stacey Anne Mahoney*
Stacey Anne Mahoney
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001
stacey.mahoney@morganlewis.com

*Counsel for Breckenridge Pharmaceutical, Inc.*

*/s/ Chul Pak*
Chul Pak
**WILSON SONSINI GOODRICH & ROSATI, PC**
1301 Avenue of the Americas 40th Floor
New York, New York 10019
Tel: (212) 497-7726
Fax: (212) 999-5899
cpak@wsgr.com

Seth C. Silber
Jeffrey C. Bank
**WILSON SONSINI GOODRICH & ROSATI, PC**
1700 K Street, NW Fifth Floor
Washington, DC 20006
Tel: (202) 973-8824
Fax: (202) 973-8899
ssilber@wsgr.com
jbank@wsgr.com

Adam K. Levin
Benjamin F. Holt
Justin W. Bernick
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
adam.levin@hoganlovells.com
benjamin.holt@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Mylan Inc,. Mylan Pharmaceuticals, Inc., UDL Laboratories, Inc., and Mylan N.V*

*/s/ Erik T. Koons*
John M. Taladay
Erik T. Koons
Stacy L. Turner
Christopher P. Wilson
**BAKER BOTTS LLP**
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
john.taladay@bakerbotts.com
erik.koons@bakerbotts.com
stacy.turner@bakerbotts.com
christopher.wilson@bakerbotts.com

Lauri A. Kavulich
Ann E. Lemmo
**CLARK HILL PLC**
2001 Market St, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
Facsimile: (215) 640-8501
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
**CLARK HILL PLC**
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
Facsimile: (412) 394-2555
lfouse@clarkhill.com

*Counsel for Sun Pharmaceutical Industries, Inc., Mutual Pharmaceutical Company, Taro Pharmaceutical Industries, Ltd., and Taro Pharmaceuticals U.S.A., Inc.*

*/s/ J. Gordon Cooney, Jr.*
J. Gordon Cooney, Jr.
John J. Pease, III

Alison Tanchyk
William T. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

*Counsel for Teva Pharmaceuticals USA,*
*Inc. and Pliva*

/s/ Leiv Blad
Leiv Blad
Zarema Jaramillo
Meg Slachetka
**LOWENSTEIN SANDLER LLP**
2200 Pennsylvania Avenue
Washington, DC 20037
Tel.: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
mslachetka@lowenstein.com

*Attorneys for Lupin Pharmaceuticals, Inc.*

/s/ Raymond A. Jacobsen, Jr.
Raymond A. Jacobsen, Jr.
Paul M. Thompson
Lisa A. Peterson
**MCDERMOTT WILL & EMERY LLP**
500 N. Capitol St., NW

Washington, D.C. 20001
202-756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lpeterson@mwe.com

Nicole L. Castle
**MCDERMOTT WILL & EMERY LLP**
340 Madison Ave.
New York, NY 10173
212-547-5400
ncastle@mwe.com

*Counsel for Amneal Pharmaceuticals, Inc.*
*and Amneal Pharmaceuticals LLC, and*
*Impax Laboratories, Inc.*

/s/ Ilana H. Eisenstein
Ilana H. Eisenstein
Ben C. Fabens-Lassen
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3300
Fax: (215) 656-3301
ilana.eisenstein@dlapiper.com
ben.fabens-lassen@dlapiper.com

Edward S. Scheideman
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Tel: (202) 799-4000
Fax: (202) 799-5000
edward.scheideman@dlapiper.com

*Counsel for Pfizer Inc. and*
*Greenstone, LLC.*

/s/ Robin D. Adelstein
Robin D. Adelstein
Mark A. Robertson
Gerald A. Stein
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas

New York, New York 10019
Tel.: (212) 318-3000
Fax: (212) 808-3400
robin.adelstein@nortonrosefulbright.com
mark.robertson@nortonrosefulbright.com
gerald.stein@nortonrosefulbright.com

*Counsel for Valeant Pharmaceuticals North
America LLC,
Valeant Pharmaceuticals International
and Oceanside Pharmaceuticals, Inc.*

*/s/ Anthony C. Porcelli*
Anthony C. Porcelli
**POLSINELLI PC**
150 North Riverside Plaza, Suite 3000
Chicago, IL 60606
Tel: (312) 819-1900
Fax: (312) 819-1910
aporcelli@polsinelli.com

