**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *Connecticut, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 19-cv-2407 | |
| *1199SEIU Nat'l Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.,* No. 16-CB-27242 | |
| *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Mylan Inc., et al.*, No. 16-CM-27242 | |
| *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Apotex Corp., et al.*, No. 16-PV-27242 | |

**STATE ATTORNEYS GENERAL AND END-PAYER PLAINTIFFS'**
**MEMORANDUM IN SUPPORT OF THEIR**
**PROPOSED SCHEDULE FOR THE BELLWETHER CASES**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE AG/EPP PROPOSAL SHOULD GOVERN ALL BELLWETHER CASES............3

III.  DPPS' PROPOSAL IS UNWORKABLE AND WOULD BE PREJUDICIAL TO
      OTHER MDL PLAINTIFFS ...................................................................................5

      A.    A Structural Defect in the DPP Schedule Creates Intra-Plaintiff Conflicts and
            Undermines Effective Prosecution of All Plaintiffs' Claims...................................5

      B.    The DPP Proposal Is Unworkable .........................................................................7

IV.   DEFENDANTS' PROPOSED SCHEDULE IS UNDULY PROTRACTED,
      COMPLICATED, AND BURDENSOME...................................................................9

      A.    "Staggering" Class Certification Across the Three Class Bellwether Cases
            Would Be Inefficient and Unduly Burdensome for the Court and EPPs.................9

      B.    Defendants' Proposed Schedule Unnecessarily Delays Resolution of the
            Bellwether Cases.................................................................................................13

V.    CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*In re Linerboard Antitrust Litig.*,
    203 F.R.D. 197 (E.D. Pa. 2001)..................................................................................... 5

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    335 F.R.D. 1 (E.D.N.Y. 2020)..................................................................................... 13


**Other Authorities**

Manual for Complex Litigation § 21.21 (4th ed.).......................................................... 8

**Rules**

Federal Rules of Civil Procedure 23 ...................................................................... passim

## I.      INTRODUCTION

On September 1, 2020, the State Attorneys General ("States" or "AGs") and the End-Payer Plaintiffs ("EPPs") submitted their proposed schedule to govern the EPPs' clobetasol, clomipramine and pravastatin cases, as well as the States' "Teva-centric" case (collectively, the "Bellwether Cases"). *See* Exhibit 1 hereto (the "AG/EPP proposal"). The AG/EPP proposal is pragmatic and moves the Bellwether Cases to trial in a timely, fair and efficient manner. It provides sufficient time for the parties to complete fact discovery and proceed through class certification, merits discovery and summary judgment on parallel tracks and in a logical order. It is sufficiently aggressive but realistic, and importantly, it allows time for the Court to issue important decisions. The AG/EPP proposal is free of the many defects and pitfalls present in the schedules proposed by other parties. *See* Part II, *infra*. Therefore, EPPs and the States respectfully request that the Court adopt the AG/EPP proposal.

The DPPs' and Defendants' proposed schedules contain major flaws that render them inefficient and unworkable. DPPs' proposal is driven by their desire for an unrealistically early trial date, and therefore it includes a fatal structural defect: service of merits expert reports well before the end of fact discovery.[1] This aspect of their proposal would force DPPs to frontload all of the most important depositions in the MDL, effectively curtailing the already streamlined 17-month Bellwether deposition period by 25% or more. And because depositions will be conducted jointly with all MDL Plaintiffs, if DPPs' schedule were adopted, every plaintiff group would be compelled either to go along with this "frontloading" strategy or engage in unnecessary, repeated intra-plaintiff disputes over deposition scheduling, which will be difficult enough given the sheer

---

[1] *See* Exhibit 2 hereto (DPP Proposal, MDL Doc. 1496-1), at 3 ¶ C (merits expert report deadline of January 14, 2022) & at 2 ¶ A (fact depositions conclude on April. 25, 2022).

number of parties and witnesses and the ongoing DOJ investigation. This fundamental structural flaw, along with various other impractical aspects of the DPP proposal, renders it prejudicial to the effective prosecution of the MDL and unworkable in practice. *See* Part III, *infra*.

