# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL No. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT ARA APRAHAMIAN'S MOTION TO STAY ALL CIVIL PROCEEDINGS AGAINST HIM**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.   DEFENDANT APRAHAMIAN HAS NOT DEMONSTRATED THAT HE WILL SUFFER ANY EXTRAORDINARY BURDEN SUFFICENT TO WARRANT A STAY OF ALL PROCEEDINGS AGAINST HIM. ........................................................................ 3

        A.   Courts Do Not Stay Proceedings Simply Because a Civil Defendant Has Been Indicted on Related Criminal Charges. ................................................................. 3

        B.   Defendant Aprahamian's "Fifth Amendment Dilemma" Does Not Warrant a Stay Because Less Drastic Methods Can Adequately Protect His Interests. .................. 4

        C.   Participating in This MDL Will Not Impose an Undue Burden. ............................. 6

    II.  STAYING PROCEEDINGS WILL INTERFERE WITH THE EFFICIENT ADMINISTRATION OF THIS MDL. .................................................................................. 8

        A.   No Meaningful Efficiency Would Be Gained From a Stay. ................................... 9

        B.   The Stay Requested by Aprahamian Would Result in Repeat Depositions and Wreak Havoc on the MDL Schedule. ................................................................... 9

   III. GRANTING A STAY WOULD PREJUDICE PLAINTIFFS BY IMPEDING ACCESS TO EVIDENCE, DUPLICATING EFFORTS, AND IMPOSING UNNECESSARY EXPENSE. .................................................................................................................... 10

   IV. PUBLIC AND NON-PARTY INTERESTS WEIGH AGAINST A STAY. ................... 12

CONCLUSION ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Adelphia Commc'ns Sec. Litig.*,
 No. 02-cv-1781, 2003 WL 22358819 (E.D. Pa. May 13, 2003) ......................................... 3, 12

*Dawson v. Dodd*,
 No. 99-cv-2644, 1999 WL 410366 (E.D. Pa. June 17, 1999) ................................................. 10

*De Vita v. Sills*,
 422 F.2d 1172 (3d Cir. 1970) ............................................................................................... 3, 4

*Digital Equip. Corp. v. Currie Enters.*,
 142 F.R.D. 8 (D. Mass. 1991) ............................................................................................ passim

*Doe v. City of San Diego,*
 No. 12-cv-689, 2012 WL 6115663 (S.D. Cal. Dec. 10, 2012) .................................................... 6

*Doe v. Indyke*,
 No. 20-cv-00484, 2020 WL 5518384 (S.D.N.Y. Sept. 14, 2020) ............................................... 4

*Doe v. Pa. State Univ.,*
 No. 12-cv-2068, 2013 WL 593415 (M.D. Pa. Feb. 14, 2013) .................................................... 4

*ESG Capital Partners LP v. Stratos*,
 22 F. Supp. 3d 1042 (C.D. Cal. 2014) .................................................................................... 4, 6

*Fox v. Lackawanna County*,
 No. 16-cv-1511, 2018 WL 1203363 (M.D. Pa. Mar. 8, 2018) ................................................... 4

*Garcia v. City of Leavenworth*,
 No. 19-cv-2049, 2019 WL 3302306 (D. Kan. July 23, 2019) ................................................. 4, 6

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*,
 87 F.R.D. 53 (E.D. Pa. 1980) ....................................................................................... 2, 3, 4, 10

*Hilda M. v. Brown*,
 No. 10-cv-02495, 2010 WL 5313755 (D. Colo. Dec. 20, 2010) ............................................ 3, 4

*In re Blood Reagents Antitrust Litig.*,
 756 F. Supp. 2d 623 (E.D. Pa. 2010) ..................................................................................... 2, 13

*In re CFS-Related Sec. Fraud Litig.*,
 256 F. Supp. 2d 1227 (N.D. Okla. 2003) .......................................................................... passim

*In re Herley Indus. Inc. Sec. Litig.*,
  No. 06-cv-2596, 2007 WL 1120246 & n.1 (E.D. Pa. Apr. 11, 2007) ......................................... 2

*In re Plastics Additives Antitrust Litig.*,
  No. 03-cv-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ................................ 5, 11, 12, 13

*Keating v. Office of Thrift Supervision*,
  45 F.3d 322 (9th Cir. 1995) ................................................................................................... 3

