**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | HON. CYNTHIA M. RUFE |

**DEFENDANT TEVA PHARMACEUTICAL USA, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S JULY 13, 2020 MEMORANDUM AND ORDER ON BELLWETHER SELECTION**

Defendant Teva Pharmaceuticals USA, Inc. ("Teva") respectfully moves—in light of changed circumstances that significantly affect both Teva's ability to defend itself in this MDL and the progression of the MDL itself—for reconsideration of the Court's July 13, 2020 Memorandum and Order (ECF Nos. 1442, 1443) selecting the State Plaintiffs' October 31, 2019 amended complaint (the "Teva AG" complaint) and the direct purchaser plaintiffs' ("DPPs") and end-purchaser plaintiffs' ("EPPs") Pravastatin complaints as bellwether cases.

Approximately six weeks after the Court issued its decision selecting bellwether cases, the United States Department of Justice Antitrust Division ("DOJ") charged Teva with criminal violations of the Sherman Antitrust Act.  In particular, DOJ charged Teva in a three-count indictment relating to 13 pharmaceutical products, all of which are at issue in the Teva AG complaint, and one of which, Pravastatin, is the subject of one of the three DPP and EPP single-drug bellwether actions.  The Teva indictment does not impact the single-drug Clobetasol and Clomipramine complaints, which were also chosen as bellwethers.

1

The pending criminal charges against Teva, along with the other related factors described herein, will necessarily impair Teva's ability to defend itself in this MDL until the charges have been fully resolved. And, in turn, the charges will impede the progression of the Teva AG and Pravastatin bellwether actions. Because the Court could not consider the impact of these factors in selecting the bellwether actions, Teva respectfully requests that the Court reconsider its selection of the Teva AG and Pravastatin actions, as set forth below.

## I.     BACKGROUND

### A.     The Court's Bellwether Selection

On October 24, 2019, the Court entered a Case Management Order and Discovery Schedule setting forth the process for the selection of bellwether claims or cases. *See* Pretrial Order No. 105 ¶ 9 (ECF No. 1135). In accordance with that Order, on February 20, 2020, Special Master David H. Marion issued a third Report and Recommendation selecting four bellwether cases in this litigation: 1) the State Plaintiffs' so-called "Teva-centric" complaint; 2) single-drug class actions regarding Clobetasol; 3) single-drug class actions regarding Clomipramine; and 4) single-drug class actions regarding Pravastatin. *See* Third R. & R. (ECF No. 1244). On July 13, 2020, the Court overruled Defendants' objections and approved Special Master Marion's R&R. *See* July 13, 2020 Order (ECF No. 1443).

### B.     The Teva Indictment

Six weeks later, on August 25, 2020, DOJ charged Teva in a three-count indictment. *See United States v. Teva Pharmaceuticals, USA, Inc. and Glenmark Pharmaceuticals Inc., USA*, No. 20-CR-00200-RBS, ECF 28 (E.D. Pa. Aug. 25, 2020) (the "Teva Indictment"). The allegations in the August 25, 2020 Teva Indictment significantly overlap with those made by plaintiffs in the MDL ("MDL Plaintiffs") with regard to products, alleged co-conspirators, and witnesses in the Teva AG and Pravastatin complaints. In particular, the Teva Indictment alleges that, beginning

2

around May 2013 until or around December 2015, Teva engaged in a conspiracy "to suppress

and eliminate competition by agreeing to increase and maintain prices" of at least 13 generic

drugs.  Teva Indictment ¶ 5.  Each and every one of those 13 drugs is at issue in the States' Teva

