**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL NO. 2724<br><br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |

**PLAINTIFFS' RESPONSE TO DEFENDANT TEVA PHARMACEUTICAL USA, INC.'S
MOTION FOR RECONSIDERATION OF THE COURT'S JULY 13, 2020
MEMORANDUM AND ORDER ON BELLWETHER SELECTION**

PUBLIC VERSION
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 3

    I.    The Teva Indictment is Not "New Evidence," Nor Are Teva's Arguments New ............ 3

    II.   Teva's Arguments Against the Court's Bellwether Plan Remain Meritless ..................... 7

          A.    The Court Should Decline Teva's Invitation to Disqualify As Bellwethers and Stay Cases in which an Indicted Entity is a Defendant .................................. 7

          B.    Teva's Fifth Amendment Issues Are Not Unusual and Will Be Present in Any Bellwether .................................................................................................... 9

CONCLUSION ................................................................................................................................ 13

PUBLIC VERSION
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

TABLE OF AUTHORITIES

Page

**Cases**

*De Vita v. Sills*,
 422 F.2d 1172 (3d Cir. 1970) ................................................................................................ 8, 10

*Digital Equip. Corp. v. Currie Enters.*,
 142 F.R.D. 8 (D. Mass. 1991) ............................................................................................... 10, 13

*ESG Capital Partners LP v. Stratos*,
 22 F. Supp. 3d 1042 (C.D. Cal. 2014) .................................................................................. 10, 13

*Fox v. Lackawanna County*,
 No. 16-cv-1511, 2018 WL 1203363 (M.D. Pa. Mar. 8, 2018) .................................................. 10

*Garcia v. City of Leavenworth*,
 No. 19-2047, 2019 WL 3302306 (D. Kan. July 23, 2019) ................................................. 10, 12

*In re Blood Reagents Antitrust Litig.*,
 756 F. Supp. 2d 623 (E.D. Pa. 2010) ......................................................................................... 7

*In re CFS-Related Sec. Fraud Litig.*,
 256 F. Supp. 2d 1227 (N.D. Okla. 2003) ............................................................................. 11, 12

*In re Derivative Litig.*,
 No. 06-02964, 2007 WL 1101276 (E.D. Pa. Apr. 11, 2007) ...................................................... 8

*Keating v. Office of Thrift Supervision*,
 45 F.3d 322 (9th Cir. 1995) ....................................................................................................... 10

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) .................................................................................................................... 8

*Lazaridis v. Wehmer*,
 591 F.3d 666 (3d Cir. 2010 (per curiam) ................................................................................... 3

*Lizarraga v. City of Nogales*,
 No. 06-474, 2007 WL 215616 (D. Ariz. Jan. 24, 2007) ...................................................... 11, 13

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
 676 F.3d 83 (2d Cir. 2012) .................................................................................................. 8, 10

*Motorola, Inc. v. Abeckaser*,
 No. 07-cv-3963, 2009 WL 816343 (E.D.N.Y. Mar. 26, 2009) .................................................. 10

PUBLIC VERSION
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*,
  486 F. Supp. 1118 (S.D.N.Y. 1980) ............................................................................... 1, 10

*Parallel Civil & Criminal Proceedings*,
  129 F.R.D. 201 (1989) ........................................................................................................ 8

*Pelzer v. City of Philadelphia*,
  No. 07-0038, 2007 WL 1377662 (E.D. Pa. May 7, 2007) ................................................ 8

*Reck v. Berkshire Life Ins. Co. of Am.*,
  No. 10-0529, 2011 WL 335569 (W.D. Pa. Jan. 31, 2011) ............................................. 10

*Roe v. Operation Rescue*,
  123 F.R.D. 508 (E.D. Pa. 1988) ........................................................................................ 8

*S.E.C. v. N1 Techs., Inc.*,
  No. 1:17-cv-23618, 2018 WL 8343503 (S.D. Fla. Jan. 30, 2018) .............................. 10, 13

