```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2                           - - -

 3                                   :  MDL 2724
       IN RE:                        :
 4                                   :  CIVIL ACTION NO.
       GENERIC PHARMACEUTICALS       :  16-MD-2724
 5     PRICING ANTITRUST             :
       LITIGATION                    :  STATUS CONFERENCE
 6     _____

 7
                                  James A. Byrne U.S. Courthouse
 8                                Via videoconference
                                  July 9, 2020
 9                                Commencing at 1:40 p.m.
       _____
10
                   BEFORE THE HONORABLE CYNTHIA M. RUFE
11     _____

12
       APPEARANCES:
13
       FOR DIRECT            FINE, KAPLAN AND BLACK
14     PURCHASER             BY:  ROBERTA D. LIEBENBERG, ESQUIRE
       PLAINTIFFS PSC,       BY:  PAUL COSTA, ESQUIRE
15     END-PAYER             BY:  JEFFREY S. ISTVAN
       PLAINTIFFS PSC,       One South Broad Street
16     INDIRECT RESELLERS    Suite 2300
       PSC, STATE            Philadelphia, Pennsylvania 19107
17     ATTORNEYS GENERAL     (215) 567-6565
       PLAINTIFFS            rliebenberg@finekaplan.com
18                           pcosta@finekaplan.com
                             jistvan@finekaplan.com
19

20
       FOR STATE             ATTORNEY GENERAL'S OFFICE - ELM
21     ATTORNEYS GENERAL     BY:  W. JOSEPH NIELSEN, ESQUIRE
       PLAINTIFFS            55 Elm Street
22                           Hartford, Connecticut 06106
                             (860) 808-5396
23                           joseph.nielsen@ct.gov

24

25
```

1  addressing class certification on an overarching conspiracy
2  case, whereas the current recommendation does not address class
3  certification on an overarching conspiracy case.
4          But we think that's a significant issue in this
5  litigation that Your Honor should entertain.
6          THE COURT:  Thank you.
7          MR. KORPUS:  And I did neglect to say -- I'm sorry.
8          THE COURT:  Go ahead.
9          MR. KORPUS:  I did neglect to mention on the
10 individual conspiracy cases that were proposed by the private
11 plaintiffs, it is our view that in trying an overarching
12 conspiracy case, by definition, you also need to try the
13 individual conspiracies as part of that conspiracy.
14         So we think you would be informing the parties of the
15 risk and rewards of those alleged conspiracies by trying the
16 overarching cases.
17         And you did receive a letter concerning pravastatin in
18 particular from Glenmark, I believe.  I don't know if you saw
19 that.
20         THE COURT:  I did.  I did.
21         One second.
22         You mentioned Glenmark.  I was going to bring that up.
23         Glenmark had a letter submitted that I already knew
24 the situation because DOJ did inform the Court, I guess it was
25 yesterday, might have been the day before, concerning a new

1   indictment here in the EDPA concerning Glenmark, also filed and
2   assigned to Judge Barclay Surrick, a colleague on this court
3   who is handling the other indictments in this area and nature.
4          And I don't have any other information.  That is
5   public.  It's been filed.  It's a grand jury indictment, so it
6   is not private or confidential information any longer.
7          And of course I understand that in any case where
8   indictment might be pending or investigation is pending,
9   there's always Fifth Amendment considerations.  But for
10  example, we know that we can work through some of those.
11  Whether you agree with a special master or whether I have to
12  rule on it, there's a way to do that ad hoc, case by case.  I
13  see no reason that is a blanket stay on any discovery and even
14  motions practice if that's the case.
15         I want you to know that at this point, in all the
16  years of investigation, there can't possibly be a stay of all
17  civil litigation, unless it's really so permeated that nothing
18  can happen.  And I don't know that yet.  So I wouldn't be
19  granting a stay on any particular cases right now just because
20  there are indictments and convictions in some of those cases.
21         MR. KORPUS:  We understand, Your Honor.  We are
22  talking about a selection of bellwether and not a stay, which I
23  think raises different considerations.
24         THE COURT:  Yes, it does.  But I thought I should
25  bring that up so everyone could know what I was thinking.

