# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL 2724<br>16-MD-2724<br><br>HON. CYNTHIA RUFE |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO THE SECOND REPORT AND RECOMMENDATION OF THE SPECIAL DISCOVERY MASTER AS TO PLAINTIFFS' MOTION TO COMPEL SUPPLEMENTAL PRODUCTIONS OF TRANSACTIONAL DATA**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A. No Additional Information or Developments Warrant Departure from the Parties' April 2019 Agreement ...................................................................... 2

        1. The Terms of the Parties' April 2019 Agreement Dictate that Plaintiffs Must Be Held to Their Bargain ..................................................... 2

        2. Departure from the Agreed Upon Cutoff Date Is Not Warranted .............. 4

    B. Supplemental Productions Would Be Unduly Burdensome ................................... 8

III. CONCLUSION .......................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Ashton Woods Holdings LLC v. USG Corp.*,
 2016 U.S. Dist. LEXIS 166424 (E.D. Pa. Dec. 2, 2016) ...................................................... 6

*Druding v. Care Alts.*,
 2017 U.S. Dist. LEXIS 219777 (D.N.J. June 21, 2017) ....................................................... 2

*In re Microcrystalline Cellulose*,
 221 F.R.D. 428 (E.D. Pa. 2004) ............................................................................................ 6

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
 No. 13-md-2445 (E.D. Pa. Nov. 30, 2017) ................................................................. *passim*

*In re TFT-LCD Antitrust Litig.*,
 267 F.R.D. 583 (N.D. Cal. 2010) .......................................................................................... 7

*Int'l U. of Op. Eng'rs Local 30 Ben. Fund v. Lannett Co., Inc., et al.*,
 No. 16-cv-00990 (E.D. Pa. Mar. 2, 2016) ............................................................................ 7

*Kuhns v. City of Allentown*,
 2010 WL 4236873 (E.D. Pa. Oct. 26, 2010) ..................................................................... 6, 7

*MSC Software Corp. v. Altair Eng'g, Inc.*,
 2012 WL 1340445 (E.D. Mich. Apr. 18, 2012) ................................................................... 8

*Samuel, Son & Co. v. Beach*,
 2014 U.S. Dist. LEXIS 143549 (W.D. Pa. Oct. 9, 2014) ..................................................... 2

## **RULE**

Fed. R. Civ. P. 26 ................................................................................................................. 6, 7, 9

I.       **INTRODUCTION**

The parties previously reached an agreement on the scope of data productions, which Plaintiffs now seek to undo because it flatly disposes of Plaintiffs' Objections. In April 2019, the parties negotiated a compromise that provided Plaintiffs an additional year of data beyond what they requested in exchange for setting a fixed end date of December 2018. The April 2019 Agreement allowed Plaintiffs to seek supplementation only if "warranted" by "additional information or developments in the MDL." Apr. 2019 Agmt. at ¶ 7 (Ex. A). Confronted with the unambiguous language of their own agreement, Plaintiffs have proffered evolving reasons why Defendants should now produce data beyond the agreed-upon cutoff date. But none of Plaintiffs' claimed additional information or developments—the bellwether selection, 2019 and 2020 prices for certain drugs, nor long-standing claims for injunctive relief—constitute "additional information" or a "development[]," and even more, none *warrant* ongoing data supplementation. *Id.* In the absence of this showing, applying the plain terms of the parties' agreement dictates that no structured data beyond December 2018 is required.

Special Discovery Master Merenstein's recommendation to deny Plaintiffs' motion to compel data supplementation is consistent with the April 2019 Agreement, his prior recommendations, and relevant case law. *See* Second Report and Recommendation of the Special Discovery Master as to Pls.' Mot. to Compel Supp. Productions of Transactional Data, ECF No. 1503 (hereinafter "R&R"). The parties' agreement on a reasonable time period for discovery has guided negotiations with third parties and has allowed discovery to progress. Walking back the parties' agreement now would inject needless delay and inefficiencies into the case and would render meaningless the negotiated compromise (guided by the Special Discovery Master) that explicitly resolved the previous iteration of Plaintiffs' supplementation request.

