## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL No. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT ARA APRAHAMIAN'S MOTION TO STAY ALL CIVIL PROCEEDINGS AGAINST HIM**

In his Reply, Defendant Aprahamian attempts to distinguish both the body of cases Plaintiffs cited where courts denied stays to indicted defendants like him, *see* Dkt. No. 1585 at 2-4 & nn. 5-6, and Plaintiffs' arguments regarding the cases Defendant Aprahamian believes support the issuance of a stay, *see* Dkt. No 1585 at 2-4 & nn. 3-4. But, Defendant Aprahamian misses the central point: the facts of *this* case do not support a stay of all proceedings against him. Whether to issue a stay is a matter of this Court's discretion guided by the facts and needs of this case, not by tallying the number of cases on one side or another. *See* Dkt. No. 1558 at 3-4. Such extraordinary relief is not warranted on the facts in this case and less drastic means than a stay can sufficiently protect Defendant Aprahamian's interests and those of the Plaintiffs, the Court, non-parties, and the public. The Court should deny Defendant Aprahamian's Motion to Stay all Proceedings Against Him.

**I.  MEASURES LESS DRASTIC THAN A STAY OF ALL PROCEEDINGS WILL PROTECT THE INTERESTS OF *ALL* PARTIES.**

Courts can employ less drastic methods than an indefinite stay of proceedings to mitigate the concerns of an indicted defendant, such as: (1) appropriately-restrictive, negotiated protective orders; or, alternatively, (2) selective Fifth Amendment invocations subject to later withdrawal so long as it would not prejudice Plaintiffs. *See* Dkt. No. 1558 at 4-6. As to the first option, Defendant Aprahamian refuses to engage in a good faith effort to negotiate a protective order. His brinksmanship on this issue, however, only highlights his failure to explain why Plaintiffs' alternative approach would not better protect the interests of *all* Parties and not just him.

**A.  Defendant Aprahamian's Refusal to Engage in Negotiations Regarding a Protective Order is Brinksmanship.**

Defendant Aprahamian contends that no protective order can ever assuage his fear that the Plaintiffs and DOJ might violate that order. *See* Dkt. No. 1585 at 4-5. He then points to cases holding that the Court cannot compel a nonconsenting witness to provide potentially incriminating testimony, over a Fifth Amendment assertion, by issuing a protective order. *See* Dkt. No. 1585 at 4-5 & n. 8; *e.g. Andover Data Services, a Div. of Players Computer, Inc. v. Statistical Tabulating Corp.*, 876 F.2d 1080, 1080 (2d Cir. 1989). In other words, Defendant Aprahamian's position is that he will not even try to negotiate a protective order that would allow him to provide discovery, and the Court cannot make him do so. While the Court may not be able to ***compel*** him to accept a protective order to resolve his Fifth Amendment concerns over his (yet asserted) objection, Defendant Aprahamian's brinksmanship also does not compel the Court to grant him a stay of proceedings, especially when less drastic methods are still available.

### B. Defendant Aprahamian Has Offered No Argument Why the Alternative Option of Allowing Him to Withdraw a Fifth Amendment Invocation at a Later Time Would Not Better Protect the Interests of *All* Parties.

Though Defendant Aprahamian attacks Plaintiffs' offer to negotiate a protective order, he is completely silent on how he would suffer *any* prejudice from Plaintiffs' alternative proposal that he make selective Fifth Amendment invocations subject to the opportunity to later withdraw those invocations so long as it would not prejudice Plaintiffs. *See* Dkt. No. 1585 at 4-6.[1] This approach will protect both Plaintiffs' interests and Aprahamian's Fifth Amendment rights.

First, allowing Defendant Aprahamian to withdraw a Fifth Amendment invocation at a later time properly allocates the interests and risks among the Parties. Defendant Aprahamian has an interest in avoiding a "Fifth Amendment dilemma" and potentially suffering adverse inferences. Plaintiffs have an interest in obtaining evidence to efficiently build and prosecute their cases against all Defendants without having their efforts hamstrung by Defendant Aprahamian's refusal to participate in this MDL. Plaintiffs' proposal recognizes that we are not yet at a stage where adverse inferences would typically be applied, nor is discovery so advanced that Defendant Aprahamian's invocation of the Fifth Amendment would immediately derail Plaintiffs' efforts to build and prosecute their claims. Recognizing this, Plaintiffs' proposal would allow Defendant Aprahamian to avoid the "Fifth Amendment dilemma" ***unless and until*** his withdrawal of the Fifth Amendment invocation would prejudice Plaintiffs. If, at some point in the future, Defendant Aprahamian's criminal liability is still unresolved and his Fifth Amendment invocation must necessarily result in adverse consequences either to Plaintiffs or to Defendant Aprahamian in this civil case, ***he***—not Plaintiffs—should bear those consequences.

---

[1] Defendant Aprahamian's ***only*** argument with respect to this alternative is that it impacts the ***Court's*** interests because it may result in additional motion practice. *See* Dkt. No. 1585 at 8. Plaintiffs address those concerns below.

3

*See Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc*., 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980) ("That defendant's conduct also resulted in a criminal charge against him should not be availed of by him as a shield against a civil suit and prevent plaintiff from expeditiously advancing its claim."); *Transatlantic Reinsurance Co. v. Ditrapani,* 90 CIV. 3884 (JMC), 1991 WL 12135, at *4 (S.D.N.Y. Jan. 28, 1991) (same); Dkt No. 1558 at 11-12. The Parties and this Court can confront that issue at the appropriate time, if it arises.

Second, providing Defendant Aprahamian with the opportunity to later withdraw any Fifth Amendment invocation does not impose any meaningful burden on him. He overstates the burden he would suffer by participating in discovery under a protective order in this civil matter. *See* Dkt. No. 1558 at 6-8. But, it is even more difficult to see how he and the three law firms that represent him would be overwhelmed by the task of selectively invoking the Fifth Amendment, then deferring those matters until such time as his criminal liability is resolved.[2]

Finally, this approach actually incentivizes Defendant Aprahamian to resolve his criminal claims as quickly as possible. A consistent theme of Defendant Aprahamian's briefing is a fear that participating in meaningful discovery in this case will delay his criminal trial. *See* Dkt. No.

---

[2] To the extent Defendant Aprahamian believes he needs to hire a ***fourth*** law firm just to assist him in the task of asserting the Fifth Amendment, he certainly has the means to do so. For example, in just his last three years at Taro, he was one of Taro's highest paid executives and was paid over $1.8 million, including over $755k in bonuses. *See* Taro Pharmaceutical Industries Ltd.'s November 2016 Form 6K, Ex. 99.1, at p. 11, available at https://www.sec.gov/Archives/edgar/data/906338/000115752316007450/a51465182ex99_1.htm (reporting 2016 fiscal year-end base compensation, benefits, and variable compensation paid to Defendant Aprahamian as $276,430, $66,429, and $259,144, respectively); Taro Pharmaceutical Industries Ltd.'s November 2017 Form 6K, Ex. 99.1, at p. 9, available at https://www.sec.gov/Archives/edgar/data/906338/000115752317003142/a51720317ex99_1.htm (reporting 2017 fiscal year-end base compensation, benefits, and variable compensation paid to Defendant Aprahamian as $301,955, $54,188, and $260,000, respectively); Taro Pharmaceutical Industries Ltd.'s November 2016 Form 6K, at p. 6, available at https://www.sec.gov/Archives/edgar/data/906338/000115752318002340/a51895426.htm (reporting 2018 fiscal year-end base compensation, benefits, and variable compensation paid to Defendant Aprahamian as $310,756, $54,734, and $236,797, respectively).

1537-2 at 1, 5-6; Dkt. No. 1585 at 1, 6, & 8-9. Under Defendant Aprahamian's proposal—an indefinite stay of proceedings—the longer he can string out his criminal trial then the longer he can avoid civil liability, and thus **he** actually has an incentive to delay **both** proceedings.[3] Under Plaintiffs' proposal, however, he is incentivized to resolve his criminal claims as quickly as possible so that he can withdraw any Fifth Amendment invocation at the earliest possible stage to avoid the risk of potential adverse inferences.[4]

Because Plaintiffs' proposal better balances the risks, burdens, and incentives between Defendant Aprahamian and all Parties, Defendant Aprahamian cannot demonstrate that the more drastic remedy of a stay of all proceedings against him is appropriate and necessary. *See ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042, 1045 (C.D. Cal. 2014); (stay is inappropriate when there are "less drastic" methods available); *Digital Equip. Corp. v. Currie Enterprises*, 142 F.R.D. 8, 13 (D. Mass. 1991) (same); *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1240 (N.D. Okla. 2003) (same); *Garcia v. City of Leavenworth, Kansas*, 19-2049-JAR-KGG, 2019 WL 3302306, at *3 (D. Kan. July 23, 2019) (same). This is especially true when considering the countervailing prejudice that a stay of proceedings would cause to the Plaintiffs, the Court, third-party witnesses, and the public's interests.

---

[3] It is worth noting that Defendant Aprahamian is not currently incarcerated. Rather, he is out on bail. *See* Dkt. No. 9 in *United States v. Ara Aprahamian*, No. 20-cr-00064 (E.D. Pa.). Thus, he is not in the position where a speedy resolution of his criminal case might bring him freedom. Instead, a speedy resolution to that case might actually bring him imprisonment. He therefore has an incentive to delay both his criminal case and this civil case.

[4] For these reasons, Defendant Aprahamian's' argument that the public's interest is best served by a speedy resolution of his criminal claims, *see* Dkt. No. 1585 at 9, actually favors Plaintiffs' approach.

## II. STAYING PROCEEDINGS WILL PREJUDICE THE INTRESTS OF THE COURT, THE PLAINTIFFS, NON-PARTIES, AND THE PUBLIC.

If all proceedings against Defendant Aprahamian are stayed, there will be a need to re-depose witnesses. Defendant Aprahamian's disclaimer that he personally does not intend to reopen depositions misses the point. *See* Dkt. No. 1585 at 7. Regardless of *his* intentions, if proceedings are stayed against Aprahamian, then ***Plaintiffs*** would need to reopen the depositions "in order to have [Aprahamian] bound by them." *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980); *see Transatlantic Reinsurance Co. v. Ditrapani,* 90 CIV. 3884 (JMC), 1991 WL 12135, at *4 (S.D.N.Y. Jan. 28, 1991) ("***plaintiffs*** would have to renotice the depositions of the nonmoving defendants in order to have the stayed defendants bound by those depositions") (emphasis added).[5] This would inevitably result in lost time (and dollars) to the Parties who have to re-depose these witnesses and increase the burden on those non-party witnesses who must be re-deposed. This would derail the orderly progress of this MDL and impose significant (and duplicative) costs on all involved. These are not misguided or trivial concerns; they are real, prudent, and important ones.

Even if the prospect of re-deposing witnesses could be avoided—which it cannot—Plaintiffs would be at a significant disadvantage, forced to litigate their claims against other Defendants without the crucial and complementary discovery Defendant Aprahamian could provide and to which Plaintiffs are entitled. This is more than just delay; it is prejudice to Plaintiffs' cases. *See Soroush v. Ali*, No. 09-cv-3703, 2009 WL 3467897, at *3 (E.D. Pa. Oct. 28,

---

[5] It also concerning that, while assuring the Court that he "has no such intent" to "halt or reverse the progress of this MDL" following vacatur of a stay, Defendant Aprahamian simultaneously reserves a right to "seek[] additional depositions" if "new evidence" comes to light in this MDL. *See* Dkt. No. 1585 at 7 & n. 12. This is cold comfort given that Defendant Aprahamian would be the one bringing forth that "new evidence" upon vacatur of a stay.

6

2009) (finding prejudice where a stay would "impede plaintiff's ability to collect the necessary information" to build their case). And, just as Plaintiffs are prejudiced by having their cases thwarted by Defendant Aprahamian's refusal to participate in this MDL, the tens of millions of individuals they represent (*i.e.*, the public) are likewise prejudiced.[6]

Finally, Defendant Aprahamian's argument that Plaintiffs' alternative to a stay—allowing him the option to withdraw his Fifth Amendment invocation as long as it does not prejudice Plaintiffs—would be a "recipe for fact-intensive motion practice" for the Court is not persuasive. *See* Dkt. No. 1585 at 8. Importantly, this argument presupposes that he will be unable to withdraw any Fifth Amendment invocations until this case is so advanced that his withdrawal may reasonably result in prejudice to Plaintiffs. Not only does this argument admit that he intends to use the Fifth Amendment invocation as both a shield (to avoid prejudice to him) and as a sword (to inflict prejudice on Plaintiffs), but it also ignores the Courts' previously-stated preference for resolving Fifth Amendment issues as the need arises rather than staying proceedings. Just a few months ago, the Court stated:

> And of course I understand that in any case where [an] indictment might be pending or investigation is pending, there's always Fifth Amendment considerations. But for example, we know that we can work through some of those. Whether you agree with a special master or whether I have to rule on it, there's a way to do that ad hoc, case by case. I see no reason that is a blanket stay on any discovery and even motions practice if that's the case.

Transcript of July 9, 2020 Status Conference, at 36, lines 7-14 (excerpt attached as Exhibit 1).

The Court was right then to reject the notion of stays in this MDL on account of Fifth Amendment concerns. Nothing has changed to suggest that the Court reverse course now.

---

[6] Defendant Aprahamian seems to argue that because they have agreed with the DOJ to postpone certain witness depositions, Plaintiffs will not be harmed by a blanket stay of all discovery and proceedings against him. *See* Dkt. No. 1585 at 7. But, importantly, Plaintiffs' agreement to postpone certain depositions is not a blanket stay of discovery or a blanket stay of proceedings generally, nor is that agreement indefinite. And, as the Court knows, that DOJ list of witnesses is shrinking.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant Aprahamian's Motion to Stay all Civil Proceedings Against Him.

Dated: November 24, 2020                                Respectfully Submitted,

WILLIAM TONG                                            ERIC S. SCHMITT
ATTORNEY GENERAL                                        ATTORNEY GENERAL

*/s/ W. Joseph Nielsen*                                 */s/ Michael Schwalbert*
W. Joseph Nielsen                                       Michael Schwalbert
Assistant Attorney General                              Assistant Attorney General
55 Elm Street                                           815 Olive St., Ste. 200
P.O. Box 120                                            Saint Louis, MO 63101
Hartford, CT 06141-0120                                 (p) 314-340-7888
Tel: (860) 808-5040                                     (f) 314-340-7981
Fax: (860) 808-5033                                     Michael.Schwalbert@ago.mo.gov
Joseph.Nielsen@ct.gov

*Liaison Counsel for the States*                        *Counsel for Plaintiff State of Missouri*


*/s/ Roberta D. Liebenberg*                             */s/ Dianne M. Nast*
Roberta D. Liebenberg                                   Dianne M. Nast
FINE, KAPLAN AND BLACK, R.P.C.                          NASTLAW LLC
One South Broad Street, 23rd Floor                      1101 Market Street, Suite 2801
Philadelphia, PA 19107                                  Philadelphia, PA 19107
215-567-6565                                            215-923-9300
rliebenberg@finekaplan.com                              dnast@nastlaw.com

*Liaison and Lead Counsel for End-Payer*                *Liaison and Lead Counsel for Direct*
*Plaintiffs*                                            *Purchaser Plaintiffs*

*/s/ William J. Blechman*
William J. Blechman, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
wblechman@knpa.com

*Counsel for the Kroger Plaintiffs and Liaison Counsel for Direct Action Plaintiffs*

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
202-789-3960
jonc@cuneolaw.com

*Lead Counsel for Indirect-Reseller Plaintiffs*

9