UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A
PROTECTIVE ORDER TEMPORARILY POSTPONING DEPOSITIONS
<u>OF SEVEN INDIVIDUALS</u>**

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

I.     **INTRODUCTION**

Teva Pharmaceuticals USA, Inc. ("Teva") moves for a protective order postponing the depositions of seven Teva employees and former employees (the "Teva Personnel") until January 31, 2021.[1] This stay would be in addition to the stay requested by Joint Stipulation by the U.S. Department of Justice ("DOJ") and the Parties with regard to 70 individuals (the "DOJ Stay List"), and approved by the Court (PTO 147; ECF No. 1613).  This limited stay of a total of 77 depositions—involving individuals who represent just a fraction of the hundreds of witnesses in this case—is critical to protect the interests of justice in light of the indictments that have been returned in the parallel criminal matter.  While Teva believes that a stay until the conclusion of the criminal proceedings is warranted, and intends to move for such a stay when a criminal trial date is set, it is deferring its request for a more extended period given the Parties' current agreement as to a January 31, 2021 expiration for the individuals on the DOJ Stay List.

On August 25, 2020, Teva and Glenmark Pharmaceuticals, Inc. USA ("Glenmark") were indicted on alleged Sherman Act violations based upon allegations that are nearly identical to those alleged against Teva in this MDL.  Defendant Ara Aprahamian was previously indicted on similar allegations.  The criminal trials of these MDL defendants will involve substantially the same evidence as will be used in the MDL.  Among the core evidence will be the testimony of the seven individuals who are the subject of this motion, and those on the DOJ Stay List.

While courts typically stay entire civil proceedings in situations where, as here, there is significant overlap between the criminal and civil cases, Teva is requesting a limited stay of only select depositions.  The Court has previously issued limited discovery stays, and such a stay is

---

[1] *See* Appendix A for a list of individuals for which Teva is requesting a stay.

1

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

even more important now to protect the interests of justice. If any of the seven individuals for whom Teva seeks a stay invoke their Fifth Amendment rights, it may result in an adverse inference against themselves and Teva, and the unavailability of critical testimony needed for Teva's defense. If they instead waive those rights, Teva's defenses to the criminal allegations will be fully previewed to the government. This constitutional dilemma can only be addressed by a limited stay, which will not meaningfully impact the significant discovery progress that has been and will continue to be made, and the depositions of hundreds of other witnesses that can be taken.

## II. BACKGROUND

### A. The Teva Indictment and MDL Plaintiffs' Allegations Overlap, and Substantially the Same Evidence Will Be Used For Both Cases.

On August 25, 2020, Teva was charged in a three-count indictment brought by the DOJ Antitrust Division. *See United States v. Teva Pharmaceuticals, USA, Inc. and Glenmark Pharmaceuticals Inc.*, *USA*, No. 20-CR-00200-RBS, ECF 28 (E.D. Pa. Aug. 25, 2020) (the "Teva Indictment"). The allegations in the Teva Indictment overlap with those made by the MDL plaintiffs with regard to products, alleged co-conspirators, and witnesses.

The Teva Indictment alleges that, from approximately May 2013 until or around December 2015, Teva engaged in three conspiracies "to suppress and eliminate competition." *Id.* at ¶¶ 20, 36, 48. The conspiracies are alleged to involve at least 13 generic drugs, all of which are MDL drugs: Pravastatin; Carbamazepine Tablets and Chews; Clotrimazole Topical Solution 1%; Etodolac IR and ER; Fluocinonide Cream, Emollient Cream, Gel, and Ointment; Warfarin; Nadolol; and Tobramycin. *Id.* at ¶¶ 13, 39, 53.[2] Teva is alleged to have agreed to

---

[2] The Teva Indictment also suggests that the government may seek to introduce evidence related to other products in the MDL. *See id.* at ¶¶ 5, 39, 53.

2

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

"increase and maintain prices" or "allocate customers and rig bids for, and stabilize, maintain, and fix prices" of certain generic drugs. *Id.* at ¶¶ 20, 36, 48.  Teva is alleged to have conspired with four competitors—Taro Pharmaceuticals, Sandoz, Apotex, and Glenmark—all of which are codefendants in the MDL, on certain of those drugs. *Id.* at ¶¶ 11–12, 33, 45.

The Teva Indictment also refers to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[3] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[4]▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[5]▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬[6]▬▬▬▬▬▬▬▬▬▬

---

[3] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

[4] The above-referenced company affiliations and titles are those that the individuals held at the time of their alleged conduct in the MDL and/or Teva Indictment.

[5] *See Connecticut et al. v. Teva Pharmaceuticals USA, Inc. et al.*, 19-CV-2407, Am. Compl. ¶¶ 681–704 (E.D. Pa. Oct. 31, 2019) (ECF No. 106) ("Teva AG Complaint"); *In re Pravastatin Cases (Direct Purchaser)*, 16-PV-27241, Consol. Compl. ¶¶ 93–142 (E.D. Pa. Aug. 15, 2017) (ECF Nos. 67, 68); *In re Pravastatin Cases (End-Payer)*, 16-PV-27242, Consol. Am. Compl. ¶¶ 131–79 (E.D. Pa. Apr. 1, 2019) (ECF Nos. 152, 153).

[6] *See* Teva AG Compl. ¶¶ 473–81, 705–20, 829–76.

3

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

██████████████████████████████████████████████████

█████████████████████████████████████[7]█████████████████

██████████████████████████████████████████████████

██████

     ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

    Seven additional individuals for which Teva proposes a deposition stay include those in senior leadership as well as those in roles with respect to pricing and sales.  They are also likely defense witnesses in both the civil and criminal matters.  ███████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████[8]

     ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[7] *See* Teva AG Compl. ¶¶ 225–47, 473–81, 542–52, 705–20.
[8] The above-referenced company affiliations and titles are those that the individuals held at the time of the relevant conduct in the MDL and/or Teva Indictment.

4

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████[9]

## B.     Substantial Discovery Progress Has Been and Will Continue to Be Made.

Since the filing of these civil cases in 2016, the parties have made significant discovery progress.  Defendants have produced over 33 million documents, including over 27 million custodial documents from 554 custodians.  Teva alone has produced 3.4 million custodial documents.  Defendants have also produced over 6 million documents from shared sources.  And, Defendants have substantially completed their production of almost a decade's worth of transactional data for over 100 drugs.  Furthermore, Defendants, including Teva, have responded to multiple rounds of written discovery, including Requests for Production and Interrogatories.

The parties are also pursuing nonparty discovery.  They have collectively issued over 80 subpoenas.  There are active and ongoing meet and confers with the non-parties.  Productions are being made, and Plaintiffs and Defendants are sharing the productions with each other.

In addition, since September 1, 2019, new complaints have been filed that add nearly 120 drugs and over 40 Defendants to the MDL.  The parties are currently negotiating the scope of a "Phase 2" discovery plan that will cover additional data searches, search terms, custodians, and involve the production of hundreds of thousands—if not millions—more documents.

Neither the significant work that lies ahead, nor the progress that parties have already made, will be slowed by the limited stay requested herein.  Even if depositions are stayed for the

---

[9] Though Teva is reluctant to further preview its defenses in this filing, it is willing to provide the Court with additional details *in camera*, should the Court so desire.

5

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Teva Personnel, **hundreds** of depositions can and will proceed, including certain Teva depositions, and the depositions of corporate Defendants' employees, Plaintiffs, and third parties. And, substantial progress can and will be made on discovery related to class certification, including depositions of Plaintiffs. For example, even if certain depositions are stayed, the parties can nonetheless complete all necessary transaction-related discovery, including any corresponding Rule 30(b)(6) depositions on the topic of Teva's transactional data.

### III.  LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also Texaco, Inc. v. Borda*, 383 F.2d 607, 608–69 (3d Cir. 1967). This Court has the inherent power to stay the taking of depositions in the interest of justice. *See, e.g.*, *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) ("[A] court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[ ] to require such action sometimes at the request of the prosecution; sometimes at the request of the defense.'" (quoting *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). The decision to stay civil proceedings requires the balancing of interests of the parties, the court, and the public. *In re Adelphia Comm'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *2 (E.D. Pa. May 13, 2003).

In balancing those interests, courts in the Eastern District of Pennsylvania typically consider: 1) the extent of overlapping issues in the criminal and civil cases; 2) the status of the criminal proceedings, including whether any defendants have been indicted; 3) plaintiffs' interests in expeditious civil proceedings, weighed against the prejudice arising out of the delay;

6

4) the burden on defendants; 5) the interests of the court; and 6) the public interest. *See, e.g.*, *Med. Inv. Co. v. Int'l Portfolio, Inc.*, No. 12-3569, 2014 WL 2452193, at *1 (E.D. Pa. May 30, 2014); *McCullers v. Commonwealth of Pennsylvania*, No. 15-3732, 2016 WL 3551624, at *13 (E.D. Pa. June 30, 2016) (same). Taken together, these factors weigh strongly in favor of a temporary postponement of the depositions of the Teva Personnel.

## IV.   ARGUMENT

### A.   Teva's Indictment and the Large Degree of Factual Overlap Between the Civil and Criminal Matters Strongly Weigh in Favor of a Stay.

Courts generally find that the factors that weigh most strongly in favor of a stay are the degree of overlapping factual issues between the civil and criminal cases and the existence of an indictment against a defendant. *See Med. Inv. Co.*, 2014 WL 2452193, at *2 ("The degree to which issues in simultaneous civil and criminal proceedings overlap is considered the most important threshold issue when determining whether or not to grant a stay.") (internal quotations omitted); *In re Adelphia*, 2003 WL 22358819, at * 3 ("If criminal indictments are returned against the civil defendants, then a court should strongly consider staying the civil proceedings until the related criminal proceedings are resolved."). Courts have granted stays under circumstances similar to those present in this case where there was substantial overlap between the parallel criminal and civil proceedings and an indicted defendant in the civil case.

In conducting a stay analysis in *In re Derivative Litigation*, No. 06-02964, 2007 WL 1101276, at *2 (E.D. Pa. Apr. 11, 2007), for example, the court observed that the conduct of the two indicted defendants was central to the allegations in the civil case. It explained that the civil complaint "was based on the same events that give rise to the criminal charges contained in the

7

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Indictment." *Id*. at *2;[10] *see also Walker v. Cty. of Gloucester*, No. 15-7073, 2016 WL 1725942 (D.N.J. Apr. 28, 2016) (granting defendant's motion to stay civil proceedings pending the resolution of parallel criminal proceedings).

Such stays are also appropriate in the context of parallel antitrust proceedings. *See, e.g., Texaco*, 383 F.2d at 608–09 (affirming district court's stay of proceedings in civil suit until conclusion of criminal action). In *In re Packaged Seafood Prods. Antitrust Litig.*, No 15-MD-2670, 2018 WL 5785284, at *3 (S.D. Cal. Nov. 5, 2018), for example, the court granted a stay of all discovery pertaining to an individual defendant who had recently been indicted for allegedly engaging in a price fixing conspiracy that was the subject of the parallel antitrust multidistrict litigation. *Id.* The court explained, "when an indictment has been returned and there is a large degree of factual overlap between the civil and criminal cases, ***there is a strong case for a stay***." *Id.* (emphasis added).

Likewise, in the *Four In One Co. v. SK Foods, L.P.*, No. 08-3017, 2010 WL 4718751, at *3 (E.D. Cal. Nov. 12, 2010) antitrust litigation, the court granted a limited stay of discovery, including of all depositions, where a defendant had been indicted and the parallel proceedings overlapped significantly. The court held that "since the simultaneous civil and criminal proceedings involve[d] the same or closely related facts, Fifth Amendment concerns weigh[ed] in favor of granting a stay." *Id*. at *5.

Here, a stay is warranted—and, indeed, necessary—for the same reasons. The civil and criminal cases both allege Sherman Act violations arising from alleged agreements to fix prices and allocate markets of generic pharmaceutical drugs. The cases involve the same parties,

---

[10] The court reserved judgment on the motion to stay but later granted the motion. *See* July 20, 2007 Order, No. 06-02964 (ECF No. 46).

witnesses, products, and evidence—including the likely testimony of the Teva Personnel.  The Court has previously issued limited discovery stays for these reasons, even in the absence of indictments.  Now that multiple MDL defendants have been indicted, the civil and criminal proceedings are even more intertwined, weighing strongly in favor of a limited stay of depositions.

**B.       Teva Will Suffer Undue Prejudice If a Limited Stay Is Not Granted.**

Denying Teva's motion for a limited stay will result in undue prejudice because of the consequences that will flow from any of the Teva Personnel invoking their Fifth Amendment rights, as well as waiving those rights.  If any invoke their Fifth Amendment rights, Teva could suffer the consequences of an adverse inference and the unavailability of substantive testimony that Teva needs to defend itself in this MDL.  If any do not invoke their Fifth Amendment rights, their deposition testimony will be available to the government to analyze and mine, providing the government with access to information and a strategic advantage not otherwise available under the Federal Rules of Criminal Procedure.  Where, as here, discovery in a civil case could create such significant risk of an unjust result for a defendant, "the appropriate remedy [is] a protective order . . . postponing civil discovery until termination of the criminal action."  *Kordel*, 397 U.S. at  9; *see also Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *McCullers*, 2016 WL 3551624, at *13  ("[W]hile it is not unconstitutional to force a civil defendant to choose whether to assert his Fifth Amendment privileges, the strong potential for an unjust result outweighs the efficiencies gained by allowing the case to proceed.") (internal quotations omitted).

9

1. **Teva Cannot Adequately Defend Itself in the MDL if the Testimony of Key Witnesses is Not Available.**

Although corporations do not have a Fifth Amendment privilege, they nevertheless may obtain a stay when their co-defendants—including their employees—are entitled to assert their Fifth Amendment privilege. *See In re Valeant Pharm. Int'l, Inc.*, No. 16-3087, 2017 WL 3429342 (D.N.J. Aug. 9, 2017) (staying all proceedings where employees of defendant companies were indicted because they were material witnesses in the civil case); *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002) (granting corporate and individual defendants' motion to stay all discovery pending the resolution of matter where individual defendants were indicted). That is because corporations "cannot adequately defend themselves" without the testimony of key individuals. *Parker v. Dawson*, No. 06-6191, 2007 WL 2462677, at *7 (E.D.N.Y. August 27, 2007).

In *Volmar Distributors, Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 41–42 (S.D.N.Y. 1993), the court stayed all discovery in an antitrust case involving defendant newspapers and distributors to protect the Fifth Amendment rights of executives who had been indicted. The executives were central figures in proceedings that involved "essentially the same activity." *Id*. at 39. The court observed that if any executive "invokes his constitutional privilege during civil discovery, not only does this prevent him from adequately defending his position, but it may subject him to an adverse inference from his refusal to testify." *Id*. The court found that because these executives were vital to the corporate defendants' defenses in the civil action, a stay of their depositions was the appropriate way to resolve the prejudice to corporate defendants. *Id*. at 41.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

10

████████████████████████████████████████████████ The possibility that one or more of those individuals will invoke their Fifth Amendment right in connection with MDL deposition testimony means that Teva could suffer an adverse inference in the MDL *and* be without the testimony it needs to adequately defend itself against Plaintiffs' allegations. That testimony includes affirmative testimony concerning Teva's pricing and bid decisions made independently of any competitor communications, and testimony about the legitimate reasons for competitor communications.

### 2. If Teva's Key Witnesses Testify in the MDL, the Government Will Obtain a Full Preview of Teva's Defenses in the Criminal Case.

If, on the other hand, any of the Teva Personnel ████████████████████████ ██████████████ do provide substantive deposition testimony in the MDL, Teva will be equally prejudiced. Civil plaintiffs are entitled to a far broader degree of discovery from civil defendants than the government is entitled to from criminal defendants. *Compare* FED. R. CIV. P. 26 *with* FED. R. CRIM. P. 16(b). The pendency of parallel civil and criminal matters involving substantially the same allegations and evidence thus creates a constitutional dilemma. Because of this constitutional dilemma, "indicted defendants risk exposing their criminal defense strategy during civil discovery," and courts therefore routinely grant discovery stays. *In re Adelphia*, 2003 WL 22358819, at *3; *see also United States v. Mellon Bank*, 545 F.2d 869, 873 (3d Cir. 1976) (risk that party might leverage civil discovery to advance criminal case favored stay in civil case); *United States v. One 1967 Buick Hardtop Electra*, 304 F. Supp. 1402, 1403 (W.D. Pa. 1969) (party should not be permitted to obtain through the liberal discovery allowances what they are not entitled to through the Federal Rules of Criminal Procedure).

In *Trustees of the Plumbers and Pipefitters National Pension Fund, et al. v. Transworld Mechanical Inc., et al.*, 886 F. Supp. 1134 (S.D.N.Y. 1995), for example, private plaintiffs filed civil claims against corporate and individual defendants that had been previously criminally indicted. In granting a stay of the civil matter as to all defendants, the court emphasized that the allegations in the civil and criminal actions were similar, and that the individual defendants were "the central figures" in the civil case. 886 F. Supp. at 1139–41. It explained that courts have the discretion to stay civil proceedings in such circumstances "because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in the Federal Rules of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Id*. at 1138; *see also Dresser Indus*., 628 F.2d at 1375–76 (same).

It is because of those risks that courts have further recognized that a protective order is not an effective substitute for a stay. "A Rule 26(c) protective order, no matter how broad its reach, provides no guarantee that compelled testimony will not somehow find its way into the government's hands for use in a subsequent criminal prosecution." *Andover Data Serv. Statistical Tabulating*, 876 F. 2d 1080, 1083 (2d Cir. 1989). Nor does it guarantee that an individual at risk of criminal prosecution will voluntarily testify, because a Rule 26(c) order is not co-extensive with the protections afforded by statutory use and derivative immunity. *Id.*

The situation here is no different. If any of the Teva Personnel ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ assert their Fifth Amendment rights, it may give rise to an adverse inference as to their and Teva's alleged culpability in this civil litigation and strip Teva of the testimony it needs to defeat Plaintiffs' claims. If they instead chose to testify, Teva's defenses will be on display to the government, providing the government with a powerful

12

strategic advantage in its criminal case. This is an inequity that—particularly in a case that has already involved media publication of sealed materials—can only be remedied by a limited stay.[11]

### C. A Limited Stay of Certain Depositions Will Promote Judicial Economy and Serve the Public Interest.

Limited discovery stays are also appropriate where, as here, they will promote judicial economy. In parallel proceedings that involve "substantial matters of the same nature[,]" the imposition of a limited stay may "moot, clarify, or otherwise affect various contentions in the civil case." *Mellon Bank*, 545 F.2d at 873; *see also Texaco*, 383 F. 2d at 609 (affirming district court's stay of parallel civil antitrust proceedings). Courts in this circuit have recognized that staying discovery until the conclusion of parallel criminal proceedings can minimize a court's burden by: 1) avoiding duplicative judicial efforts; 2) eliminating litigation over privilege issues arising out of Fifth Amendment invocations; and 3) increasing the potential for settlement. *See Med. Inv. Co.*, 2014 WL 2452193, at *4; *Walsh Sec., Inc. v. Cristo Property Management Ltd.*, 7 F. Supp. 2d 523, 528–29 (D. N.J. 1998).

As long as the criminal matter against Teva is pending, issues relating to assertions of the Fifth Amendment privilege and other discovery obstacles will need to be resolved by this Court. Moreover, given the fact that the criminal matter involves 13 products, all of which are at issue in the MDL, the outcome of the criminal matter will necessarily impact the MDL parties' views

---

[11] Emma Court, *A huge lawsuit accuses nearly 20 big drug companies, a billionaire, and 2 brothers-in-law of cozying up to hike drug prices. Here's the inside story.*, Business Insider (Dec. 19, 2018, 1:30 PM), https://www.businessinsider.com/antitrust-suit-accuses-drug-companies-working-together-increase-generic-prices-2018-12 ("Business Insider is the first to report on the unredacted complaint, which was filed under seal in the Eastern District of Pennsylvania."); Emma Court, *Inside the secret messages that allegedly show how big drug companies plotted to increase the price of your medicines*, Business Insider (June 7, 2019, 10:31 AM), https://www.businessinsider.com/full-state-antitrust-complaint-generic-drugmakers-collaborated-on-prices-2019-6 ("Business Insider obtained an unredacted copy of the complaint. . . .").

13

with respect to liability and settlement. Without a limited stay, neither the Court nor the parties will be able to leverage the criminal proceeding results to simplify the issues in the MDL, and to potentially promote settlement. Finally, a limited stay of certain depositions promotes the public's interest in achieving unfettered resolution of the criminal proceedings, which necessarily involve matters of significant public interest. *See Med. Inv. Co.*, 2014 WL 2452193, at *4.

### D. A Limited Stay of Certain Depositions Will Not Impede Plaintiffs' Interest in Pursuing this Civil Litigation.

While plaintiffs—and all parties—have an interest in expediency, courts have held that expediency is outweighed by a defendant's Fifth Amendment interests. *Volmar Distribs.*, 152 F.R.D. at 40 (even if a "stay will result in inconvenience and delay to plaintiffs . . . under settled authority the Fifth Amendment is the more important consideration"). Plaintiffs must therefore establish more than mere delay. They must demonstrate a "unique injury, such as the dissipation of assets or an attempt to gain an unfair advantage from the stay." *In re Adelphia*, 2003 WL 22358819, at *4 (internal citations omitted). Plaintiffs cannot do so here.

There is no risk of the dissipation of assets, and Defendants will not gain an unfair advantage over Plaintiffs if a limited stay is granted.[12] Given the complexity and size of this case, it is unlikely that Plaintiffs will be prejudiced because the remaining civil proceedings can and will proceed. That is, if a limited stay is granted, Plaintiffs will continue to collect nearly all of the discoverable information in this case, and the parties will still be able to take ***hundreds of depositions***, proceed with extensive document discovery, and move forward with class

---

[12] We anticipate Plaintiffs will reiterate their position that discovery needs to proceed expeditiously because two witnesses have passed since the MDL was commenced. But that risk is always present, and does not constitute an identifiable risk of unique injury sufficient to deny a limited stay of depositions. In contrast, Teva will suffer an enormous burden if it is required to proceed with the depositions of key witnesses in the MDL while preparing a complete defense in the parallel criminal case. *Texaco*, 383 F.2d at 608; *Cruz*, 1997 WL 370194, at *4.

certification issues. In short, there is an immense amount of work that needs to be done and can be done in this MDL that does not depend upon proceeding with depositions of the Teva Personnel. And, that work will move full speed ahead regardless of how the Court rules on this Motion.

## V. CONCLUSION

For the foregoing reasons, Teva respectfully moves for a stay of depositions of seven Teva employees until January 31, 2021.

Dated: November 30, 2020

Respectfully submitted,

/s/ *Alison Tanchyk*
J. Gordon Cooney, Jr.
John J. Pease III
Alison Tanchyk
William T. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2020, I caused a copy of the foregoing Motion for Protective Order to be served on counsel of record via the Court's CM/ECF system.

*/s/ Alison Tanchyk*
Alison Tanchyk

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**