## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE<br><br>ORAL ARGUMENT REQUESTED |

## REPLY IN FURTHER SUPPORT OF TEVA PHARMACEUTICALS USA, INC.'s MOTION FOR RECONSIDERATION OF BELLWETHER SELECTION

In response to Teva Pharmaceuticals USA, Inc.'s ("Teva") Motion for Reconsideration ("Motion"), Plaintiffs trivialize the extraordinary impact of the Antitrust Division's criminal indictment of Teva on the bellwether cases. After the Court's bellwether selection, Teva, the largest MDL defendant, and the defendant allegedly at the center of two of the four bellwether cases, was indicted. Plaintiffs would have the Court believe that the Teva Indictment "changes nothing," and that Teva's Motion is part of a strategy designed to delay Teva's submission to civil justice. Plaintiffs are wrong. This Motion is not a litigation tactic; it is an appropriate and well-supported request to the Court to exercise its discretion to realign the first bellwether selections to account for both: 1) the constitutional considerations Teva faces because of the parallel proceedings (which ripened only after the Court's July 13, 2020 Order); and 2) the inevitable case management complications that will ensue should the Teva AG and Pravastatin cases remain as first-in-line bellwethers.

Teva recognizes that there is no perfect solution to this situation, but the Indictment's impact on the Teva AG and Pravastatin bellwether cases cannot—and should not—be ignored. There are 18 single drug cases and, depending on how one counts, three "overarching" conspiracy

cases in this MDL, and there are therefore many paths forward to progress and efficiency in the MDL.  Among them are the Clobetasol and Clomipramine cases the Court has already selected as bellwethers, and which do not involve the kinds of entanglements with the criminal proceeding presented by the Teva AG and Pravastatin cases.  Contrary to what Plaintiffs would have this Court believe, if the Court grants Teva's Motion, interests of judicial efficiency will be served because significant progress can continue to be made in this MDL, and the substantial progress that has thus far been made can be leveraged for cases other than the Teva AG and Pravastatin cases.

## I.      There Is Substantial Overlap Between the Proceedings.

As described in Teva's opening brief and Motion to Stay, the Teva Indictment and the Teva AG and Pravastatin cases involve the same products, individuals, dates, and conduct.[1]  While Plaintiffs respond that the overlap between the cases is "not nearly as great as Teva claims," Pls.' Opp'n 8 (ECF No. 1603), they do not and cannot credibly argue that the overlap is not substantial.

Plaintiffs instead minimize the overlap by focusing on statistics, not substance.  They suggest that because "only" three of the Teva AG defendants, "only" two of the Pravastatin defendants, and "only" three drugs with "mention" of 11 others are involved in the Teva Indictment, the degree of overlap fails to meet the threshold factor considered by courts in evaluating whether to grant a discovery stay.  *Id.*; *see In re Derivative Litig.*, No. 06-02964, 2007 WL 1101276, at *1 (E.D. Pa. Apr. 11, 2007) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.") (citations and quotations omitted).  But, there is no quantitative threshold by which the overlap between criminal and civil

_____

[1] ████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

proceedings is measured, nor do Plaintiffs cite to any case law holding otherwise.  Courts instead evaluate the overlap on a case-by-case basis.  *See id.*[2]  The significant and undeniable degree of overlap is exemplified by comparing the Teva Indictment and Teva AG complaint allegations with regard to Pravastatin, Etodolac ER, and Tobramycin.  *See* Appendix A.[3]

Nor can there be any reasonable dispute that much of the same evidence will be used to prosecute and defend the criminal and civil cases.  That includes testimonial evidence which, as discussed in Teva's Motion to Stay, is what creates the constitutional dilemma Teva faces.  *See, e.g.*, *Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mech. Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995) (finding denial of stay in case involving indicted defendants could impair party's Fifth Amendment privilege, extend discovery beyond Federal Rule of Criminal Procedure 16(b), and expose the defense's theory to the prosecution in advance of trial).

## II.    Plaintiffs Understate The Impact of the Teva Indictment.

### A.    The Complaints Preview the Degree of Disruption.

At the heart of Plaintiffs' Opposition to Teva's Motion is their remarkable claim that the indictment of the largest MDL defendant, and the one that is purportedly at the center of two of the four bellwethers "changed nothing."  Pls.' Opp'n 5.  They imply that because Teva is but one of 35 defendants in the Teva AG case, and one of six in the Pravastatin cases, the indictment's impact on the bellwether cases is merely fractional.  *Id.* at 3, 8.

---

[2] Plaintiffs also ignore the government's allegations that Teva's alleged co-conspirators are not limited to those specifically identified in the indictment, and that the government may seek to introduce evidence related to other drugs.  *See* Teva Indictment ¶¶ 20, 36, 48; *see also id.* at ¶¶ 39, 53.

[3] The Teva Indictment's allegations with respect to all 10 of the other MDL drugs similarly overlap with the Teva AG complaint allegations.  *See* Def.'s Mot. to Stay 2–3 (ECF No. 1615); Def.'s Mot. for Recons. 3.

But that argument is undermined by Plaintiffs' own allegations in the Teva AG and Pravastatin complaints, which literally and figuratively illustrate that the only "fool's errand"—to use Plaintiffs' words, Pls.' Opp'n 11— is Plaintiffs' insistence that the Teva AG and Pravastatin bellwether cases be pushed forward while the criminal matter is pending:



Teva AG Compl. ¶ 124; *see also* Pravastatin DPP Compl. ¶ 64 (alleging that Teva had the largest market share of Pravastatin); *see also* Appendix A.

**B.      The Length of DOJ's Investigation and the Other DOJ Actions Do Not Minimize the Degree of Impact of the Teva Indictment.**

Neither the length of the Antitrust Division's investigation nor the Division's actions with regard to other MDL Defendants lessens the impact of the Teva Indictment on the bellwether cases. An indictment is different than an investigation.  Indeed, courts hold that the existence of an indictment materially changes the landscape of a civil proceeding such that a discovery stay is appropriate.  *See, e.g.*, *Med. Inv. Co. v. Int'l Portfolio, Inc.*, No. 12-3569, 2014 WL 2452193, at *1 (E.D. Pa. May 30, 2014); *In re Adelphia Comm'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *3 (E.D. Pa. May 13, 2003).

And, while Plaintiffs are correct that the fact of the parallel proceedings is not "new," the Teva Indictment is.  Prior to the Teva Indictment (and prior to the Court's bellwether selection), only one corporate defendant, Glenmark Pharmaceuticals USA, Inc. ("Glenmark"), had been indicted.  Plaintiffs argue that the Court's prior consideration of Glenmark's letter objection to the selection of the Pravastatin cases as bellwethers resolves the issues raised by Teva's Motion.  Pls.' Opp'n 5–6.  It does not.  There is no "Glenmark-centric AG" complaint, and therefore, the issues raised by the Glenmark indictment were and are fundamentally less complicated than those raised by the Teva Indictment.  Further, the indictment of a second—and the largest defendant in the Teva AG and Pravastatin cases—is a change of circumstances that warrants review of the impact of the criminal proceedings on both those cases.  *See* Pravastatin DPP Compl. ¶ 64; Pravastatin EPP Compl. ¶ 84.

Plaintiffs also attempt to equate the negotiated criminal resolutions involving some of Teva's MDL co-defendants with the Teva Indictment, even though they have distinct implications for the MDL.  Pls.' Opp'n 3–4.  Unlike the MDL Defendants that entered into Deferred Prosecution Agreements with the Antitrust Division, Teva has ***admitted no facts*** and made ***no admissions of liability*** in the criminal proceeding, and the proceedings are ***ongoing***.  Teva has entered a Not Guilty plea, *see United States v. Teva Pharmaceuticals, USA, Inc. and Glenmark Pharmaceuticals Inc., USA*, No. 20-CR-00200-RBS, ECF No. 36 (E.D. Pa. Sept. 10, 2020), and intends to vigorously defend itself in the criminal proceeding (and the MDL).

Because the Antitrust Division's case against Teva is ongoing, and both the government's charges and Teva's defenses are rooted in the conduct of its employees (many of whom ███████ █████████████ are the subject of Teva's Motion to Stay), there are constitutional considerations with which the Court must grapple.  Those constitutional considerations can, and respectfully

should, be addressed now by deferring the Teva AG and Pravastatin bellwethers, or selecting new ones.  Doing so is also in the best interest of judicial efficiency.  But, if the Court declines Teva's Motion, those constitutional considerations will need to be addressed regularly and throughout the progress of the Teva AG and Pravastatin bellwethers, causing persistent interruption and delay. *Cf. Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 528 (D.N.J. 1998) (explaining without a stay, "a constant stream" of privilege issues would need to be addressed).

### III.    The Constitutional Dilemma Should Be Avoided By Resequencing the Bellwethers.

The constitutional dilemma that Teva faces from proceeding with the Teva AG and Pravastatin bellwethers before the conclusion of the criminal case is described at length in Teva's opening brief and Motion to Stay.  Def.'s Mot. for Recons. 8–11 (ECF No. 1578); Def.'s Mot. to Stay 9–13 (ECF No. 1615).  If, on the one hand, any of ██████████████████████████ █ the individuals that are the subject of Teva's Motion to Stay invoke their Fifth Amendment rights, Teva could suffer from an adverse inference *and* be without substantive testimony that it needs to defend itself in this MDL.  On the other hand, if they choose to testify, their deposition testimony will be available to the government, providing it with access to information and a strategic advantage not otherwise available under the Federal Rules of Criminal Procedure.

Plaintiffs' Opposition heavily relies on cases in which defendants argued that they had a constitutional right to a discovery stay or a stay of the entire civil litigation in the context of parallel criminal and civil proceedings.  Pls.' Opp'n 7–13.  That is not Teva's argument.  Nor is Teva seeking a litigation stay, or even a blanket discovery stay as to Teva.  Rather, Teva respectfully submits that the constitutional dilemma arising out of the overlap between the criminal proceedings and the Teva AG and Pravastatin bellwethers should be avoided.  And, it can be—not by a blanket

litigation stay—but by resequencing the bellwether cases and implementing a limited stay of a fraction of the depositions Plaintiffs will seek.[4]

Resequencing the Teva AG and Pravastatin bellwethers will reduce the impact of any delays associated with a limited deposition stay.  And, even if such a stay is denied, resequencing will dramatically reduce the obstacles that will arise by having an indicted defendant at the center of both cases.  Indeed, Plaintiffs' reliance on cases in which there were no indictments is misplaced.[5]  Courts recognize the challenges of proceeding with a case involving an indicted defendant, particularly one central to the allegations in the civil litigation.  *Volmar Distributors, Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 41–42 (S.D.N.Y. 1993) (granting stay of all discovery rather than partial stay of discovery because indicted defendants were the "central figures" in the civil case); *see also Med. Inv. Co.*, 2014 WL 2452193, at *2-3.

Even those cases cited by Plaintiffs that involve indictments are distinguishable.  First, none involves a discretionary bellwether case in which the defendant at the center was indicted. Second, unlike Teva, defendants in nearly all of the cases Plaintiffs cite sought blanket stays of discovery, or of the entire litigation.[6]  Third, certain of the cases involved issues not present here:

---

[4] Teva's Motion to Stay does *not* seek a blanket stay of the litigation or of discovery.  It seeks a limited stay of certain individuals until January 31, 2020.  Teva will seek a further extension of that stay until the end of the criminal proceedings.  Def.'s Mot. to Stay 1.

[5] *See, e.g.*, *Soroush v. Ali,* No. 09-3703, 2009 WL 3467897 (E.D. Pa. Oct. 28, 2009) (no indictments, there was a risk of spoliation of evidence, and the civil case was in the early stages); *Pelzer v. City of Philadelphia,* No. 07-0038, 2007 WL 1377662 (E.D. Pa. May 7, 2007) (no indictments); *State Farm Mut. Auto Ins. Co. v. Beckham-Easley,* No. 01-5530, 2002 WL 31111766 (E.D. Pa. Sept. 18, 2002) (no indictments and there was a risk of dissipation of assets); *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.,* 175 F. Supp. 2d 573 (S.D.N.Y. 2001) (no indictments, indictments not imminent, and there was a risk of dissipation of assets).

[6] *See Digital Equip. Corp. v. Currie Enters.*, 142 F.R.D. 8 (D. Mass. 1991); *ESG Capital Partners LP v. Stratos*, 22 F. Supp. 3d 1042 (C.D. Cal. 2014); *Fox v. Lackawanna County*, No. 16-1511, 2018 WL 1203363 (M.D. Pa. Mar. 8, 2018); *Garcia v. City of Leavenworth*, No. 19-2047, 2019 WL 3302306 (D. Kan. July 23, 2019); *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623; *In re CFS-Related Sec.*

the risk of the dissipation of assets; issues in the criminal proceeding that were only tangentially related to the civil case; defendants that voluntarily gave prior testimony while under indictment; or defendants who did not seek relief until long after indictment.[7]  And, not one of the cases Plaintiffs cite for the proposition that a protective order can resolve the constitutional dilemma involved a matter that has already seen the publication of sealed material, as has happened in this case.[8]

---

*Fraud Litig.*, 256 F. Supp. 2d 1227 (N.D. Okla. 2003); *In re Derivative Litig.*, 2007 WL 1101276; *Landis v. N. Am. Co.*, 299 U.S. 248 (1936); *Lizarraga v. City of Nogales*, No. 06-474, 2007 WL 215616 (D. Ariz. Jan. 24, 2007); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83 (2d Cir. 2012); *Motorola, Inc. v. Abeckaser*, No. 07-3963, 2009 WL 816343 (E.D.N.Y. Mar. 26, 2009); *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118 (S.D.N.Y. 1980); *Pelzer*, 2007 WL 1377662; *Reck v. Berkshire Life Ins. Co. of Am.*, No. 10-0529, 2011 WL 335569 (W.D. Pa. Jan. 31, 2011); *S.E.C. v. N1 Techs., Inc.*, No. 17-23618, 2018 WL 8343503 (S.D. Fla. Jan. 30, 2018); *State Farm*, 2002 WL 31111766; *Soroush*, 2009 WL 3467897; *Transatlantic Reinsurance Co. v. Ditrapani*, No. 90-3884, 1991 WL 12135 (S.D.N.Y. Jan. 28, 1991); *Travelers Cas. & Sur. Co. v. Vanderbilt Group, LLC*, Nos. 01-7927 & 01-10695, 2002 WL 844345 (S.D.N.Y. May 2, 2002).

[7] *See Transatlantic,* 1991 WL 12135 (involved risk of dissipation of assets); *Travelers,* 2002 WL 844345, at *3 (S.D.N.Y. May 2, 2002) ("[m]uch of the discovery in the consolidated civil actions will relate to [an issue] only indirectly implicated by the indictment"); *ESG Captial Partners*, 22 F. Supp. 3d at 1046 (defendant "eager[ly]" testified at a detention hearing concerning the same alleged scheme); *Motorola,* 2009 WL 816343, at *3 (defendants "waited for a year and a half following . . . the indictment to move for a stay" and made "their stay motion after the close of discovery and on the eve of summary judgment").

[8] There are any number of ways in which information provided pursuant to a protective order may be shared outside of a particular litigation, and for that reason, a protective order is not sufficient here.  *Cf. In re Grand Jury*, 286 F.3d 153, 161 (3d Cir. 2002) (even with "a protective order in place, incriminating statements still create the risk that parties to a civil action will leak sealed information or materials to relevant law enforcement authorities," that "[i]n the event of a leak, . . . a protective order, unlike a grant of immunity, provides no assurance that incriminating statements will not be used against a deponent in a criminal proceeding or that the statements will not be used to obtain other relevant evidence") (citation omitted); *In re Grand Jury Subpoena*, 836 F.2d 1468, 1476 (4th Cir. 1988) ("a protective order cannot serve as more than a stopgap measure to seal discovery materials . . . .it is questionable whether such orders serve the interest of fair resolution of civil disputes"); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007) (where a protective order had already been violated, "it is highly probable that these individuals will widely disseminate the documents they know to be protected by a court order" in the absence of an injunction).

IV.    **Deferring the Teva AG and Pravastatin Cases as Bellwethers or Selecting Alternatives Will Be Far Less Disruptive Than Proceeding With Them Now.**

Granting Teva's Motion will have no impact on the Clobetasol and Clomipramine bellwethers.  And, the disruption that will result if the Teva AG and Pravastatin cases are deferred or replaced as bellwethers will be far less than that which will ensue if they proceed while the criminal matter is pending.  That is because of the extensive discovery that the Parties have exchanged over the past year, and are currently exchanging, which spans all cases in the MDL.

Plaintiffs would like the Court to believe that granting Teva's Motion will result in "scrap[ing] all of the work of the past year," Pls.' Opp'n 10, but that is simply not true.  All of the work that the Parties have undertaken to date is MDL-wide, and not specific to any of the bellwether cases.   Under the Court's October 24, 2019 Case Management Order, which applies to "***to all cases pending in the MDL as of September 1, 2019***," Pre-Trial Order No. 105 (ECF No. 1135) (emphasis added), Defendants have collectively ***completed*** productions of nearly 34 million documents—more than 27 million custodial documents and nearly 6.5 million non-custodial—that pertain to ***all*** drugs and allegations in the MDL as of September 1, 2019.  Defendants substantially completed their production of almost a decade's worth of transactional data for over 100 drugs, including for all drug formulations at issue in the Teva AG and Pravastatin cases.  Pre-Trial Order No. 139 (ECF No. 1514).  And, the Parties are in the process of negotiating a schedule for "Phase 2" discovery that will apply to the post-September 2019 products, which are distinct from those at issue in the bellwether cases.  Teva itself has produced nearly 3.5 million custodial documents, over 580,000 documents from shared sources, and transactional data for approximately 120 drugs.

Plaintiffs also ignore the significant work that can and will continue to proceed if the Court grants Teva's Motion.  Plaintiffs can and will continue to collect nearly all of the discoverable information in this MDL, including for the Teva AG and Pravastatin cases.  The parties will still

be able to take hundreds of depositions, including certain Teva depositions, and they can and will move forward with class certification issues.  *See* Def.'s Mot. to Stay 1.[9]

Teva does not dispute that, if the Court grants Teva's Motion and its accompanying Motion to Stay, there will necessarily be certain depositions that cannot proceed at this time, and there will be a delay in achieving a resolution of the Teva AG and Pravastatin cases.  But, delay is not sufficient to show prejudice to Plaintiffs, *see In re Adelphia,* 2003 WL 22358819, at *4, particularly in the context of a sweeping MDL with dozens of cases that will likely proceed for some time to come.[10]  And, Plaintiffs have cited to nothing other than delay of the Teva AG and Pravastatin cases as a consequence that will flow from granting Teva's Motion.  Nor is a contrary result compelled by Plaintiffs' hypothetical argument that "[i]t would be highly impractical and disruptive for the Court to change the course of the MDL every time there is a new indictment." Pls.' Opp'n 1.  While Teva has no knowledge of the Antitrust Division's intentions with regard to other MDL Defendants, there can be little doubt that proceeding with the Teva AG and Pravastatin cases in particular will be uniquely disruptive to the MDL.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendant's Motion for Reconsideration, Teva respectfully requests that the Court reconsider its July 13, 2020 Memorandum and Order as it pertains to the selection of the Teva AG and Pravastatin complaints.

---

[9] Plaintiffs misstate Teva's position with regard to the role of the bellwether process in promoting settlement.  The resolution of the criminal proceeding will bear on the Parties' value of the civil cases due to the high degree of overlap in the matters.

[10] Plaintiffs also argue that the Teva AG and Pravastatin cases preceded the criminal indictments and the criminal trials are not set.  To the extent Plaintiffs are asserting that there should be no limited stay of depositions because of their interest in expediency, the case law is unambiguous that delay is not enough.  Further, if the Teva AG and Pravastatin cases remain bellwethers, the interest in expediency—which is shared by all parties—will be continuously frustrated by inevitable delays stemming from the Fifth Amendment and case management complications detailed herein.

Dated:  December 9, 2020                 Respectfully Submitted,


                                         */s/Alison Tanchyk*  _____
                                         J. Gordon Cooney, Jr.
                                         John J. Pease III
                                         Alison Tanchyk
                                         William T. McEnroe
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         1701 Market Street
                                         Philadelphia, PA 19103
                                         Tel: (215) 963-5000
                                         Fax: (215) 963-5001
                                         jgcooney@morganlewis.com
                                         john.pease@morganlewis.com
                                         alison.tanchyk@morganlewis.com
                                         william.mcenroe@morganlewis.com

                                         Amanda B. Robinson
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         1111 Pennsylvania Avenue, NW
                                         Washington, D.C. 20004
                                         Tel: (202) 739-3000
                                         Fax: (202) 739-3001
                                         amanda.robinson@morganlewis.com

                                         *Counsel for Defendants Teva Pharmaceuticals USA, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF electronic filing on December 9, 2020.

*/s/Alison Tanchyk*
Alison Tanchyk