IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |

**PLAINTIFFS' MEMORANDUM REGARDING JOINT STIPULATION FOR A FOURTH CASE MANAGEMENT ORDER GOVERNING PHASE 2 DISCOVERY**

After months of negotiation, the parties have largely reached agreement on a proposed Case Management Order to govern the next phase of this MDL. A single dispute remains for this Court to resolve: what should happen if any new or existing plaintiff files a complaint after December 15, 2020?

Plaintiffs propose that such a scenario should be addressed in the concrete if and when it happens. With the benefit of an actual complaint in front of them, the affected parties should be able to examine the complaint in context, meet and confer, and develop a sensible plan. Defendants, on the other hand, seek a one-size-fits-all requirement that any such complaint be locked away, probably for years, in indefinite suspense, regardless of the circumstances. For the reasons set forth below, Plaintiffs respectfully request that the Court reject Defendants' inflexible approach and instead enter Plaintiffs' version of the Joint Stipulation for a Fourth Case Management Order Governing Phase 2 Discovery (attached as Exhibit A).

**I.      INTRODUCTION AND RELEVANT PROCEDURAL HISTORY**

For the past several months, the parties have met and conferred extensively to develop a comprehensive case management structure for the next phase of this MDL. The goal was always to

1

build on the Court's prior Orders that governed the first phase of this MDL, starting with the Case Management Order and Discovery Schedule dated October 24, 2019 (Pretrial Order No. 105, ECF 1135) ("PTO 105"), which set forth certain procedures for the management of and discovery schedule for cases pending in the MDL as of September 1, 2019.

The current parties have now reached agreement on nearly all aspects of a proposed Case Management Order to govern the cases filed *after* September 1, 2019. The parties' proposed Joint Stipulation for a Fourth Case Management Order Governing Phase 2 Discovery includes the following agreed-to features:[1]

- A deadline of December 15, 2020 for filing amended complaints as of right under the Federal Rules, or by a motion for leave to amend (¶ 1);

- A limit on the scope of Phase 2 discovery, which is to be confined to the allegations contained in complaints filed between September 2, 2019 and September 4, 2020, and which cannot include any drugs added to the MDL after that time period (¶¶ 4-7);

- Identification of the parties to be bound by the proposed CMO (¶¶ 10-11);[2] and

- Agreements to promptly meet and confer regarding Phase 2 discovery (¶ 8) and to prioritize depositions of witnesses associated with bellwether cases (¶ 9).

These agreed provisions set a deadline for the filing of additional complaints, as the Court has requested, and move the MDL forward in orderly fashion.

---

[1] Attached as Exhibit B is a form of the proposed CMO showing all agreed provisions in black text. The parties' disagreements are shown in paragraphs 1 and 3, where Plaintiffs' proposed language appears in blue text, and Defendants' proposed language appears in green text.

[2] All current MDL Plaintiffs have agreed to be bound by the proposed CMO. The individual defendants and certain corporate defendants – Pfizer plus a group of defendants added to the MDL more recently (Alvogen, Cadista, Camber, Mallinckrodt, Roxane and Torrent) – did not agree to be bound by this proposed CMO.

The sole area of disagreement between the parties is whether this CMO should govern any Complaints that might be filed by new or existing parties after December 15, 2020. Plaintiffs respectfully suggest that this CMO should not govern such Complaints. If or when they are filed, the relevant parties should meet and confer to determine how to manage any such complaints.

In contrast, Defendants' proposal is a re-tread of the arguments that this Court already rejected in the briefing for PTO 105, *viz.* that "any complaint filed (or amendment proposed) after December 15, 2020, shall be stayed indefinitely, and will not be the subject of discovery, until further order of this Court." Ex. B ¶ 3.[3] Once again, Defendants propose that this case be indefinitely delayed, to the clear detriment of the administration of justice.

## II.     ARGUMENT

### A.  Plaintiffs' Proposal is Practical, Sensible, and Will Not Prejudice Any Party

In the circumstances of this case, additional complaints may well be filed after December 15, 2020, and it may make perfect sense to absorb those complaints into the MDL – but that is a decision that should be made when the timing and contents of such complaints are known.

For example, a new plaintiff could decide to join the MDL and assert the exact same claims already pending before the Court. Or, significant new information may come to light that warrants further amendment of a complaint filed on or before December 15, 2020. For example, such new information could be disclosed in a new criminal filing by the Department of Justice. Or, it could arise during a meet and confer where a Defendant notes errors in a complaint that warrant correction – which has already happened in this MDL. Or it could be uncovered in the massive discovery record or through further investigation of counsel.

---

[3] *See, e.g.*, Defs.' Obj. to Special Master David H. Marion's Report and Recommended Order Setting Forth Case Management Order and Discovery Schedule, MDL Doc. 1091 (arguing "This Court Can And Should Establish A Suspense Docket"). The Court rejected that argument when it entered PTO 105.

In each of these circumstances, incorporating such a complaint into ongoing proceedings likely could be done without delaying or hindering the progress of this MDL.  Further, just as Defendants have a due-process right to assert meritorious defenses and counterclaims, any new Plaintiff has a due-process right to be heard on the claims it chooses to assert, rather than being subject to an *ex ante* stay – that, as Defendants concede, would eventually have to be lifted.  Thus, the *timing* of such a new or amended complaints should not be the sole criteria by which the Court determines an appropriate next step, as Defendants propose.  Rather, if and when there are any such complaints, they should be judged on their contents and in the broader context of the MDL, so the parties and the Court can evaluate how to most efficiently manage them.

Taking a sensible, wait-and-see approach will not prejudice Defendants.  The parties have agreed that Defendants' Phase 2 discovery obligations are set and will not expand beyond the allegations of complaints filed by September 4, 2020.  *See* Exs. A and B ¶¶ 4-7.  Because Plaintiffs propose that any such future complaints are "beyond the scope of this Joint Stipulation" (Ex. A and B, ¶ 3), the parties should meet and confer to determine how to incorporate such filings into the MDL.  *See id.*[4]

### B. Defendants' Proposed Indefinite Stay Would Delay This MDL for Years

Defendants propose that "Any complaint filed (or amendment proposed) after December 15, 2020, shall be stayed indefinitely, and will not be the subject of discovery, until further order

---

[4] The parties' disagreement is also reflected in paragraph 1 of the proposed CMO, regarding amendments after a decision on any motion to dismiss.  In the circumstances where the Court decides a motion to dismiss and grants leave to amend, Defendants seek to allow only amendments that "relate[] to that resolution."  Ex. B, ¶ 1.  This is improper, because the Court – not any Defendant – has the sole discretion to determine the scope of any further amendments following a motion to dismiss decision.  Further, as noted above, there are good reasons to incorporate additional information into an amended complaint, which is entirely separate from the issue of what discovery such a complaint may need, if any, beyond what has already been agreed based on allegations in the many Complaints in this MDL.

of this Court." Ex. B, ¶ 3.  This proposal would lead to absurd results in many instances, if a plaintiff sought to amend an existing complaint that it filed after December 15, 2020.

For example, a plaintiff might seek to amend allegations that a Defendant claimed during discovery meet and confers were incorrect, or based on information learned in discovery, but without expanding the scope of future discovery.[5]  Under a plain reading of Defendants' proposal, even though discovery had been proceeding during Phase 2 on that same complaint, Defendants could argue that the "amendment proposed" should automatically be "stayed indefinitely," even if it were merely making simple corrections. Ex. B, ¶ 3.  This is not an efficient or sensible way to manage this or other potential hypothetical scenarios. Rather, they should be evaluated *if* they arise, *in context*, so that a sensible management approach can be determined, rather than Defendants' request, *ex ante*, for an indefinite stay.

Defendants' proposal is especially prejudicial to any potential new plaintiffs who wish to file claims in the MDL.  For them, it automatically kicks the proverbial can down the road, resulting in a delay of years – and then, at the end of that time, the can still needs to be opened.

Further, some Plaintiffs already allege broad, continuing conduct. For example, the recent August 2020 Complaint filed by the County of Suffolk, New York ("Suffolk Complaint"), alleges a conspiracy ongoing through the time of filing.[6]  Those claims are not stale under any reading of

---

[5] This has occurred with multiple defendants at various points in the case, including but not limited to Actavis, Alvogen, Par, Sandoz, Teva and West-Ward.

[6] Under the heading, "Defendants' Violations Continue to the Present Date," the Suffolk Complaint alleges "the ongoing nature of the Price-Fixing Conspiracy, which continues to the present date," 2:20-cv-04893 Dkt. 1 at 225, ¶ 1052; *see also*, *e.g.*, the Amended Complaint of the County of Nassau, New York, *et al*. ("Nassau Complaint"), filed on December 20, 2019, and alleging "the ongoing nature of Defendants' overarching conspiracy . . . Plaintiffs continue to incur new damages every day that they purchase generic pharmaceuticals made or sold by Defendants, including . . . through and beyond the filing of this Complaint," Dkt. 1160 at 325, ¶ 1346; the Complaint of Harris County, Texas ("Harris Complaint"), filed on March 1, 2020, and alleging "a

5

the law; further, the relevant Statute of Limitations will not expire on those claims for years into the future. If, as alleged, the conduct harming Suffolk County was nationwide in scope, then there are many other victims who have not yet brought claims, but who could and should do so. Defendants' proposal to sideline those claims indefinitely guarantees they become stale – and then requires that they be dealt with at some highly uncertain date in the future.

In all likelihood, the most efficient way to manage those cases would be to bring those parties into the MDL and fold them into discovery, particularly if the new Complaints do not expand the scope of discovery. If there are any concerns that the allegations of new complaints fall outside the scope of the allegations already at issue in the MDL, those specific concerns should be addressed at the time of filing, and not through an *ex ante* stay. That way, when this process ends, it does so with finality, rather than with the need to litigate discovery issues that have been suspended at Defendants' request. This is particularly so if complaints filed on December 16, 2020, (or later) entirely echo allegations already at issue in the MDL. As a result, the prudent course is to address any later-filed Complaints if and when they are filed. At that time, their contents will be known, rather than now, when they are mere specters.

The Court's initial Case Management Order (PTO 105) **already** expressly contemplates precisely this approach: that "discovery involving pre-existing parties may be expanded as appropriate to include newly added defendants and/or drugs." PTO 105 ¶ 1. While Phase 1 document discovery is largely complete, no Defendant has begun Phase 2 document production. Indeed, document production parameters are still being negotiated. Likewise, deposition discovery has not commenced. And yet Defendants, once again, propose indefinite stays of discovery for Complaints that might be filed as soon as the 16th of this month.

---

continuing course of conduct . . . Defendants' fraudulent activities have not ceased and still continue to this day . . . ." Dkt. 1266 at 333, ¶¶ 1517-18.

Defendants' proposal flies in the face of this Court's repeated admonitions to get the MDL moving towards resolution.  It would drag out this MDL for years to stay discovery on all claims brought after next week: all the drugs that have been sued upon in this MDL were sold by Defendants during approximately the same time period, and many were the subject of unlawful conspiratorial conduct by the same people.  Thus, to the extent that a party files a Complaint on Dec. 16th, 2020, or thereafter, it likely will be far more efficient to proceed with discovery on that complaint now, rather than to delay it for many years, after currently-filed cases are resolved.  But again, this question should be resolved in the concrete rather than in the abstract, at the time a complaint is filed.

Finally, an indefinite stay of complaints would be extremely prejudicial to the victims of Defendants' conspiracy by delaying indefinitely both discovery and recovery.  Over the past almost four years, memories have already begun to fade, witnesses have passed away (at least two witnesses have passed since the first complaints were filed in 2016), and relevant materials have been lost; Apotex, for example, has "inadvertently" destroyed the entire custodial file of Beth Hamilton, one of its key witnesses.

Most importantly, the victims here – Plaintiffs – would be denied their right to seek full and timely recovery of the massive antitrust damages they suffered because of the violations committed by Defendants.  Here, the hoary aphorism is still apt:  Justice delayed is justice denied.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' version of the Joint Stipulation for a Fourth Case Management Order Governing Phase 2 Discovery, attached as Exhibit A.

Dated:  December 10, 2020

| | |
|---|---|
| */s/ Roberta D. Liebenberg* | */s/ Dianne M. Nast* |
| Roberta D. Liebenberg | Dianne M. Nast |
| FINE, KAPLAN AND BLACK, R.P.C. | NASTLAW LLC |
| One South Broad Street, 23rd Floor | 1101 Market Street, Suite 2801 |
| Philadelphia, PA 19107 | Philadelphia, PA 19107 |
| 215-567-6565 | 215-923-9300 |
| rliebenberg@finekaplan.com | dnast@nastlaw.com |
| *Liaison and Lead Counsel for the End-Payer Plaintiffs* | *Liaison and Lead Counsel for the Direct Purchaser Plaintiffs* |
| | |
| */s/ W. Joseph Nielsen* | */s/ William J. Blechman* |
| W. Joseph Nielsen | William J. Blechman |
| Assistant Attorney General | KENNY NACHWALTER, P.A. |
| 55 Elm Street | 1441 Brickell Avenue |
| P.O. Box 120 | Suite 1100 |
| Hartford, CT 06141-0120 | Miami, Florida 33131 |
| Tel: (860)808-5040 | Tel: (305) 373-1000 |
| Fax: (860)808-5033 | Fax: (305) 372-1861 |
| Joseph.Nielsen@ct.gov | E-mail: wblechman@knpa.com |
| *Liaison Counsel for the States* | *Liaison Counsel for Direct Action Plaintiffs and Counsel for the Kroger Direct Action Plaintiffs* |

*/s/ Jonathan W. Cuneo*

Jonathan W. Cuneo

CUNEO, GILBERT & LADUCA LLP

4725 Wisconsin Ave. NW, Suite 200

Washington, DC 20016

(202) 789-3960

jonc@cuneolaw.com

*Lead Counsel for the Indirect Reseller Plaintiffs*