# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S MOTION FOR A PROTECTIVE ORDER <u>TEMPORARILY POSTPONING DEPOSITIONS OF SEVEN INDIVIDUALS</u>

Teva's motion asks the Court to postpone the depositions of seven current or former Teva employees (the "Teva Personnel") that are not, and have never been, subject to the Joint Stipulation (the "DOJ List") between the U.S. Department of Justice ("DOJ") and the Parties. Teva Brief at 1. Importantly, ██████████████████████████████████████ ██████████████████████. Teva Brief at 10. Though Teva frames its request as seeking a temporary stay of only limited depositions, Teva's ultimate goal is to use this request to open the door to staying the depositions of *all* its current and former employees to frustrate progress on the Court's selected bellwether trials and undo over a year's worth of work developing those cases. *See* Teva's Motion for Reconsideration (MDL Dkt. No. 1578) at 10 & n. 3.

To this end, Teva first argues that these seven depositions should be stayed because the testimony of these ████████████████████ will be so self-incriminating that they will invoke the Fifth Amendment, thereby drawing adverse inferences. *See* Teva Brief at 9–11. That argument fails at the outset because it impermissibly tries to cloak Teva—a corporation—with

1

Fifth Amendment rights of third parties who would not even have a basis for seeking a stay of their own depositions. Every corporate defendant in this MDL—whether indicted or not—will have current and former employees that might invoke the Fifth Amendment, but that does not entitle those corporate defendants to a stay of those depositions.

Teva then moves on to the entirely contradictory argument that this supposedly incriminating testimony is actually exculpatory. According to Teva, if these witnesses do not invoke their Fifth Amendment rights and instead choose to testify, it would amount to an unfair expansion of the of Federal Rules of Criminal Procedure and give the DOJ a "full preview" of Teva's defenses in the criminal case. *See* Teva Brief at 11-13. Aside from being logically contradictory, this secondary argument is not a basis for staying civil discovery absent specific evidence that the civil suit was instituted primarily to circumvent the criminal discovery procedures. Here, the States' Teva-centric case and the private plaintiffs' individual-drug pravastatin cases were all filed long before Teva was ever indicted

Teva has no justification for staying the depositions of these seven witnesses and will suffer no legally cognizable prejudice from having those depositions go forward. If the Court grants Teva's Stay Motion, however, that decision will ultimately interfere with the efficient administration of this MDL, all to the detriment of the Court, the Plaintiffs, and the interests of the public.

## ARGUMENT

Staying civil matters based on parallel criminal proceedings is an "extraordinary remedy" to be used only in "extraordinary circumstances." *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 635-36 (E.D. Pa. 2010). Whether to grant or deny a stay is "within the discretion of the trial court" as part of its inherent authority to manage its docket. *Roe v. Operation Rescue*,

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

123 F.R.D. 508, 509 (E.D. Pa. 1988); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 100 & n.16 (2d Cir. 2012) (noting that the "burden in overcoming a district court's decision to refrain from entering a stay" is a "heavy" one, and is almost never successful). In exercising that discretion, courts in this District consider the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980). As a general proposition, the case for a stay "is strongest where an *individual* defendant is under indictment and has asserted Fifth Amendment concerns. Conversely, the case is far weaker where no indictment has been returned *or where the defendant indicted is a corporation*." *In re Scrap Metal Antitrust Litig.*, 1:02-CV-0844, 2002 WL 31988168, at *2 (N.D. Ohio Nov. 7, 2002) (emphasis added). Here, the balance of interests weighs against Teva's request for a stay.[1]

## I.   TEVA HAS NOT ADVANCED ANY ARGUMENT WARRANTING A STAY OF THE DEPOSITIONS OF THE SEVEN "TEVA PERSONNEL"

### A.   Teva Has No Fifth Amendment Rights and Cannot Cloak Itself in the Fifth Amendment Rights of Third Party Individuals

Teva repeatedly claims that it faces a "constitutional dilemma" because Teva Personnel might hypothetically invoke *their own* Fifth Amendment privilege against self-incrimination. *See* Teva Brief at 2, 11. In so arguing, Teva impermissibly tries to cloak itself in the Fifth Amendment rights of third party individuals.  The so-called "Fifth Amendment dilemma" only

---

[1] Teva does not address the fourth factor, and Plaintiffs believe that—to the extent it is not duplicative of other factors—it is neutral.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

arises when an *individual* is facing parallel civil and criminal prosecution because that *individual* may suffer adverse consequences in the civil proceeding by exercising that his/her *own* Fifth Amendment rights.[2] Teva, however, is a corporation and "a corporation has no Fifth Amendment privilege." *Braswell v. United States*, 487 U.S. 99, 105 (1988); *see United States v. Kordel*, 397 U.S. 1, 8–9 (1970) (rejecting effort by corporations "to assert on its own behalf the personal privilege of its individual agents").[3]

Teva's contention that corporations "nevertheless may obtain a stay when their co-defendants . . . are entitled to assert their Fifth Amendment privilege" represents a fundamental misunderstanding of the cases it cites. *See* Teva Brief at 10. None of those cases holds that a third party's potential invocation of the Fifth Amendment allows corporations to obtain a stay. Instead, in each of those cases those courts determined that proceedings against certain *individual* defendants should be stayed based on the *individual* defendant's Fifth Amendment concerns. However, because the remainder of the case could not proceed in the face of a partial stay as to only those individuals, those courts decided to stay the entire case as to all defendants.[4]

---

[2] As Plaintiffs have briefed elsewhere, *see* MDL Dkt. No. 1558 at 2–8, even when an *individual* defendant faces parallel criminal and civil proceedings, this *does not* automatically entitle that individual to a stay and it *does not* present a "constitutional" problem. *See also Golden Quality*, 87 F.R.D. at 55 ("To the extent that defendants' motion, implicitly or explicitly, carries . . . constitutional overtones, it must be rejected.")

[3] Teva's cherry-picked quotation from *Kordel* borders on misleading. *See* Teva Brief at 9. In *Kordel*, the Court ruled that a corporation cannot stand behind the Fifth Amendment protections of its employees and must instead appoint an agent who can verify interrogatories without self-incriminating. *Kordel*, 397 U.S. at 8–9. Teva's quote is dicta of what the Court "assume[d]" would happen—to protect the rights of *individuals*—if a corporation is so small that "no one can answer the interrogatories addressed to the corporation without subjecting *himself*" to a risk of self-incrimination. *Id.* (emphasis added). Teva is not that small.

[4] For example, in *In re Valeant Pharmaceuticals Int'l, Inc.*, CV163087, 2017 WL 3429342 (D.N.J. Aug. 9, 2017) proceeding against the corporation would have been practically difficult in the face of a partial stay for the two *individual* defendants who were material witnesses and were alleged to control the corporation. *Id.* at *1–3; *see also Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Services Corp.*, 225 F. Supp. 2d 263, 265–66 (E.D.N.Y. 2002) (extending stay to the entire case because the court granted

4

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Teva's argument is not only legally incorrect, it also ignores the basic facts of this case: ████████████████████████  ████████████████████████ the Teva Personnel will suffer no personal consequences from invoking their Fifth Amendment rights. As such, they have no personal "Fifth Amendment dilemma" and thus would have no conceivable basis to seek a stay in their own right. Moreover, even if the Teva Personnel ████████████████ ████, they still would not have a sound basis to stay discovery as to them. ████████ ████████████████████. *See* Teva Brief at 10. "[P]re-indictment requests for a stay are typically denied," and "[w]hen a defendant filing a motion to stay has not been indicted, the motion may be denied on that ground alone." *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, CIV.A. 01-5530, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002).

In the absence of the Teva Personnel having an independent basis for obtaining a stay in their own right, and actually obtaining such a stay, Teva's arguments represent nothing more than an impermissible attempt by a corporation to cloak itself in the Fifth Amendment rights of third parties. "Defendant corporations cannot . . . use an individual's Fifth Amendment privilege to create a *de facto* Fifth Amendment privilege for the corporations." *In re Scrap Metal Antitrust Litig.*, 1:02-CV-0844, 2002 WL 31988168, at *6 (N.D. Ohio Nov. 7, 2002) (denying motions to stay by both corporate defendants and the DOJ and instead adopting a procedure similar to the "DOJ List" currently employed in this MDL). "Thus, courts routinely hold parallel criminal proceedings do not entitle corporate defendants to a stay." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2:18-CV-01479, 2019 WL 8014315, at *8 (N.D. Ala. Oct. 30, 2019) (granting

---

stays to every *individual* defendant at the corporation capable of responding to discovery); *Parker v. Dawson*, 06-CV-6191, 2007 WL 2462677, at *7 (E.D.N.Y. Aug. 27, 2007) (extending stay to the entire case because the court found the *individual* defendants' case should be stayed and that remainder of the case could not properly proceed while the *individuals'* case was stayed); *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 41 (S.D.N.Y. 1993) (same).

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

stay as to individual defendants but denying stay for corporate defendants); *see Fidelity Funding of California v. Reinhold*, 190 F.R.D. 45, 52 (E.D.N.Y. 1997) (denying indicted corporate defendant's stay motion because corporations cannot make use of "individual defendant's exercise of the Fifth Amendment privilege" to collect a "windfall through a stay of any pre-trial proceedings"); *In re Tower Metal Alloy Co.*, 188 B.R. 954, 956 (Bankr. S.D. Ohio 1995) (denying corporate defendants' motions to stay because a corporation has no Fifth Amendment privilege); *Int'l Bus. Machines Corp. v. Brown*, 857 F. Supp. 1384, 1389–90 (C.D. Cal. 1994) (same); *Gala Enterprises, Inc. v. Hewlett Packard Co.*, 96 CIV. 4864, 1996 WL 732636, at *2 (S.D.N.Y. Dec. 20, 1996) (same).

In truth, Teva is in no different position than every other corporate defendant in this MDL, whether indicted or not. Every corporate defendant in this MDL—and potentially every corporation that has ever found itself facing a Sherman Act § 1 civil action—has current and former employees who might invoke their Fifth Amendment privilege in response to deposition questions. That those individuals might invoke their own personal Fifth Amendment rights, however, does not grant those corporations an independent basis to stay those depositions.

### B. These Civil Proceedings Have a Bona Fide Independent Purpose and Were Not Instituted for the Purpose of Circumventing Criminal Discovery Procedures.

After arguing that the testimony of the Teva Personnel is likely so incriminating that they will invoke their Fifth Amendment rights, Teva pivots and argues that if the Teva Personnel "chose to testify, Teva's defenses will be on display" to the DOJ because of the more liberal rules of discovery in civil cases. *See* Teva Brief at 12. Teva asks this Court to believe that the testimony of the Teva Personnel would simultaneously subject the Teva Personnel to criminal liability while also exculpating Teva. The Court would be right to reject this argument as

6

dubious. *See Int'l Bus. Machines Corp. v. Brown*, 857 F. Supp. 1384, 1390 & n. 3 (C.D. Cal. 1994) ("[D]efendants have made no effort to demonstrate to the court how truthful testimony subject to the privilege in this case could be helpful to them in their defense on the merits. This court, at least, would be unlikely to find it persuasive if they were able to do so.")

Setting aside the dubious nature of Teva's contradictory arguments, the fact that civil discovery is more liberal than its criminal counterpart is not a basis for staying civil discovery unless there is "specific evidence" of prosecutorial bad faith suggesting the "civil suit was instituted primarily to circumvent the criminal discovery procedures." Pollack, J., *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 207 (1990) (citing *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980)). "Where, however, there is a bona fide independent purpose for the parallel civil proceeding"—which there obviously is in this case—the fact that civil discovery is more broad will not support a motion to stay discovery. *Id.*; *see Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 579 (S.D.N.Y. 2001) (denying indicted defendant's motion to stay their depositions where "there is no reason to assume that [plaintiffs'] civil case is simply a stalking horse for the government's criminal inquiry, rather than a good faith effort" to vindicate its plaintiffs' own rights); *Genentech, Inc. v. JHL Biotech, Inc.*, 18-cv-06582, 2019 WL 1045911, at *26 (N.D. Cal. Mar. 5, 2019) (denying motion to stay because the plaintiff "has its own independent interest in bringing the instant civil action against defendants"); *Digital Equip. Corp. v. Currie Enterprises*, 142 F.R.D. 8, 14 (D. Mass. 1991) ("absent special circumstances that suggest bad faith or malicious governmental tactics" to circumvent the rules of criminal discovery, "conclusory allegations of potential abuse or simply the opportunity for the plaintiff to exploit civil discovery are generally unavailing to support a motion for stay"); *see also Sec. & Exch. Comm'n v. N1 Techs., Inc.*, 1:17-CV-23618, 2018 WL 8343503, at *2 (S.D. Fla. Jan. 30,

7

2018) (denying stay motion on similar grounds); *Lizarraga v. City of Nogales Arizona*, 06-cv-474, 2007 WL 215616, at *3 (D. Ariz. Jan. 24, 2007) (same).

Teva was indicted by DOJ on August 25, 2020. The States' Teva-centric Complaint was filed in May 2019 – more than fifteen months earlier. The private plaintiff's individual drug pravastatin cases were filed even earlier than that. There can be no argument that these civil cases were filed to circumvent criminal discovery in the recently-filed DOJ indictment.

## II.   GRANTING TEVA'S STAY REQUEST WILL ULTIMATELY INTERFERE WITH THE EFFICIENT ADMINISTRATION OF THIS MDL.

Though Teva characterizes its proposed stay as "temporary" and "limited" to only "select depositions" of the seven Teva Personnel, its implications are far from temporary or limited. *See* Teva Brief at 1, 6. Teva wants to stay these depositions until Teva's criminal proceedings, including any appeals, are resolved. *See* Teva Brief at 1. If the Court grants Teva's current motion under the guise that it is merely temporary, Teva's later "argument for a further stay will be at least as potent as it is now. Effectively, then, [Teva] seek[s] to delay [the depositions] indefinitely." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 579.

Nor should the Court buy into the notion that Teva's request is limited to these seven "select depositions." If the Court grants Teva's Stay Motion, Teva will make the same request when ███████████████████████████████████████████████████████████ ███ . *See* Teva Brief at 3–4. Moreover, it opens the door to Teva resisting the deposition of *any* witnesses from its ranks. Teva's co-defendant in the criminal proceeding, Glenmark, would no doubt make similar requests. And, as noted above, every single corporate defendant in this MDL could make the same argument as Teva that their current and former employees might invoke their Fifth Amendment privilege in response to deposition questions thereby resulting in adverse inferences to the corporation.

8

Rather than streamlining anything, granting Teva's Stay Motion would set off a cascade of motion practice that would "become a constant source of delay and an interference with judicial administration." *Sterling Nat'l Bank*, 175 F. Supp. 2d at 579. But, that delay and interference is entirely the point. Teva's Stay Motion is nothing more than a proxy battle in its effort to undo a year's worth of litigation to select and develop the bellwethers that prominently feature Teva. For all the reasons stated in the Plaintiffs' Response in Opposition to Teva's Motion for Reconsideration of the Court's Order on Bellwether Selection (MDL Dkt. No. 1604), Teva's goal of undoing that work would only frustrate the Court's goal of efficiently resolving this MDL.

Moreover, staying these depositions would not result in any meaningful efficiency since the resolution of Teva's criminal proceedings—whenever that may be—would not necessarily resolve the underlying Fifth Amendment concerns of any Teva witnesses. Even if Teva were acquitted entirely, Teva's current and former employees might nonetheless invoke their Fifth Amendment rights in this MDL, particularly given that this MDL involves over one hundred drugs that will not be resolved as part of the DOJ's criminal case against Teva.

### III.     GRANTING TEVA'S STAY REQUEST WOULD PREJUDICE PLAINTIFFS BY IMPEDING ACCESS TO EVIDENCE, DUPLICATING EFFORTS, AND IMPOSING UNNECESSARY EXPENSE.

"It is important to note at the outset that [every] plaintiff enjoys the right to pursue [its] case and to vindicate [its] claim[s] expeditiously." *Dawson v. Dodd*, No. 99-cv-2644, 1999 WL 410366, at *2 (E.D. Pa. June 17, 1999) (citing *Golden Quality*, 87 F.R.D. at 56). It is not mandatory that Plaintiffs show some "unique injury" beyond delay to justify a denial of a requested stay. Although "[t]he Court *may* insist that the Plaintiff establish more 'prejudice' than simply the right to pursue his case and vindicate his claim expeditiously," other courts have

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

noted that "'it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities.'" *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-cv-5530, 2002 WL 31111766, at *3 (E.D. Pa. Sept. 18, 2002) (emphasis added) (quoting *Sterling Nat'l Bank*, 175 F. Supp. 2d. at 575); *see In re Plastics Additives Antitrust Litig.*, No. 03-cv-2038, 2004 WL 2743591, at *6 (E.D. Pa. Nov. 29, 2004) (finding that a stay "would prejudice plaintiffs by preventing the expeditious resolution of the lawsuit").

To the extent the Court requires some additional showing of injury to the Plaintiffs, the facts of this case demonstrate such harm. The potential disruptions to this MDL amount to more than mere delay. As noted above, a favorable ruling on Teva's current Stay Motion undoubtedly would be used by Teva as grounds to later resist depositions of *any* of its current or former employees. That witnesses from other defendants might be available for depositions would not remedy this injury. In a case as complex as this MDL, depositions cannot be structured so that witnesses related to a particular defendant—particularly one as central as Teva—are all delayed until some indefinite time in the future. The practical effect is that instead of progressing through depositions in a manner that logically develops their cases in a step-wise fashion, Plaintiffs would need to re-notice depositions of certain witnesses based on information learned later from depositions of previously-stayed witnesses. All of this would "impose upon [P]laintiff[s] and the other parties duplicative and unnecessary effort and additional expense." *Paine, Webber, Jackson & Curtis Inc. v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980).

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

## IV.     PUBLIC INTERESTS WEIGH AGAINST FURTHER STAYING DEPOSITIONS.

The public's interest is best served by moving this complex antitrust MDL toward a resolution as efficiently as possible. "The public's interest in vigorously enforcing national anti-trust laws through the expeditious resolution of a private antitrust litigation is particularly great." *Plastics Additives*, 2004 WL 2743591, at *8. That "interest is even greater when the nature of the litigation is a class action lawsuit" or a State *parens patriae* claim "filed on behalf of nationwide consumers of a particular product over the course of [many years]." *Id*. These public remedial interests "are not rendered less acute by" the DOJ's criminal proceedings. *Id.*; *see also Blood Reagents,* 756 F. Supp. 2d at 636 ("the public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution of this class-action lawsuit"). The Teva indictment covers only thirteen drugs, while the claims in this MDL seek to hold Teva liable for nearly one hundred more. For the victims nationwide who collectively overpaid potentially billions of dollars for the drugs at issue in this MDL, a guilty verdict against Teva will not make them whole. The public's interest is best served by advancing this MDL so that those victims can be made whole.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant Teva Pharmaceuticals USA, Inc.'s Motion for a Protective Order Temporarily Postponing Depositions of Seven Individuals

11

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Dated: December 14, 2020

Respectfully Submitted,

WILLIAM TONG
ATTORNEY GENERAL

ERIC S. SCHMITT
ATTORNEY GENERAL

*/s/ W. Joseph Nielsen*
W. Joseph Nielsen
Assistant Attorney General
55 Elm Street
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5033
Joseph.Nielsen@ct.gov

*Liaison Counsel for the States*

*/s/ Michael Schwalbert*
Michael Schwalbert
Assistant Attorney General
815 Olive St., Ste. 200
Saint Louis, MO 63101
(p) 314-340-7888
(f) 314-340-7981
Michael.Schwalbert@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

*/s/ Roberta D. Liebenberg*
Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
215-567-6565
rliebenberg@finekaplan.com

*Liaison and Lead Counsel for End-Payer
Plaintiffs*

*/s/ Dianne M. Nast*
Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
215-923-9300
dnast@nastlaw.com

*Liaison and Lead Counsel for Direct
Purchaser Plaintiffs*

*/s/ William J. Blechman*
William J. Blechman, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
wblechman@knpa.com

*Counsel for the Kroger Plaintiffs and Liaison
Counsel for Direct Action Plaintiffs*

*/s/ Jonathan W. Cuneo*
Jonathan W. Cuneo
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
202-789-3960
jonc@cuneolaw.com

*Lead Counsel for Indirect-Reseller
Plaintiffs*

12

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER