UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br><br>16-MD-2724 |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE<br><br>ORAL ARGUMENT REQUESTED |

**REPLY IN FURTHER SUPPORT OF TEVA PHARMACEUTICALS USA, INC.'s MOTION FOR A PROTECTIVE ORDER TEMPORARILY POSTPONING <u>DEPOSITIONS OF SEVEN INDIVIDUALS</u>**

Plaintiffs attempt to frame Teva's Motion for a Protective Order ("Motion") as a "proxy battle," purportedly designed to achieve a stay of "all" depositions of Teva current and former employees and to "undo over a year's worth of work" in developing the bellwether cases. Pls.' Opp'n 1, 9 (ECF No. 1629). Plaintiffs' characterizations are wrong. Teva is not seeking a stay of the MDL, a blanket stay of discovery, a stay of all Teva discovery, or a stay of all Teva depositions. Nor does Teva contend, as Plaintiffs suggest, that it has a right to a stay.

Teva recognizes that it is within the discretion of the Court to grant the narrowly tailored stay it requests. Teva requests a stay of the depositions of certain current and former employees to avoid the constitutional Catch-22 that inevitably flows from proceeding simultaneously with overlapping civil and criminal matters.[1] In the context of a massive MDL involving more than

---

[1] While Teva currently seeks a stay of the depositions of seven individuals until January 31, 2021, Teva advised the Court and Plaintiffs that, once a criminal trial date is set, it will seek to extend that stay through the end of the criminal proceedings.

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

100 pending complaints,[2] 35 corporate defendants, 10 individual defendants, and 250 drugs, the prejudice to Plaintiffs of temporarily staying seven Teva depositions[3]—out of the **hundreds** that will be taken—does not outweigh the inequity Teva faces. That inequity would result from being subject to adverse inferences that could flow from Fifth Amendment invocations, or being forced to preview its defenses to the government in advance of the criminal trial, or both.

And, while staying the depositions of the individuals subject to Teva's Motion will necessarily pause those depositions and slow the cases they are associated with, the forward progress of the MDL will continue uninterrupted. As of September 2019, all Defendants in the MDL have completed or nearly completed all document discovery and transactional data productions for the drugs and allegations in the MDL (not just the bellwether cases). Therefore, hundreds of other depositions can proceed, and class certification work can move forward for numerous cases.

**I.     The Catch-22 Arising From an Indictment.**

Plaintiffs assert that Teva's Motion is contradictory, but in so doing, overlook the many cases that recognize the Catch-22 that indicted defendants face in proceeding with parallel civil litigation.[4] The possibility of both Fifth Amendment invocations and previewing Teva's criminal

---

[2] *See* JPML, MDL Statistics Report (Dec. 15, 2020), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2020.pdf

[3] ███████████████████████████████████████████████████████████ Plaintiffs consented to the DOJ's Unopposed Motion for Stay, (ECF No. 1610), and Teva ███████████████████████ ███████████████████████████████ until the conclusion of the criminal proceeding.

[4] *See, e.g.*, *McCullers v. Pennsylvania,* No. 15-3732, 2016 WL 3551624, at *13 (E.D. Pa. June 30, 2016) ("[W]hile it is not unconstitutional to force a civil defendant to choose whether to assert his Fifth Amendment privileges, the strong potential for an unjust result outweighs the efficiencies gained by allowing the case to proceed.") (internal quotations omitted); *Trus. of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.,* 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995) ("[T]he denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in the Federal Rules of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case.").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

defense strategies is a real one.  Teva's defense in the MDL will rest upon the testimony of *multiple* current and former employees, which may include the seven Teva Personnel covered by Teva's Motion and ███████████████████████████████████████.

Plaintiffs also contend that Teva is not entitled to a stay because although it has been indicted, none of its current or former employees have been indicted.  But the very cases on which Plaintiffs rely make clear that a court *can* properly grant a stay in the case of an indicted corporation.  *See In re Scrap Metal Antitrust Litig.,* 02-0844, 2002 WL 31988168, at *2 (N.D. Ohio Nov. 7, 2002) (noting the "general proposition" that the case for staying civil proceedings is stronger for individual defendants but that even pre-indictment stays are "not always[] denied"). Notably in *Scrap Metal*, in contrast to Teva's position in this case, *none* of the defendant corporations had been indicted.  *Id.* at *4.  And, the government was not a party to the civil matter, and thus could not use civil discovery "to further its interests in any criminal prosecution."  *Id.*; *see also Fidelity Funding of Cal. v. Reinhold*, 190 F.R.D. 45, 48–52 (E.D.N.Y. 1997) (cited by Plaintiffs for proposition that parallel proceedings do not entitle corporations to a stay, but denying the motion where discovery was "essentially complete," multiple individual defendants already asserted the Fifth Amendment, and plaintiffs had moved for partial summary judgment).

Indeed, in arguing that Teva is not entitled to a stay, Plaintiffs heavily rely upon case law involving *unindicted* corporations (and in some instances, unindicted individuals).[5]  The cases

---

[5] No indictments were returned against corporate defendants in *In re Plastics Additives,* 2004 WL 2743591, at *6; *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 18-01479, 2019 WL 8014315, at *8 (N.D. Ala. Oct. 30, 2019); *Genentech, Inc. v. JHL Biotech, Inc.*, 18-06582, 2019 WL 1045911, at *25 (N.D. Cal. Mar. 5, 2019); *In re Tower Metal Alloy Co.*, 188 B.R. 954, 956–57 (Bankr. S.D. Ohio 1995); *Gala Enters., Inc. v. Hewlett Packard Co.*, 96 4864, 1996 WL 732636, at *2 (S.D.N.Y. Dec. 20, 1996); or *Int'l Bus. Machs. Corp. v. Brown*, 857 F. Supp. 1384, 1389–90 (C.D. Cal. 1994).  *Dawson v. Dodd*, No. 99-2644, 1999 WL 410366, at *2 (E.D. Pa. June 17, 1999), which Plaintiffs cite for the proposition that they are entitled to the expeditious pursuit of their claims, involved only individual defendants, and there were no criminal charges pending against them.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

relied upon by Plaintiffs also involve further, important distinctions. In *Int'l Bus. Machs.*, 857 F. Supp. at 1389–90, for example, the court denied the indicted individual defendants' motion to stay in part because they "already ha[d] testified at deposition and therefore ha[d] no remaining Fifth Amendment privilege to assert." In *Gala*, 1996 WL 732636, at *2, the court granted the indicted individual defendant's motion to stay, and denied the motion of the *unindicted* corporation, reasoning that the corporate defendant could *produce document discovery* by designating an agent who would not be incriminated by production. In *Genetech,* 2019 WL 1045911, at *26, though the corporation had not been indicted, it and individual defendants (who had been charged) were seeking a stay of the entire civil action. The court denied the unindicted corporation's motion, and granted the individual defendants' motion. *Id.*

Ultimately, the Teva Indictment—like the indictment of any corporation—is rooted in the conduct of individuals. *See United States v. Johns-Manville Corp.*, 231 F. Supp. 690, 693 (E. D. Pa. 1963) (explaining in antitrust case that corporations may be held liable for the actions of their employees); *see also* Teva Indictment ¶¶ 18, 20, 24, 26–27 36, 38, 40, 48, 50–52 (describing alleged misconduct of ▮▮▮▮▮▮▮▮ and alleging the involvement of other, unidentified individuals). In granting discovery stays, Courts recognize that corporations "cannot adequately defend themselves" without the testimony of key individuals, including employees and executives. *See Parker v. Dawson*, No. 06-6191, 2007 WL 2462677, at *7 (E.D.N.Y. 2007) (granting stay as to corporate defendants because they could not adequately defend themselves without the testimony of the sole shareholder and president, against whom a felony complaint had been filed.); *Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 49 (S.D.N.Y. 1993) (staying discovery as to all defendants until resolution of parallel criminal proceeding where a Fifth Amendment invocation by either of the individual defendants, who owned or were previously

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

employed by certain corporate defendants, would "prevent him from adequately defending his position").[6]

Nor is Teva seeking to "cloak itself" in the Fifth Amendment rights of unrelated third parties. Pls.' Opp'n 3–6.[7] The Teva Personnel include ▮▮▮▮▮▮▮▮▮▮▮▮ and other employees who held pricing and sales roles that are relevant to the allegations and defenses in the civil and criminal proceedings.[8] Plaintiffs' claim that the Teva Personnel "will suffer no personal consequences" and have "no personal 'Fifth Amendment dilemma,'" Pls.' Opp'n 5, ignores the fact that Plaintiffs have continually added defendants (including individuals) to this litigation over the past four and a half years, and misstates the fundamental tenets of the Fifth Amendment right against self-incrimination.[9] The Fifth Amendment right does not turn on whether a witness is a named defendant in a civil or criminal proceeding, as Plaintiffs seem to

---

[6] Teva should be afforded the same constitutional protections as any indicted individual. Teva notes that while the Supreme Court has held that a corporation may not invoke the Fifth Amendment, *see Braswell v. United States*, 487 U.S. 99, 105 (1988) (discussing *Hale v. Henkel*, 201 U.S. 43 (1906)), commenters have observed that "it is clear that the basis for *Hale* and its progeny is no longer consistent with how society or the Supreme Court views corporations or with the principles underlying the right against self-incrimination." *See* Rochon et al., *Is It Time to Revisit the Corporate Privilege Against Compelled Self-Incrimination?*, NACDL The Champion 50 (Sept./Oct. 2019); *see also id.* at 52 (arguing that the "current doctrine of corporate privilege against self-incrimination is based on a dated understanding of corporations"). Teva respectfully contends that its interests as a criminal defendant are worthy of judicial protection to the same extent as any individual that has been indicted, and Teva should be afforded the same rights and guarantees under the U.S. Constitution, including the Fifth and Fourteenth Amendments. As applied in this context, Teva's strong interest in a stay should receive the same consideration as any indicted individual.

[7] Plaintiffs also attack Teva's quoting of *United States v. Kordel*, 397 U.S. 1 (1970). Pls.' Opp'n 4 n.3. They claim that *Kordel*'s analysis is inapplicable to Teva because only a small corporation would be unable to appoint an alternative employee to verify interrogatories if the first appointee could not perform due to a risk of self-incrimination. Yet Teva faces this same inability in the context of fact depositions to cure its Fifth Amendment dilemma. A deponent cannot simply be swapped out. Teva's size as a corporation is entirely irrelevant.

[8] Despite Plaintiffs' novel contention otherwise, (Pls.' Opp'n. at 6-7), courts recognize that corporate defendants may be deprived of **exculpatory** testimony when their employees and former employees chose to invoke their Fifth Amendment rights. *See, e.g., In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *6 ("[I]f defendants' [non-party] employees invoke their Fifth Amendment right…the defendants' chances of success at trial may diminish.").

[9] As noted above, Teva also respectfully contends that it should be afford the same protections as any individual asserting the Fifth Amendment. *See supra* n. 6.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

suggest.[10]  Therefore, the fact that the Teva Personnel ▓▓▓▓▓▓▓▓▓▓▓▓ does not alleviate the constitutional dilemma they or Teva will inevitably face absent a stay, or the risk that they will join the growing ranks of defendants in the MDL.

## II.     The Factors Weigh Strongly in Favor of Granting Teva's Motion.

Plaintiffs argue that Teva cannot show that the civil proceedings were instituted to subvert the limited discovery available under the Federal Criminal Rules, or that the Antitrust Division is engaged in bad faith efforts to do so. But Teva need not make such a showing. That is because the powerful strategic advantage the government will gain by having a front-row seat to Teva-related MDL testimony is just one of many bases upon which this Court can, and should, grant Teva's Motion.

The two most significant factors weighing in favor of a stay have been satisfied: 1) the criminal and civil allegations, products, witnesses, and time periods substantially overlap; and 2) Teva has been indicted.[11]  Teva has also demonstrated that: 1) significant progress can be made notwithstanding a deposition stay of certain of its witnesses, Defs.' Mot. to Stay 5–6 (ECF No. 1615); 2) the prejudice to Plaintiffs will not extend beyond the delay of the subject depositions, *id.*

---

[10] *See Kastigar v. United States*, 406 U.S. 441, 444 (1972); *see also*, *e.g.*, *Rad Servs., Inc. v. Aetna Cas. and Sur. Co.*, 808 F.2d 271, 272 (3d Cir. 1986) (finding trial court did not err in admitting as evidence the depositions of non-party witnesses who exercised their Fifth Amendment privileges). Teva disagrees that the non-party factor is neutral. To the extent non-parties include Teva current and former employees not named in this case, their interest in a stay is equally as strong as Teva's.

[11] *See, e.g.*, *In re Derivative Litig.*, No. 06-02964, 2007 WL 1101276, at *1 (E.D. Pa. Apr. 11, 2007) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.") (citations and quotations omitted); *Med. Inv. Co. v. Int'l Portfolio, Inc.,* No. Civ. A. 12-3569, 2014 WL 2452193, at *2 ("The strongest case for a stay...occurs during a criminal prosecution after an indictment is returned.") (internal quotations and citations omitted); *In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *3 (E.D. Pa. May 13, 2003) ("a court should strongly consider staying the civil proceedings" where defendants have been indicted).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

at 14; and 3) as further discussed herein, it is in the public interest to implement a limited stay of depositions.

Nor, again contrary to Plaintiffs' exaggerations, is Teva suggesting that any improper purpose or bad faith exists. Rather, it is a fact that the Antitrust Division is a party in interest in this MDL, and it is unrealistic to expect the Antitrust Division to put blinders on to testimony from Teva witnesses concerning the very same topics at issue in the criminal case. It is also a fact that this case has already involved leaks of sealed information,[12] and even in the absence of those leaks, a protective order in the form of a seal order directed at the deposition transcripts is not sufficient. *See, e.g.*, *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 58 (E.D. Pa. 1980) ("the possibility of inadvertent disclosure, notwithstanding the good faith of the many law firms that would be privy to civil discovery, is not insubstantial").

### III. Efficiencies Will Be Gained, and the Prejudice to Plaintiffs Will Be Minimal.

Granting Teva's Motion is the most efficient path forward. Courts overseeing complex antitrust litigation while criminal proceedings simultaneously unfold recognize that efficiencies will be gained by granting a stay. In the context of "tremendously complex" parallel criminal and civil antitrust proceedings, "whatever the outcome of the criminal case, its termination can be expected to remove the predicate for the assertion of the Fifth Amendment right against self-incrimination by potential deponents; and this should allow civil discovery to proceed more smoothly than would otherwise be possible." *Golden Quality Ice Cream Co.*, 87 F.R.D. at 57–58.

---

[12] *Cf. In re Zyprexa Injunction,* 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007) (where protective order had already been violated, "it is highly probable that these individuals will widely disseminate the documents they know to be protected by a court order" in the absence of an injunction); *see also In re Grand Jury,* 286 F.3d 153, 161 (3d Cir. 2002) (even with "a protective order in place, incriminating statements still create the risk that parties to a civil action will leak sealed information or materials to relevant law enforcement authorities") (citation omitted).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Plaintiffs' claims that a limited stay of seven depositions would "undo over a year's worth of work" and would result in duplicative efforts, Pls.' Opp'n 1, 9, are not accurate, and at the very least, laden with exaggeration. First, nothing will be undone. Teva has produced over 4 million documents, and Defendants collectively have produced over 34 million. These documents cover *all* allegations and drugs in the MDL as of September 2019. No one is asking that those documents be returned. Nor is Teva proposing a stay of the significant document discovery Plaintiffs are requesting going forward. It anticipates substantial completion of Phase 2 discovery in April 2021. To the extent that Plaintiffs are suggesting that their preparation for the bellwether cases in particular will be "undone," if the Court grants Teva's Motion, Plaintiffs can still take the depositions of many witnesses involved in the "Teva-centric" State and Pravastatin cases. And, granting Teva's Motion will have little or no impact on the Clobetasol and Clomipramine cases.

Second, Plaintiffs argue that granting Teva's Motion will result in duplication because they are entitled to redepose witnesses based on the content of other witness' depositions. But, Plaintiffs do not get multiple bites at witness depositions, regardless of whether there is a stay. Fed. R. Civ. P. 30(d)(1) ("Unless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours."). And, the purpose of a deposition is to probe a deponent's personal knowledge, not to cross-examine the deponent concerning the deposition testimony of other witnesses. *See, e.g.*, *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993) ("The underlying purpose of a deposition is to find out what a witness saw, heard, or did—what the

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

witness thinks."). In any event, if the testimony of the Teva Personnel provides a basis to re-notice a particular deposition, Plaintiffs can seek leave of the Court. Fed. R. Civ. P. 30(a)(2)(A)(ii).[13]

## IV.   The Public Interest Is Best Served By an Unfettered and Fair-Balanced Criminal Resolution.

The public interest is best served by granting Teva's Motion. First, the MDL can and will advance if Teva's motion is granted, because there are two bellwether cases and dozens of other cases in which Teva is not a defendant, and because Teva is not seeking a stay of the entire litigation or of all discovery. Rather, Teva seeks only the temporary stay of depositions as to seven individuals, a form of relief that will not prevent the MDL from progressing. Courts have found that stays of *entire civil proceedings* advance the public interest by facilitating unfettered and non-prejudicial resolutions of parallel criminal proceedings. *See, e.g.*, *Med. Inv. Co.*, 2014 WL 2452193, at *4 (finding public interest favored stay of all civil proceedings "by 'allowing the underlying criminal matter to come to a complete, unimpeded conclusion'") (quoting *Peterson v. Matlock*, No. 11-2594, 2011 WL 5416571, at *5 (D.N.J. Nov. 7, 2011)).

Second, for those cases that involve Teva, the unimpeded resolution of the criminal antitrust matter will best advance the public's interest because the criminal proceedings involve substantially the same allegations and issues. *See id.* ("Because of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here.") (internal quotations and citations omitted); *Golden Quality Ice Cream,* 87 F.R.D. at 58

---

[13] Plaintiffs also cite *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 578 (S.D.N.Y. 2001), for the proposition that granting Teva's Motion will set off "a cascade of motion practice that would 'become a constant source of delay[.]'" Pls.' Opp'n 9. But, the *Sterling* case says nothing of motion practice arising out of a stay, and the anticipated delay in that case was due to the fact that no indictments had been issued. It is far more likely for a court to be burdened by a "constant stream of privilege issues" that will arise out of Fifth Amendment invocations in the absence of a stay than with one. *Walsh Sec., Inc. v. Cristo Prop. Mgmt. Ltd.,* 7 F. Supp. 2d 523, 528–29 (D.N.J. 1998).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

(finding the public interest in a quick resolution of civil antitrust litigation is "less acute" and there is less "pressure to expedite" when the government prosecutes); *In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *6 (finding public interest may be served by staying the civil cases pending resolution of the related criminal proceedings); *Volmar Distribs.*, 152 F.R.D. at 40 ("The public certainly has an interest in the preservation of the integrity of competitive markets. However, the pending criminal prosecution serves to advance those same interests.") (citation omitted).

Finally, Plaintiffs rely upon *In re Plastics Additives*, 2004 WL 2743591, at *8, for the proposition that "[t]hese public remedial interests 'are not rendered less acute by' the DOJ's criminal proceedings." Pls.' Opp'n 11.  However, Plaintiffs omitted the court's full analysis:

> These interests are not rendered less acute by the federal government's decision to spend resources on behalf of the public investigating potential antitrust violations by defendants and convening grand jury proceedings, ***particularly when no indictments have been delivered and when the federal government has not intervened to request a stay of discovery on the basis of ensuring the secrecy, integrity, and timeliness of such proceedings***.

*Id.* at *8 (emphasis added).[14]  Here, the Antitrust Division has made a "conscious determination" that "the public interest will be served" by proceeding with the criminal action, and requested a limited stay to which Plaintiffs have consented.  *See Golden Quality Ice Cream*, 87. F.R.D. at 58.

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendant's Motion for Reconsideration, Teva respectfully requests that the Court grant Teva's motion for a protective order temporarily postponing the depositions of seven individuals.

---

[14] Plaintiffs cite to one other case to support their argument that a stay is not in the public interest, *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 636 (E.D. Pa. 2010).  But again, that case did not involve any indictments.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Dated:  December 23, 2020

Respectfully Submitted,

/s/Alison Tanchyk
J. Gordon Cooney, Jr.
John J. Pease III
Alison Tanchyk
William T. McEnroe
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jgcooney@morganlewis.com
john.pease@morganlewis.com
alison.tanchyk@morganlewis.com
william.mcenroe@morganlewis.com

Amanda B. Robinson
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
amanda.robinson@morganlewis.com

*Counsel for Defendants Teva Pharmaceuticals USA, Inc.*

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF electronic filing on December 23, 2020.

/s/Alison Tanchyk
Alison Tanchyk

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**