**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**ORDER**

Plaintiffs have filed objections to the Second Report and Recommendation ("R&R") of the Special Discovery Master, which recommended denying an informal motion by Plaintiff to compel supplemental productions of transactional data covering time periods after December 31, 2018. Because Plaintiffs at this time have not shown that supplementation is warranted under the parties' agreement, the Court will overrule the objections and approve the R&R.

In September 2018, Plaintiffs filed a motion to compel, arguing that the relevant time period for Defendant's production of structured or transactional data (the terms are used interchangeably) should be "[t]wo full calendar years (beginning January 1) before the first drug-specific class period in which a Defendant is implicated . . . through December 31, 2017, subject to annual supplements thereafter, until such time as agreed by the parties or by Order of this Court."[1] The motion was referred to the Special Discovery Master, who by letter dated January 8, 2019, suggested to the parties that the relevant time period should be "[t]wo years before the first complained-of price increase involving the particular drug, through December 31, 2018."[2]

---

[1] R&R at 2 (quoting Plaintiffs' proposed order) (internal quotation marks omitted).

[2] R&R at 2-3 (internal quotation marks omitted).

Plaintiffs contended that the relevant time period should include specific start and end dates for each Defendant. After additional discussions, all parties agreed to resolve the motion, and the resolution was memorialized by a letter dated April 3, 2019, that defined the relevant time period as "[t]wo full calendar years (beginning January 1) before the first complained-of price increase involving the particular drug, through December 31, 2018."[3] The April 2019 agreement included a provision that the parties retained "the right to seek or object to additional discovery beyond the parameters" of the agreement "if warranted by additional information or developments in the MDL."[4]

On June 23, 2020, Plaintiffs submitted a letter to the Special Masters identifying three areas of disagreement among the parties, including supplemental productions of transactional data in the future.[5] After further discussion and briefing, the Special Discovery Master "recommended that the parties continue to adhere to the April 3, 2019 agreement regarding the production of transactional data, including for defendants or drugs added to the MDL since that time, and that no requirement to supplement the transactional data production be imposed at this time."[6] Plaintiffs did not agree, and the Special Discovery Master issued the R&R.

The R&R determined that Plaintiffs may obtain post-2018 transactional data if new information or developments warrant it. The R&R also stated that to the extent Plaintiffs argue that they are prevented from seeking damages for later years, Plaintiffs may use models or estimates to establish damages. The R&R also notes that it is beyond its scope to recommend, as

---

[3] R&R at 3 (internal quotation marks omitted).

[4] R&R at 3 (internal quotation marks omitted).

[5] R&R at 4.  The motion to compel was denied as moot in Pretrial Order No. 82 [MDL Doc. No. 930].

[6] R&R at 5.

Plaintiffs request, that Defendants be precluded from objecting to Plaintiffs' use of such alternative methods of damages calculations.

In their objections, Plaintiffs argue that the post-2018 data is highly relevant, and denial of that data to Plaintiffs will create inefficiencies and additional disputes, requiring Plaintiffs to rely upon expert analyses instead of actual data. Plaintiffs contend that the evidence is related to liability and causation (and may show that the collusion continued beyond 2018). Plaintiffs also argue that, if prices remained artificially high after that time, it is relevant to money damages and to determining disgorgement.

With regard to the April 2019 agreement, Plaintiffs argue that "defendants suggested that as of the time of the briefing in late 2018 that preceded the April 2019 Agreement, there was no information showing that data from later time periods was relevant."[7] Plaintiffs argue that "[n]ow, in late 2020, information exists showing that prices have remained elevated. In addition, the filing of more comprehensive complaints has changed the contours of the litigation," and the Court has made bellwether selections. Plaintiffs argue that:

> If and when plaintiffs make additional requests, plaintiffs will explain and justify those requests based on the circumstances and additional information (*e.g.*, industry pricing data) existing at those times. Defendants can contest plaintiffs' showing. Plaintiffs are thus not asking for a "blank check," but a fair hearing, based on the then-existing record, without an artificial, heightened standard.

Plaintiffs therefore request that (1) Defendants in the bellwether class-action cases "refresh" their productions of data 90-120 days in advance of class certification motions, and (2) a "reasonable standard" apply to future requests for post-2018 transaction data before class certification, summary judgment, and trial, for the products at issue at the relevant time.

---

[7] Doc. No. 1544 at 14.

Defendants argue that Plaintiffs requested annual data supplementation in the 2018 motion to compel and that the April 2019 agreement resolved this issue and gave Plaintiffs data for a year beyond what they originally sought. Defendants contend that Plaintiffs never raised the issue of supplementation until last summer during a dispute over the start date for new products that were not in the MDL at the time of the April 2019 agreement. Defendants also assert Plaintiffs have not shown changed circumstances warranting supplementation.

Plaintiffs acknowledge that they need to "explain and justify [data-supplementation] requests based on the circumstances and additional information." However, they simply have not done so yet. Plaintiffs have not shown how bellwether selection itself is a basis for supplementation at this time. Although in the objections Plaintiffs argued that prices remaining high would justify supplementation, Plaintiffs stated at oral argument that supplementation would also be warranted if prices had not remained elevated.[8] Where parties have agreed to "precise limitations on the financial documentation to which they are entitled,"[9] the Court will hold Plaintiffs to that agreement. Plaintiffs may obtain supplemental data when additional information or developments in the MDL warrant.

**AND NOW**, this 9th day of February 2021, upon *de novo* review of the Second Report and Recommendation of the Special Discovery Master as to Plaintiffs' Motion to Compel Supplemental Productions of Transaction Data [MDL Doc. No. 1503], Plaintiffs' objections, the briefing, and after oral argument, it is hereby **ORDERED** that:

1. The Objections are **OVERRULED**;

2. The R&R is **APPROVED** as set forth in this Order; and

---

[8] Am. Tr. Jan 14, 2021 [Doc. No. 1664] at 51.

[9] *Id.* at 1 n.1.

3.  The related Motions to Seal [Doc. Nos. 1542, 1565, 1606] are as **GRANTED** as the parties have identified a compelling, countervailing private interest outweighing the public's interest in access.

It is so **ORDERED.**

**BY THE COURT:**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**