**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

## STATES' MEMORANDUM RELATING TO REVISED BELLWETHER SELECTION

On February 9, 2021, this Court granted Defendant Teva Pharmaceuticals USA, Inc.'s ("Teva") motion to reconsider the Court's Bellwether decision with respect to the States' Teva-centric overarching conspiracy case and the class plaintiffs' individual-drug pravastatin case. Dkt. 1679. On February 12, 2021, the Court invited briefing from the parties on a revised bellwether selection. Dkt. 1687 (PTO 157).

For the reasons set forth below, the States' third-filed Complaint, *Connecticut, et al. v. Sandoz, Inc. et al.,* 2:20-cv-03539-CMR, relating to various dermatology products and manufacturers (the "Dermatology Complaint"), should be selected to replace the States' Teva-centric case as the overarching conspiracy bellwether in this MDL.[1]

---

[1] The States have been informed that the DAPs and the IRPs support the States' proposal. Teva's Motion for Reconsideration did not ask this Court to reconsider the Clobetasol or Clomipramine individual drug cases as part of the bellwether regime in this MDL, and the States understand that those two individual drug bellwether cases remain unaffected by the Court's ruling on Teva's Motion for Reconsideration and will proceed accordingly. Nonetheless, in a separate Stipulation with the Defendants relating to the individual class action bellwethers, the DPPs and EPPs agreed not to take a position or participate in briefing regarding the selection of a revised overarching conspiracy bellwether, "subject to the right to respond to the Court's questions."

1

**INTRODUCTION**

The States' Dermatology Complaint (like the Teva-centric case) is representative of the other large overarching conspiracy cases in this MDL, but at the same time it avoids all of the complications and concerns raised by the indictment of Teva. These are the very concerns which recently caused this Court to reconsider and alter its bellwether decision. Indeed, the States' Dermatology Complaint is perhaps the only large, overarching conspiracy complaint in this MDL that does not include Teva as a defendant. The States' Heritage-centric case, in contrast – which Defendants continue to propose as the overarching conspiracy bellwether – includes Teva as a defendant on nearly half of the drugs at issue in that Complaint and will therefore raise many of the same concerns identified by the Court as a result of the Teva indictment.

As between the Dermatology Complaint and the States' Heritage-centric case, the Dermatology Complaint – which includes fewer drugs at issue than the Teva-centric case (80 versus 114) and thus is more manageable – is also a significantly better bellwether than the Heritage-centric case because the Dermatology Complaint includes more allegations against more Defendants on more drugs involving more commerce over a longer time period. In short, it is far more representative of the other large, overarching conspiracy cases pending in this MDL. It also alleges a more complete story of the overarching conspiracy, beginning at a much earlier point in time, and therefore will have greater precedential and indicative value. Indeed, these are the very same reasons that this Court originally selected the States' Teva-centric case over the Heritage-centric case, and nothing has changed in the interim to make the Heritage-centric case any more representative of the other overarching conspiracy cases in this MDL.

The States' Dermatology Complaint also encompasses allegations relating to clobetasol – one of the class plaintiffs' individual drug bellwether cases that was not impacted by Teva's Motion for Reconsideration. More efficiencies will be gained by prioritizing discovery relating

to the States' Dermatology Complaint and the individual clobetasol case simultaneously than could be gained with the Heritage-centric case as a bellwether because the States' Heritage-centric case does not overlap with any of the individual drug class action bellwether cases. Indeed, this type of efficiency was one of the primary reasons that the Plaintiffs proposed the Teva-centric and pravastatin cases during the first round of bellwether selection. The States also have a significant number of cooperating witnesses that will support the allegations in the Dermatology Complaint; more than they have in their Heritage-centric case. Coupled with the various criminal resolutions that have already been reached with Defendants Sandoz, Taro and Armando Kellum regarding the conduct at issue in the States' Dermatology Complaint, the States will be able to move that case forward as quickly and efficiently as any other case in the MDL.

## BACKGROUND

On October 24, 2019 this Court first directed the parties and the Special Master to identify criteria for selecting bellwether claims or cases, and ultimately to apply those criteria to select bellwether claims or cases. *See* PTO 105. Shortly thereafter, on December 3, 2019, the Special Master held a meeting of all parties. The parties engaged in a wide-ranging discussion of bellwether criteria, specific claims and cases, and numerous practical and legal considerations. The next day, December 4, 2019, the Special Master issued an informal report that, among other things, set forth the following goals for the bellwether process:

- to find [a] suitable case[s] to generate precedential decisions which could guide the parties and eliminate repetitive motion practice and litigation; and

- to give guidance to the parties as to how these cases will be received by a judge and jury, to encourage and guide settlement considerations.

Special Master David H. Marion's Informal Report to Lead and Liaison Counsel on the Bellwether Selection Process at 1.

Discussions continued through December 2019 and January 2020, including written submissions by the parties in early January and another joint meeting on January 29, 2020, at which the focus was on specific proposals that would satisfy the various selection criteria that had been discussed and briefed. At the Special Master's direction, the parties submitted written bellwether proposals on February 5, 2020, largely memorializing the presentations they had made the week before.

Defendants' position was inflexible throughout. Following on their earlier, rejected case-management proposal to "put a fence around" the Heritage-centric cases and put all other cases on ice indefinitely, Defendants proposed a "case sequencing" plan that included only the Heritage-centric cases, to the exclusion of everything else. Their position was unaffected by the meetings or written submissions.

Plaintiffs, on the other hand, were flexible, devising a plan that responded to Defendants' and the Special Master's concerns. Plaintiffs' presentation at the January 29, 2020 meeting, and their written proposal one week later, took into consideration the parties' and Special Master's comments at the December 3, 2019 joint meeting, the Special Master's December 4 informal report, and the parties' written submissions in early January. Plaintiffs devised a compromise plan that met everyone's stated goals and criteria, including Defendants'.

On February 20, 2020, Special Master Marion issued his Third Report and Recommendation Relating to Bellwether Selection ("R&R"). *See* Dkt. 1244. In his R&R, Special Master Marion recommended a two-track bellwether system, designed to test theories of liability in the two different types of cases present in the MDL: individual drug class action cases and multi-drug overarching conspiracy cases. In particular, Special Master Marion found that "Plaintiffs' proposal [for the bellwethers] is far preferable" and "I respectfully disagree with

4

Defendants' position" about the bellwether process. *Id.* at 4, 5 n.6. With regard to the overarching conspiracy component of the bellwether plan, Special Master Marion found that the breadth of the States' Teva-centric case made it superior to the Heritage-centric case, noting: "the Teva-centric Complaint, although filed subsequent to the Heritage-centric Complaints, provides a sensible chronology. It starts at the beginning of the alleged conspiracy, unlike the Heritage-centric Complaints which were filed before the maturity of the Attorneys General's investigations. Thus, both precedential guidance and settlement guidance will be provided." *Id.* at 6.

The parties thereafter submitted numerous briefs to this Court on the bellwether issue, and the Court held oral argument on July 9, 2020 where all interested parties were allowed to participate. This Court approved the R&R and the Recommended Order accompanying it in PTO 132 on July 13, 2020. Dkt. 1443; *see also* Dkt. 1442 (Memorandum Opinion) at 3 ("The Court agrees with the approach set out in R&R 3"). In rejecting the Defendants' arguments in favor of moving the Heritage-centric cases forward first, the Court found that it was important to "explore the merits of an overarching conspiracy case that involves many different defendants and *numerous drugs*" and that it was "not persuaded that [Defendants' Heritage-centric proposal] is a preferable way forward or that it will advance the litigation as effectively [as Plaintiffs' proposal]." Dkt. 1442 at 3 (emphasis added).

Approximately six weeks after this Court issued PTO 132, on August 25, 2020, Defendant Teva was indicted by the U.S. Department of Justice on three counts of market allocation and price fixing of various generic drugs.[2] More than two months later, on November

---

[2] *See United States v. Teva Pharmaceuticals USA, Inc., et al.,* 2:20-cr-00200-RBS, Dkt. 28 (Second Superseding Indictment).

3, 2020, Teva filed a Motion for Reconsideration of the Court's July 13, 2020 Memorandum and Order on Bellwether Selection.  Dkt. 1578.  After briefing and oral argument, the Court agreed with Teva.  On February 9, 2021, this Court granted Teva's Motion for Reconsideration and vacated PTO 132, finding that "the indictment of the key corporate Defendant in the Teva-centric and pravastatin bellwether cases [*i.e.*, Teva] constitutes a significant change in circumstances."  Dkt. 1680 at 3.  Finding that "there are individual interests at stake" when a key corporate defendant is indicted, the Court found that "[w]hether certain key witnesses can or will be deposed pending the resolution of the criminal case implicates due process concerns."  *Id.*  The Court also expressed concern that "[t]he risk of delay and of scheduling conflicts with the criminal case is real."  *Id.* at 4.  Recognizing that "rocky shoals [could be] ahead" because of the Teva indictment, *id.*, on February 12, 2021 the Court invited briefing from the parties on a revised bellwether selection.  Dkt. 1687 (PTO 157).

    Defendants now (yet again) propose that the Heritage-centric case be named as the overarching conspiracy bellwether in this MDL.  Throughout the entire bellwether selection process, Defendants' position has remained steadfastly inflexible and unaffected by any of the events that have occurred.  Defendants continue to push this Court to select the overarching conspiracy bellwether that presents them with the least possible exposure, without considering *any* of the Court's stated concerns regarding the complications and "rocky shoals" that may arise because of the Teva indictment.  The States, on the other hand, have considered the Court's concerns and now propose an overarching conspiracy bellwether that not only best meets all of the criteria originally outlined by the Special Master, the Court *and* the Defendants for bellwether selection, but at the same time avoids *all* of the concerns that might arise as a result of the Teva indictment.

**ARGUMENT**

I. <u>The States' Dermatology Complaint Avoids All of the Complications and Concerns Caused by Teva's Indictment.</u>

In granting Teva's Motion for Reconsideration of the Court's prior bellwether ruling, this Court found that "the indictment of the key corporate Defendant in the Teva-centric and pravastatin bellwether cases [Teva] constitutes a significant change in circumstances." Dkt. 1679 at 3. The Court reasoned that as a result of that indictment, "[w]hether certain key witnesses can or will be deposed pending the resolution of the criminal case implicates due process concerns" and "[t]he risk of delay and of scheduling conflicts with the criminal case is real." *Id.* at 3-4.[3]

None of those concerns will arise in the context of the States' Dermatology Complaint. Teva is not a Defendant in that case; nor are any Teva employees. Thus, no current or former Teva employees will be required to testify in order to move that case forward and the individual interests of the Teva employees about which this Court expressed concern in its reconsideration ruling, *see id.* at 3, will not be implicated by moving that case forward. Nor is there a risk that the potential delays associated with the Teva criminal indictment would adversely impact the States' Dermatology Complaint.[4]

---

[3] The States do not address the criminal indictment of Glenmark specifically in this memorandum for several reasons. First, the Glenmark information (eventually superseded by an indictment) occurred prior to this Court's original decision to select the Teva-centric case as the bellwether and was raised by Glenmark (and rejected by the Court) at that time. Second, the Court did not cite the Glenmark indictment as a reason for reconsidering its bellwether decision. Third, Glenmark is a Defendant in both the States' Heritage-centric case as well as the Dermatology Complaint; thus, the impact of Glenmark's indictment would be comparable on any bellwether selected. Unlike Teva, Glenmark is – using the Court's vernacular – "simply one Defendant among many" in either potential overarching conspiracy bellwether. Dkt. 1679 at 3.

[4] Of course, discovery will proceed in all cases regardless of which bellwether is selected. Depending on what happens with the Teva indictment, discovery of the key Teva witnesses could possibly happen toward the end of the discovery period (and others potentially sooner than that), but the point here is that

The same cannot be said about the States' Heritage-centric case. In that case, Teva is specifically alleged to have conspired with Heritage on *seven out of the fifteen* drugs at issue; more than any other Defendant.[5] See 2:17-cv-03768-CMR, Dkt. 15 at Count 9 (Acetazolamide), Count 11 (Glipizide-Metformin), Count 12 (Glyburide), Count 13 (Glyburide-Metformin), Count 14 (Leflunomide), Count 15 (Nystatin) and Count 17 (Theophylline). Nisha Patel of Teva – named as a defendant in the States' Teva-centric Complaint – is alleged to have directly colluded with Jason Malek of Heritage on all seven drugs of those drugs. *Id.* at ¶¶ 271-273, 290, 297-300, 331, 341, 347, 353-360, 367, 382, 394-403, 410-412, 429-435, 439-441.[6] She will be one of the most important witnesses in the Heritage-centric case, and undoubtedly one of the most important witnesses in the criminal proceedings against Teva. Similarly, her superiors David Rekenthaler and Maureen Cavanaugh of Teva also are named defendants in the States' Teva-centric case and will certainly be key witnesses in both the Heritage-centric case and the criminal proceedings against Teva.[7] There are many other examples of overlapping witnesses between the Heritage-centric case and the Teva criminal indictment.[8]

---

those delays would not impact the States' ability to move their Dermatology Complaint to trial *at all*, while they could significantly impact the Heritage-centric case or other large overarching conspiracy cases. Other plaintiff groups may need more or additional discovery to move their separate cases forward, and nothing in this submission relates to or seeks to limit such discovery by any other groups.

[5] Mylan, the next most prominent Defendant, is alleged to have colluded with Heritage on four drugs. *See* 2:17-cv-03768-CMR, Dkt. 15.



Simply put, the Heritage-centric case does not avoid the complications and concerns that arise from the Teva indictment. Indeed, it shares them. As such, it is not the most appropriate overarching conspiracy bellwether.

II. <u>The States' Dermatology Complaint Better Satisfies the Bellwether Criteria Established by Special Master Marion and Adopted by This Court.</u>

During the original bellwether selection process, both Special Master Marion and this Court carefully analyzed the parties' submissions and found that, for a number of reasons, the States' Teva-centric case was a better bellwether choice than the Heritage-centric case which had been proposed by Defendants. Much of that same logic supports selecting the States' Dermatology Complaint over the Heritage-centric case now. In particular, the Dermatology Complaint is a superior bellwether to the Heritage-centric case for several reasons:

- The States' Dermatology Complaint contains a much more significant and representative portion of the claims at issue in the MDL. The Heritage-centric case involves a relatively small number of low-volume, niche drugs, whereas the Dermatology Complaint involves many more drugs and a much greater volume of commerce.

- Many of the major corporate Defendants in the MDL face significantly more exposure in the Dermatology Complaint. Prioritizing the Heritage-centric case would fail to focus any of the major Defendants on their true exposure. As a practical matter, such focus is necessary to encourage pretrial resolutions as parties on both sides must evaluate contingent antitrust liability in the case as that informs claim and settlement valuation. To illustrate this difference in exposure, the chart below compares the number of drugs at issue for some of the major corporate Defendants in the States' Heritage-centric case versus the States' Dermatology Complaint:

[redacted]

| Company | Heritage Case - Drugs at Issue | Dermatology Complaint - Drugs at Issue |
|---|---|---|
| Actavis | 2 | 14 |
| Aurobindo | 3 | 5 |
| G&W | 0 | 19 |
| Greenstone/Pfizer | 0 | 6 |
| Lupin | 0 | 1 |
| Perrigo | 0 | 28 |
| Sandoz | 1 | 67 |
| Taro | 0 | 39 |

- From a factual standpoint, it also makes sense to try the States' Dermatology Complaint before the Heritage-centric case. The Dermatology Complaint starts with the very origins of the overarching conspiracy allegations in this MDL (going back even further in time than the Teva-centric case), and it involves facts that precede and form the basis for the later Heritage-centric conduct. Trying the Dermatology Complaint first, therefore, will have a precedential impact on the later Heritage allegations.

When Special Master Marion first recommended the Teva-centric case as the overarching conspiracy bellwether in this MDL, he found that it was a better option than the Heritage-centric case in part because "the Teva-centric Complaint … provides a sensible chronology. It starts at the beginning of the alleged conspiracy, unlike the Heritage-centric Complaints which were filed before the maturity of the Attorneys General's investigations. Thus, both precedential guidance and settlement guidance will be provided." R&R at 6. Again, that same logic applies to the States' Dermatology Complaint.

Defendants previously argued that the States' Teva-centric case was "too big and complicated" to serve as an appropriate bellwether. The Court ultimately disagreed, but those arguments have even less merit now with respect to the States' Dermatology Complaint which includes *thirty-four fewer drugs at issue* than the States' Teva-centric Complaint (114 versus 80) and therefore will be easier to manage and less complicated to move toward trial. Regardless of the number of drugs at issue, the States still maintain that choosing the smallest available overarching-conspiracy case as the bellwether, simply because Defendants think it may be more "manageable," is not appropriate.

The States' Dermatology Complaint will also provide the parties with more and better settlement guidance – a key goal for the bellwethers as found by Special Master Marion. For bellwethers to provide settlement guidance, it is important that the bellwethers include representative and financially significant cases, *i.e.,* cases that the parties will see as indicative, and cases in which the parties involved have significant interests. *See* Federal Judicial Center Pocket Guide Series, *Bellwether Trials in MDL Proceedings*, A Guide for Transferee Judges (2019) at 22 ("In order to provide reliable information about the strengths and limitations of claims or defenses or global settlement value, bellwether cases must be representative of the range of cases included in the MDL proceeding."); Manual for Complex Litigation, Fourth § 22.315 ("Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis. The more representative the test cases, the more reliable the information about similar cases will be.").

Here, the States' Dermatology Complaint is far more representative of the other large, overarching conspiracy cases currently pending in this MDL. Although not the largest when compared to an EPP complaint with 135 drugs, a DPP complaint with 122 drugs, a Kroger DAP complaint covering 135 drugs, or the recently-filed CVS DAP complaint covering approximately 400 drugs, the States' Dermatology Complaint is much more representative than the Heritage-centric case in terms of the number of drugs and defendants and the volume of commerce affected. The Heritage-centric case includes only fifteen mostly low-volume drugs and is focused on a small, unrepresentative player (Heritage, an ACPERA applicant whose top

11

executives have pled guilty).[9]  Because of these unique attributes of the Heritage-centric case, any result there would be easily distinguishable by both the losing side and those MDL Defendants that watched from the sidelines.

There are many large, complicated cases in this MDL.  One of them should be included as the overarching conspiracy bellwether to provide some guidance to all parties about how an overarching conspiracy claim tries and how a jury reacts to it.[10]  The way to move this MDL toward resolution is to prioritize representative cases in which there are substantial stakes.  Parties are more motivated to settle when they think something significant is at risk.  In that regard, the States' Dermatology Complaint is currently the most appropriate choice to move this MDL forward.  *See* Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2343 (2008) ("Ideally, the trial-selection process should accurately reflect the individual categories of cases that comprise the MDL in toto, illustrate the likelihood of success and measure damages within each respective category, and illuminate the forensic and practical challenges of presenting certain types of cases to a jury.  *Any trial selection process that strays from this path will likely resolve only a few independent cases and have limited global impact.*") (emphasis added).

---

[9] Because almost all Defendants would face significantly less exposure in a Heritage-centric trial than a trial of the States' Dermatology Complaint, most of them would also have little incentive to come to the settlement table.

[10] For the bellwether process to have maximum impact, the bellwether cases must be representative of the dozens of cases in this MDL, and they must involve a substantial number of important parties.  The States believe that, given their role in this MDL, any overarching conspiracy bellwether case should involve the States.

> III. Selecting the Dermatology Complaint as the Overarching Conspiracy Bellwether Would Create Efficiencies That Will Not Exist if the Heritage-Centric Case Is Selected.

In addition to being the more representative overarching conspiracy bellwether and avoiding the complications identified by the Court arising from the Teva indictment, selection of the Dermatology Complaint would also allow the parties to capitalize on the efficiencies associated with prioritizing discovery of the clobetasol individual drug bellwether. As discussed above, the DPP and EPP individual drug clobetasol cases have been selected for bellwether status in this MDL. Teva's Motion for Reconsideration did not challenge their selection as individual bellwethers. Therefore, the clobetasol cases will be prioritized appropriately. The States' Dermatology Complaint also includes allegations relating to clobetasol, which will allow the States and private plaintiffs to efficiently coordinate and prioritize discovery relating to those common claims. Indeed, taking advantage of efficiencies like these was one of the primary reasons that the Plaintiffs originally proposed that the Teva-centric and pravastatin cases be included together as bellwethers. Such coordination satisfies the objectives of multi-district litigation and will not happen if the Heritage-centric case is selected as a bellwether.

Other factors also favor moving forward with the Dermatology Complaint as the overarching conspiracy bellwether. The States' Dermatology Complaint was the subject of a long investigation by the States and is therefore very advanced factually. The States have a vast array of cooperating witnesses that will testify in support of the very detailed allegations in that Complaint; far more than they have for the Heritage-centric case.

In addition, there have been a number of criminal resolutions relating to conduct that is the subject of the States' Dermatology Complaint that will further enable the States to move that case forward quickly and efficiently. Defendant Sandoz, for example, has admitted to, among other things, criminal responsibility for: (1) conspiring with Taro (a generic drug company with a

13

principal place of business in New York) from at least March 2013 through December 2015 to allocate customers, rig bids, and otherwise stabilize, maintain and fix prices for various generic drugs, including specifically clobetasol cream, clobetasol emollient cream, clobetasol gel, clobetasol ointment, clobetasol solution, desonide ointment and nystatin triamcinolone cream; (2) conspiring with Rising Pharmaceuticals from at least April 2014 through September 2015 to allocate customers, rig bids and otherwise fix, stabilize and maintain prices with regard to benazepril HCTZ; and (3) conspiring with Perrigo (a generic drug company with a principal place of business in Michigan) from at least July 2013 through December 2015 to allocate customers, rig bids, and otherwise stabilize, maintain and fix prices for various generic drugs, including desonide ointment.[11] Similarly, Taro has admitted to conspiring with Sandoz and Defendant Armando Kellum (a former Sandoz executive) from at least March 2013 through December 2015 to allocate customers and fix prices for various generic drugs, including clobetasol cream, clobetasol emollient cream, clobetasol gel, clobetasol ointment, clobetasol solution, desonide ointment and nystatin triamcinolone cream.[12] And, Armando Kellum has pleaded guilty to an ongoing agreement with Defendant Taro and one of its executives, Defendant Ara Aprahamian, to allocate customers, rig bids, and otherwise stabilize, maintain and fix prices for various generic drugs sold in the United States. The Criminal Information against Kellum, to which he pleaded guilty, includes a specific example of when Kellum agreed with

---

[11] *See United States v. Sandoz, Inc.*, 2:20-cr-00111-RBS, Dkt. 2 (Deferred Prosecution Agreement) at 18-20 (Attachment A: Statement of Facts).

[12] *See United States v. Taro Pharmaceuticals U.S.A., Inc.,* 2:20-cr-00214-RBS, Dkt. 2 (Deferred Prosecution Agreement) at 19-20 (Statement of Facts).

Taro and Aprahamian to fix prices for clobetasol and "two other drugs."[13]  *All of these drugs, and all of this conduct, are the subject of the States' Dermatology Complaint.*

Given these various efficiencies, the States will be able to move the Dermatology Complaint forward quickly, while avoiding the problems identified by the Court in having Teva – an indicted corporate defendant – be at the center of the conspiracy allegations.  Those problems cannot be avoided if the Heritage-centric case is chosen as the bellwether.

IV.     CONCLUSION

For the reasons outlined above, the States respectfully request that the Court select their Dermatology Complaint to replace the Teva-centric case as the overarching conspiracy bellwether in this MDL.


Dated: March 1, 2021


Respectfully submitted,


By: */s/ W. Joseph Nielsen*
       W. Joseph Nielsen
Assistant Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT  06106
(860) 808-5040
Joseph.Nielsen@ct.gov

*Liaison Counsel for the States*

---

[13] *See United States of America v. Hector Armando Kellum*, 2:20-cr-00065-RBS, Dkt. 1 (Information), Count 1 at ¶¶ 10-16.