IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

## STATES' RESPONSE IN SUPPORT OF THEIR MEMORANDUM RELATING TO REVISED BELLWETHER SELECTION

The States submit this response in support of their Memorandum Relating to Revised Bellwether Selection dated March 1, 2021, Dkt. 1702, and in opposition to Certain Defendants' Submission Pursuant to PTO No. 157 Concerning Revised Bellwether Selection.[1]  Dkt. 1705.

### INTRODUCTION

In their opening Bellwether Submission, Defendants do not challenge the States' assertion that, as between their Dermatology Complaint and their Heritage-centric case, the Dermatology Complaint is far more representative of the other large overarching conspiracy cases in this MDL.  They do not contest the fact that the Dermatology Complaint includes more allegations against more Defendants on more drugs involving more commerce over a longer time

---

[1] The following fifteen (15) corporate Defendants do not join in Defendants' Bellwether Submission proposing that the Heritage-centric case be selected as the overarching conspiracy bellwether:  Akorn, Inc.; Alvogen, Inc.; Breckenridge Pharmaceutical, Inc.; Cadista Pharmaceuticals, Inc.; Camber Pharmaceuticals, Inc.; Citron Pharma, LLC; Emcure Pharmaceuticals, Ltd.; Epic Pharma LLC; Heritage Pharmaceuticals, Inc.; Mallinckrodt Inc.; Mayne Pharma Inc.; Roxane Pharmaceuticals USA Inc.; Strides Pharma Science Ltd.; Torrent Pharmaceuticals Ltd.; and West-Ward Pharmaceuticals Corp.  The following thirteen (13) individual Defendants do not join in Defendants' Bellwether Submission: Mitchell Blashinsky; Douglas Boothe; Tracy Sullivan Divalerio; Walter Kaczmarek; Armando Kellum; Rajiv Malik; Satish Mehta; James Nesta; Kurt Orlofski; Konstantin Ostaficiuk; Michael Perfetto; Erika Vogel-Baylor; and John Wesolowski.  Defendant Ascend Laboratories LLC also separately filed its own submission affirmatively opposing Defendants' submission. Dkt. 1704.

1

period; or that it alleges a more complete story of the overarching conspiracy, beginning at a much earlier point in time, and therefore will have greater precedential and indicative value. They do not contest that the Dermatology Complaint will provide the parties with more and better settlement guidance; or even that settlement guidance is an important factor in bellwether selection. Indeed, they do not make any reference to the bellwether selection criteria at all. Nor do they dispute any of the efficiencies that will undoubtedly be created by selecting the Dermatology Complaint as the bellwether or point to any countervailing efficiencies that might favor selecting the Heritage-centric case.

Instead, Defendants make only a few half-hearted (and at times incorrect, misleading and/or contradictory) arguments to support their still unwavering position that the smallest and least impactful of all the overarching conspiracy cases in this MDL should be selected as the bellwether. For example, Defendants argue that the Heritage-centric action "will be least impacted by the *pending criminal proceedings*," Dkt. 1705 at 3-4 (emphasis added), even though there is only one criminal proceeding – the indictment of Teva, "the key corporate Defendant in the Teva-centric and pravastatin bellwether cases" – that caused this Court to reconsider its bellwether decision. Dkt. 1679 at 3. The Defendants cannot dispute that the Teva indictment will significantly impact the prosecution of the Heritage-centric case, where Teva is a defendant on seven out of fifteen drugs, but will have no similar impact on the Dermatology Complaint where Teva is not a defendant and testimony of Teva witnesses will not be required. In a stretch to try and make their argument, Defendants also incorrectly argue that three of the Teva indictment drugs are also "at issue in the Dermatology action." In fact, there are *two* drugs that are identified in both the Teva criminal indictment and the Dermatology Complaint – but the important point is that the conduct "at issue" in those two actions relating to those two drugs is

completely different, involving a different combination of conspirators and occurring at different times, and, most importantly, *the States' Dermatology Complaint does not include Teva as a Defendant or seek relief for any of the conduct at issue in the Teva indictment*.

To divert attention from the fact that one of the most prominent *corporate* defendants in the Heritage-centric action has been indicted, Defendants argue that "no *individual* Defendant in the Heritage-Centric action has been indicted and so proceeding with the Heritage-Centric action does not present the same issues as the Teva-Centric action " and "[b]y contrast, the Dermatology action concerns an individual Defendant who has been indicted." Dkt. 1705 at 4 (emphasis added). Defendants are of course referring to the indictment of Ara Aprahamian (an individual Defendant in the States' Teva-centric case and the Dermatology Complaint). But Aprahamian was indicted long ago, on February 4, 2020, and his indictment did not concern this Court when it initially selected the Teva-centric case as the bellwether (even though he was a Defendant in that case) and was not cited by the Court as a reason for vacating that bellwether decision. Further, the Aprahamian indictment did not seem to bother the Defendants when they agreed to move forward with the individual drug Clobetasol and Clomipramine cases – cases which will feature Aprahamian prominently. Defendants neglect to mention that *Aprahamian has been criminally indicted for his conduct regarding Clobetasol* – an indictment which is still pending – yet they did not believe that was a reason not to move forward with that case. Case 2:20-cr-00064-RBS, Dkt. 1, Count 1 at ¶ 27. Defendants cannot have it both ways.

Defendants' other arguments are similarly weak and were all previously rejected by this Court when it made its original bellwether selection. For example, Defendants argue that the Heritage-centric case should be selected because it involves a more "manageable" number of products. This Court rejected that same argument when originally selecting the States' Teva-

3

centric case over the Heritage-centric case as a bellwether, but that argument has even less merit now when the States' Dermatology Complaint includes *thirty-four less drugs* than the Teva-centric case. Also, like they did the first time around, Defendants argue that the Heritage-centric case is "the most procedurally advanced" even though only one motion to dismiss the Heritage-centric case (of the many that were filed) has even been ruled on by the Court and discovery will proceed simultaneously with regard to all cases. In reality, the parties will be able to prioritize any case that is selected as a bellwether.

Lastly, Defendants' argument that Defendant Heritage "favors moving forward with the Heritage-Centric action" – putting aside that it was an unpersuasive argument the first time around – is as irrelevant as it is untrue. First, Heritage – an admitted conspirator – should not be accorded more weight in the bellwether selection process than the actual victims of the conduct; thus, what Heritage "favors" is neither here nor there. Second, Heritage (along with its parent company, Emcure) *did not even choose to join the Defendants' Bellwether Submission*. Thus, even if what Heritage wanted was relevant, this argument simply has no merit.

## ARGUMENT

**I.     The States' Dermatology Complaint Best Satisfies This Court's Concerns Because It Will Not Be Impacted By The Teva Indictment At All.**

In granting Teva's motion to reconsider the Court's prior bellwether decision, this Court found that Teva's indictment "constitutes a significant change in circumstances." Dkt. 1679 at 3. The Court did not cite the prior criminal indictments of Glenmark or Ara Aprahamian as a reason for vacating PTO 132. Instead, the Court specifically expressed concern that because Teva "is not simply one Defendant among many" in the Teva-centric and pravastatin bellwether cases, "[w]hether certain key witnesses can or will be deposed pending the resolution of the [Teva]

4

criminal case implicates due process concerns" and that "[t]he risk of delay and of scheduling conflicts with the [Teva] criminal case is real." *Id.* at 3-4.

"[S]eeing the rocky shoals" that could arise as a result of the Teva indictment, the Court found that it was "prudent to adjust course now, rather than risk capsizing the progress of the MDL when it is too late to turn back." *Id.* at 4.  Recognizing that many key Teva witnesses will face "due process concerns" if subjected to depositions prior to the resolution of the criminal case, and that "[t]he risk of delay and of scheduling conflicts with the criminal case is real," the Court found that it was no longer comfortable prioritizing a case that featured Teva prominently. *Id.* at 3-4 ("The Court is no longer convinced that the prioritization of the Teva-centric and pravastatin cases will achieve" the goals of a bellwether).

Given the concerns raised by the Court, the States believe it is important to prioritize a bellwether case that does not feature Teva prominently, so that we do not "risk capsizing the progress of the MDL" down the road if the key Teva witnesses cannot be deposed due to delays in the criminal case.  The Heritage-centric case proposed by Defendants will feature Teva prominently and will raise all those same risks.  The Dermatology Complaint proposed by the States will not.

### a. *Teva Is Not A Named Defendant In The States' Dermatology Complaint.*

Teva is not a Defendant in the States' Dermatology Complaint, and no current or former Teva employees are named as individual Defendants in that case.  Thus, none of the complications or "rocky shoals" that this Court envisioned potentially arising due to the Teva indictment will impact the prosecution of that case.

In an effort to shift the focus away from Teva – an indicted *corporate* Defendant on nearly half the drugs at issue in the Heritage-centric case – Defendants instead shift their focus to the "DOJ criminal proceedings" as a whole, arguing that "no *individual* Defendant in the

5

Heritage-Centric action has been indicted and so proceeding with the Heritage-Centric action does not present the same issues as the Teva-Centric action." Dkt. 1705 at 4 (emphasis added). In particular, Defendants argue that "the Dermatology action concerns an individual Defendant who has been indicted." *Id.*

Defendants are referring to Ara Aprahamian, a former Taro employee who was indicted by the DOJ on February 4, 2020. *See* Case 2:20-cr-00064-RBS, Dkt. 1 (Feb. 4, 2020). But Aprahamian was indicted long ago, and his indictment did not concern this Court when it initially selected the Teva-centric case as the bellwether (even though Aprahamian was a Defendant in that case as well) and it was not cited by the Court as a reason for vacating that bellwether decision. Perhaps even more importantly, the Aprahamian indictment did not seem to bother *the Defendants* when they agreed to move forward with the individual drug Clobetasol and Clomipramine cases – cases that will feature Aprahamian prominently. Defendants neglect to mention that *Aprahamian has been criminally indicted for his conduct regarding Clobetasol*, an indictment which is still pending, yet they did not believe that was a reason not to move forward with that case. *See id.* at ¶ 27. Defendants cannot have it both ways.

Simply put, if we are going to consider the impact of all the various DOJ criminal proceedings in selecting a bellwether, there may be no bellwether to select. All of the large overarching conspiracy cases in this MDL are impacted by the DOJ criminal proceedings in some way. The States' Dermatology Complaint, however, is *least* impacted by the *Teva Indictment*, which is what caused this Court to reconsider its bellwether decision in the first place. The States' Dermatology Complaint should therefore be selected as the overarching conspiracy bellwether.

### b. None of the Conduct Alleged In The Dermatology Complaint is "At Issue" in the Teva Indictment.

Although the States' Dermatology Complaint does contain allegations regarding two drugs that are also referenced in the Teva Indictment – Fluocinonide Gel and Fluocinonide Ointment – the conduct at issue in the Dermatology Complaint has nothing to do with Teva.[2]

In the Dermatology Complaint, the States allege that Defendants G&W and Taro entered into a market allocation agreement regarding Fluocinonide Gel in November and December 2015. Teva had discontinued the product in late 2014 and G&W acquired the rights to manufacture it from Teva in March 2015. The States allege that when G&W re-entered the market, Taro collusively agreed to allocate a large retail customer to the new entrant, G&W. *See* Case 2:20-cv-3539, Dkt. 1 (the States' Dermatology Complaint) at ¶¶ 974-976, 1000-1018. Similarly, the States' allegations regarding Fluocinonide Ointment involve a market allocation agreement between Taro and Sandoz in March 2013. Sandoz was entering the market and Taro agreed to allocate a large wholesale customer to the new entrant, Sandoz. *Id.* ¶¶ 695-707. This conduct does not involve Teva and the States will not need to depose any Teva witnesses to prove those claims.

By contrast, the conduct at issue in the Teva Indictment concerns a price-fixing conspiracy between Teva and Taro that involved coordinated price increases on a number of products on which the two competitors overlapped, including Fluocinonide Gel and Fluocinonide Ointment, in April 2014. *See* 2:20-cr-00064-RBS, Docket No.1, Count One at ¶¶ 36-39. Those

---

[2] Defendants incorrectly argue that three of the Teva indictment products "are at issue in the Dermatology action." Dkt. 1705 at 4. The Defendants may be mistakenly counting Carbamazepine as one of the overlapping products, but in the Dermatology Complaint the States have only sued on Carbamazepine ER – a different formulation of Carbamazepine, involving a different combination of competitors, that is not at issue in the Teva indictment.

7

allegations concern entirely different conduct, different conspirators, and different time periods than the claims in the States' Dermatology Complaint.  This argues in favor – and not against – the selection of the Dermatology Complaint as the overarching conspiracy bellwether.

## II.     Teva Will Be A Central Focus in the Heritage-Centric Case.

In their Bellwether Submission, Defendants try to minimize Teva's involvement in the Heritage-centric case, arguing that "while Teva is a Defendant in the Heritage-Centric action, it is not a central focus." Dkt. 1705 at 4.  But Defendants cannot dispute that Teva, which is a Defendant on *seven of the fifteen drugs at issue* in the Heritage-centric case, will be a major focus and not just "one Defendant among many" in that case.  Dkt. 1679 at 3.

Teva plays a prominent role throughout the Heritage-centric Complaint.  Teva employees at all levels will be required to testify for the States to prosecute that case.  From the outset, Teva is identified as a key, and recurring, participant in trade show meetings and Girls' Nights Out. *See, e.g.,* Case 2:17-cv-03768-CMR, Dkt. 15 (the States' Heritage-centric Complaint) at ¶ 88. Teva also plays a prominent role in the overarching conspiracy alleged in that Complaint. *Id.* ¶¶ 89-109.  The Heritage-centric Complaint identifies two companies in particular – Heritage and Teva – that used frequent phone calls and text messages by their senior sales and pricing executives to reinforce the larger "fair share" understanding between the Defendants in that case. As demonstrated in the chart below – taken directly from the Heritage-centric Complaint – Teva communicated with great frequency with its competitors:

Table 2
Teva phone/text communications with other Defendants (by month)
July 1, 2013 – July 30, 2014

| | Jul-13 | Aug-13 | Sep-13 | Oct-13 | Nov-13 | Dec-13 | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Jul-13 to Jul-14 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actavis | | 11 | 16 | 37 | 11 | 35 | 25 | 14 | 36 | 30 | 63 | 13 | 43 | 334 |
| Apotex | 3 | 4 | | | | | | | | | | | | 7 |
| Ascend | | | 3 | | | | | | | | | | | 3 |
| Aurobindo | 17 | 5 | 3 | 15 | 8 | 10 | 7 | 7 | 6 | 6 | | | 5 | 89 |
| Citron | | | | 3 | 3 | 3 | | 1 | | 1 | | 1 | | 12 |
| DRL | 2 | | | | | | | | | 2 | 1 | 3 | 6 | 14 |
| Glenmark | 7 | 8 | 1 | 17 | 18 | 21 | 5 | 4 | 2 | | 3 | | 8 | 94 |
| Heritage | 7 | 10 | | | | | | 5 | 5 | 3 | | 1 | 5 | 36 |
| Lannett | | | | | | | | | 16 | 13 | | 1 | 13 | 43 |
| Mayne | 2 | | 2 | 1 | 1 | 2 | 4 | 5 | | | | 7 | | 24 |
| Mylan | 28 | 22 | 2 | 7 | | 12 | 6 | 1 | 1 | 1 | 7 | 1 | | 88 |
| Par | 0 | | 4 | 4 | 3 | 16 | 1 | 18 | 6 | 9 | 11 | 14 | 3 | 89 |
| Sandoz | 3 | 5 | 3 | | | | 7 | | 2 | 3 | | 1 | | 24 |
| Sun | | | | 2 | | 1 | | | | 1 | | | 2 | 6 |
| Zydus | 75 | 29 | 25 | 203 | 43 | 48 | 20 | 39 | 46 | 35 | 41 | 14 | 20 | 638 |
| | | | | | | | | | | | | | | 1501 |

*Id.* ¶ 95; *compare with* ¶ 94 (demonstrating that Teva had nearly three times as many phone calls with competitors as Heritage during the identified time period). To support and explain the overarching conspiracy claim, the Heritage-centric Complaint also describes a specific incident involving Teva and another company, where Teva agreed to concede a large customer to a new entrant in order to "play nice in the sandbox." *Id.* ¶ 104.

One of the most prominent parts of the Heritage-centric Complaint involves an effort by Heritage, in the spring and summer of 2014, to increase prices on a large list of drugs by communicating with competitors and reaching an agreement. Teva was a competitor on seven of those drugs; by far the most of any of Heritage's competitors. The collusive communications between Heritage and Teva are identified throughout the Complaint. *See, e.g., id.* ¶¶ 271-273, 290, 297-300, 331, 341, 347, 353-360, 367, 382, 394-403, 410-412, 429-435, 439-441. But the Complaint also describes instances where Teva refused to provide bids to particular customers pursuant to its agreement with Heritage. *See, e.g., id.* ¶¶ 356-359. Teva was also communicating separately with Heritage's competitors to facilitate some of the price increases. *See, e.g., id.* ¶¶ 298, 333, 370, 375. And Heritage even used its agreement with Teva to try and convince other

competitors to join the conspiracy.  *See, e.g., id.* ¶ 347 (Heritage representative telling a Citron representative in a text message: "We are raising the price [of Glyburide] right now – just letting you know.  Teva says they will follow"; "Teva is slow but conversations have been good"; and Teva "should play fair").

There is a good reason that the allegations in the Heritage-centric case were incorporated by reference into the Teva-centric Complaint, *but not into the States' Dermatology Complaint.*[3] It is because the Heritage-centric story is closely intertwined with the Teva-centric story, so that an explanation of the Heritage-centric allegations further supports and provides context for the claims against Teva.  Heritage became one of Teva's highest "quality competitors" as a result of the conduct described in the Heritage-centric case.  *See, e.g.,* Case 2:19-cv-02407-CMR, Dkt. 106 (the States' Teva-centric Complaint) at ¶¶ 935-937.  The fact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is further evidence that the Heritage/Teva relationship will continue to play a significant role in the DOJ criminal case against Teva.  Defendants' argument that the Heritage-centric case will be the least impacted by the pending DOJ criminal proceedings, therefore, simply has no merit.

---

[3] Defendants make much of this issue in their Motion to Dismiss the States' Teva-centric Complaint for violating the doctrine against claim splitting. 2:19-cv-02407-CMR, Dkt. 186.  In that Motion, Defendants argue, in essence, that States are *bringing the exact same claims in both complaints*, in part because the allegations of the Heritage-centric Complaint have been incorporated by reference into the Teva-centric Complaint.  The States deny that the claims are identical, or that they have been improperly split, and have responded to that motion accordingly – but one thing is certainly clear: the allegations in the Heritage-centric Complaint do support and provide context for the claims in the Teva-centric case (and therefore the Teva indictment).  Given the position Defendants have taken in that claim-splitting motion about the overlap between the Teva-centric case and the Heritage-centric case, it is hard to reconcile their current position that the Heritage-centric case will be the least impacted by the DOJ criminal proceedings.  *Again, Defendants cannot have it both ways.*

### III. The Heritage-Centric Case Is Not Significantly More Advanced Than The Dermatology Complaint.

Defendants argue that the Heritage-centric case "has been at the center of this MDL for almost three years since the State Plaintiffs filed their consolidated amended complaint on June 15, 2018. As a result, it is significantly more advanced than any case filed by the State Plaintiffs." Dkt. 1705 at 5. This is untrue, of course.[4] Heritage is by no means at the center of the claims in the broader MDL, even though it may be the architect or ringleader of the smaller universe of conduct alleged in the Heritage-centric case. One need only read the States' Teva-centric Complaint or the Dermatology Complaint to understand that Heritage was only a small player in a much larger conspiracy that was well established before Heritage ever joined it.

Defendants also concede that of the many motions to dismiss the States' Heritage-centric case that were filed, only one has actually been ruled on by this Court. *Id.* Thus, the Heritage-centric case is not significantly advanced vis-à-vis the Dermatology Complaint. And a large majority of the Defendants' documents relating to the States' Dermatology Complaint have already been produced; those that have not will be produced shortly and discovery will proceed in all cases simultaneously so the parties will be able to prioritize whatever bellwether is selected. But even if Defendants were correct that the Heritage-centric case could be litigated a little faster, that would still not make their proposal a better one. The far more important factor is the value of the precedential decisions and settlement guidance that will come from the overarching conspiracy bellwether.

There will also be significant complications with a Heritage-centric bellwether that will not be present with other cases, including the Dermatology Complaint. As discussed during the

---

[4] Defendants raised this same argument in their original bellwether briefing with regard to the Teva-centric case and it was rejected by this Court.

original bellwether selection briefing, Heritage has obtained conditional leniency on fourteen (14) different drugs and therefore will not be contesting liability on those products. But at the same time there are claims in the MDL for at least *five* products for which Heritage has *not* obtained conditional leniency. For at least four of those drugs, Heritage has indicated that it will vigorously contest liability. Similarly, Heritage has *not* received conditional leniency for claims relating to the overarching conspiracy. Thus, moving forward with a Heritage-centric bellwether would mean that Heritage would be in the awkward and potentially conflicting position of (1) admitting liability and providing "cooperation" with respect to some drugs, while (2) contesting liability on other drugs and the overarching conspiracy, and (3) contesting damages on all drugs, where some may be subject to a single-damages limitation and others may not. Those complications do not exist with regard to the States' Dermatology Complaint.

## IV. The Dermatology Complaint Involves A Manageable Number of Products and is More Representative of the Other Large Overarching Conspiracy Cases in this MDL.

The Defendants' argument that the large volume of drugs at issue in the States' Dermatology Complaint[5] would "render the litigation unwieldy and inefficient," Dkt. 1705 at 4-5, has already been raised and rejected by this Court in the context of the original bellwether selection. But that argument has even less merit now, where the States' Dermatology Complaint contains *thirty-four less drugs* than the Teva-centric case did. Similarly, Defendants' argument that because the Heritage-centric case includes some of the largest Defendants in the MDL, those Defendants will somehow "have a significant stake in the outcome of the bellwether case," *id.* at 5, is simply wrong. The Heritage-centric case includes only fifteen mostly low-volume drugs,

---

[5] Defendants incorrectly state that there are eighty-three (83) drugs at issue in the States' Dermatology Complaint. Dkt. 1705 at 4. The correct number is eighty (80).

and the volume of commerce affected in that entire case is most likely lower than even one of the individual drug bellwethers. Thus, the stakes involved in the Heritage-centric case are significantly lower than any other large overarching conspiracy case pending in this MDL, *which is precisely why Defendants have consistently and unwaveringly advocated for it*.

The States' Dermatology Complaint, in contrast, involves a sufficiently large, but manageable, number of drugs and is significantly more representative of the other large overarching conspiracy cases pending in the MDL. The Dermatology Complaint includes a broad mix of large and small corporate Defendants, including sixteen different defendant families of all sizes, plus 10 individual defendants.[6] As discussed in the States' opening submission, some of the largest Defendants in this MDL will have a much more significant stake in the proceedings if the Dermatology Complaint is selected as a bellwether. A Heritage-centric bellwether is far less likely to promote settlement with any of the larger Defendants in this MDL, who face much more substantial exposure from the States' Dermatology Complaint or any of the other large overarching conspiracy cases in this MDL.

---

[6] As stated above, none of the Individual Defendants in the States' Dermatology Complaint are current or former Teva employees. As of the date of this filing, ███████████████████████████████████████████████

## CONCLUSION

For the reasons outlined above, the States respectfully request that the Court select their Dermatology Complaint to replace the Teva-centric case as the overarching conspiracy bellwether in this MDL.


Dated: March 15, 2021


Respectfully submitted,


By: */s/ W. Joseph Nielsen*
      W. Joseph Nielsen
Assistant Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT  06106
(860) 808-5040
Joseph.Nielsen@ct.gov

*Liaison Counsel for the States*