IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : MDL NO. 2724<br>: 16-MDL-2724<br>:<br>: HON. CYNTHIA M. RUFE<br>: |
| ALL ACTIONS | : |

**SPECIAL MASTER DAVID H. MARION'S SUPPLEMENTAL RECOMMENDATION NO. 5 AND COURT ORDER ADOPTING SAME (DKT. 1698)**

**I.      INTRODUCTION**

It is unfortunate that I must submit this Supplemental Recommendation, because it recommends possible sanctions precluding the use of certain documents and evidence at trial; and awarding attorneys' fees against the California Attorney General's office ("Cal. AG").

I never expected that such a recommendation would become necessary or appropriate in this MDL, because Judge Rufe has fostered a spirit of cooperation, fairness and good faith in efforts to achieve progress and expeditious movement toward resolution of these actions, notwithstanding the multiple complexities, products, parties, groups of parties, issues, and disputes involved herein.  I and the Discovery and ESI Special Masters have acted accordingly to achieve the same goals, and the parties on both sides have generally acted cooperatively and respectfully toward the Court, each other, and the Special Masters.

When this California dispute was presented, I thought it could be resolved quickly because I had dealt with and mediated three earlier disputes where defendants or certain of them had raised similar issues in seeking discovery from "State" plaintiffs.  I also tried to minimize

26788102v.1

my own time and the expenses on this matter: (a) by holding only one joint conference call with counsel for argument from both sides, even though there was a plethora of letters, briefs and "meet and confer" sessions before and after that call; (b) by moving quickly to issue an informal and abbreviated "Report and Recommendation" while the two sides were still far apart; and (3) by issuing an identical "formal" report to the Court, while urging the parties to keep negotiating with each other without my being present.  Indeed, this supplemental Recommendation being submitted on March 22, was triggered by a Notice of Deficiencies in discovery issued by Defendants on March 5 pursuant to a notice and opportunity-to-cure process I had inserted in my informal and formal Report and Recommendations.  I waited 17 days to even examine in detail the conflicting position papers, in the hope that the parties would work out their problems without my intervention.

Only when, late on Friday, March 19, I received Defendants' Application for Sanctions, did I carefully review the positions of each side and realize that some strong and clear action was needed in order to resolve this dispute.  Because Defendants' Application, with multiple exhibits attached thereto, sets forth a complete history, I will not have stated in detail the respective positions of each side.  The Defendants' Notice of Deficiencies dated March 5, the Cal. AG's response thereto dated March 15 (the last day of the 10 days "cure" period), and the Application for Sanctions dated March 19, are attached hereto as Exhibits "A, B and C" respectively.

II. **REASONS FOR THIS SUPPLEMENTAL RECOMMENDATION**

I believe a review of Exhibits "A, B and C", along with the arguments and earlier briefs I have reviewed, compel the conclusion that the Defendants' version of events is far more credible and legally grounded than that of the Cal. AG.  I will now set forth in summary form the reasons

why I conclude that the moving defendants are entitled to the sanctions/relief they are now requesting:

1. Although all plaintiffs in this MDL have received the benefits of broad, liberal and extensive discovery from the Defendants, the Cal. AG has not produced a single document since filing its Complaint in June, 2018.

2. The Cal. AG has admitted that she did not consider this MDL to be a "high priority… in [her] case load" and did not pay sufficient attention to her obligations as an anti-trust action plaintiff.

3. The Cal. AG has consistently used various means to delay progress in its dealings with defendants, as detailed in Exhibit "C" and the exhibits therein.

4. After finally joining in the meet and confer process, the Cal. AG agreed to a production deadline of November 16, 2020. However, it produced nothing at or before that deadline, has since sought to claim there was no "meeting of the minds" as to what was required by that deadline, and has tried in a number of ways to redefine and explain away any obligation to produce any discovery at all, or at least during the fact discovery phase.

5. An example of how the Cal. AG has delayed progress and caused unnecessary expense to the defendants, is that – even after I had laid out in the clearest and simplest terms what I believed was required to be done by the Cal. AG – and gave her extended deadline and ways by which she could avoid the sanctions sought by Defendants – her response was to send me a laundry list of "clarifications" required before Cal. AG would agree to comply with my recommended actions. None were actually "clarifications" at all, just attempts to redefine or

evade the clearest dictates of my recommendations and the Court's eventual Order adopting same.

6.      I made very clear, and the Court did not reject, my conclusions that the Cal. AG could not postpone its discovery obligations until the period of expert witness discovery – and that PTO 122 did not provide otherwise.  Yet even in its latest response to Defendants' deficiency notice, the Cal. AG continues to insist that it can delay production of documents it will rely on until the expert discovery phase; that PTO 122 so provides; and that, because it intends to use documents already produced by other states, it need not inform Defendants as to which of such documents it will rely on to prove <u>its</u> claims – and somehow that conclusively negates any possible prejudice to Defendants.

7.      Defendants have also shown that, after proposing to produce certain documents at certain times, the Cal. AG feels it can ignore its own prior proposals which it had apparently agreed to, and withdraw them without explanation.

I will not prolong this with more examples.  In Exhibit "C" hereto, Defendants have set forth the grounds for the relief they are requesting in clear and convincing detail.

### III.     SUPPLEMENTAL RECOMMENDATIONS

1.      Because it is necessary to enforce proper discovery requests and to protect the meet-and-confer process, Cal. AG should be sanctioned for its repeated refusal to comply with its agreed deadlines and extensions thereof.  See, e.g., <u>Samuel Son & Co. v. Beach</u>, 2004 WL 5089718, at #4 (W.D. Pa. 2014); <u>In re Bristol Myers Squibb Sec. Litig.</u>, 205 F.R.D. 437, 444 (D.N.J. 2002).  Cal. AG should be barred from using any documents at trial which were not

-4-

26788102v.1

produced to defendants by November 16, 2020 or by March 15, 2021 (the end of the "cure" period).

2.  Unless it can show "good cause" (F.R.C.P. 16(b)(4)) for making an untimely production, Cal. AG should be precluded from relying on currently-existing factual information it may attempt to use hereafter.  (Cal. AG has indeed already agreed to this (See Exhibit "C" hereto and Exhibits 7 and 8 contained therein)).

3.  Cal. AG's repeated disregard of its discovery obligations and agreements, and its repeated efforts to delay these proceedings warrant an award of reasonable attorney's fees incurred by Defendants in prosecuting this motion to compel.

4.  The Special Master (or the Court if it prefers) should schedule a hearing to determine and recommend (or impose) the appropriate sanctions consistent with the above recommendations.

Respectfully submitted,

*/s/ David H. Marion*
David H. Marion, Special Master
Morgan Birch
WHITE AND WILLIAMS LLP
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Tel: (215) 864-7000
mariond@whiteandwilliams.com

Dated: March 22, 2021