**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERICS PHARMACEUTICAL PRICING ANTITRUST LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *ALL ACTIONS* | MDL 2724 <br> 16-MD-2724 <br><br><br> HON. CYNTHIA M. RUFE |

**PLAINTIFF STATE OF CALIFORNIA'S OBJECTIONS TO**
**SPECIAL MASTER DAVID H. MARION'S SUPPLEMENTAL RECOMMENDATION**
**NO. 5 AND COURT ORDER ADOPTING SAME (DKT. 1698) RELATING TO**
**DEFENDANTS' APPLICATION FOR SANCTIONS**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

        A.      The Proper Scope of Defendants' Requests for Voluntary Discovery ................. 2

        B.      California's Response to Defendants' Voluntary Requests ................................. 3

        C.      The Supplemental Recommendation .................................................................. 5

        D.      California Was Not Dilatory in Responding to Defendants' Voluntary
                Discovery Requests .......................................................................................... 6

        E.      The Analysource and IQVIA Data ................................................................... 8

        F.      California's Efforts to Clarify the Special Master's Fifth Report and
                Recommendation ............................................................................................. 8

III.    ARGUMENT ...................................................................................................... 9

        A.      The Harsh Sanction of Evidence Preclusion Is Unwarranted Under These
                Circumstances ................................................................................................. 9

                1.      Defendants Have Failed to Show Sufficient Prejudice ........................... 11

                2.      California's Use of the Analysource and IQVIA Data Will Not
                        Affect the Currently Unscheduled Trial ................................................. 12

                3.      California's Withholding of the Analysource and IQVIA Data
                        Resulted from a Good-Faith Interpretation of Special Master
                        Marion's Fifth Report and Recommendation .......................................... 12

        B.      Defendants' Request for Attorney's Fees Should Be Denied for Failing to
                Comply with the Court's Order Adopting the Fifth Report and
                Recommendation as well as Third Circuit Precedent ....................................... 13

IV.     CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Clientron Corp. v. Devon IT, Inc.*
    894 F.3d 568 (3d Cir. 2018) .................................................................................. 10

*Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.*
    2014 U.S. Dist. LEXIS 205919 (M.D. Pa. June 24, 2014) .................................................. 6

*Connecticut v. Aurobindo Pharma USA, Inc.*
    Civil Action No. 17-3768 ........................................................................................ 1

*Federal Trade Commission et al. v. Vyera Pharmaceuticals, LLC et al.*
    No. 1:20-cv-00706 (DLC), ECF No. 172 (S.D.N.Y. June 30, 2020) ..................................... 7

*Madrid v. Perot Systems Corp.*
    130 Cal. App. 4th 440 (2005) ................................................................................. 6

*Meyers v. Pennypack Woods Home Ownership Ass'n*
    559 F.2d 894 (3d Cir. 1977) .................................................................................. 10

*Nicholas v. Pennsylvania State Univ.*
    227 F.3d 133 (3d Cir. 2000) .................................................................................. 10

*Pawlak v. Greenawalt*
    713 F.2d 972 (3d Cir. 1983) .................................................................................. 15

**RULES**

Fed. R. Civ. P. 37 .................................................................................................. 10
Fed. R. Civ. P. 45 ............................................................................................. *passim*
Fed. R. Civ. P. 53(f) ............................................................................................... 1

Pursuant to Rule 53(f) of the Federal Rules of Civil Procedure and Pretrial Order No. 163, ECF No. 1707, Plaintiff State of California ("California") submits its Objections to Special Master David H. Marion's Supplemental Recommendation No. 5 and Court Order Adopting Same (Dkt. 1698) (the "Supplemental Recommendation" or "SR"), ECF No. 1720. For the reasons set forth below, California submits these objections and respectfully requests that they be sustained and the Supplemental Recommendation be rejected in the manner provided in the Proposed Order submitted herewith as Exhibit A.

## I.      INTRODUCTION

In this broad multidistrict litigation, California, as a member of the multistate coalition, brings its claims against Defendants[1] solely in its law enforcement capacity. And it is in this capacity that California seeks, not damages, but certain equitable monetary relief in the form of disgorgement and civil penalties. Because such relief focuses on the conduct of Defendants, as opposed to the harm or loss suffered by individuals or entities within the state, California will rely primarily on documents and information produced by Defendants and third parties, and secondarily on certain data purchased for expert analysis. Excluding the Analysource and IQVIA data provided by all Plaintiffs' to their experts in this litigation, which are at the center of this dispute, the materials on which California will rely are already in Defendants' possession, custody, or control, or in the possession, custody, or control of nonparties (and those materials will be obtained and produced to Defendants pursuant to Rule 45 subpoenas).

Defendants' assertion that California is seeking to avoid its discovery obligations in this litigation, and the Supplemental Recommendation's adoption of this position, shows a

---

[1] California is a plaintiff only in the Heritage-centric action (*Connecticut v. Aurobindo Pharma USA, Inc.*, Civil Action No. 17-3768).

1

misunderstanding of the aforementioned evidence California will rely on to prove its claims for monetary relief. After California agreed to Defendants' requests for voluntary discovery relating to its claims for disgorgement and civil penalties, California responded by identifying the categories of materials and information that it would rely on for its monetary relief claims. In addition to materials already produced in the litigation, California stated that third-party materials (to the extent not already produced) would be provided to Defendants soon after they are produced to Plaintiffs. For the Analysource and IQVIA data, California explained that these databases are commercially available to Defendants. Finally, California made no representation that it would be relying on non-produced materials in its possession, custody or control to support its claims for disgorgement and civil penalties. Accordingly, California had a good-faith belief that it had fulfilled its discovery obligations to Defendants through its November 16, 2020 responses.[2]

## II.   BACKGROUND

### A.   The Proper Scope of Defendants' Requests for Voluntary Discovery

This dispute does not stem from any formal discovery served on California by Defendants, but rather from an agreement by California to respond to Defendants' request for voluntary discovery. In August 2020, Defendants requested California to voluntarily provide discovery on topics Defendants derived from an earlier informal recommendation from Special

---

[2] The Supplemental Recommendation's reliance on a single, unfortunate comment made by California's counsel during its meet-and-confer discussions with Defendants is misplaced. California provided its good-faith response on the date requested by Defendants, November 16, 2020.  The fact that Defendants refuse to accept California's ability to establish its claims for disgorgement and civil penalties with evidence in the possession, custody or control of Defendants and third parties does not mean that California's attorneys and its Office of the Attorney General do not take seriously their discovery obligations in this litigation.

Master Marion relating to Defendants' motion to compel certain discovery from Connecticut.[3]

Because Defendants correctly understood California is not seeking damages in this case,

Defendants removed all references to "damages" and proposed to California the following

requests:

1. On or before November 16, 2020, inform Defendants of (1) its theories of disgorgement and civil penalties, and (2) the nature of any monetary relief California will seek at trial;
2. On or before November 16, 2020, identify the nature and source of all known documents and data California will rely upon to prove its purported entitlement to any monetary relief;
3. On or before November 16, 2020, produce any and all aforementioned documents and data within its possession, custody or control.[4]

Throughout its meet-and-confer discussions with Defendants, California had understood

Defendants' requests to be limited to the items identified above and conveyed through their

August email. And, because Defendants have not sought to compel discovery from California

pursuant to requests properly served under the Federal Rules of Civil Procedure, the scope of this

dispute must be limited to the terms agreed upon by the parties. Defendants themselves

acknowledged this limitation to their voluntary requests in their January 8 letter to Special

Masters Marion and Merenstein.[5]

**B.    California's Response to Defendants' Voluntary Requests**

California agreed to respond to Defendants' voluntary requests for information and

documents regarding disgorgement and civil penalties.[6] Though Defendants complain about the

time it took for the parties to reach an agreement, the negotiated timeframe agreed to was

---

[3] Ex. B
[4] Ex. C
[5] *See* Ex. D at 3 (citing cases regarding the enforcement of meet and confer agreements).
[6] *See* Ex. E at 1.

reasonable in the context of this case. That California agreed to proceed with Defendants' voluntary discovery demonstrates a good-faith effort to engage with Defendants.

To avoid any doubt as to California's understanding of its discovery agreement with Defendants, its November 16, 2020 response is entitled "Plaintiff State of California's Voluntary Responses to Special Master Marion's Informal Report and Recommendation Directed to the State of Connecticut."[7] Categories of documents identified by California in this response included: (1) documents produced by Defendants in this action; (2) documents produced by third parties pursuant to Rule 45 subpoenas; (3) structured data from the Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP"); (4) data from state Medicaid agencies; and (5) structured data purchased by Plaintiffs in this action from IQVIA and Analysource for use by their expert.[8] In its November 16 response, California explained that, aside from materials already in Defendants' possession in the first four categories, incoming third-party documents would be provided to Defendants pursuant to the Parties' agreement to provide reciprocal productions of materials provided by Rule 45 subpoena.[9] With respect to the data from IQVIA and Analysource, California explained in its voluntary responses that these data sources are commercially available to Defendants and, to the extent the data are used by Plaintiff States' expert, such data will be produced pursuant to Pretrial Order No. 122, ECF No. 1362.[10] Then, on February 5, California provided further responses to Defendants explaining that, but for

---

[7] Ex. F; *see also id.* at n.2 (explaining that California interprets "damages" to include its claims for disgorgement and civil penalties).

[8] *See id.* at 4-5.

[9] In a subsequent amended response dated January 26, 2021, California provided further detail to its November 16 response, including identifying specific documents produced by State Plaintiffs, providing bates numbers for the MMCAP data, and ***identifying specific California Medicaid data produced in this action***.  *See* Ex. G at 5.

[10] *See* Ex. F at 4-5 and Ex. G at 6.

documents already produced in the litigation or documents to be produced in response to Rule 45 subpoenas, it does not have in its possession, custody, or control any documents related to its claims for disgorgement or civil penalties.[11]

### C.    The Supplemental Recommendation

After receiving Defendants' application for sanctions on March 19, submitted pursuant to the Court's February 26, 2021 order adopting the Fifth Report and Recommendation, ECF No. 1698 (the "February 26 Order"), Special Master Marion filed the Supplemental Recommendation with the Court the following business day. Without a response from California, nor any opportunity to object, the Supplemental Recommendation concludes that sanctions are warranted against California "to enforce proper discovery requests and to protect the meet-and-confer process." SR at 4. Specifically, the Supplemental Recommendation states that California "should be barred from using any documents at trial which were not produced to defendants by November 16, 2020 or by March 15, 2021" unless it is able to show "good cause" for the untimely production of documents. SR at 4-5. In addition to the evidence preclusion sanction, the Supplemental Recommendation finds that "an award of reasonable attorney's fees incurred by Defendants in prosecuting this motion to compel" is warranted. SR at 5. The Supplemental Recommendation, however, makes no findings with respect to the amount that should be awarded or the reasonableness of Defendants' request. Finally, the Supplemental Recommendation refers to a hearing on the proposed sanctions, but offers no details on when such hearing would occur or how it could be scheduled. *Id.*

Notably, the Supplemental Recommendation fails to specify which discovery requests were the basis of its recommended evidence preclusion sanction. But, because "a party is

---

[11] *See* Ex. H.

only obligated to produce those responsive documents that are in its possession, custody or control" (*Cmty. Ass'n Underwriters of Am. v. Queensboro Flooring Corp.*, 2014 U.S. Dist. LEXIS 205919, *7, 2014 WL 12603510 (M.D. Pa. June 24, 2014)), California interprets the recommended evidence preclusion sanction as not applying to materials produced by other Plaintiffs, Defendants, and third parties in the ordinary course of discovery in this multi-district litigation. Further, California understands the recommended sanction to apply only to materials relating to California's claims for disgorgement and civil penalties since this is what was requested by Defendants and agreed to by California. If, however, the proposed sanction is understood to include a broader set of materials, such as materials produced by other parties in this MDL as well as materials obtained pursuant to Rule 45 subpoenas, such a sanction would deny California the use of critical evidence and essentially end its case.

### D.   California Was Not Dilatory in Responding to Defendants' Voluntary Discovery Requests

Much has been made, by both Defendants and the Supplemental Recommendation, about California's perceived attempts to frustrate and delay Defendants' efforts to obtain discovery, but such criticism represents a misunderstanding of the relief being sought by California in this case and the evidence it will rely on to prove these claims. California brought its claims against certain Defendants in its law enforcement capacity to enforce its antitrust and consumer protection laws and penalize and deter Defendants from engaging in unlawful conduct. As such, California is not seeking damages on behalf of its citizens or state agencies, but rather is seeking monetary relief in the form of disgorgement and civil penalties.

Disgorgement is used to discipline and discourage future illegal conduct, not to recover losses from said illegal conduct. *See e.g., Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 460 (2005) (explaining that, under California state law, "an order for disgorgement may compel

a defendant to surrender all money obtained through its wrongdoing . . . regardless of whether the profits represent money taken directly from persons who were victims of the unfair practice."). Disgorgement will be calculated by taking the amount of profits Defendants made in the real world during the relevant time period and subtracting the estimated amount of profits they would have made in a competitive market. Based on the disgorgement methodology, the necessary data to calculate disgorgement is in the Defendants' possession, custody or control— not California's.[12] Similarly, with respect to its claims for civil penalties, California will rely on state Medicaid data already produced to Defendants as well as nonparty pharmacy sales data to determine these claims under California's Unfair Competition Law.

California is neither hiding this evidence from Defendants nor does it intend on producing this evidence on the eve of the discovery deadline in an attempt to sandbag them. Rather, this evidence is either currently in Defendants' possession (because it consists of Defendants' own materials or previously produced documents) or it will be timely produced to Defendants pursuant to the agreement among the parties in this multi-district litigation for the production of these materials, which includes documents and information from parties other than California and third parties responding to Rule 45 subpoenas.[13] When the proper scope of the voluntary discovery agreement between California and Defendants is viewed in conjunction with this explanation of California's claims for relief and the evidence in support thereof, a clearer

---

[12] Judge Cote reached this conclusion by rejecting similar arguments in holding that nonparty State agency purchase and reimbursement data are irrelevant to disgorgement claims sought by Plaintiff States. *Federal Trade Commission et al. v. Vyera Pharmaceuticals, LLC et al.,* No. 1:20-cv-00706 (DLC), ECF No. 172 (S.D.N.Y. June 30, 2020). *See* Ex. I at *2.
[13] These subpoenas are being served collectively by the Plaintiff States. California does not intend to issue any Rule 45 subpoenas outside of this process.

picture emerges—California had a good-faith belief that it had satisfied its obligations in responding to Defendants' requests.

### E.     The Analysource and IQVIA Data

Plaintiffs in this MDL—both Plaintiff States and Class Plaintiffs—are using data purchased from Analysource and IQVIA specifically for this litigation and for evaluation primarily by their experts, in consultation with counsel. Widely used in the pharmaceutical industry, these datasets are private, third-party commercial data available for purchase. Materials produced by Defendants in this action show that they already subscribe to, and thus have access to, these databases.[14]

### F.     California's Efforts to Clarify the Special Master's Fifth Report and Recommendation

On February 8, Special Master Marion submitted his Fifth Report and Recommendation to the Parties and the Court (the "Fifth R&R"), ECF No. 1677, which permitted Defendants to seek sanctions precluding California's use of any non-produced documents so long as Defendants are able to show prejudice and demonstrate "that such documents are not already available to defendants from other sources." Fifth R&R at 3. Though California, as well as other Plaintiff States and the Private Plaintiffs, argued that California should not be compelled to produce the Analysource and IQVIA to Defendants because such data are commercially

---

[14] *See, e.g.,* ACTAVIS_GX_MDL_003875532 (discussing IQVIA data); AKORN_MDL_00021444 (same—IQVIA previously known as IMS); AMNL-MDL-000697442 (same); AMNL-MDL-000821740 (same); APOTEX-000882282 (same); APOTEX-001139159 (same); BRECK-00576784 (same); CITRON-000009421 (same); DRL-MDL-000859712 (same); GMK-MDL-001688031 (same); IPX-MDL-000036874 (same); MYL-000057738 (same); MYLGP-4773757 (same); PAR_MDL_00072071 (same); PAR_MDL_00017247 (Analysource data); PAR_MDL_00017339 (Analysource data); TEL00012611 (IQVIA data); TEVMDL008213398 (Analysource data); TEVMDL010042787 (IQVIA data); TEVMDL010043411 (same); VALMDL-000476629 (same); ZYDMDL-002490290 (same).

available to Defendants, the Fifth R&R made no factual findings as to whether such data are already available to Defendants. Due to the gravity of this issue, not only to California, but to all plaintiffs in this action, California prepared a response to the Fifth R&R with the intention of filing it with the Court. However, in an effort to avoid intervention by the Court, California sought clarification of the Fifth R&R from Special Master Marion.

Initially, California asked Special Master Marion to confirm that the Analysource and IQVIA data are excluded from sanctions because these databases are commercially available, and therefore, "already available to defendants from other sources."[15] Before providing a response, Special Master Marion asked California to attempt to resolve its concerns with Defendants. Unable to make headway with Defendants, California returned to Special Master Marion who allowed California to provide edits to the proposed order. In accepting this offer, California explained that, "[i]n light of the possibility of sanctions, it is important to California to fully understand the contours of your proposed order."[16] In response to California's proposed edits carving out the production of documents and information "which can be purchased from private companies (such as Analysource data)," Special Master Marion stated that such language is covered in paragraph three of the proposed order.[17] With this explanation, California declined to file a response with the Court and consented to the entry of the Fifth R&R.

## III.   ARGUMENT

### A.   The Harsh Sanction of Evidence Preclusion Is Unwarranted Under These Circumstances.

---

[15] Ex. J at 2.
[16] Ex. K at 2-3.
[17] *See id.* at 1.

As a preliminary matter, it is important to establish the legal framework under which the sanctions contained in the Supplemental Recommendation are to be analyzed. The Supplemental Recommendation makes no reference to the authority it is invoking to recommend evidence preclusion sanctions against California. Although federal courts have inherent authority to impose sanctions, the "preferred course" of the Third Circuit Court of Appeals "is that when statutory or rules-based sanctions are entirely adequate, they should be invoked, rather than the inherent power." *Clientron Corp. v. Devon IT, Inc.*, 894 F.3d 568, 577 (3d Cir. 2018). Since this dispute concerns the production of discovery materials, Federal Rule of Civil Procedure 37 should be used to assess the propriety of the recommended sanctions. *See id.* (analyzing challenged sanctions relating to a discovery dispute under Rule 37 rather than as an exercise of the district court's inherent powers).

The Supplemental Recommendation proposes evidence preclusion sanctions against California "[b]ecause it is necessary to enforce proper discovery requests and to protect the meet-and-confer process," (SR at 4) but this reasoning is at odds with Third Circuit precedent regarding the imposition of such a sanction under Rule 37. As the Third Circuit has explained:

> In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, we must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Further, the exclusion of evidence is "an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence.'" *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977) (overturned for

other reasons) (*quoting Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99-100 (3d Cir.

1977) (internal citation omitted)). Consideration of the factors set forth by the Third Circuit

demonstrates that precluding California's use of certain evidence at trial is not an appropriate

sanction.

### 1.     Defendants Have Failed to Show Sufficient Prejudice.

In their March 19 application for sanctions, Defendants claim that allowing California to

use unproduced materials would cause the following prejudice: (1) California could continue to

disregard its discovery obligations; and (2) Defendants would be unable to determine whether

the data sets that California does not intend to use are damaging to their claims.[18] As to the first

claimed prejudice, characterizing California as repeatedly avoiding its discovery obligations is

wholly speculative on the part of Defendants and simply untrue. California told Defendants that,

but for the Analysource and IQVIA data, it does not have any documents in its possession,

custody, or control relating to its calculations of disgorgement and civil penalties and will be

using Defendants' own materials, as well as materials from nonparties, to support these claims.[19]

Further, California explained that Defendants will receive Rule 45 subpoena materials in due

course as part of the multistate coalition's coordinated discovery effort. The fact that Defendants

are displeased with California's ability to determine these forms of relief by relying primarily on

documents and data from Defendants and third parties does not mean that California is avoiding

its discovery obligations.

Regarding their second claimed prejudice, Defendants finally concede that they have no

need for California to actually produce these data sets. After months of clamoring for California

---

[18] *See* Ex. L at 4-5.
[19] *See* Exs. F, G and H.

to produce the Analysource and IQVIA data, when required to identify the prejudice they would suffer from non-production, Defendants can muster only the following: they need these data, not to use in any specified manner, but to help Defendants identify what ***data California is not relying on*** for its determination of disgorgement and civil penalties.[20] In other words, Defendants could not identify a single reason why they need California to produce these data sets. Defendants' claimed prejudice appears to be a result of non-identification of specific data, not a failure to produce, and it is the non-production of documents that is the subject of the February 26 Order. Accordingly, Defendants have not shown how they are prejudiced by California's non-production of the Analysource and IQVIA data.[21]

### 2.    California's Use of the Analysource and IQVIA Data Will Not Affect the Currently Unscheduled Trial.

The Court has yet to set a trial date in this matter and the issue of which case will serve as the bellwether remains undecided. Similarly, fact discovery remains open. Because California's use of these data sets will not cause the Court to revise the pretrial schedule or reopen discovery, this factor weighs in California's favor.

### 3.    California's Withholding of the Analysource and IQVIA Data Resulted from a Good-Faith Interpretation of Special Master Marion's Fifth Report and Recommendation.

The Supplemental Recommendation criticizes California's efforts to clarify the Fifth R&R, dismissing them as "just attempts to redefine or evade the clearest dictates of my recommendations"—this is both unfortunate and inaccurate. The production of the Analysource and IQVIA data is a critical issue to all plaintiffs in this action, which is why State Plaintiffs and

---

[20] *See* Ex. L at 5.
[21] Because Defendants have not shown sufficient prejudice, California does not address their ability to cure.  However, California reserves the right to address this factor should Defendants raise additional claims of prejudice in response to these objections.

Private Plaintiffs submitted letters to the Special Master arguing that such production is unwarranted given Defendants access to the same data.[22] Despite substantial argument on this matter, the Fifth R&R made no findings with respect to Defendants' ability to obtain these data on their own. However, the proposed order regarding sanctions appeared to carve out these databases with the requirement that Defendants' sanctions application show that "documents are not already available to Defendants from other sources." But, due to the lack of guidance from the Fifth R&R, California was unsure if its reading of the proposed order was correct.

As California explained in its communications to the Special Master, "[i]n light of the possibility of sanctions, it is important to California to fully understand the contours of your proposed order."[23] Though California was preparing to file a response to the Fifth R&R with the Court, it was hoping that it could avoid having to do so by receiving confirmation that it would not be subject to sanctions for withholding the Analysource and IQVIA data. After Special Master Marion informed California that its suggested edits to the proposed order specifically carving out these databases were covered in paragraph three of the order, California consented to the entry of the Fifth R&R. It was not until California received the Supplemental Recommendation on March 22, that it learned of the Special Master's decision to eschew the available-from-other-sources analysis entirely, and propose sanctioning California for its withholding of the Analysource and IQVIA data.

> **B.    Defendants' Request for Attorney's Fees Should Be Denied for Failing to Comply with the Court's Order Adopting the Fifth Report and Recommendation as well as Third Circuit Precedent.**

---

[22] *See generally,* Exs. M (letter from Plaintiff States) and N (letter from Private Plaintiffs).
[23] Ex. K at 2-3.

Defendants' request for attorney's fees in connection with this dispute should be denied because neither Defendants nor the Supplemental Recommendation have complied with the February 26 Order. The February 26 Order states that an application for attorneys' fees, submitted to the Special Master by March 20, 2021, must include "a showing of good cause therefore, and *a documentation of the amounts thereof*." Order at 2 (emphasis added). The February 26 Order makes no reference to a subsequent application for fees or an opportunity for Defendants to submit documentation after the March 20th deadline. Despite this clear directive, Defendants' March 19 request for sanctions seeks an award of attorney's fees in the amount of $55,463 without providing any documentation whatsoever. Instead, Defendants merely offer a vague claim in a footnote that one attorney spent 72.5 hours on this dispute in 2021. In response to Defendants' fee request, the Supplemental Recommendation declines to acknowledge the lack of documentation or request supporting documentation from Defendants' as is required by the February 26 Order. In fact, the Supplemental Recommendation implies that the merits of Defendants' request will be determined at some later, unspecified date, as its only reference to the issue of fees is that California's conduct "warrant[s] an award of reasonable attorney's fees incurred by Defendants in prosecuting this motion to compel." Whether the Supplemental Recommendation intends an assessment of the fee request to be made by the Special Master or the Court is unclear. Regardless of this uncertainty, Defendants' failure to provide documentary evidence supporting their claim for fees, coupled with the Supplemental Recommendation's silence on this error, contravenes the February 26 Order.

Even if Defendants' unsworn footnote stating time spent by one attorney on unidentified tasks is construed to satisfy the documentation requirement of the Court's February 26 Order, such documentation falls far short of what is required for an award of attorneys' fees under the

law. As the Third Circuit explained, "[t]he court's focus in assessing the adequacy of submitted documentation, then, is whether the documentation permits the court to determine if the claimed fees are reasonable." *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983). Here, it is not clear exactly what tasks are included in the 72.5 hours claimed by Defense counsel. Because neither the motion to compel nor the application for sanctions involved full briefing by the parties, the only papers submitted by Defendants against California include a three-and-a-half page motion to compel and a six-page application for sanctions. Spending 72.5 hours on 9.5 pages seems excessive, but, because Defendants have not submitted any details to support their claimed fees, there is no way for California or the Court to assess whether these claimed hours are reasonable.

Though the total denial of requested fees is a "stringent sanction," the Third Circuit has recognized that "[o]utright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like, or when the application is grossly and intolerably exaggerated, or manifestly filed in bad faith." *Pawlak*, 713 F.2d at 978 (quoting *Jordan v. United States Dep't of Justice*, 691 F.2d 514, 518 (D.C. Cir. 1982)). Such outright denial is warranted here given Defendants failure—in disregard of the February 26 Order—to provide any attorney affidavits or timesheets to substantiate their request for fees. Further, Defendants' request appears exaggerated and unsubstantiated.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff State of California respectfully requests that the Court sustain its objections and enter an Order rejecting the Supplemental Recommendation.  A proposed order is submitted contemporaneously herewith.

Respectfully submitted,

STATE OF CALIFORNIA
Office of the Attorney General

MATTHEW RODRIQUEZ
Acting Attorney General

KATHLEEN FOOTE
Senior Assistant Attorney General

NATALIE S. MANZO
Supervising Deputy Attorney General


/s/ Michael D. Battaglia
Michael D. Battaglia
Deputy Attorney General
CA Bar No. 290464

California Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Tel: (415) 510-3769
Fax: (415) 703-5480
Email: Michael.Battaglia@doj.ca.gov

*Counsel for Plaintiff State of California*