# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | HON. CYNTHIA M. RUFE |

**PLAINTIFF STATES' OBJECTIONS TO SPECIAL MASTER MARION'S SUPPLEMENTAL FIFTH REPORT AND RECOMMENDATION**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................1

II.   RELEVANT PROCEDURAL HISTORY .........................................................1

III.  ARGUMENT .................................................................................................2

    A.    *Preclusion is Inappropriate*

       1.   Defendants have access to IQVIA and Analysource.................................3

       2.   Preclusion is inappropriate while discovery is still ongoing....................3

       3.   Preclusion is inappropriate for not producing work product...................5

IV.   CONCLUSION ..............................................................................................8

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Hickman v. Taylor,*

    329 U.S. 495, 516 (1947) ........................................................................................... 6

*Holmgren v. State Farm Mut. Auto Ins. Co.,*

    976 F.2d 573, 576 (9th Cir. 1992) ............................................................................. 6

*In re Grand Jury Subpoena Dated Nov. 8, 1979,*

    622 F.2d 933, 935 (6th Cir. 1980) ............................................................................. 6

*Nicholas v. Pennsylvania State Univ.,*

    227 F3d 133, 148 (3d Cir 2000) ................................................................................. 5

*Sporck v. Peil,*

    759 F.2d 312, 316-17(3d Cir. 1985) .......................................................................... 6

*Stein v. S.E.C.,*

    266 F. Supp. 3d 326, 349 (D.C. Cir. 2017) ............................................................... 6


<u>STATUTES</u>

15 U.S.C. §1 ........................................................................................................................ 4


<u>RULES</u>

Fed. R. Civ P. 26(b)(4)(c) ................................................................................................. 6

Fed. R. Civ. P. 26(b)(3) ...................................................................................................... 7

The Plaintiff States ("States") jointly submit this brief demonstrating that sanctions are not appropriate under the Special Master's Supplemental Report and Recommendation No.5 ("SFRR") and Court Order Adopting Same (DKT. 1698) ("Supplemental Recommendation"). The States submit these objections to the SFRR, and respectfully request that they be sustained and Defendants' motion for sanctions and preclusions against California be denied, as provided in the Proposed Order submitted herewith as Exhibit A.

## I.    INTRODUCTION

While the Supplemental Recommendation's sanction recommendations are directed solely at California, the scope of the sanctions will have implications for the States and potentially other plaintiffs if they are applied more broadly.[1] Specifically, preclusion of the use of the IQVIA and Analysource commercially-available datasets by California may well impact their use in expert reports written on behalf of all states. The Court cannot ignore that requiring California to produce these commercially-available datasets is tantamount to requiring all States to do the same since these datasets are shared by all States.

## II.    RELEVANT PROCEDURAL HISTORY

The States, the Direct Purchaser Plaintiffs and End-Payer Plaintiffs submitted letters to the Special Master objecting to Defendants' requests that California produce the IQVIA and Analysource commercial datasets obtained from commercially-available databases for use by Plaintiff experts and to definitively identify all documents upon which California would rely upon to prove its claims.[2]

---

[1] The sanctions recommended against California include both preclusion and an award of attorney's fees.  The States object to both, but will specifically address the issue of preclusion here.
[2] *See* Ex. B, Ex. C.

The underlying Fifth Report and Recommendation ("FRR") *did not* appear to require California to produce these datasets; the Defendants seem to think the FRR *did* require California to produce these datasets.  The SFRR does not specifically address the issue over these datasets.  The recommendation that any existing factual information not already produced by California should be precluded for future use may have broad implications for all the parties to this litigation, if the Court applies the Supplemental Recommendation's reasoning to all parties.[3] The Defendants are already using the FRR as a means to pressure other States to agree to produce not just the Analysource and IQVIA datasets, but all data the State's experts will rely upon before fact discovery has even closed and in absence of any deadline for such expert reports. [4]

## III.    ARGUMENT

### A. *Preclusion is Inappropriate.*

Preclusion and sanctions are inappropriate for three reasons. First, Defendants failed to meet the requirements set forth in the FRR.  According to the FRR, the sanction of preclusion was first to be supported by *Defendants' showing of prejudice* and that Defendants do not already have access to these documents.[5] Defendants failed to meet either of those requirements. Second, preclusion and sanctions are inappropriate while discovery is still ongoing with a substantial number of third parties still having

---

[3] " . . .Defendants may submit an application for (a) sanctions in the form of preclusion of use of any non-produced documents, supported by a showing of how defendants have been prejudiced thereby, and that such documents are not already available to defendants from other sources . . ." *Special Master David H. Marion's Fifth Report and Recommendation to the Parties and Honorable Cynthia M. Rufe Regarding Defendants' Motion to Compel Discovery from the State of California at 3.  February 8, 2021*

[4] Email from Defense Counsel Brian Gilmore to Rhode Island Office of Attorney General on March 23, 2021. See Ex. D.

[5] " . . . [S]upported by a showing of how defendants have been prejudiced thereby, and that such documents are not already available to defendants from other sources."  *Special Master David H. Marion's Fifth Report and Recommendation to the Parties and Honorable Cynthia M. Rufe Regarding Defendants' Motion to Compel Discovery from the State of California.  February 8, 2021*

yet to produce. Finally, preclusion and sanctions are inappropriate given that the IQVIA and

Analysource datasets are attorney work product.

### 1. *Defendants Have Access to IQVIA and Analysource*.

Defendants have made no showing that they do not already have access or cannot otherwise

license this information from these commercial services.  They cannot possibly make such a showing

because discovery and communications from Defendants shows that Defendants *already have* access to

IQVIA and Analysource datasets.[6]  Requiring California or other States to specifically disclose the

particular data selected by counsel from these databases to be used by Plaintiff States experts is not

warranted and seeks attorney work product. California will not be submitting a separate expert report,

instead an expert report (or reports) will be submitted on behalf of all States seeking disgorgement. No

such reports have been written yet and candidly it is impossible for any state to know, now, what our

experts will rely upon when writing their reports. The IQVIA and Analysource datasets were purchased

for our experts to use should they decide to do so when writing their expert report(s).

### 2. *Preclusion is inappropriate while discovery is still ongoing.*

Preclusion and sanctions are inappropriate at *this stage* of the litigation.  No close of fact

discovery has been decided, defendants and the States are still producing discovery, and there has been

very little third party discovery produced yet. The States have been working to achieve the Court's goal

of moving discovery forward while we wait out the pandemic.  In good faith, many States agreed to

voluntarily *identify sources they may rely upon* [7] and have identified factual documents and data sources

---

[6] TEVMDL008213398 (Teva employees discussing Analysource data); MYL-000057738 (Mylan
employees discussing quarterly IQVIA (formerly known as IMS) data).
[7] See March 31st, Letter between certain States and Defendants regarding IQVIA and Analysource
datasets. See Ex. E.

upon which they can determine they may rely on at this early stage in the litigation. This is not enough

for Defendants, as they seek to require California to produce any document its experts will rely upon

now.  Defendants should recognize that these requests are premature as they themselves have objected to

such requests.[8]  The States have produced their entire investigatory files[9], Medicaid data, and many

other documents on behalf of all States. It cannot be ignored that while the States may differ slightly

based on whether they are seeking disgorgement or damages, the core claims here are violations of

Section 1 of the Sherman Act that were jointly investigated by the States, thus much of the evidence

they will rely upon to prove their claims will be the same. The States are acting in their law enforcement

capacity. The States possess only the evidence their attorneys have collected during the first stage of

their law enforcement investigation and the subsequent discovery conducted in this litigation.

    After the *conclusion* of discovery, Defendants can serve contention interrogatories asking the

States to identify what they will rely on to prove their claims. However, fact discovery is ongoing, and

there is no current fact discovery deadline. No trial date has been set, nor any date for expert reports or

conclusion of expert discovery. The Court canceled such deadlines in light of the pandemic.[10]

Defendants have not yet served contention interrogatories on the States, likely because they know such

interrogatories would be premature. Defendants fail to identify any specific prejudice in their filing for

---

[8] "In addition, Actavis objects to this Request because it is premature, as fact discovery has not closed, and parties (plaintiffs and defendants) and third-parties have yet to complete their productions. Actavis further objects to this Request to the extent it prematurely seeks expert discovery." *RESPONSES AND OBJECTIONS OF ACTAVIS ELIZABETH, LLC, ACTAVIS HOLDCO U.S., INC., AND ACTAVIS PHARMA, INC. TO PLAINTIFFS' FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS* (responding to a request for all documents that Actavis will rely upon to support its defenses). That Actavis also offered to meet and confer is not a withdrawal of its objection. (Ex. K at 19).
[9] Approximately 5,970,350 documents were produced over three different productions to Defendants on behalf of all States as part of the States' investigative files. Additionally, Medicaid and the Minnesota Multistate Contracting Alliance for Pharmacy ("MMCAP") data for all States has been produced.
[10] PTO 123.

4

sanctions, because they cannot establish such prejudice at this stage in the litigation.[11] If any further

information is identified by any plaintiff, Defendants will have ample time to review and analyze it.

Preclusion is a drastic and extremely premature remedy at this stage.

### 3. *Preclusion is inappropriate for not producing work product.*

Preclusion and sanctions are inappropriate because IQVIA and Analysource datasets are attorney

work product. Defendants have not just requested that California[12] produce the information from the

commercially-available datasets, but more importantly, to identify the specific data on which California

intends to rely to prove its claims. Contrary to Defendants' aspersions, the States are not seeking to

withhold pre-existing factual information by categorizing information as in the possession of an expert.

But Defendants' demand for the specific data upon which California will rely necessarily implicates the

States' attorney work product as discussed below.

Similar to how Westlaw or Lexis aggregate court decisions into an easy to use database, IQVIA

and Analysource take commercially available data and aggregate it into databases that are easy to

navigate.

Analysource provides data on what drugs are marketed by manufacturers to be sold in the United

States. It does not identify what drugs actually were sold, or what the actual price the drug was sold at

by the manufacturer. IQVIA similarly aggregates manufacturer and third party information (such as

insurer or pharmacy data) into a database that is easy to navigate. It provides summary level information

on a monthly basis on how much of a certain drug was sold and what the average price was from the

---

[11] Defendants cite *Nicholas*, but that is inapposite here.  There, the party did not produce documents
until *after* a liability trial phase and only *one month* before the beginning of the damages phase.
*Nicholas v. Pennsylvania State Univ.,* 227 F3d 133, 148 (3d Cir 2000).  This MDL is certainly not at that
stage – and quite possibly a very long time from that stage.

[12] And if the Court extends the reasoning, Defendants are requesting all Plaintiff States be precluded.

aggregated third party sources. For example, IQVIA cannot provide detail on how much of a certain drug was sold to a specific CVS in Philadelphia and at what price. Neither of these data sources provide unique information specific to any state. Whether our experts will rely upon these data sources, however, has not been determined. Again, there is no expert report deadline. Defendants have the same ability as the States to purchase datasets from IQVIA and Analysource, and Defendants' discovery responses demonstrate that they in fact do.[13]

Unlike Westlaw or Lexis, the IQVIA and Analysource datasets our experts have contain data fields that were selected by counsel in consultation with consultants from the larger IQVIA and Analysource databases. Defendants are not just seeking the data but they are seeking the States' selection and compilation of the datasets. These datasets cannot be produced without revealing attorney work product that is protected.[14] The selection of data constitutes work product "when the act of culling, selecting or ordering' documents or data 'reflects the attorney's opinion as to their relative significance in the preparation of the case or the attorney's legal strategy.'"[15] It would be impossible to eliminate the disclosure of attorney work product from the datasets and produce them to Defendants. In fact,

---

[13] *See* Ex. F. (production letter from Glenmark referencing IQVIA); Ex. G. (production letter from Sun, Mutual, and Taro); Ex. H (production letter from Sandoz Inc.); *See also* TEVMDL008213398 (Teva employees discussing Analysource data); MYL-000057738 (Mylan employees discussing quarterly IQVIA (formerly known as IMS) data).

[14] *See* PTO 122 (Providing more protection than FRCP 26(b)(4)(c) regarding what information relating to experts is discoverable).

[15] *Stein v. S E. C.,* 266 F. Supp. 3d 326, 349 (D.C. Cir. 2017) (citing *Sporck v. Peil* , 759 F.2d 312, 316-17(3d Cir. 1985)) (other citations omitted); see also *In re Grand Jury Subpoena Dated Nov. 8*, 1979, 622 F.2d 933, 935 (6th Cir. 1980) (defining work product as "the tangible and intangible materials which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions").  The privilege ensures that litigants cannot proceed "on wits borrowed from the adversary," *Hickman v. Taylor,* 329 U.S. 495, 516 (1947) (Jackson, J., concurring), and "prevent[s] exploitation of a party's efforts in preparing for litigation." *Holmgren v. State Farm Mut. Auto Ins. Co.,* 976 F.2d 573, 576 (9th Cir. 1992) (citations omitted).

Defendants have said that what they want is not the data but to know what data we selected.[16]  Yet, Defendants have not established substantial need for these datasets.

The production of the IQVIA and Analysource datasets raises similar attorney work product concern as the production of the PLX database requested by Defendants. There Special Master Merenstein ruled against the production of the PLX database.  There, Special Master Merenstein stated:

> The phone database was prepared in anticipation of litigation and is therefore work product
>
> protected from disclosure by Rule 26(b)(3). Even if the database is standard work product (and
>
> not the mental impressions, conclusions, opinions, or legal theories of the States' attorneys),
>
> defendants have not shown either a substantial need for the database or that they cannot create
>
> their own, similar database without undue hardship.[17]

Like the phone records, the Analysource and IQVIA databases themselves are not unique. The Defendants have produced their actual sales data. The States, including California, cannot yet say whether, or to what extent, our experts will rely on Analysource or IQVIA datasets. The experts' primary source of data likely will be from the Defendants themselves, and possibly from additional third parties (larger wholesalers, distributors, PBMs, insurers, retail pharmacies, etc.). Again, the States have previously disclosed these sources to Defendants and are working with Defendants on the over sixty subpoenas for productions from third parties. Furthermore, the Parties have not even finalized an agreed list of drugs by National Drug Code (NDC) that are at issue in the MDL. This fact further underscores

---

[16] *See* Defendants Feb, 8 2021 Letter to Special Master Marion, "[…]what Defendants seek, which is not access to entire databases, but rather the specific sets of data upon which the States intend to base their claims for monetary relief." (Ex. I. at 4).

[17] *See* Special Master Merenstein Decision Dec. 26, 2019. (Ex. J).

the impossibility of identifying discrete datasets on which experts will rely prior to the exchange of expert reports and expert discovery.

We request that any order of the Court make clear that commercially-available datasets that may be used by experts when conducting their analysis are not discoverable at this stage in the litigation, and that the parties are not required to specifically identify data and documents that will be relied upon to support their claims now, or risk being precluded from relying upon them in the future.

## IV.    CONCLUSION

For these reasons, the States respectfully request the Court refrain from imposing sanctions on California.

Dated: April 26, 2021                                  Respectfully submitted,

/s/ Abigail U. Wood                                    /s/ Cheryl Hiemstra
Abigail U. Wood                                        Cheryl Hiemstra, OSB#133857
Deputy Attorney General                                Assistant Attorney General
PA Bar No. 325273                                      Civil Enforcement Division
Pennsylvania Office of Attorney General                Oregon Department of Justice
Phoenix Building                                       1162 Court Street NE
1600 Arch Street                                       Salem, OR 97301-4096
Philadelphia, PA 19102                                 (503)-934-4400
(717) 433-1755                                         Cheryl.Hiemstra@doj.state.or.us
awood@attorneygeneral.gov

*Counsel for Plaintiff Commonwealth of Pennsylvania*   *Attorney for Plaintiff State of Oregon*

/s/ Joseph C. Meyer
Joseph C. Meyer
Assistant Attorney General
Office of the Attorney General, Antitrust Division
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
Tel:  (651) 757-1433
Fax: (651) 296-9663
joseph.meyer@ag.state.mn.us

Counsel for the State of Minnesota


cc:     MDL2724plaintiffsleadsetc@ag.ny.gov
        MDL2724AllDeftsService@Troutman.com
        List-IRP-Only-Defendants@lists.stblaw.com