# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br>*ALL ACTIONS* | |

**CERTAIN DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATE OF NEW YORK'S OBJECTIONS TO SPECIAL MASTER DAVID H. MARION'S SIXTH REPORT AND RECOMMENDATION REGARDING CERTAIN DEFENDANTS' MOTION TO COMPEL PLAINTIFF STATE OF NEW YORK TO PRODUCE STATE ENTITY DISCOVERY**

**TABLE OF CONTENTS**

I.   INTRODUCTION AND BACKGROUND ................................................................... 1

II.  ARGUMENT ............................................................................................................... 3

    A.   New York Does Not Have Standing Under New York Executive Law to Sue or Seek Damages On Behalf of State Agencies and Entities ................................... 3

    B.   Special Master Marion Correctly Concluded that New York Must Engage In and Produce Discovery for Those Agencies and Entities for which New York Seeks to Recover Damages ...................................................................................... 4

    C.   Special Master Marion Correctly Found that Forcing Defendants to Subpoena New York State Agencies and Entities as Third-Parties Would Be Inconsistent with Established Case Law and Needlessly Inefficient and Burdensome ............................................................................................................ 8

III. CONCLUSION ........................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**     **Page(s)**

*Burns v. Glick*,
  158 F.R.D. 354 (E.D. Pa. 1994)..........................................................................................10

*In re Domestic Drywall Antitrust Litig.*,
  300 F.R.D. 228 (E.D. Pa. 2014)............................................................................................7

*Ford Motor Co. v. Nu-Car Carriers*,
  87 F.R.D. 21 (E.D. Pa. 1980).............................................................................................10

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008).................................................................................................7

*W. Virginia ex rel. McGraw v. Eli Lilly & Co.*,
  No. 04-mdl-1596-JBW, 2008 U.S. Dist. LEXIS 119111 (E.D.N.Y. July 31,
  2008) .....................................................................................................................................6

*New York v. Feldman*,
  210 F. Supp. 2d 294 (S.D.N.Y. 2002)..................................................................................4

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001).................................................................................................7

*People v. Coventry*,
  13 N.Y.3d 108 (2009) ..........................................................................................................4

*People v. Greenburg*,
  27 N.Y.3d 490 (2016) ..........................................................................................................4

*State of Colorado v. Warner Chilcott Holdings Co. III, Ltd.*,
  No. 05-cv-2182-CKK, 2007 WL 9813287 (D.D.C. May 8, 2007)............................................7

*State v. Purdue Pharma L.P.*,
  2019 WL 3753945 (S.C.Com.Pl. July 05, 2019) ......................................................................6

*United States v. Am. Express Co.*,
  No. 10-cv-04496-NGR, 2011 WL 13073683 (E.D.N.Y. July 29, 2011)..........................6, 7, 9

*Washington v. GEO Group, Inc.*,
  No. 17-cv-05806-RJB, 2018 WL 9457998 (W.D. Wash. Oct. 2, 2018)..................................5

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  395 U.S. 100 (1969)..............................................................................................................5

*In re Zyprexa Prods. Liab. Litig.*,
   No. 04-md-1596-JBW, 2009 WL 1117485 (E.D.N.Y. Apr. 24, 2009) ...................................... 7

**Other Authorities**

Herbert J. Hovenkamp, "A Primer on Antitrust Damages," University of
   Pennsylvania Law School, Faculty Scholarship (2011), *available at*
   https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=2848&context=
   faculty_scholarship ................................................................................................................. 5

New York Executive Law § 63(12) .................................................................................................. 3

The undersigned Defendants (collectively, "Defendants") hereby respond in Opposition to Plaintiff State of New York's Objections (ECF 1764) ("Objections" or "Obj.") to Special Master David H. Marion's Sixth Report and Recommendation (ECF 1751) ("R&R") regarding certain Defendants' motion to compel New York to (1) comply with PTO 95, § 7 ("ESI Protocol") by identifying custodians and sources of ESI and (2) produce discovery from state entities whose purchases and reimbursements of generic pharmaceutical products form the basis of New York's claims for damages.

## I. INTRODUCTION AND BACKGROUND

There is no dispute that Plaintiff State of New York ("New York") seeks to recover damages allegedly suffered by the State when certain New York state entities allegedly paid or were reimbursed for one or more of the generic pharmaceuticals at issue in this MDL.[1] New York bases its damages claims on the purchases by more than 200 state *entities* (e.g., state hospitals), but it has not disclosed whether any state *agencies* (e.g., the Department of Health) were responsible for the relevant entities' purchases or reimbursements, and, if so, which agencies and entities.

In response to New York's claims, Defendants served requests for production on New York in August 2018, seeking "all documents (including data) concerning the purchase of any Drug at Issue . . . *upon which [New York] base[s] any claim.*" *See* Exhibit C, RFP 32, at 19 (emphasis added). Defendants explicitly directed the State to produce documents in the possession of its relevant state agencies and entities. *Id.* at ¶ 1. But for more than two years now, New York has

---

[1] *See* Exhibit A at ¶ 771 (p. 164–65), ¶ 1585 (p. 441–42), ¶ 2001 (p. 516) (New York's complaints, in which it explicitly "seeks . . . damages for . . . New York state entities that paid for one or more of the drugs" at issue in the MDL) and Exhibit B at 4 (New York's interrogatory responses, in which it claims it "is seeking to recover damages suffered by the New York State Department of Health," and for "all identified State Agencies with expenditures reflected in the MMCAP data.").

1

refused to produce or facilitate productions of relevant discovery in possession of the state agencies and entities on which New York's damages claims rest.

New York is the *only* Plaintiff State that refuses to engage in and produce custodial discovery from the state agencies and entities whose purchases and reimbursements form the basis of its damages claims. R&R at 2. Inexplicably and contrary to its own pleadings, New York claims its attorney general—not the State itself—is the Plaintiff and has brought "this action as an enforcement authority." Obj. at 1. Pursuant to that objection, New York claims that its state entities are not subject to party discovery, and so Defendants must go through the cumbersome and inefficient process of pursuing discovery from *more than 200* separate New York state entities as third parties through Rule 45 subpoenas, even though New York is seeking to recover damages on behalf of those entities.

All other State Plaintiffs seeking damages for state entities have agreed to engage in and produce relevant discovery from such entities.[2] Because New York has refused to do the same, Defendants were forced to seek the Special Masters' assistance to compel New York to (1) comply with § 7 of the ESI Protocol by identifying custodians and sources of ESI and (2) produce discovery from state entities whose purchases/reimbursements of generic products form the basis of New York's claims for damages. The parties submitted briefing and proposed orders to Special Master David H. Marion ("Special Master"), who heard oral argument on April 9, 2021.

On April 21, 2021, the Special Master issued his sixth R&R, recommending that the Court compel New York to engage in and produce state entity discovery for at least three reasons. First, the "relevant case law supports the notion that, if New York State seeks to collect damages to

---

[2] Defendants continue to negotiate specific discovery disputes with certain of these States, but New York is the only state that still refuses to produce *any* custodial documents and data from its agencies and entities.

2

reimburse state agencies for their losses, it must collect and produce data to support those claims and data which might be relevant for Defendants to contest those claims." R&R at 3. Second, "Defendants are entitled to reasonable discovery to allow them to defend their clients against [New York's] claims, whether relating to liability or damages." *Id.* And, third, New York's "insistence that Defendants must subpoena state agencies under Rule 45 of the Federal Rules of Civil Procedure as non-parties, is not consistent with established case law and will undoubtedly result in needless delay and additional expense." *Id.*

## II.  ARGUMENT

### A. New York Does Not Have Standing Under New York Executive Law to Sue or Seek Damages On Behalf of State Agencies and Entities

New York first argues that—under New York Executive Law § 63(12)—its attorney general has the "unique and express authority" to wield its enforcement sword and seek recovery of damages for New York state agencies and entities while simultaneously shielding those same agencies and entities from civil discovery on the alleged purchases and reimbursements for which New York claims damages. Obj. at 2–3.

As an initial matter, as Defendants have argued in their pending motions to dismiss, New York's claims on behalf of unidentified governmental entities fail. New York Executive Law § 63(12) does not vest the state Attorney General with authority to bring representative claims on behalf of unnamed government entities. Nor can the Attorney General bring claims under the Donnelly Act on behalf of any political subdivision or public authority absent their express authorization, which has not been alleged here. *See* Defendants' Joint Motions to Dismiss

Plaintiffs' State-Law Claims (ECF 157, Case No. 17-cv-03768 and ECF 192, Case No. 19-cv-02407) (addressing the deficiencies of New York's claims on behalf of such entities).[3]

Defendants' position on the deficiencies of New York's state-law claims has been clearly stated and now fully-briefed twice in Defendants' motions to dismiss, and Defendants reassert those motions and arguments fully herein. That said, New York's mischaracterization of the relevant state law (Obj. at 2–3) cannot go unanswered. The cases on which New York relies are inapposite. *New York v. Feldman* does not stand for the broad proposition that simply pleading an alleged antitrust violation permits New York to seek damages for any person or entity. 210 F. Supp. 2d 294 (S.D.N.Y. 2002). Instead, *Feldman* addressed whether New York could seek relief on behalf of *non-residents*. *Id.* at 303. Likewise, *People v. Coventry*—not an antitrust case—also says nothing about New York's authority to recover damages for state entities in this case. 13 N.Y.3d 108 (2009). At issue in *Coventry* were damages "on behalf of the owners of life insurance policies," *not* on behalf of state agencies or entities. *Id.* at 112. And in *People v. Greenburg*—also not an antitrust case—damages were not even at issue, as New York sought only injunctive relief and disgorgement. 27 N.Y.3d 490 (2016). Simply put, New York cannot cite a single case recognizing its purported authority to seek antitrust damages on behalf of New York state entities.

### B. Special Master Marion Correctly Concluded that New York Must Engage In and Produce Discovery for Those Agencies and Entities for which New York Seeks to Recover Damages

New York elected to pursue antitrust damages on behalf of its state agencies and entities; it is **not** suing only in its enforcement capacity. Because New York claims agency and entity damages, the Special Master correctly concluded that the "relevant case law supports the notion

---

[3] Whether New York has the statutory authority to seek damages from its state entities was not directly before the Special Master, even though New York included such arguments in its briefing and Defendants responded during oral argument.

that, if New York State seeks to collect damages to reimburse state agencies for their losses, it must collect and produce data to support those claims and data which might be relevant for Defendants to contest those claims." R&R at 3. Indeed, New York—after extensive briefing and an oral argument—still cannot cite a single state or federal antitrust case holding that a State can withhold purchase or reimbursement data and documents from the agencies and entities on whose behalf the State seeks damages.

New York's continued "enforcement capacity" argument is also irrelevant, as is its claim that it is "not acting as counsel for state agency victims." Obj. at 2. Ultimately, New York elected to base its claims on purported harm to New York agencies and entities. It cannot now dodge its discovery obligations by claiming that those agencies and entities are outside the scope of the case it brought. It is axiomatic that antitrust plaintiffs must produce purchase and reimbursement data and documents relevant to and in support of their damages claims. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124 (1969) (proffered antitrust damages must be "based on relevant data"); *see also* Herbert J. Hovenkamp, "A Primer on Antitrust Damages," University of Pennsylvania Law School, Faculty Scholarship (2011), *available at* https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=2848&context=faculty_scholarship. This discovery is essential for, among other things, a determination of whether any alleged overcharges made their way through the distribution chain and caused damage to New York entities—a prerequisite to any resolution of New York's claims.

Accordingly, New York state agencies and entities—like all entities for which claims are made—are subject to party discovery, and New York must produce responsive custodial documents and purchase/reimbursement data in response to the Requests. *See, e.g.*, *Washington v. GEO Group, Inc.*, Case No. 17-cv-05806-RJB, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2,

5

2018) ("[W]here the plaintiff is the State of Washington, ***discovery addressed to the State of Washington includes its agencies***. * * * [And] the [Attorney General] should respond to and produce discovery on behalf of the State of Washington, including its agencies.") (emphasis added); *see also W. Virginia ex rel. McGraw v. Eli Lilly & Co.*, Case No. 04-mdl-1596-JBW, 2008 U.S. Dist. LEXIS 119111, at *8  (E.D.N.Y. July 31, 2008) (ordering production of State's Medicaid database data on which the State's claims were based); *see also State v. Purdue Pharma L.P.*, 2019 WL 3753945, at *2 (S.C.Com.Pl. July 05, 2019) (granting defendants' motion to compel discovery from state entities on the basis that "attorneys general . . . were seeking damages on behalf of the [state] agencies at issue").

In response, New York argues that "only [its attorney general] is a party to this litigation" and thus New York does not have legal possession, custody, or control of relevant discovery from agencies and entities on whose behalf New York seeks to recover damages. This is not correct. The Attorney General's own website describes the NYAG as "the State's chief legal counsel," explaining that "the Attorney General not only advises the Executive branch of State government, but also defends actions and proceedings *on behalf of the State*." *See* NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL: OUR OFFICE (last accessed May 19, 2021), *available at* https://ag.ny.gov/our-office.

In support of the unsupportable and unfair position that "state agencies are not subject to party discovery in antitrust litigation brought independently by the state attorney general," New York cites two cases. Obj. at 4. First, New York cites an inapposite case, *United States v. Am. Express Co.*, Case No. 10-cv-04496-NGR, 2011 WL 13073683 (E.D.N.Y. July 29, 2011) ("*Amex*"). In *Amex*, the District Court granted a motion to quash defendants' discovery requests to certain state government entities of the Plaintiff States. *Id.* at *4. But the States' antitrust claims in

6

*Amex* **were not for damages based on state agency purchases**. Instead, those States sought *only* injunctive relief and the recovery of costs. *Id.* at *2 n.7; Complaint, 2010 WL 5594629. Next, New York cites *State of Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, which is also inapposite. Case No. 05-cv-2182-CKK, 2007 WL 9813287 (D.D.C. May 8, 2007) ("*Warner Chilcott*"). In *Warner Chilcott*, the States sought only injunctive relief arising from alleged harm to "general economies," not state entities, with **no mention of damages** in the complaint. *Id.* at *2. Such unpersuasive citations reflect New York's continued effort to selectively wield its misinterpretation of its state law both as a sword with which to sue Defendants and as a shield with which to deflect all discovery obligations. New York cannot have it both ways.

If a State Plaintiff refuses to or cannot produce discovery on behalf of the state agencies and entities for which it seeks to recover damages, then that State Plaintiff should be precluded from seeking any relief, including damages, in connection with those agencies and entities. *See, e.g.*, *In re Zyprexa Prods. Liab. Litig.*, No. 04-md-1596-JBW, 2009 WL 1117485, at *1 (E.D.N.Y. Apr. 24, 2009) ("preclud[ing] the State from seeking any relief, including damages . . . in connection with any non-Medicaid State payors as to which discovery has not been produced"). The reason for such preclusion is simple: Courts—including this one—acknowledge that "antitrust cases generally call for broad discovery." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 230 (E.D. Pa. 2014) (internal citations omitted). In addition to having to prove that defendants engaged in alleged anticompetitive conduct, all antitrust plaintiffs—including State Plaintiffs—must also prove both (1) individual injury resulting from defendants' alleged conduct and (2) measurable damages. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008). "Proof of injury (whether or not an injury occurred at all) must be distinguished from calculation of damages (which determines the actual value of the injury)." *Newton v. Merrill Lynch, Pierce,*

7

*Fenner & Smith, Inc.*, 259 F.3d 154, 188 (3d Cir. 2001). Accordingly, New York cannot have its cake and eat it too by claiming state agency and entity damages, but simultaneously refusing Defendants' discovery requests for custodial data and documents from those very same state agencies and entities—i.e., discovery relevant to Defendants' defenses against New York's alleged injury and damages.

### C. Special Master Marion Correctly Found that Forcing Defendants to Subpoena New York State Agencies and Entities as Third-Parties Would Be Inconsistent with Established Case Law and Needlessly Inefficient and Burdensome

There is no dispute as to the relevance of the discovery that Defendants seek from New York state agencies and entities. Again, New York is the *only* State pursuing damages on behalf of state agencies and entities that has refused to engage in and agree to produce discovery for at-issue state agencies and entities. Furthermore, New York "recognizes that [such] discovery can be sought" from the state agencies and entities, but argues that it should be done through Rule 45 subpoenas. Obj. at 7. For these reasons and others, the Special Master correctly concluded that New York's "insistence that Defendants must subpoena state agencies under Rule 45 of the Federal Rules of Civil Procedure as non-parties, is not consistent with established case law and will undoubtedly result in needless delay and additional expense." R&R at 3.

Forcing Defendants to subpoena every one of the more than 200 state agencies and entities on whose purchases or reimbursements New York bases its damages claims would be an untenable, inefficient approach. Indeed, such a requirement would be contrary to the Federal Rules governing party discovery in a federal action, the broad party discovery obligations of PTO 105, and the efficiency-focused protocols discussed in the Report and Recommendation upon which that PTO was based. *See* ECF 1135 at 5; R&R at 3. Such a backwards process would significantly prejudice Defendants—through significant delay and needless expense—and complicate the already substantial discovery efforts in this case, contrary to the States' repeated assertions that

8

they seek to advance this litigation swiftly and efficiently. Given the difficulty Defendants have encountered in negotiating with the States for their party data, *see* R&R at 2, New York's third-party subpoena proposal would likely increase the time required for discovery in the States' bellwether complaint by at least 12 to 18 months.

In organizing discovery in this MDL, the Court adopted the Special Master's conclusion that "extensive and broad-ranging discovery is both necessary and appropriate for these cases to be fairly adjudicated, . . . [and] essential for any meaningful settlement discussion." *See* Exhibit D (Report and Recommended Order from Special Master David H. Marion Setting Forth a Case Management Order and Discovery Schedule). Without discovery from the state agencies and entities on whose behalf New York claims to seek damages, Defendants cannot (1) defend against or calculate the potential exposure arising from New York's claims for damages, (2) consider potential settlements, or (3) prepare for merits expert depositions and reports. Because New York's claims for damages in this MDL are based on the purchases and/or reimbursements of New York state agencies and entities, New York state agencies and entities are subject to party discovery and the efficiencies associated therewith.

Indeed, New York's own cited authority contradicts its proposal that its state agencies and entities should be treated as third parties. In *Amex*, the court disagreed with Plaintiff's third party discovery argument that a "Rule 45 [subpoena] is a more efficient, less burdensome approach" and explained that "party discovery would be unquestionably more efficient." 2011 WL 13073683, at *4. This reasoning applies with even greater force here, because—unlike in *Amex*—there has been neither informal cooperation by the state agencies, nor encouragement from the New York Attorney General, thus forcing Defendants to seek intervention by the Special Master and the Court.

Even more disconcerting is that New York's counsel still threatens to "participate in" any "third-party discovery" that Defendants intend to serve on the New York state agencies and entities should the Court not adopt the Special Master's Report and Recommendation, despite claiming that it "does not represent other state agencies this litigation" and that it is "independent" from any New York state entities. Obj. at 7. In other words, New York claims it has no ability to represent or control the discovery interests of its state agencies and entities for the purposes of *party discovery*, but then promises in the same breath to intervene so as to represent those *same* agencies and entities for the purposes of *third-party discovery*. First shield, then sword.

Simply put, New York cannot ignore its discovery obligations. *See Ford Motor Co. v. Nu-Car Carriers*, 87 F.R.D. 21, 23 (E.D. Pa. 1980) ("Plaintiff brought this action, and the Court believes that it has a responsibility to supply defendant with relevant discovery materials as expeditiously as possible."); *see also Burns v. Glick*, 158 F.R.D. 354, 356 (E.D. Pa. 1994) (quoting *Richardson v. Cox*, 91-cv-7830-LAR, 1993 WL 481723, at *3 (E.D. Pa. Nov. 18, 1993)) ("[A] plaintiff must bear the responsibility of pursuing his claim and at a minimum he must be willing to participate in the discovery process."). The discovery Defendants seek from New York state entities is relevant and proportional to litigating the antitrust injury element of the claims on behalf of state entities that New York has chosen to assert in this litigation.

### III.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule Plaintiffs' objections and enter an order upholding the Sixth Report and Recommendation.

Dated: May 19, 2021                                                     Respectfully submitted,

By: */s/ Brian J. Smith*

Brian J. Smith

**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, Illinois 60602
Tel: 312.807.4202
brian.j.smith@klgates.com

*Counsel for Defendant Mayne Pharma Inc.*

**On behalf of the following defendants:**

| | |
|---|---|
| Actavis Pharma, Inc. | Lannett Company, Inc. |
| Actavis Holdco U.S., Inc. | Lupin Pharmaceuticals, Inc. |
| Actavis Elizabeth LLC | Mayne Pharma Inc. |
| Amneal Pharmaceuticals, Inc. | Mallinckrodt Inc. |
| Amneal Pharmaceuticals LLC | Mallinckrodt LLC |
| Aurobindo Pharma USA, Inc. | Mylan Inc. |
| Apotex Corp. | Mylan Pharmaceuticals Inc. |
| Ascend Laboratories, LLC | Oceanside Pharmaceuticals, Inc. |
| Bausch Health Americas, Inc. f/k/a Valeant Pharmaceuticals International | Par Pharmaceutical Companies, Inc. |
| | Perrigo New York, Inc. |
| Bausch Health US, LLC f/k/a Valeant Pharmaceuticals North America LLC | Pfizer, Inc. |
| | Sandoz Inc. |
| Citron Pharma, LLC | Sun Pharmaceutical Industries, Inc. |
| Dr. Reddy's Laboratories, Inc. | Taro Pharmaceuticals USA., Inc. |
| Fougera Pharmaceuticals Inc. | Teva Pharmaceuticals USA, Inc. |
| Glenmark Pharmaceuticals Inc., USA | Upsher-Smith Laboratories, LLC |
| Greenstone LLC | Wockhardt USA LLC |
| G&W Laboratories, Inc. | Zydus Pharmaceuticals (USA), Inc. |

11

## CERTIFICATE OF SERVICE

    I hereby certify that on May 19, 2021, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by filing same through the Court's ECF/CM system.

*/s/ Brian J. Smith*
