**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS | : | MDL NO. 2724 |
| PRICING ANTITRUST LITIGATION | : | 16-MD-2724 |
| | : | HON. CYNTHIA M. RUFE |
| | : | : |
| THIS DOCUMENT RELATES TO | : | |
| | : | |
| | : | Oral argument requested |
| *ALL ACTIONS* | : | |
| | : | |
| | : | |

**NEW YORK'S REPLY IN SUPPORT OF ITS OBJECTIONS TO SPECIAL**
**MASTER'S SIXTH REPORT & RECOMMENDATION**

**Table of Contents**

**Page**

NEW YORK'S REPLY IN SUPPORT OF ITS OBJECTIONS TO
SPECIAL MASTER'S SIXTH REPORT
& RECOMMENDATION ..........................................................................................................1

NYAG Has Produced Structured Data and Other Materials.......................................................... 1

Section 63(12) Defines the Scope of Discovery for
NYAG's Claims for Restitution and Damages for
Victims of Defendants' Illegal Acts ...................................................................................4

Productions from State Agency Custodial Files is
Not Proportional to the Need........................................................................................... 5

State Agencies Are Not Parties to this Litigation ...................................................................5

Conclusion ..........................................................................................................................7

## Table of Authorities

**Cases** **Page(s)**

*New York v. Feldman*,
   210 F. Supp. 2d 294 (S.D.N.Y. 2002) ........................................................................ 4
*New York ex rel. Boardman v.*
   *National Railroad Passenger Corp.*,
   233 F.R.D. 259 (N.D.N.Y. 2006)...............................................................................6
*People v. Coventry First LLC*,
   13 N.Y.2d 108
   915 N.E.2d 616 (2009)...............................................................................................4
*People v. Greenberg*,
   27 N.Y.3d 490
   54 N.E.3d 74 (2016).................................................................................................4
*United States v. American Express Co.*,
   2011 WL 13073683
   (E.D.N.Y. July 29, 2011) ...........................................................................................6
*Colorado v. Warner Chilcott Holdings Co. III, Ltd.*,
   2007 WL 9813287 (D.D.C. May 8, 2007)..................................................................6,7

**Statute**

New York Executive Law § 63(12) .............................................................................. 3, 4, 5

## <u>NEW YORK'S REPLY IN SUPPORT OF ITS OBJECTIONS TO<br>SPECIAL MASTER'S SIXTH REPORT & RECOMMENDATION</u>

The New York Attorney General ("NYAG") replies in support of its Objections to

Special Master David H. Marion's Sixth Report and Recommendation Regarding Certain

Defendants' Motion to Compel Discovery from the New York Office of the Attorney General

(the "Recommendation"), ECF 1751.  NYAG's Objections[1] are ECF 1764.  NYAG is replying to

Defendants' Response,[2] which is ECF 1773.  This Reply addresses Defendants' failure to

meaningfully respond to  NYAG's Objections.  In those Objections, NYAG specified what

NYAG intends to rely on to prove restitution and damages for state agencies, emphasized that

NYAG *has already produced* the state data on which it intends to rely, and described the limited

scope of what is in dispute.  Rather than denying what NYAG contends or otherwise addressing

the substance, Defendants' Response largely relies on inapposite arguments that appear to be

designed to mislead the Court.

### NYAG Has Produced Structured Data and Other Materials

NYAG's Objections at 5-7 explains how NYAG plans to estimate the amounts that

NYAG is entitled to recover for the victims of defendants' illegality, specifies the discovery that

NYAG provided, and argues that Defendants' pursuit of the custodial files of state agency

victims is not proportional to the needs of this case.  Defendants' Response does not contest or

otherwise respond to those specifics.  Rather, throughout Defendants' Response, Defendants

falsely imply that NYAG has ignored its discovery obligations (e.g., Defendants' Response at

---

[1] New York's Objections to Special Master's Sixth Report & Recommendation.
[2] Certain Defendants' Response in Opposition to Plaintiff State of New York's Objections to Special Master David H. Marion's Sixth Report and Recommendation Regarding Certain Defendants' Motion to Compel Plaintiff State of New York to Produce State Entity Discovery.

10).  Defendants argue that antitrust damage claims are necessarily premised on "purchase and reimbursement data," Defendants' Response at 5, falsely implying that NYAG has not produced purchase and reimbursement data.  To the contrary, NYAG has met its discovery obligations and has produced the state agency data on which it intends to rely.  NYAG has repeatedly explained to the Defendants and the Special Master that NYAG will not rely on state agency materials that have not been produced.   Those representations were repeated in an email to defendants, to which defendants responded by declaring impasse.  Email thread ending March 24, 2021 attached as Exhibit 1 ("As disclosed [in January and February of 2020] and as specified in [New York's] November 20, 2020 disclosure, New York does not intend to rely on any custodial information from the entities from which [NYAG] was unable to facilitate production in support of the relief we seek.").

Defendants' misleading statements are belied by the attached declarations identifying what NYAG has produced.[3]  The Hiemstra Declaration, attached as Exhibit 2, describes the Medicaid data that the States, including New York, have produced.  The declaration identifies the New York data of over 300,000 (114,887 + 194,194) rows for the drugs in the Heritage-centric complaint and over 1.6 million rows (74,932 + 592.395 + 631.997 + 346,096) for the drugs in the Teva-centric complaint.  The declaration includes email and letters, including the States' cover letter to the production (directed to the signatory of Defendants' Response), defendants' questions about the data, and the States' response that included New York's answers to the questions posed to New York.

Similarly, the States produced data from the Minnesota Multistate Contracting Alliance for Pharmacy (MMCAP) described in the Meyer Declaration, attached as Exhibit 3.  That

---

[3] In addition to the data produced by NYAG and the other States, the States may use data produced by Defendants, data produced by third parties pursuant to Rule 45 subpoenas, and commercially available data and information.

2

declaration attaches the cover letter of the production (again directed to the signatory of Defendants' Response).  The declaration specifies that the MMCAP production for the drugs in the Heritage-centric and Teva-centric complaints included over 200,000 lines of data for sales to public entities in New York.

NYAG has produced other materials as well.  In addition to the data described in the previous two paragraphs, the Marques Declaration, attached as Exhibit 4, describes the New York production of the "go get" documents requested by the Defendants from state agencies. Marques Decl. Exh. 1 is the six-page cover letter from February 2020 describing NYAG's production of go-get documents, including NYAG press releases, New York's Medicaid plan, RFP and contracts with New York's Medicaid pharmacy benefit manager, preferred drugs lists, the New York Medicaid pharmacy regulations, RFPs for non-Medicaid purchases, and aggregated purchasing and pooling contracts.  Marques Decl. Exh. 2 is the May 2020 three-page cover letter describing NYAG's production of consumer complaints to NYAG, policies and decision-making process for drug transactions, studies of competition in the generic pharmaceutical industry, studies of cost savings associated with generic pharmaceuticals, and group purchasing and pooling contracts.

Thus, this dispute is _only_ about custodial files within state agencies over which NYAG does not have possession, custody, or control.  NYAG Objections at 3-4.  None of the arguments that Defendants make acknowledge the limited nature of the dispute.  The Recommendation reflects a similar misunderstanding of the issue at hand.  As NYAG has said repeatedly, this dispute is about, and only about, whether NYAG, acting pursuant to its enforcement authority under New York Executive Law § 63(12), can or should be compelled to produce custodial files

from the state agency victims of Defendants' unlawful conduct --- materials over which NYAG does not have possession, custody, or control.  Objections at 1.

### Section 63(12) Defines the Scope of Discovery for NYAG's Claims for Restitution and Damages for Victims of Defendants' Illegal Acts

A claim and the defenses to that claim define the scope of discovery.  The arguments made in Defendants' Response at 3-4 about NYAG's claim under N.Y. Exec. Law § 63(12) are frivolous.  For example, Defendants completely distort the holding of *New York v. Feldman*, 210 F. Supp. 2d 294 (S.D.N.Y. 2002), where the court upheld the broad authority of NYAG under section 63(12) to seek restitution and damages for out-of-state, as well as in-state, victims of anticompetitive conduct.  Bizarrely, Defendants argue that *Feldman* "does not stand for the broad proposition that simply pleading an alleged antitrust violation permits New York to seek damages for any person or entity."  To the contrary, *Feldman* reaffirmed in no uncertain terms that section 63(12) should be "construed quite broadly" to apply "to all business activity accompanied by repeated acts of illegality" (cleaned up)[4] and that "the New York Attorney General has often used section 63(12) to remedy antitrust violations " (citations omitted). Defendants likewise frivolously argue that *People v. Coventry First LLC*, 13 N.Y.2d 108, 915 N.E.2d 616 (2009) and *People v. Greenberg*, 27 N.Y.3d 490 54 N.E.3d 74 (2016) are inapposite because they addressed violations that were not antitrust violations.  Defendants ignore that *Coventry* and *Greenberg* addressed the scope of remedies available under section 63(12), the same statute (addressing persistent fraud and illegality) that is at issue here.  And finally, Defendants argue that none of these cases address state agencies as victims, without citing any justification for excluding state agencies from the victims for whom NYAG can recover restitution and damages.  State agencies can be victims, and NYAG may recover restitution and damages for victims.

**Productions from State Agency Custodial Files is Not Proportional to the Need**

Next, Defendants' arguments as to why discovery of the custodial files of state agencies is appropriate continue to understate what NYAG already has produced, and again, appear to be an attempt to mislead the Court.  Cases holding that discovery must be provided in support of an Attorney General's claim are of questionable relevance here where NYAG has produced the voluminous data sets and other materials from New York agencies described above.  Defendants' Response at 5 labels it "axiomatic that antitrust plaintiffs must produce purchase and reimbursement data and documents relevant to and in support of their damage claims."  New York does not disagree, and in fact, that is what NYAG has done.  NYAG has produced ample data---indeed, all the state data on which it intends to rely to establish its prima facie case for monetary relief to state agency victims under section 63(12) for Phase 1 drugs.

**State Agencies Are Not Parties to this Litigation**

To support their argument that custodial files from state agencies must be produced, Defendants first argue that NYAG's pleadings only mention New York as the plaintiff, including in exhibit A highlighting references to "New York."  Defendants' Response at 2 (NYAG's argument that only the attorney general is the plaintiff is "contrary to [New York's] pleadings.").  Defendants' argument ignores the applicable portions of the state complaints that expressly provide that the Attorneys General represent the States in their quasi-sovereign and sovereign capacities, and not any other state agency.  The unnumbered introductory paragraph of each complaint lists the States and specifies that the States, "by and through their Attorneys General, bring this civil law enforcement action."  The first paragraph of the section of the complaints specifying the Parties provides additional detail about the authority that the attorneys general are exercising.

5

Moreover, it is well established that in New York, a state agency does not become subject to party discovery in a litigation brought by a different state agency pursuant to its independent authority. *New York ex rel. Boardman v. National Railroad Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y. 2006). In *Boardman*, New York, by and through Boardman as the Commissioner of the New York State Department of Transportation (NY DOT), sued Amtrak seeking damages in a contract claim. The New York contract with Amtrak permitted audits by the Office of the State Comptroller (OSC) and OSC had audited Amtrak and issued reports after those audits. Amtrak sought party discovery from OSC, which the Court rejected. The court noted that New York's constitution contemplates a separation of powers within the executive branch of government, *id*. at 263, and held that OSC therefore was not subject to party discovery in a litigation brought by NY DOT. The court observed that the Comptroller was a separately elected official, OSC was autonomous from the Governor, and OSC had duties separate from the Governor. *Id*. at 264. Thus, "[f]or reasons of federalism and comity, [the court gave] great deference to the State and its Legislature to define how governmental entities are to be separate and distinct [and held] that separate governmental agencies under state law will not be aggregated together, without the showing of much more." *Id*. at 264.

*Boardman* is on all fours with NYAG's arguments here. Like the Comptroller in *Boardman*, the Attorney General is separately elected, is autonomous from the Governor pursuant to a separate constitutional provision, and is exercising that separate authority by asserting the section 63(12) claim. As in *Boardman*, having relevant information does not make an independent state agency a party to the litigation for purposes of discovery.

*United States v. American Express Co*., 2011 WL 13073683 (E.D.N.Y. July 29, 2011) ("*Amex*") and *Colorado v. Warner Chilcott Holdings Co. III, Ltd*., 2007 WL 9813287 (D.D.C.

May 8, 2007) ("*Warner Chilcott*")  are also directly on point, despite Defendants' views to the contrary.  Those actions alleged antitrust violations and were brought by a group of state attorneys general as civil law enforcement actions.  Those cases hold that state agencies are not parties to the enforcement actions brought by the attorneys general.  That is true in this MDL as well.

Rather than address the substance of the analysis in *Amex* and *Warner Chilcott*, Defendants' Response at 6-7 dismisses those cases because the attorneys general in those cases were not seeking damages for state agencies.  But NYAG exercising independent authority to recover restitution and damages for victims of antitrust violations does not make the victims (including state agency victims) parties to the litigation.

That NYAG in other litigations represents state agencies, Defendants' Response at 6, does not change the independent law enforcement authority that NYAG is exercising in this litigation.  Clients in other litigations do not become subject to party discovery in this litigation simply because the same group of lawyers represented them in the past.

## Conclusion

For the reasons set forth above, this Court should reject the Recommendation, deny Defendants' motion to compel the New York Attorney General to identify custodians from state agencies, and grant such other and further relief that the Court deems proper.

Dated: June 2, 2021              STATE OF NEW YORK
LETITIA JAMES
ATTORNEY GENERAL

Elinor Hoffmann, Antitrust Bureau Chief

By: /s/ Robert L. Hubbard
Robert L. Hubbard
Assistant Attorney General
Office of the Attorney General

Antitrust Bureau
28 Liberty St., 20th Floor
New York, NY 10005
Tel: (212) 416-8267
Robert.Hubbard@ag.ny.gov

*Counsel for the State of New York*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2021, I caused the foregoing document to be filed electronically with the Clerk of the Court by using the CM/ECF system, which will serve a copy on all interested parties registered for electronic filing.

*/s/ Arlene Leventhal*
Arlene Leventhal
Legal Assistant 2
New York State Office
 of Attorney General
Antitrust Bureau
28 Liberty Street
New York, NY 10005