**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 Case No. 2:16-MD-02724 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | Hon. Cynthia M. Rufe |

### JOINT SUBMISSION REGARDING THE LIMITED STAY OF DISCOVERY RELATING TO THE UNITED STATES' CRIMINAL INVESTIGATION AND CERTAIN DEPOSITIONS

The United States and the parties respectfully submit this joint submission regarding the extension of the limited stay of discovery related to the United States' criminal investigation and certain depositions. All parties agree to extend the limited stay until November 30, 2021. However, the United States and the parties disagree on the scope of the stay of discovery related to the United States' criminal investigation. In particular, Plaintiffs seek to create a carveout to paragraph 7 to enable them to seek interview memoranda and other material that the United States has prepared in the criminal cases as part of its ongoing investigation into the generic pharmaceutical industry, and the United States and Defendants contend the current language barring such requests should remain in effect. Accordingly, the United States, Defendants, and Plaintiffs propose competing language regarding discovery related to the United States' criminal investigation to be included as paragraph 7 in a stay order. Other than the expiration date and competing language to paragraph 7, the proposed limited stay orders are the same as the limited stay that is currently in effect.

**The United States' Position**

The United States contends the language in paragraph 7 should not change from Pretrial Order No. 174 and proposes the following language remain in the Court's stay order for paragraph 7:

> Parties may not seek, and no person may respond to, discovery that specifically relates to how or what information was subpoenaed or communicated by—or provided or produced to—the Department of Justice as part of its criminal investigation into the generic pharmaceuticals industry, including in response to any grand jury subpoena or as part of a person's cooperation obligations with the Department of Justice.

See Attachment 1 (United States' Proposed Order).  This language was the result of weeks of negotiations and was agreed to by all parties.  ECF No. 1786 (Joint Stipulation to Extend the Limited Stay of Depositions); ECF No. 1786-1 (Proposed Order) ¶ 7.  The United States agreed to substantially narrow the scope of the stay language from previous stay orders in a spirit of compromise during these negotiations.  *Compare* ECF No. 1786-1 ¶ 7, *with* ECF No. 1739 (Pretrial Order No. 166) ¶ 7 ("The parties shall not seek and shall not respond to discovery in this MDL about the criminal investigation that the Antitrust Division of the U.S. Department of Justice is conducting into the generic pharmaceuticals industry.").  The Court entered a stay order reflecting the narrower stay on June 15, 2021. ECF No. 1787 ¶ 7 (Pretrial Order No. 174).

The United States seeks to maintain this language in a stay order until the end of the United States' criminal trials in *United States v. Glenmark Pharmaceuticals Inc., USA*, No. 20-200 (E.D. Pa. Aug. 25, 2020) and *United States v. Aprahamian*, No. 20-064 (E.D. Pa. Feb. 4, 2020).  In determining whether to impose a stay of discovery, courts balance various factors— the most relevant here being the interest of the plaintiffs in proceeding with a particular aspect of the litigation and the interest of the public in the pending civil and criminal litigation.  *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa.

2

1980).  Balancing these factors indicates that maintaining the current language regarding a stay of discovery related to the United States' criminal investigation is appropriate.  In particular, maintaining the current language and staying such discovery would ensure discovery in this MDL does not interfere with the United States' criminal investigation and cases and would not prejudice Plaintiffs or prevent relevant discovery from moving forward in this MDL.  Further, maintaining the current language would be consistent with this Court's orders on deposition stays and the bellwether selection.

I.      **Discovery of the documents Plaintiffs seek through their carveout would harm the United States' ongoing criminal investigation and pending criminal cases.**

The United States opposes Plaintiffs' efforts to include a carveout in the limited stay order that would allow them to seek the interview memoranda from the United States and Teva because the disclosure and dissemination of these materials could compromise the ongoing antitrust investigation and resulting litigation.  Specifically, these documents reveal the identities of cooperating witnesses in the United States' criminal cases and unindicted co-conspirators and outstanding subjects of the investigation.  The United States keeps witness and unindicted co-conspirator identities confidential, disclosing that information only to criminal defendants to allow them to prepare their defense.  To avoid broader disclosure of witness and co-conspirator identities, the United States has ensured that the list of individuals whose depositions it has sought to stay in parallel civil cases, including in this MDL, has remained non-public.  If details on the United States' confidentiality concerns would aid the Court's analysis, the United States can provide that information in an *ex parte* declaration *in camera*.

The United States further opposes Plaintiffs' attempt to seek to obtain the interview memoranda from Teva because disclosure by Teva or another third party would violate the protective order in the criminal case.  Teva currently has access to these interview reports—

which remain government property—for the sole and limited purpose of its defense in the pending criminal case.  In particular, on September 9, 2020, a court in the Eastern District of Pennsylvania entered a stipulated protective order in the pending criminal case against Teva. *United States v. Glenmark Pharmaceuticals Inc., USA*, No. 20-200 (E.D. Pa. Aug. 25, 2020), ECF No. 47 ("Criminal Protective Order") ¶ 3.  The Criminal Protective Order explicitly provides that Teva and its counsel "may only use, disclose, or disseminate the [discovery materials produced by the Government in the criminal case ('Protected Materials')], and any information taken therefrom, in preparation of the defense of this case."  *Id.*, ECF No. 47 at ¶ 2. The Criminal Protective Order explicitly prohibits Teva's use, disclosure, or dissemination of the Protected Materials in connection with any other proceeding, "including pending civil proceedings" such as this one.  *Id.*, ECF No. 47 at ¶ 3.

Similarly, the United States would oppose any motion by the Plaintiffs to compel the production of interview memoranda.  Indeed, in a securities action against Teva, the United States opposed the class plaintiffs' motion to compel Teva to produce the interview memoranda. *See generally Ontario Teachers' Pension Plan Board, et al. v. Teva Pharmaceutical Industries Ltd. et al.*, Case No. 3:17-cv-558 (D. Conn.) ("Teva Securities"), ECF No. 800; *see also id.*, ECF No. 770 (Class Plaintiffs' Motion to Compel).  Citing the limited relevance of the memoranda to the class plaintiffs' case, the court denied the class plaintiffs' motion without prejudice to "refile the motion either when the Criminal Case has resolved or when this case is much closer to trial." *Id.*, ECF No. 838 (Order) at 4.  Here too, the Court should follow the *Teva Securities* Court and deny Plaintiffs' attempt to access the United States' criminal investigatory materials at this time.

II.     **Staying discovery of the criminal memoranda of interview will not prejudice Plaintiffs.**

The scope of the stay reflected in the United States' proposed paragraph 7 is appropriate and has been in effect since June.  Moreover, it only prevents discovery relating to "how or what information was subpoenaed or communicated by—or provided or produced to—the Department of Justice as part of its criminal investigation into the generic pharmaceuticals industry."  Such information is of limited relevance to this case and certainly not necessary for Plaintiffs to prove their claims.  Of note, staying this discovery would in no way prevent Plaintiffs from seeking discovery of the underlying facts relevant to their claims.

Further, Plaintiffs are not prejudiced by staying discovery of the United States' interview memoranda they seek because they have other discovery tools available to them.  Just as the United States conducted interviews of individuals, Plaintiffs are free to interview and depose individuals in furtherance of their case.  There is no reason Plaintiffs need the United States' interview memoranda to discover the facts that are relevant for their claims.  For the few individuals for whom depositions are stayed, seeking memoranda of the United States' interviews of such individuals severely undermines the effect of the deposition stay.  Additionally, the United States only intends to keep the stay order in effect until the end of the criminal trials.  At that point, Plaintiffs would be free to seek the interview reports from the United States pursuant to the *Touhy* regulations.[1]

To the extent Plaintiffs contend discovery of the interview memoranda is necessary to prevent prejudice created by an imbalance of information between themselves and defense

---

[1] The United States makes no representations in connection with this motion on the position of the United States, or whether the appropriate officials would authorize disclosure of the materials, in response to a request by Plaintiffs pursuant to the *Touhy* regulations.

counsel who have viewed interview memoranda, Plaintiffs' argument is misguided.  An imbalance of information *always* exists between Plaintiffs' counsel, who does not have direct access to Defendants, and Defendants' counsel, who of course has access to his or her client and, therefore, has more information about the client.  There is nothing inherently prejudicial or unfair about this imbalance of information.  Further, there is no evidence that Defendants' counsel who may have viewed certain interview memoranda have used or otherwise disclosed the memoranda in this litigation, and the United States understands that anyone working on this MDL who previously accessed the interview memoranda has been instructed to not access the memoranda while working on this matter.  In short, Plaintiffs have not been harmed by certain counsel having viewed the memoranda, and thus, Plaintiffs will not be prejudiced by staying discovery of the memoranda at this time.

### III. Allowing discovery of the documents Plaintiffs seek through their carveout would be inconsistent with the Court's orders on the deposition stays and bellwether selection.

Plaintiffs' attempt to include a carveout to the stay order allowing them to access the United States' interview memoranda is inconsistent with the Court's recent orders.  The Court has entered multiple orders that ensure this MDL continues to move forward, while also ensuring this MDL does not interfere with pending criminal cases.  Specifically, this Court has stayed certain depositions that would interfere with the United States' criminal investigation and cases, consistent with the United States' and the parties' stipulations.  *E.g.*, ECF Nos. 1739, 1787. Additionally, the Court has stayed the depositions of ten Teva individuals' depositions and has stayed Aprahamian's deposition until further order of the Court.  ECF No. 1769 at 4–5. Allowing Plaintiffs to seek the interview memoranda of individuals whose depositions are stayed severely undermines the purpose of these deposition stays.

Further, in February, the Court adjusted course on the bellwether selection and removed the Teva-centric complaint as a bellwether case.  ECF No. 1680.  In support, the Court cited Teva's indictment as a significant change of circumstances and noted depositions of key witnesses "pending the resolution of the criminal case implicates due process concerns."  ECF No. 1679 at 3.[2]  In choosing the Dermatology Action as a bellwether case, the Court noted the Dermatology Action did not raise "the same scope of concerns" regarding the "degree of entanglement with the criminal cases" as the Teva-centric case.  ECF No. 1769 at 3.  To continue to protect the separation between the criminal cases and civil case and safeguard the interests the Court has noted in prior orders, the Court should enter the United States' proposed paragraph 7.

---

[2] The Court also noted the COVID-19 pandemic has created difficulty and delay with trial schedules.  ECF No. 1679 at 4.

**Plaintiffs' Position**

It has come to Plaintiffs' attention that multiple lawyers from Kasowitz Benson Torres LLP – counsel for Actavis in this MDL and for Teva in criminal proceedings pending before Judge Surrick – had access to at least "200 dense memoranda"[3] of individual witness interviews conducted by DOJ and produced to Defendants in the criminal case. Those interview memoranda give counsel for Teva/Actavis a road map of the testimony of many of the most important witnesses in this MDL (including how those witnesses will respond to various questions, if asked). If not remedied, this knowledge gives counsel for Teva/Actavis, as well as possibly other Defendants, an unfair advantage over all Plaintiffs in this MDL.

For this reason, Plaintiffs propose a modification to ¶ 7 of the Court's Limited Stay Order that would allow Plaintiffs to seek in discovery the interview memoranda to which counsel for Teva/Actavis have had access. To be clear, Plaintiffs are not asking the Court to rule at this juncture on whether the materials must be produced. Instead, the proposed modification will simply allow Plaintiffs to initiate the process of seeking this information, and meeting and conferring with counsel for Defendants and with DOJ concerning this request.

Accordingly, Plaintiffs' requested version of ¶ 7 provides (with added language bolded):

7.      Parties may not seek, and no person may respond to, discovery that specifically relates to how or what information was subpoenaed or communicated by – or provided or produced to – the Department of Justice as part of its criminal investigation into the generic pharmaceuticals industry, including in response to any grand jury subpoena or as part of a person's cooperation obligations with the Department of Justice, **except as to discovery of any memoranda of witness statements or witness interviews prepared by any law enforcement agency produced in**

---

[3]      *See* Plaintiffs Supplemental Filing, Exhibit 1, at 1. Counsel for Teva and Glenmark in the criminal case before Judge Surrick – including lawyers from Kasowitz – represented to the Court that the sheer amount of information in these memoranda prevented the case from going to trial on the schedule requested by DOJ. As one example of the amount of information in these memoranda, counsel noted that "the Antitrust Division met with one witness at least 15 times, producing over 135 pages of interview notes." *Id.*

***United States v. Teva Pharmaceuticals USA Inc., et al.*, No. 20-cr-200 (E.D. Pa.) that was accessed or viewed at any time by any attorney representing, or legal assistant working on behalf of, any party or non-party in this MDL**.

## Teva's & Actavis's Use of the Interview Memoranda

Three lawyers from Kasowitz (Seth Davis, Thomas Amburgy, Michael Pecorini) and two in-house lawyers for Teva[4] (including Norv McAndrew, its Senior VP and General Counsel) have had access to the interview memoranda since they were produced by DOJ in 2020.[5]  In addition to representing Actavis in this MDL and Teva in the criminal antitrust case pending before Judge Surrick, these same lawyers from Kasowitz also represent Teva and Actavis in three pending securities cases.[6]  All five of these cases arise from Teva's and/or Actavis's participation in the same conspiracy alleged in this MDL to fix prices and allocate markets for generic drugs sold in the United States.

Plaintiffs understand that the Kasowitz lawyers will defend the propriety of their access to the interview memoranda by arguing that, as required by the protective order entered in the criminal case, they did not "use" the materials outside of the criminal case.  But this position requires an unreasonably narrow interpretation of how lawyers "use" evidence and information.

Because these five cases arise from the same conspiracy, the attorneys from Kasowitz know what can be gleaned from the interview memoranda in their defense of Teva and Actavis in this MDL and in the securities litigations.  For example, the Kasowitz lawyers are able to defend depositions of their clients with substantial knowledge of the future testimony of crucial

---

[4]     Teva owns Actavis, after acquiring it from Allergan in 2016.

[5]     Plaintiffs' Supplemental Filing, Exhibit 2.

[6]     *See In re Allergan Generic Drug Pricing Securities Litigation*, No. 16-cv-9844 (D.N.J.); *TIAA-CREF Large-Cap Growth Fund v. Allergan plc*, No. 2:17-cv-11089 (D.N.J.); *Ontario Teachers' Pension Plan Board, et al. v. Teva Pharmaceutical Industries Ltd. et al.*, No. 17-cv-558 (D. Conn.).  Both the securities litigations are based on allegations that investors who purchased stock in Teva and Actavis/Allergan were defrauded due to the failure of these companies to disclose that their financial performance was the result of their participation in the same price-fixing and market allocation conspiracy alleged by Plaintiffs in this MDL.

cooperating witnesses (including former Teva employees who are cooperating with the criminal investigation).  Specifically, Mr. Davis defended seven depositions of six witnesses after receiving the DOJ interview memoranda (Christine Maiolo in both the MDL and in the *Allergan* securities case; David Myers in *Allergan*; Alana Dundas in *Allergan*; Anthony Giannone in *Allergan*; Sigurdur Olafsson in *Allergan*; and Christina Koleto in *Allergan*).[7]

Additionally, the Kasowitz attorneys are able to attend depositions and make decisions about whether and how to examine witnesses and present their clients' positions based on their knowledge of the interview memoranda.  This is an incalculable and unfair advantage.  Because many of the witnesses that will be deposed in this MDL are beyond the subpoena power of the Court for any civil trial, the deposition testimony of these witnesses may well be their trial testimony.  To the extent that the Kasowitz attorneys are able to examine witnesses and influence potential trial testimony based on their knowledge of the DOJ interview memoranda, while Plaintiffs are denied access to this same evidence and information, all Plaintiffs will be irreparably prejudiced.

Nor is the scope of this prejudice cabined to Teva and Actavis.  Because the liability of all Defendants in this MDL is joint and several, and Teva/Actavis and other Defendants are operating under a joint defense agreement, the Kasowitz attorneys are incentivized (if not obligated) to use their inside knowledge of the likely testimony of crucial witnesses to the benefit of their co-Defendants.

Finally, Plaintiffs note that the plaintiffs in the *Teva* securities matter recently filed a motion to compel production of these interview memoranda.  The Court denied that motion without prejudice and directed Teva "to submit a list of all counsel (both private and in-house) who have worked on this case and who may have, at any time, had access to the relevant [interview

---

[7]    *See* Plaintiffs' Supplemental Filing, Exhibits 3-9 (transcripts of depositions defended by Mr. Davis).

memoranda]."[8]  The Court issued this directive because "it is ... important to know how important the information contained in the relevant [interview memoranda] might have already been in this case."  *Id.*

Thus, the *Teva* Court essentially deferred ruling on the matter either until after the Teva criminal case ends, or closer to trial in the *Teva* securities case. Notably, the Court made this ruling after fact and expert discovery in that case already ended.  Because discovery had closed, there was no potential impact to future depositions and thus no need to order production of the interview memoranda at that time. But this ruling is inapposite here, because deposition discovery in this MDL is ongoing and will continue for quite some time.  For the reasons explained above, there is a current need for MDL Plaintiffs to access the interview memoranda in order to prevent irreparable prejudice.

Moreover, the *Teva* Court's denial without prejudice of the motion to compel the interview memoranda only weighs in favor of the relief that Plaintiffs are currently seeking: the modification of ¶ 7 of the Limited Stay Order, which will allow Plaintiffs to initiate the process of seeking the interview memoranda in discovery from Actavis, Teva and any other Defendant who may have accessed the memoranda.  Indeed, it is entirely possible that Plaintiffs and DOJ will reach an accommodation that works for both parties without the need for Court intervention.  Thus, Plaintiffs only ask at this juncture that the Court authorize Plaintiffs to initiate this process.

---

[8]      *See* Plaintiffs' Supplemental Filing, Exhibit 9 (Order on Motion to Compel). Exhibit 2 to Plaintiffs' Supplemental Filing is the list submitted in response to the *Teva* Court's Order.

**Defendants' Position**

Defendants support the DOJ's form order and join DOJ in opposing Plaintiffs' proposed modification to paragraph 7 of the limited stay order and efforts to procure copies of the government interview memoranda ("Government Interview Memoranda" or "Memoranda").  In addition to the concerns raised by the Government, Defendants would face unique risks by the production of the Government Interview Memoranda, including the risk of irreversible prejudice. And, if the Memoranda become subject to discovery, the Court and all Parties face the risk of significant disruption to the progress and efficiency of the MDL.

The Court should reject Plaintiffs' suggestion that production of the Government Interview Memoranda in this case is necessary or appropriate because: (1) MDL Defendants who are parties to the criminal proceedings (the "Indicted Defendants") are prohibited by the protective order in the criminal case from using the Memoranda in any other proceeding, thus placing the Indicted Defendants in a highly prejudicial position if their production is ordered in this MDL; (2) production would thrust this MDL into the very same case management scenario that the Court's February 9, 2021 Order sought to avoid – forcing the Indicted Defendants' hands in revealing their defenses to counter any errors, bias, omissions, and falsities contained in the Memoranda and otherwise converting this MDL into a mini criminal trial; (3) the Memoranda are not transcripts or factual recitations, but instead are unreliable, one-sided, and have no evidentiary value whatsoever; and (4) the privacy interests of the witnesses whose statements the Memoranda purport to summarize, as well as the individuals whom the witnesses discussed, cannot be sufficiently protected by the MDL Protective Order.

First, the production of the Government Interview Memoranda would force the Indicted Defendants into a highly prejudicial position because the protective order in the criminal case expressly forbids the Indicted Defendants from "us[ing], disclos[ing], or disseminat[ing]" the Memoranda "for any purpose, including any commercial or business purpose, *and in connection with no other proceeding, including pending civil proceedings*, that is not in preparation of the defense of [the criminal] case." *United States v. Teva Pharm. USA, Inc.*, 20-CR-00200-RBS (E.D. Pa. June 30, 2020), ECF 47, ¶ 3 ("Criminal Protective Order") (emphasis added). There has been no suggestion – nor is there any basis for one – that any of the parties to the criminal case have violated the Criminal Protective Order by using the materials for this matter. But, if Plaintiffs procure the Government Interview Memoranda and subsequently use them, the Indicted Defendants will necessarily be placed in an impossible Catch 22: either they (1) decline to "use" the Memoranda to rebut Plaintiffs' use of them, which complies with the Criminal Protective Order but would result in substantial prejudice to the Indicted Defendants in the MDL; or (2) "use" the Memoranda to rebut Plaintiffs' use in this MDL, and risk violating the Criminal Protective Order. Putting the Indicted Defendants in such a position should not be countenanced.[9] It is for this same reason that any claim by Plaintiffs that they are at a

---

[9] While the Criminal Protective Order contemplates the possibility of another court order requiring production of criminal discovery in another case, the plain terms of the Criminal Protective Order do not permit "use" of that discovery outside of the criminal case, notwithstanding a competing order. Criminal Protective Order, ¶ 7 ("Nothing contained in this Protective Order is intended to indicate that any other court order would have priority over this Protective Order."). This inconsistency would require, at a minimum, judicial intervention from the criminal court.

disadvantage because some defense counsel may have the Memoranda or may have seen the Memoranda is wholly without merit.[10]

     Second, Plaintiffs' request for production of the Memoranda runs directly counter to the very concerns and complications that motivated the Court's February 9, 2021 Order.  Should the Memoranda be produced, the Indicted Defendants (and perhaps other Defendants) may seek production of the government investigators' notes, and to depose the attorneys and agents who participated in the interviews and authored the Memoranda to demonstrate any omissions, misrepresentations, biases, and errors in the Memoranda.[11]  Significantly, this will detrimentally impact ***all Parties*** to the MDL.  It will turn this MDL into a mini criminal trial, replete with the inevitable discovery disputes that will flow when Defendants seek those depositions, discovery that will no doubt create disputes under the *Touhy* regulations.  *See* 5 U.S.C. § 301; 28 C.F.R. § 16.21, *et seq*.[12]  This will undermine the Court's and Parties' efforts to "promote the just and efficient conduct of" the cases in this MDL.  28 U.S.C. § 1407.

     The Indicted Defendants will also be forced to prematurely reveal their defenses in the criminal case to defend themselves in this MDL, thus providing the government with access to

---

[10] Defendants have a right to counsel of their choosing, and those counsel are fully capable of complying with the restrictions in the Criminal Protective Order in representing their clients in this MDL.  *See Gearin v. Rabbett,* No. 10-CV-2227 PJS/AJB, 2011 WL 317728, at *8 (D. Minn. Jan. 28, 2011) ("[Plaintiff] has not cited any authority suggesting that it is unlawful for an attorney representing the same client in a related civil action.  Such cooperation is common; indeed, it is common for the same attorney to represent a client in related criminal and civil actions."); *see also* Criminal Protective Order, ¶ 3.

[11] Indicted Defendants may do so at the risk of violating the Criminal Protective Order.  *See supra* note 9.

[12] To the extent that Plaintiffs plan to seek production of the Government Interview Memoranda from Indicted Defendants, as opposed to DOJ itself, it would be an improper end-run around the *Touhy* regulations.

information and a strategic advantage not otherwise available under the Federal Rules of Criminal Procedure. *Cf. Med. Inv. Co. v. Int'l Portfolio, Inc.*, No. 12-3569, 2014 WL 2452193, at *1 (E.D. Pa. May 30, 2014); *Tr. of the Plumbers & Pipefitters Nat'l Pension Fund, v. Transworld Mech. Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995). As the Court has already observed, "sealing documents and entering protective orders may not offer a complete solution[,]" to address these risks. Feb. 9, 2021 Mem. Op., ECF No. 1674, at 3-4. These are the very types of "complications" that the Court addressed in connection with is February 9, 2021 Order, and which it decided to steer around by selecting different bellwether cases.

Third, it has long been recognized that memoranda prepared by law enforcement personnel purporting to summarize witness interviews are inherently unreliable, biased, one-sided, and inadmissible.[13] The interviews that government memoranda purport to summarize are not verbatim transcripts of the questions asked, or the answers given. *Shulaya, supra* note 13. The answers are not given under oath, *id.*, and witnesses are given no opportunity to review the memoranda and correct any mistakes before they are finalized. Government interview memoranda are also unreliable because "different agents have different practices regarding how much detail they chose to include in a 302, and whether to include facts learned elsewhere as part

---

[13] *See, e.g. Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, No. CV H-09-3712, 2010 WL 1161412, *3 (S.D. Tex. July 1, 2010) ("302s are not factual data…302s are evaluative summaries of the witness interviews, expressing the agents' views of the important aspects of the witnesses' statements during the interviews. Because the 302s are evaluative summaries … [it] weighs heavily against production."); *see also United States v. Shulaya*, No. 1:17-cr-00350-LAP (S.D.N.Y. June 6, 2017), ECF 819 at 5 ("statements included in 302s are…classic hearsay."); *Parhat v. Gates*, 532 F.3d 834, 848-49 (D.C. Cir. 2008) ("the fact that the government has 'said it thrice' does not make an allegation true.").

of the investigation or editorial content that ***were not actually stated during the interview***."[14]  *Id.* (emphasis added).

For these reasons, courts routinely exclude such memoranda as inadmissible hearsay at trial and from consideration at summary judgment,[15] and there has been a growing call for the government to electronically record interviews.[16] Indeed, in 2014, the Department of Justice, recognizing the need to raise accountability and have "an objective account of key investigations and interactions with people who are held in federal custody," announced a policy that created a presumption that statements made by individuals in federal custody be electronically recorded.[17] Unfortunately, the DOJ has not yet applied that presumption to non-custodial interviews.

---

[14] These issues underscore the justified need to seek the underlying notes and depose the government agents and attorneys who authored the Memoranda and participated in the interviews, should the Memoranda be produced in this litigation.

[15] *See, e.g., United States v. Davis*, 845 F. 3d 282, 292 n.4 (7th Cir. 2016) ("[T]he FD-302s were plainly inadmissible hearsay."); *United States v. Benson*, 961 F.2d 707, 709 (8th Cir. 1992) (finding FBI reports of witness interviews were "inadmissible double hearsay").

[16] *See* John Reed Stark, *Time to Replace FBI Interview Memos with Digital Recordings*, Law360 (Apr. 26, 2021, 5:15 PM) ("despite playing such a prominent role in federal investigations and prosecutions, the antiquated 302 is not only created in a deliberately flawed manner, but is also replete with astoundingly obvious evidentiary defects"), https://www.law360.com/articles/1378709/time-to-replace-fbi-interview-memos-with-digital-recordings; *see also* Brian Jacobs, *Why Do Federal Agents Still Take Interview Notes By Hand?* Forbes (Apr. 4, 2016 12:37 PM) ("Of course, if the goal is to have a perfect record of witness interviews, then they should all be recorded and transcribed.") https://www.forbes.com/sites/insider/2016/04/04/why-do-federal-agents-still-take-notes-by-hand/?sh=43c9834b41af.

[17] *See* Press Release, *Attorney General Holder Announces Significant Policy Shift Concerning Electronic Recording of Statements*, Department of Justice Office of Public Affairs (May 22, 2014) ("Creating an electronic record will ensure that we have an objective account of key investigations and interactions with people who are held in federal custody.  It will allow us to document that detained individuals are afforded their constitutionally-protected rights.  And it will also provide federal law enforcement officials with a backstop, so that they have clear and indisputable records of important statements and confessions made by individuals who have been detained.") *https://www.justice.gov/opa/pr/attorney-general-holder-announces-significant-policy-shift-concerning-electronic-recording.*

Finally, the privacy of the persons interviewed as well as those who may be the topics of such interviews – which may include employees and former employees of the corporate MDL Defendants and the individual MDL Defendants themselves – must be considered and protected.[18]  While witnesses may be able to reasonably foresee that government summaries of their interviews would be disclosed to a criminal defendant, they could not foresee that such summaries would be produced to parties in an entirely separate civil litigation.

Ordering production of the Memoranda in the MDL, subject to the MDL Protective Order, would not strengthen confidentiality.  Instead, it would weaken confidentiality by dramatically expanding the universe of counsel and parties who will have access to these highly sensitive and unreliable materials.  As the Second Circuit put it, "the chances of disclosure – and difficulties locating the source of disclosure – *increase exponentially with each pair of hands involved*."  *In re City of New York*, 607 F. 3d 923, 935-39 (2d Cir. 2010) (emphasis added) (deeming insufficient the production of police reports under seal or subject to an attorneys' eyes only designation due to the risk of inadvertent disclosure in a civil rights case).[19]  That could not

---

[18] *See United States v. Longueuil*, 567 F. App'x 13, 16 (2d Cir. 2014) (citing *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995)); *see also In re N.Y. Times Co.*, 828 F. 2d 110, 116 (2d Cir. 1987) ("the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure … should weigh heavily in a court's balancing equation.").

[19] In so concluding, the Second Circuit cited numerous examples in which information subject to protective orders and filed under seal were inadvertently leaked.  *Id.; cf. In re Grand Jury*, 286 F.3d 153, 161 (3d Cir. 2002) (even with "a protective order in place, incriminating statements still create the risk that parties to a civil action will leak sealed information or materials to relevant law enforcement authorities," that "[i]n the event of a leak, . . . a protective order, unlike a grant of immunity, provides no assurance that incriminating statements will not be used against a deponent in a criminal proceeding or that the statements will not be used to obtain other relevant evidence") (citation omitted); *In re Grand Jury Subpoena*, 836 F.2d 1468, 1476 (4th Cir. 1988) ("a protective order cannot serve as more than a stopgap measure to seal discovery materials . . . .it is questionable whether such orders serve the interest of fair resolution of civil disputes"); *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 425 (E.D.N.Y. 2007) (where a protective order had already been violated, "it is highly probable that these individuals will

be more true than in this MDL, which involves more than 35 corporate defendants, 10 individual defendants, dozens of private plaintiffs, and hundreds of outside counsel.  This Court must consider the likelihood of a leak in connection with Plaintiffs' request against the backdrop of the two prior leaks of far less sensitive material than the Memoranda.[20]  *See* Feb. 9, 2021 Mem. Op., ECF No. 1679, at 4.

In short, there is no place in this MDL for the Government Interview Memoranda, and disclosure of those Memoranda would result in serious prejudice to Defendants and the efficient management of this MDL.  The interests of the Court and all Parties are far better served by keeping the Memoranda out of this litigation.  Should the Court grant Plaintiffs' request to modify paragraph 7 of the limited stay order, however, Defendants respectfully request the opportunity to fully brief any motion Plaintiffs file.  Defendants also request that the Court order that the individuals whose interview memoranda are subject to production be notified and afforded an opportunity to object.

---

widely disseminate the documents they know to be protected by a court order" in the absence of an injunction).

[20] In December 2018 and June 2019, *Business Insider* published articles that quoted documents subject to the Court's seal order.  Many of those documents were internal MDL Defendant e-mails procured by the Connecticut State Attorney General through investigatory subpoenas.  The prejudice that could flow from the leak of subjective, one-sided government interview memos – to both Defendants and the individuals whose interviews the Memoranda purport to summarize – is plainly far greater and would be irreversible.
*See* Emma Court, *A huge lawsuit accuses nearly 20 big drug companies, a billionaire, and 2 brothers-in-law of cozying up to hike drug prices. Here's the inside story.,* Business Insider (Dec. 19, 2018, 1:30 PM), https://www.businessinsider.com/antitrust-suit-accuses-drug-companies-working-together-increase-generic-prices-2018-12 ("Business Insider is the first to report on the unredacted complaint, which was filed under seal in the Eastern District of Pennsylvania."); Emma Court, *Inside the secret messages that allegedly show how big drug companies plotted to increase the price of your medicines,* Business Insider (June 7, 2019, 10:31 AM), https://www.businessinsider.com/full-state-antitrust-complaint-generic-drugmakers-collaborated-on-prices-2019-6 ("Business Insider obtained an unredacted copy of the complaint. . . .").

Dated: August 31, 2021

/s/ Catherine S. Montezuma
Catherine S. Montezuma
Veronica N. Onyema
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 5th Street NW
Washington, D.C. 20530
Tel: (202) 377-9624
catherine.montezuma@usdoj.gov

**Counsel for Intervenor United States of America**

/s/ Roberta D. Liebenberg
Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com

**Lead Counsel for the End-Payer Plaintiffs**

/s/ Jonathan W. Cuneo
Jonathan W. Cuneo
CUNEO, GILBERT & LADUCA LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Tel: (202) 789-3960
jonc@cuneolaw.com

**Lead Counsel for the Indirect Reseller Plaintiffs**

/s/ Dianne M. Nast
Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300
dnast@nastlaw.com

**Lead Counsel for the Direct Purchaser Plaintiffs**

/s/ Jan P. Levine
Jan P. Levine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103
Tel: (215) 981-4000
Fax: (215) 981-4750
Jan.Levine@troutman.com

/s/ Sheron Korpus
Sheron Korpus
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com

/s/ Devora W. Allon
Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-5967
Fax: (212) 446-6460
devora.allon@kirkland.com

/s/ Sarah F. Kirkpatrick
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
Tel: (202) 434-5958
skirkpatrick@wc.com

/s/ Chul Pak
Chul Pak
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Fl.
New York, NY 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
cpak@wsgr.com

**Defendants' Liaison Counsel**

*/s/ W. Joseph Nielsen*
W. Joseph Nielsen
Assistant Attorney General
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Joseph.Nielsen@ct.gov

**Liaison Counsel for Plaintiff States**

*/s/ William J. Blechman*
William J. Blechman, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
wblechman@knpa.com

**Counsel for the Kroger Direct Actions
Plaintiffs and Liaison Counsel for DAP**