IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 |
| | 16-MD-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *ALL ACTIONS* | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR PARTIAL OBJECTIONS TO SPECIAL MASTER DAVID H. MARION'S SEVENTH REPORT AND RECOMMENDATION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ......................................................................................................... 1

II. A MARCH 1, 2023 DEADLINE FOR BELLWETHER FACT DISCOVERY IS MORE EFFICIENT, FAIR, AND REALISTIC ............................................................. 1

    A. Plaintiffs' Arguments Against a March 1, 2023 Deadline Are Misleading and Do Not Withstand Scrutiny ............................................. 2

    B. The Court Should Codify the Parties' Agreement about Depositions .................... 4

    C. Defendants Did Not Waive the Right to a March 1, 2023 Bellwether Fact Discovery Deadline ......................................................................... 5

III. CLASS CERTIFICATION AND MERITS PROCEEDINGS SHOULD BE STAGGERED ................................................................................................................ 6

IV. CONCLUSION ............................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re GSE Bonds Antitrust Litig.*,
  No. 1:10-cv-01704-JSR (S.D.N.Y. May 14, 2019) ...............................................................6

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  258 F.R.D. 167 (D.D.C. 2009) ..............................................................................................6

*Klein v. Facebook, Inc.*,
  No. 20-cv-08570-LHK (N.D. Cal. July 1, 2021) ...................................................................6

*Rosales v. FitFlop USA, LLC*,
  No. 11-cv-973-W(KSC),
  2013 U.S. Dist. LEXIS 33472 (S.D. Cal. Mar. 11, 2013) .....................................................6

*Sheridan v. NGK Metals Corp.*,
  609 F.3d 239 (3d Cir. 2010) ..................................................................................................6

*Sitzer v. Nat'l Ass'n of Realtors*,
  No. 4:19-cv-00332 (W.D. Mo. Feb. 5, 2021) .......................................................................6

**RULES**

E.D. Pa. Local R. Civ. P. 72.1.IV(c) ..................................................................................................5

**I.    INTRODUCTION**

Defendants make two modest proposals for the management of the Bellwether cases. First, because significant amounts of documents and data from Plaintiffs and third parties still have not been produced, the fact discovery deadline should be extended by five months (from October 2022 to March 2023). Second, class certification proceedings should proceed before expert work related to merits because each is sufficiently unique to warrant time in between as the parties (and Court) shift focus. Defendants' proposals would continue to move this MDL efficiently – summary judgment briefing would conclude by May 2024 (instead of November 2023 as proposed by Plaintiffs). On the other hand, Plaintiffs' proposal rewards them for their continued discovery delays and will be more likely to require future extensions. The fairness and substantive value of Defendants' proposals, as set forth in their Partial Objections to Special Master David H. Marion's Seventh Report and Recommendation ("R&R")[1], outweigh the relatively small amount of time that will be added to this MDL.

**II.    A MARCH 1, 2023 DEADLINE FOR BELLWETHER FACT DISCOVERY IS MORE EFFICIENT, FAIR, AND REALISTIC**

Defendants propose changing the Bellwether fact discovery deadline by approximately five months (from October 3, 2022 to March 1, 2023) to account for the delays in discovery from Plaintiffs and third parties, as well as the sheer breadth of the States' Dermatology complaint. There is a practical problem here, not of Defendants' making, that Defendants are seeking to solve in a manner fair to everyone while also establishing an end-date for the Bellwether cases that, Defendants respectfully submit, would be consistent with the Court's suggestions.

---

[1] ("Defendants' Partial Objections"), ECF No. 1854.

### A. Plaintiffs' Arguments Against a March 1, 2023 Deadline Are Misleading and Do Not Withstand Scrutiny

Plaintiffs claim that the overlap among Bellwether and Non-Bellwether cases has a "neutral impact" on the time needed to complete discovery in the Bellwether cases. Plaintiffs' Response in Opposition to Defendants' Partial Objections ("Plaintiffs' Response"), ECF No. 1867, at 3-4. But "neutral impact" glosses over the breadth of discovery remaining in the Bellwether cases that overlaps with the Non-Bellwether cases. Frequently, there exists an inherent impossibility in segregating discovery unique to the Bellwether cases from the Non-Bellwether cases, particularly with respect to documents and data from third parties who control the pricing, purchasing, selling and distribution of generic drugs. In multiple written submissions advocating for MDL-wide discovery, Plaintiffs identified the same overlap problem, prompting them to explain that phased discovery limited to a particular grouping of cases would be "illogical and unwarranted."[2] Because significant amounts of overlapping discovery remain unfinished, Defendants propose an extra five months to maximize efficiency and minimize duplication.

Next, Plaintiffs downplay the changed circumstances stemming from the Court's selection of the States' Dermatology complaint as a Bellwether. By Plaintiffs' own count, the States' Dermatology complaint, which was filed in June 2020, added at least 30 new drugs to the MDL. Plaintiffs' Response at 4-6 and n.2. Moreover, the States' Dermatology complaint increased the scope of discovery in this MDL. As described by Plaintiffs, the new Bellwether contains "more allegations against more Defendants on more drugs involving more commerce over a longer time period." States' March 1, 2021 Memorandum Relating to Revised Bellwether Selection, ECF No.

---

[2] *See further* Defendants' August 27, 2021 Memorandum at 7-8, Exhibit 1; *citing* to Plaintiffs' July 29, 2019 Letter Brief to Special Master Marion at 1-2.

1702. While Defendants have substantially completed their document production obligations as to the States' Dermatology complaint, Plaintiffs and third parties have not.[3]

Plaintiffs do not mind leaving Defendants with less time and less discovery, offering platitudes that the sought-after discovery will be produced "well in advance" of the October 2022 deadline, and that the discovery disputes are "minor." Plaintiffs' Response at 7.[4] The numerous times in which Plaintiffs have forced Defendants to seek discovery relief from the Special Master, the Special Discovery Master, or the Court – several of which are not yet resolved – speak for themselves. *See further* Defendants' Partial Objections at 4-5. And the importance of the outstanding discovery was exemplified two weeks ago when the Special Discovery Master required Plaintiffs to produce documents relating to "cooperating witnesses" because of "the significance of the [cooperating witnesses'] testimony to the States' claims."[5] Discovery from the many third parties that control the pricing, purchasing and distribution of generic drugs will be critical to class certification and liability (for Plaintiffs as much as Defendants) and those third

---

[3] *See further* Defendants' Partial Objections.

[4] Plaintiffs often disparage Defendants as to whether the discovery shortcomings present a "substantial case management issue," surmising that if true, Defendants would have said so during the October 2021 Leadership Conference. Plaintiffs' Response at 6-7. But Defendants' Liaison Counsel did, in fact, state that the R&R, which had been issued only a couple hours earlier, could present problems for fact discovery completion. Defendants also raised the problem (and unfairness) of incomplete discovery from Plaintiffs and third parties to the Special Master. *See further* Defendants' August 27, 2021 Memorandum regarding Bellwether Scheduling, Exhibit 1 and Defendants' September 28, 2021 Supplemental Response in Further Support of their Proposed Schedule for the Bellwether Cases, Exhibit 2.

[5] Fourth Report and Recommendation of the Special Discovery Master as to Certain Defendants' Motion to Compel Plaintiff States to Provide Discovery Concerning Cooperating Witnesses, ECF No. 1859, at 11.

parties have not produced their information despite months of conferences between the parties and the third parties.[6]

### B.  The Court Should Codify the Parties' Agreement about Depositions

While agreeing that fact witnesses may only be deposed once absent an agreement of the parties or leave of the Court upon a showing of good cause, Plaintiffs claim such a provision has no place in a case management scheduling order. Plaintiffs' Response at 9. But parties reach agreements on litigation procedures regularly and then have the agreement "so ordered." Plaintiffs' and Defendants' Fact Deposition Protocol for this MDL is a classic example.[7] Defendants respectfully submit that the Court's codification of the one-deposition "standard already governing this MDL" is proper and warranted to avoid any potential future disputes.

Plaintiffs' proposed addition that certain fact witnesses may be subject to depositions exceeding seven hours is superfluous. The Fact Deposition Protocol for this MDL, agreed to among the parties and So Ordered by this Court, already provides that a deposition of Plaintiffs'

---

[6] Plaintiffs incorrectly suggest that Defendants are responsible for the length of negotiations that led to the development of the NDC list (including over 50,000 entries) which was necessary to seek data productions from third parties. Certain third parties subpoenaed by both Plaintiffs and Defendants requested that the parties compile a joint list of NDCs to facilitate their data productions. In their response, Plaintiffs claim that Defendants caused that joint NDC list to "balloon[]" "from 5,000 entries to over 50,000 entries[.]" That assertion is false. The creation of the list was a complicated, months-long task that required all parties to utilize experts. Defendants' original list included less than 7,000 NDCs. By contrast, Plaintiffs' original NDC list was comprised of 64,000 NDCs, including, among other things, tens of thousands of NDCs for products sold by non-Defendant manufacturers and third parties that repackaged and relabeled the drugs after they were sold by Defendants. Plaintiffs' list of 64,000 NDCs grew over the course of negotiations. In the interest of completing negotiations, Defendants did not object to the inclusion of repackager and relabeler NDCs (the majority of NDCs on the final list). However, Defendants did identify thousands of NDCs that Plaintiffs had added to their list in error. As a result of Defendants' corrections, the Plaintiffs removed over 24,000 NDCs from the list. Defendants' request that third parties specify production timelines is simply reasonable and has not resulted in any delay.

[7] Pretrial Order No. 158 (Fact Deposition Protocol), ECF No. 1688.

and Defendants' witnesses "may exceed seven (7) hours only upon agreement by the parties, recommendation by the Special Masters or approval by the Court".[8]  The parties have agreed to multiple day depositions for some current and former employees of Defendants.

### C.  Defendants Did Not Waive the Right to a March 1, 2023 Bellwether Fact Discovery Deadline

Plaintiffs contend that by proposing to the Special Master a March 1, 2023 fact discovery deadline for all MDL discovery, somehow Defendants waived the right to propose the same date before the Court.[9]  Defendants could not have objected to a date that was not yet set by the Special Master given that the briefing before the Special Master, as agreed among the parties, concerned the threshold issue of whether there should be one fact discovery deadline applicable to all cases in the MDL or only to the Bellwethers.  Now that the Special Master has issued his R&R, there is nothing new or prejudicial in Defendants' request to the Court for the same March 2023 discovery deadline for Bellwethers.[10]  Defendants' submissions to the Special Master identified the practical

---

[8] Pretrial Order No. 158 (Fact Deposition Protocol), ECF No. 1688, V.A.1. ("A deposition of such [Defendants'] witnesses may exceed seven (7) hours only upon agreement by the parties, recommendation by the Special Masters or approval by the Court") and V.A.2. ("A deposition of Plaintiffs' witnesses may exceed seven (7) hours only upon agreement by the parties, recommendation by the Special Masters or approval by the Court.").

[9] Plaintiffs' contention that Defendants also waived their right to seek the same discovery deadline for Non-Bellwether cases fares no better.  In their Partial Objections, certain Defendants objected to the R&R to the extent that it does not recommend the same fact discovery for all MDL cases, reserved their rights and objections with respect to that issue, and declared their intent to raise any such objections in the context of any Direct-Action Plaintiffs' bellwether proposal as well as any future negotiations concerning the Non-Bellwether cases. *See* Defendants' Partial Objections at n.11.  Plaintiffs cannot preclude any Defendant from requesting a deadline they deem appropriate for the Non-Bellwether cases.

[10] The two cases Plaintiffs cite to in support of their argument rely on E.D. Pa. Local R. Civ. P. 72.1.IV(c) which only precludes parties from raising arguments for the first time after a Report and Recommendation "if they could have been presented to" the Special Master and, even then, the rule provides for an exception if the interest of justice so requires.

challenges facing the parties to complete discovery, including discovery common to both Bellwether and Non-Bellwether cases.[11]

### III. CLASS CERTIFICATION AND MERITS PROCEEDINGS SHOULD BE STAGGERED

Defendants' proposal to start class certification before the end of fact discovery and to start merits expert proceedings after class certification briefing is completed is a well-established practice in antitrust cases.[12] Plaintiffs argue against this procedure for different reasons, even though DPPs and EPPs themselves favored starting class certification months before the close of fact discovery in their first Bellwether scheduling submission to the Court.[13]

---

[11] Defendants' August 27, 2021 Memorandum regarding Bellwether Scheduling, Exhibit 1 and Defendants' September 28, 2021 Supplemental Response in Further Support of their Proposed Schedule for the Bellwether Cases, Exhibit 2.

[12] *See e.g., Rosales v. FitFlop USA, LLC*, No. 11-cv-973-W(KSC), 2013 U.S. Dist. LEXIS 33472, at *4 (S.D. Cal. Mar. 11, 2013) ("[s]imultaneous class discovery and merits discovery may generate extraordinary and unnecessary expense and burden in that the parties may waste resources on merits discovery that turns out to be unnecessary either because the class is defined more narrowly than expected or plaintiffs decide to discontinue the case after a denial of certification"); *see further* Defendants' Objections to Special Master David H. Marion's Seventh Report and Recommendation, ECF No. 1854, at n.14; *see also* Case Management Order, *Klein v. Facebook, Inc.*, No. 20-cv-08570-LHK (N.D. Cal. July 1, 2021), ECF No. 115 (sequencing class certification briefing before merits expert deadlines); Civil Case Management Plan, *In re GSE Bonds Antitrust Litig.*, No. 1:10-cv-01704-JSR (S.D.N.Y. May 14, 2019), ECF No. 169 (same); *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 258 F.R.D. 167, 172 (D.D.C. 2009) ("nor must discovery on the merits be completed precedent to class certification"); *Sitzer v. Nat'l Ass'n of Realtors,* No. 4:19-cv-00332, ECF No. 432 at 2-3 (W.D. Mo. Feb. 5, 2021) (starting class certification before end of fact discovery); *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 249 (3d Cir. 2010) (same).

[13] *See* ECF No. 1496 (DPPs' 9/1/2020 Bellwether scheduling proposal) and ECF No. 1497 (EPPs' and States' 9/1/2020 Bellwether scheduling proposal). Plaintiffs claim that Defendants previously proposed a schedule that combined class certification and merits proceedings, and, in support, refer to a scheduling proposal Defendants shared with Plaintiffs on August 14, 2020 concerning the now-vacated bellwether selections. Plaintiffs' Response at 11-12. Plaintiffs' claim is misleading as the schedule Plaintiffs refer to was a compromise proposal Defendants shared with Plaintiffs in the context of preliminary negotiations aimed to determine whether parties could agree on a joint schedule and was never submitted to the Court or even shared with the Special Master. Indeed, the scheduling proposal Defendants submitted to the Court two weeks later, on September 1, 2020, after parties determined that they could not reach agreement staggers class certification and merits

Starting class certification before merits proceedings will not double the work or increase any burden. Both phases will require significant work but completing class certification briefing earlier has the benefit of affording the merits experts the opportunity to focus and take into consideration challenges to class certification, including the scope of any class or potential that a class or subclass is not certified.[14]

Beginning class certification briefing before the end of fact discovery does not preclude the parties' ability to develop a full fact record. Only Clobetasol and Clomipramine are subject to class certification, and the parties can prioritize discovery that is needed for class certification and de-prioritize discovery that is not. To the extent that evidence relevant to the Bellwether cases is first discovered after Plaintiffs file their motions for class certification, Plaintiffs will have that evidence available for merits experts and summary judgment.

Whether the five-month gap between the start of class certification proceedings under Defendants' proposal (June 10, 2022) and Plaintiffs' (November 2, 2022) will alter the likelihood

---

proceedings just like Defendants' present scheduling proposal. *See* ECF No. 1498 (Defendants' 9/1/2020 Bellwether scheduling proposal).

[14] Plaintiffs argue that the 39 days left between the close of class certification briefing and the submission of the first merits expert reports under Defendants' proposal is not sufficient to ensure that merits submissions can take into consideration the outcome of the class certification proceedings. Plaintiffs' Response at 13-14. While Defendants would prefer that the outcome of class certification be determined before merits submissions are due, they proposed a schedule aimed at moving the Bellwethers forward as quickly as possible. Further, even if the outcome of the class certification proceedings is not determined before merits submissions are due, Defendants' proposal ensures that merits submissions will not be filed until class certification briefing is fully complete and there is at least a clearer scope from the class expert reports of the putative classes being put forth for certification and merits experts can better tailor their opinions recognizing that a class may not be certified or only certain subclasses may be certified. *See further* Defendants' August 27, 2021 Memorandum re Bellwether Scheduling, Exhibit 1 at 11-14.

that some witnesses key to class certification will be removed from the DOJ's no-deposition list is pure speculation, and in any event can be addressed on an *ad hoc* basis.[15]

## IV. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court sustain their partial objections to Special Master David H. Marion's R&R. Defendants further request that this Court adopt their proposed scheduling order or, in the alternative, supplement the R&R by including in any order the provision that fact witnesses may only be deposed once in this MDL, absent either (i) an agreement of the parties or (ii) leave of the Court upon a showing of good cause.

---

[15] Although the R&R nowhere mentions how many times an expert can be deposed, Plaintiffs claim the R&R adopted their schedule, including their provision that a rebuttal expert who previously served an expert report would not be deposed for a second time. Plaintiffs' Response at n.9. Defendants do not agree that the Special Master adopted Plaintiffs' proposed schedule *in toto*. Defendants reserve their rights with respect to this issue as well as any other that the R&R does not specifically address as part of its findings.

*/s/ Jan P. Levine*
Jan P. Levine
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, Pennsylvania 19103
Tel.: (215) 981-4714
Fax: (215) 359-1606
jan.levine@troutman.com

*/s/ Devora W. Allon*
Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900
devora.allon@kirkland.com

*/s/ Sheron Korpus*
Sheron Korpus
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com

*/s/ Sarah F. Kirkpatrick*
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
skirkpatrick@wc.com

*/s/ Chul Pak*
Chul Pak
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Tel.: (212) 999-5800
Fax: (212) 999-5899
cpak@wsgr.com

***Defense Liaison Counsel***