**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**ORDER**

The State of California and other Plaintiff States have objected to Special Master David Marion's Supplemental Fifth Report and Recommendation ("R&R"). For the reasons set forth below, the Supplemental Fifth R&R will be approved in part; however, the Court sustains the objections to the recommendation that evidence be precluded.

### I.   Background

Special Master Marion issued the Fifth R&R to address Defendants' discovery demands to California.[1] No party objected to the Fifth R&R. The Court then entered an order approving the Fifth R&R and ordering that:

1. On or before March 5, 2021, [California] will confirm that it has made a good faith disclosure of all documents and information reasonably requested by [D]efendants, or will have done so by March 12, 2021.
2. On or before March 15, 2021, Defendants will notify [California] of any claimed deficiencies in its disclosures and provide a period of 10 days for [California] to cure such deficiencies.
3. On or before March 20, 2021, Defendants may submit an application for (a) sanctions in the forum of preclusion of use of any non-produced documents, supported by a showing of how Defendants have been prejudiced thereby, and that such documents are not already available to Defendants from other sources; and (b) an award of attorney's fees, again upon a showing of good cause therefore, and a documentation of the amounts thereof. Any such

---

[1] Fifth R. & R. [MDL Doc. No. 1677].

application is referred to Special Master Marion for a report and recommendation.[2]

Defendants subsequently filed an application for sanctions, contending that California had not complied with its responsibilities as ordered.[3] The Special Master then issued the Supplemental Fifth R&R, which concluded that sanctions are warranted because California has not produced a single document and has displayed a cavalier and irresponsible attitude toward its discovery obligations.[4] The exhibits to the Supplemental Fifth R&R set forth a lengthy history of the discovery disputes through correspondence among the parties and the Special Master. These exhibits show that after California stated that it had no documents or data to produce, Defendants responded 1) that California had not produced data from IQVIA and Analysource[5] that California likely will rely on to support its claims, 2) that California asserted the reservation of purported rights to serve additional subpoenas and document requests at some future date, and 3) that California sought to delay production of factual information until expert discovery. California responded that the IQVIA and Analysource data are commercially available to Defendants (even though California has this data in its possession and has not identified specific sets of data on which it intends to rely), and that California will produce this data as part of expert discovery.[6]

After the Order approving the Fifth R&R was entered, Defendants identified four discrete deficiencies with California's discovery position: 1) California's failure to produce any

---

[2] Order of Feb. 26, 2021, 1–2 [MDL Doc. No. 1698] (emphasis omitted).

[3] Suppl. Fifth R. & R. 3 [MDL Doc. No. 1720].

[4] Suppl. Fifth R. & R. 2, Ex. A at 2–3 [MDL Doc. No. 1720-1].

[5] The IQVIA and Analysource datasets are generated by two private companies, one of which summarizes how much of the drugs were sold in a given month and the average price (IQVIA) and one of which aggregates data as to what drugs are marketed in the United States (Analysource).

[6] Suppl. Fifth R. & R. Ex. B [MDL Doc. No. 1720-1].

documents; 2) California's failure to produce IQVIA and Analysource data that it will likely rely on to support its claims;[7] 3) California's reservation of a purported right to serve additional subpoenas and document requests at some future date,[8] and 4) California's reservation of a purported right to delay production of factual information until expert discovery.[9] California responded that it had never agreed to a November 16 production deadline, that the IQVIA and Analysource data are commercially available to Defendants, and that California will produce this data as part of expert discovery pursuant to Pretrial Order No. ("PTO") 122.[10]

The Special Master determined that: 1) California had not produced any documents; 2) the California Attorney General did not consider the MDL to be a "high priority" and "did not pay sufficient attention to [California's] obligations as an anti-trust action plaintiff;" 3) California "had consistently delayed progress in its dealings with [D]efendants;" 4) California had agreed to a production deadline but produced no documents and "tried in a number of ways to redefine and explain away any obligation to produce any discovery at all;" 5) in response to the Special's Master's setting out "in the clearest and simplest terms" what he believed was required of California, California sent "a laundry list of 'clarifications'" that were simply "attempts to redefine or evade the clearest dictates of [the Special Master's] recommendations and the Court's eventual Order adopting" the Fifth R&R; 6) California persistently has insisted "that it can delay discovery until expert witness discovery" and that PTO 122 permits this tactic;

---

[7] Suppl. Fifth R. & R. Ex. A at 2–3 [MDL Doc. No. 1720-1].

[8] Suppl. Fifth R. & R. Ex. A at 3 [MDL Doc. No. 1720-1].

[9] Suppl. Fifth R. & R. Ex. A at 3–4 [MDL Doc. No. 1720-1].

[10] California's Obj. 4 [MDL Doc. No. 1735]. PTO 122 is a stipulated order regarding the non-disclosure of certain information regarding expert witnesses. The Special Master specifically determined in the Fifth R&R that PTO 122 had no bearing on the California dispute. Fifth R&R [MDL Doc. No. 1677]. Again, California did not object to the Fifth R&R.

and 7) California has offered to produce documents and then ignored those apparent agreements.[11]

Therefore, the Supplemental Fifth R&R recommended 1) that California "should be barred from using any documents at trial that were not produced by November 16, 2020 or by March 15, 2021 (the end of the 'cure' period);" 2) that, unless California can show good cause, it "should be precluded from relying on currently-existing factual information it may attempt to use hereafter;"[12] 3) that California's repeated disregard of discovery obligations and agreements and repeated efforts to delay warrant sanctions; and 4) that either the Special Master or the Court should schedule a hearing to determine sanctions.[13]

## II.    The Parties' Arguments

California argues that the Supplemental Fifth R&R should be rejected because California appropriately attempted to clarify the Fifth R&R, responded to Defendants' informal discovery requests, and was not dilatory..[14] California contends that it seeks disgorgement and civil penalties, not monetary damages for losses, and that disgorgement will be calculated by "taking the amount of profits Defendants made in the real world during the relevant time period and subtracting the estimated amount of profits they would have made in a competitive market."[15] Thus, California maintains that Defendants have all the relevant information, and that it does not have responsive documents. California argues that with respect to its claims for civil penalties

---

[11] Supp. Fifth R. & R. 2–4 [MDL Doc. No. 1720].

[12] According to the Supplemental R&R, California agreed to this provision. Suppl. Fifth R&R 5 [MDL Doc. No. 1720] (citing Exs. 7 & 8 to Ex. C).

[13] Suppl. Fifth R. & R. 4–5 [MDL Doc. No. 1720].

[14] California's Obj. 3–5, 6–9 [MDL Doc. No. 1735].

[15] California's Obj. 7 [MDL Doc. No. 1735].

under California's Unfair Competition Law[16] and False Advertising Law,[17] it will rely on state Medicaid data that already has been produced and non-party pharmacy sales data purchased from Analysource and IQVIA, to which Defendants have access.[18] California argues that it consented to the approval of the Fifth R&R after it sought clarification from the Special Master that it was not required to produce the Analysource and IQVIA data as that data was commercially available, and that Special Master Marion stated that paragraph three of the proposed order included such language.[19]

California also argues that preclusion of evidence is far too harsh a sanction in the absence of sufficient prejudice this far in advance of trial, and that Defendants' request for attorney fees does not comply with the Court's order approving the Fifth R&R or Third Circuit law.[20]

The other State Plaintiffs join California's objection to preclusion as a sanction, arguing that "preclusion of the use of the IQVIA and Analysource commercially-available datasets by California may well impact their use in expert reports written on behalf of all states. The court cannot ignore that requiring California to produce these commercially-available datasets is tantamount to requiring all states to do the same since these datasets are shared by all States."[21] The other State Plaintiffs also argue that discovery is ongoing, that Defendants cannot show prejudice to warrant preclusion because Defendants have access to the IQVIA and Analysource

---

[16] Cal. Bus. & Prof. Code § 17200, *et seq.*

[17] Cal. Bus. & Prof. Code § 17500, *et seq.*

[18] California's Obj. 7 [MDL Doc. No. 1735].

[19] California's Obj. 9 [MDL Doc. No. 1735].

[20] California's Obj. 9–13 [MDL Doc. No. 1735].

[21] Pl. States' Obj. 1 [MDL Doc. No. 1756].

datasets, and that production of the States' compilation and selection of specific datasets would reveal attorney work product.[22]

Defendants argue that California has refused to produce documents or abide by its own agreements and that there is no basis for requiring Defendants to purchase IQVIA and Analysource data that California admittedly possesses, particularly as California will rely on certain data sets that it has not identified. Defendants also argue that PTO 122 has no bearing on California's discovery obligations.[23]

## III.    Discussion

It is important to reiterate that no objections were filed to the Fifth R&R, which was thereafter approved and adopted by the Court. Therefore, California committed to the good faith disclosure of documents and information reasonably requested by Defendants and the possibility of sanctions for failing to do so. This includes the rejection of California's argument that it was not required to produce data from IQVIA and Analysource unless its expert relied on the data pursuant to PTO 122. The Court also considers the nature of the claims asserted in the State Plaintiffs' bellwether Complaint, the Amended Dermatology Complaint, although that case had not been selected as the bellwether when this dispute first arose.[24] In addition to the antitrust claims brought by all Plaintiff States under the Sherman Act, California alleges that Defendants violated California state law. California alleges that "Plaintiff State of California and its state agencies (collectively, 'California') were injured in their business and property in that they paid more for generic pharmaceuticals than they would have paid in the absence of Defendants'

---

[22] Pl. States' Obj. 2–8 [MDL Doc. No. 1756]. The IQVIA and Analysource datasets are generated by two private companies, one of which summarizes how much of the drugs were sold in a given month and the average price (IQVIA) and one of which aggregates data as to what drugs are marketed in the United States (Analysource).

[23] Resp. Opp'n California's Obj. [MDL Doc. No. 1745].

[24] *See* Am. Compl. [Doc. No. 62], *Connecticut v. Sandoz Inc.*, No. 20-3539 (E.D. Pa. filed Sept. 9, 2021).

unlawful conduct,"[25] in addition to the claims brought on behalf of the people of California. Without ruling in any way on the sufficiency of the allegations, the Court agrees that the discovery sought by Defendants is relevant to the asserted claims and the related defenses.[26] Sanctions are warranted by California's failure to comply with its discovery obligations.

The exclusion of evidence is a most serious sanction. The Court of Appeals for the Third Circuit has held that:

> In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, [the Court] must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.[27]

The Court fully appreciates the Special Master's frustration with California's lax approach to discovery. However, upon consideration of the relevant factors, the Court cannot approve the recommendation of the exclusion of evidence. Importantly, there is still time for California to meet its obligations; at this point, Defendants have not shown incurable prejudice. Provided that California promptly produces the requested documents, the Court will sustain the objection to the preclusion sanction at this time.

The Special Master also recommended a sanction in the form of attorney's fees, but left the specific amount of sanctions to a future determination.[28] California argues that Defendants

---

[25] Am. Compl. at ¶ 2116 [Doc. No. 62], *Connecticut v. Sandoz Inc.*, No. 20-3539 (E.D. Pa. filed Sept. 9, 2021).

[26] Given the allegations of the Amended Complaint and the current procedural posture, the Court is not persuaded by the citation to the order issued by the Southern District of New York in *FTC v. Vyera Pharmaceuticals, LLC*. Order of June 30, 2020 [Doc. No. 172], *FTC v. Vyera Pharmaceuticals, LLC*, No. 20-706 (S.D.N.Y. entered June 30, 2020).

[27] *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). The Court of Appeals has at times articulated a fifth factor, "the importance of the excluded evidence." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012) (internal citations omitted).

[28] Suppl. Fifth R. & R. 5 [MDL Doc. No. 1720].

requested $55,463 in fees but failed to supply the documentation supporting the request required by the Court's Order approving the Fifth R&R, such that the Court cannot determine that the fees are reasonable.[29]

Under Federal Rule of Civil Procedure 37(a)(5)(A), attorney's fees are an appropriate discovery sanction. Defendants stated that attorney Brian Gilmore of Williams & Connolly, counsel for Par Pharmaceutical, Inc., billed 72.5 hours and seeks an award of $55,463, representing a 10% discount of Mr. Gilmore's usual billing rate of $850 per hour and including no fees by any other attorneys or paralegals.[30] Given the protracted nature of this dispute, the claimed fees do not seem unreasonable, but the Court agrees that documentation must be provided if the parties are unable to agree upon a reasonable fee award. The Court will grant the parties 14 days to confer; if they are unable to agree, then Defendants may submit to the Court detailed documentation supporting an award of fees.

**IV.    Order**

**AND NOW**, this 17th day of November 2021, upon *de novo* review of the Supplemental Fifth Report and Recommendation of the Special Master [MDL Doc. No. 1720], the objections, the briefing, and after oral argument, it is hereby **ORDERED** that:

1.  The objections are **SUSTAINED in part** and **OVERRULED in part** as set forth above.

2.  The Supplemental Fifth R&R is **APPROVED and ADOPTED in part** as set forth above.

---

[29] California's Obj. 13–15 [MDL Doc. No. 1735]. *See, e.g.*, *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983) (assessing an award of counsel fees to determine "whether the documentation permits the court to determine if the claimed fees are reasonable.").

[30] Suppl. Fifth R. & R. Ex. C at 6 n.3 [MDL Doc. No. 1720].

3.  Counsel for California and counsel for Par Pharmaceutical, Inc. shall confer with regard to a reasonable award of attorney's fees to be imposed as a sanction upon California. If they are unable to agree, then Defendants may submit to the Court detailed documentation supporting an award of fees within 14 days, to which California shall file any objections within seven days thereafter.

It is so **ORDERED**.

**BY THE COURT:**

**/s/ Cynthia M. Rufe**
_____
**CYNTHIA M. RUFE, J.**

9