## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| | **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** | |
| ***ALL ACTIONS*** | |

## ORDER

Special Master David H. Marion has issued an Amended Fourth Report and Recommendation ("R&R"). The R&R addresses a motion by Defendants to compel Pennsylvania to 1) produce discovery from its state agencies whose alleged purchases of, or reimbursements for, generic drugs form the basis of Pennsylvania's claims, and 2) to identify likely sources of documents and data that support Pennsylvania's claims for disgorgement and civil penalties based on alleged overpayments by Pennsylvania agencies and citizens.

### I.     The Amended Fourth R&R

The R&R first concluded that the material sought, including prices and reimbursement of amounts paid by state agencies, product utilization information, and discounts offered or obtained by Pennsylvania, is relevant to Pennsylvania's claims because the Commonwealth must prove that the purchases were made and what price was paid.[1] The R&R then determined that the Office of Attorney General ("OAG") has the authority under Pennsylvania law to assert antitrust claims on behalf of the Commonwealth and to require state agencies to produce documents to

---

[1] Am. Fourth R. & R. 3 [MDL Doc. No. 1471].

support the claims.[2] The R&R therefore concluded that the OAG is in control of the records and

recommended that the Court order that:

1. Pennsylvania inform Defendants of its theories of recovery and the nature of any remedies it will seek at trial;

2. Pennsylvania identify the nature and source of all known documents and data it will rely upon to prove damages and other remedies;

3. Pennsylvania produce all discoverable documents and data within its possession, custody, or control;

4. Pennsylvania may appeal to the Special Master for leave to amend its theories of recovery and each of the above for good cause shown as long as it is done well before the end of fact discovery; and

5. Defendants may oppose such changes or amendments if prejudicial to their ability to defend the cases.

## II.   The Parties' Arguments

Pennsylvania has filed objections, arguing that in this litigation the OAG represents only

the Commonwealth, not Commonwealth agencies.[3] Pennsylvania argues that the OAG has no

control over the agency documents at issue and that discovery in the MDL is based upon the

Federal Rules of Civil Procedure, not Pennsylvania law that grants the OAG investigatory

authority over state agencies.[4] Pennsylvania also argues that the R&R incorrectly determined

that the OAG had control over the state agency documents sought by Defendants because the

OAG only has such power when it is either investigating potentially unlawful behavior by

Commonwealth agencies or litigating claims on behalf of Commonwealth agencies. Neither is

being done here. Pennsylvania argues that the Amended Fourth R&R effectively seeks to usurp

the OAG's investigative authority, and would have the result of making each Commonwealth

---

[2] *See* 71 P.S. §§ 732-204(c), 208; Am. Fourth R. & R. 3–4 [MDL Doc. No. 1471].

[3] Pennsylvania's Objs. Am. Fourth R. & R. 5–6 [MDL Doc. No. 1482].

[4] Pennsylvania's Objs. Am. Fourth R. & R. 6–15 [MDL Doc. No. 1482].

agency a party subject to Rule 26 discovery in every litigation brought by or against the OAG.[5] If Defendants want the documents, Pennsylvania argues, they must serve them on the agencies as part of third-party discovery, and Pennsylvania represents that the OAG has offered to facilitate that discovery process.[6]

Pennsylvania also argues that the documents are irrelevant because it seeks disgorgement based on Defendants' unjust gains from alleged illegal conduct, which will be calculated by comparing the prices at which Defendants sold the drugs with the price at which they would have been sold in the absence of the alleged anticompetitive conduct, and that specific data on sales to Pennsylvania agencies is not part of the calculation.[7] Pennsylvania contends that disgorgement and civil penalties will be calculated through the use of non-party pharmacy sales data to determine how many sales were made, including wholesalers, pharmacy benefit managers, retail pharmacies, and insurers.[8] Finally, Pennsylvania argues that the discovery sought is overburdensome and that Defendants "have not met their initial burden of demonstrating the relevance of *each* request for production to the claims brought by the Commonwealth or their defenses."[9]

---

[5] Pennsylvania's Objs. Am. Fourth R. & R. 12–13 [MDL Doc. No. 1482]; Pennsylvania's Reply 9–10 [MDL Doc. No. 1506].

[6] Hr'g Tr. June 10, 2021, 16 [Doc. No. 1789]; *see also* Pennsylvania's Objs. Am. Fourth R. & R. Ex. D [MDL Doc. No. 1482] (attaching emails between Defendants and Pennsylvania discussing the facilitation of agency discovery).

[7] Hr'g Tr. June 10, 2021, 20 [MDL Doc. No. 1789]; Pennsylvania's Objs. Am. Fourth R. & R. 4–8 [MDL Doc. No. 1482].

[8] Hr'g Tr. June 20, 2021, 23 [MDL Doc. No. 1789]; Pennsylvania's Objs. Am. Fourth R. & R. 4–8 [MDL Doc. No. 1482]. This data will come from IQVIA and Analysource, two private companies that generate summaries of how many of the drugs were sold in a given month and the average price (IQVIA) and aggregate data as to what drugs are marketed in the United States (Analysource).

[9] Pennsylvania's Reply 3 [MDL Doc. No. 1506].

Defendants urge the Court to approve the Amended Fourth R&R, arguing that Pennsylvania agencies have relevant materials and that those materials are available to the OAG. Defendants argue that Pennsylvania seeks civil penalties under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PUTPCPL")[10] and alleges that a violation of the PUTPCPL occurred every time a prescription for one of the drugs at issue was sold to a Pennsylvania consumer. Therefore, according to Defendants, the discovery sought is relevant because Pennsylvania alleges that it paid more than it should have for the drugs at issue.[11] Defendants also argue that Pennsylvania law grants the OAG express authority to access agency documents "at all times" if access is "necessary" to the performance of those duties.[12]

## III.    Discussion

The Court must determine whether the Special Master correctly found both that the state-agency documents are relevant to the claims at issue in the MDL and that the OAG has the legal authority to obtain those documents in a case where the agencies themselves are neither parties nor the target of an investigation.

To evaluate the relevancy claim, the Court looks to the bellwether Plaintiff States' Amended Dermatology Complaint.[13] In that case, in addition to the antitrust claims brought by all Plaintiff States under the Sherman Act, Pennsylvania alleges that Defendants violated the PUTPCPL and that the "Commonwealth of Pennsylvania and Pennsylvania consumers paid supra-competitive, artificially inflated prices for the numerous generic pharmaceutical drugs" at

---

[10] 73 P.S. § 201-1, *et seq.*

[11] Hr'g Tr. June 20, 2021, 24–27 [MDL Doc. No. 1789].

[12] Hr'g Tr. June 20, 2021, 28–29 [MDL Doc. No. 1789].

[13] The parties' briefing refers to a former bellwether case, but the Court has looked to the revised bellwether, the Plaintiff States' Amended Dermatology Complaint, which was also discussed at oral argument. Hr'g Tr. June 10, 2021, 24 [MDL Doc. No. 1789].

issue.[14] Pennsylvania alleges in part that Defendants violated the PUTPCPL "[e]ach time a request for reimbursement was made to the Commonwealth of Pennsylvania for any of the numerous generic pharmaceutical drugs identified [in that case]," and "[e]ach time the Commonwealth of Pennsylvania or a Pennsylvania consumer paid an unfairly or unconscionably inflated price" for the relevant drugs.[15] Indeed, Pennsylvania alleges that Defendants deceptively misrepresented or omitted material facts concerning the absence of competition "in each generic drug market" identified in the Amended Complaint and thereby "misled the Commonwealth of Pennsylvania and Pennsylvania consumers into believing that prices for the numerous generic pharmaceutical drugs identified [in that case] were competitive and fair."[16] Pennsylvania therefore specifically alleges that the Commonwealth paid inflated prices based on misrepresentations made by Defendants and was harmed by doing so. Defendants are entitled to explore the factual underpinnings of those allegations through discovery related to what drugs the Commonwealth purchased at what prices, including contracts and price negotiations.[17]

In support of its irrelevance argument, Pennsylvania cites an order by Judge Cote of the Southern District of New York in *FTC v. Vyera Pharmaceuticals, LLC*, a case that also concerns the pricing of generic drugs.[18] The order, which does not include legal analysis, stated that:

> the plaintiffs need not comply with the defendants' requests for data concerning states' and state agencies' purchases of, and reimbursements for, Daraprim or its generic equivalent. This information is irrelevant because plaintiffs intend to calculate equitable monetary relief by "taking the amount of profits Defendants

---

[14] Am. Compl. at ¶ 2046 [Doc. No. 62], *Connecticut v. Sandoz Inc.*, No. 20-3539 (E.D. Pa. Sept. 9, 2021).

[15] *Id.* at ¶¶ 2048(d), (e).

[16] *Id*. at ¶ 2040.

[17] Hr'g Tr. June 20, 2021, 25 [MDL Doc. No. 1789].

[18] Order of June 30, 2020 [Doc. No. 172], *FTC v. Vyera Pharmaceuticals, LLC*, No. 20-706 (S.D.N.Y. June 30, 2020).

made in the real work [*sic*] and subtracting the estimated amount of profits they would have made if they had faced generic competition at an earlier date."[19]

Defendants argue that the decision in *Vyera* arose in a different context.[20] Here, as quoted above, Pennsylvania alleges that it paid inflated prices for the drugs at issue because Defendants misrepresented *to the Commonwealth* that the prices were fair (even though Defendants apparently do not sell directly to the Commonwealth). Having brought claims that specifically rely on representations made to the Commonwealth, which necessarily must be understood to apply to the agencies that actually paid for the generic drugs, the Court concludes that Pennsylvania has made the records relevant subject to some further amendment of the operative pleading.

Although Pennsylvania argues that it will not seek to rely on the records of purchases by Commonwealth agencies, the question is whether the documents are relevant to any of the claims and defenses in the cases. Pennsylvania argues that it brings claims on behalf of the general economy of the Commonwealth, but it specifically alleges that purchases were made by the Commonwealth in reliance on misrepresentations made by Defendants. Without ruling in any way on the sufficiency of the allegations, the Court agrees with the Amended Fourth R&R that the discovery sought by Defendants is relevant to the asserted claims and related defenses.

As the discovery is relevant, the Court must determine whether the documents may be obtained by the OAG, which is representing Pennsylvania in the MDL, or whether the documents must be obtained by the issuance of nonparty subpoenas upon the agencies. It is correct that the Commonwealth is a distinct entity from Commonwealth agencies; for example,

---

[19] Order of June 30, 2020, 2 [Doc. No. 172], No. 20-706 (S.D.N.Y. June 30, 2020).

[20] Defendants also note that the Pennsylvania disgorgement claim was dismissed in *Vyera*. Def.'s Resp. Opp'n Pennsylvania's Objs. 8 [Doc. 1492].

the former enjoys sovereign immunity from suit while the latter do not.[21] At the same time, "the Office of the Attorney General is charged with representing Commonwealth agencies" as well as the Commonwealth.[22]

A party may be required to turn over documents owned by a non-party if the producing party has either actual possession of the documents or control over documents not in its physical possession.[23] Control includes "the legal right to obtain the documents requested on demand."[24] Pennsylvania statutes address the relationship between the Office of the Attorney General and Commonwealth agencies with regard to the right to obtain documents. The key Pennsylvania statute, Section 208 of the Commonwealth Attorneys Act, provides in full that "[t]he Office of Attorney General shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties under this act."[25] The Pennsylvania Supreme Court has held that Section 208:

> lists only one condition on the mandate of production: the material sought must be "necessary" for execution of the OAG's duties. We recognize that the OAG has a broad array of duties involving Commonwealth agencies beyond criminal investigations, and that the [statute] is of correspondingly broad scope. Nevertheless the authorization remains qualified only by what is "necessary."[26]

Although the Pennsylvania Supreme Court was ruling in the context of a grand jury investigation of a Commonwealth agency, the Court expressly affirmed that the statute is a broad

---

[21] *Tork-Hiis v. Commonwealth*, 735 A.2d 1256, 1258 (Pa. 1999).

[22] *Piehl v. City of Phila.*, 987 A.2d 146, 149 (Pa. 2009).

[23] *Devon Robtocis v. DeViedma*, No. 09-3552, 2010 WL 3985877, at *2 (E.D. Pa. Oct. 8, 2010).

[24] *Id.* (quoting *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988)).

[25] 71 P.S. § 732-208. Another statute provides that "[t]he Attorney General shall represent the Commonwealth and all Commonwealth agencies . . . in any action brought by or against the Commonwealth or its agencies. . . [and] shall represent the Commonwealth and its citizens in any action brought for violation of the antitrust laws of the United States and the Commonwealth." *Id.* § 732-204(c).

[26] *In re Thirty-Third Statewide Investigation Grand Jury*, 86 A.3d 204, 216 (Pa. 2014).

one that extends beyond criminal investigations, qualified only by what is "necessary."[27] Because Pennsylvania has put into this suit the relevance of documents from the agencies that paid for generic drugs, it is necessary to its duties in complying with the Federal Rules of Civil Procedure in the litigation of the MDL, and the OAG therefore has access to the documents under Pennsylvania law.[28]

## IV.   Order

**AND NOW**, this 17th day of November 2021, upon *de novo* review of the Amended Fourth Report and Recommendation of the Special Master [MDL Doc. No. 1477], the objections thereto, the briefing, and after oral argument, it is hereby **ORDERED** that the objections to the Amended Fourth R&R are **OVERRULED** and the R&R is **APPROVED and ADOPTED** as follows:

1.   Within 60 days, Pennsylvania shall inform Defendants of its theories of recovery and the nature of any remedies it will seek at trial;

2.   Within 60 days, Pennsylvania shall identify the nature and source of all known documents and data it will rely upon to prove damages and other remedies;

3.   Within 60 days, Pennsylvania shall produce all discoverable documents and data within its possession, custody, or control;

---

[27] Pennsylvania cites the Commonwealth Court's unreported decision in *Office of Attorney General v. Patel* for the proposition that the Attorney General "lacks the authority to issue an investigative subpoena under the Administrative Code for purposes of enforcing the [PUTPCPL]." No. 116 M.D. 2019, 2019 WL 5561412 at * 5 (Pa. Commw. Ct. Oct. 29, 2019). That case, however, concerned Section 919(b) of the Administrative Code, and did not concern documents in the possession of Commonwealth agencies.

[28] In ruling on an earlier discovery dispute, the Court held that certain State Plaintiffs could not circumvent the Court's orders limiting discovery by issuing subpoenas through their investigatory authority, which deprived he Defendants of notice or an opportunity to object or to receive the information obtained through the subpoenas under the Federal Rules of Civil Procedure. Order of Nov. 11, 2018 (MDL Doc. No. 758). Those subpoenas were not being served upon state agencies, and as in this dispute, the Court's ruling was to govern discovery pursuant to the Federal Rules of Civil Procedure.

4.  At any time, Pennsylvania may appeal to the Special Master for leave to amend its theories of recovery and each of the above for good cause shown as long as it is done sufficiently before the end of fact discovery; and

5.  Defendants may oppose such changes or amendments if prejudicial to their ability to defend the cases.

It is so **ORDERED**.

> **BY THE COURT:**
>
> **/s/ Cynthia M. Rufe**
> _____
> **CYNTHIA M. RUFE, J.**