**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 Case No. 2:16-MD-02724 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | Hon. Cynthia M. Rufe |

**INTERVENOR UNITED STATES OF AMERICA'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR A LIMITED STAY OF DISCOVERY**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ iii

**BACKGROUND** ............................................................................................................... 3

   I.   The United States' Criminal Investigation and Pending Prosecutions ............................... 3

   II.   The Limited Stays of Discovery in This MDL ................................................................. 4

**LEGAL STANDARD** ........................................................................................................ 5

**ARGUMENT** ..................................................................................................................... 6

   I.   The Significant Overlap Between the Civil and Criminal Proceedings Supports Continuing the Stay .................................................................................................................. 7

   II.   The Advanced Stage of the Criminal Proceedings Supports Continuing the Stay .......... 8

   III.   Compelling Public Interests Support Continuing the Stay ............................................... 8

   IV.   A Continuation of the Limited Stay Would Not Prejudice Plaintiffs ........................... 12

   V.   The Other Applicable Factors Also Support Continuing to Stay ................................... 14

**CONCLUSION** ................................................................................................................ 15

## TABLE OF AUTHORITIES

### Cases

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962) .................................................................. 9, 11

*Doe v. Schneider*, No. 08-3805, 2010 WL 11561113 (E.D. Pa. June 8, 2010) ............................ 8

*Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*,

    87 F.R.D. 53 (E.D. Pa. 1980) ........................................................................................ 6, 15

*Heraeus Materials Tech. LLC v. Tung Pham*, No. 11-2965,

    2011 WL 13227695 (E.D. Pa. June 29, 2011) ................................................................... 7

*Hovey v. McDonald*, 109 U.S. 150 (1883) .................................................................................. 11

*In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781,

    2003 WL 22358819 (E.D. Pa. May 13, 2003) ........................................................... passim

*In re Deriv. Litig.*, 2007 WL 1101276 (E.D. Pa. Apr. 11, 2007) ........................................... 12, 14

*In re Grand Jury Matter*, 682 F.2d 61 (3d Cir. 1982) ................................................................. 10

*Kaiser v. Stewart*, No. 96-6643, 1997 WL 66186 (E.D. Pa. Feb. 6, 1997) ........................... passim

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .................................................................................. 5

*Med. Inv. Co., Ltd. v. Int'l Portfolio, Inc.*, No. 12-3569,

    2014 WL 2452193 (E.D. Pa. May 30, 2014) ............................................................. passim

*SEC v. Mersky*, No. 93-5200, 1994 WL 22305 (E.D. Pa. Jan. 25, 1994) ................................ 9, 15

*State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-5530,

    2002 WL 31111766 (E.D. Pa. Sept. 18, 2002) ................................................................ 12

*Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967) .................................................................. 5, 6

*United States v. Borden Co.*, 347 U.S. 514 (1954) ...................................................................... 11

*United States v. Mellon Bank, N.A.*, 545 F.2d 869 (3d Cir. 1976) .......................................... 5, 15

**Statutes**

15 U.S.C. § 1 ................................................................................................................... 3

**Other Authorities**

Defs.' Proposed Scheduling Order, *United States v. Glenmark Pharms. Inc., USA*,

No. 20-cr-200, ECF No. 51-1 (Oct. 19, 2020) .................................................... 4

Memorandum Opinion, ECF No. 1679.................................................................. 14

Pretrial Order No. 108, ECF No. 1152 .................................................................. 4

Pretrial Order No. 117, ECF No. 1325 .................................................................. 4

Pretrial Order No. 158, ECF No. 1688 .................................................................. 13

Pretrial Order No. 171, ECF No. 1769 ................................................. 6, 7, 12, 14

Pretrial Order No. 174, ECF No. 1787 .................................................................. 4

Pretrial Order No. 181, ECF No. 1820 .......................................................... passim

Pretrial Order No. 188, ECF No. 1901 .................................................................. 13

Pretrial Order No. 23, ECF No. 347 ...................................................................... 4

Pretrial Order No. 44, ECF No. 560 ...................................................................... 4

Pretrial Order No. 96, ECF No. 1046 .................................................................... 4

U.S. Mot. for Scheduling Order, *United States v. Glenmark Pharms. Inc., USA*,

No. 20-cr-200, ECF No. 91 (June 3, 2021)...................................................... 4

**Rules**

Fed. R. Crim. P. 6(e) ............................................................................................. 9

Intervenor United States of America respectfully requests that the Court continue Pretrial Order ("PTO") No. 181, ECF No. 1820 which imposes a limited stay of certain discovery, until the conclusion of the United States' related criminal prosecutions.  *See* Proposed Order (attached); *see also* ECF No. 1876 (PTO 187) (extending PTO 181 pending resolution of this motion).  Specifically, the United States requests that the Court continue three critical provisions of the limited stay that are now in dispute: (1) staying depositions of potential trial witnesses in the United States' pending criminal prosecutions; (2) prohibiting discovery of the inner workings of the United States' criminal investigation; and (3) staying disputed discovery pending resolution of the dispute.  *See* PTO 181 ¶¶ 4, 6-8; Proposed Order ¶¶ 5, 7-9.[1]  Each of these provisions is narrowly tailored to protect the integrity of the United States' heavily overlapping criminal prosecutions and Defendants' individual interests, while avoiding any prejudice to Plaintiffs.  Therefore, the balance of interests clearly favors continuing the current limited stay, and it should remain in effect.

*First*, the Court should continue to stay depositions of individuals whose testimony the United States may seek to introduce in the pending criminal cases.  *See* PTO 181 ¶ 4.  The United States has identified these individuals in a list provided to the Court and liaison counsel, most recently on November 8, 2021.  The current list includes 47 individuals (reduced from 84) who are either potential trial witnesses in the criminal cases or are a subset of the individuals whose statements the United States may seek to introduce at trial as co-conspirator statements. Allowing Plaintiffs to depose these individuals now—as the United States prepares for trials that could be scheduled at any time—would irreparably harm the Government's pending criminal prosecutions.  It would upend important limits on criminal discovery and provide the criminal

---

[1] Plaintiffs consent to continuing all other provisions of the current limited stay and, therefore, those provisions are not at issue in this motion.

defendants unprecedented insight into the United States' investigation and likely trial presentation.

In contrast, Plaintiffs cannot demonstrate prejudice from continuing the limited deposition stay. They have requested or taken only 45 of the more than 500 depositions they are permitted to take, and they have 13 more months to complete bellwether fact discovery, leaving them numerous avenues for deposition discovery that would not interfere with the United States' prosecutions. Fact discovery in this MDL is sprawling—Plaintiffs have received tens of millions of documents and expect to take hundreds of depositions—and the 47 individuals covered by the limited stay are a drop in the bucket of that discovery. Importantly, the limited stay will cover an increasingly smaller fraction of potential deponents as the United States continues to narrow the list in advance of trial. To be clear, the current list of individuals will continue to shrink, and the United States anticipates that the final list of individuals whose depositions it will ultimately seek to stay until the conclusion of the criminal trials will be significantly shorter than the current iteration. In any event, Plaintiffs can depose all of these individuals after the conclusion of the criminal trials.

*Second*, the Court should continue to stay certain discovery about the United States' criminal investigation. *See* PTO 181 ¶¶ 7-8. This stay of a specific category of discovery, like the limited deposition stay, is needed to protect the integrity of the United States' ongoing criminal investigation and pending criminal prosecutions. Such discovery would, among other things, divulge the identities and prior statements of cooperating witnesses and pierce the veil of grand jury secrecy, which would harm important interests of the United State and the public. And, again, Plaintiffs cannot point to any countervailing prejudice that would arise from

deferring this narrow category of discovery until after the criminal trials conclude.  Nothing precludes Plaintiffs from discovering the facts that underlie their claims.

*Third*, the Court should continue to stay disputed discovery pending resolution of the disputes.  *See* PTO 181 ¶ 6 (final sentence).  Plaintiffs propose eliminating that protection so that they can move forward with disputed discovery before their right to take that discovery has been adjudicated.  Maintaining the status quo *ante*, however, is a cornerstone of orderly and fair dispute resolution that avoids potentially irreparable harm caused by unauthorized discovery.  Plaintiffs have no cognizable interest in pursuing potentially unauthorized discovery before a dispute is resolved.

## BACKGROUND

I.   **The United States' Criminal Investigation and Pending Prosecutions**

The United States is conducting a criminal investigation of companies and individuals in the generic pharmaceutical industry for colluding to inflate drug prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  This ongoing investigation has led to multiple guilty pleas, deferred prosecution agreements, and indictments.  Of particular note, last year, a grand jury returned indictments against former pharmaceutical executive Ara Aprahamian and two generic pharmaceutical makers, Teva Pharmaceuticals USA, Inc. ("Teva") and Glenmark Pharmaceuticals Inc., USA ("Glenmark").[2]  Among other things, these indictments charge Mr. Aprahamian, Teva, and Glenmark with entering into criminal conspiracies to raise and fix prices, allocate customers, and/or rig bids regarding generic pharmaceutical drugs.  The charges in those criminal cases—and the drugs named in the indictments—are a subset of Plaintiffs' allegations in this MDL.

---

[2] *United States v. Aprahamian*, No. 20-cr-0064 (E.D. Pa. Feb. 4, 2020), ECF No. 1; *United States v. Glenmark Pharms. Inc., USA*, No. 20-cr-200 (E.D. Pa. Aug. 25, 2020) ("*Teva/Glenmark*"), ECF No. 28.

The United States has asked the court overseeing these criminal cases to set Mr. Aprahamian's trial before the trial of Teva and Glenmark.  In *Teva/Glenmark*, the United States proposed a trial date of January 18, 2022, and defendants have proposed a trial date of May 9, 2022.  *See* U.S. Mot. for Scheduling Order, *Teva/Glenmark*, ECF No. 91 (June 3, 2021); Defs.' Proposed Scheduling Order, *Teva/Glenmark*, ECF No. 51-1 (Oct. 19, 2020).  The court has not yet set a trial date for either case, and the United States continues to prepare both cases for trial.

## II.      The Limited Stays of Discovery in This MDL

Because of the substantial overlap between the United States' criminal cases and the claims in this MDL, the United States intervened to ensure that any discovery would not interfere with its interests.  To that end, since 2017, the United States and the parties have stipulated to several short-term, limited stays, and this Court has entered those stipulations by order.  *See*, *e.g.*, ECF No. 347 (PTO 23); ECF No. 1046 (PTO 96); ECF No. 1152 (PTO 108); ECF No. 1325 (PTO 117).  At a minimum, all those orders have stayed (1) discovery requests that relate to the United States' criminal investigation and (2) depositions of individuals identified by the United States, which would interfere with the investigation or prosecutions.  *See, e.g.*, PTO 96 ¶¶ 5-7.

In May 2021, Plaintiffs refused to agree to an extension of the limited stay without changes that would broaden the scope of discovery permitted about the United States' criminal investigation.  Namely, since February 2018, this Court's orders had stayed all "discovery [in this MDL] about the criminal investigation."  *See* ECF No. 560 (PTO 44) ¶ 3.  In June 2021, the United States agreed, in a spirit of compromise, to narrow that stay to apply only to "discovery that specifically relates to how or what information was subpoenaed or communicated by—or provided or produced to—the Department of Justice as part of its criminal investigation."  ECF No. 1786-1 (Proposed Order) ¶ 7; *see also* ECF No. 1787 (PTO 174).  The current version of the limited stay contains that same language, in addition to the limited stay of certain depositions,

and the stay of disputed discovery.  PTO 181 ¶¶ 4, 6-7.  It also prohibits recipients of discovery requests in this MDL from "disclos[ing] in [their] response[s] what documents or other information have been provided to the Department of Justice in the course of its criminal investigation."  *Id*. ¶ 8.

Following additional meet and confers since June 2021, Plaintiffs stated that they would agree to continue certain provisions of the limited stay order through January 31, 2022, but they insist on striking from the order: (1) Paragraph 4, which stays the depositions of individuals on the do-not-depose list; (2) the last sentence of Paragraph 6, which stays disputed discovery pending resolution of the United States' objections; and (3) the recently negotiated Paragraph 7 and part of Paragraph 8,[3] which relate to information that was subpoenaed or communicated by, or provided or produced to, the United States as part of its criminal investigation.[4]  The United States seeks to maintain the current limited stay order until the conclusion of the criminal trials.  *See* Proposed Order.

## LEGAL STANDARD

This Court has inherent authority to stay proceedings "to control the disposition of the causes on its docket."  *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Specifically, "[i]t [is] clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings[]" when those proceedings overlap with parallel criminal proceedings.  *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 872-73 (3d Cir. 1976) (affirming

---

[3] Plaintiffs propose striking the phrase "or other information" from Paragraph 8.  *See* Exhibit B.  That change would permit persons responding to MDL discovery to disclose what information has been provided to the Department of Justice in the course of its criminal investigation.

[4] Exhibit A is a redline comparing the United States' proposed order and PTO 181.  Exhibit B is a redline comparing the Plaintiffs' proposed order and PTO 181.

stay); *accord Borda*, 383 F.2d at 608-09 (affirming stay of civil proceedings "until determination of the Government's criminal action").

Several factors traditionally guide the Court's exercise of discretion to stay civil proceedings in the face of overlapping criminal proceedings.  "[T]he most important threshold issue" is "[t]he similarity of the issues underlying the civil and criminal actions."  *In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *3 (E.D. Pa. May 13, 2003).  Other relevant factors include: (1) the status of the criminal proceedings, including whether any defendant has been indicted; (2) the public interest in the pending civil and criminal litigation; (3) plaintiffs' interest in proceeding expeditiously with discovery, and the potential prejudice to plaintiffs of a delay; (4) the burden discovery may impose on defendants; (5) judicial economy; and (6) the interests of non-parties.  *See, e.g.*, *id.*; ECF No. 1769 (PTO 171) at 3-4 (citing *In re Adelphia*, 2003 WL 22358819, at *3); *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980).

## ARGUMENT

All three disputed provisions of the limited stay should remain in place because each continues to align with all of the governing factors.  In ordering the current limited stay, this Court, like other courts that have balanced these factors, struck a middle path between a complete stay of discovery and "unfettered discovery," allowing instead only "limited discovery," tempered by "sensible prophylactic measures."  *Golden Quality*, 87 F.R.D. at 59; *see also Kaiser v. Stewart*, No. 96-6643, 1997 WL 66186 at *5 (E.D. Pa. Feb. 6, 1997) (allowing "limited civil discovery" but prohibiting discovery "that could prejudice the government's criminal investigation and trial preparation").  No relevant circumstance has materially changed since the Court entered the last stay order—the United States' pending criminal prosecutions await trial, and Plaintiffs continue to have ample depositions and other discovery available to

them that would not interfere with the United States' criminal investigation or prosecutions.  The limited stay remains necessary to safeguard important public and private interests, does not present any impending risk of prejudice, and promotes judicial economy.

## I.    **The Significant Overlap Between the Civil and Criminal Proceedings Supports Continuing the Stay**

The overlap between the civil and criminal proceedings, which is "the most important" factor, *In re Adelphia*, 2003 WL 22358819, at *3, supports continuing the stay in this case because there is significant overlap between the two sets of proceedings.  All of the defendants and generic drugs at issue in the criminal proceedings are also at issue in this MDL, and all three indicted criminal defendants awaiting trial (Mr. Aprahamian, Teva, and Glenmark) are also defendants in this MDL.  The complaints selected as bellwether trials overlap substantially with the criminal cases.  As this Court observed, "there are extensive allegations concerning conduct by Aprahamian" in the clobetasol and clomipramine DPP and EPP proposed class-action cases.  PTO 171 at 2.  The overlaps concerning clobetasol are particularly acute; the Aprahamian indictment alleges that clobetasol was affected by one of the charged conspiracies, and clobetasol is a focus of not only the drug-specific case selected as a bellwether but also the dermatology complaint.  The dermatology complaint names Mr. Aprahamian and Glenmark as defendants, and includes allegations regarding many of the same products named in the indictments.

Plaintiffs do not and cannot dispute the existence or extent of this overlap.  These undisputed facts "weigh[] heavily in favor" of continuing the stay.  *In re Adelphia*, 2003 WL 22358819, at *3; *see also Med. Inv. Co., Ltd. v. Int'l Portfolio, Inc.*, No. 12-3569, 2014 WL 2452193, at *2 (E.D. Pa. May 30, 2014) ("common factual and legal issues" means "this factor weighs in favor of a stay"); *Heraeus Materials Tech. LLC v. Tung Pham*, No. 11-2965, 2011 WL 13227695, at *1 n.1 (E.D. Pa. June 29, 2011) (granting stay of party discovery where "the

discovery requests related to a civil . . .claim will be similar, if not identical to, the subject matter

of a criminal investigation into the same conduct"); *Doe v. Schneider*, No. 08-3805, 2010 WL

11561113, at *2 (E.D. Pa. June 8, 2010) ("[T]he overlap of the issues weighs heavily in favor of

granting a complete stay.").

## II.     The Advanced Stage of the Criminal Proceedings Supports Continuing the Stay

The stage of the criminal proceedings, "which can have a substantial effect on the

balancing of the equities," *In re Adelphia*, 2003 WL 22358819, at *3, supports continuing the

stay because multiple criminal indictments have been returned, and the indicted defendants are

awaiting trial.  The justification for a stay of civil discovery reaches its zenith when criminal trial

approaches because that is when the criminal defendants' interests are most in jeopardy, and "the

burden of delay on the civil litigants is minimal because the Speedy Trial Act requires prompt

resolution of the related criminal proceedings."  *Id.*; *accord Medical Inv. Co.*, 2014 WL

2452193, at *2 (similarly granting post-indictment stay; "[t]he strongest case for a stay in a civil

case occurs during a criminal prosecution after an indictment is returned" (cleaned up)); *see also*

*infra* Part V (addressing defendant's interests).

## III.    Compelling Public Interests Support Continuing the Stay

The limited stay also remains necessary to protect the public's important interest in

maintaining the integrity of criminal investigations and prosecutions.  "[T]he federal

government's interest in proceeding with its criminal action [is] paramount," *Kaiser*, 1997 WL

66186 at *4, and continuing the limited stay in this case would protect that vital interest "by

allowing the underlying criminal matter to come to a complete, unimpeded conclusion," *Medical*

*Inv. Co.*, 2014 WL 2452193, at *4.  By contrast, lifting the stay and permitting depositions of

potential criminal trial witnesses and/or discovery about the United States' criminal investigation

would harm this compelling public interest in at least two separate and independent ways.

*First*, "[t]he scope of discovery in a criminal action is substantially more limited" than in a civil action.  *SEC v. Mersky*, No. 93-5200, 1994 WL 22305, at *4 (E.D. Pa. Jan. 25, 1994).[5] Therefore, permitting depositions of individuals who may testify in the criminal trials, or applying the liberal scope of civil discovery to the United States' criminal investigation, before the criminal trial concludes would give the criminal defendants early access to sensitive information that they ordinarily would not receive until trial, such as the identities and likely trial testimony of the United States' cooperating witnesses.  *See* Decl. of Ryan Danks (Dec. 15, 2021) ("Danks Decl.") ¶¶ 17-19, 21.  The narrow scope of discovery in criminal cases "is rooted in concerns about possible perjury, manufacture of false evidence and intimidation of confidential informants"—concerns that lie at the core of a criminal prosecution's integrity.  *Mersky*, 1994 WL 22305, at *5.  Accordingly, "[t]he United States' interest in preventing the defendants from circumventing the limited discovery available in the criminal proceeding is substantial."  *Id*. at *4; *see also Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

*Second*, permitting discovery into the inner workings of the United States' criminal investigation would threaten the integrity of the Government's criminal investigation, including the secrecy of grand jury proceedings.  *See* Fed. R. Crim. P. 6(e).  Maintaining the secrecy of "anything which may reveal what occurred before the grand jury" is critical "to preserve the

---

[5] For example, "a criminal defendant may not discover statements or reports by the government's witnesses or prospective witnesses from the government until after a witness has testified for the government on direct examination."  *Mersky*, 1994 WL 22305, at *4 (citing 18 U.S.C. § 3500).  Also, "[t]he Federal Rules of Criminal Procedure do not provide for depositions or interrogatories as the Federal Rules of Civil Procedure do."  *Kaiser*, 1997 WL 66186 at *4.

freedom and integrity of the deliberative process." *In re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982). Removing Paragraphs 7 or 8 from the current limited stay order would jeopardize grand jury secrecy by, for example, allowing Plaintiffs to seek grand jury subpoenas, written responses to such subpoenas, and the information and documents provided in response to those subpoenas. Similarly, permitting depositions of cooperating witnesses or discovery of communications with such witnesses risk "direct and indirect disclosure" of what took place in the grand jury room. *Id.*; *see* Danks Decl. ¶¶ 17-19, 21. To avoid such harms, "[c]ivil discovery must be narrowed to ensure grand jury secrecy and to safeguard against unjustified disclosures." *Kaiser*, 1997 WL 66186 at *5. Further, Plaintiffs have indicated that they also might, at some point in the future, seek access to certain interview memoranda prepared by the United States Postal Service Office of the Inspector General and the Federal Bureau of Investigation in the criminal investigation, which the United States produced to Teva as part of its criminal discovery obligations in *Teva/Glenmark*. However, allowing Plaintiffs to access these materials risks disclosure that would interfere with the United States' criminal investigation.[6]

The risk of the above harms to the public is especially pronounced with respect to Plaintiffs' efforts to depose individuals whose testimony the United States intends to rely on to meet its burden of proof in the criminal prosecutions. The Declaration of Ryan Danks, the Chief of the Washington Criminal I Section of the DOJ Antitrust Division, which is being submitted to the Court *ex parte* and *in camera*, identifies the role or roles these individuals are likely to play in the Government's cases, explains why depositions of these individuals would harm the United States' prosecutions, and describes the steps the United States has taken and will continue to take

---

[6] A more fulsome discussion of the United States' position regarding the interview memoranda is included in the August 31, 2021 joint submission regarding the limited stay. *See* ECF No. 1816 at 2-7.

to remove individuals from the list as quickly as possible in advance of trial.  *See* Danks Decl. ¶¶ 9-21.

No public interest comes close to outweighing the risk of the irreparable harms that would result from lifting the current stay.  Plaintiffs will likely cite the public interest in enforcing the antitrust laws as a justification for lifting the stay, but "the related criminal proceedings serve to advance those same interests."  *In re Adelphia*, 2003 WL 22358819, at *6; *accord Medical Inv. Co.*, 2014 WL 2452193, at *4 ("Because of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here."); *Campbell*, 307 F.2d at 487 (when parallel civil and criminal proceedings overlap, "[a]dministrative policy gives priority to the public interest in law enforcement"); *see also United States v. Borden Co.*, 347 U.S. 514, 518 (1954) (federal government is "primarily charged by Congress with the duty of protecting the public interest under [antitrust] laws," and private claims merely "supplement[] Government enforcement").

Moreover, it is vital to retain the provision of the current stay order that halts any disputed discovery until the United States' objections have been resolved.  *See* PTO 181 ¶ 6. Absent that protection, Plaintiffs could proceed with discovery that causes irreparable damage to the United States' criminal prosecutions.  Courts have long recognized that preserving the status quo pending resolution of the merits is often necessary to avoid irreparable harm,[7] and that ancient principles applies fully here.  Also, as a practical matter, removing this protection would create the need for serial emergency motions by the United States to protect its interests, which would impose unnecessary demands on judicial and prosecutorial resources.

---

[7] *See, e.g.*, *Hovey v. McDonald*, 109 U.S. 150, 161 (1883).

IV.       **A Continuation of the Limited Stay Would Not Prejudice Plaintiffs**

Continuing the current limited stay would not cause any prejudice to Plaintiffs—who

have no current need to take the stayed discovery and have ample other discovery they could

take instead—let alone a quantum of prejudice that would outweigh the grave harms such

discovery would cause to the interests of the public and defendants.  The touchstone in

evaluating a plaintiff's interest is "the prejudice to the plaintiff caused by the delay."  PTO 171 at

4; *see also id.* (stay could be reevaluated if "Plaintiffs assert they will suffer undue prejudice

from [it]").  In this context, mere delay is not prejudice.  Courts only find potential prejudice

from a stay when a plaintiff can "demonstrate a particularly unique injury," such as the

possibility that, during the stay, evidence or testimony will be lost or assets sought by the lawsuit

will be dissipated, or that a party is seeking "an unfair advantage from the stay."  *In re Adelphia*,

2003 WL 22358819, at *4.[8]  To justify vacatur of a stay protecting a criminal prosecution, a

plaintiff must "establish more . . . than simply the right to pursue his case and vindicate his claim

expeditiously," *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, No. 01-5530, 2002 WL

31111766, at *3 (E.D. Pa. Sept. 18, 2002), because "[w]hile a civil litigant with a private dispute

has an interest in the prompt disposition of his or her claims, the public has a greater interest in

enforcement of the criminal law," *Kaiser*, 1997 WL 66186 at *4.

Here, Plaintiffs' putative interests in taking the stayed depositions or pursuing discovery

about the criminal investigation pale in comparison to the immediate and irreparable harm that

would occur if that discovery were permitted.  With respect to depositions, the limited stay is

---

[8] *See also*, *e.g.*, *Medical Inv. Co*, 2014 WL 2452193, at *3 ("Although the Court is mindful of plaintiffs'
desire to resolve this civil litigation expeditiously, the mere fact that additional time will pass does not alone
establish prejudice to the plaintiffs." (cleaned up)); *In re Deriv. Litig.*, 2007 WL 1101276, at *2 (E.D. Pa. Apr. 11,
2007) (holding no prejudice would result from stay because "the Plaintiffs have articulated no unique injury citing
only continued monetary loss and the passage of time").

both narrow and temporary—features that minimize or eliminate the risk of any possible prejudice. The deposition stay currently applies to only 47 individuals, which is a small fraction of the more than 500 fact depositions Plaintiffs are permitted to take in this MDL, *see* ECF 1688 (PTO 158) at 12, and the United States will further narrow the list as it continues its trial preparations and receives rulings on key pretrial issues, *see* Danks Decl. ¶¶ 9-20. Similarly, Plaintiffs have not disclosed how many of the 47 individuals they intend actually to depose, and they have sought depositions from only about one-quarter (nine) of the 37 individuals that the United States has thus far removed from the stay list, suggesting any potential impairment is narrower than the number of individuals currently on the list.

The deposition stay also can and should expire upon the conclusion of the criminal trials, and given that the Plaintiffs will have 13 more months to complete fact discovery in the bellwether cases, *see* ECF No. 1901 (PTO 188) ¶ 1, there is no current or impending risk that Plaintiffs will be unable to depose any of the individuals at issue. At worst, the limited deposition stay might affect the sequencing of depositions, but deviating from Plaintiffs' preferred sequencing of depositions would not qualify as prejudice. *See*, *e.g.*, *In re Adelphia*, 2003 WL 22358819, at *4 ("delay in pursuing [plaintiffs'] suits . . . is insufficient to support vacating the stay"). Plaintiffs have no shortage of other depositions that could occupy their discovery efforts for the next several months, and they have not demonstrated any need to take the disputed depositions now, rather than later.

Similarly, a continued stay of discovery about the United States' criminal investigation presents no risk of prejudice to Plaintiffs' interests. At worst, that stay is delaying Plaintiffs' pursuit of preserved evidence that they could pursue after the criminal trials have ended. As discussed, however, the mere passage of time is not sufficient prejudice. *See*, *e.g.*, *In re*

*Adelphia*, 2003 WL 22358819, at *4; *Medical Inv. Co*, 2014 WL 2452193, at *3; *In re Deriv. Litig.*, 2007 WL 1101276, at *2.

Finally, continuing to maintain the status quo *ante* pending resolution of discovery disputes, *see* PTO 181 ¶ 6, also would not cause any prejudice to Plaintiffs' interests. Staying disputed discovery has not materially impeded the progress of discovery because the United States has been judicious in raising objections. It has objected only once to the numerous discovery requests Plaintiffs have served, and that objection was resolved cooperatively among the parties, without the Court's involvement.

## V.       The Other Applicable Factors Also Support Continuing to Stay

The three other applicable factors—defendants' interests, interests of non-parties, and judicial economy—further support continuing the stay of discovery. *See In re Adelphia*, 2003 WL 22358819, at *3.

*First*, continuing the limited stay will be in the interests of Defendants, especially those Defendants that have been indicted and are awaiting trial. As this Court has observed, the indictment of Defendants in this MDL has placed "individual interests at stake," and "[w]hether certain key witnesses can or will be deposed pending the resolution of the criminal case implicates due process concerns." ECF No. 1679 (Memorandum Opinion) at 3. Defendants have consented to each past stay, and continuing the limited deposition stay aligns with the Court's prior order—entered at Defendants' request—staying the depositions of Mr. Aprahamian and ten Teva individuals. PTO 171 at 5.

*Second*, because of the overlap between this MDL and the pending criminal cases, resolution of the criminal cases could "moot, clarify, or otherwise affect various contentions in the civil case," such that staying specific categories of discovery in this MDL may avoid unnecessary discovery burdens on defendants or non-parties and/or the unnecessary expenditure

14

of judicial resources.  *See Mellon Bank*, 545 F.2d at 873; *see also Mersky*, 1994 WL 22305 at *4

("[A]ny successful criminal prosecutions may streamline discovery and trial."); *Golden Quality*,

87 F.R.D at 57 ("The mere possibility that a substantial amount of the court's work, if

undertaken now, may shortly prove to have been unnecessary, cautions against undue haste in

proceeding with this civil action.").  Moreover, insofar as permitting discovery into the criminal

investigation would result in discovery requests directed at the United States itself, such

discovery could impose substantial burdens on the United States, such as potentially requiring

prosecutors to "take time, otherwise devoted to the criminal prosecution, to make . . . documents

available" to Plaintiffs.  *Kaiser*, 1997 WL 66186 at *4.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court extend the

current limited stay order until the conclusion of the criminal trials.

15

Dated: December 15, 2021

Respectfully submitted,

*/s/ Matthew R. Huppert*
Veronica N. Onyema
Matthew R. Huppert
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 Fifth Street NW
Washington, DC 20530
(202) 812-1853
veronica.onyema@usdoj.gov
matthew.huppert@usdoj.gov

*Counsel for Intervenor United States of America*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2021, I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access this filing through the Court's system, and notice of this filing will be sent to these parties by operation of the Court's electronic filing system.

*/s/ Matthew R. Huppert*
Matthew R. Huppert
*Counsel for Intervenor United States of America*