# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *Direct Purchaser Class Plaintiffs' Actions* | MDL 2724 <br> 16-MD-2724 <br><br> HON. CYNTHIA M. RUFE |

### DIRECT PURCHASER PLAINTIFFS' [PROPOSED] PLAN OF ALLOCATION FOR THE SETTLEMENT CLASS

The Direct Purchaser Class Plaintiffs ("DPPs") César Castillo, LLC, FWK Holdings, LLC, Rochester Drug Co-Operative, Inc., and KPH Healthcare Services, Inc., individually and on behalf of the Settlement Class (defined below), hereby submit this proposed Plan of Allocation to allocate the settlement funds received in the settlements with Sun Pharmaceutical Industries, Inc. and its affiliates Caraco Pharmaceutical Laboratories, Ltd., Mutual Pharmaceutical Company, Inc., and URL Pharma, Inc. (collectively, "Sun") and Taro Pharmaceuticals U.S.A., Inc. ("Taro"), plus any interest earned on the settlement funds, net of any Court-approved attorneys' fees, service awards, and Court-approved expenses, including settlement-related costs and expenses (the "Net Settlement Fund").

The proposed Plan of Allocation allocates the Net Settlement Fund based on each Claimant's *pro rata* share of the Named Generic Drugs ("NGDs")[1] sold by Defendants.[2] Courts

---

[1] A list of the NGDs (the generic drugs for which DPPs have brought claims in this MDL) is attached as Exhibit B to the Settlement Agreements.

[2] Exhibit C to the Settlement Agreements is a list of Defendants who have been sued by DPPs.

1

have approved *pro rata* share calculations in other antitrust cases,[3] including in other pharmaceutical antitrust cases.[4]

Plaintiffs' expert, economist Dr. Jeffrey J. Leitzinger, Ph.D. of Econ One, can calculate each Claimant's[5] *pro rata* share of the Net Settlement Fund.[6]

Throughout this Plan of Allocation, "purchases" refers to net unit purchases, (*i.e.*, gross purchases net of any returns and net of any purchases for which the Claimant or Settlement Class

---

[3] *See Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 105 (D.N.J. 2018) ("In particular, *pro rata* distributions are consistently upheld, and there is no requirement that a plan of allocation differentiat[e] within a class based on the strength or weakness of the theories of recovery.") (citation and internal quotation marks omitted) (alteration in original); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) ("Typically, a class recovery in antitrust or securities suits will divide the common fund on a *pro rata* basis among all who timely file eligible claims, thus leaving no unclaimed funds.") (citation omitted); *Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining and Mfg. Co.)*, 513 F. Supp. 2d 322, 335 (E.D. Pa. 2007) (approving as reasonable a distribution plan that allocated settlement funds to class members based upon their *pro rata* share of the class's total transparent tape purchases during the damage period, net of invoice adjustments and rebates paid as of the date of the settlement); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) (upholding a district court's approval of a plan of allocation based on a *pro rata* share of diamond purchases).

[4] *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, No. 1:15-cv-07488, ECF Nos. 919-2, 947, 948 (S.D.N.Y. May 27, 2020) (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, ECF Nos. 1163-4, 1179 (D. Mass. June 11, 2018 & July 18, 2018) (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases); *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, ECF Nos. 1004-5, 1054 (N.D. Cal. Mar. 20, 2018 & Sept. 20, 2018) (*pro rata* shares of settlement fund computed on basis of claimants' brand and generic purchases); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516, ECF Nos. 733-1, 739 (D. Conn. Nov. 22, 2017 & Dec. 18, 2017) (*pro rata* shares of settlement fund computed on basis of purchases); *King Drug of Florence, Inc. v. Cephalon, Inc.*, No. 06-cv-1797, ECF Nos. 864-17, 870 (E.D. Pa. Oct. 8, 2015 & Oct. 15, 2015) (same); *In re Doryx Antitrust Litig.* (*Mylan Pharms., Inc. v. Warner Chilcott Public Ltd.*), No. 12-cv-3824, ECF Nos. 452-3, 665 (E.D. Pa. Jan. 10, 2014 & Sept. 15, 2014) (same); *In re Tricor Direct Purchaser Antitrust Litig.* (*Louisiana Wholesale Drug Co. v. Abbott Labs.*), No. 05-cv-340, ECF Nos. 536-1, 543 (D. Del. Apr. 9, 2009 & Apr. 23, 2009) (*pro rata* shares of settlement fund computed on basis of claimants' unit purchases in a product hop case).

[5] A "Claimant" is any entity that timely submits a completed Claim Form. A Claimant's *pro rata* share will be zero if that Claimant timely submits a Claim Form but that Claimant's claim is rejected because, for example, the Claimant did not purchase the NGDs directly from Defendants and does not have any valid assignment covering any such direct purchases.

[6] *See* Declaration of Jeffrey J. Leitzinger, Ph.D. Related to Proposed Allocation Plan (dated March 16, 2022) ("Leitzinger Allocation Decl.").

member has assigned away its rights to recovery in this litigation)[7] of the NGDs made directly from Defendants during the Settlement Class Period of May 1, 2009 through December 31, 2019.  The unit of purchase is an "extended unit" which is generally equal to a tablet, capsule, gram, milliliter, suppository, patch, etc.[8]

The proposed Plan of Allocation is a practical and reasonable way to allocate the Net Settlement Fund and is fair to all members of the Settlement Class.[9]

## THE PLAN OF ALLOCATION

The Plan of Allocation works as follows:

1.1    At the appropriate time and after receiving Court approval, the Claims Administrator will mail a Claim Form to each Settlement Class member identified from the transactional or other sales data Defendants have produced in this case, as well as to any additional Settlement Class members identified by Settlement Class Counsel, including through review of customer lists produced by Defendants.[10]  Settlement Class members who were identified in Defendants' sales data and whose purchases may be calculated from that data, and who receive and return Claim Forms they were mailed, will not be required to submit any additional documentation or data with their Claim Form.  In addition, they will not be permitted

---

[7] *Id.* at ¶¶ 19-20.

[8] *Id.* at ¶ 14 n.8.

[9] *Id.* at ¶¶ 6-7, 22.  The "Settlement Class" includes:

> All persons or entities, and their successors and assigns, that directly purchased one or more of the Named Generic Drugs from one or more Defendants in the United States and its territories and possessions, at any time during the period from May 1, 2009 until December 31, 2019.
>
> Excluded from the Settlement Class are Defendants and their present and former officers, directors, management, employees, subsidiaries, or affiliates, judicial officers and their personnel, and all governmental entities.

[10] DPPs requested that all Defendants provide the names and addresses of their direct purchaser customers for the time period May 1, 2009 to December 31, 2019.

to submit their own purchase data to contest calculations derived from Defendants' data.  Any Claimant whose purchases cannot be calculated using Defendants' sales data but who submits a Claim Form shall be required to submit sufficient documentation or purchase data showing that the Claimant directly purchased one or more NGD directly from one or more Defendants during the time period from May 1, 2009 until December 31, 2019, and purchase data sufficient for Econ One to calculate the Claimant's *pro rata* share.  A copy of the Claim Form will also be posted on the settlement website, to which Settlement Class members will be directed through mailed and publication notice.  The Claim Form will include the National Drug Codes ("NDCs") for each NGD covered by this Plan of Allocation.[11]

       1.2    The Claim Form will request the Claimant's full name, current mailing address, and current email address for correspondence regarding the claims administration and distribution, the identity and contact information for the person responsible for overseeing the claims process for the Claimant, and information about how the Claimant would prefer for the distribution to be made (for example, by wire or by mailed check).  Each Claimant will be required to execute the Claim Form in exchange for receiving any distribution from the Net Settlement Fund.

       1.3    *Timeliness*.  The submission of the Claim Form to the Claims Administrator (with any necessary supporting documentation) will be deemed timely if it is received or postmarked within 90 days of the date the Claim Forms were mailed.

2.    Calculation of *Pro Rata* Shares of the Net Settlement Fund

       2.1    *Claimants that purchased NGD(s) directly from Defendants and appear as direct*

---

[11] NDCs are standard codes maintained by the FDA and used in the pharmaceutical industry to identify specific pharmaceutical products, and allow Claimants to understand precisely what purchases will be considered for purposes of allocation.

4

*purchasers in the data produced by Defendants and whose pro rata shares can be calculated using Defendants' sales data.*[12]

      a.      The allocated share of the Net Settlement Fund will be set in proportion to each Claimant's weighted total purchases of the NGDs from Defendants during the Settlement Class Period of May 1, 2009 through December 31, 2019. The allocation computation will be based on the following information: (a) each Claimant's total net purchases of the NGDs from Defendants during the Settlement Class Period of May 1, 2009 through December 31, 2019; and (b) the combined total net purchases of the NGDs from Defendants during the Settlement Class Period of May 1, 2009 through December 31, 2019 made by all Claimants with valid, accepted Claim Forms.

      b.      Purchases of NGDs will be weighted so that purchases of NGDs with higher price points will be given greater weight in the allocation process (consistent with Dr. Leitzinger's expectation that those NGD formulations likely carried bigger unit overcharges).[13] Specifically, Claimant purchase volumes of each NGD formulation will be multiplied by the average price calculated for it using IQVIA (formerly IMS) data over the period from May 2009 to December 2019.[14]

      c.      To calculate the *pro rata* share of the Net Settlement Fund for each Claimant who purchased an NGD directly from Defendants, Dr. Leitzinger, working with the Claims Administrator, will take (a) each Claimant's combined weighted net direct purchases of

---

[12] Defendants have not produced data for the entire Settlement Class Period of May 1, 2009 through December 31, 2019, and the time periods covered by Defendants' data productions vary. All available, useable data showing sales of NGDs to direct purchasers for some or all of the Settlement Class Period of May 1, 2009 through December 31, 2019 produced by Defendants will be used for allocation.

[13] Leitzinger Allocation Decl. at ¶ 15.

[14] *Id.*

the NGDs from Defendants, and divide it by (b) the combined weighted net direct purchases of NGDs from Defendants by all Claimants who timely submit valid, accepted Claim Forms.[15] This calculation will yield each Claimant's *pro rata* share of the Net Settlement Fund.[16]

Claimants who have given partial assignments to entities that opt out of the Settlement Class (such as those Settlement Class members that have given assignments to entities that have brought individual actions in this MDL) shall have their combined net totals reduced to account for those assignments. This shall be done using the chargeback data produced by the Defendants or other available data showing volumes covered by assignments, from which Dr. Leitzinger can estimate the percentage of units purchased by the Settlement Class members which were then resold to the DAPs or other assignees. This calculation is described in detail in paragraph 20 of Dr. Leitzinger's Allocation Declaration.

2.2   *Claimants that are Settlement Class members who purchased NGD(s) from Defendants but do not appear in the data produced by Defendants and whose pro rata shares cannot be calculated using Defendants' sales data.* These Claimants shall be required to submit data and documentation showing the volume(s) of the NGDs they purchased directly from the Defendants during the Settlement Class Period of May 1, 2009 through December 31, 2019.

2.3   *Claimants that file on the basis of an assignment from a Settlement Class member.* Allocations to Claimants who file a claim based on an assignment from a Settlement Class member would be determined either (a) by agreement between the assignor Settlement Class member and its respective assignee claimant, or (b) if the assignor Settlement Class member and its assignee claimant cannot reach an agreement, then the assignee claimant shall receive no

---

[15] *Id.* at ¶¶ 15-16.

[16] *Id.*

allocation based on its assignment from the assignor Settlement Class member and the assignor Settlement Class member's allocation shall not be reduced to account for the assignment to the assignee claimant. There are only two types of agreements between an assignor Settlement Class member and its respective assignee claimant that shall be acceptable for purposes of an assignee claimant receiving an allocation based on an assignment from a Settlement Class member: (i) the assignor Settlement Class member and its respective assignee claimant can agree that the assignee claimant shall be allocated a share that is a fixed percentage of the assignor Settlement Class member's share (say 5% of the Settlement Class member's share) and that the assignor Settlement Class member's allocation shall be reduced by the same amount; or (ii) the assignor Settlement Class member and its respective assignee claimant can submit agreed upon figures for the purchase volumes covered by the assignment for each NGD sold by Defendants, and then this information can be used by Econ One to calculate the assignee's allocation in accordance with this Plan of Allocation (and the assignor Settlement Class member's share shall be reduced by the same amount). Neither an assignee (nor any other Claimant) other than as stated herein shall be allowed to submit its own purchase data. Reviewing assignee claimants' purchase data would likely be expensive and time consuming and will delay disbursement. If the assignor Class member and assignee claimant cannot reach agreement, they can attempt to resolve any dispute outside of this allocation process. The assignor and assignee shall be given no more than 90 days from the deadline for claims submission to reach agreement, and, if they cannot reach agreement by that time, the assignor's and assignee's share shall not be distributed, and shall remain in the escrow account until such time as they either reach agreement or obtain a court order providing for the amounts to be distributed to the assignor and assignee.[17] As the Claim

---

[17] This process shall not delay distribution to other Claimants, absent Court order to the contrary.

Form will make clear, any claim (including all related documentation or materials submitted therewith) submitted by a Claimant who files a Claim Form based on an assignment may be shared with the Claimant's assignor Settlement Class member during the claims administration process.

3. <u>Processing of Claims</u>

3.1 All Claims will be reviewed and processed by the Claims Administrator, with assistance from Econ One and Settlement Class Counsel as required and appropriate.

3.2 The Claims Administrator shall first determine whether a Claim Form received is timely, properly completed, and signed. If a Claim Form is incomplete, deficient, or if the Claims Administrator has any questions, the Claims Administrator shall communicate with the Claimant via First Class Mail, email, or telephone. The Claims Administrator may also contact Claimants requesting additional documentation or other materials. Claimants will have 28 days from the date they are contacted by the Claims Administrator regarding any question, requests for additional information, deficiency, or any other issue to provide a complete response, the requested documentation or other materials, and/or to cure any such deficiency. If a Claimant fails to adequately respond and/or correct any deficiency within 28 days, its claim may be rejected and the Claimant shall be notified by letter stating the reason for rejection. The Claims Administrator will then review all completed, non-deficient Claim Forms to determine whether each will be accepted or rejected and will notify any Claimants whose Claim Forms are rejected by letter stating that the Claimant's Claim Form is rejected and stating the reason for rejection. Any Claimant whose Claim Form is rejected may seek review by the Court via the appeals process described in Section 7.2 below.

3.3 All late Claims Forms that are otherwise complete will be processed by the

Claims Administrator but marked as "Late Approved Claims." Claimants that submit any such "Late Approved Claims" may receive distributions from the Net Settlement Fund, in accordance with this Plan of Allocation, with the approval of Settlement Class Counsel and the Court.[18] If Settlement Class Counsel conclude that, in their judgment, any such "Late Approved Claims" should not be accepted, the Claimant will be so notified, and then may seek review by the Court via the appeals process described in Section 7.2 below.

       3.4    *The Pro Rata Distribution Calculation*. Econ One, in conjunction with the Claims Administrator and Settlement Class Counsel, will be responsible for determining the total amount each Claimant will receive from the Net Settlement Fund. Once the Claims Administrator has determined which claims are approved, Econ One will work with the Claims Administrator to calculate each Claimant's *pro rata* share of the Net Settlement Fund as determined by the calculation described above in Section 2.

4.    <u>Processing Challenged Claims</u>

       4.1    The Claims Administrator, in conjunction with Settlement Class Counsel and Econ One, shall review any and all written challenges by Claimants to the determinations of

---

[18] Courts have approved similar provisions allowing for acceptance of late approved claims. *See, e.g.*, *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2014 WL 12778313, at *5 (E.D. Pa. Sept. 4, 2014) (Granting preliminary approval of a settlement and recognizing that "Lead Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund is not materially delayed."); *In re Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL 7638464, at *3 (D.N.J. June 7, 2016) (Granting preliminary approval of a settlement and ordering that "Lead Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund is not materially delayed thereby."); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 06-cv-01797, ECF Nos. 864-17, 870 at ¶ 3.3 (E.D. Pa. Oct. 8, 2015 & Dec. 15, 2015) (the proposed plan of allocation includes a similar provision and the Order approves the settlement and plan of allocation). *See also In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, ECF Nos. 1163-4 at § 3.3, 1179 (D. Mass. June 11, 2018 & July 18, 2018) (approving a similar provision regarding late claims); *In re Lidoderm Antitrust Litig.*, 14-md-02521, ECF Nos. 1004-5 § 3.3, 1054 (N.D. Cal. Mar. 20, 2018 & Sept. 2018) (same).

Econ One and the Claims Administrator. If upon review of a challenge and supporting documentation, the Claims Administrator and Econ One decide to amend or modify their determination, the Claims Administrator shall advise the Claimant who made the challenge. These determinations shall be final, subject to the appeals process described in Section 7.2 below.

   4.2  Where the Claims Administrator and Econ One determine that a challenge requires additional information or documentation, the Claim Administrator will so advise the Claimant and provide that Claimant an opportunity to cure the deficiency within 28 days, as set forth in Section 3.2 above. If that Claimant fails to cure the deficiency within that time, the challenge may be rejected and the Claimant will be notified of the rejection of its challenge by mail, which notification shall be deemed final subject to any appeal and decision by the Court.

   4.3  If the Claims Administrator and Econ One conclude that they have enough information to properly evaluate a challenge and maintain that their initial determinations were correct, the Claims Administrator shall so inform the Claimant in writing, which notification shall be deemed final subject to any appeal and decision by the Court.

   4.4  Claimants whose *pro rata* shares can be calculated by Econ One using Defendants' sales data shall not be permitted to submit their own purchase data as part of a challenge to Econ One's calculation of the Claimant's share of the Net Settlement Fund. Given the number of manufacturers, Settlement Class members, and NGDs, the data submissions would be voluminous and expensive to organize and review, and there would be little benefit to analyzing this data given the substantial data already produced by Defendants in this case.[19] Therefore a Claimant may only submit purchase data if a Claimant is required to do so to show

---

[19] Leitzinger Allocation Decl. at ¶¶ 10-13.

10

that the Claimant purchased NGDs directly from Defendant(s) during the period from May 1, 2009 until December 31, 2019, and so is a Settlement Class member and entitled to participate in the settlements, and/or if required by Settlement Class Counsel (in consultation with Econ One) to show the amount of their purchases.

5.  Report to Court Regarding Distribution of Net Settlement Fund

    5.1    After the Claims Administrator reviews all submitted claims and works with Econ One to determine the amount each Claimant is entitled to receive from the Net Settlement Fund, the Claims Administrator will prepare a final report for the Court's review and approval. The report will explain the tasks and methodologies employed by the Claims Administrator in processing the claims and administering the Plan of Allocation. It will also contain (a) a list of the Claimants (if any) who filed Claim Forms that were rejected and the reasons, (b) a list of challenges (if any) made by Claimants, and the disposition of any such challenges, and (c) the date any such Claimant whose challenge was rejected was informed by the Claims Administrator, for purposes of calculating the timeliness of any appeal using the procedures set forth below.

6.  Payment to the Claimants

    6.1    Upon Court approval of the final report and declaration of the Claims Administrator, the Claims Administrator shall issue a check or wire payable to each Claimant who has submitted a complete and valid Claim Form.

    6.2    It is anticipated that the entire Net Settlement Fund will be distributed in a single distribution. However, subject to further order of the Court, any monies from the Net Settlement Fund that remain unclaimed after the first distribution shall, if economically feasible, be distributed to Claimants in an additional distribution or distributions on the basis of the same

calculations of the Claimants' *pro rata* combined total of the NGDs described above.

      6.3    Insofar as the Net Settlement Fund includes residual funds after distribution or distributions as set forth in the preceding sections that cannot be economically distributed to the Claimants (because of the costs of distribution as compared to the amount remaining), such funds may be retained while this litigation continues and, with Court approval, distributed with subsequent distributions, awarded as attorneys' fees or to reimburse litigation expenses, or potentially be used to make *cy pres* payments for the benefit of members of the Settlement Class.

7.    <u>Resolution of Disputes</u>

      7.1    In the event of any disputes between Claimants and the Claims Administrator on any subject (*e.g.*, timeliness, required completeness or documentation of a claim, or the calculation of the Claimant's unit purchases, share of the Net Settlement Fund, and/or amount payable), the decision of the Claims Administrator shall be final, subject to the Claimant's right to seek review by the Court. In notifying a Claimant of the final rejection of a Claim or a challenge thereto, the Claims Administrator shall notify the Claimant of its right to seek such review.

      7.2    Any such appeal by a Claimant must be submitted in writing to the Court, with copies to the Claims Administrator and Class Counsel, within 21 days of the Claims Administrator's final rejection notification to the Claimant.

March 16, 2022                                     Respectfully submitted,

*/s/ Dianne M. Nast*

Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
(215) 923-9300
dnast@nastlaw.com

*Lead and Liaison Counsel*
*for Direct Purchaser Plaintiffs*

| | |
|---|---|
| David F. Sorensen | Thomas M. Sobol |
| BERGER MONTAGUE PC | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 1818 Market Street, Suite 3600 | 55 Cambridge Parkway, Suite 301 |
| Philadelphia, Pennsylvania 19103 | Cambridge, Massachusetts 02142 |
| (215) 875-3000 | (617) 482-3700 |
| dsorensen@bm.net | tom@hbsslaw.com |
| | |
| Robert N. Kaplan | Linda P. Nussbaum |
| KAPLAN FOX & KILSHEIMER LLP | NUSSBAUM LAW GROUP, PC |
| 850 Third Avenue | 1211 Avenue of the Americas, 40th Floor |
| New York, New York 10022 | New York, New York 10036 |
| (212) 687-1980 | (917) 438-9189 |
| rkaplan@kaplanfox.com | lnussbaum@nussbaumpc.com |

Michael L. Roberts
ROBERTS LAW FIRM P.A.
20 Rahling Circle
Little Rock, Arkansas 72223
(501) 821-5575
mikeroberts@robertslawfirm.us

*Direct Purchaser Plaintiffs' Steering Committee*