**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | **MDL 2724**<br>**16-MD-2724** |
| --- | --- |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | **HON. CYNTHIA M. RUFE** |

**DIRECT ACTION PLAINTIFFS' OBJECTION TO THE SPECIAL MASTER'S ELEVENTH REPORT & RECOMMENDATION**

The Direct Action Plaintiffs ("DAPs") respectfully object to the Special Master's Eleventh Report & Recommendation, ECF No. 1983 ("R&R"), which suggests that the Court defer consideration of a non-bellwether schedule for the MDL until there are decisions by the Court on summary judgment, *Daubert* and class certification motions (the "Bellwether Motions") in the States' and Classes' (*i.e.*, DPPs and EPPs) bellwether cases.[1] Specifically, DAPs request that the Court schedule non-bellwether expert discovery in DAP cases to begin one month after the close of MDL fact discovery, by which time all Bellwether Motions will be fully briefed. Setting a fixed target for non-bellwether DAP cases now would help move non-bellwether cases forward more efficiently without disrupting the bellwether schedule or undermining the informative purposes of the bellwethers. Under DAPs' proposal, *see* Ex. 1, the Court will have an opportunity to rule on the Bellwether Motions (*Daubert* and summary judgment) before similar motions would be due in the DAPs' cases, thus maintaining the informative purpose of the Court's rulings on the Bellwether Motions without unduly delaying the MDL for a large group of plaintiffs. Additionally, DAPs'

[1] In light of the importance of this issue to DAPs, we respectfully request oral argument on these objections. Alternatively, DAPs are available to answer the Court's questions or discuss their Objection further should the Court want to do so.

proposal would allow for the completion of all discovery in the DAP cases (fact and expert), which will allow the Court to advance the MDL after the bellwether cases conclude.

This Objection is organized as follows. Section I provides context for DAPs' Objection. Section II(a) reviews DAPs' and the other parties' proposals for a non-bellwether schedule. Section II(b) demonstrates that the R&R misunderstood DAPs' proposal for a non-bellwether schedule. Finally, Section II(c) explains why the Court should overrule that limited aspect of the R&R and adopt DAPs' proposed non-bellwether schedule because: (1) it is crucial to resolving the MDL on a reasonable timetable; (2) rulings on *Daubert* issues in the State and Class bellwether cases will not offer sufficient guidance to the individualized expert issues in the non-bellwether cases to warrant a significant delay in the completion of expert discovery in the DAP cases; and (3) it allows for the efficient use of the parties' time and the Court's resources.

## I. <u>INTRODUCTION</u>

Scheduling and case management in this MDL are subject to this Court's discretion. DAPs have sought to move this MDL forward while working within the Court's case management structure. DAPs supported the States' and Classes' bellwether initiatives while proposing their own complementary initiative. *See* Ex. 2, Plaintiffs' Feb. 5, 2020 Bellwether Proposal at 8. When the Court made clear at the time that it was not prepared to consider a DAP bellwether, *see* Sept. 10, 2020 Hr'g Tr. at 54, DAPs raised the issue again nine months later only upon the Court's invitation when it observed that there is "a lot we can do with information that can be gleaned from the DAPs actually presenting some type of bellwether." June 10, 2021 Hr'g Tr. at 12. The DAPs' eventual bellwether proposal was a consensus position among all DAPs. Neither the States nor the Classes objected to it – provided they proceeded to trial first (which DAPs had already acknowledged). The Special Master nevertheless informally recommended that the Court defer the

decision about a DAP bellwether. DAPs accepted the Special Master's informal R&R based, in part, on the Special Master's statement that "it is my thought and intention that the schedules and deadlines for *both* bellwether *and non-bellwether* cases should be worked out and established in the near term, but that the deadlines for the non-bellwether cases should be later than those set for the bellwether cases." *See* Ex. 3(Italics added.).

DAPs chose this path each time believing that the Court understood their position but did not consider the time quite right for it to act on DAPs' requested relief.

This time is different.

The Special Master's Eleventh R&R causes DAPs concern that in *this* instance, with respect to the non-bellwether schedule for this MDL, DAPs' position and requested relief have been misunderstood. Because this misunderstanding directly affects the scheduling fate of all DAP cases, and the timing and resolution of all cases in the MDL, and because the scheduling of cases in this MDL is so vitally important to the resolution of this MDL, we respectfully object to the R&R, and request that the Court enter a scheduling order for DAPs' cases consistent with this Objection.

The recommendation that the Court "kick the can down the road" rather than set a schedule for the non-bellwether cases now will only lead to additional delay and does not serve the Court's interests in achieving broad and prompt resolution in this MDL. Having the DAP cases sidelined may benefit Defendants by relieving the pressure on them to settle with many of the largest Plaintiffs in the MDL, but allowing such extreme delays to occur for a sizeable share of the claims at issue impedes the goals of the MDL process.

## II. ARGUMENT

### A. DAPs' Proposed Non-Bellwether Schedule and the Other Parties' Proposal

The current schedule for the bellwether cases ends with the completion of briefing on all pretrial motions by February 15, 2024, and the completion of fact discovery for the entire MDL on April 19, 2024.[2] Nothing is presently scheduled in the MDL after April 19, 2024. Thereafter, the Court will consider the Bellwether Motions, and the bellwether parties will presumably continue their trial preparations. DAPs anticipate that this work will occupy nearly all of the balance of 2024.

Rather than delay expert discovery until 2025, DAPs' proposed non-bellwether schedule puts to good use the time *after* the close of briefing on the Bellwether Motions and MDL fact discovery. It calls for the parties in the DAP cases[3] to conduct expert discovery **after** the completion of MDL-wide fact discovery. *See* Exhibit "A" - DAPs' Proposed Schedule. DAPs' proposed schedule looks like this:

| Event | Bellwether | Non-bellwether |
|---|---|---|
| Bellwether fact discovery ends | 1/17/23 | |
| Bellwether expert discovery | 2/16/23-9/16/23 | |
| Briefing on Bellwether Motions | 2/16/23-2/15/24 | |
| MDL Fact Discovery Ends | | 4/19/24 |
| Expert discovery in DAP cases | | 5/16/24-11/16/24[4] |

---

[2] The April 19, 2024, MDL-wide fact discovery deadline has not yet been formally ordered by the Court, but it is agreed to by all parties.

[3] **Responding to the Court's request that the parties propose a schedule for all non-bellwether cases, DAPs' original proposal included deadlines that would accommodate the States' and Classes' non-bellwether cases as well. DAPs understand that these other Plaintiffs do not want these deadlines to apply in their own cases. Accordingly, these proposed deadlines are intended to apply only to the DAP cases.**

[4] DAPs' proposed schedule tracks the time increments that the Court used for the corresponding deadlines in the bellwether cases.

Under this schedule, the Bellwether Motions would be ripe for decision by February 2024. Expert discovery in the DAP cases would conclude nine months later, presumably to be followed by *Daubert* and dispositive motions. This sequencing would allow the Court to rule on the Bellwether Motions in time to create a body of rulings that would inform briefing in the DAP Motions.

By comparison, the R&R does not schedule *any* non-bellwether MDL milestones other than the end of fact discovery, unnecessarily delaying critical discovery in a significant portion of this MDL. Under the R&R's approach, the parties will not even **begin** discussions of such deadlines until April 2024. *See* R&R, ¶ II.3. DAPs' proposal would lay the foundation for briefing of DAP-specific motions by January 2025 whereas the R&R contemplates a schedule in which those motions could be delayed by a year or more.

B. **The R&R Misunderstands DAPs' Proposed Non-Bellwether Schedule**

The R&R misunderstands DAPs' proposed non-bellwether schedule in three fundamental ways.

First, the R&R suggests that DAPs' proposed non-bellwether schedule "would cause expert discovery to be collapsed into the fact discovery period." This is incorrect. DAPs propose that non-bellwether expert discovery should occur only *after* the close of MDL fact discovery (and *after* briefing of Bellwether Motions as well). *See* Ex. 1.

Second, the R&R implies that DAPs seek to try their cases even before the States' and Classes' bellwether trials. *See* R&R, ¶ I.5 ("I expressed in my informal recommendation a concern that the DAPs and Heritage might be trying to advance their cases so that their trials would precede the trials in the currently designated bellwether cases and thereby become de facto bellwethers.") This is incorrect. In fact, in statements to this Court on the record, and in written (and oral)

submissions to the Special Master, DAPs have consistently recognized the priority of the bellwether cases for trial.[5] DAPs' proposed schedule provides for that priority, while ensuring that trial-ready DAP cases exist so that the Court has additional trial options at the conclusion of the bellwether process.

Third, the R&R can be read to imply that DAPs support expedited fact discovery in a Heritage-centric case ending before the MDL fact discovery cutoff. *See* R&R, § I.4. This is incorrect. DAPs have consistently opposed Heritage's proposal because it would truncate MDL fact discovery by requiring depositions to be completed on all but a few Defendants nine months before the proposed global MDL discovery cut-off of April 19, 2024. Further, this Court has previously considered and rejected a Heritage-centric trial because, among other reasons, it presents such a small case that its result is unlikely to provide meaningful guidance for the MDL.

C. **The Court Should Adopt DAPs' Proposed Non-Bellwether Schedule**

The Court should reject the recommendation that the parties wait until April 2024 to **begin** discussing deadlines for expert discovery in the DAP cases. Instead, the Court should adopt DAPs' proposed schedule because: (1) waiting two years to start this discussion would waste valuable time with no countervailing reason to delay; (2) rulings on *Daubert* issues in the bellwether cases will likely not offer sufficient guidance to the individualized expert issues in the non-bellwether

5 *See, e.g.*, June 10, 2020 Hr'g Tr. at 9:2-8 (Blechman: "[proposing an additional DAP bellwether that would be scheduled] subject to what happens with the classes and the states who we understand are in the first position, Your Honor."); Blechman Ltr. to Sp. Master dated Oct. 1, 2021 regarding DAP bellwether proposal at 3 ("the DAP Bellwether was carefully designed to accommodate and build off the (anticipated) schedule for the current bellwethers"); at 4 n.1 ("DAPs also endorse the States and Classes' proposal of an earlier discovery cutoff for their bellwether cases. This would allow the parties to prioritize the discovery needed for those more narrow bellwether claims (while also proceeding with non-bellwether discovery) and then using the extra time after that bellwether discovery deadline to complete fact discovery that had not been completed earlier.") (italics added).

cases to warrant a significant delay in the completion of expert discovery in the DAP cases; and (3) it allows for the efficient use of the parties' time and the Court's resources.

**First, a non-bellwether schedule is crucial to this MDL resolving on a reasonable timetable.** Presently, there are 20 Corporate Defendants who are not bellwether Defendants. Without typical milestones, they face no real pressure to address their potential antitrust liability in this case to DAPs, who have no bellwether trial but comprise a very significant portion of the commerce and damages in this MDL.[6] DAPs' proposed schedule would help advance the MDL toward a conclusion by imposing important milestones that will create pressure on the parties to complete all discovery (fact and expert) in their cases and inform potential settlement discussions.[7] DAPs' proposed schedule procedurally advances more cases, which gives the Court more ways through which to expedite the MDL, particularly in the event that the bellwether cases settle or the Third Circuit accepts a Rule 23(f) appeal of any class certification order. The certainty of a non-bellwether schedule coupled with the uncertainty of the outcome of forthcoming Court rulings or trial results drives all parties to explore resolution. There will be no prospect of a final reckoning in this MDL in the DAP cases (or all cases) unless and until the Court sets a schedule requiring it to occur.

DAPs understand that the Court's decisions on the Bellwether Motions are intended to foster broader resolution of claims in the MDL, including claims by non-bellwether parties. While DAPs hope that will be the case, experience demonstrates that despite the best of intentions by all

---

[6] There may be disagreement among the parties about the exact size of the claims represented by DAPs' counsel in this MDL, but there is no credible dispute that DAPs constitute a very substantial portion of all private direct and end-payer claims in this MDL.

[7] As this Court has stated: "I found being a judge for so long and a trial attorney before that, when dates are imposed, things do happen. It's just the way of life, and the way of law." Nov. 18, 2021 Hr'g Tr. at 24.

involved, there is a significant chance that many cases in this MDL will not resolve after the Court's bellwether decisions.[8] What then? If a non-bellwether schedule is not implemented long before those rulings, then the MDL will be further delayed because of the time necessary for the parties and their experts to schedule and prepare for expert discovery, summary judgment and *Daubert* motions.[9] Experts and their consulting firms on all sides in this MDL are busy professionals who are in demand for their services in other cases and require considerable advance notice to implement work plans, prepare reports, and sit for depositions. For these reasons, if the parties do not begin discussing deadlines for expert discovery in the DAP cases until April 19, 2024, then it essentially guarantees that expert discovery would likely not commence in the DAP cases until 2025.

However, establishing a non-bellwether schedule *now* will push the non-bellwether parties to meet milestones that will advance the MDL. And if the bellwether cases do not foster global settlements, then the DAP cases will at least be ready for case-dispositive motions and trial. As such, the time to set an expert schedule for the DAP cases is *now*. (Tellingly, the bellwether parties already have an expert discovery schedule.)

---

[8] For example, the 20 Corporate Defendants who are not part of the Bellwether process may decide that the actual or perceived factual or legal differences in the claims asserted against them warrant continued litigation following decisions on summary judgment and *Daubert* motions in the bellwether cases.

[9] One of the major contributing factors in MDL 997, *In re Brand Name Prescription Drug Antitrust Litigation* (N.D. Ill.), taking 12 years for the MDL (1993-2005), and then another 10 years for the remand cases (2005-2015), was the transferee court's decision to defer fact and expert discovery concerning the direct action plaintiffs' price discrimination claims for all but the "test cases" (*i.e.*, bellwether cases) until after the trial of the class's conspiracy claim. (Unlike the *Brand Name* Court, this Court has not deferred fact discovery in all MDL cases, which definitely helps, but does not solve the problem). Consider, for example, the DPPs and EPPs, each of whom have 18 individual drug Complaints and several multiple drug overarching conspiracy Complaints as well. Even if the Classes' bellwether cases settle or go to judgment, there will be many Defendants who are not covered by those cases. This may mean pushing forward in the MDL with additional individual drug conspiracy cases and stretching out this MDL for many more years.

Second, **DAPs are differently situated from the Bellwether Plaintiffs on damages issues, and for this reason, the potential guidance provided by the Court's resolution of *Daubert* issues in the Bellwether cases does not justify delaying expert discovery in the DAP cases pending those rulings.** The rulings on *Daubert* motions in the bellwether cases, while surely important, may not provide guidance sufficient to justify delaying the non-bellwether MDL cases for years. For example, while rulings and the result in the States' bellwether will provide guidance for non-bellwether cases on liability issues, this guidance does not justify years of delay in litigating issues related to damages. The extent to which the States' method of proving damages will approximate the DAPs' method is uncertain; indeed, many of the States are seeking no damages at all, and instead seek only equitable relief. Similarly, the rulings and results in the Classes' bellwether cases will likely have little guidance for DAPs because proof of damages is Class-wide whereas each DAP must prove individual damages, and also because the class bellwether cases involve only two out of the more than 200 drugs in the MDL.

Third, **DAPs' proposed non-bellwether schedule makes good and efficient use of the parties' and Court's time following the April 19, 2024 close of fact discovery**. While the Court considers the Bellwether Motions, the DAPs and Defendants can conduct expert discovery. Because expert discovery typically does not require motion practice or the expenditure of the Court's resources, the Court will not be burdened with added work while it considers and rules on the Bellwether Motions. Additionally, because the States and Classes would play no role with respect to DAP expert discovery, it poses no burden on them. Indeed, as noted earlier, when the Special Master was considering the DAPs' bellwether proposal, the States and Classes did not object to it provided their bellwethers had priority. *See supra* p. 2.

Defendants obviously would be parties to non-bellwether DAP expert discovery, but, as noted previously, 20 Corporate Defendants are not parties to any bellwether case and will have no case deadlines that require them to advance the claims brought against them once fact discovery ends (until the Court sets additional deadlines). And for those Defendants that are parties to one or more bellwether cases, they plainly have the resources to prepare for the bellwether trials while others on their legal team participate in DAP expert discovery.[10] The burden on Defendants to do so would not be unreasonable. While it is too early in this MDL to state with certainty how many expert reports DAPs will serve, Defendants' refrain that there are too many DAP complaints is simply a red herring. As the table below reflects, there are 11 law firm groups representing DAPs that are proceeding with discovery, and DAPs anticipate that a number of DAP groups will use *common* experts. Accordingly, the number of expert reports in the DAP cases should be quite manageable.

| **LAW FIRM** | **DAP** |
|---|---|
| Kenny Nachwalter | *The Kroger Co. v. Actavis Holdco U.S., Inc., et al*, No. 18-cv-284<br>*J M Smith Corp. v. Actavis Holdco U.S., Inc., et al.,* No. 20-cv-4370<br>*Walgreen Co. v. Actavis Holdco U.S., Inc., et al.*, No. 20-cv-6258 |
| Lowey Dannenberg, P.C.; Schneider Wallace | *Humana Inc. v. Actavis Elizabeth, LLC, et al.*, Nos. 18-cv-3299, 19-cv-4862, 20-cv-6303<br>*Health Care Serv. Corp. v. Actavis Elizabeth, LLC, et al.*, No. 19-cv-5819<br>*Molina Healthcare, Inc. v. Actavis Elizabeth, et al.*, LLC, No. 20-cv-0695 |

[10] As the Special Master recognized: "it is obvious from past arguments, conferences and disputes, that separate groups of both Plaintiffs' and Defendants' lawyers have already divided up and assumed responsibility for different aspects and topics being litigated, and that there are dozens of outstanding lawyers on both sides of this MDL who can readily handle separate tracks very capably." *See* Feb. 20, 2020 Report & Recommendation.

| **LAW FIRM** | **DAP** |
|---|---|
| Zelle; Boies Schiller | *United Healthcare Services, Inc. v. Actavis Holdco U.S., et al.*, Inc., No. 19-cv-00629<br>*United Healthcare Services, Inc. v. Teva Pharm. USA, Inc., et al.*, No. 19-cv-5042<br>*United Healthcare Services, Inc. v. Sandoz, Inc., et al.*, No. 20-cv-02543 |
| Rule Garza Howley | *Cigna Corp. v. Actavis Holdco U.S., Inc., et al.*, No. 20-cv-2711 |
| Constantine Cannon | *CVS Pharmacy Inc. v. Actavis Elizabeth, LLC, et al.*, No. 20-cv-6310 |
| PBC Law | *MSP Recovery Claims LLC v. Actavis Elizabeth, LLC, et al.*, No. 20-cv-0231 |
| Hangley Aronchick | *Rite Aid Corp. v. Actavis Holdco U.S., Inc., et al.*, No. 20-cv-3367 |
| Ahern | *Winn-Dixie Stores, Inc. v. Actavis Holdco U.S., Inc., et al.*, No. 20-cv-6290 |
| Cicala Law | *Harris County v. Teva Pharm. USA, Inc., et al.*, 20-cv-2296 |
| Calcaterra Pollock | *County of Suffolk v. Actavis Holdco U.S., Inc., et al.*, No. 20-cv-4009 |
| Napoli Shkolnik | *County of Nassau v. Actavis Holdco U.S., Inc., et al.*, No. 20-cv-00065 |

## III. CONCLUSION

Based on the foregoing analysis, DAPs request that the Court overrule the Special Master's Eleventh Report & Recommendation and adopt DAPs' proposed non-bellwether schedule, or alternatively, adopt at least DAPs' proposed expert discovery schedule for the DAP non-bellwether cases.

Dated: March 28, 2022

Respectfully Submitted,

/s/ *William J. Blechman*
William J. Blechman
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail: wblechman@knpa.com

***Liaison Counsel for Direct Action Plaintiffs and Counsel for the Kroger Direct Action Plaintiffs***

644810