**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | **MDL 2724**<br>**16-MD-2724** |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | **HON. CYNTHIA M. RUFE** |

## DIRECT ACTION PLAINTIFFS' REPLY IN SUPPORT OF THEIR OBJECTIONS TO THE SPECIAL MASTER'S ELEVENTH REPORT & RECOMMENDATION

Defendants oppose DAPs' efforts to schedule expert deadlines in the DAP cases following the close of fact discovery for the entire MDL based on their *ipse dixit* that completing expert discovery in the DAP cases would "undermine the informative purposes of the bellwethers." *See* Defendants' Opposition, ECF No. 2048 ("Def. Opp."). Beyond this naked assertion, Defendants' opposition fails to offer any explanation as to how or why the scheduling of expert discovery in the DAP cases beginning in May 2024 would somehow undermine the Bellwether process. Indeed, Defendants' opposition is based entirely on conclusory and unsupported assertions that criticize DAPs' scheduling proposal without elaboration.[1]

This is because, contrary to Defendants' contention, DAPs demonstrate that their proposal would fit within the broader MDL schedule and allow the Court and the parties to leverage information provided during Bellwether proceedings to advance all DAP cases without allowing the Bellwether process to serve as a bottleneck.

---

[1] Defendants also criticize DAPs' objection because it does not defend the provision of the R&R that would require answers to all complaints. Given that DAPs support this aspect of the R&R, it is unclear why Defendants believed DAPs should have addressed this in their objection. DAPs addressed why this provision of the R&R is necessary in DAPs' response to Defendants' objection. *See* ECF No. 2049.

A.      **DAPs' Proposal Leverages the Guidance Provided by the Bellwether Process**

DAPs' proposal would schedule expert discovery in the DAP cases to occur after expert discovery is completed and after *Daubert* motions are fully briefed in the Bellwether cases.[2]  Thus, DAPs' proposal would allow the Court and the parties to fully leverage the informational value provided by the Bellwether Cases.  For example, by May 2024, all parties will know from the Bellwether proceedings how the States calculate damages for the approximately 80 drugs at issue in their Dermatology Complaint and how the Classes calculate damages on a class-wide basis in the Clobetasol and Clomipramine actions.  Similarly, all parties will know how the Bellwether Defendants challenge those damages calculations and what *Daubert* arguments the parties have raised.  Accordingly, Defendants' unsupported refrain that DAPs' proposal would "undermine the informative purposes of the bellwethers" rings hollow.

Moreover, it is implicit from Defendants' opposition that they seek to delay expert discovery in the DAP cases not just until the close of fact discovery in April 2024, but until all the Bellwether Cases are fully resolved.  *See* Def. Opp. at 3 (criticizing DAPs' proposal because it "urg[es] the Court to push forward with DAP expert discovery prior to the **resolution of the bellwether actions.**") (emphasis added).  Such a course will result in substantial delays in the DAP cases without producing any additional information.  This is because experience counsels that, in all likelihood, the Bellwether Cases will fully settle before a jury reaches a verdict in any of those cases.

And even if any of the Bellwether Cases does proceed to trial, the Court should not postpone expert discovery in the DAP Cases on this possibility.  (The other parties have chosen not to participate as it suits their different purposes.)  This is because expert discovery can – and

---

[2]      And summary judgment and class certification motions as well.

should – proceed without final resolution of all liability issues in the Bellwether Cases.  For example, whether or not a litigation class is certified on the single-drug Clomipramine and Clobetasol conspiracy cases has almost no bearing on the amount that an individual DAP was overcharged on any of the approximately 200 other drugs currently at issue in Phases 1 and 2 of fact discovery in the MDL.  Similarly, a jury's determination of damages in the State AGs' Dermatology Case will have no impact on how an expert witness calculates individualized damages in the separate DAP cases.  Although the final resolution of these cases will provide information to all parties in the MDL, none of the information that will be provided after May 2024 – by which time expert discovery and pretrial motions briefing in the Bellwether Cases will be complete – justifies substantially delaying expert discovery in the DAP Cases.

This is why the most efficient course of action is for the Court to require the parties to get as much work done in as reasonably timely fashion as possible.

**B.**      **It is Not Premature to Schedule Expert Discovery for the DAP Cases**

Defendants' suggestion that the Court should await more information before scheduling expert discovery in the DAP cases is a thinly veiled argument in favor of perpetual delay.  Although there may be more information available to the parties about case-related issues in 2026 than there will be in 2024, this is simply the nature of information – it tends to accumulate over time.  For example, Defendants' cryptically argue that "there will likely be developments in the coming years that significantly change the landscape of the MDL."  This is the kind of conclusory statement that peppers Defendants' papers on this issue, but which is not backed up by facts or specifics that are tethered to the actual management of this MDL.  Indeed, Defendants fail to point to any potential development that justifies a multi-year delay of expert discovery in the DAP cases.  This is because

expert discovery must be completed in the DAP cases in order for there to be a realistic possibility of bringing these actions to a resolution.[3]

As DAPs noted in their initial Objection, ECF No. 2024, providing the parties with certainty about future scheduling milestones will play an important role in bringing parties to the table to begin negotiating settlements because both sides know that there is a day of reckoning and milestones that the Court expects them to meet.  Tellingly, Defendants make no effort to dispute this in their opposition. Instead, they argue that because the Classes and States do not ask the Court to schedule additional deadlines in their non-bellwether cases now, this is somehow justification to decline to impose such deadlines in the DAP cases as well.  But this is a red herring.  The Classes and States already have vehicles through which to advance their respective cases with the Bellwethers.  By contrast, the DAPs do not.

Accordingly, Defendants fail to demonstrate why it is premature to schedule expert discovery deadlines in the DAP Cases.

C.    **Defendants Implicitly Concede That They Will Not be Burdened by Litigating Expert Discovery in the DAP Cases**

Rather than even attempting to demonstrate that they will be unduly burdened if expert discovery in the DAP cases is scheduled now to begin in May 2024, Defendants attempt to turn the issue around by suggesting that "DAPs offer no support for their assertion that the 'burden on Defendants' for dual-tracking DAP expert work and any Bellwether proceedings would 'not be unreasonable.'"  Def. Opp. at 4.

---

[3]    Stated differently, DAPs' Objection provides detailed substance and facts to answer the question "why" deferring consideration of a DAP expert discovery schedule until after resolution of the Bellwether Motions or the Bellwether Cases is inadvisable.  The Objection explains *why* putting off the DAP expert discovery schedule will cause years of delay in the MDL, and *why* doing so is inefficient, retards settlements, and fails to optimize this Court's calendar. Defendants counter with conclusory remarks noted above without explaining *why*.

DAPs are obviously not privy to the precise amount of resources available to every Defense team in the MDL.  But common sense and experience suggest that, if the Court schedules expert discovery deadlines in the DAP cases as DAPs have proposed, then the large law firms representing Defendants will be able to plan accordingly.  Indeed, the 21 DAP cases that would be subject to these deadlines are a fairly modest total in relation to other pending antitrust MDLs.  For example, in the *Rail Freight* MDL, the District Court scheduled expert discovery to commence in "more than 100" DAP cases one month after the close of fact discovery.  *See In Re: Rail Freight Fuel Surcharge Antitrust Litigation (No. II)*, MDL No. 2925, ECF No. 676 (D.D.C. July 6, 2021).  Similarly, in *Broilers Chickens*, the Court scheduled expert discovery to commence simultaneously in three separate putative class actions and approximately 90 DAP cases.  *See In Re: Broiler Chicken Antitrust Litigation*, Case No. 16-cv-8637, ECF No. 4748 (N.D. Ill. June 17, 2021).[4]

Accordingly, proceeding with expert discovery in all DAP cases following the close of fact discovery in the MDL would be eminently doable, and Defendants make no attempt to demonstrate otherwise.  For these reasons, the Court should schedule expert discovery to begin in the DAP Cases beginning in May 2024, as DAPs have proposed.

---

[4]     In *Broilers*, which is not an MDL, the Court later allowed, at Plaintiffs' request, parties that wished to defer expert discovery until after the completion of related pending criminal proceedings to do so.  But because the Court had scheduled expert deadlines in all cases, expert discovery proceeded and those cases that proceeded with expert discovery are on track for a trial in Fall 2023.  *See Broilers*, ECF No. 5422 (N.D. Ill. Feb. 8, 2022).

Dated: April 21, 2022                         Respectfully submitted,

William J. Blechman
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida  33131
Tel:   (305) 373-1000
Fax:   (305) 372-1861
E-mail: wblechman@knpa.com

***Liaison Counsel for Direct Action
Plaintiffs and Counsel for the Kroger
Direct Action Plaintiffs***

645377