**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**REPLY MEMORANDUM OF THE STATES, END-PAYER PLAINTIFFS, DIRECT PURCHASER PLAINTIFFS, AND INDIRECT RESELLER PLAINTIFFS IN FURTHER SUPPORT OF THEIR RESPONSE AND PARTIAL OBJECTION TO SPECIAL MASTER DAVID H. MARION'S ELEVENTH REPORT AND RECOMMENDATION REGARDING THE SCHEDULING OF NON-BELLWETHER CASES**

The States, End-Payer Plaintiffs, Direct Purchaser Plaintiffs, and Indirect Reseller Plaintiffs ("Responding Plaintiffs") respectfully submit this Reply Memorandum in Further Support of Their Partial Objection to Special Master Marion's Eleventh Report and Recommendation Regarding the Scheduling of Non-Bellwether Cases.

**1. The Court Should Adopt the Joint Proposal**

As Responding Plaintiffs demonstrated in their previous filings, the "Joint Proposal" recommended by Special Master Marion constitutes a sound, incremental approach to non-Bellwether case management.[1] It establishes a single fact-discovery deadline of April 19, 2024, thus ensuring all MDL cases continue to move forward consistent with this Court's repeated

---

[1] *See* Response and Partial Objection of the States, End-Payer Plaintiffs, Direct Purchaser Plaintiffs, and Indirect Reseller Plaintiffs to Special Master David H. Marion's Eleventh Report and Recommendation Regarding the Scheduling of Non-Bellwether Cases, MDL Doc. 2023, ("Response and Partial Objection") and Responding Plaintiffs' Response in Opposition to Defendant Heritage Pharmaceutical Inc.'s Response to Special Master Marion's Eleventh Report and Recommendation Relating to Non-Bellwether Scheduling, MDL Doc. 2046 ("Responding Plaintiffs' Opp.").

directives. The Joint Proposal also establishes a meet-and-confer procedure, starting in six months and as needed thereafter, for the parties to identify appropriate cases to be placed on track for additional deadlines. *See* Response and Partial Objection, MDL Doc. 2023, Ex. A.

This iterative approach is all the more sensible now that the Court has set an expiration date of July 17, 2022 for the DOJ stay of 42 witness depositions and the related stay of 10 Teva witness depositions. *See* PTO 200. Any further witness-specific stay requests are to be resolved by Special Discovery Master Merenstein in the coming months. *See id.* ¶ 12. The expiration of the limited stay and any ensuing litigation will unquestionably shape the contours of discovery in this MDL, which will directly impact the durability of any additional scheduling proposals. All or most of the significant case management questions raised by the limited stay should be resolved within six months and all parties will then be better positioned to develop a schedule or schedules for non-Bellwether proceedings. And, as Responding Plaintiffs have explained before, other developments in the criminal matters and the MDL will continue to occur during the next six months. All of these developments are likely to provide all parties with additional information necessary to formulate durable scheduling proposals for the proceedings that follow the Bellwethers. *See* Response and Partial Objection, MDL Doc. 2023, at 2.

Importantly for present purposes, because both the DAP and Heritage proposals are keyed off the Bellwether case schedule and purport to accommodate and build on the deadlines in PTO 188, it would be premature to adopt them now before all parties have benefited from the clarity around the limited stay that is likely to shape this MDL in the near future. Based on court filings and statements of counsel during the January 13, 2022 General Status Conference, Responding Plaintiffs expect that DOJ, certain Defendants and counsel for specific witnesses will file motions seeking to stay a substantial number of key depositions. *See* 1/13/2022 Status

Conference Tr. at 23:2-10 (DOJ stating, "[T]here are some individuals on that list that the Government would seek to stay the deposition of through the conclusion of criminal trials, regardless of the Bellwether discovery period just because of their particular importance and importance that we know with certainty or close to certainty today"); *id.* at 46:13-47:15 (defense counsel confirming that "collateral litigation … would be necessitated by the fact that the criminal proceedings are still ongoing"); *id.* at 53:1-8 (Teva counsel referencing the number of disputes that the Court will have to "grapple with" if the Teva-witness stay is lifted); Defs.' Jt. Reply in Supp. of Intervenor United States of America's Motion for a Limited Stay of Discovery, MDL Doc. 1932, at 3 (predicting an "inevitable flood of discovery disputes that will come before this Court should the limited stay of discovery be lifted at this time").[2]

Litigating the Bellwether cases without the testimony of the key individual conspirators could fatally undermine the Bellwether process. Therefore, if the depositions of critical witnesses remain stayed beyond July 17, 2022, all parties will confront a significant risk that fact discovery for the Bellwether cases—and possibly all cases—may need to be extended. Consequently, because any schedule for non-Bellwether proceedings will likely be built from the foundation of PTO 188's Bellwether schedule, a potential extension of the Bellwether fact discovery deadline would have a ripple effect on all aspects of any proposed non-Bellwether schedule. Because of

---

[2] These anticipated disputes regarding further deposition stays likely will be compounded by additional disputes with witnesses seeking to delay their depositions because they may assert the Fifth Amendment, or because they refuse to sit for a multi-day deposition. Plaintiffs have already been litigating these disputes and expect they will multiply as the limited stay expires and more key witnesses are noticed for deposition.

this reality, the Joint Proposal's "wait briefly and see" approach provides the most logical and efficient path forward. *See* Eleventh R&R at 3 ¶ 1.[3]

### 2. The Heritage Proposal Should Be Rejected

This Court has already twice rejected the argument that putting some Heritage-centric cases on a special track would meaningfully advance the MDL. *See, e.g.*, Mem. Opinion of 7/13/2020, MDL Doc. 1442 (rejecting Heritage-centric bellwether proposal); PTO 171 (same). Heritage's current proposal – fast-tracking only a *single* Heritage-centric case – presents even fewer case management benefits. It would do nothing to resolve the dozens of private plaintiff complaints against Heritage but would require an earlier deadline for all depositions of the witnesses from all of Heritage's co-conspirators. *See* Response and Partial Objection, MDL Doc. 2023, and Responding Plaintiffs' Opp., MDL Doc. 2046.

Moreover, the false premises and obvious errors visible in Heritage's Opposition should lead this Court to once again reject Heritage's flawed proposal.[4] Heritage assumes that the only non-Heritage witnesses worthy of depositions are those identified in Heritage's proffers as

---

[3] DAPs misinterpret the Eleventh R&R as *preventing* discussion of non-Bellwether deadlines until after the close of discovery. *See* Responding Plaintiffs' Opp., MDL Doc. 2046, at 10 n.3 (explaining the error in DAPs' interpretation). Defendants, after joining the Joint Proposal recommended by Special Master Marion (*see* Defs.' Objection to Special Master David H. Marion's Eleventh Report and Recommendation, MDL Doc. 2025, at 3 n.2), now seem to have changed course. Perhaps seeing an opportunity to delay the MDL, Defendants now embrace DAPs' faulty interpretation of the Eleventh R&R and call for postponing non-Bellwether schedule discussions until after the close of fact discovery. *See* Defs.' Resp. in Opp. to DAPs' Objection to Special Master David H. Marion's Eleventh Report and Recommendation, MDL Doc. 2048, at 2. Responding Plaintiffs do not agree that such a prolonged delay would be in the best interests of the MDL or view such delay as consistent with the either the Joint Proposal or the Eleventh R&R.

[4] *See* Heritage Pharmaceuticals' Opp. to Certain Plaintiffs' Partial Objection to Special Master Marion's Eleventh Report and Recommendation Relating to Non-Bellwether Scheduling, MDL Doc. 2047 ("Heritage Opp.").

having communicated with personnel at Heritage. *See* Heritage Opp. at 5. It suggests that Plaintiffs could depose 32 witnesses at most and be ready for trial. *See id*. But Plaintiffs must also gather facts that were not part of any Heritage proffer, including depositions regarding communications between competitors other than Heritage. For example, Heritage disingenuously suggests that only two of the twenty-five individual Defendants, Rajiv Malik and Satish Mehta, could have testimony relevant to the States' Heritage-centric claims. *See id*. at 4-5 & Decl. of Gregory Vose, MDL Doc. 2047-1 ("Vose Decl."), at Ex. A thereto. But beyond Malik and Mehta, the States' Heritage-centric Complaint *specifically identifies* several individual Defendants as Heritage's co-conspirators. At least fifteen were employed by one of the corporate Defendants (or an affiliated entity) named in that complaint.

Heritage also misleads the Court by suggesting that its proposal will involve only "a fraction of all defendants named" in the MDL—**20 of 135**— and thus would not disrupt the wider MDL discovery proceedings. *See* Heritage Opp. at 4-5. This miscalculation arises from Heritage's fundamental misapprehension of basic facts about the MDL and how discovery is operating within it.

First, Heritage grossly overstates the denominator: the number of Defendants subject to discovery in the MDL. Its tally of Defendants includes many duplicate entries listing the same entity twice,[5] at least one entity that does not exist ("USA, Greenstone LLC"), and ten

---

[5] *See* Vose Decl. at ¶ 3 & Ex. A thereto, counting the following Defendants more than once: "Amneal Pharmaceuticals LLC"; "Bausch Health US, LLC"; "Hikma Pharmaceuticals USA Inc."; "Impax Laboratories, LLC"; and "Kavod Pharmaceuticals, LLC."

"Purchasing Defendants" such as McKesson and Walgreens, who were sued only by IRPs and which are subject to a discovery stay.[6]

Heritage further balloons its count by treating numerous related entities as distinct defendants even though they are and always have been defending claims in this MDL as a single corporate family. For example, Heritage's analysis incorrectly assumes there are nine "Bausch" defendants and eight "Mylan" defendants, each requiring separate discovery by Plaintiffs (*see* Vose Decl., Ex. A), when there really is just one "Bausch" and one "Mylan" for discovery purposes.

In order to correctly identify the number of corporate Defendants subject to discovery, Heritage should have reviewed this Court's Pretrial Orders. As the Court's Deposition Protocol makes clear (PTO 158 at 12 n.3), there are **40** corporate Defendant families subject to discovery – not "**110**," as Heritage erroneously suggests. *See* Heritage Opp. at 4 & Vose Decl. ¶ 4.

Second, these egregious counting errors aside, Heritage's argument downplaying the disruption to be caused by its plan ignores how discovery is actually proceeding in the MDL. Except for the IRPs' claims against the Purchasing Defendants and drugs added to the MDL after September 4, 2020 (*see* PTO 153 ¶¶ 4-5), discovery of all MDL claims – Bellwether and non-Bellwether claims alike, including the Heritage-centric claims – is being conducted at the same time by all parties. And because witnesses are presumptively subject to one deposition, and all depositions are cross-noticed for all cases, no claims or defenses can proceed through discovery in isolation, as Heritage proposes for the States' Heritage-centric claims. These dynamics dictate that if Heritage's proposal is adopted, it will have real and prejudicial impacts on the MDL.

---

[6] As all parties have acknowledged, those entities are irrelevant to the issue presently before the Court. *See* Purchasing Defendants' Objections to Special Master David H. Marion's Eleventh Report and Recommendation, MDL Doc. 2022.

Of the 40 corporate MDL Defendants, the States have named 17 of them in their Heritage-centric complaint.[7] Ten of these 17 corporate MDL Defendants are not named in any of the Bellwether cases.[8] Thus, under Heritage's proposal, for practical purposes,[9] all Plaintiffs would need to conclude nearly all discovery of these ten non-Bellwether Defendants by June 17, 2023, instead of having the additional ten months (until April 19, 2024) that all parties except Heritage agreed are necessary and appropriate.

Consequently, under Heritage's proposal, the States, EPPs and DPPs would be particularly prejudiced. For all practical purposes, Heritage's proposal would force the Bellwether Plaintiffs to complete virtually all discovery of 10 non-Bellwether Defendants between January 17 and June 17, 2023 (*i.e.*, the Bellwether fact discovery deadline and Heritage's proposed deadline for discovery in the States' Heritage-centric case). That five-month window of time would be the same time period during which the Bellwether Plaintiffs (and Defendants) will be deeply engaged in Bellwether expert discovery and class certification. *See* PTO 188 ¶¶ 2-5 (setting deadlines between February 16, 2023 and July 31, 2023).

---

[7] These Defendants include Actavis, Apotex, Ascend, Aurobindo, Citron, Dr. Reddy's, Emcure, Glenmark, Heritage, Lannett, Mayne, Mylan, Par, Sandoz, Sun, Teva and Zydus. Heritage apparently counted two related Actavis entities as being separate, and thus arrived at "18" corporate Defendants in the States' Heritage-centric complaint. *See* Heritage Opp. at 4 & Vose Decl. ¶ 4 & Ex. A.

[8] These Defendants include Apotex, Ascend, Citron, Dr. Reddy's, Emcure, Heritage, Mayne, Par, Teva and Zydus.

[9] After passage of the Bellwether-specific deadline or the proposed Heritage-centric-specific deadline, Plaintiffs would remain free thereafter to conduct additional depositions relating to other cases even of witnesses for Defendants who are parties to the Bellwethers or the States' Heritage-centric case. At this time, because of the one-deposition-per-witness presumption, and the fact that few witnesses appear to have information relevant to only some claims or cases, as a practical matter such additional discovery appears likely to be limited. These circumstances reflect the "practical" reality Responding Plaintiffs outline herein.

Fundamentally, without any meaningful benefit to the MDL for doing so, Heritage's proposal would divert the Bellwether parties' resources and energies away from critical work in the Bellwether cases to focus on a single case involving Heritage, thereby undercutting the effectiveness of the Bellwether process itself, and diminishing the guidance the Court intended it to provide. *See* Response and Partial Objection, MDL Doc. 2023, at 5-6 and Responding Plaintiffs' Opp., MDL Doc. 2046 at 7.

Finally, Heritage's proposal creates a needlessly imbalanced discovery schedule. For all practical purposes, all Plaintiffs will need to conclude a majority if not all discovery of the corporate Bellwether Defendants by January 17, 2023. Therefore, if Heritage's proposal is adopted, the States' offensive discovery will essentially need to be completed by June 17, 2023 except for the *two* corporate Defendants that the States only named in their Teva-centric complaint, Breckenridge and Upsher-Smith. And yet, there will still be 10 more months in the agreed-upon discovery period (through April 19, 2024). Such an imbalanced discovery regime is inefficient and serves no useful purpose, especially given the absence of any substantial justifications for accelerating the Heritage-centric case, as Heritage proposes.

### 3. Conclusion

The Joint Proposal recommended by Special Master Marion provides a superior path forward for the non-Bellwether cases. Rather than accelerating one non-Bellwether case right now, as Heritage proposes, or setting deadlines for a cluster of other non-Bellwether cases before the resolution of significant, near-term uncertainty concerning the scheduling of key witnesses, as DAPs propose, the Court should adopt the Joint Proposal. Doing so will enable the parties and the Court to reconvene in six months' time, with the benefit of more and better information, and in a better position to develop a non-Bellwether plan that can be built to last. For the foregoing

reasons, and those set forth in their prior filings (*see* Response and Partial Objection, MDL Doc.

2023 & Responding Plaintiffs' Opp., MDL Doc. 2046), Responding Plaintiffs respectfully

request that this Court adopt the Eleventh R&R.

Dated: April 21, 2022                                    Respectfully submitted,

*/s/ Roberta D. Liebenberg*                              */s/ W. Joseph Nielsen*
Roberta D. Liebenberg                                   W. Joseph Nielsen
FINE, KAPLAN, AND BLACK, R.P.C.                         Assistant Attorney General
One South Broad Street, 23rd Floor                      165 Capitol Avenue
Philadelphia, PA 19107                                  Hartford, CT 06106
(215) 567-6565                                          (860) 808-5040
rliebenberg@finekaplan.com                              joseph.nielsen@ct.gov

*Lead and Liaison Counsel for the*                       *Liaison Counsel for the States*
*End-Payer Plaintiffs*

*/s/ Jonathan W. Cuneo*                                  */s/ Dianne M. Nast*
Jonathan W. Cuneo                                       Dianne M. Nast
CUNEO, GILBERT & LADUCA LLP                             NASTLAW LLC
4725 Wisconsin Ave. NW, Suite 200                       1101 Market Street, Suite 2801
Washington, DC 20016                                    Philadelphia, PA 19107
(202) 789-3960                                          (215) 923-9300
jonc@cuneolaw.com                                       dnast@nastlaw.com

*Lead Counsel for the Indirect Reseller*                 *Lead and Liaison Counsel for the*
*Plaintiffs*                                             *Direct Purchaser Plaintiffs*