**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>Case No. 16-md-2724-CMR |
| THIS DOCUMENT RELATES TO:<br><br>*All Actions* | HON. CYNTHIA M. RUFE |

**HERITAGE PHARMACEUTICALS' REPLY IN SUPPORT OF ITS
RESPONSE TO SPECIAL MASTER MARION'S ELEVENTH REPORT AND
RECOMMENDATION RELATING TO NON-BELLWETHER SCHEDULING**

Defendant Heritage Pharmaceuticals Inc. ("Heritage") respectfully submits this Reply

Memorandum in response to the Opposition to Heritage's Response to the Non-Bellwether

Recommendation ("Plaintiffs' Opposition") filed by the States, End-Payer Plaintiffs, Direct

Purchaser Plaintiffs, and Indirect Reseller Plaintiffs (collectively, "Plaintiffs" or "Objecting

Plaintiffs") (ECF No. 2046), and in further support of its Response to Special Master David H.

Marion's Eleventh Report and Recommendation Regarding the Scheduling of Non-Bellwether

Cases (the "Non-Bellwether Recommendation"), and its proposal.[1]

## INTRODUCTION

Plaintiffs try mightily to demonstrate that there is nothing *so unique* about Heritage or the

claims against it to warrant a separate litigation schedule, and to argue that the proposed June 17,

2023 discovery cut-off for the Heritage-Centric Claims will be so disruptive and just too much

---

[1] Heritage asks the Court to adopt its three-prong proposal for the efficient resolution of the Plaintiff States' Consolidated Amended Complaint filed June 18, 2018 alleging their Heritage-Centric Claims ("States' Heritage-Centric Complaint" or "States' Heritage-Centric Claims"):  (1) a fact discovery cut-off of June 17, 2023, (2) a trial date no earlier than 90 days after the trial of the bellwether claims, and (3) a meet and confer process for establishment of deadlines for litigation activity occurring between the end of fact discovery and trial, as other parties proposed for all non-bellwether claims (the "Heritage Proposal").  ECF No. 2028.

work for them to do in the next 14 months.  As Heritage has already amply demonstrated,
Plaintiffs fail in these efforts by a wide margin, including because their bald claim that discovery
relating to the Heritage-Centric Claims will necessarily involve most of the claims and most of
the Defendants is patently and demonstrably false.

As to Heritage's unique role in these cases, Plaintiffs ignore the following, indisputable
facts that, together, make clear that Plaintiffs' efforts to disguise Heritage as just one more
defendant, like many others, are entirely misplaced:



- Those disclosures, and Heritage's and Emcure's "substantial and ongoing
  cooperation," according to the DOJ, have "allowed the United States to advance its
  investigation into criminal antitrust conspiracies among other manufacturers of
  generic pharmaceuticals";[2]

- ████████████████████████████████████████████████,
  the DOJ also stated that "[t]he agreement can ensure that integrity has been restored
  to Heritage's operations *and preserve its financial viability* while preserving the
  United States' ability to prosecute it should material breaches occur";[3]

- █████████████████████████████████████
  ████████.  Plaintiffs' Opposition reflects nothing of the kind with respect to any
  other Defendant;

- Plaintiffs have singled out the Heritage-Centric Claims as involving relatively few
  defendants and "involv[ing] a relatively small number of low-volume, niche drugs" –
  also nothing they claim to be the case with respect to the other non-bellwether claims;
  and

---

[2] DOJ Press Release, May 31, 2019.  https://www.justice.gov/opa/pr/pharmaceutical-company-admits-price-fixing-violation-antitrust-law-resolves-related-false.

[3] *Id.*

- Heritage has been in these cases for *years* longer than most other Defendants, and the States' consolidated, amended complaint against it was filed a full year before the Teva complaint, and two years before the dermatological complaint.  It is no exaggeration to say that preserving Heritage's "financial viability," a worthy goal according to the DOJ, depends in significant part on being able to resolve the claims against it in fewer than ten (or more) years.

Furthermore, Heritage has already amply demonstrated that Plaintiffs have *grossly* exaggerated the work required to obtain the remaining discovery they need to litigate the States' Heritage-Centric Claims, and their repeated efforts here to argue that *it's just too much work* for them to do in the next fourteen months rings no less hollow now than it did before.

For these and the other reasons discussed below, the Court should not permit Plaintiffs to virtually ignore the Heritage-Centric Claims for another year (or more), and 'put their feet to the fire' by adopting Heritage's proposal.

**ARGUMENT**

## I.     Heritage's Unique Status Justifies Adoption of its Proposal

This Court has acknowledged Heritage's unique status ██████████████ on several occasions, and Plaintiffs' efforts to brush aside that incontrovertible fact and to try to portray Heritage as just another Defendant are entirely misplaced.  Yet as noted above, its unique status does not derive solely from ███████████.  Rather, it is both entirely appropriate and consistent with this Court's interest in ensuring a "just resolution" of the Heritage-Centric claims as speedily, inexpensively, and fairly as possible,"[4] to establish a separate and modestly faster litigation track for those claims for several other reasons.  First, Heritage has already been defending claims against it for over five years; the States' consolidated Heritage-Centric Complaint has now been pending for four years; and that Complaint was filed one year before

---

[4] 2 Moore's Federal Practice - Civil 10.1 (2021) (quoting Manual for Complex Litigation); *see also* Fed. R. Civ. P. 1 (The Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

the Teva consolidated complaint and two years before the Dermatological complaint.  Second, the Heritage Proposal recognizes Heritage's unique position not just as a cooperating defendant, but ███████████████████████████████████████████████████████ ████████████████████████████████ in the States' Heritage-Centric Complaint.  Third, by expressly recognizing Heritage's unique status and scheduling the claims against it accordingly, the Court will send a message to ███████████████████████ that the federal courts do care about the risk that leniency candidates face, after being rewarded for their cooperation with the DOJ, of being stuck litigating the civil claims against them for a decade (or more).[5] ███████████████████████████████ ████████████████████, it certainly did not expect to be stuck in fact discovery of those claims by civil plaintiffs for the next *eight* years, as called for by the Joint Proposal. This is not, to say the least, an inviting prospect for ███████████████████████.

Yet, Heritage is not unique *solely* because it was named in the first States' complaint, or *solely* because it has admitted to criminal liability on the majority of products at issue in the States' Heritage-Centric Complaint.  Heritage is unique because it is the *only* Defendant alleged as the "ringleader"[6] of the first-filed complaint by the States that has also (1) admitted to criminal liability ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

---

[5] Plaintiffs do not dispute that Heritage was named in the first complaint filed by the States, filed on December 15, 2016.  Heritage was later named in the first consolidated complaint brought by the States on June 18, 2018, alleging a multi-product, multi-defendant overarching conspiracy.

[6] *See* December 15, 2016 Complaint in *State of Connecticut, et al., v. Aurobindo Pharma USA, Inc., et al.* 2:17-cv-3768 at ECF No. 1, ¶ 10.

████████. Moreover, adoption of Heritage's proposal will at least be a concrete step forward toward mitigating the inevitable consequences of Plaintiffs waiting as many as ten years after the relevant events occurred to depose witnesses. Memories do not improve with each passing year, and as a █████████████████████████████, Heritage has an interest in doing what it can to reduce any additional delay in the depositions of its witnesses.

Finally, but critically, Heritage ████████████████████████████ ████████████████████████████. As the DOJ stated, Heritage received – or certainly thought it received – ████████████████████, and a path forward toward "financial viability." That can't happen until it resolves the present cases, and the mounting legal costs incurred in this protracted litigation have negatively impacted Heritage's now uncertain and precarious future "financial viability." *That* is why it is eager to move forward, and finds itself in the odd position of having to advocate for a *faster* schedule and path to settlement or trial than Plaintiffs desire.

All of these factors combined make clear that adopting Heritage's proposed schedule is amply justified by its unique status in these cases. Moreover, as further demonstrated below, Plaintiffs' efforts to demonstrate that, however otherwise justified, adoption of Heritage's proposal will just be too disruptive and burdensome for them to handle are utterly at odds with the facts.

## II.    The Heritage Proposal Respects the Bellwether Process

Plaintiffs contend that the Heritage Proposal is "inconsistent with the Court's repeated directives to prioritize the bellwether processes by preemptively creating a parallel and unnecessary second quasi-bellwether track." ECF No. 2046 at 3. Not so. The Heritage Proposal respects the bellwether process by ensuring that any litigation activity occurring in the Heritage-Centric Claims does not occur until after corresponding activity in the bellwether cases. For

example, the proposed fact discovery deadline of June 17, 2023 for the Heritage-Centric Claims is five months *after* the bellwether fact discovery deadline of January 17, 2023.  Under the Heritage Proposal, trial could not occur any earlier than 90 days *after* the conclusion of the bellwether trial.   And Heritage has proposed that deadlines for events between the end of fact discovery and trial be set following negotiations between the parties – negotiations that will of course be informed by developments in the bellwether proceedings.   The Heritage Proposal in no way creates a "parallel" second bellwether track because all post-discovery activity in the Heritage-Centric Claims will necessarily occur after corresponding activity in the bellwether cases.

Moreover, Plaintiffs' repeated contention that it would be just too difficult to conduct discovery relating to the Heritage-Centric Claims and the bellwether claims is simply not credible.  Nor, for that matter, does their argument that they would need to cram the Heritage-Centric discovery into the five months between  January 17, 2023 and Heritage's proposed fact discovery deadline is June 17, 2023 even make sense.  They can and should, of course, use the remainder of 2022 to take the discovery.  Why can't they?  Plaintiffs do not say.  Moreover, as demonstrated in Heritage's prior memorandum (ECF No. 2047 at 2), it simply is not credible to suggest that the dozens of law firms and state attorney general offices and hundreds of attorneys that represent the Plaintiffs would be strapped so thin that they would be unable to take fact discovery in one case and expert discovery in another over the course of five months.

To be clear, the Heritage Proposal is intended to place the Heritage-Centric Claims on a faster track than the other *non*-bellwether claims, given Heritage's unique status as demonstrated above.  That the Court has not selected the Heritage-Centric Claims as a bellwether has no bearing on whether the Heritage-Centric Claims should be placed on a faster discovery track than

the remaining non-bellwether cases, which is an issue the Court now faces for the first time.  The

Heritage Proposal is merely the middle ground – and the correct one – between bellwether and

the "stay mode"[7] Heritage has found itself in.

### III.    An Earlier Fact Discovery Cutoff for the Heritage-Centric Claims Does Not Vitiate the April 19, 2024 Cutoff for Other Non-Bellwether Cases

Plaintiffs' assertion that Heritage's proposed June 17, 2023 fact discovery deadline would

vitiate the April 19, 2024 deadline "carefully negotiated" by other parties is belied by the facts.

Plaintiffs erroneously contend that the great majority of all non-bellwether discovery would need

to be completed by June 17, 2023, implicating "all Plaintiffs in addition to the States" and

"nearly all Defendants other than Heritage."  ECF No. 2046 at 5.  But as demonstrated in the

Declaration of Gregory Vose (ECF No. 2047-1), Plaintiffs greatly exaggerate the factual overlap

between the States' Heritage-Centric Complaint and the other non-bellwether cases.  As noted

previously, the States' Heritage-Centric Complaint names 20 defendants, while other complaints

in the MDL name *an additional 115 defendants*.[8]  We await Plaintiffs' explanation as to how it

can possibly be given this fact that discovery necessary for the litigation of the States' Heritage-

Centric Claims will implicate "nearly all Defendants other than Heritage;" particularly given the

Plaintiffs' prior argument to this Court that the Heritage-Centric Claims are small and not

representative of other claims in the MDL.[9]

---

[7] Plaintiffs contend that it is "simply not true that discovery of Heritage is stayed."  ECF No. 2046 at 8.  If, as Plaintiffs state, discovery of Heritage is underway and proceeding with due haste, then Heritage fails to understand why it cannot be completed within the next 14 month, as called for by the Heritage Proposal.  In any event, other than limited questioning of the handful of witnesses plaintiffs have deposed to date relating to conduct relevant to the Heritage-Centric Claims, Plaintiffs have clearly decided, without approval from this Court, to stage their discovery, with the Heritage-Centric Claims at the end of the line.

[8] ECF No. 2047-1, ¶ 4.

[9] Plaintiffs' Bellwether Memorandum, ECF No. 1333 at 10 ("The Heritage-centric cases Defendants have put forward focus on a small, unrepresentative manufacturer (Heritage, an ACPERA applicant whose top executives have pled guilty) and a collection of mostly low-volume drugs."); 33 ("First, as discussed above, the Heritage-centric cases are not representative of the larger claims in this MDL.").

Plaintiffs' remaining arguments fare no better.  First, Plaintiffs argue that the Heritage Proposal would expedite "extensive" third-party discovery that involves "dozens of wholesalers, retail pharmacies, pharmacy benefit managers, and other entities."  *Id*.  Not one of these third-party entities, however, is unique to the Heritage-Centric Claims – Plaintiffs can take discovery of those entities at any point through their proposed April 19, 2024 deadline (and presumably need to do so with respect to the bellwether cases in any event).  Second, Plaintiffs claim that the Heritage Proposal will prejudice other Defendants, who will need to expedite discovery of Plaintiffs.  Setting aside the fact that the other Defendants chose not to submit an opposition to the Heritage Proposal (ECF No. 2048 at n. 1), the claims at issue are those of Plaintiffs, so the primary unique discovery required by Defendants relates to damages, which Defendants have already been actively pursuing.  Defendants have to date been seeking damages discovery from Plaintiffs as to *all* of their claims collectively, and there is nothing in Heritage's proposal that would require them to change that now, and seek damages discovery just relating to the Heritage-Centric Claims and obtain it by the deadline.   Third, Plaintiffs' contention that the "one witness one deposition rule" would force the private Plaintiffs to examine Heritage witnesses relating to their overarching conspiracy allegations is also entirely misplaced.  Plaintiffs need to coordinate in taking all the deposition for the same reason.  If the argument is that they simply won't have time to participate in the depositions of the handful of Heritage witnesses, rather than leave the questioning to a single lawyer for one of the Plaintiffs' groups, which has been their practice, they'll have to explain why they lack the resources to do so.  So far, they haven't even tried.

The Court and Heritage share an interest in ensuring that the Heritage-Centric Claims are resolved without undue delay.  Plaintiffs do not appear to share that interest.  However, at

bottom, Plaintiffs' gross exaggerations of the overlap between the Heritage-Centric Claims and other non-bellwethers, and the burdens of taking and competing their discovery of the Heritage-Centric Claims, are utterly at odds with the facts. Whatever Plaintiffs' reasons for wanting to put off as long as possible investing more time in litigating the Heritage-Centric Claims, one thing is for sure: it's not for the reasons stated in their Opposition. Adopting Heritage' proposal will at least reduce by nearly a year the delay in resolving the claims against it. There is ample reason for the Court to do so and no reason – at least not one that the Plaintiffs have been able to articulate to date – for rejecting that proposal.

CONCLUSION

For the reasons set forth above, Heritage respectfully asks the Court to set aside Plaintiffs' Objection and enter an order adopting Heritage's amended proposal to establish a fact discovery cut-off for the States' Heritage-Centric Claims of June 17, 2023; directing that Heritage and the States shall meet and confer, and submit a proposed scheduling order for the continued litigation of the Heritage-Centric Claims, no later than April 14, 2023; and providing that the trial of the Heritage Centric Claims cannot begin fewer than 90 days after the conclusion of the bellwether trial.

DATED:  April 21, 2022                    Respectfully submitted,


                                          */s/ Gregory Vose*_____
                                          Edward B. Schwartz
                                          Andrew C. Bernasconi
                                          Paola Nunez-Henry
                                          Reed Smith LLP
                                          1301 K Street NW
                                          Suite 1000
                                          Washington, DC 20005
                                          Phone: (202) 414-9200
                                          eschwartz@reedsmith.com
                                          abernasconi@reedsmith.com
                                          pnunez-henry@reedsmith.com

                                          Gregory Vose
                                          Amy M. Kerlin
                                          Reed Smith LLP
                                          225 Fifth Avenue
                                          Pittsburgh, PA 15222
                                          Phone:  (412) 288-3131
                                          gvose@reedsmith.com
                                          akerlin@reedsmith.com

                                          *Counsel for Heritage Pharmaceuticals Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2022, a copy of the foregoing was filed via the Court's

ECF system, which will provide service to all registered counsel.

/s/ *Gregory Vose*
Gregory Vose