**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:** | **HON. CYNTHIA M. RUFE** |
| *In re Clobetasol Cases (End-Payer)*<br>*In re Clomipramine Cases (End-Payer)*<br>*In re Pravastatin Cases (End-Payer)* | **16-CB-27242**<br>**16-CM-27242**<br>**16-PV-27242** |

**MEMORANDUM OPINION**

Rufe, J.                                                                        May 10, 2022

Defendants in this multidistrict antitrust litigation have moved to dismiss certain state law

claims and to strike certain allegations raised by the End-Payer Plaintiffs ("EPPs") with respect

to the following generic drugs: (1) clobetasol; (2) clomipramine; and (3) pravastatin.[1] For the

reasons set forth below, the Court denies Defendants' joint motion.

## I.      BACKGROUND

The background relevant to this decision is set forth at length in the Court's opinions of

October 16, 2018[2] and February 15, 2019.[3] The Court assumes familiarity with those opinions,

and will not restate the background in detail.[4] In short and at a general level, EPPs allege that

---

[1] These three drugs were initially selected as the bellwether cases for the proposed EPP class actions. The bellwether selection has been revised to include only clobetasol and clomipramine actions.

[2] *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 411–34 (E.D. Pa. 2018). The relevant formulations of clobetasol and pravastatin are also identified in this Opinion. *Id.* at 410 n.4, 411 n.9. The relevant formulations of clomipramine are tablets in doses of 25 mg, 50 mg, and 75 mg. *See* Corrected Consolidated Amended End-Payer Class Action Complaint ¶¶ 2, 69-97, *In re Clomipramine Cases*, No, 16-CM-27242 [Doc. Nos. 133, 134] (E.D. Pa. filed June 25, 2019) ("CM Consolidated Am. Compl.") .

[3] *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 820–27 (E.D. Pa. 2019).

[4] The earlier Opinions addressed Defendants' motions to dismiss EPPs' and Indirect-Reseller Plaintiffs' Sherman Act and state law claims with respect to the following generic drugs: (1) clobetasol; (2) digoxin; (3) divalproex ER;

Defendants, the manufacturers of generic pharmaceuticals, engaged in an unlawful scheme or set of schemes to fix, maintain, and stabilize prices and rig bids, and that Defendants engaged in market and consumer allocations of certain generic pharmaceutical products, including clobetasol, clomipramine, and pravastatin. In relevant part, EPPs assert several claims for monetary damages under state antitrust and consumer protection laws as well as claims for unjust enrichment.[5] In doing so, they seek to avoid the limitation on the availability of monetary damages for federal antitrust claims.[6]

In their consolidated amended complaints, EPPs also allege that Defendants participated in a broader unlawful conspiracy. In each of the clobetasol, clomipramine, and pravastatin complaints, EPPs assert claims related to the single pharmaceutical at issue, but they contend that "Defendants' unlawful anticompetitive conduct with respect to [these pharmaceuticals] is part of a larger conspiracy or series of conspiracies involving numerous generic pharmaceuticals and pharmaceutical manufacturers."[7]

### A. EPPS

The EPPs include employee welfare benefits funds, labor unions, private insurers, and municipalities, as well as individual plaintiffs; they allege either that they indirectly purchased generic pharmaceuticals manufactured by Defendants or that they provided reimbursements for

---

(4) doxycycline; (5) econazole; and (6) pravastatin (collectively, the "Group 1" drugs). *In re Generic Pharms.*, 338 F. Supp. 3d at 434; *In re Generic Pharms.*, 368 F. Supp. 3d at 827.

[5] *See* Consolidated Am. End-Payer Class Action Compl. ¶¶ 250–389, *In re Clobetasol Cases*, No. 16-CB-27242, [Doc. Nos. 167, 168] ("CB Consolidated Am. Compl."); CM Consolidated Am. Compl. ¶¶ 211–350; Consolidated Am. End-Payer Class Action Compl. ¶¶ 270–409, *In re Pravastatin Cases*, No. 16-PV-27242, [Docs. No. 152, 153] ("PV Consolidated Am. Compl.").

[6] This limitation arises from the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, which established that only direct purchasers could receive damages for such claims. 431 U.S. 720, 729–30, 737–38 (1977).

[7] CB Consolidated Am. Compl. ¶ 8; CM Consolidated Am. Compl. ¶ 8; PV Consolidated Am. Compl. ¶ 9.

some or all of the purchase price for clobetasol, clomipramine, and/or pravastatin. The following table sets forth the specific EPPs for each single-product complaint:[8]

| End-Payer Plaintiffs | Clobetasol | Clomipramine | Pravastatin |
|---|---|---|---|
| 1199SEIU National Benefit Fund | X | | |
| 1199SEIU Greater New York Benefit Fund | X | | |
| 1199SEIU National Benefit Fund for Home Care Workers | X | | |
| 1199SEIUS Licensed Practical Nurses Welfare Fund | X | | |
| American Federation of State, County and Municipal Employees Council 37 Health & Security Plan | X | X | X |
| The City of Providence | | X | X |
| Hennepin County | X | | |
| Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc. | X | X | X |
| Robby Johnson | | | X |
| Self-Insured Schools of California | X | X | X |
| Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund | X | | X |
| David Sherman | | | X |
| Uniformed Fire Officers Association Family Protection Plan Local 854 | X | X | |
| United Food & Commercial Workers and Employers Arizona Health and Welfare Trust | | X | |
| Unite Here Health | X | X | X |

---

[8] This table relies on information from CB Consolidated Amended Complaint ¶¶ 37–44 (CM Consolidated Amended Complaint contains two paragraphs labeled "44"), CM Consolidated Amended Complaint ¶¶ 31-38, and PV Consolidated Amended Complaint ¶¶ 37–44.

In their complaints, EPPs assert antitrust, consumer-protection, and unjust-enrichment claims under the laws of several states and territories as set forth in the following table:[9]

| Jurisdiction | State Antitrust | | | Consumer Protection | | | Unjust Enrichment | | |
|---|---|---|---|---|---|---|---|---|---|
| | CB | CM | PV | CB | CM | PV | CB | CM | PV |
| Alabama | | | | | | | X | X | X |
| Alaska | | | | X | X | X | X | X | X |
| Arizona | X | X | X | | | | X | X | X |
| Arkansas | | | | X | X | X | X | X | X |
| California | X | X | X | X | X | X | X | X | X |
| Colorado | | | | X | X | X | X | X | X |
| Connecticut | X | X | X | | | | X | X | X |
| Delaware | | | | X | X | X | X | X | X |
| District of Columbia | X | X | X | X | X | X | X | X | X |
| Florida | | | | X | X | X | X | X | X |
| Georgia | | | | X | X | X | X | X | X |
| Hawaii | X | X | X | X | X | X | X | X | X |
| Idaho | | | | | | | X | X | X |
| Illinois | X | X | X | | | | X | X | X |
| Indiana | | | | | | | | | |
| Iowa | X | X | X | | | | X | X | X |
| Kansas | X | X | X | | | | X | X | X |
| Kentucky | | | | | | | X | X | X |
| Louisiana | | | | | | | X | X | X |
| Maine | X | X | X | | | | X | X | X |
| Maryland | X | X | X | | | | X | X | X |
| Massachusetts | | | | X | X | X | X | X | X |
| Michigan | X | X | X | X | X | X | X | X | X |
| Minnesota | X | X | X | X | X | X | X | X | X |
| Mississippi | X | X | X | | | | X | X | X |
| Missouri | | | | X | X | X | X | X | X |
| Montana | | | | X | X | X | X | X | X |
| Nebraska | X | X | X | X | X | X | X | X | X |
| Nevada | X | X | X | X | X | X | X | X | X |
| New Hampshire | X | X | X | X | X | X | X | X | X |
| New Jersey | | | | X | X | X | X | X | X |
| New Mexico | X | X | X | X | X | X | X | X | X |
| New York | X | X | X | X | X | X | X | X | X |
| North Carolina | X | X | X | X | X | X | X | X | X |

---

[9] This table relies on information from CB Consolidated Amended Complaint ¶¶ 250–389, CM Consolidated Amended Complaint ¶¶ 211–350, and PV Consolidated Amended Complaint ¶¶ 270–409.

| Jurisdiction | State Antitrust | | | Consumer Protection | | | Unjust Enrichment | | |
|---|---|---|---|---|---|---|---|---|---|
| | CB | CM | PV | CB | CM | PV | CB | CM | PV |
| North Dakota | X | X | X | X | X | X | X | X | X |
| Ohio | | | | | | | | | |
| Oklahoma | | | | | | | X | X | X |
| Oregon | X | X | X | | | | X | X | X |
| Pennsylvania | | | | | | | X | X | X |
| Puerto Rico | | | | | | | X | X | X |
| Rhode Island | X | X | X | X | X | X | X | X | X |
| South Carolina | | | | X | X | X | X | X | X |
| South Dakota | X | X | X | X | X | X | X | X | X |
| Tennessee | X | X | X | | | | X | X | X |
| Texas | | | | | | | X | X | X |
| Utah | X | X | X | X | X | X | X | X | X |
| U.S. Virgin Islands | | | | X | X | X | X | X | X |
| Vermont | X | X | X | X | X | X | X | X | X |
| Virginia | | | | X | X | X | X | X | X |
| Washington | | | | | | | X | X | X |
| West Virginia | X | X | X | X | X | X | X | X | X |
| Wisconsin | X | X | X | X | X | X | X | X | X |
| Wyoming | | | | | | | X | X | X |

EPPs reside in or are headquartered in several, but not all, of the jurisdictions listed above.[10] They allege that they indirectly purchased or made reimbursements for clobetasol, clomipramine, and pravastatin in the jurisdictions under whose law they assert claims.[11] They assert these claims individually and on behalf of classes, seeking damages for "[a]ll persons and entities in [every state except Ohio and Indiana as well as the District of Columbia, Puerto Rico, and the U.S. Virgin Islands] who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price" for clobetasol, clomipramine, and pravastatin.[12]

---

[10] *See* CB Consolidated Am. Compl. ¶¶ 37–44; CM Consolidated Am. Compl. ¶¶ 31–38; PV Consolidated Am. Compl. ¶¶ 37–44.

[11] *See* CB Consolidated Am. Compl. ¶¶ 37-44; CM Consolidated Am. Compl. ¶¶ 31–38; PV Consolidated Am. Compl. ¶¶ 37–44.

[12] *See* CB Consolidated Am. Compl. ¶ 231; CM Consolidated Am. Compl. ¶ 192; PV Consolidated Am. Compl. ¶ 252.

B.  Defendants

Defendants are alleged to have manufactured and sold generic pharmaceuticals throughout the United States.[13] The specific generic pharmaceutical each Defendant manufactured is identified in the following table[14]:

| Defendant | Clobetasol | Clomipramine | Pravastatin |
|---|---|---|---|
| Actavis Holdco. U.S., Inc. and Actavis Pharma, Inc. | X | | |
| Akorn Inc., Akorn Sales, Inc., and Hi-Tech Pharmacal Co., Inc. | X | | |
| Apotex Corp. | | | X |
| Glenmark Pharmaceuticals, Inc. | | | X |
| Lupin Pharmaceuticals, Inc. | | | X |
| Mylan Inc. and Mylan Pharmaceuticals, Inc. | | X | |
| Perrigo New York, Inc. | X | | |
| Sandoz, Inc. and Fougera Pharmaceuticals Inc. | X | X | X |
| Taro Pharmaceuticals U.S.A. Inc. | X | X | |
| Teva Pharmaceuticals USA, Inc. | | | X |
| Wockhardt USA LLC and Morton Grove Pharmaceuticals, Inc. | X | | |
| Zydus Pharmaceuticals (USA), Inc. | | | X |

[13] *See* CB Consolidated Am. Compl. ¶¶ 44–58; CM Consolidated Am. Compl. ¶¶ 39–43; PV Consolidated Am. Compl. ¶¶ 45–50.

[14] This table relies on information from CB Consolidated Amended Complaint ¶¶ 44–58, CM Consolidated Amended Complaint. ¶¶ 39–43, and PV Consolidated Amended Complaint ¶¶ 44–50.

According to EPPs' complaints, Defendants are incorporated or maintain their principal places of business in the following states: Colorado, Delaware, Florida, Illinois, Maryland, Michigan, Louisiana, New Jersey, New York, Pennsylvania, and West Virginia.[15]

As is relevant to the claims at issue, EPPs allege that "Defendants' anticompetitive conduct occurred in part in trade and commerce within the states and territories" under whose laws EPPs assert claims and "also had substantial intrastate effects" by foreclosing the offering of "less expensive [clobetasol, clomipramine, and pravastatin] to [EPPs] inside each [of these states and territories]."[16] This conduct, in turn, purportedly "disrupted commerce for [EPPs] within each [of these states and territories] and forced [them] to pay supracompetitive prices."[17] Moreover, they allege that Defendants "have been enriched by revenue resulting from unlawful overcharges for [clobetasol, clomipramine, and pravastatin] while [EPPs] have been impoverished by the overcharges they paid" for these generic pharmaceuticals as a result of Defendants' conduct.[18]

### C. The Current Motion

In August 2017, EPPs filed consolidated class action complaints asserting antitrust claims with respect to several generic pharmaceuticals, including clobetasol, clomipramine, and pravastatin.[19] Several months later, the defendant pharmaceutical companies, including Defendants, jointly moved to dismiss, among other things, EPPs' state antitrust, consumer

---

[15] *See* CB Consolidated Am. Compl. ¶¶ 44–58; CM Consolidated Am. Compl. ¶¶ 39–43; PV Consolidated Am. Compl.¶¶ 45–50.

[16] *See* CB Consolidated Am. Compl. ¶ 62; CM Consolidated Am. Compl. ¶ 47; PV Consolidated Am. Compl.¶ 54.

[17] *See* CB Consolidated Am. Compl. ¶ 62; CM Consolidated Am. Compl. ¶ 47; PV Consolidated Am. Compl.¶ 54.

[18] *See* CB Consolidated Am. Compl. ¶ 324; CM Consolidated Am. Compl. ¶ 285; PV Consolidated Am. Compl.¶ 344.

[19] *See In re Clobetasol*, [Doc. Nos. 91, 92]; *In re Clomipramine Cases*, [Doc. Nos. 73, 74]; *In re Pravastatin*, No. 16-PV-27242 [Doc. Nos. 78, 79].

protection, and unjust enrichment claims asserted in EPPs' complaints for the Group 1 pharmaceuticals (which includes clobetasol and pravastatin but not clomipramine).[20] In February 2019, the Court granted the joint motion in part and denied it in part as it pertained to EPPs' state law claims.[21]

Following this decision, EPPs amended their complaints for the clobetasol, clomipramine, and pravastatin.[22] In these amended complaints, EPPs continue to assert claims arising under state antitrust, consumer-protection, and unjust-enrichment laws against Defendants as detailed in the sections above. As previously discussed, EPPs also allege that Defendants participated in a greater conspiracy concerning generic pharmaceuticals. In November 2020, Defendants jointly moved to dismiss certain of EPPs' state law claims asserted in these three complaints and to strike these complaints' allegations concerning Defendants' participation in a greater conspiracy.[23]

## II.   DISCUSSION

Defendants move to dismiss EPPs' consumer-protection claims under the Alaska Unfair Trade Practices and Consumer Protection Act ("AUTPCPA"), the New Jersey Consumer Fraud Act ("NJCFA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and the Massachusetts Consumer Protection Law. They also move to dismiss unjust-enrichment claims under the laws of several states and territories.[24] Acknowledging that the Court already

---

[20] *See, e.g.*, *In re Clobetasol*, [Doc. Nos. 129, 130]; *In re Pravastatin*, No. 16-PV-27242 [Doc. Nos. 114, 115].

[21] *See In re Generic Pharms.*, 368 F. Supp. 3d at 819–20, 827, 852.

[22] *See* CB Consolidated Am. Compl.; CM Consolidated Am. Compl.; PV Consolidated Am. Compl.

[23] This motion, and the related briefing, was filed on each relevant docket. *See In re Clobetasol*, No. 16-CB-27242 [Doc. No. 186]; *In re Clomipramine*, No. 16-CM-27242 [Doc. No. 142]; *In re Pravastatin*, No. 16-PV-27242 [Doc. No. 173]. For the purposes of this Memorandum Opinion, each reference to the related briefing omits repetitive docket numbers.

[24] These states and territories are Alabama, Alaska, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan,

addressed many of these claims in its February 2019 Opinion, Defendants largely urge the Court to reconsider its decision to allow these claims to proceed in light of intervening authority.

Defendants also move to strike EPPs' allegations about Defendants' participation in a "larger conspiracy or series of conspiracies"[25] from the clobetasol, clomipramine, and pravastatin complaints. They contend that asserting these allegations in these single-product complaints create confusion as to the scope of these cases, and they ask the Court to prevent any potential confusion by striking these allegations.

A. *Motion To Dismiss Certain State Law Claims*

1. Application of the Law-of-the-Case Doctrine

As the Court has considered many of EPPs' claims which Defendants challenge (as well as most of Defendants' arguments in support of these challenges) in its February 2019 Opinion,[26] the current motion to dismiss several of EPPs' state law claims implicates the law-of-the-case doctrine, which "directs courts to refrain from re-deciding issues that were resolved earlier in the litigation" as a matter of prudence.[27] The parties dispute the extent to which this doctrine governs the Court's resolution of this motion. Due to its earlier rulings, EPPs contend that the Court may not revisit its rulings from its February 2019 Opinion absent "extraordinary circumstances" that justify such reconsideration.[28] Defendants argue that, under the doctrine, the Court's earlier

---

Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

[25] CB Consolidated Am. Compl. ¶ 8; CM Consolidated Am. Compl. ¶ 8; PV Consolidated Am. Compl. ¶ 9.

[26] *See In re Generic Pharms.*, 368 F. Supp. 3d at 849-52.

[27] *Pub. Interest Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).

[28] EPPs' Resp. Opp'n at 2–3.

rulings do not bind its disposition of this motion, leaving it free to consider EPPs' state law claims anew.[29]

Defendants are correct. "[T]he law-of-the-case doctrine 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'"[30] In the Third Circuit, the "doctrine dictates that one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case" absent "extraordinary circumstances."[31] Yet, "it does not limit the power of trial judges to reconsider their own prior decisions."[32] Especially in the context of the MDL, the Court is mindful of the importance of considering whether there are newly-joined parties and whether due process concerns militate in favor of reviewing claims anew, balanced with the need for established rulings on legal issues.

     2.  <u>Standing Under the AUTPCPA</u>

Seeking to evade Alaska's bar on indirect-purchaser standing in antitrust actions, EPPs plead claims under the state's general consumer protection law, the AUTPCPA.[33] Although the Court refused to dismiss such claims in its February 2019 Opinion,[34] Defendants once again press for dismissal, invoking intervening authority and questioning the Court's earlier reasoning.[35] In particular, they identify two decisions from the District of New Jersey and the

---

[29] Defs.' Reply Supp. at 2.

[30] *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

[31] *Walker v. Coffey*, 956 F.3d 163, 170 (3d Cir. 2020) (internal quotation marks and citations omitted).

[32] *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (internal quotation marks, alterations, and citation omitted).

[33] *See* Alaska Stat. § 45.50.471.

[34] *In re Generic Pharms.*, 368 F. Supp. 3d at 840, 841 n.116.

[35] Defendants' Mem. L. Supp. Mot. Dismiss at 4–6.

Northern District of Illinois which "have granted dismissal" where plaintiffs tried to sidestep

Alaska's indirect purchaser bar by bringing their claims under the AUTCPCA.[36] Defendants also

contend that the Court's reliance on *Matanuska Maid, Inc v. Alaska*[37] was misplaced, as that case

"was decided long before the 2003 amendment to the Alaska antitrust statute prohibiting private

indirect purchaser plaintiffs from bringing suit."[38]

These reasons are unconvincing. In the February 2019 Opinion, the Court relied on two

propositions that support retaining EPPs' AUTPCPA claims: (1) Plaintiffs may proceed under

general consumer protection statutes—even if their claims sound in antitrust—so long as they

can plead their claims under the pertinent law; and (2) Alaska courts recognize that the same

conduct could violate both the state's consumer protection and antitrust statutes.[39]

Notwithstanding Defendants' citation to intervening authority, the Court's earlier ruling was not

"clearly erroneous" and no "supervening new law" has cast doubt on it.[40] The Court accepts that

the decisions of several fellow district courts support dismissing EPPs' AUTCPCA claims.[41]

Even so, the courts of Alaska have, thus far, remained silent on the relationship between

AUTPCPA and the Alaska antitrust statute's indirect-purchaser bar.[42] Given the lack of

---

[36] *See MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 18-2211, 2020 WL 831578, at *12 (D.N.J. Feb. 20, 2020); *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 848-49 (N.D. Ill. 2020).

[37] 620 P.2d 182 (Alaska 1980).

[38] Defendants' Mem. L. Supp. Mot. Dismiss at 5.

[39] *In re Generic Pharms.*, 368 F. Supp. 3d at 840, 841 n.116 (citing *Matanuska Maid*, 620 P.2d at 185).

[40] *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998).

[41] *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015) (citing *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1108 (N.D. Cal. 2007)).

[42] *Id.*

controlling authority, the Court sees no basis to alter its earlier decision and will permit EPPs' AUTCPCA claim to move forward.[43]

### 3. Standing Under the NJCFA

Although Defendants had previously moved to dismiss EPPs' NJCFA claims, the Court here considers the viability of these claims for the first time.[44] Defendants ask the Court to dismiss the NJCFA claims because EPPs, as third-party payers, do not qualify as consumers under the NJCFA and therefore cannot assert claims under the statute.[45]

To some extent, Defendants' emphasis on whether EPPs are "consumers" is misplaced. Under New Jersey law, corporations and other entities, although not necessarily consumers in the ordinary sense, may assert NJCFA claims when they engage "in a consumer oriented situation."[46] The NJCA does not cover all transactions.[47] "Rather, [the statute's] applicability hinges on the nature of [the] transaction, requiring a case by case analysis."[48] Thus, whether

---

[43] The cited District Court decisions do not bind this Court. *See, e.g.*, *The Medicines Co. v. Teva Parenteral Meds., Inc.*, No. 09-750, 2011 WL 13141923, at *1 n.1 (D. Del. Oct. 6, 2011) ("As Plaintiff surely knows, a sister court's decision is not binding upon this Court and, therefore, does not constitute supervening authority."). Moreover, these decisions are unpersuasive; the *MSP Recovery Claims* court "decline[d] to resolve a unique question of Alaska state law," (2020 WL 831578, at *12), while *In re Humira* provided scant analysis to support its claim that the "better reading" of the Alaska statutes supports dismissal. 465 F. Supp. 3d at 849.

The Court is necessarily "loathe" to revise its earlier rulings without compelling reasons to do so. *Christianson*, 486 U.S. at 817 (internal quotation marks and citation omitted) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although courts should be loathe to do in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.").

[44] *See In re Generic Pharms.*, 368 F. Supp. 3d at 852 (dismissing these claims after EPPs indicated that they would either withdraw or voluntarily dismiss them).

[45] Defendants' Mem. L. Supp. Mot. Dismiss at 6–7.

[46] *Papergraphics Int'l, Inc. v. Correa*, 910 A.2d 625, 628 (N.J. Super. Ct. App. Div. 2006) (internal quotation marks and citation omitted) (describing New Jersey courts' expansion of NJCFA protections beyond "individual purchasers").

[47] *See id.* ("[N]otwithstanding a broad and liberal reading of the statute, the [NJCFA] does not cover every sale in the marketplace.").

[48] *Id.*

EPPs may assert their NJCFA claims turns on "the character of the transaction[s]" at issue, not EPPs' particular status.[49]

Defendants contend that indirect purchasers, such as EPPs, categorically lack standing to assert NJCFA claims.[50] In large part, they rely on the District of New Jersey's decision in *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*.[51] In that case, the court held that assignees of Medicare Act Part C or Part D prescription drug coverage lacked standing to assert NJCFA claims against pharmaceutical manufacturers because the assignors paid for but did not use the prescribed medications.[52] However, the Court does not read the decision in *MSP Recovery* so broadly as to deny NJCFA standing to all indirect purchasers. In fact, such a blanket decision would conflict with existing New Jersey caselaw. New Jersey courts have held that plaintiffs who act as resellers lack NJCFA standing because they do not consume the products they purchase.[53] However, no New Jersey cases have extended this holding to all third-party payers and indirect purchasers. Indeed, the New Jersey Supreme Court has explicitly reserved the question of whether third-party payers for pharmaceuticals may assert NJCFA claims against pharmaceutical manufacturers, suggesting that the NJCFA may treat indirect-purchasing arrangements differently from reselling ones.[54] Even if the NJCFA caselaw concerning resellers

[49] *J&R Ice Cream Corp. v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994).

[50] Defendants' Mem. L. Supp. Mot. Dismiss at 6–7.

[51] No. 18-2211, 2019 WL 1418129 (D.N.J. Mar. 29, 2019).

[52] *Id.* at *2, *18.

[53] *See, e.g.*, *City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990) (concluding that a check-cashing business lacked standing to assert an NJCFA claim based on the bank's decision to freeze its account when the business, in effect, "was buying cash from [the] defendant at wholesale to sell to its check-cashing customers at retail").

[54] *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1079, 1079 n.1 (N.J. 2007) ("Although one might argue that the relationship between plaintiff and defendant is more attenuated than the traditional consumer role as contemplated by the [NJCFA], we leave for another day the question of the [NJCFA's] scope.").

applies to indirect purchasers, under this law, the plaintiff's "consumption" of the purchased products constitutes only one factor in the NJCFA standing analysis conducted by New Jersey courts.[55] As the Third Circuit has explained, whether the plaintiff's use diminishes or destroys a product's economic value is not the controlling inquiry in all cases because "some consumer goods may not be diminished or destroyed through use."[56] Therefore, third-party payers and indirect purchasers do not necessarily lack standing to pursue NJCFA claims. Instead, the Court must consider the "nature" of particular transactions by EPPs that purchased the generic pharmaceuticals at issue.[57]

EPPs allege that their class includes individuals and entities "who indirectly purchased, paid and/or provided reimbursement for" the purchase of clobetasol, clomipramine, and pravastatin, and it expressly excludes direct resellers.[58] Although they did not consume these pharmaceuticals, they funded individuals' consumption of these products. Put differently, EPPs occupy a position alongside end-users in these transactions, while resellers and middlemen position themselves between manufacturers and end-users. Accordingly, New Jersey law does not clearly foreclose EPPs' standing.[59]

The New Jersey Supreme Court has refrained from ruling on this precise question, and has directed courts to construe the NJCFA broadly.[60] Therefore, the Court declines to hold that

---

[55] See *Papergraphics*, 910 A.2d at 629 (concluding the plaintiff could not assert an NJCFA claim after considering the resale purpose of the transaction, the quantities purchased, and the plaintiff's sophistication as a market participant)

[56] *Cal. Smoothie*, 31 F.3d at 1274 n.14.

[57] *Papergraphics*, 910 A.2d at 628.

[58] CB Consolidated Am. Compl. ¶¶ 230–31; CM Consolidated Am. Compl. ¶¶ 191–92; PV Consolidated Am. Compl. ¶¶ 251–52.

[59] See *City Check Cashing*, 582 A.2d at 811.

[60] See *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 151 (N.J. 2020) (internal quotation marks and citation omitted) ("[T]he language of the CFA evinces a clear legislative intent that its provisions be applied broadly.").

EPPs lack standing to assert their NJCFA claims as a matter of law. To the extent that further factual discovery reveals more details about EPPs' particular transactions, the issue may be revisited at the summary judgment stage.

### 4. Timeliness of FDUTPA Claims

Defendants ask the Court to dismiss EPPs' FDUTPA claims as time barred.[61] The Court will not do so. As it has done with other statute-of-limitations arguments that Defendants have raised, at this stage the Court will deny Defendants' motion with respect to EPPs' FDUTPA claims because it is "more appropriate" to resolve the issue "at a later stage of the proceedings following more particularized discovery."[62]

### 5. Demand-Letter Requirement under Massachusetts Law

Defendants again seek to dismiss EPPs' claims under Massachusetts law for their failure to comply with the statute's pre-filing-notice requirement.[63] In its February 2019 Opinion, the Court held that this statutory requirement was procedural and therefore not binding on it under *Shady Grove Orthopedic Association v. Allstate Insurance Co.*[64] In this motion, Defendants argue that the Court should reconsider this ruling "[b]ased on the weight of the case law holding that the pre-suit demand letter is a jurisdictional requirement under Chapter 93(A)[.]"[65]

As Defendants argue, many federal courts have enforced the pre-filing-demand-letter requirement as jurisdictional.[66] However, these cases do not compel the Court to change its

---

[61] Defendants' Mem. L. Supp. Mot. Dismiss at 7–8.

[62] *In re Generic Pharms.*, 368 F. Supp. 3d at 852.

[63] Defendants' Mem. L. Supp. Mot. Dismiss at 8–9.

[64] 559 U.S. 393 (2010); *In re Generic Pharms.*, 368 F. Supp. 3d at 849. *See id.* at 834–35 (discussing *Shady Grove*'s framework for federal courts' treatment of substantive and procedural rules under state law).

[65] Defendants' Mem. L. Supp. Mot. Dismiss at 8–9.

[66] *See, e.g.*, *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19–20 (1st Cir. 2004); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417 (D.N.J. 2018); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,

earlier ruling. Ordinarily, when asserting a claim under Massachusetts law, a plaintiff must plead that it has satisfied this requirement.[67] The statute, however, does not require that a plaintiff send a demand letter if the defendant either has no place of business or has no assets within Massachusetts.[68]

On the face of the complaints, the Court cannot determine whether this exception applies.[69] Plaintiffs have not alleged facts showing that Defendants required such notice.[70] Although some courts suggest that a plaintiff must plead that this exception applies,[71] at this stage, the Court will allow EPPs' claims under Massachusetts law to proceed without such explicit pleading.[72] Once the record has been developed, it may be determined whether any Defendants operate businesses or keep assets in Massachusetts.[73]

---

737 F. Supp. 2d 380, 411–12 (E.D. Pa. 2010); *In re Flonase Antitrust Litig.*, 692 F. Supp. 524, 539–40 (E.D. Pa. 2010).

[67] *Rodi*, 389 F.3d at 19; *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975).

[68] *Moronta v. Nationstar Mortg., LLC*, 64 N.E.3d 1287, 1289 (Mass. 2016).

[69] *See* CB Consolidated Am. Compl. ¶¶ 44–58; CM Consolidated Am. Compl. ¶¶ 39–43; PV Consolidated Am. Compl.¶¶ 45–50.

[70] *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 903 (E.D. Pa. 2012) (determining that the plaintiffs did not need to send pre-filing demand letters when the plaintiffs had not "allege[d] that [the defendants] . . . maintain places of business or keep assets within Massachusetts") (internal quotation marks omitted).

[71] *E.g.*, *Block v. Jaguar Land Rover N. Am., LLC.*, No. 15-5957, 2019 WL 7184722, at *7 (D.N.J. Dec. 23, 2019) ("[The plaintiffs] do not allege [the demand-letter-requirement] exemption in the [operative complaint], and, as such, the Court cannot consider these assertions when reviewing the sufficiency of the [Massachusetts Consumer Protection Law] claim."); *In re Azek Bldg. Prods., Inc., Mktg & Sales Pracs. Litig.*, 82 F. Supp. 3d 608, 622–23 (D.N.J. 2015) (dismissing the plaintiffs' arguments about the exception because they did not "allege[] in the [operative complaint] that [the defendant] does not have a place of business or keep assets within Massachusetts" (footnote omitted)).

[72] *See In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 233 (M.D. Pa. 2010) ("[I]t is unclear whether any defendant maintains a place of business or keeps assets within the state of Massachusetts. Resolution of this inquiry must simply await further development of the factual record, and, consequently, defendants' motion to dismiss this claim will be denied.").

[73] The Court will not consider EPPs' argument that they sent pre-filing demand letters to Defendants, satisfying the statutory requirement, because EPPs rely on materials not included in their complaints and appended exhibits. *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019) ("[I]t is well established that a motion to dismiss may be decided based only on the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." ) (internal quotation marks and citation omitted).

6.  <u>Viability of Unjust Enrichment Claims</u>

Finally, Defendants contend that EPPs have failed to plead viable unjust enrichment claims under the laws of forty states and territories.[74] Defendants acknowledge that the Court previously declined to dismiss some of these claims in its February 2019 Opinion, but they insist that "new persuasive authority" should convince it to reconsider.[75] Relying on this authority, they make four arguments: (1) The laws of certain states prohibit EPPs from using unjust enrichment claims "as an end-run around *Illinois Brick*"; (2) EPPs' unjust enrichment claims fail under the laws of certain states because, as indirect purchasers, EPPs "do not confer a direct benefit" to Defendants; (3) EPPs' unjust enrichment claims "are duplicative" of certain state statutory claims that EPPs have pleaded; and (4) California law does not recognize a standalone unjust enrichment claim.[76] The Court considers and rejects these arguments in turn.

Defendants' first two arguments merit little discussion. In its February 2019 Opinion, the Court addressed these arguments at length and found them unconvincing.[77] Just as they failed to do with respect to EPPs' AUTCPCA claims, Defendants have not identified any supervening authority that requires the Court to dismiss the challenged unjust-enrichment claims. Consequently, the Court declines to revise its earlier decision and will allow these claims to proceed.

---

[74] They seek to dismiss EPPs' claims under the laws of Alabama, Alaska, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Iowa, Illinois, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New York, North Dakota, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

[75] Defendants' Mem. L. Supp. Mot. Dismiss at 9–10.

[76] Defendants' Mem. L. Supp. Mot. Dismiss at 9–10.

[77] *In re Generic Pharms.*, 368 F. Supp. 3d at 849-51.

Defendants' third argument contends that certain unjust-enrichment claims[78] should be dismissed as duplicative of state statutory claims, citing the decision of the Southern District of New York in *In re Novartis & Par Antitrust Litigation*.[79] In that case, the court dismissed unjust enrichment claims asserted by end payers because it reasoned that these "unjust enrichment claims will rise and fall with [end payers'] statutory claims," citing that court's earlier decision in *Alce v. Wise Foods, Inc.*[80] In *Alce*, the court observed that "[c]ourts in the Second Circuit have recognized that an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claims" and extended this approach to dismiss plaintiffs' unjust enrichment claims that duplicated their statutory claims.[81]

However, district courts must scrutinize whether unjust enrichment claims, in fact, duplicate statutory claims before dismissing them on these grounds.[82] Such an analysis "turns on a case-by-case examination of whether each state's antitrust or consumer protection state has overridden or limited . . . the scope of restitutionary relief that would normally be available to a plaintiff at equity."[83]

---

[78] The claims at issue are brought under the laws of Arizona, California, Hawaii, Iowa, Maine, Michigan, Minnesota, Nebraska, Nevada, New Mexico, New York, North Dakota, South Dakota, Utah, Vermont, West Virginia, and Wisconsin.

[79] No. 18-4361, 2019 WL 3841711 (S.D.N.Y. Aug. 15, 2019).

[80] *Id.* at *7 (citing *Alce v. Wise Foods, Inc.*, No. 17-2402, 2018 WL 1737750, at *11–12 (S.D.N.Y. Mar. 27, 2018)).

[81] 2018 WL 1737750, at *11-12 (quoting *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 503, 524 (S.D.N.Y. 2015)). Courts within this Circuit have followed the Second Circuit's practice. *See, e.g.*, *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 823–24 (E.D. Pa. 2017) (claims under New York law); *In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 535 (W.D. Pa. 2014) (claims under California law).

[82] *See Plavin v. Grp. Health Inc.*, 857 F. App'x 83, 86–87 (3d Cir. 2021).

[83] *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15-6549, 2021 WL 2403727, at *38 (S.D.N.Y. June 11, 2021) (alteration in original) (internal quotation marks and citation omitted).

Defendants, however, have presented no state-specific arguments for the unjust enrichment claims they seek to dismiss.[84] Rather, like the defendants in *In re Namenda Indirect Purchaser Antitrust Litigation*, they appear to "hope that this Court will 'streamlin[e] the litigation proceedings of a complex case" by dismissing these claims without considering whether the claims are duplicative on a state-by-state basis.[85] Although Defendants' arguments may have merit as to some unjust enrichment claims,[86] the Court will allow these claims to proceed for now, refraining from revisiting the issue until Defendants "present the [C]ourt with the sort of analysis required to dispose of these issues."[87]

Defendants' fourth argument—that California does not recognize unjust enrichment as a standalone cause of action—is similarly unpersuasive.[88] Although several courts have found that California law does not recognize a cause of action for unjust enrichment,[89] others have explained that, under California law, a plaintiff may assert a standalone equitable claim for restitution, which may save a pleaded standalone unjust enrichment claim.[90] Notably, in 2015, the California Supreme Court held that a standalone claim for restitution could proceed in a

---

[84] Defendants' Mem. L. Supp. Mot. Dismiss at 10 (citing *In re Novartis & Par*, 2019 WL 3841711, at *7); Defs.' Reply Supp. at 7 (citing *In re Novartis & Par*, 2019 WL 3841711, at *7).

[85] 2021 WL 2403727, at *38, (alteration in original) (quoting *In re Novartis & Par*, 2019 WL 3841711, at *7).

[86] *See id.* at *38 (dismissing an unjust enrichment claim under New York law as duplicative of the plaintiffs' antitrust claims)

[87] *Id.*

[88] EPPs claim that Defendants have waived this argument because they failed to raise it in their earlier motions to dismiss. Even so, because the argument is not waived at least with respect to EPPs' clomipramine claims, the Court will consider the argument.

[89] *See, e.g., Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2021); *In re: Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 755-56 (D.N.J. 2016).

[90] *See Morrell v. WW Int'l, Inc.*, 551 F. Supp. 3d 173, 186–87 (S.D.N.Y. 2021); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 133 (N.D. Cal. 2020); *In re Glumetza Antitrust Litig.*, No. C 19-05822, 2020 WL 1066934, at *12 (N.D. Cal. Mar. 5, 2020).

dispute between an insurer and the insured's counsel.[91] Some courts have interpreted this decision as an indication that California recognizes a cause of action for unjust enrichment.[92] Given these developments, the Court will not dismiss EPPs' California unjust enrichment claims at this time.[93]

### B. *Motion To Strike Allegations Concerning a Greater Conspiracy*

In addition to seeking to dismiss several of EPPs' state law claims, Defendants also move to strike allegations about their participation in a "larger conspiracy or series of conspiracies" in the clobetasol, clomipramine, and pravastatin complaints.[94] Federal Rule of Civil Procedure 12(f) permits a district court to strike portions of pleadings that are "redundant, immaterial, impertinent, or scandalous." Defendants contend that EPPs' allegations satisfy this standard because EPPs' allusion to a greater conspiracy is "redundant and confusing."[95] In particular, they argue that EPPs' complaints do not make it clear whether, EPPs intend to pursue, in each of these pharmaceutical-specific actions, claims related to this overarching conspiracy. Defendants

---

[91] *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319, 326–27 (Cal. 2015).

[92] *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *Potts v. Johnson & Johnson Consumer Inc.*, No. 20-10406, 2021 WL 2177386, at *13 (D.N.J. May 28, 2021) (following *Bruton*); *City of Long Beach v. Total Gas &Power N. Am., Inc.*, 465 F. Supp. 3d 416, 450 n.192 (S.D.N.Y. 2020) (same). *But see Abuelhawa*, 529 F. Supp. 3d at 1070–72 (explaining the narrow nature of *Hartford*'s holding)

[93] *See, e.g.*, *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 382 (D.R.I. 2019) (internal quotation marks and citation omitted) ("Because California law is unclear on this issue, and there is a California Supreme Court case recognizing the cause of action, this Court joins several other district courts in concluding that there is no settled basis on which to dismiss the end payors' unjust enrichment claim."); *SEPTA v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 703 (E.D. Pa. 2015) ("California courts appear to be split on whether unjust enrichment is an independent claim or merely an equitable remedy."); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, at *20 (D. Mass. Sept. 16, 2015) (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014)) ("California law is unclear as to whether unjust enrichment is permitted as a separate cause of action, but the Ninth Circuit recently treated unjust enrichment as a separate claim."). *See also In re Process Egg Products*, 851 F. Supp. 2d at 913 (declining to rule "as a matter of law [that the plaintiffs] may not pursue an unjust enrichment claim under California law," and observing that there was "something of a schism among California state courts" on the issue).

[94] CB Consolidated Am. Compl. ¶ 8; CM Consolidated Am. Compl. ¶ 8; PV Consolidated Am. Compl.¶ 9.

[95] Defendants' Mem. L. Supp. Mot. Dismiss at 12.

argue that if the Court considers these claims anywhere, it should do so outside of this multidistrict litigation's single-product cases.[96]

Rule 12(f), however, sets a high bar for striking pleadings. "[C]ourts usually deny [motions to strike allegations under Rule 12(f)] unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."[97] Given that EPPs may find it difficult to separate the alleged broader price-fixing scheme from its implementation for individual generic pharmaceuticals, and this scheme may provide necessary context for understanding the claims at issue in these single-pharmaceutical actions, at this early stage, Defendants have failed to establish that these allegations are improper. The Court may employ other tools to address any potential confusion if and when it arises later in the proceedings.[98] Accordingly, the Court denies Defendants' motion to strike.

---

[96] *See* Defendants' Mem. L. Supp. Mot. Dismiss at 12–13.

EPPs argue that Defendants' motion to strike is untimely under the Court's Pre-Trial Orders and Rule 12. The Court disagrees. None of its Pre-Trial Orders set a deadline for motions to strike and, although there was a prior Rule 12 Motion in the clobetasol and pravastatin actions, this Court retains the power to strike allegations in these case as well as the clomipramine case. *See Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399 (7th Cir. 1991) (internal citations omitted) ("Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion.").

[97] *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (internal quotation marks and citation omitted) ("In general, federal courts disfavor motions to strike an opponent's pleading under [Rule 12(f)] because this drastic remedy often is sought by the movant simply as a dilatory or harassing tactic."); *see also Chan v. Barbour, Inc.*, 263 F. Supp. 3d 521, 524 (E.D. Pa. 2017) (same).

[98] *See Airgood v. Twp. of Pine*, No. 14-1249, 2016 WL 1247237, at *12 (W.D. Pa. 2016) ("To the extent the challenged allegations are potentially prejudicial and/or likely to confuse a fact-finder, the Court will have the ability to address these concerns through appropriate pretrial orders and/or careful jury selection.").

### III.    CONCLUSION

Consistent with the analysis set forth above, the Court will deny Defendants' joint motion to dismiss certain state law claims and to strike certain allegations in the clobetasol, clomipramine, and pravastatin complaints.

An appropriate Order follows.