# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724 |
|  | 16-MD-2724 |
|  | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: |  |
| *ALL ACTIONS* |  |

## CERTAIN PLAINTIFF STATES'[1]
## OBJECTION TO SPECIAL MASTER DAVID H. MARION'S
## TWELFTH REPORT AND RECOMMENDATION AS TO
## STATES' MOTION FOR PROTECTIVE ORDER (RE RFP 68)

The Court should order that Defendants' Request for Production 68 (the "RFP" or "RFP 68") be limited to apply no further than to (1) the Objecting States' Attorneys General Offices ("AGOs") who bring this case, and (2) the agencies for which the Objecting States seek damages in this MDL and from whom they have already produced documents.[2]  The RFP, even as modified in Special Master Marion's Twelfth Report and Recommendation[3] (the "R&R") is vague, overbroad, and unduly burdensome.  Additionally, and foremost among the State objections, the Objecting State AGOs lack possession, custody, and control over many, and perhaps all, of the documents responsive to the RFP that they have not already produced, an

---

[1] As explained further below, Special Master Marion's Twelfth Report and Recommendation raises many issues and objections that apply differently to the 53 State Plaintiffs in this MDL.  To reduce the number of briefs the Court must review, the following States jointly submit this objection, which addresses common issues as well as state-specific issues.  Other Plaintiff States may object separately or opt not to object.  The States joining this objection, hereafter referred to as the "Objecting States," are Alaska, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Puerto Rico, Rhode Island, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.
[2] As of filing, Plaintiff States have produced 7,376,930 pages and 1,183,579 documents.
[3] ECF No. 2050.

objection the States explicitly reserved before Special Master Marion and which he did not address in the R&R.

Plaintiff States moved for a protective order in front of Special Master Marion in order to limit Defendants' expansive demand for any "reports[,] analyses . . . and all supporting Documents, Materials, data, or investigatory files concerning the price or supply of generic pharmaceutical products," not only from the attorneys general who are the plaintiffs in this litigation, but also from "any governmental entity in Your state."[4]  Special Master Marion agreed that "Defendants' RFP was much too broad and extensive;"  however his R&R apparently does not stop at ruling on the States' motion for a protective order but recommends that the States be compelled to produce all documents responsive to a modestly limited version of the RFP despite the States' express reservation—in briefing and in arguing their motion before the Special Master—of additional state-specific objections to the RFP such as lack of possession, custody and control, and Defendants' and the Special Master's acknowledgement that additional state-specific negotiation is necessary.

Moreover, because of the breadth and vagueness of the RFP—even as limited in the R&R—the Objecting States cannot ascertain the objections they might have to the RFP were the Defendants willing and able to name the Objecting States governmental entities to which they believe it applies.[5]

The Objecting States object to the R&R pursuant to Federal Rule of Civil Procedure 53(f) and PTO 163.  The Court should order that RFP 68 be limited to apply no further than to the

---

[4] Defendants' Request for Production 68, R&R, Ex. A at 8.
[5] In discussions subsequent to the filing of the R&R, Defendants informed at least some of the States that they did not yet know what governmental entities, if any, might fall under the ambit of RFP 68 beyond (a) those for which States are claiming damages and have already produced responsive documents, (b) the states' legislatures, and (c) a small number of specific agencies referenced in section 5 of Defendants' proposal and therefrom incorporated in the R&R, and (d) the AGOs.

Objecting States' AGOs and the agencies for which the Objecting States seek damages in this MDL.  Alternatively, the Court should adopt the R&R only insofar as it limits RFP 68 by defining its potential maximum scope and rule that it does not compel the States to produce anything beyond what they have already produced.

## I.   BACKGROUND

Defendants issued RFP 68 over one year ago.  The States objected on several grounds, including the disproportionate burden posed by the request, the irrelevance of at least some of the documents covered by the request, and the fact that the request, coupled with Defendants' definitions and instructions, assumed that state agencies other than the AGOs that brought the actions in the MDL were subject to party discovery.  The States noted that they had already produced responsive documents from the AGOs and certain other state agencies in response to earlier Defendant RFPs.  In fact, many States had already conducted extensive searches for, and produced responsive documents from, the state agencies for which they are seeking damages in addition to the AGOs and conveyed that information to the Defendants.

RFP 68 is so broadly written that it could apply to over 90,000 governmental entities,[6] including not only state executive agencies but also legislatures, court systems, and every municipal and county government agency, among other entities, in each State.  The effort necessary for the States to even ascertain whether each of those entities has responsive documents and whether each AGO has possession, custody, or control over such documents would be disproportionate to the needs of the case in and of itself.  The States therefore sought to narrow the RFP through meeting and conferring with Defendants.  During those negotiations,

---

[6] *See* United States Census Bureau, Count of Governments Throughout the Years: 1942 to 2017, available at https://www.census.gov/library/visualizations/2019/econ/cog_infographic_2019_1.html (last accessed May 10, 2022).

Defendants suggested that they might limit the RFP in large part to entities "for which the primary responsibility is healthcare," but also requested documents from state legislatures and other, non-healthcare-focused entities.[7]  However, Defendants also reserved the right to expand their interpretation of the RFP at any time to include any governmental entity.

When, after approximately ten months, Defendants refused to narrow their request or provide any meaningful specificity as to the entities from which they sought documents or the types of documents sought from those agencies, the States moved for a protective order from Special Master Marion.  The States sought relief from the disproportionate burden that would have been imposed by having to respond to an RFP so broad that each State could not meaningfully determine what entities and documents were even subject to the request.  Because the Defendants in this case have a history of waiting months after impasse only to bring motions to compel against the States when they find it strategically advantageous, and because Defendants declined to engage in meaningful negotiations, the States determined that a motion under Federal Rule of Civil Procedure 26(c) was the best way to either resolve the parties' dispute over the RFP or to limit the request sufficiently to allow the parties to engage in productive discussions regarding the application of the request as narrowed.

The States limited their motion to relevance and burden grounds common to all of the States. This was the most practical approach, as RFP 68 was so broadly written and interpreted by Defendants that it would have been impracticable and unduly burdensome for the States to have even determined what entities might have responsive documents and to determine what objections each State had in response to the application of RFP 68 to each potentially relevant

---

[7] Even limited as Defendants suggested, the RFP would theoretically have applied to thousands of entities, including state legislatures, executive agencies, independent commissions, municipal health departments, and other entities of which the AGOs may not even be aware.

governmental entity.  Equally important, the States limited their motion to grounds common to all of the States in an effort to promote judicial efficiency.  If the Special Master granted the States' motion in full, that would have resolved the dispute without necessitating up to 53 separate motions related to state-specific issues.  If he granted it in part by meaningfully limiting its scope, that would have at least limited the range of issues for each State to negotiate or litigate with Defendants and might have resolved the dispute entirely for at least a subset of States.

Arguing their motion before the Special Master, the States made it clear that they reserved other state-specific objections, including lack of possession, custody, or control over requested documents.  The Special Master did not ask the States to address those reserved objections.  At the end of argument, the Special Master asked both the States and Defendants for compromise proposals to resolve the dispute.  The States proposed a process for Defendants to specify the particular state entities from which they seek documents and for Defendants and each State to meet and confer about the application of the RFP to each of the specified agencies. Defendants submitted a proposal requiring that "States be ordered to search for and produce any reports, analyses, or studies (including any drafts and underlying data or documents that relate to such reports, analyses, or studies)" falling into one of five broad categories, although they acknowledged that there may still be a need to "meet and confer on a state-by-state basis to discuss" the application of their proposal to each State.  *See* the R&R. at ¶ II.D.

Special Master Marion included Defendants' proposal in an informal R&R very similar to the formal R&R at issue here.  He did not address the States' proposal.  He then asked the parties to negotiate further and update him on the results.  After unsuccessful negotiations, the States informed the Special Master that the parties still differed on "the nature of the relief that should result from this motion: i.e., should the motion solely limit the scope of RFP 68, or also

compel production of documents with no room for individual states to object on state-specific grounds."[8]  The States' email to Special Master Marion went on to note that

> all States either: (1) are willing to produce documents pursuant to negotiations based upon the informal recommendation; or (2) need to raise State-specific concerns that were reserved in the motion, such as—but not necessarily limited to—possession, custody, and control. Essentially, the only remaining aspect of the global dispute is whether and how State-specific arguments can be raised.[9]

Special Master Marion did not address the States' email and filed the R&R the following day.

The R&R as written is ambiguous as to whether it compels production of documents for all states—including those with possession, custody, or control objections—or merely limits the extent of the RFP, allowing for further state-specific negotiation and, if necessary, litigation over its application.  Defendants, however, have made clear that they believe that all States are now compelled to produce all documents responsive to the RFP as modified in the R&R.  The States appealed to Special Master Marion for clarification, which he declined to provide.

Several of the States have met and conferred with Defendants since Special Master Marion filed the R&R.  Although they have sought to find compromises with Defendants and may still do so, disputes currently remain as to whether the Objecting States must produce materials from a few executive or independent agencies identified by the Defendants, potentially many as of yet unspecified other state agencies, and the states' legislatures.  Defendants maintain that the Objecting States must do so, despite (a) their Attorneys General's lack of possession, custody, or control over such documents and (b) the current impossibility of even ascertaining

---

[8] Exhibit A.  Email from Andrew Butler, Assistant Attorney General, Florida Office of the Attorney General, to Special Master David Marion on behalf of the States.  April 11, 2022.
[9] *Id.*

the relevance or proportionality of Defendants' request as applied to particular agencies and documents that Defendants cannot or have not yet identified.

## II.   STANDARD OF REVIEW

The Court must review all of a special master's findings of fact and conclusions of law *de novo*.  Fed. R. Civ. P. 53(f).

## III.   ARGUMENT

The R&R should not be adopted because the Objecting States lack possession, custody, and control over many of the documents Defendants demand.  Additionally, the Objecting States were not given a fair opportunity to raise that objection and other valid objections (e.g., attorney work product protection) that might apply to specific documents or governmental entities if and when Defendants specify the entities and documents from which they want discovery. Compelling production from entities that Defendants cannot or will not yet name would not give the Objecting States a fair opportunity to raise their valid objections.

> a.   *The Objecting States Attorneys General Do Not Have Possession, Custody, or Control over Many of the Documents Defendants Demand.*

Even as modified in the R&R, RFP 68 demands responsive documents from, among other sources, (a) state legislatures; (b) at least one independent executive agency;[10] and (c) any other unspecified state agencies "for which the primary responsibility is healthcare."  R&R ¶ II.D.  The Objecting State Attorneys General, the plaintiffs who brought this litigation on behalf of their states, have no legal or practical ability to obtain and produce documents falling into any of those three categories other than the documents they have already produced from their own offices and the agencies for which they are seeking damages.[11]  The Objecting States'

---

[10] The Commonwealth of Massachusetts Health Policy Commission, a quasi-independent agency governed by a board of primarily independent commissioners.

[11] Certain states have also produced documents from additional agencies in circumstances unique to those states.

legislatures and legislators are not party to this action nor do the AGOs have possession, custody, or control over the legislature's or legislators' documents.  Furthermore, in many cases such documents are privileged by statute or rule.  Similarly, the Objecting States' executive agencies typically belong to separate instruments of state government than the AGOs.  Unlike in the federal system, with few exceptions, Objecting State Attorneys General are independently elected and not appointed by the Governor, under whose purview the majority of the executive branch, including the agencies at issue here, falls.[12]

Not only are the legislatures and other state agencies not parties to this litigation, and not only do the AGOs in fact lack possession, custody, and control over their documents, but to order the Attorneys General to nonetheless produce documents from the legislature or other state agencies would upend the separation of powers inherent in the Objecting States' constitutions. As recognized by other courts and explained further below, conditioning an Attorney General's power to litigate on her ability to produce discovery from entities outside of her control—and whose interests might not be aligned with hers—would violate her constitutional and statutory independence by providing the entities who actually control the requested documents with the ability to veto the Attorney General's litigation decisions by withholding the documents at issue. Several federal court decisions support these objections.  In addition, as described below, state law in several if not all of the Objecting States further reinforces the principle that state AGOs must not be conflated with state government in general for discovery purposes.

---

[12] The exceptions are New Jersey, Tennessee, Hawaii, and Wyoming.  Nonetheless, the principles of independence discussed herein apply equally to those states.  *See* state law discussion, *infra*.

i.   Federal Caselaw

In *United States v. American Express Co.*,[13] in which the defendant sought to compel

production of discovery from non-AGO state government agencies, a magistrate judge found that

"[t]he state agencies are not parties, and the documents sought from the state agencies are not

generally in the possession, custody, or control of the State Attorneys General."[14]  He added, "I

cannot order a party to produce that which it does not have, and that to which it does not have

any right or recourse to acquire."[15]   In reaching that decision, he relied on the constitutional

concern outlined above:

> It is not for this court to interfere with the State Attorneys General's ability to
> exercise their state constitutional power to bring an enforcement lawsuit absent
> gubernatorial approval. To find that the State Attorneys General have control over
> the documents in possession of state agencies that operate wholly independently
> of the State Attorneys General would be giving the Governors' Offices and state
> agencies a "virtual veto" over the policy decision to bring an enforcement action
> that rightfully lies with the State Attorneys General.[16]

That concern and conclusion is equally applicable here.

Two other federal magistrate decisions reached the same result for similar reasons.  In

*Colorado v. Warner Chilcott Holdings Co. III., Ltd.*,[17] the court held that "where two

government agencies are neither interrelated nor subject to common executive control, they will

not be aggregated together for purposes of discovery."[18]  In *New York v. National R.R.*

*Passenger Corp.*,[19] the court held that, where New York's Department of Transportation was the

plaintiff in a suit, New York's State Comptroller was not a party to the action nor subject to party

discovery.  The Comptroller was not a party because, like the Attorney General, he is

---

[13] *United States v. American Express Co.*, Case No. 10-CV-04496, 2011 WL 13073683 (E.D.N.Y. July 29, 2011).
[14] *Id.* at *4.
[15] *Id.* at *3.
[16] *Id.* at *3.
[17] *Colorado v. Warner Chilcott Holdings Co. III., Ltd.*, Case No. 05-2182, 2007 WL 9813287 (D.D.C. May 8, 2007).
[18] *Id.* at *4.
[19] *New York v. National R.R. Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y. 2006).

independently elected.[20]  Moreover, the court refused to impute control over the Comptroller's documents to the Department of Transportation simply because they were both part of the government of the State of New York.[21]

In the proceedings before Special Master Marion, Defendants cited *Washington v. GEO Group, Inc.*,[22] a decision ordering the Washington Attorney General to produce documents on behalf of all Washington state governmental agencies.[23]  Although that decision purported to distinguish *New York v. Nat'l R.R. Passenger Corp.*, it did not analyze the crucial constitutional issues raised here, rested on facts particular to that case, and reached a conclusion contrary to prior precedent.  For example, in *United States v. Novartis Pharmaceuticals Corp.*, the U.S. District Court for the Southern District of New York held that eleven litigating states, including the State of Washington*,* were not subject to discovery on the records of all of their state agencies by virtue of bringing the enforcement action.[24]  Similarly, in a more recent decision on the same issue, the U.S. District Court for the District of New Mexico considered the *GEO Group* decision explicitly and—based upon the constitutional structure of New Mexico's executive branch—found that the New Mexico AGO could not be held responsible for discovery from other New Mexico state agencies.[25]

Finally, in *United States v. AT&T Co.*,[26] the Federal District Court for the District of Columbia held that, where the U.S. Department of Justice brought suit on behalf of the United

---

[20] *Id.* at 263-64.

[21] *Id.* at 266-69.

[22] *Washington v. GEO Group, Inc.*, Case No. 3:17-cv-05806-RJB, 2018 WL 9457998 (W.D. Wash. Oct. 2, 2018).

[23] *Id.* at *3.

[24] Case No. 11 CIV. 8196 CM JCF, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014) ("[T]he mere fact that a state or a state agency sues does not mean that the records of all state agencies may be discovered using Rule 34's tools.  Rather, there must be a showing that the agency at issue has control over requested information.").

[25] *In re Gold King Mine Release in San Juan Cty., Colorado, on Aug. 5, 2015*, Case No. 1:16-CV-00465-WJ-LF, 2021 WL 847971 at *3 (D.N.M. Mar. 5, 2021).

[26] *United States v. AT&T Co.*, 461 F. Supp. 1314 (D.D.C. 1978).

States, the defendant was not entitled to party discovery from "the Federal Communications Commission and other independent regulatory agencies."[27]  The court based its holding in part on two reasons equally applicable here.  First, it observed that such agencies are independent of executive control and therefore could not be deemed parties to any suit filed by the Department of Justice.[28]  "Second," it declared, "[t]he plain fact is that a party cannot produce that which it does not have;"[29] further explaining that because the FCC "is free from executive control and not answerable to instructions from the President or Attorney General," requiring the Department of Justice to produce independent agency documents in order to proceed with its case "would effectively leave the conduct of this lawsuit, and perhaps of other actions by the government, vulnerable to virtual veto by one or more independent regulatory agencies."[30]  Similarly, the Objecting State legislatures, as well as the unspecified agencies from which Defendants seek documents in RFP 68, are independent of the Attorneys General.  Requiring them to produce documents in response to the RFP as a condition for the Attorney General being allowed to prosecute this case would give those entities a "virtual veto" over the Attorneys General's authority to pursue their states' interests and enforce the law.

          ii.  <u>State Law</u>

      In addition to the federal caselaw and general principles described above, which apply to all Objecting States, the law in several of the Objecting States as described below further reinforces the Objecting States' lack of possession, custody, and control over non-AGO state entities.

---

[27] *Id.* at 1335.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 1336.

**California**

California law is clear: the Attorney General is "not deemed to have possession custody, or control over documents of any [other] state agency.  Such documents must be obtained by a subpoena."[31]  The reason is straightforward: "[e]ach agency or department of [California] is established as a separate entity, under various state laws or constitutional provisions" whose "interests are often in conflict and may sue one another."[32]  Accordingly, no state agency can be compelled to produce documents from any other state agency or instrumentality, as they are not in its "possession, custody, or control."[33]  This holds all the more true if the Attorney General were compelled to produce documents from other co-equal branches of the California Government such as the Legislature, which would raise serious concerns regarding the separation of powers under the California Constitution.[34]

Though the Attorney General is the sole litigant prosecuting this case on behalf of California, the Attorney General's Office has already stated that it will produce documents responsive to RFP 68 from the seven state agencies at issue in this litigation.[35]  Defendants have not raised any objection, and accordingly California and Defendants have no active dispute over the scope or burden of RFP 68.  However, California objects to the R&R to the extent it would require the Attorney General to produce documents from any other state agency, branch of government, or instrumentality, as those documents would not be in its possession custody, or

---

[31] *People ex rel. Lockyer v. Super. Ct.*, 122 Cal. App. 4th 1060, 1078 (2004) (finding that the Attorney General could not be compelled to produce documents from the state Medical Board and Board of Optometry, independent state agencies that were not parties to the litigation).
[32] *Id.*
[33] Fed. R. Civ. P. 26(a).
[34] *Cf. Perry v. Brown*, 52 Cal. 4th 1116, 1028 (Cal 2011) (legislature is independent of the Attorney General and occasionally takes adverse positions on questions of law).
[35] These are the six agencies for which the Attorney General is seeking to recover damages, plus the Department of General Services which manages many of the relevant contracts.

control.[36]

## Connecticut

 The R&R ignores whether, as a legal and practical matter, Defendants may seek non-AGO state government entity documents from the Connecticut Office of the Attorney General (the "CTOAG") as party discovery under Federal Rules of Civil Procedure 33 and 34. Defendants have a fundamental misconception about the identity of the plaintiffs in this case and a misunderstanding about the powers of the CTOAG in particular.  The CTOAG brought this law enforcement action in the name of the State of Connecticut and on behalf of the people of the state pursuant to its statutory authority to enforce federal and state antitrust and unfair competition laws. Conn. Gen. Stat. §§ 35-32 and 42-110o.  No Connecticut legislative offices or state agencies are named as plaintiffs, and the CTOAG does not seek damages on their behalf.

 The CTOAG does not have possession, custody, or control of documents owned by the non-party Connecticut General Assembly and non-party state agencies.  The Connecticut State Constitution expressly divides the powers of Connecticut state government into three branches— legislative, executive, and judicial—and an order compelling the CTOAG to produce legislative documents would violate this constitutional separation of powers.  Conn. Const. Art. II and XVIII.  The Connecticut Attorney General possesses only those powers statutorily enumerated, *Blumenthal v. Barnes*,[37] and he does not have blanket statutory authority to access documents owned by the General Assembly or state agencies.  The Governor and the Attorney General of Connecticut are independently elected officials filling separate constitutionally created offices. Conn. Const. Art. IV and amend. I.  This dual executive form of state government gives the Governor control over executive branch agencies, which do not include the CTOAG, and gives

---

[36] *Lockyer*, 122 Cal. App. 4th at 1078.
[37] *Blumenthal v. Barnes*, 261 Conn. 434, 463 (2002).

the Attorney General supervisory responsibility over the legal affairs of the state.[38]  The

Attorney General represents "the broader interests of the state" so he can sue executive branch

agencies under the control of the Governor.[39]  Further, Defendants have not shown that the

CTOAG has "control over the documents sought."[40]  If this Court adopts Defendants' view that

the CTOAG has control over all legislative offices and state agencies, it would give those offices

and agencies a "virtual veto" over the Attorney General's independent responsibility to the state

and his decision whether to bring an enforcement action.[41]

**District of Columbia**

It has long been recognized that the Office of the Attorney General for the District of

Columbia ("OAG") is an independent agency from the rest of the executive and District

government.[42]  OAG does not report to the mayor.  Accordingly, OAG has no possession,

custody, or control over other agencies' documents.[43]  In *District of Columbia v. Eads, LLC*, the

Court recognized that the District is an independent agency and lacks the authority to produce

witnesses or documents from other District Agencies.[44]

---

[38] *See, e.g.* Conn. Gen. Stat. §§ 3-1 to 3-10f (powers and duties of the Governor); §§ 3-124 to 3-131 (powers and duties of the Attorney General); § 4-38c (departments within the executive branch).
[39] *Conn. Comm. on Special Revenue v. Conn. Freedom of Info. Comm.*, 387 A.2d 533, 537 (Conn. 1978) (citation omitted).
[40] *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006); *see also Nat'l R.R. Passenger Corp.*, 233 F.R.D. at 268 n.10 (laying out seven factors for control).
[41] The fact that the CTOAG *may* be able to garner voluntary participation by the non-parties is not dispositive; the court cannot properly "order a party to produce that which it does not have, and that to which it does not have any right or recourse to acquire." *Am. Express*, 2011 WL 13073683, at *3; *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007).
[42] *See D.C. v. ExxonMobil Oil Corp.*, 172 A.3d 412, 431 (D.C. 2017); D.C. Reg. 6022 (July 16, 2010); 57 D.C. Reg 3012 (April 9, 2010); D.C. Council, Comm. On Pub. Safety & Judiciary, Report on Bill No. 18-65 (Dec. 16, 2009) (as cited in *ExxonMobil*).
[43] OAG has nonetheless agreed to facilitate production from its Medicaid agency, the Department of Healthcare Finance, whose data and documents OAG may rely on to prove OAG's claims, and who is a victim of Defendants' schemes due to its participation in the Medicaid program.  *See* Order Den. Mot. for Recons. of Order Granting Pl.'s Mot. for Clarification, *District of Columbia v. Eads*, 2018 CA 005830 B (D.C. Super. Ct. 2021) (Ex. B).
[44] Ex. B, at 1-2 (granting motion for protective order prohibiting deposition pursuant to Super. Ct. Civ. R. 30(b)(6) of non-OAG District agencies).

14

To be clear, OAG does not object to appropriate third-party discovery from District agencies. But Defendants' interpretation of the R&R would require OAG to produce documents well outside its possession, custody, and control and greatly upset bedrock federalism principles.[45] Defendants' interpretation of Special Master Marion's R&R therefore must be rejected.

**Hawaii**

Although the Attorney General of Hawaii is appointed by the Governor of Hawaii, she does not have a legal right to demand documents sought by RFP 68 from the Hawaii State Legislature or the legislators themselves, nor from state agencies, especially from those agencies for whom damages are not being sought.   Therefore, the Attorney General of Hawaii does not have possession, custody or control over such documents sought by RFP 68.   Furthermore, Hawaii questions the relevance of the documents and why the documents are proportional to the needs of the case particularly where no defendant has filed an answer nor asserted any affirmative defenses.

Finally, Hawaii notes that the request in item (4) in the R&R at ¶ II.D. is in error as regards the function of the cited Hawaii statute.

**Massachusetts**

The principles discussed above have been recognized and endorsed in the only Massachusetts state court decision to address the issue currently under dispute.  The facts in *Massachusetts v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*,[46] closely parallel those here. The defendant in that case "made clear that, in seeking documents from the 'Commonwealth,' it

---

[45] *See New York v. Amtrak*, 233 F.R.D. 259, 264 (N.D.N.Y. 2006) ("[f]or reasons of federalism and comity, we give great deference to the State and its Legislature to define how governmental entities are to be separate and distinct and how they relate to one another as a whole").

[46] *Massachusetts v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 30 Mass. L. Rptr. 377, Case No. 2011–2811–BLS 2, 2012 WL 5392617 (Mass. Super. Ct. Oct. 5, 2012).

expected production from all 'political subdivisions, departments or agencies thereof, including *but not limited to* fifteen named state entities." *Id.* at *1 (emphasis in original). The court considered "whether the Attorney General's obligation to search for and produce documents responsive to defendant's discovery requests extends to other departments and agencies within the executive branch," and "conclude[d] that [the Attorney General's] discovery obligations are limited to producing documents in the possession of her office." *Id.* The court reached that decision for three reasons. First, there was no showing that the Attorney General has control over the state agencies that possessed the requested documents. *Id.* at *2. Second, because the Attorney General and Governor are separate elected officials, "[i]f this Court were to conclude that state agencies, even those within the executive branch, necessarily become 'parties' for discovery purposes any time the Attorney General exercises her exclusive authority to bring an enforcement action, that could upset the constitutional balance of power," by giving "those agencies a 'virtual veto' over the action."[47] Finally, the court found that fairness dictated denying the defendant's motion to compel and granting Massachusetts's motion for a protective order where the defendant's discovery requests were "extraordinarily broad and on their face of questionable relevance" and the defendant might be able to obtain the documents it sought by recourse to Federal Rule of Civil Procedure 45. *Id.* Each one of those factors is equally applicable to the instant dispute.

**Michigan**

Under Michigan law, "[l]egal custody and physical possession" of an agency's records are "vested in the state agency that created, received, or maintains" them. MCL 18.1285(3). To the extent that the R&R recommends that the Michigan Attorney General turnover documents in the

---

[47] *Id.* at *3 (citing *United States v. American Express Co.*, at *3).

legal custody and physical possession of a state agency, the legislature, or the judiciary, Michigan objects.

In Michigan, the Attorney General has dual roles. First, as an elected executive officer, the Attorney General's "paramount" duty is "to protect the interest of the general public."[48]  This role is codified at MCL § 14.28, which grants the Attorney General broad authority to bring public interest litigation in her sole discretion. Suits brought under MCL § 14.28 are brought in the name of the State on behalf of the people. The Attorney General's second role is to serve as legal counsel for the institutions of Michigan's government. This role is codified at MCL § 14.29.

When a state agency sues, it must do so "in its own name" or in the name of its principal officer. MCL § 600.2051(4).[49]  In this case, the Michigan Attorney General joined this lawsuit pursuant to her authority under MCL 14.28 on behalf of the State. Neither the Governor (nor any executive state agency), the legislature, or the judiciary are named as a plaintiff in the complaint. Defendants' request and the R&R conflate the Attorney General's dual roles: an executive officer tasked with advancing the public interest (MCL § 14.28) and a lawyer for the Governor's agency upon her request (MCL § 14.29). But these roles are distinct and there is no legal basis to conflate them.

Because Michigan's various state agencies, its legislature, and its judiciary are not parties to this litigation, and because the Michigan Attorney General does not have "[l]egal custody and physical possession" of any state agency, legislative, or judicial documents, Michigan objects to the R&R to the extent that it requires the production of such documents.

---

[48] *Att'y Gen v Michigan Pub Serv Comm'n*, 243 Mich App 487, 508, 625 NW2d 16, 29 (2000) (quoting *State ex rel Allain v Miss Pub Serv Comm*, 418 So2d 779, 783 (Miss 1982)).

[49] "Governmental agencies are independent entities," and are not considered parties merely because "the State" is a party. *Taylor v Zanone Props*, 342 Ark 465, 473, 30 SW3d 74, 78 (2000).

**Missouri**

Under Missouri law, each governmental body is the custodian of its records, and only its records.[50]  One agency "is not required to produce the records of [another agency] and, in fact, … [it is] prohibit[ed] . . . from the dissemination of records of any agency other than those of [the custodial agency] itself."[51]  Because an agency is not in possession of another's records, and cannot produce that which it does not possess, it is error to compel one agency to produce another's records.[52]

Not only would RFP 68 and the R&R violate these principles of Missouri law regarding custody of agency documents, but they would also upend the separation of powers inherent in the Missouri Constitution. The Missouri Constitution provides for a separation of powers between the legislative, executive, and judicial branches of state government.[53]  In addition to separating the legislative, judicial, and executive branches of government, the Missouri Constitution further provides separation within the State's executive branch.[54]  The Missouri Constitution enumerates six executive officers, including the governor and attorney general, each of which the people separately elect and each with their own discrete functions.[55]  The Missouri Constitution further defines and delimits by name and number additional executive agencies, over which the governor exercises control.[56]  The attorney general lacks executive control over those agencies, and to require him to exert such control would contravene the Missouri Constitution's express

---

[50] Mo. Rev. Stat. § 610.023.1.
[51] *State ex rel. Daly v. Info. Tech. Servs. Agency of City of St. Louis*, 417 S.W.3d 804, 809 (Mo. Ct. App. 2013).
[52] *Bedell v. Dir. of Revenue, State of Mo.*, 935 S.W.2d 94, 96 (Mo. Ct. App. 1996) (reversing judgment because "information, records, or documents" that were in possession of the Missouri Highway Patrol legally "are not in the possession of the Director of Revenue are not available to him and he has no duty to produce those documents.")
[53] Mo. Const. art. II, § 1.
[54] *Id.* art. IV, §§ 12 & 17.
[55] *Id.* § 17.
[56] *Id.* §§ 12 & 17

18

delegation of that power to the governor.[57]

Furthermore, Missouri statute expressly delegates the enforcement of Missouri's antitrust and consumer protection laws to the attorney general.[58]  That enforcement "is entirely within the discretion of the attorney general."[59]  The Missouri Attorney General brought this lawsuit in that enforcement capacity.

**North Carolina**

RFP 68 and the R&R are also objectionable on grounds specific to North Carolina.  First, pursuant to N.C.G.S. § 143B-10(f), a North Carolina state agency's records are within the possession, custody, and control of that agency's head, as a matter of law.  By law, the North Carolina Department of Justice ("NCDOJ") has custody of its own records and nothing more.

Second, RFP 68 calls for production of materials in the custody of the state legislature, but even *the existence* of many such records—let alone the contents of the documents themselves—is protected from disclosure outside the legislature (including to the NCDOJ).  In general, both drafting requests and information requests from legislators to staffers, and any documents prepared by staffers in response, cannot be disclosed outside the General Assembly unless the pertinent legislator consents or the document becomes part of a bill.  N.C.G.S. §§ 120-130(b), 120-131(a).  For information requests, not only is the *content* of the staffer's communication protected from disclosure, but its *existence* as well.  *Id.* § 120-131(a).  Any order requiring North Carolina to provide discovery of these highly-protected documents would manifestly disregard the state-level separation of powers and require unjustified intrusion into the inner workings of a coordinate branch of state government.

---

[57] *Id.* § 1.
[58] Mo. Rev. Stat. § 416.061.2; *id.* § 407.100.
[59] *State ex rel Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 130 (Mo. 2000).

**Ohio**

The Ohio Attorney General, the party to this case, does not have possession, custody, or control of documents or materials of the legislative branch (the General Assembly) or of the executive branch (the Governor and state agencies under the Governor) for purposes of discovery.  Each branch, by virtue of the implicit separation of powers doctrine in the Ohio Constitution, operate independently of each other.[60]  The same principle holds for the Attorney General and the Governor, as each is a separately elected state officer of the executive branch with unique prerogatives.[61]  This separate executive structure deprives the Attorney General of the ability to compel the General Assembly, Governor, or state agencies to produce documents in discovery.[62]

This case, a civil law enforcement action, brought by the Attorney General in his law enforcement capacity, is authorized under broad authority given to the Attorney General to do "all things necessary" to properly conduct an antitrust case and to seek equitable relief as provided under law independent of the General Assembly or the Governor. R.C. § 109.81(A).  Finding the Attorney General to have possession, custody, or control over documents of the non-party legislative branch or the executive branch would effectively give those branches "veto" power over the decision-making process of the Attorney General.[63]

---

[60] *See City of South Euclid v. Jemison* (1986), 28 Ohio St. 3d 157, 158–59 (citing *State v. Harmon* (1877), 31 Ohio St. 250; *State, ex rel. Bryant, v. Akron Metro. Park Dist.* (1929), 120 Ohio St. 464).
[61] *See id*. *See also* OH. CONST. art. III, § 5 ("The supreme executive power of the State shall be vested in the Governor."); R.C. § 109.02 ("The attorney general is the chief law officer for the state. . . .").
[62] *See State of Ohio v. Monsanto Co., et al.* Hamilton C.P. No. A1801237, at *4-6 (Mar. 1, 2021) (Ex. C) (Because of Ohio's governmental structure having separately elected constitutional officers, Ohio agencies are not parties to litigation brought by the Ohio Attorney General and are not subject to party discovery); *Colorado v. Warner Chilcott Holdings Co. III., Ltd.*, Case No. 05-2182, 2007 WL 9813287, at *14–15 (D.D.C. May 8, 2007).  (Ohio agencies not subject to party discovery in civil antitrust action brought by the Ohio Attorney General due to lack of common executive control);
[63] *See American Express Co.*, 2011 WL 13073683 at *15.

**Oregon**

Oregon has already produced over 350,000 documents from agencies for whom it seeks damages, including some reports.  Oregon has already decided to no longer seek damages for some agencies that were unable to meet Defendants' extensively broad discovery requests. Oregon met and conferred with Defendants regarding RFP 68.  As no formal stipulation has been agreed to, Oregon joins in this objection to the extent Defendants may in the future expand the scope from Oregon's proposal during the recent meet and confer process.  Oregon joins the objection to preserve its state-specific objections.

For example, the Oregon Constitution "Speech and Debate" clause[64] states: "Nor shall a member for words uttered in debate in either house, be questioned in any other place."  The clause has been construed to protect the legislative body from suits and compulsion from non-legislative bodies: "The Debate Clause should be broadly construed to further its purpose, which is to assure citizens that their elected representatives, in conducting legislative business, are accountable only to the people and to their colleagues and not to some forum or tribunal outside of the legislative branch."[65]  In addition to being a separate branch of state government, the Attorney General may not be capable of compelling the Legislature to produce materials.

**Tennessee**

Tennessee's Attorney General is appointed by the Tennessee Supreme Court.  *See* Tenn. Code Ann. § 8-6-101.  For that reason, the independence and separation of powers principles discussed herein apply equally to Tennessee.[66]

Under Tenn. Code Ann. § 8-6-109(b)(1), the Attorney General has the authority to direct

---

[64] Or. Const. art. IV, § 9.
[65] Op. Or. Atty. Gen. No. 8265, Feb. 24, 1999.
[66] *See American Express Co.*, at *2 n.5 (specifically noting Tennessee Attorney General's independence from the Governor).

"all civil litigated matters [] in which the state or any officer, department, agency, board, commission or instrumentality of the state may be interested[.]"  Here, the "interested" state instrumentalities for which the Tennessee Attorney General may direct litigation activities are the Attorney General's Office, as plaintiff, and, at most, those Tennessee state agencies for which the Attorney General seeks damages and from which the Attorney General already has produced documents.  As the Attorney General does not have the authority to direct litigation activities for other state instrumentalities without an interest in this litigation, he cannot direct their discovery activities in this case. [67]

**Washington**

Defendants' reliance on *Washington v. GEO Group, Inc.*,[68] a case involving the Washington Attorney General's Office action to enforce the state's minimum wage laws, is misplaced. Here Washington is enforcing the State Consumer Protection Act ("CPA"), which contains *separate statutory provisions* for actions by the Attorney General on behalf of its consumers, Wash. Rev. Code § 19.86.080, and actions on behalf of state agencies, Wash Rev. Code § 19.86.090.  Unlike *GEO Group*, where another state agency shared enforcement authority over the state's minimum wage laws, here the Attorney General is the only state agency that can enforce the CPA. Simply bringing a *parens patriae* claim on behalf of consumers in Washington under the CPA does not convert every governmental entity in the state into a party to the lawsuit subject to party discovery. By its very terms, a *parens patriae* claim under the CPA is separate from a claim on behalf of state agencies. Washington has brought damages

---

[67] *Cf. Bd. of Educ. of Shelby Cty., Tenn. v. Memphis City Bd. of Educ.*, No. 2:11-CV-02101-SHM, 2012 WL 6003540, at *1–4 (W.D. Tenn. Nov. 30, 2012) (where municipal school district sued Attorney General alleging that state legislation violated the Equal Protection Clause, permitting rule 26 discovery of documents from non-party General Assembly that enacted the challenged legislation; Attorney General was proper party, legislators enjoyed absolute immunity, and there was uncertainty whether the General Assembly could be sued), *supplemented*, No. 2:11-CV-02101-SHM, 2012 WL 6607288 (W.D. Tenn. Dec. 18, 2012).

[68] *Washington v. GEO Group, Inc.*, Case No. 3:17-cv-05806-RJB, 2018 WL 9457998 (W.D. Wash. Oct. 2, 2018)

claims on behalf of four agencies—Labor and Industries, Department of Corrections, Department of Social and Health Services, and the Health Care Authority—and already made substantial productions from these four agencies. Washington is not seeking damages for any other governmental entity and does not have possession, custody, and control over documents of non-party state agencies.

**Wyoming**

Even though under Wyo. Stat. Ann. § 9-1-601 the Wyoming Attorney General is appointed by the Governor with the advice and consent of the Wyoming Senate, many of the principles explained above still support the argument that she only has possession, custody, and control over documents held within the Consumer Protection and Antitrust Unit.  Importantly, in *Colorado v. Warner Chilcott Holdings Co. III*, the United States District Court for the District of Columbia stated, "the Court will not aggregate state agencies without a strong showing to the contrary by Defendants."[69]  The court further stated that defendants must "affirmatively and thoroughly" demonstrate that the State Medicaid agencies at issue in that litigation should be treated as parties.[70]  Defendants have never made a "strong showing," or even a showing at all, that the State of Wyoming's agencies and attorney general should be aggregated for the purposes of discovery, either in motion practice, or as a part of their defensive discovery record. As such, in respect of the principles of federalism and comity, deference is due to Wyoming state law in defining the separation of powers and duties within Wyoming governmental branches, an issue requiring extensive discussion of Wyoming-specific law, as well as Wyoming's specific defensive discovery record in this case.[71]

---

[69] 2007 WL 9813287 at *5
[70] *Id.*
[71]*See New York v. National R.R. Passenger Corp.*, 233 F.R.D. at 264.

    *b.  The Objecting States Have Not Had a Fair Opportunity to Argue Relevant Objections.*

As described above, the States limited the grounds for their protective order motion, both because the breadth and vagueness of RFP 68 made it infeasible to ascertain many of the specific objections relevant to the RFP as applied to particular state entities, and in an effort to promote judicial efficiency.  The States made it clear that they reserved state-specific objections to the RFP not raised in their motion.  Yet, the Special Master has apparently recommended ordering production without giving the opportunity to raise those objections in the proceedings before him.  Rule 26(c)(2) allows a court to order the provision of discovery when it denies a motion for a protective order, but only "on just terms."  Given the circumstances and law described above, such an order here would be unjust.

    *c.  In the Alternative, Potential Objections to RFP 68 as Applied Are Not Yet Ripe for Resolution.*

The States moved for a protective order related to RFP 68 because the RFP presented, on its face, an immeasurable burden that is disproportionate to the needs of the case.  In the R&R, Special Master Marion writes that Defendants' proposed limitations to RFP 68 "represent a favorable approach toward meeting many of the States' objections" as articulated in their motion for a protective order.  R&R at ¶ II.D.  Nonetheless, both Defendants' proposal and Special Master Marion in excerpting it recognized that, even with Defendants' proposed limited list of categories of document sources, individual states may need to "meet and confer on a state-by-state basis to discuss, in good faith, the scope of [each] category as applied to that particular State."  R&R ¶ II.D.  Even assuming for the sake of argument that the Objecting States had possession, custody, and control over all such documents outside of their AGOs, there is at present no way for the Attorneys General to know what state entities beyond the legislature and a small number of specified agencies have responsive documents, nor whether the burden of

locating and producing such documents would be disproportionate to the needs of the case. Moreover, neither the Objecting States nor Defendants can anticipate exactly what disputes, if any, might arise as to hypothetical responsive documents in the possession of state agencies the Defendants may at some point identify, with respect to relevance or other issues.  It would therefore be unfair and perhaps futile to order production of all documents meeting the Defendants' conditions at this point when so little is known about such documents, to the extent they exist.

### IV.    CONCLUSION

For the reasons described above, the Objecting States request that the Court find that they need not produce documents outside the AGOs and agencies for which they seek damages, and rule that the States need not produce anything more than the millions of pages they have already produced.

Dated: May 10, 2022                        Respectfully submitted,

COMMONWEALTH OF
MASSACHUSETTS
MAURA HEALEY
ATTORNEY GENERAL

*/s/ Daniel H. Leff*
Daniel H. Leff (MA BBO No. 689302)
Assistant Attorney General
William T. Matlack (MA BBO No. 552109)
Assistant Attorney General, Chief, Antitrust
Division
Michael B. MacKenzie (MA BBO No.
683305)
Assistant Attorney General, Deputy Chief,
Antitrust Division
One Ashburton Place
Boston, MA 02108
Tel: (617) 727-2200
Fax: (617) 722-0184 (fax)
Daniel.Leff@mass.gov
William.Matlack@mass.gov
Michael.Mackenzie@mass.gov


TREG R. TAYLOR
STATE OF ALASKA
ATTORNEY GENERAL

By: /s/Jeffrey G. Pickett
Jeffrey G. Pickett
Senior Assistant Attorney General
Alaska Bar No. 9906022)
Assistant Attorneys General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Tel: (907) 269-5275
Fax: (907) 276-3697
jeff.pickett@alaska.gov

STATE OF ARKANSAS
OFFICE OF THE ATTORNEY GENERAL
LESLIE RUTLEDGE

/s/ Johnathan R. Carter
Johnathan R. Carter (Ark. Bar No. 2007105)
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Phone:  501.682.8063
Fax:  501.682.8118

PLAINTIFF STATE OF CALIFORNIA
XAVIER BECERRA
ATTORNEY GENERAL
By:     /s/ Emilio Varanini
Supervising Deputy Attorney General
Healthcare Rights and Access Section
California Office of the Attorney General
455 Golden Gate Avenue, Ste. 11000
San Francisco, Ca. 94102
Phone #: 415-510-3541
E-mail: Emilio.Varanini@doj.ca.gov
Attorneys for Plaintiff State of California

FOR PLAINTIFF STATE OF COLORADO
CYNTHIA H. COFFMAN
ATTORNEY GENERAL

/s/ Carla J. Baumel
Carla J. Baumel
Assistant Attorney General
Colorado Department of Law
Consumer Protection Section
1300 Broadway, Seventh Floor
Denver, Colorado 80203
Telephone: 720.508.6235
Email: Carla.Baumel@coag.gov

PLAINTIFF STATE OF CONNETICUT
WILLIAM TONG
ATTORNEY GENERAL

/s/ Christine M. Miller
Christine M. Miller
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Christine.Miller@ct.gov
Counsel for the State of Connecticut

KATHLEEN JENNINGS
DELAWARE ATTORNEY GENERAL

/s/ Michael A. Undorf
Michael A. Undorf
Delaware Department of Justice
Deputy Attorney General
820 N. French St., 5th Floor
Wilmington, DE 19801
Tel. (302) 683-8816
michael.undorf@delaware.gov

FOR PLAINTIFF DISTRICT OF
COLUMBIA

KARL A. RACINE
Attorney General for the District of
Columbia

By:  /s/ David Brunfeld
DAVID BRUNFELD
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-5079
David.brunfeld@dc.gov
Attorney for the District of Columbia

STATE OF GEORGIA
By: /s/ Daniel Walsh
Daniel Walsh, Senior Assistant Attorney
General
Christopher Carr, Attorney General
Margaret Eckrote, Deputy Attorney General
Charles Thimmesch, Assistant Attorney
General
Office of the Georgia Attorney General
40 Capitol Sq., SW
Atlanta, GA 30334
(404) 458-3626
cthimmesch@law.ga.gov
Attorneys for the State of Georgia

FOR THE STATE OF HAWAII
HOLLY T. SHIKADA
Attorney General

/s/ Rodney I. Kimura
Rodney I. Kimura
Deputy Attorney General
425 Queen Street
Honolulu, Hawaii 96813

STATE OF IDAHO
LAWRENCE G. WASDEN
ATTORNEY GENERAL

BY: /s/ John K. Olson
John K. Olson
Deputy Attorney General
Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-2424
john.olson@ag.idaho.gov

FOR PLAINTIFF STATE OF ILLINOIS
KWAME RAOUL
Attorney General

/s/ Joseph B. Chervin
Joseph B. Chervin
Assistant Attorney General
Brian M. Yost
Assistant Attorney General
Office of the Illinois Attorney General
100 W. Randolph Street, 11th Floor
Chicago, Illinois 60601
Tel: (872) 276-3596
Joseph.Chervin@ilag.gov
Brian.Yost@ilag.gov

THE OFFICE OF THE INDIANA
ATTORNEY GENERAL

By:  /s/ Tamara Weaver
Deputy Attorney General
Indiana Government Center South – 5th Fl.
302 W. Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 234-7122
Fax: (317) 232-7979
Email:  Tamara.Weaver@atg.in.gov
Iowa

ATTORNEY FOR THE STATE OF IOWA

/s/ Max M. Miller
Max M. Miller
Assistant Attorney General
Consumer Protection Division Hoover
Office Building-Second Floor 1305 East
Walnut Street
Des Moines, IA 50319
Tel: (515) 281-5926
Fax: (515) 281-6771
Max.Miller@ag.iowa.gov

FOR PLAINTIFF STATE OF KANSAS
DEREK SCHMIDT
ATTORNEY GENERAL

/s/ Lynette R. Bakker
Lynette R. Bakker
Assistant Attorney General
Office of the Kansas Attorney General
120 S.W. 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Telephone: (785) 368-8451
Fax: (785) 291-3699
Email: lynette.bakker@ag.ks.gov

JEFF LANDRY
ATTORNEY GENERAL OF LOUISIANA

s/ William H. Rogers, Jr.
William H. Rogers, Jr. LA #37288
Assistant Attorney General
Louisiana Department of Justice
Office of Attorney General Jeff Landry
Public Protection Division
Complex Litigation Section
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6438
Email: rogersw@ag.louisiana.gov
Attorneys for Plaintiff State of Louisiana

28

BRIAN E. FROSH
MARYLAND ATTORNEY GENERAL

/s/ Schonette J. Walker
Schonette J. Walker
Assistant Attorney General
Chief, Antitrust Division
Gary Honick
Assistant Attorney General
Deputy Chief, Antitrust Division
Byron Warren
Assistant Attorney General
Maryland Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us
Counsel for Plaintiff State Maryland


FOR PLAINTIFF
STATE OF MICHIGAN
BILL SCHUETTE
ATTORNEY GENERAL

/s/ DJ Pascoe
DJ Pascoe
Assistant Attorney General
First Assistant, Corporate Oversight
Michigan Department of Attorney General
G. Mennen Williams Building, 6th Floor
525 W. Ottawa Street
Lansing, Michigan 48933
pascoed1@michigan.gov
Telephone:  (517) 373-1160
Fax:  (517) 335-6755

KEITH ELLISON
Attorney General
State of Minnesota

s/ Katherine A. Moerke
KATHERINE A. MOERKE
(Minn. Atty. Reg. No. 0312277)
ELIZABETH ODETTE
(Minn. Atty. Reg. No. 0340698)
Assistant Attorney Generals
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 728-7174 (Voice)
(651) 296-9663 (Fax)
elizabeth.odette@ag.state.mn.us
katherine.moerke@ag.state.mn.us
ATTORNEYS FOR STATE OF
MINNESOTA

FOR PLAINTIFF STATE OF MISSISSIPPI

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:  /s/ Tricia L. Beale
Tricia L. Beale (MSB #99113)
Consumer Protection Division
Mississippi Attorney General's Office
1141 Bayview Ave., Suite 402
Biloxi, Mississippi 39530
Telephone:  228-386-4404
tricia.beale@ago.ms.gov

STATE OF MISSOURI
ERIC S. SCHMITT
ATTORNEY GENERAL

By: /s/ Michael Schwalbert
Michael Schwalbert
Assistant Attorney General
Consumer Protection Section
Missouri Attorney General's Office
815 Olive Street | Suite 200
Saint Louis, Missouri 63101
michael.schwalbert@ago.mo.gov
Phone: 314-340-7888
Fax: 314-340-7981
Counsel for Plaintiff State of Missouri

AUSTIN KNUDSEN
ATTORNEY GENERAL

By:/s/ Rebekah J. French
Rebekah J. French, MT Bar #2463
Assistant Attorney General
P.O. Box 200151
555 Fuller Avenue
Helena, MT 59620-0151
Phone: 406-444-2026
Fax:  406-442-1894
rebekah.french@mt.gov
ATTORNEY FOR PLAINTIFF
STATE OF MONTANA

STATE OF NEBRASKA,
DOUGLAS J. PETERSON,
ATTORNEY GENERAL

/s/ Shereece Dendy-Sanders
Shereece Dendy-Sanders
Assistant Attorney General
Nebraska Attorney General's Office
2115 State Capitol
Lincoln, NE  68509
Tel: 402-471-9305
Fax: 402-471-4725
shereece.dendy-sanders@nebraska.gov

STATE OF NEVADA
AARON D. FORD
Nevada Attorney General

By: /s/ Lucas J. Tucker
Lucas J. Tucker
Senior Deputy Attorney General
Marie W.L. Martin
Senior Deputy Attorney General
Office of the Nevada Attorney General
Bureau of Consumer Protection
8945 W. Russell Road, Suite 204
Las Vegas, Nevada 89148
Tel (702) 486-3256
LTucker@ag.nv.gov

THE STATE OF NEW HAMPSHIRE

By its attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

/s/ Alexandra C. Sosnowski
Alexandra C. Sosnowski, Bar #268996
Assistant Attorney General
Consumer Protection & Antitrust Bureau
33 Capitol Street
Concord, NH  03301-6397
(603) 271-2678
Alexandra.C.Sosnowski@doj.nh.gov
Attorney for the State of New Hampshire

MATTHEW J. PLATKIN
Acting Attorney General of New Jersey

/s/ Isabella R. Pitt
Isabella R. Pitt
Deputy Attorney General
State of New Jersey
Office of the Attorney General
Division of Law
124 Halsey Street – 5th Floor
Newark, New Jersey 07102
Tel: (973) 648-7819
Fax: (973) 648-4887
Isabella.Pitt@law.njoag.gov
 ATTORNEY FOR THE
STATE OF NEW JERSEY

PLAINTIFF STATE OF NEW MEXICO
HECTOR BALDERAS
Attorney General

/s/ Nicholas M. Sydow
Nicholas M. Sydow
Civil Appellate Chief
Office of the New Mexico Attorney General
201 Third Street NW, Suite 300
Albuquerque, NM 87102
Tel.: (505) 717-3571
Fax: (505) 490-4881
nsydow@nmag.gov

PLAINTIFF STATE OF NEW YORK
LETITIA JAMES
Attorney General

/s/ Robert L. Hubbard
Robert L. Hubbard
Assistant Attorney General
Office of the Attorney General
Antitrust Bureau
28 Liberty Street, 20th Floor
New York, NY 10005
(212) 416-8267 (office)
(646) 574-0300 (mobile)
robert.hubbard@ag.ny.gov

PLAINTIFF STATE OF NORTH
CAROLINA
JOSHUA H. STEIN
ATTORNEY GENERAL

By: /s/Jessica V. Sutton
Jessica V. Sutton
Special Deputy Attorney General
North Carolina Department of Justice
Consumer Protection Division
114 West Edenton Street
Raleigh, NC  27603
Telephone: (919) 716-6000
Fax: (919) 716-6050
jsutton2@ncdooj.gov
Counsel for Plaintiff State of North Carolina

STATE OF NORTH DAKOTA
DREW H. WRIGLEY
Attorney General

/s Elin S. Alm
Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58504-7736
Telephone (701) 328-5570
Fax (701) 328-5568
ealm@nd.gov

STATE OF OHIO
DAVE YOST
ATTORNEY GENERAL

/s/ Edward J. Olszewski
Edward J. Olszewski
Assistant Attorney General
Office of the Ohio Attorney General
Antitrust Section
30 E. Broad Street, 26th Floor
Columbus, OH 43215
Tel: (614) 466-4328
Fax: (614) 995-0269
edward.olszewski@OhioAGO.gov
Counsel for the State of Ohio

JOHN M. O'CONNOR,
ATTORNEY GENERAL OF OKLAHOMA

/s/ Caleb J. Smith
Caleb J. Smith, OBA No. 33613
Assistant Attorney General
Consumer Protection Unit
Office of the Oklahoma Attorney General
15 West 6th Street
Suite 1000
Tulsa, OK 74119
Tel. (918) 581-2230
Fax (918) 938-6348
Email: caleb.smith@oag.ok.gov

ELLEN F. ROSENBLUM,
ATTORNEY GENERAL FOR THE
STATE OF OREGON

/s/ Cheryl F. Hiemstra
Cheryl F. Hiemstra
Assistant Attorney General
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
Tel.: (503) 934-4400
Fax: (503) 378-8732
Email: Cheryl.hiemstra@doj.state.or.us
Counsel for Plaintiff, State of Oregon

/s/ Tim Nord
Tim D. Nord
Special Counsel
Oregon Department of Justice
1162 Court St NE
Salem, OR 97301
Tel.: (503) 934-4400
Fax: (503) 378-8732
Email: tim.d.nord@doj.state.or.us
Counsel for Plaintiff, State of Oregon

FOR PLAINTIFF COMMONWEALTH OF
PUERTO RICO

DOMINGO EMANUELLI
Attorney General

/s/ Guarionex Díaz Martínez
Guarionex Díaz Martínez
Assistant Attorney General
Antitrust Division
Department of Justice of Puerto Rio
677 Teniente César González Street
San Juan, Puerto Rico
Telephone: (787) 721-2900
gdiaz@justicia.pr.gov

FOR PLAINTIFF STATE OF RHODE
ISLAND
By: /s/ Stephen N. Provazza

Stephen N. Provazza
Special Assistant Attorney General
SProvazza@riag.ri.gov
Rhode Island Office of the Attorney General
150 South Main St., Providence RI 02903
(401) 274-4400

FOR PLAINTIFF STATE OF TENNESSEE

HERBERT H. SLATERY III
Attorney General and Reporter of
Tennessee

DAVID MCDOWELL
Deputy Attorney General
David.McDowell@ag.tn.gov

MATTHEW JANSSEN
Senior Assistant Attorney General
Matthew.Janssen@ag.tn.gov

/s/ Jin I. Yoo
JIN I. YOO
Assistant Attorney General
Jin.Yoo@ag.tn.gov

Office of the Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 253-8765
ATTORNEYS FOR THE
STATE OF TENNESSEE

FOR PLAINTIFF STATE OF UTAH

SEAN D. REYES
UTAH ATTORNEY GENERAL

/s/ Christy A. Matelis
Christy A. Matelis
Assistant Attorney General
Office of the Attorney General of Utah
including as counsel for the Utah Division
of Consumer Protection
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0874
Tel: 801-366-0375
Fax: 801-366-0378
cmatelis@agutah.gov
Tax, Financial Services and Antitrust
Division
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0874
Tel: 801-366-0375
Fax: 801-366-0378
dsonnenreich@utah.gov
rockey@utah.gov
evasquez@utah.gov
ATTORNEYS FOR THE
STATE OF UTAH

THOMAS J. DONOVAN, JR.
VERMONT ATTORNEY GENERAL

/s/ Jill S. Abrams
Jill S. Abrams
Director, Consumer and Antitrust Division
109 State Street
Montpelier, Vermont 05609
Tel. (802) 828-1106
Jill.abrams@vermont.gov

JASON S. MIYARES
Attorney General of Virginia

/s/Tyler T. Henry
Tyler T. Henry
Assistant Attorney General
Antitrust Unit
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, VA 23219
Tel: 804-692-0485
Fax: 804-786-0122
THenry@oag.state.va.us

ROBERT W. FERGUSON
Attorney General

/s/ Holly A. Williams
HOLLY A. WILLIAMS, WSBA No. 41187
Assistant Attorney General
800 Fifth Ave., Ste. 2000
Seattle, WA 98104-3188
206.326.5484
holly.williams@atg.wa.gov
Counsel for Plaintiff State of Washington

STATE OF WEST VIRGINIA
PATRICK MORRISEY
ATTORNEY GENERAL

By: /s/ Douglas L. Davis
Douglas L. Davis
Senior Assistant Attorney General
West Virginia Attorney General's Office
P.O. Box 1789
Charleston, WV 25326
Tel: (304) 558-8986
Fax: (304) 558-0184
douglas.l.davis@wvago.gov

JOSH KAUL
Attorney General of Wisconsin

/s/ Gwendolyn J. Lindsey Cooley
GWENDOLYN J. LINDSEY COOLEY
Assistant Attorney General
State Bar #1053856
Attorney for the State of Wisconsin
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-5810
(608) 266-2250 (Fax)
cooleygj@doj.state.wi.us

BRIDGET HILL
ATTORNEY GENERAL

/s Misha E. Westby
Misha E. Westby
Deputy Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
(307)777-7822 direct
misha.westby@wyo.gov
Attorney for the State of Wyoming

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 10, 2022, I caused the forgoing Certain Plaintiff States' Objection to Special Master David H. Marion's Twelfth Report and Recommendation as to States' Motion for Protective Order (Re RFP 68) to be filed with the Court through its CM/ECF system, which will serve the Objection on all parties to the MDL.

*/s/ Daniel H. Leff*
Daniel H. Leff
