# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

# DEFENDANTS' MEMORANDUM IN SUPPORT OF
# THEIR MOTION TO ENFORCE THIS COURT'S ORDER COMPELLING
# THE COMMONWEALTH OF PENNSYLVANIA TO PRODUCE DISCOVERY

**INTRODUCTION**

More than five months ago, on November 17, 2021, this Court issued an Order compelling Pennsylvania to "produce all discoverable documents and data within its possession, custody, or control." ECF No. 1875 at 8 ("November 2021 Order" or "Order"). Despite submitting two misleading "compliance" reports to the Court, Pennsylvania has not in fact produced all discoverable documents and data, as the Order requires. Instead, Pennsylvania has refused to provide broad categories of relevant and responsive materials requested by Defendants, including many of the very same categories addressed in Defendants' motion to compel briefing. As such, Pennsylvania has not complied with the November 2021 Order. In perhaps the most egregious example of its non-compliance, Pennsylvania refuses to search for or produce *any* emails or other communications related to the Commonwealth's purchase of generic pharmaceutical products at issue in this litigation, including any communications between sellers of generic pharmaceuticals and the Commonwealth agencies that purchase products relevant to the litigation. Pennsylvania also refuses to comply with PTO 95, which requires every producing party to disclose certain basic information about data sources and search methodology, and is an integral part of Pennsylvania's production of "all discoverable documents and data" pursuant to the Order. ECF No. 1875 at 8. Defendants thus now request additional intervention from this Court.

Defendants respectfully request that the Court order Pennsylvania to comply with the November 2021 Order by (1) searching for and producing all documents and data within its possession, custody, or control that are responsive to Defendants' Requests for Production, and (2) informing Defendants of its proposals for sources to be searched, search methodology, and custodians, so that the parties can reach agreement on those points. Further, because Pennsylvania

1

still refuses to comply with the November 2021 Order, Defendants request that the Court order Pennsylvania to pay reasonable attorneys' fees in connection with this dispute.

## BACKGROUND

On August 31, 2018 and October 16, 2019, Defendants issued two sets of Requests for Production of Documents ("RFPs") to Pennsylvania. Those RFPs sought information critical to Defendants' assessment of Pennsylvania's allegations and Defendants' potential defenses. After Pennsylvania refused to produce the requested discovery and the parties reached impasse, Defendants submitted a letter brief to the Special Masters requesting a recommendation that Pennsylvania be compelled to produce all requested discovery in its possession, custody, or control, including materials held by the Pennsylvania entities whose purchases, reimbursements, or other pharmaceutical benefits functions relate to Pennsylvania's allegations ("Relevant Agencies"). After extensive briefing and oral argument, Special Master Marion recommended that Pennsylvania be compelled to produce the requested discovery. Special Master Marion's Fourth Report and Recommendation, ECF No. 1460 ("Fourth R&R"). Pennsylvania objected, and continued refusing to respond to Defendants' discovery requests.[1]

After additional briefing and oral argument, this Court adopted Special Master Marion's Fourth R&R in full and ordered Pennsylvania to "produce all discoverable documents and data within its possession, custody, or control." ECF No. 1875 at 8. In light of the November 2021 Order, Defendants renewed their efforts to obtain discovery from Pennsylvania, engaging in multiple meet-and-confers and extensive email correspondence. Among other things, Defendants requested that Pennsylvania comply with the requirements of PTO 95, including by providing

---

[1] Pennsylvania also refused to answer subsequent interrogatories that were not at issue in Defendants' motion to compel and told Defendants that Pennsylvania would not respond to those interrogatories until after Defendants' motion to compel was decided. Ex. A (letter from Pennsylvania refusing to inform Defendants of its theories of recovery and the nature of any remedies Pennsylvania will seek at trial).

2

organizational charts from each Relevant Agency identified by Pennsylvania, identifying specific sources likely to contain relevant materials, and discussing its proposed search methodology with Defendants so that the parties could negotiate and agree on document custodians.  *See* PTO 95, ECF No. 1045, §§ 7.1–.2, 9.1–.3.  All other producing parties have provided this information to facilitate discovery.

Pennsylvania refused, and failed to produce any information in response to the November 2021 Order for over two months.  As of the initial deadline for compliance set by this Court, Pennsylvania had neither provided the disclosures required by PTO 95, nor produced any of the requested discovery.  Nonetheless, in a show of good faith, Defendants did not oppose Pennsylvania's request for a 30-day extension filed on the eve of its deadline, which gave Pennsylvania until February 16, 2022 to comply with this Court's Order.  ECF No. 1940.

In February 2022, Pennsylvania told Defendants that it *would not* produce any emails or communications, regardless of their relevance, and would not respond in full to Defendants' RFPs.  Instead, Pennsylvania took the position that it need only provide "information limited to certain categories," namely, descriptions of each agency's pharmaceutical benefits functions, pricing and utilization data, preferred drug lists, final contracts for the purchase of products at issue, and similar boilerplate materials.  Ex. B at 3 (February 2 – March 9, 2022, email correspondence between Pennsylvania and Defendants).  Although Defendants reiterated that Pennsylvania's discovery obligations under both the Federal Rules of Civil Procedure and the November 2021 Order extended beyond the limited categories that Pennsylvania was willing to produce, Pennsylvania still refused to search for or produce numerous categories of discovery responsive to Defendants' RFPs, many of which were at the heart of Defendants' successful motion to compel briefing.

Moreover, on February 4, 2022, 79 days after the November 2021 Order and just 12 days prior to the extended deadline for Pennsylvania's productions, Pennsylvania for the first time identified three additional agencies likely to possess relevant and responsive materials. Pennsylvania requested and received yet another 60-day extension to search for and produce discovery from those additional agencies. Although Pennsylvania produced certain materials from those additional agencies on April 18, 2022, those productions were limited to formal contracts, purchasing and utilization data, formal policy statements, and declarations explaining those agencies' functions related to pharmacy benefits—they did not include any emails or other communications related to the agencies' purchases of pharmaceuticals or any documents related to discount offers, price negotiations, or the availability of alternatives to the products at issue.

Pennsylvania's production in response to the November 2021 Order was purportedly completed several weeks ago. Pennsylvania also submitted two formal Compliance Reports, one in February and one in late-April, alleging that its limited productions sufficed to comply with the Court's Order. ECF Nos. 1966, 2057. They do not. As explained in more detail below, those Compliance Reports ignore: (1) entire categories of discovery requested by Defendants that this Court ordered Pennsylvania to search for and produce, (2) the requirements of PTO 95, and (3) this Court's order to "produce all discoverable documents and data within its possession, custody, or control." ECF No. 1875 at 8. Pennsylvania still refuses to (i) search for or produce entire categories of discovery responsive to Defendants' requests, and (ii) provide information required by PTO 95 to facilitate negotiation and agreement on sources, custodians, and search methodology. Defendants now bring this motion seeking the Court's assistance in enforcing the November 2021 Order.

# ARGUMENT

**I.      Pennsylvania must produce all discoverable materials responsive to Defendants' RFPs.**

Despite the Court's clear order to "produce all discoverable documents and data within its possession, custody, or control" in response to Defendants' August 31, 2018 and October 16, 2019 RFPs, ECF No. 1875, Pennsylvania refuses to search for or produce *any* emails or communications that fall within Defendants' RFPs.  Pennsylvania also refuses to produce entire categories of discovery requested by Defendants that are relevant and proportional to the needs of the case, including:

- Communications between the Commonwealth and the suppliers that sold them generic pharmaceuticals at issue in Pennsylvania's claims, including manufacturers, wholesalers or distributors;

- Documents related to the Commonwealth's purchase, distribution, or reimbursement of pharmaceutical products-at issue and brand-name equivalents;

- Documents related to prices the Commonwealth paid for the pharmaceutical products at issue, including negotiations and requests and offers for discounts or other price concessions;[2]

- Budgets for the purchase or reimbursement of pharmaceutical products at issue or brand-name equivalents;

- Documents showing the availability of alternatives to the pharmaceutical products at issue, including requests for such alternatives and communications or documents about the alleged lack of alternatives;

- Organizational charts for Commonwealth entities with authority to make decisions regarding the purchase, sale, distribution, or reimbursement of pharmaceutical products at issue;[3]

---

[2] Pennsylvania produced formal pricing documents and data, but refuses to search for or produce communications related to pricing or discounts, or other informal documents and communications related to pricing and discounts (*e.g.*, internal presentations or periodic updates related to pricing or discounts).

[3] As explained above, Defendants requested organizational charts in advance of other productions to facilitate negotiations regarding custodians and search methodology.  Pennsylvania refused to engage with Defendants regarding any proposed custodians or search methodology.

- Competition in the generic pharmaceuticals industry; and

- Internal communications concerning any pharmaceutical product at issue or brand name equivalent product.

*See* Ex. C (Defendants First Set of RFPs Issues to Plaintiff States) at RFPs 7, 8, 10, 11, 13, 24, 25, 27, 32, 33, 34, 36, 39, 41, 42, 49, and 55.

Nothing in the November 2021 Order, nor in Special Master Marion's Fourth R&R, supports the narrow limitations that Pennsylvania applied to its searches and productions. Both this Court and Special Master Marion recognized that Defendants' RFPs constituted relevant discovery requests, and this Court ordered Pennsylvania to search for and produce those categories of materials called for in those RFPs, including categories that Pennsylvania has now excluded from its searches and productions.[4] For example, the Order rejected Pennsylvania's argument that Defendants were not entitled to the discovery requested pursuant to Defendants' RFPs because Defendants had not "demonstrate[ed] the relevance of *each* request for production" in those RFPs. ECF No. 1875 at 3, 5 (emphasis in original). This Court also held that "Defendants are entitled to explore the factual underpinning of [Pennsylvania's] allegations," including discovery related to "price negotiations." *Id*. Similarly, the Fourth R&R (which was adopted in full by this Court) recognized that "Defendants['] discovery requests," included "discounts offered" for

---

[4] Defendants' briefs in support of the motion to compel specifically identified their August 31, 2018 and October 16, 2019 RFPs as the relevant document discovery. *See, e.g.,* Defendants' Memorandum in Opposition to Pennsylvania's Objection to Special Master Marion's Fourth R&R, ECF No. 1492, at 1, 9 (identifying "two sets of Requests for Production, served on August 31, 2018 and October 16, 2019" and explaining that Pennsylvania "must comply with valid discovery requests seeking relevant information"); *see also* Ex. D Defendants' Letter Brief in Support of Motion to Compel Pennsylvania at 2-3 (May 5, 2020) ("Defendants have requested discovery through two sets of Requests for Production of Documents, served on August 31, 2018 and October 16, 2019" and "Pennsylvania is required to produce the materials requested by Defendants").

6

pharmaceutical products, a category that Pennsylvania also refuses to produce. Fourth R&R, ECF No. 1471 at 3.[5]

Pennsylvania's refusal to search for or produce those categories of discovery is particularly unreasonable when considering the clear relevance of those materials to the Commonwealth's allegations. For example, Pennsylvania alleges that Defendants "deceptively misrepresented the absence of competition," "misled the Commonwealth of Pennsylvania and Pennsylvania consumers into believing that prices for the [products at issue] were competitive and fair," and "deprived [Pennsylvania] of free and open markets." *See, e.g.*, States' Am. Third Compl. ¶¶ 2039–47, *Connecticut v. Sandoz Inc.*, No. 2:20-cv-03539-CMR (E.D. Pa. Jan. 14, 2021), ECF No. 62. But Pennsylvania refuses to search for or produce any communications in which those alleged misrepresentations were made; any documents or communications related to the Relevant Agencies' understanding of competition for the sale of products at issue; any documents or communications related to the Relevant Agencies' assessments of product prices or availability; or any documents or communications related to requests or offers for discounts on the products. Pennsylvania has even refused to answer Defendants' question of whether Pennsylvania is *aware* of any communications related to the products at issue between the Relevant Agencies and suppliers, manufacturers, or purchasers of those products.[6]

---

[5] To the extent that Pennsylvania intends to argue that Defendants' RFPs were not the discovery at issue in Defendants' motion to compel, such a position would be undermined by their own filings. For example, Pennsylvania attached Defendants' RFPs as Exhibits B and C to its August 12, 2020 brief submitted to this Court, cited those RFPs (including in arguments about the relevance of Defendants' discovery) throughout its briefing, and argued (in its September 9, 2020 reply brief) that Pennsylvania should not be required to produce the requested discovery because "Defendant's discovery requests did not differ based on whether a state sought damages or disgorgement. They served identical discovery on all states." ECF No. 1506 at 2 n. 5; ECF No. 1482, Exs. B–C.

[6] Defendants have asked that question repeatedly during meet-and-confers and via email correspondence. *See, e.g.*, Ex. B at 2, 4-5.

The two "Compliance Reports" filed by Pennsylvania also fail to demonstrate full compliance with the November 21, 2021 Order. ECF Nos. 1966, 2057. Rather, those reports reflect the unwarranted limitations that Pennsylvania unilaterally applied to its searches and productions. Those filings list the limited categories of discovery produced from the Relevant Agencies, but ignore entire categories of discovery requested by Defendants' RFPs and ordered by this Court. Pennsylvania's first Compliance Report noted that its productions included: descriptions of each agency's pharmaceutical benefits functions, pricing and utilization data, preferred drug lists, formal contracts for the purchase of products at issue, and similar boilerplate materials. Pennsylvania's second Compliance Report lists an even narrower universe of documents produced from the agencies it "discovered" in February 2022, namely, formal contracts, purchasing and utilization data, policy statements, and a declaration describing those agencies' pharmaceutical benefits functions. Both Compliance Reports fail to mention that Pennsylvania refuses to search for or produce entire categories of discovery that Defendants have requested and this Court ordered Pennsylvania to produce.[7]

Pennsylvania cannot define the scope of discovery requested by Defendants according to its convenience; under this Court's November 2021 Order, Pennsylvania must search for and produce all discoverable materials responsive to Defendants' requests, including the categories of discovery specifically identified above.

---

Even States that initially refused to search for or produce non-email custodial discovery recognized that they had to search for and produce responsive emails from the relevant agencies. *See, e.g.,* Ex. E (Special Master Marion's Informal Recommendation Regarding Discovery of Non-Email Custodial Data (July 9, 2021)).

[7] In both Compliance Reports, Pennsylvania states that "these responses do not replace expert discovery which will proceed according to the schedule ordered by the Court …. Experts may request additional documents and data not collected during fact discovery to be used for reports and analyses that will be prepared during expert discovery." ECF No. 1966 at 1; ECF No. 2057 at 1-2. To the extent that Pennsylvania is withholding or refusing to search for responsive materials on the sole basis that such materials will be relied on by expert witnesses, it cannot do so. *See e.g. United States v. N.E. Med. Servs.*, 2014 WL 7208627, at *5 (N.D. Cal. Dec. 17, 2014).

## II.      Pennsylvania must comply with the procedures required by PTO 95.

Pennsylvania also refuses to comply with basic procedures governing discovery required by PTO 95. The November 2021 Order compelled Pennsylvania to produce discovery, and PTO 95 requires certain processes and disclosures to facilitate such discovery, including disclosure of proposed sources, search methodology, and custodians. Specifically, PTO 95 requires all producing parties to "disclose and identify" custodial and non-custodial data sources likely to contain relevant materials, and to "make such disclosures regarding their proposed search methodology that will permit the Receiving Party to evaluate the proposed methodology and enable meaningful meet and confers." PTO 95, ECF No. 1045, §§ 7.2(b)-(c), 9.1. PTO 95 also requires the producing party to propose custodians, and to meet-and-confer with the receiving party to negotiate an agreement on custodians, sources to be searched, and search methodology. *Id.* §§ 7.1–.2, 9.1–.3. Pennsylvania refused to comply with any of those requirements and therefore further failed to comply with the November 2021 Order to "produce all discoverable documents and data within its possession, custody, or control." ECF No. 1875 at 8. Indeed, Pennsylvania refused to disclose sources of potentially relevant materials, disclose its proposed search methodology, or propose custodians. Pennsylvania also refused to provide Defendants any opportunity to negotiate those points, and repeatedly rebuffed Defendants' requests to discuss sources, custodians, and search methodology.[8] As a result, the parties had no opportunity to reach agreement on search methodology, custodians, or sources to be searched.

Pennsylvania's failure to comply with PTO 95 cannot be chalked up to a mistake or misunderstanding. Defendants repeatedly asked Pennsylvania for that information, reminded

---

[8] With respect to Pennsylvania's productions from the three agencies that it "discovered" shortly before the first extended deadline for production, Pennsylvania never disclosed the sources that it searched from those agencies, nor any search methodology. With respect to the initial three agencies that Pennsylvania identified as relevant,

9

Pennsylvania that those disclosures and subsequent meet-and-confers are required by PTO 95, and even sent Pennsylvania excerpts of the relevant language from PTO 95. For example, on February 2, 2022, after numerous requests for the information required by PTO 95, Defendants wrote the following to Pennsylvania:

> It has been 77 days since the Court ordered Pennsylvania to produce the requested materials, and we are now 15 days out from the extended deadline of February 17th, but we still have not received any of the information that we need to proceed with discovery (e.g. sources of potentially relevant documents and data, org charts for the relevant agencies, information on each relevant agency's role in the pharmaceutical supply chain, etc.). Please let us know when Pennsylvania expects to provide that information so that we can keep things moving.

Ex. F (Feb. 2, 2022 email from D. Landesberg to T. Wertz). On February 8, 2022, Defendants also quoted Sections 7 and 9 of PTO 95 in an email to Pennsylvania after Pennsylvania indicated that it did not intend to comply with those requirements. Ex. B at 8-9. Defendants also discussed those PTO 95 requirements throughout their motion to compel briefing and oral arguments, and raised them verbally during multiple meet-and-confers.

In meet-and-confers with Pennsylvania, Defendants also pointed out that every other State producing materials from state agencies has complied with the requirements of PTO 95. When certain other States previously refused to identify or search sources of potentially relevant discovery other than custodial email files and refused to provide their proposed search methodology in advance, Special Master Marion issued an informal recommendation explaining that PTO 95 required those States to disclose sources of potentially relevant discovery and propose a search methodology. Ex. E (Special Master Marion's Informal Recommendation Regarding Discovery of Non-Email Custodial Data (July 9, 2021)). Those PTO 95 requirements apply to all discovery in this case, and Pennsylvania is bound by them just like every other party to this

---

Pennsylvania refused to disclose any sources or methodology in advance of its limited productions from those agencies.

litigation. As such, this Court should order Pennsylvania to comply with PTO 95's requirements that—in advance of making productions—the producing party must identify sources of potentially relevant discovery, propose custodians, and propose a search methodology, along with information sufficient to enable meaningful meet-and-confers with Defendants on those points.

Pennsylvania's "Compliance Reports" are equally disingenuous as to compliance with PTO 95. Pennsylvania's first Compliance Report states that Pennsylvania identified sources to be searched from the initial three Relevant Agencies, but Pennsylvania only did so on the day of the first extended production deadline, which was the first time Pennsylvania produced any discovery from any of the Relevant Agencies. As explained above, PTO 95 requires producing parties to provide *advanced notice* of proposed sources (as well as custodians and search methodology) so that the receiving party can assess those proposals and to "enable meaningful meet and confers." PTO 95, ECF No. 1045, §§ 7.2(b)-(c), 9.1 (requiring such disclosures "prior to" meet-and-confers to reach agreement on those points and "[p]rior to conducting a search for responsive ESI"). Providing source information simultaneously with the only productions from those sources—and on the day of the production deadline no less—defeats the purpose of enabling meaningful meet-and-confers to reach agreement on sources to be searched. Furthermore, Pennsylvania's Compliance Reports ignore that Pennsylvania never disclosed the sources it searched for the three additional agencies that it "discovered" shortly before the second extended production deadline, never proposed a search methodology for any of its searches, never discussed or proposed custodians, and repeatedly refused to engage with Defendants on those topics. As such,

Pennsylvania's Compliance Reports do not demonstrate actual compliance with this Court's November 2021 Order or PTO 95.

For the reasons explained above, Defendants respectfully request that this Court compel Pennsylvania to comply with this Court's November 2021 Order, including complying with PTO 95 by disclosing sources of potentially relevant materials, a proposed search methodology, and proposed custodians, *prior to* conducting the searches and productions required by the November 2021 Order. In accordance with PTO 95, Pennsylvania must make such disclosures well before its production deadlines so that the parties can meet-and-confer to reach agreement before Pennsylvania conducts its searches and produces the requested discovery.

### III.   Defendants are entitled to reasonable attorney's fees incurred as a result of Pennsylvania refusal to comply with the November 2021 Order.

Pennsylvania failed to produce *any* documents in response to Defendants' discovery requests for over three years, and still has not produced entire categories of relevant and responsive discovery. Instead, Pennsylvania continues in its attempts to evade its discovery obligations and this Court's clear Order to "produce all discoverable documents and data within its possession, custody, or control." ECF No. 1875 at 8. Pennsylvania's continued recalcitrance justifies Defendants' request for attorney's fees in relation to this dispute.[9] Defendants' request is supported by the Federal Rules of Civil Procedure and this Court's previous orders in this litigation. Federal Rule 37(a)(5) provides that if a motion to compel discovery is granted following the moving party's good faith effort to obtain the discovery without court action "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion…to pay the movant's reasonable expenses incurred in making the motion, including

---

[9] Defendants seek reasonable attorney's fees for the law firm primarily responsible for this motion and briefs in support.

12

attorney's fees." *See* Fed. R. Civ. P. § 37(a)(5).  Federal Rule 37(b)(2) further provides that if a party "fails to obey an order to provide or permit discovery…the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." *See* Fed. R. Civ. P. § 37(b)(2).

Defendants' request for attorney's fees is also supported by this Court's previous awards of attorney's fees in this litigation, including its Order that California pay attorney's fees in similar circumstances.  Special Master Marion's Supplemental Recommendation No. 5 and Court Order Adopting Same, ECF No. 1720.  Like California, Pennsylvania has "consistently used various means to delay progress in its dealings with [D]efendants." *Id*. at 3.  Also like California, Pennsylvania sought multiple deadline extensions without making good faith efforts to search for or produce the discovery requested by Defendants, has attempted to "redefine or evade the clearest dictates" of the November 2021 Order, and has consistently refused to comply with the basic requirements governing discovery processes in this litigation like engaging with Defendants to agree on sources, custodians, and search methodology.  *Id.* at 3-4.  Accordingly, Pennsylvania should be required to pay reasonable attorney's fees incurred in relation to this dispute.

## CONCLUSION

Pennsylvania has refused to produce relevant discovery in response to Defendants' requests for years.  It has likewise refused to comply with the requirements of PTO 95 for years.  When this Court granted Defendants' motion to compel, Defendants thought that Pennsylvania would finally engage in discovery as ordered.  Despite Defendants' good faith efforts to accommodate Pennsylvania's repeated delays, Pennsylvania still refuses to comply with this Court's Order that Pennsylvania "produce all discoverable documents and data within its possession, custody, or

control," and has continued to refuse to comply with the requirements of PTO 95 governing discovery.

As such, Defendants respectfully request that this Court enforce its November 2021 Order and PTO 95 by requiring Pennsylvania to (1) search for and produce materials responsive to Defendants' Requests for Production, and (2) inform Defendants of Pennsylvania's proposal for sources to be searched, search methodology, and custodians, so that Pennsylvania and Defendants can reach agreement on those points. Defendants further request that this Court order Pennsylvania to pay reasonable attorneys' fees for the costs associated with this dispute.

Dated: May 19, 2022

*/s/ Benjamin F. Holt*
Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel.: (202) 637-5600
Fax: (202) 637-5910
benjamin.holt@hoganlovells.com

*Counsel for Defendants Mylan Pharmaceuticals Inc. and Mylan Inc.*

Respectfully submitted,

*/s/ Chul Pak*
Chul Pak
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
cpak@wsgr.com

*/s/ Devora W. Allon*
Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
devora.allon@kirkland.com

/s/ Ryan T. Becker
Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 299-2033
Fax: (215) 299-2150
rbecker@foxrothschild.com

/s/ Sarah F. Kirkpatrick
Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
skirkpatrick@wc.com

/s/ Sheron Korpus
Sheron Korpus
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com

/s/ Allison Tanchyk
Allison Tanchyk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5847
Fax: (215) 963-5001
allison.tanchyk@morganlewis.com

*Defense Liaison Counsel*

15