**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF STATES'
OBJECTIONS TO SPECIAL MASTER DAVID H. MARION'S
<u>TWELFTH REPORT AND RECOMMENDATION</u>**

## **TABLE OF CONTENTS**

**Page**

Table of Authorities ....................................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 11

ARGUMENT ............................................................................................................... 11

I.   ORDERING THE STATES TO PRODUCE RELEVANT DOCUMENTS WAS
     NOT AN ABUSE OF DISCRETION........................................................................ 11

II.  THIS COURT SHOULD NOT DECIDE THE STATES' POSSESSION,
     CUSTODY, AND CONTROL OBJECTIONS IN THE FIRST INSTANCE. ................... 13

III. IN THE ALTERNATIVE, THE STATES HAVE POSSESSION, CUSTODY,
     AND CONTROL OVER THE RELEVANT DOCUMENTS. ........................................ 15

     A.   The States Themselves Are Parties to this Action. ..................................... 15

     B.   The States' State-Specific Arguments Fail. ............................................... 18

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arconic Inc. v. Universal Alloy Corp.*,
No. 1:15-CV-01466, 2020 WL 10486178 (N.D. Ga. Mar. 30, 2020) ....................................14

*Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*,
No. 2:11-CV-02101, 2012 WL 6607288 (W.D. Tenn. Dec. 18, 2012) .................................24

*Bedell v. Dir. of Revenue, State of Mo.*,
935 S.W.2d 94 (Mo. Ct. App. 1996).....................................................................................23

*Blumenthal v. Barnes*,
261 Conn. 434 (Conn. 2002)..................................................................................................20

*Bovarie v. Schwarzenegger*,
No. 08-CV-1661, 2011 WL 767249 (S.D. Cal. Feb. 25, 2011)..............................................20

*City of Greensboro v. Guilford Cnty. Bd. of Elections*,
No. 1:15CV559, 2016 WL 11660626 (M.D.N.C. Dec. 20, 2016)...........................................23

*Colorado v. Warner Chilcott Holdings Co. III, Ltd.*,
No. 05-2182, 2007 WL 9813287 (D.D.C. May 8, 2007)..............................................17, 18, 25

*Conn. Comm'n. on Special Revenue v. Conn. Freedom of Info. Comm'n.*,
387 A.2d 533 (Conn. 1978) ..............................................................................................20, 21

*District of Columbia v. Eads, LLC*,
2018 CA 005830 B (D.C. Super. Ct. Mar. 9, 2021) ..............................................................21

*EEOC v. Airborne Express*,
No. CIV. A. 98-1471, 1999 WL 124380 (E.D. Pa. Feb. 23, 1999) ........................................15

*Gerling Int'l Ins. Co. v. Comm'r*,
839 F.2d 131 (3d Cir. 1988)....................................................................................................24

*Hood ex rel. Mississippi v. Microsoft Corp.*,
428 F. Supp. 2d 537 (S.D. Miss. 2006)..................................................................................16

*Horizon Glob. Ams. Inc. v. Curt Mfg., LLC*,
No. 17-11879, 2020 WL 1303212 (E.D. Mich. Mar. 18, 2020)............................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
236 F.R.D. 177 (S.D.N.Y. 2006) ..........................................................................................21

<u>TABLE OF AUTHORITIES</u>—Continued

<u>Page</u>

*In re Gold King Mine Release in San Juan County, Colorado, on August 5, 2015*,
    No. 1:16-CV-00465, 2021 WL 847971 (D.N.M. Mar. 5, 2021) ...........................................17

*In re Mercedes-Benz Emissions Litig.*,
    797 F. App'x 695 (3d Cir. 2020) ...........................................................................................14

*In re Refco Inc. Sec. Litig.*,
    No. 07 MDL 1902, 2013 WL 2526661 (S.D.N.Y. June 6, 2013).........................................15

*In re Vioxx Prods. Liab. Litig.*,
    544 F. App'x 255 (5th Cir. 2013) ..........................................................................................11

*In re Wellbutrin XL Antitrust Litig.*,
    868 F.3d 132 (3d Cir. 2017)....................................................................................................2

*Johnson v. SmithKline Beecham Corp.*,
    No. CV 11-5782, 2019 WL 4233629 (E.D. Pa. Feb. 14, 2019) ...........................................11

*Kansas ex rel. Stovall v. Home Cable Inc.*,
    35 F. Supp. 2d 783 (D. Kan. 1998).......................................................................................16

*Massachusetts v. Ortho-McNeil-Janssen Pharms., Inc.*,
    No. CIV. A. 2011-2811-BLS 2, 2012 WL 5392617 (Mass. Super. Ct. Oct. 5,
    2012) .....................................................................................................................................22

*New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*,
    233 F.R.D. 259 (N.D.N.Y. 2006)....................................................................................18, 21

*Proofpoint, Inc. v. Vade Secure, Inc.*,
    No. 19-CV-04238, 2020 WL 7398791 (N.D. Cal. Dec. 17, 2020)........................................12

*State ex rel. Daly v. Information Technology Services Agency of City of St. Louis*,
    417 S.W.3d 804 (Mo. Ct. App. 2013).....................................................................................23

*State ex rel Nixon v. American Tobacco Co.*,
    34 S.W.3d 122 (Mo. 2000) .....................................................................................................23

*United States v. Am. Express Co.*,
    No. 1:10-cv-04496, 2011 WL 13073683 (E.D.N.Y. July 29, 2011) ......................................18

*United States v. Novartis Pharmaceuticals Corp.*,
    No. 11 Civ. 8196, 2014 WL 6655703 (S.D.N.Y. Nov. 24, 2014) ..........................................17

*Washington v. GEO Grp., Inc.*,
    No. 3:17-CV-05806, 2018 WL 9457998 (W.D. Wash. 2018)........................................ *passim*

## <u>TABLE OF AUTHORITIES</u>—Continued

<u>**Page**</u>

*West Virginia ex rel. McGraw v. Minn. Mining & Mfg. Co.*,
    354 F. Supp. 2d 660 (S.D. W. Va. 2005) ..................................................................16

*Woodall v. California*,
    No. 1:08-CV-01948, 2010 WL 4316953 (E.D. Cal. Oct. 22, 2010) .......................20

**Statutes**

Ariz. Rev. Stat. § 41-192 ...........................................................................................19

Haw. Rev. Stat. § 431R-4 ...........................................................................................21

N.C. Gen. Stat. Ann. § 120-132 ..................................................................................23

Ohio Rev. Code. Ann. § 109.81 ...................................................................................23

Ohio Rev. Code. Ann. § 1331.16 .................................................................................23

Wyo. Stat. Ann. § 9-1-601 ..........................................................................................25

Wyo. Stat. Ann. § 9-1-202 ..........................................................................................25

**Rules**

Fed. R. Civ. P. 17 ................................................................................................15, 23

Fed. R. Civ. P. 26 .......................................................................................................11

Fed. R. Civ. P. 34 .......................................................................................................15

Fed. R. Civ. P. 53 .......................................................................................................11

## INTRODUCTION

For eight weeks, Special Master David Marion presided over a dispute between the States and Defendants regarding a request for production of documents relating to analyses and studies of pharmaceutical pricing that Defendants served on the States more than one year ago, culminating in a report and recommendation that the States be ordered to produce documents responsive to that request.   Seven states and three territories have either accepted that recommendation in full or used it as the framework for a compromise.   Forty-one other states, along with the District of Columbia and Puerto Rico, have not.   They object to the Special Master's recommendation because, they belatedly claim, it would compel them to produce documents over which they purportedly lack possession, custody, or control—an objection they did not raise in their motion for a protective order or while their motion was pending.

The States have stonewalled at every turn.   They have sought to insulate even the offices of their own attorneys general from producing responsive materials, baselessly asserting that the States' possession, custody, and control extends no further than the walls of the *antitrust units* of their attorneys general offices.   They have submitted mathematical calculations purporting to show that it would take them up to thirty-one years to respond to a single discovery request.   And they have tried to prolong this dispute indefinitely by purporting to reserve objections that, for at least some States, seem to be the only objections that ever actually mattered.

The Special Master recognized that this "reservation" was spurious.   When the States asked the Special Master to "clarify" that his report and recommendation meant something other than what it clearly says, the Special Master opined that it was "regrettable and dilatory" for the States to move for a broad protective order, only to later propose to limit the grounds upon which relief could be granted when their initial objections proved unsuccessful.   The States' dilatory conduct should not be rewarded.

1

This Court should overrule the States' objections and approve and adopt the Special Master's report and recommendation, in full, for three reasons.  First, Defendants' request, as modified by Defendants and the Special Master, seeks relevant documents that are proportional to the needs of this case, and the vast majority of the States no longer contend otherwise.  Second, it would contravene the role of the Special Master and waste scarce judicial resources for the Court to decide the States' possession, custody, and control objections in the first instance when the States explicitly chose not to raise the issue with the Special Master.  Third, and in the alternative, if the Court does consider the States' possession, custody, and control objections, the States in fact have possession, custody, and control over the requested documents, because they—and not their attorneys general—are the plaintiffs in this case.

## BACKGROUND

**Defendants' Request for Production 68.**  Defendants' Request for Production 68 ("RFP 68") seeks reports and analyses concerning the price or supply of generic pharmaceutical products.[1]  These materials are relevant because the States claim they (or their residents) were injured by alleged conspiracies affecting the price of generic pharmaceutical products.  The States ultimately must prove that "the harm they say they experienced"—inflated drug prices—"was caused by the [conduct] they are complaining about." *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 164-65 (3d Cir. 2017)  If the States have reports or studies analyzing whether pharmaceutical prices were impacted by factors unrelated to the alleged conspiracy, then Defendants are entitled to examine them and, if admissible, present that evidence to the factfinder.  Because all plaintiffs

---

[1] As served on April 30, 2021, RFP 68 originally requested:  "All reports [and] analyses prepared by or for You or any governmental entity in Your state, including all drafts and all supporting Documents, Materials, data, or investigatory files, concerning the price or supply of generic pharmaceutical products generally as well as any MDL Drug related to product supply and demand, health insurance practices, pharmacy benefit manager practices, group purchasing organizations, or consolidation within the generic pharmaceuticals industry."  Ex. A to 12th R&R at 8-9.

in this case have the burden of proving that prices were inflated as a result of Defendants' alleged conduct, reports and analyses from all states and territories (not just those seeking damages on behalf of certain state agencies) are relevant.

Defendants already know that some such reports and analyses exist because some states have publicly touted their investigations of pharmaceutical pricing, some of which have concluded that actions by entities other than drug manufacturers have caused higher generic pharmaceutical prices.  Ohio, for example, has investigated whether middlemen, such as pharmacy benefit managers ("PBMs"),[2] have inflated generic pharmaceutical prices.[3]  It filed a complaint alleging that one PBM engaged in "artificial inflation of prescription drug pricing."[4]  And a study by Ohio's Medicaid Director found pharmaceutical costs were "inaccurately inflated" due to PBM practices.[5]

Similarly, Minnesota's Attorney General formed a task force to "gather in the best thinking" to lower the cost of pharmaceutical products.[6]  It concluded that PBM business models "directly cause drug prices to increase."[7]  A Massachusetts agency reported that "PBM prices" of several generic products at issue in this MDL were "dramatically higher than the drugs' acquisition costs."[8]  And, in New York, a Senate committee investigative report concluded that PBMs have

---

[2] PBMs manage prescription-pharmaceutical benefits for payers such as managed care organizations, health plans, or employers.  *See Managed Care Glossary,* ACADEMY OF MANAGED CARE PHARMACY, https://www.amcp.org/about/managed-care-pharmacy-101/managed-care-glossary (last visited May 23, 2022).

[3] Press Release, Ohio Auditor of State, Pharmacy Benefit Managers Take Fees of 31% on Generic Drugs Worth $208M in One-Year Period (Aug. 16, 2018), https://ohioauditor.gov/news/pressreleases/details/5042.

[4] Press Release, Ohio Attorney Gen., Centene Agrees to Pay a Record $88.3 Million to Settle Ohio PBM Case Brought By AG Yost (June 14, 2021), https://www.ohioattorneygeneral.gov/Media/News-Releases/June-2021/Centene-Agrees-to-Pay-a-Record-$88-3-Million-to-Se.

[5] Darrel Rowland, *Medicaid chief quietly drops bombshell: Millions obtained by PBMs unaccounted for by state,* THE COLUMBUS DISPATCH (Oct. 28, 2021), https://www.dispatch.com/story/news/2021/10/27/health-care-monopoly-raises-drug-costs-consumers-pharmacists-say-pbms-prescription-cvs-united-cygna/8513593002/.

[6] Press Release, Minn. Attorney Gen., Attorney General Ellison starts task force for lowering the cost of pharmaceutical drugs (Feb. 21, 2019), https://www.ag.state.mn.us/Office/Communications/2019/02/21_PrescriptionDrugPricingTaskForce.asp.

[7] Minn. Attorney Gen., Report of the Minnesota AG's Advisory Task Force on Lowering Pharmaceutical Drug Prices 43-44 (February 2020), https://www.ag.state.mn.us/Office/Communications/2020/docs/DPTF_Feb2020Report.pdf.

[8] Mass. Health Pol'y Comm'n, Cracking Open the Black Box of Pharmacy Benefit Managers: PBM Pricing for Generic Drugs in Massachusetts Medicaid Programs and the Commercial Market 5-6 (June 5, 2019), https://www.mass.gov/doc/datapoints-issue-12-printable-version/download.

"immense power to affect the price of pharmaceuticals being paid by consumers and the State."[9] These public reports, which are just examples, confirm that at least some States have relevant materials. PBMs' conduct, moreover, is not the only variable that might have affected the price of pharmaceutical products.[10] The States may have identified other factors that caused prices to increase, and Defendants are entitled to see those reports and analyses.

**The States' June 2021 Objections.** The States initially objected to RFP 68 on multiple grounds:

> Objection. The Attorneys General object to this document request as unduly burdensome to the extent that the documents are neither relevant nor proportional to the Certain Defendants' needs in this litigation. The Attorneys General object to this document request to the extent it seeks documents protected by the work product privilege. The Attorneys General further object to this document request to the extent it seeks information related to third-party vendors, wholesalers, or manufacturers with which a non-party state agency has contracts.
>
> The Attorneys General object to this request to the extent that it duplicates earlier requests. This Request is duplicative of Defendants' earlier served Requests, including Document Request 24[.] [footnote quoting RFP 24 omitted]

Ex. 1 (States' Responses and Objections to Third Set of RFPs) at 8. The States further stated that their "Attorneys General are the only governmental entities that are parties to the Actions" and their "response is thus limited to the Attorneys General." *Id.* at 9.

**Meet and Confers.** The parties met, conferred, and exchanged emails regarding the Third Set of RFPs throughout June and July 2021. By August 5, 2021, Defendants agreed to narrow RFP 68 to four categories of documents: (1) materials possessed and/or created by or for a State Attorney General's Office, (2) materials created by or for State Legislatures, (3) materials created

---

[9] N.Y. Senate Comm. on Investigations & Gov't Operations, Final Investigative Report: Pharmacy Benefit Managers in New York 2 (May 31, 2019), https://www.nysenate.gov/sites/default/files/article/attachment/final_investigatory_report_pharmacy_benefit_managers_in_new_york.pdf.

[10] For instance, rising pharmaceutical prices could have been caused by changes in the cost of inputs, labor, or shipping, or by changes to the regulatory environment, among many other possibilities.

by or for other state agencies and entities for which the primary responsibility is healthcare, and (4) materials received by states pursuant to reporting requirements.  Ex. 2 at 9 (RFP 68 Meet & Confer with States, email thread).  As Defendants explained at the time, further modifications to the RFP would require the States to meet and confer with Defendants "on a state-by-state basis to determine the appropriate list of agencies for each" state.  *Id.*  Despite that offer, the States committed to produce only "non-confidential" reports, analyses, or studies "within the antitrust units of the AG offices" and nothing more.  *Id.* at 5, 7-8.

After additional correspondence failed to narrow the gap, global negotiations over RFP 68 broke off in October 2021.  *Id.* at 1-4.  Defendants thereafter sought to meet and confer with specific States instead.  *See, e.g.*, Ex. 3 at 9 (Ohio RFP 68 email thread).  For example, Defendants met and conferred with the Ohio Attorney General's Office, which confirmed that, consistent with the States' representations during the global meet and confer process, Ohio would only produce materials that exist within the antitrust division of its attorney general's office.  *Id.* at 6.  Because, in Ohio's view, there were no responsive materials in the antitrust division of its attorney general's office, Ohio produced nothing.  *Id.*  After Defendants pointed out that the Ohio Attorney General had issued press releases suggesting that his office did in fact possess responsive materials, *id.* at 3, the state agreed to "follow[] up" on materials that are "outside of the specific control of the Antitrust section, but within the control of the Attorney General."  *Id.* at 2.  At the same time, Ohio reiterated its refusal to produce documents from outside its attorney general's office on the grounds that the Ohio Auditor of State and Ohio Department of Medicaid "are not parties to the case."  *Id.* at 5.  Defendants again met and conferred with the Ohio Attorney General's Office on Friday, February 11, 2022 to continue to explore a possible compromise.  *Id.* at 1.  The very next business day, without any warning, Ohio—along with every other plaintiff State—moved for an order

protecting it against RFP 68.  Ohio still has not produced any documents responsive to RFP 68.

**The States' Motion for Protective Order.**  Although the States purported to limit their motion to burden and proportionality only, *see* Ex. 4 (Motion for Protective Order) at 1 n.2, the arguments in their letter motion related to both relevance and proportionality.  As to relevance, the States caricatured Defendants' position as "merely recit[ing] that the documents relate to the generic prescription drug industry," *id.* at 2, notwithstanding that Defendants had recently explained to Ohio that the requested materials "are relevant to causation" because they might show that price increases were "caused by factors unrelated to the alleged conspiracy—for instance, independent decisions made by PBMs." Ex. 3 at 6.  As to proportionality, the States' burden objection was predicated on the ability of each attorney general's office to obtain and produce documents held by other state agencies.  *See* Ex. 4 at 3-4 (citing the aggregate number of local health departments in the United States and the "massive" burden associated with facilitating document productions from various state entities).  Despite knowing for months that Defendants understood RFP 68 to require the States to produce materials held by their executive agencies and legislatures, the States did not assert objections based on lack of possession, custody, or control.  They concluded by asking for a recommendation limiting RFP 68 "to documents within the Attorney Generals Offices' antitrust units and the agencies for which States seek proprietary damages." *Id.* at 4.

Defendants duly responded to the States' arguments regarding relevance and proportionality.  Ex. 5 (Defendants' Opposition Letter) §§ I-II.  But Defendants' response also anticipated that possession, custody, and control objections were the true crux of the parties' dispute:

> Plaintiffs' request to limit the scope of RFP 68 to documents "within the Attorney General Offices' antitrust units" and the agencies for which States seek proprietary

damages is unjustified and unprincipled. The States are parties to this case—not the offices of their attorneys general and certainly not the *antitrust units* in the offices of their attorneys general. Accordingly, the attorneys general representing the States must provide all responsive documents in their State's possession, custody, or control. The Court has already held that one attorney general has control over documents held by the various agencies of the official's state. Order of Nov. 17, 2021 at 6-8, Dkt. 1875. And the States make no contention that any other of their attorneys general lacks such control. There is no basis for limiting this basic discovery obligation. *See, e.g.*, *Washington v. GEO Grp., Inc.*, No. 3:17-CV-05806-RJB, 2018 WL 9457998, at *3 (W.D. Wash. 2018).

*Id.* § III. Defendants asked the Special Master to deny the States' motion.

**The Special Master's Informal Recommendation.** At Special Master Marion's request, the parties convened for a telephone conference on March 8. After hearing argument from both sides, the Special Master informed the parties that he would not grant or deny the States' motion in its entirety. He encouraged each side to consider workable limits that its adversaries might find acceptable. And he requested follow-up letters that (1) summarized the arguments presented and (2) proposed an order that would reflect a compromise between the parties' positions.

Both sides responded on March 15. The States did not respond to Defendants' arguments regarding their possession, custody, and control over the requested documents. Instead, they submitted an appendix of mathematical calculations purporting to show that it would take the States anywhere from 1.8 years to 31 years to respond to RFP 68. Ex. 6 (States' March 15, 2022 letter and attachments) at App. A. Defendants took a more serious approach and submitted a formal proposed order that offered a compromise in which no state need search the records of local health departments or special districts. Ex. 7 (Defs.' March 15, 2022 email with letter and proposed order). Defendants also formalized the categorical limitations initially offered in August 2021, which, among other things, reduced the number of statewide agencies that might conceivably be at issue by limiting RFP 68 to only those agencies "for which the primary responsibility is healthcare." *Id.*

About a week and a half later, the Special Master issued an informal recommendation that rejected the States' statistical showing of burden as "grossly overstated."  Ex. 8 (Informal Recommendation) ¶ B.  Although the Special Master likewise indicated that RFP 68 as originally drafted had been "too broad and extensive," he quoted verbatim from Defendants' March 15 proposals, stating that they "represent a favorable approach toward meeting many of [the] States' objections."  *Id.* ¶¶ B, D.  Noting the States' failure to respond to Defendants' new proposals, the Special Master announced that he was "inclined to use [Defendants'] proposal as the framework for" "granting in part and denying in part the States' Motion."  *Id.* ¶ E.  He requested the parties meet and confer.  In the event an agreement was not reached, the Special Master requested "a brief conference call with me to see whether we can close the gaps, or at least I can refine my formal R&R to focus on the areas of disagreement."  *Id.* at 5.

When the parties met and conferred on March 30, the States identified legislative materials as an area of particular concern, claiming they lacked possession, custody, and control.  Defendants offered to forgo those materials in the spirit of further compromise *if* the States would otherwise accept the Special Master's framework.  Ex. 9 (April 6, 2022 email from M. Gendall to D. Leff).  After the States rejected that offer, *see* Ex. 10 (April 8, 2022 email from A. Butler to M. Gendall), Defendants informed the Special Master that another conference call would not be fruitful and requested that he convert his informal recommendation—which already represented a compromise proposal from Defendants—into a formal R&R.  Ex. 11 at 3 (RFP 68 Email Thread).  The States also did not seek a conference call.  Instead, they made, for the first time, a procedural argument about the "***nature of the relief***" that should result from their motion.  *Id.* at 1 (emphases in original).  They further stated that the global objections raised in their motion had now been "resolved" in that "all States" were either (1) willing to produce documents based upon the informal

recommendation or (2) unwilling to produce documents due to the need to raise state-specific objections. *Id.*

**Twelfth Report & Recommendation.**  The next day, the Special Master issued a formal report and recommendation (the "12th R&R"), which is substantially identical to his informal recommendation.[11]  Despite having had over two weeks to review and comment on the informal recommendation, the States waited until after the 12th R&R was issued to seek "clarification" as to whether they could raise objections post hoc and for the first time relating to possession, custody, and control, notwithstanding the R&R's clear, contrary language.  The Special Master rejected the States' belated argument, emphasizing the many opportunities previously afforded the States, including "briefs, an informal recommendation after a conference call/ argument," and "then a further meet and confer which I requested after a constructive proposed compromise from defendants which I accepted in my R&R."  Ex. 12 at 1 (April 28, 2022 email from D. Marion).  The Special Master also called it "regrettable and dilatory" for the States to "move for a broad protective order and then propose to limit the grounds" upon which relief could be granted if the States' arguments proved unsuccessful.  *Id.*

**State-Specific Compromises and Stipulations.**  In the weeks since the 12th R&R was issued, Defendants have met and conferred with at least a dozen individual states to discuss specific issues regarding its applicability.  And Defendants have again proven willing to compromise.  The Court approved joint stipulations between Defendants and three individual states: Florida, Maine, and Pennsylvania.  In all three joint stipulations, Defendants agreed to forego state legislative materials in exchange for each state's production of materials in the possession, custody, and

---

[11] The 12th R&R orders the States to search for and produce, among other things, drafts, underlying data, and documents relating to the reports, studies, and analyses cited at footnotes 3-9, *supra*.

control of its entire attorney general's office (not just the antitrust unit).[12]  Each state also agreed

to produce, or facilitate the production of, materials from an agreed list of state agencies.[13]

Defendants also reached a compromise agreement with two other states, Kentucky and

South Dakota, without submitting a formal stipulation for the Court's approval.  And Defendants

remain willing to meet and confer with the holdout states, even while objections are pending.

Indeed, between the time the States filed their objections and the filing of this response, Defendants

reached compromise stipulations with Idaho and South Carolina as well.[14]

**The States' Objections.**  Forty-three states and territories objected to the 12th R&R,

raising procedural objections to the nature of the relief recommended.  Certain Pl. States' Obj. to

12th R&R ("Obj."), ECF No. 2088.  Two states separately objected on the same basis.  State of

Arizona's Obj. to 12th R&R ("Ariz. Obj."), ECF No. 2089; South Carolina's Objs. to 12th R&R,

ECF No. 2082.[15]  As stated above, the remaining five states (Florida, Kentucky, Maine,

Pennsylvania, and South Dakota) compromised with Defendants on the scope of RFP 68, removing

any need to object.[16]  The remaining three territories (Guam, Northern Mariana Islands, and the

U.S. Virgin Islands) did not object or reach a compromise agreement.

---

[12] As to Pennsylvania, Defendants further agreed that Pennsylvania need not produce materials possessed or created by or for the Criminal Division of its attorney general's office.  Order Approving Joint Stipulation between Commonwealth of Pennsylvania and Defendants ("Penn. Stip.") at 3, ECF No. 2096.

[13] For example, the State of Maine agreed to produce materials created by or for the Maine Health Data Organization, the Maine Prescription Drug Affordability Board, Maine's state-owned psychiatric hospitals, Maine's Office of Employee Health & Wellness, and materials received by the Maine Bureau of Insurance from PBMs pursuant to state reporting requirements.  Order approving Joint Stipulation between State of Maine and Defendants ("Maine Stip.") at 2-3, ECF No. 2098.  Florida and Pennsylvania made similar commitments.  *See* Order Approving Joint Stipulation between State of Florida and Defendants ("Fla. Stip.") at 2-3, ECF No. 2097; Penn. Stip. at 2-3.

[14] *See* Order Approving Joint Stipulation between State of Idaho and Defendants, ECF No. 2110; Order Approving Joint Stipulation between State of South Carolina and Defendants ("S.C. Stip."), ECF No. 2111.

[15] Defendants respond to Arizona's objections at page 19, *infra*.  South Carolina's objections have been withdrawn. *See* S.C. Stip. at 3.

[16] Fifty-four States and Territories joined the initial motion for a protective order.  Since that time, the State of Alabama has voluntarily dismissed all claims in this MDL.  *See, e.g.*, Notice of Voluntary Dismissal Without Prejudice, *Connecticut v. Sandoz, Inc.*, No. 2:20-cv-03539 (E.D. Pa. Mar. 30, 2022), ECF No. 194.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 53 governs the review of a special master's report and recommendation.  Findings of fact and conclusions of law are reviewed de novo.  Fed. R. Civ. P. 53(f).  Unlike objections to prior reports and recommendations in this case, the States' objections to the 12th R&R relate to "whether and how State-specific arguments can be raised," *see* Ex. 11 at 1, which is a procedural ruling by the Special Master that may be set aside "only for an abuse of discretion."  Fed. R. Civ. P. 53(f)(5); *see Johnson v. SmithKline Beecham Corp.*, No. CV 11-5782, 2019 WL 4233629, at *1 (E.D. Pa. Feb. 14, 2019) ("Challenges to the Special Master's rulings on procedural matters are only reviewed for an abuse of discretion.").

## ARGUMENT

### I.   ORDERING THE STATES TO PRODUCE RELEVANT DOCUMENTS WAS NOT AN ABUSE OF DISCRETION.

The R&R orders the States to search for and produce reports, analyses, and studies relating to the price or supply of generic pharmaceutical products from various state entities.  That relief is within the Special Master's discretion to recommend.  The States moved for a protective order that would limit the scope of RFP 68 to documents within the antitrust units of their attorneys general offices and the agencies for which they seek damages.  Upon denying a motion for a protective order, Rule 26 expressly allows the Court, "on just terms," to "order that any party or person provide or permit discovery" in lieu of allowing additional, piecemeal objections to the same underlying discovery requests.  Fed. R. Civ. P. 26(c)(2).  Recommending the States be ordered to search for and produce a subset of materials responsive to RFP 68 is an embrace of judicial efficiency specifically authorized by Rule 26; it is not an abuse of discretion.  *See In re Vioxx Prods. Liab. Litig.*, 544 F. App'x 255, 259-60 (5th Cir. 2013) (special master's "procedural decisions to streamline the process" for dispute resolution in multidistrict litigation was not an

11

abuse of discretion).

The States were not (as they claim) deprived of the opportunity to raise their possession, custody, and control objections.  Obj. at 24.  Nothing prevented the States from raising those objections in their initial motion; they simply chose not to do so.  *See* Ex. 4 at 1 n.2 (limiting their motion to burden and proportionality).  Although the States purported to "reserve[]" "all other objections," *id.*, they have no inherent right to present objections in piecemeal, and the Special Master did not abuse his discretion by rejecting their approach.  *See, e.g.*, *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238, 2020 WL 7398791, at *2 (N.D. Cal. Dec. 17, 2020) (rejecting litigant's "patently incorrect view" that it "was able to keep various objections in its pocket, presenting them in piecemeal fashion," "based on a timetable of [its] choosing").  The States' suggested seriatim procedure serves no purpose other than delay.[17]

The States also had many opportunities to raise their possession, custody, and control objections belatedly after failing to raise them in their initial motion.  On March 15, Defendants formally requested that the States be ordered to search for and produce materials responsive to a modified version of RFP 68.  Ex. 7 at 1.  More than a week later, the Special Master noted the States' failure to respond and informed them that he was "inclined to use [Defendants'] proposal" as a framework for resolving their motion.  Ex. 8 ¶ E.  The Special Master also requested that the parties meet and confer to try to reach an agreement.  *Id.* at 5.  If an agreement could not be reached, then the parties were invited for a second conference call with the Special Master to "close the gaps" between the parties or to "refine" the R&R "to focus on the areas of disagreement."  *Id.*  The States never sought that conference call; they requested instead a procedural ruling to enable them

---

[17] The States' alternative argument regarding ripeness appears to be a similar delay tactic.  *See* Obj. at 24-25.  Defendants served RFP 68 more than a year ago.  The States' continuing failure to determine which of their entities has responsive documents is no reason to prolong this dispute.

to raise their possession, custody, and control objections at a later time. *See* Ex. 11 at 1 ("Essentially, the only remaining aspect of the global dispute is whether and how State-specific arguments can be raised."). The Special Master declined that request and issued a formal recommendation that "the States be ordered to search for and produce" documents responsive to RFP 68 as modified. 12th R&R ¶ D.

The States do not—and in good faith cannot—assert that the process employed by the Special Master was unjust. From the start, Defendants disputed the States' unasserted objections based on possession, custody, and control, and the Special Master notified the States that their motion could result in an order compelling them to search for and produce materials responsive to RFP 68. When the States finally sought to raise their possession, custody, and control objections after the issuance of the R&R, it was too late. The Special Master recounted the many opportunities in which Plaintiffs elected not to raise those objections. Ex. 12 at 1. And he called it "regrettable and dilatory" for the States to "move for a broad protective order and then propose to limit the grounds" upon which relief could be granted if the States' arguments proved unsuccessful. *Id.* There is no basis for overruling the Special Master's report and recommendation; far from abusing his discretion, the Special Master reached the core of the parties' dispute, recommended a fair compromise, and properly ordered the States to produce relevant, responsive materials. The States' objections should be overruled, and the R&R should be approved and adopted in full.

## II.   THIS COURT SHOULD NOT DECIDE THE STATES' POSSESSION, CUSTODY, AND CONTROL OBJECTIONS IN THE FIRST INSTANCE.

This Court appointed the Special Master in 2018 to facilitate the "efficient progression" of this MDL, which at the time included multiple proposed class action complaints and direct actions raising "federal and state-law claims regarding dozens of different drugs against numerous

13

defendants."  Pretrial Order No. 49 ("PTO 49") at 1-2, ECF No. 667.  The scope and complexity of this MDL have only grown in the intervening years, with the filing of the States' additional complaints in 2019 and 2020.  *See generally* Pretrial Order No. 171 § A, ECF No. 1769 (describing the States' three complaints).  It thus remains imperative that the parties utilize the special masters in an "attempt to resolve their differences amicably before seeking judicial intervention which is costly and time consuming."  PTO 49 at 1.  After refusing to comply with RFP 68, the States moved for a protective order raising objections of their choosing.  Upon a "fair and full review" of the parties' respective positions, *id.* at 2, the Special Master issued a report and recommendation for the Court's consideration.

The States never raised their possession, custody, and control objections during that process, depriving the Court of the benefit of the Special Master's review of those objections in the first instance.  The States chose instead to raise burden and proportionality arguments that were predicated on each attorneys general's office having control over documents held by agencies across the state, objections that would be nonsensical if the States truly lacked possession, custody, or control over those materials.  The States' possession, custody, and control objections were therefore forfeited, and there is no basis for the States to raise those objections belatedly for the Court's consideration in the first instance now.  *Cf. In re Mercedes-Benz Emissions Litig.*, 797 F. App'x 695, 699 (3d Cir. 2020) (arguments not raised below are forfeited).  Because considering the States' objections in the first instance would waste limited judicial resources, the Court need not—and should not—excuse the States' forfeiture.  *See, e.g.*, *Arconic Inc. v. Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2020 WL 10486178, at *4 (N.D. Ga. Mar. 30, 2020) (considering new arguments "would be ineffective and defeat the purpose of appointing a Special Master"); *Horizon Glob. Ams. Inc. v. Curt Mfg., LLC*, No. 17-11879, 2020 WL 1303212, at *3 (E.D. Mich.

Mar. 18, 2020) (arguments not raised with the Special Master are "procedurally improper"); *In re Refco Inc. Sec. Litig.*, No. 07 MDL 1902 JSR, 2013 WL 2526661, at *4 (S.D.N.Y. June 6, 2013) (arguments not raised before the Special Master are not considered absent a "most compelling reason").

## III.   IN THE ALTERNATIVE, THE STATES HAVE POSSESSION, CUSTODY, AND CONTROL OVER THE RELEVANT DOCUMENTS.

### A.  The States Themselves Are Parties to this Action.

The States characterize their attorneys general as "the plaintiffs who brought this litigation" on their behalf, Obj. at 7, but that is incorrect.  The States brought suit in their own "sovereign or quasi-sovereign capacities," Amended Complaint ("Bellwether Compl.") ¶ 28, *Connecticut v. Sandoz, Inc.*, No. 2:20-cv-03539 (E.D. Pa. Sept. 9, 2021), ECF No. 62, and so the States themselves are the plaintiffs in this case—not their attorneys.  *See* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.").[18]  Defendants accordingly served requests for production on the States themselves, *see* Ex. A to 12th R&R, and are entitled to discovery of relevant documents in the "possession, custody, or control" of the States themselves.  Fed. R. Civ. P. 34(a)(1).  Any other outcome would give the States an undue advantage.  *See EEOC v. Airborne Express*, No. CIV. A. 98-1471, 1999 WL 124380, at *2 (E.D. Pa. Feb. 23, 1999) ("When the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over." (alterations omitted)).

*Washington v. GEO Group, Inc.*, No. 3:17-CV-05806-RJB, 2018 WL 9457998 (W.D. Wash. Oct. 2, 2018), is directly on point.  When the State of Washington alleged that GEO violated its minimum wage act, GEO sought discovery from the governor and several state agencies to

---

[18] The caption and signature pages in the bellwether complaint further demonstrate that the States themselves are the real plaintiffs.  *See, e.g.*, Bellwether Compl. at 547-96 ("FOR PLAINTIFF STATE OF ALASKA," "FOR PLAINTIFF STATE OF ARIZONA," etc.).

support its affirmative defenses, and the State resisted on the grounds that the attorney general's office did not have control over the requested documents. *Id.* at *2. The court overruled Washington's objections, holding that "where the plaintiff is the State of Washington, discovery addressed to the State of Washington includes its agencies." *Id.* at *3. And, reasoning that the attorney general's office is akin to the state's law firm, the court ordered the production of "all relevant, responsive, non-privileged information held by all" "agencies of the State." *Id.* at *3-4. The Special Master's recommendation is entirely consistent with *GEO Group* and other cases holding that the attorney general is merely a lawyer for the litigant, not the litigant itself. *See, e.g.*, *Hood ex rel. Mississippi v. Microsoft Corp.*, 428 F. Supp. 2d 537, 542 (S.D. Miss. 2006) (holding that the State of Mississippi, not its attorney general, was real party in interest in litigation to protect state consumers and promote state economic interest); *West Virginia ex rel. McGraw v. Minn. Mining & Mfg. Co.*, 354 F. Supp. 2d 660, 665 (S.D. W. Va. 2005) (holding that where "monies recovered will promptly find their way to the state treasury," the state, "and not the attorney general, qualifies as a real party in interest"); *Kansas ex rel. Stovall v. Home Cable Inc.*, 35 F. Supp. 2d 783, 785 (D. Kan. 1998) (holding that State of Kansas, not its attorney general, was the plaintiff in a consumer-protection action).

The States should not be permitted to hide behind the supposed limitations of their attorneys to evade the responsibilities and obligations that attach to all litigants in federal court under the Federal Rules of Civil Procedure. Whether a state's attorney general is independently elected, for instance, is immaterial, as is whether a state attorney general's office belongs to a separate branch of government. Defendants are entitled to party discovery from the States themselves; for purposes of Rule 34, it is the States' possession, custody, and control that counts. And the States point to no cases in which a court has ever held that a state *itself* lacks possession,

custody, and control over documents held by its own executive agencies or its own legislature.  In *In re Gold King Mine Release in San Juan County, Colorado, on August 5, 2015*, for instance (cited at Obj. at 10 n.25), the court merely held that the New Mexico Attorney General lacked the power to direct other state departments to comply with discovery requests.  No. 1:16-CV-00465, 2021 WL 847971, at *1-3 (D.N.M. Mar. 5, 2021).  The court never analyzed whether the State of New Mexico itself lacked that power.

Likewise, in *United States v. Novartis Pharmaceuticals Corp.* (cited at Obj. at 10), the court held that state agency records are not automatically discoverable under Rule 34 without "a showing that the agency at issue has control over requested information."  No. 11-civ-8196, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014).  There, the "agenc[ies] at issue" were the agencies that ran each state's Medicaid program, on whose behalf the States were suing, and the agency records sought through discovery were from other state agencies, including public university hospital systems.  Here, although some States are claiming damages on behalf of their Medicaid agencies, all States are also suing in their own "sovereign or quasi-sovereign capacities," Bellwether Compl. ¶ 28, making the States themselves proper subjects of party discovery.  The States cannot be allowed, on the one hand, when it is convenient, to claim that they are suing in their sovereign capacities, and, on the other hand, avoid discovery by claiming that they are not the parties at all and really their attorneys general (who are not "sovereigns") are the real plaintiffs. It is thus immaterial whether any specific state agency has control over documents requested from another state agency; the State's possession, custody, and control is what matters.

Three of the other cases cited by the States were considered and properly rejected in *GEO Group.  See* 2018 WL 9457998, at *3 (citing *United States v. Am. Express Co.*, No. 1:10-cv-04496, 2011 WL 13073683, at *3 (E.D.N.Y. July 29, 2011), *Colorado v. Warner Chilcott Holdings Co.*

*III, Ltd.*, No. 05-2182, 2007 WL 9813287 (D.D.C. May 8, 2007), and *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 265 (N.D.N.Y. 2006)).   Those cases are distinguishable here too.  None of them involved claims for *parens patriae* damages.  In *Amex* and *Warner Chilcott*, the court held that certain state attorneys general did not have control over documents possessed by other state agencies.  *Amex*, 2011 WL 13073683, at *3; *Warner Chilcott*, 2007 WL 9813287, at *5.  That again misstates the relevant inquiry.  Regardless of whether the state attorneys general have the requisite possession, custody, or control, there is no dispute that the States themselves do.  *Amex* concluded, moreover, there was "no doubt that informally the State Attorneys General could probably make these requests and garner voluntary participation," *Amex,* 2011 WL 13073683, at *3, just as several state attorneys general have agreed to do in this case.  *See, e.g.*, Fla. Stip. at 2-3; Maine Stip. at 2-3.  In the third case (*Boardman*), the court's holding rested on the fact that New York was "only nominally the plaintiff."  233 F.R.D. at 265.  That case was brought by the New York Department of Transportation, and so the DOT, not the state suing in its sovereign capacity, was the real party in interest under Rule 34.  Because the complaints in this case were brought in all instances by the States themselves, the States are the relevant parties whose possession, custody, and control must be considered.

## B.  The States' State-Specific Arguments Fail.

Because all of the States are pursuing relief in their sovereign capacities, each state is a relevant party for purposes of the Federal Rules of Civil Procedure.  None of the States dispute that the sovereign itself has possession, custody, and control over the requested materials.  That alone should be dispositive; any state law that purports to limit the power of the state's attorney general is immaterial.  Notably, thirty states and territories have not lodged any state-specific arguments about their or their attorney general's lack of possession, custody, and control over the

18

requested materials.[19]   As to the states that are now attempting to raise state-specific objections for the first time, Defendants respond briefly to each state below.

**Arizona.**  Although Arizona depicts itself as a "nominal plaintiff only," Ariz. Obj. at 1, it, like every state in this case, brought suit in its sovereign capacity.  Bellwether Compl. ¶¶ 28, 1832. Even if that were not the case, Arizona law vests its attorney general with broad authority to be "the legal advisor of the departments of this state" and "render such legal services as the departments require."  Ariz. Rev. Stat. § 41-192(A)(1).  That authority is not limited (as Arizona suggests, *see* Ariz. Obj. at 2) merely because some agencies can also retain their own counsel.  To the contrary, Arizona law states that the attorney general "shall serve as chief legal officer of the state" without qualification.  Ariz. Rev. Stat. § 41-192(A).  Arizona also argues that RFP 68 seeks documents and data cumulative of the "millions of documents already produced by the States and the millions more produced by other parties."  Ariz. Obj. at 2-3.  But other plaintiffs' productions cannot fulfill Arizona's discovery obligations.  Notably, Arizona has to date produced only twenty documents, spanning a total of eighty-four pages, none of which are responsive to RFP 68.

**California.**  California mischaracterizes its attorney general as the relevant "litigant" in this case.  Obj. at 12.  It is not, as its own pleadings make clear.  Bellwether Compl. ¶¶ 28, 2114. Moreover, California cites nothing in its constitution or statutes limiting its attorney general's power to facilitate the production of documents held by the state's executive agencies or legislature.  And California's supposed lack of possession, custody, and control is belied by its willingness to produce documents responsive to RFP 68 from seven state agencies of its own choosing.  *Id.*  As other federal courts have held, the California Attorney General's Office has

---

[19] Alaska, Arkansas, Colorado, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Puerto Rico, Rhode Island, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

constructive control over documents possessed by other California agencies to the extent those documents are obtainable upon request.[20]  Finally, California is mistaken that there is "no active dispute over the scope" of RFP 68.  Obj. at 12.  The 12th R&R would require California to search for and produce documents from, among other entities, the California Health and Human Services Agency and the California Department of Public Health.  Because California contends that it lacks control over those documents, there is an active dispute.

     **Connecticut.**  Connecticut asserts that requiring its attorney general to produce responsive documents "would violate" "constitutional separation of powers" and that it lacks "control over the documents sought."  Obj. at 13-14.  But, again, Connecticut's attorney general is not the plaintiff and state law does not control.  And even if it were, state law is to the contrary.  A Connecticut Supreme Court decision relied upon by Connecticut expressly states that "the Attorney General [has] the unqualified role of chief legal officer of the State [and] he or she must be able to direct the legal affairs of the State and its agencies."  *Conn. Comm'n. on Special Revenue v. Conn. Freedom of Info. Comm'n.*, 387 A.2d 533, 537-38 (Conn. 1978).  The attorney general is acting as Connecticut's lawyer here, and the Court should reject Connecticut's proposition that the lawyer for a party to a litigation can claim to be the real party, thereby shielding the party from discovery.  Even if (contrary to the face of the pleadings) the attorney general were the party to this litigation, the other cases cited by Connecticut fail to support the proposition that separation of powers entitles the attorney general's office to shirk its discovery obligations under the Federal Rules of Civil Procedure with respect to state agencies.[21]

---

[20] *See, e.g.*, *Bovarie v. Schwarzenegger*, No. 08-CV-1661, 2011 WL 767249, at *5 (S.D. Cal. Feb. 25, 2011); *Woodall v. California*, No. 1:08-CV-01948-OWW, 2010 WL 4316953, at *5 (E.D. Cal. Oct. 22, 2010).
[21] *Blumenthal v. Barnes*, 804 A.2d 152, 169-70 (Conn. 2002), concerned whether the Connecticut Attorney General had the power under common law to bring a claim against officials of a non-profit organization for breach of fiduciary duty and had nothing to do with the Attorney General's possession, custody or control over agency documents.

**District of Columbia.** The District of Columbia asserts that the Office of the Attorney General is an "independent agency" and "does not report to the mayor," Obj. at 14, but the plaintiff in this case is the District of Columbia, not the Office of the Attorney General. Moreover, the decision that the District of Columbia relies on, *District of Columbia v. Eads, LLC*, 2018 CA 005830 B (D.C. Super. Ct. Mar. 9, 2021), concerned a "civil enforcement case," and not a damages claim similar to the one the District brings here on behalf of its Medicaid agency.

**Hawaii.** Hawaii concedes that its attorney general is a political appointee of its governor, putting Hawaii's executive agencies under a common chain of command. Obj. at 15. Hawaii purports to challenge relevance and proportionality, but Hawaii (along with every other State) waived those objections after the Special Master issued his informal recommendation. *See* Ex. 11 at 1 (stating that the "global issue" raised in the States' motion "has been resolved" and "the only remaining aspect of the global dispute is whether and how State-specific arguments can be raised"). Finally, Hawaii asserts without argument or evidence that the R&R "is in error as regards the function of the cited Hawaii statute." Obj. at 15. That statute is merely illustrative, however, and Hawaii does not dispute that it has possession, custody, and control over materials received from healthcare providers pursuant to Hawaii Rev. Stat. § 431R-4 or otherwise. It should accordingly produce those materials forthwith.

**Massachusetts.** Massachusetts does not cite anything in its constitution or statutes limiting its attorney general's power to facilitate the production of documents held by executive agencies

---

Similarly, *Connecticut Commission on Special Revenue* concerned whether the Attorney General's office could appear as counsel for two opposing state agencies in a litigation, a question which the Connecticut Supreme Court answered in the affirmative noting that the Attorney General must "be able to direct the legal affairs of the State *and its agencies*." 387 A.2d at 538 (emphasis added). Furthermore, Connecticut's citation to *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 236 F.R.D. 177 (S.D.N.Y. 2006) underlines the weakness of their position; the court compelled discovery in *Flag Telecom* precisely because the "concept of 'control' has been construed broadly." *Id.* at 180. Nor is Connecticut's reliance on *Boardman* any more well founded, as that case did not concern the control the Connecticut attorney general has over Connecticut agency documents. 233 F.R.D. at 265.

or the state legislature.  It relies instead on a single trial-court opinion sustaining the Commonwealth's general objection under the *Massachusetts* Rules of Civil Procedure as to a request to produce documents from outside the attorney general's office.  *See Massachusetts v. Ortho-McNeil-Janssen Pharms., Inc.*, No. CIV. A. 2011-2811-BLS 2, 2012 WL 5392617, at *3 (Mass. Super. Ct. Oct. 5, 2012).  But the state court's analysis was grounded, in part, on its finding that the discovery requests in that case were "extraordinarily broad and on their face of questionable relevance."  *Id.*  As a result, the court found it "difficult" to rule on possession, custody, and control without considering the scope of the requests and "the volume of documents that would have to be produced as a consequence of the Court's decision on that issue."  *Id.* at *3 n.2.  The court's weighing of the practical burdens imposed in that case does not support Massachusetts' position in this case that an order compelling its attorney general to produce *any* documents from another state agency would violate the Massachusetts Constitution.  Obj. at 8.

**Michigan.**  Michigan asserts that its attorney general, like many others, plays more than one role.  But Michigan cites no support for the proposition that the State of Michigan itself or its attorney general cannot facilitate production of documents held by state agencies or the state legislature.  Moreover, Michigan's repeated objections to being compelled to produce documents in the physical possession of its state judiciary are misplaced.  Defendants have never suggested that RFP 68 requires any state to search for and produce documents held by its judicial branch; nor does R&R 12 require that.

**Missouri.**  Missouri does not dispute that the State of Missouri itself is the plaintiff in this case.  Rather, Missouri asserts that its attorney general lacks control over state executive agencies, but that does not mean the State itself is powerless to comply with a court order approving and

adopting the 12th R&R.  None of the authorities cited by Missouri are to the contrary.[22]

**North Carolina.**  North Carolina does not dispute that the state itself is the plaintiff in this case.  It asserts that its attorney general lacks custody of records from outside the state justice department, but, once again, that does not mean the state itself is powerless to comply with a court order approving and adopting the 12th R&R.  North Carolina's remaining objections relate to a subset of materials in the custody of its state legislature which, it contends, are confidential under state law.  Obj. at 19 (citing N.C. Gen. Stat. §§ 120-130(b), 120-131(a)).  But North Carolina law expressly allows courts to "compel disclosure of" legislative information if "necessary to a proper administration of justice," N.C. Gen. Stat. Ann. § 120-132(c), and North Carolina has shown no basis for resisting the production of the relevant, responsive materials requested in this case.[23]

**Ohio.**  Ohio mischaracterizes its attorney general as "the party to this case."  Obj. at 20.  In an antitrust suit like this one, the attorney general of Ohio is, in fact, merely the "attorney at law" "for the state," the real party in interest.  Ohio Rev. Code. Ann. § 109.81(A); *accord* Fed. R. Civ. P. 17(a)(1).  That same statute requires the attorney general to "do all things necessary" "to properly conduct any antitrust case in which he acts as attorney at law."  Ohio Rev. Code. Ann. § 109.81(A).  To facilitate that mission, the attorney general can issue civil investigatory demands.  *Id.* § 1331.16(B).  And Ohio public officers must furnish information and assistance to the attorney

---

[22] In *State ex rel. Daly v. Information Technology Services Agency of City of St. Louis* (cited at Obj. at 18 n.51), the court merely held that Missouri's Sunshine Law requires each public governmental body to appoint a custodian of records who shall be solely responsible for disseminating records in response to an open-records request.  417 S.W.3d 804, 809 (Mo. Ct. App. 2013).  Another case cited by Missouri stands only for the unremarkable proposition that Missouri's Director of Revenue need not produce documents outside of the Department of Revenue's possession.  *See Bedell v. Dir. of Revenue, State of Mo.*, 935 S.W.2d 94, 96 (Mo. Ct. App. 1996).  Nothing in these cases suggest that the Missouri Department of Revenue or any other Missouri governmental entity could not comply with a court order directing the State of Missouri to produce relevant documents in this case.  Finally, *State ex rel Nixon v. American Tobacco Co.*, 34 S.W.3d 122, 130 (Mo. 2000), merely states that it is within the discretion of the Missouri attorney general whether to seek injunctive relief or restitution on behalf of the citizens of Missouri.  That does not prevent the State of Missouri from complying with the 12th R&R.

[23] *See City of Greensboro v. Guilford Cnty. Bd. of Elections*, No. 1:15CV559, 2016 WL 11660626, at *5 (M.D.N.C. Dec. 20, 2016) (overruling objections based on legislative confidentiality and ordering production of documents).

general upon request.  *Id.* § 1331.16(N).  These statutory commands place any materials in the possession of the State under its attorney general's control.[24]

**Oregon.**  Oregon does not cite anything in its constitution, statutes, or case law that limits its attorney general's power to facilitate the production of documents held by executive agencies or the state legislature.  It relies instead on a 23-year-old advisory opinion from its attorney general relating to whether a clause in the Oregon Constitution gives each chamber of the Oregon Legislative Assembly the exclusive authority to investigate and sanction members for failing to declare an actual or potential conflict of interest.  Obj. at 21.  That advisory opinion provides no basis for overruling the 12th R&R.  Indeed, Oregon appears to candidly acknowledge uncertainty regarding whether its attorney general may or "may not be capable of compelling the Legislature to produce materials."  *Id.*  Finally, that Oregon has produced documents from agencies for which it seeks damages, "including some reports," *id.*, is immaterial because the 12th R&R is not limited to agencies for which a state seeks damages.

**Tennessee.**  Tennessee mischaracterizes its attorney general's office as the "plaintiff" for purposes of Rule 34.  Obj. at 22.  Tennessee cites nothing in its constitution or statutes limiting its attorney general's power to facilitate the production of documents held by the state's executive agencies or legislature.  In the only case cited by Tennessee, the court compelled the Tennessee Attorney General's Office to produce documents held by Tennessee's state legislature.[25]   The same result should follow here.

**Washington.**  For the reasons stated above, *GEO Group* is directly on point.  Washington asserts that bringing a *parens patriae* claim does not make Washington governmental entities

---

[24] *See Gerling Int'l Ins. Co. v. Comm'r*, 839 F.2d 131, 140 (3d Cir. 1988) ("[C]ontrol is . . . defined not only as possession, but as the legal right to obtain the documents requested on demand.").
[25] *See Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, No. 2:11-CV-02101-SHM, 2012 WL 6607288, at *1 (W.D. Tenn. Dec. 18, 2012).

subject to party discovery, but a federal court in Washington has already rejected the State's argument.  *See GEO Grp.*, 2018 WL 9457998, at *2 (rejecting argument that state agencies are excused from party discovery "because the AGO initiated this lawsuit as *parens patriae*").  Here, Washington has again asserted a *parens patriae* claim in addition to its damages claims on behalf of specific agencies.  As a result, its possession, custody, and control again extends to "all relevant, responsive, non-privileged information held by all divisions of the AGO and agencies of the State." *Id.* at *4.  There is no basis for departing from *GEO Group* in this case.

**Wyoming.**  Invoking "principles of federalism and comity," Wyoming asks the Court to "defer[]" to state law, Obj. at 23, but the only state law that Wyoming cites is a statute that makes the attorney general a political appointee of the governor, putting Wyoming's executive agencies under a common chain of command.[26]  *See* Wyo. Stat. Ann. § 9-1-601 ("The attorney general . . . may be removed by the governor as provided in W.S. 9-1-202"); *see also id.* § 9-1-202 ("any person may be removed by the governor, at the governor's pleasure").  Wyoming is, moreover, the only state still clinging to the notion that it "only has possession, custody, and control over documents held within" a specific unit of its attorney general's office, Obj. at 23, a limitation for which no State has ever articulated any principled basis, much less any relevant legal authority.

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court overrule the States' Objections and approve and adopt the Twelfth Report and Recommendation in full.

---

[26] Although Wyoming cites *Warner Chilcott*, it was not a plaintiff in that action.  2007 WL 9813287, at *1.

25

Dated: May 24, 2022

Respectfully submitted,

/s/ Benjamin F. Holt

Benjamin F. Holt
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel.: (202) 637-5600
Fax: (202) 637-5910
benjamin.holt@hoganlovells.com

*Counsel for Defendants Mylan
Pharmaceuticals Inc. and Mylan Inc.*

/s/ Chul Pak

Chul Pak
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 999-5800
Fax: (212) 999-5899
cpak@wsgr.com

/s/ Devora W. Allon

Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
devora.allon@kirkland.com

/s/ Ryan T. Becker

Ryan T. Becker
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 299-2033
Fax: (215) 299-2150
rbecker@foxrothschild.com

/s/ Sarah F. Kirkpatrick

Sarah F. Kirkpatrick
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
skirkpatrick@wc.com

/s/ Sheron Korpus

Sheron Korpus
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
Tel: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com

/s/ Allison Tanchyk
Allison Tanchyk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5847
Fax: (215) 963-5001
allison.tanchyk@morganlewis.com

*Defense Liaison Counsel*

**CERTIFICATE OF SERVICE**

I, Benjamin Holt, hereby certify that the foregoing has been filed electronically using the

Court's CM/ECF system, which will serve a copy upon all counsel of record, and is available for

viewing and download.

Dated: May 24, 2022                    Respectfully submitted,

                                       /s/ *Benjamin F. Holt*
                                       Benjamin F. Holt
                                       HOGAN LOVELLS US LLP
                                       555 Thirteenth Street, NW
                                       Washington, DC 20004
                                       Telephone: (202) 637-5600
                                       Facsimile: (202) 637-5910
                                       benjamin.holt@hoganlovells.com

                                       *Counsel for Defendants Mylan Pharmaceuticals*
                                       *Inc. and Mylan Inc.*

1