IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL No. 2724<br>Case No. 2:16-MD-02724<br><br>Hon. Cynthia M. Rufe |

**INTERVENOR UNITED STATES OF AMERICA'S SUPPLEMENTAL BRIEF
IN SUPPORT OF JULY 5 MOTION FOR SCHEDULING ORDER**

Pursuant to this Court's direction at the July 14, 2022 Leadership Status Conference and subsequent Order, ECF No. 2175, Intervenor United States of America hereby makes a supplemental submission regarding its July 5 request, ECF No. 2159, that the Court temporarily continue all disputed provisions of Pretrial Order No. 200 ("PTO 200), ECF No. 2045, until the United States' forthcoming motion to stay is resolved. Plaintiffs have agreed to abide by paragraph 5 of PTO 200 (concerning a stay of certain depositions) until after the United States' forthcoming motion to stay is resolved, ECF No. 2175 ¶ 7, so this supplemental submission only concerns the other disputed provisions of PTO 200: Paragraphs 7, 8, and 9, *see id*. ¶ 1.

The Court should maintain the status quo *ante* under the limited stay of discovery until the forthcoming motion to stay is resolved because permitting disputed discovery about the inner workings of the Government's ongoing criminal investigation would cause serious and irreparable harm to the interests of the United States. Without the protections of Paragraphs 8 and 9 of PTO 200, the parties would conduct discovery into sensitive information concerning prior witness statements, law enforcement methodologies, and grand jury proceedings that would impede the Government's ongoing investigation and compromise the integrity of future criminal

investigations. Similarly, without the protections of Paragraph 7 of PTO 200, if Plaintiffs seek to take specific discovery the permissibility of which is in dispute, that discovery could cause irreparable harm before its permissibility is adjudicated. Temporarily preventing these irreparable injuries would not prejudice the parties. To whatever extent Plaintiffs succeed on the merits of the United States' motion to stay, then they could still take any permissible discovery later in the bellwether fact discovery period.

## ARGUMENT

### I. Maintaining the Status Quo Is Necessary to Prevent Serious and Irreparable Harm to the Interests of the United States

It has long been the law that federal courts should "act to preserve the status quo . . . until the rights involved can be finally determined," in situations where allowing the status quo to change would threaten "serious injury" to one of the parties seeking to have its rights determined. *Westmoreland Coal Co. v. Rothensies*, 13 F. Supp. 321, 322 (E.D. Pa. 1935) (staying enforcement of challenged law "until such time as a final adjudication can be made"); *see also*, *e.g.*, *Hovey v. McDonald*, 109 U.S. 150, 161 (1883) (courts "should always . . . exercise[]" their "power . . . to order a continuance of the *status quo* until a decision should be made" "when any irremediable injury may result" from the status quo changing).

### A. Discovery About the Inner Workings of the Government's Criminal Investigation Would Cause Irreparable Harm

This Court should preserve the status quo of the limited stay of discovery embodied in Paragraphs 8 and 9 of PTO 200 until resolving the United States' motion to continue those provisions because failing to do so would result in serious and irreparable harm to the United States. That irreparable harm would arise in three distinct ways.

*First*, permitting discovery into prior statements made by witnesses to federal criminal investigators would allow future interview subjects in the Government's ongoing criminal

2

investigation to obstruct that investigation.  Plaintiffs have stated that they seek to take such discovery in the absence of Paragraphs 8 and 9.  *See*, *e.g.*, ECF No. 2154 at 6-7 (stating Plaintiffs want to "ask . . . witnesses about their conversations with federal investigators" and "admissions to federal investigators").  In its ongoing criminal investigation, the United States Department of Justice ("DOJ") is actively pursuing interviews of additional witnesses outside the United States who may reveal information that furthers the investigation, leads to the discovery of additional criminal violations, and/or assists the DOJ in bringing new criminal charges.  *See* Order, *United States v. Glenmark Pharms. Inc., USA,* No. 20-cr-200 (E.D. Pa. Jan. 12, 2022), ECF No. 145.  Specifically, the DOJ is pursuing interviews of executives of Glenmark USA's parent company, Glenmark India, through a request under a mutual legal assistance treaty between the United States and the Republic of India.  *Id.*[1]  Disclosure in this MDL of prior witness statements to federal criminal investigators would allow future interview subjects, who are employees of the parent company of a defendant in this MDL, to anticipate interview topics and questions, align their statements with prior statements of other witnesses, or otherwise use the contents of prior interviews to impede the Government's investigation.

*Second*, permitting discovery into how federal law enforcement agencies—the DOJ, the Federal Bureau of Investigation ("FBI"), and the United States Postal Service Office of Inspector General ("Postal Service IG")—have conducted the ongoing criminal investigation into anticompetitive conduct in the generic pharmaceuticals industry would reveal sensitive information about those agencies' law enforcement methods, procedures, and techniques, such as

---

[1] *See also* 18 U.S.C. § 3292 (when "evidence of an offense is in a foreign country," the district court "shall suspend the running of the statute of limitations for the offense if the court finds . . . that an official request has been made for such evidence and that it reasonably appears . . . that such evidence is, or was, in such foreign country").

methods of locating, seizing, or processing evidence and methods of contacting and interviewing witnesses. Plaintiffs have stated that they seek to take such discovery in the absence of Paragraphs 8 and 9. *See*, *e.g.*, ECF No. 2154 at 7 (stating Plaintiffs want to take discovery about how federal criminal investigators seized and processed evidence). Disclosing law enforcement methods would undermine the integrity of current and future criminal investigations conducted by the DOJ, FBI, or Postal Service IG and would risk circumvention and obstruction of the law by targets of such investigations. *See*, *e.g.*, *G-69 v. Degnan*, 130 F.R.D. 339, 348 (D.N.J. 1990) (files that "would contain indications of law enforcement methods . . . should remain confidential to protect their effectiveness").[2] Subversion of federal criminal investigations would cause serious and irreparable harm to the interests of the United States.

*Third*, permitting discovery into the inner workings of the United States' criminal investigation would pierce the veil of grand jury secrecy, which would cause irreparable harm to the federal grand jury system. In 2020, a grand jury returned indictments against multiple defendants on charges (and about generic drugs) that are a subset of Plaintiffs' allegations in this MDL. Absent the protections of Paragraphs 8 and 9 of PTO 200, Plaintiffs could take discovery in this MDL about the contents of grand jury subpoenas and the information and documents provided in response to those subpoenas, including by soliciting deposition testimony that recounts lines of questioning or witness statements made in the grand jury room. Plaintiffs have previously stated to the DOJ and Special Discovery Master Merenstein that they intend to take

---

[2] The harms caused by such disclosure are also acknowledged in the Freedom of Information Act, which exempts from disclosure any information that "would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E); *see also*, *e.g.*, *Sack v. U.S. Dept. of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016) (no disclosure of polygraph procedures and techniques or information about "when [law enforcement] agencies are likely to employ them"); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (no disclosure of "procedures used during the forensic examination of a computer").

such discovery in the absence of Paragraphs 8 and 9.  Such discovery would disclose, directly or indirectly, "what occurred before the grand jury," but the secrecy of that category of information is critical "to preserve the freedom and integrity of the deliberative process."  *In re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982).  The United States has a concrete and compelling interest in preserving the "settled federal policy that the grand jury system requires secrecy of grand jury proceedings."  *Id*.

    **B.**  **Maintaining Paragraph 7 of PTO 200 Is Also Necessary to Prevent Irreparable Harm**

Paragraph 7 of PTO 200 is also necessary to prevent irreparable harm to the interests of the United States because that provision, among other things, stays disputed discovery pending resolution of disputes before Special Discovery Master Merenstein.  PTO 200 ¶ 7 ("The proposed discovery shall be stayed pending resolution of the dispute.").  That long-running procedural protection is part and parcel of substantive limitations on discovery because, if a dispute arises about whether specific proposed discovery runs afoul of those substantive limitations, the irreparable harms discussed *supra* Part I.A would result if Plaintiffs could simply move forward with disputed discovery in the face of an objection from the United States.  Limitations on discovery designed to prevent irreparable harm to the United States are meaningless if discovery that arguably violates those limits (and thus would arguably impose irreparable harm) could proceed before the permissibility of the discovery is adjudicated.

    **II.**  **Maintaining the Status Quo Would Not Prejudice Plaintiffs**

Temporarily continuing the narrow but important limitations on discovery in Paragraphs 7, 8, and 9 of PTO 200 would not prejudice Plaintiffs because they would not be prevented from taking any permissible discovery.  To whatever extent the Court, in ruling on the merits of the United States' forthcoming motion to stay, permits any disputed discovery to go forward,

Plaintiffs could conduct such discovery later in the bellwether discovery period.  *See also* ECF No. 2159 at 8-9.  The same would be true for any objections that the United States might present to Special Discovery Master Merenstein, though the United States has never done so.

## CONCLUSION

For the reasons stated above, the Court should temporarily continue all disputed provisions of PTO 200 until the United States' forthcoming motion to stay is resolved.

Dated: July 22, 2022

Respectfully submitted,

*/s/ Matthew R. Huppert*
Matthew R. Huppert
Arianna Markel
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
450 Fifth Street NW
Washington, DC 20530
(202) 812-1853
matthew.huppert@usdoj.gov
arianna.markel@usdoj.gov

*Counsel for Intervenor United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, I caused the foregoing **INTERVENOR UNITED STATES OF AMERICA'S SUPPLEMENTAL BRIEF IN SUPPORT OF JULY 5 MOTION FOR SCHEDULING ORDER**, to be filed with the Clerk of Court using the Court's Electronic Document Filing System, which served copies on all interested parties registered for electronic filing, and is available for viewing and downloading from the ECF system.

*/s/ Matthew R. Huppert*
Matthew R. Huppert
*Counsel for Intervenor United States of America*