# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>Case No. 2:16-MD-02724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | Hon. Cynthia M. Rufe |

**INTERVENOR UNITED STATES OF AMERICA'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR A LIMITED STAY OF DISCOVERY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

    **I.**    **The United States' Criminal Investigation and Pending Prosecutions** ........................ 3

    **II.**   **The Limited Stays of Discovery in This MDL** ................................................. 3

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT .................................................................................................................. 5

    **I.**    **The Significant Overlap Between the Civil and Criminal Proceedings Supports Continuing the Stay** .................................................................................................. 6

    **II.**   **The Advanced Stage of the Criminal Proceedings Supports Continuing the Stay** ... 6

    **III.**  **Compelling Public Interests Support Continuing the Stay** ......................... 7

    **IV.**  **A Continuation of the Limited Stay Would Not Prejudice Plaintiffs** ..................... 12

    **V.**   **The Other Applicable Factors Also Support Continuing to Stay** ............................ 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962) ................................................8, 11

*Doe v. Schneider*, 2010 WL 11561113 (E.D. Pa. June 8, 2010) ......................................6

*G-69 v. Degnan*, 130 F.R.D. 339 (D.N.J. 1990) ...............................................................9

*Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53 (E.D. Pa. 1980).............................................................................................................................5, 15

*Heraeus Materials Tech. LLC v. Tung Pham*, 2011 WL 13227695 (E.D. Pa. June 29, 2011)........6

*In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819 (E.D. Pa. May 13, 2003) ........... passim

*In re Deriv. Litig.*, 2007 WL 1101276 (E.D. Pa. Apr. 11, 2007).....................................12

*In re Grand Jury Matter*, 682 F.2d 61 (3d Cir. 1982) ......................................................9

*Kaiser v. Stewart*, 1997 WL 66186 (E.D. Pa. Feb. 6, 1997)................................. 7, 9, 11

*Med. Inv. Co., Ltd. v. Int'l Portfolio, Inc.*, 2014 WL 2452193 (E.D. Pa. May 30, 2014 .... 7, 10, 12

*Mitchell v. United States*, 526 U.S. 314 (1999) ..............................................................11

*SEC v. Mersky*, 1994 WL 22305 (E.D. Pa. Jan. 25, 1994)...................................... 7, 8, 15

*State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, 2002 WL 31111766 (E.D. Pa. Sept. 18, 2002)..........................................................................................................................12

*Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967).........................................................4

*United States v. Mellon Bank, N.A.*, 545 F.2d 869 (3d Cir. 1976) ..............................5, 15

*United States v. Pelullo*, 14 F.3d 881 (3d Cir. 1994) ....................................................11


**Statutes**

Section 1 of the Sherman Act, 15 U.S.C. § 1 ..................................................................3


**Rules**

Fed. R. Crim. P. 6(e)..........................................................................................................9

Fed. R. Evid. 801(c)..........................................................................................................14

## INTRODUCTION

Intervenor United States of America respectfully requests that the Court continue Paragraphs 5, 7, 8, and 9 of Pretrial Order No. 200 ("PTO 200"), ECF No. 2045, which impose a limited stay of certain discovery, until the conclusion of the United States' related criminal prosecutions. *See* Proposed Order (attached). Those critical provisions (1) stay depositions of nine trial witnesses in the United States' pending criminal prosecutions; (2) prohibit discovery of the inner workings of the United States' criminal investigation; and (3) permit the United States to protect its interests as discovery unfolds. *See* PTO 200 ¶¶ 5, 7-9; Proposed Order ¶¶ 3-6. The United States has narrowed the scope of these provisions to the irreducible core of protections that are necessary to maintain the integrity of the United States' heavily overlapping criminal prosecutions and ongoing criminal investigation. Anything less would compromise the Government's ability to enforce the criminal law and seek justice on behalf of the United States.

*First*, the Court should stay depositions of nine individuals whose testimony the United States intends to rely on to satisfy its burden of proof at trial in the criminal cases. *See* PTO 200 ¶ 5. The United States has identified these individuals in a list provided to the Court and liaison counsel, most recently on July 20, 2022. The United States has carefully carved out these nine individuals from a much longer list of 84 potential trial witnesses or individuals whose statements the United States may seek to introduce at trial as co-conspirator statements. Allowing Plaintiffs to depose any of those nine individuals now—as the United States prepares to present their testimony in the upcoming criminal trials—would compromise their trial testimony and irreparably harm the United States' pending criminal prosecutions. It would upend important limits on criminal discovery and provide the criminal defendants unprecedented insight into the United States' investigation and likely trial presentation.

*Second*, the Court should continue to stay certain discovery relating to the United States' criminal investigation.  *See* PTO 200 ¶¶ 7-9.  This stay of a specific, narrow category of discovery—like the limited deposition stay—is necessary to protect the integrity of the United States' ongoing criminal investigation and pending criminal prosecutions.  Permitting such discovery would compromise future interviews in the ongoing investigation, divulge sensitive details about law enforcement methods, and pierce the veil of grand jury secrecy—all of which would irreparably harm important interests of the United States and the public.

Plaintiffs will not be prejudiced by the United States' proposed stay.  The parties have taken or requested over 80 depositions thus far in bellwether fact discovery, and they have nearly six more months of bellwether fact discovery in which to take dozens more depositions.  Plaintiffs do not need to depose the Government's small group of key trial witnesses or seek discovery about how federal law enforcement officers conducted their criminal investigation in order to prove their bellwether claims.  While the nine individuals on the United States' do-not-depose list are critical to prosecuting three specific defendants in the criminal cases, they are a drop in the bucket of discovery in this sprawling MDL.  In any event, Plaintiffs can depose all nine individuals after the conclusion of the criminal trials.[1]  Nothing in the United States' requested stay would preclude Plaintiffs from discovering the underlying facts needed to prove their claims.  Therefore, the balance of interests weighs heavily in the United States' favor, and the Court should grant the United States' motion to prevent those criminal prosecutions and ongoing investigation from being compromised.

---

[1] The judge presiding over the criminal cases recently granted the United States' February 2022 motion for a status conference to set pre-trial motions deadlines and discuss a trial date in *United States v. Aprahamian*, 20-cr-64 (E.D. Pa.). A status conference is now set for August 9, 2022. The United States anticipates seeking an expeditious pretrial schedule and trial date at that status conference, and will provide an update to this Court after that status conference, including on the setting of any trial date and pretrial motions deadlines.

## BACKGROUND

### I.      The United States' Criminal Investigation and Pending Prosecutions

The United States is conducting a criminal investigation of companies and individuals in the generic pharmaceutical industry for colluding to inflate drug prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  This criminal investigation—which remains ongoing—has led to guilty pleas, deferred prosecution agreements, and indictments.  In 2020, a grand jury returned indictments against former pharmaceutical executive Ara Aprahamian and two generic pharmaceutical makers, Teva Pharmaceuticals USA, Inc. ("Teva") and Glenmark Pharmaceuticals Inc., USA ("Glenmark").[2]  These indictments charge Aprahamian, Teva, and Glenmark with entering into criminal conspiracies to raise and fix prices, allocate customers, and/or rig bids regarding generic pharmaceutical drugs.  The charges in those criminal cases— and the drugs named in the indictments—are a subset of Plaintiffs' allegations in this MDL.

The United States has submitted multiple requests to set trial dates in the criminal actions.[3]  Most recently, in February 2022, the United States requested a status conference to set pretrial motions deadlines and discuss a trial date in *Aprahamian*.  That request was granted on July 21, 2022,[4] and the United States continues to prepare both cases for trial.

### II.      The Limited Stays of Discovery in This MDL

Because of the substantial overlap between the United States' criminal cases and the civil claims in this MDL, the United States intervened in 2017 to ensure that any civil discovery

---

[2] *United States v. Aprahamian*, No. 20-cr-0064 (E.D. Pa. Feb. 4, 2020), ECF No. 1; *United States v. Glenmark Pharms. Inc., USA*, No. 20-cr-200 (E.D. Pa. Aug. 25, 2020) ("*Teva/Glenmark*"), ECF No. 28.
[3] *See* Proposed Scheduling Order (Oct. 20, 2020), *Teva/Glenmark*, ECF No. 52-2; Amended Proposed Scheduling Order (Mar. 19, 2021), *Teva/Glenmark*, ECF No. 75-2; Second Amended Proposed Scheduling Order (June 3, 2021), *Teva/Glenmark*, ECF No. 91-1.
[4] *See* U.S. Mot. for a Status Conference (Feb. 4, 2022), *Aprahamian*, ECF No. 43; Order (July 21, 2022), *Aprahamian*, ECF No. 48.

would not compromise the integrity of the criminal proceedings. To that end, the United States and the parties have stipulated to several short-term, limited stays, and this Court has entered those stipulations by order. *See*, *e.g.*, ECF No. 347 (PTO 23); ECF No. 1046 (PTO 96); ECF No. 1152 (PTO 108); ECF No. 1325 (PTO 117). At a minimum, those orders have stayed (1) discovery requests that relate to the United States' criminal investigation and (2) depositions of individuals identified by the United States, which would interfere with the investigation and prosecutions. *See*, *e.g.*, PTO 96 ¶¶ 5-7.

On December 15, 2021, the United States moved to continue three disputed aspects of the limited stay until the conclusion of the criminal trials: (1) the deposition stay of potential witnesses at the criminal trials; (2) the stay of disputed discovery pending resolution of the United States' objections; and (3) the stay of discovery related to the inner workings of the United States' criminal investigation. *See* ECF No. 1908. On April 11, 2022, this Court issued PTO 200, which granted the United States' motion to continue all three provisions. ECF 2045 (PTO 200) ¶¶ 5, 8-9. PTO 200 provided that the limited stay would expire and would need to be renewed at the United States' request. The Court stated that the limited stay would remain in place "until July 17, 2022," to "allow sufficient time," *inter alia*, "for the United States or any party to bring arguments . . . in favor of a stay of specific depositions or written discovery." PTO 200 at 3-4; see also *id.* ¶ 12. The United States now moves to stay nine depositions and one narrow category of discovery until the conclusion of the criminal trials. *See* Proposed Order.

## LEGAL STANDARD

This Court has inherent authority to stay proceedings "to control the disposition of the causes on its docket." *Texaco, Inc. v. Borda*, 383 F.2d 607, 608 (3d Cir. 1967) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "It [is] clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of

civil proceedings" when those proceedings overlap with parallel criminal proceedings. *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 872-73 (3d Cir. 1976) (affirming stay); *see also Borda*, 383 F.2d at 608-09 (affirming stay of civil proceedings "until determination of the Government's criminal action").

"[T]he most important threshold issue" for staying civil discovery is "[t]he similarity of the issues underlying the civil and criminal actions." *In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *3 (E.D. Pa. May 13, 2003); *see also Mellon Bank*, 545 F.2d at 871 (affirming stay of civil discovery based on district court's finding that "substantial matters of the same nature exist in both the criminal and civil proceedings"). Other relevant factors include: (1) the status of the criminal proceedings, including whether any defendant has been indicted; (2) the public interest in the pending civil and criminal litigation; (3) plaintiffs' interest in proceeding expeditiously with discovery, and the potential prejudice to plaintiffs of a delay; (4) the burden discovery may impose on defendants; (5) judicial economy; and (6) the interests of non-parties. *See, e.g.*, *In re Adelphia*, 2003 WL 22358819, at *3; *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980); ECF No. 1769 (PTO 171) at 3-4 (citing *In re Adelphia*, 2003 WL 22358819, at *3); PTO 200 at 2.

## ARGUMENT

The United States seeks a limited stay of *nine* depositions and discovery specifically related to the inner workings of the United States' criminal investigation. This exceptionally limited stay would permit Plaintiffs broad fact discovery while still providing the minimum protections needed to maintain the integrity of the parallel prosecutions and ongoing criminal investigation, in advance of the criminal trials. Such a stay would prevent irreparable harm to the criminal proceedings, would not prejudice the parties, and would promote judicial economy.

## I.     The Significant Overlap Between the Civil and Criminal Proceedings Supports Continuing the Stay

The overlap between the civil and criminal proceedings is "the most important" factor when determining whether a stay is warranted. *See In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819 at *3.  This Court has already determined that overlap between the civil and criminal proceedings weigh in favor of issuing the prior stays, and that remains the case.

As this Court previously found: "Glenmark and Aprahamian are named as Defendants in the Dermatology Action"; "there are allegations concerning conduct by Aprahamian" in the DPP and EPP clobetasol and clomipramine cases; the Dermatology Action complaint "contains numerous allegations concerning Teva"; and the "charges in the criminal cases allege conduct concerning clobetasol and other drugs in the Dermatology Action." *See* PTO 200, at 2-3. Plaintiffs have conceded that there is significant overlap between the civil and criminal proceedings.  *See* ECF No. 1920-1, at 10-11 (acknowledging ten overlapping drugs).  This substantial overlap continues to "weigh[] heavily in favor" of continuing the stay.  *In re Adelphia*, 2003 WL 22358819, at *3.[5]

## II.     The Advanced Stage of the Criminal Proceedings Supports Continuing the Stay

The stage of the criminal proceedings, "which can have a substantial effect on the balancing of the equities," also supports continuing the stay.  *See In re Adelphia*, 2003 WL 22358819, at *3.  Criminal indictments have been returned, the three indicted defendants are awaiting trial, and the United States' request for a status conference to discuss trial dates was just

---

[5] *See also Med. Inv. Co., Ltd. v. Int'l Portfolio, Inc.*, 2014 WL 2452193, at *2 (E.D. Pa. May 30, 2014) ("common factual and legal issues" factor "weighs in favor of a stay"); *Heraeus Materials Tech. LLC v. Tung Pham*, 2011 WL 13227695, at *1 n.1 (E.D. Pa. June 29, 2011) (granting stay of party discovery where "discovery requests related to a civil . . . claim will be similar, if not identical to, the subject matter of a criminal investigation into the same conduct"); *Doe v. Schneider*, 2010 WL 11561113, at *2 (E.D. Pa. June 8, 2010) ("[T]he overlap of the issues weighs heavily in favor of granting a complete stay.").

granted. *See supra* p 2. The United States is ready to proceed to trial in the criminal proceedings as soon as a trial date is set.

The justification for a stay of civil discovery reaches its zenith after indictments are returned and the criminal trial approaches, as here, because that is when the criminal defendants' interests are most in jeopardy. *See In re Adelphia*, 2003 WL 22358819, at *3; *accord Med. Inv. Co*, 2014 WL 2452193 at *2 (granting post-indictment stay; the "strongest case for a stay" in a civil case "occurs during a criminal prosecution after an indictment is returned").

**III.     Compelling Public Interests Support Continuing the Stay**

The limited stay also remains necessary to protect the public's important interest in maintaining the integrity of criminal investigations and prosecutions.  "[T]he federal government's interest in proceeding with its criminal action [is] paramount"—even when a civil plaintiff is a public official "acting on behalf of the citizens." *Kaiser v. Stewart*, 1997 WL 66186 at *4 (E.D. Pa. Feb. 6, 1997).  Continuing the limited stay in this case would protect that vital interest "by allowing the underlying criminal matter to come to a complete, unimpeded conclusion." *Med. Inv. Co.*, 2014 WL 2452193, at *4.  By contrast, permitting depositions of criminal trial witnesses and/or discovery about the United States' criminal investigation would harm this compelling public interest in at least two separate and independent ways.

*First*, "[t]he scope of discovery in a criminal action is substantially more limited" than in a civil action. *SEC v. Mersky*, 1994 WL 22305, at *4 (E.D. Pa. Jan. 25, 1994).  For example, "a criminal defendant may not discover statements or reports by the government's witnesses or prospective witnesses from the government until after a witness has testified for the government on direct examination." *Id.* (citing 18 U.S.C. § 3500). Also, "[t]he Federal Rules of Criminal Procedure do not provide for depositions or interrogatories as the Federal Rules of Civil Procedure do." *Kaiser*, 1997 WL 66186 at *4.

The narrow scope of discovery in criminal cases "is rooted in concerns about possible perjury, manufacture of false evidence and intimidation of confidential informants"—concerns that lie at the core of a criminal prosecution's integrity. *Mersky*, 1994 WL 22305, at *5. Accordingly, "[t]he United States' interest in preventing the defendants from circumventing the limited discovery available in the criminal proceeding is substantial." *Id*. at *4; *see also Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

The prospect of these harms is especially acute with respect to Plaintiffs' efforts to depose the nine individuals whose testimony the United States intends to rely on to meet its burden of proof in the criminal prosecutions. In addition to the significant concerns related to possible perjury, manufacture of false evidence and intimidation of confidential informants— "danger[s]" that are "inherent," *see Mersky,* 1994 WL 22305, at *4—permitting depositions of the nine individuals would essentially give the three criminal defendants early access to sensitive information that they ordinarily would not receive until trial, including the likely trial testimony of the United States' cooperating witnesses. The Declaration of Emma Burnham, the Acting Chief of the Washington Criminal I Section of the DOJ Antitrust Division, which is being submitted to the Court *ex parte* and *in camera*, identifies the critical role or roles these nine individuals are likely to play in the Government's criminal prosecutions and explains why depositions of these individuals would seriously and irreparably harm the United States' prosecutions. *See* Decl. of Emma Burnham (July 29, 2022) ("Burnham Decl.").

*Second*, permitting discovery into the inner workings of the United States' criminal investigation would cause serious and irreparable harm to the Government's pending and future criminal investigations, including by revealing law enforcement methods, disclosing witness statements to future interview subjects, and violating the secrecy of grand jury proceedings. *See* ECF No. 2177 (describing harms in more detail). For example, allowing depositions of cooperating witnesses—or discovery about communications between witnesses and law enforcement—risks direct and indirect disclosure of grand jury material and law enforcement methods. *See, e.g.*, *See* Fed. R. Crim. P. 6(e) (secrecy of grand jury proceedings); *In re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982) (maintaining the secrecy of "anything which may reveal what occurred before the grand jury" is critical "to preserve the freedom and integrity of the deliberative process"); *G-69 v. Degnan*, 130 F.R.D. 339, 348 (D.N.J. 1990) (files that "would contain indications of law enforcement methods . . . should remain confidential to protect their effectiveness"); *see also* Burnham Decl. ¶¶ 11, 12, 14, 27, 46, 56, 57, 61, 67, 78. Plaintiffs have made clear that this is exactly the type of discovery that they intend to seek if the stay were lifted. *See*, *e.g.*, ECF No. 2154 at 6-7 (Plaintiffs want to "ask . . . witnesses about their conversations with federal investigators" and "admissions to federal investigators"); ECF No. 2178 at 7 (Plaintiffs want to question witnesses about federal law enforcement seizure and processing of evidence); *id.* at 8 (Plaintiffs intend to seek discovery about witness statements to FBI agents and grand jury testimony). To avoid such harms from disclosure, "[c]ivil discovery must be narrowed to ensure grand jury secrecy and to safeguard against unjustified disclosures." *Kaiser*, 1997 WL 66186 at *5.

Without the limited stay sought by this Motion, Plaintiffs would seek discovery as to what witnesses told law enforcement or what law enforcement told those witnesses—or about

law enforcement investigative methods more generally. Such discovery would reveal details about law enforcement's investigatory approach, including lines of questioning and methods of locating, obtaining, or processing evidence, which future interview subjects or targets of criminal investigations could use to impede federal law enforcement. This risk is concrete and ongoing. As discussed in a separate submission, the United States continues to pursue interviews in its ongoing criminal investigation. *See* ECF No. 2177, at 2-3. Disclosure in this MDL of the contents of prior interviews would allow future interview subjects to anticipate interview topics and questions, align their statements with prior statements of other witnesses, or otherwise use the contents of prior interviews to impede the Government's investigation.

No public interest comes close to outweighing the risk of the irreparable harm that would result from denying the Government's request for a limited stay. The Court has observed that "[t]here is a strong public interest in keeping the MDL schedule on track," PTO 200 at 3, but that is not a reason to deny the Government the limited stay it needs, for three reasons.

*First*, the Government's criminal cases and the civil claims in this MDL vindicate the same public interests in different ways, and therefore the civil claims have no superior claim to the public interest. *See, e.g.*, *Med. Inv. Co.*, 2014 WL 2452193, at *4 ("the criminal prosecution will serve to advance the public interests at stake here [in an overlapping civil case]."); *In re Adelphia*, 2003 WL 22358819, at *6 ("the related criminal proceedings serve to advance those same interests" as enforcing the law in a civil action).

*Second*, the limited stay needed to protect the Government's criminal cases and ongoing criminal investigation need not necessarily prevent the MDL from staying "on track." Staying nine depositions and prohibiting a narrow category of discovery about the inner workings of the Government's criminal investigation would still leave Plaintiffs access to copious amounts of

documentary and deposition evidence they can marshal in support of their claims. And if the judge overseeing the criminal cases sets a trial date as the United Sates has requested, the stayed depositions may be able to proceed before other important bellwether deadlines.

*Third*, even insofar as the limited stay sought herein might create an irreconcilable conflict with the "public interest in keeping the MDL schedule on track," PTO 200 at 3, the only appropriate way to resolve such a conflict is in favor of the criminal proceeding because, in criminal proceedings, "the stakes are higher." *Mitchell v. United States*, 526 U.S. 314, 328 (1999). As Judge Wisdom rightly observed sixty years ago, when civil litigation and a criminal prosecution are in conflict, "[a]dministrative policy gives priority to the public interest in law enforcement." *Campbell*, 307 F.2d at 487. *See also, e.g., Kaiser*, 1997 WL 66186 at *4 ("While a civil litigant with a private dispute has an interest in the prompt disposition of his or her claims, the public has a greater interest in enforcement of the criminal law."); *cf. United States v. Pelullo*, 14 F.3d 881, 893 (3d Cir. 1994) (the interests at stake in a criminal case are "paramount" and "take[] priority over the usual concerns for efficient judicial administration so often found in civil proceedings"). Plaintiffs themselves have conceded to the judge overseeing the criminal cases that they "must wait" for the criminal trials to conclude before they can "recover the losses they suffered."[6] Plaintiffs' interest in pursuing unfettered civil discovery cannot outweigh the Government's interest in maintaining the integrity of criminal prosecutions.

Moreover, it is vital to retain the provision of the current stay order that halts disputed discovery until the United States' objections have been resolved. *See* PTO 200 ¶ 7. Absent that protection, Plaintiffs could proceed with discovery that causes irreparable damage to the United States' criminal prosecutions. Courts have long recognized that preserving the status quo

---

[6] *Amicus Curiae* Br. at 6 (June 30, 2021), *Teva/Glenmark*, ECF No. 112-3; *see id.* at 2 ("as long as the criminal case remains unresolved, MDL Plaintiffs will be unable to obtain critical discovery").

pending resolution of the merits is often necessary to avoid irreparable harm. *See* ECF No. 2177 at 2. Also, as a practical matter, removing this protection would create the need for serial emergency motions by the United States to protect its interests, which would impose unnecessary demands on judicial and prosecutorial resources.

## IV.    A Continuation of the Limited Stay Would Not Prejudice Plaintiffs

Continuing the current limited stay—which is exceptionally narrow—would not cause prejudice to Plaintiffs. There are only nine individuals on the deposition stay list, and the proposed subject-matter restrictions are similarly narrow. These restrictions would merely delay the Plaintiffs from obtaining a narrow sliver of discovery and would not deprive Plaintiffs of any evidence needed to prove their bellwether claims.

Mere delay is not prejudice. Courts have recognized potential prejudice from a stay when a plaintiff "demonstrate[s] a particularly unique injury," such as the possibility that, during the stay, evidence or testimony will be lost or assets sought by the lawsuit will be dissipated, or that a party is seeking "an unfair advantage from the stay." *In re Adelphia*, 2003 WL 22358819, at *4.[7] To justify vacatur of a stay protecting a criminal prosecution, a plaintiff must "establish more . . . than simply the right to pursue his case and vindicate his claim expeditiously." *State Farm Mut. Auto. Ins. Co. v. Beckham-Easley*, 2002 WL 31111766, at *3 (E.D. Pa. Sept. 18, 2002) (internal quotations omitted). Here, Plaintiffs' putative interests in taking the stayed depositions on a particular timeline or pursuing discovery about the criminal investigation pale in

---

[7] *See also*, *e.g.*, *Med. Inv. Co*, 2014 WL 2452193, at *3 ("Although the Court is mindful of plaintiffs' desire to resolve this civil litigation expeditiously, the mere fact that additional time will pass does not alone establish prejudice to the plaintiffs." (quotation and alteration marks omitted)); *In re Deriv. Litig.*, 2007 WL 1101276, at *2 (E.D. Pa. Apr. 11, 2007) (no prejudice would result from stay because "the Plaintiffs have articulated no unique injury citing only continued monetary loss and the passage of time").

comparison to the immediate and irreparable harm that would occur if that discovery were permitted.  *See supra* Section III.

The proposed deposition stay is both extremely narrow and temporary—features that minimize or eliminate the risk of any prejudice.  The United States seeks to stay only *nine* depositions, a small fraction of the over 80 depositions the parties have taken or requested thus far or the more than 500 depositions Plaintiffs are permitted to take.  *See* ECF 1688 (PTO 158) at 12.  Moreover, the United States' proposed deposition stay can expire upon the conclusion of the criminal trials, at which point Plaintiffs will be able to depose the individuals at issue with the benefit of their testimony at the criminal trials.  No trial date has yet been set in the criminal cases, but the Government will continue to push for prompt trials, including at the August 9 status conference in *United States v. Aprahamian*.  And if the criminal trials were to extend past the current bellwether fact discovery deadline, the Court could forestall any prejudice by permitting the small number of stayed depositions to be taken later.  For all of these reasons, there is no persuasive reason to believe that the limited deposition stay will risk depriving Plaintiffs of evidence they wish to gather.

Even if, for some reason, the Plaintiffs were unable to take the disputed depositions or unable to use the depositions to support their bellwether claims, Plaintiffs have never established why the nine individuals at issue are necessary to prove their bellwether claims.  They have never established, for example, that the testimony they would elicit from these nine witnesses would be uniquely important to their bellwether claims, such that Plaintiffs could not establish the same facts through documents or the testimony of the hundreds of other witnesses they have at their disposal.  Plaintiffs have only vaguely claimed that certain, unnamed witnesses are "most crucial to Plaintiffs' claims" and "most significant."  ECF No. 1920-1 at 9.  Such vague

assertions fall far short of establishing the kind of "particularly unique injury" that qualifies as prejudice under the governing legal standard. *In re Adelphia*, 2003 WL 22358819, at *4. They also stand in stark contrast to the Burnham Declaration, which demonstrates the critical role these nine individuals will play at the criminal trials.

The proposed stay of discovery into the Government's criminal investigation will also cause no prejudice. Any benefit to Plaintiffs from obtaining such discovery would be incredibly limited. For instance, statements purportedly made by investigators or prosecutors would constitute inadmissible hearsay. *See* Fed. R. Evid. 801(c). A witness's recollection of their unsworn prior statements to investigators would also be inadmissible hearsay. *Id*. Plaintiffs can ask witnesses to testify about underlying events, rather than what they told investigators about those same events.[8] For example, if Plaintiffs believe that "contemporaneous phone records and documents," unavailable at the time of prior interviews, warrant admissions broader than the "narrow admissions" made to investigators years ago, then Plaintiffs can attempt to secure such admissions with the use of their documentary evidence. ECF No. 2178 at 7. They have no need to explore the "narrow admissions" that they do not intend to rely on and that they do not believe reflect the "extent of a witness's conduct." *Id*. The inability to seek inadmissible evidence cannot be cognizable as prejudice.

## V.        The Other Applicable Factors Also Support Continuing to Stay

The three other applicable factors—Defendants' interests, interests of non-parties, and judicial economy—further support continuing the stay of discovery. *See In re Adelphia*, 2003 WL 22358819, at *3-5.

---

[8] Plaintiffs have also indicated that they wish to ask one witness what federal investigators did with his phone after it was seized. ECF No. 2154, at 6-7. Such testimony would be inadmissible speculation, inadmissible hearsay, or both.

*First*, continuing the limited stay will be in the interests of Defendants, especially those defendants that have been indicted and are awaiting trial. As this Court has observed, the indictment of Defendants in this MDL has placed "individual interests at stake," and "[w]hether certain key witnesses can or will be deposed pending the resolution of the criminal case implicates due process concerns." ECF No. 1679 (Memorandum Opinion) at 3. Defendants have consented to prior stays, and continuing the limited deposition stay aligns with the Court's prior order—entered at Defendants' request—staying the deposition of Mr. Aprahamian. PTO 171 at 4-5; *see also* PTO 200 at 4 n.10.

*Second*, because of the overlap between this MDL and the pending criminal cases, resolution of the criminal cases could "moot, clarify, or otherwise affect various contentions in the civil case," such that staying specific categories of discovery in this MDL may avoid unnecessary discovery burdens on defendants or non-parties and/or the unnecessary expenditure of judicial resources. *See Mellon Bank*, 545 F.2d at 873; *see also Mersky*, 1994 WL 22305 at *4 ("[A]ny successful criminal prosecutions may streamline discovery and trial."); *Golden Quality*, 87 F.R.D at 57 ("The mere possibility that a substantial amount of the court's work, if undertaken now, may shortly prove to have been unnecessary, cautions against undue haste in proceeding with this civil action."). Indeed, if this Court protects the criminal cases long enough for the Government to secure convictions, the criminal proceedings may conclusively resolve many of the same issues Plaintiffs seek to explore in the stayed depositions.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court extend the current limited stay order until the conclusion of the criminal trials.

Dated: July 29, 2022                        Respectfully submitted,

_/s/ Arianna Markel_
Matthew R. Huppert
Arianna Markel
U.S. Department of Justice Antitrust Division
450 Fifth Street Northwest
Washington, DC 20530
Tel: (202) 476-0383
matthew.huppert@usdoj.gov
arianna.markel@usdoj.gov

*Counsel for Intervenor United States of America*

## CERTIFICATE OF SERVICE

I, Arianna Markel, hereby certify that I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

/s/ *Arianna Markel*
Arianna Markel
*Counsel for Intervenor United States of America*

Dated:  July 29, 2022