# Exhibit D
# (Filed Under Seal)



OFFICE OF THE ATTORNEY GENERAL
CONNECTICUT

October 7, 2022

Bruce P. Merenstein, Esq.
*Special Discovery Master*
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286

> Re: *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724;
> Response to Certain Defendants' Motion to Compel States to Produce Cooperating
> Witness Communications Without Work-Product Redactions

Dear Special Master Merenstein:

Pursuant to PTO 163, and in anticipation of our telephonic conference on October 11, 2022, the States submit this response to the Defendants' Letter Brief of September 28, 2022 (the "Motion").

## I.      Introduction

The States have fully complied with the Fourth Report and Recommendation (the "Fourth R&R") (ECF 1859) and have, at all times, operated in good faith in doing so.  First, the States have produced all communications with the CWs' counsel through June 10, 2020, which is the filing date of the Dermatology Complaint and the end date that the parties agreed to during the meet and confer process.  Second, contrary to Defendants' assertions, the States did not withhold or redact any "substantive information" from any pre-settlement communications with the CWs on the basis of work product.  Third, the Fourth R&R expressly contemplated the possibility of redactions and the withholding of certain post-settlement communications with the CWs' counsel, which are subject to protection under well-established law.  The States' interpretation of the Fourth R&R is reasonable and made in good faith, and the Defendants' request for attorneys' fees is therefore unwarranted in these circumstances.  For these reasons, the Motion and the request for attorney's fees should be denied.

## II.     Background

The Fourth R&R required the States to produce our pre- and post-settlement communications with the CWs or their counsel.  With regard to *pre-settlement* communications, the Fourth R&R reasoned that "[t]he communication history between the States and the CWs will reveal the path that led to these individuals entering into cooperation agreements with the States. Such information could be relevant to the defendants' attempts to impeach the testimony of these

Bruce P. Merenstein, Esq
Page 2
October 7, 2022

critical witnesses." Fourth R&R at 12 (citation omitted). The Fourth R&R held that with regard to these *pre-settlement* communications, the States had waived work product protection because sharing information with the CWs or their counsel was "inconsistent with keeping it from an adversary." *Id.* at 11 (quoting *In re Chevron Corp.*, 633 F.3d 153, 164-66 (3d Cir. 2011)).

The Fourth R&R expressly acknowledged the States' assertion of work product protection for *post-settlement* communications: "[P]ost-settlement communications might be protected by a common-interest privilege or work-product protection." *Id.* at 11 n.2. Prior to actually reviewing the relevant communications, the States did not know whether the post-settlement communications contained protected work product, so any discussion on this issue would necessarily have been premature. During the subsequent meet and confer sessions, the States clearly reserved the right to invoke work product protection after reviewing the documents.[1]

On May 6, 2022, in accordance with the Fourth R&R, the States produced our pre- and post-settlement communications with the CWs' counsel. The production consisted of 1,516 documents, totaling 11,432 pages and containing substantive communications with the CW's counsel, including pre-settlement negotiations, the dates and times of meetings, and the subject matter of scheduled meetings. As required by the Fourth R&R, the States only redacted material as protected work product in communications that took place after the States reached agreements in principle with the CWs. The States also produced a privilege log listing the documents that the States withheld or redacted for various reasons, including for relevance, work product, or that the information was protected from disclosure under PTO 200.[2]

The States have operated in good faith in asserting our right to work product protection. The Defendants' insinuations that the States are purposefully withholding exculpatory information, improperly influencing "neutral" witnesses, and asserting meritless claims are false and inappropriate. As laid out in further detail below, the States' work product redactions are well-supported by Third Circuit precedent.

## III.    Argument

---

[1]    *See* Email from R. Davis to Defense Counsel (Jan. 18, 2022) (Ex. A); Email from R. Davis to Defense Counsel (Feb. 15, 2022) (Ex. B); Email from C. Miller to Defense Counsel (July 8, 2022) (Ex. C).

[2]    Although Defendants make much of the fact that a number of the States' redactions for work product were not logged on the States' privilege log, the logging of such redactions was not required under the ESI Protocol. *See* PTO 95 at Sections 11.8(c) and 11.8(d) (providing that work product created after 3/2/2016 by the States for either this litigation or the investigation is exempt and need not be logged). Despite not being required to do so, the States did, however, list certain work product redactions on our privilege log where work product was one of the bases for a particular redaction (e.g., if the document was also redacted to comply with PTO 200).

Bruce P. Merenstein, Esq
Page 3
October 7, 2022

### a. The States Are Entitled To Redact Or Withhold Attorney Work Product From Our Post-Settlement Communications with the CWs' Counsel

The work product doctrine protects not just "documents and tangible things," Fed. R. Civ. P. 26(b)(3), but also "interviews" and "correspondence." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The States' post-settlement emails exchanging information with the CWs to prepare our cases for trial is protected work product. These communications are "comparable to participation by a witness in a recorded oral interview or the creation of a written witness statement." *Coma v. United States,* No. 4:19-cv-00286, 2022 U.S. Dist. LEXIS 141662, at *11-14 (M.D. Pa. Aug. 9, 2022).

Whether the communications were sent to or from the CW's counsel is irrelevant to the inquiry. As the *Coma* Court reasoned: "[A] correspondence chain is still produced by counsel's skillful or tactical questioning despite the fact that the witness responds in writing rather than in words . . . . A party should not be disadvantaged with respect to trial preparation simply because counsel used a tangible medium of communication rather than an oral interview." *Id.* at *13-14. *See also Booth v. Galveston Cnty.*, No. 3:18-CV-00104, 2018 U.S. Dist. LEXIS 181063, at *13 (S.D. Tex. Oct. 10, 2018) ("[T]he overwhelming majority of courts recognize that draft declarations, the evolution of those declarations, and communications between witnesses are protected by the work-product doctrine."); *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09-CV-6552T, 2011 U.S. Dist. LEXIS 115948, at *26 (W.D.N.Y. Sep. 29, 2011) (noting that an email from a non-party witness that directly responds to counsel's questioning may qualify for work product protection).[3]

### b. The States' Did Not Waive Work Product Protection In Our Post-Settlement Communications with the CWs' Counsel

The States did not waive work product protections in our discussions with the CWs' counsel because each CW was "not clearly an adversary" in post-settlement communications, and the States took steps to protect the information. *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1431 (3d Cir. 1991). Even presuming that the States and the CWs were "adversaries" at one point in time, ██████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[3]     Defendants are incorrect in stating that non-party witnesses are not entitled to work product protection. Courts in the Eastern District of Pennsylvania have applied work product protection to non-parties' work product "when doing so accords with the purposes of the privilege set out in *Hickman v. Taylor*." *Stanziale v. Career Path Training Corp. (In re Student Fin. Corp.),* 2006 U.S. Dist. LEXIS 86603, at *35 (E.D. Pa. Nov. 29, 2006). *See also EFG BNK AG v. Lincoln Nat'l Life Ins. Co.*, No. 17-2592, 2022 U.S. Dist. LEXIS 53899, at *9 (E.D. Pa. Mar. 25, 2022).

Bruce P. Merenstein, Esq
Page 4
October 7, 2022

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████████████

Nothing in the States' actions shows a "conscious disregard of the possibility that an adversary might obtain the protected materials." *Westinghouse*, 951 F.2d at 1431. District courts in this circuit uniformly agree that, for waiver to apply, there must be serious risk of disclosure to an adversary. *See Utesch v. Lannett Co*., No. 16-5932, 2020 U.S. Dist. LEXIS 232416, at *30 (E.D. Pa. Dec. 9, 2020) ("Express waiver, for instance, generally occurs where a party . . . discloses work product materials in such a way as to enable an adversary to gain access to the information."); *Berry v. Ohio Cas. Ins. Co*., No. 3:14-1262, 2015 U.S. Dist. LEXIS 86053, at *10 (M.D. Pa. July 2, 2015) ("Unlike the attorney-client privilege, disclosure to a third party only waives the work-product privilege if it permits an adversary to gain access to the information."); *Segal v. Strausser Enters*., No. 07-4647, 2012 U.S. Dist. LEXIS 17068, at *11-12 (E.D. Pa. Feb. 10, 2012) ("[I]f the disclosure is either inadvertent or made to a non-adversary, it is appropriate to ask whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials."); *Peerless Heater Co. v. Mestek, Inc*., CIVIL ACTION NO. 98-6532, 1999 U.S. Dist. LEXIS 19105, at *15 (E.D. Pa. Dec. 3, 1999) ("[Plaintiff] has failed to establish that [defendant's] counsel was aware, or should have been aware, of some substantially increased risk that the third-parties would turn over the affidavits to [Plaintiff].").

The Defendants assert that work product protection is waived when it is shared with a "third-party fact witness, with whom the attorney's client lacks a common interest in the outcome of a litigation . . . ." Def.'s Ltr. Br., p. 5. The Defendants are wrong. In *Coma*, 2022 U.S. Dist. LEXIS 141662, at *11, the defendant made the same assertion, stating that "disclosure of any opinion work product to McAllister effected a waiver of any such work-product protection because McAllister and Coma do not share a common interest in this litigation." The court rejected this argument, stating that "in the work-product context, the existence of a shared common interest is simply irrelevant; what matters is whether McAllister and Coma are litigation adversaries." *Id.*

The Defendants' position is not supported by law or by logic. They assert that the only way to prevent waiver of work product protection is to share a common interest with the third-party witness. It does not matter if the third party agreed to preserve confidentiality, in writing or otherwise. It does not matter if the attorneys had a reasonable expectation of privacy. The only thing that matters is whether their legal interests are aligned. If that were true, no government attorney could speak to a cooperating witness without fearing an inevitable disclosure. This conclusion is inconsistent with the basic tenants behind the work product doctrine.

---

4 ██████████████████████████████████████████████████████
███████████████████████████████████████████████

Bruce P. Merenstein, Esq
Page 5
October 7, 2022

    **c.  The Issue of the End Date for the States' Production of CW Communications is Not Ripe for Discussion.**

    In an email dated February 16, 2022, (Ex. E), Defendants stated: "With respect to your plan to use an end date of June 10, 2020 for your search, the end date for Defendants' relevant RFP (No. 64) is April 30, 2021. . . . At this point, however, Defendants are willing to consider moving the end date back as you suggest, subject to a reservation of rights, if that will lead to a resolution of all disputes related to these issues."  The States believed that an informal agreement on the matter had been reached, and produced documents on May 6, 2022 with the end date of June 10, 2020.

    The Defendants first expressed dissatisfaction with the end date of June 10, 2020 in an email dated August 9, 2022 (Ex. F), three months after the States' production.  In response, the States' expressed our confusion about the perceived change in circumstances.  (Ex. G.)  The States did not declare impasse on the issue.  The Defendants did not offer to meet and confer on the issue, or otherwise reply.  Instead, the Defendants filed the instant motion on September 28, 2022 – more than a month after the parties' last communication on this topic.  For these reasons, the States do not believe that the issue is ripe for adjudication.  This dispute would be more appropriately addressed in the context of a meet and confer and, if necessary, expedited mediation.

## IV.  Conclusion

    The States' interpretation of the Fourth R&R is correct and appropriate.  There is no justification for the award of attorney's fees under these circumstances. The Defendants' Motion and request for attorney's fees should be denied.

Bruce P. Merenstein, Esq
Page 6
October 7, 2022

Respectfully submitted,

*/s/ W. Joseph Nielsen*
W. Joseph Nielsen
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-50
Fax: (860) 808-5391
Joseph.Nielsen@ct.gov

**Counsel for the State of Connecticut**

*/s/ Sage LaRue Zitzkat*
Sage LaRue Zitzkat
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-50
Fax: (860) 808-5391
Sage.Zitzkat@ct.gov

**Counsel for the State of Connecticut**

*/s/ Laura Martella*
Laura Martella
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-50
Fax: (860) 808-5391
Laura.Martella@ct.gov

**Counsel for the State of Connecticut**

*/s/ Allison Frisbee*
Allison Frisbee
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-50
Fax: (860) 808-5391
Allison.Frisbee@ct.gov

**Counsel for the State of Connecticut**

Bruce P. Merenstein, Esq.
Page 7
October 7, 2022
Copies via e-mail to:

Special Master David Marion
Special Master Daniel Regard
Attorney Morgan Birch
MDL2724A11DeftsService@troutman.com
MDL2724plaintiffsleadsetc@ag.ny.gov