# Exhibit E



OFFICE OF THE ATTORNEY GENERAL
CONNECTICUT

September 22, 2021

**VIA ELECTRONIC MAIL**
Bruce P. Merenstein, Esq.
*Special Discovery Master*
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286

   Re: *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724;
      Plaintiff States' Opposition to Motion to Compel regarding Settlement
      Communications and Work Product

Dear Special Master Merenstein:

  The States have provided Defendants with: (i) the identities of all their cooperating witnesses ("CWs"), (ii) the States' executed cooperation agreements with each CW, and (iii) every document any CW provided to the States. The States have also produced all their investigatory documents and have detailed for Defendants[1] the facts upon which the States' claims are based and on which the CWs will testify. The Defendants have *at least* the same objective record the States started with.

  The only thing the States have not produced to Defendants is clearly privileged work product (and/or irrelevant): (1) attorney notes of interviews or attorney proffers with the CWs or Defendant Heritage, including notes directly within the context of settlement negotiations; (2) communications by the States with counsel for the CWs; and (3) attorney calendars showing the dates and times of their meetings with CWs or Heritage. These documents are "opinion" attorney work product that go to the heart of how the States investigated and built their law enforcement actions.

  The States' interview notes are comparable in form to the DOJ interview memoranda currently in the possession of some Defendants.[2] Defendants have fought to prevent Plaintiffs from obtaining or *even being allowed to ask for* the DOJ memoranda. Indeed, in a recent filing

---

[1] There are over 430 pages of substantive allegations in the States' Dermatology Complaint detailing the specific facts and involvement of the various CWs. The States' Teva Complaint includes over 340 pages of comparable, but distinct, substantive allegations. These allegations, along with the allegations in the States' "Heritage" Complaint, describe specific facts and documents supporting the States' allegations against the Defendants.

[2] There is a fundamental difference between the notes taken by the States' attorneys of their interviews and/or proffers with CWs and the DOJ interview memoranda. The States are parties to this MDL, and created the notes in anticipation of *this* litigation. The DOJ interview memoranda, in contrast, were created by a third party to this MDL, as part of a separate criminal proceeding. If one side in this MDL has access to them it is only fair that both sides have access. The same argument cannot be made for work product created by the parties in this MDL. Here, the States are not requesting that Defendants provide their work product, including attorney notes, or articulate all facts provided to them by any current or former employees of the Corporate Defendants—but a ruling granting Defendants' Motion to Compel would open the door to such discovery requests.

September 22, 2021
Page 2

related to the DOJ limited stay of discovery, Defendants argued that "it has long been recognized that memoranda prepared by law enforcement personnel purporting to summarize witness interviews are inherently unreliable, biased, one sided and inadmissible." MDL 2724, Dkt. 1816 at 15 & n.13, attached as Exh. A (citing *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, No. CV H-09-3712, 2010 WL 1161412, *3 (S.D. Tex. July 1, 2010) (holding that the nature of DOJ interview memoranda weighs heavily against production) (other citations omitted)).

In that same filing, Defendants highlighted what their strategy might be if they were able to obtain the States' interview notes. Defendants stated that if the DOJ interview memoranda were produced in the MDL, they would be forced "to depose the attorneys and agents who participated in the interviews and authored the Memoranda to demonstrate any omissions, misrepresentations, biases, and errors in the Memoranda." *Id.* at 14, 16 & n14. Here, that would mean depositions of the lead State prosecutors, who primarily engaged with the CWs and their counsel. Defendants should not be allowed to engage in such tactics.

The fact that Defendants are seeking this information through Interrogatory responses—and only "reserve the right" to seek production of memoranda created by the States—does not change anything. The attorneys who participated in the interviews and recorded the "facts" would still be required to certify the Interrogatory responses, opening themselves up to the same risk of deposition that Defendants threatened if the interview notes themselves were produced.

The CWs are former employees of Corporate Defendants. Defendants know who they are, have ready access to the CWs' documents and information, and also have had the States' investigatory documents for years. Defendants are free to examine the CWs, including under oath in depositions, and otherwise conduct their own investigation using the same objective record the States had to build their own case.

A. **Attorney Notes of Interviews with CWs and Heritage, Facts Recorded in Such Interview Notes, and the Dates of Any Such Interviews Are Work Product Because They Reveal State Counsel's Mental Impressions and Investigative Processes.**

Work product can be reflected in "documents and tangible things," Fed. R. Civ. P. 26(b)(3), but also in "interviews . . . correspondence . . . mental impressions, personal beliefs, and countless other tangible and intangible ways . . . ." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Materials that contain "mental impressions, conclusions, opinion, or legal theories of an attorney" are "core" or "opinion" work product, and only discoverable "upon a showing of rare and exceptional circumstances." *In re Cendent Corp. Securities Litigation*, 343 F.3d 658, 662-63 (3d Cir. 2003). Materials prepared in anticipation of litigation are "fact work product," and are discoverable "only upon a showing 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Defendants have not shown – indeed, *on this record* Defendants *cannot* show – any of "the rare and exceptional circumstances" or "substantial need" *required* to justify the production of the States' work product.

The States have produced all non-privileged factual information provided by the CWs and Heritage. Any remaining "facts provided to each [State]," to the extent they exist, will be

September 22, 2021
Page 3

contained in interview notes, memoranda, and the personal recollections of attorneys who conducted the interviews. These materials are opinion work product because they reveal the mental impressions and thought processes of State counsel. *See Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981) ("Forcing an attorney to disclose notes and memoranda of witness's oral statements is particularly disfavored because it tends to reveal the attorney's mental processes."); *In re Grand Jury Investigation,* 599 F.2d 1224, 1231 (3d Cir. 1979) ("Memoranda summarizing oral interviews . . . may indirectly reveal the attorney's mental processes, his opinion work product . . . . such documents will be discoverable only in a rare situation." (quotation marks omitted))*; FTC v. Boehringer Ingelheim Pharm., Inc*., 286 F.R.D. 101, 108 (D.D.C. 2012) ("Where the factual and opinion work product are so intertwined in a document that it is impossible to segregate and disclose the purely factual part, any disclosure would violate the protections afforded by the work product doctrine . . . ."); *In re Linerboard*, 237 F.R.D. at 386 ("[N]otes prepared by an attorney or his agent of oral interviews with witnesses are core work product." (citation omitted)). The notes are opinion work product; the choice of what facts to include divulges thoughts and impressions.

While Defendants claim to seek only "underlying facts," the interrogatories are clearly an effort to reveal counsel's investigative processes. The interrogatories seek "all facts provided," whether relevant to the States' claims or not. Defendants can use this information to determine how counsel "sift[ed] what [they] consider[ed] to be the relevant from the irrelevant facts." *Hickman*, 329 U.S. at 511. Interrogatory 11 seeks "the date(s) on which such person[s] provided [each State] with such facts." This will allow Defendants to build a timeline, tracing the "pattern of investigation and exploration" employed by counsel. *Massachusetts v. First Nat'l Supermarkets, Inc*., 112 F.R.D. 149, 152-54 (D. Mass. 1986). Interrogatory 10 seeks "the dates on which each CW was interviewed either directly, or indirectly through counsel," which will further flesh out Defendants' timeline of the States' investigation. Such facts are not relevant to the claims and potential defenses but would give Defendants insight into the States' trial preparations.

Even if States were able to redact the notes to segregate "fact work product," Defendants have not made the requisite showing of "substantial need" or "undue hardship." Defendants have the identities of the CWs and have made no claim that these witnesses are unavailable for depositions. "[M]ere need for information contained in work product does not establish substantial need for the work product itself." *Peerless Heater Co. v. Mestek, Inc*., CIVIL ACTION NO. 98-6532, 1999 U.S. Dist. LEXIS 19105, at *16-17 (E.D. Pa. Dec. 3, 1999). Nor does a need to refresh faded memories or a desire to conduct more effective cross-examination establish the "substantial need" required to overrule work product protection. *See In re Grand Jury Investigation*, 599 F.2d at 1233 ("[T]he desire to impeach or corroborate a witness's testimony, by itself, [cannot] overcome the protection afforded the interview memoranda."); *United States v. Urban Health Network, Inc*., Civ. No. 91-5976, 1993 U.S. Dist. LEXIS 441, at *12 (E.D. Pa. Jan. 18, 1993) ("[A]ssertions of possibly faded memories . . . cannot suffice to overcome the work product privilege.").

September 22, 2021
Page 4

Additionally, the burden on Plaintiffs of complying with Defendants' discovery requests significantly outweigh any likely benefit. The sheer volume of hours that would be required by the states to identify "all facts provided" and the dates provided, in response to the interrogatories is out of proportion to any potential benefit to the defendants.

Defendants have also failed to establish that the States waived work product protection. *See Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001) (party asserting waiver of work product immunity bears the burden of proof). Waiver of work product protection does not depend on "whether fairness requires disclosure," but on whether there has been a disclosure which "enable[d] an adversary to gain access to the information." *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991). The States have not disclosed their interview notes, memoranda, or recollections to any adversary. They used facts gathered from CWs in their complaints, but that does not allow Defendants to discover how States' counsel gathered or interpreted those facts. No work product protections have been waived.

**B. The States' Communications with CWs Are Protected Work Product and Settlement Communications.**

Communications between attorneys for the States and CWs are work product because they reveal the States' investigative processes and mental impressions of the States' counsel. The Defendants have failed to show any extraordinary or unusual need for the States' work product, given that Defendants may seek discovery from the witnesses themselves. The States did not waive work product protection simply by engaging in settlement negotiations with CWs; and communications occurring after settlements were consummated are clearly protected. *In re Domestic Airline Travel Antitrust Litig.*, __ F. Supp. 3d __, 326 F.R.D. 43 at 45-46 (D.D.C. 2018) (upholding Special Master's recommendation that party should seek facts from percipient witnesses rather than proffers to counsel or "what cooperating witnesses said in strategy sessions").

When a party seeks discovery of settlement communications, that party must "show that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence." *Fid. Fed. Sav. & Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993). *Accord TAKTL, Ltd. Liab. Co. v. IWR,* No. 2:18-CV-01546-DSC, 2020 U.S. Dist. LEXIS 236210, at *3 (W.D. Pa. Dec. 16, 2020). Here, Defendants assert that they need the communications to "test CWs' credibility," "explore whether they have been consistent in their statements over time," and "impeach their testimony with records of inconsistent statements." None of these uses are even permitted under Rule 408. *See* Fed. R. Evid. 408 (prohibiting the use of settlement negotiations to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction").

Defendants do not need the States' work product, the facts contained in attorneys' calendars, or attorney notes prepared in anticipation of litigation in order to prepare their case. Defendants already have the identities of the CWs, the settlement agreements with the CWs, the detailed factual allegations in the Complaints, and all of the documents and phone records that

September 22, 2021
Page 5

form the basis for the States' allegations. Defendants can obtain the "substantial equivalent" of what they seek by preparing for the case themselves.

    Defendants' motion should be denied.


Respectfully submitted,


*/s/ W. Joseph Nielsen*
W. Joseph Nielsen
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Joseph.Nielsen@ct.gov
*Liaison Counsel for the States*


/s/ *Sage LaRue Zitzkat*
Sage LaRue Zitzkat
Assistant Attorney General
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Sage.Zitzkat@ct.gov
*Counsel for the State of Connecticut*

*/s/ Rachel O. Davis*
Rachel O. Davis
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Rachel.Davis@ct.gov
*Counsel for the State of Connecticut*


*/s/ Robert Hubbard*
Robert Hubbard
Assistant Attorney General
Office of the New York State Attorney General
28 Liberty Street
New York, NY 10005
Tel: 212-416-8267 (office) 646-574-0300 (mobile)
Robert.Hubbard@ag.ny.gov
*Counsel for the State of New York*

September 22, 2021
Page 6

Copies via e-mail to:

Special Master David Marion
Special Master Daniel Regard
Attorney Morgan Birch
MDL2724A11DeftsService@troutman.com
MDL2724plaintiffsleadsetc@ag.ny.gov