# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**Case No. 16-md-2724-CMR** |
| **THIS DOCUMENT RELATES TO:** | |
| *ALL ACTIONS* | **HON. CYNTHIA M. RUFE** |

## LUPIN'S OBJECTION TO SPECIAL MASTER DAVID H. MARION'S <u>FOURTEENTH REPORT AND RECOMMENDATION</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION. ........................................................................................................ 1

II.     THE CURSORY 14TH R&R IS NOT ENTITLED TO DEFERENCE. ............................ 2

III.    LUPIN ALREADY PROVIDED EXTENSIVE PRICING TESTIMONY. ..................... 3

IV.     RULE 26 PROTECTIONS AGAINST EXCESSIVE DISCOVERY FULLY
        APPLY TO 30(B)(6) DEPOSITIONS. ...................................................................... 4

        A.      Rule 30(b)(6) Does Not Entitle Plaintiffs to Redundant Testimony. ..................... 4

                1.      The 30(b)(6) Preparation Requirement Does Not Override Rule
                        26(b). ..................................................................................................... 8

                2.      30(b)(6) Testimony is Not "Binding." ..................................................... 9

        B.      Plaintiffs' Have Not Shown a Need for Additional Pricing Testimony. .............. 12

        C.      A 30(b)(6) Deposition Would Be Unduly Burdensome and Prejudicial. ............ 12

V.      THE RELEVANT TIME PERIOD MUST BE TIED TO THE ALLEGATIONS. ......... 14

VI.     CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES[1]

**Page(s)**

CASES

*Apple Inc. v. Samsung Elecs. Co.*,
  2012 WL 1511901 (N.D. Cal. 2012) ........................................................................6

*Bat LLC v. TD Bank, N.A.*,
  2019 WL 13236131 (E.D.N.Y. 2019)................................................................. *passim*

*Bilek v. Nat'l Cong. of Emp's., Inc.*,
  2021 WL 25543 (N.D. Ill. 2021) ............................................................................14

*Buckley v. Clifford Change LLP*,
  2008 WL 11365192 (E.D. Pa. 2008) ........................................................................8

*Cont'l Cas. Co. v. J.M. Huber Corp.*,
  2017 WL 6492492 (D.N.J. 2017) .............................................................................8

*Dongguk Univ. v. Yale Univ.*,
  270 F.R.D. 70 (D. Conn. 2010)................................................................................6

*Fish v. Air & Liquid Sys. Corp.*,
  2017 WL 697663 (D. Md. 2017) ............................................................................15

*Gonzalez v. Molded Acoustical Prod*,
  2013 WL 1234809 (E.D. Pa. 2013) ..........................................................................9

*Gov't Emps. Ins. Co. v. Lenex Servs., Inc.*,
  2018 WL 1368024 (E.D.N.Y. 2018).........................................................................5

*Hatamian v. Advanced Micro Devices, Inc.*,
  2015 WL 7180662 (N.D. Cal. 2015) ......................................................................14

*HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc.*,
  2016 WL 6915301 (D. Nev. 2016) ...........................................................................6

*In re Brinker Data Incident Litig.*,
  337 F.R.D. 424 (M.D. Fla. 2020)...........................................................................14

*In re Loestrin 24 Fe Antitrust Litig.*,
  2017 U.S. Dist. LEXIS 198419 (D.R.I. 2017) .......................................................13

---

[1] Unless otherwise noted, all emphasis added, and internal citations and quotation marks omitted.

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  2009 WL 3443563 (D.D.C. 2009) ........................................................................14

*IQVIA, Inc. & IMS Software Servs., Ltd. v. Veeva Systems, Inc.*,
  2022 WL 17990836 (D.N.J. 2022) .........................................................................2

*Luck v. McMahon*,
  2021 WL 4248887 (D. Conn. 2021) ..................................................................6, 7, 9

*Nippo Corp. v. AMEC Earth & Env'l, Inc.*,
  2009 WL 4798150 (E.D. Pa. 2009) (Rufe, J.) .......................................................7, 9

*Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,
  2022 WL 2671198 (D.N.J. 2022) ...........................................................................8

*Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*,
  40 F. Supp. 3d 437 (E.D. Pa. 2014) ........................................................................9

*Patzer v. Sikorsky Aircraft Corp.*,
  2022 WL 784522 (E.D. Wis. 2022) ...............................................................6, 7, 8, 9

*Prasad v. George Wash. Univ.*,
  323 F.R.D. 88 (D.D.C. 2017) .............................................................................7, 9

*Sandoval v. Midland Funding, LLC*,
  2021 WL 486904 (D.N.J. 2021) ........................................................................5, 12

*Seagen Inc. v. Daiichi Sankyo Co.*,
  2021 WL 3620428 (E.D. Tex. 2021) ......................................................................10

*State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*,
  250 F.R.D. 203 (E.D. Pa. 2008) .............................................................................9

*Sukumar v. Direct Focus, Inc.*,
  349 F. App'x 163 (9th Cir. 2009) ...........................................................................2

*United States v. Silverman*,
  861 F.2d 571 (9th Cir. 1988) .................................................................................3

*Zayed v. Buysee*,
  2011 WL 13239532 (D. Minn. 2011) ....................................................................13

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ........................................................................................ *passim*

Fed. R. Civ. P. 30 ........................................................................................ *passim*

Fed. R. Civ. P. 32 ..............................................................................................11

Fed. R. Civ. P. 36 ................................................................................................................10, 11

Fed. R. Civ. 37 ......................................................................................................................10

Fed. R. Civ. P. 53 ....................................................................................................................2

Fed. R. Civ. P. 72 ....................................................................................................................2

Fed. R. Evid. 801(d)(2) ...........................................................................................................12

## I.        INTRODUCTION.

All good things must come to an end.  That is as true of this litigation as it is of everything else.  So once a party discovers the facts from witnesses who know them, it is time to move on. Plaintiffs and the Special Master think otherwise.  Even though Lupin's Pricing Witnesses thoroughly testified to its pricing practices, policies, and procedures under Rule 30(b)(1), plaintiffs seek to retake those depositions under Rule 30(b)(6).  As the Special Master noted, at its core, this *purely legal dispute* "[e]ssentially … boil[s] down to the significance and interpretation of the … distinctions between" 30(b)(1) and 30(b)(6) depositions.  *See* R&R ¶ I.2.

To crystalize the legal issue, consider a simple hypothetical.  A car is hit by a delivery truck, so there is a corporate defendant and its driver.  The driver is deposed, says the light was green, and spends the remaining 7 hours talking about what happened at the intersection. Afterwards, plaintiff serves a 30(b)(6) notice to the delivery company seeking its position about the same thing.  But there is no more factual testimony to be had because no one else has personal knowledge.  In fact, the same person – the driver – would be the witness in both depositions.  Is the plaintiff nonetheless entitled to that 30(b)(6) deposition?

Rule 26 says "no."  Its Rule of Proportionality applies to all discovery devices, and prohibits cumulative or duplicative discovery.  Plaintiffs, however, say it doesn't apply because differences in Rules 30(b)(1) and 30(b)(6) entitle them to both depositions, even if they involve the *same questions, the same witnesses, and the same answers*.  If they are right, Rule 30(b)(6) repeals Rule 26.  If they are wrong, the Special Master's Recommendation is clearly erroneous.

Resolution of this legal issue resolves the dispute.  For all intents and purposes, the facts here are no different from the hypothetical.  Plaintiffs identify no testimonial gap in the record, despite repeated requests to do so from Lupin and the Special Master.  Nor have they attempted to

rebut Lupin's factual showing – in a 73-page PowerPoint – that any additional testimony would essentially duplicate the four days of testimony by Lupin's three Pricing Witnesses.  *See* Ex. 1.

Nor have plaintiffs rebutted Lupin's showing of burden: namely, the difficulty Lupin will face if it is forced to repeat its Pricing Testimony and port the knowledge of two of its Pricing Witnesses to the third.  The Special Master sidestepped this by adopting the untenable position that there can be no burden in a case this big. But if that were true, calling a case big and unmanageable would become a self-fulfilling prophecy.  The size of this case is why the Court should be ***more*** – not less – vigilant about curbing redundant deposition do overs.

The Court should deny plaintiffs' Letter Motion to Compel.

## II.      THE CURSORY 14TH R&R IS NOT ENTITLED TO DEFERENCE.

Unlike Magistrate decisions under Rule 72, Special Master Reports and Recommendations are reviewed *de novo* and are not entitled to *any* deference.  Fed. R. Civ. P. 53(f)(3); *Sukumar v. Direct Focus, Inc*., 349 F. App'x 163, 165 (9th Cir. 2009) ("the court looks at it fresh with ***no deference or preference in favor of findings of the special master***"); *IQVIA, Inc. & IMS Software Servs., Ltd. v. Veeva Systems, Inc.*, 2022 WL 17990836, *9 (D.N.J. 2022) ("Fed. R. Civ. P. 53's *de novo* standard … require[es] ***no deference.***").

Lack of deference is particularly appropriate here.  The Special Master's 3.5-page R&R is practically devoid of factual or legal analysis.  He addresses only one of the parties' disputes, ignoring the others.  Even as to that, he glosses over many points of contention; fails to recite or summarize the relevant portions of the factual record; and does not grapple with ***any*** of the cases Lupin cited.  Indeed, he effectively abdicated his duty to analyze the core legal issue he identified – the interplay between Rules 26, 30(b)(1), and 30(b)(6) – by asserting that this Court has already "agreed with Plaintiffs' interpretation of the Rules," which is just not true.  *See* R&R ¶ I.4.  For

this reason alone, the Court should "freely consider the matter anew, *as if no decision had been rendered*." *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).

## III.    LUPIN ALREADY PROVIDED EXTENSIVE PRICING TESTIMONY.

Lupin is a relatively small player in this MDL, with only 14 Drugs-at-Issue. *See* Ex. 6.

Three individuals at Lupin are largely responsible for pricing, all of whom plaintiffs deposed.

 ***Robert J. Hoffman*** is the Executive Vice President of Lupin's Commercial Operations.  He was involved in all major strategic commercial decisions, including pricing and bidding activities.  He testified for a full seven hours.

 ***David Berthold*** is Lupin's Senior Vice President of Sales.  He too was involved in all major pricing decisions, with responsibility for interacting with Lupin's customers, obtaining competitive intelligence from customers, and developing customer-specific bidding strategies.  He testified for two full days.

 ***Jason Gensburger*** is Lupin's Senior Director of Financial Analysis.  He was responsible for developing financial models that Lupin used to develop market share and pricing targets, budgets, and plans.  He testified for almost a full day.[2]

Over four full days, Lupin's Pricing Witnesses covered the full range of Pricing Topics, including:

- The roles and responsibilities of those involved in Lupin's price setting process;
- The factors Lupin considered when entering new drug markets;
- The factors Lupin considered when setting prices;
- The rigorous price setting process that Lupin followed in evaluating prices;
- The information Lupin gathered or considered when evaluating prices;
- The sources of market share, pricing, and entry information available to Lupin;
- The financial analyses Lupin prepared when evaluating pricing;
- The process for, and the factors considered in, establishing market share and pricing, forecasts, targets, or assumptions;
- The strategies Lupin followed when setting or changing prices;
- The role of supply, capacity, and cost constraints in setting prices;
- The role of competitive entry, exit, or supply issues in setting prices; and
- The strategy for targeting new customers or defending existing business.

*See* Ex. 1.  Lupin provided this list to plaintiffs, and they never contested it.  *See* Exs. 4, 5 at 3-4.

---

[2] Plaintiffs say these depositions primarily concerned competitor communications.  But plaintiffs also *thoroughly* covered Lupin's practices.  *See* Ex. 1.  Indeed, Mr. Gensburger was only asked about *one* competitor communication. Gensburger Dep. 135:18-135:18.

After taking this testimony, plaintiffs served a 30(b)(6) notice with ten Pricing Topics.  Ex. 8 (Topics 2-6, 8, 9, 11, 14, 15).  But no Pricing Witness professed lack of knowledge.  And there is no hidden stash of knowledge in the company's recesses that has not been brought to the fore.

So plaintiffs resort to mischaracterization instead, describing the wealth of pricing testimony as "general."  Exs. 2 at 3-4, 6.  But that is like calling Mount Everest a molehill.  If the testimony were truly general, plaintiffs could have easily identified testimonial gaps.  This point was not lost on the Special Master.  In a "Perry Mason" moment to close out the argument, he pointedly asked plaintiffs how hard it would be to identify gaps.  A pregnant pause by plaintiffs' lead arguer followed, and a counsel for a different plaintiff jumped to the rescue.  But rather than answer the question, he deflected, saying Lupin should be "sanctioned" for even objecting.  Apparently, asking plaintiffs to establish their prong of the proportionality standard is verboten?  To this day, plaintiffs still have not identified a single gap.  The silence is deafening.

Nor did Lupin rest on plaintiffs' silence.  Instead, we made our own ***unrebutted affirmative showing*** in a 73-page PowerPoint. Ex. 1. Plaintiffs never responded to it and the Special Master never referenced it.   This PowerPoint, which we respectfully urge the Court to examine, demonstrates beyond doubt that any additional pricing testimony would be redundant.

## IV.   RULE 26 PROTECTIONS AGAINST EXCESSIVE DISCOVERY FULLY APPLY TO 30(B)(6) DEPOSITIONS.

The parties' dispute raises a fundamental issue:  Is the purpose of Rule 30(b)(6) to discover the facts or is it to get "binding" admissions to any questions an adversary may want to ask?  If the former, plaintiffs can get the facts, but not over and over again.

### A.   *Rule 30(b)(6) Does Not Entitle Plaintiffs to Redundant Testimony.*

"Rule 30(b)(6) depositions are intended to discover the facts," "not to … re-ask all of the questions a party has previously explored."  *Bat LLC v. TD Bank, N.A.*, 2019 WL 13236131, * 4-

5 (E.D.N.Y. 2019); *Gov't Emps. Ins. Co. v. Lenex Servs., Inc.*, 2018 WL 1368024, *3 (E.D.N.Y. 2018).   A 30(b)(6) deposition is just one of many discovery devices, and was adopted to solve a specific problem.   "The Third Circuit has stated that Rule 30(b)(6)'s purpose is to 'curb the bandying by which officers … of a corporation are deposed in turn but each disclaims knowledge' of relevant facts." *Sandoval v. Midland Funding, LLC*, 2021 WL 486904, *6 (D.N.J. 2021).   If a "Rule 30(b)(6) deposition is granted, it ***must*** align with these purposes."   So, where "the vast majority of topics have been explored with [prior] witnesses," the plaintiff must "articulate with specificity their need for a supplemental deposition." *Id.*; *TD Bank*, 2019 WL 13236131, *5.

This requirement stems from a straight-forward application of Rule 26(b)(1)'s Rule of Proportionality.   That Rule "regulates the discovery obtainable through ***any*** of the discovery devices." Fed. R. Civ. P. 26(b)(1), *1970 Advisory Comm. Notes*.   Since the dawn of the modern discovery era, the Advisory Committee has used Rule 26(b) to tamp down discovery overuse.   In 1983, it "encourage[d] district judges to identify instances of needless discovery and to limit the use of the various discovery devices accordingly," noting that "the spirit of the rules is violated when advocates … use discovery tools as ***tactical weapons rather than to expose the facts***." *Id.*, *1983 Advisory Comm. Notes*.   In 2000, it sought even more "active judicial use" of the Rule's discovery limitations "to control excessive discovery." *Id., 2000 Advisory Comm. Notes*.   Still, problems of excessive discovery persisted, prompting the adoption of the Rule of Proportionality in 2015, which Chief Justice Roberts described as a "big deal" that requires the "entire legal community, including the bench, bar, and legal academy, step up to the challenge of making real change." *See www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf*.

Neither the Special Master nor plaintiffs apply the Rule of Proportionality, though they do not seriously contest its applicability.   Nor can they.   Rule 30 was specifically amended "to reflect

the recognition of proportionality in Rule 26(b)(1)."  Fed. R. Civ. P. 30, *2015 Advisory Comm.*

*Notes.*  There can now be no doubt that the "scope of Rule 30(b)(6) is limited by Rule 26."  *Patzer*

*v. Sikorsky Aircraft Corp.*, 2022 WL 784522, *1 (E.D. Wis. 2022).

        Nor is there merit to the argument the Rule of Proportionality can only be applied to each

discovery device in *isolation*, rather *holistically* across the discovery record.  "Where responsive

information can be provided more accurately and with less burden through one method of

discovery, that method should be used.  ***Duplicative discovery methods should be avoided***."

*HSBC Bank USA, N.A. v. Green Valley Pecos Homeowners Ass'n, Inc.*, 2016 WL 6915301, *6 (D.

Nev. 2016).[3]  This requires the requesting party to "limit the [30(b)(6)] topics to matters that are

***not unreasonably cumulative or duplicative of other discovery***" and to "take into account [their]

ability to … identify percipient witnesses."  *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901,

*3 n.8 (N.D. Cal. 2012); *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) (a "court

may refuse" a 30(b)(6) deposition where information could "be obtained from another source.").

        The Advisory Committee has long endorsed this view, noting that courts should permit a

30(b)(6) deposition if company "officials ***who have not testified … have added information***," but

should issue a "***protective order***" where that is not so.  Fed. R. Civ. P. 30(b)(6), *1970 Advisory*

*Comm. Notes.*  Courts take this to heart.  "Since depositions are inherently time-consuming and

inefficient, they ought to be productive and ***not simply an excuse to seek information that is***

***already known***."  *Luck v. McMahon*, 2021 WL 4248887, *24 (D. Conn. 2021).  In a case squarely

on point, the *Sikorsky* court went into even greater detail:

> "To be prepared to answer questions on this topic, the Rule 30(b)(6) witness would
> have to interview the same witnesses that the defendants already deposed (or read
> the transcripts of those witnesses' depositions).  That is so because the knowledge

---

[3] Courts routinely consider whether discovery would be more efficient from interrogatories instead of documents, RFAs instead of interrogatories, or depositions instead of something else.  Rule 30(b)(6) is not exempt.

of those witnesses is the 'information known or reasonably available to the organization' within the meaning of Rule 30(b)(6).  Thus, ***the Rule 30(b)(6) witness could not provide the defendants with any information that they did not already obtain during the depositions of the individual witnesses***."

2022 WL 784522, at *3; *see also Prasad v. George Wash. Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017) (ordering plaintiff to "revise its 30(b)(6) notice to insure that the 30(b)(6) depositions are meaningful exercises in ascertaining information that has not been previously discovered").

Plaintiffs and the Special Master ignored these authorities.  For his part, the Special Master declined to do his own legal analysis because he felt the Court had already "agreed with Plaintiffs' interpretation of the Rules" in a different, decade-old ***pre-rule-of-proportionality*** case.  R&R ¶ I.4; *see Nippo Corp. v. AMEC Earth & Env'l, Inc.*, 2009 WL 4798150, *4 (E.D. Pa. 2009) (Rufe, J.).  If that is so, it is so.  But we do not believe it is.  In *Nippo*, the defendant sought a 30(b)(6) deposition because "none of [the plaintiff's] employees individually ha[d] sufficient direct knowledge."  This Court allowed the deposition – not to bind the company, noting that "a Rule 30(b)(6) deposition would be an improper vehicle" to ask what is "effectively no different than contention interrogatories" – but because the responding party could only point to the "mere possibility" of repetitive testimony from potential *future* 30(b)(1) depositions.  *Id.* at *3-4.  This dispute could not be further afield, as knowledgeable witnesses ***already*** testified and there has been an affirmative, uncontested showing that there is nothing more to be had.[4]

Plaintiffs, for their part, point to other off-point cases, where – unlike here – the noticed

---

[4] The Special Master also felt that his hands were tied by PTO 158, in which a responding "party *may* designate an individual as a corporate representative … whether or not the individual previously has been deposed … as a fact witness."  *See* R&R ¶ I.4.; PTO 158 ¶ II(B)(4). But PTO 158 is a stipulated case management order, not a litigated resolution to a dispute over the proper scope of Rule 30(b)(6).  The cited provision merely protects the *responding party's* flexibility to designate a witness of its choice; it does not vanquish the Rule of Proportionality.  And far from conferring the right to take duplicative depositions, PTO 158 *limits* that right by requiring *requesting parties* to "use their best efforts to … avoid unnecessary multiple depositions of the same witness."  The Special Master did not cite this, and plaintiffs did not abide by it.

topics were ***not*** adequately covered by prior witnesses.

- In *Cont'l Cas. Co. v. J.M. Huber Corp.*, a 30(b)(6) deposition was needed because "all of the [previously] deposed employees claimed a lack of knowledge or recollection of any information or events relevant to this matter." 2017 WL 6492492, *8 (D.N.J. 2017). Not so here.

- In *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, a 30(b)(6) deposition was permitted because there was no single, current employee who could be deposed, and the only prior deposition of a subsequently-deceased person occurred 10 years earlier in a different case before the relevant documents were produced. 2022 WL 2671198 (D.N.J. 2022). Not so here.

- In *Buckley v. Clifford Change LLP*, the court allowed a *non-duplicative* deposition, but declined to permit *duplicative* testimony if the prior testimony was designated *post hoc* under Rule 30(b)(6), which, as noted below, is meaningless and not recognized by Rule. 2008 WL 11365192 (E.D. Pa. 2008).

With the case law this clear, the Special Master and plaintiffs resorted to a different argument. Rule 30(b)(6), they say, is a different animal: Its "preparation requirement" and its supposed "binding" nature entitles them deposition do-overs as a *matter of law*. They are wrong.

### 1.     The 30(b)(6) Preparation Requirement Does Not Override Rule 26(b).

The Special Master concluded that a 30(b)(6) deposition cannot be cumulative or duplicative of a 30(b)(1) deposition because the former requires advance preparation while the latter is limited to the witness's "personal knowledge." *See* R&R ¶ I.3. This distinction might be relevant *if* there was any *difference* between percipient witness and corporate knowledge. Indeed, the Rule exists to bridge that gap. *See* Fed. R. Civ. P. 30(b)(6), 2020 Advisory Comm. Notes. But plaintiffs never claimed that Lupin's Pricing Witnesses lacked knowledge.

Where, as here, the information known to a percipient witness and corporate designee is identical, the preparation requirement is meaningless, because "the knowledge of those witnesses is the information known or reasonably available to the organization." *Sikorsky*, 2022 WL 784522, at *3. Returning to the car crash hypo, no amount of "preparation" by the delivery service would imbue the driver with more knowledge when testifying as a corporate representative than as a real

person.  As such, plaintiffs cannot find solace in Rule 30(b)(6)'s preparation requirement.

### 2.      30(b)(6) Testimony is Not "Binding."

Unable to identify testimonial gaps, plaintiffs and the Special Master assert that duplicative testimony is warranted because an organization will be "bound by that testimony."  R&R ¶ I.3. "But *this is not the function of Rule 30(b)(6)*."  *Sikorsky*, 2022 WL 784522, at *3.  And so, the Rule is "an improper vehicle" to achieve this goal.  *Nippo*, 2009 WL 4798150, at *3.  "If [plaintiffs] wish to know [Lupin's] position on whether it is bound by the knowledge of the remembering witnesses," they would need to "serve a contention interrogatory or a request for admission, which are the proper ways" to bind a party to the record.  *Sikorsky*, 2022 WL 784522, at *3.

While "the testimony of the Rule 30(b)(6) designee is deemed to be the testimony of the corporation itself," it "is not a judicial admission absolutely binding on that party."  *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 212-13 (E.D. Pa. 2008) (quoting 8A Wright & Miller, *Federal Practice and Procedure* § 2103 (Supp. 2007)).  Rather, "Rule 30(b)(6) deposition [testimony] is evidence which, like any other deposition testimony, can be *contradicted*."  *Id.*; *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 451 (E.D. Pa. 2014) (denying motion "to strike trial testimony … that contradicted, supplemented and expanded upon" 30(b)(6) testimony); *Gonzalez v. Molded Acoustical Prod*, 2013 WL 1234809, *2 (E.D. Pa. 2013) (rejecting argument that 30(b)(6) "testimony may not be controverted").

Because "testimony of [a] Rule 30(b)(6) witness is not a judicial admission," it is "not appropriate … to use a 30(b)(6) deposition as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced."  *Sikorsky*, 2022 WL 784522, at *3; *Prasad*, 323 F.R.D. at 99 ("Rule 30(b)(6) is *abused* where [it] is … duplicative of the discovery already provided); *Luck*, 2021 WL 4248887, at *24 (rejecting argument that "testimony of individual deponents is insufficient because they do not speak for" the defendant).

*Seagen Inc. v. Daiichi Sankyo Co.*, 2021 WL 3620428 (E.D. Tex. 2021), illustrates the distinction between the proper use of the Rule to discover facts and its improper use to try to bind a party to evidence already in the record.  There, plaintiffs sought 30(b)(6) testimony about declarations submitted by the defendant's employee and other non-parties.  The parties agreed the employee declarant could be cross examined for the first and only time under Rule 30(b)(6).  But as to the non-employee declarations, the court rejected plaintiffs' attempt to depose **both** the declarants under 30(b)(1) and the defendant under 30(b)(6), explaining that "it would be unnecessary and duplicative (in the least) for [defendant's] corporate representative to testify about facts [already] contained in declarations of [a] non-party['s] employees." *Id.* at *3.  A different result would have obtained if Rule 30(b)(6) could bind a party, rather than discover facts.

Nor does Rule 30(b)(6) say anything about binding a party.  Indeed, the Rule applies to both party and *non-party* corporate depositions, and the latter is not bound by anything.  Where the Rules make discovery responses binding, they do so expressly.  RFAs are the quintessential example, as "a matter admitted under [that] rule is conclusively established." Fed. R. Civ. P. 36(b).  But Rule 36 also provides many procedural protections to the admitting party: for example, requiring 30-days' advance notice of the specific points for which a binding admission is sought to allow time for "reasonable inquiry" before responding; conferring the right to object (and seek a ruling) before providing an answer; and allowing counsel to be involved in the response.[5]

---

[5] In that regard, a claim of "lack of knowledge" operates as a "denial," but does not "bind" the company in the sense that it is precluded from later introducing contrary evidence.  This is the *opposite* of Rule 30(b)(6), where some courts suggest that a company might be bound by witnesses who disclaim knowledge.  But that is just a way to enforce Rule 30(b)(6)'s preparation requirement, not a way to bind a party to every word its designee utters.  Since nothing in the Rule *automatically* binds the organization to that testimony, a showing of bad faith and a separate order under Rule 37 would be required to exclude contradictory evidence at trial.  As such, the Rule provides no basis to compel further 30(b)(6) testimony after fact witnesses have already testified.  *TD Bank* demonstrates this.  There, the court "was not inclined to allow further 30(b)(6) depositions" "[g]iven that Plaintiff seeks information about a variety of topics that have already been addressed in prior depositions."  But because "there were a significant number of answers given by the prior witnesses indicating that they did not know the answer to the question," the court required the defendant to

In contrast, treating 30(b)(6) testimony as "binding" would prejudice Lupin by turning a deposition into a series of unlimited RFAs to be answered *on the fly* with none of the Rule 36 protections.  This puts Lupin in an untenable position.  All three Pricing Witnesses had relevant, overlapping knowledge.  Is Lupin supposed to make all three available for do-over depositions?  If Lupin picks one, is it supposed to port the knowledge of the other two to the designee on pain of being "bound" by any mistakes in that knowledge transfer?  And what happens if a percipient witness's testimony differs from a designee's testimony?  Is Lupin "bound" by the former, the latter, neither, or both?

Perhaps recognizing these issues, plaintiffs say they are not seeking to bind Lupin, but to enhance the admissibility of the evidence.  Rule 32, they note, allows a Rule 30(b)(6) deposition to be "use[d] for any purpose" permitted by the Rules of Evidence, while low-level 30(b)(1) testimony gets "any use" treatment only if the witness is "unavailable."  Fed. R. Civ. P. 32(a)(3), (4).  But in deciding whether additional testimony is proportional, this distinction is without difference.  Rule 32 is a trial management tool, expressing a preference for live testimony over videotape.  It does not change substantive rights.  If the lower-level employee is available to testify at trial, the same testimony can be elicited then, without the need for a prior *de bene esse* (or trial preservation) deposition under the guise of Rule 30(b)(6).  If the lower-level employee is unavailable, there is *no difference* in treatment.  Either way, plaintiffs do not need to redepose Lupin's Pricing Witnesses to use their testimony at trial.

Alternatively, plaintiffs speculate that there might be a difference in admissibility under the Rules of Evidence.  A 30(b)(6) deposition, they argue, is an "admission of a party opponent"

---

certify that the answers were complete.  2019 WL 13236131, at *6.  Here, Lupin's Pricing Witnesses did not disclaim knowledge about Lupin's pricing practices, so neither additional testimony, nor a binding certification is appropriate.

excluded from the hearsay rule.  But that is not even a distinction.  All of Lupin's 30(b)(1) testimony "was made by [Lupin's] employee[s] on … matter[s] within the scope of [their] relationship … while it existed."  *See* Fed. R. Evid. 801(d)(2).  So as far as the hearsay rule is concerned, there is ***no difference*** between 30(b)(1) and 30(b)(6) testimony.

For these reasons, Plaintiffs are not entitled to duplicative or cumulative testimony based on any perceived differences between Rules 30(b)(1) and 30(b)(6).

> **B.** ***Plaintiffs Have Not Shown a Need for Additional Pricing Testimony.***

Plaintiffs declined every invitation to identify gaps in the factual record, either because they can't or they don't want to set a precedent in their dealings with *other* defendants (a point plaintiffs' counsel made during argument).  The furthest they go is to say they may tweak a few questions in some unspecified way.  This was enough for the Special Master.  "Plaintiffs … assure us," he said, "that their questions would have been different had the depositions been taken under Rule 30(b)(6)."  R&R ¶ I.5.  But an unsupported promise is a far cry from showing need for additional testimony.  It certainly does not rebut Lupin's unrebutted ***factual*** showing.  Under Rule 26(b)(1), "[a] party claiming that a request is important to resolve the issues" has the burden of showing need, and must "be able to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26, 2015 *Advisory Comm. Notes*; *Sandoval*, 2021 WL 486904; *TD Bank*, 2019 WL 13236131.  Plaintiffs do not satisfy that burden.

> **C.** ***A 30(b)(6) Deposition Would Be Unduly Burdensome and Prejudicial.***

In its letter brief to the Special Master, Lupin explained that it would suffer undue burden and potential prejudice if it had to provide additional pricing testimony under Rule 30(b)(6).  Ex. 3.  Each Pricing Witness has different, though overlapping, information.  This creates a quandary if Lupin must provide a corporate designee on the Pricing Topics.  It must either make all three witnesses available again to provide the same testimony, or it must select one and transfer the

knowledge of the other two into the designee's brain.  The potential for errors or conflicts abound, and the burden of attempting it is unreasonable, at least where – as here – the facts are already in the record.  *Zayed v. Buysee*, 2011 WL 13239532, *5 (D. Minn. 2011) ("In light of the fact that most – if not all – of the information sought by Respondents … has already been disclosed, the Court finds that the burden of such a [30(b)(6)] deposition outweighs its likely benefit.").

The Special Master whisked Lupin's burden concerns away.  First, he announced an extraordinary and inherently unreasonable rule that there can be no burden in a case this big.  "Given the multiplicity of parties, issues, claims, attorneys, attorneys general, drugs, overarching and other alleged conspiracies and huge damages allegedly involved," he said, "it would be difficult for any party to meet the burden of proving undue burden."  R&R ¶ II.3.  But "consideration of proportionality does not disappear just because the stakes are high."  *In re Loestrin 24 Fe Antitrust Litig.*, 2017 U.S. Dist. LEXIS 198419, *13-15 (D.R.I. 2017).  To the contrary, the bigger the case, the more it should be managed.[6]

The Special Master's claim that the case is too big to consider Lupin's burden and prejudice concerns is also factually flawed.  Plaintiffs only allege a short ***four-year*** conspiracy against Lupin relating to just ***14*** of the 249 MDL drugs.  In weighing burden, the focus should be on how important any additional information would be to resolving these 14 alleged conspiracies, not the MDL as a whole.  Certainly, facts about Lupin's pricing practices will not be more helpful in resolving the entire MDL than in resolving the claims relating to the 14 Lupin Drugs-at-Issue.[7]

---

[6] During argument, plaintiffs argued that requiring them to "meet and confer" with *other* defendants over similar issues would drag out the MDL.  The argument is baseless.  *First*, the Rule expressly imposes the obligation to meet and confer, so it cannot be so easily cast aside.  *Second*, the Lupin meet and confer was efficiently conducted; issues were promptly raised with the Court; and if the Court denies plaintiffs' motion, discovery as to Lupin will be essentially over.  So we are a model for the efficient management of discovery, not the antithesis of it.

[7] Plaintiff's related argument – that unlimited discovery is warranted because they alleged an "overarching conspiracy" – should also be rejected. Ex. 2 at 2.  Not only is the "overarching conspiracy" allegation conclusory, plaintiffs have ***not*** alleged that: (i) Lupin engaged in ***any competitor communication or conduct*** relating to any non-Lupin drug; (ii)

Nor is the Special Master's speculation – that it should be easy for Lupin to produce a "qualified" witness – grounded in fact.  He imagines the existence of some all-knowing person who is *not* one of Lupin's Pricing Witnesses but who knows all they know and more, and who can "[s]urely... be ... prepared" to testify.  R&R ¶ II.3.  But there is no such person, and we have already described the difficulty of having to create an amalgam of the three Pricing Witnesses who know the facts.  Plaintiffs' motion to compel a witness on the Pricing Topics should be denied.

## V.     THE RELEVANT TIME PERIOD MUST BE TIED TO THE ALLEGATIONS.

Though briefed and argued, the Special Master did not mention the parties' dispute over the relevant time period.  Lupin proposed a commonplace approach that should be uncontroversial: tie the relevant period to the allegations against Lupin.  Under Rule 26, relevance is keyed to a "party's claim[s]."  This was Special Master Merenstein's approach.  For document discovery, he started one year before "the first complained-of price increase" or "the first communication" against each defendant, and ended with "filing of the first complaint in the MDL."  Ex. 10 ¶ 1.A.  Lupin took a similar approach, offering a 4.5-year period starting six months before the first Lupin allegation for each Lupin drug, and ending with the MDL complaint.  Exs. 5 at 10, 9 ¶ 7.

Courts universally follow this approach.  *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2009 WL 3443563 (D.D.C. 2009) (limiting discovery relating to competitor meetings to a few months before the alleged conspiracy); *Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 7180662 (N.D. Cal. 2015) (nine months); *In re Brinker Data Incident Litig.*, 337 F.R.D. 424, 425 (M.D. Fla. 2020) (one year); *Bilek v. Nat'l Cong. of Emp's., Inc.*, 2021 WL 25543, *9-10 (N.D. Ill. 2021) (limiting 30(b)(6) notice to the date of the lawsuit).

there was ***any quid pro-quo agreement*** between the 14 Lupin Drugs-at-Issue and any of the 200+ other drugs; or (iii) there was ***any interlinking of supply or demand*** among these discrete drug markets that made success of one alleged conspiracy contingent on the success of another.

Nonetheless, Plaintiffs seek between *8 and 12 years* of testimony, two to three times the alleged conduct period.  That is overbroad because it is not tied to the alleged conduct.  *See Fish v. Air & Liquid Sys. Corp.*, 2017 WL 697663, *7-8 (D. Md. 2017) (limiting 30(b)(6) to time of alleged conduct).  Plaintiffs' only reason for going beyond the conduct period is data.  They say the 30(b)(6) testimony should span as long as the data Lupin produced.  But data is different than facts, as Special Master Merenstein noted in setting a different period for the two.  Ex. 10.  Years of data can be produced with a touch of a button.  But preparing a witness to testify to years of historical fact requires hard work.  Nor is there a need to tie deposition testimony to data, as the parties agreed that data questions will be addressed informally, not through deposition.  Exs. 3 at 3, 7 at 1.

Plaintiffs do not actually dispute this, but say their experts want them to ask "general" questions about the "environment" in non-conduct years.  Ex. 2 at 4.  Accepting this conclusory argument – unsupported by expert declaration, economic treatise, or case – would open a can of worms.  If experts do not have document discovery for this broader period, they don't need deposition testimony either.  So, either *all* discovery has to begin anew, or plaintiffs must live with what they have.  And that is a lot.  Because Lupin is concerned with the burden of preparing witnesses – and is not trying to stop them from testifying about what they already know – it already agreed it would not instruct witnesses not to answer questions outside the conduct period.  That should be enough.[8]

## VI.    CONCLUSION

For the foregoing reasons, plaintiffs' Letter Motion to Compel should be denied.

---

[8] As noted to the Special Master (Ex. 3), plaintiffs' Letter Motion ignored many of Lupin's objections and "near" agreements.  The Special Master did not rule on them, and plaintiffs have not timely objected to the Special Master's failure to address them.  Plaintiffs, therefore, waived opposition to Lupin's objections.

Dated:  January 18, 2023

Respectfully submitted,

/s/ *Colin R. Kass*

Colin R. Kass
Proskauer Rose LLP
1001 Pennsylvania Ave, NW
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-6890
Facsimile: (202) 416-6899
ckass@proskauer.com

Bradley I. Ruskin
David A. Munkittrick
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
bruskin@proskauer.com
dmunkittrick@proskauer.com

Leiv Blad
Meg Slachetka
COMPETITION LAW PARTNERS
1101 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 742-4300
meg@competitionlawpartners.com
leiv@competitionlawpartners.com

*Attorneys for Lupin Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I certify on this 18th day of January 2023, I caused the foregoing to be electronically filed and served through the Court's ECF System.

Dated:  January 18, 2023                                      */s/ Colin R.Kass*
                                                                           Colin R. Kass