IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | HON. CYNTHIA M. RUFE |

**PLAINTIFFS' RESPONSE TO
LUPIN'S OBJECTION TO SPECIAL MASTER DAVID H. MARION'S
FOURTEENTH REPORT AND RECOMMENDATION**

## Table of Contents

INTRODUCTION ...................................................................................................................1

PROCEDURAL BACKGROUND .............................................................................................3

    I.    **Lupin Refused To Produce 30(b)(6) Discovery And Rejected Plaintiffs' Proposed Relevant Time Periods** ....................................................................3

    II.    **Lupin Made The Same Arguments Before the Special Master** ................6

    III.    **The Special Master Issued His R&R After A Full Airing Of The Disputes** ............7

ARGUMENT ........................................................................................................................8

    I.    **The Federal Rules, PTO 158 and Case Law Provide for 30(b)(6) Testimony** ..........8

    II.    **Lupin Advances Demonstrably False Examples of Supposedly Duplicative Testimony** ............................................................................12

    III.    **The R&R Should Be Clarified to Adopt Plaintiffs' Proposed Relevant Time Periods** .......................................................................14

CONCLUSION ...................................................................................................................15

NYDOCS 466121v.1

## Table of Authorities

**Cases**                                                                 **Page(s)**

*Buckley v. Clifford Chance LLP*,
    Civil Action No. 2:06–cv–1003–LDD, 2008 WL 11365192 (E.D. Pa. June 25, 2008) ............ 9

*Cont'l Cas. Co. v. J.M. Huber Corp.*,
    Civil Action No. 13–4298 (CCC), 2017 WL 6492492 (D.N.J. Dec. 19, 2017) ........................ 9

*Heagy v. Burlington Stores, Inc.*,
    No. CV 20-2447, 2021 WL 5399910 (E.D. Pa. Nov. 17, 2021) ............................................... 11

*Josephs v. Harris Corp.*,
    677 F.2d 985 (3d Cir. 1982) ................................................................................................... 12

*Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*,
    Case no. 09-6435 (FLW), 2011 WL 1466369 (D.N.J. Apr. 18, 2011) ............................... 13-14

*Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Env't, Inc.*,
    Civil Action No. 09–cv–0956, 2009 WL 4798150 (E.D. Pa. Dec. 11, 2009) ........................... 9

*Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,
    Civil Action No. 18-11273(MCA)(LDW), 2022 WL 2671198 (D.N.J. July 11, 2022) ............ 9

*P.V. ex rel. Valentin v. Sch. Dist. of Phila.*,
    No. 2:11-cv-04027, 2012 WL 676993 (E.D. Pa. Mar. 1, 2012) ............................................... 11

*Parks, LLC v. Tyson Foods, Inc.*,
    No. 5:15-cv-00946, 2015 WL 5042918 n.7 (E.D. Pa. Aug. 26, 2015) ..................................... 11

*Pepsi-cola Matro. Bottling Co. v. Ins. Co. of N. Am.*,
    Civil No. 10-mc-222, 2011 WL 239655 (E.D. Pa. Jan. 25, 2011) ........................................ 9-10

*Rainey v. Am. Forest & Paper Ass'n, Inc.*,
    26 F. Supp. 2d 82 (D.D.C. 1998) ........................................................................................... 10

*Roesberg v. Johns-Manville Corp.*,
    85 F.R.D. 292 (E.D. Pa. 1980) ............................................................................................... 12

*Smith v. Navient Sols., LLC*,
    CIVIL ACTION NO. 3:17-191, 2018 WL 5846809 (W.D. Pa. Nov. 8, 2018) ................... 9, 12

**Rules**

Fed. R. Civ. P. 11(b)(3) ................................................................................................................. 16

Fed. R. Civ. P. 26(b)(1) ................................................................................................................. 11

NYDOCS 466116v.1

Fed. R. Civ. P. 30(b)(1)..............................................................................................10

Fed. R. Civ. P. 30(b)(6)........................................................................................ passim

Fed. R. Civ. P. 32(a)(3)..............................................................................................10

## INTRODUCTION

Lupin asserts that "[a]ll good things must come to an end."[1] And yet, Lupin itself is presently the primary obstacle to progress in the MDL, because 30b(b)(6) discovery of Defendants has all but ground to a halt as other Defendants await the outcome of Lupin's meritless objections. The Court should break the logjam by promptly overruling Lupin's objections and directing Lupin to designate 30(b)(6) witnesses and provide the discovery that Plaintiffs requested months ago.

Plaintiffs served their notice for 30(b)(6) testimony on September 9, 2022, seeking information about Defendant Lupin's policies, analyses and procedures regarding pricing, costs, bidding, manufacturing capacity/allocation, market conditions, and industry relationships relating to its generic drugs business.  This information is relevant to Plaintiffs' antitrust claims and goes to core elements of proof of liability, class certification, damages and likely defenses. Lupin does not argue otherwise.  Instead, it contends that Plaintiffs already had the opportunity to ask their 30(b)(6) questions at the depositions of three Lupin fact witnesses deposed under Rule 30(b)(1).  Lupin's position – that Plaintiffs could and should have asked these witnesses Plaintiffs' 30(b)(6) questions at their individual depositions – puts the cart before the horse and is counter to case law, Rule 30(b)(6) and PTO 158.  Special Master Marion agreed.

Lupin's Objection to the R&R rehashes the same arguments rejected by the Special Master. Lupin relies heavily on its 73-page presentation, claiming it shows that prior witness depositions already exhausted all pricing-related 30(b)(6) Topics. But that document – riddled with attorney argument (*e.g.*, p. 54), and citing documents no Lupin witness has ever been

---

[1] Lupin's Objection to Special Master David H. Marion's Fourteenth Report and Recommendation (ECF 2331) ("Obj."), at 1.

questioned about (pp. 46, 52, 56) – falls well short of showing that 30(b)(6) topics were "*thoroughly* covered," as Lupin claims (Obj. at 3 n.2) (emphasis in original).  Moreover, Lupin's citations to supposed testimony on pricing-related 30(b)(6) topics are pulled from transcript indices' references to the word "price" and its iterations *See* Ex. 1.[2] That depositions in this price-fixing case would include the word "price" is of no moment and hardly shows duplication.

The three individual 30(b)(1) depositions taken thus far were focused on collusive activity and specific communications and conduct, either on the part of the witnesses or observed by them.  *See* Exs. 10-12. While probative in showing that Lupin employees participated in anticompetitive communications and conduct in furtherance of the alleged conspiracy, the 30(b)(6) deposition will be different.  The 30(b)(6) examination will focus on overall company processes, procedures, analyses and other ways in which Lupin conducted its business during the damages period.  It will support expert analysis of Defendants' conduct and the prevailing market conditions while also probing Defendants' defenses, which blame factors unrelated to the alleged conspiracy for soaring generic drug prices.

Lupin's objection to Plaintiffs' proposed relevant time periods for 30(b)(6) discovery ignores Plaintiffs' allegations and claims for damages.  Plaintiffs have alleged that Lupin and its co-defendants engaged in an overarching conspiracy to fix the prices for hundreds of generic drugs.  Plaintiffs proposed a timeframe for 30(b)(6) discovery that would match Lupin's production of structured data – the sales and other transaction data for the period 2010-2018 that Plaintiffs' experts will use for their work on liability, class certification, impact and damages.  For the two topics relating to pricing and costs of bringing generics to market, Plaintiffs proposed a more expansive timeframe (2010-present) that would allow their experts to conduct

---

[2] References to "Ex.__" are to the exhibits submitted herewith.

2

the econometric analyses necessary to support Plaintiffs' claims for damages, which run through the present—the same timeframe that Defendants themselves proposed for 30(b)(6) depositions of plaintiffs.  Lupin's severely narrowed timeframe is unreasonable and would prejudice Plaintiffs in having no discovery for large swaths of the damages period.

Lupin relies heavily on the so-called "Rule of Proportionality." And yet, nowhere in Lupin's objections (or its ad hominem attacks on Plaintiffs and Special Master Marion) does Lupin weigh the six factors that govern a proportionality analysis. Lupin simply states that a 30(b)(6) deposition requires time and effort, and thus, *ipso facto*, is not proportional. This falls far short of meeting Lupin's burden of establishing that the requested depositions are not proportional to the needs of the case per Rule 26(b). All six factors weigh heavily in favor of the requested discovery.

As Special Master Marion recognized, and Lupin's baseless objections show, "clear guidance" is needed (14th R&R at 4 ¶ 4), including for the many other Defendants currently standing on identical objections concerning the relevant time period.  Lupin's Objection should be overruled and the Special Master's Fourteenth R&R adopted to compel Lupin to provide 30(b)(6) testimony on Plaintiffs' noticed Topics and for their proposed relevant time periods without further delay.

## PROCEDURAL BACKGROUND

### I.     Lupin Refused To Produce 30(b)(6) Discovery And Rejected Plaintiffs' Proposed Relevant Time Periods

In accordance with PTO 158, Plaintiffs served their 30(b)(6) notice upon Lupin over four months ago on September 9, 2022 seeking Lupin's testimony for fifteen topics relating to, *e.g.*, Lupin's supply and other agreements (Topic 1); how Lupin sets prices for generics (Topic 2); Lupin's tracking of competition, demand and other market conditions (Topics 6 and 15); Lupin's

manufacturing capacity/allocation (Topic 7), how and when Lupin bids for generic business

(Topic 9), and costs in bringing generics to market (Topic 10).  *See* Ex. 4.

 In Lupin's response, it refused to produce a 30(b)(6) designee for *any* Topic, objecting

that the requested 30(b)(6) testimony would be "duplicative or cumulative of testimony that has

been provided by, or *could have been elicited from*, previously deposed percipient witnesses."

*See* Ex. 5 at pp. 2, 5 & 8-18 (emphasis added).  It identified in response to Topic 2, which sought

information regarding Lupin's process for generic pricing, pages of citations to the previous

30(b)(1) testimony of David Berthold, Lupin's VP of Sales and claimed "price was discussed"

numerous times.  *Id.* at pp. 6-8.  Lupin also forwarded with its objections its 73-page attorney

presentation that it now urges this Court to review (as it did Special Master Marion).

 After reviewing Lupin's citations, Plaintiffs determined that the vast majority of the

30(b)(1) testimony was focused on specific communications and conspiratorial conduct, and not

the information sought in Plaintiffs' 30(b)(6) Topics. *See* Ex. 2. Mr. Berthold is alleged to have

engaged in numerous communications with Lupin's competitors during the damages period.  *See*

Conn. AG's Compl. in 2:19-cv-02407-CMR, ECF No. 106 ¶ 1063, pp. 307-308 ("between

March 2011 and October 2018, Berthold exchanged at least 4,185 phone calls and text messages

with his contacts at" 13 different Defendants).  In instances where Mr. Berthold was asked about

specific products, markets and pricing, failures of memory were rampant.  *See* Ex. 3.

 Even after Plaintiffs explained that they were seeking corporate testimony of Lupin,

provided clarification of the information sought in each Topic, and assured Lupin that Plaintiffs

would not re-tread old ground, Lupin stood on its objections.  Lupin subsequently proposed that

it would designate a witness for Topics 1, 7 and 10 but only on the condition that Plaintiffs

withdraw their remaining twelve 30(b)(6) topics, apparently conceding that there was no

NYDOCS 466121v.1

testimony touching on any of these three topics from previously deposed witnesses.  When Plaintiffs declined to abandon the twelve topics, Lupin withdrew even its conditional offer.

The parties also could not agree on the relevant timeframe for 30(b)(6) discovery.  For most Topics, Plaintiffs had noticed the 30(b)(6) to cover information from January 2010 through December 2018, the same timeframe for Lupin's production of transaction data.  *See* Ex. 6 (reflecting the parties' March 21, 2021 global transaction data production agreement identifying 2010 start date for Lupin drugs at issue); PTO 139, Exs. A-B.  Plaintiffs' experts will conduct their work based on Lupin's transaction data, as well as other defendants' and third parties', and they require contemporaneous discovery regarding Defendants' business processes and market conditions.  For the two 30(b)(6) topics seeking pricing and cost of goods information (Topics 2 and 10), Plaintiffs requested information from January 2010 to the present, because Plaintiffs seek damages to the present. To model damages through the present and address Defendants' anticipated defenses, their experts require contemporaneous information regarding Defendants' processes and procedures and the market conditions impacting price and costs.

Plaintiffs provided these explanations in meet and confers.  But Lupin objected to Plaintiffs' timeframes and insisted on its artificially narrowed timeframe of "six (6) months prior to the earliest Lupin-specific alleged conduct concerning that Drug at Issue and ending with the date on which the first complaint was filed in this MDL (March 2, 2016)."  Ex. 5 at p. 4.  This, despite that Defendants have demanded Rule 30(b)(6) discovery from plaintiffs from 2008 or 2010 "through the present" for all topics.  *See* Ex. 7 (Defendants' 30(b)(6) notices to 1199SEIU Funds (p.5, ¶ 17), BCBS of La. (p.5, ¶ 18); DC37 (p.5, ¶ 17); Hennepin County (p. 5, ¶ 18), Unite Here Health (p.5, ¶ 19); and Indiana State Police (p.4, ¶ 8)).

NYDOCS 466121v.1

Plaintiffs requested a further meet and confer on November 16, which resulted in impasse on the issues of: 1) whether Lupin would designate any 30(b)(6) witnesses, and 2) whether Lupin would prepare witnesses to provide testimony covering Plaintiffs' proposed timeframes.

## II.   Lupin Made The Same Arguments Before the Special Master

In December 2022, the parties submitted their disputes regarding the designation of 30(b)(6) witnesses and relevant timeframe for 30(b)(6) discovery to Special Master Marion in accordance with PTO 158.  *See* Ex. 8 and Obj. Ex. 3.  Lupin made the same arguments regarding duplication and "proportionality," and claimed that Plaintiffs failed to identify any "gap" in testimony on pricing from 30(b)(1) depositions of three Lupin witnesses, David Berthold, Robert Hoffman and Jason Gensburger.  Contrary to Lupin's claim that Plaintiffs never identified any "gap" in testimony, Plaintiffs explained that the 30(b)(1) testimony "d[id] not describe the company's practices, processes or policies or the other testimony sought in Plaintiffs' notice" and was instead focused on collusive conduct and communications had (or observed) by those particular witnesses with competitors and customers.  Ex. 8 at p. 3.

In their written submissions, Plaintiffs provided an example from Mr. Berthold who testified at his deposition that there was no written protocol for pricing decisions and that they were spread across several individuals and departments.  *Id.* Ex. 10 at 117:9-118:1.  During oral argument before the Special Master, Plaintiffs demonstrated that Lupin's citations to testimony that supposedly was "duplicative" of Plaintiffs' 30(b)(6) topics were in fact mostly about Berthold and other witnesses' conspiratorial communications with competitors.  *See, e.g.,* Ex. 2. (Plaintiffs' detailed rebuttal of Lupin's 73-page presentation).

Plaintiffs explained why the 30(b)(6) testimony they were seeking from Lupin was different and not duplicative or cumulative of the 30(b)(1) testimony, including that the

NYDOCS 466121v.1

testimony was different both as a matter of substance (collusive conduct vs. company policies and procedures) and evidentiary import (individual testimony based solely on personal knowledge vs. corporate testimony).  Plaintiffs also explained that the Fact Deposition Protocol (PTO 158) provides for a separate 30(b)(6) deposition even when designees had been previously deposed:  "A party may designate an individual as a corporate representative for a deposition under Rule 30(b)(6) whether or not the individual previously has been deposed, or may be deposed, as a fact witness."  ECF No. 1688 at p. 6.

With regard to the parties' dispute regarding the relevant time period, Plaintiffs explained that their proposed timeframes were necessary for expert analysis and tethered to the timeframe for Lupin's transaction data production, except for Topics 2 and 10, which necessarily runs "to the present" to coincide with the damages period, just as Defendants' own 30(b)(6) notices do. Ex. 7 at p. 5 of each notice.  Plaintiffs showed that there would be minimal additional effort needed to prepare the witnesses, since the witnesses Lupin said were most knowledgeable served in their positions at Lupin during almost the entirety of the damages period.  Ex. 8 at p. 4.

## III.    The Special Master Issued His R&R After A Full Airing Of The Disputes

On December 22, 2022, Special Master Marion heard nearly two hours of oral argument and probed both sides' positions. As noted in the Fourteenth R&R, "The parties to this dispute have submitted very clear briefs and multiple often lengthy exhibits thereto . . ." and "[t]here was a full discussion of the issues and disputes surrounding the 30(b)(6) depositions."  ECF No. 2310 (14th R&R) p.1, ¶ 1 and p. 3, ¶ 6.  He noted that his attempt to suggest a compromise was unsuccessful and that the parties urged him "to provide clear guidance . . . so that this long-festering controversy can now finally be resolved."  *See id.* at p. 3, ¶ 6.

7

After consideration of the parties' submissions and oral argument, Special Master Marion recommended that Lupin designate witnesses to respond to Plaintiffs' noticed topics and specify which topics each witness will address. *Id.* at p.3, ¶ 1. He also recommended that Plaintiffs eliminate repetition and duplication, for example, by seeking prior 30(b)(1) testimony be designated as 30(b)(6) testimony, an approach that Plaintiffs had already proposed in meet and confers and Lupin rejected. The Special Master also recommended "that Lupin's claim of undue burden be rejected." *Id.* at p. 3, ¶ 3. He expressed his hope that his R&R would "lead to further discussions and possible agreement and resolution" but correctly predicted that "Lupin will object to this R&R." *Id.* at p. 4, ¶ 4. At the Special Master's suggestion, Plaintiffs requested a meet and confer to explore an agreement, but Lupin declined and instead filed its objection.

<u>**ARGUMENT**</u>

## I.     The Federal Rules, PTO 158 and Case Law Provide for 30(b)(6) Testimony

Rule 30(b)(6) provides that corporate parties like Lupin "must designate one or more [persons] who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). Lupin is required to prepare designees to testify on noticed topics: "The persons designated must testify about information known or reasonably available to the organization." *Id.* Courts recognize the fundamental difference between depositions of the company taken under Rule 30(b)(6) and individual depositions under 30(b)(1): "the purpose of a Rule 30(b)(6) deposition is to take the deposition of the corporation or entity. There is a marked difference between testimony of a supervisor or other employee and the testimony of the entity itself, even if that testimony is given through the same employee." *Buckley v. Clifford Chance LLP*, Civil Action No. 2:06–cv–1003–LDD, 2008 WL 11365192, at \*1 (E.D. Pa. June 25, 2008).

8

This Court has explained, "the mere possibility of repetitious testimony is not by itself sufficient" to bar 30(b)(6) testimony. *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Env't, Inc.*, Civil Action No. 09–cv–0956, 2009 WL 4798150, at *4 (E.D. Pa. Dec. 11, 2009) (Rufe, J.); *see also Buckley,* 2008 WL 11365192, at *1 ("[O]verlap between the testimony of [defendant] employees who have already been deposed . . . is an insufficient basis for [defendant] to fail to comply with the requirements of Rule 30(b)(6)"). "Courts have soundly rejected . . . [the] argument that prior deposition testimony from individual fact witnesses relieves a corporation from [] a Rule 30(b)(6) notice." *Cont'l Cas. Co. v. J.M. Huber Corp.*, Civil Action No. 13–4298 (CCC), 2017 WL 6492492, at *9 (D.N.J. Dec. 19, 2017); *see also Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, Civil Action No. 18-11273(MCA)(LDW), 2022 WL 2671198 at *5 (D.N.J. July 11, 2022) (same); *Smith v. Navient Sols., LLC*, CIVIL ACTION NO. 3:17-191, 2018 WL 5846809, at *3 (W.D. Pa. Nov. 8, 2018) (citing *Nippo*) (same).

Plaintiffs have propounded relevant discovery in accordance with the Federal Rules, case law and PTO 158. The discovery sought through the 30(b)(6) vehicle is not duplicative or cumulative of the individual examinations of Lupin witnesses, which were focused overwhelmingly on specific conduct and communications in furtherance of the alleged conspiracy. The 30(b)(6) examination will be focused on Lupin's business practices and procedures and the identification of the analyses, reports and market factors Lupin relies upon in conducting its generics business. The 30(b)(6) testimony elicited will be different both by definition (individual vs. corporate) and substance (individual collusive conduct vs. corporate processes and procedures). *See Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am.*, Civil No. 10-mc-222, 2011 WL 239655, at *4 (E.D. Pa. Jan. 25, 2011) (Rufe, J.) (proposed discovery "neither cumulative nor redundant" where testimony of prior deponent was lacking). There is

also wider latitude in using 30(b)(6) testimony in summary judgment (*e.g.*, to withstand summary judgment based on witness affidavits that contradict the testimony), and trial (*e.g.*, as a party opponent statement). *See Rainey v. Am. Forest & Paper Ass'n, Inc.,* 26 F. Supp. 2d 82, 95 (D.D.C. 1998) (precluding affidavit inconsistent with Rule 30(b)(6) testimony at summary judgment); Fed. R. Civ. P. 32(a)(3) ("An adverse party may use [30(b)(6) testimony] for any purpose" at trial).  This is not the "do-over" Lupin rails against in its papers.

Lupin's real complaint is a fundamental disagreement with the Federal Rules and PTO 158. Federal Rule 30(b)(1) confers a right to depositions of Lupin's percipient witnesses to explore their personal knowledge of facts relevant to Plaintiffs' allegations of widespread collusion. That was the focus of all prior Lupin depositions. Rule 30(b)(6) has equal force but is a different mechanism to obtain Lupin's corporate testimony describing the company's practices and policies. Neither the Rules nor PTO 158 require that these different kinds of depositions occur in a certain sequence, as Lupin seems to suggest. Nor do the Rules or PTO 158 require that a 30(b)(1) and 30(b)(6) deposition of the same person occur at the same time or on consecutive days. The fact remains that PTO 158 expressly contemplates a second, separate 30(b)(6) of the same person "whether or not the individual previously has been deposed." PTO 158 at 6.

Lupin's reliance on "proportionality" is likewise unavailing. It offers an inapposite discussion of the history and purpose of the "Rule of Proportionality," and yet aside from making unsupported claims of burden, Lupin does not address the factors considered by courts in assessing "proportionality" objections.  Weighing those factors dooms Lupin's arguments.

"When assessing the proportionality of discovery requests, the Court will consider 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Heagy v. Burlington Stores, Inc.*, No. CV 20-2447, 2021 WL 5399910, at *2 (E.D. Pa. Nov. 17, 2021) (Rufe, J.) (quoting Fed. R. Civ. P. 26(b)(1)).  Plaintiffs' 30(b)(6) topics seek information for expert and other work to support class certification, liability, impact and damages, all core issues on which Plaintiffs bear the burden of proof; Plaintiffs have claimed that Defendants have overcharged generic drug customers billions of dollars; Lupin has exclusive access to information regarding its business processes and practices; and despite its claim that it is "a relatively small player," Lupin reports that starting in 2017, it had over $1 billion in revenue for its U.S. generics business alone.[3]  There are no proportionality concerns with Plaintiffs' requested discovery.

Lupin's proportionality argument also ignores Plaintiffs' allegations in this MDL. Plaintiffs allege a conspiracy to fix prices on hundreds of generic drugs involving Lupin and dozens of other Defendants.  Dozens of plaintiffs claim that Defendants' anticompetitive conduct has caused billions of dollars in damages from as early as 2009 and continuing through the present.  Lupin ignores the other five "proportionality" factors, and as to the "burden" factor, it falls well short. It makes no showing of specific harm or undue burden, which it must do with affidavits or other evidence.  *See, e.g., Parks, LLC v. Tyson Foods, Inc*., No. 5:15-cv-00946, 2015 WL 5042918, at *8 n.7 (E.D. Pa. Aug. 26, 2015); *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, No. 2:11-cv-04027, 2012 WL 676993, at *1 (E.D. Pa. Mar. 1, 2012); *Roesberg v. Johns-Manville Corp*., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980) (party resisting discovery "must show specifically…how each question is overly broad, burdensome or oppressive, by submitting

---

[3] *See* https://www.lupin.com/US/major-milestones/.

NYDOCS 466121v.1

affidavits or offering evidence revealing the nature of the burden"), *cited with approval by, Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982).

The Special Master recommended that "Lupin's claim of undue burden be rejected." R&R p. 3, ¶ 3.  Given that Lupin made no showing of undue burden either in having to produce 30(b)(6) testimony or preparing witnesses for Plaintiffs' proposed relevant timeframes, that finding was clearly correct and well supported. A 30(b)(6) deposition – only its fourth in this MDL – does not create an undue burden for a defendant of Lupin's size and resources.

Underscoring the extent of its overreach, Lupin only cites cases from outside this jurisdiction.  *See* Obj. at 6 and 7.  Lupin suggests that *Nippo* and *Buckley* are no longer good law because they are "***pre-rule-of-proportionality***" cases and are old. *Id.* at 7 (emphasis in original). But courts in this Circuit uniformly have cited and followed these cases, most recently in, *e.g.*, *Smith v. Navient Sols., LLC*, 2018 WL 5846809, at *3 (W.D. Pa. Nov. 8, 2018) (citing *Nippo*), in their explication of Rule 30(b)(6) law. So did Special Master Marion.  R&R at p. 2, ¶ 4.  In the absence of controlling law in its favor, Lupin snipes at the Special Master and speculates that he "declined to do his own legal analysis." Obj. at 7.  Lupin's proportionality arguments should be rejected.

## II.    Lupin Advances Demonstrably False Examples of Supposedly Duplicative Testimony

Lupin's citations to supposed duplicative testimony do not withstand scrutiny.  In its response to Plaintiffs' 30(b)(6) notice, Lupin cites deposition transcripts where it claims "price was discussed"; but notably its very first citation is to the ***case caption*** on the transcript cover page where "In re Pharmaceuticals *Pricing* Antitrust Litigation" appears.  *See* Ex. 5 at p. 6. Lupin's citations were not based on an analysis of the substance of prior testimony; rather, it merely scanned the transcript index for variations on the word "price," identified where they

appeared, and then claimed "pricing" was "thoroughly covered" in prior depositions. As demonstrated in Exhibit 1, there is almost complete overlap between the deposition transcript indices references to "pricing" or close iterations and Lupin's citation of "duplicative" testimony on pricing.  Not surprisingly, "pricing" has been discussed in every deposition in this MDL.

As for Lupin's 73-page "unrebutted factual showing," it is nothing more than advocacy, containing as much legal argument as it does snippets of testimony cobbled together from multiple deposition transcripts. *See* Ex. 2 (correcting and rebutting Lupin's presentation).  It does not contain the kind of holistic testimony Plaintiffs seek about Lupin's business practices, and it is deficient and/or silent on all 30(b)(6) topics, the majority of which are not directly about pricing.  Moreover, none of the fact witnesses testified concerning the period 2016 to the present. In support of their damages claims, Plaintiffs are entitled to explore whether and how circumstances unique to the post-2016 time period, such as the global COVID pandemic, impacted the generic drug pricing, costs and other market conditions.

Again, the focus of the individual depositions was on the witnesses' own and observed communications and conduct in furtherance of the alleged conspiracy.  *See* Ex. 2 (showing Lupin's citations do not identify testimony re 30(b)(6) topics).  These were also limited to the witnesses' personal knowledge; they were not prepared to testify on behalf of Lupin on Plaintiffs' 30(b)(6) topics as they are required to do.  *See Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.*, Case no. 09-6435 (FLW), 2011 WL 1466369, at *13 (D.N.J. Apr. 18, 2011) ("Rule 30(b)(6) places the burden upon the deponent . . . to prepare [designees] in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters. . . .  The duty of preparation goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use

13

documents, past employees, or other sources to obtain responsive information.") (internal citations and quotes omitted).

For instance, Mr. Berthold testified that there was no written protocol for pricing decisions and that they were spread across several individuals or departments. Ex. 10 at 117:9-118:1. He testified only generally regarding the factors that impact price and said little about how each affects pricing decisions. *Id.* 116:6-117:8. *See* Ex. 2 for additional examples. Unlike Mr. Berthold, a properly prepared 30(b)(6) deponent would be able to describe Lupin's general protocols and practices. At the 30(b)(6) deposition, Plaintiffs intend to explore all factors that impacted price and pricing practices, as well as how those factors impacted price and to what degree. In many instances, Mr. Berthold could not remember or did not know information regarding events he observed or participated in. *See* Ex. 3 (Berthold answering "I don't know" or the like more than 100 times). There were plenty of "gaps" even in his individual testimony.

## III.    The R&R Should Be Clarified to Adopt Plaintiffs' Proposed Relevant Time Periods

Lupin's cursory arguments concerning the relevant time period are meritless. It first cites an earlier recommendation by Special Discovery Master Merenstein, but neglects to attach the superseding operative agreement among the parties. *See* Ex. 9 & PTO 82. That agreement governed discovery of documents ("unstructured data") and transaction data ("structured data"), not 30(b)(6) testimony. Ex. 9 at p. 2  & ¶ 1. Nor did the agreement adopt drug-specific time periods for document discovery, as Lupin suggests. Rather, for each Defendant it established a single discovery time period applicable to all drugs (*id.* at ¶ 1.A), just as Plaintiffs propose a single time period for all 30(b)(6) Topics (2010-2018), except for Topics 2 and 10 (2010-present). Lupin's objections also spar with straw men, as if the only issues that 30(b)(6)

14

testimony should cover are "the alleged conduct" and "data." Obj. at 15. As demonstrated above, far more is relevant, discoverable, and proper subjects of inquiry under Rule 30(b)(6).

While the R&R did not specifically discuss the relevant time period for 30(b)(6) Discovery, the Special Master noted, "there was a full discussion of the issues and disputes surrounding the 30(b)(3) depositions" (14th R&R at p. 3 ¶ 6), rejected Lupin's burden arguments (*id.* at pp. 3-4, ¶ 3), and recommended that Lupin designate witnesses responsive to Plaintiffs' notice. *Id.* p. 3, ¶ 1. Plaintiffs understood that the Special Master's R&R adopted their proposed timeframes, but the lack of specific mention has been cited by Lupin and other Defendants who also assert objections to their noticed relevant time period. Plaintiffs' proposed timeframes are tied to Lupin's structured data productions and the damages period in these matters and are necessary for Plaintiffs' expert work on class certification, impact and damages. For that and the reasons provided above, *supra* pp. 5, 7, Plaintiffs respectfully request that the Court clarify the R&R and so order Plaintiffs' noticed timeframes.

<u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that Special Master Marion's Fourteenth R&R be adopted and clarified to direct Lupin to prepare 30(b)(6) witnesses to testify to Plaintiffs' proposed relevant timeframes for discovery.[4] A proposed Order is attached.

---

[4] Without citation to authority, Lupin suggests that Plaintiffs have "waived opposition" to some other, unspecified objections. Obj. at 15 n.8. Lupin has not moved for a protective order based on any such objections or otherwise availed itself of any process that would limit the scope of Plaintiffs' 30(b)(6) notice. Lupin's "waiver" argument is fanciful at best. Notably, Paragraphs 3 and 4 of Lupin's proposed Order falsely state that Lupin filed a "Cross-Letter Motion for a Protective Order." It did not. *See* Fed. R. Civ. P. 11(b)(3).

NYDOCS 466121v.1

Dated: January 30, 2023

Respectfully submitted,

/s/*Carol S. Harding*
Carol S. Harding
EARP COHN PC
123 South Broad Street, Suite 1030
Philadelphia, PA 19109
215-963-9520
csharding@earpcohn.com

*Counsel for Plaintiff CVS Pharmacy, Inc.*

/s/*Jean Kim*
Jean Kim
CONSTANTINE CANNON LLP
335 Madison Avenue, FL 9
New York, NY  10017
212-350-2700
jkim@constantinecannon.com

*Counsel for Plaintiff CVS Pharmacy, Inc.*

/s/ *W. Joseph Nielsen*
W. Joseph Nielsen
Assistant Attorney General, State of
Connecticut
165 Capitol Ave.
Hartford, CT 06106
860-808-5040
Joseph.Nielsen@ct.gov

*Liaison Counsel for the States*

/s/ *Dianne M. Nast*
Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
215-923-9300
dnast@nastlaw.com

*Lead and Liaison Counsel for the
Direct Purchaser Plaintiffs*

/s/ *Roberta D. Liebenberg*

Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
215-567-6565
rliebenberg@finekaplan.com

*Lead and Liaison Counsel for the
End-Payer Plaintiffs*

/s/ *Jonathan W. Cuneo*

Jonathan W. Cuneo
CUNEO, GILBERT & LADUCA LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
202-789-3960
jonc@cuneolaw.com

*Lead Counsel for the
Indirect Reseller Plaintiffs*

/s/ *William J. Blechman*
William J. Blechman, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
305-373-1000
wblechman@knpa.com

16

*Counsel for the Kroger Direct Actions*
*Plaintiffs and Liaison Counsel for Direct*
*Actions Plaintiffs*

NYDOCS 466121v.1

**<u>CERTIFICATE OF SERVICE</u>**

I certify on this 30th day of January 2023, I caused the foregoing to be electronically filed and served through the Court's ECF System.


Dated: January 30, 2023                                   */s/ Gary C. Reilly*
                                                                   Gary C. Reilly