IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Direct Purchaser Class Plaintiffs' Actions* | MDL NO. 2724<br><br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                                       **March 9, 2023**

Direct Purchaser Class Plaintiffs César Castillo, LLC, FWK Holdings, LLC, Rochester Drug Cooperative, Inc., and KPH Healthcare Services, Inc. a/k/a/ Kenney Drugs, Inc. ("DPPs") seek final approval of settlements with Defendants Sun Pharmaceutical Industries, Inc., and its affiliates Caraco Pharmaceutical Laboratories, Ltd., Mutual Pharmaceutical Company, Inc., and URL Pharma, Inc. (collectively, "Sun") and with Taro Pharmaceuticals, U.S.A., Inc. ("Taro"). Under Federal Rule of Civil Procedure 23(e), the Court held a hearing on March 8, 2023, to determine whether the proposed class-action settlements are "fair, reasonable, and adequate."[1] The Court must: (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlements are fair under Rule 23(e).[2] Preliminarily, the Court finds that Sun and Taro caused timely notice of the settlements and related materials to be sent to the Attorney General of

---

[1] Fed. R. Civ. P. 23(e)(2).

[2] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

the United States and the Attorneys General of all U.S. states, territories, and the District of Columbia pursuant to the Class Action Fairness Act of 2005 ("CAFA").[3] The Court finds that such notification complies fully with the applicable requirements of CAFA.

I.     RULE 23(A)

To certify a class, the Court must determine that the following factors under Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation.[4] The Court preliminarily certified the following settlement class for both settlements:

> All persons or entities, and their successors and assigns, that directly purchased one or more of the Named Generic Drugs from one or more Defendants in the United States and its territories and possessions, at any time during the period from May 1, 2009 until December 31, 2019. Excluded from the Settlement Class are Defendants and their present and former officers, directors, management, employees, subsidiaries, or affiliates, judicial officers and their personnel, and all governmental entities.[5]

Numerosity is satisfied as the settlement class includes more than 700 members geographically dispersed throughout the United States.[6] A single common issue is enough to satisfy the commonality requirement, and typicality is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented."[7] Here, there are common issues of law and fact as to all class members: namely, that they made direct

---

[3] 28 U.S.C. § 1715. *See* MDL Doc. Nos. 2376, 2377.

[4] Fed. R. Civ. P. 23(a). The Court's determinations are based on the particular settlement class currently before the Court; no broader or more general determinations as to the suitability of class actions in the MDL generally have been made.

[5] Order of Preliminary Approval [MDL Doc. No. 2093] at 3.

[6] Am. Decl. of Eric J. Miller [MDL Doc. No. 2383-1]; Order of Preliminary Approval [MDL Doc. No. 2093] at 3. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (more than 40 class members generally satisfies numerosity).

[7] *Baby Neal v. Casey*, 43 F.3d 48, 56–57 (3d Cir. 1994) (citation omitted).

purchases of generic pharmaceuticals that were priced higher than they should have been because of an alleged conspiracy among manufacturers, including Sun and Taro.

Plaintiffs also have demonstrated that "the representative parties will fairly and adequately protect the interests of the class."[8] The named Plaintiffs' interests align with those of other class members. The settlement agreements provide that each of the four class representatives will receive a service award of $20,000 (for a total of $80,000). In the context of the settlement award, the Court finds this a reasonable amount, as the representatives have been actively involved in the prosecution of the case, including through depositions and extensive document production. Class counsel are qualified, experienced, and fully capable of litigating the class members' claims.[9] The representative Plaintiffs, and class counsel, have protected the interests of the class in crafting an adjusted settlement amount that will be allocated on a *pro rata* basis upon the filing of a motion for distribution, which will provide an opportunity for class members to object to the proposed distribution.[10] In addition, Sun and Taro have agreed to provide cooperation to DPPs, which will facilitate the administration of the settlements and will aid the litigation against non-settling Defendants.[11]

---

[8] Fed. R. Civ. P. 23(a)(4).

[9] 391 F.3d 516, 532 (3d Cir. 2004).

[10] Mem. Supp. Mot. to Approve [Doc. No. 2344-1] at 25. The settlement amount was adjusted from $85 million to $75 million based on the aggregate dollar amount of purchases by those opting out of the settlement, but may be adjusted upward by as much as $20 million depending on the Most Favored Nations clauses in the settlement agreements, which apply to future settlements with opt-outs. *Id.* at 6–8. In addition, as discussed below, the settlement will be reduced by expenses and Plaintiffs seek to have 1/3 of the net settlement amount placed in escrow against a future motion for attorneys' fees.

[11] *Id.* at 8–9.

## II.     RULE 23(B)

The settlement class also satisfies at least one of the three requirements listed in Rule 23(b).[12] The Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[13] The alleged collusive conduct by Sun and Taro affected all class members in the same way with regard to the cost of generic pharmaceuticals.[14] Plaintiffs have shown that for the purposes of settlement a class action is a "fair and efficient adjudication of the controversy . . . against those of alternative available methods of adjudication."[15] As directed by Rule 23(b)(3), the Court has considered "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . ."[16]

Although some Plaintiffs are proceeding individually in the MDL, given the complexity of the litigation, 700 individual actions are not likely to be a more desirable way of proceeding, and "[a] class action is therefore superior to other methods of adjudication" in the context of the settlements.[17] The Court therefore certifies the settlement class for purposes of the final settlements.

---

[12] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

[13] Fed. R. Civ. P. 23(b)(3).

[14] *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 262–63 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).

[15] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004) (citations omitted).

[16] Fed. R. Civ. P. 23(b)(3).

[17] *McDermid v. Inovio Pharms., Inc.*, No. 20-1402, 2023 WL 227355, at *3 (E.D. Pa. Jan. 18, 2023) (citations omitted).

As part of the preliminary approval, the Court directed that notice be provided.[18] The notice clearly and concisely stated in plain, easily understood language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."[19] Notice was made through direct mail, through the use of digital banner ads on a website targeted to reach likely direct purchasers, through publication in the *Wall Street Journal*, and through a news release via Business Wire, and with the use of a case-specific toll-free telephone number, email address, and website.[20] The notice complies with the Court's Preliminary Approval Order of May 11, 2022[21] and satisfies the requirements of Rule 23.

## III.     RULE 23(E)

The Court determines that the proposed settlements are "fair, reasonable and adequate."[22] A settlement is fair where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[23] Each of these factors is met. Negotiations occurred at arm's length over more than a year of negotiations and there has been extensive

---

[18] Fed. R. Civ. P. 23(c)(2)(B).

[19] Fed. R. Civ. P. 23(c)(2)(B).

[20] Am. Decl. Eric J. Miller [MDL Doc. No. 2383-1].

[21] MDL Doc. No. 2093.

[22] *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); *see also* Fed. R. Civ. P. 23(e).

[23] *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

discovery in the MDL, enabling class counsel to "develop[ ] enough information about the [litigation] to appreciate sufficiently the value of the claims."[24] Plaintiffs' counsel is experienced and accomplished, and there have been no objections to the settlements.[25] In addition, as required by Rule 23(e)(2), the Court determines that the relief provided to the class is adequate.[26] From the settlement amount of $75 million, each of the two settlement agreements provides for up to $250,000 in reasonable expenses for the administration of the settlements, including the allocation and distribution of the payments to class members.[27] In addition, Plaintiffs' counsel seek reimbursement for past and future common expenses in the amount of $6,300,0000 (in addition to the $500,000 referenced above), and have explained that the majority of those expenses are attributable to fees to expert economists necessary to determine the amounts and the method of distribution. Finally, Plaintiffs' attorneys seek to place one-third of the net settlement fund into escrow to pay attorneys' fees at a later time as counsel do not seek an award of attorneys' fees at this time.[28] Counsel represented at the hearing that the future request for an

---

[24] *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).

[25] DPPs have received requests for exclusion on behalf of 371 entities; however, only 33 of those entities have been identified as potential settlement class members based on data from Sun and Taro. *See* Am. Decl. Eric J. Miller at ¶¶ 16–18. As counsel explained at the hearing, many of the other entities are subsidiaries or other related entities to the 33 purchasers, who likely were excluded to avoid any potential confusion.

[26] Rule 23(e)(2) requires the Court to determine that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

[27] Accordingly, $500,000 has been withdrawn from the settlement fund for such purposes. DPPs' Mem. Supp. Mot. to Approve [MDL Doc. No. 2344-1] at 11.

[28] DPPs' Mot. for Order [MDL Doc. No. 2195]; DPPs' Mem. Supp. Mot. to Approve [MDL Doc. No. 2344-1] at 12.

award will not seek fees in excess of the amount placed in escrow, and that there will be an opportunity for class members to object to the proposed fee award.

The relief the settlements are expected to provide class members is adequate when balanced against "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[29] In addition to the inherent risk to recovery involved in prolonged litigation, continuing through motions regarding class certification, the dismissal of claims, and the exclusion of evidence, as well as potential trials and appeals would only delay any recovery class members may receive.

Rule 23(e)(2)(iv) requires the Court to account for any agreements between the parties required to be identified under Rule 23(e)(3), referring to "any agreement made in connection with the [settlement] proposal."[30] The settlement documents set forth the relevant agreements, including that the settling parties have agreed that Sun's and Taro's sales remain in the MDL for purposes of joint and several liability as to non-settling Defendants to the extent permitted or authorized by law, and that Sun and Taro will provide cooperation, both in terms of effectuating the settlements and providing information to help in the continued litigation against the non-settling Defendants.[31] Counsel represented at the hearing that there are no other operative agreements and that all terms of the settlements are part of the record.[32]

---

[29] Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

[30] Fed. R. Civ. P. 23(e)(3).

[31] DPPs' Mem. Supp. Mot. to Approve [MDL Doc. No. 2344-1] at 2.

[32] At the hearing, counsel represented that had been a confidential side letter but that the terms of that agreement were no longer operative and therefore all terms of the settlements are public.

The final element of Rule 23(e)(2) requires the Court to determine whether the proposal treats the class members equitably relative to each other. As discussed above, the settlement funds will be allocated on a *pro rata* basis, which treats the class members equitably.[33]

## IV.     CONCLUSION

The Court having determined that the settlements are fair and reasonable, and that all applicable requirements have been met, the Court will approve the settlements. Appropriate orders will be entered.

---

[33] In addition to satisfying the standard under Rule 23, the factors set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), also favor settlement. The *Girsh* factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* (citation omitted). These factors generally have been discussed in connection with Rule 23(e). The litigation is extremely complex and, in the absence of settlement, it would likely be several years before all of the claims asserted by DPPs against Sun and Taro are resolved. No class members have objected to the settlements, and potential class members have been able to opt out. There has been extensive motion practice and discovery through which the parties have learned of the claims. Sun and Taro have denied liability, and without settlement, DPPs would be required to litigate issues of liability, damages, and class certification. There remain many other claims asserted against Sun and Taro, and settlement at this time assures a fair payment to the DPPs on their claims against these Defendants. Considering all of the attendant risks of litigation of DPPs' claims, including within the broader context of the MDL, the Court concludes that the settlements are reasonable under the *Girsh* factors.