IN THE UNITED STATES DISTRICT COURT for the
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | |
| *ALL ACTIONS* | |

## MOVANTS-INTERVENORS' BRIEF IN SUPPORT OF MOTION TO INTERVENE FOR LIMITED PURPOSE

Movants-intervenors, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF AGING, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, and COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS, (collectively, "Movants"), by and through their attorneys, Rosenn, Jenkins & Greenwald, LLP, hereby submit the instant Brief in Support of Motion to Intervene ("Motion"), and in support thereof, sets forth the following:

## I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs in the above-captioned matter are a number of States and Commonwealths represented by their respective Attorneys General ("Plaintiff States"). The Plaintiff States include the Commonwealth of Pennsylvania ("Commonwealth"), which is represented generally by the Pennsylvania Office of Attorney General ("OAG").   See generally Pa. Const. art. IV, § 4.1 (designating the Attorney General as "the chief law officer of the Commonwealth" and authorizing the Attorney General to "exercise such powers and perform such duties as may be imposed by law.").   See also *Synthes USA HQ, Inc. v. Commonwealth*, No. 11 MAP 2021, slip op. at 14-15 (Pa. February 22, 2023).  Defendants in the above-captioned matter are corporations and other

41P0737

entities engaged in the sale of pharmaceutical products ("Defendants"). Plaintiff States filed an Amended Complaint on September 9, 2021 alleging, among other things, consumer protection and antitrust claims against Defendants.

Defendants served a series of three Requests for Production of Documents to Plaintiff States between 2018 and 2021. Defendants served a First Set of Requests for Production of Documents to Plaintiff States on or about August 29, 2018, comprising Request Nos. 1 through 56. In addition, certain Defendants served a Second Request for Production of Documents to Plaintiff States on or about October 19, 2019, comprising Request Nos. 57 through 62. Finally, certain Defendants served a Third Set of Requests for Production of Documents to Plaintiff States on or about April 30, 2021, comprising Request Nos. 63 through 68. Defendants' First, Second, and Third Sets of Requests for Production of Documents are hereinafter collectively identified as "Defendants' Requests for Production."

Movants are certain Pennsylvania agencies targeted in Defendants' Requests for Production and include the following: COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES ("Human Services"); COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF AGING ("Aging"); COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS ("Corrections"); and COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS ("Military and Veterans Affairs").

For the purposes of these actions, Human Services includes the following relevant bureaus and offices: (1) Office of Medical Assistance Programs (OMAP) – Bureau of Fee-for-Service Programs (Pharmacy Division) ("OMAP – Pharmacy"); (2) Office of Medical Assistance Programs (OMAP) – Children's Health Insurance Program (CHIP) ("CHIP"); (3) Office of

2

41P0737

Children, Youth and Families – Bureau of Juvenile Justice Services ("BJJS"); (4) Office of Mental Health and Substance Abuse Services – Bureau of Community and Hospital Operations ("OMHSAS"); and (5) Office of Developmental Programs – Bureau of State Operated Facilities ("State Operated Facilities"). For the purposes of these actions, Aging includes the relevant subagency of the Pennsylvania Pharmaceutical Assistance Contract for the Elderly ("PACE").

By its November 17, 2021 Order (Doc. 1875), this Honorable Court determined, over the Commonwealth's objection, that the OAG had the legal authorization under section 208 of the Commonwealth Attorneys Act, 71 P.S. § 732-208, to access the "books and papers of any Commonwealth agency" in the case where the agencies themselves are neither parties nor the subject of the investigation. This Honorable Court also determined in its November 17, 2021 Order, over the Commonwealth's objection, that the OAG represents Pennsylvania agencies pursuant to the Commonwealth Attorneys Act, 71 P.S. § 732-204(c). Movants are non-parties in this proceeding and were unaware of this discovery and, therefore, were not afforded an opportunity to be heard on the issue prior to this Honorable Court's November 17, 2021 Order.

Movants are non-parties which assert no claims in this action and against which no claims have been asserted. To the extent the Court's November 17, 2021 Order found that the OAG represents Movants in this litigation, Movants respectfully assert that, per the Pennsylvania Supreme Court's very recent decision in *Synthes*, supra, the OAG can and, in fact did act independent of the Movants, as is constitutionally permitted. See also 71 P.S. § 732-201. OAG does not bring the present action on behalf of Movants, but instead on behalf of the Commonwealth in its capacity as the chief law officer of the Commonwealth defending the public trust and seeking disgorgement and civil penalties based on Defendants' unjust gains from alleged illegal conduct.

3

While the November 17, 2021 Order held that the OAG has access to the agency records, OAG has neither possession of those records nor necessarily the requisite subject matter expertise to review those records for purposes of identifying and protecting information Movants are required by law to protect from disclosure. Likewise, OAG's ability to access these is not self-executing. Specialists are needed to navigate the various computer and storage systems where these documents currently reside. To the contrary, Movants, as established herein, would be required to gather responsive documents, review and assert statutory restrictions on or assert privileges preventing their release, produce the documents, then defend those assertions, should they be challenged by parties in this matter, including but not limited to the OAG. Therefore, Movants, not the OAG, will be burdened with the task of retrieving and reviewing the documents sought by Defendants so that confidential information may be protected as required by federal and state law.

Movants became aware of this Honorable Court's November 17, 2021 Order and certain others of its Orders at different times. By emails dated November 24, 2021, OAG provided the November 17, 2021 Order to Aging and to Human Services and provided the same Order to Corrections by email on April 13, 2022. See Exhibits "A", "B" and "D" attached to the Motion to Intervene. OAG provided this Honorable Court's following Orders to Aging and to Human Services by email dated January 21, 2022: (1) the September 4, 2018 Pre-Trial Order (Doc. 697); (2) the July 12, 2019 Pre-Trial Order (Doc. 1045); and (3) the February 18, 2021 Pre-Trial Order (Doc. 1691). See Exhibit "C" attached to the Motion to Intervene. OAG provided those same Orders to Corrections by email dated April 13, 2022. See Exhibit "D" attached to the Motion to Intervene.

4

As Movants voluntarily gathered documents and continued open discussions with the OAG to assist in its efforts to comply with this Court's orders, Military and Veterans Affairs was later identified as an agency potentially having documents relevant to the claims made by the OAG. On October 24, 2022, after those discussions led to the determination that Military and Veterans Affairs may have documents relevant to the OAG's claims, Military and Veterans Affairs was provided the following Orders: (1) the September 4, 2018 Pre-Trial Order; (2) the July 12, 2019 Pre-Trial Order; (3) the February 18, 2021 Pre-Trial Order; and (4) the November 17, 2021 Order. See Exhibit "E" attached to the Motion to Intervene

Following this Honorable Court's November 17, 2021 Order, OAG advised Movants (other than Military and Veterans Affairs) of certain categories of discovery requests served upon OAG by Defendants for documents purportedly in the possession of those Movants. At the request of OAG, Movants (other than Military and Veterans Affairs) voluntarily supplied documents responsive to those categories of discovery requests. OAG and Defendants thereafter reached a May 10, 2022 Joint Stipulation, filed May 12, 2022 (Doc. 2096) agreeing to "satisfy Defendants' Request for Production No. 68 by searching for and producing reports, analyses, or studies relating to the price or supply of generic pharmaceutical products" pertaining to materials possessed or created by or for Movants (among others) ("Joint Stipulation"). A copy of the Joint Stipulation was provided to Corrections, Aging, and Human Services on June 16, 2022 by email from OAG. See Exhibit "F" attached to the Motion to Intervene. Military and Veterans Affairs received notice of the Joint Stipulation by email on October 24, 2022 after discussion between Movants and the OAG led to the identification of Military and Veterans Affairs as an agency that may have responsive documents.

41P0737

On May 19, 2022, Defendants filed a Motion to Enforce this Court's Order Compelling the Commonwealth of Pennsylvania to Produce Discovery (Doc. 2112), seeking to compel the Commonwealth to "[s]earch for and produce all non-privileged materials responsive to Defendants' Requests for Production," as well as reasonable attorney's fees ("Defendants' Motion to Enforce"). The Memorandum in Support of Defendants' Motion to Enforce relied upon page 8 of this Honorable Court's November 17, 2021 Order stating, in part, that "Pennsylvania shall produce all discovery documents and data within its possession, custody, or control" to support Defendants' demand that the Commonwealth "produce all discoverable materials responsive to Defendants' RFPs," the extensive breadth of which Defendants identify in Section I of said Memorandum. (Doc. 2112-1, pp. 1, 2, 5-6). On February 8, 2023, this Honorable Court issued an Order (Doc. 2354) granting Defendants' Motion to Enforce to the extent that the Commonwealth shall respond to all discovery requests as required by the Federal Rules of Civil Procedure and denying Defendants' request for attorney's fees ("February 8, 2023 Order").

Movants, despite being non-parties who are not represented by the OAG, have in good faith voluntarily cooperated thus far with OAG regarding certain categories of discovery requests served upon OAG about which OAG has advised Movants. However, the continuing and broad nature of discovery requests in this matter, as exemplified by Defendants' Motion to Enforce granted by this Honorable Court in its February 8, 2023 Order, are increasingly burdensome upon the limited resources of the Movants. In fact, Movants on March 10, 2023 demonstrated further good faith when they voluntarily produced 345 pages of documents in response to the February 8, 2023 Order, in addition to the thousands of pages Movants have already voluntarily produced. The Pennsylvania Supreme Court issued its decision in *Synthes* on February 22, 2023, in which, as

6

discussed more fully below, it held, *inter alia*, that the Commonwealth Attorneys Act provides for the OAG to represent the Commonwealth separate from Commonwealth agencies.

### Commonwealth of Pennsylvania Department of Human Services

Human Services has voluntarily produced 87,922 pages of documents in response to OAG's advising Human Services of those certain categories of discovery requests served upon OAG by Defendants. The already produced 87,922 pages of documents do not include any documents from State Operated Facilities or CHIP. Human Services is not in the possession of any further documents responsive to OAG's advice regarding those certain categories of discovery requests served upon OAG by Defendants, and does not have in its possession any documents responsive to Defendants' Request for Production No. 68. Some documents responsive to Defendants' remaining Requests for Production are in the possession of State Operated Facilities. Human Services is in possession of some further documents responsive to OAG's request to Human Services that it provide certain categories of documents that OAG said would be responsive to the discovery requests served upon OAG by defendants.  Notwithstanding this, the extensive burden upon Human Services' offices and bureaus in responding to Defendants' Requests for Discovery is detailed below.

### OMAP – Pharmacy

OMAP – Pharmacy is staffed by only nine employees, and those nine staff members are the only employees with the necessary level of understanding to properly respond to Defendants' Requests for Production. In the event OMAP – Pharmacy were required to produce documents in response to Defendants' Requests for Production, OMAP – Pharmacy estimates the nine Pharmacy staff employees would incur a collective 180 hours responding to Defendants' Requests for Production at a cost of approximately \$14,895.00. Responding to Defendants' Requests for

7

Production would require a diversion of resources and would place a heavy burden on staff to complete the discovery searches while maintaining normal daily business responsibilities.  The effects of diverting resources may include, but are not limited to: delaying the Pharmacy multiple weeks; delaying prior authorizations leading to recipients experiencing delays in service; and payment delays to providers. See Exhibit "G" attached to the Motion to Intervene.

Moreover, Defendants' Requests for Production encompass materials confidential to both OMAP – Pharmacy as well as third parties. Defendants' Requests for Production include documents in OMAP – Pharmacy's possession that it deems confidential, including Federal drug rebate data pursuant to section 1927 of the Social Security Act. Defendants' Requests for Production also include documents in OMAP – Pharmacy's possession that third parties deem confidential, including drug pricing information obtained via subscription to a third party.  OMAP – Pharmacy will incur the additional burden of expenses and diversion of resources to review responsive confidential documents, designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant, if required to respond to Defendants' Requests for Production. See Exhibit "G" attached to the Motion to Intervene.

**OMAP – CHIP**

Defendants' Requests for Production would require employees of CHIP weeks to coordinate and may interfere with several priority initiatives, including the open enrollment season and efforts to unwind the public health emergency.  In the event CHIP is required to produce

8

41P0737

documents in response to Defendants' Requests for Production, such response would add costs to CHIP's monthly budget at an estimated rate of $101.90 per hour for IT contractors in addition to costs imposed by the Managed Care Organizations' ("MCOs") provision of responsive documents to CHIP. Forty percent (40%) of CHIP staff consists of call center staff that cannot be diverted to other tasks. CHIP and its MCOs have a significant number of applications and renewals to process due to the public health emergency and responding to Defendants' Requests for Production would redirect resources from and delay the processing of those applications and renewals. See Exhibit "H" attached to the Motion to Intervene.

Further, Defendants' Requests for Production potentially include documents in CHIP's possession that CHIP and/or third parties deem confidential. If required to respond to Defendants' Requests for Production, CHIP will incur the additional burden of expenses and diversion of resources to review and designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant. See Exhibit "H" attached to the Motion to Intervene.

**Office of Children, Youth, and Families – Bureau of Juvenile Justice Services**

BJJS provides residential treatment services at five Youth Development Centers and Youth Forestry Camps statewide 24 hours a day, 7 days a week to youth who are adjudicated delinquent. In the event BJJS were required to produce documents in response to Defendants' Requests for Production, BJJS anticipates its employees would require a total of 242 hours to respond to Defendants' Requests for Production. The diversion of employees from their usual tasks would

9

incur a cost of $4,985.00 at regular pay rates. The burden of responding to Defendants' Requests for Production would also require BJJS to institute mandated overtime. Due to an overtime pay rate of 1.5 times an employee's regular pay, BJJS anticipates an additional overtime cost of $3,693.00 would be required to respond to Defendants' Requests for Production. Moreover, mandated overtime would lead to burnout of the small Accounting Department staff that consists of only three employees. See Exhibit "I" attached to the Motion to Intervene.

Defendants' Requests for Production also encompass materials confidential to BJJS as well as potentially to third parties. Defendants' Requests for Production include documents in the possession of BJJS that it deems confidential, including monthly invoices that contain names of residents that would need to be reviewed pursuant to this Honorable Court's Pre-Trial Order No. 53, Pre-Trial Order No. 160, and Pre-Trial Order No. 95. Defendants' Requests for Production also potentially include documents in the possession of BJJS that third parties deem confidential. BJJS will incur the additional burden of expenses and diversion of resources to review responsive confidential documents, designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant, if required to respond to Defendants' Requests for Production. See Exhibit "I" attached to the Motion to Intervene.

**Office of Mental Health and Substance Abuse Services – Bureau of Community and Hospital Operations**

10

OMHSAS operates six State Hospitals as well as the South Mountain Restoration Center and employs 26 pharmacy staff and 15 assistants. In the event OMHSAS were required to produce documents in response to Defendants' Requests for Production, OMHSAS anticipates responding to Defendants' Requests for Production, while ensuring minimal impact upon patient care and medication administration, would require overtime hours at a rate of 1.5 times the employee's regular pay, in addition to potentially two or three additional staff. To answer Defendants' Requests for Production would require a minimum cost of $30.00 per hour for pharmacy assistants and $75.00 per hour for pharmacists, potentially totaling $10,000.00 for each Community and Hospital Operations facility. Further, Defendants' Requests for Production include confidential documents in the possession of OMHSAS, including any documents containing patient information. OMHSAS will incur the additional burden of expenses and diversion of resources to review responsive confidential documents, designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant, if required to respond to Defendants' Requests for Production. See Exhibit "J" attached to the Motion to Intervene.

**Office of Developmental Programs – Bureau of State Operated Facilities**

State Operated Facilities provides residential habilitation services to adults with disabilities 24 hours a day, 7 days a week, and operates four State Centers statewide. In the event State Operated Facilities were required to produce documents in response to Defendants' Requests for Production, such response would divert an estimated 75 State Operated Facilities' employees from

11

their normal duties supporting people who live in the State Centers, at a collective hourly pay of $2,483.55. State Operated Facilities also anticipates it would require a minimum of two additional employees to respond to Defendants' Requests for Production. See Exhibit "K" attached to the Motion to Intervene.

Further, Defendants' Requests for Production potentially include confidential documents in the possession of State Operated Facilities, including any requests that would involve disclosure of protected health information. State Operated Facilities will incur the additional burden of expenses and diversion of resources to review any responsive confidential documents, designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant, if required to respond to Defendants' Requests for Production. See Exhibit "K" attached to the Motion to Intervene.

### Commonwealth Department of Aging

Aging, through its subagency PACE, has voluntarily produced 31 pages of documents in response to OAG's advising Aging of certain categories of discovery requests served upon OAG by Defendants. PACE is not in possession of any further documents responsive to OAG's notification to Aging of those certain categories of discovery requests, and possesses no documents responsive to Defendants' Request for Production No. 68. Further, Defendants' Requests for Production potentially include confidential documents in the possession of Aging, specifically,

12

Pennsylvania Pharmaceutical Assistance Contract for the Elderly Manufacturer Rebate Agreements. See Exhibit "L" attached to the Motion to Intervene.

PACE employs 160 staff members. PACE has already completed a general search for documents responsive to Defendants' Requests for Production at a cost of 20 employee hours and $1,960.00, and if required to produce those documents, PACE will incur the additional burden of expenses and diversion of resources to review and designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant. Any additional discovery in this matter will further increase the burden upon PACE's limited resources. See Exhibit "L" attached to the Motion to Intervene.

### Commonwealth Department of Corrections

Corrections has voluntarily produced 4,542 pages of documents in response to OAG's advising Corrections of certain categories of discovery requests served upon OAG by Defendants, and is not in possession of any further documents responsive to those certain categories of discovery requests. The only documents responsive to Defendants' Request No. 68 that Corrections has not produced comprise Quarterly Reports of Diamond Pharmacy that Diamond Pharmacy, a nonparty to this action, has expressly deemed confidential material. Corrections utilizes Diamond Pharmacy to procure all pharmaceuticals provided to persons incarcerated at or residing at the Corrections facilities, pursuant to the Minnesota Multistate Contracting Alliance

41P0737

for Pharmacy – MMCAP entered into by the Pennsylvania Department of General Services. See Exhibit "M" attached to the Motion to Intervene.

The Corrections Bureau of HealthCare Services employs approximately 20 people at Corrections' Central Office, as well as a Correctional HealthCare Administrator at each of Corrections' 24 State Correctional Institutions, including the Motivational Boot Camp. In the event Corrections were required to produce documents in response to Defendants' Requests for Production, Corrections anticipates at least two additional employees would be necessary to respond to Defendants' Requests for Production at a rate of approximately $31.25 per hour, as well as overtime pay at a rate of 1.5 times the hourly employee rate, for an anticipated cost of $18,750.00. Further resources would be diverted to train, assist, and provide direction to the two additional employees, thereby detracting from the current staff's ability to perform their essential functions of ensuring proper care is provided to the incarcerated people. Corrections will incur the additional burden of expenses and diversion of resources to review any responsive confidential documents, designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant, if required to respond to Defendants' Requests for Production. See Exhibit "M" attached to the Motion to Intervene.

### Commonwealth Department of Military and Veterans Affairs

As a result of Movants' continued attempts to voluntarily identify documents responsive to the discovery served upon the OAG, it was not until October 2022 that Military and Veterans

41P0737

Affairs was identified as an agency potentially having documents relevant to the claims made by the OAG. Nonetheless, on March 10, 2023 Military and Veterans Affairs voluntarily produced the Department of Veterans Affairs (Federal) Sharing Agreement. Military and Veterans Affairs is not in possession of any documents responsive to Defendants' Request for Production No. 68. Although Military and Veterans Affairs only became aware of this present litigation in October of 2022, discovery in this matter will be unduly burdensome upon Military and Veterans Affairs, a nonparty not raising any claims in this matter. See Exhibit "N" attached to the Motion to Intervene.

Military and Veterans Affairs procures almost all the non-narcotic medications that it dispenses to its State Veterans Homes ("SVH") residents directly from the United States Veterans Affairs ("VA") Pharmaceutical Prime Vendor ("PPV") using an electronic order system. The current PPV is McKesson. Information regarding the amount of the non-narcotic pharmaceuticals purchased is in the possession of the VA and McKesson rather than Military and Veterans Affairs. Information regarding the true cost of the non-narcotic pharmaceuticals purchased is not in the possession of Military and Veterans Affairs because the VA pays the cost of each medication ordered and Military and Veterans Affairs reimburses the VA based on which SVH residents are eligible for health benefits. Each SVH places an average of 1-2 orders per week for narcotic pharmaceuticals in the electronic SAP program, and Military and Veterans Affairs has up to three years of records with Cardinal Health. See Exhibit "N" attached to the Motion to Intervene.

Military and Veterans Affairs employs 144 staff members across its six SVH locations, and each SVH employs one pharmacist and approximately two pharmacy technicians or clerks. Each employee works 37.5 hours per week and is eligible for overtime or time-and-a-half for hours worked over 37.5 hours per week. The pharmacists at each SVH location and employees at non-Military and Veterans Affairs entities such as McKesson and Cardinal Health are the only persons

15

with knowledge of procurement, purchasing and dispensing of pharmaceuticals by Military and Veterans Affairs. See Exhibit "N" attached to the Motion to Intervene.

In the event Military and Veterans Affairs were required to produce documents in response to Defendants' Requests for Production, Military and Veterans Affairs anticipates that searching for and copying the likely thousands of pages responsive to Defendants' Requests for Production of Documents, many of which are not even in the possession of Military and Veterans Affairs, will divert two to four employees per SVH location for at least a month and preclude those employees from their usual duties of providing quality service to the Commonwealth's veterans and their families. Responding to Defendants' Requests for Production of Documents will put an additional burden on staff to complete the near insurmountable discovery searches and will detract from Military and Veterans Affairs's limited resources to administer each SVH location. See Exhibit "N" attached to the Motion to Intervene.

Defendants' Requests for Production of Documents include documents containing confidential information, specifically information considered Protected Health Information pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). Military and Veterans Affairs will incur the additional burden of expenses and diversion of resources to review responsive confidential documents, designate those documents "CONFIDENTIAL", "HIGHLY CONFIDENTIAL", or "OUTSIDE COUNSEL EYES ONLY" pursuant to this Honorable Court's Pre-Trial Order No. 53, stamp those documents "Protected Health Information Subject to HIPAA Qualified Protective Order" pursuant to this Honorable Court's Pre-Trial Order No. 160, and/or redact "sensitive personally identifying information" pursuant to this Honorable Court's Pre-Trial Order No. 95, where relevant, if required to respond to Defendants' Requests for Production. See Exhibit "N" attached to the Motion to Intervene.

16

41P0737

## II.     QUESTIONS PRESENTED

Should Movants be permitted intervention in this matter for the limited purpose of raising third party challenges to overly burdensome discovery demands and to potentially move for appropriate Protective Orders?

**Suggested answer:    In the affirmative.**

In the alternative, should Movants be permitted to intervene in this matter as amici curiae for the same limited purpose?

**Suggested answer:    In the affirmative.**

## III.     ARGUMENT

Movants, non-parties which raise no claims in the present litigation, have had no claims asserted against them, and are not represented by OAG but which are nonetheless being subjected to increasingly burdensome discovery demands by Defendants, seek intervention for the limited purpose of adequately representing their interests in challenging Defendants' discovery demands. In that regard, while this Honorable Court's November 17, 2021 Order found that the OAG has access to agency records, the OAG does not have physical possession of those records nor is its legal ability to access them self-executing. Instead, specialists are needed to navigate the various computer and storage systems where those documents are held.  It is Movants, not OAG, who will be burdened with retrieving and reviewing the requested documents to satisfy their statutory obligations to protect confidential, personal information. Movants, not the OAG, would be required to gather responsive documents, review and assert statutory restrictions on or assert privileges preventing their release, produce the documents, then defend those assertions, should they be challenged by parties in this matter, including but not limited to the OAG.

17

**Intervention Under F.R.C.P. 24(a)**

Federal Rule of Civil Procedure 24(a)(2) provides "[o]n timely motion, the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede movant's ability to protect its interest . . .." The First Circuit has held, "intervention is 'the procedurally correct course for third party challenges to protective orders.'" *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 784 (1st Cir. 1988) (quoting *In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 789 (5th Cir. 1979)). Movants seek intervention for the limited purpose of raising third party challenges to overly burdensome discovery demands and also to potentially move for Protective Orders if necessary and appropriate.

The Third Circuit has interpreted Rule 24(a) to require proof of four elements from the party or parties seeking intervention: "first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor's interest by the existing parties to the litigation." *Kleissler v. United States Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998).

Movants meet all four elements required to intervene. Movants' application to intervene is timely, as the above-captioned litigation is ongoing, is currently in the discovery phase, and will not delay a trial date as no such date has been scheduled. Movants have a sufficient interest in the litigation as they are being compelled to expend substantial time and resources to respond to expansive discovery requests, many of which seek confidential documents and information, despite the limits on their administrative staffing and other resources. Movants' interest in efficient use of their limited resources to ensure effective administration on behalf of Pennsylvania citizens

18

is directly threatened and will be impaired should they be forced to comprehensively respond to the extensive discovery in these matters, to which they are not parties and in which they have asserted no claims for relief. As a practical matter, the responses to the extensive discovery requests will exhaust valuable time and resources that cannot be recovered once performed as these matters progress toward and reach disposition.

Movants' interests in these matters directly conflict with the interests of OAG. OAG filed this claim independently of the executive branch, which OAG is entitled to do under the Pennsylvania Constitution. "The Pennsylvania Constitution designates the Attorney General as the 'chief law officer' for the Commonwealth as a whole, accountable directly to the Pennsylvania voters, and *independent of the Governor and the Commonwealth agencie*s." *Synthes*, slip op. at 22-23 (citing Pa. Const. art. IV, § 4.1) (emphasis added). The Pennsylvania Constitution and the Commonwealth Attorneys Act have long recognized that the OAG's representation of the interest of the Commonwealth, generally, is distinct from its representation of individual agencies. *Synthes*, slip op. at 21 (stating that although "the Attorney General regularly represents the . . . [departments] . . . it is not merely [their] law firm."). On February 22, 2023, the Supreme Court of Pennsylvania reaffirmed that the Commonwealth Attorneys Act recognizes instances, like this matter, in which the Attorney General will act independent from the executive branch, and even times when both the Attorney General and the executive branch will disagree in the same litigation. *Id*. at 22-23. See generally 71 P.S. § 732-303.

In this case, the Attorney General undertook this action independent of the Movants and pursued an action in which the Movants have asserted no claims. OAG's interest in pursuing the above-captioned matters does not align with Movants' opposition to the expansive discovery directed toward them. Indeed, OAG recognized and acknowledged that it does not represent the

19

interests of Movants when it argued the same to this Honorable Court, albeit unsuccessfully, prior to the November 17, 2021 Order. Movants are not parties to the Joint Stipulation and were not made aware of it until after it had been approved by this Honorable Court. OAG's established interest in compelling Movants to produce discovery despite their opposition now compounds the adverse impact on Movants following this Honorable Court's February 8, 2023 Order. Accordingly, OAG and Movants have conflicting interests and OAG cannot adequately represent Movants for that reason.

This Honorable Court has previously recognized the interests of non-parties in precluding disclosure of discovery. In *Constand v. Castor*, 2016 WL 5681454 (E.D. Pa. 2016), this Honorable Court allowed intervention as of right when the proposed intervenor sought to control the disclosure by a party in the case of information that implicated the interests of proposed intervenor. Similarly, the D.C. Circuit Court of Appeals allowed a nonparty to intervene where it had a "cognizable interest in maintaining the confidentiality of the documents" and its interests were not adequately represented by the existing parties to the action. *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001).

Movants therefore seek intervention for the limited purpose of directly asserting their objections to discovery requests or other information sought from them, and to move for appropriate Protective Orders.

**Intervention as Amici Curiae**

Alternatively, should this Honorable Court determine that Movants may not intervene in the above-captioned matter as of right under F.R.C.P. 24(a), they should be allowed to participate in the matter as amici curiae. This Honorable Court has previously held that "Amicus curiae status is generally granted when: (1) the petitioner has a 'special interest' in the particular case; (2) the

20

41P0737

petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case." *Liberty Resources, Inc. v. Philadelphia Housing Authority*, 395 F.Supp.2d 206, 209 (E.D. Pa. 2005).

In *Liberty Resources*, this Honorable Court granted amicus curiae to a proposed intervenor which sought to protect non-party confidentiality during the discovery phase of the matter. The Court explained, "Although [proposed intervenor] fails to meet the standard for intervention under Rule 24, a court may nonetheless allow a party to participate in litigation as an amicus curiae where 'although short of a right to intervene, the amicus curiae has a special interest that justifies his having a say.'" *Liberty Resources, Inc. v. Philadelphia Housing Authority*, 395 F.Supp.2d 206, 206 (E.D. Pa. 2005) (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)).

As set forth above, Movants have a special interest in this case to ensure their right to avoid unduly burdensome discovery requested in a case in which they have asserted no claims and seek no relief. Moreover, some of those unduly burdensome discovery requests seek confidential material. As detailed herein, Movants' special interests regarding the discovery burden sought to be placed upon them are not being represented. As previously detailed, Movants' interests in protecting their limited resources from burdensome discovery obligations could conflict with the interests of OAG in pursuing these matters. Discovery in this case implicates the proper allocation of Movants' limited resources and will be difficult to resolve when OAG does not adequately represent Movants' interests.

Movants' request is timely, as this matter is in the discovery phase and Defendants currently seek further substantial discovery from Movants. Movants present a position that is useful concerning their rights as non-parties, as their participation in the matter will assist this

21

Honorable Court's understanding of the impact extensive discovery in this case will have upon Movants' limited resources for administration of public entities as well as, at times, the confidentiality interests of Movants and other third parties. Movants are not parties to this action, have asserted no claims or defenses in these matters, and therefore are not partial to any particular outcome of the case.

## IV.   **CONCLUSION**

Movants-intervenors, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF AGING, COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, and COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF MILITARY AND VETERANS AFFAIRS, respectfully request that this Honorable Court grant their Motion and that they be permitted to intervene in the above-captioned civil action as of right under F.R.C.P. 24(a) for the limited purpose of directly asserting their objections to discovery requests or other information sought from them and moving for appropriate Protective Orders, or, alternatively, that this Honorable Court confer the status of amici curiae upon Movants for the same limited purpose.

ROSENN, JENKINS & GREENWALD, LLP

BY: _____
ROBERT N. GAWLAS, JR., ESQUIRE
Attorney I.D. No. 46608
ZACHARY J. WATKINS, ESQUIRE
Attorney I.D. No. 325350
Cross Creek Pointe
1065 Highway 315, Suite 200
Wilkes-Barre, PA  18702
(570) 826-5654 (telephone)

41P0737

rgawlas@rjglaw.com
zwatkins@rjglaw.com

Attorneys for Movants-Intervenors, the
Commonwealth of Pennsylvania
Department of Human Services, the
Commonwealth of Pennsylvania
Department of Aging, and the
Commonwealth of Pennsylvania
Department of Corrections
Commonwealth of Pennsylvania
Department of Military and Veterans Affairs

41P0737