**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | **MDL 2724**<br>**16-MD-2724** |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | **HON. CYNTHIA M. RUFE** |

**END-PAYER PLAINTIFFS' RESPONSE TO ACTAVIS HOLDCO U.S., INC., ACTAVIS
ELIZABETH LLC, AND ACTAVIS PHARMA, INC.'S OBJECTIONS TO
THE SIXTEENTH R&R OF THE SPECIAL DISCOVERY MASTER**

## TABLE OF CONTENTS

I.     ACTAVIS' MOTION IS UNTIMELY ................................................................................1

II.    ACTAVIS SEEKS IRRELEVANT DISCOVERY ...........................................................7

       A.      Actavis' Pass-On Theory Is at Odds with Basic Antitrust Principles.......................7

       B.      Courts Have Universally Denied the Discovery Actavis Seeks..............................9

III.   RE-OPENING ABANDONED DISCOVERY WILL PREJUDICE EPPS AND
       DELAY RESOLUTION OF THIS MDL..........................................................................13

IV.    CONCLUSION.................................................................................................................15

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                              **PAGE**

*Chattanooga Foundry & Pipe Works v. City of Atlanta*,
   203 U.S. 390 (1906)......................................................................................................7

*Coupled Prod., LLC v. Nobel Auto. Mexico, LLC,*
   2010 WL 2035829 (W.D. La. May 14, 2010) ...............................................................2

*Douglas Dynamics, LLC v. Meyer Prod. LLC,*
   2017 WL 2116714 (W.D. Wis. May 15, 2017) ............................................................2

*In re Asacol Antitrust Litig.,*
   2017 WL 53695 (D. Mass Jan. 4, 2017) .....................................................................10

*In re Avandia Marketing, Sales Practices & Prod. Liability Litig.,*
   804 F.3d 633 (3d Cir. 2015) ...............................................................................9, 10, 12

*In re HIV Antitrust Litig.,*
   2023 WL 3011624 (N.D. Cal. Apr. 18, 2023) ...................................................8, 11, 12

*In re Lidoderm Antitrust Litig.,*
   2017 WL 679367 (N.D. Cal. Feb. 21, 2017)....................................................7, 11, 13

*In re Lipitor Antitrust Litig.,*
   2020 WL 5642175 (D.N.J. Sept. 22, 2020) ........................................................11, 13

*In re National Prescription Opiate Litig.,*
   440 F. Supp. 3d 773 (N.D. Ohio 2020) .....................................................................13

*In re Neurontin Mktg. & Sales Practices Litig.,*
   799 F. Supp. 2d 110 (D. Mass 2011), *aff'd* 712 F.3d 21 (1st Cir. 2013)....................11

*In re Restasis Antitrust Litig.,*
   2018 WL 5094090  (E.D.N.Y. Oct. 18, 2018) ....................................................10, 12

*In re Solodyn Antitrust Litig.,*
   2016 WL 6897809 (D. Mass. Sept. 19, 2016) ...........................................................10

*In re Testosterone Replacement Therapy Prods. Liab. Litig.,*
   159 F. Supp. 3d 898 (N.D. Ill. 2016) ........................................................................12

*In re: Zetia Antitrust Litig.,*
   2023 WL 3064462 (E.D. Va. Apr. 18, 2023) ....................................................... 11-13

*Ironworkers Local Union 68 v. AstraZeneca Pharms., LP,*
   634 F.3d 1352 (11th Cir. 2011) ...........................................................................12, 13

Actavis' Objections[1] should be overruled for three principal reasons.

*First*, as Special Master Marion concluded in the 16th R&R,[2] Actavis' motion to compel is untimely, filed three years after the relevant deadline set forth in PTO 105, the "road map to move these cases forward" established by the Court in 2019. 16th R&R at 2 ¶ 1. *See* Part I, *infra*. *Second*, Actavis seeks from End-Payer Plaintiffs ("EPPs") extremely broad discovery, essentially every document EPPs conceivably might possess concerning "funding" of health plan benefits in the form of premiums or employer contributions, plus related 30(b)(6) testimony. Because it is irrelevant to any claim or defense in a pharmaceutical antitrust case, no court has ever granted such sweeping discovery, and this Court should not be the first. *See* 16th R&R at 3 ¶¶ 3-4 & Part II, *infra*. *Third*, allowing Actavis to pursue these materials now would introduce an entirely new and irrelevant subject into discovery, likely requiring a significant extension of the recently modified Bellwether discovery schedule, PTO 234. *See* 16th R&R at 3-4 ¶ 5 & Part III, *infra*. Simply put, there is no basis in fact or antitrust law for ordering this kind of discovery at any time, let alone at the very end of a long and carefully managed discovery process.

## I.      ACTAVIS' MOTION IS UNTIMELY

With a fulsome record before him,[3] and after a lengthy April 12, 2023 oral argument, Special Master Marion concluded that Actavis' motion should be denied as untimely. *See* 16th R&R at 2 ¶ 1. Given the clear record, this Court should reach the same conclusion.

Since 2018, EPPs have consistently asserted that this discovery is irrelevant to any claim

---

[1] Actavis Holdco U.S., Inc., Actavis Elizabeth LLC, and Actavis Pharma, Inc.'s Objections to the Sixteenth R&R of the Special Discovery Master ("Objections" or "Obj."), ECF 2448.

[2] Special Master David H. Marion's Sixteenth Report and Recommendation (R&R) to the Court as to Actavis' Motion to Compel Against End-Payer Plaintiffs ("16th R&R"), ECF 2426.

[3] *See* Mar. 30, 2023 Ltr. from Actavis (Ex. A); April 6, 2023 Ltr. from EPPs (Ex. B); April 17, 2023 Ltr. from Actavis (Ex. C); April 17, 2023 Ltr. from EPPs (Ex. D) (exhibits excluded here).

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

or defense and unduly burdensome. EPPs declared impasse in May 2019 and several times thereafter,[4] and despite a Court-ordered deadline of December 6, 2019 to raise this discovery dispute (*see* PTO 105 §§ 7(a)-(b)), Actavis did nothing.[5] Special Master Marion explained that discovery deadlines serve an important purpose and must have consequences:

> The 2019 deadlines were established in part to clarify the relatively broad scope of discovery in this MDL and set forth a road map to move these cases forward. If Actavis believed this discovery was important and should be part of the MDL, it was obligated to file its motion on time, but it did not.

16th R&R at 2 ¶ 1.[6] When Actavis missed the 2019 deadline, it waived the right to claim that EPP funding and contribution issues should be a part of MDL discovery.

To avoid this clear waiver, Actavis offers meritless excuses. First, Actavis claims that it "reserved all rights" to seek this discovery notwithstanding the passage of the December 2019 deadline to file its motion to compel. Obj. at 3, 7. But no "rights" survive expiration of a Court-ordered deadline to exercise those rights. Such an "audacious" attempt to circumvent the December 2019 deadline is a legal "nullity."[7] If Actavis intended to unilaterally "reserve" an ability to seek discovery well after the December 2019 deadline, it should have sought relief to do so instead of ignoring the deadline.

Second, Actavis argues that the December 2019 deadline did not apply to Rule 30(b)(6) testimony, and so its motion is timely as to that discovery mechanism. *See* Obj. at 7 & n.2. This

---

[4] *See* Obj. at 3; *see also* highlighted text in Ex. E (5/17/2019 EPP letter; 6/26/2019 Defendant letter; 7/16/2019 EPP letter; 7/5/2022 EPP letter; & 11/10/2022 EPP letter).

[5] *See also* PTO No. 110 § 7(b) (extending deadline by a week); PTO 123 at 6 (reaffirming PTO 105/110 deadlines); PTO 137 ¶ G (same).

[6] Using the same "road map" language, the Special Master emphasized the important purpose of these deadlines, shortly after entry of PTO 105. *See* Ex. F at 1 (Jan. 14, 2020 D. Marion email).

[7] *Douglas Dynamics, LLC v. Meyer Prod. LLC*, No. 14-CV-886-JDP, 2017 WL 2116714, at *2 (W.D. Wis. May 15, 2017) ("nullity"); *Coupled Prod., LLC v. Nobel Auto. Mexico, LLC*, No. 09-CV-0323, 2010 WL 2035829, at *1 (W.D. La. May 14, 2010) ("audacious").

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

attempted end-run on the discovery parameters established by PTO 105 ignores that Actavis waived its opportunity to argue that EPP funding and contribution issues should be part of the discovery "road map." 16th R&R at 2 ¶ 1. Moreover, educating an EPP designee to testify about this long-abandoned discovery will require an extensive investigation of documents that have not been collected, produced, or reviewed (*see* Section III, *infra*). It is far too late to re-draw the MDL "road map" and force EPPs to prepare witnesses about irrelevant matters.

Third, Actavis seeks to excuse its untimely motion by arguing that its abandoned discovery is relevant to both Bellwether and non-Bellwether claims alike and so cannot be untimely. *See* Obj. at 6-7. This argument is yet another attempt to circumvent Court-ordered deadlines. Discovery has always proceeded as to both Bellwether and non-Bellwether claims at the same time, and those claims are governed by the same discovery "road map" established early in the MDL. Moreover, MDL witnesses are to be deposed only once (*see* PTO 234 ¶ 20), which means Defendants must depose all nine of the EPP class Bellwether representatives before October 2, 2023 (*id*. ¶ 1). Those depositions must cover all claims, not just Bellwether claims. Actavis' contrived division between Bellwether and non-Bellwether claims, and its incorrect suggestion that there is plenty of time to open a new area of discovery, fails in the face of the reality of the case schedule and the rules governing MDL discovery.[8]

---

[8] Special Master Marion rejected the notion that the recent extension of the Bellwether discovery deadline to October 2, 2023 provides an excuse for allowing Actavis' discovery: "at this late stage of Bellwether discovery, the parties should be wrapping up outstanding discovery, not opening up new areas of discovery or reviving an area of discovery abandoned long ago." 16th R&R at 4 ¶ 5. When negotiating the extension, Plaintiffs likewise rejected the idea that the extension would be a "chance for a party who wasted time or dragged their feet to then make up for that lost time through the extension" (4/11/2023 Status Conf. Tr. at 11:4-23 (Ex. G)), which is exactly what Actavis argues here. *See* Obj. at 3.

3

Finally, Actavis seeks to excuse its untimely motion to compel by blaming EPPs for lulling Actavis into inaction by asserting during meet and confers "that premiums had no legal or factual relevance to any MDL issues." Obj. at 3 & 7. Actavis suggests that "[w]ithout the benefit of discovery to refute EPPs' statements," it could do nothing more than "declare[] impasse and reserve[] all rights" while foregoing a timely motion to compel in 2019.[9] *Id*. at 3. According to Actavis, once depositions began and it purportedly gained "evidentiary confirmation of the relationship between the alleged overcharges and Health Plan EPP funding" (*id*. at 3; *see also id*. 5, 7-8), Actavis diligently sought relief. Actavis' argument rests on false premises.

Once depositions commenced, Actavis did not act "diligently" to seek the discovery it now says is supposedly "critical." Obj. at 1, 6. Actavis cites EPP depositions from March 9, May 5, June 15, and July 28, 2022 as purportedly making "clear" that "there was in fact a direct correlation between generics costs and funding." *Id*. at 5. And yet Actavis waited six months after the first deposition, until September 23, before reissuing (to a few EPPs) its previously abandoned document requests, and waited nearly twelve months before filing its March 30, 2023 motion to compel. *See id*. These delays underscore the untimeliness of Actavis' pursuit of this discovery, as Special Master Marion noted. *See* 16th R&R at 2 ¶ 2 (citing months-long delays).

Actavis is also wrong when it claims that information revealed in depositions contradicts EPPs' earlier objections to the requested discovery, thus excusing Actavis' egregiously late motion to compel. Special Master Marion rejected this argument: "The discovery materials and meet and confer correspondence submitted to me show no clear support for such claims." 16th R&R at 2 ¶ 2. There is ample support for that finding.

---

[9] During the April 12, 2023 teleconference, Actavis packaged this argument differently by making the "regrettable" and unsupported claim that EPPs made "misrepresentations" in meet and confers that purportedly "deceived" Actavis. 16th R&R at 2 ¶ 2 (rejecting Actavis' claims).

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

EPPs objected to providing information about premiums and contributions because (i) they are not used to recoup past costs and are forward-looking, and (ii) multiple courts have held it is irrelevant. *See, e.g.,* Ex. E, May 17, 2019 letter at 6. The discovery record to date is entirely consistent with those representations, and the few snippets of testimony and single document highlighted by Actavis do not say otherwise. To the extent Actavis' cited evidence deals with premiums and contributions at all, it actually confirms EPPs' position.

Audrey Browne (DC37) testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. H at 95:8-96:8. This testimony has nothing to do with premiums or contributions. In fact, Ms. Browne was never asked whether this occurred during the time period at issue, or about what factors went into setting contribution rates (except that they depended on the number of covered members). *Id*. at 88-95. Her testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and not in response to drug prices specifically. *Id*. at 89-90. Her testimony actually confirms ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 95:8-22.

Ms. Morovich (SISC) gave no testimony as to how premiums or contribution rates are set; in fact, she ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. I at 105:4-11); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*. at 106:24-107:18); did not know ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*. at 118:6-23); and did not know ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 180:1-9; 182:2-12.

Actavis also cites a single SISC document that suggests ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which EPPs have

5

never disputed. *See* Obj. 10-11 & Ex. L thereto. But nowhere does this document suggest that

rates are adjusted to "recoup" *past* overcharges, as Actavis' theory posits (Obj. at 14), or that any

specific drugs are driving prospective cost projections that include medical, life insurance,

dental, administrative and other costs. Ms. Morovich testified that ██████████████████████

█████████████████████████████████ Ex. I at 179:3-18.[10]

      Bruce Anderson testified that ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████ To the contrary, he testified that ████████████

████████████████████████████████████████████████████████████████████████

████████████████████ Ex. J at 217:6-218:23 ("████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████").

      Finally, Actavis cites the testimony of Milam Ford (BCBS-LA), who was ████████████

████████████████████████████████████████████████████████

████████████ Ex. K at 144:24-147:17. He confirmed that ████████████████████████████

████████████████████. *Id*. at 28:6-14. But he did not testify that premium adjustments

recouped past overcharges or were solely or even mostly based on the Drugs at Issue or on

generic (and not brand) drugs.[11]

---

[10] EPPs searched for and produced all documents containing the names of every Drug at Issue. If there were any documents showing a "direct correlation" between EPP funding and costs of any Drugs at Issue, as Actavis claims (Obj. at 5), they would have been produced to Actavis. That Actavis cites only one document, which itself does not even support its arguments, is telling.

[11] Actavis also misconstrues the testimony of Young Fried, formerly affiliated with Unite Here Health ("UHH"). *See* Ex. D at 2-3. In any event, UHH has withdrawn from the MDL (ECF 2440), rendering Ms. Fried's testimony irrelevant to the issues presented here.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

In short, discovery has confirmed – not contradicted – EPPs' objections asserting that EPP funding does not recover past costs, is forward-looking, and is not drug specific.

## II.   ACTAVIS SEEKS IRRELEVANT DISCOVERY

### A.   Actavis' Pass-On Theory Is at Odds with Basic Antitrust Principles

For more than 100 years, courts have recognized that buyers who pay more than they would have paid "but for" unlawful price fixing suffer antitrust injury. *See Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 395-96 (1906). Indirect purchasers such as EPPs are entitled to recover these overcharges under state law so long as the overcharge is not "passed on" to a subsequent purchaser.

Case law universally recognizes that EPPs at the end of the pharmaceutical chain of distribution do not "pass on" antitrust overcharges. As one court explained:

> [A class consisting of end-payers] by definition … only includes members who were at the end of the distribution chain and who did not resell the product to another. The cases relied on by defendants recognizing that the premiums might shield health plans from incremental costs caused by unlawful behavior are inapposite because in the antitrust or end payor context, the alleged harm is unexpected overcharges. . . .  Here the EPP health plans and welfare funds were injured as of the date they *paid* the overcharges; that these plans and funds may have—as part of their annual premium setting—increased premiums to cover for *future* health care and prescription drugs for their members in general does not show that these plans and funds did not bear the risk of or actual damage from the overcharges at issue here.

*In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *22-23 (N.D. Cal. Feb. 21, 2017) (emphasis in original). In seeking this irrelevant discovery, Actavis ignores this settled law and asks the Court to recognize novel theories of antitrust injury and "pass on."[12]

---

[12] Actavis studiously avoids the phrase "pass on," but its euphemisms – "duplicative recovery" and "damages apportionment" (Obj. at 11) – are merely rebranded, invalid pass-on theories.

7

Consider the following scenario. In the summer of 2015, Actavis and its codefendants conspired to fix the price of Clobetasol Solution. As a result, when a consumer filled a prescription for Clobetasol Solution at the pharmacy, the price was higher than it would have been "but for" Actavis' price-fixing. Because the consumer was insured by EPP Blue Cross and Blue Shield of Louisiana ("BCBS-LA"), the insurer paid most (or all) of the higher price for the Clobetasol Solution prescription in the summer of 2015 and was injured. After that, neither the consumer nor BCBS-LA sold the Clobetasol Solution to anyone else. The transaction was final and the overcharge was paid. There was no "pass on" of the overcharge. When the consumer bought health insurance from BCBS-LA, on the other hand, they were not buying Clobetasol Solution or any other drug; they bought health insurance to guard against the risks associated with their future healthcare costs. And here, Actavis acknowledges that "the funding amounts set by health plans are 'forward-looking'" (Ex. A at 4), *i.e.* they do not seek to recover the overcharges BCBS-LA paid. In other words, premiums are simply "not relevant to the assessment of damages" given their "forward looking" nature. *In re HIV Antitrust Litig.*, 2023 WL 3011624, at *1 (N.D. Cal Apr. 18, 2023) (rejecting a "higher premiums" pass-on defense).

Actavis, however, proposes a theory that would dissociate the "overcharge" from the purchase of the price-fixed product. Actavis argues that because its price-fixing conspiracy may have driven up the cost of health insurance, the real injured parties are the purchasers of health insurance, ***not the purchasers of the price-fixed drugs***. In other words, Actavis' theory is that even though BCBS-LA overpaid for Clobetasol Solution, it has no claim; instead, every insured of BCBS-LA, and every company that paid BCBS-LA for health insurance for its employees (approximately 2 million people and entities), has a fragment of the claim. This would be a radical departure from canonical antitrust law. During the teleconference with the Special Master,

8

Actavis described the increased premiums as a "pre-emptive" pass-on of anticipated overcharges that might be incurred by the insurer in the future. This theory cannot be squared with 100+ years of antitrust law, which defines an overcharge as the amount overpaid on the purchase of a price-fixed good. There is no such thing as "pre-emptive" pass-on, and no price-fixing case has ever recognized this theory. And it was squarely addressed, and rejected, by the Third Circuit (and many other cases) when affirming this Court in *In re Avandia Marketing, Sales Practices & Prod. Liability Litig.*, 804 F.3d 633 (3d Cir. 2015).

In *Avandia*, the defendant argued that health plans can "statistically anticipate a certain level of fraud and pass this risk on to their beneficiaries in the form of higher premiums." *Id*. at 641. This is identical to Actavis' argument that health plans calculate premiums in a way that anticipates future drug costs and thus "passes on" those costs to their members. The Third Circuit rejected this rationale, noting that if a business was uninjured simply because it tried to account for potential future costs, then "a retailer would be unable to claim injury from shoplifting, or a bank from robbery, on the ground that their business models presumably accounted for such losses in pricing their products and services." *Id*. at 641 n.45.

In essence, Actavis is arguing that there is no such thing as an overcharge for end-payers because the overcharge is ***always*** passed on to someone else. But the Third Circuit in *Avandia* shut the door on such an argument because it "lacks a limiting principle." 804 F.3d at 641. *See also* 16th R&R at 3 ¶ 4 (Actavis' theory "lacks precedential support," is "contradicted by settled law," and "conflicts with rationale" of *Avandia*).

## B.    Courts Have Universally Denied the Discovery Actavis Seeks

Defendants in pharmaceutical antitrust cases frequently seek the same discovery that Actavis seeks here, and courts universally have denied those motions, as the Special Master did

9

here. There is no reason in law or fact for this Court to break new ground and be the first to rule otherwise.

To set premium and contribution rates, EPPs use the historic, aggregate cost of medical, dental, eye, life insurance and countless other expenses, along with the aggregated past cost of drugs to project *future* total costs. EPPs do not use premiums or contributions to recoup *past* overcharges. As summarized in Exhibit L, based on these facts courts overwhelmingly reject requests for the discovery being sought here because "insurance premiums are not a 'pass-on' of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past." *In re Asacol Antitrust Litig.*, 2017 WL 53695, at *4 (D. Mass Jan. 4, 2017); *see also In re Xyrem Antitrust Litig.,* Case No. 3:20-md-02966, ECF 392 (N.D. Cal. Jan. 27, 2023) (Ex. M); *In re Solodyn Antitrust Litig.*, 2016 WL 6897809, at *2 (D. Mass. Sept. 19, 2016); *In re Aggrenox Antitrust Litig.*, No. 14-md-2516, ECF 568, Tr. at 76:13-94:15 (D. Conn. Oct. 21, 2016) (Ex. N).

Actavis tries to avoid this caselaw by framing its argument as being about insurers preemptively avoiding the overcharge, as opposed to passing it on after the fact. As noted above, the Third Circuit in *Avandia* rejected the notion that insurers could avoid paying the overcharge by "anticipat[ing]" it. 804 F.3d at 641. The defendants in *Xyrem* similarly argued that "Plaintiffs prospectively pass on overcharge to their members" (Ex. O at 2 of 8), but the court denied discovery based on that theory. *See* Ex. M; *see also Aggrenox*, ECF 568, Tr. at 89:24-90:2 (Ex. N) (rejecting the notion that "charging a premium in advance of the incurring of a cost is an offset of a cost that hasn't been incurred"). Thus, Actavis "has not shown that [funding] information is relevant to its defense." *In re Restasis Antitrust Litig.*, 2018 WL 5094090, at *2-3 (E.D.N.Y. Oct. 18, 2018); *see also Asacol,* 2017 WL 53695, at *4 ("the requested discovery is

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

irrelevant as a matter of law"). Courts have also denied this discovery because individual drug costs are *not* considered when setting premiums and contributions. *E.g.*, *id.* & Ex. M at 2.

And as outlined in Exhibit P, in other contexts courts have likewise taken "a pass on defendants' Hail Mary pass-on theory regarding increased premiums." *In re Neurontin Mktg. & Sales Practices Litig.*, 799 F. Supp. 2d 110, 120 (D. Mass 2011), *aff'd* 712 F.3d 21 (1st Cir. 2013); s*ee also HIV*, 2023 WL 3011624, at *1-2; *In re: Zetia Antitrust Litig.*, 2023 WL 3064462, at *5 (E.D. Va. Apr. 18, 2023); *In re Lipitor Antitrust Litig.*, 2020 WL 5642175, at *3 (D.N.J. Sept. 22, 2020); *Lidoderm*, 2017 WL 679367, at *22-23. *See also* 16th R&R ¶ 3 ("I find the reasoning of these cases to be sound and applicable here.").

Actavis primarily argues that these cases are irrelevant—even though they address the *exact* issue in dispute here—because they involved a single drug, whereas this case, according to Actavis, involves a "significant percentage of the generic drug market" and it is "not credible" to believe that TPPs did not adjust their premiums in response to the prices of the Drugs at Issue. Obj. at 13. But Actavis fails to articulate why that would matter. In each case, the court denied discovery (or otherwise rejected the "increased premium" pass-on theory) because premiums are forward looking, do not recover past overcharges, and are irrelevant to antitrust injury or damages. These analyses do not depend on the number of drugs at issue.

Actavis' argument is also rooted in nothing but speculation. First, despite using the names of the Drugs at Issue as search terms, the files of EPPs' custodians *did not contain a single document* stating that the costs of any Drug at Issue were a factor in the premium or contribution-setting process. Second, there are over 20,000 FDA-approved prescription drugs,[13]

---

[13] Fact Sheet: FDA at a Glance, *available at* https://www.fda.gov/about-fda/fda-basics/fact-sheet-fda-glance.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

and there is no basis to assume that TPPs set their premiums according to the price of a few hundred of those.[14] Even the price of several hundred generic drugs would still be a "grain of sand" (Ex. N at 81:14-18) in terms of TPPs' overall expenses that include medical, dental, vision, life insurance, and overhead in addition to prescription drugs. Third, over 80% of spending on pharmaceutical products is on branded drugs, not generics. *See* Ex. Q at 49. There is thus no reason to assume that TPPs would make premium-setting decisions based on the prices of the generic drugs in this case any more than they would for the branded drugs at issue in the cases that have addressed premium-related discovery. In fact, in *Xyrem* the defendants made the same argument that Actavis makes here, that "[c]onsidering that Plaintiffs are alleging that Xyrem is an extremely expensive medicine that has a hundred percent of the relevant market, it would be I think surprising almost if they are not accounting for it." Ex. R at 12:17-24; *see also* Ex. O at 3 of 8 (Xyrem was the "top-utilized drug by spend" for one plaintiff). The *Xyrem* court rejected this speculation, *see* Ex. M, and the Court should do the same here.

Actavis relies on only two cases: *Great Lakes Health Plan, Inc. v. Pfizer, Inc*., No. 01-cv-00106 (N.D. W.Va. Mar. 28, 2002), ECF No. 72, and *Ironworkers Local Union 68 v. AstraZeneca Pharms., LP*, 634 F.3d 1352 (11th Cir. 2011). *Great Lakes* was decided 21 years ago; since then courts universally have come to the opposite conclusion, including three courts (*Xyrem*, *HIV*, and *Zetia*) in this year alone. And *Ironworkers* has been explicitly rejected by numerous courts, including the Third Circuit in *Avandia*, 634 F.2d at 641 & n.45.[15] Actavis has not cited any case relying on either *Great Lakes* or *Ironworkers*, and this Court should not be the first.

---

[14] Actavis attempts to wildly inflate the number of Drugs at Issue by citing "thousands" of "formulations" (Obj. at 13), an obvious distortion.

[15] The court in *Restasis* likewise "did not agree with [*Ironworkers'*] analysis." *Restasis*, 2018 WL 5094090, at *3; *see also In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 159 F. Supp. 3d 898, 920 (N.D. Ill. 2016) ("This Court, like the court in *Avandia*, disagrees with the

Actavis argues that "there is a real risk of duplicative recovery" absent the discovery. Obj. at 12. Not so. End-payer pharmaceutical antitrust claims are commonplace, yet Actavis does not point to a single case in which insured consumers tried to recover drug overcharges by arguing that they paid higher insurance premiums. And in this MDL, which has been pending for more than six years, no consumer has asserted an "increased premium" theory of recovery. This is unsurprising because, as noted above, such a theory has no basis in antitrust law and would not be cognizable. Speculation that a consumer *might* assert a *non-cognizable* "increased premium" theory of damages is no justification for subjecting EPPs to burdensome discovery and upending the recently amended Bellwether schedule. *See Zetia*, 2023 WL 3064462, at *4 (rejecting defendants' "duplicative recovery" argument); *Lipitor*, 2020 WL 5642175, at *3 (same).

## III.    RE-OPENING ABANDONED DISCOVERY WILL PREJUDICE EPPS AND DELAY RESOLUTION OF THIS MDL

Permitting the discovery Actavis seeks would not only depart from well-settled law; it would significantly delay the progress of the MDL given the sweeping scope and burden of its discovery requests. Actavis' requests are extraordinarily broad, seeking "All Documents" concerning all aspects of EPPs' "funding," "including, but not limited to":

- meeting invitations, meeting agendas, transcripts, minutes, notes, summaries, attendance lists, handouts, presentations, reports, or correspondence concerning Meetings of the Trustees during the Relevant Time Period related to Pharmacy Benefits or the funding of Pharmacy Benefits for the Drugs At Issue (Obj., Ex. F, No. 1);
- notes, minutes, summaries, reports, presentations, notices, correspondence, or Agreements -- including, but not limited to, collective bargaining Agreements -- concerning the funding of each of DC 37's Pharmacy Benefits plans (*Id*., No. 2);
- notes, minutes, summaries, reports, presentations, notices, or correspondence concerning negotiations with union representatives related to each of DC 37's Pharmacy Benefits

---

reasoning in *Ironworkers*."); *Lidoderm*, 2017 WL 679367, at *22 n.32 (*Ironworkers* is "outside the antitrust/end-payor context" and "has also been disagreed with by more recent cases"); *In re National Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 794 n.19 (N.D. Ohio 2020) ("Subsequent courts rejected [*Ironworkers'*] premium-centric analysis.").

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

plans, including, but not limited to, any Document concerning any impact upon any union member salaries or benefits related to or as a result of funding of DC 37's Pharmacy Benefits plans (*Id*., No. 3).

The Document Requests go on and on to request much more, including "All Documents" concerning: "steps taken or considered by you to offset price increases of the Drugs At Issue" (No. 4); meetings with PBMs about funding of pharmacy benefits (No. 5); communications and agreements with consultants about pharmacy benefit plans (No. 6); audits and studies conducted by an EPP or a consultant relating to prices of the Drugs at Issue (Nos. 7-8). By any objective measure, this is not "narrowly-tailored" discovery, as Actavis claims. Obj. at 6.

Because Actavis abandoned this discovery years ago, EPP counsel has not investigated where to find documents responsive to these broad requests. Thus, were the Court to grant Actavis' motion, the parties would need to start anew to investigate and negotiate new custodians and document sources.[16] The parties also would need to negotiate the scope of  the requests (to which EPPs objected, and about which there have been no meet-and-confers), potentially engage in related motion practice, negotiate search terms,[17] run the search terms, and lastly review any documents captured by the search terms for privilege and responsiveness. In this MDL, reaching this point in the process "typically has taken many months." 16th R&R at 3 ¶ 5.

---

[16] Citing testimony from just *two* EPPs, Actavis declares that EPPs "should know exactly where and with whom these documents are kept" by *all* EPPs. Obj. at 8. Even for just two EPPs, the testimony it cites shows no such thing. Ms. Browne testified that certain "████████████ ████████████ – not where the type of *documents* sought here might be found. *Id*., Ex. G at 56:5-13. Even as to data, the ████████████ ████████████████ *Id*. at 56:8-13. She did not testify that the ████████████ ████████████████████, as Activas posits. Likewise, Actavis suggests that SISC's "underwriters" would have relevant materials, though Ms. Morovich testified ████████████ ████████████████. *Id*. at Ex. H & Morovich Tr. 64:5-22 (Ex. I hereto).

[17] Actavis' proposed Order (though not its brief) suggests that only a "targeted collection" from "central repositories" is required. That uninformed speculation is incorrect. Given the breadth of Actavis' requests, collecting responsive documents surely will require search terms.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

In the meantime, 30(b)(6) depositions of EPPs would be on hold, even though the meet-and-confer process is over except for scheduling dates. *See* Obj. at 2, 7. Only after the new trove of documents is produced by EPPs and reviewed by Defendants would the parties return to the point they are at today.

If the history of the MDL is any guide, once Actavis receives this new batch of documents, it will seek additional documents (citing some perceived gap or new area of interest). It almost certainly would launch new third-party discovery of plan sponsors, unions, consultants (already a focus of their requests to EPPs, as noted above) or others in furtherance of its premiums/contributions fishing expedition. And as Actavis conceded during the April 12, 2023 teleconference, all of these new documents and eventual 30(b)(6) testimony would need to be evaluated by the parties' experts, maybe even requiring retention of new experts to evaluate a topic that has not been part of the case at all because Actavis waived this discovery years ago, a fact on which EPPs properly relied. *See* Ex. D at 4.

Fitting all of this new discovery into the Bellwether cases would require an extension of many months, if not a year or more, were the Court to allow it. With the end of Bellwether discovery finally in sight, this would be a devastating development. *See* 16th R&R at 3 ¶ 5 ("the discovery at issue here is not proportional to the needs of the case and was not diligently pursued such that it could justify an extension").

## IV.    CONCLUSION

For the foregoing reasons, Actavis' Objections should be overruled and the Special Master's 16th R&R should be approved and adopted in full.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Dated:  May 23, 2023                    Respectfully submitted,

                                        */s/ Roberta D. Liebenberg*
                                        Roberta D. Liebenberg
                                        **FINE, KAPLAN AND BLACK, R.P.C.**
                                        One South Broad Street, 23rd Floor
                                        Philadelphia, PA 19107
                                        Telephone: (215) 567-6565
                                        rliebenberg@finekaplan.com

                                        *Liaison and Lead Counsel for the End-
                                        Payer Plaintiffs*