# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724 |
| | 16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | |
| *ALL ACTIONS* | |

**THE OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA'S OBJECTIONS TO SPECIAL MASTER DAVID H. MARION'S SEVENTEENTH REPORT AND RECOMMENDATION AS TO ITS MOTION TO QUASH DEFENDANTS' 30(b)(6) NOTICE OR, IN THE ALTERNATIVE, FOR A <u>PROTECTIVE ORDER</u>**

Pursuant to Rule 53(f) of the Federal Rules of Civil Procedure, Pretrial Order No. 49 (ECF 667) ("PTO 49"), and Pretrial Order No. 163, the Office of the Attorney General for the District of Columbia ("DCAG") respectfully objects to the August 24, 2023 Seventeenth Report and Recommendation of Special Master David H. Marion (ECF 2535) (the "R&R").

## **INTRODUCTION**

Defendants' campaign to depose state attorney general offices ("AGOs") has succeeded in some respects: it has caused Arkansas and Hawaii to dismiss their claims and has achieved a fantasy of every ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ If Defendants' goal were to learn information relevant to their defenses, they have failed. But getting evidence is not the point. ████████████████████████████████████████

DCAG respectfully requests that the Court intervene to end this charade. Defendants' April 27, 2023 30(b)(6) notice, Ex. 1 (the "Notice"), would permit the ███████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████ And DCAG has no documents with which to prepare a witness, and therefore no testimony to provide, on Topics 5 (complaints DCAG received) and 7 (investigations it undertook). Topic 6 (fraudulent concealment) embraces nearly all of

Defendants' alleged conduct in this industry-wide price fixing conspiracy, and is appropriately discovered, if at all, through interrogatories.

Outside this dispute, DCAG has participated fully in discovery, providing complete responses to Defendants' written discovery and facilitating the deposition of the District's Department of Health Care Finance ("DHCF"). It even entertained Defendants' offer to provide information in writing, rather than through a deposition. Defendants withdrew that offer rather than agree to DCAG's requested safeguards to prevent them from obtaining gratuitous interrogatory responses and demanding a deposition anyway, as they have done with several AGOs who attempted to accommodate Defendants in good faith.

Given Defendants' rejection of DCAG's proposed compromise, ███████████ ████████████████████ their obvious intent to pose improper and/or cumulative questions here, the *de minimis* benefit of such a deposition, and the availability through interrogatories—without the risks inherent in a deposition about legal theories—of what few facts Defendants might hope to obtain, good cause exists for a protective order. The R&R ignored ████████ ██████████████████████, failed to address the dispute about the governing legal standard, and did not engage with most of DCAG's arguments. It should be rejected.

## BACKGROUND

On September 12, 2022, Defendants served on DCAG a 30(b)(6) notice seeking testimony on work product and premature expert discovery, as well as on information in the possession, custody, or control of every other District agency. Ex. 2. Almost immediately after DCAG served objections, Ex. 3, Defendants offered to have DCAG provide testimony on these topics in the form of answers to written questions, Ex. 4 (E. Arthur to R. Manoso, Oct. 19, 2022). These questions were supposedly "an alternative to" a 30(b)(6) deposition, but only if Defendants, in their sole discretion, deemed the responses "complete and reasonably prompt."

Ex. 5 (A. Scheinman to E. Arthur, Nov. 8, 2022) (the "Written Questions"). After four meet-and-confers and multiple letters exchanged, DCAG offered in January that it would answer written questions if: (a) the questions counted against Defendants' remaining number of interrogatories permitted under Rule 33 or (b) Defendants agreed to stop seeking the 30(b)(6) deposition if they went over that number. Ex. 6 (Emails between C.W. Margrabe and A. Scheinman) at 5.

Defendants finally responded three months later, insisting on a deposition and rejecting DCAG's proposal purportedly due to its "refusal" to answer the Written Questions (i.e., gratuitous interrogatories), Ex. 6 at 6, and later rebuffing DCAG's renewed offer because it could simply "refuse to answer any of the interrogatories and leave us exactly where we have been," *id.* at 4-5. On April 27, 2023 Defendants served the "Notice," with an ultimatum that DCAG state by May 1 whether it would produce a witness in response to the Notice. *Id.* at 2-3.

The parties remained at impasse. DCAG moved informally to quash the notice or, in the alternative, for a protective order, which Special Master Marion denied on June 15. Following formal briefing, he issued the R&R on August 24, again denying DCAG's request.

## LEGAL STANDARD

### A.    Standard of Review

This Court reviews the R&R *de novo*. PTO 49, ECF No. 667, at 3 ("If objections are filed, the Court will consider the matter *de novo* pursuant to Fed. R. Civ. P. 53.").

### B.    Motion to Quash or for Protective Order

For good cause, courts may issue protective orders to prevent discovery causing "embarrassment, oppression, or undue burden," Fed. R. Civ. P. 26(c), and may direct the party seeking discovery to use another method, *id.*; *see also SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959, at *3, *5 (E.D. Pa. Mar. 23, 2004) (ordering party to provide its legal position through interrogatory responses rather than 30(b)(6) testimony). Depositions of

opposing counsel are particularly disfavored, *In re Plastics Additives Antitrust Litig.*, 2005 WL 8149514, at *3 (E.D. Pa. Aug. 9, 2005) (citation omitted), including when done under the guise of a 30(b)(6) notice, *see In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 380 (E.D. Pa. 2006) (rejecting use of 30(b)(6) to "discover facts within an attorney's knowledge without asking . . . directly").

As DCAG explained in detail to the Special Master, the Notice requires an attorney's deposition because (a) DCAG is the only District of Columbia agency before the Court, and (b) most of the Topics target matters that only an attorney could know or competently discuss. Courts in this District have used different tests to determine when good cause exists to preclude an attorney's deposition. Under *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), the party seeking the deposition must establish that the evidence it seeks is (1) available only through the deposition, (2) relevant and non-privileged, ***and*** (3) crucial to their case. *In re Linerboard Antitrust Litig.*, 237 F.R.D. at 385 (applying *Shelton*, 805 F.2d at 1327). Under *Frazier v. Se. Penn. Transp. Auth.*, 161 F.R.D. 309, 313 (E.D. Pa. 1995), the party opposing the deposition must show it would cause undue burden or oppression, as measured by (1) how much the deposition will focus on "central factual issues, rather than peripheral concerns"; (2) availability of the information elsewhere, "viewed with an eye toward avoiding cumulative or duplicative discovery"; and "(3) the harm to the party's representational rights." Under either test, the centrality, factual nature, and availability elsewhere of the material sought are critical.[1] And although DCAG is entitled to relief under either standard, *Shelton*'s burden-shifting framework "better safeguards the considerable policy concerns that arise when a litigant attempts to depose its opponent's counsel of record" and thus provides the appropriate standard for

---

[1] Courts routinely block depositions of investigatory agencies on similar grounds. *See EEOC v. McCormick & Schmick's Seafood Rests., Inc.*, 2010 WL 2572809, at *4 (D. Md. June 22, 2010) (collecting cases).

evaluating the motion. *State Farm Mut. Auto. Ins. Co. v. Stavropolskiy*, 2017 WL 3116284, at *2 (E.D. Pa. July 21, 2017). The R&R, inexplicably, applied neither test.

**ARGUMENT**

I.     **THE NOTICE SEEKS WORK PRODUCT, EXPERT DISCLOSURES, AND CUMULATIVE DISCOVERY,** ▮▮▮▮▮▮▮▮▮▮▮

    Topics 1 ("DC's claim for restitution" and subtopics), 2 ("DC's claim for disgorgement" and subtopics), and 3 ("DC's damages or other remedies sought through its *parens patriae* authority" and subtopics) facially seek core work product and premature expert discovery and are cumulative. Courts have recognized that interrogatories are the "preferred device" for such "complex and highly technical" topics, which also "involve legal issues," *DarbeeVision, Inc. v. C&A Marketing, Inc.*, 2019 WL 2902697, at *7 (C.D. Cal. Jan. 28, 2019) (collecting cases), if they are discoverable at all.

    Defendants have claimed that we cannot know that they will pursue these lines of inquiry, and the R&R concluded that questions on legal conclusions or expert opinions can be objected to on a question-by-question basis. *See* Ex. 7 (Defs.' Resp. to the Dist. of Columbia's Mot. to Quash Defs.' 30(b)(6) Notice) at 5; R&R p. 6 ¶ 2. Both are incorrect. The parties are not operating on a blank slate, and the chance of improper questioning is no "mere possibility." *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Envtl., Inc.*, 2009 WL 4798150, at *4 (E.D. Pa. Dec. 11, 2009) (Rufe, J.) (denying protective order). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants' pretext—avoiding double recovery, Ex. 7 at 11—involves intersecting legal and expert issues and will be dealt with during expert discovery, class certification, summary judgment, and any ruling on distribution. The R&R's

5

suggestion that improper questions are merely possible, such that question-by-question evaluation is appropriate, is erroneous and the Court should reject it.

**A.**   ██████████████████████████████████████████████

*1.   Work Product*

Topics 1-3 on their face seek legal theories, which enjoy "near absolute protection" from disclosure, *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (citation omitted), and, unlike facts, may not be discovered by means of a 30(b)(6) deposition, *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) (discovery must be "by other means"); *see SmithKline Beecham*, 2004 WL 739959, at *3. Each Topic includes a subtopic about "the entities or persons who would receive any" restitution, disgorgement, or *parens patriae* judgment that DCAG obtains, and Topic 2 has a subtopic regarding "the method by which DC will allocate" disgorged profits between itself, another state, or private plaintiffs. Defendants cannot seriously dispute that all are pure legal questions, and DCAG already referred Defendants to the statute that answers them. D.C. Code § 28-4507 (providing for distribution "in such manner as the court may authorize, according to procedures approved by the court"); *see* Ex. 8 (E. Arthur to R. Manoso, Dec. 13, 2022) at 3-4. The same is true of the subtopics asking "the location(s) [of] the purchases and sales" of generic drugs underlying DCAG's claims for restitution, disgorgement, and damages, which seek testimony about the extraterritorial applicability of District antitrust law.

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED] —should be quashed, though under either party's proposed standard it should. *Shelton*, 805 F.2d at 1327 (information sought must be nonprivileged); *Frazier*, 161 F.R.D. at 313 (focus on nonfactual issues militates in favor of protective order).

    2.  *Expert Discovery*

    A 30(b)(6) deposition is "an improper vehicle for Defendant[s] to inquire as to the bases underlying the calculation of damages." *Nippo Corp./Int'l Bridge Corp.*, 2009 WL 4798150, at *3; *see also Ecol. Rights Found. v. Hot Line Constr., Inc.*, 2022 WL 3574450, at *6 (C.D. Cal. July 27, 2022) (expert discovery through 30(b)(6) deposition inappropriate). Yet Topics 1 ("DC's claim for restitution"), 2 ("DC's claim for disgorgement"), and 3 ("DC's damages or other remedies sought through its *parens patriae* authority") prematurely and impermissibly seek the content of DCAG's experts' opinions—an issue the R&R addressed in less than half a sentence, with no analysis of Defendants' questions. *See* R&R at p. 6 ¶ 2.  Topic 1 also has a subtopic regarding the "entities or persons that purportedly paid, and/or reimbursed, an inflated amount caused" by Defendants' conspiracy, and Topics 1-3 have subtopics regarding "the location(s) where the purchases and sales" underlying DCAG's restitution, disgorgement, and damages claims occurred. Defendants have disingenuously claimed that they need 30(b)(6) testimony on these matters to identify "who the victims are and where [overpayments were made]." Ex. 7 at 10. But answering such questions obviously requires expert analysis: even with access to data showing the date, price, and location for every single District resident's generic drug purchases, no lay witness could know who overpaid or where they did so before the expert

---

[2] [REDACTED]

calculates the but-for price of each drug at issue and identifies which transactions were at inflated prices.[3] So until service of expert reports, Defendants' questions about who was injured and where the injury occurred are at best hypothetical and thus improper. *See, e.g.*, *Byrd v. Wal-Mart Transp., LLC*, 2009 WL 3055303, at *3 (S.D. Ga. Sept. 23, 2009) (hypothetical questions *never* appropriate for a Rule 30(b)(6) deposition). Even if they were not, forcing a DCAG representative to parse the voluminous data productions—which are ongoing—for Defendants is unduly burdensome and inappropriate for a lay witness. *FTC v. Am. Future Sys.*, 2022 WL 1437562, at *3 (E.D. Pa. Apr. 8, 2022) (courts take a "dim view" of topics requiring a 30(b)(6) designee to "master detailed data-based subject matter"), *aff'd as mod.*, 2022 WL 1423661 (E.D. Pa. May 5, 2022). Topics 1 and 2 are equally burdensome in that they seek previews of DCAG's experts' opinions in their subtopics concerning the "type" of restitution and disgorgement sought.[4]



Despite acknowledging that the Notice calls for expert opinions, R&R at p. 6 ¶ 2, the R&R failed to acknowledge ▮▮▮▮▮▮▮▮▮▮▮▮ and therefore misapplied the legal standard. *See Shelton*, 805 F.2d at 1327 (protective order warranted if other means to obtain

---

[3] Thus, even though Topic 4 facially seeks facts ("The facts and circumstances concerning or relating to monetary overcharges paid by DC individual consumers as a result of Defendants alleged illegal conduct."), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[4] Topic 1 – "the type of restitution sought by DC (e.g. the difference between conspiracy amount and non-conspiracy amount, profits, or something else)"; Topic 2 – "the type of disgorgement sought by DC (e.g. profits, all revenue, or something else)"

information exist); *Frazier*, 161 F.R.D. at 313 (focus on non-factual issues and availability elsewhere militate in favor of protective order).

    *3. Cumulative Discovery*

    The Notice seeks testimony on the "documents and/or data on which" DCAG "intends to rely" to prove its restitution, disgorgement, and damages claims, Ex. 1 (Topics 1-3), and to establish *parens patriae* standing, *id.* (Topic 3). Leaving aside that this is also expert discovery, DCAG has repeatedly made clear that: (1) it provided all factual information on this topic to Defendants in November of 2020, Ex. 15 (E. Arthur to Defense Counsel, Nov. 16, 2020) at 4-5; (2) the States produced to Defendants any such data in their possession, custody, or control; and (3) Defendants have pointed to no deficiencies in the aforementioned identifications or productions of data. Nevertheless, Defendants insist on conducting unspecified additional discovery on this topic through a deposition, even though requesting that DCAG supplement its November 2020 responses would be both less burdensome and less likely to result in the inadvertent disclosure of attorney thinking about damages theories or premature disclosure of expert testimony. In defiance of *Shelton* and *Frazier*, which both require consideration of whether the evidence sought in the 30(b)(6) deposition of an attorney is cumulative, the R&R wrongly gave the Notice a pass despite acknowledging that "Defendants may have served written discovery concerning similar subjects." R&R at p. 5 ¶ 9.



[5] *Compare* Ex. 15 (DCAG identifying data

---

[5] Defendants recently deposed DHCF on the only DC-specific data DCAG disclosed and have no interest in doing so here. *See* Ex. 7 (Opp.) at 11 (claiming it has "no bearing" on Topics 1-4).

produced by defendants and third parties, and commercial data, such as from IQVIA,

AnalySource) *with.* ███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ Courts in this

District have found good cause to prohibit a deposition seeking cumulative testimony. *FTC v.*

*Am. Future Sys.*, 2022 WL 1437562, at *9 (denying motion to compel deposition on topic

duplicative of discovery already conducted). *American Future Systems* adopted an argument

pressed by both Special Master Marion, as counsel for a defendant in that case, and an attorney

who also represents Pfizer/Greenstone here, that depositions "plainly duplicative" of prior

discovery are inappropriate.[6] The argument is stronger here, given the goal is to question

opposing counsel.

██   ███████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

---

[6] Ex. 16 (AFS's Opp. to Pls.' Joint Mot. to Compel Def. Am. Future Sys., Inc. to Designate a Corp. Rep. under Rule 30(b)(6) on Various Dep. Topics, *FTC v. Am. Future Sys.*, No. 20-cv-02266 (E.D. Pa.), ECF No. 146) at 15. DCAG cited the case multiple times in its briefing for this exact point; inexplicably, the R&R does not address it.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

## II.   DCAG HAS NO DOCUMENTS WITH WHICH TO PREPARE A WITNESS ON TOPICS 5 & 7; AND TOPIC 6 COVERS ALL OF DEFENDANTS' CONDUCT, AND IS THUS OVERBROAD FOR A DEPOSITION

Topics 5 (complaints DCAG received),[7] 6 (Defendants' fraudulent concealment),[8] and 7 (DCAG's investigation of Defendants' conspiracy)[9] cover matters on which Defendants claim they need testimony to make out their statute of limitations defense. But *nullum tempus* applies to claims under District law, *Dist. of Columbia v. Owens-Corning Fiberglas Corp.*, 572 A.2d 394, 404 (D.C. 1989), dooming this argument. Regardless, DCAG has no documents—and therefore no ability to educate a witness—on Topics 5 and 7. Without testimony to provide, there is good cause to prevent a deposition on these topics under either *Shelton* or *Frazier*. And Topic 6 is so all-encompassing as to be improper for a deposition. Since the information is available elsewhere (through interrogatories), good cause exists to prohibit a deposition on this topic under

---

[7] "DC's response to or investigation of complaints it received about any price or prices charged for any generic pharmaceutical product or products."
[8] "The facts and circumstances concerning or relating to any fraudulent concealment by a Defendant of a violation of a law for which DC asserts a cause of action in the MDL."
[9] "The non-privileged facts pertaining to any inquiry or investigation into any Defendants' alleged coordination related to generic pharmaceutical products, including, for example, when DC commenced any such investigation, the facts that led to any such investigation, and when DC learned of those facts."

either standard, too. *Shelton*, 805 F.2d at 1327 (party seeking deposition must establish no other means of obtaining information); *Frazier*, 161 F.R.D. at 313 (availability elsewhere militates in favor of protective order). The R&R did not address these topics at all.

### A.    DCAG Has No Information to Provide on Topics 5 & 7

*Topic 5:* DCAG located no relevant consumer complaints, but it produced one, completely irrelevant complaint mentioning Pfizer. Ex. 17 (D. Brunfeld to D. Max, Mar. 18, 2022, attaching complaint). Defendants have insisted on a deposition to learn "what DC may or may not have done after" receiving this complaint, Ex. 7 at 12, which seeks work product Defendants have shown no need for. Marginally less reaching is Defendants' claim that they seek testimony on complaints in the "public domain," *id.* at 12-13, which would be both outside the scope of Topic 5 (concerning complaints DCAG "received") and of too little probative value to justify the burden of an attorney's deposition, *see, e.g.*, *In re Generic Pharma. Pricing Antitrust Litig.*, 2023 WL 2244685, at *3 (E.D. Pa. Feb. 27, 2023) (Rufe, J.) ("publicly available price lists" insufficient to put plaintiff on notice of conspiracy); *see also In re Blood Reagents Antitrust Litig.*, 266 F.Supp.3d 750, 786 (E.D. Pa. 2017) (plaintiffs did not know and should not have known of actionable price-fixing where they lacked access to competitor communications).

*Topic 7:* DCAG believes that it first learned about the Connecticut-led investigation that led to this MDL on September 1, 2016, and has not located any documents suggesting it conducted its own investigation of the price or supply of generic pharmaceuticals prior to that date. Ex. 18 (C.W. Margrabe to A. Cummings, Sept. 7, 2023). Thus, any applicable statute of limitations is tolled until at least September 1, 2016, whether by the discovery rule or Defendants' fraudulent concealment. No investigatory steps after that date are relevant, since

12

they are within any applicable statute of limitations,[10] and there are no documents from before

that date to educate a witness (and no percipient witness from that period is still employed at

DCAG, as Defendants are well aware). Thus, there is no testimony to provide. Even if there

were, interrogatories would minimize the risk of the disclosure of work product inherent when

discovery concerns an attorney-led investigation. *See, e.g.*, *In re Generic Pharma. Pricing*

*Antitrust Litig.*, 2022 WL 110423, at *3 (E.D. Pa. Jan. 11, 2022) (Rufe, J.) (facts obtained in pre-

litigation interviews "so intertwined with the impressions of counsel as to constitute work

product").[11] There is therefore no chance that this deposition leads to relevant, important

information available only through a deposition.

> **B.     Topic 6 Is Overly Broad in Embracing Every Aspect of DCAG's Claims, and Is Available Elsewhere (Including Prior Written Discovery Responses)**

Acts in furtherance of an industry-wide price fixing conspiracy are virtually

indistinguishable from acts of concealment. *In re Aspartame Antitrust Litig.*, 2007 WL 5215231,

at *5 (E.D. Pa. Jan. 18, 2007). Thus, a deposition on Topic 6 improperly embraces nearly every

facet of Defendants' conduct. *Blackrock Allocation Target Shares: Series S Portfolio v. Wells*

*Fargo Bank, N.A.*, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (deposition topics likely

not reasonably particular if they "seek testimony as to every fact that supports a legal claim").

But depositions are not intended to be memory tests, especially those under Rule 30(b)(6). *See*

*Wellin v. Farace*, 2022 WL 14898396, at *4 (D.S.C. Oct. 26, 2022) (collecting cases).

---

[10] DCAG's first complaint was filed on July 17, 2017 and its last one was filed June 10, 2020. The statute of limitations for antitrust claims under D.C. law is four years. D.C. Code § 28-4511.

[11] Defendants have received ample discovery of state investigations, including millions of pages from the Connecticut-led investigation pursuant to the Access Protocol established years ago. *See* PTO 106 ¶¶ 1, 3. Connecticut is sitting for a deposition on September 12, ███████████████████████████████

████████████████████████████████████████████████████ *see* Ex. 18, Ex. 19

This topic should be explored through interrogatories, if at all. Indeed, ████

████████████████████████████████████████████ ████████

████████████████████████████████████████

████████████████████████ Interrogatories also avoid the risk of disclosing work product inherent in having a DCAG witness explain how Defendants' documents evidence concealment. *SEC v. Jasper*, 2009 WL 1457755, at *2 (N.D. Cal. May 26, 2009) (quashing 30(b)(6) notice because asking "what [an agency] has to say about what [third parties] said" is the "practical equivalent of an examination of" the agency's attorney).

Defendants have claimed they need testimony on this topic in part to learn "how and when [DCAG was] allegedly deceived by any of the Defendants." Ex. 7 at 13. That is both work product[12] and utterly divorced from the gravamen of the AGOs' complaints alleging that Defendants engaged in a years-long conspiracy to manipulate prices through conduct of which the public was ***entirely unaware***.

## III.    DEFENDANTS MAY NOT DEPOSE OTHER AGENCIES THROUGH DCAG

Finally, DCAG seeks protection from Defendants' efforts to elicit testimony of other agencies' knowledge insofar as the Notice is not directed to it, but rather to "DC." *See generally* Ex. 1. Any such testimony would be irrelevant with respect to Topics 1-4 because no other agency would have knowledge of the remedies DCAG is seeking or how it intends to prove them, and with respect to Topics 5-7 because another agency's knowledge cannot be imputed to DCAG for statute of limitations purposes. *See Massachusetts v. Mylan Labs.*, 608 F. Supp. 2d 127, 149-50 (D. Mass. 2008) (regarding knowledge of drug prices). Moreover, courts routinely

---

[12] DCAG's evaluation of any information Defendants conveyed to it necessarily implicates attorney mental impressions and not the "facts and circumstances" Topic 6 purports to seek.

refuse to treat other state agencies as parties for purposes of discovery in litigation brought by state attorneys general.[13]

Defendants deposed DHCF, the sole District agency with knowledge of relevant matters—in Defendants' eyes at least—on August 24. Their insistence on broadening their inquiry to the District's entire government, when they cannot name a second agency of interest, reinforces the conclusion that merely burdening DCAG is a central aim of this deposition. Indeed, the ██████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████ *SEC v. Jasper*, 2009 WL 1457755, at *2.

\* \* \*

From this record, the burden of subjecting DCAG's witness to the ██████████████ ███████████████████████████████████████████████████ will easily outweigh the benefits of any testimony. *See* Fed. R. Civ. P. 26(b)(1). Defendants' focus is DCAG's legal theories and experts' analysis, which are inappropriate for a 30(b)(6) deposition. What little factual material may remain for Defendants to seek is all available through interrogatory responses or ████████████████████████████████████ Whether the Court applies *Shelton* or *Frazier*, there is good cause for a protective order. The Court should grant the protective order and reject the Special Master's R&R.

---

[13] *See United States v. Am. Express Co.,* 2011 WL 13073683, at *2 (E.D.N.Y. July 29, 2011) (other state agencies "not parties" for purposes of litigation and discovery in action brought by attorneys general); *Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, 2007 WL 9813287, at *4-5 (D.D.C. May 8, 2007) (same); *accord In re Generic Pharma. Pricing Antitrust Litig.*, 571 F.Supp.3d 406, 410 (E.D. Pa. 2021) (Rufe, J.) (looking to Pennsylvania statutes to determine right of AGO to obtain non-party agency documents); Ex. 21 (Order, *District of Columbia v. Eads LLC*, 2018 CA 005830 B (D.C. Super. Ct. Mar. 9, 2021) at 1, 4 (precluding Rule 30(b)(6) deposition of "Plaintiff the District of Columbia" absent showing of relationship between DCAG and "any other District agency" justifying their treatment as a single entity for discovery purposes)).

Dated: September 7, 2023

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

*/s/ Adam Gitlin*
Adam Gitlin
Chief, Antitrust and Nonprofit
Enforcement Section

*/s/ C. William Margrabe*
C. William Margrabe
Elizabeth G. Arthur
Assistant Attorneys General

Office of the Attorney General
400 Sixth Street, N.W., 10th Floor
Washington, D.C. 20001
Tel. (202) 727-3400
Will.Margrabe@dc.gov











1





## **LOCAL RULE 26.1 CERTIFICATION**

I, C. William Margrabe, hereby certify that parties, after reasonable effort, have been

unable to resolve the dispute that is the subject of this filing.

Dated: September 7, 2023                                   /s/ C. William Margrabe
                                                          C. William Margrabe

## <u>CERTIFICATE OF SERVICE</u>

I, C. William Margrabe, hereby certify that the foregoing was filed electronically on the date below using the Court's CM/ECF system, which will serve a copy upon all counsel of record.

Dated: September 8, 2023

/s/ C. William Margrabe
C. William Margrabe