# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | MDL 2724<br><br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE<br><br>**ORAL ARGUMENT**<br>**REQUESTED** |

**THE OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA'S REPLY IN SUPPORT OF ITS OBJECTIONS TO SPECIAL MASTER DAVID H. MARION'S SEVENTEENTH REPORT AND RECOMMENDATION AS TO ITS MOTION TO QUASH DEFENDANTS' 30(b)(6) NOTICE OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

## ARGUMENT

The Office of the Attorney General for the District of Columbia ("DCAG") seeks a protective order against Defendants' 30(b)(6) notice (the "Notice"), which seeks attorney work product, expert opinions, and cumulative discovery.

Defendants concede our Objections' key premises: (1) the Notice encompasses improper testimony; (2) they have *focused* depositions of other AGOs on objectionable matters that fall within the Notice's scope; (3) they will do the same here; (4) the depositions they have taken have yielded almost no facts; and (5) they can obtain (if they have not already) what few facts they seek by using other discovery devices, and without risking invading work product.[1] Far from making "[b]road allegations of harm," DCAG bases its request on six-and-a-half illustrative pages of questions seeking legal conclusions and expert testimony that Defendants posed to other AGOs, *see* Appendices A & B; these "specific examples" warrant a protective order here. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

Rather than address any of the points above, Defendants retreat to safer ground: asking this Court to decide this dispute as if it involved a wholly different 30(b)(6) notice, plaintiff, and record. They ignore the many decisions granting precisely the relief DCAG seeks here, and instead cite to others that permitted depositions of enforcement agencies on deposition topics not found in the Notice and decided without the benefit of six deposition transcripts showing precisely the improper questions the defendants intended to ask. Defendants also extol the unique virtues of depositions, an argument largely predicated on the absurd premise that an enforcement agency like DCAG would put on its affirmative case at trial through its own 30(b)(6) witness.

---

[1] Tellingly, all eight attorney general offices ("AGOs") that have sat for a deposition designated an attorney as their witness.

1

As to the Notice, Defendants do not even defend the propriety of the questions on Topics 1 through 4, concerning remedies, that DCAG identified from prior AGO depositions, and they still—after briefing the Special Master twice—cannot identify any facts these Topics seek, apart from one "fact" that is actually an expert opinion (*see* Obj. 7-8), and the surprising "fact" that DCAG's experts will calculate its remedies. The goal of questioning on Topics 5 through 7, concerning Defendants' still-unpled statute of limitations defense, appears to be hearing "I don't know" over Zoom. None of this discovery requires a deposition (nor do Defendants make that claim); most of it is non-factual, and would require a lawyer and/or expert to answer, and any facts Defendants could learn are available elsewhere and peripheral at best. Thus, under *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) or *Frazier v. SEPTA*, 161 F.R.D. 309 (E.D. Pa. 1995), there is good cause to prohibit this deposition as unduly burdensome.

Defendants' fixation on conducting a pointless seven-hour deposition despite the Court's recent warning that it would be hard to timely conclude discovery if "everything now has to be a deposition," Ex. 22 (9/5/23 Status Conf. Tr.) at 26:25-27:07, reinforces the conclusion that DCAG is merely another target in Defendants' harassment campaign. Defendants call this charge "baseless" (*see* Opp. 2 n.3) but the record speaks for itself. The Court should end this now.

I. **NO COURT HAS PERMITTED THE DEPOSITION OF AN ENFORCEMENT AGENCY ON A RECORD LIKE THE ONE HERE**

Courts routinely prohibit 30(b)(6) depositions of enforcement agencies before they have begun, including on the ground that they are effectively attempts to depose opposing counsel. *See EEOC v. McCormick & Schmick's Seafood Rests., Inc.*, 2010 WL 2572809, at *4 (D. Md. June 22, 2010) ("Numerous . . . federal courts" have done so) (collecting cases); *see also Ky. v. Marathon Petroleum Co. LP*, 2018 WL 3130945, at *3 (W.D. Ky. June 26, 2018) (protective order warranted under *Shelton* where notice directed to Commonwealth was effectively attempt

to depose AGO); *SEC v. Buntrock*, 217 F.R.D. 441, 444-46 (N.D. Ill. 2003) (quashing notice seeking to "delve into the theories and opinions" of agency counsel), *aff'd*, 2004 WL 1470278 (N.D. Ill. June 29, 2004).

These courts rightly denied depositions even where the deposed party's objections to what the deposer would ask were totally hypothetical. Defendants cite contrary decisions, but in each the court refused to halt the deposition based on the notice alone. *See, e.g.*, *U.S. v. Educ. Mgmt. LLC*, 2014 WL 1391142, at *8 (W.D. Pa. Feb. 24, 2014) (difficult for resisting party to advance work product concerns "when no questions have been posed"); *EEOC v. Sterling Jewelers, Inc.*, 2010 WL 2803017, at *2 (W.D.N.Y. July 15, 2010) (privilege concerns premature "until Defendants actually ask a question" (citation omitted)). By contrast, the record here contains examples of dozens of improper questions the noticing party intends to ask, *see* Appendices A & B, *and* evidence that the prior depositions were largely fruitless, (Obj. § I.B).[2]

Nor do Defendants' authorities permit a deposition on matters similar to Topics 1 through 4 or the questions in the Appendices.[3] Some permitted depositions on **liability** allegations, *see, e.g.*, *CFPB v. Brown*, 69 F.4th 1321 (11th Cir. 2023); *SEC v. McCabe*, 2015 WL 2452937, at *3 (D. Utah May 22, 2015); *SEC v. Kramer*, 778 F.Supp.2d 1320 (M.D. Fla. 2011), but here Defendants seek a deposition on **remedies** allegations that indisputably require, and will be elaborated, by experts, *see* Ex. 1 (Topics 1-4). And while two concern a matter covered by the

---

[2] Defendants do not claim that any of the underwhelming evidence they obtained from the AGO depositions they have conducted (Opp. 3 & nn.5-6), such as the fact of Idaho's non-membership in the price-spike group, which failed to uncover Defendants' conspiracy (*id.* 13 (citing Def-Ex. G)), could only be obtained through a deposition. The only reason they first learned "about the nature" of the price-spike group during Maine's deposition (*id.* 3) is that they had not previously served statute-of-limitations discovery.

[3] In *Doe v. District of Columbia*, 205 F.R.D. 47 (D.D.C. 2005), the District of Columbia was not a "government plaintiff" (Opp. 8), but rather a defendant to a Section 1983 claim, and does not appear to have argued that only DCAG was before the court. *SEC v. Lemelson*, 334 F.R.D. 359 (D. Mass. 2020), is too summary to inform any decision here, and *Oklahoma ex rel. Edmonson v. Tyson Foods, Inc.*, 2007 WL 649335 (D. Okla. Feb. 26, 2007) involved a dispute over an apex deposition in which the plaintiff **agreed** that the defendant could proceed by a 30(b)(6) deposition instead.

Notice—pre-litigation investigations (Topic 7), *Educ. Mgmt. LLC*, 2014 WL 1391142, at *1; *Sterling Jewelers*, 2010 WL 2803017, at *3, the instant case is distinguishable: DCAG **did not** conduct an independent investigation, *see* Ex. 18, and Defendants have already deposed Connecticut's AGO, which led the pre-litigation investigation, plus seven other AGOs (to date).[4]

## II. DEFENDANTS' OBVIOUSLY PRETEXTUAL JUSTIFICATIONS FOR A DEPOSITION CONFIRM THAT THEIR PURPOSE IS TO HARASS

Defendants flail about for a reason to conduct this deposition, claiming it will "allow for follow-up [and] observation of a prospective witness's demeanor." (Opp. 6.) But it will not—even "What is the basis for your answer?" would invite an instruction not to respond after a question like "Is it [DCAG's] position that it has the ability to seek nationwide disgorgement?", *see* Ex. 10 at 86:20-21, or any question in Appendix A. And there is no "prospective [trial] witness" whose "demeanor" the factfinder will ever observe: AGOs do not generally call witnesses to explain the legal bases for their remedies or why the statute of limitations does not bar their claims, and in antitrust cases, without exception, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Defendants' concerns about "surprise" at trial (*id.* 1, 4, 5, 12) thus have nothing to do with surprise testimony and as a result can be addressed through other discovery methods, which may "bind" (*id.* 13) DCAG equally well. Finally, Defendants have had their chance to conduct a deposition concerning DCAG's document production (*id.*) during their recent deposition of DC's Medicaid agency, whose documents comprised the overwhelming majority of the more than 1.2 million pages of documents DCAG produced.[5]

---

[4] Defendants ignore the many decisions showing that they may not take discovery of other agencies through DCAG (Obj. § III), and their argument that "the District of Columbia" is the plaintiff (Opp. 5 & n.9) misses the point. PTO 158, which they are fond of citing, recognizes that "States" are distinct from and do not control "State agencies." § V.A.2.f.4.e (former must use only "best efforts" to procure the appearance of witnesses from latter at depositions).
[5] A review of production letters suggests that the only DCAG documents produced were press releases regarding this case and an irrelevant consumer complaint. (*See* Obj. 12 (citing Ex. 17).)

4

These flimsy pretexts for the deposition show that learning critical information is not Defendants' aim.

### III. DCAG'S ARGUMENTS WITH RESPECT TO THE NOTICED TOPICS STAND LARGELY UNREBUTTED, AND DEFENDANTS' WEAK COUNTERS OTHERWISE FAIL

#### A. Defendants Concede Topics 1-4 Seek Attorney Work Product, Premature Expert Testimony, and Cumulative Discovery

*1. Defendants Concede That They Intend to Pose Questions Seeking Work Product*

The Objections included an Appendix of questions through which Defendants have sought the AGOs' work product, e.g., their interpretation of and positions on the law. *See, e.g.*, Ex. 12 at 154:18-20 ("Q. So under Idaho law, an indirect purchaser cannot bring an action or participate in a class?"). *See generally* Appendix A. Defendants do not claim that a single question—much less the totality of the four pages of questions in Appendix A—is proper, nor do they suggest any proper questioning they might undertake with DCAG. (*See* Opp. at 9-11).[6]

Instead, they resort to generalities, arguing that unspecified "questions about the residents included in DC's *parens patriae* claim" do not involve work product (Opp. 10). Not so: Defendants will require DCAG's witness to state a position on the extraterritorial applicability of DC's *parens patriae* provision, D.C. Code § 28-4507(b)(1). *See, e.g.*, Ex. 10 at 70:4-7 ("Q. Is Maine's claim for treble damages on behalf of individual consumers under parens patriae authority limited to purchases that were made in the State of Maine?"). *See generally* Appendix A. But having a "witness . . . answer questions on the spot about a party's legal contentions is an improper use of a deposition." *Zeleny v. Newsom*, 2020 WL 3057467, at *2 (N.D. Cal. June 9, 2020). And the assertion that a non-attorney could competently answer the questions Defendants evidently plan to ask DCAG (Opp. 6-9) borders on the absurd, *see SmithKline Beecham Corp. v.*

---

[6] That certain other AGOs answered some of the concededly improper questions (Opp. 13) does not make them proper.

5

*Apotex Corp.*, 2004 WL 739959, at *3 (E.D. Pa. Mar. 23, 2004) (questions about a party's legal positions "very difficult for a non-attorney . . . to answer . . . at a deposition"), and would harm DCAG's representational rights, *Frazier*, 161 F.R.D. at 313, by forcing it to let a non-attorney set its legal strategy or disqualifying knowledgeable counsel from trial participation.[7]

Defendants baselessly assert that they have a "substantial need" for DCAG's work product (Opp. 9), but they must show "extraordinary circumstances" to obtain the opinion work product they seek here. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 664 (3d Cir. 2003). And with due respect to Special Master Stengel, it cannot be that pleading the statute of limitations—which Topics 1 through 4 do not even concern—suffices to demonstrate "substantial need" clearing the high bar of invading attorneys' thoughts in all instances. (Opp. 9 (citing SM Stengel's 2d R&R, ECF No. 2564, ¶ 33)). Most important, the notion that DCAG's attorneys' thinking about its claims in this case do not enjoy work product protection (Opp. 10 (citing *Doe*, 230 F.R.D. at 51)) directly contravenes this Court's prior decisions. *See In re Generic Pharma. Pricing Antitrust Litig.*, 2022 WL 110423, at *2 (E.D. Pa. Jan. 11, 2022) (Rufe, J.) (attorney memoranda memorializing witness interviews constitute work product).

    2. *Defendants Concede They Intend to Pose DCAG's Designee Questions Only Appropriate for an Expert*

Defendants do not identify a single proper, factual question among the two-and-a-half single-spaced pages of expert-only questions culled from prior depositions of AGOs. *See* Appendix B. Again resorting to generalities, they claim they "merely seek facts that may serve as the foundation for future expert testimony." (Opp. 12.) What facts? They do not say. And they

---

[7] The conclusion that designating a non-attorney is unworkable has led two states to drop out of the litigation, and may be why the eight AGOs that have testified so far have done so through an attorney. Of course, Defendants' references to "demeanor" suggest they seek to make the 30(b)(6) witness testify at trial, which could result in trial counsel's disqualification, also threatening DCAG's representational rights.

6

falsely claim "None of the Topics seek a calculation of damages[,]" (*Id.*), when they clearly do, *see* Ex. 12 at 137:23-24 ("Q. How will Idaho calculate the amount of damages or restitution for each entity?"), Ex. 10 at 81:17-18 ("Q. And how does Maine plan to calculate restitution in this litigation?") and Ex. 11 at 48:10-12 ("Q. How does Vermont plan to calculate its disgorgement claims in this case?"). *See generally* Appendix B.

Defendants' citation (Opp. 11) to *Nippo Corp./Int'l Bridge Corp. v. AMEC Earth & Envtl., Inc.*, 2009 WL 4798150 (E.D. Pa. Dec. 11, 2009) (Rufe, J.) undercuts their argument. A company seeking damages from its own performance of a demolition contract, *id.* at *1, has facts in its possession that might inform an expert's calculations in a way that an enforcement agency seeking to recover on behalf of third parties, based on the defendant's actions, does not. Deposing DCAG on third-party materials is the "practical equivalent" of deposing an attorney even when applying Defendants' preferred standard. *SEC v. Jasper*, 2009 WL 1457755, at *2 (N.D. Cal. May 26, 2009) (applying *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65 (2d Cir. 2003)). Seeking expert testimony from a DCAG staffer effectively compels DCAG "to educate . . . a . . . representative about information outside the scope of [its] normal business operations," which is not its responsibility. *Ecol. Rights Found. v. Hot Line Constr.*, Inc., 2022 WL 3574450, at *7 (C.D. Cal. July 27, 2022) (limiting 30(b)(6) scope to non-expert matters).

Rather than attempt to refute DCAG's clear explanation of the need for expert analysis to identify victims and where they overpaid for Defendants' products (*see* Obj. 7-8), Defendants baldly assert that these are "discoverable facts" (*see* Opp. 10).[8] But even identifying victims in less complex litigation often requires an expert. *See, e.g.*, *Mey v. Matrix Warranty Solutions, Inc.*, 2023 WL 3695611, at *3 (N.D. W.Va. Apr. 13, 2023) (rejecting claim that identifying

---

[8] Defendants also, inexplicably, argue that these matters do not seek **work product**. They do. *See supra* at 5.

7

recipients of unsolicited phone calls "requires no expertise"). Defendants also raise their purported "double recovery" concern as they did in prior briefing (Opp. 10), without acknowledging or disputing the at least four chances they will have to address this issue, including during expert discovery (Obj. 5).

### 3. *Defendants Concede That a Deposition on Data Sources Is Cumulative*

Defendants do not contest that questioning on the "documents and/or data on which" DCAG "intends to rely" to prove its restitution, disgorgement, and damages claims, Ex. 1 (Topics 1-3), and to establish *parens patriae* standing, *id.* (Topic 3), would be cumulative. (Obj. 9-10.) Instead they argue that "differences in each States' claim" warrant depositions of each AGO (Opp. 13), in apparent reference to their efforts to elicit DCAG's legal theories and expert opinions. But these are not discoverable simply because they are non-cumulative. *See supra*, Section III.A.1-2.

### B. Defendants Are Not Entitled to a Seven-Hour Deposition to Hear "I Don't Know" on Topics 5-7

Defendants do not dispute that they have nothing to learn from a deposition on Topics 5 and 7 (*see* Obj. § II), but in a bid to conduct this deposition they insist they must fully explore the contours of DCAG's lack of knowledge. That is all they will be able to do with respect to Topic 6, too, since they appear interested only in acts of concealment extrinsic to their conspiracy (Opp. 14-15), and DCAG is aware of none.[9] The burden of preparing for and sitting for a seven-hour deposition rife with the improper questioning Defendants intend to pursue (*see* Obj. § I.A) outweighs the benefit of hearing a witness answer "I don't know" to the few questions on these topics that do not implicate privileged or work product matters. *See* Fed. R. Civ. P. 26(b)(1).

---

[9] We assume the extrinsic acts Defendants seek to identify through the deposition are lies they told directly to DCAG, rather than to the public in general.

8

1. *Defendants Acknowledge That DCAG Received No Relevant Complaints (Topic 5) and Did Not Conduct an Independent Investigation (Topic 7); Deposition Is Improper*

DCAG's opening brief argued that any applicable statute of limitations is tolled until ***at least*** September 1, 2016—and discovery of any investigatory steps after that date is irrelevant—because it (1) first learned about the Connecticut AGO-led investigation giving rise to its claims on that date, (2) found no evidence of having conducted its own investigation into generic drug pricing prior to that date, and (3) located no relevant citizen complaints about the price of generic drugs (which in any event have minimal probative value for Defendants' statute of limitations defense). (Obj. § II.A.) Defendants do not dispute any of these points (*see* Opp. 14), and the

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Defendants' argument that DCAG must contact ex-employees about citizen complaints and prior investigations (Opp. 14) presumes there were additional complaints and investigations. DCAG's records say otherwise. As to Topic 5, DCAG advised Defendants of the results of its search for consumer complaints (one, irrelevant) over a year ago. *See* Ex. 17. As to Topic 7, DCAG recently advised Defendants that it had found no evidence of its involvement in any investigation of generic drug pricing prior to September 1, 2016. Ex. 18. Defendants have not questioned the completeness of DCAG's records, or the reasonableness of either search.[10] *See generally* Opp. 13-15. There is no obligation to make ex-employees additional casualties of this senseless exercise. *See City of Las Cruces v. United States*, 2021 WL 1890132, at *2 (D.N.M.

---

[10] This dispute does not concern a 30(b)(1) deposition. Thus there is no witness's "purported ignorance" to test. Opp. 14 (citing *In re Plastics Additives Antitrust Litig.*, 2007 WL 9825893, at *2 (E.D. Pa. July 18, 2007)).

May 11, 2021) (obligation to interview ex-employees "depends on the scope of the deposition and whether the information is otherwise available to the corporation") (surveying cases).

> 2. *Defendants' Basis for Topic 6 Is Too Tenuous to Warrant a Deposition, Especially Because Understating the Number of Concealing Acts Is to DCAG's Disadvantage*

Defendants concede that a deposition on Topic 6 is overly broad and unduly burdensome if the Court treats this action as involving a self-concealing conspiracy. (Obj. § II.B.) But if it does not, they say, they need discovery on acts of concealment extrinsic to the conspiracy. (Opp. 15.)[11] However, even if the Court did break from the majority of courts in this Circuit, which "for the most part" treat antitrust conspiracies as self-concealing, *In re Fasteners Antitrust Litig.*, 2011 WL 3563989, at *4 (E.D. Pa. Aug. 12, 2011), evidence of extrinsic acts would be minimally probative, because DCAG can establish fraudulent concealment without it, *In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 369 (D.N.J. 2001) ("[N]othing in the law of the Third Circuit . . . restricts equitable tolling to cases involving acts of concealment that are extrinsic to the underlying wrong."). And if extrinsic acts of concealment are all Defendants are after, then DCAG is aware of none.[12] A deposition is hardly necessarily to explore whether DCAG is—against interest—undercounting extrinsic acts of concealment by Defendants.

\* \* \*

There is no precedent for a deposition on topics like this, on a record like this. Defendants' purpose in noticing it is plain, and their arguments for it are poor. PTO 158 is not a license to conduct a deposition unconstrained by the Rules of Civil Procedure. DCAG therefore respectfully requests that the Court overrule the R&R and grant its motion.

---

[11] Defendants appear to advocate for the "extrinsic act" standard for proving fraudulent concealment (Opp. 15), but a Westlaw search suggests courts in this Circuit have not applied it to a price-fixing conspiracy since the 1980s. *See, e.g.*, *Pennsylvania v. Lake Asphalt & Petroleum Co. of Pa.*, 610 F. Supp. 885 (M.D. Pa. 1985).
[12] *See supra* note 9.

10

Dated: September 26, 2023                    Respectfully submitted,

                                             BRIAN L. SCHWALB
                                             Attorney General for the District of Columbia

                                             */s/ Adam Gitlin*
                                             Adam Gitlin
                                             Chief, Antitrust and Nonprofit
                                             Enforcement Section

                                             */s/ C. William Margrabe*
                                             C. William Margrabe
                                             Elizabeth G. Arthur
                                             Assistant Attorneys General

                                             Office of the Attorney General
                                             400 Sixth Street, N.W., 10th Floor
                                             Washington, D.C. 20001
                                             Tel. (202) 727-3400
                                             Will.Margrabe@dc.gov

**CERTIFICATE OF SERVICE**

      I, C. William Margrabe, hereby certify that the foregoing was filed electronically on the date below using the Court's CM/ECF system, which will serve a copy upon all counsel of record.

Dated: September 26, 2023                          /s/ C. William Margrabe
                                                                                           C. William Margrabe