**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | |

**OBJECTIONS TO SPECIAL MASTER
LAWRENCE F. STENGEL'S SECOND REPORT AND RECOMMENDATION**

TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    I.    The States Produced Non-Privileged Information About the Price Spike Working Group and Attempted to Negotiate Further Productions .......................................................................2

    II.    Defendants' Motion to Compel Sought the Production of Privileged Discovery from States. .3

    III.    Defendants Are Citing the R&R for the Proposition That OAGs Lack the Protections of the Attorney-Client Privilege or Attorney Work Product Doctrine .........................................5

STANDARD OF REVIEW ...................................................................................................5

ARGUMENT ..........................................................................................................................5

    I.    The R&R Is Contrary to Law Because the Attorney-Client Privilege Applies to Attorneys in State Attorney General Offices .........................................................................6

    II.    The R&R Is Contrary to Law Because Work Product Protection Applies to Attorneys in State Attorney General Offices Who Investigate Possible Legal Wrongdoing and Anticipate Possible Litigation .........................................................................8

        A. The Work Product Doctrine Applies to AGO Investigations .......................................8

        B. Defendants Have Not Met Their Burden of Showing Substantial Need or the Unavailability of Factual Information from Non-Privileged Sources .......................................9

        C. Defendants Have Not Shown They Are Entitled to the States' Opinion Work Product .........11

    III.    The R&R Is Contrary to Law Because PSWG States and the FTC Had a Common Interest. 13

    IV.    The R&R Is Contrary to Law Because It Conflicts with Pretrial Order No. 95 .......................14

CONCLUSION .....................................................................................................................15

TABLE OF AUTHORITIES

**Cases**

*A Michaels Piano, Inc. v. F.T.C.*, 18 F.3d 138 (2d Cir. 1994)..................................................................8

*Axler v. Scientific Ecology Grp., Inc.*, 196 F.R.D. 210 (D. Ma. 2000).......................................... 11-12

*Contour Data Sols LLS v. Gridforce Energy Mgmt, LLC*, Case No. 20-3241, 2022 WL 2709692 (E.D. Pa. Feb 10, 2022) ...............................................................................................................11

*Energy Policy Advocates v. Ellison*, 980 N.W.2d 146 (Minn. 2022) ......................................................7

*Hickman v. Taylor*, 329 U.S. 495 (1947)...............................................................................................9

*In re Blood Reagents Antitrust Litig.,* 266 F.Supp.3d 750 (E.D. Pa. 2017).........................................10

*In re Broiler Chickens Antitrust Litig.*, 2023 WL 4303476 (N.D. Ill. June 30, 2023).........................10

*In re Generic Pharma. Pricing Antitrust Litig.*, 2022 WL 110423 (E.D. Pa. Jan. 11, 2022) (Rufe, J.) ................................................................................................................................................10

*In re Generic Pharma. Pricing Antitrust Litig.*, 2023 WL 2244685 (E.D. Pa. Feb. 27, 2023) (Rufe, J.)................................................................................................................................. 9-10, 12

*Kent Corp. v. N.L.R.B.*, 530 F.2d 612 (5th Cir. 1976) .........................................................................8

*Lanham v. DeWine*, 135 Ohio St. 3d 191 (2013).................................................................................7

*Shew v. FOIC*, 245 Conn. 149 (1998) ..................................................................................................7

*Spagnoli v. Medtronic Minimed, Inc.*, 2008 WL 11333238 (S.D. Fl. June 30, 2008) ........................12

*Sprint Comms Co. L.P. v. Charter Comms, Inc.*, 341 F.R.D. 291 (D. Kan. 2022).............................. 11

*United States v. Amerada Hess Corp.*, 619 F.2d 980 (3d Cir. 1980) .....................................................7

*United States v. Doe (In re Grand Jury Investigation)*, 399 F.3d 527 (2d Cir. 2005)...........................7

*Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414 (3d Cir. 1991) ...............................8, 14

**Rules**

Fed. R. Civ. P. 26(b)(3)(A)(ii) ..............................................................................................................9

Fed. R. Civ. P. 53..................................................................................................................................5

**INTRODUCTION**

The States respectfully submit this objection to Special Discovery Master Lawrence F. Stengel's Second Report and Recommendation ("R&R"), ECF No. 2564,[1] which goes beyond Defendants' request to compel testimony and disclosure of certain documents logged as privileged by various states. In the immediate term, the R&R commands production of documents, communications, attorney notes and opinions, and attorney mental impressions related to a state enforcement investigation without measured analysis or justification. More broadly, the R&R misunderstands the attorney-client relationship between the States and their Offices of the Attorney General ("OAGs") and erroneously holds that a statute of limitations defense constitutes a "substantial need"[2] or "extraordinary circumstance[]"[3] necessary to overcome attorney work product protections, including even attorney work product protections for opinion work product. Thus, the R&R seemingly eviscerates the existence of the attorney-client privilege for OAGs and the protections of the attorney work product doctrine in any case in which defendants raise a statute of limitations defense, all on a 2,800 word record.[4] Such holding flies in the face of state and federal law, the federal rules, public policy, and the common law protections of the attorney-client relationship. The Court should reject the R&R and its obliteration of valid privilege protections.

---

[1] The States do not object to the portion of the R&R that recommends denying Defendants' request to compel discovery "related to any other State AG investigation that occurred before January 2018." R&R, ECF No. 2564, at ¶ 34.
[2] R&R, ECF No. 2564, at ¶¶ 30-32.
[3] *Id.* at ¶ 33 fn. 7.
[4] The parties were not afforded the opportunity for "full briefing" before the R&R was submitted to the Court. PTO 163 ¶ 11 (parties "shall have the right to fully brief the dispute before the issuance of a formal Report & Recommendation."

BACKGROUND

I.  **The States Produced Non-Privileged Information About the Price Spike Working Group and Attempted to Negotiate Further Productions.**

Starting in March of 2023, certain of the States supplemented their discovery responses and provided Defendants with privilege logs, listing emails and documents exchanged between States Attorneys General and the FTC that discussed research prepared by attorneys related to "generic drug pricing review." The States, in the interest of streamlining discovery while also maintaining their privileges and rights, proposed a stipulation to produce certain documents related to the "Generic Drug Price Spike Working Group."[5] The States sent the first draft of this stipulation to Defendants on March 31, 2023. Ex. A, States' March 31, 2023 Email to Defendants With States' Proposed Order and Stip. On April 21, 2023, in the midst of negotiating this stipulation, Defendants served their Fourth Set of Requests for Production of Documents to Plaintiff States ("Defendants' Fourth Set of RFPs"). Ex. B, Defendants' Fourth Set of RFPs. Defendants sought, inter alia, "[a]ll Documents or Materials that concern or relate to the Generic Price Spike Working Group, including any agendas, minutes, presentation materials, or calendar invitations…as well as all communications…concerning, relating to, or referencing the Generic Price Spike Working Group between or among any State." *Id.* On May 22, 2023, the States served responses to Defendants' Fourth Set of RFPs. Ex. C, States' Responses to Defendants' Fourth Set of RFPs. The States objected to the RFPs in part because they sought information protected by the attorney-client privilege, work product doctrine, deliberative process privilege, investigative privilege, and other privileges and immunities maintained by the Attorneys General. *Id.* The parties continued

---

[5] After a December 2014 presentation by Professor Geoffrey Joyce, multiple OAGs formed a Price Spike Working Group ("PSWG"). Fourteen states (California, Connecticut, Florida, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, New York, Ohio, Rhode Island, South Carolina, and Vermont) eventually joined the distribution list. PSWG States did not issue subpoenas or interview witnesses under the auspices of the PSWG.

2

to negotiate the stipulated order, believing that the States' objections and Defendants' concerns could be addressed by the stipulation. *See, e.g.* Ex. D, States' June 8, 2023 Email to Defendants. Defendants ultimately refused to agree to the stipulation or accept the States' assertions in the draft stipulation regarding the nature of the investigation and the relationship with the investigations by the Connecticut Office of the Attorney General that led to the State AG Complaints.

On August 11, 2023, the PSWG States provided a privilege log and produced non-privileged documents responsive to RFPs 69-74, which included calendar invitations, scheduling emails, and public materials shared among the PSWG States. The privilege log identified documents withheld on the basis of attorney-client privilege, attorney work product, investigative privilege, and deliberative process privilege. Ex. E, States' Production Letter and Privilege Log. Defendants did not attempt to reach out to the States to discuss the sufficiency of the log or the States' privilege objections. Instead, Defendants filed the motion at issue.

## II. Defendants' Motion to Compel Sought the Production of Privileged Discovery from States.

On August 17, 2023, Defendants filed a letter seeking an order to compel production of withheld PSWG documents and an order that three State 30(b)(6) witnesses answer certain deposition questions to which their counsel objected on the basis of privilege.[6] Ex. F, Def.'s Mot. to Compel. Despite the months of good-faith negotiations between the States and Defendants regarding the stipulation, the States' production of all non-privileged documents, and the States' multiple attempts to explain the basis of their privilege objections, Defendants claimed that the States "refused to comply" with their discovery obligations and that the States' privileges were

---

[6] The States subsequently answered substantially all of the deposition questions at issue by stipulation. Exs. H and I.

3

"vague and unarticulated." *Id.* at p. 2. Defendants denied that the attorney-client privilege or attorney work product doctrine applied, but did not address the States' investigative privileges or deliberative process privileges. *Id*. Defendants also sought documents regarding "any other related State AG investigation that occurred before June 2018 . . . . as this information is relevant to statute-of-limitations defenses." *Id.* at p. 7. On August 25, 2023, the States filed an opposition to Defendants' motion to compel, explaining their privilege and work product objections. Ex. G, States' Opp. To Def.'s Mot. to Compel.

On September 6, 2023, after oral argument, Defendants sent a follow-up letter to Judge Stengel, greatly expanding the scope of their already-broad motion to compel. Defendants stated that they now sought not merely documents related to the PSWG, but also (1) all documents logged by certain States, and (2) "all documents responsive to Defendants' Fourth Set of RFPs." Ex. J, Def.'s Sept. 6, 2023 Letter to Judge Stengel. The States demonstrated in their September 8, 2023 response that it was improper for Defendants to expand the scope of their request so broadly, and that such a broad order—which would compel production of internal and external communications—would implicate and indeed waive state-specific privileges that the States had not had an opportunity to brief. Ex. K, States' Sept. 8, 2023 Letter to Judge Stengel. On September 15, 2023, Judge Stengel issued his R&R, compelling "the disclosure of materials and testimony related to the Generic Pharmaceuticals Price Spike Working Group, but deny[ing] without prejudice their request to compel discovery 'related to any other State AG investigation that occurred before June 2018' and instead direct[ing] Defendants to submit further motions should issues arise regarding these alleged other investigations." R&R, ECF No. 2564, at ¶ 34.[7]

---

[7] States with documents responsive to RFPs 69-74 withheld on the basis of asserted privileges continue to withhold such discovery pending the Court's ruling on these objections to the R&R.

4

### III. Defendants Are Citing the R&R for the Proposition That OAGs Lack the Protections of the Attorney-Client Privilege or Attorney Work Product Doctrine.

Despite Judge Stengel expressly limiting his recommendation to discovery related to PSWG, Defendants are already citing the R&R in support of Defendants' requests for non-PSWG discovery and Defendants' arguments that States lack attorney-client privilege and work product protection for non-PSWG investigations. *See* Defendants' Response to the District of Columbia's Objections to Special Master David H. Marion's Seventeenth Report and Recommendation, Sept. 18, 2023, ECF No. 2568, at 9 (citing the R&R regarding PSWG discovery as purportedly "holding that Defendants' a [sic] substantial need for statute-of-limitations discovery is sufficient to overrule work-product objections"); *id*. at 14 (citing the R&R regarding PSWG discovery as purportedly holding that "any pre-litigation investigation is not protected" by work product: "Other depositions on these topics have revealed critical information—in particular the discovery of the PSWG that many states participated in—and any pre-litigation investigation is not protected by DC's sweeping work product claim.").

### STANDARD OF REVIEW

This Court reviews the R&R *de novo*. PTO 49, ECF No. 667, at 3 ("If objections are filed, the Court will consider the matter *de novo* pursuant to Fed. R. Civ. P. 53.").

### ARGUMENT

The R&R includes three erroneous rulings. First, the R&R found that the PSWG documents could not be protected by the attorney-client privilege because, in his view, the privilege only covered direct communications with clients or confidential information provided by clients. ECF No. 2564, at ¶¶ 18-20. Second, the R&R found that despite the fact that the PSWG was investigating possible legal violations by drug companies, its communications were not attorney work product because litigation was not "impending." *Id*. at ¶ 29. Finally, the R&R

5

found that even if the materials were work product, the Defendants had demonstrated both a substantial need for the materials and that they could not be obtained otherwise without undue hardship. *Id*. at ¶ 33. Each of these conclusions lacks factual and legal support, which warrants the Court's rejection of the R&R.

I. **The R&R Is Contrary to Law Because the Attorney-Client Privilege Applies to Attorneys in State Attorney General Offices.**

The R&R is founded on an erroneous view of the attorney-client privilege. The R&R concluded that attorney-client privilege "only applies to those intra-agency communications that contain legal advice or confidential information from a client." R&R, ECF No. 2564, at ¶ 18. He elaborated that the emails did not "include legal advice" or "contain confidential information disclosed for the purpose of obtaining legal advice." *Id.* at ¶ 19.[8] These statements either find or imply that communications containing legal analysis between attorneys in attorney-general offices could not satisfy the standard for attorney-client privilege because there was no "client" to advise or receive confidential information from. In essence, the R&R found that, unlike corporate entities or other government agencies, an Attorney General's in-house enforcement attorneys cannot communicate in confidence.

The R&R's interpretation of the attorney client privilege is not in congruence with the broader standard articulated by the Third Circuit. Attorney-client privilege attaches to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of *obtaining or providing* legal assistance for the client." *Teleglobe Communs. Corp*., 493 F.3d 345, 359 (3d Cir. 2007) (internal quotation marks omitted) (emphasis added). It is not necessary that a communication directly ask, give, or pass on either legal advice or confidential information—the

---

[8] This may go to the sufficiency and scope of the privilege log rather than the applicability of privileges to the logged and unlogged documents at issue.

attorney client privilege also extends to those intra-attorney communications necessary to develop or render such advice.  *Id.*; *see also United States v. Amerada Hess Corp.*, 619 F.2d 980, 984 (3d Cir. 1980) (holding that attorney notes and memoranda used to develop or reflecting legal advice were privileged).  Nor could the attorney-client privilege rule be any other way—a privilege protecting advice is worthless if any other document or communication used to develop, refine, or render that advice may be discovered.

Here, the "clients" are the States, and each State's individual Attorney General.  Like any other entity, the attorney-client privilege protects communications by and among a State and the Attorney General's lawyers to develop legal advice:

> There is, then, substantial authority for the view that the rationale supporting the attorney-client privilege applicable to private entities has general relevance to governmental entities as well . . . . The privilege serves to promote the free flow of information to the attorney (and thereby to the client entity) as well as to the individual with whom he communicates. The government attorney requires candid, unvarnished information from those employed by the office he serves so that he may better discharge his duty to that office.

*United States v. Doe (In re Grand Jury Investigation),* 399 F.3d 527, 533, 535 (2d Cir. 2005); *see also Lanham v. DeWine*, 135 Ohio St. 3d 191, 198 (2013) (communications between attorney general executive staff and attorney general opinion unit attorneys were protected by attorney client privilege); *Shew v. FOIC*, 245 Conn. 149, 158 (1998) ("In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice."); *Energy Policy Advocates v. Ellison*, 980 N.W.2d 146, 150 (Minn. 2022) (reversing the lower court and rejecting "the categorical rule that the attorney-client privilege may never apply to internal communications within the Office of the Attorney General 'in the absence of a communication between one of the attorneys and a client,'" and holding that "[t]he attorney-client privilege indisputably extends to

7

public law offices" and applies "to internal communications among attorneys in public law agencies").

In other words, the privilege attaches to materials shared among counsel for the States for purposes of identifying the existence of a claim and enforcing the laws of the individual states. The R&R's statement that "Plaintiff States' purported reasons for asserting the attorney-client privilege (i.e., to protect communications regarding legal analysis between attorneys who bring civil enforcement litigation) is inconsistent with the well-established and narrowly construed purpose of the attorney-client privilege" is contrary to law. R&R, ECF No. 2564, at ¶ 19 fn. 3.

The attorney-client privilege affords "absolute protection" over such communications, including those identified in the PSWG privilege log. *Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1429 (3d Cir. 1991). Because the PSWG documents were all communications between attorneys used to develop legal advice for their respective States and Attorneys General, they were properly withheld.

II.     **The R&R Is Contrary to Law Because Work Product Protection Applies to Attorneys in State Attorney General Offices Who Investigate Possible Legal Wrongdoing and Anticipate Possible Litigation.**

   A.  **The Work Product Doctrine Applies to AGO Investigations.**

The R&R dismisses the States' assertion that the PSWG's investigation took place in anticipation of litigation: "[T]he purpose of the PSWG investigation was to determine whether a claim relating to the generic drug price spikes existed, at all. This is not enough." R&R, ECF No. 2564, at ¶ 29. But the law is clear: documents created by government attorneys over the course of an investigation constitute work product *even when* no litigation actually ensues and *even when* the attorneys "may have thought that litigation might not ever occur." *A Michaels Piano, Inc. v. F.T.C.*, 18 F.3d 138, 146 (2d Cir. 1994); *Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 623-24 (5th Cir. 1976) (holding that government notes and memoranda are protected work product, even at the

earliest stages of an investigation, because "written evaluations of the evidence necessarily were founded on the assumption that any given charge might become enmeshed in litigation"). The PSWG was a multi-state investigation into possible causes of generic drug price increases, which, as with virtually all inquiries by law enforcement agencies, necessarily involved the prospect of future litigation. *See Kent*, 530 F.2d at 623 (holding that, where possible legal violations exist, public agencies' "basic function is to litigate"). The R&R fails to acknowledge, much less distinguish, any of these authorities which pertain specifically to state attorney general investigations, and instead relies on holdings which concerned private entities. This is sufficient on its own to reject the R&R.

### B. Defendants Have Not Met Their Burden of Showing Substantial Need or the Unavailability of Factual Information from Non-Privileged Sources.

Defendants cannot show that they have "substantial need" for the PSWG's fact work product "to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Hickman v. Taylor*, 329 U.S. 495, 512 (1947) ("[A] burden rests on the one who would invade [the privacy of an attorney's course of preparation] to establish adequate reasons to justify production . . . ."). PSWG fact work product is minimally probative for Defendants' statute of limitations defense and, because it is publicly available, Defendants can easily obtain it elsewhere.

In the Court's order denying the Defendants' motions to dismiss on statute of limitations grounds, the Court framed the question of fraudulent concealment as being one of establishing when the States had constructive or actual awareness of the existence of Defendants' conspiracy—not just of high drug prices. *See In re Generic Pharma. Pricing Antitrust Litig.*, 2023 WL 2244685, at *3 (E.D. Pa. Feb. 27, 2023) (Rufe, J.) ("Nor does the fact of publicly available price lists establish as a matter of law that Plaintiff States should have known the reason that the prices were

9

set as they were."). Discovery from and about the PSWG will be minimally probative, if at all, on this issue, because the PSWG only reviewed public information and issued no subpoenas. Ex. ___ (Responses to Fourth RFPs) at 14. Because the PSWG never received any confidential information from Defendants, PSWG members could not have had actual or constructive notice of the conspiracy during its existence. *See In re Broiler Chickens Antitrust Litig.*, 2023 WL 4303476, at *34 (N.D. Ill. June 30, 2023) (holding that impetus for price-fixing conspiracy investigation "could not be the market facts alone; rather, Plaintiffs had to have some reason to suspect a conspiracy"); *In re Blood Reagents Antitrust Litig.*, 266 F.Supp.3d 750, 786 (E.D. Pa. 2017) (holding that plaintiffs did not know and should not have known of actionable price-fixing where they lacked access to competitor communications).

Additionally, PSWG documents, insofar as they contain material that is not opinion work product, contain publicly available information that is equally available to Defendants. Thus, Defendants cannot establish substantial need for such publicly available information. Indeed, the Court has already ruled that Defendants are not entitled to Plaintiffs' work product in an analogous context, where the material incorporated into the work product was available elsewhere. *See In re Generic Pharma. Pricing Antitrust Litig.*, 2022 WL 110423, at *2 (E.D. Pa. Jan. 11, 2022) (Rufe, J.) (refusing to compel production of attorney memoranda memorializing witness interviews); *see also* PTOs 70, 106 and 143 (limiting the disclosure of Connecticut's investigative files to the factual information received). The PSWG States have already produced non-privileged documents regarding the PSWG that were responsive to Defendants' Fourth Set of RFPs. Defendants are not entitled to fact work product incorporating those documents, too.

The States have produced all non-privileged investigatory documents and consumer complaints. Furthermore, Defendants have collectively filed hundreds of pages worth of motions

10

to dismiss on statute of limitations grounds. Thus, Defendants do not have a substantial need such that they are entitled to fact work product. "[Defendant] has neither demonstrated it has a substantial need for the documents nor shows that it cannot obtain the substantial equivalent of the information contained in the work product by other means without undue hardship . . . . [Defendant's] desire to boost its statute of limitations defense is not a 'substantial need.' Indeed, [Defendant]'s Motion clearly lays out its statute of limitations argument using the information already in its possession." *Contour Data Sols LLS v. Gridforce Energy Mgmt, LLC*, Case No. 20-3241, 2022 WL 2709692, at *3 (E.D. Pa. Feb 10, 2022) (Report and Recommendation adopted at Dkt. No. 243) (J. Rufe); *see also Sprint Comms Co. L.P. v. Charter Comms, Inc*., 341 F.R.D. 291, 299 (D. Kan. 2022) (holding that information necessary to statute of limitations defense was not "inextricably merged with the elements of plaintiff's case and defendants' affirmative defense. [Defendants] have other means of acquiring the information").

    **C. Defendants Have Not Shown They Are Entitled to the States' Opinion Work Product.**

The R&R does not include the proper analysis for opinion work product and only superficially addresses the more stringent standard required for the production of opinion work product in a last-page footnote. *See* R&R, ECF No. 2564, at ¶ 29 fn. 6. The PSWG documents withheld on the basis of asserted privileges contain both factual information gathered by the States and the opinions of the attorneys reviewing it. Although Defendants have the burden of showing substantial need and unavailability from other sources as to both categories of work product, Defendants also must demonstrate that there are "rare and exceptional circumstances" before they may obtain opinion work product containing counsel's mental processes. *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 662-63 (3d Cir. 2003). This requires a "far stronger showing of necessity and unavailability by other means." *See Axler v. Scientific Ecology Grp., Inc.,* 196

11

F.R.D. 210, 213 (D. Ma. 2000) (limiting disclosure of work product to specifically enumerated facts because "before disclosure of attorney's *opinion* work product is ordered a far stronger showing of necessity and unavailability by other means is required…for statute of limitations purposes the relevant question is not the subjective question of when an individual actually discovered the alleged fraud. Rather it is an objective question of when the required 'storm warnings' appeared") (emphasis in original) (citation omitted); *Spagnoli v. Medtronic Minimed, Inc.*, 2008 WL 11333238 (S.D. Fl. June 30, 2008) (piercing factual work product privilege only; allowing production with redactions for opinion work product).

      Here, Defendants have not established the "rare and exceptional circumstances" necessary to compel the production of the PSWG States' opinion work product. Indeed, they did not even assert a need for it. *See generally* Ex. F, Def.'s Mot. to Compel. The R&R should thus be rejected, to the extent it compels the production of opinion work product, on this ground alone.

      Even if Defendants *had* briefed the issue, however, they still would come up short. No amount of time the AGOs spent scrutinizing those publicly available documents could ever reveal "the reason," *In re Generic Pharma. Pricing Antitrust Litig.*, 2023 WL 2244685, at *3, for the price spikes in generic drugs because Defendants kept their collusion secret. Thus, proving actual knowledge of the conspiracy with the PSWG States' opinion work product would be impossible. And if that is the case, then Defendants cannot possibly meet the high threshold for obtaining it.

      Additionally, there is no reason Defendants will ever need the States' opinion work product, *i.e.*, OAG attorneys' thoughts about the legal significance of the evidence in their possession: "for statute of limitations purposes the relevant question is not the subjective question of when an individual actually discovered the alleged fraud. Rather it is an objective question of when the required 'storm warnings' appeared." *See Axler*, 196 F.R.D. at 213 (citation omitted).

The States have been forthcoming with evidence that Defendants may try to use to argue that the States ignored "storm warnings." The States have produced all of the documents obtained through the separate Connecticut-led investigation. In addition, all State OAGs have responded to Defendants' Fourth Set of RFPs (and some have produced documents), many State OAGs answered Defendants' questions "in lieu" of a 30(b)(6) deposition, and still other State OAGs have sat or will sit for 30(b)(6) depositions.[9] Defendants cannot show that, despite all of this discovery, "rare and exceptional" circumstances, *In re Cendant Corp. Sec. Litig.*, 343 F.3d at 662-63, still exist that would permit the discovery of the PSWG States OAG attorneys' thinking about the legal significance of public reports about high generic drug prices.[10]

### III. The R&R Is Contrary to Law Because PSWG States and the FTC Had a Common Interest.

PSWG States and the FTC had a common interest, which "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *Teleglobe Commc'ns Corp.*, 493 F.3d at 364. The FTC's participation in PSWG communications did not destroy the common interest, as Defendants argued in their motion to compel. The FTC Act and Rules of Practice protect information submitted to the Commission and enable the Commission to share information with other law enforcement agencies on a confidential basis. Sections 6(f) and 21 of the FTC Act; Commission Rules 4.10, 4.11.

---

[9] Washington, Connecticut, the USVI, Idaho, Vermont, Maine, Wisconsin, New Hampshire, West Virginia, and Nevada have all sat for depositions.

[10] The R&R summarily concluded Defendants had, despite not even briefing it, "met this heightened standard" to demonstrate their entitlement to the State AGOs' work product. R&R, 2564, at ¶ 19. It also stated that "Plaintiff States do not allege that the materials contain opinion work product." *Id*. The States did argue that the materials contain opinion work product. *See* Ex. G, States' Obj. to Def.'s Mot. to Compel, at 2 (citing *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003).]

13

Defendants' citation of *Westinghouse* for the proposition that "disclosure to federal agencies waives privilege" is inaccurate. *Westinghouse* simply stated the general rule that "when a client voluntarily discloses privileged communications to a third party, the privilege is waived." 951 F.2d at 1424. *Westinghouse* also recognized there are "exceptions to the rule that disclosure waives the attorney client privilege" including disclosure to those with a common interest. *Id*.

**IV.     The R&R Is Contrary to Law Because It Conflicts with Pretrial Order No. 95.**

Finally, not only are the PSWG documents at issue *actually* privileged, but also the parties and the Court agreed that such documents are *presumptively* privileged. Over a period of several months, dozens of lawyers negotiated the content of Pretrial Order No. 95, the "ESI Protocol." Section 11.8 of PTO 95 identifies categories of "Documents Presumptively Excluded from Privilege Logs." The parties agreed that these documents were so likely to be privileged that litigation of privilege claims would waste time and resources. These categories include documents between counsel:

> a) Any documents or communications sent solely between and among counsel for the Plaintiff States or state governmental agencies (including the State Attorneys General), or persons employed by or acting on behalf of such counsel.
>
> b) Communications, after July 15, 2014, exclusively between a Producing Party (either defendant or plaintiff) and its outside litigation counsel (or in the case of states, litigation counsel), primarily about this MDL, the Private Actions, or the State Actions (all as defined by PTO 45), or the state investigation of the generic pharmaceuticals industry. . . .
>
> c) Work product created for this MDL, the Private Actions, or the State Actions (all as defined by PTO 45), or the state investigation of the generic pharmaceuticals industry . . . . after March 2, 2016.

*Id.* The materials at issue in the Defendants' motion include intraoffice communications among single OAGs, interoffice communications between OAGs, and attorney mental impressions and opinion work product. The R&R orders these documents produced—and, in doing so, undermines the negotiation and reasoning that went into the ESI Protocol. The R&R's erroneous modification

14

of the ESI Protocol stands in contrast to the methodical process the Court followed in adopting the ESI Protocol originally.

Defendants' motion to compel sought the productions of all materials relating to the PSWG, including documents that were properly not logged pursuant to the ESI Protocol. Yet, at oral argument, Defendants focused on the applicability of privileges to the *logged* documents, and did not address the differences or presumptions attached to unlogged privileged documents. Likewise, Judge Stengel did not review or identify what other materials might be subject to the R&R. In the R&R, Judge Stengel explained why he did not review the documents on privilege logs: "I do not believe there is a need to review the challenged documents in camera because *Plaintiff States' privilege logs* do not include a single document that Plaintiff States describe as containing communications pertaining to legal advice or otherwise confidential information received from a client in order to obtain legal advice." ECF 2564 at 5, fn.4 (emphasis added).[11] The R&R does not address the differences between a memorandum or agenda circulated among the states and an email or notes circulated among attorneys within one state OAG, nor does the R&R address the applicability of privileges to such internal materials. But the ESI Protocol does— the ESI Protocol recognizes that these materials are presumptively privileged. The Court should preserve the conclusions in fair and legally well-supported ESI Protocol that all worked diligently to create.

## **CONCLUSION**

For the foregoing reasons, the R&R compelling disclosure of privileged information should be rejected and reversed. The States should not be compelled to provide privileged discovery.

---

[11] This view may implicate the sufficiency and scope of the privilege log rather than the applicability of privileges to the logged and unlogged documents at issue. As stated above, Defendants did not contest the sufficiency of the privilege log as to any specific documents.

15

Dated: September 29, 2023

/s/ *W. Joseph Nielsen*
W. Joseph Nielsen
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Joseph.Nielsen@ct.gov
*Liaison Counsel for the States*


/s/ *Sage LaRue Zitzkat*
Sage LaRue Zitzkat
Assistant Attorney General
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Sage.Zitzkat@ct.gov
*Counsel for the State of Connecticut*

Respectfully submitted,

/s/ *Allison C. Frisbee*
Allison C. Frisbee
Assistant Attorney General
Office of the Attorney General,
Antitrust Department
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5040
Fax: (860) 808-5391
Allison.Frisbee@ct.gov
*Counsel for the State of Connecticut*