**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO[1]:<br><br>*All State Actions*<br><br><br>*Certain EPP Actions* | 16-AM-27242<br>16-BZ-27242<br>16-CB-27242<br>16-CM-27242<br>16-DS-27242<br>16-LV-27242<br>16-LD-27242<br>16-PV-27242<br>18-CV-02401<br>19-CV-06011 |

**SANDOZ INC.'S MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY**
**INJUNCTION AND TEMPORARY RESTRAINING ORDER TO PREVENT**
**SPIN-OFF AND TRANSFER OF ASSETS BY DEFENDANT SANDOZ INC. AND**
**THIRD-PARTIES NOVARTIS AG AND SANDOZ AG**

---

[1]     Plaintiffs captioned their Motion as relating to All State Actions and Certain EPP Actions, but filed it on the Master Docket and specific EPP Action dockets, and did not file it on any State Action docket. Because the Electronic Case Filing system does not permit parties to file opposition papers on dockets where no motion is pending, and in order to ensure a clear record, Sandoz Inc. files this opposition on the same dockets where the motion was filed. Sandoz Inc. objects to the motion being filed on the Master MDL Docket because the motion does not relate to all actions in the MDL. *See* PTO No. 33 (Case Management Order) ¶ 7.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT .................................................................................................................... 4

    I.     The Relief Sought is Barred by *De Beers* and *Grupo Mexicano* ........................... 4

    II.    Sandoz Inc. Is Not a Party to The Spin-Off Transaction and Not a Proper Party to Enjoin ................................................................................................... 8

    III.   Plaintiffs Have Not Established a Likelihood of Success on The Merits of Their Unasserted Claims ................................................................................... 10

    IV.   Plaintiffs Have Not Demonstrated Irreparable Harm ......................................... 11

    V.    The Balance Of The Equities Weighs Against a Preliminary Injunction ............. 12

        A.    Plaintiffs' Inexcusable Delay in Seeking Relief is Itself Inequitable ....... 12

        B.    The Harm to Sandoz Inc. is Substantial ................................................... 13

        C.    The Public Interest Does Not Favor Intervention by this Court. .............. 14

CONCLUSION ................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akers v. Akers,*
    No. 5:15-CV-2512, 2015 WL 4601155 (E.D. Pa. July 31, 2015) ...........................................8

*Ball v. Famiglio,*
    396 F. App'x 836 (3d Cir. 2010) ...........................................................................................5

*Benisek v. Lamone,*
    138 S. Ct. 1942 (2018)........................................................................................................12

*De Beers Consol. Mines v. United States,*
    325 U.S. 212 (1945)..............................................................................................4, 5, 6, 8

*de Cristo Cano v. Biden,*
    598 F.Supp.3d 921 (S.D. Cal. 2022)....................................................................................8

*Doe by & through Doe v. Boyertown Area Sch. Dist.,*
    897 F.3d 518 (3d Cir. 2018)...............................................................................................10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000).............................................................................................................8

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989)...............................................................................................................7

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
    527 U.S. 308, 333 (1999).........................................................................................4, 6, 7, 8

*Harris v. Hershey Med. Ctr.,*
    No. 1:08-cv-843, 2008 WL 5278730 (M.D. Pa. Dec. 18, 2008) .......................................8, 9

*In re Fredeman Litig.,*
    843 F.2d 821 (5th Cir. 1988) ...............................................................................................5

*In re Generic Digoxin & Doxycycline Antitrust Litig.,*
    222 F. Supp. 3d 1341 (U.S. Jud. Pan. Mult. Lit. 2017) .......................................................6

*In re Processed Egg Prods. Antitrust Litig.,*
    821 F. Supp. 2d 709 (E.D. Pa. 2011) ...................................................................................9

*Karpov v. Karpov,*
    555 F. App'x 146 (3d Cir. 2014) ..........................................................................................6

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004).............................................................................10

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*,
    562 F.3d 553 (3d Cir. 2009).............................................................................11

*Lydo Enters., Inc. v. City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984) .........................................................................12

*Nanjing Textiles Imp/Exp Corp., Ltd. v. NCC Sportswear Corp.*,
    No. 06 Civ. 52, 2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006) ..........................7

*Novatek Corp. v. Mallet*,
    324 F. Supp. 3d 560 (E.D. Pa. 2018) ..............................................................7

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
    810 F.3d 631 (9th Cir. 2015) ...........................................................................5

*Perry v. Dunlavey*,
    No. 11–234, 2011 WL 5864062 (W.D. Pa. Oct. 31, 2011) ..........................8, 10

*Rodden v Fauci*,
    571 F.Supp.3d 686 (S.D. Tex. 2021) ...............................................................8

*Saticoy Bay LLC Series 970 Flapjack Drive v. Fed. Nat'l Mortgage Assoc.*,
    2:18-cv-00961-RFB-NJK, 2018 WL 2448447 (D. Nev. May 31, 2018).........13, 14

*Symphony FS Ltd. v. Thompson*,
    No. 5:18-CV-3904, 2018 WL 6715894 (E.D. Pa. Dec. 20, 2018)........................8

*Thomas v. Terra*,
    No. CV 22-4701, 2023 WL 3204021 (E.D. Pa. May 2, 2023) ...........................6

*W. Airlines, Inc. v. Intl. Broth. of Teamsters*,
    480 U.S. 1301 (1987)......................................................................................13

*Windham v. Harman Law Offs.*,
    No. 15-12809-FDS, 2015 WL 4262469 (D. Mass. July 8, 2015)........................8

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008)...........................................................................................10

*Zaslow v. Coleman*,
    103 F.Supp.3d 657 (E.D. Pa. 2015) ...............................................................10

## **Statutes**

15 U.S.C. § 15.................................................................................................11

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law:  An Analysis of Antitrust Principles and Their Application* (5th ed. 2023) ...................................................................11

Unif. Fraudulent Transfer Act §§ 4-5, 7 ........................................................................11

**<u>Other Authorities</u>**

Federal Rule of Civil Procedure 9(b) ............................................................................11

Federal Rule of Civil Procedure 64 ..................................................................................7

Sandoz Group AG, Listing Prospectus dated August 18, 2023, https://www.sandoz.com/sites/sandoz_com/files/Sandoz-Group-AG-Prospectus-2023-08-17.pdf .........................................................................................3, 9

Defendant Sandoz Inc. submits this memorandum of law in opposition to Plaintiffs' Motion For a Preliminary Injunction and Temporary Restraining Order to Prevent Spin-Off and Transfer of Assets.  Doc. No. 2580.

## PRELIMINARY STATEMENT

The relief Plaintiffs seek in this motion is not merely extraordinary, it would be an unheard-of expansion of the equitable powers of the United States Courts.  With three business days remaining before the closing of a multi-billion dollar transaction that was announced over a year ago, Plaintiffs attempt to use the machinery of this Court to restrain two Swiss corporations—neither of which is a defendant in any case pending before this Court—from completing a Swiss stock transaction.  Plaintiffs' motion is premised on a theory that the unrelated transaction allegedly between non-parties Novartis AG and Sandoz AG[2] constitutes a fraudulent conveyance and prevents certain assets from being used to satisfy a hypothetical future judgment against Sandoz Inc. in this MDL.  But Plaintiffs have not filed a complaint asserting a fraudulent conveyance claim; they have not attempted to meet the elements of a fraudulent conveyance claim; and they have not alleged, let alone demonstrated by clear evidence, that there has been a fraudulent conveyance.  Plaintiffs' motion is improper and fails on numerous grounds.

First, the requested relief is barred by longstanding precedent of the United States Supreme Court holding that U.S. District Courts lack the authority to issue an injunction restricting a party's disposition of its assets pending the adjudication of claims like those Plaintiffs assert in this MDL.

Second, Sandoz Inc. is not a party to the transaction allegedly between Novartis AG and Sandoz AG.  It is a U.S. subsidiary of Sandoz AG, which itself is—via Sandoz Group AG—an

---

[2]     The challenged transaction is a spin-off of Sandoz Group AG by Novartis AG.

indirect subsidiary of Novartis AG.  Sandoz Inc. has no power to interfere with a transaction to which it is not a party, and it is not a proper party against whom an injunction can be entered.

Third, Plaintiffs do not even attempt to satisfy the requirements for a temporary restraining order by establishing a likelihood of success on the merits.  To the contrary, instead of pleading and proving that they are likely to prevail on a claim that defendant Sandoz Inc. or other nonparties engaged in a fraudulent conveyance, they simply rely on conclusory assertions that they are likely to prevail on their underlying MDL claims.  Plaintiffs are not entitled to an injunction on a claim that they have yet to assert.

Fourth, Plaintiffs fail to demonstrate a single reason why this Court should grant any equitable relief when their MDL claims are for remedies at law, which can be satisfied with money damages; they were dilatory in waiting over a year before jamming the Court and Sandoz Inc. with this motion on the eve of closing; and the relief would severely harm the numerous stakeholders involved in, committed to, and reliant on this long-planned transaction.

## STATEMENT OF FACTS

More than a year ago, Swiss corporation Novartis AG announced its plan to spin off 100% of the Sandoz business line to create an independent, publicly-owned corporation.  This Swiss corporation, Sandoz Group AG (i.e., not Sandoz AG), is today already a stand-alone entity with 100% of its shares owned by Novartis AG.  Sandoz Group AG is the ultimate parent company of the Sandoz generics and biosimilars business line, holding equity in Sandoz AG without undertaking any direct business activities.  Sandoz AG, in turn, owns 100% of the shares in Sandoz, Inc., a subsidiary company incorporated in Delaware.  Neither Novartis AG nor Sandoz Group AG nor Sandoz AG is a defendant in any case consolidated in this MDL.  Since then, Novartis AG has made numerous public disclosures about the spin-off, including details about the transaction

structure, planned organizational changes, and financial metrics.  Not once during the many months in which the transaction progressed did Plaintiffs so much as hint at any theory that the spin-off might be relevant to this action—that is, not until Plaintiffs' counsel made a vague reference to the spin-off during a status conference in this action on September 5, 2023, less than a month before the spin-off was scheduled to close on October 4, 2023.  Even then, Plaintiffs failed to take any action until they filed this motion on September 28, 2023, a mere three business days before closing, asking the Court to enjoin a transaction between two non-parties to this action over whom the Court lacks personal jurisdiction (and even incorrectly referred to Sandoz AG which, as set out above, is only an indirect party to the transaction).  Plaintiffs' belated motion would upend the business judgment of a foreign non-party (Novartis AG's Board of Directors) and the vote of millions of Novartis AG shareholders in favor of the transaction.

Far from Plaintiffs' fact-free suggestion that enjoining the transaction would not be prejudicial, it would subvert the will of Novartis AG's voting stockholders, the business judgment of a foreign non-party corporation, and a monthslong organizational transformation that will affect 22,000 employees and customers.

Plaintiffs' motion is based on a fundamental false premise, namely that Sandoz AG, a Swiss company, "will replace Sandoz, Inc. as a defendant in this MDL."  Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction and Temporary Restraining Order at 4, Doc. No. 2580-1 ("Pls. Mem.").  The Listing Prospectus[3] refutes Plaintiffs' unsupported assertion: Sandoz Inc. is a subsidiary of Sandoz AG; Sandoz Group AG is the ultimate parent company of Sandoz AG.  Sandoz Inc. is one of Sandoz Group AG's 72 subsidiaries and

---

[3]     *See* Sandoz Group AG, Listing Prospectus dated August 18, 2023 ("Prospectus"), https://www.sandoz.com/sites/sandoz_com/files/Sandoz-Group-AG-Prospectus-2023-08-17.pdf.

will remain a subsidiary of Sandoz Group AG after the spin-off.  *See* Prospectus at xiii.  Plaintiffs disingenuously conflate Sandoz Group AG and Sandoz Inc., ignoring the distinction between these two corporate entities and attributing every statement about Sandoz Group AG in the Prospectus to Sandoz Inc.  In short, Plaintiffs' entire motion is fatally undermined by their willful blindness to the corporate structures of the parties to the relevant transaction.

**ARGUMENT**

**I.    The Relief Sought is Barred by *De Beers* and *Grupo Mexicano***

Plaintiffs seek the extraordinary remedy of a preliminary injunction to both enjoin the spin-off transaction and prevent Sandoz Inc. from "transferring value to Novartis AG or Sandoz AG," based on their contention that the transaction and any transfers from Sandoz Inc. to Novartis AG or Sandoz AG are fraudulent conveyances.  *See* Plaintiff's Proposed Order at 2, Doc. No. 2580-3 ("Pls. Proposed Order").  In essence, Plaintiffs ask the Court to freeze Sandoz Inc.'s assets so that they can be preserved to satisfy claims that have yet to be tried in the MDL, based on unfounded contentions—not alleged in any complaint—that Sandoz Inc. is dissipating its assets to defraud prejudgment creditors.  Consequently, Plaintiffs cannot overcome a wall of Supreme Court and Circuit Court precedent barring this Court from granting preliminary injunctive relief on claims wholly unrelated to the underlying MDL litigation.

The Supreme Court held long ago that district courts do not have authority to grant injunctive relief on matters "lying wholly outside the issues in the [underlying] suit."  *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945).  In *De Beers*, the United States filed a complaint alleging a conspiracy to restrain and monopolize commerce in the gem and industrial diamonds industry in violation of Sections 1 and 2 of the Sherman Act and simultaneously sought a preliminary injunction to restrain corporate defendants from transferring or disposing of any

property in the United States until the Court resolved the issues in the litigation.  *Id.* at 215.  The district court granted an injunction restraining assets at several banks.  The Supreme Court reversed, explaining that despite the fact that the United States sought equitable relief on its antitrust claims, because the purpose and effect of the injunction was unrelated to the underlying claims the court was without authority to grant such relief.  *Id.* at 220.  The purpose and effect of the injunction was to provide security for performance of a future order that might be entered if the United States prevailed on the merits of its antitrust claims and defendants disobeyed a final judgment. *Id.* at 219.  The Court declined to create "precedent of [such] sweeping effect," warning that if it did so any plaintiff could impose an injunction of "indefinite duration" by merely alleging that a defendant could easily dispose of its assets, and every plaintiff would apply for "a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment. . . ."  *Id.* at 222-23.

All Circuit Courts to address this issue adhere to the ruling in *De Beers*.  *See, e.g., Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633, 636 (9th Cir. 2015) (collecting circuit decisions from Second, Fourth, Sixth, Eighth, Tenth, and Eleventh Circuits and holding that "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."); *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010) ("There must be a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.") (internal quotation marks and citations omitted); *In re Fredeman Litig.*, 843 F.2d 821, 822 (5th Cir. 1988) ("The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment.").

Plaintiffs' motion seeks the same type of relief (preservation of assets) that the Supreme Court rejected in *De Beers*.  Plaintiffs seek an order restraining Sandoz Inc. and third-parties Novartis AG and Sandoz AG "from completing the spin-off" and enjoining Sandoz Inc. from "transferring value to Novartis AG or Sandoz AG."  Pls. Proposed Order at 2, ECF No. 2580-3. Plaintiffs argue that the spin-off transaction and related transfers constitute fraudulent conveyances.  Pls. Mem. at 1.  But there are no allegations in any complaint in this MDL concerning the spin-off transaction, much less any fraudulent conveyance claims.  As was the case in *De Beers*, the purpose of the requested relief is actually to secure performance of any final judgment that might—but has not—been obtained on the merits of Plaintiffs' antitrust claims.  Pls. Mem. at 1 (purpose of relief is to "ensure that Sandoz has sufficient financial assets to satisfy Plaintiffs' claims").  Because the relief sought is based on matters wholly outside the issues in the underlying MDL litigation, the Court does not have authority to grant the relief requested.  *De Beers Consol. Mines*, 325 U.S. at 220; *see also Thomas v. Terra*, No. CV 22-4701, 2023 WL 3204021, at *1 (E.D. Pa. May 2, 2023) (denying preliminary injunction and TRO explaining, in part, that "[a] motion for preliminary injunction is not an appropriate means by which to raise and litigate new claims, either against a named defendant or a third party.") (internal quotations and citations omitted).[4]

Further, Plaintiffs seek this extraordinary remedy as an unsecured, prejudgment creditor to prevent Sandoz Inc. from disposing of its assets pending adjudication of the claims in the MDL for money damages.  Under the Supreme Court's ruling in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, this court has no authority to issue a preliminary injunction to prevent

---

[4]   Further, any claim Plaintiffs seek to assert relating to the spin-off transaction would be a claim beyond the scope of the MDL.  The scope of the MDL is defined to include price fixing claims relating to generic pharmaceuticals. *In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1344 (U.S. Jud. Pan. Mult. Lit. 2017).

an alleged defendant debtor from disposing of assets pending adjudication of claims for money damages.  *See* 527 U.S. 308, 333 (1999); *see also Karpov v. Karpov*, 555 F. App'x 146, 147 n.2 (3d Cir. 2014) ("[A]n injunction freezing assets cannot be entered in an action for damages where no lien or equitable interest in the assets is claimed.") (citing *Grupo*, 527 U.S. at 332-33).  As the Supreme Court explained, "[t]he law of fraudulent conveyances and bankruptcy was developed to prevent [fraud on creditors]; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not."  527 U.S. at 322.  Such an equitable power would render Federal Rule of Civil Procedure 64 irrelevant.  *Id.* at 330-31.

Plaintiffs argue that this bedrock rule in *Grupo Mexicano* does not apply because (1) Plaintiffs seek to "maintain the *status quo* legal structure of Sandoz Inc. and Novartis AG" "without freezing the assets of either company," and (2) "Plaintiffs bring mixed legal and equitable claims."  Pls. Mem. at 13.  Plaintiffs are wrong.  First, the notion that Plaintiffs are not asking to freeze assets is preposterous.  Plaintiffs' proposed order would enjoin Sandoz Inc. "from transferring value to Novartis AG or Sandoz AG."  Pls. Proposed Order at 2.  Prohibiting Sandoz from transferring assets and preventing Novartis AG and Sandoz AG from "completing the spin off" are the vehicles by which Plaintiffs hope to freeze assets.  *Id*.  Regardless, *Grupo Mexicano* is not so limited.  A preliminary injunction interfering with the business and assets of a contingent debtor plainly runs afoul of the reasoning in *Grupo Mexicano*.

Second, the argument that *Grupo Mexicano* would not apply to bar what is, in effect, a broad prejudgment asset freeze because Plaintiffs bring "mixed legal and equitable claims" in the underlying MDL litigation again confuses the issue of what claims are relevant to this motion.  The purported basis for Plaintiffs' request for relief are the unpleaded fraudulent conveyance claims which would all be legal claims for damages.  *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33,

46-47 (1989).[5]  For this reason, the other cases cited by Plaintiffs are inapposite:  *Novatek Corp.*

*v. Mallet*, 324 F. Supp. 3d 560 (E.D. Pa. 2018); *Symphony FS Ltd. v. Thompson*, No. 5:18-CV-

3904, 2018 WL 6715894 (E.D. Pa. Dec. 20, 2018), and *Akers v. Akers*, No. 5:15-CV-2512, 2015

WL 4601155 (E.D. Pa. July 31, 2015).

Because Plaintiffs' request for relief is barred under *De Beers* and *Grupo Mexicano,* their

request should be denied.

## II.     Sandoz Inc. is Not a Party to the Spin-Off Transaction and Not a Proper Party to Enjoin

"To obtain injunctive relief, a plaintiff must ask for that relief against a party who can

redress [the plaintiff's] claim." *de Cristo Cano v. Biden*, 598 F.Supp.3d 921, 925 (S.D. Cal. 2022).

The plaintiff "must show that 'it is likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision.'" *Rodden v Fauci*, 571 F.Supp.3d 686, 690 (S.D. Tex. 2021)

(citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).

Parties who are powerless to take an action sought to be enjoined by a plaintiff "are not proper

parties against whom [] requested injunctive relief may be granted." *Perry v. Dunlavey*, No. 11–

234, 2011 WL 5864062, at *3 (W.D. Pa. Oct. 31, 2011); *see also Harris v. Hershey Med. Ctr.*, No.

1:08-cv-843, 2008 WL 5278730, at *3 (M.D. Pa. Dec. 18, 2008).  When a plaintiff seeks to enjoin

a business transaction, a non-party to the transaction is not a proper party against whom injunctive

relief may be granted because the non-party is powerless to effectuate the transaction.  *Windham*

*v. Harman Law Offs.*, No. 15-12809-FDS, 2015 WL 4262469, at *2 (D. Mass. July 8, 2015)

---

[5]      Even if Plaintiffs' claims in the MDL were relevant (which they are not), Plaintiffs fundamentally seek monetary damages in the MDL. *See Nanjing Textiles Imp/Exp Corp., Ltd. v. NCC Sportswear Corp.*, No. 06 Civ. 52, 2006 WL 2337186, at *7 (S.D.N.Y. Aug. 11, 2006) (denying preliminary injunction despite "some interspersed equitable claims" including unjust enrichment because the "suit is at base a classic legal action for breach of contract for which it is primarily seeking monetary relief").

(denying a motion to enjoin a foreclosure sale because the defendant, a law firm, did not hold the mortgage).

Although Plaintiffs try to place Sandoz Inc. at the center of the spin-off transaction, they cannot.  As the Prospectus demonstrates, to effectuate the spin-off Novartis AG sought the approval of its shareholders by calling an extraordinary general meeting of Novartis AG shareholders.  Prospectus at 67.  On September 15, 2023, at that meeting, Novartis AG's shareholders overwhelmingly approved the spin-off and directed Novartis to move ahead with it. Novartis AG will accomplish the spin-off by distributing Sandoz Group AG shares on a pro-rata basis to its shareholders.  Prospectus at 70.  By contrast, as noted above, Sandoz Inc. is one of many Sandoz AG subsidiaries and will remain so after the spin-off transaction.  It has no power to direct its parent (Sandoz AG) or its parent's parent (Sandoz Group AG), let alone Sandoz Group AG's parent (Novartis AG), to act and had no role in approving the spin-off transaction—a decision that was ultimately made by Novartis AG's shareholders.

Further, Sandoz AG is Sandoz Inc.'s direct corporate parent and after the spin-off will remain Sandoz Inc.'s direct corporate parent.  There is nothing in the Prospectus to support Plaintiffs' assertion (which cited nothing) that Sandoz Inc. will be replaced, or that Sandoz AG will be its successor.  As a subsidiary of Sandoz AG, Sandoz Inc. is a "distinct legal entity" and does not control Sandoz AG's actions "simply by dint of the corporate relationship."  *See In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 747 (E.D. Pa. 2011) ("When defendant corporate entities 'are not plausibly alleged to be directly liable—that is, are not plausibly alleged to have themselves entered into unlawful agreements,' there must be some 'other basis imputing § 1 liability to' those entities.").  Sandoz Inc. cannot control the spin-off of Sandoz Group AG by Novartis AG and therefore "a temporary restraining order or injunction against [Sandoz Inc.]

would be ineffectual." *Harris*, 2008 WL 5278730, at *3.  Because Sandoz Inc. has no authority over the spin-off transaction between two distinct legal entities, Sandoz Group AG and Novartis AG, Sandoz Inc. is not a proper party against which the requested injunctive relief may be granted. *See Perry*, 2011 WL 5864062, at *3.

### III.    Plaintiffs Have Not Established a Likelihood of Success on the Merits of Their Unasserted Claims

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks omitted).  "A plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest." *Zaslow v. Coleman*, 103 F.Supp.3d 657, 662 (E.D. Pa. 2015).  A party seeking a preliminary injunction "must establish entitlement to relief by clear evidence." *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008)).

Plaintiffs fail to establish the first element because they have not demonstrated a substantial likelihood of success on the merits of the claim on which they seek relief.  Plaintiffs' request for relief is premised on an unpleaded claim for fraudulent conveyance.  Pls. Mem. at 1 (Plaintiffs are seeking this injunction to prevent the spin-off transaction, which "constitutes a fraudulent conveyance").  Plaintiffs have not asserted a claim for fraudulent conveyance in any complaint, and make no effort to demonstrate they would be likely to succeed on such a claim.  Their entire argument is devoted to the merits of their antitrust claims, Pls. Mem. at 5-7;  Declaration of Nicole Demers, Doc. No. 2580-2, but these claims give Plaintiffs no right to the extraordinary relief they seek in their motion.

Plaintiffs do not even mention the elements of a fraudulent conveyance claim, much less demonstrate a substantial likelihood of success on the merits of such a claim. For example, Plaintiffs do not attempt to demonstrate that a transfer was made with actual intent to defraud, a claim that must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). Nor do Plaintiffs make any showing that the spin-off would render Sandoz Inc. insolvent and/or unreasonably capitalized, which are all elements required by the majority of jurisdictions to establish a fraudulent conveyance claim. *See* Unif. Fraudulent Transfer Act §§4-5, 7 (adopted by 42 states). Because the motion is entirely silent regarding the likelihood of success on the claim justifying the relief requested, the motion should be denied.[6]

## IV.    Plaintiffs Have Not Demonstrated Irreparable Harm

The Third Circuit has "long held that an injury measured in solely monetary terms cannot constitute irreparable harm." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009) (citing cases). Plaintiffs' unpleaded claims for fraudulent conveyances are solely claims for money damages. Thus, Plaintiffs' focus *again* on their antitrust claims is irrelevant. Even assuming *arguendo* that their antitrust claims were relevant, Plaintiffs' arguments should still fail. Plaintiffs attempt an end-run around this well-settled principle that claims for money damages does not constitute irreparable harm by claiming that they "seek, what is in effect,

---

[6]    Although not relevant to Plaintiffs' motion to enjoin the spin-off transaction, Plaintiffs also failed to demonstrate a likelihood of success on the merits of their antitrust claims in the MDL. As a threshold matter, Plaintiffs must demonstrate antitrust injury. 15 U.S.C. § 15; Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 391 (5th ed. 2023). Plaintiffs fail to demonstrate that they are likely to prove injury or damages on any particular claim, arguing, instead, that the Court may assume so merely because they allegedly purchased generic pharmaceuticals from Sandoz. Pls. Mem. at 7. Further, EPPs purport to bring their claims on behalf of a class. Their motion for a preliminary injunction presumes that their cases will proceed as class actions and that EPPs will prevail on claims of absent class members. Yet, EPPs make no effort to demonstrate that any of their claims will proceed on behalf of absent class members, so there is no basis to presume that they will for purposes of their motion.

-11-

recovery of their property that is illegally held by Sandoz, Inc." Pls. Mem. at 8. Before a judgment is entered in the cases pending against Sandoz Inc., of course, Plaintiffs have no property rights in *any* of Sandoz Inc.'s assets. Moreover, the gravamen of Plaintiffs' antitrust claims are for money damages; therefore, Plaintiffs plainly have an adequate remedy at law in the form of money damages should they succeed on the merits of their antitrust claims. And, as discussed above, Plaintiffs do not sufficiently articulate *any* claim against Novartis AG or Sandoz AG, much less one that would provide a basis to enjoin the transaction.

Plaintiffs also assert that they will be harmed because "Sandoz" "will become a foreign domiciled company" following the spin-off. Pls. Mem. at 7. Tellingly, Plaintiffs cite nothing to support this assertion, which is false if Plaintiffs were referring to Sandoz Inc., which will remain a U.S. corporation and a defendant in these cases.

## V.     The Balance of the Equities Weighs Against a Preliminary Injunction

"As a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits. Rather, a court must also consider whether the movant has shown that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018) (internal quotations omitted). Here, the balance of equities weighs against granting a temporary restraining order or a preliminary injunction.

### A.     Plaintiffs' Inexcusable Delay in Seeking Relief is Itself Inequitable

Plaintiffs' unreasonable delay in seeking relief, requesting an injunction on the eve of the transaction they seek to enjoin, weighs against the imposition of an injunction. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek*, 138 S.

-12-

Ct. at 1944; *see also Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.").  Where Plaintiffs do not exercise reasonable diligence, the balance of equities weighs against granting a preliminary injunction, especially where that delay prejudices defendants.  *See W. Airlines, Inc. v. Intl. Broth. of Teamsters,* 480 U.S. 1301, 1309-10 (1987) ("The cost of enjoining this huge undertaking only hours before its long awaited consummation is simply staggering in its magnitude, in the number of lives and dollars lost."); *Saticoy Bay LLC Series 970 Flapjack Drive v. Fed. Nat'l Mortgage Assoc.*, 2:18-cv-00961-RFB-NJK, 2018 WL 2448447, at *3 (D. Nev. May 31, 2018) (Balance of equities weighed in defendant's favor where plaintiff waited until just over a week before a property sale was planned to seek an injunction despite being aware of the planned sale for six months).

Here, Plaintiffs had notice of the transaction more than a year ago and had access to the Listing Prospectus (relied on in their motion) more than a month ago.  Yet they waited until almost two weeks after the shareholder vote approving the transaction and three business days before the spin-off is scheduled to close to seek relief.  The emergency Plaintiffs seek to address is one of their own making, and they are not entitled to expedited intervention to mitigate their lack of diligence.

## B.  The Harm to Sandoz Inc. is Substantial

If Plaintiffs' proposed order were adopted, the sweeping relief would cause substantial harm to Sandoz Inc.'s business operations as well as the business operations of the wider Sandoz group and Novartis group.  Plaintiffs' request that the Court restrain Sandoz Inc. "from completing the spin-off" or "transferring value to Novartis AG or Sandoz AG."  Pls. Proposed Order at 2.  As set forth above, *supra* Section II, Sandoz Inc. does not have the power to prevent Novartis AG

from completing the spin-off of Sandoz Group AG.  Nevertheless, if the proposed injunction were issued, the vagueness of the relief requested would substantially disrupt Sandoz Inc.'s business operations lest Sandoz Inc. later be accused of contempt.  Every business transaction would have to be evaluated to consider whether it could be interpreted as furthering Novartis AG's plans to spin-off the Sandoz business or in some way could be perceived as providing "value" to the parent company of such business, i.e., Sandoz Group AG.  Such an order would chill all daily business operations.

It is no answer for Plaintiffs to suggest delaying the spin-off until the resolution of this litigation.  As they conceded, this litigation involves numerous parties, and the first of the cases selected as bellwethers in this MDL have not yet been scheduled for trial.  Such a protracted and indeterminate delay will cause harm to all parties involved in the transaction and the many stakeholders involved and interested in that transaction, none of whom Plaintiffs mention in their motion papers.

**C.  The Public Interest Does Not Favor Intervention by this Court.**

Plaintiffs argue that the public interest is served by serving their own interests and ignore the interests of the parties to this transaction.  The public interest is best served by not hindering a multi-billion dollar transaction between foreign companies that has been planned for more than a year at the very last minute.  *See Saticoy Bay LLC Series 970 Flapjack Drive*, 2018 WL 2448447, at *3 ("The public interest will be best served by not hindering this legal foreclosure sale at the eleventh hour.").

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction and temporary restraining order.

Dated: October 2, 2023

Respectfully submitted,

/s/ Veronica E. Callahan
_____
Veronica E. Callahan
Jeffrey A. Fuisz
Margaret A. Rogers
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Fax: +1 212.836.8689
Veronica.callahan@arnoldporter.com
Jeffrey.fuisz@arnoldporter.com
Margaret.rogers@arnoldporter.com

Laura S. Shores
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue
Washington, DC 20001
Telephone: +1 202.942.5000
Laura.shores@arnoldporter.com

*Counsel for Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October 2023, the foregoing document was filed electronically with the Clerk of Court by use of the CM/ECF system, which will serve a copy on all interested parties registered for electronic filing, and is available for viewing and downloading from the ECF system.

Dated: October 2, 2023

/s/ Veronica E. Callahan
Veronica E. Callahan
Jeffrey A. Fuisz
Margaret A. Rogers
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: +1 212.836.8000
Fax: +1 212.836.8689
Veronica.callahan@arnoldporter.com
Jeffrey.fuisz@arnoldporter.com
Margaret.rogers@arnoldporter.com

Laura S. Shores
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue
Washington, DC 20001
Telephone: +1 202.942.5000
Laura.shores@arnoldporter.com

*Counsel for Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc.*
