IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : : : : : : | MDL NO. 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | : : : : : : : | HON CYNTHIA M. RUFE |

**SPECIAL MASTER LAWRENCE F. STENGEL'S FOURTH
FORMAL REPORT AND RECOMMENDATION (R&R) RESOLVING
DEFENDANTS' MOTION TO COMPEL A 30(b)(6) DEPOSITION OF GEORGIA**

**I.      INTRODUCTION**

1.      Pursuant to Pre-Trial Order No. 163, Defendants' *Motion to Compel a 30(b)(6) Deposition of Georgia* has been referred to me for a Report and Recommendation ("R&R").

2.      On October 2, 2023, Defendants submitted a Letter Motion seeking a Recommendation that Plaintiff State Georgia ("Georgia") be ordered to appear for a deposition on topics related to: (1) Georgia's request for monetary damages; and (2) Georgia's investigation and Defendants' time-based defenses.

3.      Georgia opposed Defendants' Letter Motion as untimely and disproportionate to the needs of the case. Alternatively, Georgia argued that Defendants made "Rule 29 Agreements" to proceed with written questions "in lieu of" Rule 30(b)(6) depositions.[1]

4.      The parties participated in oral argument regarding the Letter Motion in October 2023. Following oral argument, I issued an Informal R&R recommending that Georgia present a

---

[1] Georgia did not object on timeliness grounds in its Response to Defendants' Notice, nor has it sought a protective order foreclosing Defendants from conducting the requested deposition.

1

witness to sit for a deposition of no more than three hours and limited to only those topics related to Georgia's request for damages and Defendants' statute of limitations defense.

5. Defendants accepted the Informal R&R, but Georgia did not and requested that I prepare a Formal R&R after full briefing on the matter. Both parties have since submitted briefs, rendering the underlying dispute ripe for disposition.

## II. BACKGROUND

6. Georgia is a plaintiff in this MDL asserting federal antitrust claims but no State-law claims. As of November 2020, the remedies Georgia is seeking pursuant to "federal antitrust law" include: (i) injunctive relief; (ii) disgorgement of profits; and (iii) attorney's fees and costs.

7. In June 2022, this Honorable Court ruled in the Heritage Case that the States cannot obtain the remedy of disgorgement under federal antitrust law. ECF 2128 at 3-8.

8. In light of the Court's decision, Defendants asked Georgia to clarify whether it was still seeking monetary relief. Georgia did not provide a clear answer. Rather, in several different emails, Georgia suggested that the Court's ruling did not foreclose Georgia's demands for monetary recovery and that it could still seek disgorgement because the Court's rulings applied only to "the Heritage Complaint (to which Georgia is not a party)."

9. After unsuccessfully seeking clarification on "the factual and legal bases for Georgia's damages claims" for over a year, Defendants served Georgia with a six-topic 30(b)(6) Notice on August 10, 2023 ("Deposition Notice"). The first two topics in Defendants' Deposition Notice relate to Georgia's monetary claims ("Topics 1 & 2"); the remainder relate to Georgia's investigation and Defendants' time-based defenses ("Topics 3-6").

10. On September 1, 2023, Georgia objected to every topic in Defendants' Deposition Notice; thereafter, Georgia also denied Defendants' scheduling requests and refused to produce a witness.[2]

11. The parties met and conferred on the first day Georgia was available (September 7, 2023), and several times thereafter, but Georgia still refused to produce a witness.

12. On September 20, 2023, the parties discussed a proposal whereby Defendants would serve written questions (as to all topics) by September 22, 2023, if Georgia would commit to providing complete, satisfactory, and verified responses by September 29, 2023.

13. The parties disagree as to the circumstances under which Defendants proposed to withdraw their Deposition Notice. Defendants assert that they offered to withdraw their Deposition Notice upon *receipt* of Georgia's full, complete, and verified responses. Georgia claims, however, that Defendants orally agreed to withdraw their Deposition Notice *prior to* receiving Georgia's answers.

14. When it became clear that the parties would be unable to resolve the dispute on their own, Defendants raised the issue with the Special Masters via a Letter Motion.[3]

## III. DISCUSSION

---

[2] The categorical, boilerplate objections asserted by Georgia are objections that Special Master Marion already rejected in similar circumstances. *See* SM Marion's 17th Formal R&R, 08/24/2023.

[3] In their Letter Motion and Brief, Defendants argue that their right to depose Georgia is well-settled, and that Georgia is attempting to deprive Defendants of that right by asserting "meritless and counterfactual" objections in an attempt to "run out the clock on bellwether discovery without sitting for a deposition or answering basic questions." While Georgia initially argued that Defendants' Letter Motion should be denied as "effectively seeking an attorney's deposition," Georgia did not raise any arguments regarding the same in its Formal Brief. Consequently, I do not reach the merits of this argument here other than to note that Special Master Marion has already recommended that the State Plaintiffs in this MDL be subject to Rule 30(b)(6) depositions. *See* SM Marion's 17th R&R, 08/24/2023, ECF No. 2535 (I acknowledge that SM Marion's 17th R&R is currently pending before the Court, and while I refrain from assuming adoption or approval, I opt not to provide additional reasoning that necessitates the Court to rule twice on the matter).

3

15. Georgia argues that it should not have to sit for a Rule 30(b)(6) deposition for three reasons: first, because both Defendants' Notice of Deposition and subsequent Letter Motion were untimely; second, because a deposition is disproportionate; and third, because the parties agreed to proceed via written answers in lieu of a deposition.

16. In contrast, Defendants assert that their right to depose Georgia is well-settled, and that Georgia is attempting to deprive Defendants of that right by asserting "meritless and counterfactual" objections in an attempt to "run out the clock on bellwether discovery without sitting for a deposition or answering basic questions."

17. With respect to discovery in civil cases generally, Federal Rule of Civil Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The court, however, "must limit the frequency or extent of discovery … if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

18. After a party "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," that

party may, "on notice to other parties and all affected persons," "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

19. If the motion to compel is denied altogether or in part, the court may "issue any protective order authorized under Rule 26(c)." Fed. R. Civ. P. 37(a)(5)(C).

**A. Timeliness of Defendants' Notice of Deposition**

20. Georgia argues that it should not have to produce a witness because Defendants' Deposition Notice was untimely.

21. Defendants, however, assert that their Deposition Notice – served seven weeks before the close of bellwether fact discovery – was in fact timely. Defendants point out that Georgia did not object on timeliness grounds in their September 1, 2023, Response to Defendants' 30(b)(6) Notice, suggesting that Georgia only raised the "timeliness" of their Deposition Notice before the Special Masters "in an attempt to run out the [bellwether discovery] clock."

22. In response, Georgia argues that Defendants' "reason for [untimely] noticing a deposition of Georgia weeks before the close of fact discovery is a pretense" as Defendants "know what Georgia's available remedies are." According to Georgia, "the complaint and the Court's rulings speak for themselves … Georgia has not asserted state law claims and federal disgorgement is effectively foreclosed."

23. As a preliminary matter, I am not sure what "reason" Georgia is referring to as "pretense" as Defendants have not provided a reason for their alleged untimeliness and deny altogether that their Deposition Notice was untimely. I assume that Georgia is referring to Defendants' claim that they unsuccessfully attempted to obtain answers from Georgia regarding its claim for disgorgement for over a year. Even if my interpretation of Georgia's argument is correct, however, such an argument by Georgia confuses the issue – Defendants seek clarification

on the monetary remedies Georgia is *pursuing*, not a legal conclusion on their *availability*. Further, Defendants are not seeking to depose Georgia only on topics related to its request for monetary relief; Defendants' Deposition Notice includes six Topics – four of which are unrelated to Georgia's request for monetary relief.

24. Georgia has presented no case law finding a deposition notice served nearly two months prior to the discovery deadline to be untimely. *But c.f. In re Asbestos Products Liab. Litig. (No. IV)*, MDL 875, 2012 WL 3104833 (E.D. Pa. July 31, 2012) (quashing subpoena for deposition issued day before close of fact discovery); *Birdine v. City of Coatesville*, CIV.A.03-5569, 2004 WL 2786151, at *1 (E.D. Pa. Aug. 20, 2004) (denying motion to compel where depositions were noticed for the last day of discovery with only seven days' notice).

25. Moreover, I believe that Defendants' Deposition Notice, issued seven weeks prior to the deadline, unquestionably meets the criteria of timeliness as prescribed by the Court. *See* Pretrial Order No. 234 (EFC 2443) (extending the bellwether fact discovery to October 2, 2023).

**B. Timeliness of Defendants' Notice of Deposition**

26. Georgia also argues that Defendants' Letter Motion is untimely due to Defendants' failure to "diligently" seek intervention from the Special Masters "immediately after it became clear that Georgia would only proceed via written questions and answers."

27. By way of background, on September 14, 2023, Defendants indicated their intent to move to compel if, during a meet-and-confer on September 19, 2023, Georgia did not provide three dates for a deposition.

28. Georgia argues that Defendants were obligated to seek relief from the Special Masters immediately upon Georgia's failure to provide the requested deposition dates on September 14, 2023. Georgia further asserts that Defendants' failure to move to compel on the

6

day they communicated their request for deposition dates constitutes an 18-day delay, "which represent[s] 34% of the time the parties had from the time of the deposition notice to the close of fact discovery."

29. However, the idea that Defendants should have filed their motion on the day of their email (September 14, 2023) rather than the day of the meet-and-confer (September 19, 2023) is unfounded.[4] Importantly, it was not until September 25, 2023, that Georgia formally notified Defendants in writing that it believed written questions were agreed on as an alternative to a deposition (which agreement Defendants dispute), and it was not until September 27, 2023, that Georgia informed Defendants that their compromise "proposal [was] unacceptable." Less than one business week elapsed between September 27, 2023, and the filing date of Defendants' Letter Motion – during which time Defendants were still actively attempting to resolve the dispute.

30. Further, Georgia's utilization of percentage-based calculations to imply untimeliness is flawed. While Defendants served their Notice of Deposition on August 10, 2023, Georgia provided its objections to Defendants' Notice of Deposition on September 1, 2023. Defendants could not in good-faith have moved to compel during the period they were awaiting Georgia's response. Additionally, PTO 163 and Federal Rule of Civil Procedure 37 require the parties to meet-and-confer prior to seeking intervention from the Special Masters, and *Georgia* was not available for such a session until September 7, 2023. Fed. R. Civ. P. 37(a)(1). Less than a month passed between the date the parties first met-and-conferred regarding Defendants' Deposition Notice and the date Defendants filed their Motion.

---

[4] It should be noted that Georgia's "days delayed" calculation is also incorrect; there was only a 13-day gap between the September 19, 2023, meet-and-confer and the filing of Defendants' Letter Motion – during this period, the parties engaged in at least one additional meet-and-confer.

7

31. Moreover, I disagree with Georgia's assertion that Defendants' Letter Motion was untimely based on Defendants' lack of diligence. Defendants followed up with Georgia on the day its objections were due, scheduled meet-and-confers to discuss Georgia's objections, proposed numerous ways to narrow topics, and attempted to come to an agreement regarding written answers. On September 27, 2023, Georgia notified Defendants that their compromise proposals were unacceptable. Less than one business week later, Defendants filed their Letter Motion.

C. **Proportionality of Deposition**

32. Next, Georgia argues that a "deposition is disproportionate and will place an undue burden on [it]" because the deposition "will almost certainly be of an attorney from the Georgia Attorney General's Office" and "it is unlikely that the Court will interpret the Clayton Act differently therein … [thus] Georgia's monetary claims are effectively foreclosed."

33. Defendants, on the other hand, argue that a deposition is proportionate given that, "Georgia has been unwilling to confirm that it is no longer seeking monetary relief, it refuses to answer straightforward questions on this issue, [] the States' expert reports contain Georgia-specific line items calculating disgorgement and civil penalties attributed to Georgia … [and] Georgia has confirmed that it is still seeking attorneys' fees, costs, and injunctive relief."

34. The party moving to compel bears "the initial burden of showing that the requested discovery is relevant." *Saller v. QVC, Inc.*, No. CV 15-2279, 2016 WL 4063411, at *3 (E.D. Pa. July 29, 2016); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case").

35. Once relevance is established, the "objecting party must then demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery"

8

because it is irrelevant or privileged, *id.*, or not "proportional to the needs of the case" under Rule 26(b)(1). *First Niagara Risk Mgmt., Inc. v. Folino*, 317 F.R.D. 23, 28 (E.D. Pa. 2016). "A simple response that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient." *Palakovic v. Wetzel*, No. CV 3:14-145, 2019 WL 6896659, at *4 (W.D. Pa. Dec. 18, 2019); *see generally Holm v. Pollack*, No. CIV. A. 00-CV-2893, 2001 WL 1257728, at *2 (E.D. Pa. Oct. 19, 2001) (explaining that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a showing of 'good cause'" as required for a protective order).

36. The information that Defendants seek regarding Georgia's claims for monetary relief is relevant. By way of its own argument, Georgia seeks an order protecting it from a deposition because its claims for monetary relief will be foreclosed if the Court rules in the Teva Complaint that disgorgement is unavailable. Given that a ruling has not been entered on the availability of disgorgement in the Teva Complaint, a recommendation to withhold this information would be premature and potentially unnecessary.

37. Nevertheless, Georgia's position respecting the information at issue in Topics 1 & 2 of Defendants' Deposition Notice (regarding its claims for monetary relief) has seemingly been made clear in its September 20, 2023, email enclosing unverified answers to three of Defendants' questions regarding the same. Defendants were willing to withdraw Topics 1 & 2 of the Deposition Notice in exchange for a verification of those responses. As such, I anticipate that those answers are sufficiently responsive with respect to the information at issue in Topics 1 & 2. *See* Fed. R. Civ. P. 26(b)(1) ("By motion or on its own, the court must limit the frequency or extent of discovery … if it determines that the discovery sought … can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Thus, I recommend that Georgia

be permitted to verify those answers in lieu of deposition on Topics 1 & 2 of Defendants' Deposition Notice.

38. However, as previously noted, Defendants do not seek to depose Georgia only on topics relating to its monetary claims.[5] Topics 3-6 of Defendants' Deposition Notice seek information related to Georgia's "investigations of any consumer complaints about potential violations of law involving price fixing or market allocation for any Pharmaceutical Products[,]" its "investigations of potential violations of law involving price fixing or market allocation for any Pharmaceutical Products … [from] January 1, 2010 to December 31, 2017[,]" "any acts taken by a Defendant that misled the State with respect to a violation of a law for which the State asserts a cause of action in the MDL[,]" and "any acts taken by a Defendant that the State believes show a Defendant's fraudulent concealment of a violation of law for which the State asserts a cause of action in the MDL."

39. At oral argument, Defendants asserted that these topics are relevant to their statute of limitations defenses, as they seek to ascertain what Georgia knew of the alleged conduct and when Georgia knew of it.

40. Georgia has not challenged the relevance or even the discoverability of the information subsumed in Topics 3-6.

41. In light of the same, I find Topics 3-6 of Defendant's Deposition Notice relevant, and I believe a deposition on these topics is proportionate to the needs of the case as it will enable Defendants to probe Georgia for facts related to its investigations, of which only Georgia has

---

[5] Defendants seek clarification on the remedies Georgia is pursuing, not a legal conclusion on their availability. In this Circuit, parties may use depositions to explore facts underlying a legal claim. *See generally, Lopez v. CSX Transp., Inc.*, No. CIV.A. 3:14-257, 2015 WL 5971682, at *16 (W.D. Pa. Oct. 14, 2015) ("Courts within the Third Circuit follow the approach that parties may use Rule 30(b)(6) depositions to explore facts underlying legal claims and theories."); *AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F.Supp. 808, 831 (M.D. Pa. 1994) (granting motion to compel a Rule 30(b)(6) deposition covering "topics [that] deal largely with the contentions and affirmative defenses detailed in [the d]efendants' answer and counterclaim").

knowledge. *See generally Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession").

42. Moreover, "there is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information." *Premium Payment Plan v. Shannon Cab Co.*, 268 F.R.D. 203, 205 (E.D. Pa. 2010) (quoting *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J.1990)). Depositions of opposing counsel are disfavored where they "create a risk of impeding that counsel's ability to represent his or her client." *United States v. Educ. Mgmt. LLC*, No. 07-00461, 2014 WL 1391142, at *8 (W.D. Pa. Feb. 24, 2014). I do not believe that is a risk here.

43. The Fact Deposition Protocol in this MDL requires each State (including Georgia) to prepare for and sit for a Rule 30(b)(6) deposition. *See* ECF No. 1688 at 15-16. I am unpersuaded by Georgia's argument that it should avoid this requirement because an attorney deposition is disproportionate or unduly burdensome. Georgia has not articulated the exact burden it purportedly faces, nor demonstrated that its designee must necessarily be a trial counsel. Georgia could designate an attorney who participated in Georgia's investigation of this case but is not of record in this MDL, or it could designate a non-attorney representative. *See United States v. Educ. Mgmt. LLC*, No. 07-00461 at *8 (noting that the mere fact "that government attorneys are the only individuals with the requisite knowledge to answer Defendants' questions does not prevent them from preparing a designee to answer the questions.") (quoting *United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009)).

44. As Special Master Marion has repeatedly noted throughout these discovery disputes, "[g]iven the multiplicity of parties, issues, claims, attorneys, attorneys general, drugs, overarching and other alleged conspiracies and huge damages allegedly involved, it would be difficult for any party to meet the burden of proving undue burden from this proposed Order [recommending a party sit for a 30(b)(6) deposition]." Fourteenth R&R at 3 ¶ 3; *see also* Special Master Marion's Seventeenth R&R (determining that State Plaintiffs in this MDL are subject to Rule 30(b)(6) depositions and noting, "[u]nder the circumstance of this MDL, and [the States'] voluntarily assumed role in it, written questions and answers are not a sufficient replacement for Rule 30(b)(6) deposition testimony. Written questions and answers do not allow a party to follow-up with real-time supplemental inquiries. Moreover, the time between responses, objections, and meet and confers, would cause to further delay this already drawn-out dispute").

**D. Agreement to Utilize Written Questions**

45. In the alternative, Georgia argues, and Defendants dispute, that the parties came to an oral agreement to utilize written questions in lieu of a deposition.

46. Georgia asserts that the following circumstances, in their totality, evidence the existence of an oral Rule 29 Agreement. On September 5, 2024, Defendants indicated to the Court a willingness to accept written answers in lieu of deposition "for a handful of states." Thereafter, Georgia proposed to Defendants in an email that Georgia be one of the "handful of states" to utilize written questions. While Georgia does not claim that Defendants agreed to their proposal in writing, they assert that, during a meet-and-confer, Defendants orally agreed to use written questions in lieu of deposition. Georgia contends that their oral agreement is evidenced by three written answers pertaining to Topics 1 & 2 that Georgia provided to Defendants on September 20, 2023. According to Georgia, after it provided the three answers, Defendants reneged on their

12

agreement and indicated they would not withdraw their Deposition Notice until *after* they received all of Georgia's written and verified answers and determined they were satisfactory.

47. Defendants, on the other hand, deny the existence of an oral Rule 29 Agreement. They emphasize that in all communications, they explicitly reserved their right to a Rule 30(b)(6) deposition. Defendants purportedly offered to withdraw the Deposition Notice or amend it to exclude certain topics upon receiving Georgia's full, complete, verified, and satisfactory answers. However, Georgia denied Defendants' offer and was only willing to answer Defendants' questions after Defendants withdrew their Deposition Notice.

48. I have reviewed the written correspondence between the parties from before and after their meet-and-confers – which, according to Georgia, evidences their agreement – and am not inclined to find any Rule 29 Stipulations "governing or limiting discovery." *See* Fed. R. Civ. P. 29.

49. The statement Defendants made to the Court about accepting written answers was not directed at Georgia nor was it made in reference to Georgia. In fact, when Georgia attempted to invoke its perceived right to answer questions in lieu of a deposition, Defendants expressly rejected Georgia's proposal and informed it that they still intended to proceed with a deposition. The same is true for the subsequent communications between the parties; in every relevant email, Defendants refused to categorically waive their rights to a deposition.

50. Further, Georgia's provision of written answers is not evidence of a Rule 29 Agreement. Defendants' email to Georgia, transmitting the three questions that Georgia answered, stated in no uncertain terms that Defendants were "reserving all rights" to a 30(b)(6) deposition. On September 22, 2023, after Georgia provided answers to Defendants' three questions related to Topics 1 & 2, Defendants offered to withdraw Topics 1 & 2 from their Deposition Notice in

exchange for Georgia verifying its answers. Georgia, however, refused to verify its answers and refused to answer any further questions without Defendants' first withdrawing their Deposition Notice. The parties met-and-conferred again on September 26, 2023, but were still unable to resolve the dispute. On September 27, 2023, Georgia reiterated its refusal to answer Defendants' questions and clarified that even if Defendants agreed to waive their deposition rights, Georgia would only answer questions relating to Topics 1-4 of Defendants' Deposition Notice (which amounts to only 8 of the 18 questions propounded by Defendants).

51. It is hornbook law that stipulations "are voluntary agreement[s] between opposing parties concerning some relevant point." *See* Black's Law Dictionary (10th ed. 2014). Mutual assent between the parties is necessary for the formation of voluntary agreements. *See* Restatement (Second) of Contracts § 17 (1981). While I believe Defendants were acting in good faith to avoid a Rule 30(b)(6) deposition, I do not believe either party actually believed Defendants categorically waived their Rule 30(b)(6) deposition rights.[6] If Georgia believed Defendants were going to withdraw their Deposition Notice prior to providing answers, Georgia would not have provided any answers until after Defendants did the same. Similarly, if Georgia believed the parties had already agreed to proceed with written questions, it would not have made a counter-proposal to only answer questions related to Topics 1-4 on September 27, 2023.

52. Further, to accept Georgia's theory, I would have to find Defendants orally waived their 30(b)(6) deposition rights *before* receiving Georgia's responses to their questions in direct contradiction to all of their previous and subsequent written correspondences. I am not convinced that happened here.

---

[6] Since I find there was no meeting of the minds to even establish an agreement, I do not address the question of whether Rule 29 Stipulations must be formally reduced to writing and signed by the parties.

## IV. Conclusion and Recommendation

53. Given my review of the parties' arguments, the correspondence between the parties, and the broad scope of discovery generally, I recommend that Georgia be ordered to produce a witness for a Rule 30(b)(6) deposition limited only to Topics 3-6 contained in Defendants' Deposition Notice provided that Georgia verify the answers it provided to Defendants in its September 20, 2023, email within seven days of the Courts' order resolving this dispute. Should Georgia fail to verify the answers it provided to Defendants in its September 20, 2023, email within the time constraints outlined by the Court, Georgia should be compelled to produce a witness for a Rule 30(b)(6) deposition on all six Topics contained in Defendant's Deposition Notice.[7]

54. This Recommendation does not suggest a modification to the discovery deadlines set forth in Judge Rufe's Pretrial Order No. 234, dated May 9, 2023. Rather, I recommend that the 30(b)(6) deposition recommended in Paragraph 42 above be conducted without any extensions of the discovery deadlines.

Respectfully submitted,

SAXTON & STUMP, LLC

Date: April 23, 2024

*/s/Lawrence F. Stengel*
Hon. Lawrence F. Stengel (Ret.)
*Court Appointed Special Master*

---

[7] Of course, I am not recommending that Georgia answer questions posed by Defendants or produce any material sought from Defendants that would violate the attorney-client or the attorney work-product privilege.