# EXHIBIT 1

## PUBLIC VERSION – FILED WITH REDACTIONS

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724 Case No. 2:16-MD-2724 |
| THIS DOCUMENT RELATES TO: *Direct Purchaser Plaintiffs' Actions* | HON. CYNTHIA M. RUFE |

**DECLARATION OF DIANNE M. NAST IN SUPPORT OF
DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER WITH
RESPECT TO THE SANDOZ SETTLEMENT:
(1) CERTIFYING A SETTLEMENT CLASS;
(2) GRANTING PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT;
(3) APPOINTING SETTLEMENT CLASS COUNSEL;
(4) APPOINTING A CLAIMS ADMINISTRATOR AND ESCROW AGENT;
(5) APPROVING THE FORM AND MANNER OF NOTICE TO THE
SETTLEMENT CLASS;
(6) PRELIMINARILY APPROVING THE PLAN OF ALLOCATION; AND
(7) SCHEDULING A FAIRNESS HEARING**

Pursuant to 28 U.S.C. § 1746, I, Dianne M. Nast, hereby declare and state as follows:

1.      I am admitted to practice before Courts in the Commonwealth of Pennsylvania and the State of New Jersey, the Eastern District of Pennsylvania where this Multidistrict Litigation ("MDL") is pending, and *pro hac vice* to numerous state and federal courts of the past several decades. I am the founder and managing partner of NastLaw LLC. I have been appointed by this Court as a Lead and Liaison Counsel to the Direct Purchaser Plaintiffs.

2.      Attached as Exhibit A is a true and correct copy of the proposed Settlement Agreement (the "Sandoz Settlement" or "Settlement Agreement") between Direct Purchaser Plaintiffs César Castillo, LLC, FWK Holdings, LLC, Rochester Drug Cooperative, and KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc. ("DPPs" or "Settling Plaintiffs") and

Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Sandoz" or "Settling Defendants") (together with DPPs, "Settling Parties").

3.      I provide this declaration in support of DPPs' Memorandum of Law in Support of DPPs' Motion for Preliminary Approval of its Settlement with Sandoz.

## BACKGROUND

4.      In mid-2016, DPPs filed their first complaint alleging that generic drug manufacturers artificially inflated the prices of generic drugs through unlawful agreements in violation of the Sherman Act. *See KPH Healthcare, Inc. v. Lannett Company, Inc., et al.,* 2:16-cv-02432-CMR, ECF No. 1 (E.D. Pa. May 18, 2016). Shortly thereafter, DPPs brought their initial claims against Sandoz. *See, e.g., Rochester Drug Co-Operative, Inc. v. Fougera Pharmaceutical, Inc., et al.*, 2:16-cv-06644-CMR, ECF No. 1 (E.D. Pa. Dec. 27, 2016).

5.      On August 5, 2016, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") centralized DPPs' then pending actions with other, factually similar actions to create the *In re: Generic Pharmaceuticals Pricing Antitrust Litigation* MDL before Judge Cynthia M. Rufe in the Eastern District of Pennsylvania.

6.      After the creation of the MDL, I and my firm began serving as Lead and Liaison Counsel for DPPs. *See* Pretrial Order No. ("PTO") 2 & PTO No. 6. The Court also appointed me and other counsel to the DPPs' Plaintiffs' Steering Committee ("PSC"), a position I still hold along with my court appointed colleagues:  Robert N. Kaplan of Kaplan Fox & Kilsheimer LLP, Linda P. Nussbaum of Nussbaum Law Group, Michael L. Roberts of Roberts Law Firm, Thomas M. Sobol of Hagens Berman Sobol Shapiro LLP, and David F. Sorensen of Berger Montague PC.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

7.     Since the creation of this MDL, DPPs have subsequently filed more than a dozen separate class actions, which together allege that Defendants conspired in generic markets, thereby having the impact of raising prices of over a hundred generic drugs.

8.     Prior to filing each complaint, counsel for DPPs commenced and pursued extensive investigations of the generic drug market, including reviewing public data and statements and working with experts to analyze the market and potential alleged overcharges. In addition, counsel for DPPs have thoroughly researched DPPs' legal claims.

9.     Many of DPPs' claims—including claims against Settling Defendants—have survived motions to dismiss. *See In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 458 (E.D. Pa. 2018); *In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d, 509, 533 (E.D. Pa. 2019).

10.     DPPs have also participated in other, significant motion practice, including the briefing to set Bellwether proceedings for this MDL, opposition to the Department of Justice's Limited Stay, and Defendants' appeal of a discovery ruling that was briefed before the Supreme Court of the United States.

11.     DPPs have participated in considerable discovery and related negotiations, serving multiple requests for production and sets of interrogatories and participating in dozens of meet and confers on such discovery.  DPPs have participated in numerous conferences with the Court and Special Masters to address various case management and discovery issues.  DPPs themselves have responded to, and continue to respond to, significant discovery requests propounded by Defendants.

12.     DPPs have vigorously litigated this case at all times and will continue to do so.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**SETTLEMENT NEGOTIATIONS**

13.    On behalf of the DPPs, my firm, along with co-counsel on the PSC, engaged in numerous rounds of settlement negotiations with counsel for Sandoz.

14.    The Settling Parties first began discussing the possibility of settlement in the fall of 2023.  Numerous good-faith meetings took place during the following months, during which time the Settling Parties began negotiating the specific terms of the Settlement Agreement.

15.    After substantial arm's-length negotiations between the parties to reach a final agreement, including extensive negotiations over the scope of Settling Defendants' cooperation and other terms of the Settlement, the Settling Parties finalized and signed the Settlement Agreement between them on February 28, 2024. On June 12, 2024, the parties executed the First Amendment to the Settlement Agreement. The executed Settlement Agreement and its amendment are attached hereto as Exhibit A.

**THE SETTLEMENT AND ITS FAIRNESS**

16.    This is a settlement for the putative DPP class, which contains an estimated 700+ members who directly purchased one or more of certain generic drugs – as defined by Exhibit B to the Settlement – from the Settling Defendants and/or the non-Settling Defendants or Former Defendants – as defined by Exhibit C to the Settlement.  This Settlement reflects an analysis of not only the damages allegedly inflicted on the putative DPP class by the Settling Defendants, but also the value of Settling Defendants' cooperation to aid in the continued prosecution of this case against non-Settling Defendants who remain jointly and severally liable for the damages alleged to have been suffered by the proposed DPP class.

17.    The settlement negotiations between Settling Parties were, at all times, conducted at arm's length and in good faith.  Throughout this process, the Settling Defendants have been

4

represented by experienced, sophisticated antitrust counsel. Counsel for the DPPs have decades of experience litigating antitrust class actions and are capable of fairly, reasonably, and adequately evaluating the early resolution of antitrust litigation.  Counsel for all parties also have substantial experience litigating other pharmaceutical antitrust cases throughout the country, as well as decades of experience in the Eastern District of Pennsylvania.

18.     During the initial investigation, litigation, and in relation to this Settlement, DPPs researched, analyzed, and evaluated many contested legal and factual issues.  In doing so, DPPs recognized the facts and benefits, risks and consequences of continued litigation in comparison to the proposed Settlement.  The DPPs thoroughly evaluated the relative strengths and weaknesses of their litigation position during the negotiation of this Settlement.

19.     There was no collusion or preference among counsel for the Settling Parties at any time during these negotiations.  To the contrary, the negotiations were contentious, hard-fought, and fully informed.  DPPs sought and obtained a significant monetary benefit for the proposed class from the Settling Defendants, as well as cooperation from Sandoz to aid in DPPs' continued prosecution of this action against the remaining non-settling Defendants.  For the avoidance of any doubt, there was no discussion or agreement of any kind regarding the amount of attorneys' fees, costs, or service awards that DPPs' counsel or DPPs may seek from the Court relating to this Settlement.

20.     Under the terms of the proposed Settlement Agreement, Settling Defendants commit to depositing up to $265,000,000 into a Settlement Fund within 20 business days following their receipt of wire instructions from DPPs, who have three business days to transmit wire instructions to Settling Defendants following entry of an Order granting Preliminary Approval.  The final total Settlement amount may potentially decrease to $233,200,000,

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

depending on the aggregate dollar amount of purchases by any purchaser who may opt-out of the Settlement pursuant to Paragraph 9 of the Settlement Agreement. However, the Settlement Fund may increase by an additional $62,351,850 depending on the Most Favored Nation clause in Paragraph 11 of the Settlement Agreement. Additionally, the Settlement Agreement provides cooperation, which includes responses to data inquiries as well as the provision, authentication and admission of documents.

21.    I have personally prosecuted numerous antitrust class actions as lead counsel, co-lead counsel or in other leadership positions, and I have negotiated many settlements during those years. In my opinion, the current proposed Settlement Agreement with Sandoz is fair, reasonable, and adequate and in the best interests of the DPP Class. This Settlement provides substantial benefits to the DPP Class and avoids the significant delays and uncertainties of continuing protracted and contentious litigation with the Settling Defendant.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

Dated: June 21, 2024                    Respectfully submitted,

Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, Pennsylvania 19107
(215) 923-9300
dnast@nastlaw.com

*Lead and Liaison Counsel*
*for Direct Purchaser Plaintiffs*

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

# EXHIBIT A

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 27241<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA RUFE |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into on February 28, 2024 by and between plaintiffs César Castillo, LLC, FWK Holdings, LLC, Rochester Drug Cooperative, Inc. and KPH Healthcare Services, Inc. ("Settling Direct Purchaser Plaintiffs" or "Settling Plaintiffs"), individually and on behalf of the Settlement Class as defined in Paragraph 1 below ("Settlement Class"), by and through Dianne M. Nast, NastLaw LLC, in her capacity as Lead and Liaison Counsel ("Lead Counsel") for Direct Purchaser Plaintiffs in the direct-purchaser class actions included in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (Rufe, J.) (the "Action"), and defendants Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Settling Defendants") (collectively with Settling Plaintiffs, the "Settling Parties"), by and through their counsel Matthew Kent, Alston & Bird LLP. This Settlement Agreement is intended to, and upon occurrence of the Effective Date will fully, finally, and forever resolve, compromise, discharge, and settle the claims of the Settlement Class in the Action as to Releasees (as defined in Paragraph 13), subject to the terms and conditions set forth herein. The Settlement Agreement resolves claims against Releasees only, and does not resolve, compromise, discharge, or settle any of the claims of the Settling Plaintiffs or the Settlement Class against any other defendant in the Action.

1

**RECITATIONS**

WHEREAS, Settling Plaintiffs allege for themselves and on behalf of a class of direct purchasers of generic pharmaceutical products from Settling Defendants and other generic pharmaceutical product manufacturers, that Settling Defendants and others engaged in a scheme or schemes to fix, maintain, and stabilize prices, rig bids, and engage in market and customer allocations of certain generic drugs, imposing overcharges on Settling Direct Purchaser Plaintiffs, in violation of the federal antitrust laws;

WHEREAS, Settling Defendants have not conceded or admitted any liability in the Action, and have asserted a number of defenses to the claims of Settling Direct Purchaser Plaintiffs and the Settlement Class;

WHEREAS, in consideration for their entry into the Settlement Agreement, Settling Defendants have committed to provide Lead Counsel, along with additional counsel for Settling Direct Purchaser Plaintiffs and the Settlement Class ("Settlement Class Counsel"), with substantial cooperation in their continued prosecution of the Action against other defendants;

WHEREAS, after substantial discovery of the facts, including the claims asserted in Settling Plaintiffs' complaints in the Action, and the legal and factual defenses thereto asserted by Settling Defendants, and in light of ongoing litigation against and joint and several liability of other defendants in the Action and Settling Defendants' commitment to provide substantial assistance in Settling Direct Purchaser Plaintiffs' ongoing prosecution of the Action, Settling Direct Purchaser Plaintiffs, in consultation with Lead Counsel and Settlement Class Counsel, believe that it would be in the best interests of Settling Direct Purchaser Plaintiffs and the Settlement Class to enter into this Settlement Agreement with Settling Defendants to eliminate the need for Settling Direct Purchaser Plaintiffs to devote resources to the prosecution of their claims against Settling Defendants, to further the prosecution of claims against other defendants in the

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Action aided by the substantial assistance of Settling Defendants, and assure a benefit to the Settlement Class;

WHEREAS, Settling Plaintiffs and Settling Defendants agree that this Settlement Agreement and the settlement it embodies (the "Settlement") and any actions taken in furtherance of either the Settlement Agreement or the Settlement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation, or of any liability or wrongdoing by Settling Defendants or of the truth of Settling Plaintiffs' claims or allegations for purposes other than the Settlement;

WHEREAS, Lead Counsel and Settlement Class Counsel, on behalf of Settling Plaintiffs and the Settlement Class, and counsel for Settling Defendants, all of whom are highly experienced in pharmaceutical antitrust litigation and settlement, engaged in arm's-length settlement negotiations and have reached this Settlement Agreement, subject to Court approval;

WHEREAS, Settlement Class Counsel recognize the benefit of Settling Defendants' cooperation and recognize that, because of joint and several liability, the Settlement Agreement with Settling Defendants does not impair Settling Plaintiffs' ability to collect the full amount of damages to which they and the Settlement Class may be entitled to from any other defendants in the Action;

WHEREAS, Settling Defendants have agreed to cooperate with Settling Plaintiffs as set forth in **Exhibit A** to this Agreement and therefore will reduce Settling Plaintiffs' burden and expense associated with prosecuting the Action;

WHEREAS, Lead Counsel and Settlement Class Counsel have concluded that the Settlement is fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and is in the best interests of the Settlement Class;

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

WHEREAS, Settling Defendants have concluded, despite their belief that they are not liable for claims asserted and that they have good defenses thereto, that it would be in their best interests to enter into this Settlement Agreement solely to avoid additional costs of further litigation and to resolve all claims asserted on behalf of the Settlement Class in the Action;

WHEREAS, the Settlement resolves claims against Releasees only, and does not resolve, compromise, discharge, or settle any of the claims of Settling Plaintiffs or the Settlement Class against any other defendant in the Action.

NOW THEREFORE, in consideration of the foregoing and the representations, warranties, and covenants contained herein, and intending to be legally bound hereby, it is agreed by the undersigned, on behalf of Settling Plaintiffs and the Settlement Class, and Settling Defendants, that the Action and all claims of the Settling Plaintiffs and the Settlement Class be settled, compromised, and dismissed with prejudice as to Releasees, with each party bearing its own costs (other than as provided for in this Settlement Agreement), subject to the approval of the Court, on the following terms and conditions:

1.      **Direct Purchaser Settlement Class**. The Settling Plaintiffs have proposed a definition, subject to Court approval, of the following Settlement Class:

> All persons or entities, and their successors and assigns, that directly purchased one or more of the Named Generic Drugs from one or more Current or Former Defendants in the United States and its territories and possessions, at any time during the period from May 1, 2009 until December 31, 2019.

> Excluded from the Settlement Class are Current and Former Defendants and their present and former officers, directors, management, employees, subsidiaries, or affiliates, judicial officers and their personnel, and all governmental entities.

The Named Generic Drugs are set forth in **Exhibit B** ("Named Generic Drugs"). The Current and Former Defendants are set forth in **Exhibit C**.

4

2.      **Appointment of Class Representatives**. Settling Plaintiffs shall move for certification of the Settlement Class and shall move for appointment of the Settling Plaintiffs as class representatives. Settling Defendants shall not object to such motion and shall not seek or support any appeal of any order certifying the Settlement Class, for purposes of the Settlement only.

3.      **Reasonable Best Efforts to Effectuate this Settlement**. Settling Plaintiffs, Lead Counsel and Settlement Class Counsel, and Settling Defendants agree to recommend approval of this Settlement to the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, to carry out the terms of this Settlement Agreement, and to secure the prompt, complete, and final dismissal with prejudice of claims in the Action against Releasees. This includes Settling Defendants serving notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

4.      **Motion for Preliminary Approval of the Settlement**. The parties may disclose the fact that they have entered a settlement agreement as reasonably necessary; however, the parties agree not to disclose to any other person or entity, including but not limited to any other plaintiff or defendant in the Action, the terms of this Settlement until the Settlement Agreement is submitted to the Court for preliminary approval, unless required by law or regulation or agreed to in writing by the Settling Parties. As soon as is possible and in no event later than 30 business days after the date of this Settlement Agreement, Lead Counsel and Settlement Class Counsel shall submit to the Court, and Settling Defendants shall assent to and will assist as necessary, a motion seeking entry of an Order Preliminarily Approving Class Settlement. Settling Defendants shall

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

have the opportunity to review and approve the preliminary approval motion and exhibits before the motion is filed. The motion shall:

        a.      Request preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Settlement Class, pursuant to Fed. R. Civ. P. Rule 23;

        b.      Request a stay of all proceedings in the Action on behalf of Settling Direct Purchaser Plaintiffs and the Settlement Class against Settling Defendants only, except those proceedings provided for or required by this Settlement Agreement. *Provided, however,* that counsel for the parties may continue to participate in certain discovery and motion practice to the extent specified in Paragraph 10 below.

        c.      Request approval of the notice plan, providing for direct mail notice to all members of the Settlement Class who can reasonably be determined, and a publication notice, as needed; and

        d.      Seek a schedule for a hearing by the Court after the notice period has expired to finally approve the Settlement and Settlement Class Counsel's application for an award of attorney fees, reimbursement of expenses, and service awards to the Settling Plaintiffs.

    **5.**    **Motion for Final Approval and Entry of Final Judgment**. If the Court preliminarily approves this Settlement (the "Preliminary Approval Order"), Settling Plaintiffs and the Settlement Class shall submit, and Settling Defendants shall assent to and assist as necessary, a motion for final approval of this Settlement by the Court (the "Final Approval Motion"), after Notice has been disseminated to the Settlement Class pursuant to the Preliminary Approval Order. The Final Approval Motion shall seek entry of an order and final judgment ("Final Approval

Order"). Settling Defendants shall have the opportunity to review and approve the Final Approval Motion and exhibits (including the proposed Final Approval Order) before it is submitted to the Court. The proposed Final Approval Order shall:

a.      Find this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Settling Plaintiffs and the Settlement Class within the meaning of Fed. R. Civ. P. 23 and directing its consummation pursuant to its terms;

b.      Find that Notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

c.      Find that all members of the Settlement Class who have not executed timely and valid or otherwise Court-approved requests for exclusion shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

d.      Incorporate the releases set forth in Paragraphs 13 and 14, below, and forever barring the Releasors (as defined in Paragraph 13) from asserting any Released Claims (as defined in Paragraph 13) against any of the Releasees as defined below;

e.      Retain exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement;

f.      Direct that all claims by and on behalf of the Settling Plaintiffs and the Settlement Class be dismissed with prejudice as to Releasees only and, except as provided for herein, with prejudice and without costs or attorney's fees recoverable under 15 U.S.C. § 15(a); and

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

g.      Determine pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the Final Approval Order in the Action as to Releasees shall be final and immediately appealable.

6.      **Finality of Settlement**. This Settlement Agreement and the Settlement shall become final upon the occurrence of all of the following (the "Effective Date"):

a.      The Settlement and this Settlement Agreement are approved by the Court as required by Fed. R. Civ. P. 23(e);

b.      The Court enters an order finally approving the Settlement substantially in the form of the Settling Parties' agreed proposed Final Approval Order, entering a final judgment of dismissal with prejudice as to Releasees only against Settling Plaintiffs and the Settlement Class;

c.      The time for appeal from the Court's entry of the Final Approval Order has expired or, if the Final Approval Order is appealed, the issues subject to appeal have been resolved by agreement and the appeal has been withdrawn by the appealing party, or the Final Approval Order has been affirmed by the court of last resort to which an appeal of such Final Approval Order may be taken; and

d.      The Settlement is not terminated pursuant to Paragraph 18, below.

7.      **Settlement Payment**. The Settling Plaintiffs shall provide electronic transfer instructions and a W-9, in a form acceptable to Settling Defendants, to the Settling Defendants within 3 business days following entry of the Preliminary Approval Order of the Settlement without material change from the order submitted to the Court. Within 20 business days following receipt of those wiring instructions, Settling Defendants shall pay $265,000,000 (the "Settlement Payment") to the designated account (the "Settlement Fund"). If the Settlement Payment is subject

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

to adjustment pursuant to Paragraph 9, any reduction of the Settlement Amount will be refunded to the Settling Defendants as set forth in Paragraph 9. The Settlement Fund shall be held in escrow (the "Escrow Account"), subject to the terms and conditions of an escrow agreement and in accordance with the provisions of Paragraph 8 below, pending finality of this Settlement Agreement pursuant to Paragraph 6, above.

      **8.**     **The Settlement Fund**.

      a.     Before the Court issues the Final Approval Order, disbursements for reasonable expenses, including expenses associated with providing notice of the Settlement to the Settlement Class, expenses associated with administering the Settlement, and expenses associated with developing a plan of allocation of the Settlement Fund to those who submit valid and timely claims, and any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement (collectively, "Administration Expenses") may be made from the Settlement Fund. Disbursements for Administration Expenses prior to or after the Effective Date may be made without Court order up to a total of $250,000; all Administration Expenses incurred or owed by Settlement Class Counsel in excess of this amount whether before or after the Effective Date, shall be borne by Settlement Class Counsel, who may be repaid from the Settlement Fund, or may seek to have outstanding invoices paid from the Settlement Fund, after the Effective Date upon Court approval. In the event the Settlement Agreement is disapproved, terminated, or otherwise fails to become effective, the Settlement Fund shall be refunded to Settling Defendants plus interest earned (net of any taxes paid on such interest), minus Administration Expenses not to exceed $250,000. Court approval shall not be required for disbursements for Administration Expenses for amounts (in the aggregate)

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

of up to $250,000. Otherwise, no disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

b.       At all times prior to the Effective Date, the Settlement Fund shall be invested as set forth in the Escrow Agreement, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. After the Effective Date, the Settlement Fund shall be invested as directed in writing by Lead Counsel or her designee. All interest and dividends earned on the Settlement Fund shall become and remain part of the Settlement Fund. Any losses on the Settlement Fund shall be borne by the Settlement Fund and shall not be recoverable from Settling Defendants. Settling Defendants shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Fund.

c.       After the Effective Date, the Settlement Fund shall be distributed in accordance with the Court-approved plan for such distribution. After making the Settlement Payment, Settling Defendants shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund and shall not be responsible for disputes relating to the amount, allocation, or distribution of any fees or expenses, including attorneys' fees. Settling Defendants shall provide reasonable cooperation, as needed, in connection with claims administration, including providing data and answers to data questions.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

d.      Settling Defendants shall have no right of reimbursement or repayment from the Settlement Fund except pursuant to Paragraph 9 or if the Settlement Agreement is terminated as set forth in Paragraph 18 below.

e.      Settling Plaintiffs, Lead Counsel and Settlement Class Counsel may be reimbursed solely out of the Settlement Fund for all expenses. Settling Defendants shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of Settling Plaintiffs' or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives, but any such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

f.      To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

**9.      Exclusions**. Within 10 business days after the deadline for Settlement Class Members to request exclusion from the Settlement Class (as defined in Paragraph 1 above), Settlement Class Counsel will cause copies of requests for exclusion from members of the Settlement Class to be provided to counsel for Settling Defendants. The parties will then compare the list of requests for exclusion to confidential **Exhibit D**, which the Parties agree reflects Settling Defendants' direct sales of Named Generic Drugs to all direct purchasers, without all adjustments, during the periods set forth in **Exhibit D**. All calculations set forth in this paragraph concerning the aggregate dollar amount of purchases by the Settlement Class Members who have filed timely and valid or otherwise Court-approved requests for exclusion ("Opt-outs") relative to the aggregate dollar amount of purchases by the defined Settlement Class (as defined by Paragraph 1) and all calculations in Paragraph 11 shall be based on the figures set forth in the Adjusted Share of Total

Net Sales Column of the Sandoz Net Sales of **Exhibit D**. If, as reflected in **Exhibit D**, the aggregate dollar amount of purchases by Opt-outs represents an amount equal to or greater than 12 percent of the aggregate dollar amount of purchases by the defined Settlement Class from Settling Defendants, Settling Defendants will be entitled to a reduction of $31,800,000 from the Settlement Payment set forth in Paragraph 7 above. If, as reflected in **Exhibit D**, the aggregate dollar amount of purchases by Opt-outs represents an amount less than 12 percent of the aggregate purchases by the defined Settlement Class from Settling Defendants, Settling Defendants will be entitled to a pro rata reduction of the Settlement Payment set forth in Paragraph 7 above, up to $31,800,000 (i.e., each one percent of aggregate purchases by Settlement Class members who filed timely and valid or otherwise Court-approved requests for exclusion shall reduce the settlement amount by $2,650,000 up to a maximum of 12 percent of aggregate purchases and a maximum reduction of $31,800,000). All reductions pursuant to this Paragraph 9 shall be refunded to the Settling Defendants from the Escrow Account within 30 calendar days after Settlement Class Counsel causes copies of requests for exclusion to be provided to counsel for Settling Defendants. As set forth in a separate letter agreement to be filed with the Court if so requested by the Court, and, if so requested, to be filed *in camera* with Court permission, Settling Defendants shall have the right, but not the obligation, at their sole discretion, to rescind this Settlement Agreement at any time within 45 calendar days after Settlement Class Counsel provides copies of all timely and valid requests or otherwise Court-approved requests for exclusion from the Settlement Class to counsel for Settling Defendants. Any exclusion requests filed after the deadline to request exclusion that are nonetheless approved by the Court, shall count toward the aggregate dollar amount of purchases by Opt-outs. If either of the Settling Parties disputes any of the calculations under this

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

paragraph and the parties cannot agree on a resolution, they shall submit the dispute to arbitration for final resolution pursuant to Paragraph 23.

**10.     Cooperation**. Settling Defendants agree to provide substantial cooperation to Settling Plaintiffs, Lead Counsel and Settlement Class Counsel in connection with the prosecution of the Action against other defendants as set forth in the Cooperation Agreement between Settling Defendants and Settling Plaintiffs annexed hereto as **Exhibit A**, the terms of which are material to this Settlement Agreement and expressly incorporated herein. To the extent that Settling Defendants have agreed (or subsequently agree) as part of a settlement agreement with other plaintiffs to provide cooperation to those other plaintiffs that overlaps in any way with the cooperation provided to the Settling Plaintiffs under this Agreement, Lead Counsel will, at Settling Defendants' request, undertake reasonable efforts to coordinate with counsel for such other plaintiffs on such settlement cooperation obligations so as to avoid unnecessary duplication and expense. The cooperation to be provided under this Agreement shall otherwise be reasonable and shall not impose undue burden and expense on the Settling Defendants or the Settling Plaintiffs. As of the execution date of this Settlement Agreement, the parties shall each suspend all discovery and motion practice between (i) Settling Plaintiffs and the Settlement Class and (ii) Settling Defendants, except that nothing about this Settlement Agreement suspends Settling Plaintiffs' pending motions in their bellwether actions or suspends Settling Plaintiffs' ability to respond to pending motions in their bellwether actions. Neither Settling Plaintiffs and the Settlement Class nor Settling Defendants shall be required to respond to formal discovery from the other, and neither Settling Plaintiffs nor Settling Defendants shall file motions against the other during the pendency of the Settlement Agreement. If and when the Court grants Preliminary Approval, Settling Defendants shall withdraw from all pending motions against Settling Plaintiffs. For the purposes

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

of this Paragraph 10 and Paragraph 13, invoking the Constitutional right against self-incrimination shall not be deemed a failure to provide reasonable cooperation. Counsel for Settling Plaintiffs also shall have the right, both before and after the Effective Date, to participate in discovery including depositions relating to the Settling Defendants pursued by other plaintiffs in the Action, and to receive copies of documents, interrogatory responses, and responses to requests for admission produced by Settling Defendants to the other plaintiffs in the Action. Counsel for Settling Defendants shall likewise have the right, both before and after the Effective Date, to receive copies of documents, interrogatory responses, and responses to requests for admission produced by the Settling Plaintiffs to the other defendants in the Action and to attend depositions of Settling Plaintiffs' employees or experts taken by other defendants in the Action.

11.    **Most Favored Nation As to Any Opt-out Settlement**. In the event that Settling Defendants enter into any settlement agreements or binding term sheets within 18 months of the execution date of the settlement agreement (the "MFN Expiration Date") with any Opt-out (as defined in Paragraph 9) (collectively, "Other Direct Purchaser Settlement"), Settling Defendants shall provide notice of the Other Direct Purchaser Settlement to Settlement Class Counsel within 10 calendar days of signing of such Other Direct Purchaser Settlement. This paragraph applies to any Other Direct Purchaser Settlement signed on or before the MFN Expiration Date of this Settlement Agreement even if such Other Direct Purchaser Settlement is signed before the formal notice and opt-out period has begun or expired but is signed with an entity that otherwise would have been a member of the Settlement Class. Settlement Class Counsel shall maintain the confidentiality of any information regarding Other Direct Purchaser Settlement Agreements provided by Settling Defendants pursuant to this Paragraph, including the fact and terms of the settlement. The notice to Settlement Class Counsel shall indicate whether the financial terms of

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

the Other Direct Purchaser Settlement Agreement are more favorable than the terms of this Settlement Agreement. Specifically, if the financial payment made by Settling Defendants to such Opt-out in any Other Direct Purchaser Settlement (including the financial value of any non-cash terms such as discounts on product within or in consideration for such Other Direct Purchaser Settlement), when compared as a ratio to the purchases by such Opt-out of Named Generic Drugs from Settling Defendants as reflected in **Exhibit D**, are more favorable on a proportionate basis than the financial payment provided to the Settlement Class (as defined in Paragraph 1) after any reduction under Paragraph 9, when compared as a ratio to the purchases of Named Generic Drugs from Settling Defendants as reflected in **Exhibit D**, then this Settlement Agreement shall be automatically amended without any further action of the Settling Plaintiffs in an economically equivalent manner such that the Settlement Class shall receive the benefit of the more favorable financial terms as set forth in such Other Direct Purchaser Settlement (unless the higher payment to such Opt-out(s) results from a material change in damages exposure in the Action faced by Settling Defendants arising from a decision on class certification or a summary judgment motion in the Action ); *provided, however,* that notwithstanding anything in the foregoing to the contrary:

    a.    The operation of this Paragraph shall apply to an individual settlement agreement with a direct purchaser, and/or assignee of a direct purchaser, that would otherwise be a member of the Settlement Class and whose individual direct purchases and assigned purchases of Named Generic Drugs from Settling Defendants represent an amount equal to or greater than one-tenth percent (0.1%) of Settling Defendants' aggregate direct sales, as reflected in **Exhibit D**. This Paragraph 11 shall not apply to any settlement agreement with any other putative class or collective claim in the Action, nor shall it apply

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

to any settlement with a government entity or any party representing the claims of a government entity, even if such purchases constitute direct purchases.

        b.     To the extent that such a purchaser has made both direct purchases (including assigned purchases from the direct purchaser) and indirect purchases not subject to any assignment from a direct purchaser, only the financial terms of such settlement applicable to the direct purchases and assigned direct purchases, as reflected in **Exhibit D**, made by such purchaser shall be considered in determining the applicability of this Paragraph. Settling Defendants shall provide to Settlement Class Counsel a reasonable, good faith estimate of the percentage of the settling party's purchases from Settling Defendants that are attributable to direct purchases and assigned direct purchases. Upon good cause shown, Settlement Class Counsel shall have the right to request the underlying basis for this estimate. Settling Defendants represent and warrant that they will not artificially allocate settlement dollars or value to indirect purchases in order to avoid application of this paragraph, but that any allocation to indirect purchases will be done in good faith.

        c.     In no event shall any amendments to the terms of this Settlement Agreement made pursuant to this Paragraph 11, Paragraph 12, or the combined effect of Paragraphs 11 and 12 cause the Settlement Payment to increase by more than $62,351,850. All payments made pursuant to this Paragraph shall become part of the Settlement Fund.

        d.     If either of the Settling Parties disputes any of the calculations pursuant to this paragraph or applicability and after good faith discussions about the dispute, the parties cannot agree to a resolution, they shall submit the dispute to arbitration for final resolution pursuant to Paragraph 23.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

     e.    If, on or before the MFN Expiration Date, Settling Plaintiffs enter into another settlement agreement or binding term sheet with any other defendant in the Action that provides for a settlement payment of less than $100,000,000 and does not include an MFN provision for the benefit of the Settlement Class, then the MFN provision in this Settlement Agreement (Paragraph 11) will be automatically terminated and rendered void and inoperable as of the date that the Settling Plaintiffs enter into the settlement agreement or binding term sheet with the other defendant. Should this occur, the remaining paragraphs of this Agreement (i.e., all but Paragraph 11) will remain in effect between the Settling Defendants and the Settling Plaintiffs and Settlement Class.

**12.**    **Most Favored Nation As To Any Other Private Settlements.** If Settling Defendants enter into any settlement or binding term sheet with any other class of plaintiffs ("Other Private Settlement") within 12 months from the execution date of this settlement agreement between the Parties, and if any payment(s) pursuant to the Other Private Settlement is more favorable than the Settlement Payment (as measured by whether the payment(s) is equal to or exceeds $119,250,000 described herein), then the Settlement Class shall receive the financial benefit of the more favorable financial terms of the Other Private Settlement such that an additional payment by Settling Defendants to the Settlement Class causes the ratio between the Settlement Payment and the payment(s) made pursuant to the Other Private Settlement to become 13 to 9 (unless the higher payment to such other class plaintiffs results from a material change in damages exposure in the Action faced by Settling Defendants arising from a decision on class certification or a summary judgment motion in the Action); *provided, however,* that notwithstanding anything in the foregoing to the contrary:

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

a.    For the purpose of calculating the foregoing ratio, if Settling Defendants enter into more than one Other Private Settlement with plaintiffs represented by the same counsel, then all payments made to the clients of those counsel pursuant to those settlements shall be aggregated and considered one Other Private Settlement to be measured against the Settlement Payment. This Paragraph 12 shall not apply to any settlement with a government entity or any party representing the claims of a government entity.

b.    In no event shall any amendments to the terms of this Settlement Agreement made pursuant to this Paragraph 12, Paragraph 11, or the combined effect of Paragraphs 11 and 12 cause the Settlement Payment to increase by more than $62,351,850. All payments made pursuant to this Paragraph shall become part of the Settlement Fund.

c.    If either of the Settling Parties disputes any of the calculations pursuant to this paragraph or applicability and after good faith discussions about the dispute, the parties cannot agree to a resolution, they shall submit the dispute to arbitration for final resolution pursuant to Paragraph 23.

**13.    Releases**. In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, upon this Settlement Agreement becoming final as set forth in Paragraph 6 of this Settlement Agreement, and in consideration of payment of the Settlement Payment into the Settlement Fund, as specified in Paragraph 7 of this Settlement Agreement, and for other valuable consideration, the Settling Plaintiffs and all members of the Settlement Class (on behalf of themselves and their respective past and present parents, subsidiaries, and affiliates, as well as their past and present general and limited partners, officers, directors, employees, agents, attorneys, servants, predecessors, successors, heirs, executors, administrators, and representatives)

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

("Releasors") will agree to dismiss Settling Defendants (and their past and present parents (including Novartis AG and its subsidiaries), subsidiaries, divisions, affiliates, stockholders, and general or limited partners, as well as their past and present respective officers, directors, employees, trustees, insurers, agents, attorneys, and any other representatives thereof) (the "Releasees"). And as further provided under Settlement Class Counsel's reservation of rights in Paragraph 14, this Settlement Agreement does not release any non-settling defendant's liability in the Action, nor does it absolve Settling Defendants' present or former officers, directors, employees, trustees, insurers, agents, attorneys, or other representatives from their duty to cooperate in discovery in their capacity as a current or former officer, director, employee, trustee, insurer, agent, attorney, or other representative for other, non-settling defendants. Subject to these exceptions and reservation of rights, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class member has objected to the Settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Settling Plaintiffs and the Settlement Class, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual, contingent, or joint and several, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of, or relating in any way to, any of the claims in the Action, whether actual or alleged, from the beginning of the world up to the date of execution of this Settlement Agreement, including any conduct alleged, and causes of action asserted or that could have been alleged or asserted, based upon the allegations in the Action, relating to the Named Generic Drugs or other generic drugs that could have been named based on

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

the facts alleged in the Action, including but not limited to those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law (the "Released Claims"). The release of Released Claims shall not preclude Settling Plaintiffs from pursuing any and all claims against other defendants for the sale of the Named Generic Drugs or other generic drugs sold by those defendants or their alleged co-conspirators. Nothing herein, and nothing in Paragraph 13, shall release any claims (a) arising in the ordinary course of business between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code (pertaining to sales), other than claims based in whole or in part on any of the Released Claims; (b) for the indirect purchase of any of the Named Generic Drugs or any other generic drugs; (c) for negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods, breach of warranty, or product liability claims between any of the Releasees and any of the Releasors relating to any of the Named Generic Drugs or any other generic drugs, other than claims based in whole or in part on any of the Released Claims; (d) as to any generic drug, including any of the Named Generic Drugs, that is currently the subject of any unrelated pending litigation against Settling Defendants that is not part of the Action; (e) as to any generic drug, including any of the Named Generic Drugs, that is, after the date of this Settlement Agreement, the subject of any unrelated litigation brought against Settling Defendants under federal or state antitrust laws or under RICO where the allegation is that generic competition was delayed (e.g., reverse payment, sham litigation, sham citizen petition, or "*Walker Process*" fraud cases) or otherwise reduced or impaired by alleged conduct other than that pled or based on the facts alleged in the Settling Plaintiffs' complaints in the Action; (f) for any claims of any type relating to any drugs other than the Named Generic Drugs, other than those pled or based on the facts alleged in the Settling Plaintiffs' complaints in the Action. Settling Plaintiffs and the

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Settlement Class shall not, after the Effective Date of this Settlement Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.

14.    **Additional Release**. In addition, upon the Effective Date, Settling Plaintiffs and each member of the Settlement Class hereby expressly waive and release any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which reads:

> **SECTION 1542. GENERAL RELEASE–CLAIMS EXTINGUISHED. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Upon the Effective Date, Settling Plaintiffs and each member of the Settlement Class also hereby expressly waive and release any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Settling Plaintiffs and each member of the Settlement Class may hereafter discover facts other than or different from those that they know or believe to be true with respect to the claims that are the subject of this Paragraph, but Settling Plaintiffs and each member of the Settlement Class hereby agree that as of the Effective Date, they expressly waive and fully, finally, and forever settle and release as to the Releasees all known or unknown, suspected or unsuspected, accrued or unaccrued, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. For the avoidance of doubt, Settling Plaintiffs and each member of the Settlement Class also hereby agree that as of the Effective Date, they expressly waive and fully, finally, and forever settle and release any and all claims that would otherwise fall within the

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

definition of Released Claims they may have against any of the Releasees under § 17200, *et seq*., of the California Business and Professions Code or any similar, comparable, or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

15.     **Reservation of Settlement Class Members' Rights Against Other Defendants**. No party other than the Releasees is intended to be, or is, included within the scope of the release contained herein. For the avoidance of doubt, neither any other defendant in the Action other than Releasees, nor any other defendant's parent(s) or successor(s) in interest is intended to be, or is, included within the scope of this release. For avoidance of doubt, if any other defendant in the Action becomes, after the date of signing of the Settlement Agreement, affiliated in any way with Settling Defendants, including but not limited to by becoming a subsidiary or parent of any Settling Defendants, such affiliation shall have no effect on the liability of said other defendant. This Settlement is as to Releasees only and is not intended to release any claims other than those against Releasees as specified in herein. The sales of Named Generic Drugs and all other generic drugs by Settling Defendants shall, to the extent permitted or authorized by law, remain in the Action against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against other current or future defendants in the Action or other persons or entities other than the Releasees.

16.     **Full Satisfaction; Limitation of Interest and Liability**. Members of the Settlement Class shall look solely to the Settlement Fund for settlement and satisfaction against Releasees of all claims that are released hereunder against Releasees. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof. Settling Plaintiffs and Settlement Class Counsel or any other counsel acting

on Settling Plaintiffs' behalf will be paid solely out of the Settlement Fund for any costs and expenses relating to the Action.

17.    **Attorneys' Fees and Costs**.

    a.    Settlement Class Counsel intend to seek, solely from the Settlement Fund, attorneys' fees of up to one-third of the Settlement Fund (including interest accrued thereon and including any additional amount that is paid under Paragraph 11, but net of any reasonable costs and expenses incurred prior to Settlement), reimbursement of reasonable litigation expenses incurred in the prosecution of the Action, service awards to Settling Plaintiffs, and payment for Administration Expenses (and subsequent to the Effective Date, for expenses associated with distributing money from the Settlement Fund to qualified claimants who submit timely and approved claims). Settlement Class Counsel shall file a motion for approval of the Fee and Expense Award ("Motion for Fee and Expense Award") after the Court has granted preliminary approval to the Settlement but sufficiently before the expiration of the deadline for Settlement Class members to opt out or object and before the Court's final fairness hearing on the Settlement; *provided, however,* that Settlement Class Counsel may defer the final determination of any Fee and Expense Award until later in the proceedings so long as Settlement Class Counsel seek, within the timing set forth in this paragraph, a provisional set aside for a Fee and Expense Award. Settling Defendants agree to take no position with respect to the Motion for Fee and Expense Award, or on any other application by Settlement Class Counsel for fees or expenses to be paid only from the Settlement Fund. Settlement Class Counsel shall be paid solely out of the Settlement Fund for all such fees and expenses. Settling Plaintiffs, Settlement Class Members, and their respective counsel, shall not seek payment of any attorneys' fees or costs from

23

Releasees in the Action, or in any other action related to the Released Claims set forth above, from any source other than the Settlement Fund. Releasees shall not have any responsibility for or liability with respect to any payment to Settlement Class Counsel of any Fee and Expense Award in the Action.

b.      The procedures for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs, and expenses to be paid out of the Settlement Fund are not part of this Settlement Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the fee and expense application, or any appeal from any such order, shall not operate to terminate or cancel this Settlement Agreement, or provide a basis to terminate or cancel this Settlement Agreement, affect or delay the finality of the Final Approval Order, or affect or delay the payment of the Fee and Expense Award.

c.      After approval of any Fee and Expense Award by the Court, Settlement Class Counsel shall be entitled to have any award paid from the Settlement Fund but, if the Court's award of such fees and expenses is vacated, reversed, or reduced subsequent to the disbursement of any Fee and Expense Award, Settlement Class Counsel shall within 10 business days after receiving written notice from the Court or Settling Defendants of such vacatur, reversal, or reduction, make a refund to the Escrow Account in the amount of such vacatur, reversal, or reduction with interest; and further, if the Settlement Agreement is terminated pursuant to Paragraph 17 below, Settlement Class Counsel shall within 10 business days after giving notice to or receiving notice from Settling Defendants of such termination, make a refund to the Escrow Account in the amount of any such Fee and

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Expense Award with interest. The interest rate applicable to any refund made to the Escrow Account pursuant to this Paragraph shall be the same interest rate earned by the Settlement Fund during the period between the disbursement of any Fee and Expense Award and any refund required by this Paragraph, but after deductions for any tax payments.

18.    **Termination**. Settling Defendants and Settling Plaintiffs shall each have the option to terminate the Settlement Agreement and have the Settlement Payment refunded to Settling Defendants if the Court declines to grant final approval to the Settlement Agreement without material alteration of its terms, or if such approval is set aside on appeal. Settling Defendants shall have the unilateral option to terminate the Settlement Agreement and have the Settlement Payment refunded to Settling Defendants under certain circumstances set forth in a separate letter agreement among the Settling Parties to be provided to the Court if the Court so requires, and if so required, to be filed *in camera* with Court permission. If the Settlement Agreement does not become final, then (i) this Settlement Agreement shall be of no force or effect; (ii) all funds paid by Settling Defendants into the Settlement Fund, plus interest (net of any taxes paid on such interest), less any amounts paid pursuant to Paragraph 8.a above that were expended or are owed to pay Administration Expenses up to $250,000, shall be returned to Settling Defendants within 30 calendar days after the Escrow Agent receives notice of termination; (iii) any release pursuant to Paragraphs 12 and 13 above shall be of no force or effect; and (iv) litigation of the Action will resume in a reasonable manner and on a reasonable timetable to be approved by the Court. Written notice of the exercise of the right to terminate the Settlement Agreement shall be made according to the terms of Paragraph 29 below.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

19.    **Taxes Paid by Settlement Fund**.

a.    The parties intend that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund. Lead and Settlement Class Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Lead Counsel shall be solely responsible for directing the Claims Administrator to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund. Lead and Settlement Class Counsel shall be entitled to direct the Escrow Agent to pay from the Escrow Account customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out the Escrow Agent's or tax preparer's responsibilities. Settling Defendants shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Fund, and shall have no responsibility to pay taxes on any income earned by the Settlement Fund, or to pay taxes with respect thereto unless the Settlement is not consummated and the Settlement Fund or the net Settlement Fund is returned to Settling Defendants. Other than as specifically set forth herein, Settling Defendants shall have no responsibility for the payment of taxes or tax-related expenses. If, for any reason, for any period of time, Settling Defendants are required to pay taxes on income earned by the Settlement Fund, the Escrow Agent shall, upon written instructions from Settling Defendants with notice to Lead and Settlement Class Counsel, timely pay to Settling Defendants sufficient monies from the Settlement Fund to enable them to pay all taxes (state, federal, or other) on income earned by the Settlement Fund.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

b.    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Escrow Account shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Account (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

c.    The Settling Parties to this Settlement Agreement and their counsel shall treat, and shall cause the Escrow Agent to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1. The Settling Parties, their counsel, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Accounts in this manner. In addition, the Escrow Agent and, as required, the Settling Parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B l(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Accounts being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B.

**20.    Binding Effect**. This Settlement Agreement shall be binding upon the Settling Parties hereto and inure to the benefit of the Settling Parties hereto and Releasees. Without limiting

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

the generality of the foregoing, each and every covenant and agreement herein by the Settling Plaintiffs, Lead Counsel and Settlement Class Counsel shall be binding upon all Settlement Class Members.

21.    **Entire Agreement**. This Settlement Agreement, together with exhibits hereto and the confidential letter agreement pursuant to Paragraph 18 that, if requested, Settling Defendants and Settling Plaintiffs will submit to the Court *in camera* (with Court permission), reflects the entirety of the agreement by and among the Settling Parties hereto with respect to the transactions contemplated by this Settlement Agreement, and supersedes all prior agreements or understandings, whether written or oral, between or among any of the Settling Parties hereto with respect to the subject matter hereof. The Settling Parties agree there are and have been no express or implied promises, inducements or agreements made by any Settling Party to the other except as specifically and expressly set forth within this Settlement Agreement, the exhibits hereto and the confidential letter agreement that the Settling Parties will submit to the Court (if so requested) *in camera* with permission.

22.    **Independent Settlement**. This Settlement is not conditioned on approval by any other member of the Settlement Class or settlement of any other case.

23.    **Arbitration**. Any controversy, claim or dispute arising out of or relating to or in connection with the matters specifically designated to be submitted to arbitration under the Settlement Agreement shall be finally determined in arbitration in Philadelphia before Eric D. Green of Resolutions, LLC, or if he is not available, such arbitrator upon whom the parties shall mutually agree. Subject to the award of the arbitrator the parties participating in the arbitration shall pay an equal share of the arbitrator's fees. The arbitrator may award recovery of all costs (including administrative fees, arbitrator's fees and court costs, but excluding attorneys' fees) to

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

the prevailing party. Judgment upon any award rendered may be entered in the United States District Court for the Eastern District of Pennsylvania.

24. **Headings**. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

25. **No Party is the Drafter**. None of the Settling Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

26. **Intended Beneficiaries**. No provision of this Settlement Agreement will provide any rights to, or be enforceable by, any person or entity that is not a Settling Plaintiff or member of the Settlement Class, Lead Counsel or Settlement Class Counsel, or a Releasee. No other person shall have any rights under this Settlement Agreement and cannot enforce its terms. Neither Settling Plaintiffs nor Lead Counsel nor Settlement Class Counsel may assign or otherwise convey any right to enforce or dispute any provision of this Settlement Agreement.

27. **Choice of Law**. All terms of this Settlement Agreement shall be governed by federal common law as construed in the United States District Court for the Eastern District of Pennsylvania.

28. **Consent to Jurisdiction**. Other than as set forth in Paragraph 23, Settling Defendants and each Settlement Class member hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action,

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

proceeding, or dispute relating to the release provisions herein. Nothing in this Paragraph shall prohibit (a) the assertion in any forum in which a claim is brought that any release herein is a defense, in whole or in part, to such claim or (b) in the event that such a defense is asserted in such forum, the determination of its merits in that forum.

29.    **Representations and Warranties**. The signatories hereto represent and warrant that they each have the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby. Settling Defendants represent and warrant that they have not assumed any contractual obligation that would, in fact or at law, in the event Settling Plaintiffs prevailed against any other defendant on the claims made in the Action, obligate Settling Defendants to indemnify, pay contribution to, be liable over to, or share in a judgment entered in favor of any Settling Plaintiff against any other defendant. Settling Defendants agree that Settling Plaintiffs justifiably rely upon this representation and warranty and that it is material to Settling Plaintiffs' decision to enter into this Settlement Agreement with Settling Defendants.

30.    **No Admission**. Nothing in this Settlement Agreement, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Settling Defendants. In the event that the Court does not approve of the Settlement or the Court's approval is set aside on appeal, Releasees reserve all legal rights and defenses, including, but not limited to, any defenses relating to class certification and whether any member or excluded member of the Settlement Class is a direct purchaser of any Named Generic Drug or has standing to bring any claim.

**31.     Notice**. Notice to Settling Defendants pursuant to this Settlement Agreement shall be sent by registered United States mail, return receipt requested, and electronic mail to:

> Laura Shores
> Arnold & Porter LLP
> 601 Massachusetts Ave, NW
> Washington, D.C. 20001
> laura.shores@arnoldporter.com

> Matthew Kent
> Alston & Bird LLP
> 1201 W Peachtree St NE #4900
> Atlanta, GA 30309
> matthew.kent@alston.com

Notice to Settling Plaintiffs or Settlement Class Counsel pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to Lead Counsel:

> Dianne M. Nast
> Joseph N. Roda
> NastLaw LLC
> 1101 Market Street, Suite 2801
> Philadelphia, PA 19107
> dnast@nastlaw.com
> jnroda@nastlaw.com

**32.     Execution in Counterparts**. This Settlement Agreement may be executed in counterparts. Signatures transmitted by electronic means shall be considered valid signatures as of the date signed.

31

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

IN WITNESS WHEREOF, the Settling Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

_____

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com

_Attorney for Plaintiffs César Castillo, LLC,_
_FWK Holdings, LLC, Rochester Drug_
_Cooperative, and KPH Healthcare Services,_
_Inc. and Lead Counsel_
_for the Direct Purchaser Class_

Dated: February 28, 2024

_____

Matthew Kent
Alston & Bird LLP
1201 W Peachtree St NE #4900
Atlanta, GA 30309
(404) 881-7948
matthew.kent@alston.com

_Attorney for Sandoz Inc. and Fougera_
_Pharmaceuticals Inc._

Dated: February 28, 2024

32

IN WITNESS WHEREOF, the Settling Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

_____

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com

*Attorney for Plaintiffs César Castillo, LLC, FWK Holdings, LLC, Rochester Drug Cooperative, and KPH Healthcare Services, Inc. and Lead Counsel for the Direct Purchaser Class*

Dated: February 28, 2024

_____

Matthew Kent
Alston & Bird LLP
1201 W Peachtree St NE #4900
Atlanta, GA 30309
(404) 881-7948
matthew.kent@alston.com

*Attorney for Sandoz Inc. and Fougera Pharmaceuticals Inc.*

Dated: February 28, 2024

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

# EXHIBIT A

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

## SANDOZ INC. COOPERATION AGREEMENT

### A. Preamble

1.     This Cooperation Agreement (the "Agreement") is made between the Settling Plaintiffs, individually and on behalf of the Settlement Class, as defined in the Settlement Agreement ("Settling Plaintiffs") and defendants Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Settling Defendants").

2.     The purpose of this Agreement is to set forth the terms and process by which the Settling Defendants will provide substantial cooperation to Settling Plaintiffs in connection with Settling Plaintiffs' prosecution of claims in the action entitled *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (Rufe, J.) (the "Action").

3.     Settling Plaintiffs and Settling Defendants agree that Settling Defendants' substantial cooperation pursuant to this Agreement is material to the Settlement Agreement to be entered by Settling Plaintiffs and Settling Defendants in the Action.

### B. Scope of Substantial Cooperation.

4.     Settling Defendants agree to use reasonable efforts to assist Settling Plaintiffs to understand data produced by Settling Defendants, including consulting with technical personnel to address questions posed by Settling Plaintiffs' data consultants, and to provide any additional information or data reasonably necessary to understand or clarify the data or otherwise render it admissible.

5.     Settling Defendants agree to use reasonable efforts to authenticate and lay the foundation to admit as business records any documents and/or things produced by Settling Defendants in the Action and identified by Settling Plaintiffs for use in the Action (to the extent that this foundation has not previously been laid in a deposition), and to confirm, where applicable,

that such documents and data produced by Settling Defendants qualify as business records, whether by declarations, depositions, hearings and/or trials as may be necessary for the Action to render such documents and data admissible at trial.

6.     Settling Defendants agree to promptly provide Settling Plaintiffs with any additional documents, data, or materials produced in the Action as the result of a discovery request, agreement, or Court Order.

C.  **No Waiver of Privileges, Evidentiary Protections, or Confidentiality Obligation**

7.     Notwithstanding any other provision of this Agreement, Settling Defendants may assert where applicable the work product doctrine, the attorney-client privilege, and the common interest privilege (collectively, "Privileged Material") with respect to any statements, testimony, materials, or information provided under this Agreement. Settling Defendants shall not disclose any information provided by other defendants pursuant to a common interest agreement. Settling Plaintiffs shall not request disclosure of Privileged Material, and a refusal to provide Privileged Material shall not be deemed a breach of this Agreement by Settling Defendants. Settling Plaintiffs shall be free to use statements, testimony, materials, or information provided under this Agreement in any motion, opposition or other pleading in this Action or as evidence at trial in this case. Settling Plaintiffs will not otherwise disclose any statements, testimony, materials or information provided under this Agreement to any other party to this litigation, including any other plaintiff, or any third party. Settling Plaintiffs are permitted to describe orally the scope of cooperation with counsel for other defendants, but cannot otherwise disclose the information provided under this Agreement.

# EXHIBIT B

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**Exhibit B**
**List of Named Generic Drugs**

| Molecule Name | Form | Strength |
|---|---|---|
| (1) | (2) | (3) |
| 1 ACETAZOLAMIDE | TABLET | 125MG |
| 1 ACETAZOLAMIDE | TABLET | 250MG |
| 1 ACETAZOLAMIDE ER | CAPSULE | 500MG |
| 2 ADAPALENE | CREAM | 0.1% |
| 2 ADAPALENE | GEL | 0.1% |
| 2 ADAPALENE | GEL | 0.3% |
| 3 ALBUTEROL | TABLET | 2MG |
| 3 ALBUTEROL | TABLET | 4MG |
| 4 ALCLOMETASONE DIPROPIONATE | CREAM | 0.05% |
| 4 ALCLOMETASONE DIPROPIONATE | OINTMENT | 0.05% |
| 5 ALLOPURINOL | TABLET | 100MG |
| 5 ALLOPURINOL | TABLET | 300MG |
| 6 AMANTADINE HCL | CAPSULE | 100MG |
| 7 AMILORIDE HCL/HCTZ | TABLET | 5MG;50MG |
| 8 AMITRIPTYLINE | TABLET | 100MG |
| 8 AMITRIPTYLINE | TABLET | 10MG |
| 8 AMITRIPTYLINE | TABLET | 150MG |
| 8 AMITRIPTYLINE | TABLET | 25MG |
| 8 AMITRIPTYLINE | TABLET | 50MG |
| 8 AMITRIPTYLINE | TABLET | 75MG |
| 9 AMMONIUM LACTATE | CREAM | 12% |
| 9 AMMONIUM LACTATE | LOTION | 12% |
| 10 AMOXICILLIN/CLAVULANATE | TABLET CHEWABLE | 200MG;28.5MG |
| 10 AMOXICILLIN/CLAVULANATE | TABLET CHEWABLE | 400MG;57MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 10MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 20MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 30MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 5MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 10MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 15MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 20MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 25MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 30MG |
| 11 AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 5MG |
| 12 ATENOLOL/CHLORTHALIDONE | TABLET | 100MG;25MG |
| 12 ATENOLOL/CHLORTHALIDONE | TABLET | 50MG;25MG |
| 13 ATROPINE SULFATE | SOLUTION | 1% |
| 14 BACLOFEN | TABLET | 10MG |
| 14 BACLOFEN | TABLET | 20MG |
| 15 BALSALAZIDE DISODIUM | CAPSULE | 750MG |
| 16 BENAZEPRIL HCTZ | TABLET | 10MG;12.5MG |
| 16 BENAZEPRIL HCTZ | TABLET | 20MG;12.5MG |
| 16 BENAZEPRIL HCTZ | TABLET | 20MG;25MG |
| 17 BETAMETHASONE DIPROPIONATE | CREAM | 0.05% |
| 17 BETAMETHASONE DIPROPIONATE | LOTION | 0.05% |
| 17 BETAMETHASONE DIPROPIONATE | OINTMENT | 0.05% |
| 18 BETAMETHASONE DIPROPIONATE AUGMENTED | LOTION | 0.05% |
| 19 BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | CREAM | 0.05%;1% |
| 19 BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | LOTION | 0.05%;1% |
| 20 BETAMETHASONE VALERATE | CREAM | 0.1% |
| 20 BETAMETHASONE VALERATE | LOTION | 0.1% |
| 20 BETAMETHASONE VALERATE | OINTMENT | 0.1% |
| 21 BETHANECHOL CHLORIDE | TABLET | 10MG |
| 21 BETHANECHOL CHLORIDE | TABLET | 25MG |
| 21 BETHANECHOL CHLORIDE | TABLET | 50MG |
| 21 BETHANECHOL CHLORIDE | TABLET | 5MG |
| 22 BROMOCRIPTINE MESYLATE | TABLET | 2.5MG |
| 23 BUDESONIDE | SOLUTION | 0.25MG/2ML |
| 23 BUDESONIDE | SOLUTION | 0.5MG/2ML |
| 23 BUDESONIDE | SOLUTION | 1MG/2ML |
| 23 BUDESONIDE DR | CAPSULE | 3MG |
| 24 BUSPIRONE HCL | TABLET | 10MG |
| 24 BUSPIRONE HCL | TABLET | 15MG |
| 24 BUSPIRONE HCL | TABLET | 30MG |
| 24 BUSPIRONE HCL | TABLET | 5MG |
| 24 BUSPIRONE HCL | TABLET | 7.5MG |
| 25 BUTORPHANOL TARTRATE | SPRAY | 10MG/ML |
| 26 CAPECITABINE | TABLET | 150MG |
| 26 CAPECITABINE | TABLET | 500MG |
| 27 CAPTOPRIL | TABLET | 100MG |
| 27 CAPTOPRIL | TABLET | 12.5MG |
| 27 CAPTOPRIL | TABLET | 25MG |
| 27 CAPTOPRIL | TABLET | 50MG |
| 28 CARBAMAZEPINE | TABLET | 200MG |
| 28 CARBAMAZEPINE | TABLET CHEWABLE | 100MG |
| 28 CARBAMAZEPINE ER | TABLET | 100MG |
| 28 CARBAMAZEPINE ER | TABLET | 200MG |
| 28 CARBAMAZEPINE ER | TABLET | 400MG |
| 29 CARISOPRODOL | TABLET | 350MG |
| 30 CEFDINIR | CAPSULE | 300MG |
| 30 CEFDINIR | SOLUTION | 125MG/5ML |

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

| 30 CEFDINIR | SOLUTION | 250MG/5ML |
|---|---|---|
| 31 CEFPROZIL | TABLET | 250MG |
| 31 CEFPROZIL | TABLET | 500MG |
| 32 CEFUROXIME AXETIL | TABLET | 250MG |
| 32 CEFUROXIME AXETIL | TABLET | 500MG |
| 33 CELECOXIB | CAPSULE | 100MG |
| 33 CELECOXIB | CAPSULE | 200MG |
| 33 CELECOXIB | CAPSULE | 400MG |
| 33 CELECOXIB | CAPSULE | 50MG |
| 34 CEPHALEXIN (CEFALEXIN) | SOLUTION | 125MG/5ML |
| 34 CEPHALEXIN (CEFALEXIN) | SOLUTION | 250MG/5ML |
| 35 CHLORPROMAZINE HCL | TABLET | 100MG |
| 35 CHLORPROMAZINE HCL | TABLET | 10MG |
| 35 CHLORPROMAZINE HCL | TABLET | 200MG |
| 35 CHLORPROMAZINE HCL | TABLET | 25MG |
| 35 CHLORPROMAZINE HCL | TABLET | 50MG |
| 36 CHOLESTYRAMINE | PACKET/ORAL SOLID | 4G |
| 36 CHOLESTYRAMINE | POWDER | 4G |
| 37 CICLOPIROX | CREAM | 0.77% |
| 37 CICLOPIROX | SHAMPOO | 1% |
| 37 CICLOPIROX | SOLUTION | 8% |
| 38 CIMETIDINE | TABLET | 200MG |
| 38 CIMETIDINE | TABLET | 300MG |
| 38 CIMETIDINE | TABLET | 400MG |
| 38 CIMETIDINE | TABLET | 800MG |
| 39 CLARITHROMYCIN ER | TABLET | 500MG |
| 40 CLINDAMYCIN PHOSPHATE | GEL | 1% |
| 40 CLINDAMYCIN PHOSPHATE | LOTION | 1% |
| 40 CLINDAMYCIN PHOSPHATE | SOLUTION | 1% |
| 40 CLINDAMYCIN PHOSPHATE | VAGINAL CREAM | 2% |
| 41 CLOBETASOL | CREAM | 0.05% |
| 41 CLOBETASOL | E CREAM | 0.05% |
| 41 CLOBETASOL | GEL | 0.05% |
| 41 CLOBETASOL | OINTMENT | 0.05% |
| 41 CLOBETASOL | SOLUTION | 0.05% |
| 42 CLOMIPRAMINE | CAPSULE | 25MG |
| 42 CLOMIPRAMINE | CAPSULE | 50MG |
| 42 CLOMIPRAMINE | CAPSULE | 75MG |
| 43 CLONIDINE ER | PATCH | 0.1MG/24HR |
| 43 CLONIDINE ER | PATCH | 0.2MG/24HR |
| 43 CLONIDINE ER | PATCH | 0.3MG/24HR |
| 44 CLOTRIMAZOLE | SOLUTION | 1% |
| 45 DESMOPRESSIN ACETATE | TABLET | 0.1MG |
| 45 DESMOPRESSIN ACETATE | TABLET | 0.2MG |
| 46 DESONIDE | CREAM | 0.05% |
| 46 DESONIDE | LOTION | 0.05% |
| 46 DESONIDE | OINTMENT | 0.05% |
| 47 DESOXIMETASONE | OINTMENT | 0.25% |
| 48 DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 15MG |
| 48 DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 20MG |
| 48 DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 40MG |
| 48 DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 5MG |
| 49 DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 10MG |
| 49 DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 15MG |
| 49 DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 2.5MG |
| 49 DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 20MG |
| 49 DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 30MG |
| 49 DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 5MG |
| 49 DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 7.5MG |
| 49 DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 10MG |
| 49 DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 15MG |
| 49 DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 5MG |
| 50 DICLOFENAC POTASSIUM | TABLET | 50MG |
| 51 DIGOXIN | TABLET | 0.125MG |
| 51 DIGOXIN | TABLET | 0.25MG |
| 52 DILTIAZEM HCL | TABLET | 120MG |
| 52 DILTIAZEM HCL | TABLET | 30MG |
| 52 DILTIAZEM HCL | TABLET | 60MG |
| 52 DILTIAZEM HCL | TABLET | 90MG |
| 53 DIPHENOXYLATE/ATROPINE | TABLET | 2.5MG;0.025MG |
| 54 DIVALPROEX ER | TABLET | 250MG |
| 54 DIVALPROEX ER | TABLET | 500MG |
| 55 DOXAZOSIN MESYLATE | TABLET | 1MG |
| 55 DOXAZOSIN MESYLATE | TABLET | 2MG |
| 55 DOXAZOSIN MESYLATE | TABLET | 4MG |
| 55 DOXAZOSIN MESYLATE | TABLET | 8MG |
| 56 DOXYCYCLINE HYCLATE | CAPSULE | 100MG |
| 56 DOXYCYCLINE HYCLATE | CAPSULE | 50MG |
| 56 DOXYCYCLINE HYCLATE | TABLET | 100MG |
| 56 DOXYCYCLINE HYCLATE DR | TABLET | 100MG |
| 56 DOXYCYCLINE HYCLATE DR | TABLET | 150MG |
| 56 DOXYCYCLINE HYCLATE DR | TABLET | 75MG |
| 56 DOXYCYCLINE MONOHYDRATE | TABLET | 100MG |
| 56 DOXYCYCLINE MONOHYDRATE | TABLET | 150MG |
| 56 DOXYCYCLINE MONOHYDRATE | TABLET | 50MG |
| 56 DOXYCYCLINE MONOHYDRATE | TABLET | 75MG |
| 57 DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.02MG |
| 57 DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.03MG |
| 58 ECONAZOLE | CREAM | 1% |

| | | | |
|---|---|---|---|
| 59 | ENALAPRIL MALEATE | TABLET | 10MG |
| 59 | ENALAPRIL MALEATE | TABLET | 2.5MG |
| 59 | ENALAPRIL MALEATE | TABLET | 20MG |
| 59 | ENALAPRIL MALEATE | TABLET | 5MG |
| 60 | ENTECAVIR | TABLET | 0.5MG |
| 60 | ENTECAVIR | TABLET | 1MG |
| 61 | ESTRADIOL | TABLET | 0.5MG |
| 61 | ESTRADIOL | TABLET | 1MG |
| 61 | ESTRADIOL | TABLET | 2MG |
| 62 | ESTRADIOL/NORETHINDRONE ACETATE (MIMVEY) | TABLET | 1MG-0.5MG |
| 63 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | .02MG-0.1MG |
| 63 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | .03MG-.15MG |
| 63 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | .03MG-.15MG-.01MG |
| 63 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | .02MG-0.1MG-.01MG |
| 63 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | .02MG-.15MG;.025MG-.15MG;.03MG-.15MG;.01MG |
| 63 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | .03MG-.05MG;.04MG-.075MG;.03MG-.125MG |
| 63 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | .02MG-.09MG |
| 64 | ETODOLAC | CAPSULE | 200MG |
| 64 | ETODOLAC | CAPSULE | 300MG |
| 64 | ETODOLAC | TABLET | 400MG |
| 64 | ETODOLAC | TABLET | 500MG |
| 64 | ETODOLAC ER | TABLET | 400MG |
| 64 | ETODOLAC ER | TABLET | 500MG |
| 64 | ETODOLAC ER | TABLET | 600MG |
| 65 | EXEMESTANE | TABLET | 25MG |
| 66 | FENOFIBRATE | TABLET | 145MG |
| 66 | FENOFIBRATE | TABLET | 48MG |
| 67 | FLUCONAZOLE | TABLET | 100MG |
| 67 | FLUCONAZOLE | TABLET | 150MG |
| 67 | FLUCONAZOLE | TABLET | 200MG |
| 67 | FLUCONAZOLE | TABLET | 50MG |
| 68 | FLUOCINOLONE ACETONIDE | CREAM | 0.01% |
| 68 | FLUOCINOLONE ACETONIDE | CREAM | 0.025% |
| 68 | FLUOCINOLONE ACETONIDE | OINTMENT | 0.025% |
| 68 | FLUOCINOLONE ACETONIDE | SOLUTION | 0.01% |
| 69 | FLUOCINONIDE | CREAM | 0.05% |
| 69 | FLUOCINONIDE | CREAM | 0.1% |
| 69 | FLUOCINONIDE | E CREAM | 0.05% |
| 69 | FLUOCINONIDE | GEL | 0.05% |
| 69 | FLUOCINONIDE | OINTMENT | 0.05% |
| 69 | FLUOCINONIDE | SOLUTION | 0.05% |
| 70 | FLUOXETINE HCL | TABLET | 10MG |
| 70 | FLUOXETINE HCL | TABLET | 15MG |
| 70 | FLUOXETINE HCL | TABLET | 20MG |
| 70 | FLUOXETINE HCL | TABLET | 60MG |
| 71 | FLUTICASONE PROPIONATE | SPRAY | 50MCG |
| 72 | FOSINOPRIL HCTZ | TABLET | 10MG;12.5MG |
| 72 | FOSINOPRIL HCTZ | TABLET | 20MG;12.5MG |
| 73 | GABAPENTIN | TABLET | 600MG |
| 73 | GABAPENTIN | TABLET | 800MG |
| 74 | GLIMEPIRIDE | TABLET | 1MG |
| 74 | GLIMEPIRIDE | TABLET | 2MG |
| 74 | GLIMEPIRIDE | TABLET | 4MG |
| 75 | GLIPIZIDE/METFORMIN | TABLET | 2.5MG;250MG |
| 75 | GLIPIZIDE/METFORMIN | TABLET | 2.5MG;500MG |
| 75 | GLIPIZIDE/METFORMIN | TABLET | 5MG;500MG |
| 76 | GLYBURIDE | TABLET | 1.25MG |
| 76 | GLYBURIDE | TABLET | 2.5MG |
| 76 | GLYBURIDE | TABLET | 5MG |
| 77 | GLYBURIDE/METFORMIN | TABLET | 1.25MG;250MG |
| 77 | GLYBURIDE/METFORMIN | TABLET | 2.5MG;500MG |
| 77 | GLYBURIDE/METFORMIN | TABLET | 5MG;500MG |
| 78 | GRISEOFULVIN | SUSPENSION (MICROSIZE) | 125MG/5ML |
| 79 | HALOBETASOL PROPIONATE | CREAM | 0.05% |
| 79 | HALOBETASOL PROPIONATE | OINTMENT | 0.05% |
| 80 | HALOPERIDOL | TABLET | 0.5MG |
| 80 | HALOPERIDOL | TABLET | 10MG |
| 80 | HALOPERIDOL | TABLET | 1MG |
| 80 | HALOPERIDOL | TABLET | 20MG |
| 80 | HALOPERIDOL | TABLET | 2MG |
| 80 | HALOPERIDOL | TABLET | 5MG |
| 81 | HYDROCODONE/ACETAMINOPHEN | TABLET | 325MG;10MG |
| 81 | HYDROCODONE/ACETAMINOPHEN | TABLET | 325MG;5MG |
| 82 | HYDROCORTISONE VALERATE | CREAM | 0.2% |
| 83 | IRBESARTAN | TABLET | 150MG |
| 83 | IRBESARTAN | TABLET | 300MG |
| 83 | IRBESARTAN | TABLET | 75MG |
| 84 | ISOSORBIDE DINITRATE | TABLET | 10MG |
| 84 | ISOSORBIDE DINITRATE | TABLET | 20MG |
| 84 | ISOSORBIDE DINITRATE | TABLET | 30MG |
| 84 | ISOSORBIDE DINITRATE | TABLET | 5MG |
| 85 | KETOCONAZOLE | CREAM | 2% |
| 85 | KETOCONAZOLE | TABLET | 200MG |
| 86 | KETOPROFEN | CAPSULE | 50MG |
| 86 | KETOPROFEN | CAPSULE | 75MG |
| 87 | KETOROLAC TROMETHAMINE | TABLET | 10MG |
| 88 | LABETALOL HCL | TABLET | 100MG |
| 88 | LABETALOL HCL | TABLET | 200MG |
| 88 | LABETALOL HCL | TABLET | 300MG |
| 89 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 150MG;300MG |
| 89 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 300MG;150MG |
| 90 | LATANOPROST | SOLUTION | 0.005% |
| 91 | LEFLUNOMIDE | TABLET | 10MG |
| 91 | LEFLUNOMIDE | TABLET | 20MG |

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

| | | | |
|---|---|---|---|
| 92 | LEVOTHYROXINE | TABLET | 0.025MG |
| 92 | LEVOTHYROXINE | TABLET | 0.05MG |
| 92 | LEVOTHYROXINE | TABLET | 0.075MG |
| 92 | LEVOTHYROXINE | TABLET | 0.088MG |
| 92 | LEVOTHYROXINE | TABLET | 0.112MG |
| 92 | LEVOTHYROXINE | TABLET | 0.125MG |
| 92 | LEVOTHYROXINE | TABLET | 0.137MG |
| 92 | LEVOTHYROXINE | TABLET | 0.15MG |
| 92 | LEVOTHYROXINE | TABLET | 0.175MG |
| 92 | LEVOTHYROXINE | TABLET | 0.1MG |
| 92 | LEVOTHYROXINE | TABLET | 0.2MG |
| 92 | LEVOTHYROXINE | TABLET | 0.3MG |
| 93 | LIDOCAINE HCL | OINTMENT | 5% |
| 94 | LIDOCAINE/PRILOCAINE | CREAM | 2.5%;2.5% |
| 95 | LOPERAMIDE HCL | CAPSULE | 2MG |
| 96 | MEPROBAMATE | TABLET | 200MG |
| 96 | MEPROBAMATE | TABLET | 400MG |
| 97 | METFORMIN (F) ER | TABLET | 1000MG |
| 97 | METFORMIN (F) ER | TABLET | 500MG |
| 98 | METHADONE HCL | TABLET | 10MG |
| 98 | METHADONE HCL | TABLET | 5MG |
| 99 | METHAZOLAMIDE | TABLET | 25MG |
| 99 | METHAZOLAMIDE | TABLET | 50MG |
| 100 | METHOTREXATE | TABLET | 2.5MG |
| 101 | METHYLPHENIDATE | TABLET | 10MG |
| 101 | METHYLPHENIDATE | TABLET | 20MG |
| 101 | METHYLPHENIDATE | TABLET | 5MG |
| 101 | METHYLPHENIDATE ER | TABLET | 20MG |
| 102 | METHYLPREDNISOLONE | TABLET | 4MG |
| 103 | METRONIDAZOLE | CREAM | 0.75% |
| 103 | METRONIDAZOLE | GEL | 0.75% |
| 103 | METRONIDAZOLE | GEL | 1% |
| 103 | METRONIDAZOLE | GEL VAGINAL | 0.75% |
| 103 | METRONIDAZOLE | LOTION | 0.75% |
| 104 | MOEXIPRIL HCL | TABLET | 15MG |
| 104 | MOEXIPRIL HCL | TABLET | 7.5MG |
| 105 | MOEXIPRIL HCL/HCTZ | TABLET | 15MG;12.5MG |
| 105 | MOEXIPRIL HCL/HCTZ | TABLET | 15MG;25MG |
| 105 | MOEXIPRIL HCL/HCTZ | TABLET | 7.5MG;12.5MG |
| 106 | NADOLOL | TABLET | 20MG |
| 106 | NADOLOL | TABLET | 40MG |
| 106 | NADOLOL | TABLET | 80MG |
| 107 | NAPROXEN SODIUM | TABLET | 275MG |
| 107 | NAPROXEN SODIUM | TABLET | 550MG |
| 108 | NEOMYCIN/POLYMYXIN/HYDROCORTISONE | SOLUTION | 3.5MG;10MU;1% |
| 109 | NIACIN ER | TABLET | 1000MG |
| 109 | NIACIN ER | TABLET | 500MG |
| 109 | NIACIN ER | TABLET | 750MG |
| 110 | NIMODIPINE | CAPSULE | 30MG |
| 111 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 100MG |
| 111 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 25MG |
| 111 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 50MG |
| 112 | NORETHINDRONE/ETHINYL ESTRADIOL (BALZIVA) | TABLET | 0.4MG-0.035MG |
| 113 | NORTRIPTYLINE HCL | CAPSULE | 10MG |
| 113 | NORTRIPTYLINE HCL | CAPSULE | 25MG |
| 113 | NORTRIPTYLINE HCL | CAPSULE | 50MG |
| 113 | NORTRIPTYLINE HCL | CAPSULE | 75MG |
| 114 | NYSTATIN | CREAM | 100MU |
| 114 | NYSTATIN | OINTMENT | 100MU |
| 114 | NYSTATIN | TABLET | 500MU |
| 115 | NYSTATIN/TRIAMCINOLONE | CREAM | 0.1% |
| 115 | NYSTATIN/TRIAMCINOLONE | OINTMENT | 0.1% |
| 116 | OMEGA 3 ACID ETHYL ESTERS | CAPSULE | 1G |
| 117 | OXAPROZIN | TABLET | 600MG |
| 118 | OXYBUTYNIN CHLORIDE | TABLET | 5MG |
| 119 | OXYCODONE/ACETAMINOPHEN | TABLET | 10MG;325MG |
| 119 | OXYCODONE/ACETAMINOPHEN | TABLET | 5MG;325MG |
| 119 | OXYCODONE/ACETAMINOPHEN | TABLET | 7.5MG;325MG |
| 120 | OXYCODONE HCL | SOLUTION | 20MG/ML |
| 120 | OXYCODONE HCL | TABLET | 15MG |
| 120 | OXYCODONE HCL | TABLET | 30MG |
| 121 | PARICALCITOL | CAPSULE | 1MCG |
| 121 | PARICALCITOL | CAPSULE | 2MCG |
| 121 | PARICALCITOL | CAPSULE | 4MCG |
| 122 | PAROMOMYCIN | CAPSULE | 250MG |
| 123 | PERMETHRIN | CREAM | 5% |
| 124 | PERPHENAZINE | TABLET | 16MG |
| 124 | PERPHENAZINE | TABLET | 2MG |
| 124 | PERPHENAZINE | TABLET | 4MG |
| 124 | PERPHENAZINE | TABLET | 8MG |
| 125 | PHENYTOIN SODIUM ER | CAPSULE | 100MG |
| 126 | PILOCARPINE HCL | TABLET | 5MG |
| 127 | PIROXICAM | CAPSULE | 10MG |
| 127 | PIROXICAM | CAPSULE | 20MG |
| 128 | POTASSIUM CHLORIDE ER | TABLET | 10MEQ |
| 128 | POTASSIUM CHLORIDE ER | TABLET | 20MEQ |
| 128 | POTASSIUM CHLORIDE ER | TABLET | 8MEQ |
| 129 | PRAVASTATIN | TABLET | 10MG |
| 129 | PRAVASTATIN | TABLET | 20MG |
| 129 | PRAVASTATIN | TABLET | 40MG |
| 129 | PRAVASTATIN | TABLET | 80MG |
| 130 | PRAZOSIN HCL | CAPSULE | 1MG |
| 130 | PRAZOSIN HCL | CAPSULE | 2MG |
| 130 | PRAZOSIN HCL | CAPSULE | 5MG |

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

| | | |
|---|---|---|
| 131 PREDNISOLONE ACETATE | SOLUTION/LIQUID EYE | 1% |
| 132 PREDNISONE | TABLET | 10MG |
| 132 PREDNISONE | TABLET | 1MG |
| 132 PREDNISONE | TABLET | 2.5MG |
| 132 PREDNISONE | TABLET | 20MG |
| 132 PREDNISONE | TABLET | 5MG |
| 133 PROCHLORPERAZINE | SUPPOSITORY | 25MG |
| 134 PROMETHAZINE | SUPPOSITORY | 12.5MG |
| 134 PROMETHAZINE | SUPPOSITORY | 25MG |
| 135 PROPRANOLOL | TABLET | 10MG |
| 135 PROPRANOLOL | TABLET | 20MG |
| 135 PROPRANOLOL | TABLET | 40MG |
| 135 PROPRANOLOL | TABLET | 60MG |
| 135 PROPRANOLOL | TABLET | 80MG |
| 135 PROPRANOLOL ER | CAPSULE | 120MG |
| 135 PROPRANOLOL ER | CAPSULE | 160MG |
| 135 PROPRANOLOL ER | CAPSULE | 60MG |
| 135 PROPRANOLOL ER | CAPSULE | 80MG |
| 136 RALOXIFENE HCL | TABLET | 60MG |
| 137 RANITIDINE HCL | CAPSULE | 150MG |
| 137 RANITIDINE HCL | CAPSULE | 300MG |
| 137 RANITIDINE HCL | TABLET | 150MG |
| 138 SILVER SULFADIAZINE | CREAM | 1% |
| 139 SPIRONOLACTONE/HCTZ | TABLET | 25MG;25MG |
| 140 TACROLIMUS | OINTMENT | 0.03% |
| 140 TACROLIMUS | OINTMENT | 0.1% |
| 141 TAMOXIFEN CITRATE | TABLET | 10MG |
| 141 TAMOXIFEN CITRATE | TABLET | 20MG |
| 142 TEMOZOLOMIDE | CAPSULE | 100MG |
| 142 TEMOZOLOMIDE | CAPSULE | 140MG |
| 142 TEMOZOLOMIDE | CAPSULE | 180MG |
| 142 TEMOZOLOMIDE | CAPSULE | 20MG |
| 142 TEMOZOLOMIDE | CAPSULE | 250MG |
| 142 TEMOZOLOMIDE | CAPSULE | 5MG |
| 143 TERCONAZOLE | VAGINAL CREAM | 0.4% |
| 143 TERCONAZOLE | VAGINAL CREAM | 0.8% |
| 144 THEOPHYLLINE ER | TABLET | 100MG |
| 144 THEOPHYLLINE ER | TABLET | 200MG |
| 144 THEOPHYLLINE ER | TABLET | 300MG |
| 144 THEOPHYLLINE ER | TABLET | 400MG |
| 144 THEOPHYLLINE ER | TABLET | 450MG |
| 144 THEOPHYLLINE ER | TABLET | 600MG |
| 145 TIMOLOL MALEATE | GEL | 0.25% |
| 145 TIMOLOL MALEATE | GEL | 0.5% |
| 146 TIZANIDINE HCL | TABLET | 2MG |
| 146 TIZANIDINE HCL | TABLET | 4MG |
| 147 TOBRAMYCIN | SOLUTION | 300MG/5ML |
| 148 TOBRAMYCIN/DEXAMETHASONE | SOLUTION | 0.3;0.1% |
| 149 TOLMETIN SODIUM | CAPSULE | 400MG |
| 150 TOLTERODINE TARTRATE | TABLET | 1MG |
| 150 TOLTERODINE TARTRATE | TABLET | 2MG |
| 150 TOLTERODINE TARTRATE ER | CAPSULE | 2MG |
| 150 TOLTERODINE TARTRATE ER | CAPSULE | 4MG |
| 151 TRAZODONE HCL | TABLET | 100MG |
| 152 TRIAMCINOLONE ACETONIDE | CREAM | 0.025% |
| 152 TRIAMCINOLONE ACETONIDE | CREAM | 0.1% |
| 152 TRIAMCINOLONE ACETONIDE | CREAM | 0.5% |
| 152 TRIAMCINOLONE ACETONIDE | OINTMENT | 0.025% |
| 152 TRIAMCINOLONE ACETONIDE | OINTMENT | 0.1% |
| 152 TRIAMCINOLONE ACETONIDE | OINTMENT | 0.5% |
| 153 TRIAMTERENE/HCTZ | CAPSULE | 37.5MG;25MG |
| 153 TRIAMTERENE/HCTZ | TABLET | 37.5MG;25MG |
| 153 TRIAMTERENE/HCTZ | TABLET | 75MG;50MG |
| 154 TRIFLUOPERAZINE HCL | TABLET | 10MG |
| 154 TRIFLUOPERAZINE HCL | TABLET | 1MG |
| 154 TRIFLUOPERAZINE HCL | TABLET | 2MG |
| 154 TRIFLUOPERAZINE HCL | TABLET | 5MG |
| 155 URSODIOL | CAPSULE | 300MG |
| 156 VALSARTAN HCTZ | TABLET | 160MG;12.5MG |
| 156 VALSARTAN HCTZ | TABLET | 160MG;25MG |
| 156 VALSARTAN HCTZ | TABLET | 320MG;12.5MG |
| 156 VALSARTAN HCTZ | TABLET | 320MG;25MG |
| 156 VALSARTAN HCTZ | TABLET | 80MG;12.5MG |
| 157 VERAPAMIL | TABLET | 120MG |
| 157 VERAPAMIL | TABLET | 80MG |
| 157 VERAPAMIL SR | CAPSULE | 120MG |
| 157 VERAPAMIL SR | CAPSULE | 180MG |
| 157 VERAPAMIL SR | CAPSULE | 240MG |
| 158 WARFARIN SODIUM | TABLET | 10MG |
| 158 WARFARIN SODIUM | TABLET | 1MG |
| 158 WARFARIN SODIUM | TABLET | 2.5MG |
| 158 WARFARIN SODIUM | TABLET | 2MG |
| 158 WARFARIN SODIUM | TABLET | 3MG |
| 158 WARFARIN SODIUM | TABLET | 4MG |
| 158 WARFARIN SODIUM | TABLET | 5MG |
| 158 WARFARIN SODIUM | TABLET | 6MG |
| 158 WARFARIN SODIUM | TABLET | 7.5MG |
| 159 ZOLEDRONIC ACID | IV CONCENTRATE | 4MG/5ML |
| 159 ZOLEDRONIC ACID | IV SOLUTION | 5MG/100ML |

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

# EXHIBIT C

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

1. Actavis Holdco U.S., Inc.
2. Actavis Pharma, Inc.
3. Actavis Elizabeth, LLC
4. Akorn Inc.
5. Alvogen Inc.
6. Amneal Pharmaceuticals, Inc.
7. Amneal Pharmaceuticals, LLC
8. Apotex Corp.
9. Ascend Laboratories, LLC
10. Aurobindo Pharma USA, Inc.
11. Bausch Health Americas, Inc.
12. Bausch Health US, LLC
13. Breckenridge Pharmaceutical, Inc.
14. Camber Pharmaceuticals Inc.
15. Citron Pharma LLC
16. Dava Pharmaceuticals, LLC
17. Dr. Reddy's Laboratories, Inc.
18. Epic Pharma, LLC
19. Fougera Pharmaceuticals Inc.
20. Generics Bidco I LLC
21. Glenmark Pharmaceuticals Inc., USA.
22. Greenstone LLC
23. G&W Laboratories, Inc.
24. Heritage Pharmaceuticals, Inc.
25. Hikma Labs, Inc.
26. Hikma Pharmaceuticals USA, Inc.
27. Hi-Tech Pharmacal Co., Inc.
28. Impax Laboratories, Inc.
29. Impax Laboratories, LLC
30. Jubilant Cadista Pharmaceuticals Inc.
31. Lannett Company, Inc.
32. Lupin Pharmaceuticals, Inc.
33. Mallinckrodt Inc.
34. Mayne Pharma Inc.
35. Morton Grove Pharmaceuticals, Inc.
36. Mylan Inc.
37. Mylan Pharmaceuticals Inc.
38. Oceanside Pharmaceuticals, Inc.
39. Par Pharmaceutical Companies, Inc.
40. Par Pharmaceutical, Inc.
41. Perrigo New York, Inc.
42. Pfizer, Inc.
43. Pliva, Inc.
44. Sandoz, Inc.
45. Sun Pharmaceutical Industries, Inc.
46. Taro Pharmaceuticals U.S.A., Inc.
47. Teligent, Inc.
48. Teva Pharmaceuticals USA, Inc.
49. Torrent Pharma Inc.
50. UDL Laboratories, Inc.
51. Upsher-Smith Laboratories, Inc.
52. Valeant Pharmaceuticals International
53. Valeant Pharmaceuticals North America LLC
54. Versapharm, Inc.
55. West-Ward Columbus, Inc.
56. West-Ward Pharmaceuticals Corp.
57. Wockhardt USA LLC
58. Zydus Pharmaceuticals (USA), Inc.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

# EXHIBIT D

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Exhibit D

Outside Counsel Eyes Only

**Sandoz Direct Sales by Customer**
**From March 2013 – December 2015 for DPP Products at Issue**

| Customer Name | Sandoz Direct Sales [1] | Share of Sandoz Total Direct Sales | Adjustment for Assignments [2] | Adjusted Share of Total Direct Sales |
|---|---|---|---|---|



Exhibit D

*Outside Counsel Eyes Only*

**Sandoz Direct Sales by Customer**
**From March 2013 – December 2015 for DPP Products at Issue**

| Customer Name | Sandoz Direct Sales [1] | Share of Sandoz Total Direct Sales | Adjustment for Assignments [2] | Adjusted Share of Total Direct Sales |
|---|---|---|---|---|



PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

Exhibit D

Outside Counsel Eyes Only

**Sandoz Direct Sales by Customer**
**From March 2013 – December 2015 for DPP Products at Issue**

| Customer Name | Sandoz Direct Sales [1] | Share of Sandoz Total Direct Sales | Adjustment for Assignments [2] | Adjusted Share of Total Direct Sales |
|---|---|---|---|---|
|  |  |  |  |  |

[1]  For settlement purposes only. Sandoz's direct sales are based on KE30 data and do not reflect all adjustments.
[2]  Assignments are estimated using S912 data and KE30 data. The assignment calculations herein are without waiver of Sandoz's right to challenge the amount or validity of any assigned claims asserted in litigation brought by opt-outs and does not constitute Sandoz's consent to any such assignment.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL ACTIONS* | HON. CYNTHIA M. RUFE |

## FIRST AMENDMENT TO THE FEBRUARY 28, 2024 SETTLEMENT AGREEMENT

This document hereby amends the Settlement Agreement entered into on February 28, 2024 by and between plaintiffs César Castillo, LLC, FWK Holdings, LLC, Rochester Drug Cooperative, Inc. and KPH Healthcare Services, Inc. ("Settling Direct Purchaser Plaintiffs" or "Settling Plaintiffs"), individually and on behalf of the Settlement Class as defined in Paragraph 1 of the Settlement Agreement ("Settlement Class"), by and through Dianne M. Nast, NastLaw LLC, in her capacity as Lead and Liaison Counsel ("Lead Counsel") for Direct Purchaser Plaintiffs in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (Rufe, J.) (the "Action"), and defendants Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Settling Defendants") (collectively with Settling Plaintiffs, the "Settling Parties"), by and through their counsel Matthew Kent, Alston & Bird LLP.

WHEREAS, Settling Plaintiffs filed a motion seeking preliminary approval of the Settlement Agreement on March 12, 2024;

WHEREAS, certain non-parties to the Settlement Agreement subsequently filed oppositions to Settling Plaintiffs' motion for preliminary approval purportedly focused on the Settlement Agreement's inclusion of Paragraph 12;

WHEREAS, Settling Plaintiffs seek for Settling Defendants to issue the Settlement Payment for the benefit of the Settlement Class as soon as possible;

WHEREAS, Settling Defendants' issuance of the Settlement Payment is contingent upon the Court's preliminary approval of the Settlement Agreement;

WHEREAS, Settling Plaintiffs' continued litigation of the non-parties' oppositions may result in further delay of preliminary approval and consequently the Settlement Payment;

NOW THEREFORE, in consideration of the foregoing and the representations, warranties, and covenants contained herein, and intending to be legally bound hereby, it is agreed by the undersigned, on behalf of Settling Plaintiffs and the Settlement Class, and Settling Defendants, that:

1. Paragraph 12 of the Settlement Agreement is vacated and withdrawn;

2. As soon as is possible and in no event later than 30 business days after execution of this First Amendment, Lead Counsel shall file a notice of withdrawal of the previously filed motion for preliminary approval (Dkt. 2865) and file a renewed motion seeking entry of an order preliminarily approving the Settlement Agreement, as amended by this First Amendment, consistent with Paragraph 4 of the Settlement Agreement; and

3. Except as expressly provided herein, the Settlement Agreement, including the MFN Expiration Date set forth in Paragraph 11 and all rights and obligations of the parties under the Settlement Agreement, remains unchanged.

IN WITNESS WHEREOF, the Settling Parties hereto through their fully authorized representatives have agreed to this First Amendment to the February 28, 2024 Settlement Agreement as of the date written below.

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

_Dianne M. Nast_

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com

*Attorney for Plaintiffs César Castillo, LLC,
FWK Holdings, LLC, Rochester Drug
Cooperative, and KPH Healthcare Services,
Inc. and Lead Counsel for the
Direct Purchaser Class*

Dated: June 12, 2024

Matthew Kent
Alston & Bird LLP
1201 W Peachtree St NE #4900
Atlanta, GA 30309
(404) 881-7948
matthew.kent@alston.com

*Attorney for Sandoz Inc. and Fougera
Pharmaceuticals Inc.*

Dated: June 12, 2024

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

_____

Dianne M. Nast
NastLaw LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
(215) 923-9300
dnast@nastlaw.com

*Attorney for Plaintiffs César Castillo, LLC,*
*FWK Holdings, LLC, Rochester Drug*
*Cooperative, and KPH Healthcare Services,*
*Inc. and Lead Counsel for the*
*Direct Purchaser Class*

Dated:          , 2024

_____

Matthew Kent
Alston & Bird LLP
1201 W Peachtree St NE #4900
Atlanta, GA 30309
(404) 881-7948
matthew.kent@alston.com

*Attorney for Sandoz Inc. and Fougera*
*Pharmaceuticals Inc.*

Dated: June 12, 2024

4

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER