# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br><br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:**<br><br>*Direct Purchaser Class Plaintiffs' Actions* | **HON. CYNTHIA M. RUFE** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                 **October 15, 2024**

The Court held a hearing on September 23, 2024, on the motions of Direct Purchaser Class Plaintiffs César Castillo, LLC, FWK Holdings, LLC, Rochester Drug Cooperative, Inc., and KPH Healthcare Services, Inc. a/k/a/ Kinney Drugs, Inc. ("DPPs") seeking final approval of settlements with the following three Defendants or groups of Defendants:

1. Apotex Corp.;

2. Breckenridge Pharmaceutical, Inc.; and

3. Heritage Pharmaceuticals Inc., Emcure Pharmaceuticals Ltd., and Satish Mehta (collectively, "Heritage").

Counsel for Settling Defendants confirmed at the hearing that they caused timely notice of the settlement and related materials to be sent to the Attorney General of the United States and the Attorneys General of all U.S. states, territories, and the District of Columbia pursuant to the Class Action Fairness Act of 2005.[1]

---

[1] 28 U.S.C. § 1715; *see* Hr'g Tr. Sept. 23, 2024 [Doc. No. 3114] at 12, 21.

Under Federal Rule of Civil Procedure 23(e), the Court held a hearing on September 23, 2024, to determine whether the three proposed class-action settlements are "fair, reasonable, and adequate."[2] The Court must: (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e).[3]

**RULE 23(A)**

To certify a class, the Court must determine that the following factors under Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation.[4] All three settlements define the same settlement class, which the Court preliminarily approved:

> All persons or entities, and their successors and assigns, that directly purchased one or more of the Named Generic Drugs from one or more "Current or Former Defendants" in the United States and its territories and possessions, at any time during the period from May 1, 2009 until December 31, 2019.
> Excluded from the Settlement Class are Current and Former Defendants and their present and former officers, directors, management, employees, subsidiaries, or affiliates, judicial officers and their personnel, and all governmental entities.[5]

Numerosity is satisfied as each settlement class includes more than 700 members geographically dispersed throughout the United States.[6] A single common issue is enough to satisfy the commonality requirement, and typicality is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent

---

[2] Fed. R. Civ. P. 23(e)(2).

[3] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

[4] Fed. R. Civ. P. 23(a). The Court's determinations are based on the particular settlement class currently before the Court; no broader or more general determinations as to the suitability of class actions in the MDL generally have been made.

[5] Orders of Preliminary Approval [MDL Doc. Nos. 2841, 2842, & 2843] at 3.

[6] Decl. of Eric J. Miller [MDL Doc. No. 3053-1]; Orders of Preliminary Approval [MDL Doc. Nos. 2841, 2842, & 2843] at 3. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (more than 40 class members generally satisfies numerosity).

class members so as to assure that the absentee's interests will be fairly represented."[7] Here, there are common issues of law and fact as to all class members: that they made direct purchases of generic pharmaceuticals that were priced higher than they should have been because of an alleged conspiracy among manufacturers, including the settling defendants.

Plaintiffs also have demonstrated that "the representative parties will fairly and adequately protect the interests of the class."[8] The named Plaintiffs' interests align with those of other class members. The settlement agreement provides that each of the four class representatives will receive a service award of $20,000 (for a total of $80,000). Of that total, $53,333.33 will be withdrawn from the Apotex Settlement Fund, $8,888.89 from the Breckenridge Settlement Fund, and $17,777.78 from the Heritage Settlement Fund. In the context of the settlement awards as discussed below, the Court finds this a reasonable amount, as the representatives have been actively involved in the prosecution of the case, including through depositions and extensive document production. Class counsel are qualified, experienced, and fully capable of litigating the class members' claims.[9] The representative Plaintiffs, and class counsel, have protected the interests of the class in crafting an adjusted settlement amount that will be allocated on a *pro rata* basis upon the filing of a motion for distribution, which will provide an opportunity for class members to object to the proposed distribution.[10] In addition, the Settling Defendants have agreed to provide cooperation to DPPs, which will facilitate the administration of the settlements and will aid the litigation against non-settling Defendants.

---

[7] *Baby Neal v. Casey*, 43 F.3d 48, 56–57 (3d Cir. 1994).

[8] Fed. R. Civ. P. 23(a)(4).

[9] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

[10] *See* Plans of Allocation [MDL Doc. Nos. 2781-7, 2782-7, 2783-7].

**RULE 23(B)**

The settlement classes also satisfy at least one of the three requirements listed in Rule 23(b).[11] The applicable subsection for these settlements is Rule 23(b)(3), which provides that settlement is appropriate if Rule 23(a) is satisfied and if:

> 3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.[12]

The Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[13] The alleged collusive conduct by Settling Defendants affected all class members in the same way with regard to the cost of generic pharmaceuticals.[14] Plaintiffs have shown that for the purposes of settlement a class action is a fair and efficient way to resolve the dispute . . . against those of alternative available methods of adjudication."[15]

---

[11] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (citations omitted).

[12] Fed. R. Civ. P. 23(b)(3).

[13] Fed. R. Civ. P. 23(b)(3).

[14] *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).

[15] *In re Warfarin*, 391 F.3d at 534 (citations omitted).

As directed by Rule 23(b)(3), the Court has considered "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum...."[16]

Although some Plaintiffs are proceeding individually in the MDL, given the complexity of the litigation, 700 individual actions are not likely to be a more desirable way of proceeding, and "[a] class action is therefore superior to other methods of adjudication" in the context of the settlement.[17] The Third Circuit has held that "Rule 23(b)(3) has an implicit requirement that class members be ascertainable."[18] Ascertainability requires the plaintiffs to show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."[19] Here, the Settling Defendants have records of sales to direct purchasers, which also allows for the determination of *pro rata* settlement distributions. The Court therefore certifies the settlement class for purposes of the final settlement.

As part of the preliminary approvals, the Court directed that notice be provided.[20] The joint notice for the three settlements clearly and concisely stated in plain, easily understood language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney

---

[16] Fed. R. Civ. P. 23(b)(3).

[17] *McDermid v. Inovio Pharms., Inc.*, No. 20-1402, 2023 WL 227355, at *3 (E.D. Pa. Jan. 18, 2023) (citations omitted).

[18] *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 133 (3d Cir. 2023).

[19] *Lewis v. Gov't Employees Ins. Co.*, 98 F.4th 452, 462 (3d Cir. 2024) (internal citation omitted).

[20] Fed. R. Civ. P. 23(c)(2)(B).

if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."[21] Notice was made through direct mail, through the use of digital banner ads on a website targeted to reach likely direct purchasers, through publication in the *Wall Street Journal*, and through a news release via Business Wire, and with the use of a case-specific toll-free telephone number, email address, and website.[22] The notice complies with the Court's Orders regarding notice and satisfies Rule 23.

**RULE 23(E)**

The Court determines that the proposed settlements are "fair, reasonable and adequate."[23] A settlement is fair where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[24] Each of these factors is met. Negotiations occurred at arm's length over a significant period of time and there has been extensive discovery in the MDL, enabling class counsel to "develop enough information about the [litigation] to appreciate sufficiently the value of the claims."[25] Plaintiffs' counsel is experienced and accomplished, and there have been no objections to the settlement.[26] DPPs received six timely requests for exclusion on behalf of 349 entities, of which 32 have been identified as potential settlement class members based on data from Settling Defendants. DPPs also received untimely

---

[21] Fed. R. Civ. P. 23(c)(2)(B).

[22] Decl. Eric J. Miller [MDL Doc. No. 3053-1] ¶¶ 3-14.

[23] *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 282, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); see also Fed. R. Civ. P. 23(e).

[24] *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 1998)).

[25] *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).

[26] *See* Decl. Eric J. Miller [MDL Doc. No. 3053-1] ¶¶ 16–19.

requests for exclusion of Rite Aid entities and Cigna entities. At the hearing on September 23, 2024, Rite Aid withdrew its request, and Cigna's untimely request for exclusion has been denied by separate order.

As required by Rule 23(e)(2), the Court determines that the relief provided to the class is adequate.[27] The settlement amounts are as follows:

1. $30,000,000 paid by Apotex, which may be reduced by up to $3,600,000 based upon those class members who have opted out;

2. $4,355,00 paid by Breckenridge (the original settlement amount of $5,000,000 as reduced by $645,000 based upon those class members who have opted out), which may be increased by up to $1,176,470.59 pursuant to a Most Favored Nation ("MFN") clause in the event that a more favorable settlement is entered into with any opt-outs or other direct purchasers by August 13, 2025; and

3. $10,000,000 paid by Heritage, which may be increased to a maximum of $12,500,000 under an MFN clause in the event that a more favorable settlement is entered into with any opt-outs by October 31, 2024.

DPPs are seeking from this Settlement Funds: (1) reimbursement for $4,500,000 in out-of-pocket expenses incurred through April 2024; (2) service awards for the class representatives of $20,000 each (a total of $80,000); and (3) approval to put one-third of the remaining Settlement Funds (net of the above and including interest) into escrow to pay attorneys' fees as may be awarded by the Court in the future. Counsel do not seek an award of attorneys' fees at this time.[28] Counsel represented at the hearing that the future request for an award will not seek

---

[27] Rule 23(e)(2) requires the Court to determine that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

[28] DPPs' Mem. Supp. Mot. to Approve [MDL Doc. No. 3069-1] at 9.

fees in excess of the amount placed in escrow, and that there will be an opportunity for class members to object to the proposed fee award.

The relief the settlement is expected to provide class members is adequate when balanced against "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."[29] In addition to the inherent risk to recovery involved in prolonged litigation, continuing through motions regarding class certification, the dismissal of claims, and the exclusion of evidence, as well as potential trials and appeals would only delay any recovery class members may receive.

Rule 23(e)(2)(iv) requires the Court to account for any agreements between the parties required to be identified under Rule 23(e)(3), referring to "any agreement made in connection with the [settlement] proposal."[30] The settlement documents set forth the relevant agreements, including that the settling parties have agreed that that Settling Defendants' sales remain in the MDL for purposes of joint and several liability as to non-settling Defendants to the extent permitted or authorized by law, and that the Settling Defendants will provide cooperation, both in terms of effectuating the settlements and providing information to help in the continued litigation against the non-settling Defendants. Counsel have produced for the Court's *in camera* review side agreements that set forth the percentage of dollar sales that would trigger a Settling Defendant's option to terminate the settlement. The existence of these agreements was discussed

---

[29] Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

[30] Fed. R. Civ. P. 23(e)(3).

at the hearing; it was only the triggering percentage that was not publicly available. The Court concludes that this does not affect approval of the settlements.

The final element of Rule 23(e)(2) requires the Court to determine whether the proposal treats the class members equitably relative to each other. As discussed above, the settlement funds will be allocated on a *pro rata* basis, which treats the class members equitably.[31]

**CONCLUSION**

The Court having determined that the settlements are fair and reasonable, and that all applicable requirements have been met, the Court will approve the settlements. Appropriate orders will be entered.

---

[31] In addition to satisfying the standard under Rule 23, the factors set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), also favor settlement. The *Girsh* factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* These factors generally have been discussed in connection with Rule 23(e). The litigation is extremely complex and, in the absence of the settlement, it would likely be several years before all of the claims asserted by DPPs are resolved. No class members have objected to the settlement. There has been extensive motion practice and discovery through which the parties have learned of the claims. Settling Defendants have denied liability, and in the absence of the settlement, DPPs would be required to litigate issues of liability, damages, and class certification. There remain many other claims asserted against Settling Defendants and settlement at this time assures a fair payment to the DPPs on their claims against these Defendants. Considering all of the attendant risks of litigation of DPPs' claims, including within the broader context of the MDL, the Court concludes that the settlement is reasonable under the *Girsh* factors.