**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | HON. CYNTHIA M. RUFE |

## ORDER

The Special Master issued the Sixteenth Report and Recommendation ("Sixteenth R&R"),[1] which concluded that Defendants Actavis Holdco US, Inc., Actavis Pharma Inc., and Actavis Elizabeth, LLC (collectively, "Actavis"), were not entitled to compel End-Payer Plaintiffs ("EPPs") to "produce discovery related to how changes in prescription drug prices affected the funding of their health plans." The R&R concluded that the motion to compel was untimely and that the discovery sought is irrelevant.

Actavis objects to the R&R, arguing that the discovery is critical, that it was reasonably diligent in pursuing the discovery, that the tailored scope of the discovery will not cause delay, and that EPPs have shown no prejudice. EPPs have responded to the objections, to which Actavis replied.

The discovery sought by Actavis relates to those EPPs that provide healthcare benefits, including prescription drugs, to beneficiaries. These EPPs include health insurers, health and welfare funds, and municipalities (referred to Actavis as "Health Plan EPPs"). The beneficiaries either pay a monthly premium for insurance or employers contribute under collective bargaining agreements. The beneficiaries typically pay a co-pay for their prescription drugs, and the Health

---

[1] Sixteenth R&R [MDL Doc. No. 2426].

Plan EPPs pay the balance of the cost. The Health Plan EPPs allege in the MDL that they overpaid for the drugs because Defendants, manufacturers of generic pharmaceuticals, conspired to artificially inflate prices. EPPs seek damages under antitrust laws, state consumer protection and unfair competition laws, and for unjust enrichment. Some of the cases brought by EPPs concern single drugs and several manufacturers; others allege overarching conspiracies among many Defendants concerning many different drugs.

Actavis seeks "discovery concerning how alleged price increases on generics were allocated and borne by their beneficiaries."[2] Before the Special Master, Actavis sought an order compelling Health Plan EPPs to provide 30(b)(6) testimony and produce documents and data concerning how prescription drug prices impacted the funding of EPPs' health care plans during the Health Plan EPPs' putative class period. Actavis contends that this discovery could show that the EPPs passed on any drug price overcharges through increased premiums and also argues that it would illustrate a tension between the Health Plan EPPs and their beneficiaries.[3]

In its first document requests in 2018, Actavis sought documents relating to the determination of premiums. EPPs responded consistently that premiums were based on many different factors and refused to produce any documents regarding premiums. The parties reached an impasse and discussions on the matter ended in 2019. Actavis did not file the letter motion to compel with the Special Master until 2023, after discussion among the parties regarding the scope of Rule 30(b)(6) depositions.

---

[2] Actavis Obj. [MDL Doc. No. 2448] at 2.

[3] Actavis argues that some proposed class definitions include the beneficiaries, which it argues creates an inherent conflict between the Health Plan EPPs and the individuals. The proposed class definitions in the EPPs' bellwether clobetasol and clomipramine exclude natural person consumers. EPPs' Mot. Class Cert. [Clomipramine], No. 16-CM-27242 [Doc. No. 180] at 1–3; EPPs' Mot. Class Cert. [Clobetasol], No. 16-CB-27242 [Doc. No. 236] at 1–3. To the extent that other classes may have conflicts, that is an issue for class certification motions.

The Court agrees with the conclusion of the R&R that Actavis did not timely bring the discovery motion before the Special Master. Pretrial Order No. 105, which applied to all cases pending in the MDL as of September 1, 2019, set a deadline no later than December 6, 2019, to bring discovery disputes to the Special Master.[4] There is no dispute that the dispute was fully developed at that time and that Actavis could have brought the motion to compel to the Special Master before that date. Indeed, even crediting Actavis's argument that depositions in the spring and summer of 2022 showed that "direct correlation between costs and funding,"[5] Actavis waited more than six additional months before bringing the dispute to the Special Master.[6] The Special Master's conclusion that the motion to compel was brought too late is thus well-supported.

Although Actavis's conduct was dilatory, the Court recognizes that fact discovery in the non-bellwether cases continues. Therefore, the Court will consider whether Actavis has established that the discovery is relevant and proportional to the needs of the MDL with regard to cases other than the clomipramine and clobetasol bellwethers.

Actavis argues that it needs the discovery to establish that Health Plan EPPs suffered no injury because they presumably adjusted their premiums to reflect the value of claims for prescriptions.[7] According to Actavis, Health Plan EPPs fund their prescription drug plans primarily through two sources: first, monies paid by EPPs' beneficiaries (premiums); and

---

[4] MDL Doc. No. 1135.

[5] Actavis Obj. [MDL Doc. No. 2448] at 7-8.

[6] Actavis also contends that it brought the dispute once the parties reached an impasse on the topics of the 30(b)(6) depositions shortly before it submitted the letter motion. However, as the Special Master found, the contours of the dispute had been delineated long before that time. The document requests and the 30(b)(6) notices are not wholly separate avenues of discovery.

[7] Actavis Obj. [MDL Doc. No. 2448] at 9 (citing *Ironworkers Local Union 68 v. AstraZeneca Pharmas., LP*, 634 F.3d 1352, 1368 (11th Cir. 2011).

second, monies paid through employer contributions pursuant to collective bargaining agreements. Actavis argues that depositions have established that this funding is directly tied to the costs of prescription drugs.

To support its argument that the documents are relevant, Actavis cites the Eleventh Circuit's decision in a RICO case that held the plaintiffs had suffered no injury because "[t]ypically, insurers adjust premiums to compensate for known risks assumed under that coverage."[8] Importantly, the Third Circuit has noted that this concept "lacks a limiting principle."[9] In the antitrust context, injury occurs when a purchaser incurs a single overcharge.[10] With regard to damages, courts have held that "insurance premiums are not a 'pass on' of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past."[11] Actavis argues that those cases concerned the effects of single drugs and limited conspiracies, different from the broad conspiracies implicating many drugs over a long period of time that are included in the MDL. The Court is not persuaded by this argument as the fundamental principle still applies.

---

[8] *Ironworkers,* 634 F.3d at 1364 (11th Cir. 2011).

[9] *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 641 & n.45 (3d Cir. 2015).

[10] See *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 709 (E.D. Pa. 2020) ("In contemplation of law the claim for damages arose at the time the extra charge was paid.") (quoting *Adams v. Mills*, 286 U.S. 397, 407 (1932). The Supreme Court has held that "courts will not go beyond the fact of this injury to determine whether the victim of the overcharge has partially recouped . . . ." *Hawaii v. Standard Oil of Cal.,* 405 U.S. 251, 262 n.14 (1972). *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015) ("antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset.").

[11] *In re Asacol Antitrust Litig.*, No. 15-12730, 2017 WL 53695, at * 4 (D. Mass. Jan. 4, 2017) (quoting *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-2503, 2016 WL 6897809, at *2 (D. Mass. Sept. 19, 2016)). *Accord In re HIV Antitrust Litig.*, No, 19-2573, 2023 WL 3011624, at * 1 (N.D. Cal. Apr. 18, 2023); *In re Lipitor Antitrust Litig.*, No. 12-2389, 2020 WL 5642175, at * 3 (D.N.J, Sept. 22, 2020) (holding that "consumers and third-party payors are injured by different portions of the same Lipitor purchase and related overcharge. The consumer's portion of the Lipitor purchase (and overcharge) is their copayment and the third-party payor's portion of the Lipitor purchase (and overcharge) is the remainder.") (citations omitted).

**AND NOW**, this 7th day of January 2025, upon *de novo* review of Special Master David H. Marion's Sixteenth Report and Recommendation [MDL Doc. No. 2426], and the objections, responses, and replies thereto, it is hereby **ORDERED** that the objections are **OVERRULED** and the Sixteenth R&R is **APPROVED**.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe
_____
CYNTHIA M. RUFE, J.