IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*Reliable Pharmacy v. Actavis Holdco U.S., Inc.* | Individual Action No. 19-6044 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                     **February 3, 2025**

This case is part of a broader and complex multidistrict litigation ("MDL") concerning allegations that manufacturers engaged in an antitrust conspiracy by allocating the market for, and fixing the prices of, numerous generic pharmaceutical products. Plaintiffs here are independent pharmacies and a hospital that did not purchase directly from the manufacturers (the "Indirect Reseller Plaintiffs" or "IRPs").[1] The Court previously granted Distributor Defendants'[2] motion to dismiss the IRPs' Amended Complaint for failure to state a claim and allowed the IRPs the opportunity to further amend in conformity with the Court's Memorandum Opinion.[3] In accordance with that Opinion, the IRPs filed a Third Amended Complaint. The Distributor

---

[1] Plaintiffs in this case are Reliable Pharmacy, Halliday's & Koivisto's Pharmacy, Russell's Mr. Discount Drugs, Falconer Pharmacy, Chet Johnson Drug, and North Sunflower Medical Center. Third Am. Compl. [Doc. No. 143] ¶¶ 9-14.

[2] Distributor Defendants are AmerisourceBergen Drug Corp. ("ABDC"), H.D. Smith, LLC ("H.D. Smith"), Cardinal Health, Inc. ("Cardinal Health"), The Harvard Drug Group, LLC ("Harvard Drug"), Red Oak Sourcing, LLC ("Red Oak"), McKesson Corp ("McKesson"). IRPs have removed allegations against former Defendants Morris & Dickson, Walgreens, and Walgreens Boots Alliance. Distributor Defs. Mem. Supp. Mot. Dismiss [Doc. No 151].

[3] *Reliable Pharmacy v. Actavis Holdco U.S., Inc.,* 2022 WL 1664456 at *8 (E.D. Pa. May 25, 2022) [Doc. No. 129].

Defendants again have moved to dismiss the claims brought against them.[4] For reasons stated below, the Court grants the motion to dismiss with prejudice.

## I.    BACKGROUND

The Court provided the relevant background in the earlier Opinion.[5] In short, the IRPs allege that Distributor Defendants actively participated in a "fair share" conspiracy with manufacturers of generic drugs to allocate the market share of generic pharmaceuticals to bring about supercompetitive prices.[6] IRPs allege that Distributor Defendants' actions violated the Sherman Act and antitrust statutes of each state and territory, and thus bring five counts against Distributor Defendants: (1) "Violation of Sections 1 and 3 of the Sherman Act—Injunctive Relief;"[7] (2) "Violation of Sections 1 and 3 of the Sherman Act—Damages;"[8] (3) "Violation of State Antitrust Statutes;"[9] (4) "Violation of State Consumer Protection Statutes;"[10] and (5) "Unjust Enrichment."[11]

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim when a plaintiff's ''plain statement'' lacks sufficient substance to show that they are entitled to relief.[12] On review of a motion to dismiss, the Court considers whether a claim is

---

[4] Distributor Defs. Mem. Supp. Mot. Dismiss [Doc. No 151].

[5] *Reliable Pharmacy v. Actavis Holdco U.S., Inc.*, 2022 WL 1664456 at 1-2 [Doc. No. 129].

[6] *Id*. at 1.

[7] Third Am. Compl. [Doc. No. 143] ¶¶ 786–95.

[8] *Id*. ¶¶ 796–802.

[9] *Id*. ¶¶ 803-15.

[10] *Id*. ¶¶ 816-25.

[11] *Id*. ¶¶ 826-40.

[12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

plausible, not whether it is probable.[13] A claim is plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14] A plaintiff is not required "to plead facts that, if true, definitely rule out all possible innocent explanations."[15] "But there is a difference between allegations that stand on well-pleaded facts and allegations that stand on nothing more than supposition."[16] As a result, "judging the sufficiency of a pleading is a context-dependent exercise."[17]

## III.  DISCUSSION

### A.  Failure to State a Sherman Act Claim

This Court previously determined that, in their Amended Complaint, the IRPs failed to sufficiently allege the existence of an explicit agreement between and of the Distributor Defendants and Manufacturer Defendants in violation of federal antitrust laws. In their previous Amended Complaint, IRPs alleged that Distributor Defendants violated federal antitrust laws "by orchestrating coordinated price increases, by passing anticompetitive messages at the behest of their manufacturer co-conspirators, and by brokering the allocation of customers in order to establish fair share."[18] In the Complaint at issue here, the IRPs have narrowed the scope of their claims and now allege that the Distributor Defendants' role was to pass anticompetitive messages between their co-conspirator manufacturers.[19] In addition to updated factual allegations, the IRPs recast their antitrust theory to allege that Distributor Defendants served as

---

[13] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[14] *Id.* (citing *Twombly*, 550 U.S. at 556).

[15] *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 753 (E.D. Pa. 2014).

[16] *Finkelman v. Nat'l Football League*, 810 F.3d 187, 201 (3d Cir. 2016).

[17] *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

[18] Am. Compl. [Doc. No. 61] ¶ 163.

[19] Third Am. Compl. [Doc. No. 143] ¶ 177.

the "hubs" through which the "spoke" manufacturers could trade information in a "hub-and-spoke" conspiracy.[20] Many of the IRPs' amendments in the Third Amended Complaint focus on including additional allegations to support this theory. Accordingly, to state a claim on this theory, the IRPs must plausibly allege factual matter, taken as true by the Court, to suggest that an agreement occurred between the parties.[21] They must do so either based on direct evidence of collusion or through circumstantial evidence, including "plus factors," which support the finding of a conspiracy in the absence of direct evidence.[22]

### 1.   Direct Evidence

Parties that seek to establish that an agreement existed through direct evidence must put forth factual allegations that are "explicit and require[] no inferences to establish the proposition or conclusion being asserted."[23] In their Third Amended Complaint, the IRPs include additional factual allegations drawing from conversations between employees of Distributor Defendants and employees of Manufacturer Defendants. The IRPs argue that these new factual allegations go beyond "information sharing" between vertical entities due to the nature and the volume of the messages. Defendants argue, however, that while IRPs may put forth new direct allegations of *conversations* between Defendants, their burden is instead to plausibly allege direct evidence of an *agreement*. The frequency of those conversations is not direct evidence of an agreement.

The Third Amended Complaint fails to allege specific facts that would show Distributors entered into an agreement with Manufacturers, or even that the Distributors were necessarily aware that Manufacturers had entered into an agreement with one another. The conversations

---

[20] *Id*. ¶¶ 140, 172, 252, 304, 333, 359-60.

[21] *Twombly*, 550 U.S. at 556.

[22] *Reliable Pharmacy,* 2022 WL 1664456 at 2-3 [Doc. No. 129].

[23] *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999).

cited by the IRPs are largely like those that the Court previously determined were legally insufficient. The Third Amended Complaint still requires the Court to take an inferential step to conclude that Distributors were both aware of an illegal agreement and shared information with Manufacturers in furtherance of that agreement.

2. **Circumstantial Evidence**

In the absence of plausible direct evidence, the IRPs must allege evidence of parallel conduct and additional "plus factors" to satisfy their burden. The Third Circuit has established a minimum of three ''plus factors'' which may support a finding of a conspiracy based on circumstantial evidence: ''(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy.''[24] The Court's earlier Opinion determined that the IRPs had not plausibly alleged any of plus factors that would allow for an inference that a conspiracy existed between the Distributor Defendants and Manufacturer Defendants.[25] Defendants argue that, in large part, the IRPs have not cured these deficiencies.

First, IRPs must plead evidence of parallel behavior in a context that raises the suggestion of a preceding agreement.[26] Defendants argue that the Third Amended Complaint again fails to identify any specific action that Distributor Defendants took in parallel with any Manufacturer Defendant, or any other Distributor Defendant. IRPs counter that Distributors acted in parallel with Manufacturers by passing market share messages that were illegal for Manufacturers to convey directly to one another. IRPs allege that these communications are a rare case in which

---

[24] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 322 (3d Cir. 2010) (internal quotation marks and citations omitted).

[25] *Reliable Pharmacy,* 2022 WL 1664456 at 3-4 [Doc. No. 129].

[26] *Twombly*, 550 U.S. at 557.

the parallel behavior itself creates an inference of conspiracy. Defendants respond that conversations between Distributors and Manufacturers are not parallel acts. Although IRPs have added evidence of additional conversations between Distributor Defendants and Manufacturer Defendants, many of the conversations they cite in briefing as demonstrative evidence of collusion are similar or identical to evidence already presented in their Amended Complaint. Those conversations were not sufficient to establish the inference of conspiracy in the prior complaint, nor are they sufficient in this instance. Accordingly, the Court examines each plus factor.

The Court previously held that "a desire for profit does not itself constitute a conspiratorial motive.[27] In the Third Amended Complaint, the IRPs again allege that Distributor Defendants were motivated to decrease competition to increase their own profits, and that this motivation is sufficient as a plus factor. As stated previously, however, something more than profit must be alleged to imply a conspiratorial motive.

Similarly, the IRPs do not plead factual allegations that give rise to the inference that Distributor Defendants acted against their self-interest. The IRPs argue that Distributor Defendants sometimes locked themselves into higher prices for drugs through their conversations with Manufacturers, but the IRPs do not address the issue of supply. And if, as the IRPs allege, the Distributor Defendants had motive to join in the conspiracy for profit, that argument undercuts their contention here that they acted against their self-interest. Further, as addressed in this Court's previous Opinion, the IRPs do not allege that Distributor Defendants, as middlemen, cannot pass on increased prices to customers.[28]

---

[27] *Reliable Pharmacy,* 2022 WL 1664456 at 3 [Doc. No. 129].

[28] *Id.*

Finally, the Court previously addressed allegations, including exchanges of market share information, between Distributor Defendants and Manufacturers Defendants. The Court concluded that those factual allegations do not give rise to the inference that a conspiracy existed, in part, because conversations between wholesalers and manufacturers are common in the market. The exchange of information between those parties without an agreement is not itself a violation of the Sherman Act.[29] IRPs, however, contend that the Distributors' conduct, as alleged, took place "in a context that raises a suggestion of a preceding agreement," given the enormous volume of the phone and email contacts between Distributor Defendants and Manufacturer Defendants, as well as the admissions of conspiracy by multiple manufacturers.[30] The IRPs argue that their new allegations require little inference to support the existence of a traditional conspiracy. With each market share percentage message, they argue that uncoordinated action between the parties becomes less and less likely. Instead, the IRPs suggest that the frequency and volume of those messages makes it more likely that Distributors understood their role to help Manufacturers coordinate a horizontal restraint. Defendants counter that wholesalers are independently motivated to disclose information with manufacturers and that the IRPs' evidence, which they contend is largely unchanged from their Amended Complaint, does not constitute traditional evidence of a conspiracy. Defendants lastly contend that the IRPs fail to plausibly connect their evidence to any anticompetitive effect.

Third Circuit precedent implies that information between the parties at issue in this case is not inherently suspect. It is incumbent on the IRPs to rely on "facts that tend to exclude independent self-interested conduct as an explanation for defendants' parallel behavior."[31] The

---

[29] *Id*. at 3-4.

[30] IRP Resp. Opp'n Mot. Dismiss Am. Compl. [Doc. No. 84] at 16.

[31] *Twombly*, 550 U.S. at 552 (internal quotation marks and citations omitted).

IRPs, however, allege only additional communications of the same type that the Court previously held insufficient. The IRPs' allegations may plausibly suggest that the Distributors did not object to the Manufacturers' behavior, but vertical communications between the parties does not necessarily give rise to the inference that Distributor Defendants *participated* in that conspiracy through agreement with the Manufacturer Defendants. Precisely because one can expect manufacturers and wholesalers in this industry to engage in frequent communication, the frequency of their messages does little to modify that conclusion.

Thus, the IRPs have not plausibly alleged circumstantial evidence of an overarching conspiracy between Distributor Defendants and Manufacturer Defendants. The IRPs alternatively assert discrete hub-and-spoke conspiracies for multiple, individual drugs.[32] But for the reasons stated above, the IRPs have not plausibly demonstrated either direct or circumstantial evidence of an agreement between manufacturers regarding individual drugs.

3.  **Plausibility for Per Se Treatment**

This Court previously held that the IRPs' Amended Complaint failed to adequately plead that the alleged conspiracy constituted a per se violation of Section 1 of the Sherman Act. In that Opinion, the Court explained that horizontal restraints, or agreements between competitors, are typically deemed per se unlawful, while vertical agreements, which occur among actors at different levels of market structure, are usually analyzed under the rule of reason.[33] In the IRPs' previous opposition to the motion to dismiss their Amended Complaint, they argued that the matter at hand does not constitute a vertical conspiracy—rather, they alleged that Distributor Defendants aided and abetted a horizontal fair-trade conspiracy among the Manufacturer

---

[32] *See* Third Am. Compl. [Doc. No. 143] ¶¶ 140, 172, 252, 304, 333, 359-60.
[33] *See Reliable Pharmacy,* 2022 WL 1664456 at 4-5 [Doc. No. 129].

Defendants. As the Court has already held, however, there is no case law to support aiding and abetting as a valid theory of liability under Section 1 of the Sherman Act. Per se liability may attach to a vertical conspiracy where the plaintiff alleges that the defendants' conduct was a hub-and-spoke conspiracy. But hub-and-spoke conspiracies are subject to per se treatment only where there is a horizontal agreement relationship among the *spokes:* "[i]n all hub-and-spoke conspiracies, the horizontal agreement among the spokes supports the agreements between the hub and each spoke, and vice versa."[34]

In the IRPs' original opposition to the motion to dismiss their Amended Complaint, they argued that Distributor Defendants "misconstrue[ed]" their argument as a "complex hub-and-spoke conspiracy," which would require horizontal collusion among distributors.[35] The IRPs did not then and do not now allege that Distributors colluded among each other to allocate market share. Accordingly, the Court found that there was no hub-and-spoke conspiracy where the IRPs failed to allege that an agreement existed between Distributors, as spokes.[36] In support of the Third Amended Complaint, however, the IRPs argue they need not show a horizontal relationship among Distributor Defendants. Instead, IRPs suggest that each Distributor served as a communications "hub" for Distributor Defendants to pass messages between competitor manufacturers, the spokes, regarding market share. Defendants in turn argue that this new theory simply reframes the IRPs' dismissed "aiding and abetting" argument. Defendants assert that factual allegations that Distributor Defendants shared information with Manufacturer Defendants must thus be analyzed under the rule of reason as vertical conduct.

---

[34] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 347.

[35] IRP Resp. Opp'n Mot. Dismiss Am. Compl. [Doc. No. 84] at 8.

[36] *Reliable Pharmacy,* 2022 WL 1664456 at 5 [Doc. No. 129].

Competitors in a hub and spoke conspiracy must agree among themselves to restrain trade.[37] Courts have interpreted the federal antitrust laws to require a "unity of purpose or a common design and understanding…."[38] In a hub-and-spoke conspiracy, the horizontal agreement is the core element, which supports vertical agreements between the hub and each spoke.[39]

The IRPs' argument is, at its core, functionally identical to their argument that the Distributor Defendants aided and abetted Manufacturer Defendants' horizontal collusion. The IRPs have not plausibly alleged that the Distributors served as hubs for manufacturers, nor why their role would have been necessary when their record includes numerous direct conversations between Manufacturer Defendants without the aid of wholesalers. Although the IRPs have reframed their theory to remove the necessity of identifying a horizontal agreement between Distributor Defendants, which they do not allege, they do not provide a plausible explanation as to how each Distributor Defendant would have agreed to be a "hub" without assurances from other wholesalers that they would do the same. Regardless of their ability to plausibly suggest the existence of a horizontal agreement among Manufacturers, they must still plausibly allege that Distributors participated in the Manufacturers' scheme through vertical agreements and a common design with manufacturers to support a hub-and-spoke conspiracy. IRPs have not done so. Further, the IRPs previously put forth factual allegations—included in their original Amended Complaint but curiously removed from their Third Amended Complaint—which would suggest that, while Distributors may have passed messages to Manufacturers, they lacked

---

[37] *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.,* 346 U.S. 537, 541 (1954).

[38] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 331.

[39] *Id*. at 347.

the power to enforce any supposed agreement.[40] The IRPs include factual allegations that tend to show there was a close relationship between the Defendants—and even that the Distributor Defendants were amendable to higher prices to increase their own profit margins. But without allegations that can plausibly show that Distributor Defendants had some power to set or influence prices and market share, the IRPs cannot demonstrate that Defendants acted in concert to violate the antitrust laws.

At this stage, the IRPs must plead sufficient detail to show that the conduct plausibly suggests a conspiracy subject to per se condemnation. Once again, even if the IRPs had sufficiently alleged a conspiracy between the Defendants, that alleged conspiracy does not constitute a per se violation of Section 1 of the Sherman Act.[41]

B.    **Antitrust Standing for Damages**

As the Court previously held, the *Illinois Brick* doctrine bars indirect purchasers from recovering damages under the Sherman Act.[42] IRPs argue that *Illinois Brick* does not apply to them because they are *direct* purchasers of products from Distributor Defendants. The Court is not persuaded by this argument. The *Illinois Brick* doctrine dictates plaintiffs may generally only recover damages when they purchase the product directly from the antitrust violator.[43] A plaintiff

---

[40] In the IRPs' previous complaint, they allege that a manufacturer, Dr. Reddy's, complained to one wholesaler, H.D. Smith, that another manufacturer was not "playing fair." In that complaint, the IRPs included allegations that H.D. Smith replied that it would have "'love[d]' to give Dr. Reddy's its 'fair share' but lamented that the competitor continued to lower the prices for this specific drug and left H.D. Smith with no choice." This exchange implies that while H.D. Smith received Dr. Reddy's frustration with sympathy, they were unable to effect change to lower the other Manufacturer's prices. In the IRPs' Third Amended Complaint, the IRPs omit H.D. Smith's reply and apparent helplessness to remedy the situation for Dr. Reddy's. *Compare* Am. Compl. [Doc. No. 61] ¶ 184, with Third Am. Compl. [Doc. No. 143] ¶ 285.

[41] *Reliable Pharmacy,* 2022 WL 1664456 at 4 [Doc. No. 129].

[42] The IRPs have not adequately plead that Distributor Defendants fall within the Third Circuit's co-conspirator exception to *Illinois Brick*, which applies where middlemen would be barred from suing by the 'complete involvement defense' of a manufacturer. The IRPs, however, do not assert the co-conspirator defense in their brief. *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc*., 424 F.3d 363, 379 (3d Cir. 2005).

[43] *Id*. at 369 (citing *Ill. Brick*, 431 U.S. 720, 729, 735 (1977)).

is an "indirect purchaser" if the product they purchased "passe[d] through two separate levels in the chain of distribution before reaching them."[44] The IRPs cannot simply erase the first sale from the Manufacturers to the Distributors.[45] The IRPs remain the second purchaser in the chain of distribution and are thus prevented from recovering damages from Distributor Defendants under *Illinois Brick*.

### C. State Law Claims

IRPs plead indirect purchaser state law claims in the alternative to their overarching and individual drug conspiracy claims under the Sherman Act. However, the state law claims are generally derivative of federal antitrust claims.[46] The IRPs have not sufficiently demonstrated that their state law claims are subject to a qualitatively different standard than their Sherman Act claims. In previous decisions where IRP state law claims moved forward, their accompanying federal law claims survived. Indirect purchaser claims under state law could be tenable only if the sole ground for dismissal is the doctrine established in *Illinois Brick*. Because the IRPs' federal claim against Distributor Defendants does not survive, the Court dismisses the IRPs' alternative state law claims.

### D. Conclusion

For the reasons set forth above, Distributor Defendants' Motion to Dismiss will be **GRANTED**. As IRPs have had several opportunities to state a claim against Distributor

---

[44] *Id*. (quoting *Ill. Brick*, 431 U.S. at 726) (alteration original).

[45] The Court examined this issue in *Marion Diagnostic Center*. In that case, the Court determined that the mechanics of the purchasing relationship from generic drug distributors demonstrate that entities are not "direct" purchasers when they purchase drugs through wholesalers. *Marion Diagnostic Center v. McKesson Corp*. 386 F. Supp. 3d 477, 487 (E.D. Pa. 2019) ("But Marion's use of the word through in the second amended complaint does not convert it into a direct purchaser from the manufacturer Defendants who are alleged to have fixed the prices and allocated the market for the drugs Marion purchased. Under the allegations in the second amended complaint, Marion is "the second purchaser in the chain of distribution" and is thus an indirect purchaser barred from seeking damages….").

[46] *Reliable Pharmacy,* 2022 WL 1664456 at 7 [Doc. No. 129].

Defendants without success, the dismissal will be with prejudice. An appropriate order will be entered.