## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>GENERIC PHARMACEUTICALS PRICING<br>ANTITRUST LITIGATION | MDL 2724<br>16-md-2724<br>HON. CYNTHIA M. RUFE |
| | CIVIL ACTIONS:<br><br>16-PV-27243<br><br>18-cv-2533<br><br>19-cv-6044 |
| THIS DOCUMENT RELATES TO:<br><br>ALL INDIRECT RESELLER PLAINTIFF (IRP)<br>ACTIONS | |

## DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING IMPLEMENTATION AND ADEQUACY OF NOTICE PROGRAM

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.      My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.      I am a Senior Vice President of Epiq Class Action and Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.  Hilsoft Notifications is a business unit of Epiq.  References to Epiq in this declaration include Hilsoft Notifications.

4.      The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq.

## OVERVIEW

5.      This declaration details the successful implementation of the settlement Notice Plan ("Notice Plan") and notices (the "Notice" or "Notices") related to the Apotex Settlement for *In re*

*Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 16-md-2724 in the United States District Court for the Eastern District of Pennsylvania. Epiq designed this Notice Plan based on our extensive prior experience and research into the notice issues particular to this Settlement. The Notice Plan as designed and implemented provided the best notice practicable under the circumstances to the Settlement Class. I previously executed my *Declaration of Cameron R. Azari, Esq. Regarding Notice Program* ("Notice Plan Declaration") on August 30, 2024, which described the Notice Plan, detailed Hilsoft's class action notice experience, and attached Hilsoft's *curriculum vitae*. I also provided my educational and professional experience relating to class actions and my ability to render opinions on overall adequacy of notice plans.

## NOTICE PLANNING METHODOLOGY

6.    Federal Rules of Civil Procedure, Rule 23 directs that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[1] The Notice Plan satisfied these requirements.

7.    The Notice Plan as designed and implemented reached the greatest practicable number of identified Settlement Class Members. The Notice Plan included individual notice by mail to identified Settlement Class Members. The Notice Plan individual notice efforts reached approximately 96.4% of the identified Settlement Class Members. The reach was further enhanced by a supplemental media effort and a Settlement Website. In my experience, the reach of the Notice Plan was consistent with other court-approved notice plans, was the best notice practicable under the circumstances of this Settlement, and satisfied the requirements of due process, including its "desire to actually inform" requirement.[2]

---

[1] Fed. R. Civ. P. 23(c)(2)(B).

[2] *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The

**NOTICE PLAN DETAIL**

8.     On September 4, 2024, the Court approved the Notice Plan and appointed Epiq as the Settlement Administrator in the *Order Approving the Form and Manner of Notice of the IRPS' Apotex Settlement to the Settlement Class* ("Preliminary Approval Order").  In the Preliminary Approval Order, the Court approved, for settlement purposes, the following "Settlement Class" defined in the Settlement Agreement as:

> All dispensers of drugs (including Clinics, Hospitals, and Independent Pharmacies) in the United States and its territories that purchased one or more Drugs at Issue from January 1, 2010 through the present, including (a) those that purchased directly from AmerisourceBergen Drug Corporation, Cardinal Health, Inc., Red Oak Sourcing, LLC, The Harvard Drug Group, LLC, HD Smith, LLC, McKesson Corporation, Morris & Dickson, Co., LLC or Walgreens Boot Alliance, Inc. or their subsidiaries; and (b) those that purchased indirectly from any Defendant in the MDL.

> The Settlement Class excludes:

>> a)  Defendants, their officers, directors, management, employees, subsidiaries, and affiliates;
>> b)   entities owned in part by judges or justices involved in this action or any members of their immediate families (other than interests held as a passive investor in a publicly traded entity); and
>> c)   all pharmacies owned or operated by publicly traded companies.

**NOTICE PLAN**

***Individual Notice***

9.     On October 3 2024, and October 4, 2024, Epiq purchased two data files with a combined 62,160 records for identified Settlement Class Members, including the names and current or last known postal addresses ("Class List").  Epiq deduplicated and rolled-up the records and loaded the unique, identified Settlement Class Member records into its database.  These efforts resulted in 59,160 identified Settlement Class Member records.

***Individual Notice – Direct Mail***

10.     On October 18, 2024, Epiq sent 59,160 Detailed Notices to all identified Settlement Class Members with an associated physical address.  The Detailed Notice was sent via United

---

reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . .").

States Postal Service ("USPS") first class mail. The Detailed Notice clearly and concisely summarized the Settlement and the legal rights of the Settlement Class Members. In addition, the Detailed Notice also directed the recipients to the Settlement Website where they could access the Settlement Agreement and additional information about the Settlement. The Detailed Notice is included as **Attachment 1.**

11.     Prior to sending the Detailed Notice, mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure the Settlement Class Member address information was up-to-date and accurately formatted for mailing.[3]  In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

12.     The return address on the Detailed Notice was a post office box that Epiq maintains for this Settlement. The USPS automatically forwarded Detailed Notices with an available forwarding address order that has not expired ("Postal Forwards"). Detailed Notices returned as undeliverable were re-mailed to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order has expired, but is still within the time period in which the USPS returns the piece with the address indicated), and to better addresses that were found using a third-party lookup service. Upon successfully locating better addresses, Detailed Notices were promptly remailed. As of February 4, 2025, 4,294 Detailed Notices have been remailed.

---

[3] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records consisting of names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service™. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

13.     Additionally, a Detailed Notice was mailed to all persons who requested one via the toll-free telephone number or other means.  As of February 4, 2025, Epiq mailed three Detailed Notices as a result of such requests.

### *Notice Results*

14.     As of February 4, 2025, a Detailed Notice was delivered to 57,033 of the 59,160 unique, identified Settlement Class Members.  This means the individual notice efforts reached approximately 96.4% of the identified Settlement Class Members.

### *Supplemental Online Media Plan*

15.     Internet advertising has become a standard component in legal notice programs. The internet has proven to be an efficient and cost-effective method to target and provide measurable reach of persons covered by a settlement.  According to MRI-Simmons data,[4] 97% of Adults aged 18+ in the United States are online and 85% of all Adults aged 18+ use social media.[5]

16.     The Notice Plan included targeted digital advertising ("Digital Notices"), placed on the social media sites *Facebook* and *LinkedIn*.  *Facebook* is the leading social networking site in the United States with 193.8 million users.[6]  The United States[7] has the highest number of *LinkedIn* users at 180 million.[8]

---

[4] MRI-Simmons is a leading source of publication readership and product usage data for the communications industry.  MRI-Simmons is a joint venture of GfK Mediamark Research & Intelligence, LLC ("MRI") and Simmons Market Research.  MRI-Simmons offers comprehensive demographic, lifestyle, product usage and exposure to all forms of advertising media collected from a single sample.  As the leading U.S. supplier of multimedia audience research, the company provides information to magazines, televisions, radio, internet, and other media, leading national advertisers, and over 450 advertising agencies—including 90 of the top 100 in the United States.  MRI-Simmons's national syndicated data is widely used by companies as the basis for the majority of the media and marketing plans that are written for advertised brands in the United States.

[5] MRI-Simmons 2023 Survey of the American Consumer®.

[6]  Dixon, Stacy Jo. "Facebook Users by Country 2024." Statista, May 22, 2024.

[7] Statista, founded in 2007, is a leading provider of worldwide market and consumer data and is trusted by thousands of companies around the world for data.  Statista.com consolidates statistical data on over 80,000 topics from more than 22,500 sources and makes it available in German, English, French and Spanish.

[8] Linkedin. "50 Linkedin Statistics Every Professional Should Know in 2024." LinkedIn, February 19, 2024.  https://www.linkedin.com/pulse/50-linkedin-statistics-every-professional-should-ti9ue#:~:

17.    More details regarding the target audiences, distribution, and specific ad sizes of the internet Digital Notices, are included in the following table.

| Network/Property | Target/Distribution | Ad Sizes | Delivered Impressions |
|---|---|---|---|
| Facebook | Job Title: Hospital Administrator | Newsfeed & Right Hand Column | 2,911,255 |
| Facebook | Job Title: Pharmacist | Newsfeed & Right Hand Column | 2,933,464 |
| LinkedIn | Job Title: Hospital Administrators | LinkedIn Feed Ads | 1,688,862 |
| LinkedIn | Job Title: Pharmacist, Pharmacy Technician, Pharmacy Manager, and/or Clinical Pharmacist | LinkedIn Feed Ads | 1,738,211 |
| TOTAL | | | 9,271,792 |

18.    Combined, over 9.2 million targeted impressions were generated by the Digital Notices.[9]  The Digital Notices ran for 30 days, from October 18, 2024, to November 16, 2024. Clicking on the Digital Notices linked the reader to the Settlement Website, where they could easily obtain detailed information about the Settlement.  Examples of the Digital Notices are included as **Attachment 2**.

### Settlement Website

19.    On October 18, 2024, Epiq established a Settlement Website with an easy to remember domain name (www.GenericPharmaceuticalsAntitrust.com).  Relevant documents are posted on the Settlement Website, including the Complaint, Detailed Notice, Settlement Agreement, Motion for Preliminary Approval Order, Preliminary Approval Order, Motion for Final Approval, Final Approval Order (when available), and any other case-related documents.  In addition, the Settlement Website includes relevant dates, answers to frequently asked questions

---

text=The%20largest%20age%20group%20on,users%20at%20over%20180%20million.

[9] The third-party ad management platform, ClickCease was used to audit the Digital Notice ad placements.  This type of platform tracks all Digital Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses.  This helps reduce wasted, fraudulent, or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

("FAQs"), instructions for how Settlement Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. At the commencement of the claims phase, the Settlement Website will also allow Settlement Class Members to easily file an online claim. The Settlement Website address was prominently displayed in all notice documents. As of February 4, 2025, there have been 4,643 unique visitor sessions to the Settlement Website and 15,424 web pages have been presented.

### *Toll-Free Telephone Number*

20. On October 18, 2024, Epiq established a toll-free telephone number (1-877-644-0182) to allow Settlement Class Members to call for additional information. Callers are able to hear an introductory message and have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Detailed Notice be mailed to them. This automated telephone system is available 24 hours per day, 7 days per week. For the notice and claim phases, callers will also have the option to choose to speak to a live operator during regular business hours. The toll-free telephone number was prominently displayed in all notice documents. As of February 4, 2025, there have been 629 calls to the toll-free telephone number representing 4,210 minutes of use, and service agents have handled 502 incoming calls representing 3,751 minutes of use and 158 outbound calls representing 519 minutes of use.

21. A postal mailing address was also established, allowing Settlement Class Members the opportunity to request additional information or ask questions.

### *Requests for Exclusion and Objections*

22. The deadline to request exclusion from the Settlement or to object to the Settlement was January 16, 2024. As of February 4, 2025, Epiq has received three requests for exclusion. As of January 5, 2025, Epiq is not aware of any objections to the Settlement. The Exclusion Report is included as **Attachment 3**.

### *Supplemental Notice*

23. At the commencement of the claim filing phase of the Settlement, in an effort to ensure the highest reasonable claim filing participation rate and to maximize participation in the Settlement,

Epiq will send a Supplemental Notice with a Claim Form to all identified Settlement Class Members with an associated physical address who have not requested exclusion from the Settlement.

## PLAIN LANGUAGE NOTICE DESIGN

24.     The Notices were designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class Members.  The design of the Notices followed the principles embodied in the Federal Judicial Center's ("FJC") illustrative "model" notices posted at www.fjc.gov.  Many courts, and the FJC itself, have approved notices that we have written and designed in a similar fashion.  The Notices contained substantial, albeit easy-to-read summaries of all key information about Settlement Class Members' rights and options.  Consistent with our normal practice, all notice documents underwent a final edit prior to actual mailing and publication for grammatical errors and accuracy.

25.     The Detailed Notice mailed to all Settlement Class Members provided substantial information to the Settlement Class.  The Detailed Notice included (i) details regarding the Settlement Class Members' ability to opt-out or object to the Settlement Agreement, (ii) the deadline to opt-out or object, and (iii) the date, time, and location of the Final Approval Hearing, among other information.

## CONCLUSION

26.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice.  This framework directs that the notice plan be designed to reach the greatest practicable number of potential class members and, that the notice or notice plan provide class members with easy access to the details of how the class action may impact their rights.  All of these requirements were met in this case.

27.     The Notice Plan included individual notice by mail to identified Settlement Class Members.  The Notice Plan individual notice efforts reached approximately 96.4% of the identified Settlement Class Members.  The reach was further enhanced by a supplemental media effort and a Settlement Website.  The FJC's Judges' Class Action Notice and Claims Process Checklist and

Plain Language Guide, which is relied upon for federal cases, states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%."[10] Here, we have developed and implemented a Notice Plan that readily achieved a reach beyond the high end of that standard.

28.    The Notice Plan followed the guidance for satisfying due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which emphasize the need: (a) to endeavor to actually inform the Settlement Class, and (b) to ensure that notice is reasonably calculated to do so.

   a) "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950); and

   b) "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (citing *Mullane*, 339 U.S. at 314).

29.    The Notice Plan provided the best notice practicable under the circumstances, conformed to all aspects of Federal Rule of Civil Procedure 23 regarding notice, comported with the guidance for effective notice articulated in the Manual for Complex Litigation, Fourth and applicable FJC materials, and satisfied the requirements of due process, including its "desire to actually inform" requirement.

30.    The Notice Plan schedule afforded enough time to provide full and proper notice to the Settlement Class Members before any Opt-Out or Objection Deadlines.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 6, 2025.

_____
Cameron R. Azari, Esq.

---

[10] FED. JUDICIAL CTR, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE 3 (2010), available at https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0.

Attachment 1

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*
*Settlement Administrator*
*PO Box 2750*
*Portland, OR 97208-2750*

Unique ID: 



# This Page Intentionally Left Blank

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# If you are a dispenser of drugs in the U.S. that purchased one or more Drugs at Issue from January 1, 2010, through March 5, 2024, you may be entitled to benefits from a Settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A $5.5 million Settlement has been reached in a class action antitrust lawsuit filed on behalf of the Indirect Reseller Plaintiffs and Defendant Apotex Corp. ("Apotex" or "Settling Defendant"). The Settlement only applies to the Settling Defendant Apotex Corp. and does not dismiss the legal claims against other Defendants in the lawsuit entitled *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 16-md-2724 (E.D. Penn.).

- If approved by the Court, the Settlement will resolve a lawsuit over whether Apotex participated in one or more unlawful conspiracies to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Drugs at Issue in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws.

- You are a "Settlement Class Member" if you satisfy the following: All dispensers of drugs (including Clinics, Hospitals and Independent Pharmacies) in the United States and its territories that purchased one or more Drugs at Issue from January 1, 2010 through March 5, 2024, including (a) those that purchased directly from distributor AmerisourceBergen Drug Corporation, Cardinal Health, Inc., Red Oak Sourcing, LLC, The Harvard Drug Group, LLC, HD Smith LLC, McKesson Corporation, Morris & Dickson Co., LLC or Walgreens Boot Alliance, Inc. or their subsidiaries; and (b) those that purchased indirectly from any Defendant in the MDL.

- The Drugs at Issue include any dosage or formulation of any drug that is the subject of the lawsuit whether or not it includes Apotex.

- Apotex is required to pay $5,537,000. In addition to this monetary payment, Apotex has agreed to provide specified cooperation in the continuing prosecution of the lawsuit.

- The Court has not decided whether Apotex did anything wrong, and Apotex denies any wrongdoing.

**This Notice may affect your rights. Please read it carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS | | DEADLINE |
|---|---|---|
| **EXCLUDE YOURSELF** | Get no Settlement benefits but keep your right to file your own lawsuit against Apotex regarding the legal claims in this lawsuit. | **Postmarked by January 16, 2025** |
| **OBJECT TO THE SETTLEMENT** | Write to the Court about why you do not like the Settlement. You will still be bound by the Settlement if the Court approves it. | **Postmarked by January 16, 2025** |
| **SUBMIT A CLAIM FORM** | The only way to get Settlement benefits is to submit a timely and valid Claim Form. | |
| **DO NOTHING** | Get no Settlement benefits. You will give up your rights to sue Apotex regarding the legal claims in this lawsuit and you will be bound by the judgment. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court must decide whether to approve the Settlement and the requested attorneys' fees and expenses. Settlement benefits will not be provided unless the Court approves the Settlement.

**Questions? Go to www.GenericPharmaceuticalsAntitrust.com or call 1-877-644-0182**

AK8711 v.01

## BASIC INFORMATION

| 1.  Why is this Notice being provided? |
|---|

A court authorized this Notice because you have the right to know about the Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

| 2.  What is this lawsuit about? |
|---|

The Honorable Cynthia M. Rufe of the United States District Court for the Eastern District of Pennsylvania is overseeing this class action. The lawsuit is known as *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 16-md-2724 (the "lawsuit").

The Indirect Reseller Plaintiffs ("Plaintiffs") allege that the Defendants participated in one or more unlawful conspiracies to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers for Drugs at Issue in violation of Section 1 of the Sherman Act and various state antitrust, unfair competition, unjust enrichment, and consumer protection laws.

In this Notice, "Defendants" refers to more than three dozen companies, corporations, and individuals involved in the sale and distribution of generic drugs (a complete list is available at www.GenericPharmaceuticalsAntitrust.com) and "Settling Defendant" refers to Apotex Corp. The Plaintiffs have reached a Settlement with Apotex. However, the Plaintiffs' lawsuit is still proceeding against other Defendants. **Those other Defendants may be subject to separate settlements, judgments, or class certification related orders. If applicable, you will receive a separate notice regarding the progress of the lawsuit and any resolution of legal claims against the other Defendants.**

The Settling Defendant denies the legal claims and denies any wrongdoing or liability. No court or other judicial entity has made any judgment or other determination of any wrongdoing by the Settling Defendant, or that any law has been violated. Instead, Plaintiffs and the Settling Defendant have agreed to a settlement to avoid the risk, cost, and time of continuing the lawsuit.

| 3.  Why is the lawsuit a class action? |
|---|

In a class action, one or more people or businesses (called class representatives) sue on behalf of all people or businesses who have similar legal claims. Together, all of these people are called a class or class members. One court resolves the issues for all class members, except for those class members who timely exclude themselves (opt out) from the class.

The Class Representatives in this lawsuit are Plaintiffs Chet Johnson Drug, Deal Drug Pharmacy, Falconer Pharmacy, Halliday's & Koivisto's Pharmacy, North Sunflower Medical Center, Russell's Mr. Discount Drugs, and West Val Pharmacy ("Class Representatives").

| 4.  Why is there a Settlement? |
|---|

Plaintiffs and Apotex do not agree about the legal claims made in this lawsuit. The lawsuit has not gone to trial, and the Court has not decided in favor of Plaintiffs or Apotex. Instead, Plaintiffs and Apotex have agreed to settle the lawsuit. The Plaintiffs, Apotex, and their lawyers believe the Settlement is best for all Settlement Class Members because of the benefits available to Settlement Class Members and the risks and uncertainty associated with continuing the lawsuit.

AK8712 v.01

## WHO IS INCLUDED IN THE SETTLEMENT?

**5. How do I know if I am part of the Settlement?**

The Settlement Class includes:

> All dispensers of drugs (including Clinics, Hospitals and Independent Pharmacies) in the United States and its territories that purchased one or more Drugs at Issue from January 1, 2010 through March 5, 2024, including (a) those that purchased directly from distributor AmerisourceBergen Drug Corporation, Cardinal Health, Inc., Red Oak Sourcing, LLC, The Harvard Drug Group, LLC, HD Smith LLC, McKesson Corporation, Morris & Dickson Co., LLC or Walgreens Boot Alliance, Inc. or their subsidiaries; and (b) those that purchased indirectly from any Defendant in the MDL.

Clinics include facilities providing outpatient medical treatment and advice, including urgent care clinics, community health centers, and outpatient facilities. Hospitals include facilities that provide inpatient medical treatment with overnight accommodations. Independent Pharmacies include retail pharmacies that are not owned by a publicly traded company.

The Drugs at Issue include any dosage or formulation of any drug that is the subject of the lawsuit whether or not it includes Apotex. A list of the Drugs at issue can be found at www.GenericPharmaceuticalsAntitrust.com.

**6. Are there exceptions to being included in the Settlement?**

Yes. Specifically excluded from the Settlement Class are:

> (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates;

> (b) entities owned in part by judges or justices involved in this action or any members of their immediate families (other than interests held as a passive investor in a publicly traded entity); and

> (c) all pharmacies owned or operated by publicly traded companies.

If you are in one of these categories, you are not a Settlement Class Member and not eligible to participate in the Settlement.

**7. What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Settlement Class Member, you may visit the Settlement Website at www.GenericPharmaceuticalsAntitrust.com, or call the Settlement Administrator toll-free at 1-877-644-0182.

## THE BENEFITS OF THE SETTLEMENT

**8. What does the Settlement with Apotex provide?**

If the Settlement is approved, Apotex is required to pay $5,537,000 to resolve all Settlement Class Members' legal claims against Apotex for the Released Claims (as defined in the Settlement Agreement). In addition to this monetary benefit, Apotex has also agreed to provide specified cooperation in the Indirect Reseller Plaintiffs' continued prosecution of the lawsuit. The Settlement Agreement is available at www.GenericPharmaceuticalsAntitrust.com.

AK8713 v.01

**9.  What am I giving up to receive a Settlement benefit or stay in the Settlement Class?**

Unless you exclude yourself (opt out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders and any judgments will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Released Parties about the legal issues in this lawsuit that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

You are not releasing your legal claims against any Defendant other than Apotex.

**10. What are the Released Claims?**

Section C of the Settlement Agreement describes the "Released Claims," and the Release in necessary legal terminology, so read these sections carefully. The Settlement Agreement is available at www.GenericPharmaceuticalsAntitrust.com. For questions regarding the Release or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the Settlement Class Counsel lawyers listed in Question 19 for free, or you can talk to your own lawyer at your own expense.

**11.  What happens if I do nothing at all?**

If you are a Settlement Class Member and you do nothing, you will not receive Settlement benefits, and you will give up rights explained in the "Excluding Yourself from the Settlement" section of this Notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any of the Released Parties about the legal issues in this lawsuit that are released by the Settlement.

By staying in the lawsuit, you are not releasing your legal claims against any Defendant other than Apotex.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

**12. How do I make a claim for Settlement benefits?**

At the time this Notice was mailed, the Court had not yet approved a Plan of Allocation and Claim Form. Claim Forms will be available before the opt out deadline of **January 16, 2025** at the Settlement Website at www.GenericPharmaceuticalsAntitrust.com, by calling 1-877-644-0182 or by writing to:

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*
Settlement Administrator
PO Box 2750
Portland, OR 97208-2750

**13. When will I receive my Settlement benefits?**

If you file a timely and valid Claim Form, Settlement benefits will be provided by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.GenericPharmaceuticalsAntitrust.com for updates.

AK8714 v.01

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Released Parties on your own based on the legal claims raised in this lawsuit or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from—or "opting out" of—the Settlement.

### 14. How do I exclude myself from the Settlement with Apotex?

To exclude yourself from the Settlement, you must mail a written request for exclusion ("Request for Exclusion"), which includes the following:

  1) Your name, address and telephone number;
  2) A statement explaining why you wish to be excluded from the Settlement Class; and
  3) Whether you are (a) an Independent Pharmacy (including the number of separate pharmacy locations), (b) a Clinic (including the number of separate Clinic organizations), and/or (c) a Hospital (including the number of staffed Hospital beds).

The Request for Exclusion must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **January 16, 2025**:

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*
Settlement Administrator
PO Box 2750
Portland, OR 97208-2750

**You cannot opt out (exclude yourself) by telephone or by email.**

### 15. If I exclude myself, can I still get anything from the Settlement with Apotex?

No. If you exclude yourself, you will not be entitled to receive Settlement benefits, but you will not be bound by the Settlement or any judgment in this lawsuit against the Released Parties. You can only get Settlement benefits if you stay in the Settlement and submit a timely and valid Claim Form.

### 16. If I do not exclude myself, can I sue Apotex for the same thing later?

No. Unless you exclude yourself, you give up the right to sue the Released Parties for the legal claims this the Settlement resolves. You must exclude yourself from this Settlement to start or continue with your own lawsuit or be part of any other lawsuit against the Released Parties. If you have a pending lawsuit against Apotex, speak to your lawyer in that case immediately.

By staying in the lawsuit, you are not releasing your legal claims in this lawsuit against any Defendant other than Apotex.

## OBJECTING TO THE SETTLEMENT

### 17. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement.

To object, you must timely file your objection with the Court, Settlement Class Counsel, and Apotex's counsel as provided below by **January 16, 2025**, stating you object to the Settlement in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 16-md-2724.

**Questions? Go to www.GenericPharmaceuticalsAntitrust.com or call 1-877-644-0182**

To file an objection, you cannot exclude yourself from the Settlement Class. Your objection must include all of the following information:

(1) A statement of intent to object;
(2) A detailed statement of the legal and factual grounds for each objection;
(3) A statement regarding whether you intend to appear at the Fairness Hearing; and
(4) Your signature.

| Court | Settlement Class Counsel | Apotex Counsel |
|---|---|---|
| Clerk<br>United States District Court for the Eastern District of Pennsylvania<br>James A. Byrne U.S. Courthouse<br>601 Market Street<br>Philadelphia PA 19106 | Christian Hudson<br>Michael J. Flannery<br>Cuneo Gilbert & LaDuca LLP<br>4725 Wisconsin Ave NW<br>Suite 200<br>Washington DC 20016 | Steven F. Cherry<br>April N. Williams<br>WilmerHale<br>2100 Pennsylvania Ave NW<br>Washington DC 20037 |

Any Settlement Class Member who fails to comply with the requirements for objecting detailed above will waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the lawsuit.

## 18. What is the difference between objecting and excluding myself?

Objecting is telling the Court that you do not like something about the Settlement. You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself, you cannot object because the Settlement no longer affects you.

## THE LAWYERS REPRESENTING YOU

## 19. Do I have a lawyer in this case?

Yes, the Court has appointed Christian Hudson and Michael J. Flannery of Cuneo Gilbert & LaDuca, LLP as Settlement Class Counsel to represent you and the Settlement Class for purposes of the Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Settlement Class Counsel to represent you in this lawsuit.

## 20. How will Settlement Class Counsel be paid?

Settlement Class Counsel may ask the Court for attorneys' fees based on their services in this lawsuit. A reasonable amount of the Settlement Fund, not to exceed $500,000, will be used toward notice to the Settlement Class. Any payment to Settlement Class Counsel or the Class Representatives would be subject to Court approval, and the Court may award less than the requested amount. The attorneys' fees, costs, expenses, and service awards that the Court orders, plus the costs to administer the Settlement, will come out of the Settlement Fund. Settlement Class Counsel may seek additional attorneys' fees, costs, expenses, and service awards from any other settlements or recoveries obtained in the future. When Settlement Class Counsel's motion for attorneys' fees, costs, expenses, and service awards is filed, it will be available at www.GenericPharmaceuticalsAntitrust.com.

AK8716 v.01

## THE FAIRNESS HEARING

**21. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing to decide whether to approve the Settlement on **March 17, 2025**, at **2:00 p.m.** before the Honorable Cynthia M. Rufe at the 12614 U.S. Courthouse, 601 Market Street, Philadelphia PA, 19106. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Settlement Class Counsel's application for attorneys' fees, expenses, and costs, and the service awards to the Class Representatives.

If there are timely objections, the Court will consider them. The Court will listen to Settlement Class Members who have filed a timely objection and requested to speak at the hearing.

The date and time of the Fairness Hearing are subject to change without further notice to the Settlement Class. The Court may also decide to hold the hearing via video conference or by telephone. You should check the Settlement Website www.GenericPharmaceuticalsAntitrust.com to confirm the date and time of the Fairness Hearing has not changed.

**22. Do I have to attend to the Fairness Hearing?**

No. Settlement Class Counsel will answer any questions the Court may have. However, you are welcome to come at your own expense. If you file an objection, you do not have to come to Court to talk about it. As long as you file your written objection on time, the Court will consider it.

**23. May I speak at the Fairness Hearing?**

Yes, as long as you do not exclude yourself (opt out) and you file a timely written objection requesting to speak at the hearing, you can (but do not have to) participate and speak for yourself at the Fairness Hearing. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Settlement Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 17 above—and specifically include a statement whether you or your lawyer will appear at the Fairness Hearing.

## GETTING MORE INFORMATION

**24. How do I get more information?**

This Notice summarizes the Settlement. Complete details about the Settlement are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.GenericPharmaceuticalsAntitrust.com. You may get additional information at www.GenericPharmaceuticalsAntitrust.com, by calling toll-free 1-877-644-0182, or by writing to:

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*
Settlement Administrator
P.O. Box 2750
Portland OR 97208-2750

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

**Questions? Go to www.GenericPharmaceuticalsAntitrust.com or call 1-877-644-0182**

Attachment 2







Attachment 3



*In Re Generic Pharmaceuticals Pricing Antitrust Litigation*
**Apotex Exclusion Report**

| Number | Name |
|--------|------|
| 1 | Evan's Drug Inc |
| 2 | CIBD Pharmacy |
| 3 | The Family Clinic |