**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL END-PAYER ACTIONS* | HON. CYNTHIA M. RUFE |

**END-PAYER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY APPROVAL OF SANDOZ SETTLEMENT**

# TABLE OF CONTENTS

*Page(s)*

I.      INTRODUCTION ......................................................................................................1

II.     BACKGROUND ......................................................................................................3

        A.      Procedural History ......................................................................................3

        B.      The Settlement Terms ..................................................................................5

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ..............6

        A.      Legal Standard ...........................................................................................6

        B.      Preliminary Approval of the Proposed Settlement is Warranted ...........................10

                1.      Procedural Considerations ........................................................10

                2.      Substantive Considerations ........................................................12

        C.      Certification of the Settlement Class is Likely ......................................................19

                1.      The Requirements of Rule 23(a) Are Likely to be Satisfied ....................19

                2.      The Requirements of Rule 23(b)(3) Are Likely to be Satisfied................21

IV.     THE COURT SHOULD APPOINT THE PLAINTIFFS AND THEIR COUNSEL AS
        CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL ...................23

V.      THE COURT SHOULD APPOINT HUNTINGTON BANK AS THE ESCROW
        AGENT ..................................................................................................................24

VI.     THE FORM AND MANNER OF NOTICE SHOULD BE APPROVED .......................24

        A.      The Form of Notice Complies with Rule 23 and due process ..............................25

        B.      The Proposed Manner of Notice Complies with Rule 23 and Due Process .........27

        C.      A.B. Data Is Well-Qualified to Serve as the Notice Administrator......................32

VII.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND
        SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS...................33

VIII.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED AND THE CASE
        AGAINST SANDOZ SHOULD BE STAYED..................................................................35

i

IX.    CONCLUSION ..................................................................................................................38

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................................. 19, 21

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)......................................................................................... 6, 7

*Flores v. Eagle Diner Corp.*,
No. 2:18-CV-01206-AB, 2019 WL 3943355 (E.D. Pa. Aug. 21, 2019) ................................... 9

*Gates v. Rohm and Haas Co.*,
248 F.R.D. 434 (E.D. Pa. 2008)......................................................................................... 19

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)............................................................................................ 8, 9

*Hacker v. Elec. Last Mile Sols. Inc.*,
No. 2:22-CV-00545(MEF)(LDW), 2024 WL 5102696 (D.N.J. Nov. 6, 2024)....................... 17

*In re Actavis Holdco U.S., Inc.*,
No. 19-cv-3549, 2019 WL 8437021 (3d Cir. Dec. 6, 2019), *cert. denied*,
141 S. Ct. 124 (2020).......................................................................................................... 12

*In re Automotive Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ............................................. 11

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir.2013)............................................................................................... 24

*In re Blood Reagents Antitrust Litig.*,
MDL No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) ...................................... 20, 21

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
No. 09-2067-NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014) .......................................... 34

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................................... 10

*In re Eur. Gov't Bonds Antitrust Litig.*,
No. 19-cv-2601, 2023 WL 3479693 (S.D.N.Y. May 16, 2023) ............................................ 37

*In re Eur. Gov't Bonds Antitrust Litig.*,
No. 19-cv-2601, 2023 WL 3486612 (S.D.N.Y. May 16, 2023) ............................................ 37

*In re Fasteners Antitrust Litig.*,
  No. 08-md-1912, 2014 WL 285076 (E.D. Pa. Jan. 24, 2014) ................................. 22

*In re Flat Glass Antitrust Litig.*,
  191 F.R.D. 472 (W.D. Pa. 1999) ................................................................ 22

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) ................................................................ 27, 32, 34

*In re Flonase Antitrust Litig.*,
  951 F. Supp. 2d 739 (E.D. Pa. 2013) ........................................................ 33

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ..................................................................... 7

*In re Generic Pharms. Pricing Antitrust Litig.*,
  338 F. Supp. 3d 404 (E.D. Pa. 2018) ........................................................ 4

*In re Generic Pharms. Pricing Antitrust Litig.*,
  394 F. Supp. 3d 509 (E.D. Pa. 2019) ........................................................ 4

*In re Generic Pharms. Pricing Antitrust Litig.*,
  MDL No. 2724, 2023 WL 2466622 (E.D. Pa. Mar. 9, 2023) ..................... 14, 18, 32

*In re Generic Pharms. Pricing Antitrust Litig.*,
  MDL No. 2724, 2024 WL 4508950 (E.D. Pa. Oct. 25, 2024) ................. 14, 17, 18, 32

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  934 F.3d 316 (3d Cir. 2019) ..................................................................... 6, 9

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ..................................................................... 22

*In re Ikon Office Solutions Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ................................................................ 15, 33

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  No. 11-MD-2284, 2015 WL 7575910 (E.D. Pa. Nov. 25, 2015) ................... 27

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
  No. 17-cv-341, 2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) ..................... 33

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ..................................................................... 22

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................ 11, 15

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), aff'd,
No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ................................................ 18

*In re Mercedes-Benz Emissions Litig.*,
No. 16-CV-881, 2021 WL 8053614 (D.N.J. July 12, 2021)..................................................... 13

*In re Modafinil Antitrust Litig.*,
837 F.3d 238 (3d Cir. 2016)..................................................................................................... 20

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015)......................................................................................... 11, 26

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016)......................................................................... 10, 16, 24, 27

*In re Pork Antitrust Litig.*,
No. 18-cv-1776, 2023 WL 5499864 (D. Minn. Aug. 25, 2023)............................................ 37

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 249 (E.D. Pa. 2012)............................................................................................... 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)........................................................................................................ 9

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
177 F.R.D. 216 (D.N.J. 1997)................................................................................................... 27

*In re Remeron End-Payor Antitrust Litig.*,
No. 02-cv-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005)...................................... 17, 23, 37

*In re Remicade Antitrust Litig.*,
No. 17-CV-04326, 2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ................................. 14, 33, 35

*In re Remicade Antitrust Litig.*,
No. 17-CV-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023).............................. 20, 26, 34

*In re Shop-Vac Mktg. & Sales Practices Litig.*,
MDL No. 2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016) ........................................... 9, 19

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*,
421 F. Supp. 3d 12 (E.D. Pa. 2019) ........................................................................................ 21

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024), *aff'd sub nom.*,
967 F.3d 264 (3d Cir. 2020).......................................................................................................... 7

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004) ................. 17, 22, 23, 29, 31

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    No. 20-MD-02966-RS, 2024 WL 1683640 (N.D. Cal. Apr. 17, 2024) ................................... 27

*McRobie v. Credit Prot. Assoc.*,
    No. 5:18-cv-00566, 2020 WL 6822970 (E.D. Pa. Nov. 20, 2020) .......................................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .......................................................................................................... 27

*Murphy v. Le Sportsac, Inc.*,
    No. 22-cv-00058, 2023 WL 375903 (W.D. Pa. Jan. 24, 2023) ............................................. 16

*Mylan Pharma., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
    No. 12-cv-3824, 2015 WL 12791433 (E.D. Pa. Jan. 28, 2015) ............................................. 34

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) .............................................................................................. 20

*Silvis v. Ambit Energy L.P.*,
    326 F.R.D. 419 (E.D. Pa. 2018) ........................................................................................ 19

*Torres v. BrandSafway Indus. LLC*,
    No. 2:21-CV-01771, 2023 WL 346667 (W.D. Pa. Jan. 20, 2023) .......................................... 8

*Whiteley v. Zynerba Pharms., Inc.*,
    No. 19-cv-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ............................................. 11

**Statutes**

28 U.S.C. § 1715 .................................................................................................................... 3, 38

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ passim

**Other Authorities**

2 McLaughlin on Class Actions § 6:23 (21st ed.) ........................................................................ 18

Manual for Complex Litigation (4th ed.) § 21.311 ...................................................................... 28

## I.    INTRODUCTION

Settling End-Payer Plaintiffs ("EPPs"),[1] on behalf of the proposed End-Payer Settlement Class ("EPP Settlement Class"), seek preliminary approval of a settlement with Sandoz Inc. and Fougera Pharmaceuticals ("Sandoz").[2] The Settlement was the product of arm's-length negotiations between experienced antitrust counsel and was reached after more than eight years of hard-fought litigation that has included extensive fact discovery and motion practice.

This settlement provides for a cash settlement fund totaling $275,000,000 (which could be reduced by a maximum of $45,000,000 to account for opt-outs) for the benefit of the EPP Settlement Class (the "Sandoz Settlement Fund"), as well as cooperation from Sandoz. In exchange, EPPs and the EPP Settlement Class agree to release all claims against Sandoz that arise out of the conduct alleged in this litigation. The proposed Settlement is an excellent result for the Class and is well within the range of reasonableness. It is in the best interest of the proposed Settlement Class Members and warrants preliminary approval under Fed. R. Civ. P. 23(e)(1)(B)(i) because the Court will ultimately likely be able to approve the settlement under

---

[1] EPPs are 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; and United Food & Commercial Workers and Employers Arizona Health & Welfare Trust; Nina Diamond; Ottis McCrary; Valerie Velardi; and Robby Johnson.

[2] A copy of the Settlement Agreement (the "Settlement" or "Sandoz Settlement") is attached as Exhibit 1 to the Declaration of Roberta D. Liebenberg in Support of End-Payer Plaintiffs' Motion for Preliminary Approval of Sandoz Settlement. ("Liebenberg Decl.). Capitalized terms in this Motion incorporate the defined terms from the Settlement Agreement.

Fed. R. Civ. P. 23(e)(2). Indeed, this Court recently granted preliminary approval of a $265 million settlement between Sandoz and the Direct Purchaser Plaintiffs. MDL Doc. 3021.

The proposed EPP Settlement Class is also likely to be certified for settlement purposes, as required by Rule 23(e)(1)(B)(ii). The Settlement Class is comprised of at least many thousands, and most likely millions, of class members who have claims arising from Defendants' anticompetitive conduct. Class Plaintiffs' claims are typical of those of all Settlement Class members and present numerous common questions of fact and law. And these common issues predominate over any questions that may affect individual class members. Accordingly, this class action is superior to other methods of adjudication.

EPPs respectfully request that the Court enter an Order in the form submitted herewith ("Proposed Order"): (1) preliminarily approving the Sandoz Settlement (described herein and attached to the Declaration of Roberta D. Liebenberg) as fair, reasonable and adequate for the EPP Settlement Class; (2) finding that the EPP Settlement Class is likely to be certified; (3) preliminarily designating the EPPs as Class Representatives for the EPP Settlement Class; (4) preliminarily appointing Roberta D. Liebenberg and the law firm of Fine, Kaplan and Black, R.P.C. as Lead Counsel for the Settlement Class; (5) approving Huntington Bank as the Escrow Agent; (6) approving the form and manner of notice of the Sandoz Settlement and directing notice to the EPP Settlement Class (proposed forms of Notice attached hereto as Exhibits 1-5; proposed Notice Plan attached as Exhibit C to the Declaration of Elaine Pang of A.B. Data, Ltd. Regarding Proposed Notice Plan ("A.B. Data Decl.")); (7) appointing A.B. Data, Ltd. as the Notice Administrator; (8) preliminarily approving the proposed Plan of Allocation (attached hereto as Exhibit 6); (9) staying litigation brought by EPPs against Sandoz until the Court grants final approval of the Settlement; (10) ordering Sandoz to comply with the provisions of the Class

Action Fairness Act, 28 U.S.C. § 1715; (11) scheduling a final fairness hearing for the EPP

Sandoz Settlement; and (12) ordering the deadlines set forth in EPPs' proposed schedule.[3]

## II.    BACKGROUND

### A.    Procedural History

Since 2016, EPPs—end-purchasers of generic drugs from Defendants—have litigated

claims alleging that Sandoz (a manufacturer of generic drugs) conspired with the other

Defendants (other manufacturers of generic drugs) in violation of federal and state antitrust laws,

consumer protection laws and common law to artificially inflate and maintain the prices that

EPPs paid for the Drugs at Issue ("DAIs") in this litigation, which are listed in Appendix A to

the Settlement. Liebenberg Decl. ¶ 4. EPPs contend that the alleged anticompetitive conduct of

Sandoz and other generic drug manufacturers resulted in supra-competitive prices, causing EPPs

to pay overcharges for DAIs. Defendants have denied liability as to EPPs' claims and have

mounted a vigorous defense in all phases of the MDL.

In this MDL, EPPs have filed 18 individual drug complaints and two multi-drug

complaints. Sandoz is a Defendant in 11 of EPPs' pending cases. *Id.* ¶ 5.[4] In October 2018, the

---

[3] As set forth in greater detail below, under the proposed allocation plan, the monetary component of the Sandoz Settlement, net of costs related to settlement notice and administration and any Court-approved fees, litigation expenses and service awards ("Net Sandoz Settlement Fund"), would be distributed to EPP Settlement Class Members upon Court approval of a later motion for distribution.

[4] *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Mylan Inc., et al.*, No. 16-AM-27242 (Amitriptyline); *The City of Providence, Rhode Island, et al. v. Mylan Inc., et al.*, No. 16-BZ-27240 (Benazepril)*; 1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 16-CB-27242 (Clobetasol); *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Mylan Inc., et al.*, No. 16-CM-27242 (Clomipramine); *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 16-DS-27242 (Desonide); *American Federation of State, County and Municipal Employees District Council 37 Health & Security*

Court denied Defendants' motions to dismiss six of the EPPs' individual drug complaints, including the *Clobetasol* and *Pravastatin* complaints naming Sandoz as a Defendant. *Id.* ¶ 6.[5] In August 2019, the Court denied Defendants' motions to dismiss the EPPs' first multi-drug complaint that alleged an "overarching conspiracy" among Defendants, including Sandoz. *Id.* ¶ 7.[6] Following the Court's decisions on the motions to dismiss, the parties engaged in substantial discovery, including propounding hundreds of document requests, interrogatories, and requests for admissions; producing and reviewing millions of documents; taking more than a hundred depositions; and engaging in numerous discovery motions before the Court and the three Special Masters, including one discovery motion that was briefed before the Third Circuit and the United States Supreme Court. *Id.* ¶¶ 8-11. EPPs and Defendants have also briefed class certification, twelve *Daubert* motions, and motions for summary judgment in both of the EPP bellwether cases. *Id.* ¶ 12.

Settlement negotiations between EPP Settlement Class Counsel and counsel for Sandoz were hard fought, at arm's length and lasted for approximately a year, culminating in the execution of the Settlement Agreement. *Id.* ¶¶ 15-18.

---

*Plan, et al. v. Actavis Holdco U.S., Inc., et al*., No. 16-FL-27242 (Fluocinonide); *1199SEIU National Benefit Fund, et al v. Akorn, Inc., et al.,* No. 16-LD-27242 (Lidocaine-Prilocaine*); Louisiana Health Service & Indemnity Company d/b/a/ Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc., et al. v. Lannett Company, Inc., et al*., No. 16-LV-27242 (Levothyroxine*); American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Actavis Holdco U.S., Inc., et al*., No. 16-PV-27242 (Pravastatin); *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al*., No. 18-cv-2401 (First Multidrug Complaint); *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al*., No. 19-cv-6011 (Second Multidrug Complaint)*.*

[5] *In re: Generic Pharmaceuticals Pricing Antitrust Litig*., No. 16-MD-2724 (hereinafter "*In re Generic Pharms.*"), 338 F. Supp. 3d 404, 458 (E.D. Pa. 2018).

[6] *In re Generic Pharms.*, 394 F. Supp. 3d 509, 533 (E.D. Pa. 2019).

B.       **The Settlement Terms**

The Settlement proposes, subject to Court approval, the following EPP Settlement Class definition:

> [A]ll persons and entities in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands, that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for any Drugs at Issue, other than for resale, from May 1, 2009 through December 31, 2019. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal governmental entities; (c) all state governmental entities (except for cities, towns, municipalities, counties and other local governmental entities with self-funded prescription drug plans, all of which are included in the class); (d) all governmental Medicaid agencies, private Medicaid managed care organizations, and consumers who were covered by Medicaid for their purchases of Drugs at Issue; and [e] Judges assigned to this case and any members of their immediate families. For avoidance of doubt, the class does not include (i) persons or entities who only purchased Drugs at Issue for purposes of resale or directly from Defendants; (ii) fully insured employers to the extent that they use fully-insured plans (*i.e.*, employers that purchased insurance covering 100% of their reimbursement obligation to members); and (iii) pharmacy benefit managers. Where a putative class member has purchases that meet the definition of the EPP Settlement Class, but also has purchases that fall within one or more of the exclusions set forth in this Paragraph I.J., that putative class member is included in the EPP Settlement Class only with respect to those purchases that meet the definition of the EPP Settlement Class.

Settlement Agreement ¶ I.J.

Pursuant to the Settlement Agreement, Sandoz has paid $275,000,000 (the "Settlement Amount") into an escrow account at Huntington Bank for the benefit of the EPP Settlement Class, and that account has since been accruing interest. *Id.* ¶¶ I.I, II.A. The Settlement Amount may be reduced by up to $45,000,000, depending on the level of valid and timely requests for exclusion from Settlement Class Members. *Id.* ¶ V. The Settlement Agreement also requires Sandoz to provide cooperation in the following areas: (1) promptly providing any additional

documents, data, or materials produced in the Actions as a result of discovery request,

agreement, or Court Order; (2) assisting EPPs with understanding data produced by Sandoz and

providing additional data if necessary; (3) authenticating and laying the foundation to admit as

business records, where applicable, documents and/or things produced by Sandoz in the actions;

and (4) good faith consideration of reasonable requests for additional assistance. *Id.* ¶ VIII.

In exchange for the valuable consideration described above, members of the EPP

Settlement Class will release Sandoz from claims "that were asserted or that could have been

asserted," *id.* ¶ I.Q, related to "antitrust, price fixing, market allocation, bid-rigging, unfair

competition, consumer protection, "overarching conspiracy," unjust enrichment, fraud, or false

claims, and/or any other anticompetitive or unfair conduct related to or based on, in whole or in

part, the allegations in the Actions, in connection with the manufacture, sale or distribution of

Drugs at Issue or any other generic drug for which claims could have been asserted based on the

facts alleged in any of the complaints filed in the Actions," including "any claims related to or

arising out of the spin-off and transfer of assets among Novartis AG, Sandoz AG, Sandoz Group

AG, and Sandoz Inc." *id.* ¶ I.B. *See also id.* ¶¶ I.H, I.R, VI. Unrelated claims such as those for

breach of contract, unfair marketing or advertising and violations of securities laws will not be

released. *Id.* ¶ I.Q.3.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    Legal Standard

The Third Circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart*

*v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). When reviewing a settlement, the Third

Circuit has repeatedly stressed that "we favor the parties reaching an amicable agreement and

avoiding protracted litigation. We do not wish to intrude overly on the parties' hard-fought

bargain." *In re Google Inc. Cookie Placement Consumer Priv. Litig*., 934 F.3d 316, 326 (3d Cir.

2019) ("*In re Google Inc.*") (internal citation omitted). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 595. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995). Thus, "[t]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig*., No. 13-MD-2445, 2024 WL 815503, at \*5 (E.D. Pa. Feb. 27, 2024).

Approval of a class action settlement involves a two-step process. First, the Court makes a preliminary approval determination. Next, after notice and an opportunity to object is provided and a Fairness Hearing held, the Court decides whether final approval of the settlement is warranted.

Preliminary approval itself has two prongs. Each pertains to the likelihood of ultimate approval. Specifically, to grant preliminary approval, the Court must find that it "will likely be able" to ultimately approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2) and to certify the settlement class. Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2) requires the Court to consider the following factors relating to whether a settlement is fair, reasonable and adequate: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of

attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Courts recognize that "[a]t the preliminary approval stage, the bar to meet the fair, reasonable and adequate standard is lowered," and a court's focus should be on whether the proposed settlement "discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Torres v. BrandSafway Indus. LLC*, No. 2:21-CV-01771-CCW, 2023 WL 346667, at *2 (W.D. Pa. Jan. 20, 2023) (internal quotation marks and citation omitted); *see also McRobie v. Credit Prot. Assoc.*, No. 5:18-cv-00566, 2020 WL 6822970, at *3 (E.D. Pa. Nov. 20, 2020) ("Preliminary approval of a proposed class action settlement is not binding on the Court and is generally granted unless a proposed settlement is obviously deficient.").

The 2018 Advisory Committee Notes to Subdivision 23(e)(2) explain that the "core concerns" listed in the text of Rule 23(e)(2) and set forth above do not "displace" a court's consideration of the other factors that have been adopted by each Circuit Court to assess the fairness of a class settlement.

In the Third Circuit, courts have traditionally considered nine factors when determining the fairness of a proposed settlement, as set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). These *Girsh* factors significantly overlap with the Rule 23(e)(2) factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* (internal quotation marks and citation omitted); *see also In re Google Inc.*, 934 F.3d at 322 n.2 (quoting *Girsh* factors); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) (listing additional factors that the court may apply if relevant).

To assess the appropriateness of certification of a settlement class, the Court must first determine whether the proposed class meets the Rule 23(a) requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court then considers whether the proposed settlement class satisfies one of the requirements listed in Rule 23(b). In relevant part, under Rule 23(b)(3), a proposed settlement class may be maintained if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether to grant preliminary class certification, a court "employs a less rigorous analysis than that necessary for final certification because courts conduct a fairness hearing in order to issue a final class certification and approve the settlement." *Flores v. Eagle Diner Corp.*, No. 2:18-CV-01206-AB, 2019 WL 3943355, at *3 (E.D. Pa. Aug. 21, 2019) (quoting *In re Shop-Vac Mktg. & Sales Practices Litig.*, MDL No.

2380, 2016 WL 3015219, at *3 (M.D. Pa. May 26, 2016)) (internal quotation marks and citations omitted).

**B.    Preliminary Approval of the Proposed Settlement is Warranted**

**1.    Procedural Considerations**

In evaluating whether a settlement is fair, reasonable, and adequate, the Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) Advisory Committee's note to 2018 amendment. The Third Circuit applies "an initial presumption of fairness in reviewing a class settlement when: '(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016), *as amended* (May 2, 2016) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001).

**a)    The Class Representatives and Settlement Class Counsel Have Adequately Represented the Settlement Class**

Since being appointed by the Court, EPP Settlement Class Counsel vigorously and skillfully litigated this case through extensive motion practice and discovery. Liebenberg Decl. ¶¶ 6-14.They have used their skills, prior experience, and familiarity with the facts and law in this case to negotiate the settlement with Sandoz. Likewise, the proposed Settlement Class Representatives have fulfilled their responsibilities on behalf of the Settlement Class. They have worked closely with Class Counsel on the litigation, reviewed pleadings, and responded to

10

discovery requests propounded by Defendants, and many of them have provided deposition testimony. *Id.* ¶ 13.

This factor will likely be satisfied for final approval and thus weighs in favor of preliminary approval.

> **b)      The Sandoz Settlement was Negotiated at Arm's Length by Experienced Counsel**

Courts generally give deference to settlements that result from arm's length negotiations between experienced counsel. "Though the ultimate determination of the fairness of a partial settlement is left to the court, it is appropriate to give substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, in making this determination." *See e.g.*, *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *2 (E.D. Pa. Sept. 5, 2003). "A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (internal quotation marks and alterations omitted). *See also Whiteley v. Zynerba Pharms., Inc.*, No. 19-cv-4959, 2021 WL 4206696, at *4 (E.D. Pa. Sept. 16, 2021) ("Courts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery.") (citation omitted).

Here, the parties engaged in arm's length negotiations conducted by counsel highly experienced in antitrust litigation and settlement. Liebenberg Decl. ¶ 21. The negotiations were quite lengthy and hard fought, taking place over the course of approximately a year. *See id.* ¶¶ 15-18. Throughout that time, EPP Settlement Class Counsel analyzed the risks and benefits of

settling, made numerous settlement demands and considered numerous counter-offers from experienced counsel representing Sandoz. *See id.* ¶¶ 15-23.

c)    <strong>Extensive Discovery Has Been Completed</strong>

The Settlement was reached on a well-developed record. Since MDL discovery commenced in 2018, EPP Settlement Class Counsel propounded hundreds of document requests, interrogatories, and requests for admissions; reviewed millions of documents produced by Defendants and third parties; took or participated in more than 100 depositions, including 12 depositions of Sandoz witnesses; and participated in numerous formal and informal hearings before the Court and the three Special Masters. Liebenberg Decl. ¶¶ 8-10. The parties have also engaged in extensive discovery motion practice, including an appeal of a discovery ruling that was briefed before the Third Circuit and the Supreme Court of the United States. *Id.* ¶ 11; *In re Actavis Holdco U.S., Inc.*, No. 19-cv-3549, 2019 WL 8437021 (3d Cir. Dec. 6. 2019) (denying petition for writ of mandamus), *cert. denied*, 141 S. Ct. 124 (2020).

EPP Settlement Class Counsel's assessment of the litigation has also been aided by preparation of merits expert reports, which were served in the bellwether cases on November 1, 2023. *Id.* ¶ 12. That work, in addition to the extensive discovery record, has made EPP Settlement Class Counsel well-positioned to evaluate the strengths and weaknesses of the claims against Sandoz. *Id.* ¶ 22.

2.    <strong>Substantive Considerations</strong>

Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D), Advisory Committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

12

processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

### a)      The Strength of Plaintiffs' Case and Risks of Continued Litigation

As a result of the extensive litigation that has occurred to date, EPP Settlement Class Counsel possess the information necessary to evaluate the proposed Sandoz Settlement in light of the costs, risks, and delays associated with litigating the case through trial. Specifically, EPPs would face risks, expenses, and challenges if the litigation against Sandoz were to continue, including class certification (and potential Rule 23(f) petitions), summary judgment, motions *in limine* and trials in the *Clomipramine* and *Clobetasol* bellwether cases, litigation of any subsequent appeals, and the full gamut of work and risks in the cases involving the remaining 195 drugs to follow.

Although EPPs and their counsel have confidence in EPPs' claims, a favorable outcome against Sandoz was far from assured. *See In re Mercedes-Benz Emissions Litig.*, No. 16-CV-881, 2021 WL 8053614, at *4 (D.N.J. July 12, 2021) (finding that settlement approval was appropriate where "[e]ven if [plaintiffs] did win at trial and on appeal, relief for the Class was likely years away as a result of the lengthy litigation process. The Mercedes Settlement eliminates these risks, cuts through the delay, and provides immediate and significant benefits to Class Members.").

### b)      The Relief Provided to the Settlement Class

The proposed Settlement provides substantial consideration for the benefit of the EPP Settlement Class. The Settlement Amount of $275,000,000, together with any accrued interest or

13

earnings after deposit, is being held in escrow. Settlement Agreement ¶¶ I.I, II.A, X. The

proposed Settlement will, to the extent legally permissible, allow EPPs to continue to pursue the

full measure of the overcharge damages incurred by EPPs against the non-settling Defendants.

*Id.* ¶ VI.G. As mentioned above, continued litigation of the claims against Sandoz would be

protracted and without guarantee of any recovery. The certainty and immediacy of recovery

through the Settlement, and the benefits that Settlement Class Members will receive in what, to

date, is the largest settlement achieved by any plaintiffs' group in the MDL, warrants preliminary

approval. *See In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2022 WL 3042766, at *10

(E.D. Pa. Aug. 2, 2022) ("Given the risks (and costs) associated with litigating through class

certification, trial, and appeal, and the monetary and nonmonetary relief afforded the Class

Members, the settlement amount represents a substantial recovery.").

      The significant cash recovery for the EPP Settlement Class is further enhanced by the

cooperation Sandoz will provide. The value of this cooperation cannot be quantified, but it is

enormously valuable, given the complexities of this case and industry. In approving settlements

in complex antitrust class actions, courts within this District, including this Court, have

emphasized the importance of cooperation. *See In re Generic Pharms. Pricing Antitrust Litig.*,

MDL No. 2724, 2024 WL 4508950, at *2 (E.D. Pa. Oct. 25, 2024) ("[T]he Settling Defendants

have agreed to provide cooperation to DPPs, which will facilitate the administration of the

settlements and will aid the litigation against non-settling Defendants"; approving settlements

with Apotex, Breckenridge and Heritage); *In re Generic Pharms. Pricing Antitrust Litig.*, MDL

No. 2724, 2023 WL 2466622, at *4 (E.D. Pa. Mar. 9, 2023) (same; approving DPP settlements

with Sun and Taro); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 275  (E.D. Pa.

2012) (finding that settlement agreement's cooperation provision constituted "valuable

consideration" that "confer[red] real and substantial benefits upon the Class"); *Linerboard,* 292 F. Supp. 2d at 643 ("The [cooperation provision] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."); *In re Ikon Office Solutions Inc. Sec. Litig.,* 194 F.R.D. 166, 177 (E.D. Pa. 2000) ("[T]he cooperation arrangement . . . provides obvious, if non-quantifiable, benefits to the plaintiff class in the continuing litigation.").

**c)    Attorneys' Fees and Service Awards to Class Representatives**

The Settlement Agreement provides that EPP Settlement Class Counsel may seek Court approval of up to one third of the EPP Settlement Amount (plus any interest accrued on the Amount) for attorneys' fees, plus expenses and costs, and service awards, which shall be paid from the Sandoz Settlement Fund. Settlement Agreement ¶ XI.A. The Settlement Agreement further provides that up to $750,000 of the EPP Settlement Amount may be used for notice and fund administration expenses; payment of those expenses may be disbursed without further court Order, and they will be non-recoupable by Sandoz in the event that the Settlement Agreement fails to receive Final Court Approval. *Id.* ¶ IX.A.

In conformity with the schedule outlined below, *see* Section VIII, *infra*, EPP Settlement Class Counsel intends to submit a request for attorneys' fees, reimbursement of litigation expenses, and service awards at least 30 days prior to the deadline for objecting to or requesting to be excluded from the Settlement.

As set forth in greater detail below, *see* Section VI, *infra*, the settlement notices will disclose the maximum amounts that EPP Settlement Class Counsel may request for attorneys' fees, expenses, and service awards, and they will state that Counsel's motion will be posted on the Settlement Website. *See also* Ex. 1 (Long-Form Notice) at Questions 11, 17. The notices will

therefore allow Settlement Class Members to make informed decisions about whether to object to or exclude themselves from the Settlement. This satisfies due process.[7]

In addition, the Settlement specifically states that "[t]he procedure for and the allowance or disallowance by the court of any application by EPP Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for class representatives, are not part of this Agreement," and any order on such an award will not be a reason to terminate the Settlement or affect the finality of the judgment approving the Settlement. Settlement Agreement ¶¶ XI.C, XII.B. Because the petition for fees, expenses, and service awards "will be subject to review and approval by the Court, this factor does not weigh against the fairness of the settlement." *Murphy v. Le Sportsac, Inc.*, No. 22-cv-00058, 2023 WL 375903, at *12 (W.D. Pa. Jan. 24, 2023).

### d) Supplemental Agreements

Rule 23(e)(3) requires disclosure of any supplemental agreements that could affect the adequacy of the class representatives or their counsel or the fairness of the settlement. The Sandoz Settlement references a confidential understanding related to the impact of exclusions on the Settlement Amount. *See* Settlement Agreement ¶ V. Specifically, Paragraph V.A. of the Settlement Agreement provides that the EPP Settlement Amount may be reduced by a maximum of $45,000,000 pursuant to a confidential calculation that will account for potential members of the Settlement Class that submit valid and timely requests for exclusion. *Id.* ¶ V.A. As a result of

---

[7] *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 446 (affirming final approval of a settlement where the district court intended to consider attorneys' fees after final approval and settlement class members were informed that attorneys may seek fees of up to $112.5 million; "Even if the class members were missing certain information—for example, the number of hours class counsel worked and the terms of any contingency fee arrangements class counsel have with particular retired players—they still had enough information to make an informed decision about whether to object to or opt out from the settlement.").

the confidential calculation, the greater the percentage of the class that opts out, the greater will be the individual recoveries of class members who remain in the Settlement Class.

Confidential calculations such as the one here are quite common, and they are kept confidential "to avoid creating incentives for a small group of [class members] to opt out solely to leverage the [confidential calculation] to extract an individual settlement." *Hacker v. Elec. Last Mile Sols. Inc*., No. 2:22-CV-00545(MEF)(LDW), 2024 WL 5102696, at *9 (D.N.J. Nov. 6, 2024) ("Supplemental agreements concerning opt-outs . . . ha[ve] no bearing on the fairness of the Settlement."). *See also In re Generic Pharms.*, 2024 WL 4508950, at *4 (confidential percentage that triggered option to terminate did not affect final approval of settlements at issue); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) (opt-out threshold is "irrelevant to members' opt-out decision"); *In re Remeron End-Payor Antitrust Litig.*, No. 02-cv-2007, 2005 WL 2230314, at *18, *33 (D.N.J. Sept. 13, 2005) (confidential opt-out threshold "ha[d] no legitimate bearing on a class member's decision to opt-out of the settlement, object, or file a claims form"). If requested by the Court, EPPs are prepared to submit that confidential understanding to the Court (*in camera*, if permitted by the Court).

### e)    Class Members are Treated Equitably

Finally, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement itself treats EPP Settlement Class Members equitably as it provides $275,000,000 to be shared among all members of the EPP Settlement Class and cooperation from Sandoz that will aid the Settlement Class in its continued litigation of this case against the non-settling Defendants. The Settlement Agreement does not dictate how the Settlement Fund will be allocated among the Settlement Class Members. Instead, it leaves the allocation plan to be approved by the Court, *see* Settlement

Agreement ¶ III.B, and explicitly states that any allocation or distribution plan "is not a part of this Settlement and is to be considered by the court separately from the court's consideration of the fairness, reasonableness and adequacy of the Settlement," *id.* ¶ III.C. Moreover, the Parties have agreed that any orders or proceedings relating solely to the allocation plan shall have no bearing on whether the Settlement is terminated. *Id.* Because the allocation of settlement funds is not a material term of the Settlement Agreement, the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement should be independent of its consideration of the EPPs' proposed allocation plan (which can be amended if the Court so orders). *See In re Lithium Ion Batteries Antitrust Litig.,* No. 13-MD-02420, 2020 WL 7264559, at *25 (N.D. Cal. Dec. 10, 2020), aff'd, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (holding that when the allocation plan is not part of the settlement agreement, "the Court has discretion to determine an appropriate plan of allocation without setting aside its orders or judgments granting final approval of the settlements themselves"; collecting cases); 2 McLaughlin on Class Actions § 6:23 (21st ed.) ("Because court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation . . . courts frequently approve [them] separately.").

      If, nonetheless, the Court wishes to consider the allocation plan as part of its preliminary consideration of the settlement, it will find that the proposed Plan of Allocation, discussed in Section VII, *infra*, treats Settlement Class Members equitably relative to each other in that it allocates the settlement proceeds *pro rata* based on the dollar spend by Settlement Class Members on the Drugs at Issue. *See In re Generic Pharms*., 2024 WL 4508950, at *4 ("[T]he settlement funds will be allocated on a *pro rata* basis, which treats the [DPP] class members equitably."); *In re Generic Pharms*., 2023 WL 2466622, at *4 (same).

18

This factor, therefore, weighs in favor of preliminary approval.

**C.    Certification of the Settlement Class is Likely**

The Settlement Class is cohesive, objectively defined, and likely to be certified. *See* Fed. R. Civ. 23(e)(1)(B)(ii). "Where, as here, the court has not already certified the class prior to evaluating the settlement, it must determine whether the proposed settlement class satisfies the requirements of Rule 23(a) and (b)." *Silvis v. Ambit Energy L.P.*, 326 F.R.D. 419, 427 (E.D. Pa. 2018) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997)). "At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice" by making a "'preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b))." *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 439 (E.D. Pa. 2008) (quoting Manual for Complex Lit. § 21.632 (4th ed.)). In determining whether to grant preliminary approval of a settlement class, a Court "employs a less rigorous analysis than that necessary for final certification because courts conduct a fairness hearing in order to issue a final class certification and approve the settlement." *Flores* at *3 (quoting *In re Shop-Vac Mktg.,* 2016 WL 3015219, at *3) (internal quotation marks and citation omitted). The proposed EPP Settlement Class satisfies the elements of Rule 23 and merits certification.

**1.    The Requirements of Rule 23(a) Are Likely to be Satisfied**

Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Each of these requirements is met.

19

The numerosity requirement is satisfied as the Settlement Class consists of at least many thousands, and probably millions, of potential class members, making joinder of all members impracticable. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016) (analyzing numerosity using several factors and noting that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.") (internal quotation marks and citation omitted).

The commonality requirement is satisfied because the central issue in the case— whether Sandoz conspired with other Defendants to raise or maintain the price of generic drugs sold to the EPP Settlement Class—is common to the class. *See In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *10 (E.D. Pa. Mar. 15, 2023) ("This case presents sufficient commonality because each Class Member's claim depends on whether Defendants engaged in anticompetitive conduct with respect to [the drug at issue]"); *In re Blood Reagents Antitrust Litig.*, MDL No. 09-2081, 2015 WL 6123211, at *26 (E.D. Pa. Oct. 19, 2015) ("Courts interpreting the commonality requirement in the antitrust area have held that allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement.") (internal quotation marks omitted).

The typicality requirement is satisfied because Settlement Class Members' claims involve the same alleged conduct by the Defendants, regardless of whether the class member is an insurer, or a self-insured employer, or a consumer. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–84 (3d Cir. 2001), *as amended* (Oct. 16, 2001) ("If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."). Sandoz's alleged liability to each

20

Settlement Class Member will be determined primarily by Sandoz's conduct, not the individual circumstances of the Settlement Class Members.

The adequacy requirement is satisfied because there is no indication that the Class Representatives, which include both TPPs and consumers, have interests antagonistic to those of the Settlement Class; they all seek to recover overcharges caused by Sandoz's alleged unlawful conduct. *See In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 50 (E.D. Pa. 2019), *aff'd sub nom. In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020) ("[T]he adequacy inquiry focuses primarily on whether the class representatives have conflicts of interest with the putative class members"). Furthermore, the experience and qualifications of EPP Settlement Class Counsel are detailed in the Amended Motion for Appointment of Lead Counsel and Class Counsel for the End-Payer Purchaser Classes that was recently filed in connection with class certification briefing. 16-CB-27242 (EPP *Clobetasol* cases), ECF 241; 16-CM-27242 (EPP *Clomipramine* cases), ECF 185. EPP Settlement Class Counsel is more than adequate.

### 2.      The Requirements of Rule 23(b)(3) Are Likely to be Satisfied

If a proposed class satisfies Rule 23(a), a class is eligible to be certified under Rule 23(b)(3) if the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, questions of law and fact common to the EPP Settlement Class predominate over any individualized questions, and a class action is the superior method of adjudicating the controversy.

*First*, predominance is "readily met" in cases such as these alleging violations of antitrust law. *Amchem Prod.,* 521 U.S. at 625; *see also Blood Reagents*, 2015 WL 6123211, at *28 ("In

horizontal price-fixing cases, courts routinely hold that common proof predominates in determining whether an unlawful conspiracy existed."). Trials in cartel cases *necessarily* focus on a core set of common questions as to defendants' liability and the effect of their conduct. These types of class-wide questions have repeatedly been found to satisfy Rule 23(b)(3) in antitrust cases like this one. *See e.g.*, *In re Warfarin*, 391 F.3d at 528 (finding that predominance requirement was met since proof of liability for a defendant's conduct under § 2 of the Sherman Act "depends on the conduct of [the defendant] . . . it does not depend on the conduct of individual class members.") (citing *In re Flat Glass Antitrust Litig*., 191 F.R.D. 472, 483–84 (W.D. Pa. 1999) (noting that the predominance test is met in an antitrust case because "consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members"); *In re Fasteners Antitrust Litig*., No. 08-md-1912, 2014 WL 285076, at *7 (E.D. Pa. Jan. 24, 2014) ("[T]he same operative facts and legal arguments surrounding Defendants' conduct in conspiring to fix, raise, maintain, or stabilize prices of fasteners in the United States, apply to each class member.").

Predominance is even more readily satisfied in the settlement context, where there are no concerns about how EPPs' claims will play out at trial. *In re Ins. Brokerage Antitrust Litig*., 579 F.3d 241, 269 (3d Cir. 2009) ("[H]ere we are not as concerned with 'formulat[ing] some prediction' as to how this element of a Sherman Act violation would 'play out' at trial, 'for the proposal is that there be no trial,' and instead our inquiry into the element of antitrust injury is solely for the purpose of ensuring that issues common to the class predominate over individual ones.") (quoting *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 311 (3d Cir. 2008), as amended (Jan. 16, 2009)). In any event, here the evidence that would be presented at trial would consist mostly or exclusively of evidence common to the EPP Settlement Class as a whole,

including testimony, documents and data from Defendants' employees and files, and expert testimony based on that common evidence concerning Defendants' alleged unlawful conduct, its impact and if necessary, calculation of aggregate Class damages.

*Second*, class treatment is superior to other means of resolving these claims. *See, e.g.*, *In re Remeron End-Payor Antitrust Litig*, 2005 WL 2230314, at \*12 ("In this very expensive litigation involving hundreds of thousands [of] documents, it would not have been economically feasible for many plaintiffs to seek individual redress."); *see also Warfarin Sodium*, 391 F.3d at 534 (finding superiority requirement satisfied for settlement purposes in class action brought by end purchasers). This is especially true given that this case has progressed for more than eight years with substantial motion practice and fact discovery completed. Having this matter resolved as a class action is far superior and more manageable than having it start all over again on behalf of individual class members.

## IV.    THE COURT SHOULD APPOINT THE PLAINTIFFS AND THEIR COUNSEL AS CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

As noted above, the proposed EPP Class Representatives are adequate and have assisted Counsel with the prosecution of this litigation for more than eight years. Liebenberg Decl. ¶ 13. They should be appointed Class Representatives of the Settlement Class.

With respect to Counsel, Rule 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states "[i]n appointing class counsel, the court (A) must consider: [i] the work counsel has done in identifying or investigating potential claims in the action; [ii] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [iii] counsel's knowledge of the applicable law; and [iv] the resources that counsel will commit to representing the class." All factors weigh in favor of appointing Roberta D. Liebenberg and the law firm of Fine, Kaplan

and Black, R.P.C. as Lead Counsel for the Settlement Class. In 2016, the Court appointed Ms.

Liebenberg as Interim Lead Counsel for the End-Payer Plaintiffs. MDL Doc. 84. Since that time,

Ms. Liebenberg and her co-counsel have vigorously prosecuted this action, including devoting

the resources necessary to obtain the best possible result.

## V.      THE COURT SHOULD APPOINT HUNTINGTON BANK AS THE ESCROW AGENT

Pursuant to the Settlement Agreement, on December 24, 2024, Sandoz deposited the

Settlement Amount into an escrow account held and administered by Huntington Bank.

Settlement Agreement ¶ II.A. Subject to Court approval, the Parties agree that Huntington Bank

should serve as the Escrow Agent for the escrow account. *Id.* ¶ VIII.A. Huntington Bank is well

qualified to serve as the escrow agent, having served in that role in this MDL and many other

class actions. *See, e.g.,* Order Regarding DPPs' Sandoz Settlement, ¶ 14 (MDL Doc. 3021);

Order Regarding EPPs' Heritage Settlement ¶ 7 (MDL Doc. 3020); Order Regarding DPPs'

Heritage Settlement, ¶ 14 (MDL Doc. 2843).

## VI.     THE FORM AND MANNER OF NOTICE SHOULD BE APPROVED

When, as here, "a class [is] certified under Rule 23(b)(3), 'the court must direct to class

members the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort.'" *In re Nat'l Football League

Players Concussion Inj. Litig.*, 821 F.3d at 435 (quoting Fed. R. Civ. P. 23(c)(2)(B)). Due

process also requires that the notice "enable class members to make informed decisions on

whether they should take steps to protect their rights, including objecting to the settlement or,

when relevant, opting out of the class." *Id.* (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d

163, 180 (3d Cir.2013) (internal quotation marks omitted). Thus, the Court must evaluate both

the form and manner of notice.

A.       **The Form of Notice Complies with Rule 23 and due process**

Pursuant to Fed. R. Civ. P. 23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

The proposed notices satisfy these requirements.

The Long-Form Notice (Ex. 1 hereto) and Summary Notice (Ex. 2 hereto) to TPPs and Consumers, the Postcard Notice to TPPs (Ex. 3 hereto), and the E-mail Notice to TPPs (which will be similar in content and format to the Postcard Notice to TPPs, *see* A.B. Data Decl. ¶ 28) comply with all requirements of Federal Rule of Civil Procedure 23(c)(2)(B)(i)-(vii). *See* A.B. Data Decl. ¶ 39; Notice Plan at 16. In addition, the Notices incorporate the formatting and content guidelines of the Federal Judicial Center ("FJC"). A.B. Data Decl. ¶ 38; Notice Plan at 16 (reviewing the notices for compliance with the FJC's "Judges' Class Action Notice and Claims Process Checklist," available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf (the "FJC Guidelines")). The notices use plain, concise, and neutral language and have attention-grabbing headlines in bold font that convey what the notices are about and who is included. They plainly describe the Settlement Class and tell class members how to obtain and review the complete DAI list. They prominently feature the case-specific website,

www.GenericDrugsEndPayerSettlement.com (the "EPP Settlement Website") and the toll-free

information line, and they encourage readers to review the Settlement Agreements and additional

material posted on the website.

In addition, the Postcard Notice and Summary Notice adequately serve "the purpose of

the . . . Summary Notice [which] is not to provide exhaustive information, but to alert Class

Members to the suit and direct them to more detailed information." *In re Nat'l Football League

Players' Concussion Inj. Litig*., 307 F.R.D. at 384. The Long-Form Notice, meanwhile, provides

more detailed information, including how to object or request exclusion.[8]

The forms of notice therefore satisfy the requirements of Rule 23 and due process and

should be approved. They are drafted using plain language and an attention-grabbing format that

is similar to those used to notify consumers and TPPs in other antitrust cases in this District and

elsewhere. *See, e.g., In re Remicade Antitrust Litig*., 2023 WL 2530418, at *14 (finding long-

form, summary and postcard notice adequate); *In re Remicade Antitrust Litig.*, ECF No. 195-5

---

[8] To make a valid request for exclusion, a Settlement Class Member must mail or e-mail a letter on or before the opt-out deadline to a designated P.O. Box or e-mail address that will be managed by the Notice Administrator. *See* Long-Form Notice, Question 7; A.B. Data Decl. ¶ 41. The letter must contain (i) the class member's name, postal address, e-mail address (if available), telephone number and, for entities (non-natural-person class members), their Internal Revenue Service Employer Identification Number; (ii) for entities, the name, title and signature of the representative of the entity requesting exclusion; (iii) the name of the case; and (iv) a signed statement that the person or entity is a member of the Settlement Class and wishes to be excluded from the Settlement Class. *Id.* Self-insured entities seeking exclusion for their prescription drug plans must state the names of the plans with specificity. *Id.* An entity seeking to exclude claims that it has been assigned must submit documentation showing the assignment and the authority to exclude the assigned claims. *Id.* Entities seeking to exclude another person or entity, *e.g.*, an insurer seeking to exclude its Administrative Services Only ("ASO") clients, must identify those persons or entities with specificity and must submit a declaration from each Settlement Class Member authorizing the exclusion. *Id.* The Long-Form Notice alerts readers that any Settlement Class Member that does not submit a valid request for exclusion providing all necessary information will continue to be a Settlement Class Member and bound by all Court Orders in the case between EPPs and Sandoz and by the terms of the Settlement Agreement if the Court grants final approval. *Id.*

(notice exemplars); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99-100 (E.D. Pa. 2013)

(finding long-form, summary and postcard notice reasonable); *In re Flonase Antitrust Litig.*, No.

08-3301, ECF No. 570 at 15-42, 57-58 (notice exemplars).[9]

### B.    The Proposed Manner of Notice Complies with Rule 23 and Due Process

The best notice practicable is notice that meets the requirements of Rule 23 and is also

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *In re Nat'l Football*

*League Players Concussion Inj. Litig.*, 821 F.3d at 435 (internal quotation marks omitted)

(quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Notice may be

provided by "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P.

23(c)(2)(B). "[E]very class member [need not] receive actual notice so long as the court

reasonably selected a means likely to apprise interested parties." *In re Prudential Ins. Co. of Am.*

*Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) (collecting cases). *Accord In re:*

*Imprelis Herbicide Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 11-MD-2284, 2015 WL

7575910, at *4 (E.D. Pa. Nov. 25, 2015).

<u>*Manner of Notice to TPPs.*</u> Under these circumstances, the best, most cost-effective, and

reasonable way to notify TPPs is (i) direct notice by first-class United States mail of the Postcard

Notice (Ex. 3 hereto) to the approximately 42,000 entities in A.B. Data's proprietary database,

---

[9] *See also* A.B. Data Decl. ¶¶ 5, 27, 30; *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-MD-2819 (E.D.N.Y. Mar. 23, 2021), ECF No. 716 at 4-5 (approving forms of notice), ECF No. 715-1 (long form notice), ECF No. 715-2 (summary notice), ECF No. 715-3 (postcard notice); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2024 WL 1683640, at *1 (N.D. Cal. Apr. 17, 2024) (finding that forms of notice satisfied due process); *In re Xyrem*, No. 20-2966, ECF No. 547 at 6-35 (forms of notice); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521 (N.D. Cal June 13, 2017), ECF No. 751 (approving notice plan), ECF 741 (forms of notice).

which includes TPPs, pharmacy benefit managers ("PBMs"), and third-party administrators ("TPAs"), *see* A.B. Data Decl. ¶ 23, and (ii) direct notice by email of a nearly identical notice to the approximately 1,500 entities in the A.B. Data database with available, valid email addresses, *id.* ¶ 28. *See* MANUAL FOR COMPLEX LITIGATION (4th ed.) § 21.311 ("Rule 23(c)(2)(B) requires that individual notice in 23(b)(3) actions be given to class members who can be identified through reasonable effort. . . . When the names and addresses of most class members are known, notice by mail is usually preferred."). Notice that is disseminated to the entities in the A.B. Data database typically results in notice reaching thousands of additional TPPs not listed in the database because notice is often forwarded by PBMs, TPAs, and other organizations that provide administrative services, who have a history of advising their clients of the pendency of class actions. *See* Expert Declaration of Eric J. Miller, executed November 1, 2023, 16-CB-27242, ECF 239-3 ¶ 9; 16-CM-27242, ECF 183-3 ¶ 9.

The proposed TPP Notice Plan supplements direct notice with a 30-day digital advertising campaign that posts banner ads substantially similar to the Exemplar Banner Ad to TPPs (Ex. 4 hereto) on strategically selected websites that are frequented by those who specialize in employee benefits or work in the health insurance industry. A.B. Data Decl. ¶¶ 29-31; Notice Plan at 15. The Notice Administrator will also distribute a nationwide news release regarding the Settlement via *PR Newswire* and via A.B. Data's accounts on X (formerly known as Twitter), which are followed by thousands of media outlets, journalists, and others. A.B. Data Decl. ¶¶ 32-33; Notice Plan at 15. The notices and advertisements will direct readers to the EPP Settlement Website, on which the Long-Form Notice will be prominently featured. A.B. Data Decl. ¶¶ 36-37. The EPP Settlement Website will also highlight important dates (*e.g.*, opt-out and objection deadlines, date of Final Fairness Hearing), documents that will further inform Settlement Class

Members about the Settlement and whether to object or opt-out (*e.g.*, the Settlement Agreement, settlement-related filings and Court Orders), and an online form that will allow potential TPP Settlement Class Members to register to receive updates about the litigation, including when claim forms become available. *Id.* ¶ 36.

      *Manner of Notice to Consumers*. Because Consumer Settlement Class Members' direct mail and email contact information are not readily available to EPPs or Sandoz, publication is the best practicable manner of delivering notice to Consumers. *See Warfarin Sodium*, 391 F.3d at 536-37 (affirming that publication-only notice to consumers satisfied Rule 23 and due process because "neither the plaintiffs nor [defendant] had access to the names and addresses of the multitude of people nationwide who purchased Coumadin").

      EPPs' proposed Consumer Notice Plan will publish notice by:

      (i) Issuing a national press release via *PR Newswire*'s US1 National and Multicultural newswires, A.B. Data Decl. ¶ 32-33; Notice Plan at 15;

      (ii) Undertaking an extensive 30-day social media advertising campaign that will include targeted banner ads (exemplar at Exhibit 5 hereto), in English and Spanish, and a mix of digital, social media and search engine advertising platforms, *e.g.*, Google Display Network, Google AdWords,[10] Facebook, Instagram, YouTube, estimated at delivering 284,400,000 impressions, A.B. Data Decl. ¶¶ 11-19; Notice Plan at 11-14. Throughout the course of the digital media ad campaign, the

---

[10] Google AdWords is a keyword search sponsorship service. Under the proposed Consumer Notice Plan, A.B. Data will acquire a sponsored search listing on Google, the most highly visited search engine. A.B. Data Decl. ¶ 19. A.B. Data will then supply a list of key phrases to Google ("*e.g.*,  "Generic Drugs lawsuit," "Generic Drugs class action," "Generic Drug Settlement") so that when those phrases are entered in a Google search engine, a link to the Settlement Website will appear in the search results. *Id.*

advertisements and their online placement will be optimized to maximize the

campaign's efficiency and effectiveness, A.B. Data Decl. ¶ 14; Notice Plan at 14;

(iii) Establishing a case-specific Facebook page that will serve as a landing page for

Facebook and Instagram users to obtain information regarding the case and the

Settlement, A.B. Data Decl. ¶ 18; Notice Plan at 12;

(iii) Publishing a print advertisement in *People* magazine, a leading consumer

magazine in the United States, A.B. Data Decl. ¶ 21; Notice Plan at 14;

(iv) Posting the Summary and Long-Form Notices in Spanish and English on the EPP

Settlement Website, A.B. Data Decl. ¶¶ 37, 40;

(v) Mailing the Long-Form Notice upon request, *id.* ¶ 37;

(vii) Providing a toll-free number for assistance, *id.* ¶ 37; and

(viii) Providing an opportunity to register online or through the information number

for updates regarding the Settlement, *id.* ¶ 36.

The Consumer Notice Plan has been designed with the expertise of A.B. Data to reach

the target audience of generic drug users with the forms of media that they are most likely to

consume. *Id.* ¶¶ 3-15. In drafting the Notice Plan, A.B. Data reviewed the DAIs and common

medical conditions for which they are prescribed. Notice Plan at 3. It then analyzed demographic

data from the MRI Simmons Survey of the American Consumer, the largest, most

comprehensive and reliable consumer and media usage database, to understand the likely

demographics of the Settlement Class. *Id.* at 4. Based on its analysis of demographics,

geography, and media usage, A.B. Data concluded that print and targeted digital and social

media would be the most cost-effective means of providing notice to potential members of the

Settlement Class. *Id.* at 9. The digital media portion of the Consumer Notice Plan, which

includes banner ads on Facebook, a dedicated Facebook page, the use of Google AdWords, and apps that use Google Display Networks, *id.* at 11-12, takes into account that over 97% of generic drug users have used the internet during the past 30 days, *id.* at 9, and that Google and Facebook are the top internet sites that are visited by generic drug users, *id.* at 10-11. In addition, A.B. Data's in-house digital and social media team will monitor the digital notice program throughout its course in order to optimize the number of times the Consumer Banner Ad are viewed by potential Settlement Class Members. *Id.* at 14. Meanwhile, the print portion of the Consumer Notice Plan is designed to reach generic drug users who are not among the 97% who use the internet. In order to reach that segment, the Summary Notice will be published in *People* magazine, a leading publication in the United States and one of the top magazines read by generic drug users. *Id.* at 14. These efforts will be further bolstered by the distribution of a *PR Newswire* news release which will reach journalists and news organizations nationwide, including Hispanic, Asian, and other ethnic-focused outlets, via television, ratio, newspapers, magazines. *Id.* at 15.

The proposed TPP and Consumer Notice Plan uses a strategic and contemporary multimedia approach that will have an estimated minimum reach of 81% of potential EPP Sandoz Settlement Class Members. A.B. Data Decl. ¶ 42; Notice Plan at 16. Thus, under "an objective determination of the adequacy of a proposed notice effort," namely "whether all the notice efforts together will reach a high percentage of the class," the Notice Plan satisfies Rule 23. FJC Guidelines at 3 (stating that a reach between 70-95% is reasonable).

Because it satisfies the standards of Rule 23 and due process, the proposed manner of notice should be approved, as courts have done in similar pharmaceutical antitrust end-payer class actions. *See, e.g., In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 536 (3d Cir. 2004)

(affirming that "[notice] requirement was satisfied by publishing summary notice in publications likely to be read by consumer claimants along with a call-center and a website with information and downloadable forms"); *In re Flonase Antitrust Litig.*, 291 F.R.D. at 99 (approved notice plan consisted of direct notice postcard mailing to TPPs, and publication via newspapers, a 30-day targeted internet banner ad campaign, and "publications that were specifically selected to reach the age and gender targets most representative of Flonase users"). *See also* A.B. Data Decl. ¶ 5 (collecting cases).

### C.    A.B. Data Is Well-Qualified to Serve as the Notice Administrator

EPPs propose that A.B. Data serve as the Notice Administrator. A.B. Data has decades of experience as a full-service class action notice administrator, providing services for a broad range of class actions. A.B. Data Decl. ¶ 3; *id.,* Ex. B. The Court is already familiar with A.B. Data's experience, skill and efficiency in administering notice to the DPP Settlement Class in this litigation. *In re Generic Pharms.*, 2023 WL 2466622, at *2 & n.20 (finding that A.B. Data's notice administration of the Sun and Taro Settlements with DPPs complied with Court's Order and satisfied Rule 23); *In re Generic Pharms.,* 2024 WL 4508950, at *3 & n.22 (E.D. Pa. Oct. 15, 2024) (same as to the Heritage, Apotex and Breckenridge Settlements with DPPs). A.B. Data's record of success in this and hundreds of other cases – including high-volume consumer, antitrust and insurance class actions – makes it an appropriate notice administrator here. *Id*. ¶ 3. Notably, A.B. Data has administered notice in dozens of pharmaceutical end-payer class actions with class definitions similar to the one here. *See, e.g., id.* ¶ 5. Accordingly, A.B. Data should be appointed as the Notice Administrator.

## VII.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

"In the Third Circuit, '[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. 17-cv-341, 2022 WL 16533571, at *8 (E.D. Pa. Oct. 28, 2022) (quoting *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Remicade Antitrust Litig.*, 2022 WL 3042766, at *11 (quoting *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 752 (E.D. Pa. 2013) (internal quotation marks omitted)).

EPPs' proposed Plan of Allocation (Exhibit 6 hereto) will allocate the $275,000,000 Settlement Amount received from Sandoz, plus any interest earned on the settlement funds, net of notice and administration expenses, any funds returned to Sandoz as a result of opt-outs, and any Court-approved attorneys' fees, litigation expenses, and service awards (the "Net Sandoz Settlement Fund") ratably among Settlement Class Members who submit timely, valid claims. Plan of Allocation ¶¶ I.A.4, I.A.6, I.A.9, I.D.1. The allocation will be *pro rata*, based on Settlement Class Members' expenditures on Drugs at Issue during the relevant time period.[11] *Id.*

---

[11] Information on expenditures will be collected using claim forms that are described in the allocation plan. *See* Plan of Allocation ¶¶ I.B.1-6. The consumer claim form will require consumers to indicate which DAIs they purchased during the relevant time period and the estimated total dollar amount spent on each DAI, and to submit proof of at least one purchase of each DAI. To guard against fraud, the form will state that consumers must retain all documentation supporting their estimated dollar amounts and may be asked to submit that documentation at a later date. The TPP claim form will require TPPs to submit complete DAI purchase data for the relevant time period. Both forms will have specific instructions for authorized agents (*e.g.*, ASOs, claim aggregators, attorneys) that are submitting claims on behalf of one or more Settlement Class Members. The claim forms and instructions will be "clear, fair,

¶ I.D.1. Specifically, each eligible claimant will receive a percentage of the fund that is equal to the dollar amount the claimant spent on DAIs, divided by the total dollar amount that all eligible claimants spent on DAIs. *Id.* ¶ I.D.2.

Courts within the Third Circuit and elsewhere have approved *pro rata* distributions such as this and have regularly held that they are reasonable and constitute equitable treatment among class members in end-payer antitrust pharmaceutical cases. *See In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *30 (granting final approval of allocation plan); *In re Remicade Antitrust Litig.*, No. 17-CV-04326, ECF No. 202-1 ¶ 8 (allocating settlement fund *pro rata* to class of pharmaceutical end-payers that included TPPs and consumers, adjusted by state of purchase); *Mylan Pharma., Inc. v. Warner Chilcott Pub. Ltd. Co*., No. 12-cv-3824, 2015 WL 12791433, at *6 (E.D. Pa. Jan. 28, 2015) (allocating settlement fund *pro rata* to class of pharmaceutical end-payers that included TPPs and consumers); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, No. 09-2067-NMG, 2014 WL 4446464, at *3 (D. Mass. Sept. 8, 2014) (allocating settlement fund *pro rata* to class of pharmaceutical end-payers that included TPPs and consumers, adjusted by product and date of purchase); *In re Flonase Antitrust Litig*., 291 F.R.D. 93, 107 (E.D. Pa. 2013) (granting final approval of allocation plan); *In re Flonase Antitrust Litig.*, No. 08-3301, Plan of Allocation, ECF No. 566 at 232-33 (E.D. Pa. Dec. 14, 2012) (allocating settlement fund *pro rata* to class of pharmaceutical end-payers that included TPPs and consumers).

Because EPPs' proposed *pro rata* allocation is based upon the dollars that each eligible claimant spent, it is a good approximation of the damages suffered by each claimant because,

---

and reasonable" and similar to those used in other pharmaceutical indirect purchaser litigation. *See In re Flonase Antitrust Litig*., 291 F.R.D. 93, 107 (E.D. Pa. 2013) (approving forms); *In re Flonase Antitrust Litig.*, No. 08-3301, ECF No. 570 at 43-55 (claim forms requiring similar information).

typically, the more expensive the drug, the greater the overcharge. In addition, an allocation of the Net Sandoz Settlement Fund across all claimants is consistent with the theory of injury pursued throughout this litigation: that both consumers and TPPs have paid supra-competitive prices on the DAIs as a result of Defendants' anticompetitive conduct. Cash-paying (*e.g.*, uninsured) consumers pay the entirety of the purchase price and experience the full amount of any overcharge, while in insured transactions, the purchase price is divided between the TPP and the consumer based upon insurance plan provisions that set co-pay, deductible, and/or co-insurance amounts. The most efficient and equitable way to allocate the recovery is to base it on the total out-of-pocket, unreimbursed expenditure made by each Settlement Class Member for purchases falling within the class definition. By treating all Settlement Class Members, including consumers and TPPs, equivalently, and having every class member share ratably in the Settlement Fund, the Plan of Allocation avoids the extra step of creating separate pools for consumers and TPPs through expert analysis, negotiation or otherwise, and eliminates the risk that one group or the other will attain a smaller ratable recovery because of differing rates of claim filing or because the division into separate pools turned out to be inaccurate. In short, by directly addressing the unreimbursed expenditures of each claimant, the Plan of Allocation reaches an equitable result for each claimant.

As such, the Plan of Allocation "reimburses class members based on the type and extent of their injuries" and should be deemed fair, reasonable, and adequate. *In re Remicade Antitrust Litig.*, 2022 WL 3042766, at *11 (internal quotation marks and citation omitted).

## VIII.  A FINAL APPROVAL HEARING SHOULD BE SCHEDULED AND THE CASE AGAINST SANDOZ SHOULD BE STAYED

As set forth in the proposed order, EPPs propose the following schedule for completing the Settlement approval process:

- Within 10 days from the date of filing for preliminary approval, Sandoz shall serve notice pursuant to the Class Action Fairness Act of 2005 ("CAFA");

- Within 45 days from the date the preliminary approval Order is entered, the Notice Administrator will disseminate the TPP Postcard Notice via first-class mail, as set forth in the Notice Plan.

- Within 45 days from the date the preliminary approval Order is entered, the Notice Administrator will begin digital publication notice and distribution of the notice via *PR Newswire*, where digital publication notice will last for 30 days, as set forth in the Notice Plan.

- Within 45 days from the date the preliminary approval Order is entered, the Notice Administrator will complete print publication notice, as set forth in the Notice Plan.

- Within 30 days of the date on which notice commences, Settlement Class Counsel will file a motion for attorneys' fees, reimbursement of litigation expenses, and service awards;

- Within 60 days of the date on which notice commences, Settlement Class members may request exclusion from the Class or object to the Settlement, the Plan of Allocation, or the request for attorneys' fees, expenses and service awards;

- Within 30 days from the deadline for members of the Settlement Class to request exclusion, any Party or Parties wishing to dispute an exclusion request shall file a Motion requesting resolution of any such disputes. Responses are to be filed within 15 days and Replies to be filed within 15 days thereafter;

- Within 60 days following the deadline for members of the Settlement Class to request exclusion from the Settlement Class or object to the Settlement and/or request for

36

fees, expenses and service awards, Class Counsel will file a motion seeking final

approval of the Settlement and Plan of Allocation, and will respond to any objections

to the Settlement, the Plan of Allocation, or the request for attorneys' fees, expenses,

and service awards, and will also submit a list of Settlement Class Members who

have asked to be excluded from the Settlement Class; and

- On a date to be set by the Court, the Court will hold a final Fairness Hearing. EPPs

  respectfully request that the Court schedule the final fairness hearing so that it occurs

  during the week of July 28, 2025. This aligns with the dates proposed above and

  would allow EPPs and Sandoz to know, prior to trial of the bellwether cases, whether

  the Settlement has the Court's final approval.

This schedule is fair to potential members of the Settlement Class, giving them ample

time for consideration of the Settlement before the deadline for objecting to or requesting

exclusion from the Settlement. Courts considering settlements in antitrust class action litigation

routinely approve time periods of 35-75 days (measured from the commencement of the Notice

Period) for class members to object or opt out. *See, e.g., King Drug Co. of Florence, Inc. v.

Cephalon, Inc.*, No. 2:06-cv-01797, ECF No. 831 ¶ 15 (E.D. Pa. July 27, 2015) (66 days); *In re

Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *19  (75 days); *In re Pork Antitrust

Litig.*, No. 18-cv-1776, 2023 WL 5499864, at *3 (D. Minn. Aug. 25, 2023) (60 days); *In re Eur.

Gov't Bonds Antitrust Litig.*, No. 19-cv-2601, 2023 WL 3486612, at *4 (S.D.N.Y. May 16, 2023)

(68 days); *In re Eur. Gov't Bonds Antitrust Litig.*, No. 19-cv-2601, 2023 WL 3479693, at *4

(S.D.N.Y. May 16, 2023) (68 days); *In re Intuniv Antitrust Litig.*, No. 1:16-cv-12653, ECF Nos.

400, 393 ¶ 4 (D. Mass. Jan. 10, 2020) (35 days); *In re Loestrin 24 FE Antitrust Litig.*, 1:13-md-

2472, ECF No. 1426 (D.R.I. Mar. 23, 2020) (35 days). In addition, the schedule allows the full

statutory period for Sandoz to serve notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 and allow regulators to advise the Court of their view of the Settlement, should they choose to do so.

## IX.    CONCLUSION

For the reasons set forth above, EPPs request that the Court grant their Motion and issue an Order (1) preliminarily approving the Sandoz Settlement as fair, reasonable and adequate for the EPP Settlement Class; (2) finding that the EPP Settlement Class is likely to be certified; (3) preliminarily designating the EPPs as Class Representatives for the EPP Settlement Class; (4) preliminarily appointing Roberta D. Liebenberg and the law firm of Fine, Kaplan and Black, R.P.C. as Lead Counsel for the Settlement Class; (5) approving Huntington Bank as the Escrow Agent; (6) approving the form and manner of notice of the Sandoz Settlement to the EPP Settlement Class; (7) appointing A.B. Data, Ltd. as the Notice Administrator; (8) preliminarily approving the proposed Plan of Allocation; (9) staying litigation between EPPs and Sandoz until the Court grants final approval of the Settlement; (10) ordering Sandoz to comply with the provisions of the Class Action Fairness Act, 28 U.S.C. § 1715; (11) scheduling a final fairness hearing for the EPP Sandoz Settlement; and (12) ordering the deadlines set forth in EPPs' proposed schedule.

Dated: February 14, 2025                Respectfully submitted,

                                        /s/ Roberta D. Liebenberg
                                        Roberta D. Liebenberg
                                        FINE, KAPLAN AND BLACK, R.P.C.
                                        One South Broad Street, 23rd Floor
                                        Philadelphia, PA 19107
                                        Telephone: (215) 567-6565
                                        rliebenberg@finekaplan.com
                                        Lead and Liaison Counsel for End-Payer
                                        Plaintiffs

# EXHIBIT 1

<u>IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA</u>

# If you purchased, paid for, and/or provided reimbursement for some or all of the price of one or more of the Named Generic Drugs listed in Appendix A to this Notice at any time from May 1, 2009 until December 31, 2019, you could get a payment from a class action settlement.

*A federal court authorized this notice. This is <u>not</u> a solicitation from a lawyer.*

PLEASE READ THIS ENTIRE NOTICE CAREFULLY. YOUR RIGHTS MAY BE AFFECTED BY THE PROCEEDINGS IN THIS ACTION WHETHER YOU ACT OR DO NOT ACT. THIS NOTICE ADVISES YOU OF YOUR RIGHTS AND OPTIONS WITH RESPECT TO THIS LITIGATION.

**Para conseguir una notificación en español, llame a 1-XXX-XXX-XXXX o visite el sitio web: [www.GenericDrugsEndPayerSettlement.com](http://www.GenericDrugsEndPayerSettlement.com)**

This is to provide notice of the preliminary approval of a proposed $275,000,000 Settlement with Defendants Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Sandoz") in a Lawsuit brought by <u>Consumers and Third-Party Payers ("TPPs")</u> who were End-Payers ("End-Payer Plaintiffs" or "EPPs") of the generic drugs listed in Appendix A at the end of this notice (the "Named Generic Drugs"). The Lawsuit is a group of class actions coordinated under the civil docket *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 in the United States District Court for the Eastern District of Pennsylvania. The Lawsuit claims that generic drug manufacturers, including Sandoz, violated federal and state antitrust laws, consumer protection statutes, and common law, harming competition and causing the End-Payer Settlement Class to overpay for the Named Generic Drugs. Sandoz denies liability. The Court has not decided who is right. No trial has been held.

<u>The proposed settlement does not resolve any of the claims of the Settlement Class against the remaining Defendants and the Lawsuit against those Non-Settling Defendants is ongoing.</u>

- The Court has preliminarily certified an EPP Sandoz Settlement Class (the "Settlement Class"), for settlement purposes only. The class is defined as:

  All persons and entities in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands, that indirectly purchased, paid and/or provided reimbursement for some or all of the

purchase price for any Named Generic Drugs, other than for resale, from May 1, 2009 to December 31, 2019.

Excluded from the EPP Sandoz Settlement Class are (a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal governmental entities; (c) all state governmental entities (except for cities, towns, municipalities, counties and other local governmental entities with self-funded prescription drug plans, all of which are included in the class); (d) all governmental Medicaid agencies, private Medicaid managed care organizations, and consumers who were covered by Medicaid for their purchases of Named Generic Drugs; and (e) Judges assigned to this case and any members of their immediate families. For the avoidance of doubt, the class does not include (i) persons or entities who only purchased Named Generic Drugs for purposes of resale or directly from Defendants; (ii) fully insured employers to the extent that they use fully-insured plans (*i.e.*, employers that purchased insurance covering 100% of their reimbursement obligation to members); and (iii) pharmacy benefit managers.

Where a putative class member has purchases that meet the definition of the Settlement Class, but also has purchases that fall within one or more of the exclusions above, that putative class member is included in the Settlement Class only with respect to those purchases that meet the definition of the Settlement Class.

- The proposed Settlement provides that Sandoz will pay $275,000,000 for the benefit of Consumers and TPPs. The Sandoz settlement fund may be reduced under certain circumstances as explained in the Settlement Agreement. As discussed below, the costs of administering the fund and providing notice of the Settlement may be deducted from the fund; and attorneys' fees, expenses and service awards may be deducted from the fund with Court approval.

- Money will be distributed if and after the Court approves the Settlement, likely in conjunction with the proceeds of other settlements, upon Court Order and pursuant to a Court-approved plan for allocating the Sandoz settlement fund to Settlement Class Members (the "Plan of Allocation"). The proposed Plan of Allocation is posted on the website **www.GenericDrugsEndPayerSettlement.com** (the "EPP Settlement Website" or "Settlement Website").

- The Court has scheduled a hearing (the "Final Fairness Hearing") to decide whether to approve the Settlement, the Plan of Allocation, and any requests by EPPs' attorneys for reimbursement of expenses out of the settlement fund. The Final Fairness Hearing is scheduled for [[**DATE & TIME**]], before Judge Cynthia M. Rufe at the United States District Court for the Eastern District of Pennsylvania, Courtroom 12-A, 601 Market Street, Philadelphia, PA 19106.

- You do not need to attend the hearing. If you wish to appear at the hearing, you must file a "Notice of Intention to Appear" with the Court and you may (but are not required to) hire your own attorney to appear in court for you at your own expense. Your Notice must be received by [[**OBJECTION DEADLINE**]].

- The deadlines in this notice, and the date and time of the hearing, may be amended by Court Order. Check the Settlement Website for updates. You may also register on the Settlement

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | You do not need to do anything now to retain your right to stay in the Settlement Class and/or seek a share of the proposed Settlement.<br><br>You may register on the Settlement Website for settlement-related updates. Then, if the Court decides to give the proposed Settlement final approval, you will be notified by email or mail when a claim form becomes available. Once a claim form is available, you will be able to obtain it from the Settlement Website or by calling [[TOLL-FREE NUMBER]]. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** | You may choose to exclude yourself, or "opt out," from the Settlement Class. If you decide to exclude yourself, you will not be bound by any future decision in this Lawsuit relating to Sandoz. This is the only option that allows you to ever be part of any lawsuit (other than this Lawsuit) against Sandoz relating to the legal claims against Sandoz in this case.<br><br>You will not receive a payment from the Settlement if you elect to exclude yourself. Details on how to submit a valid request for exclusion are explained below. Requests for exclusion must be **postmarked** by [[OPT-OUT DEADLINE]]. |
| **STAY IN THE LAWSUIT BUT OBJECT TO THE SETTLEMENT** | If you wish to object to all or any part of the proposed Settlement, you may write to the Court about why you do not like the proposed Settlement. Details on how to submit an objection are explained below. Objections must be **received** by the Court by [[OBJECTION DEADLINE]].<br><br>If you wish to attend and speak at the Final Fairness Hearing about your objection, then you must notify the Court that you wish to attend by filing a Notice of Intention to Appear by [[DEADLINE]] (*see* instructions below). |
| **GET MORE INFORMATION** | If you would like to obtain more information about the Lawsuit or the Settlement, you can review the materials on www.GenericDrugsEndPayerSettlement.com, call [[TOLL-FREE NUMBER]], send questions to the Notice Administrator at [[email address]], and/or attend the Final Fairness Hearing. |

Website to receive updates by mail or email.

THESE RIGHTS AND OPTIONS – AND THE DEADLINES TO EXERCISE THEM – ARE
EXPLAINED IN THIS NOTICE.

## TABLE OF CONTENTS

| WHAT THIS NOTICE CONTAINS |
| --- |

**BASIC INFORMATION** ..................................................................... **PAGE 5**

    1.  Why did I receive notice?

    2.  What is this lawsuit about?

    3.  What is a class action?

    4.  Who are the Defendants in this lawsuit?

    5.  Why is there a Settlement?

**WHO IS IN THE SETTLEMENT CLASS AND SETTLEMENT**......................... **PAGE 7**

    6.  Am I part of the Settlement Class and the Settlement?

    7.  Can I request to be excluded from the Settlement Class?

    8.  What is the legal significance of excluding myself?

    9.  If I don't exclude myself, can I sue Sandoz later?

    10. What happens if I do nothing?

**THE SETTLEMENT'S BENEFITS** ....................................................... **PAGE 11**

    11. What does the Settlement provide?

    12. What claims am I settling?

    13. How can I get a payment from the Settlement?

    14. How much will my payment be?

    15. When would I get my payment?

**THE LAWYERS REPRESENTING THE SETTLEMENT CLASS** ................. **PAGE 12**

    16. Do I have a lawyer in this case?

    17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................................. **PAGE 13**

    18. If I don't like the Settlement, how do I tell the Court?

**THE COURT'S FAIRNESS HEARING** ................................................ **PAGE 14**

    19. When will the Court decide whether to approve the Settlement?

    20. Do I have to attend the hearing?

    21. May I speak at the hearing?

QUESTIONS? CALL [[TOLL-FREE-NUMBER]] OR VISIT www.GenericDrugsEndPayerSettlement.com

**GETTING MORE INFORMATION** ...................................................................    **PAGE 15**

      22. How do I get more information?

# BASIC INFORMATION

## 1. WHY DID I RECEIVE NOTICE?

A federal court authorized this Notice. You received notice because you may have purchased, paid for, and/or provided reimbursement for some or all of the purchase price of one or more Named Generic Drugs at some time from May 1, 2009 until December 31, 2019, and therefore you may be a member of the Settlement Class that was preliminarily certified by the Court. The Settlement Class consists of <u>Consumers</u> (*i.e.*, persons who purchased one or more of the Named Generic Drugs in a pharmacy or by mail-order prescription) and <u>Third-Party Payers</u> (*i.e.*, entities that paid for and/or reimbursed for some or all of the purchase price of one or more of the Named Generic Drugs for use by their members, employees, insureds, participants or beneficiaries). *See* Question 6 for the full class definition and details on who is excluded from the class. You may have received this Notice in error and so you should confirm from your own records that you paid for one or more Named Generic Drugs at some time from May 1, 2009 to December 31, 2019 and fall within the Settlement Class definition.

This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement, which is posted on the Settlement Website.

## 2. WHAT IS THIS LAWSUIT ABOUT?

The Lawsuit is a group of proposed class actions coordinated under the docket *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724. EPPs' class action complaints are available on the Settlement Website. Judge Cynthia M. Rufe, of the United States District Court for the Eastern District of Pennsylvania (the "Court"), is overseeing the Lawsuit and the Settlement.

The EPPs allege that Defendants engaged in an unlawful scheme or schemes to fix, maintain and stabilize prices, rig bids, and engage in market and customer allocation of the Named Generic Drugs in violation of federal and state antitrust laws, consumer protection statutes and common law. EPPs allege that Defendants' conduct harmed competition and caused Settlement Class Members to overpay for the Named Generic Drugs.

All Defendants, including Sandoz, deny that any Settlement Class Member is entitled to damages or other relief. All Defendants, including Sandoz, deny liability as to EPPs' claims. The Settlement between EPPs and Sandoz is not an admission of wrongdoing by any Defendant, including Sandoz.

Following investigation of relevant facts, substantial fact discovery, and arm's length negotiations with Sandoz, EPPs, on behalf of the Settlement Class, entered into the Settlement with Sandoz.

There has been no determination by the Court or a jury that the allegations against Sandoz or the other Defendants have been proven or that, if proven, the conduct caused harm to any Settlement Class Members. No trial has been held.

## 3. WHAT IS A CLASS ACTION?

In a class action, one or more people called "Class Representatives" sue on behalf of others who have similar claims.

The EPP Sandoz Settlement Class Representatives are 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; and United Food & Commercial Workers and Employers Arizona Health & Welfare Trust; Nina Diamond; Ottis McCrary; Valerie Velardi; and Robby Johnson.

The EPPs and those on whose behalf they have sued together constitute the "Settlement Class" or "Settlement Class Members." Their attorneys are called "Settlement Class Counsel."

In a class action lawsuit, one court resolves the issues for all Class Members, except for those who exclude themselves (*i.e.*, "opt out") from the Class. The Court, by Order dated [[DATE]], has preliminarily determined that the lawsuit between EPPs and Sandoz can proceed as a class action for purposes of determining whether to approve the Settlement. A copy of the Court's Order may be found on the Settlement Website.

Specifically, the Court has found that, for the purposes of this Settlement:

- The number of Settlement Class Members is so numerous that joining them all into one suit is impracticable;

- Members of the Settlement Class share common legal or factual issues relating to the claims in this case;

- The claims of EPPs are typical of the claims of Settlement Class Members;

- EPPs and Settlement Class Counsel are capable of fairly and adequately protecting the interests of the Settlement Class; and

- Common legal questions and facts predominate over questions affecting only individual members of the Settlement Class, and certification of the Settlement Class is superior to other available methods for the fair and efficient resolution of the claims of the Settlement Class Members.

## 4. WHO ARE THE DEFENDANTS IN THIS LAWSUIT?

The Defendants in this lawsuit are:

- Actavis Elizabeth, LLC
- Actavis Holdco U.S., Inc.
- Actavis Pharma Inc.

- Akorn Sales, Inc.
- Akorn, Inc.
- Alvogen, Inc.

- Amneal Pharmaceuticals, Inc.
- Amneal Pharmaceuticals, LLC
- Apotex Corp.
- Ascend Laboratories, LLC
- Aurobindo Pharma USA, Inc.
- Barr Pharmaceuticals, LLC
- Bausch Health Americas, Inc.
- Bausch Health US, LLC
- Breckenridge Pharmaceutical, Inc.
- Camber Pharmaceuticals, Inc.
- Citron Pharma, LLC
- Dava Pharmaceuticals, LLC
- Dr. Reddy's Laboratories, Inc.
- Epic Pharma, LLC
- Fougera Pharmaceuticals Inc.
- G&W Laboratories, Inc.
- Generics Bidco I, LLC
- Glenmark Pharmaceuticals Inc., USA
- Glenmark Pharmaceuticals, Inc.
- Greenstone LLC
- Heritage Pharmaceuticals, Inc.
- Hikma Labs, Inc.
- Hikma Pharmaceutical USA, Inc.
- Hi-Tech Pharmacal Co., Inc.
- Impax Laboratories, Inc.
- Impax Laboratories, LLC
- Jubilant Cadista Pharmaceuticals Inc.
- Lannett Company, Inc.
- Lupin Pharmaceuticals, Inc.
- Mallinckrodt Inc.
- Mayne Pharma Inc.
- Morton Grove Pharmaceuticals, Inc.
- Mutual Pharmaceutical Company, Inc.
- Mylan Pharmaceuticals, Inc.
- Mylan, Inc.
- Oceanside Pharmaceuticals, Inc.
- Par Pharmaceutical, Inc.
- Perrigo New York Inc.
- Pfizer, Inc.
- Pliva, Inc.
- Sandoz, Inc.
- Sun Pharmaceutical Industries, Inc.
- Taro Pharmaceuticals USA, Inc.
- Teligent, Inc.
- Teva Pharmaceuticals USA, Inc.
- Torrent Pharma Inc.
- Upsher-Smith Laboratories, LLC
- Versapharm Inc.
- West-Ward Columbus, Inc.
- West-Ward Pharmaceuticals Corp.
- Wockhardt USA LLC
- Zydus Pharmaceuticals (USA), Inc.

## 5. WHY IS THERE A SETTLEMENT?

The Court has not decided in favor of EPPs or Sandoz. Instead, both sides have agreed to the Settlement. EPPs and Sandoz were preparing to proceed with the litigation and eventually go to trial, but they have now agreed to the proposed Settlement. By agreeing to this Settlement, the parties avoid the costs and uncertainty of additional discovery, motion practice, and an eventual trial, and if the Settlement is approved by the Court, Settlement Class Members will be eligible to receive a payment from the Settlement. EPPs and Settlement Class Counsel believe that the proposed Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class.

# WHO IS IN THE SETTLEMENT CLASS AND SETTLEMENT

## 6. AM I PART OF THE SETTLEMENT CLASS AND THE SETTLEMENT?

For settlement purposes only, the Court preliminarily certified the EPP Sandoz Settlement Class on [[DATE]].

You may be an EPP Sandoz Settlement Class Member if:

You are in any of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico, and the U.S. Virgin Islands, and indirectly purchased, paid, and/or provided reimbursement for some or all of the purchase price for any Named Generic Drugs, other than for resale, from May 1, 2009 to December 31, 2019.

You are **NOT** a member of the EPP Sandoz Settlement Class if you are among any of the following:

a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates;

b) all federal governmental entities;

c) all state governmental entities (except for cities, towns, municipalities, counties and other local governmental entities with self-funded prescription drug plans, all of which are included in the class);

d) all governmental Medicaid agencies, private Medicaid managed care organizations, and consumers who were covered by Medicaid for their purchases of Named Generic Drugs;

e) Judges assigned to this case and any members of their immediate families;

f) persons or entities who only purchased Defendants' Named Generic Drugs for purposes of resale or directly from Defendants;

g) fully insured employers to the extent that they use fully-insured plans (*i.e.*, employers that purchased insurance covering 100% of their reimbursement obligation to members); or

h) pharmacy benefit managers.

If you made purchases that meet the definition of the Settlement Class, but also made purchases that fall within one or more of the exclusions above, you are included in the Settlement Class only with respect to those purchases that meet the definition of the Settlement Class.

The Named Generic Drugs are listed at the end of this Notice in Appendix A.

If you are not sure whether you are included in the Settlement Class, you may call [[TOLL-FREE NUMBER]], review the materials and information posted on the Settlement Website, or contact the attorney or law firm identified in Question 16 below. If you wish to exclude yourself from the Settlement Class, please refer to Question 7.

## 7. CAN I REQUEST TO BE EXCLUDED FROM THE SETTLEMENT CLASS?

Yes, the Court has set [[OPT-OUT DEADLINE]] as the deadline for requests for exclusion. To exclude yourself, you must send a letter via email to [[AB DATA EMAIL ADDRESS]] or via first-class U.S. mail to:

*In re: Generic Pharmaceuticals Pricing Antitrust Litigation* – End-Payer Settlement

c/o A.B. Data, Ltd.

P.O. Box _____

Milwaukee, WI 53217

PAGE 9 OF 26

The letter must include the following:

(i)     For consumers: your name, postal address, email address (if available), and phone number;

(ii)    For TPPs: your entity name, postal address, email address, phone number and Internal Revenue Service Employer Identification Number; and the name, title and signature of your representative submitting the request for exclusion;

(iii)   The name and number of the case: *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Pa.); and

(iv)   A statement, signed by you (if you are a consumer) or an authorized representative (if you are a TPP), that you are a member of the EPP Sandoz Settlement Class and wish to be excluded from the EPP Sandoz Settlement Class.

In addition,

- If you are a self-insured entity that seeks exclusion for its prescription drug plan(s) (or health plan(s) with prescription drug benefits), you must state the name(s) of the plan(s) with specificity.

- If you are an entity that seeks to exclude any claims that were assigned to you by another entity, you must submit documentation showing the assignment and your authority to exclude those claims.

- If you are an entity seeking to exclude another entity, *e.g.*, an insurer seeking to exclude its Administrative Services Only ("ASO") customers, you must identify with specificity each such entity that you seek to exclude, **and** you must provide a declaration from each entity's authorized representative, substantially in the form set forth below and executed specifically in connection with this litigation, attesting to your authority to opt the entity's claims out of the Settlement Class:

> Date
> Declarant Name
> Declarant Address
> Declarant Telephone Number
> Declarant Email Address
> Declarant EIN
>
> Dear Notice Administrator:
>
>      I am [Name and Title of Officer or Employee of Declarant Requesting Exclusion]. [Declarant] has authorized [Submitting Entity] to request exclusion from the EPP Sandoz Settlement Class on [Declarant]'s behalf in the case *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Pa.).
>
>     I do so declare under penalty of perjury.

---

_____          _____
Name/Title of Officer or Employee            Date Signed

A SEPARATE EXCLUSION REQUEST MUST BE SUBMITTED BY EACH SETTLEMENT CLASS MEMBER ELECTING TO BE EXCLUDED. ANY SETTLEMENT CLASS MEMBER INCLUDED IN THE EPP SANDOZ SETTLEMENT CLASS THAT DOES NOT SUBMIT A VALID REQUEST FOR EXCLUSION PROVIDING ALL NECESSARY INFORMATION WILL REMAIN A MEMBER OF THE EPP SANDOZ SETTLEMENT CLASS.

**Your letter requesting exclusion must be EMAILED or POSTMARKED no later than [[OPT-OUT DEADLINE]].**

## 8. WHAT IS THE LEGAL SIGNIFICANCE OF EXCLUDING MYSELF?

If you exclude yourself from the Settlement Class, you cannot object to any of the terms of the related Settlement Agreement. You also will not be legally bound by anything that happens in the lawsuit between EPPs and Sandoz. This means that you may be able to sue (or continue to sue) Sandoz in the future about the legal issues in this case. If you intend to exclude yourself from the Settlement Class so that you can start or continue your own lawsuit against Sandoz, you should talk to your own lawyer before doing so, because your claims are subject to a statute of limitations, which means that your claims will expire at a certain time (or may already have expired).

## 9. IF I DON'T EXCLUDE MYSELF, CAN I SUE SANDOZ LATER?

No. If you do not exclude yourself from the Settlement Class, and you have a valid claim, you can share in the Settlement, but you will not be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Sandoz arising from the claims released as part of this Settlement, including claims brought in the case by EPPs against Sandoz. (*See* Question 12 for more information on the released claims.) All of the Court's Orders in the case between EPPs and Sandoz will apply to you and legally bind you. If the Court grants final approval to the proposed Settlement and enters final judgment in the case between EPPs and Sandoz, you will also be bound by the Settlement between EPPs and Sandoz.

## 10. WHAT HAPPENS IF I DO NOTHING?

If you are a Settlement Class Member and you do nothing, you will remain in the Settlement Class and be eligible to participate in the Settlement as described in this notice, if the Settlement is approved. When the time comes for distribution of the settlement fund, you will need to complete, sign, and return a Settlement claim form.

To receive updates on, *e.g.*, whether the Settlement has been approved by the Court, and whether a claim form is available and the deadline for submitting it, you should complete the online registration form on the Settlement Website. When a claim form becomes available, you will be able to obtain it from the Settlement Website or by calling [[TOLL-FREE NUMBER]].

# The Settlement's Benefits

| 11. WHAT DOES THE SETTLEMENT PROVIDE? |
|---|

Pursuant to the terms of the Settlement, Sandoz has paid $275,000,000.00 in cash to an interest-bearing escrow account for the benefit of EPP Sandoz Settlement Class Members. The Settlement amount may be reduced by a maximum of $45,000,000.00 under certain circumstances as explained in the Settlement Agreement. Additionally, the following will be deducted from the settlement fund: the costs of settlement notice and administration (up to $750,000.00), and, if approved by the Court, attorneys' fees (up to one-third of the settlement fund plus interest), litigation expenses (up to $26,000,000.00), and service awards to the EPP Sandoz Settlement Class Representatives (up to $500,000.00 altogether). The settlement fund shall be held in escrow pending final approval of the Settlement. Sandoz has also agreed to cooperate with EPPs in providing information related to EPPs' litigation against the Non-Settling Defendants.

The Settlement Agreement may be terminated if the Court does not approve it. If the Settlement Agreement is terminated, the Lawsuit will proceed against Sandoz as if the Settlement had not been reached.

The complete Settlement Agreement is available on the Settlement Website. This notice is not meant to, and does not, alter the terms of the Settlement Agreement.

| 12. WHAT CLAIMS AM I SETTLING? |
|---|

If the Settlement becomes final, the litigation between EPPs and Sandoz will be dismissed with prejudice, and the EPP Sandoz Settlement Class Members will be releasing Sandoz from all claims identified in the Settlement Agreement. Those claims include all claims that have been brought or could have been brought concerning the subject matter of or conduct alleged in EPPs' class action complaints, copies of which are available on the Settlement Website.

The Settlement Agreement specifically describes the released claims, in accurate legal terminology, so read them carefully. For the details of the releases, *see* paragraphs I.B., I.H., I.Q., I.R., and VI. of the Settlement Agreement, which is available on the Settlement Website.

Non-Settling Defendants are **not** part of the proposed Settlement. EPPs' Lawsuit against the Non-Settling Defendants is continuing.

| 13. HOW CAN I GET A PAYMENT FROM THE SETTLEMENT? |
|---|

The claims process is not open at this time. At a later date, if the Court grants final approval to the Settlement and the proposed Plan of Allocation (*see* "The Court's Fairness Hearing" below) and any resulting appeals are resolved, Settlement Class Counsel will ask the Court for permission to distribute the settlement fund pursuant to the Plan of Allocation.

**If you do not exclude yourself from the Settlement Class, you will need to submit a claim form to request your share of the settlement fund at that time.** To receive updates on when a claim form is available, as well as other updates related to the Settlement, you should complete the online registration form on the Settlement Website. Once a claim form is available, you will be able to obtain it from the Settlement Website or by calling [[TOLL-FREE NUMBER]].

## 14. HOW MUCH WILL MY PAYMENT BE?

If the Settlement is approved by the Court, the settlement fund, minus the costs of settlement notice and administration, and minus any court-awarded attorneys' fees, litigation expenses and service awards, will be distributed to Settlement Class Members pursuant to a Plan of Allocation that must be approved by the Court.

You will not be responsible for calculating the amount you may be entitled to receive. The Plan of Allocation provides that you will be paid on a *pro rata* basis in proportion to the amount of money you spent on the Named Generic Drugs from May 1, 2009 through December 31, 2019. In general, those who spent more money on the Named Generic Drugs will get a higher recovery than those who spent less. If less than 100% of the Settlement Class Members send in claim forms, you could get a larger *pro rata* share. Any accrued interest on the settlement fund will be included, *pro rata*, in the amounts paid to Settlement Class Members. Additional details of how your recovery will be calculated can be found in the proposed Plan of Allocation, which is available on the Settlement Website.

If you exclude yourself from the Settlement Class, you will not receive a share of the Settlement.

## 15. WHEN WOULD I GET MY PAYMENT?

Settlement Class Counsel will ask the Court for permission to distribute the settlement fund at a later point in time, and once the Court grants permission, the claims process will commence. The timing of Settlement Class Counsel's request to the Court for permission to distribute the settlement fund depends on several factors, including whether and when the Court grants final approval of the Settlement and the proposed Plan of Allocation, whether appeals are taken and how long they take, and the timing of the approval of other settlements in the litigation. In the meantime, EPPs will continue to pursue litigation against the Non-Settling Defendants.

# THE LAWYERS REPRESENTING THE SETTLEMENT CLASS

## 16. DO I HAVE A LAWYER IN THIS CASE?

The Court appointed Roberta D. Liebenberg and the law firm of Fine, Kaplan and Black, R.P.C., One South Broad Street, 23rd Floor, Philadelphia, PA 19107 as lead counsel for the Settlement Class.

## 17. HOW WILL THE LAWYERS BE PAID?

The Settlement allows for the costs of settlement notice and administration to be deducted from the settlement fund without prior Court approval in an amount not to exceed $750,000. In addition, the Settlement allows Settlement Class Counsel to ask the Court for the following payments out of the settlement fund: (i) an award of attorneys' fees, not to exceed one-third of the settlement fund (including interest accrued thereon); (ii) reimbursement of litigation expenses; and (iii) service awards to Settlement Class Representatives.

Settlement Class Counsel intend to move for an award of attorneys' fees not to exceed one-third of the settlement fund (including accrued interest); reimbursement for the costs and expenses they advanced in litigating the case not to exceed $26,000,000; and service awards of up to $500,000 in total to be paid to Settlement Class Representatives who worked on behalf of the

entire Settlement Class to achieve the results of the Settlement. Settlement Class Counsel will file their motion and post it on the Settlement Website, no later than [[**MOTION DEADLINE**]]. A copy of the motion will also be available for viewing at the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA 19106-1797, during normal business hours.

Any payment to the attorneys will be subject to Court approval, and the Court may award less than the requested amount. If the Court grants Settlement Class Counsel's requests, the awarded amounts will be deducted from the settlement fund.

## OBJECTING TO THE SETTLEMENT

### 18. IF I DON'T LIKE THE SETTLEMENT, HOW DO I TELL THE COURT?

If you are a Settlement Class Member and have not excluded yourself, you can object to all or any part of the proposed Settlement, the Plan of Allocation, or the request for attorneys' fees, litigation expenses and service awards. You can give reasons why you think the Court should not approve. The Court will consider your views.

To object to the Settlement, you must file your objection with the Court by sending a letter via first-class U.S. mail to the Clerk of Court (mailing address below) with copies to the individuals and addresses listed below. (If an attorney is filing an objection on your behalf, your attorney must comply with the Court's Local Rules, including those that mandate document filings via ECF.)

The objection letter must contain:

- For consumers: your name, postal address, email address (if available), and phone number;

- For TPPs: your entity name, postal address, email address and phone number; and the name, title and signature of your representative submitting the objection;

- The case name and number: *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Pa.);

- The name, postal address, email address, and phone number of your attorney, if you have one;

- A statement on whether you are objecting to the EPP Sandoz Settlement, the proposed Plan of Allocation, and/or the request for attorneys' fees, expenses, and service awards;

- The specific reasons why you object;

- Documentation demonstrating that you are a member of the Settlement Class and/or this statement, followed by your signature (if you are a consumer) or your representative's signature (if you are a TPP): "I declare under penalty of perjury under the laws of the United States of America that [insert your name] is a member of the Settlement Class."; and

- Any supporting materials, papers, or briefs that you want the Court to consider.

**Your objection must be filed with the Court so that it is <u>received</u> by the Court on or before [[OBJECTION DEADLINE]].**

| CLERK OF COURT FOR THE U.S. DIST. CT. FOR THE EASTERN DIST. OF PA | SETTLEMENT CLASS COUNSEL | SETTLING DEFENDANTS' COUNSEL |
|---|---|---|
| Clerk of Court, E.D. Pa. 601 Market St. Philadelphia, PA 19106 | Roberta D. Liebenberg Jeffrey S. Istvan Fine, Kaplan and Black, R.P.C. One South Broad St., 23rd Floor Philadelphia, PA 19107 | Matthew D. Kent Alston & Bird LLP One Atlantic Center 1201 West Peachtree St. Suite 4900 Atlanta, GA 30309 |

## THE COURT'S FAIRNESS HEARING

The Court will hold a Final Fairness Hearing to decide whether to grant final approval to the Settlement, Plan of Allocation, and request for attorneys' fees, reimbursement of litigation expenses, and service awards. You may attend and, if you have not excluded yourself from the Settlement Class, you may ask to speak, but you do not have to.

### 19. WHEN WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court has scheduled the Final Fairness Hearing for [[DATE & TIME]], at the United States District Court for the Eastern District of Pennsylvania, Courtroom 12-A, 601 Market Street, Philadelphia, PA 19106.

**The time and date of the Final Fairness Hearing may change without additional mailed notice. For updated information on the hearing, you may check the Settlement Website, or the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://pcl.uscourts.gov.**

At the Final Fairness Hearing, the Court will consider whether the Settlement and the Plan of Allocation are fair, reasonable and adequate. The Court may also consider the requests by Settlement Class Counsel for attorneys' fees, reimbursement of expenses, and service awards. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to give final approval to the Settlement and the other requests. It is unknown how long these decisions, or decisions on any appeals of them, will take.

Any judgment issued by the Court will be binding on the Settlement Class. The Settlement, if approved by the Court and once appeals, if any, are resolved, will release all claims in the putative class actions against Sandoz.

## 20. DO I HAVE TO ATTEND THE HEARING?

No. Settlement Class Counsel will answer any questions the Court may have. However, you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you filed your written objection on time, to the proper addresses, and it complies with the other requirements provided above, the Court will consider it. You also may pay your own lawyer to attend the hearing, but this is not necessary.

Attendance is not necessary to receive your share of the settlement fund.

## 21. MAY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must file your notice by sending a letter via first-class U.S. mail titled "Notice of Intention to Appear in *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 2:16-MD-02724 (E.D. Pa.)," to the Clerk of Court, with copies to the individuals and addresses listed in Question 18 above. (If an attorney is filing the notice on your behalf, your attorney must comply with the Court's Local Rules, including those that mandate document filings via ECF.)

Be sure to include your name, address, email address, telephone number and signature, and state that you intend to appear at the Fairness Hearing on the EPP Sandoz Settlement. If applicable, include the name, address, email address, and telephone number of your attorney (who must file a Notice of Appearance). Your Notice of Intention to Appear must be filed with the Court so that it is **received** by the Court no later than [[**OPT-OUT/OBJECTION DEADLINE**]].

You may not speak at the hearing if you excluded yourself as a Settlement Class Member or do not send a Notice of Intention to Appear.

# GETTING MORE INFORMATION

## 22. HOW DO I GET MORE INFORMATION?

If you have questions about the Settlement or want additional information, you should first review the information posted on the Settlement Website. If you still have questions, you may call the Notice Administrator at [[**TOLL-FREE NUMBER**]] or contact the attorney or law firm identified in Question 16. This notice is only a summary of the proposed Settlement and is qualified in its entirety by the terms of the Settlement Agreement. A copy of the Settlement Agreement is on public file with the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA 19106. The Settlement Agreement is also available on the Settlement Website.

PLEASE DO <u>NOT</u> TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT OR THE CLAIMS PROCESS.

## APPENDIX A:  NAMED GENERIC DRUGS

|  | Molecule Name | Form | Strength |
|---|---|---|---|
| 1 | ACETAZOLAMIDE | TABLET | 125MG |
| 1 | ACETAZOLAMIDE | TABLET | 250MG |
| 1 | ACETAZOLAMIDE ER | CAPSULE | 500MG |
| 2 | ADAPALENE | CREAM | 0.10% |
| 2 | ADAPALENE | GEL | 0.10% |
| 2 | ADAPALENE | GEL | 0.30% |
| 3 | ALBUTEROL | TABLET | 2MG |
| 3 | ALBUTEROL | TABLET | 4MG |
| 4 | ALCLOMETASONE DIPROPIONATE | CREAM | 0.05% |
| 4 | ALCLOMETASONE DIPROPIONATE | OINTMENT | 0.05% |
| 5 | ALLOPURINOL | TABLET | 100MG |
| 5 | ALLOPURINOL | TABLET | 300MG |
| 6 | AMANTADINE HCL | CAPSULE | 100MG |
| 7 | AMILORIDE HCL/HCTZ | TABLET | 5-50MG |
| 8 | AMITRIPTYLINE | TABLET | 10MG |
| 8 | AMITRIPTYLINE | TABLET | 25MG |
| 8 | AMITRIPTYLINE | TABLET | 50MG |
| 8 | AMITRIPTYLINE | TABLET | 75MG |
| 8 | AMITRIPTYLINE | TABLET | 100MG |
| 8 | AMITRIPTYLINE | TABLET | 150MG |
| 9 | AMMONIUM LACTATE | CREAM | 12% |
| 9 | AMMONIUM LACTATE | LOTION | 12% |
| 10 | AMOXICILLIN/CLAVULANATE  POTASSIUM | TABLET CHEWABLE | 200-28.5MG |
| 10 | AMOXICILLIN/CLAVULANATE  POTASSIUM | TABLET CHEWABLE | 400-57MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 5MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 10MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 20MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 30MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 5MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 10MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 15MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 20MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 25MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 30MG |
| 12 | ATENOLOL/CHLORTHALIDONE | TABLET | 50-25MG |
| 12 | ATENOLOL/CHLORTHALIDONE | TABLET | 100-25MG |
| 13 | ATROPINE SULFATE | SOLUTION | 1% |
| 14 | AZITHROMYCIN | ORAL SUSPENSION | 100MG/5ML |
| 14 | AZITHROMYCIN | ORAL SUSPENSION | 200MG/5ML |
| 15 | BACLOFEN | TABLET | 10MG |
| 15 | BACLOFEN | TABLET | 20MG |
| 16 | BALSALAZIDE DISODIUM | CAPSULE | 750MG |
| 17 | BENAZEPRIL HCTZ | TABLET | 10-12.5MG |
| 17 | BENAZEPRIL HCTZ | TABLET | 20-12.5MG |
| 17 | BENAZEPRIL HCTZ | TABLET | 20-25MG |
| 18 | BETAMETHASONE DIPROPIONATE | CREAM | 0.05% |

PAGE 17 OF 26

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 18 | BETAMETHASONE DIPROPIONATE | LOTION | 0.05% |
| 18 | BETAMETHASONE DIPROPIONATE | OINTMENT | 0.05% |
| 19 | BETAMETHASONE DIPROPIONATE AUGMENTED | LOTION | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | CREAM | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | CREAM | 0.10% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | LOTION | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | LOTION | 0.10% |
| 21 | BETAMETHASONE VALERATE | CREAM | 0.10% |
| 21 | BETAMETHASONE VALERATE | LOTION | 0.10% |
| 21 | BETAMETHASONE VALERATE | OINTMENT | 0.10% |
| 22 | BETHANECHOL CHLORIDE | TABLET | 5MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 10MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 25 MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 50 MG |
| 23 | BROMOCRIPTINE MESYLATE | TABLET | 2.5MG |
| 24 | BUDESONIDE | SOLUTION | 0.25MG/2ML |
| 24 | BUDESONIDE | SOLUTION | 0.5MG/2ML |
| 24 | BUDESONIDE | SOLUTION | 1MG/2ML |
| 24 | BUDESONIDE DR | CAPSULE | 3MG |
| 25 | BUMETANIDE | TABLET | 0.5MG |
| 25 | BUMETANIDE | TABLET | 1MG |
| 25 | BUMETANIDE | TABLET | 2MG |
| 26 | BUSPIRONE HCL | TABLET | 5MG |
| 26 | BUSPIRONE HCL | TABLET | 7.5MG |
| 26 | BUSPIRONE HCL | TABLET | 10MG |
| 26 | BUSPIRONE HCL | TABLET | 15MG |
| 26 | BUSPIRONE HCL | TABLET | 30MG |
| 27 | BUTORPHANOL TARTRATE | SPRAY | 10MG/ML |
| 28 | CABERGOLINE | TABLET | 0.5MG |
| 29 | CALCIPOTRIENE | SOLUTION | ALL STRENGTHS |
| 30 | CALCIPOTRIENE BETHAMASONE DIPROPRIONATE | OINTMENT | 0.064%/0.005% |
| 31 | CAPECITABINE | TABLET | 150MG |
| 31 | CAPECITABINE | TABLET | 500MG |
| 32 | CAPTOPRIL | TABLET | 12.5MG |
| 32 | CAPTOPRIL | TABLET | 25MG |
| 32 | CAPTOPRIL | TABLET | 50MG |
| 32 | CAPTOPRIL | TABLET | 100MG |
| 33 | CARBAMAZEPINE | TABLET | 200MG |
| 33 | CARBAMAZEPINE | TABLET CHEWABLE | 100MG |
| 33 | CARBAMAZEPINE ER | TABLET | 100MG |
| 33 | CARBAMAZEPINE ER | TABLET | 200MG |
| 33 | CARBAMAZEPINE ER | TABLET | 400MG |
| 34 | CARISOPRODOL | TABLET | 350MG |
| 35 | CEFDINIR | CAPSULE | 300MG |
| 35 | CEFDINIR | SOLUTION | 125MG/5ML |
| 35 | CEFDINIR | SOLUTION | 250MG/5ML |
| 36 | CEFPODOXIME PROXETIL | ORAL SUSPENSION | 50MG/5ML |
| 36 | CEFPODOXIME PROXETIL | ORAL SUSPENSION | 100MG/5ML |
| 36 | CEFPODOXIME PROXETIL | TABLET | 100MG |
| 36 | CEFPODOXIME PROXETIL | TABLET | 200MG |
| 37 | CEFPROZIL | TABLET | 250MG |
| 37 | CEFPROZIL | TABLET | 500MG |
| 38 | CEFUROXIME AXETIL | TABLET | 250MG |
| 38 | CEFUROXIME AXETIL | TABLET | 500MG |
| 39 | CELECOXIB | CAPSULE | 50MG |
| 39 | CELECOXIB | CAPSULE | 100MG |
| 39 | CELECOXIB | CAPSULE | 200MG |
| 39 | CELECOXIB | CAPSULE | 400MG |
| 40 | CEPHALEXIN (CEFALEXIN) | SOLUTION | 125MG/5ML |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 40 | CEPHALEXIN (CEFALEXIN) | SOLUTION | 250MG/5ML |
| 41 | CHLORPROMAZINE HCL | TABLET | 10MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 25MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 50MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 100MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 200MG |
| 42 | CHOLESTYRAMINE | PACKET/ORAL SOLID | 4G |
| 42 | CHOLESTYRAMINE | POWDER | 4G |
| 43 | CICLOPIROX | CREAM | 0.77% |
| 43 | CICLOPIROX | SHAMPOO | 1% |
| 43 | CICLOPIROX | SOLUTION | 8% |
| 44 | CIMETIDINE | TABLET | 200MG |
| 44 | CIMETIDINE | TABLET | 300MG |
| 44 | CIMETIDINE | TABLET | 400MG |
| 44 | CIMETIDINE | TABLET | 800MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 100MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 250MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 500MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 750MG |
| 46 | CLARITHROMYCIN ER | TABLET | 500MG |
| 47 | CLEMASTINE FUMARATE | TABLET | 1.34MG |
| 47 | CLEMASTINE FUMARATE | TABLET | 2.86MG |
| 48 | CLINDAMYCIN PHOSPHATE | GEL | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | LOTION | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | SOLUTION | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | VAGINAL CREAM | 2% |
| 49 | CLOBETASOL | CREAM | 0.05% |
| 49 | CLOBETASOL | E CREAM | 0.05% |
| 49 | CLOBETASOL | GEL | 0.05% |
| 49 | CLOBETASOL | OINTMENT | 0.05% |
| 49 | CLOBETASOL | SOLUTION | 0.05% |
| 50 | CLOMIPRAMINE | CAPSULE | 25MG |
| 50 | CLOMIPRAMINE | CAPSULE | 50MG |
| 50 | CLOMIPRAMINE | CAPSULE | 75MG |
| 51 | CLONIDINE | PATCH | 0.1MG/24HR |
| 51 | CLONIDINE | PATCH | 0.2MG/24HR |
| 51 | CLONIDINE | PATCH | 0.3MG/24HR |
| 52 | CLOTRIMAZOLE | SOLUTION | 1% |
| 53 | CYPROHEPTADINE HCL | TABLET | 4MG |
| 54 | DESMOPRESSIN ACETATE | TABLET | 0.1MG |
| 54 | DESMOPRESSIN ACETATE | TABLET | 0.2MG |
| 55 | DESONIDE | CREAM | 0.05% |
| 55 | DESONIDE | LOTION | 0.05% |
| 55 | DESONIDE | OINTMENT | 0.05% |
| 56 | DESOXIMETASONE | OINTMENT | 0.05% |
| 56 | DESOXIMETASONE | OINTMENT | 0.25% |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 5MG |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 15MG |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 20MG |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 40MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 2.5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 7.5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 10MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 15MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 20MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 30MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 5MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 10MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 15MG |
| 59 | DICLOFENAC POTASSIUM | TABLET | 50MG |
| 60 | DICLOXACILLIN SODIUM | CAPSULE | 250MG |
| 60 | DICLOXACILLIN SODIUM | CAPSULE | 500MG |
| 61 | DIFLUNISAL | TABLET | 500MG |
| 62 | DIGOXIN | TABLET | 0.125MG |
| 62 | DIGOXIN | TABLET | 0.25MG |
| 63 | DILTIAZEM HCL | TABLET | 120MG |
| 63 | DILTIAZEM HCL | TABLET | 30MG |
| 63 | DILTIAZEM HCL | TABLET | 60MG |
| 63 | DILTIAZEM HCL | TABLET | 90MG |
| 64 | DIPHENOXYLATE/ATROPINE | TABLET | 2.5MG;0.025MG |
| 65 | DISOPYRAMIDE PHOSPHATE | CAPSULE | 100MG |
| 65 | DISOPYRAMIDE PHOSPHATE | CAPSULE | 150MG |
| 66 | DIVALPROEX ER | TABLET | 250MG |
| 66 | DIVALPROEX ER | TABLET | 500MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 1MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 2MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 4MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 8MG |
| 68 | DOXYCYCLINE HYCLATE | CAPSULE | 50MG |
| 68 | DOXYCYCLINE HYCLATE | CAPSULE | 100MG |
| 68 | DOXYCYCLINE HYCLATE | TABLET | 100MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 75MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 100MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 150MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 50MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 75MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 100MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 150MG |
| 69 | DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.02MG |
| 69 | DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.03MG |
| 70 | ECONAZOLE | CREAM | 1% |
| 71 | ENALAPRIL MALEATE | TABLET | 2.5MG |
| 71 | ENALAPRIL MALEATE | TABLET | 5MG |
| 71 | ENALAPRIL MALEATE | TABLET | 10MG |
| 71 | ENALAPRIL MALEATE | TABLET | 20MG |
| 72 | ENTECAVIR | TABLET | 0.5MG |
| 72 | ENTECAVIR | TABLET | 1MG |
| 73 | EPLERENONE | TABLET | 25MG |
| 73 | EPLERENONE | TABLET | 50MG |
| 74 | ERYTHROMYCIN | SOLUTION | ALL STRENGTHS |
| 75 | ESTAZOLAM | TABLET | 1MG |
| 75 | ESTAZOLAM | TABLET | 2MG |
| 76 | ESTRADIOL | TABLET | 0.5MG |
| 76 | ESTRADIOL | TABLET | 1MG |
| 76 | ESTRADIOL | TABLET | 2MG |
| 77 | ESTRADIOL/NORETHINDRONE ACETATE (MIMVEY) | TABLET | 1-0.5MG |
| 78 | ETHAMBUTOL HCL | TABLET | 100MG |
| 78 | ETHAMBUTOL HCL | TABLET | 400MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15/0.02-0.01MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15-0.02-0.01MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15-0.03MG |
| 80 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | ALL STRENGTHS |

|    | Molecule Name | Form | Strength |
|----|---------------|------|----------|
| 81 | ETHOSUXIMIDE | CAPSULE | 250MG |
| 81 | ETHOSUXIMIDE | ORAL SOLUTION | 250MG/5ML |
| 82 | ETODOLAC | CAPSULE | 200MG |
| 82 | ETODOLAC | CAPSULE | 300MG |
| 82 | ETODOLAC | TABLET | 400MG |
| 82 | ETODOLAC | TABLET | 500MG |
| 82 | ETODOLAC ER | TABLET | 400MG |
| 82 | ETODOLAC ER | TABLET | 500MG |
| 82 | ETODOLAC ER | TABLET | 600MG |
| 83 | EXEMESTANE | TABLET | 25MG |
| 84 | FENOFIBRATE | TABLET | 48MG |
| 84 | FENOFIBRATE | TABLET | 145MG |
| 85 | FLUCONAZOLE | TABLET | 50MG |
| 85 | FLUCONAZOLE | TABLET | 100MG |
| 85 | FLUCONAZOLE | TABLET | 150MG |
| 85 | FLUCONAZOLE | TABLET | 200MG |
| 86 | FLUOCINOLONE ACETONIDE | CREAM | 0.01% |
| 86 | FLUOCINOLONE ACETONIDE | CREAM | 0.03% |
| 86 | FLUOCINOLONE ACETONIDE | OINTMENT | 0.03% |
| 86 | FLUOCINOLONE ACETONIDE | SOLUTION | 0.01% |
| 87 | FLUOCINONIDE | CREAM | 0.05% |
| 87 | FLUOCINONIDE | CREAM | 0.10% |
| 87 | FLUOCINONIDE | E CREAM | 0.05% |
| 87 | FLUOCINONIDE | GEL | 0.05% |
| 87 | FLUOCINONIDE | OINTMENT | 0.05% |
| 87 | FLUOCINONIDE | SOLUTION | 0.05% |
| 88 | FLUOXETINE HCL | TABLET | 10MG |
| 88 | FLUOXETINE HCL | TABLET | 15MG |
| 88 | FLUOXETINE HCL | TABLET | 20MG |
| 88 | FLUOXETINE HCL | TABLET | 60MG |
| 89 | FLURBIPROFEN | TABLET | 50MG |
| 89 | FLURBIPROFEN | TABLET | 100MG |
| 90 | FLUTAMIDE | CAPSULE | 125MG |
| 91 | FLUTICASONE PROPIONATE | SPRAY | 50MCG |
| 91 | FLUTICASONE PROPIONATE | LOTION | 0.05% |
| 92 | FLUVASTATIN SODIUM | CAPSULE | 20MG |
| 92 | FLUVASTATIN SODIUM | CAPSULE | 40MG |
| 93 | FOSINOPRIL HCTZ | TABLET | 10-12.5MG |
| 93 | FOSINOPRIL HCTZ | TABLET | 20-12.5MG |
| 94 | GABAPENTIN | TABLET | 600MG |
| 94 | GABAPENTIN | TABLET | 800MG |
| 95 | GLIMEPIRIDE | TABLET | 1MG |
| 95 | GLIMEPIRIDE | TABLET | 2MG |
| 95 | GLIMEPIRIDE | TABLET | 4MG |
| 96 | GLIPIZIDE/METFORMIN | TABLET | 2.5-250MG |
| 96 | GLIPIZIDE/METFORMIN | TABLET | 2.5-500MG |
| 96 | GLIPIZIDE/METFORMIN | TABLET | 5-500MG |
| 97 | GLYBURIDE | TABLET | 1.25MG |
| 97 | GLYBURIDE | TABLET | 2.5MG |
| 97 | GLYBURIDE | TABLET | 5MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 1.25-250MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 2.5-500MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 5-500MG |
| 99 | GRISEOFULVIN | SUSPENSION (MICROSIZE) | 125MG/5ML |
| 99 | GRISEOFULVIN | MICROSIZE TABLET | 250MG |
| 99 | GRISEOFULVIN | MICROSIZE TABLET | 500MG |
| 100 | HALOBETASOL PROPIONATE | CREAM | 0.05% |
| 100 | HALOBETASOL PROPIONATE | OINTMENT | 0.05% |

PAGE 21 OF 26

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 101 | HALOPERIDOL | TABLET | 0.5MG |
| 101 | HALOPERIDOL | TABLET | 1MG |
| 101 | HALOPERIDOL | TABLET | 2MG |
| 101 | HALOPERIDOL | TABLET | 5MG |
| 101 | HALOPERIDOL | TABLET | 10MG |
| 101 | HALOPERIDOL | TABLET | 20MG |
| 102 | HYDRALAZINE HCL | | |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 10MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 25MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 30MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 50MG |
| 104 | HYDROCORTISONE VALERATE | CREAM | 0.20% |
| 105 | HYDROXYUREA | CAPSULE | 500MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 25MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 50MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 100MG |
| 107 | IMIQUIMOD | CREAM | 12.5MG/G |
| 107 | IMIQUIMOD | CREAM | 37.5MG/G |
| 107 | IMIQUIMOD | CREAM | 50MG/G |
| 108 | IRBESARTAN | TABLET | 75MG |
| 108 | IRBESARTAN | TABLET | 150MG |
| 108 | IRBESARTAN | TABLET | 300MG |
| 109 | ISONIAZID | TABLET | 100MG |
| 109 | ISONIAZID | TABLET | 300MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 5MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 10MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 20MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 30MG |
| 111 | KETOCONAZOLE | CREAM | 2% |
| 111 | KETOCONAZOLE | TABLET | 200MG |
| 112 | KETOPROFEN | CAPSULE | 50MG |
| 112 | KETOPROFEN | CAPSULE | 75MG |
| 113 | KETOROLAC TROMETHAMINE | TABLET | 10MG |
| 114 | LABETALOL HCL | TABLET | 100MG |
| 114 | LABETALOL HCL | TABLET | 200MG |
| 114 | LABETALOL HCL | TABLET | 300MG |
| 115 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 150-300MG |
| 115 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 300-150MG |
| 116 | LATANOPROST | SOLUTION | 0.01% |
| 117 | LEFLUNOMIDE | TABLET | 10MG |
| 117 | LEFLUNOMIDE | TABLET | 20MG |
| 118 | LEVOTHYROXINE | TABLET | 0.025MG |
| 118 | LEVOTHYROXINE | TABLET | 0.05MG |
| 118 | LEVOTHYROXINE | TABLET | 0.075MG |
| 118 | LEVOTHYROXINE | TABLET | 0.088MG |
| 118 | LEVOTHYROXINE | TABLET | 0.1MG |
| 118 | LEVOTHYROXINE | TABLET | 0.112MG |
| 118 | LEVOTHYROXINE | TABLET | 0.125MG |
| 118 | LEVOTHYROXINE | TABLET | 0.137MG |
| 118 | LEVOTHYROXINE | TABLET | 0.15MG |
| 118 | LEVOTHYROXINE | TABLET | 0.175MG |
| 118 | LEVOTHYROXINE | TABLET | 0.2MG |
| 118 | LEVOTHYROXINE | TABLET | 0.3MG |
| 119 | LIDOCAINE HCL | OINTMENT | 5% |
| 120 | LIDOCAINE/PRILOCAINE | CREAM | 2.5%-2.5% |
| 121 | LOPERAMIDE HCL | CAPSULE | 2MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 2.5MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 5MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 10MG |

PAGE 22 OF 26

|  | Molecule Name | Form | Strength |
|---|---|---|---|
| 123 | MEPROBAMATE | TABLET | 200MG |
| 123 | MEPROBAMATE | TABLET | 400MG |
| 124 | METFORMIN (F) ER | TABLET | 500MG |
| 124 | METFORMIN (F) ER | TABLET | 1000MG |
| 125 | METHADONE HCL | TABLET | 10MG |
| 125 | METHADONE HCL | TABLET | 5MG |
| 126 | METHAZOLAMIDE | TABLET | 25MG |
| 126 | METHAZOLAMIDE | TABLET | 50MG |
| 127 | METHIMAZOLE |  |  |
| 128 | METHOTREXATE | TABLET | 2.5MG |
| 129 | METHYLPHENIDATE | TABLET | 5MG |
| 130 | METHYLPHENIDATE | TABLET | 10MG |
| 130 | METHYLPHENIDATE | TABLET | 20MG |
| 130 | METHYLPHENIDATE ER | TABLET | 20MG |
| 131 | METHYLPREDNISOLONE | TABLET | 4MG |
| 132 | METRONIDAZOLE | TABLET |  |
| 132 | METRONIDAZOLE | CREAM | 0.75% |
| 132 | METRONIDAZOLE | GEL | 0.75% |
| 132 | METRONIDAZOLE | GEL | 1% |
| 132 | METRONIDAZOLE | GEL VAGINAL | 0.75% |
| 132 | METRONIDAZOLE | LOTION | 0.75% |
| 133 | MOEXIPRIL HCL | TABLET | 7.5MG |
| 133 | MOEXIPRIL HCL | TABLET | 15MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 7.5-12.5MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 15-12.5MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 15-25MG |
| 135 | MOMETASONE FUROATE | CREAM | 0.10% |
| 135 | MOMETASONE FUROATE | OINTMENT | 0.10% |
| 135 | MOMETASONE FUROATE | SOLUTION | 0.10% |
| 136 | NABUMETONE | TABLET | 500MG |
| 136 | NABUMETONE | TABLET | 750MG |
| 137 | NADOLOL | TABLET | 20MG |
| 137 | NADOLOL | TABLET | 40MG |
| 137 | NADOLOL | TABLET | 80MG |
| 138 | NAFCILLIN SODIUM | INJECTABLE VIALS | ALL STRENGTHS |
| 139 | NAPROXEN SODIUM | TABLET | 275MG |
| 139 | NAPROXEN SODIUM | TABLET | 550MG |
| 140 | NEOMYCIN/POLYMYXIN/HYDROCORTISONE | SOLUTION | 3.5MG-10MU 1% |
| 141 | NIACIN ER | TABLET | 500MG |
| 141 | NIACIN ER | TABLET | 750MG |
| 141 | NIACIN ER | TABLET | 1000MG |
| 142 | NIMODIPINE | CAPSULE | 30MG |
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 25MG |
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 50MG |
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 100MG |
| 144 | NORETHINDRONE ACETATE | TABLET | 5MG |
| 145 | NORETHINDRONE/ETHINYL ESTRADIOL (BALZIVA) | TABLET | 0.4-0.035MG-MCG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 10MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 25MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 50MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 75MG |
| 147 | NYSTATIN | CREAM | 100MU |
| 147 | NYSTATIN | OINTMENT | 100MU |
| 147 | NYSTATIN | TABLET | 500MU |
| 148 | NYSTATIN/TRIAMCINOLONE | CREAM | 0.10% |
| 148 | NYSTATIN/TRIAMCINOLONE | OINTMENT | 0.10% |
| 149 | OMEGA 3 ACID ETHYL ESTERS | CAPSULE | 1G |
| 150 | OXACILLIN SODIUM | INJECTABLE VIALS | ALL STRENGTHS |
| 151 | OXAPROZIN | TABLET | 600MG |

PAGE 23 OF 26

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 152 | OXYBUTYNIN CHLORIDE | TABLET | 5MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 5-325MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 7.5-325MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 10-325MG |
| 154 | OXYCODONE HCL | TABLET | 5MG |
| 154 | OXYCODONE HCL | TABLET | 15MG |
| 154 | OXYCODONE HCL | TABLET | 30MG |
| 155 | PARICALCITOL | CAPSULE | 1MCG |
| 155 | PARICALCITOL | CAPSULE | 2MCG |
| 155 | PARICALCITOL | CAPSULE | 4MCG |
| 156 | PAROMOMYCIN | CAPSULE | 250MG |
| 157 | PENICILLIN V POTASSIUM | TABLET | 250MG |
| 157 | PENICILLIN V POTASSIUM | TABLET | 500MG |
| 158 | PENTOXIFYLLINE ER | TABLET | 400MG |
| 159 | PERMETHRIN | CREAM | 5% |
| 160 | PERPHENAZINE | TABLET | 2MG |
| 160 | PERPHENAZINE | TABLET | 4MG |
| 160 | PERPHENAZINE | TABLET | 8MG |
| 160 | PERPHENAZINE | TABLET | 16MG |
| 161 | PHENYTOIN SODIUM ER | CAPSULE | 100MG |
| 162 | PILOCARPINE HCL | TABLET | 5MG |
| 163 | PIOGLITAZONE METFORMIN HCL | TABLET | 15MG/500MG |
| 163 | PIOGLITAZONE METFORMIN HCL | TABLET | 15MG/850MG |
| 164 | PIROXICAM | CAPSULE | 10MG |
| 164 | PIROXICAM | CAPSULE | 20MG |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 8MEQ |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 10MEQ |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 20MEQ |
| 166 | PRAVASTATIN | TABLET | 10MG |
| 166 | PRAVASTATIN | TABLET | 20MG |
| 166 | PRAVASTATIN | TABLET | 40MG |
| 166 | PRAVASTATIN | TABLET | 80MG |
| 167 | PRAZOSIN HCL | CAPSULE | 1MG |
| 167 | PRAZOSIN HCL | CAPSULE | 2MG |
| 167 | PRAZOSIN HCL | CAPSULE | 5MG |
| 168 | PREDNISOLONE ACETATE | SOLUTION/LIQUID EYE | 1% |
| 169 | PREDNISONE | TABLET | 1MG |
| 169 | PREDNISONE | TABLET | 2.5MG |
| 169 | PREDNISONE | TABLET | 5MG |
| 169 | PREDNISONE | TABLET | 10MG |
| 169 | PREDNISONE | TABLET | 20MG |
| 170 | PROCHLORPERAZINE | SUPPOSITORY | 25MG |
| 170 | PROCHLORPERAZINE | TABLET | 5MG |
| 170 | PROCHLORPERAZINE | TABLET | 10MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 12.5MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 25MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 50MG |
| 172 | PROPRANOLOL | TABLET | 10MG |
| 172 | PROPRANOLOL | TABLET | 20MG |
| 172 | PROPRANOLOL | TABLET | 40MG |
| 172 | PROPRANOLOL | TABLET | 60MG |
| 172 | PROPRANOLOL | TABLET | 80MG |
| 172 | PROPRANOLOL ER | CAPSULE | 60MG |
| 172 | PROPRANOLOL ER | CAPSULE | 80MG |
| 172 | PROPRANOLOL ER | CAPSULE | 120MG |
| 172 | PROPRANOLOL ER | CAPSULE | 160MG |
| 173 | RALOXIFENE HCL | TABLET | 60MG |
| 174 | RANITIDINE HCL | CAPSULE | 150MG |
| 174 | RANITIDINE HCL | CAPSULE | 300MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 174 | RANITIDINE HCL | TABLET | 150MG |
| 175 | SILVER SULFADIAZINE | CREAM | 1% |
| 176 | SPIRONOLACTONE/HCTZ | TABLET | 25-25MG |
| 177 | TACROLIMUS | OINTMENT | 0.03% |
| 177 | TACROLIMUS | OINTMENT | 0.10% |
| 178 | TAMOXIFEN CITRATE | TABLET | 10MG |
| 178 | TAMOXIFEN CITRATE | TABLET | 20MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 5MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 20MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 100MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 140MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 180MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 250MG |
| 180 | TERCONAZOLE | VAGINAL CREAM | 0.40% |
| 180 | TERCONAZOLE | VAGINAL CREAM | 0.80% |
| 181 | THEOPHYLLINE ER | TABLET | 100MG |
| 181 | THEOPHYLLINE ER | TABLET | 200MG |
| 181 | THEOPHYLLINE ER | TABLET | 300MG |
| 181 | THEOPHYLLINE ER | TABLET | 400MG |
| 181 | THEOPHYLLINE ER | TABLET | 450MG |
| 181 | THEOPHYLLINE ER | TABLET | 600MG |
| 182 | TIMOLOL MALEATE | GEL | 0.25% |
| 182 | TIMOLOL MALEATE | GEL | 0.50% |
| 183 | TIZANIDINE HCL | TABLET | 2MG |
| 183 | TIZANIDINE HCL | TABLET | 4MG |
| 184 | TOBRAMYCIN | SOLUTION | 300MG/5ML |
| 185 | TOBRAMYCIN/DEXAMETHASONE | SOLUTION | 0.3-0.1% |
| 186 | TOLMETIN SODIUM | CAPSULE | 400MG |
| 187 | TOLTERODINE TARTRATE | TABLET | 1MG |
| 187 | TOLTERODINE TARTRATE | TABLET | 2MG |
| 187 | TOLTERODINE TARTRATE ER | CAPSULE | 2MG |
| 187 | TOLTERODINE TARTRATE ER | CAPSULE | 4MG |
| 188 | TOPIRAMATE | CAPSULE | 15MG |
| 188 | TOPIRAMATE | CAPSULE | 25MG |
| 189 | TRAZODONE HCL | TABLET | 100MG |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.50% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.50% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.50% |
| 191 | TRIAMTERENE/HCTZ | CAPSULE | 37.5-25MG |
| 191 | TRIAMTERENE/HCTZ | TABLET | 37.5MG-25MG |
| 191 | TRIAMTERENE/HCTZ | TABLET | 75-50MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 1MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 2MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 5MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 10MG |
| 193 | URSODIOL | CAPSULE | 300MG |
| 194 | VALSARTAN HCTZ | TABLET | 80-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 160-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 160-25MG |
| 194 | VALSARTAN HCTZ | TABLET | 320-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 320-25MG |
| 195 | VERAPAMIL | TABLET | 40MG |
| 195 | VERAPAMIL | TABLET | 80MG |

PAGE 25 OF 26

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 195 | VERAPAMIL | TABLET | 120MG |
| 195 | VERAPAMIL SR | CAPSULE | 120MG |
| 195 | VERAPAMIL SR | CAPSULE | 180MG |
| 195 | VERAPAMIL SR | CAPSULE | 240MG |
| 196 | WARFARIN SODIUM | TABLET | 1MG |
| 196 | WARFARIN SODIUM | TABLET | 2MG |
| 196 | WARFARIN SODIUM | TABLET | 2.5MG |
| 196 | WARFARIN SODIUM | TABLET | 3MG |
| 196 | WARFARIN SODIUM | TABLET | 4MG |
| 196 | WARFARIN SODIUM | TABLET | 5MG |
| 196 | WARFARIN SODIUM | TABLET | 6MG |
| 196 | WARFARIN SODIUM | TABLET | 7.5MG |
| 196 | WARFARIN SODIUM | TABLET | 10MG |
| 197 | ZOLEDRONIC ACID | IV CONCENTRATE | 4MG/5ML |
| 197 | ZOLEDRONIC ACID | IV SOLUTION | 5MG/100ML |

QUESTIONS? CALL [[TOLL-FREE-NUMBER]] OR VISIT www.GenericDrugsEndPayerSettlement.com

# EXHIBIT 2

**<u>LEGAL NOTICE</u>**

***If You Paid or Reimbursed for Certain GENERIC DRUGS in the United States between May 1, 2009 and December 31, 2019, You Could Get a Payment from a Class Action Settlement.***

*A federal court authorized this Notice.*
*This is not a solicitation from a lawyer.*

[[**TOLL-FREE NUMBER**]]
www.GenericDrugsEndPayerSettlement.com

**Para conseguir una notificación en español, llame a 1-XXX-XXX-XXXX o visite el sitio web: www.GenericDrugsEndPayerSettlement.com.**

Your legal rights might be affected by a proposed $275,000,000 Settlement in a class action lawsuit (*In re Generic Pharmaceuticals Antitrust Litigation*, No. 16-MD-2724) pending in the United States District Court for the Eastern District of Pennsylvania. The lawsuit claims that Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Sandoz") and other generic manufacturers (the "Non-Settling Defendants") violated federal and state antitrust laws, consumer protection statutes, and common law, causing <u>End-Payers</u> – including consumers and Third-Party Payers ("TPPs") (*e.g.*, entities such as insurers or employers with self-funded prescription drug plans) – to pay more than they should have for certain generic drugs ("Named Generic Drugs"). Sandoz denies that it is liable to End-Payers. The Court has not decided who is right. The lawsuit remains ongoing against the Non-Settling Defendants.

**Am I a Settlement Class Member?** This lawsuit was brought by End-Payers for Named Generic Drugs ("EPPs"), and the court has preliminarily certified an EPP Sandoz Settlement Class that consists of TPPs and consumers. You may be a member of the Settlement Class if you are a TPP or consumer that indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for one or more of the Named Generic Drugs, for personal use by yourself or your members, and other than for resale, in the United States (except Indiana and Ohio) and in some United States territories, at any time during the period from May 1, 2009 through December 31, 2019. Certain kinds of entities are excluded from the Settlement Class. A more detailed notice that includes the full class description and who is or is not included; the list of Named Generic Drugs; the complete list of Defendants; and the Settlement Agreement is available at **www.GenericDrugsEndPayerSettlement.com** (the "EPP Settlement Website").

**What does the Settlement provide?** Under the proposed Settlement, Sandoz has paid $275,000,000 into a settlement fund. The settlement fund may be reduced under certain circumstances, as explained in the Settlement Agreement. It will be used to pay eligible Settlement Class Members, following deductions for the costs of settlement notice and administration (up to $750,000); and, subject to Court approval, deductions for attorneys' fees of up to one third of the fund plus interest, litigation expenses (up to $26,000,000), and service awards to the Settlement Class Representatives (up to $500,000 altogether). Settlement Class Counsel will post their request for fees, expenses, and service awards on the EPP Settlement Website. Sandoz also agreed to cooperate with EPPs in providing information related to EPPs' litigation against the Non-Settling Defendants.

**How do I get a payment?** Money will be distributed if and after the Court approves the Settlement. The amount and the timing of payment will be based on a Plan of Allocation that must be approved by the Court. EPPs' proposed Plan of Allocation is posted on the EPP Settlement Website. The claims process will open at a later date. To receive settlement-related updates, including when claim forms are available, you should register on the EPP Settlement Website or call the toll-free number below.

**If I am a Settlement Class Member, what are my options?** <u>If you do nothing, you will remain a Settlement Class Member, be eligible to participate in the Settlement, be legally bound by the Court's rulings on the Settlement and the</u>

claims against Sandoz, and you will not be able to pursue your claims against Sandoz. If you do not want to be legally bound by the Settlement, or if you want to keep your right to sue Sandoz yourself, you must exclude yourself. If you elect to remain in the Settlement Class but object to some or all of the Settlement, the proposed Plan of Allocation, the request for attorneys' fees, expenses, or the proposed service awards, you may object. Details on how to request exclusion or object are on the EPP Settlement Website. Any exclusion requests or objections must be submitted by [[**DEADLINE**]].  The Court will hold a Fairness Hearing on **[[DATE & TIME]]** to decide whether to approve the Settlement, the Plan of Allocation, and any request for attorneys' fees, expenses, or service awards. If you wish to appear at the hearing, you must file a "Notice of Intention to Appear" with the Court and you may (but are not required to) hire your own attorney to appear in court for you at your own expense. The Court may change deadlines or the date and time of the hearing. Check the EPP Settlement Website for updates.

For more information:  **[[TOLL-FREE NUMBER]] or visit www.GenericDrugsEndPayerSettlement.com.**

# EXHIBIT 3

**LEGAL NOTICE**

*If You Paid or Reimbursed for Certain GENERIC DRUGS in the United States between May 1, 2009 and December 31, 2019, You Could Get a Payment from a Class Action Settlement.*

*A federal court authorized this Notice.*
*This is not a solicitation from a lawyer.*

## [[TOLL-FREE NUMBER]]
**www.GenericDrugsEndPayerSettlement.com**

In re Generic Pharmaceuticals End-Payer Antitrust Litigation
c/o A.B. Data, Ltd.
P.O. Box [[NUMBER]]
Milwaukee, WI 53217

**Postmaster: Please DO NOT Cover Up Barcode**

<<Barcode>>
<<Claim ID>>

<<Mailing Address>>

Your legal rights might be affected by a proposed $275,000,000 Settlement in a class action lawsuit (*In re Generic Pharmaceuticals Antitrust Litigation*, No. 16-MD-2724) pending in the United States District Court for the Eastern District of Pennsylvania. The lawsuit claims that Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Sandoz") and other generic manufacturers (the "Non-Settling Defendants") violated federal and state antitrust laws, consumer protection statutes, and common law, causing End-Payers – including consumers and Third-Party Payers ("TPPs") (*e.g.*, entities such as insurers or employers with self-funded prescription drug plans) – to pay more than they should have for certain generic drugs ("Named Generic Drugs"). Sandoz denies that it is liable to End-Payers. The Court has not decided who is right. The lawsuit remains ongoing against the Non-Settling Defendants.

**Am I a Settlement Class Member?** This lawsuit was brought by End-Payers for Named Generic Drugs ("EPPs"), and the court has preliminarily certified an EPP Sandoz Settlement Class that consists of TPPs and consumers. You may be a member of the Settlement Class if you are a TPP or consumer that indirectly purchased, paid for, and/or provided reimbursement for some or all of the purchase price for one or more of the Named Generic Drugs, for personal use by yourself or your members, and other than for resale, in the United States (except Indiana and Ohio) and in some United States territories, at any time during the period from May 1, 2009 through December 31, 2019. Certain kinds of entities are excluded from the Settlement Class. A more detailed notice that includes the full class descriptions and who is or is not included; the list of Named Generic Drugs; the complete list of Defendants; and the Settlement Agreement is available at **www.GenericDrugsEndPayerSettlement.com** (the "EPP Settlement Website").

**What does the Settlement provide?** Under the proposed Settlement, Sandoz has paid $275,000,000 into a settlement fund. The settlement fund may be reduced under certain circumstances, as explained in the Settlement Agreement. It will be used to pay eligible Settlement Class Members, following deductions for the costs of settlement notice and administration (up to $750,000); and, subject to Court approval, deductions for attorneys' fees of up to one third of the fund plus interest, litigation expenses (up to $26,000,000), and service awards to the Settlement Class Representatives (up to $500,000 altogether). Settlement Class Counsel will post their request for fees, expenses, and service awards on the EPP Settlement Website. Sandoz also agreed to cooperate with EPPs in providing information related to EPPs' litigation against the Non-Settling Defendants.

**How do I get a payment?** Money will be distributed if and after the Court approves the Settlement. The amount and the timing of payment will be based on a Plan of Allocation that must be approved by the Court. EPPs' proposed Plan of Allocation is posted on the EPP Settlement Website. The claims process will open at a later date. To receive settlement-related updates, including when claim forms are available, you should register on the EPP Settlement Website or call the toll-free number below.

**If I am a Settlement Class Member, what are my options?** If you do nothing, you will remain a Settlement Class Member, be eligible to participate in the Settlement, be legally bound by the Court's rulings on the Settlement and the claims against Sandoz, and you will not be able to pursue your claims against Sandoz. If you do not want to be legally bound by the Settlement, or if you want to keep your right to sue Sandoz yourself, you must exclude yourself. If you elect to remain in the Settlement Class but object to some or all of the Settlement, the proposed Plan of Allocation, the request for attorneys' fees, expenses, or the proposed service awards, you may object. Details on how to request exclusion or object are on the EPP Settlement Website. Any exclusion requests or objections must be submitted by [[**DEADLINE**]]. The Court will hold a Fairness Hearing on [[**DATE & TIME**]] to decide whether to approve the Settlement, the Plan of Allocation, and any request for attorneys' fees, expenses, or service awards. If you wish to appear at the hearing, you must file a "Notice of Intention to Appear" with the Court and you may (but are not required to) hire your own attorney to appear in court for you at your own expense. The Court may change deadlines or the date and time of the hearing. Check the EPP Settlement Website for updates.

For more information:  [[**TOLL-FREE NUMBER**]] **or visit www.GenericDrugsEndPayerSettlement.com.**

# EXHIBIT 4

If You Paid for **GENERIC DRUGS** for your members, employees, insureds, participants, or beneficiaries

You Could **Get Money** from a **$275 MILLION SETTLEMENT**

Learn More at

**GenericDrugsEndPayerSettlement.com**

# EXHIBIT 5

# Did You Pay for GENERIC DRUGS?

You Could **Get Money** from a

## $275 MILLION SETTLEMENT

Learn More at

**GenericDrugsEndPayerSettlement.com**

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>***All End Payer Plaintiffs' Actions*** | HON. CYNTHIA M. RUFE |

**PROPOSED PLAN OF ALLOCATION FOR THE EPP SANDOZ SETTLEMENT**

End-Payer Plaintiffs ("EPPs") submit this proposed Plan of Allocation to allocate the $275,000,000 received in settlement of their claims against Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Sandoz"),[1] plus any interest earned on the settlement funds, net of notice and administration expenses, any funds required to be returned to Sandoz,[2] and any Court-approved attorneys' fees, litigation expenses, and service awards (the "Net Sandoz Settlement Fund") among members of the proposed EPP Sandoz Settlement Class.[3] This proposed Plan of Allocation is not part of the Sandoz Settlement Agreement, and apart from Sandoz's review and comment on the Plan, Sandoz has no further obligation with respect to the allocation or distribution of the settlement amount. *See* Settlement Agreement ¶ III.C. The finality of the

---

[1] *See* Declaration of Roberta D. Liebenberg in Support of End-Payer Plaintiffs' Motion for Preliminary Approval of Sandoz Settlement, Exhibit 1, filed concurrently herewith (the "Sandoz Settlement" or the "Settlement Agreement").

[2] Up to $45 million could be returned to Sandoz, depending on the level of opt-outs from the EPP Sandoz Settlement Class. *See* Settlement Agreement, ¶ V.

[3] The proposed EPP Sandoz Settlement Class is defined in paragraph I.J. of the Settlement Agreement and includes both Consumers (natural person end-payers for Drugs at Issue in this litigation) and Third-Party Payers (non-natural-person entities that indirectly purchased, paid, and/or provided reimbursement for some or all of the purchase price of Drugs at Issue).

1

Settlement between EPPs and Sandoz is not contingent on the Court's approval of this Proposed Plan of Allocation.

## I.     PROPOSED PLAN OF ALLOCATION

### A.    Definitions

Except as defined below, capitalized terms in this Plan of Allocation have the same meaning as in the Settlement Agreement.

1.     "Claims Administrator" means the Court-appointed administrator responsible for claims processing and fund distribution for the Net Sandoz Settlement Fund.

2.     "Claimant" means anyone who submits a Claim.

3.     "Drugs at Issue" means the generic drugs for which EPPs have brought claims in this MDL. The list of Drugs at Issue is attached as Appendix A to the Sandoz Settlement Agreement and will be available on the Settlement Website, GenericDrugsEndPayerSettlement.com, or by calling the Claims Administrator.

4.     "Eligible Claimant" means any Settlement Class Member who submits a Qualifying Claim, or on whose behalf a Qualifying Claim is submitted.

5.     "Eligible Purchase Period" means May 1, 2009 through December 31, 2019.

6.     "Eligible Purchases" means the dollar amount paid or reimbursed by Settlement Class Members for purchases of Drugs at Issue during the Eligible Purchase Period.

7.     "National Drug Codes" or "NDCs" means the standard codes maintained by the United States Food and Drug Administration for the purpose of identifying specific pharmaceutical products.

2

8.     "Proof of Claim" means the document(s) a Settlement Class Member must submit to the Claims Administrator to make a claim under the Settlement.

9.     "Qualifying Claim" means a timely, complete, and valid Proof of Claim that is accepted by the Claims Administrator.

10.    "Settlement Class Member" means any person or entity that falls within the class definition set forth in paragraph I.J. of the Settlement Agreement and does not submit a valid and timely request for exclusion from the EPP Sandoz Settlement Class.

**B.     Initial Submission of Claims**

1.     After receiving Court approval to commence the claims process, the Claims Administrator will make claim forms available on GenericDrugsEndPayerSettlement.com, the EPP Settlement Website.[4] ***Persons and entities who have registered to receive automatic updates regarding the Settlement will be sent an update advising them that they must submit a claim form to be eligible to receive a distribution from the Net Sandoz Settlement Fund.***

2.     The claim forms will instruct Claimants to submit information regarding their end-purchases of, or reimbursements for, Drugs at Issue during the Eligible Purchase Period.

---

[4] EPPs' proposed Notice Plan, set forth in the Declaration of Elaine Pang of A.B. Data, Ltd. Regarding Proposed Notice Plan ("A.B. Data Decl."), filed concurrently herewith, uses direct mail postcard notice, internet banner ads, a news release, and social media to direct potential Settlement Class Members to the EPP Settlement Website. The long-form notice on the website, the website itself, the postcard notice, the news release, and the summary notice will instruct Settlement Class Members to register to receive automatic updates regarding the Settlement, including updates on when claim forms will be available. A.B. Data Decl. ¶ 36.

3.      The Consumer claim form will instruct Consumer Claimants to submit at least one proof of purchase for each Drug at Issue they bought, and to list the total dollars spent for each such Drug at Issue during the Eligible Purchase Period, sufficient for the Claims Administrator to calculate the Claimant's *pro rata* share of the Net Sandoz Settlement Fund.

4.      The TPP claim form will instruct TPP Claimants to submit documentation or data reflecting all of their payments or reimbursements for Drugs at Issue during the Eligible Purchase Period, sufficient for the Claims Administrator to calculate the Claimant's *pro rata* share of the Net Sandoz Settlement Fund.

5.      For any person or entity seeking to make a claim as an authorized agent acting on behalf of one or more Settlement Class Members (*e.g.*, a Third-Party Administrator ("TPA"), Administrative Services Only Provider ("ASO"), Pharmacy Benefits Manager ("PBM"), claim aggregator, or other authorized agent), the claim form will require that person or entity to certify that (i) they are authorized to receive on behalf of the Settlement Class Members any and all amounts that may be allocated to the Settlement Class Members from the Settlement Fund; (ii) that they will fulfill all duties that they owe the Settlement Class Members (*e.g.*, forwarding the Settlement Class Members' shares of the Settlement Fund to them); and (iii) that if a Settlement Class Member later argues that the submitting person or entity did not have the authority to submit the claim and/or receive such amounts on the Settlement Class Member's behalf, then the submitting person or entity will hold the EPP Sandoz Settlement Class, Class

4

Counsel, Sandoz, and the Claims Administrator harmless with respect to any claims made by the Settlement Class Member.

6.      The claim forms will also request the Claimant's full name, current mailing address, current email address, and information on how the Claimant would prefer the distribution to be made (*e.g.*, electronically or by mailed check). In addition, the TPP claim form will request the identity and contact information for the person responsible for overseeing the claims process for the Claimant, and the Claimant's federal tax identification number. Finally, each Claimant will be required to execute the claim form, affirm the truth of the information submitted, and acknowledge that any false information or representations in the claim form may subject the Claimant to sanctions (including the possibility of criminal prosecution), in order for the claim to be considered for a distribution from the Net Sandoz Settlement Fund.

7.      Claimants must submit a Proof of Claim, which shall consist of a completed claim form together with, for Consumers the proofs of purchase, and for TPPs the supporting transaction data and documentation, specified in the claim form. In some instances, the Claims Administrator may ask for additional data and documentation to complete or substantiate the Proof of Claim.

8.      The Claims Administrator shall use names, addresses, tax identification numbers, other identifying information, and best practices to identify potentially duplicative claims. If a duplicative claim is submitted both by a Settlement Class Member and by a different Claimant (*e.g.*, an ASO that services the TPP Settlement Class Member, a claim aggregator, an attorney, an alleged assignee,

etc.), the claim will be paid only one time, to the Settlement Class Member. In such a situation, the Claims Administrator will deny the claim made by the duplicative (non-class member) Claimant. For avoidance of doubt, where two Settlement Class Members submit claims arising out of the same purchase transaction, but their claims are for different portions of the transaction (*e.g.*, an insured consumer who paid for a portion of a drug via copay or coinsurance, and a TPP that paid the balance of the drug's cost), those claims are *not* duplicative claims.

**C.**     **Identification of Qualifying Claims**

1.     The Claims Administrator will review and process all submitted claims.

2.     The Claims Administrator first will determine whether a claim form is timely, properly completed, signed, and supported by sufficient documentation or data. If the Claims Administrator determines that it needs further information or documentation to substantiate or process a claim, the Claimant will be notified in writing. The notification will explain how the Claimant can cure the deficiency and provide a reasonable deadline for submitting a curing response. If a Claimant fails to correct the deficiency within the time specified, the claim may be rejected in whole or in part.

3.     The Claims Administrator will classify all claims as either "Eligible" or "Ineligible." "Eligible Claims" will be further classified as: (i) claims recommended for approval as filed; (ii) claims recommended for approval but with modification; or (iii) late claims recommended for acceptance because they would have been Eligible Claims if filed on time and their acceptance will not substantially delay claims administration.

4.      The Claims Administrator will classify as "Ineligible Claims" those claims that it recommends for rejection and will identify the basis. Claimants whose claims have been rejected will be notified in writing.

5.      Only Eligible Claimants will be permitted to recover from the Net Sandoz Settlement Fund.

**D.      Distribution of Settlement Fund**

1.      The Net Sandoz Settlement Fund shall be distributed to Eligible Claimants on a *pro rata* basis, according to their Eligible Purchases.

2.      To determine each Eligible Claimant's *pro rata* share of the Net Sandoz Settlement Fund, the Claims Administrator shall multiply the total amount of the Net Sandoz Settlement Fund by a fraction, for which (a) the numerator is the Eligible Purchases by that Eligible Claimant, and (b) the denominator is the sum total of all Eligible Purchases (*i.e.*, total amounts paid) by all Eligible Claimants.

3.      The Claims Administrator will analyze whether it would be feasible and economical to establish a minimum amount to be distributed to each Eligible Claimant, and if it is feasible and economical, what (in dollars) that minimum distribution amount should be. Settlement Class Counsel will move the Court to approve an amended Plan of Allocation incorporating any recommended minimum distribution amount.

4.      Finally, the Claims Administrator will create a schedule showing each Eligible Claimant and its share of the Net Sandoz Settlement Fund. Class Counsel will then request the Court's permission to distribute the funds, including approval of the minimum distribution amount if the Claims Administrator recommends one.

E.    **Distribution of Residual Funds**

1.    For any settlement benefits paid via check, the check will bear an expiration date. The Claims Administrator will use reasonable efforts to encourage Claimants to cash checks before they expire and, upon request, may reissue checks to Claimants whose checks have expired. The Claims Administrator will void expired checks that are not cleared within a commercially reasonable period of time (generally 90 days).

2.    For any settlement benefits paid electronically, the settlement beneficiary will be provided 90 days from issuance to take custody of the funds. The Claims Administrator will use reasonable efforts to encourage Claimants to accept electronic transfers before they expire and, upon request, may reissue electronic transfers to Claimants whose transfers have expired. The Claims Administrator will void transfers that are not cleared within a commercially reasonable period of time (generally 90 days).

3.    If a distributable balance remains in the Net Sandoz Settlement Fund by reason of uncashed checks, unclaimed electronic transfers or otherwise, after all checks and transfers have cleared or expired, then that balance may be redistributed, without further order of the Court, on a *pro rata* basis among those Eligible Claimants who have cashed their checks, after payment of any additional costs or fees incurred in administering the Net Sandoz Settlement Fund. Where possible, such redistribution will occur in conjunction with the distribution of proceeds from other EPP settlements or judgments in the MDL.

4.    Insofar as the Net Sandoz Settlement Fund includes residual funds after distribution or distributions, as set forth in the preceding sections, that cannot be

economically distributed to the Eligible Claimants, such funds may be retained while this litigation continues and be distributed with subsequent distributions; or, with Court approval, they may be awarded as attorneys' fees, and/or to reimburse litigation expenses, or to make *cy pres* payments for the benefit of the Settlement Class.

F.    **Administration**

1.    All determinations under this Plan of Allocation, shall be made by the Claims Administrator, subject to review by Settlement Class Counsel and approval by the Court.

2.    In the event that a Claimant believes that the Claims Administrator's determination on any subject (*e.g.*, timeliness, completeness, documentation, calculation) is incorrect, the Claimant may ask the Claims Administrator to reconsider or recalculate. The Claims Administrator's decision resolving any such dispute will be final, subject to the Claimant's right to seek review by the Court. In notifying a Claimant of the rejection of a challenge, the Claims Administrator shall notify the Claimant of Claimant's right to seek judicial review.

3.    Any appeal by a Claimant to the Court must be submitted in writing, with copies to the Claims Administrator and Class Counsel, within 21 days of the Claims Administrator's final rejection notification to the Claimant.

4.    This Plan of Allocation may be amended, subject to Court approval. Any amendments will be promptly posted at GenericDrugsEndPayerSettlement.com.

## II.    TIMING OF DISTRIBUTION

For reasons of economy and administrative efficiency, Settlement Class Counsel recommend that the claims and distribution process for the EPP Sandoz Settlement be

9

coordinated with the claims and distribution process for the EPP Heritage Settlement and the EPP Apotex Settlement, for which Class Counsel will submit a Plan of Allocation shortly. Specifically, Counsel recommend that the claims and distribution process for all three settlements should occur after final approval of all three settlements.

## III.    PAYMENT OF CLAIMS ADMINISTRATOR

Prior to the Settlement becoming final, disbursements for the expenses of Settlement notice and administration may be made from the Sandoz Settlement Fund as provided in the Settlement Agreement.

The Claims Administrator will submit monthly invoices to EPP Settlement Class Counsel detailing the work performed and the expenses incurred in the prior month in the course of administering the Settlement. EPP Settlement Class Counsel will review such invoices, seek clarification or modification as needed, and submit invoices for reasonable and necessary expenses to the Escrow Agent with a written request that the invoices be paid from the Sandoz Settlement Fund. If requested by the Court, EPP Settlement Class Counsel will update the Court on these expenses in a status report.

Dated: February 14, 2025                          Respectfully submitted,

*/s/ Roberta D. Liebenberg*
Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com

*Lead and Liaison Counsel for End-Payer Plaintiffs*

10