Amy D. Fitts
**POLSINELLI PC**
900 w. 48TH Place, Suite 900
Kansas City, MO 64112
Tel: (816) 753-1000
Fax: (816) 222-0425
afitts@polsinelli.com
*Counsel for Akorn, Inc.,
Akorn Sales, Inc., and Hi-
Tech Pharmacal Co. Inc.*

*/s/ Jay P. Lefkowitz*
Jay P. Lefkowitz, P.C.
Devora W. Allon, P.C.
Alexia R. Brancato
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
(212) 909-3344
lefkowitz@kirkland.com

devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Counsel for Upsher-Smith Laboratories,
L.L.C.*

*/s/ William A. Escobar*
William A. Escobar
Damon W. Suden
Clifford E. Katz
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
wescobar@kelleydrye.com
dsuden@kelleydrye.com
ckatz@kelleydrye.com

*Counsel for Wockhardt USA LLC and
Morton Grove Pharmaceuticals, Inc.*

*/s/ J. Clayton Everett, Jr.*
Scott A. Stempel
J. Clayton Everett, Jr.
Tracey F. Milich
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 739-3000
Fax: (202) 739-3001
scott.stempel@morganlewis.com
clay.everett@morganlewis.com
tracey.milich@morganlewis.com

Harvey Bartle IV
Francis A. DeSimone
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Fax: (215) 963-5001

harvey.bartle@morganlewis.com
frank.desimone@morganlewis.com

*Counsel for Perrigo New York, Inc.*

/s/ L. Barrett Boss
L. Barrett Boss
Peter M. Ryan
S. Rebecca Brodey
Thomas J. Ingalls
**COZEN O'CONNOR P.C.**
1200 19th Street NW
Suite 300
Washington, DC 20036
(202) 912-4814
(866) 413-0172 (fax)
bboss@cozen.com
pryan@cozen.com
rbrodey@cozen.com
tingalls@cozen.com

*Attorneys for James Nesta*

/s/ Larry Krantz
Larry Krantz
**KRANTZ & BERMAN LLP**
747 Third Avenue
32nd Floor
New York, NY 10017
(212) 661-0009
(212) 355-5009 (fax)
lkrantz@krantzberman.com

*Attorney for James Brown*

/s/ Amy B. Carver
Amy B. Carver
**WELSH & RECKER, P.C.**
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
abcarver@welshrecker.com

*Attorney for Tracy Sullivan Divalerio*

/s/ Robert E. Connolly

Robert E. Connolly
**LAW OFFICE OF ROBERT E.
CONNOLLY**
301 N. Palm Canyon Drive
Suite 103, #214
Palm Springs, CA 92262
(215) 219-4418
bob@reconnollylaw.com

*Attorney for James Grauso*

/s/ Jeffrey D. Smith
Jeffrey D. Smith
Alice Bergen
**DECOTIIS, FITZPATRICK, COLE &
GIBLIN, LP**
Glenpointe Centre West
500 Frank W. Burr Boulevard
Suite 31
Teaneck, NJ 07666
(201) 907-5228
jsmisth@decotiislaw.com
abergen@decotiislaw.com

*Attorneys for Robin Hatosy*

/s/ Alyssa C. Hughes
Alyssa C. Hughes
Larry Mackey
Neal Brackett
Bradley Love
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
(317) 261-7881
Alyssa.hughes@btlaw.com
Larry.mackey@btlaw.com
Neal.brackett@btlaw.com
Bradley.love@btlaw.com

*Attorneys for Nisha Patel*

/s/ Thomas H. Suddath, Jr.
Thomas H. Suddath, Jr.
Anne Rollins
Michael Lowenstein
Thomas Reilly
**REED SMITH LLP**
Three Logan Square
1717 Arch Street
Philadelphia, PA 19103
(215) 851-8209
(215) 851-1420 (fax)
tsuddath@reedsmith.com
arollins@reedsmith.com
mlowenstein@reedsmith.com
treilly@reedsmith.com

*Attorneys for Maureen Cavanaugh*

/s/ Thomas H. Lee, II
Thomas H. Lee, II
Jeffrey J. Masters
Carla G. Graff
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000
Fax: (215) 994-2222
thomas.lee@dechert.com
jeffrey.masters@dechert.com
carla.graff@dechert.com

*Attorneys for David Rekenthaler*

/s/ Stephen A. Miller
Stephen A. Miller
David Reichenberg
Calli Jo Padilla
**COZEN O'CONNOR P.C.**
1650 Market Street
Suite 2800
Philadelphia, PA 19103
(215) 665-6938
(215) 253-6777 (fax)
samiller@cozen.com
dreichenberg@cozen.com
cpadilla@cozen.com

/s/ James A. Backstrom
James A. Backstrom
**JAMES A. BACKSTROM,
COUNSELOR AT LAW**
1515 Market Street
Suite 1200
Philadelphia, PA 19102
(215) 864-7797
jabber@backstromlaw.com

*Attorney for Marc Falkin*

/s/ Henry E. Klingeman
Henry E. Klingeman
**KLINGEMAN CERIMELE**
60 Park Place
Suite 1100
Newark, NJ 07102
(973) 714-3474
henry@klingemanlaw.com

*Attorney for David Berthold*
*Attorneys for Richard Rogerson*

/s/ Robert E. Welsh, Jr.
Robert E. Welsh, Jr.
Alexandra Kitei
**WELSH & RECKER, P.C.**
303 Walnut Street
Philadelphia, PA 19106
(215) 972-6430
(215) 972-6436 (fax)
rewelsh@welshrecker.com
akitei@welshrecker.com

*Attorneys for Kevin Green*

/s/ Michael Gerard Considine
Michael Gerard Considine
Laura Elizabeth Miller
Shrey Sharma
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
(212) 574-1334
considine@sewkis.com
millerl@sewkis.com
sharma@sewkis.com

*Attorneys for Jill Nailor*

/s/ David Schertler
David Schertler
Lisa Manning
**SCHERTLER & ONORATO, LLP**
901 New York Avenue
Suite 500
Washington, DC 20001
(202) 628-4199
lmanning@schertlerlaw.com

*Attorneys for Konstantin Ostaficiuk*

/s/ G. Robert Gage, Jr.
G. Robert Gage, Jr.
**GAGE SPENCER & FLEMING LLP**
410 Park Avenue
New York, NY 10022
(212) 768-4900
grgage@gagespencer.com

*Attorneys for Ara Aprahamian*

/s/ Wayne A. Mack
Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com

sckulik@duanemorris.com

*Counsel for Aurobindo Pharma USA, Inc.*

/s/ Edward B. Schwartz
Edward B. Schwartz
Nicholas V. Albu
Andrew C. Bernasconi
**REED SMITH LLP**
1301 K Street NW
Suite 1000
Washington, DC 20005
Telephone: (202) 414-9200
eschwartz@reedsmith.com
nalbu@reedsmith.com
abernasconi@reedsmith.com

*Counsel for Heritage
Pharmaceuticals, Inc.*

/s/ Brian J. Smith
Michael Martinez
Steven Kowal
Lauren Norris Donahue
Brian J. Smith
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 372-1121
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Mayne Pharma Inc.*

*/s/ Jan P. Levine*
Jan P. Levine
Robin P. Sumner
Michael J. Hartman
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
jan.levine@troutman.com
robin.sumner@troutman.com
michael.hartman@troutman.com

*Counsel for Defendant West-Ward
Pharmaceuticals Corp. (n/k/a Hikma
Pharmaceuticals USA, Inc.)*

*/s/ Brian T. Feeney*
Brian T. Feeney
**GREENBERG TRAURIG, LLP**
1717 ARCH ST.
Suite 400
Philadelphia, PA 19103
(215) 988-7812
feeneyb@gtlaw.com
serotaj@gtlaw.com

Roger B. Kaplan
**GREENBERG TRAURIG, LLP**
500 Campus Drive
Suite 400
Florham Park, NJ 07932
(973) 360-7957
kaplanr@gtlaw.com

James Ian Serota
**GREENBERG TRAURIG, LLP**
200 Park Avenue
Metlife Building
New York, NY 10166
(212) 801-2277
serotaj@gtlaw.com

*Attorneys for Defendant Dr. Reddy's
Laboratories, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Steven F. Cherry, hereby certify that on September 9, 2020, I caused a true and correct copy of the foregoing document to be served upon the parties of record via CM/ECF.

<u>*/s/ Steven F. Cherry*</u>
Steven F. Cherry