Defendants' proposal – with its many unnecessary delays and burdensome complications – also should be rejected. Most problematic is its "staggered" approach to class certification proceedings, under which Defendants seek to silo each of the three class Bellwether Cases and litigate class certification separately, on three different but overlapping schedules, over an extended nine-month period (September 2021-June 2022).[2]

Given the similarity of Federal Rule of Civil Procedure 23**Error! Bookmark not defined.** issues across the three class Bellwether Cases, and the fact that Plaintiffs may present the same experts in all three cases, the extra delays and procedural complications in Defendants' proposal should be rejected. Litigating class certification in the protracted manner desired by Defendants would impose extraordinary burdens on class Plaintiffs and their experts and foist on the Court additional briefing, much of which would be duplicative. And because Defendants' proposed class certification proceedings are so prolonged, as are other portions of their schedule, Defendants' proposal delays trial of any Bellwether Case until late summer 2023 at the earliest. None of these delays, burdens or complications are present in the EPP/AG schedule. *See* Part IV, *infra*.[3]

---

[2] *See* Exhibit 3 hereto (Defs.' Proposal, MDL Doc. 1498-1), at 2-4 ¶ C.

[3] The States and EPPs exchanged proposals and met and conferred extensively with DPPs and Defendants, but ultimately were unable to reach agreement on a Bellwether Case schedule. The parties' competing proposals conflict in many ways, but they essentially agree on a few points: motions to dismiss should be filed on October 15 or November 1, 2020; fact depositions should commence either November 30 or December 1, 2020; and motions for class certification should be filed in August or September 2021.

## II.  THE AG/EPP PROPOSAL SHOULD GOVERN ALL BELLWETHER CASES

The AG/EPP proposal is the most fair, efficient and workable schedule before the Court. Chronologically, it proceeds as follows: *First*, it sets a briefing schedule for any motions to dismiss the Bellwether complaints (Ex. 1 at 5 ¶ D & n.7),[4] followed by the filing of answers.

*Second*, the AG/EPP proposal includes all of the essential milestones necessary to advance these cases through discovery, including a 17-month period (November 30, 2020 to April 25, 2022) for fact depositions relevant to any Bellwether Cases. *See id.* at 2 ¶ A.[5]

*Third*, for the States' Bellwether Case, the AG/EPP proposal includes a December 2021 pretrial planning conference to address *Lexecon* waiver issues. If Defendants insist on a State Bellwether trial in Connecticut, the parties and the Court will need adequate time either to work on logistics for a trial before a Connecticut judge who is unfamiliar with this massive MDL, or to arrange for this Court to sit by designation. An early conference to address this important issue is necessary and appropriate. *See id.* at 5 ¶ E.

*Fourth*, the AG/EPP proposal provides for class certification proceedings between September 2021 and March 2022, including briefs and expert discovery (*id.* at 3 ¶ B). And unlike the DPP or Defendant proposals, the AG/EPP proposal provides for a window of time (April

---

[4] Any motions to dismiss the EPP bellwether complaints should be minimal, as all of those complaints either have already withstood motions to dismiss (clobetasol and pravastatin), *see* MDL Docs. 721-22 (upholding Sherman Act claims) & MDL Docs. 857-58 (upholding state law claims), or no motions to dismiss were filed (clomipramine). However, this Court has permitted renewed motions to dismiss solely to address the Maryland and Connecticut state law claims added by amendment on April 1, 2019. *See* PTO 79 ¶¶ 1, 3.

[5] The parties have jointly proposed that the period for non-Bellwether depositions be determined by future agreement of the parties, subject to Court approval. *See* Jt. Stip. to Extend Certain Pretrial Discovery Deadlines ¶ 10 (submitted to the Court September 1, 2020).

2022) during which the Court may hold a class certification hearing before the next major case milestones begin. *See id*. at 3-4.[6]

*Fifth*, following the close of fact depositions, the AG/EPP proposal provides for merits expert discovery (May-August 2022), *see id*. at 4 ¶ C, followed by summary judgment (September-December 2022), *see id*. at 5 ¶ D.

*Finally*, shortly after the close of summary judgment briefing, the AG/EPP proposal sets a January 2023 pretrial planning conference. *See id*. at 5 ¶ E. At that time, the parties and the Court may discuss, among other things, the order of the Bellwether trials, appropriate pretrial deadlines (*e.g*., for exchange of witness and exhibit lists, etc.), and the details, structure and timing of the first trial.

There are two reasonable assumptions underlying the AG/EPP proposal:

- **Defendants will comply with their document production obligations**, including the parties' August 21, 2020 Joint Stipulation (currently awaiting Court approval), which requires production of all transaction-level sales data and cost information relating to Bellwether drugs, formulations, and strengths, by October 16, 2020;

- **Plaintiffs will *not* be limited in this MDL to a single deposition of a witness who may have testimony relevant to both Bellwether and non-Bellwether Cases**. As explained in greater detail in Plaintiffs' contemporaneous submission regarding the "one deposition" issue, a rule limiting plaintiffs to a single deposition would make it impossible to prioritize Bellwether depositions and likely require extensions of at least 4-6 months, and possibly more. *See* Ex. 1 at 2 n.2.

As described in Parts III and IV below, the AG/EPP proposal is the only one that can *realistically* be implemented, and we respectfully submit that to conserve both the parties' and judicial resources, it should be adopted.

---

[6] For class certification, the AG/EPP proposal's timing and sequencing is largely consistent with the DPP proposal. *See* Exhibit 2 at 2-3 ¶ B (DPPs propose that class certification proceedings begin on August 2, 2021); Ex. 1 at 3 ¶ B & n.3 (AGs/EPPs propose that EPP class certification proceedings begin on September 2, 2021, with DPP class-certification proceedings beginning 30 days earlier).

**III.     DPPS' PROPOSAL IS UNWORKABLE AND WOULD BE PREJUDICIAL TO OTHER MDL PLAINTIFFS**

The DPP and AG/EPP proposals have several facial similarities, such as the same proposed fact deposition period and nearly the same class certification schedule. However, a fatal flaw in the DPP schedule renders the two proposed schedules irreconcilable, because the DPP proposal would interfere with other MDL Plaintiffs' abilities to effectively prosecute both Bellwether and non-Bellwether claims. The DPP schedule also includes numerous features and assumptions that render it unworkable for the parties and the Court.

**A.     A Structural Defect in the DPP Schedule Creates Intra-Plaintiff Conflicts and Undermines Effective Prosecution of All Plaintiffs' Claims**

DPPs propose to serve their opening merits expert reports on January 14, 2022 – more than four months before fact depositions end in April 2022. *See* Ex. 2 at 2 ¶ A & 3 ¶ C. This aspect of their proposal will promote conflict and materially prejudice other plaintiffs' abilities to effectively prosecute their claims.

Expert reports and testimony at the merits stage of an antitrust case seek to help the Court (at summary judgment) and jury (at trial) evaluate the evidence and answer the ultimate questions on the merits: did the defendants participate in an unlawful conspiracy, were the plaintiffs impacted by that conspiracy, and what is the measure of damages?[7] Obviously, experts seeking to assist with these questions need to review the discovery record to identify and analyze the key evidence.

---

[7] *See, e.g., In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 214 (E.D. Pa. 2001) (antitrust plaintiff must prove a violation of antitrust laws, impact, and the amount of damages), *aff'd*, 305 F.3d 145 (3d Cir. 2002). By contrast, expert reports prepared at the class certification stage aid the Court's analysis of a *procedural* question, *i.e.*, whether Rule 23 is satisfied.

Under DPPs' proposal, counsel and their experts would have to have access to that evidence well before January 14, 2022, when their merits expert reports would be due. As a practical matter, to have time for their experts to analyze the discovery record and prepare and finalize their merits reports, DPPs will need to have marshaled all of the key liability and damages evidence by early January 2022 at the latest (but likely much earlier) – four months before the close of fact depositions.[8]

Given this reality, the DPP proposal has the practical effect of curtailing by 4-5 months the period during which any MDL Plaintiffs may depose key witnesses. To meet their merits expert report deadline, DPPs will have no choice but to "frontload" all of the key depositions for the clobetasol, clomipramine and pravastatin cases so the transcripts can be available to their expert witnesses no later than early January 2022. In other words, DPPs' date to serve merits expert reports – January 14, 2022 – would be the real driver of the end of their fact discovery.

Allowing discovery to proceed in this fashion will seriously prejudice the States, EPPs and all other MDL Plaintiffs. For example, most of the key witnesses in the clobetasol, clomipramine and pravastatin cases are also key witnesses in the States' Teva-centric case.[9] If the DPPs' proposal is to work for the DPPs, then the States, EPPs and all other MDL Plaintiffs essentially would have to let the DPPs decide which key witnesses to depose and in what order. An example of this problem occurs if the States, EPPs and other plaintiffs believe it makes the

---

[8] This deficiency cannot be cured by allowing DPPs to serve supplements to merits expert reports to account for testimony obtained after January 2022. That process would then prompt Defendants to seek an additional deposition *and* to serve supplemental rebuttal reports, imposing yet more delay, burdens and inefficiencies on all parties.

[9] Ten of the twelve defendants in the class Bellwether Cases are also named in the States' Teva-centric Bellwether Case: Actavis, Apotex, Glenmark, Lupin, Mylan, Sandoz, Taro, Teva, Wockhardt and Zydus. Only Akorn and Perrigo are class Bellwether defendants but not State Bellwether defendants.

most sense to pursue a strategy of deposing key witnesses last, after gathering foundational testimony from other witnesses. Those plaintiffs would be repeatedly at odds with the DPPs, as that approach simply is not feasible under the DPP proposed schedule.

Unless the States and all other MDL Plaintiffs are willing to cede control to DPPs to determine the deposition schedule, conflicts between DPPs and the other plaintiffs are inevitable. Normally, counsel can have good faith discussions and work through differences on strategy – indeed, for several years, the MDL Plaintiffs have done so successfully. But DPPs' schedule would close the door on discussion of any alternative deposition strategies, because there is only one way for DPPs' schedule to work: by deposing *all* the key witnesses for 60% of the Bellwether Defendants (12 of 20, many of whom are the largest Defendants requiring the most depositions) before January 2022. A schedule that would effectively authorize one plaintiff group to impose its strategy on the rest of the MDL Plaintiffs, and thereby undermine what otherwise could be a cooperative effort that serves the interests of all MDL Plaintiffs, should not control.

### B.    The DPP Proposal Is Unworkable

As demonstrated above, the DPPs' early merits expert deadline is a structural defect that would seriously disrupt the effective prosecution of this MDL. If that defect were cured by moving that deadline after the close of fact depositions on April 25, 2022 (as the AG/EPP proposal provides, *see* Ex. 1 at 4 ¶ C), then none of DPPs' proposed deadlines for subsequent Bellwether milestones – summary judgment or trial – are feasible.

For example, DPPs' proposal that summary judgment proceed on June 7, 2022 (Ex. 2 at 4 ¶ D) would not work, because under a realistic schedule, merits expert discovery would still be ongoing. Nor could trial proceed on September 29, 2022 as DPPs propose (Ex. 2 at 4 ¶ E), because summary judgment briefing would still be underway. This schedule could be cured, with

7

fact depositions ending on April 25, 2022, followed by merits expert discovery, summary

judgment, and trial. Such modifications would result in a schedule that resembles *the AG/EPP*

*schedule*. *See* Ex. 1 at 4-5 ¶¶ C-E.

Further, DPP's proposal does not account for the dozens of depositions that are currently

stayed at DOJ's request. *See* PTO 136. DOJ has only recently indicted two Bellwether

defendants, Glenmark (July 2020) and Teva (August 2020), and it also has indicted Ara

Aprahamian, an individual Defendant in two of the States' cases, including their Teva-centric

Bellwether, and a former employee of Bellwether defendants Actavis and Taro. No trial date is

set for any of these criminal matters. If the stay continues into 2021 because of these pending

charges (and DOJ's ongoing investigation), then it is very unlikely that Plaintiffs will be able to

depose all key witnesses by January 2022. By mandating that all key witness depositions be

frontloaded, DPPs' proposal ignores the practical impact of the stay.

DPPs' proposal is unrealistic in other ways, as well:

- It would require the parties to lunge from expert reports to depositions to briefing, some addressing class issues and some addressing merits issues, and back and forth again and again, all in a limited span of time. The first three months of DPPs' merits expert proceedings (January-March 2022) would overlap with the last three months of DPPs' class certification proceedings (August 2021-March 2022), leaving the parties to simultaneously depose Defendants' class certification experts (October 29-December 20, 2021), while preparing merits expert reports (due January 14, 2022) *and* class certification rebuttal expert reports and briefs (due February 7, 2022); *and* file two sets of class certification *Daubert* briefs (due March 2, 2022); *and* depose DPPs' merits experts *and* class certification rebuttal experts by March 1 and March 7, 2022, respectively; *and* serve *Daubert* reply briefs (due March 14, 2022); *and* prepare and serve Defendants' merits expert reports by March 18, 2022. *See* Ex. 2 at 6. This is not a practical or efficient way to conduct complex litigation.

- None of the DPPs' proposed deadlines after March 2022 could hold if the Court decides to hold a class certification hearing, which is now "a routine part of the certification decision." MANUAL COMPLEX LIT. § 21.21 (4th ed.). Under DPPs' proposal, class certification would be fully briefed as of March 14, 2022. *See* Ex. 2 at 3 ¶ B. And yet, at that time, DPPs, Defendants and their experts would be in

the middle of DPP merits expert discovery, which wouldn't conclude until May 31, 2022. *See id.* at 3-4 ¶ C.

- The DPPs' proposed schedule would be extremely time-consuming and burdensome for the Court, as it would be required to decide what is likely to be three joint summary judgment motions (one in each class Bellwether case), plus at least one summary judgment motion from each of the 12 class Bellwether defendants, plus dozens of motions *in limine* that would be filed at the same time, all between August 9, 2022, and the beginning of trial on September 29, 2022. *See id.* at 4 ¶ D.

By contrast, the AG/EPP proposal includes none of these deficiencies and is less likely to result in serial extension requests:

- class certification and merits expert discovery do not overlap;

- briefing intervals are reasonable and do not require the parties to address at the same time what should be separate phases of the litigation;

- there is time for a class certification hearing, decision, and notice to the class; and

- the Court is afforded time to decide summary judgment before trial, select trial dates that work for the Court and the parties, and work with the parties to address trial structure and planning for these complex trials.

In sum, DPPs' proposal is fatally flawed, both because of its prejudicial impact on other plaintiffs and their effective prosecution of this MDL, and its many unworkable features.

## IV. DEFENDANTS' PROPOSED SCHEDULE IS UNDULY PROTRACTED, COMPLICATED, AND BURDENSOME

Defendants' proposed schedule, *see* Exhibit 3 hereto, avoids the key defects of the DPP proposal, but it incorporates features that will unduly burden the Court and Plaintiffs, and delay any Bellwether trial until late summer 2023 at the earliest. It, too, should be rejected.

### A. "Staggering" Class Certification Across the Three Class Bellwether Cases Would Be Inefficient and Unduly Burdensome for the Court and EPPs.

The most significant deficiency of the Defendants' proposal is the "staggering" of class certification proceedings. *See* Ex. 3 at 2-3 ¶ C. It provides for a class certification motion to be

filed in "Individual Drug Bellwether #1," followed 30 days later by the same motion in "Individual Drug Bellwether #2," and again 30 days later in "Individual Drug Bellwether #3." What follows is a complicated sequence of the *same* class certification activities being conducted three times, and would give rise to extraordinary burdens and unnecessary delay.

For example, under Defendants' proposal, EPPs and DPPs first must serve three separate briefs and three separate sets of expert reports in each of Bellwether #1, #2, and #3. Even though these briefs and expert reports will address identical issues (whether Rule 23 is satisfied) in very similar single-drug price-fixing cases, Defendants' proposal would require three different filings: one every 30 days over a 90-day period.

Defendants' proposal then sets up an exhausting sequence, with three different periods during which EPPs' experts would sit for three different depositions – one for each of the three class Bellwether Cases. And so even as EPPs and their experts are preparing and filing their opening class certification briefs and expert reports in Bellwethers #2 and #3 (due October 3 and November 3, 2021), they must also sit for EPP expert depositions in Bellwether #1 (before November 19, 2021). Defendants then file their opposition briefs and expert reports in Bellwether #1 (due December 3, 2021). As a result, rather than analyzing Defendants' expert reports and helping EPP counsel prepare for depositions of Defendants' experts – who defense counsel asserted during meet and confers will be quite numerous – EPPs' experts are themselves still being deposed, this time in Bellwether #2 (before December 20, 2021) and Bellwether #3 (before January 20, 2022).

Worse, the same sequence repeats when EPPs are preparing and filing their reply briefs and rebuttal expert reports in each of the three Bellwethers, 30 days apart: EPPs' experts must simultaneously prepare rebuttal reports in one case, while being deposed (again) in two other

cases (this time, on rebuttal reports), while helping counsel analyze Defendants' multiple expert reports in two other cases, and also help prepare for multiple depositions of Defendants' experts.[10]

Defendants' proposed schedule is costly, complicated and redundant, all without providing any tangible benefits to the litigants or the Court. In meet and confer discussions, Defendants offered only three justifications for this complicated and burdensome arrangement. None of them withstand scrutiny.

*First*, Defendants argued that clobetasol, clomipramine, and pravastatin are "separate cases." But there is no reason why separate, but related, cases cannot follow the same class certification schedule. Defendants acknowledge as much in other aspects of their schedule, which proposes the same deadlines in all three class Bellwether Cases for merits expert discovery, summary judgment, and a pretrial planning conference. *See* Ex. 3 at ¶¶ D-F. One goal of MDL litigation is to achieve efficiency by consolidating similar cases. Defendants' insistence on separating the schedules of similar cases is inconsistent with that goal.

*Second*, Defendants argued that a staggered class-certification process would be more convenient for the Court, by spreading out the Court's workload over a longer period of time. Even assuming that is true (which only the Court can decide), it is difficult to conceive how such a "benefit" would outweigh the additional, unnecessary burdens imposed on the Court by Defendants' class-certification schedule: most notably, being presented with *six* EPP class certification briefs and associated sets of expert reports where just *two* – one opening, one reply – would suffice, and *six* sets of class certification briefs and expert reports from Defendants

---

[10] Even if Defendants agreed to depose EPPs' experts only twice instead of six times – once after all three opening reports, and once after all three rebuttal reports – much of the same complication remains, as does the considerable delay inherent in Defendants' proposed schedule.

(three responses and three sur-replies) when *one* would suffice. In addition, Defendants' proposal is so complicated and taxing that extension requests and scheduling disputes would be inevitable, further burdening the Court.

*Third*, Defendants argued that staggering class certification would be less burdensome on defense counsel, some of whom represent defendants named in more than one class Bellwether. Defendants argued that without staggering, defense counsel would be burdened with "coordinating" experts and filings in different cases on the same day. But in fact, ten of the twelve class Bellwether defendants are named only in *one* class bellwether, and so would experience no such burden. The two Defendants who are named in more than one class Bellwether – Sandoz (3) and Taro (2) – are well-funded defendants represented by sophisticated counsel from some of the largest law firms in the world.[11] Sandoz and Taro cannot credibly claim a lack of resources or know-how to litigate class certification on a single schedule. Indeed, as noted above, this is how they and all other Bellwether Defendants propose to litigate every other phase of the case. Defendants' claimed "coordination" burdens are dwarfed by the excessive burdens on EPPs and their experts that "staggering" class certification would impose.

Unlike Defendants' schedule, the AG/EPP proposal includes a simple, streamlined procedure for class certification. EPP's opening and reply briefs, along with accompanying expert reports, would be filed on the same day in all three cases. *See* Ex. 1 at 2 ¶ B. This would allow for EPPs to file a single omnibus brief, with supporting expert reports, if that is what EPPs choose to do. A single brief could efficiently address the many overlapping issues in the three cases. For example, the case law and legal arguments will be largely the same across the

---

[11] Sandoz is represented by Arnold & Porter Kaye Scholer (https://www.arnoldporter.com/en/about/firm) and Taro is represented by Baker Botts (https://www.bakerbotts.com/aboutus/overview).

Bellwether Cases for the Rule 23(a) issues of numerosity, commonality, typicality, and adequacy.[12] Even for Rule 23(b)'s predominance analysis, the legal principles will be identical, as will many of Defendants' arguments, which are recycled in nearly every end-payer antitrust case, such as the claim that variations in state law defeat predominance.[13] Defendants' proposal that class certification proceedings on the class Bellwether track be divided into three overlapping sub-tracks would be neither efficient nor helpful to the Court. The EPP/AG proposal for one track is clearly superior.

> **B.      Defendants' Proposed Schedule Unnecessarily Delays Resolution of the Bellwether Cases.**

Starting with class certification, Defendants' proposal introduces additional steps and longer intervals that ultimately prevent any of the Bellwether Cases from reaching trial before late summer 2023, which is three years away and seven years after these cases commenced. These avoidable delays should be rejected.

For example, under Defendants' class certification proposal, which includes both "staggering" and three sur-reply briefs, class certification briefing would not close until June 3, 2022 – two months (64 days) later than under the AG/EPP schedule. And this does not even account for the further delay contemplated in Defendants' schedule: the right to seek leave of Court to file "sur-rebuttal expert reports" (Ex. 3 at 4 ¶ D), which, if granted, would require additional time for depositions of Defendants' "sur-rebuttal" experts, and a consequent delay of any class certification hearing (for which Defendants' schedule, like DPPs' schedule, provides no window).

---

[12] *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 11-13 (E.D.N.Y. 2020) (outlining Rule 23(a) factors).

[13] *See, e.g.*, *In re Restasis*, 335 F.R.D. at 32-39  (rejecting Defendants' argument that differences among state laws defeat predominance, and certifying end-payer class).

Defendants' proposal also adds delay at the merits expert discovery and summary judgment stages. EPPs and the States propose to conclude those stages nearly four months faster than Defendants propose.[14]

Because of these repeated unnecessary delays, Defendants' schedule postpones the pretrial planning conference until June 15, 2023 – five months later than the AG/EPP proposal of January 16, 2023. And this is a best-case scenario. As noted above, the reality of a three-track class certification schedule would be so complicated that requests for extensions would be inevitable.[15]

Additionally, Defendants' proposal omits an important step: a conference to discuss *Lexecon*, an issue the Court has already raised *sua sponte*. *See* June 30, 2020 Order (MDL Doc. 1433). In meet and confers, Defendants argued that any such conference should await a summary judgment ruling. But if Defendants will not waive their *Lexecon* rights, then the Court and the parties need time to prepare for trial in Connecticut much sooner than is contemplated by Defendants' proposed schedule. There are no valid arguments for waiting until after summary judgment – under either proposed schedule, 2023 at the earliest – to begin discussing trial

---

[14] EPPs and the States propose a merits expert discovery period of 121 days; Defendants propose an additional 86 days, or 207 days total. EPPs and the States propose a 91-day period for summary judgment briefing; Defendants propose an additional 30 days, or 121 days total.

[15] Defendants' proposed schedule resembles the last of many proposals exchanged between the States, EPPs and Defendants during the meet and confer process. But Defendants' proposal retains the two most problematic features that were and remain unacceptable to the States and EPPs: staggered class certification proceedings *and* an unduly protracted schedule. It also includes several other less significant issues that the parties were unable to resolve. As the parties' negotiations failed, Defendants complained that the parties had "agreed" on certain aspects of the schedule, only to see the States and EPPs walk away from those terms. But as the States and EPPs made plain throughout the negotiations, any proposed schedule needed to be viewed as a whole, and be in the best interest of their clients. No schedule that was satisfactory *as a whole* to the States and EPPs ever emerged in the parties' negotiations, and so no agreement was achieved.

logistics with a federal trial court judge in Connecticut who is totally unfamiliar with this complex case, or to start the process of arranging for this Court to sit by designation in the District of Connecticut. Omitting an early *Lexecon* planning conference will introduce yet additional unwarranted delay. *See* Ex. 1 at 5 ¶ E (AG/EPP proposal for a December 1, 2021 *Lexecon* planning conference).[16]

## V.    CONCLUSION

Of the three proposals before the Court, only the AG/EPP schedule will lead to a realistic early trial date and is free from fatal defects, needless duplicative work, complication, and unwarranted delay. The States and EPPs respectfully request that the Court adopt it in full, for all Bellwether Cases.[17]

Dated: September 9, 2020                                    Respectfully submitted,


/s/ Roberta D. Liebenberg                           /s/ W. Joseph Nielsen
Roberta D. Liebenberg                               W. Joseph Nielsen
FINE, KAPLAN AND BLACK, R.P.C.                      Assistant Attorney General
One South Broad Street, 23rd Floor                  55 Elm Street
Philadelphia, PA 19107                              P.O. Box 120
215-567-6565                                        Hartford, CT 06141-0120
rliebenberg@finekaplan.com                          Tel: (860) 808-5040
                                                    Fax: (860) 808-5033
                                                    Joseph.Nielsen@ct.gov

---

[16] Finally, the "Fact Discovery Deadlines" portion of Defendants' proposal is ambiguous as to which Defendants or cases are subject to the proposed deadlines. Elsewhere, Defendants' proposal identifies deadlines for "Class Certification," "Merits Experts" and "Trials" that apply to "*Bellwether Cases*." *See* Ex. 3 at ¶¶ C-F. However, that precision is missing from paragraph B's fact deposition deadlines (*id*. ¶ B), an omission that appears intentional because an accompanying footnote seeks to carve out "newly added defendants," none of whom are Bellwether defendants. *See id*. n.4. Any schedule approved by the Court should be clear as to which parties and cases are bound by its terms.

[17] The AG/EPP proposal was carefully crafted to have its deadlines work together as a whole. The schedule would be rendered unworkable if provisions from the DPPs' or Defendants' proposal were added or substituted. Accordingly, the States and EPPs respectfully request that their proposal be adopted *in toto*.

*Lead and Liaison Counsel for the End-Payer*          *Liaison Counsel for the States*
*Plaintiffs*

16