*Lizarraga v. City of Nogales*,
  No. 06-cv-474, 2007 WL 215616 (D. Ariz. Jan. 24, 2007) ............................................... passim

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012) .................................................................................................. 2, 4

*McCullers v. Commonwealth of Pa.*,
  No. 15-cv-3732, 2016 WL 3551624 (E.D. Pa. June 30, 2016) ................................................... 4

*Motorola, Inc. v. Abeckaser*,
  No. 07-cv-3963, 2009 WL 816343 (E.D.N.Y. Mar. 26, 2009) ................................................... 4

*Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*,
  486 F. Supp. 1118 (S.D.N.Y. 1980) ................................................................................. passim

*Reck v. Berkshire Life Ins. Co. of Am.*,
  No. 10-cv-0529, 2011 WL 335569 (W.D. Pa. Jan. 31, 2011) ..................................................... 4

*Roe v. Operation Rescue*,
  123 F.R.D. 508 (E.D. Pa. 1988) ................................................................................................ 2

*S.E.C. v. Boock*,
  No. 09-cv-8261, 2010 WL 2398918 (S.D.N.Y. June 15, 2010) .................................................. 4

*S.E.C. v. Graystone Nash, Inc.*,
  25 F.3d 187 (3d Cir. 1994) ........................................................................................................ 5

*S.E.C. v. N1 Techs., Inc.*,
  No. 17-cv-23618, 2018 WL 8343503 (S.D. Fla. Jan. 30, 2018) .............................................. 4, 6

*Soroush v. Ali*,
  No. 09-cv-3703, 2009 WL 3467897 (E.D. Pa. Oct. 28, 2009) ................................................. 11

*State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*,
  No. 01-cv-5530, 2002 WL 31111766 (E.D. Pa. Sept. 18, 2002) ............................................. 11

*Sterling Nat'l Bank v. A–1 Hotels Int'l, Inc.*,
    175 F. Supp. 2d. 573 (S.D.N.Y 2001) ................................................................................... 11

*Texaco, Inc. v. Borda*,
    383 F.2d 607 (3d Cir. 1967) ..................................................................................................... 6

*Transatlantic Reinsurance Co. v. Ditrapani*,
    No. 90-cv-3884, 1991 WL 12135 (S.D.N.Y. Jan. 28, 1991) ......................................... 4, 10, 12

*Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*,
    No. 01-cv-10695, 2002 WL 844345 (S.D.N.Y. May 2, 2002) .................................................. 4

## **INTRODUCTION**

While employed as a high-ranking executive at Actavis and later at Taro, Defendant Ara Aprahamian ("Aprahamian") participated in numerous conspiracies to fix prices and allocate markets in the generic drug industry. To facilitate those conspiracies, he frequently communicated internally with co-workers and externally with competitors, utilizing both corporate and personal accounts. Because of his extensive role, Aprahamian was personally named as a defendant in this MDL by certain Plaintiffs.[1] On February 4, 2020, Aprahamian was also named in an indictment by the U.S. Department of Justice ("DOJ") for criminal conduct relating to 16 generic drugs. (*See* Dkt. No. 1 at ¶¶ 23, 26, & 39 in *U.S. v. Aprahamian*, No. 20-cr-00064 (E.D. Pa.).) Also in February 2020, the States issued discovery requests to Aprahamian to obtain evidence necessary to further their claims in this MDL, both as to Aprahamian and other Defendants. In March 2020, Aprahamian moved to stay his obligation to respond to the States' discovery requests. (Dkt. No. 1286.) In September 2020, the Court denied that motion as moot. (Dkt. No. 1523.)

Now, Aprahamian seeks a stay not just from responding to particular discovery requests, but a blanket stay of *all* proceedings as to him generally. (Dkt. No. 1537.) The Court should deny Aprahamian's request. The fact that an individual is facing parallel criminal proceedings is not, by itself, a sufficient basis for such a drastic remedy and the compelling interests against a stay outweigh the limited interests for one. Less drastic remedies are available that would not only further the discovery and pre-trial process in this MDL, but would also protect Aprahamian's Fifth Amendment rights and avoid undue burden on him. On the other hand, granting a stay of

---

[1] Specifically, Aprahamian is named as a defendant for 16 of the 114 drugs in the States' "Teva-Centric Complaint" (19-cv-2407 Dkt. No. 106 at ¶ 1276), for 43 of the 83 drugs in the States' "Dermatology Complaint" (20-cv-3539 Dkt. No. 1 at ¶ 1742), and jointly and severally for all of the 151 drugs in the "December 2019 Complaint" by the IRPs (19-cv-06044 Dkt. No. 61 at pp. 231-32, 241-55, 258-61, 266).

all proceedings as to Aprahamian would substantially interfere with the efficient administration of this MDL and risk a complete upending of the MDL schedule, all to the detriment of the Court, the Plaintiffs, non-parties, and the interests of the public.

## **ARGUMENT**

Staying civil matters based on parallel criminal proceedings is an "extraordinary remedy" to be used only in "extraordinary circumstances." *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 635-36 (E.D. Pa. 2010). Whether to grant or deny a stay is "within the discretion of the trial court" as part of its inherent authority to manage its docket. *Roe v. Operation Rescue*, 123 F.R.D. 508, 509 (E.D. Pa. 1988); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 & n.16 (2d Cir. 2012) (noting that the "burden in overcoming a district court's decision to refrain from entering a stay" is a "heavy" one, and is almost never successful). In exercising that discretion, courts in this District consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980).[2] Here, the balance of interests heavily weighs against a stay of proceedings.

---

[2] To "weed out" plainly meritless requests, courts also look to the threshold matters of "status of the criminal case and the overlap between the civil and criminal cases, including whether the defendants have been indicted." *In re Herley Indus. Inc. Sec. Litig.*, No. 06-cv-2596, 2007 WL 1120246, at *2 & n.1 (E.D. Pa. Apr. 11, 2007).

I. **DEFENDANT APRAHAMIAN HAS NOT DEMONSTRATED THAT HE WILL SUFFER ANY EXTRAORDINARY BURDEN SUFFICENT TO WARRANT A STAY OF ALL PROCEEDINGS AGAINST HIM.**

   A. **Courts Do Not Stay Proceedings Simply Because a Civil Defendant Has Been Indicted on Related Criminal Charges.**

Courts do not automatically grant a stay simply because an individual is litigating in civil and criminal cases simultaneously:

> A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995); *accord De Vita v. Sills*, 422 F.2d 1172, 1178-79 (3d Cir. 1970); *Golden Quality*, 87 F.R.D. at 56. Indeed, "a policy of freely granting stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration." *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980).

Instead, a "motion for a stay entails a ***case-by-case, fact-specific inquiry***." *Hilda M. v. Brown*, No. 10-cv-02495, 2010 WL 5313755, at *3 (D. Colo. Dec. 20, 2010) (emphasis added). Thus, although Defendant Aprahamian can point to several cases where courts have issued stays in some form or fashion when defendants were indicted, this does not establish any "weight of authority" supporting his cause. (Dkt. No. 1537-2 at 3 & n. 4.)[3] There are also many cases where

---

[3] For example, Defendant Aprahamian's long string-cite includes a case where the court's decision was heavily influenced by the fact that claims against the sole corporate defendant were already stayed due to bankruptcy proceedings and three of the four individual defendants were indicted. *Adelphia Commc'ns Sec. Litig.*, No. 02-cv-1781, 2003 WL 22358819, at *1, *6 (E.D. Pa. May 13, 2003). The remaining cases cited by Aprahamian tend to involve relatively simple claims and fewer parties where the indicted

3

courts *have refused* to issue stays to an indicted defendant.[4] The real question here is whether the facts warrant a stay in *this* case.

### B. Defendant Aprahamian's "Fifth Amendment Dilemma" Does Not Warrant a Stay Because Less Drastic Methods Can Adequately Protect His Interests.

Defendant Aprahamian argues that in the absence of a stay, he must confront a "Fifth Amendment dilemma" whereby he will face the choice of asserting his Fifth Amendment rights in response to civil discovery and thereby risking adverse inferences, or answering civil discovery and thereby risking waiver of his Fifth Amendment rights in his criminal trial. (Dkt. No. 1537-2 at 4-5.) As noted in Section I.A, *supra*, this "dilemma" *does not* entitle an indicted

---

individuals comprised a substantial portion of the case as a whole. *See, e.g.*, *McCullers v. Commonwealth of Pa.*, No. 15-cv-3732, 2016 WL 3551624, at *3-*13 (E.D. Pa. June 30, 2016) (staying excessive use of force case after dismissing all but two defendants, one of whom was indicted); *Seeman v. Locane*, No. 10-cv-6597, ECF No. 17 (D.N.J. Feb. 1, 2011) (staying vehicle accident case involving two defendants, one of whom had been indicted); *Doe v. Indyke*, No. 20-cv-00484, 2020 WL 5518384, at *1-*2 (S.D.N.Y. Sept. 14, 2020) (staying a sexual assault case involving only two defendants, one of whom was dead and the other was indicted); *Hilda*, 2010 WL 5313755, at *1 (staying case regarding faulty maintenance of a boiler where three of the five individual defendants were indicted); *Doe v. Pa. State Univ.*, No. 12-cv-2068, 2013 WL 593415, at *1 (M.D. Pa. Feb. 14, 2013) (staying sexual assault case where three of the four individual defendants had been indicted); *S.E.C. v. Boock*, No. 09-cv-8261, 2010 WL 2398918, at *3 (S.D.N.Y. June 15, 2010) (staying case where two individual defendants out of five non-nominal defendants had been indicted).

[4] *See, e.g.*, *Louis Vuitton*, 676 F.3d at 100-04 (affirming denial of request by two indicted individual defendants to stay civil proceedings); *De Vita*, 422 F.2d at 1178-81(affirming denial of request for an order staying professional disciplinary proceedings pending outcome of criminal trial); *Fox v. Lackawanna County*, No. 16-cv-1511, 2018 WL 1203363, at *2-3 (M.D. Pa. Mar. 8, 2018) (denying the requests of multiple indicted individual defendants to stay civil proceedings); *Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*, No. 01-cv-10695, 2002 WL 844345, at *4 (S.D.N.Y. May 2, 2002) (same); *Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 11-15 (D. Mass. 1991) (same); *Transatlantic Reinsurance Co. v. Ditrapani*, No. 90-cv-3884, 1991 WL 12135, at *3-4 (S.D.N.Y. Jan. 28, 1991) (same); *Golden Quality*, 87 F.R.D. at 55-58 (same); *Garcia v. City of Leavenworth*, No. 19-cv-2049, 2019 WL 3302306, at *2-4 (D. Kan. July 23, 2019) (denying indicted individual defendant's request for stay of proceedings); *S.E.C. v. N1 Techs., Inc.*, No. 17-cv-23618, 2018 WL 8343503, at *1-3 (S.D. Fla. Jan. 30, 2018) (same); *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1045-47 (C.D. Cal. 2014) (same); *Reck v. Berkshire Life Ins. Co. of Am.*, No. 10-cv-0529, 2011 WL 335569, at *2-4 (W.D. Pa. Jan. 31, 2011) (same); *Motorola, Inc. v. Abeckaser,* No. 07-cv-3963, 2009 WL 816343, at *3 (E.D.N.Y. Mar. 26, 2009) (same); *Lizarraga v. City of Nogales*, No. 06-cv-474, 2007 WL 215616, at *1-4 (D. Ariz. Jan. 24, 2007) (same); *Paine*, 486 F. Supp. at 1119 (same); *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1236-42 (N.D. Okla. 2003) (denying indicted defendant's motion to stay discovery).

defendant to a stay of proceedings. More importantly though, Aprahamian's "Fifth Amendment dilemma" is, in actuality, a "false dilemma" because he incorrectly presumes that a stay is the ***only*** means by which the Court can address the issue.

There are a "variety of procedures that can be utilized to lessen the detriment to a defendant facing such a quandary." *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1240 (N.D. Okla. 2003). "Less drastic methods in lieu of a stay include sealing answers to interrogatories, sealing answers to depositions, [and] imposing protective orders" that permit the defendant to provide discovery without fear of a Fifth Amendment waiver. *Id*. Under such a protective order, the Court could prohibit the use of sealed answers "for any purpose outside the civil proceeding except for perjury or impeachment." *Id*. at 1242. The Court could similarly protect documents produced under that protective order by employing appropriate restrictions on their use and disclosure. *See Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 15 n. 12 (D. Mass. 1991) (ordering the parties to file a protective order that includes limits governing the use and filing of documents subject to that protective order); *In re Plastics Additives Antitrust Litig.*, No. 03-cv-2038, 2004 WL 2743591, at *8 (E.D. Pa. Nov. 29, 2004) ("defendants may seek the entry of a protective order, which forbids the dissemination of information gathered through civil discovery to outside parties"). Alternatively, Aprahamian could choose to forego such protective orders and invoke his Fifth Amendment rights in response to discovery, subject to the possibility of later moving to withdraw that invocation based on a burden analysis by the Court. *See S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 191-93 (3d Cir. 1994) (discussing considerations for evaluating withdrawal of Fifth Amendment invocations).

Various courts have adopted this more sensible approach of declining to stay proceedings in favor of less drastic procedures.[5] There is no reason why such a sensible approach cannot be applied to Aprahamian.

### C. Participating in This MDL Will Not Impose an Undue Burden.

Aprahamian next contends that a stay is necessary because it is a burden on his resources to simultaneously defend against both his civil and criminal actions. (Dkt. No. 1537-2 at 5-7.) While the claims against him in this MDL and in his criminal proceedings are complex and document intensive, this should not relieve Aprahamian from participating in the civil litigation. Just as resource commitments increase with a case's complexity, so too do the countervailing interests of the Court and Plaintiffs in managing the civil case to an efficient resolution. *See Digital Equip.*, 142 F.R.D. at 12 (need for speedy discovery is "particularly true in the context of complex litigation which must proceed in an efficient manner"). Thus, even in exceedingly complex matters, courts can still expect an indicted defendant to participate in civil proceedings. *See CFS*, 256 F. Supp. 2d at 1235 & 1241 (denying stay request for defendant facing four-week criminal trial alongside a parallel civil proceeding involving nearly 11,000 boxes of documents and approximately 250 fact witness depositions).

Aprahamian's claim that finite resources will hamper his participation in this MDL is not persuasive. First, this is not a case where criminal charges predate the civil case such that the criminal defendant must focus on meeting already imposed deadlines in the criminal matter.[6]

---

[5] *E.g.*, *Garcia*, 2019 WL 3302306, at *3; *N1 Techs.*, 2018 WL 8343503, at *2; *ESG Capital*, 22 F. Supp. 3d at 1045-14; *Doe v. City of San Diego*, No. 12-cv-689, 2012 WL 6115663, at *2 (S.D. Cal. Dec. 10, 2012); *Lizarraga*, 2007 WL 215616, at *4; *CFS*, 256 F. Supp. 2d at 1242; *Digital Equip.*, 142 F.R.D. at 14.

[6] This fact distinguishes Aprahamian's reliance on the dicta in *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967). There, the criminal action predated the civil action by a year. *See id.* at 607 nn. 2 & 3 (indicating the criminal action was filed in 1965 while the civil action was filed in 1966).

Here, Aprahamian's criminal case is in its infancy and is not set for trial. Therefore, Aprahamian and his counsel can balance this MDL and his criminal proceedings when advocating for schedules and trial dates that will allow Aprahamian to meet his obligations in both proceedings.

Second, though Aprahamian focuses his argument on the volume of documents produced by the DOJ in his criminal case, the volume alone does not tell the whole story. Though Plaintiffs are not privy to those documents, it stands to reason that the size of that production is the result of the DOJ turning over all potentially exculpatory *Brady* material in its possession.[7] As experienced attorneys, Aprahamian's criminal counsel will no doubt employ the same ESI review methods used by the Parties in this MDL (e.g., deduplication, threading, targeted searches, and technology assisted review) to cull the universe of documents and prepare their case.

Third, Aprahamian's claim of burden is mitigated by the fact that he is represented by three different law firms. The firm of Gage Spencer Flemming LLP appeared on his behalf in these civil proceedings. In the criminal matter, he is represented by that firm and two others. (*See* Dkt. Nos. 8, 12, 31, 32 in *United States v. Ara Aprahamian*, No. 20-cr-00064 (E.D. Pa.).) "No reason has been advanced" why the Gage Spencer Flemming law firm "cannot devote themselves to matters involved in this suit while those who represent [Aprahamian] in the criminal matter take care of his interests in that proceeding." *CFS*, 256 F. Supp. 2d at 1241; *accord Lizarraga*, 2007 WL 215616, at *3 (finding representation by multiple firms across civil and criminal cases weighs against granting a stay); *Paine*, 486 F. Supp. at 1119 (same). Moreover, given that Aprahamian's former employers, Actavis and Taro, have vested interests in

---

[7] DOJ policy provides that, "[i]n cases involving voluminous evidence obtained from third parties, prosecutors should consider providing defense access to the voluminous documents to avoid the possibility that a well-intentioned review process nonetheless fails to identify material discoverable evidence." Deputy Attorney General David Odgen, U.S. Department of Justice, Memorandum for Department Prosecutors, Guidance for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010), available at https://www.justice.gov/archives/dag/memorandum-department-prosecutors.

ensuring that they are not held vicariously liable for Aprahamian's conduct, there is every reason to believe that counsel for Actavis and Taro can and will coordinate with Aprahamian's counsel to defend the claims in these civil proceedings, including by directing Aprahamian's counsel to the most relevant documents.

Finally, the notion that Aprahamian's preparation for these civil proceedings must come at the expense of his preparation for the criminal proceedings, or vice versa, is misplaced. Indeed, to the extent his criminal and civil proceedings overlap, "preparation for one trial is preparation for the other." *Paine*, 486 F. Supp. at 1119. With multiple firms representing Aprahamian across his criminal and civil proceedings, his attorneys can not only divide their labor to advance those respective cases but also collaborate to ensure they are doing so efficiently.

In short, "[a]lthough proceeding in two forums may burden [Aprahamian's] finances, the strain upon [his] finances does not outweigh other interests that militate in favor of proceeding expeditiously." *Digital Equip.*, 142 F.R.D. at 14 (internal citations omitted); *accord Lizarraga*, 2007 WL 215616, at *3; *CFS*, 256 F. Supp. 2d at 1241; *Paine*, 486 F. Supp. at 1119.

## II.    STAYING PROCEEDINGS WILL INTERFERE WITH THE EFFICIENT ADMINISTRATION OF THIS MDL.

The Court and Plaintiffs have an interest in speedy discovery and the timely resolution of claims. "This is particularly true in the context of complex litigation which must proceed in an efficient manner." *Digital Equip.*, 142 F.R.D. at 12. Rather than promoting the efficient resolution of this MDL, staying proceedings as to Aprahamian would have the opposite effect. By definition, a stay would delay discovery from Aprahamian that is relevant to Plaintiffs' efforts to build their cases in this MDL. As noted in Section I.B, *supra*, this information can be obtained without imposing a "Fifth Amendment dilemma" on Aprahamian. Thus, a stay would

serve no purpose other than to frustrate discovery. Moreover, granting a stay would disrupt this MDL by duplicating depositions and upending the MDL schedule upon vacatur of the stay.

> **A.     No Meaningful Efficiency Would Be Gained From a Stay.**

Contrary to Aprahamian's suggestion, (Dkt. No. 1537-2 at 9), staying proceedings as to him would not result in meaningful efficiencies in this MDL. His criminal trial is likely years away from resolution. If he is acquitted, no issues will be mooted or narrowed. Even if he is convicted on all 16 drugs in his Indictment, the issues that are narrowed would add little incremental value to an MDL involving *hundreds* of drugs and *dozens* of defendants. A speculative potential for settlement with him is hardly an efficiency when—to the extent it ever materializes—it would come at the expense of years of waiting and disruption to this MDL. And, the swiftest way to ensure a "complete accurate factual record," (*id*.), would be to permit discovery to go forward, not stay discovery and all proceedings regarding a key defendant. In short, Aprahamian asks the Court "to rely upon fortuitous events to manage its docket" based on vague and speculative promises. *Digital Equip.*, 142 F.R.D. at 14 (finding it "unrealistic" to stay proceedings based on vague promises of efficiency); *CFS*, 256 F. Supp. 2d at 1242 (same); *Lizarraga*, 2007 WL 215616, at *3 (same).

> **B.     The Stay Requested by Aprahamian Would Result in Repeat Depositions and Wreak Havoc on the MDL Schedule.**

"In this action other defendants [and non-parties] are named as having participated with [Aprahamian] in the scheme to [fix prices and allocate markets]. Plaintiff[s are] entitled to proceed with [their] discovery proceedings against each of those [witnesses]. Were a stay of discovery as against [Aprahamian] granted, it would be necessary upon the vacatur of the stay, to re-notice the depositions of [those witnesses] in order to have [Aprahamian] bound by them." *Paine*, 486 F. Supp. at 1119; *accord Digital Equip.*, 142 F.R.D. at 14 (holding that the prospect

9

of repeat depositions strongly weighed against the indicted defendants' request to stay proceedings); *Transatlantic Reinsurance Co. v. Ditrapani*, 90-cv-3884, 1991 WL 12135, at *4 (S.D.N.Y. Jan. 28, 1991) (same).

The prospect of reopening dozens of depositions would disrupt the efficient administration of this MDL and result in great inefficiencies. Such a complete upending of the discovery process in this MDL would undue years of work by this Court and the Parties and require resetting all of the existing deadlines in this matter, including the Bellwether trials.

Even if the reopening of depositions could be avoided, Aprahamian's temporary exit and subsequent reentry into these proceedings at some uncertain point in the future would frustrate the administration of this MDL. If Aprahamian finds it difficult to litigate this MDL as it proceeds, he will no doubt find it exceedingly more difficult to jump back in and get up to speed after a long hiatus. These practical difficulties would no doubt spawn subsequent efforts by Aprahamian to halt or reverse the progress of this MDL to the detriment of all the other Parties.

### III. GRANTING A STAY WOULD PREJUDICE PLAINTIFFS BY IMPEDING ACCESS TO EVIDENCE, DUPLICATING EFFORTS, AND IMPOSING UNNECESSARY EXPENSE.

"It is important to note at the outset that [every] plaintiff enjoys the right to pursue [its] case and to vindicate [its] claim[s] expeditiously." *Dawson v. Dodd*, No. 99-cv-2644, 1999 WL 410366, at *2 (E.D. Pa. June 17, 1999) (citing *Golden Quality*, 87 F.R.D. at 56). It is not mandatory that Plaintiffs show some "unique injury" beyond delay to justify a denial of the requested stay. Although "[t]he Court *may* insist that the Plaintiff establish more 'prejudice' than simply the right to pursue his case and vindicate his claim expeditiously," other courts have noted that "'it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently

10

egregious to have attracted the attention of the criminal authorities.'" *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-cv-5530, 2002 WL 31111766, at *3 (E.D. Pa. Sept. 18, 2002) (emphasis added) (quoting *Sterling Nat'l Bank v. A–1 Hotels Int'l, Inc.*, 175 F. Supp. 2d. 573, 575 (S.D.N.Y 2001)); *see also Plastics Additives*, 2004 WL 2743591, at *6 (finding that a stay "would prejudice plaintiffs by preventing the expeditious resolution of the lawsuit").

To the extent the Court requires some additional showing of injury to the Plaintiffs, the facts of this case amply demonstrate such harm. First, the disruptions to this MDL described in Section II.B, *supra*, amount to more than mere delay. The re-opening of depositions and the disruption to this MDL's progress following vacatur of a stay, thereby undoing years of work, would "impose[s] upon [P]laintiff[s] and the other parties duplicative and unnecessary effort and additional expense." *Paine*, 486 F. Supp. at 1119.

Second, a stay of proceedings as to Aprahamian would prejudice Plaintiffs by putting them in the position of litigating claims against other Defendants while simultaneously "imped[ing the Plaintiffs'] ability to collect the necessary information" to litigate those claims. *Soroush v. Ali*, No. 09-cv-3703, 2009 WL 3467897, at *3 (E.D. Pa. Oct. 28, 2009). Discovery from Aprahamian is relevant not only to establishing his liability, but also the liability of other Defendants. Indeed, he is expected to be a key figure in both the States' Teva-Centric bellwether trial and the EPPs' and DPPs' bellwether trials for Clobetasol and Clomipramine.

Aprahamian should respond to discovery and provide Plaintiffs with the evidence they need to prepare their cases. And, as described in Section I.B, *supra*, there are methods by which he can do so while minimizing his risks. If Aprahamian nonetheless decides that he will *not* provide such discovery, then "Plaintiffs are entitled to preserve the fact that they were deprived of information from [one of] the most central figure[s] in the civil proceedings by a Fifth

11

Amendment assertion" and to "preserve any right to a negative inference" as substitute evidence. *CFS*, 256 F. Supp. 2d at 1239; *see also Paine*, 486 F. Supp. at 1119 ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim."); *Transatlantic Reinsurance*, 1991 WL 12135, at *4 (same).

## IV.   PUBLIC AND NON-PARTY INTERESTS WEIGH AGAINST A STAY.

Non-party witnesses plainly have an interest in not being deposed multiple times unnecessarily. As outlined in Section II.B, *supra*, issuing a stay as to Aprahamian risks the prospect re-deposing dozens of witnesses. Thus, the interests of these non-party witnesses would be best served by denying Aprahamian's stay request.

Additionally, the public's interest is best served by denying Aprahamian's stay request so that this complex antitrust MDL can move toward a resolution as efficiently as possible. "The public's interest in vigorously enforcing national anti-trust laws through the expeditious resolution of a private antitrust litigation is particularly great." *Plastics Additives*, 2004 WL 2743591, at *8.

Aprahamian's contention that these public interests are adequately served by the DOJ's criminal prosecution misses the mark for two reasons. (*See* Dkt. No. 1537-2 at 10.) First, the cases on which he relies for this proposition involve private disputes vindicating predominately private interests.[8] In contrast to private suits vindicating private interests, the public's "interest is even greater when the nature of the litigation is a class action lawsuit" or a State *parens patriae* claim "filed on behalf of nationwide consumers of a particular product over the course of [many

---

[8] The one case involving public interests as opposed to private interests, *Adelphia*, is unique in that the court also based its decision on the fact that claims against the sole corporate defendant in the case were already subject an automatic bankruptcy stay. *Adelphia*, 2003 WL 22358819, at *6.

12

years]." *Plastics Additives*, 2004 WL 2743591, at *8. These public remedial interests "are not rendered less acute by" the DOJ's criminal proceedings. *Id.*; *see also Blood Reagents,* 756 F. Supp. 2d at 636 ("the public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution of this class-action lawsuit"). Second, the total number of drugs at issue in this MDL, as well as the number of drugs for which Aprahamian is alleged to have personal liability, far outstrips those that are the subject of Aprahamian's Indictment. For the victims nationwide who collectively overpaid billions of dollars for the drugs at issue in this MDL that are not the subject of Aprahamian's Indictment, a guilty verdict against him may bring them some level of personal satisfaction, but it will not make them whole. The public's interest is best served by advancing this MDL so that those victims can be made whole.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Aprahamian's Motion to Stay all Civil Proceedings Against Him.

Dated: October 20, 2020                                  Respectfully Submitted,


WILLIAM TONG                                             ERIC S. SCHMITT
ATTORNEY GENERAL                                         ATTORNEY GENERAL

*/s/ W. Joseph Nielsen*                                  */s/ Michael Schwalbert*
W. Joseph Nielsen                                        Michael Schwalbert
Assistant Attorney General                               Assistant Attorney General
55 Elm Street                                            815 Olive St., Ste. 200
P.O. Box 120                                             Saint Louis, MO 63101
Hartford, CT 06141-0120                                  (p) 314-340-7888
Tel: (860) 808-5040                                      (f) 314-340-7981
Fax: (860) 808-5033                                      Michael.Schwalbert@ago.mo.gov
Joseph.Nielsen@ct.gov

                                                         *Counsel for Plaintiff State of Missouri*
*Liaison Counsel for the States*

<u>*/s/ Roberta D. Liebenberg*</u>
Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
215-567-6565
rliebenberg@finekaplan.com

*Liaison and Lead Counsel for End-Payer Plaintiffs*

<u>*/s/ William J. Blechman*</u>
William J. Blechman, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
wblechman@knpa.com

*Counsel for the Kroger Plaintiffs and Liaison Counsel for Direct Action Plaintiffs*

<u>*/s/ Dianne M. Nast*</u>
Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
215-923-9300
dnast@nastlaw.com

*Liaison and Lead Counsel for Direct Purchaser Plaintiffs*

<u>*/s/ Jonathan W. Cuneo*</u>
Jonathan W. Cuneo
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
202-789-3960
jonc@cuneolaw.com

*Lead Counsel for Indirect-Reseller Plaintiffs*