AG complaint:[1]

| Drug | Complaint Citation | Indictment Citation |
|------|--------------------|--------------------|
| Pravastatin | Teva AG Compl. ¶¶ 577, 607-614, 668-674, 681-704, 721-722, 918-922, 932-934, 971, 1116 | Teva Indictment ¶¶ 13, 20, 22-27 |
| Carbamazepine Tablets and Chews | Teva AG. Compl. ¶¶ 835, 838, 847, 865-870, 873-876 | Teva Indictment ¶ 39 |
| Clotrimazole Topical Solution | Teva AG Compl. ¶¶ 835, 847, 865-868, 876 | Teva Indictment ¶ 39 |
| Etodolac IR | Teva AG Compl. ¶¶ 715 | Teva Indictment ¶¶ 39, 53 |
| Etodolac ER | Teva AG Compl. ¶¶ 150, 473–481 | Teva Indictment ¶¶ 39-40 |
| Fluocinonide Cream, Emollient Cream, Gel, and Ointment | Teva AG Compl. ¶¶ 602-604, 626-627, 829-846, 865, 868, 873 | Teva Indictment ¶ 39 |
| Warfarin | Teva AG Compl. ¶¶ 150, 838, 847, 865, 868-877, 880-881, 928, 930 | Teva Indictment ¶ 39 |
| Nadolol | Teva AG Compl. ¶¶ 149, 155, 540, 542-551, 626, 636-639, 649, 679, 745, 990, 999 | Teva Indictment ¶ 53 |
| Tobramycin | Teva AG Compl. ¶¶ 239-247 | Teva Indictment ¶ 51, 53 |

The Teva Indictment alleges that Teva conspired on these 13 products with four

competitors—Apotex, Glenmark, Sandoz, and Taro Pharmaceuticals.  All four are co-Defendants

---

[1] The Teva Indictment specifically alleges anti-competitive conduct with respect to three drugs, but also suggests that the government intends to introduce evidence regarding another ten drugs.  The Teva Indictment suggests that the government's charges may not be limited to these 13 products, and might also reach some or all of the other products at issue in the States' Teva AG bellwether complaint.  *See* Teva Indictment ¶¶ 5, 39, 53 (*e.g.* "The conversations about price increases and launches occurred with respect to the following drugs, ***among others***.") (emphasis added).

3

in the Teva AG case, and Apotex, Glenmark, and Sandoz are co-Defendants in the Pravastatin

complaint.  Like the government, the MDL Plaintiffs allege that Teva conspired with Apotex,

Glenmark, Sandoz, and Taro as to those drugs, among others:

| Co-Defendant | Complaint Citation | Total Number of References in Complaint to Co-Defendant Name |
|---|---|---|
| Apotex | Teva AG Compl. ¶¶ 31, 110, 161, 370-371, 373, 375, 578, 663, 668-670, 683, 695-698, 700, 702-703, 748-749, 784-785, 847, 917-926, 935, 1064, 1066, 1073, 1076-1077, 1116, 1130, 1133, 1204-1205, 1208 | 98 |
| Glenmark | Teva AG Compl. ¶¶ 36, 41-42, 68, 107, 120, 137, 147, 161, 221, 482-495, 504, 572, 577, 594-596, 602, 604, 607-615, 617-618, 623, 625, 663, 665, 668-669, 682-683, 686-690, 694, 700, 703, 744, 848, 919, 921, 970-972, 1062, 1064-1067, 1075-1077, 1112, 1116, 1128, 1183-1184, 1187, 1292-1295, 1319-1322 | 234 |
| Sandoz | Teva AG Compl. ¶¶ 46, 58, 68, 107, 120, 122, 126, 139-140, 142-143, 147, 149, 153, 155-156, 159-160, 162, 219-225, 227-238, 240-247, 249-256, 375, 507, 540, 544-550, 552, 554-555, 572, 575, 577, 591-593, 602, 604, 615-622, 627, 641, 646-649, 663, 665, 668-670, 672, 706, 708-718, 740, 744-745, 748-749, 783-786, 790, 793-794, 804, 830-831, 842, 844-845, 847-848, 884, 887, 890-891, 916, 959, 973-974, 978-992, 994-1005, 1007-1011, 1014-1015, 1018, 1022, 1027-1028, 1031, 1033-1040, 1042-1050, 1052-1057, 1059, 1062-1066, 1068-1071, 1073-1078, 1082, 1112-1113, 1116, 1118, 1120-1121, 1125, 1128, 1162-1163, 1166, 1346-1349 | 616 |
| Taro | Teva AG Compl. ¶¶ 32, 59, 107, 120, 122, 126, 130, 132, 135, 140-141, 150, 154, 156, 159, 392, 394-395, 397-402, 404-408, 410, 412-415, 417-424, 426-428, 474-475, 479, 571, 578, 597, 602-604, 623-625, 627, 644, 663, 668-670, 672, 706, 709-714, 716-720, 740, 744-746, 748-749, 784-789, 791, 793-794, 830-833, 835-836, 838-842, 844, 846-848, 851, 865-876, 890-891, 916, 1033-1034-1041, 1043-1044, 1048-1050, 1062, 1064, 1066-1068, 1073-1078, 1082, 1111-1113, 1116, 1176-1177, 1180, 1274-1277 | 448 |

But the overlap with regard to parties is even broader than the named corporate

Defendants.  The Teva Indictment references ■ individuals—■■■■■■■■■■■■■■■■

4

███████████████████████████████████—who are prominently featured
in the Teva AG and/or Pravastatin complaints, and ████████ are named Defendants in the
MDL.  *See* ████████.  The allegations against Teva in the Teva AG complaint in particular
rest upon the conduct of the four named Teva individual defendants—████████████████
█████████████████████████—as well as the conduct of ██████████████████
████████:

| Named Individual | Total Number of References in Teva AG Complaint to Named Individual |
|---|---|
| ████████ | ██ |
| ████████ | █ |
| ████████ | █ |
| ████████ | █ |
| ████████ | █ |

## C.     The Court's Stay Orders

Long before any indictments were filed against certain MDL Defendants, the Court
entered a complete stay of discovery.  *See* Pretrial Orders 23, 32 (ECF Nos. 347, 427).  It
thereafter permitted certain discovery to proceed, including document discovery.  Substantial
progress in discovery has since been made, notwithstanding the Court's imposition of more
limited stays focused on depositions.  Defendants have produced approximately 31.6 million
documents (more than 3.9 million of which were produced by Teva), substantially completed
production of transactional data for more than 100 drugs, and responded to multiple rounds of
written discovery.  Both Plaintiffs and Defendants are also pursuing nonparty discovery,
conducting ongoing meet and confers and receiving productions in response to a collective
issuance of more than 80 nonparty subpoenas.   In addition, over a thousand subpoenas for phone
records have been issued.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

On June 5, 2020, the Court issued a limited stay of depositions of █ individuals identified by DOJ (the "DOJ List").  *See* PTO 126, ECF No. 1409.  The Court extended the stay on August 31, 2020.  *See* PTO 136, ECF No. 1494.  The limited stay of depositions is currently set to expire on November 30, 2020.  *See* Pretrial Order 136 ¶ 1 (ECF No. 1494).

The individuals on the DOJ List are former and current employees of Defendant corporations which are under investigation (or facing criminal charges) or who may be witnesses in the criminal proceedings and in the Teva-centric State AG bellwether case.  ███████████ ██████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ ████████ ███████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████ Their testimony will be important to both the DOJ criminal cases, and in particular, to Teva's defense against the MDL Plaintiffs' allegations in the Teva AG and Pravastatin bellwether cases.

Teva understands that DOJ is presently considering seeking an extension of the limited stay of depositions of the individuals on the DOJ Stay List, and that a continued stay as to at least some portion of the individuals is warranted.  Teva believes that the stay of the individuals on the DOJ Stay List who may be witnesses in or relevant to the criminal proceedings against Teva

---

[2] ██████████████████████████████████████████████ ███████████████████████████████████████████

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

should remain in place, and intends to file its own motion in support of an extension of a continued stay.

## II.    LEGAL STANDARD

District courts possess an "inherent power" to reconsider interlocutory orders.  *State Nat'l Ins. Co. v. Cty. of Camden*, 824 F.3d 399, 406 (3d Cir. 2016); *see also United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.").  When seeking reconsideration of an order, a moving party "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law [or fact] or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam); *accord Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  In this context, new evidence "means evidence that a party could not earlier submit to the court because that evidence was not previously available."  *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010) (citation omitted).

Federal Rule of Civil Procedure 60(b)(6) also permits a court to grant relief from a final judgment, order, or proceeding for "any other reason that justifies relief" where the moving party can "demonstrate the existence of 'extraordinary circumstances'" that justify revisiting the decision.  *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (citations omitted).

## III.    ARGUMENT

Such extraordinary circumstances are present here because Teva's indictment fundamentally undermines the suitability of the Teva AG and Pravastatin cases as effective bellwethers.  For a bit of historical context: "The term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock."  *In re Chevron U.S.A.,*

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).  "The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray . . . ."  *Id.*  The success of the bellwether cases here, too, depends on their suitability as models for the other cases that will follow in their stead.

Bellwethers are recognized by "both bench and bar" as an effective tool because they promote efficiency:

> If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts.  Common issues or even general liability may also be resolved in a bellwether context in appropriate cases.

*Id.*

In short, the Teva Indictment materially diminishes the value that the Teva AG and Pravastatin complaints have to the MDL litigants and will not promote, and in all likelihood will undermine, efficiency in the MDL.  And, the use of those cases as bellwethers will present significant (including constitutional) hardship to Teva.  If any number of the witnesses on the DOJ Stay List invokes their Fifth Amendment rights, which is a foreseeable outcome given the pendency of criminal charges relating to those cases, this Court will be faced with two crippled bellwether trials and an inevitable stall of progress in the MDL.  If, on the other hand, the individuals on the DOJ List give deposition testimony, Teva will be forced to defend itself in a criminal trial where the government has been handed an unfair advantage of unknowable scope, as discussed below.

### A.    Teva Will Suffer Extreme Hardship Without Reconsideration of the Bellwether Selection

Several of the individuals who are on the DOJ Stay List are important fact witnesses in the Teva AG and Pravastatin bellwether cases and the pending criminal cases.  Their testimony

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

at deposition—assuming they do not invoke their Fifth Amendment right against self-incrimination—will necessarily provide a full preview of Teva's defenses to the government in a way that Federal Rules of Criminal Procedure do not require or contemplate.  The inevitable result will be an unfair advantage to the government.

The Federal Rules of Criminal Procedure significantly limit the government's ability to obtain discovery from a defendant, whereas the Federal Rules of Civil Procedure function to provide all parties with discovery far broader than the evidence to be used at trial.  *See United States v. Mellon Bank, N. A.*, 545 F.2d 869, 873 (3d Cir. 1976) (affirming district court's stay of civil case pending criminal proceedings in part because "the similarity of the issues left open the possibility that [party] might improperly exploit civil discovery for the advancement of his criminal case"); *United States v. One 1967 Buick Hardtop Electra*, 304 F. Supp. 1402, 1403 (W.D. Pa. 1969) (instructing that a party should not be permitted to obtain through "the liberal discovery allowances of [the] rules of civil procedure" what they are not entitled to through the Federal Rules of Criminal Procedure).

The hardships forced upon parties defending a concurrent criminal matter are so severe that courts have stayed civil litigation pending the resolution of the overlapping criminal case.  In *Trustees of the Plumbers and Pipefitters National Pension Fund, et al. v. Transworld Mechanical Inc., et al.*, 886 F. Supp. 1134 (S.D.N.Y. 1995), private plaintiffs filed civil claims against corporate and individual defendants that had been previously criminally indicted.  In granting a stay of the civil matter as to all defendants, the court emphasized that the allegations in both the civil and criminal actions were similar, and that the individual defendants who might have been forced to invoke their Fifth Amendment rights were "the central figures" in the civil case as "the controlling officers of the corporate defendants."  886 F. Supp. at 1139–41.  The

9

court explained at the outset that courts are afforded the discretion to stay civil proceedings under such circumstances "because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in the Federal Rules of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Id.* at 1138;[3] *see also In re Derivative Litig.*, No. 06-02964, 2007 WL 1101276, at *2 (E.D. Pa. Apr. 11, 2007) (listing identical factors in stay analysis); July 20, 2007 Order, No. 06-02964 (ECF No. 46) (granting stay of civil proceedings). ██████████████████████████████████████████████████ ██████████████████████████████████████████████, and the same considerations described by the court in *Transworld* apply here.

Similarly, in *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993), the court imposed a stay of all discovery in the civil case, which included both individual and corporate defendants, pending resolution of a parallel criminal case against two of the individuals. The court in *Volmar* reasoned that the existence of criminal charges against two of the key individuals whose testimony was important in defending both the civil and criminal charges would lead them to invoke their Fifth Amendment privilege in the civil case and thereby deprive the corporate defendants of the ability to defend themselves in the civil cases. *Id.* at 41 ("By the time the civil trial commences, the criminal proceedings against Orlando and LaChance

---

[3] If deponents in the bellwether cases invoke their Fifth Amendment rights, adverse inferences may be drawn against individual defendants and possibly Teva, which Teva will more fully address in its anticipated motion to stay. *See Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (holding that if a deponent "invokes his constitutional privilege during civil discovery, not only does this prevent him from adequately defending his position, but it may subject him to an adverse inference from his refusal to testify"). Such an invocation would also necessarily impede fact-finding in the Teva AG and Pravastatin cases. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998) ("Without a stay, interrogatory and deposition discovery would likely cause inefficiency, because several defendants will be forced to assert Fifth Amendment privileges . . . burden[ing] the Magistrate Judge and this Court with deciding a constant stream of privilege issues . . . .").

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

will be resolved, their Fifth Amendment protection will have become less significant,  and the other defendants will not be forced to go to trial without their assistance.").

Appellate courts, including the Third Circuit, have also endorsed district court decisions issuing a stay to avoid such hardships and promote efficiency.  In *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967), for instance, the Third Circuit affirmed the district court's order staying all proceedings in a private antitrust action where a criminal antitrust action was also brought by the United States against eight of the defendants in the civil case.  In staying the civil case until after a trial of the criminal matter, the district court had reasoned that "[t]he indicted defendants should not be unduly hampered, as . . . they would be if they had to fight on two fronts at the same time."  383 F.2d at 608–09.  The Third Circuit affirmed, holding that the trial judge had not abused his discretion in the weighing of the competing interests and finding the challenges to his decision "without merit."  *Id.* at 609.

Teva is not aware of a single case in which a discretionary bellwether trial was permitted to proceed before resolution of the related criminal action involving similar allegations.  And for good reason.  This dearth of case law underscores that the rights and interests of all parties weigh in favor of waiting until criminal proceedings have concluded to progress a civil matter where the conduct alleged is overlapping.  Forging ahead to a bellwether trial on the Teva AG and Pravastatin complaints in the face of these new criminal charges will contradict these principles and result in extreme hardship.

### B.   The Parallel Criminal Proceedings Will Impede the Progress Of the MDL If the Teva AG and Pravastatin Cases Remain Bellwethers

The pending criminal charges against Teva, Glenmark, and Ara Aprahamian create substantial, practical obstacles to moving forward with the States' Teva AG and Pravastatin complaints as bellwether cases.  Unlike cases that do not implicate currently pending federal

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

indictments, these cases create a substantial risk that important witnesses will invoke their Fifth Amendment rights and choose not to testify, leaving factual gaps with regard to the key issues in the cases.

In the likely event that happens, those witnesses' substantive testimony will not be available to the fact-finder or to the parties' experts, thus undermining the selection of the Teva AG and Pravastatin cases as a representative set of cases that could provide value to the MDL litigants. *See Chevron*, 109 F.3d at 1019 (explaining the role of bellwether cases); *see also United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995) ("Though constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless. It will, for example, always disadvantage opposing parties—at least to some extent—since it keeps them from obtaining information they could otherwise get."); *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994) ("[I]nvocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth."); *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, No. 09-0954, 2009 WL 2136986, at *2 (E.D. Cal. July 15, 2009) ("[T]he pending civil litigation may substantially implicate defendants' Fifth Amendment rights against self-incrimination, *create unnecessary complexities with respect to discovery*, expose defendants' strategy or theories with respect to the criminal case, or otherwise prejudice the pending criminal proceedings.") (emphasis added). And because the criminal trial has not yet been scheduled, the delays in obtaining that testimony are likely to be significant. There is also the related likelihood that, should those individuals invoke their Fifth Amendment right not to testify in the first instance, they will later seek to withdraw that invocation after the resolution of the criminal

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

matter.  That may lead to additional depositions and inefficiencies and prompt reconsideration of dispositive briefing.

These inefficiencies can be avoided if the Teva AG and Pravastatin complaints are not the bellwethers, and instead depositions relevant to those cases remain stayed.  As the court in *Transworld* explained, a stay can promote judicial efficiency where "resolution of the criminal case may increase the possibility of settlement of the civil case due to the high standard of proof required," and noted that "the evidence garnered in the criminal trial could reduce the scope of discovery in the civil case."  886 F. Supp. at 1139–41.  The *Volmar* court similarly observed that that availability of transcripts and evidence from the criminal case may obviate the need for certain depositions and that the outcome of the criminal case may encourage settlement of the civil case.  152 F.R.D. 36 at 41-42.  And, in *Texaco*, which the Third Circuit affirmed, the trial court observed that "the trial of the criminal case will reduce the scope of discovery in the civil action [a]nd perhaps [] might also simplify the issues" in a complex matter with "alleged illegal activity in a three-state area, going back many years."  383 F.2d at 608–09.  There simply does not need to be a rush to judgment on the currently selected bellwether cases where other cases present more suitable alternatives.

### C.    The Remaining Bellwethers

The issues described herein do not impact the single-drug Clobetasol and Clomipramine complaints, and Teva does not seek reconsideration of their selection as bellwethers.  The progress that has been achieved with regard to discovery in the MDL as a whole can be leveraged with regard to the Clobetasol and Clomipramine bellwethers.  And, progress can and

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

will continue to be made with regard to third-party discovery, discovery of Plaintiffs, and class certification during the pendency of the criminal proceedings.[4]

---

[4] While all of the overarching conspiracy complaints in the MDL present significant entanglements with the parallel criminal proceedings, if the Court requires a multi-drug State AG complaint as a bellwether, Teva respectfully submits (consistent with its position in prior briefing) that the Heritage-centric complaints are better-suited for that purpose than the Teva AG complaint and the other Teva-centric complaints because criminal charges against Heritage have been resolved—thus leaving fewer issues in dispute, and fewer issues to litigate.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## IV.     CONCLUSION

For the foregoing reasons, Teva respectfully requests that the Court reconsider its July 13, 2020 Memorandum and Order as it pertains to the selection of the Teva AG and Pravastatin complaints.

Dated: November 3, 2020

Respectfully submitted,

/s/ *J. Gordon Cooney, Jr.*
J. Gordon Cooney, Jr.
John J. Pease III
Alison Tanchyk
William T. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2020, I caused a copy of the foregoing Motion for

Reconsideration to be served on counsel of record via the Court's CM/ECF system.

<u>/s/ William T. McEnroe</u>
William T. McEnroe

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**