*Soroush v. Ali*,
  No. 09-3703, 2009 WL 3467897 (E.D. Pa. Oct. 28, 2009) ............................................... 8

*State Farm Mut. Auto Ins. Co. v. Beckham-Easley*,
  No. 01-5530, 2002 WL 31111766 (E.D. Pa. Sept. 18, 2002) ........................................ 2, 8

*Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*,
  175 F. Supp. 2d 573 (S.D.N.Y. 2001) ................................................................................ 2

*Texaco, Inc. v. Borda*,
  383 F.2d 607 (3d Cir. 1967) .............................................................................................. 9

*Transatlantic Reinsurance Co. v. Ditrapani*,
  No. 90-3884, 1991 WL 12135 (S.D.N.Y. Jan. 28, 1991) ................................................ 10

*Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*,
  Nos. 01-7927 & 01-10695, 2002 WL 844345 (S.D.N.Y. May 2, 2002) ........................ 10

*Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*,
  886 F. Supp. 1134 (S.D.N.Y. 1995) ................................................................................... 9

*Volmar Distributors, Inc. v. New York Post Co., Inc.*,
  152 F.R.D. 36 (S.D.N.Y. 1993) ......................................................................................... 9

**Rules**

Federal Rules of Civil Procedure 60(b)(6) ................................................................................ 3

Federal Rules of Criminal Procedure 16(b) .............................................................................. 5

PUBLIC VERSION
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**INTRODUCTION**

More than a year after the bellwether selection process began, and more than four months after it ended, Teva has asked the Court to abandon most of its plan because Teva has been criminally indicted with respect to some of the conduct at issue in the bellwethers, an entirely foreseeable event that in no way alters the appropriateness of the Court's chosen bellwethers.

Teva offers two justifications for its request, both of which the Court previously considered and rejected. First, Teva argues that having to defend overlapping (but by no means identical) civil and criminal cases at the same time would be unfair to Teva. But the Court already has decided that issue, when another indicted defendant, Glenmark, raised it by letter and at the bellwether hearing. Opinion (Docket No. 1442) at 5 n.6. The Court's ruling was anchored in well-established law holding that a defendant does not get to stall a civil action simply because it faces related criminal charges. *See, e.g., Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118 (S.D.N.Y. 1980) (Weinfeld, J.) ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim"). Furthermore, the DOJ investigation is ongoing. There may be more indictments. It would be highly impractical and disruptive for the Court to change the course of the MDL every time there is a new indictment.

Second, Teva argues that prosecution of the States' Teva-centric case and EPP/DPP Pravastatin cases (and presumably *any* case involving Teva or any other indicted defendant) would be complicated by Fifth Amendment invocations. The parties have briefed this issue before, as well, and the Court considered the possibility of Fifth Amendment invocations when it entered its bellwether order. Opinion at 2 n.4. As importantly, in light of the overlapping

Defendants and witnesses in the various cases in the MDL, Fifth Amendment issues will be present regardless of the order in which the cases proceed.

Ultimately, what Teva seeks is what Defendants have sought all along: delay, *i.e.*, postponement of the big cases involving big defendants and large-revenue drugs in favor of smaller cases focusing on smaller defendants and smaller revenue drugs. *See* Teva brief (Docket No. 1594) at 10 n.3 (noting Teva's intention to file a motion to stay) & 14 n.4 (repeating Defendants' rejected argument that the "Heritage-centric complaints" should be bellwethers).

Teva's submission is just as notable for what it does *not* say. For all its focus on supposed unfairness to Teva, a criminally indicted defendant alleged to be involved in a massive price-fixing conspiracy, it says nothing about fairness to the victims of the conspiracy, the plaintiffs in this MDL who are eager to proceed. "[I]t would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities." *State Farm Mut. Auto Ins. Co. v. Beckham-Easley*, No. 01-5530, 2002 WL 31111766, at *3 (E.D. Pa. Sept. 18, 2002) (*quoting Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001)). Also, despite its recitation of the progress that the parties have made in the past four months (Teva brief at 5), Teva fails to note that a great deal of that progress has been on the bellwethers. For example, the "more than 100 drugs" (*id.*) for which Defendants have produced transactional data are the bellwether drugs. And the bellwether plaintiffs have been focusing on the bellwether cases in their document review, deposition planning and expert work for months. Changing course would set the whole MDL back and frustrate the Court's goal of efficiently resolving this MDL.

**ARGUMENT**

I. <u>The Teva Indictment is Not "New Evidence," Nor Are Teva's Arguments New</u>

As Teva admits, "[w]hen seeking reconsideration of an order, a moving party 'must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law [or fact] or prevent manifest injustice.'" Teva brief at 7 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam)).[1] Teva addresses only the second ground, arguing that the latest indictment is "new evidence" that should cause the Court to reverse course on the bellwethers. But Teva's argument spends nearly as much time on the etymology of "bellwether" as it does on explaining why the Teva indictment suddenly makes the States' Teva-centric case and EPP/DPP Pravastatin cases unrepresentative of the other cases in the MDL. Teva brief at 7-8. There are 35 defendants in the States' Teva-centric case, only three of which (so far) have been indicted. There are six defendants in the EPP/DPP Pravastatin cases, only two of which (so far) have been indicted. Just as in July, each case offers an opportunity for the Court and juries to assess claims against both indicted and unindicted defendants. Their findings will teach everyone in this MDL a great deal.

Indictments and other criminal proceedings implicating Teva are not "new" to this case. By the time this Court entered its bellwether order, all of the following had happened already:

- June 11, 2019: Heritage admitted to, *inter alia*, colluding with Teva as part of a deferred prosecution agreement relating to Glyburide. *United States v. Heritage Pharmaceuticals, Inc.,* No. 19-cr-00316 (E.D. Pa.) (Docket No. 4), at 17.

- February 4, 2020: Ara Aprahamian of Taro was indicted for, *inter alia*, colluding with Teva on at least the following drugs that are at issue in the States' Teva-centric case:

---

[1] Teva also puzzlingly refers to Fed.R.Civ.P. 60(b)(6), which governs relief from a "final judgment, order, or proceeding …" under "extraordinary circumstances." Teva brief at 7. That rule has nothing to do with a motion for reconsideration of a case management order.

Fluocinonide Gel, Ointment, Cream and Emollient Cream; Carbamazepine Tablets and Chews; Clotrimazole Topical Solution 1%; Etodolac IR Tabs; Etodolac ER; and Warfarin. *United States v. Aprahamian,* No. 20-cr-00064 (E.D. Pa.) (Docket No. 1), at 11-14.

- March 2, 2020: Sandoz admitted in a deferred prosecution agreement to, *inter alia*, colluding with Teva on Tobramycin Inhalation Solution, another drug at issue in the States' Teva-centric case. *United States v. Sandoz Inc.*, No. 20-cr-00111 (E.D. Pa.) (Docket No. 2), at 20.

- May 7, 2020: Apotex admitted in a deferred prosecution agreement to colluding with Teva and other competitors on Pravastatin. *United States v. Apotex Corp.*, No. 20-cr-000169 (E.D. Pa.) (Docket No. 2), at 17; and

- June 30, 2020: Glenmark was charged with colluding with Teva on Pravastatin and other generic drugs. *United States v. Glenmark Pharmaceuticals Inc., USA,* No. 20-cr-00200 (E.D. Pa.) (Docket No. 1).[2]

Given the near-monthly DOJ filings implicating Teva in the time leading up to the Court's bellwether decision, it was obvious that Teva was a target of the DOJ investigation. Indeed, on May 15, 2020, the *New York Times* published an article about Teva, the first line of which read: "In the coming days, the Justice Department will make an important decision: whether to file criminal charges against one of the world's largest pharmaceutical companies for allegedly colluding with rivals to inflate the prices of widely used drugs. The company, Teva Pharmaceutical Industries, …"[3]

---

[2] These indictments and deferred prosecution agreements referred to then-unindicted co-conspirators such as Teva anonymously, using the nomenclature "Company A," "Company B," etc. But each time, it was clear from publicly available information, including the States' Teva-centric complaint, that Teva was one of the co-conspirators named.

[3] Benner, *et al.*, *A Drug Company Wagers the U.S. Won't Dare Charge it with Crimes*, N.Y. TIMES, May 15, 2020, https://www.nytimes.com/2020/05/15/us/politics/teva-antitrust-hydroxychloroquine-settlement.html.

On July 23, 2020, ten days after the Court entered its bellwether order, another Defendant, Taro, admitted in a deferred prosecution agreement to conspiring with Teva on Etodolac IR and ER, Carbamazepine tablets and chews, and other drugs. *United States v. Taro Pharmaceuticals, U.S.A., Inc.*, No. 20-cr-213 (E.D. Pa.) (Docket No. 2), at 20.

In short, DOJ's August 25, 2020 indictment of Teva was not a surprise to anyone, including Teva. *United States v. Teva Pharmaceuticals USA, Inc.,* No. 20-cr-00200 (E.D. Pa.) (Docket No. 28). More to the point, the Teva indictment changed nothing in this MDL. Both before and after the indictment, the parties' and the Court's knowledge of the criminal inquiry, and all of the issues Teva raises now, were present in the MDL.

In fact, on the night before the Court heard argument on the bellwethers, Glenmark sent the Court a letter arguing that the EPP/DPP Pravastatin cases were not appropriate bellwethers because Glenmark had been indicted for conspiring to fix prices on Pravastatin. July 8, 2020 letter from Steven A. Reed (Exhibit A hereto). At oral argument, Glenmark's counsel advanced the very arguments Teva makes (and Glenmark joins) here: "We think the fact that there is a criminal proceeding, given the Fifth Amendment concerns that you recognize, concerns about expanding the scope of criminal discovery and the limits of Rule 16(b) of the Rules of Criminal Procedure but with parallel civil issues, for a host of reasons, we think pravastatin is an unsuitable and equally wrong choice as a bellwether." July 9, 2020 Transcript (Exhibit B hereto) at 38. The Court acknowledged the argument, noting that "we will certainly consider your request not to include Glenmark in a bellwether …" *Id.* at 39. A few days later, the Court rejected those arguments and included Pravastatin as a bellwether case: "The Court has considered Defendant Glenmark's letter objection to the selection of pravastatin based on the recent filing of a criminal information, and while existence of criminal proceedings is important

to take into account, the Court is aware that investigations continue and thus individual charging decisions cannot dictate the path of the MDL." Opinion at 5 n.6.

Even before Glenmark's letter, Defendants had advanced these arguments. In particular, the Individual Defendants argued in their March 2020 brief that "[t]he Teva-centric case is inappropriate to serve as a bellwether case" because "[t]here is an ongoing Department of Justice ("DOJ") grand jury investigation related to this civil litigation" and "the Individual Defendants should not be forced to choose between … defending the case or … protecting their Fifth Amendment privilege." Individual Defendants' Objection (Docket No. 1293) at 1-2. The Individual Defendants also argued, as Teva does here, that Fifth Amendment and other concerns would complicate the Teva-centric case. *Id.* at 5-6. The Court considered these arguments as well: "Although not discussed herein because of the nature of the objections, the Court has considered the separate objections of … the Individual Defendants." Opinion at 2 n.4.

When the Teva indictment finally arrived, it changed nothing. Twelve of the fourteen drugs named in the Teva indictment already had been the subject of either an indictment or a deferred prosecution agreement *before* this Court entered its bellwether order. *Compare* Teva Indictment, Count 1 with Glenmark Information (Pravastatin); *compare* Teva Indictment, Count 2 *with* Aprahamian Indictment, Count 2 (Carbamazepine Tablets and Chews; Clotrimazole Topical Solution 1%; Etodolac IR and ER tablets; Fluocinonide Cream, Emollient Cream, Gel and Ointment; and Warfarin); *compare* Teva Indictment, Count 3 *with* Sandoz Deferred Prosecution Agreement, at 20 (Tobramycin Inhalation Solution). As described above, Defendants pointed all of this out to the Court before the bellwether decision. There is nothing "new" here, and as the Court has said: "individual charging decisions cannot dictate the path of the MDL." Opinion at 5 n.6.

II.     Teva's Arguments Against the Court's Bellwether Plan Remain Meritless

The Court's consideration of Teva's motion could end there, but if the Court wanted to revisit Teva's arguments, Plaintiffs respectfully suggest it would find no reason to change its mind.  In substance, Teva makes essentially two arguments: (1) that any cases involving Teva (and presumably any other indicted Defendant) should be disqualified as bellwethers and stayed, and (2) that witnesses' invocations of the Fifth Amendment will create intractable complications in some (but somehow not other) cases in the MDL.  Teva is wrong on both counts.

### A. The Court Should Decline Teva's Request to Disqualify As Bellwethers and Stay Cases in which an Indicted Entity is a Defendant

As discussed above, Defendants repeatedly have argued that the ongoing DOJ investigation should dictate (*i.e.*, slow down) the progress of the MDL and the selection of bellwethers.  The Court has declined to take such a reactionary approach, instead balancing the interests of the various parties in the MDL, as well as DOJ, in managing the MDL.  The Court has, thus, entered certain limited (rather than blanket) discovery stays, and it carefully considered arguments regarding the impact of the DOJ investigation and indictments on bellwether selection.  Teva, which never wanted a case in which it was a primary defendant to be a bellwether, now has seized on its indictment as an opportunity to make an even more extreme version of its argument: that the Court should "wait[] until criminal proceedings have concluded to progress a civil matter."  Teva brief at 11.

Staying a case based on parallel civil and criminal cases is an "extraordinary remedy" to be used in "extraordinary circumstances."  *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 635–36 (E.D. Pa. 2010).  Courts do not automatically grant a stay just because a defendant finds itself involved in related civil and criminal matters simultaneously.  "[T]here is no

constitutional requirement that" a stay be granted.  *De Vita v. Sills*, 422 F.2d 1172, 1181 (3d Cir. 1970); *Roe v. Operation Rescue*, 123 F.R.D. 508, 509 (E.D. Pa. 1988) (same); *Pelzer v. City of Philadelphia*, No. 07-0038, 2007 WL 1377662, at *2 (E.D. Pa. May 7, 2007) (same).  Instead, as with bellwether selection, whether to grant or deny a stay is "within the discretion of the trial court" as part of its inherent authority to manage its docket.  *Roe*, 123 F.R.D. at 509 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255–56 (1936)).  The trial court's discretion in this area is particularly broad.  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 & n.16 (2d Cir. 2012) (the "burden in overcoming a district court's decision to refrain from entering a stay" is a "heavy" one, and is almost never successful).

In exercising that discretion, courts first look at the "threshold matters" of "the extent to which the issues in the criminal and civil cases overlap and the status of the criminal case, including whether the defendants have been indicted." *In re Derivative Litig.*, No. 06-02964, 2007 WL 1101276, at *1 (E.D. Pa. Apr. 11, 2007).  Courts consider the extent of overlap to be "[t]he most important factor." *Id.* at *1 (internal quotation marks and citation omitted); *see also Soroush v. Ali*, No. 09-3703, 2009 WL 3467897, at *2 (E.D. Pa. Oct. 28, 2009) (same); *State Farm*, 2002 WL 31111766, at *2 (same); Pollack, J., *Parallel Civil & Criminal Proceedings*, 129 F.R.D. 201, 203 (1989) (same).

Here, those threshold matters strongly disfavor any consideration of a stay, and therefore any reconsideration of the bellwethers.  The overlap between the indictments and the bellwether cases is not nearly as great as Teva claims.  All told, *only three defendants* (Teva, Glenmark and Ara Aprahamian) *out of the 35 defendants* in the States' Teva-centric case, and only two (Teva and Glenmark) of the six defendants in the EPP/DPP Pravastatin cases, have been indicted.  In addition, the Teva indictment covers only three drugs and mentions conduct on 11 others, while

8

the States' Teva-centric case encompasses 114 drugs. And while Teva notes that ▮ witnesses are mentioned in the indictments, there are literally hundreds of names on Plaintiffs' witness lists for the bellwethers. These facts refute any suggestion that a stay is warranted or that any of the civil bellwether cases should be withdrawn as bellwethers.

In addition, unlike most cases in which stays are considered, here the civil cases *preceded* the criminal indictments, and there is no set time frame for the criminal trials. The EPP/DPP Pravastatin cases were filed in September 2016, *more than four years ago*, and the States' Teva-centric case was filed in May 2019, *more than 18 months ago*. As Teva notes, "because the criminal trial has not yet been scheduled, the delays … are likely to be significant." Teva brief at 12. It would be extremely unfair to the other parties in these cases to put them on hold now, just because DOJ has recently indicted a fraction of the Defendants on a fraction of the products involving a fraction of the witnesses.[4]

### B. Teva's Fifth Amendment Issues Are Not Unusual and Will Be Present in Any Bellwether

Teva's other argument is largely based on the list of witnesses for which DOJ wishes to delay depositions. Teva argues that (1) those depositions should be stayed (Teva brief at 6-7), but that (2) such a stay would hamper the progress of the civil cases (*id.* at 11-12); and that (3) if the depositions are permitted to proceed, Teva will be harmed (a) in the civil cases if the

---

[4] The cases Teva cites are easily distinguishable on these grounds. In *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967), the criminal action predated the civil action and eight of the eleven defendants had been indicted. In *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36 (S.D.N.Y. 1993), five of the six remaining defendants had been indicted. And in *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995), the criminal case preceded the civil case, four of the six civil defendants had been indicted, and the criminal trial was expected to take place in six months.

witnesses invoke their Fifth Amendment rights (because of adverse inferences) (*id.* at 10 n.3), or (b) in the criminal cases if they testify (by giving DOJ a preview of their testimony) (*id.* at 8-9). The solution, according to Teva, is to scrap all the work of the past year and pick new bellwethers, though the bellwethers Teva suggests would present exactly the same issues.

Teva's supposed dilemma is not a problem that needs to be solved, nor is Teva's proposed solution workable. First:

> A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995); *accord De Vita*, 422 F.2d at 1178-79. Indeed, "a policy of freely granting stays solely because a litigant is defending simultaneous multiple suits would threaten to become a constant source of delay and an interference with judicial administration." *Paine, Webber*, 486 F. Supp. at 1118 (declining to stay civil case when one of eight defendants was indicted).[5]

---

[5] Denials of motions to stay civil proceedings pending completion of criminal proceedings are legion. *See Louis Vuitton*, 676 F.3d at 100-04 (affirming denial of request by two indicted defendants to stay civil proceedings); *De Vita*, 422 F.2d at 1178-81 (affirming denial of request to stay professional disciplinary proceedings pending outcome of criminal trial); *Fox v. Lackawanna Cnty.*, No. 16-cv-1511, 2018 WL 1203363, at *2-3 (M.D. Pa. Mar. 8, 2018) (denying stay of civil proceedings where multiple civil defendants had been indicted); *Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*, Nos. 01-7927 & 01-10695, 2002 WL 844345, at *4 (S.D.N.Y. May 2, 2002) (same); *Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8, 11-15 (D. Mass. 1991) (same); *Transatlantic Reinsurance Co. v. Ditrapani*, No. 90-3884, 1991 WL 12135, at *3-4 (S.D.N.Y. Jan. 28, 1991) (same); *Garcia v. City of Leavenworth*, No. 19-2049, 2019 WL 3302306, at *2-4 (D. Kan. July 23, 2019) (denying indicted defendant's request for stay of civil proceedings); *S.E.C. v. N1 Techs., Inc.*, No. 1:17-cv-23618, 2018 WL 8343503, at *1-3 (S.D. Fla. Jan. 30, 2018) (same); *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1045-47 (C.D. Cal. 2014) (same); *Reck v. Berkshire Life Ins. Co. of Am.*, No. 10-0529, 2011 WL 335569, at *2-4 (W.D. Pa. Jan. 31, 2011) (same); *Motorola, Inc. v. Abeckaser,* No. 07-cv-3963, 2009 WL

Second, even if the Court wished to indulge Teva, trying to find a set of representative bellwethers that would not involve any of the witnesses on the DOJ's list would be a fool's errand. It is easy for Teva to ask that "depositions relevant to those cases [the States' Teva-centric and EPP/DPP Pravastatin cases] remain stayed," Teva brief at 13,[6] but in reality such a plan would impede *all* cases. Many of the key individuals whose testimony will be sought in the States' Teva-centric and EPP/DPP Pravastatin cases also will be key witnesses in other cases, including the Heritage-centric cases that Teva (again) promotes. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Teva brief at 10) also is alleged to have directly colluded with ▮▮▮▮▮▮▮▮▮▮ on seven drugs.[7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, will be key witnesses in multiple cases, as well. There are many other examples of overlapping witnesses among cases, as there are eleven overlapping corporate defendants between the States' Teva-centric and Heritage-centric cases: Actavis, Apotex, Aurobindo, Dr. Reddy's, Glenmark, Lannett, Mylan, Par, Sandoz, Teva and Zydus. And DOJ has consistently said, including at the July bellwether oral argument, that "any bellwether selected should be able to progress efficiently." Exhibit B hereto, at 40.

---

816343, at *3 (E.D.N.Y. Mar. 26, 2009) (denying multiple defendants' motion for stay based on criminal indictment of one defendant); *Lizarraga v. City of Nogales*, No. 06-474, 2007 WL 215616, at *1-4 (D. Ariz. Jan. 24, 2007) (same); *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1236-42 (N.D. Okla. 2003) (denying indicted defendant's motion to stay).

[6] Like the others, this argument is not new. Defendants argued in the bellwether briefing that DOJ might "object to the depositions of witnesses who are named in the States' Teva-Centric case," which "will certainly delay the case's resolution and make it unsuitable as a 'bellwether.'" Defendants' Objection (Docket No. 1296) at 3.

[7] *See, e.g.,* States' Consolidated Amended (Heritage-centric) Complaint, 2:17-cv-03768-CMR, Dkt. No. 15, ¶¶ 268-293, 295-305, 329-414, 427-442.

The fact of the matter is that the Fifth Amendment is going to be an issue in this MDL, regardless of the order in which the cases proceed. The solution to the problem of the DOJ list (if it is a problem) is not to change bellwethers; it is to end the partial stay and allow the depositions to proceed. Then, as in any other case, the witnesses will decide whether to testify or assert the Fifth Amendment, and the parties – including Teva – will react accordingly.[8] No one is stopping Teva from vigorously defending itself. But neither should anyone stop Plaintiffs from pursuing their cases against Teva.

Third, if the Court wanted to address Teva's speculation that DOJ might use the civil case (in which it is not a party) to obtain discovery for the criminal case, there are a "variety of procedures that can be utilized to lessen the detriment to a defendant facing such a quandary." *CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d at 1240. Rather than abandoning the Court's bellwether plan, the Court could explore "[l]ess drastic methods" such as "sealing answers to interrogatories, sealing answers to depositions, [and] imposing protective orders" such as the one already in place in this MDL. *Id. See also id.* at 1242 (denying general stay of discovery and directing that defendant's "deposition be sealed and not used for any purpose outside the civil proceeding except for perjury or impeachment").[9]

---

[8] If the Court extends the partial stay, the parties will work with DOJ to the extent possible to arrange a workable deposition program. Plaintiffs already have asked Defendants for dates in December for the depositions of five witnesses whose names are not on the DOJ list. If a time comes when Plaintiffs and DOJ cannot agree on the timing of certain depositions, the Court can resolve that dispute. Importantly for present purposes, because many of the witnesses in the various MDL cases overlap, the DOJ list is not a reason to abandon the Court's bellwether plan.

[9] *See also, e.g.*, *Garcia*, 2019 WL 3302306, at *4 ("While the Court understands Defendant Harrington's dilemma regarding his Fifth Amendment rights, it is not willing to impose such an extraordinary remedy at this time. The Court remains, however, willing to consider alternate methods by which Defendant Harrington may avoid prejudice in the criminal proceedings against him, such as protective orders, sealed depositions and interrogatories, or other practical

Finally, it remains essential that the largest and most representative Plaintiffs and Defendants have significant stakes in the bellwethers. That includes the States, and as exhaustively briefed and argued before, the States' Teva-centric case clearly is the best bellwether among the States' three cases. It also includes Teva, Glenmark, Apotex, Lupin and Zydus, all of which would be entirely excluded from the EPP/DPP bellwethers if Teva's motion were granted, reducing the number of Defendants in those bellwethers from twelve to seven. The Court chose its bellwethers for good reasons. The Teva indictment does nothing to change those reasons, nor should it change the Court's plan. Teva's desired delay would only frustrate the Court's goal of efficiently resolving this MDL.[10]

## CONCLUSION

The Court was right to hold that "individual charging decisions cannot dictate the path of the MDL." Opinion at 5 n.6. DOJ's entirely predictable indictment of Teva is not "new evidence," nor has Teva presented any new argument or law that suggests that the Court's initial decision was wrong. The Court should reject Teva's request to undo a bellwether selection

---

accommodations"); *N1 Techs.*, 2018 WL 8343503, at *2 (denying stay and noting that defendant could "seek more focused relief as it becomes necessary through a motion for protective order"); *ESG Capital*, 22 F. Supp. 3d at 1045-46 ("[A] stay is not warranted where a defendant's Fifth Amendment rights can be protected through less drastic means, such as asserting the privilege on a question-by-question basis" (internal quotation marks and citation omitted)); *Lizarraga*, 2007 WL 215616, at *4 ("less drastic alternatives [to a stay] exist to protect the interests of all parties"); *Digital Equip.*, 142 F.R.D. at 14-15 (denying stay and directing parties to file a joint proposed protective order).

[10] Ironically, after criticizing Special Master Marion for suggesting that settlement facilitation should be a goal of the bellwether process, Objection at 2 & 7 n.10, Teva now embraces that goal, implausibly suggesting that the way to encourage settlements is to put the States' Teva-centric and EPP/DPP Pravastatin cases on ice. Teva brief at 13. This Court is experienced enough to know that delay is not a friend of settlement.

process that began more than a year ago, ended more than four months ago, and has provided important structure to this MDL. And the Court should decline Teva's request to turn back the clock and reduce all the work that the parties have invested in the bellwethers to a waste of time and money.

Dated: November 20, 2020

By: */s/ Roberta D. Liebenberg*
    Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
215-567-6565
rliebenberg@finekaplan.com

*Lead and Liaison Counsel for the End-Payer Plaintiffs*

By: */s/ W. Joseph Nielsen*
    W. Joseph Nielsen
Assistant Attorney General
State of Connecticut
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
(860) 808-5040
Joseph.Nielsen@ct.gov

*Liaison Counsel for the States*

By: */s/ Jonathan W. Cuneo*
    Jonathan W. Cuneo
CUNEO, GILBERT & LADUCA LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
202-789-3960
jonc@cuneolaw.com

*Lead Counsel for the Indirect Reseller Plaintiffs*

By: */s/ Dianne M. Nast*
    Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
215-923-9300
dnast@nastlaw.com

*Lead and Liaison Counsel for the Direct Purchaser Plaintiffs*

PUBLIC VERSION
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

By: */s/ William J. Blechman*
William J. Blechman
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida 33131
(305) 373-1000
wblechman@knpa.com

*Counsel for the Kroger Direct Actions Plaintiffs and Liaison Counsel for DAPs*