1          And someone on the telephone does want to speak.

2          Who is it?

3          MR. REED:  Your Honor, forgive me for interrupting.
4     It's Steve Reed on behalf of Glenmark.

5          THE COURT:  You are not interrupting.  I'm welcoming
6     your interruption.

7          Yes?

8          MR. REED:  I did speak over people and I apologize.

9          So Your Honor, I appreciate the opportunity to address
10    the issue.

11         First, one point of clarification, there is no grand
12    jury indictment.  DOJ chose to proceed by way of information.
13    That's an issue that was raised with Judge Surrick and --

14         (Court reporter clarification.)

15         THE COURT:  We're going to move up the volume and ask
16    you to repeat that because I do think it's important.

17         You didn't have much after that, did you?

18         If that's an information, my understanding of the
19    filing of informations is that's by consent.  Otherwise, you
20    have to get a grand jury.

21         MR. REED:  Your Honor, that's Glenmark's understanding
22    to be well.  But to be clear, Glenmark did not consent to
23    proceed by way of information.  So that is an issue that we
24    have raised and intend to address with Judge Surrick.

25         It's not, Your Honor, I think germane to the issue

1  that we're discussing here, but I did want to be clear on the
2  record.
3          THE COURT:  You're right.  It's not germane to
4  Lexecon.  And thank you, Mr. Reed.
5          I do think it's an anomaly, and Judge Surrick is going
6  to figure that one out.
7          MR. REED:  Your Honor, if I may continue, just for a
8  moment.
9          THE COURT:  Yes, Mr. Reed.
10         MR. REED:  It's Steve Reed.
11         On the other point, we appreciate and obviously we'll
12 respect your guidance on a stay.
13         Just to be clear, Glenmark is not at this time seeking
14 a stay.  We thought it was important to call this issue here to
15 your attention promptly as you're considering the selection of
16 bellwethers for the reasons set forth in my letter, and I'm
17 happy to elaborate.  We think the fact that there is a criminal
18 proceeding, given the Fifth Amendment concerns that you
19 recognize, concerns about expanding the scope of criminal
20 discovery and the limits of Rule 16(b) of the Rules of Criminal
21 Procedure but with parallel civil issues, for a host of
22 reasons, we think pravastatin is an unsuitable and equally
23 wrong choice as a bellwether.
24         Although that's the point we wanted to raise this
25 development with you as you consider choosing among the various

1   options for bellwethers, we respectfully submit that
2   pravastatin should not be a bellwether for the reasons we've
3   stated.
4           THE COURT:  Thank you, Mr. Reed.  You did state very
5   clearly in your letter that you were not seeking a stay on
6   behalf of Glenmark to stay all proceedings.  And you copied
7   this to many other counsel, plaintiffs, defense, special
8   masters, so I wasn't worried about bringing this up.
9           But it brings to mind the number of opportunities
10  there are to -- roadblocks in terms of depositions primarily
11  and other types of discovery.
12          And I know that Special Master Merenstein has dealt
13  with a few of these.
14          I do think that we can do with a few less of those
15  roadblocks by carefully choosing bellwethers.  But in no way,
16  shape or form does the selection of bellwether trials create a
17  pass or an unofficial stay for any other case.  Discovery is to
18  not just commence but to be vigorously sought in as many cases
19  as possible, in as comprehensive and consolidated a way as
20  possible.
21          So we are happy that -- to receive the information
22  that you imparted, Mr. Reed.  And we will certainly consider
23  your request not to include Glenmark in a bellwether, not at
24  this moment, anyway.
25          Thank you.

1          And was there another person on the telephone --

2          Was there another person on the telephone?

3          MR. DeMATTEO:  Yes, Your Honor.  This is Tom DeMatteo

4   from DOJ.

5          THE COURT:  Oh, I didn't know you were on the phone.

6   I would have called on you earlier.

7          MR. DeMATTEO:  No problem.  I just wanted to confirm

8   that it was an information and also just to reiterate DOJ's

9   position as we filed our statement of interest back in March.

10  We don't take a position on what the best case for the

11  bellwether is.  And the parties can keep with discovery to

12  prioritize depositions unaffected by the stay.  You know, any

13  bellwether selected should be able to progress efficiently.

14         THE COURT:  Thank you.  I think that's clear.  Thank

15  you very much.

16         MR. DeMATTEO:  You're welcome, Your Honor.

17         THE COURT:  Now we'll go back to you, Mr. Istvan.

18         MR. ISTVAN:  I just wanted to respond briefly about

19  Glenmark.

20         We don't think that the information against Glenmark

21  changes the suitability of pravastatin as a bellwether at all.

22         As you know, the DOJ investigation is ongoing.  The

23  next DOJ information or indictment could easily involve one of

24  the other single drug cases that are pending here.  So the fact

25  that pravastatin has now been selected and identified as one in

 1   which there was criminal wrongdoing doesn't seem to me to
 2   change anything.
 3           We briefed fairly extensive the individual defendants'
 4   arguments because of the potential of criminal indictment they
 5   should not have to participate in a bellwether.
 6           The same arguments apply to Glenmark.  They don't get
 7   a pass on civil litigation or a delay on civil litigation
 8   simply because they might get indicted or that there's an
 9   information.  Right?  All of the defendants are in that same
10   situation.  They all might get indicted.  There might be an
11   information against any of them.
12           And then with respect to Glenmark's witnesses, there
13   are some Glenmark witnesses.  There are some witnesses from
14   every defendant that are on the DOJ's list that they want
15   deferred.
16           The pravastatin information didn't change anything on
17   that list.  They're all the same witnesses.  No one has been
18   added or subtracted.  If anything, it's possible that the
19   pravastatin -- the DOJ's pravastatin piece may go faster than
20   the others.
21           And also there's another defendant, Apotex, which has
22   been the subject of DOJ investigation and action.  And Apotex
23   has a deferred prosecution agreement on pravastatin and has
24   admitted liability.
25           And therefore, it's possible -- it's possible, right,

1   that more witnesses might actually testify on pravastatin than
2   on some of the other drugs, because certain defendants'
3   liability with respect to the criminal investigation has
4   already been determined on pravastatin.  So we think if
5   anything, the argument in favor of pravastatin is stronger now
6   that the case is more developed with the DOJ and there's less
7   uncertainty.
8              THE COURT:  Thank you.  I appreciate your comments.
9              MR. REED:  Your Honor, may I address -- Steve Reed
10  again.  May I address that briefly?
11             THE COURT:  Yes.  Mr. Reed and then to you, Mr.
12  Blechman.
13             MR. REED:  I shouldn't have to say this, but it sounds
14  like I need to.
15             The fact that there is an information filed means
16  there are allegations of wrongdoing.  There's no evidence of
17  criminal conduct with respect to pravastatin or otherwise.
18  These are allegations.  They overlap with the allegations in
19  the civil claims, and that's precisely why we believe that
20  pravastatin is a poor choice as a bellwether.
21             Glenmark is not looking for any kind of pass in this
22  MDL.  We expect to participate in discovery as we have been.
23  We're talking rather specifically about a product that is
24  directly at issue in a criminal proceeding.  It's customary, as
25  I'm sure Your Honor knows.  You have discretion when -- it is

```
 1   not unusual for a judge who is presiding over a civil matter to
 2   allow the criminal matter to proceed first for pretty obvious
 3   concerns.  But again, what we're -- we're not asking for a
 4   stay.  We're suggesting that there are a number of choices the
 5   Court has as bellwethers.  I'm not going to reargue this point,
 6   which have been briefed extensively and argued extensively.
 7   But as you consider which would be the most productive,
 8   informative bellwethers to move this MDL along, I would
 9   respectfully submit that pravastatin shouldn't be among them,
10   because it presents unique challenges.  Right now the fact that
11   other criminal informations or indictments might be filed in
12   the future is a fact that we all have to deal with.  But why
13   would the Court want to buy into a known problem now because of
14   the concerns about the potential but unknown problems in the
15   future.
16             THE COURT:  Thank you, Mr. Reed.
17             Mr. Blechman?
18             MR. BLECHMAN:  Yes, Your Honor.  Thank you, very much.
19   I had my phone on mute before when plaintiffs were speaking.  I
20   didn't figure out how to unmute it in time, so thank you for
21   the opportunity.
22             I wanted to note in connection with the bellwethers
23   the special master's report and recommendation notes on page 4,
24   Footnote 4, that the Kroger Direct Action Plaintiffs, which
25   include Kroger, Albertsons and HEB, all of whom have a
```