1

Granting Plaintiffs' motion in contravention of the parties' agreement will lead to boundless discovery and require Defendants to produce unknown quantities of data at undetermined points. The insufficiency of Plaintiffs' request for supplementation is apparent from the fact that they can only speculate as to what data they will need and when. As Special Discovery Master Merenstein stated, in the event that "new information or developments" in the future do "warrant" supplemental data, Plaintiffs will be able to seek such discovery at the appropriate time. R&R at 9. This is not that time.

Because Plaintiffs' Objections fail to identify any basis to upend the parties' agreement, Defendants respectfully request that this Court approve the R&R.

**II.     ARGUMENT**

    **A.     No Additional Information or Developments Warrant Departure from the Parties' April 2019 Agreement**

        **1.     The Terms of the Parties' April 2019 Agreement Dictate that Plaintiffs Must Be Held to Their Bargain**

In April 2019, the parties struck a deal regarding discovery where Plaintiffs expressly agreed to a cutoff date of December 2018 for transactional data. As part of the agreement, Plaintiffs received an additional year of transactional data beyond what they had sought, and Defendants received assurance that they would not have indefinite data production obligations. The agreement also resolved a number of other disputes between the parties as to the scope of document discovery. Plaintiffs now attempt to unwind this agreement by citing only (1) ordinary-course schedule adjustments in the case, and (2) circumstances that were previously known to Plaintiffs. None suffice.

Plaintiffs cannot dispute that the parties reached a discovery agreement. Rather, Plaintiffs dispute whether they should still be held to their agreement. But case law unambiguously supports holding Plaintiffs to the bargain they struck. *See, e.g.*, Order at 1 n.1, *In re Suboxone*

2

*(Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 13-md-2445 (E.D. Pa. Nov. 30, 2017), ECF No. 419 (Ex. B) (hereinafter "*Suboxone*") (holding plaintiffs to agreement on data productions and rejecting demands for supplementation); *Druding v. Care Alts.*, 2017 U.S. Dist. LEXIS 219777, at *9 (D.N.J. June 21, 2017) (the "meet and confer process furthers the discovery process only if the parties abide by the terms of their discovery agreements and the Court 'enforces' the agreements"); *Samuel, Son & Co. v. Beach*, 2014 U.S. Dist. LEXIS 143549, at *10 (W.D. Pa. Oct. 9, 2014) (enforcing parties' discovery agreement because the efficiency of the meet and confer process to resolve discovery disputes "can only be furthered" if the court "requires the parties and their counsel to perform their respective obligations under the bargains which have been achieved").

Plaintiffs maintain that the R&R imposes a "stricter standard" that is "divorced from" the April 2019 Agreement. Reply at 1. Plaintiffs cannot seriously contend that applying the terms of the parties' own agreement constitutes a heightened standard. Indeed, the April 2019 Agreement makes explicit that additional discovery beyond the terms of the agreement will only be allowed "if warranted by additional information or developments in the MDL." Apr. 2019 Agmt. at ¶ 7 (Ex. A).

Contrary to that plain language, Plaintiffs instead suggest that the April 2019 Agreement imposed no limitations at all. Plaintiffs contend that Defendants' reliance on negotiated discovery boundaries constitutes a "red herring." Reply at 9. It is unclear why parties would ever enter into agreements if that were true, as binding agreements typically serve the function of protecting reliance interests. That the April 2019 Agreement could only be altered in light of additional information or developments warranting additional discovery provided sufficient assurance to all parties: Defendants knew what they must produce in discovery, and Plaintiffs knew what they

3

would receive. And it specifically provided Defendants certainty that—absent any such information or developments—the agreement had fully resolved Plaintiffs' request for supplementation.

### 2. Departure from the Agreed Upon Cutoff Date Is Not Warranted

The parties' April 2019 Agreement did not automatically permit seeking additional discovery based on anything the Plaintiffs perceived to be additional information or developments. Rather, it set a two-pronged threshold: (1) there must be "additional information or developments in the MDL"; *and* (2) the information or development must "*warrant*[]" seeking additional discovery. Apr. 2019 Agmt. at ¶ 7 (Ex. A) (emphasis added). Over the past five months of briefing on this issue, Plaintiffs have continued to conjure up new reasons why they need supplementation; in the latest iteration, the proffered justifications are the bellwether selection and overall case schedule, the 2019 and 2020 prices for certain pharmaceuticals, and Plaintiffs' claims for injunctive relief. None of these are "additional information or developments," let alone information or developments *warranting* additional discovery under the April 2019 Agreement.

*First*, the bellwether selection and overall case schedule is not a "development," because it occurred three weeks *after* Plaintiffs requested supplementation. *Compare* Pls.' Ltr. Br. to Special Masters, dated June 23, 2020 (Ex. C) *with* Dkt. No. 1442, dated July 13, 2020. And Plaintiffs sought supplementation back in September 2018 for all products, including the three bellwether products. R&R at 8. Even if bellwether selection is a "development" in the strict sense that it was a new event, the bellwether selection does not *warrant* additional discovery because it was a foreseeable event that would have been accounted for at the time of the April 2019 Agreement, and Plaintiffs still fail to explain how the selection process somehow justifies additional discovery. *See Suboxone* at 2 n.1 ("[D]elays in a case of this magnitude were not unexpected or unforeseeable. Plaintiffs could have easily negotiated an appropriate provision

into the Discovery Agreement requiring supplementation of specific information in the event of such delays."). Moreover, their argument that the bellwether cases possess some unique qualities justifying supplementation is undermined by the fact that Plaintiffs previously sought supplementation for all products (including these bellwether products) and they continue to seek the right to supplementation on all other products too.

*Second*, Plaintiffs' assertions of "continuing unlawful conduct or that the conduct's effects continued to affect prices" do not require a court to ignore the parties' negotiated agreement on discovery parameters. Reply at 5. As an initial matter, the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not "additional information." Plaintiffs alleged in their 2017 complaints that Defendants' purported conduct was "continuing" and the impact was "accumulating," and Plaintiffs had the 2016-2018 IMS pricing data when they negotiated the April 2019 Agreement, yet they agreed to a firm end-date for Defendants' data productions anyway. ECF No. 126, dated Jan. 27, 2017, at ¶ 197. Plaintiffs argue that they now have the 2019 and 2020 data in hand, but they cannot argue that these additional years provide new insight as compared to the 2016-2018 data available to them at the time they negotiated an agreement that did not provide for supplementation.

Further, under the second prong of the agreement's requirement, there is no indication that the prices of certain pharmaceuticals in 2019-2020 "*warrant*[]" data supplementation—and certainly not the endless supplementation Plaintiffs now seek. Apr. 2019 Agmt. at ¶ 7 (Ex A) (emphasis added). Plaintiffs now state that they "have not pleaded any end date for the alleged conspiracies" (which again highlights the boundless nature of Plaintiffs' request). Reply at 4. Plaintiffs' complaints may indeed be intentionally vague on the end date, but the dozens of complaints filed in this case between March 2016 and the present do not allege unlawful price

increases or agreements occurring after 2016. Discovery must be grounded in the factual allegations in Plaintiffs' complaints, and a 2018 cutoff date means Plaintiffs are getting three years (or more for some products) of data following the last-in-time allegations of unlawful price increases. Plaintiffs' preferred approach would allow discovery to spiral into an endless process that would require data for each year, no matter how far in the future, in which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for numerous legitimate reasons such as current market conditions and industry dynamics; there is no presumption that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] There is no support for Plaintiffs' open-ended demand for supplementation for an indefinite number of products over multiple undetermined points in the future. *See, e.g.*, *Kuhns v. City of Allentown*, 2010 WL 4236873, at *2 (E.D. Pa. Oct. 26, 2010) (Rule 26 does not require "rolling, open-ended discovery").

Plaintiffs have also not demonstrated that additional data is necessary to provide a benchmark for assessing impact and damages, especially in light of the voluminous data productions already being made that provide Plaintiffs with years of data both before and after the alleged conduct. Indeed, courts generally limit benchmark "after-period" data to two to three years beyond the end date of the alleged conduct. *See Ashton Woods Holdings LLC v. USG Corp.*, 2016 U.S. Dist. LEXIS 166424, at *4 (E.D. Pa. Dec. 2, 2016) (holding that two years of data following the alleged conspiracy was sufficient for plaintiffs' analysis); *In re Microcrystalline Cellulose*, 221 F.R.D. 428, 430 (E.D. Pa. 2004) (rejecting argument that more than three years of data following the alleged conspiracy was needed to "prove liability and calculate damages"

---

[1] For some products, Plaintiffs allege that the unlawful conduct occurred before or around 2010. Under Plaintiffs' logic, if prices for that product are higher in any year going forward than they were before 2010—even more than a decade after the alleged conduct—supplementation would be appropriate. There is no support for Plaintiffs' flawed position.

6

using a "before and after analysis"); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583, 597 (N.D. Cal. 2010) (same). Plaintiffs fail to explain how the agreed-upon amount of structured data would prove insufficient here.

Even allegations of continued unlawful conduct or that the conduct continued to affect prices do not require a court to ignore the parties' negotiated discovery parameters. Rule 26 does not require "rolling, open-ended discovery simply because the moving party alleges ongoing misconduct." *Kuhns*, 2010 WL 4236873, at *2. In *Suboxone*, plaintiffs alleged continuing unlawful conduct and that overcharges "will continue forward into the future." Direct Purchasers' Second Amended Complaint, at ¶¶ 191, 213, *Suboxone*, (E.D. Pa. Apr. 13, 2015), ECF No. 151 (Ex. D). Plaintiffs claimed that additional years of transactional data would "allow Plaintiffs to calculate Class damages through the present, consistent with Plaintiffs' claims." Direct Purchaser Class Plaintiffs' Reply Br. in Supp. of Their Mot. to Compel Def. Indivior, Inc. to Produce Supplemental, Updated Sales Data at 4, *Suboxone*, (E.D. Pa. Nov. 14, 2017), ECF No. 416 (Ex. E). Despite plaintiffs advancing these continuing conduct allegations as a justification for data supplementation, the court in *Suboxone* rejected plaintiffs' efforts to "end-run" their formal, written discovery agreement. Order at 1 n.1, *Suboxone* (Ex. B). This Court should likewise hold Plaintiffs to the April 2019 Agreement.

*Third*, Plaintiffs' claims for injunctive relief do not constitute "additional information" nor a "development[]" as required to alter the parties' agreement. Plaintiffs have never advanced this argument in any of the meet and confers or briefs on this dispute. Now, for the first time in their reply, Plaintiffs contend that their claims for injunctive relief require data supplementation. But those claims are not new; Plaintiffs have sought injunctive relief from the very first complaint filed in March 2016. *See, e.g.*, Class Action Complaint, *Int'l U. of Op. Eng'rs Local 30 Ben.*

7

*Fund v. Lannett Co., Inc., et al.*, No. 16-cv-00990 (E.D. Pa. Mar. 2, 2016) at ¶¶ 16, 116, 136. Thus, Plaintiffs were seeking injunctive relief in April 2019 but still negotiated, and accepted, an agreement that did not provide for ongoing supplementation. In fact, Plaintiffs originally sought an *earlier* cutoff date but accepted an agreement that granted them an additional year of data beyond that in exchange for no supplementation. Accordingly, Plaintiffs' ex post facto argument that their injunctive relief claims "warrant" data supplementation should be rejected. Moreover, Plaintiffs' argument that injunctive relief claims require supplemental data should also be rejected for the same reasons as their argument on "continuing unlawful conduct," *supra* at 5-7, as these are merely two sides of the same coin.

### B. Supplemental Productions Would Be Unduly Burdensome

Plaintiffs wrongly place the onus on Defendants to show why breaking the parties' valid agreement would be burdensome. By the very terms of the agreement, it is *Plaintiffs* who bear the burden of demonstrating "additional information or developments" warranting departure from the agreement. Apr. 2019 Agmt. at ¶ 7 (Ex. A). Defendants are not required to demonstrate why additional data productions would impose an undue burden simply to uphold the agreement the parties mutually entered into.

Nonetheless, the burden on Defendants of data supplementation would be significant and is not any less now that the parties have agreed on some data formats. The primary burden is incurred each time data needs to be repulled, reviewed, and produced. Even the request for a single "refresh" of the bellwether data would impose a significant burden. Plaintiffs fundamentally misunderstand the process of data productions by stating "there is no reason that updating the data should be difficult." Reply at 7. The collection, review, and production of additional transactional data does not magically become easier over time; if anything, data supplementation becomes more difficult as time passes, corporate structures and personnel change, and data systems evolve. The

fundamental onerous process of collection remains the same with each trip back to the well and imposes a substantial ongoing burden on Defendants. *See, e.g.*, *MSC Software Corp. v. Altair Eng'g, Inc.*, 2012 WL 1340445, at *2 (E.D. Mich. Apr. 18, 2012) ("Rule 26(e) does not place a continuing burden [] to supplement with new information . . . [T]here are serious objections to the burden continuous supplementation imposes, especially in protracted cases.").

Defendants have already produced tens of millions of documents and almost a decade's worth of data for many dozens of products, and yet Plaintiffs ignore the massive burdens already incurred as they baselessly push for more. Plaintiffs expect to be trusted at their word that their requests are "targeted," yet in the same paragraph note they are in no way restricting their future requests for data, stating only that the "future requests will be for data that is relevant at that time." Reply at 7. This will result in an endless and inefficient discovery process. Granting an unbounded request for future supplementation will create an undue burden on Defendants and frustrate the April 2019 Agreement's purpose of setting reasonable limits on discovery.

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court overrule Plaintiffs' Objections and approve Special Discovery Master Merenstein's R&R.

9

Dated: November 23, 2020

Respectfully submitted,

*/s/ Sheron Korpus*
Sheron Korpus
Seth A. Moskowitz
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
skorpus@kasowitz.com
smoskowitz@kasowitz.com

*Counsel for Defendants Actavis Elizabeth, LLC, Actavis Holdco U.S., Inc., and Actavis Pharma, Inc.*

*/s/ R. Brendan Fee*
R. Brendan Fee
Steven A. Reed
Melina R. DiMattio
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
brendan.fee@morganlewis.com
steve.reed@morganlewis.com
melina.dimattio@morganlewis.com

Wendy West Feinstein
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA 15219
Telephone: (412) 560-7455
wendy.feinstein@morganlewis.com

*Counsel for Defendant Glenmark Pharmaceuticals, Inc., USA*

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank
Seth C. Silber
**WILSON SONSINI GOODRICH & ROSATI, PC**
1700 K Street, NW Fifth Floor
Washington, DC 20006
Telephone: (202) 973-8824
jbank@wsgr.com
ssilber@wsgr.com

Chul Pak
**WILSON SONSINI GOODRICH & ROSATI, PC**
1301 Avenue of the Americas 40th Floor
New York, New York 10019
Telephone: (212) 497-7726
cpak@wsgr.com

Adam K. Levin
Benjamin F. Holt
Justin W. Bernick
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
adam.levin@hoganlovells.com
benjamin.holt@hoganlovells.com
justin.bernick@hoganlovells.com

*Counsel for Defendants Mylan Inc., Mylan Pharmaceuticals, Inc., UDL Laboratories, Inc., and Mylan N.V.*

*/s/ Mark A. Robertson*
Robin D. Adelstein
Mark A. Robertson
Gerald A. Stein
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 318-3000
mark.roberston@nortonrosefulbright.com
robin.adelstein@nortonrosefulbright.com
gerald.stein@nortonrosefulbright.com

*Counsel for Defendants Valeant Pharmaceuticals North America LLC n/k/a Bausch Health US, LLC, Valeant Pharmaceuticals International n/k/a Bausch Health Americas, Inc., and Oceanside Pharmaceuticals, Inc.*

*/s/ Margaret A. Rogers*
Margaret A. Rogers
Saul P. Morgenstern
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 W. 55th Street
New York, NY 10019
Telephone: (212) 836-8000
margaret.rogers@arnoldporter.com
saul.morgenstern@arnoldporter.com

Laura S. Shores
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue
Washington, DC 20001
Telephone: (202) 942-5000
laura.shores@arnoldporter.com

*Counsel for Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc.*

*/s/ Sarah F. Kirkpatrick*
Sarah F. Kirkpatrick
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
skirkpatrick@wc.com

*Counsel for Defendant Par Pharmaceutical Inc.*

*/s/ Christopher P. Wilson*
Christopher P. Wilson
John M. Taladay
Erik T. Koons
Stacy L. Turner
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 639-7700
christopher.wilson@bakerbotts.com

john.taladay@bakerbotts.com
erik.koons@bakerbotts.com
stacy.turner@bakerbotts.com

Lauri A. Kavulich
Ann E. Lemmo
**CLARK HILL PLC**
2001 Market St, Suite 2620
Philadelphia, PA 19103
Telephone: (215) 640-8500
lkavulich@clarkhill.com
alemmo@clarkhill.com

Lindsay S. Fouse
**CLARK HILL PLC**
301 Grant St, 14th Floor
Pittsburgh, PA 15219
Telephone: (412) 394-7711
lfouse@clarkhill.com

*Counsel for Defendants Sun Pharmaceutical Industries, Inc. and Taro Pharmaceuticals USA, Inc.*

*/s/ Raymond A. Jacobsen, Jr.*
Raymond A. Jacobsen, Jr.
Paul M. Thompson (Pa. Bar No. 82017)
Lisa (Peterson) Rumin
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, D.C. 20001
Telephone: (202) 756-8000
rayjacobsen@mwe.com
pthompson@mwe.com
lrumin@mwe.com

Nicole L. Castle
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, NY 10173
Telephone: (212) 547-5400
ncastle@mwe.com

*Counsel for Defendants Amneal Pharmaceuticals, Inc., Amneal Pharmaceuticals LLC, and Impax Laboratories, Inc.*

*/s/ Jan P. Levine*
Jan P. Levine
Robin P. Sumner
Michael J. Hartman
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Telephone: (215) 981-4000
jan.levine@troutman.com
robin.sumner@troutman.com
michael.hartman@troutman.com

*Counsel for Defendant West-Ward Pharmaceuticals Corp. (n/k/a Hikma Pharmaceuticals USA, Inc.)*

*/s/ Edward B. Schwartz*
Edward B. Schwartz
Nicholas V. Albu
Andrew C. Bernasconi
**REED SMITH LLP**
1301 K Street NW
Suite 1000
Washington, DC 20005
Telephone: (202) 414-9200
eschwartz@reedsmith.com
nalbu@reedsmith.com
abernasconi@reedsmith.com

*Counsel for Defendant Heritage Pharmaceuticals, Inc.*

*/s/ Brian J. Smith*
Michael Martinez
Steven Kowal
Lauren Norris Donahue
Brian J. Smith
**K&L GATES LLP**
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 372-1121
michael.martinez@klgates.com
steven.kowal@klgates.com
lauren.donahue@klgates.com
brian.j.smith@klgates.com

*Counsel for Defendant Mayne Pharma Inc.*

*/s/ Jay P. Lefkowitz, P.C.*
Jay P. Lefkowitz, P.C.
Devora W. Allon
Alexia R. Brancato
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
jay.lefkowitz@kirkland.com
devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Counsel for Defendant Upsher-Smith Laboratories, LLC*

*/s/ J. Gordon Cooney, Jr.*
J. Gordon Cooney, Jr.
John J. Pease, III
Alison Tanchyk
William T. McEnroe
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
amanda.robinson@morganlewis.com

*Counsel for Defendant Teva Pharmaceuticals USA, Inc.*

*/s/ Jason R. Parish*
Jason R. Parish
Martin J. Amundson
**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 452-7900
jason.parish@bipc.com
martin.amundson@bipc.com

Bradley J. Kitlowski
**BUCHANAN INGERSOLL & ROONEY PC**
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: (412) 562-8800
bradley.kitlowski@bipc.com

*Counsel for Defendant Zydus Pharmaceuticals (USA) Inc.*

*/s/ J. Clayton Everett, Jr.*
Scott A. Stempel
J. Clayton Everett, Jr.
Tracey F. Milich
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 739-3000
scott.stempel@morganlewis.com
clay.everett@morganlewis.com
tracey.milich@morganlewis.com

Harvey Bartle IV
Francis A. DeSimone
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
harvey.bartle@morganlewis.com
frank.desimone@morganlewis.com

*Counsel for Defendant Perrigo New York, Inc.*

*/s/ Wayne A. Mack*
Wayne A. Mack
Sean P. McConnell
Sarah O'Laughlin Kulik
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1152
wamack@duanemorris.com
spmcconnell@duanemorris.com
sckulik@duanemorris.com

*Counsel for Defendant Aurobindo Pharma USA, Inc.*

| | |
|---|---|
| */s/ Ryan T. Becker* <br> Gerald E. Arth <br> Ryan T. Becker <br> Nathan M. Buchter <br> **FOX ROTHSCHILD LLP** <br> 2000 Market Street, 20th Floor <br> Philadelphia, PA 19103 <br> Telephone: (215) 299-2000 <br> garth@foxrothschild.com <br> rbecker@foxrothschild.com <br> nbuchter@foxrothschild.com <br><br> George G. Gordon <br> Julia Chapman <br> **DECHERT LLP** <br> 2929 Arch Street <br> Philadelphia, PA 19104 <br> Telephone: (215) 994-2382 <br> george.gordon@dechert.com <br> julia.chapman@dechert.com <br><br> *Counsel for Defendant Lannett Company, Inc.* | */s/ James W. Matthews* <br> James W. Matthews <br> Katy E. Koski <br> John F. Nagle <br> **FOLEY & LARDNER LLP** <br> 111 Huntington Avenue <br> Boston, Massachusetts 02199 <br> Telephone: (617) 342-4000 <br> jmatthews@foley.com <br> kkoski@foley.com <br> jnagle@foley.com <br><br> James T. McKeown <br> Elizabeth A. N. Haas <br> Kate E. Gehl <br> **FOLEY & LARDNER LLP** <br> 777 E. Wisconsin Avenue <br> Milwaukee, WI 53202 <br> Telephone: (414) 271-2400 <br> jmckeown@foley.com <br> ehaas@foley.com <br> kgehl@foley.com <br><br> Steven F. Cherry <br> April N. Williams <br> Claire Bergeron <br> **WILMER CUTLER PICKERING HALE AND DORR LLP** <br> 1875 Pennsylvania Avenue, NW <br> Washington, D.C. 20006 <br> Telephone: (202) 663-6000 <br> steven.cherry@wilmerhale.com <br> april.williams@wilmerhale.com <br> claire.bergeron@wilmerhale.com <br><br> Terry M. Henry <br> Melanie S. Carter <br> **BLANK ROME LLP** <br> One Logan Square <br> 130 North 18th Street <br> Philadelphia, PA  19103 <br> Telephone: (215) 569-5644 <br> THenry@blankrome.com <br> MCarter@blankrome.com <br><br> *Counsel for Defendant Apotex Corp.* |

14

## CERTIFICATE OF SERVICE

      I hereby certify that on November 23, 2020, I caused a copy of the foregoing Defendants' Sur-Reply in Opposition to Plaintiffs' Objections to the Second Report and Recommendation of the Special Discovery Master as to Plaintiffs' Motion to Compel Supplemental Productions of Transactional Data to be served on counsel of record via the Court's CM/ECF system.

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank
