**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:**<br><br>***All End-Payer Plaintiffs' Actions*** | **HON. CYNTHIA M. RUFE** |

**DECLARATION OF ROBERTA D. LIEBENBERG IN SUPPORT
OF END-PAYER PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SANDOZ SETTLEMENT**

I, Roberta D. Liebenberg, hereby declare and state as follows:

1.   I am the Senior Member at the law firm of Fine Kaplan and Black, R.P.C. ("Fine Kaplan"). I was appointed by the Court to serve as Interim Lead and Liaison Counsel for the End-Payer Plaintiffs. I have personal knowledge of the following facts and, if called as a witness, I could competently testify to these matters.

2.   Attached as Exhibit 1 is a true and correct copy of the proposed Settlement Agreement (the "Sandoz Settlement", "Settlement", or "Settlement Agreement") between End-Payer Plaintiffs ("EPPs"),  and Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Sandoz"). Capitalized terms in this Declaration incorporate the defined terms from the Settlement Agreement.

3.   I provide this Declaration in support of End-Payer Plaintiffs' Motion for Preliminary Approval of their Settlement with Sandoz.

## **BACKGROUND**

4.   Since 2016, EPPs—end purchasers of generic drugs from Defendants—have litigated claims alleging that Sandoz (a manufacturer of generic drugs) conspired with the other Defendants

(other manufacturers of generic drugs) in violation of federal and state antitrust, consumer protection and common laws to artificially inflate and maintain the prices for the Drugs at Issue listed in Appendix A to the Settlement ("DAI"). EPPs were overcharged for Drugs at Issue as a result of Defendants' conduct.

5.    Since the creation of this MDL, EPPs have filed 18 individual drug complaints and two multi-drug complaints. Sandoz is a Defendant in 11 of EPPs' pending cases: *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Mylan Inc., et al.*, No. 16-AM-27242 (Amitriptyline); *The City of Providence, Rhode Island, et al. v. Mylan Inc., et al.,* No. 16-BZ-27240 (Benazepril)*; 1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 16-CB-27242 (Clobetasol); *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Mylan Inc., et al.*, No. 16-CM-27242 (Clomipramine); *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 16-DS-27242 (Desonide); *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 16-FL-27242 (Fluocinonide); *1199SEIU National Benefit Fund, et al v. Akorn, Inc., et al.,* No. 16-LD-27242 (Lidocaine-Prilocaine*); Louisiana Health Service & Indemnity Company d/b/a/ Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc., et al. v. Lannett Company, Inc., et al.*, No. 16-LV-27242 (Levothyroxine*); American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 16-PV-27242 (Pravastatin); *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 18-cv-2401 (First Multidrug Complaint); *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.*, No. 19-cv-6011 (Second Multidrug Complaint).

6.    In October 2018, the Court denied Defendants' motion to dismiss six of the EPPs'

individual drug complaints, including the *Clobetasol* and *Pravastatin* complaints naming Sandoz as a Defendant. *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 458 (E.D. Pa. 2018).

7.   In August 2019, the Court denied Defendants' motion to dismiss the EPPs' first multi-drug complaint that alleged an "overarching conspiracy" among Defendants, including Sandoz. *In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 533 (E.D. Pa. 2019).

8.   EPPs have engaged in substantial discovery in this MDL, including propounding hundreds of document requests, interrogatories, and requests for admissions; reviewing and processing millions of documents produced by Defendants and third parties; and taking or participating in more than 100 depositions, including 12 depositions of Sandoz witnesses.

9.   EPPs have responded to significant discovery requests propounded by Defendants.

10. EPPs have participated in numerous formal and informal hearings before the Court and three Special Masters.

11. EPPs have participated in significant motion practice, including the briefing to set bellwether proceedings for this MDL, opposition to the Department of Justice's request for a limited stay, and numerous discovery motions, including one that was briefed before the Third Circuit and the United States Supreme Court, *In re Actavis Holdco U.S., Inc.*, 2019 WL 8437021 (3d Cir. Dec. 6, 2019) (denying petition for writ of mandamus), *cert. denied*, 141 S.Ct. 124 (2020). More recently, EPPs briefed class certification in both of the EPP bellwether cases and participated in class certification hearings.

12. EPPs have also done extensive expert work, including the service of expert reports in the bellwether cases on November 1, 2023, and more recently briefing twelve *Daubert* motions. Although prepared for the bellwether cases, much of the class certification and expert work involved cross-cutting issues that will apply broadly across the MDL.

13. Throughout the litigation of this case, each of the proposed Settlement Class Representatives have worked closely with Class Counsel on the litigation, reviewed pleadings, and responded to Defendants' discovery requests, and over half of them have provided deposition testimony.

14. EPPs have at all times, and will continue to, vigorously litigate this case.

## SETTLEMENT NEGOTIATIONS

15. On behalf of the EPPs, my firm engaged in numerous rounds of settlement negotiations with counsel for Sandoz.

16. We first began discussing settlement with Sandoz in December 2023. Numerous good-faith conversations took place.

17. Nearly a year later, in November 2024, EPPs and Sandoz reached an agreement in principle and began negotiating a Settlement Agreement.

18. In December 2024, the settling Parties finalized and signed the Settlement Agreement. The executed Settlement Agreement is attached hereto as Exhibit 1.

## THE SETTLEMENT AND ITS FAIRNESS

19. This Settlement is on behalf of a class of end payers that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price of the DAIs listed in Appendix A to the Settlement Agreement.

20. This Settlement reflects not only the strengths and weaknesses of the liability and damages claims against Sandoz, but also the value of the cooperation that Sandoz has agreed to provide to aid in the continued prosecution of this case against non-settling Defendants.

21. The settlement negotiations between settling Parties were, at all times, conducted at arm's length and in good faith. Throughout this process, Sandoz has been represented by experienced, sophisticated antitrust counsel. Counsel for the EPPs have decades of experience litigating antitrust

class actions and are capable of fairly, reasonably, and adequately evaluating the settlement value of their claims against Sandoz. Counsel for the Parties also have substantial experience litigating other pharmaceutical antitrust cases throughout the country, as well as decades of experience in the Eastern District of Pennsylvania.

22. During the investigation, litigation (including extensive motion practice and discovery), and settlement negotiations, EPPs researched, analyzed, and evaluated many contested legal and factual issues. In doing so, EPPs recognized the benefits, risks and consequences of continued litigation in comparison to the proposed Settlement.

23. There was no collusion among counsel for the settling Parties at any time during these negotiations. To the contrary, the negotiations were contentious, hard-fought, and fully informed. EPPs sought and obtained a significant monetary benefit from Sandoz. Aside from the Settlement Agreement, which limits the amount that Class Counsel can seek in attorneys' fees, there was no discussion or agreement of any kind regarding the amount of attorneys' fees, costs or service awards that EPPs' counsel or EPPs may seek from the Court relating to this Settlement.

24. Under the terms of the Settlement Agreement, Sandoz has deposited $275,000,000 into an EPP Escrow Account. Additionally, the Settlement Agreement provides for cooperation, which includes, among other things, responses to data inquiries, and authentication and admission of documents.

25. I have litigated numerous antitrust class actions as lead counsel, co-lead counsel or in other leadership positions, and I have negotiated many settlements. In my opinion, the proposed Settlement Agreement with Sandoz is fair, reasonable, adequate and in the best interests of the EPP Settlement Class. This Settlement provides substantial benefits to the EPP Settlement Class and avoids the significant delays, costs, burdens, and uncertainties of continuing protracted and contentious litigation with Sandoz.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on this 14th day of February, 2025 in Philadelphia, PA.

_/s/ Roberta D. Liebenberg_____
Roberta D. Liebenberg

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 27241<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*ALL END-PAYER ACTIONS* | HON. CYNTHIA RUFE |

## Settlement Agreement

This Settlement Agreement ("Agreement") is made and entered into by and between Sandoz Inc. and Fougera Pharmaceuticals Inc. ("Sandoz") and the End-Payer Plaintiffs (as defined below, the "EPPs") (together, the "Parties"), to settle the cases that were brought by the EPPs against Sandoz and consolidated into *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.) ("the MDL").

WHEREAS, the EPPs are pursuing claims in the MDL on behalf of themselves and the EPP Settlement Class Members, alleging that Sandoz and others engaged in a scheme or schemes to fix, maintain or stabilize prices, rig bids, and engage in market and customer allocation on the Drugs at Issue, causing EPP Settlement Class Members to pay more for those drugs than they otherwise would have paid, in violation of federal and state antitrust laws, state consumer protection laws, and common law;

WHEREAS, the Parties are represented by experienced counsel and have engaged in arm's-length settlement negotiations;

WHEREAS, after substantial fact and expert discovery, and extensive evaluation of the claims and defenses, and in light of ongoing litigation against other defendants in the Actions and Sandoz's commitment to provide valuable assistance in EPPs' ongoing prosecution of the Actions, EPP Settlement Class Counsel have concluded that resolving the EPPs' claims against Sandoz through this settlement is in the interest of the EPP Settlement Class, in that this settlement will assure a substantial benefit to EPP Settlement Class Members and allow EPPs to devote resources to the prosecution of their claims against other Defendants, with Sandoz's cooperation;

WHEREAS, EPP Settlement Class Counsel believe that the Settlement is fair, reasonable, adequate and in the best interests of the members of the EPP Settlement Class within the meaning of Fed. R. Civ. P. 23;

1

WHEREAS, despite Sandoz's belief that it has good defenses, Sandoz has agreed to enter into this Agreement to avoid the further expense and other burdens of litigation, to obtain the dismissals, covenants, and releases contained in this Agreement, and to put to rest with finality the cases that have been brought by the EPPs against Sandoz;

NOW, THEREFORE, in consideration of the mutual promises and other good and valuable consideration provided in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I.    Definitions

A.    "Code" is defined as the Internal Revenue Code of 1986, as amended.

B.    "Conduct" means any act or omission of the Sandoz Releasees or of persons or entities alleged to be co-conspirators of the Sandoz Releasees concerning antitrust, price fixing, market allocation, bid-rigging, unfair competition, consumer protection, "overarching conspiracy," unjust enrichment, fraud, or false claims, and/or any other anticompetitive or unfair conduct related to or based on, in whole or in part, the allegations in the Actions, in connection with the manufacture, sale or distribution of Drugs at Issue or any other generic drug for which claims could have been asserted based on the facts alleged in any of the complaints filed in the Actions, including all formulations and strengths of those drugs and any overarching conspiracy claims involving any of the Drugs at Issue or based in whole or in part on facts alleged in the Actions, as well as any claims related to or arising out of the spin-off and transfer of assets among Novartis AG, Sandoz AG, Sandoz Group AG, and Sandoz Inc.

C.    "Defendant" means any party named as a defendant in any of the Actions at any time up to and including the date of the court's Final Approval Order.

D.    "Drugs at Issue" means the drugs listed in Appendix A.

E.    "Effective Date" shall be the date on which the final signatory of this Agreement executes this Agreement.

F.    "End-Payer Plaintiffs" means those EPP Settlement Class Members who were named plaintiffs in any of the EPP Actions as of the Effective Date, or who have been or are subsequently added as named plaintiffs in any of the EPP Actions prior to the entry of final judgment against Sandoz in the EPP Actions.

G.    "EPP Actions" or "Actions" means the following cases consolidated in the MDL: *In re: Pravastatin Cases*, No. 2:16-pv-27242 (E.D. Pa.); *In re Albuterol Cases*, 2:16-al-27242 (E.D. Pa.); *In re Amitriptyline Cases*, 2:16-am-27242 (E.D. Pa.); *In re Baclofen Cases*, 2:16-bc-27242 (E.D. Pa.); *In re Benazepril HCTZ Cases*, 2:16-bz-27242 (E.D. Pa.); *In re Clobetasol Cases*, 2:16-cb-27242 (E.D. Pa.); *In re Clomipramine Cases*, 2:16-cm-27242 (E.D. Pa.); *In re Digoxin Cases*, 2:16-dg-27242 (E.D. Pa.); *In re Desonide Cases*, 2:16-ds-27242 (E.D. Pa.); *In re Divalproex ER Cases*, 2:16-dv-27242 (E.D. Pa.); *In re Doxycycline Cases*, 2:16-dx-27242 (E.D. Pa.); *In re Econazole Nitrate Cases*, 2:16-ec-27242 (E.D. Pa.); *In re Fluocinonide Cases*, 2:16-fl-

2

27242 (E.D. Pa.); *In re Glyburide Cases,* 2:16-gl-27242 (E.D. Pa.); *In re Lidocaine/Prilocaine Cases,* 2:16-ld-27242 (E.D. Pa.); *In re Levothyroxine Cases,* 2:16-lv-27242 (E.D. Pa.); *In re Propranolol Cases,* 2:16-pp-27242 (E.D. Pa.); *In re Ursodiol Cases,* 2:16-ur-27242 (E.D. Pa.); *1199SEIU National Benefit Fund v. Actavis Holdco U.S., Inc.,* No. 2:18-cv-02401 (E.D. Pa.); *1199SEIU National Benefit Fund v. Actavis Holdco U.S., Inc.*, No. 2:19-cv-06011 (E.D. Pa.); and *1199SEIU National Benefit Fund v. Sandoz Inc.*, No. 2:24-cv-04894 (E.D. Pa.).

H.      "EPP Releasors" shall refer to the End-Payer Plaintiffs and all other EPP Settlement Class Members, and their past and present parents, subsidiaries and affiliates, and their respective predecessors, successors, heirs, executors, administrators and assigns, as well as any current and former officers, directors, employees, attorneys, stockholders, principals, managers, partners, members, agents, representatives, trustees, insurers and owners thereof.

I.      "EPP Settlement Amount" or "Settlement Amount" is the aggregate sum of $275,000,000 USD, all of which shall constitute restitution within the meaning of Section 162(f)(2) of the Code and 26 C.F.R. § 1.162-21(e)(4)(i). No part of the EPP Settlement Amount is paid (a) in respect of any claim for the trebling of damages (as opposed to actual damages), (b) to reimburse any government or governmental entity for investigation or litigation costs, or (c) for or in lieu of any fine, penalty, forfeiture, or punitive damages. To the extent that any party hereto is required to report the EPP Settlement Amount or any portion thereof under Section 6050X of the Code, such party shall report such amount as restitution. Except as set forth in this Paragraph, the EPPs take no position on the tax treatment of the payments under the Agreement.

J.      "EPP Settlement Class" shall be defined as all persons and entities in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands, that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for any Drugs at Issue, other than for resale, from May 1, 2009 through December 31, 2019. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal governmental entities; (c) all state governmental entities (except for cities, towns, municipalities, counties and other local governmental entities with self-funded prescription drug plans, all of which are included in the class); (d) all governmental Medicaid agencies, private Medicaid managed care organizations, and consumers who were covered by Medicaid for their purchases of Drugs at Issue; and (h) Judges assigned to this case and any members of their immediate families. For avoidance of doubt, the class does not include (i) persons or entities who only purchased Drugs at Issue for purposes of resale or directly from Defendants; (ii) fully insured employers to the extent that they use fully-insured plans (*i.e.*, employers that purchased insurance covering 100% of their reimbursement obligation to members); and (iii) pharmacy benefit managers. Where a putative class member has purchases that meet the definition of the EPP Settlement Class, but also has purchases that fall within one or more of the exclusions set forth in this Paragraph I.J., that putative class member is included in the EPP Settlement Class only with respect to those purchases that meet the definition of the EPP Settlement Class.

K.      "EPP Settlement Class Counsel" shall refer to the law firm of Fine, Kaplan and Black, R.P.C.

L.      "EPP Settlement Class Member" means each potential member of the EPP Settlement Class who does not submit a timely and valid request to be excluded from the EPP Settlement Class.

M.      "Final Approval Order" means the order to be entered by the District Court in the MDL that gives final approval to this Settlement, releases all Released Claims, and enters final judgment in the Actions as to Sandoz. The Parties intend for the Final Approval Order to include provisions: (1) finding this Settlement (i) to have been entered into in good faith and (ii) to be fair, reasonable and adequate, including within the meaning of Fed. R. Civ. P. 23; (2) certifying the EPP Settlement Class; (3) finding that the notice given constitutes due, adequate and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure; (4) finding that all members of the EPP Settlement Class who have not submitted timely and valid requests for exclusion shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement; (5) incorporating the releases set forth in Section VI, and forever barring the EPP Releasors from asserting any Released Claims; (6) retaining exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement; (7) directing that all claims by and on behalf of the EPP Releasors be dismissed with prejudice as to the Sandoz Releasees only and, except as provided herein, with prejudice and without costs or attorney's fees recoverable under 15 U.S.C. § 15(a); (8) determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the Final Approval Order in the Actions as to the Sandoz Releasees shall be final and immediately appealable; and (9) entering final judgment in the Actions as to Sandoz.

N.      "Final Court Approval" means the District Court in the MDL has entered the Final Approval Order, and the time to appeal or to seek permission to appeal from the court's approval of this Agreement, and entry of the order and final judgment as to Sandoz, has expired and no motion or other pleading has been filed seeking to set aside, enjoin, or in any way alter the Final Approval Order or the entry of judgment or to toll the time for appeal of the Final Approval Order or the judgment; or, if appealed, approval of this Agreement and the final judgment as to Sandoz has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

O.      "Notice Period" means the time period allotted for EPP Settlement Class Members to (i) object to this Settlement; or (ii) file a timely and valid request for exclusion.

P.      "Preliminary Approval Order" means an order to be entered by the District Court in the MDL, which the Parties intend will include the following provisions: (1) conditional certification of the EPP Settlement Class for settlement purposes, including appointment of class representatives and EPP Settlement Class Counsel; (2) preliminary approval of this Settlement Agreement with respect to the EPP Settlement Class as (i) having been entered into in good faith and (ii) being fair, reasonable, adequate and in the best interests of the members of the EPP Settlement Class; (3) approve the proposed notice plan and direct notice to the EPP Settlement Class; (4) set a schedule for a hearing after the Notice Period has expired to finally approve the

4

Settlement and EPP Settlement Class Counsel's application for an award of attorney's fees, reimbursement of expenses, and/or service awards to the End-Payer Plaintiffs; and (5) stay all proceedings in the Actions on behalf of the End-Payer Plaintiffs and the EPP Settlement Class against the Sandoz Releasees, except those proceedings provided for, or required by, Paragraphs III.E., XII.E. or any other provision in this Settlement Agreement and except for EPPs filing of a proof of service in Case No. 24-cv-4894 (E.D. Pa.) as to Sandoz Group AG.

Q.      "Released Claims" means any and all manner of claims, counter-claims, demands, actions, rights, liability, costs, debts, expenses, attorneys' fees, restitution, judgments, and civil and administrative causes of action of any type, including monetary, equitable, and injunctive, whether class, individual, or otherwise in nature (whether or not any EPP Settlement Class Member has objected to the Settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity), that were asserted or that could have been asserted, whether known or unknown, whether accrued or unaccrued, against the Sandoz Releasees arising out of or relating to the Conduct. Released Claims include claims arising out of the Conduct under (1) federal or state antitrust laws, (2) unfair competition or consumer protection laws, and (3) any other statute or common or equitable law.

1.      Released Claims include all claims based on any and all rights (including by assignment) to bring claims based on damages incurred by another person or entity.

2.      Released Claims do not include (a) any claims based on direct purchases of Drugs at Issue; (b) any claims based on indirect purchases of Drugs at Issue for purposes of resale; and (c) claims under laws other than those of the United States relating to purchases made by the EPP Releasors outside the United States.

3.      Released Claims also do not include claims that do not arise out of the Conduct, including claims: (a) for negligence, breach of contract, express or implied warranty, bailment, failure to deliver, lost goods, damaged or delayed goods, or defective or deficient products or services provided; (b) under Article 2 of the Uniform Commercial Code; (c) for unfair or deceptive marketing or advertising of Drugs at Issue or for off-label marketing claims; (d) for violations of the securities laws; (e) for reverse payment, "pay for delay," sham litigation, sham citizen petition, "Walker Process" fraud, or other means of reducing or impairing competition other than the Conduct; (f) for any claims of any type relating to any drugs other than the Drugs at Issue, other than those pled or based on the facts alleged in the Actions; and (g) based on obligations created by this Agreement.

R.      "Sandoz Releasees" are defined as Sandoz and its current and former parents, subsidiaries and affiliates (including but not limited to Sandoz Inc., Novartis AG, Sandoz AG, Sandoz Group AG, and Fougera Pharmaceuticals Inc.), their respective predecessors, successors, heirs, executors, administrators and assigns, as well as any current and former officers, directors, employees (including, but not limited to, Armando Kellum and Walt Kaczmarek), attorneys, stockholders, principals, managers, partners, members, agents, representatives, trustees, insurers and owners thereof. Notwithstanding the foregoing, nothing herein shall alter or affect in any way the obligations that any current or former Sandoz employee has arising out of any

agreements entered into with End-Payer Plaintiffs or EPP Settlement Class Counsel, and, if such an individual fails to comply with any of his or her obligations under any such agreement, that individual will be excluded from the definition of "Sandoz Releasees." Natural persons are Sandoz Releasees only with respect to Conduct undertaken on behalf of one or more Sandoz Releasees.

## II.    Payment of the Settlement Amount

A.    Sandoz will pay or cause to be paid the EPP Settlement Amount by December 31, 2024, pursuant to written payment instructions provided by EPP Settlement Class Counsel. EPPs shall provide written payment instructions by December 18, 2024. EPP Settlement Class Counsel's written payment instructions shall direct the entire EPP Settlement Amount to be paid directly into an escrow account (the "EPP Escrow"), pending Final Court Approval of this Settlement.

B.    Sandoz shall have no obligation to make any other payments of any kind in connection with this Agreement. The EPP Releasors shall have no recovery from the Sandoz Releasees (including for attorneys' fees, costs or service awards), other than from the EPP Settlement Amount as set forth herein.

## III.    Preliminary and Final Court Approval

A.    The Parties and their counsel agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, to (i) carry out the terms of this Settlement Agreement, (ii) secure prompt and complete court approval of the Settlement, and (iii) secure the prompt, complete and final dismissal with prejudice of claims in the Actions against the Sandoz Releasees. This includes Sandoz serving notice of this Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715.

B.    The Parties and their counsel agree that promptly following the Effective Date (and prior to EPPs filing the motion for a Preliminary Approval Order), they will create a proposed plan to allocate the Settlement Fund fairly, reasonably and adequately among EPP Settlement Class Members. EPP Settlement Class Counsel will take the lead and have final responsibility for drafting the plan of allocation and presenting it to the court. Sandoz and its counsel will have the ability to present their views and have them considered, and to review and comment on the plan before it is presented to the court. Sandoz will have no further obligations with respect to the allocation or distribution of the Settlement Fund.

C.    It is understood and agreed by the Settling Parties that any allocation or distribution plan, including any adjustments to any EPP Settlement Class Member's claim, is not a part of this Settlement and is to be considered by the court separately from the court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceedings solely relating to the allocation or distribution plan shall not operate to terminate or cancel this Settlement or affect the finality of the Final Approval Order, final judgment, or any other orders entered pursuant to this Settlement. The time to appeal from the Final Approval

Order shall commence upon the court's entry of the Final Approval Order and final judgment regardless of whether the distribution plan or an application for attorneys' fees and expenses has been submitted to the court or approved.

D.     EPP Settlement Class Members shall be given notice as required by the Federal Rules of Civil Procedure. EPPs shall promptly (and in no event more than sixty (60) calendar days after the Effective Date) file a motion for a Preliminary Approval Order, including their proposed notices and notice plan to inform potential EPP Settlement Class Members of their right to (i) object to this Agreement or (ii) file a timely and valid request for exclusion. Sandoz shall have the opportunity to review and comment on the motion for a Preliminary Approval Order and all accompanying exhibits before the motion is filed.

E.     In the event that the court fails to give preliminary approval to this Agreement, this Settlement shall be terminated, the entire Settlement Amount (less any notice costs already incurred up to $750,000) and any interest accrued shall be refunded to Sandoz within seven (7) calendar days of the order denying preliminary approval, and litigation of the Actions as between EPPs and Sandoz will resume, with the Parties being bound by all applicable schedules, rulings, opinions and orders entered by the Court and Special Masters in the Actions. The Parties expressly reserve all of their rights, claims and defenses if the court does not preliminarily approve this Agreement.

F.     Within sixty (60) calendar days of the Preliminary Approval Order and the court's approval of the allocation plan, notices and notice plan, or such other time as directed by the court, EPPs shall implement their notice plan, providing EPP Settlement Class Members notice of their rights (i) to object to this Agreement or (ii) to file a timely and valid request for exclusion.

G.     Costs for the notice will be paid from the EPP Escrow without further order of the court, but shall be limited to $750,000 from that account.

H.     Within sixty (60) calendar days following the conclusion of the Notice Period or as otherwise agreed by the Parties or directed by the court, EPPs shall file with the court a Motion for a Final Approval Order. Sandoz shall have the opportunity to review and comment on the Motion for a Final Approval Order and all accompanying exhibits before the motion is filed.

## IV.     Exclusions

A.     Subject to court approval, any person or entity that is a potential member of the EPP Settlement Class may seek to be excluded from the EPP Settlement by submitting a valid and timely request for exclusion. Any such person or entity that submits a valid and timely request for exclusion will not be eligible to receive a distribution of any portion of the EPP Settlement Amount and will have no rights with respect to the EPP Settlement. Sandoz reserves all legal rights and defenses as to all such persons or entities, and nothing in this Agreement shall be used against Sandoz in any proceeding involving such persons or entities.

B.     Subject to court approval, any request for exclusion from the EPP Settlement shall

be submitted in writing, and the person or entity seeking exclusion must state their full name, address, telephone number and e-mail address and include a statement that they wish to be excluded from the EPP Settlement. Any person or entity seeking to exclude another person or entity, *e.g.*, an insurer seeking to exclude its Administrative Services Only ("ASO") clients, must identify with specificity each such person or entity it seeks to exclude and must submit documentation showing its authority to exclude each such person or entity. In addition, any person or entity that seeks to exclude from the EPP settlement any claims assigned to that person or entity must submit documentation showing the assignment and its authority to exclude those claims.

C.    Subject to court approval, a request for exclusion that does not comply with all of the provisions set forth above and in the notices will be invalid, and the person or entity serving such an invalid request shall be bound by this Agreement upon Final Court Approval.

D.    EPP Settlement Class Counsel shall, within ten (10) calendar days of the deadline for submitting a request for exclusion (the "Opt-Out Deadline"), provide Sandoz with a list of, and upon request copies of, all requests for exclusion. EPP Settlement Class Counsel shall file with their Motion for Final Approval a list of all persons and entities that timely and validly requested exclusion.

E.    Any of the Parties may dispute an exclusion request, in which case they shall, if possible, seek to resolve the disputed exclusion request by agreement within thirty (30) calendar days of the Opt-Out Deadline. If necessary, the Parties will seek court approval of any such resolutions. If the Parties are unable to resolve any such disputes, the Parties will submit such unresolved disputes to the court for resolution.

## V.    Impact of Exclusions on the Settlement Amount

A.    The EPP Settlement Amount may be reduced by a maximum of $45,000,000 pursuant to a confidential calculation agreed to by the Parties that accounts for potential members of the EPP Settlement Class that submit valid and timely requests for exclusion. The amount by which the original EPP Settlement Amount exceeds the revised EPP Settlement Amount after reduction for exclusions (the "Opt-Out Reduction") shall be returned to Sandoz, along with a *pro rata* portion of interest (less a reserve for taxes) accrued on the EPP Escrow.

B.    Sandoz and EPP Settlement Class Counsel shall cooperate in good faith in determining the amount of this reduction, following the process and timing set forth in the Parties' confidential agreement setting forth the manner for calculating the Opt-Out Reduction.

## VI.    Release and Covenant Not To Sue

A.    In addition to the effect of any final judgment entered in accordance with this Settlement and in consideration of Sandoz's obligations under this Agreement, upon Final Court Approval, the EPP Releasors (on behalf of themselves and their respective past and present parents, subsidiaries and affiliates, as well as their past and present general and limited partners, stockholders, officers, directors, employees, agents, attorneys, servants, predecessors, successors,

heirs, executors, administrators and representatives) release, acquit, and forever discharge all of the Sandoz Releasees (including past and present parents, subsidiaries, divisions, affiliates, stockholders and general or limited partners, as well as all past and present officers, directors, employees, trustees, insurers, agents, attorneys, and any other representatives thereof, subject to the limitations set forth in Paragraph I.R. above) from all Released Claims.

B.      With respect to the Released Claims, the EPP Releasors expressly waive and release any and all provisions, rights and benefits under any law of any state or territory in the United States, or principle of common law that provides that a general release does not extend to claims that the creditor or releasing party does not know of or suspect to exist in his or her favor at the time of executing the release.

C.      That includes California Civil Code § 1542. With respect to the Released Claims, the EPP Releasors expressly waive and release all provisions, rights and benefits under California Civil Code § 1542. That provision states as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

D.      The EPP Releasors absolutely, unconditionally and irrevocably covenant not to bring, file or otherwise assert any Released Claim, or to cause or assist to be brought, filed, or otherwise asserted any Released Claim, or to otherwise seek to establish liability for any Released Claim against any Sandoz Releasees in any forum whatsoever, whether on their own behalf or on behalf of any other person or entity, to the fullest extent permitted by law.

E.      As part of the proposed court order to be submitted to the court with the motion for final approval of this Settlement, the EPPs shall dismiss with prejudice all claims against Sandoz in the Actions. All Released Claims shall be finally, fully and forever resolved, settled, compromised and released, with prejudice, and the Sandoz Releasees shall not be named as defendants in any future new or amended complaint arising out of or related to the Released Claims.

F.      This Agreement resolves claims only against the Sandoz Releasees. It is not intended to affect in any way the rights that the EPP Releasors have against any other party, person or entity that is not included within the definition of Sandoz Releasees. For the avoidance of doubt, neither any Defendant in the Actions other than the Sandoz Releasees, nor any such Defendant's parents or successors in interest are intended to be, or are, included within the scope of this release. For avoidance of doubt, if any other Defendant in the Actions becomes, after the Effective Date, affiliated in any way with Sandoz, including but not limited to by becoming a subsidiary or parent of Sandoz, such affiliation shall have no effect on the liability of said other Defendant.

G.      Sandoz's sales of Drugs at Issue shall, to the fullest extent permitted or authorized

by law, remain in the Actions against the other Defendants as a potential basis for recovery.

## VII.     Discovery, Authentication and Cooperation

A.     As of the Effective Date, and continuing unless and until this Agreement is terminated as provided herein, the EPPs shall not serve any discovery requests on Sandoz, notice depositions of Sandoz, file any motions against Sandoz, or take any other adverse action against Sandoz in the MDL or any related litigation except to enforce the terms of this Agreement. As of the Effective Date, and continuing unless and until this Agreement is terminated as provided herein, Sandoz shall not serve any discovery requests on the EPPs, notice depositions of the EPPs, file any motions against the EPPs, or take any other adverse action against the EPPs in the MDL or any related litigation except to enforce the terms of this Agreement. Notwithstanding the above, the EPPs may continue to attend depositions of current and former Sandoz employees and may question those individuals in service of the EPPs' prosecution of claims against the non-Sandoz Defendants. Counsel for Sandoz may likewise continue to attend depositions of current and former employees of the EPPs, and of any other individuals represented by the EPPs, and may question those individuals in service of Sandoz's defense of claims brought by MDL plaintiffs other than the EPPs. Notwithstanding the above, EPPs retain all rights to pursue discovery from Armando Kellum. In addition, EPPs retain all rights to pursue discovery from any current or former Sandoz employee who also was employed by another Defendant during the relevant period, provided that EPPs exclude from any requests to such persons information about their conduct taken on behalf of Sandoz Releasees.

B.      The EPPs shall continue to have the same rights that they currently have to receive discovery provided by Sandoz to other parties in the MDL pursuant to the protective order governing the use of documents and other information produced in the MDL.

C.     Sandoz shall continue to have the same rights that it currently has to receive discovery provided by the EPPs to other parties in the Actions pursuant to the protective order governing the use of documents and other information produced in the MDL.

D.     Sandoz agrees to use reasonable efforts to authenticate and lay the foundation to admit as business records, where applicable, documents and/or things produced by Sandoz in the Actions to confirm the authenticity of the documents produced by Sandoz in the Actions, and to confirm, where applicable, that such documents and data produced by Sandoz qualify as business records, whether by declarations, depositions, hearings and/or trial testimony as may be necessary to render such documents and data admissible at trial.

E.     Sandoz agrees to promptly provide the EPPs with any additional documents, data, or materials produced in the Actions as the result of a discovery request, agreement, or Court Order. Sandoz further agrees to use reasonable efforts to assist the EPPs to understand data produced by Sandoz, including consulting with technical personnel to address questions posed by the EPPs' data consultants, and to provide any additional information or data reasonably necessary to understand or clarify the data or otherwise render it usable by the EPPs' experts and admissible.

     F.      Sandoz will also in good faith consider reasonable requests from the EPPs for additional assistance that does not impose an undue burden on Sandoz.

     G.      Notwithstanding any other provision of this Agreement, Sandoz may assert where applicable the work product doctrine, the attorney-client privilege, and the common interest privilege (collectively, "Privileged Material") and shall not disclose any information provided by other defendants pursuant to a common interest agreement. The EPPs shall not request disclosure of Privileged Material, and a refusal to provide Privileged Material shall not be deemed a breach of this Agreement by Sandoz. The EPPs shall be free to use statements, testimony, materials or information provided under this Agreement in any motion, opposition or other pleading in the Actions or as evidence at trial in this case.

## VIII.   Qualified Settlement Fund

     A.      The EPP Escrow (a "Settlement Fund") will be established at Huntington Bank with such bank serving as escrow agent ("Escrow Agent") subject to an escrow agreement mutually acceptable to the Parties. The Settlement Fund is established to resolve and satisfy the claims described in the preamble to this Agreement and alleged in the Actions, and it shall be subject to the court's continuing supervision and control. In addition, EPP Settlement Class Counsel, the Escrow Agent and the Administrator shall make such elections as necessary or advisable to carry out the provisions of this Section VIII. Such elections shall be made in compliance with the procedures and requirements contained in any applicable regulations.

     B.      The Parties intend that the Settlement Fund shall be a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, the Parties and their counsel shall act, and shall cause the Escrow Agent to act, in a manner consistent with the treatment of the Settlement Fund as such a qualified settlement fund, and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. The administrator for the EPP Escrow ("Administrator") shall be a claims administrator selected by EPP Settlement Class Counsel. The Administrator shall cause the timely and proper filing of all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation §§ 1.468B-2(k)(1) and (l)(2)). The Administrator shall make a "relation-back election" (as defined in Treasury Regulation § 1.468B-1(j)), if available, to permit the Settlement Fund to be treated as a qualified settlement fund from the earliest permitted date. It shall be the responsibility of the Administrator to cause the timely and proper preparation and delivery of the necessary documentation with respect to the Settlement Fund for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

     C.      The Escrow Agent shall cause the Settlement Fund to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these

instruments as they mature in similar instruments at their then current market rates. Sandoz shall bear no risk related to the Settlement Fund. The Settlement Fund shall be deemed and considered to be in *custodia legis* of the court, and shall remain subject to the jurisdiction of the court, until such time as the funds therein shall be distributed pursuant to this Agreement or further order of the court.

D.      All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned on the Settlement Fund, including any taxes or tax detriments that may be imposed upon any of the Parties with respect to income earned on the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of the Settlement Fund (including expenses of tax attorneys and accountants, mailing and distribution costs, and expenses relating to filing (or failing to file) tax returns with respect to the Settlement Fund ("Tax Expenses")), shall be paid out of the Settlement Fund without further order of the Court.

E.      No Sandoz Releasee or their counsel shall have any liability or responsibility with respect to the Settlement Fund for the Taxes or the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other taxing authority. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Administrator out of the Settlement Fund without prior order from the court, and the Administrator shall be obliged (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). No Sandoz Releasee shall be responsible or have any liability for any reporting requirements that may relate thereto. The Parties agree to cooperate with each other and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph VIII.E.

## IX.    Payment of Expenses

A.      Sandoz agrees to permit use of a maximum of $750,000 of the Settlement Fund, without court approval, toward (i) the cost of providing notice to the potential members of the EPP Settlement Class, and (ii) the costs of administration of the Settlement Fund prior to final court approval.  To the extent such expenses have been actually incurred or paid for notice and administration costs, those notice and administration expenses (up to the maximum of $750,000) are not recoupable if this settlement does not become final or is terminated. Other than as provided in this paragraph, Sandoz shall not be liable for any of the costs or expenses incurred by EPPs in the Actions or otherwise, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the court or Special Masters, appeals, trials, the negotiation of other settlements,

or claims administration, except to the extent that any such fees, costs or expenses are awarded from the Settlement Fund by court order.

## X.    The Settlement Fund

A.    After this Agreement receives Final Court Approval, and at a time to be determined by EPP Settlement Class Counsel, the Settlement Fund shall be distributed in accordance with a distribution plan to be submitted and approved by the court. In no event shall any Sandoz Releasee have any responsibility, financial obligation or liability whatsoever with respect to the investment or distribution of the Settlement Fund, or the administration of the Settlement Fund, including the costs and expenses of such investment, distribution and administration.

B.    In the event that, after distribution, funds remain in the Settlement Fund in an amount that, by itself, cannot be economically distributed to the EPP Settlement Class, such funds may be retained for later distribution along with the proceeds of future settlements or judgments in the Actions or, with court approval, awarded to EPP Settlement Class Counsel as additional attorneys' fees or expense reimbursements or to make *cy pres* payments for the benefit of the EPP Settlement Class. No portion of the Settlement Fund will be returned to Sandoz except pursuant to Paragraphs III.C, V and XII.D of this Settlement Agreement. Except as provided by order of the Court, no member of the Settlement Class shall have any interest in the Settlement Fund or any portion thereof.

## XI.    EPP Settlement Class Counsel's Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives

A.    EPP Settlement Class Counsel may, after Preliminary Approval of this Agreement but sufficiently before expiration of the Notice Period and before the Court's final fairness hearing on the Settlement, submit an application to the court ("Fee and Expense Application") or request a provisional set-aside in anticipation of a later Fee and Expense Application, for the following payments to be made to EPP Settlement Class Counsel after Final Court Approval of this Agreement: (i) an award of attorneys' fees not in excess of one third of the sum of the EPP Settlement Amount and any interest accrued thereon while in the EPP Escrow, plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Actions ("Fee and Expense Award"). In addition, EPP Settlement Class Counsel may, after Preliminary Approval of this Agreement but sufficiently before expiration of the Notice Period and before the Court's final fairness hearing on the Settlement, submit an application for service awards to be paid to the EPP class representatives or seek a provisional set-aside in anticipation of a later application for service awards.

B.    Attorneys' fees and expenses awarded by the court shall be payable from the EPP Escrow upon award, notwithstanding the existence of any timely filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to EPP Settlement Class Counsel's obligation to make appropriate refunds or repayments to the EPP Escrow within ten (10) business days if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, an award of fees or expenses is reduced

or reversed, or in the event this Agreement is terminated.

C.      The procedure for and the allowance or disallowance by the court of any application by EPP Settlement Class Counsel for attorneys' fees, costs and expenses, or service awards for class representatives, are not part of this Agreement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

D.      No Sandoz Releasee shall have any responsibility for, or interest in, or liability whatsoever, with respect to the allocation among EPP Settlement Class Counsel, other counsel for the EPPs and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the court may make in the Actions.

## XII.    Termination If Agreement Is Not Approved or Final Judgment Is Not Entered

A.      In the event that the court fails to grant Final Court Approval to this Agreement without material alteration of the Settlement's terms, or if such approval is set aside on appeal, Sandoz and the End-Payer Plaintiffs shall each have the option to terminate this Agreement and have the Settlement Amount refunded to Sandoz as set forth herein.

B.      A modification or reversal on appeal of any amount of EPP Settlement Class Counsel's fees and expenses awarded by the court out of the Settlement Funds shall not be deemed a basis to terminate this Agreement.

C.      Written notice of the exercise of any right to terminate shall be made according to the terms herein.

D.      In the event that this Agreement does not receive Final Court Approval, or this Agreement otherwise is terminated by any party under Section III.E or any other provision herein, then: (i) this Agreement shall be of no force or effect, except as expressly provided in Paragraph XII.A or other portions of this Agreement; (ii) the Settlement Fund (with a *pro rata* share of interest accrued thereon) shall be returned to Sandoz, less disbursements made or accrued in accordance with Sections VIII and IX of this Agreement; and (iii) litigation of the Actions as between EPPs and Sandoz will resume, with the Parties being bound by all applicable schedules, rulings, opinions and orders entered by the Court and Special Masters in the Actions. The Parties expressly reserve all of their rights, claims and defenses if this Agreement does not receive Final Court Approval or is otherwise terminated.

E.      Further, and in any event, Sandoz and EPPs agree that this Agreement, whether or not it receives Final Court Approval or is otherwise terminated by any Party under any provision herein, and any and all negotiations, documents and discussions associated with it, shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law or of any liability or wrongdoing by any Sandoz Releasee; (ii) the absence of any violation of any statute or law or the absence of any liability or wrongdoing by any Sandoz Releasee; or (iii) the truth or falsity of any of the claims or allegations contained in the Actions or any other pleading

14

filed in the MDL. Evidence derived from this Agreement, and any and all negotiations, documents and discussions associated with it, shall not be discoverable or used in any way, whether in the Actions or in any other action or proceeding, except to enforce this Agreement.

## XIII.  Use of Agreement as Evidence

A.      Neither this Agreement nor the Settlement, nor any act performed, statement made, or document executed pursuant to or in furtherance of this Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or invalidity of any Released Claims, any allegation made in the Actions, or any wrongdoing or liability, or the absence thereof, of the Sandoz Releasees; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission, or the absence of any liability, fault or omission, of the Sandoz Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. The limitations described in this paragraph apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order or the Judgment

B.      Neither this Agreement nor the Settlement, nor any act performed, statement made, or document executed pursuant to or in furtherance of this Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement after the Final Approval Order is entered, and except that, after the Final Approval Order is entered, any Party may file this Agreement and/or the Judgment in any action for any purpose, including, but not limited to, supporting a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## XIV.  Notice

A.      Notice to Sandoz pursuant to this Settlement Agreement shall be sent by registered United States mail, return receipt requested, and electronic mail to:

Matthew Kent
Alston & Bird LLP
1201 W Peachtree St NE #4900
Atlanta, GA 30309
matthew.kent@alston.com

B.      Notice to EPPs or the EPP Settlement Class pursuant to this Settlement Agreement shall be sent by registered United States mail return receipt requested and electronic mail to:

Roberta D. Liebenberg
Jeffrey S. Istvan
Fine, Kaplan and Black, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107

rliebenberg@finekaplan.com
jistvan@finekaplan.com

## XV.  Miscellaneous

A.     Duty Not to Encourage Exclusion or Objection. The Parties agree that they shall not in any way encourage, promote, or solicit any Person within the definition of the EPP Settlement Class, or their counsel, to request exclusion from the EPP Settlement Class, to object to this Agreement, or to seek any relief inconsistent with this Agreement.

B.     This Agreement may be executed in counterparts, each of which will be deemed an original, but which together will constitute one and the same instrument, and a facsimile signature or .pdf signature shall be deemed an original signature for purposes of executing this Agreement.

C.     This Agreement, together with Appendix A and the confidential understanding identified herein, contains the entire Agreement between the Parties, and no other understandings or agreements, verbal or otherwise, exist between the Parties, except as set forth or referred to herein.

D.     This Agreement (other than the Cooperation Agreement, which is governed by its own terms) may not be modified, changed, cancelled, rescinded, amended or varied (except under the specific termination provisions set forth herein), nor may any of its terms be waived, except by a writing signed by all of the parties.

E.     None of the parties to this Agreement shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

F.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and shall be provided as set forth in Section XIV.

G.     This Agreement shall be governed by, construed by, and enforced in accordance with the laws of the Commonwealth of Pennsylvania. The parties agree that venue for any and all matters or disputes arising out of this Agreement shall lie solely in the U.S. District Court for the Eastern District of Pennsylvania (the "Court") and that the Court shall retain exclusive jurisdiction over the implementation and enforcement of this Settlement.

H.     Sandoz Releasees, End-Payer Plaintiffs and each EPP Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Settlement or the applicability of this Settlement. Solely for purposes of such suit, action or proceeding, to the fullest extent that they may effectively do so under applicable law, Sandoz Releasees and the EPP Settlement Class Members irrevocably waive and agree not to assert, by way of motion, as a

16

defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any way an improper venue or an inconvenient forum. Without limiting the generality of the foregoing, it is hereby agreed that any dispute between or among any Sandoz Releasees and any EPP Releasors concerning the provisions of Section VI hereof, including, but not limited to, any suit, action or proceeding in which the provisions of Section VI are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action or proceeding arising out of or relating to this Settlement. In the event that the provisions of Section VI are asserted by any Sandoz Releasee as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding with any EPP Releasor, it is hereby agreed that such Sandoz Releasee shall be entitled to a stay of that suit, action or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on the provisions of Section VI. Nothing herein shall be construed as a submission to jurisdiction for any purpose other than any suit, action, proceeding or dispute arising out of or relating to this Settlement or the applicability of this Settlement.

I.      Each party affirms that this Agreement has been executed by its authorized representative, who is acting within his or her capacity and authority, and that by his or her signature this representative is binding the Parties on behalf of whom the Agreement is executed to the terms and conditions of this Agreement.

IT IS HEREBY AGREED by the undersigned as of:

**FINE, KAPLAN AND BLACK, R.P.C.**

By: _____     Date: _____
Roberta D. Liebenberg
Jeffrey S. Istvan
EPP Settlement Class Counsel

**ALSTON & BIRD LLP**

By: _____     Date: _____12/10/2024_____

Matthew D. Kent
Counsel for Sandoz

17

defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any way an improper venue or an inconvenient forum. Without limiting the generality of the foregoing, it is hereby agreed that any dispute between or among any Sandoz Releasees and any EPP Releasors concerning the provisions of Section VI hereof, including, but not limited to, any suit, action or proceeding in which the provisions of Section VI are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, constitutes a suit, action or proceeding arising out of or relating to this Settlement. In the event that the provisions of Section VI are asserted by any Sandoz Releasee as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding with any EPP Releasor, it is hereby agreed that such Sandoz Releasee shall be entitled to a stay of that suit, action or proceeding until the Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on the provisions of Section VI. Nothing herein shall be construed as a submission to jurisdiction for any purpose other than any suit, action, proceeding or dispute arising out of or relating to this Settlement or the applicability of this Settlement.

       I.       Each party affirms that this Agreement has been executed by its authorized representative, who is acting within his or her capacity and authority, and that by his or her signature this representative is binding the Parties on behalf of whom the Agreement is executed to the terms and conditions of this Agreement.

IT IS HEREBY AGREED by the undersigned as of:

**FINE, KAPLAN AND BLACK, R.P.C.**

By: _____     Date: ___12/16/24_____
Roberta D. Liebenberg
Jeffrey S. Istvan
EPP Settlement Class Counsel

**ALSTON & BIRD LLP**

                                          Date: _____

By: _____

Matthew D. Kent
Counsel for Sandoz

# Appendix A

# EPP Drugs at Issue

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 1 | ACETAZOLAMIDE | TABLET | 125MG |
| 1 | ACETAZOLAMIDE | TABLET | 250MG |
| 1 | ACETAZOLAMIDE ER | CAPSULE | 500MG |
| 2 | ADAPALENE | CREAM | 0.10% |
| 2 | ADAPALENE | GEL | 0.10% |
| 2 | ADAPALENE | GEL | 0.30% |
| 3 | ALBUTEROL | TABLET | 2MG |
| 3 | ALBUTEROL | TABLET | 4MG |
| 4 | ALCLOMETASONE DIPROPIONATE | CREAM | 0.05% |
| 4 | ALCLOMETASONE DIPROPIONATE | OINTMENT | 0.05% |
| 5 | ALLOPURINOL | TABLET | 100MG |
| 5 | ALLOPURINOL | TABLET | 300MG |
| 6 | AMANTADINE HCL | CAPSULE | 100MG |
| 7 | AMILORIDE HCL/HCTZ | TABLET | 5-50MG |
| 8 | AMITRIPTYLINE | TABLET | 10MG |
| 8 | AMITRIPTYLINE | TABLET | 25MG |
| 8 | AMITRIPTYLINE | TABLET | 50MG |
| 8 | AMITRIPTYLINE | TABLET | 75MG |
| 8 | AMITRIPTYLINE | TABLET | 100MG |
| 8 | AMITRIPTYLINE | TABLET | 150MG |
| 9 | AMMONIUM LACTATE | CREAM | 12% |
| 9 | AMMONIUM LACTATE | LOTION | 12% |
| 10 | AMOXICILLIN/CLAVULANATE POTASSIUM | TABLET CHEWABLE | 200-28.5MG |
| 10 | AMOXICILLIN/CLAVULANATE POTASSIUM | TABLET CHEWABLE | 400-57MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 5MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 10MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 20MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE (MAS) (ADDERALL) | TABLET | 30MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 5MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 10MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 15MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 20MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 25MG |
| 11 | AMPHETAMINE/DEXTROAMPHETAMINE ER (MAS) (ADDERALL) | CAPSULE | 30MG |
| 12 | ATENOLOL/CHLORTHALIDONE | TABLET | 50-25MG |
| 12 | ATENOLOL/CHLORTHALIDONE | TABLET | 100-25MG |
| 13 | ATROPINE SULFATE | SOLUTION | 1% |
| 14 | AZITHROMYCIN | ORAL SUSPENSION | 100MG/5ML |
| 14 | AZITHROMYCIN | ORAL SUSPENSION | 200MG/5ML |
| 15 | BACLOFEN | TABLET | 10MG |
| 15 | BACLOFEN | TABLET | 20MG |
| 16 | BALSALAZIDE DISODIUM | CAPSULE | 750MG |

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 17 | BENAZEPRIL HCTZ | TABLET | 10-12.5MG |
| 17 | BENAZEPRIL HCTZ | TABLET | 20-12.5MG |
| 17 | BENAZEPRIL HCTZ | TABLET | 20-25MG |
| 18 | BETAMETHASONE DIPROPIONATE | CREAM | 0.05% |
| 18 | BETAMETHASONE DIPROPIONATE | LOTION | 0.05% |
| 18 | BETAMETHASONE DIPROPIONATE | OINTMENT | 0.05% |
| 19 | BETAMETHASONE DIPROPIONATE AUGMENTED | LOTION | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | CREAM | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | CREAM | 0.10% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | LOTION | 0.05% |
| 20 | BETAMETHASONE DIPROPIONATE/CLOTRIMAZOLE | LOTION | 0.10% |
| 21 | BETAMETHASONE VALERATE | CREAM | 0.10% |
| 21 | BETAMETHASONE VALERATE | LOTION | 0.10% |
| 21 | BETAMETHASONE VALERATE | OINTMENT | 0.10% |
| 22 | BETHANECHOL CHLORIDE | TABLET | 5MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 10MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 25 MG |
| 22 | BETHANECHOL CHLORIDE | TABLET | 50 MG |
| 23 | BROMOCRIPTINE MESYLATE | TABLET | 2.5MG |
| 24 | BUDESONIDE | SOLUTION | 0.25MG/2ML |
| 24 | BUDESONIDE | SOLUTION | 0.5MG/2ML |
| 24 | BUDESONIDE | SOLUTION | 1MG/2ML |
| 24 | BUDESONIDE DR | CAPSULE | 3MG |
| 25 | BUMETANIDE | TABLET | 0.5MG |
| 25 | BUMETANIDE | TABLET | 1MG |
| 25 | BUMETANIDE | TABLET | 2MG |
| 26 | BUSPIRONE HCL | TABLET | 5MG |
| 26 | BUSPIRONE HCL | TABLET | 7.5MG |
| 26 | BUSPIRONE HCL | TABLET | 10MG |
| 26 | BUSPIRONE HCL | TABLET | 15MG |
| 26 | BUSPIRONE HCL | TABLET | 30MG |
| 27 | BUTORPHANOL TARTRATE | SPRAY | 10MG/ML |
| 28 | CABERGOLINE | TABLET | 0.5MG |
| 29 | CALCIPOTRIENE | SOLUTION | ALL STRENGTHS |
| 30 | CALCIPOTRIENE BETHAMASONE DIPROPRIONATE | OINTMENT | 0.064%/0.005% |
| 31 | CAPECITABINE | TABLET | 150MG |
| 31 | CAPECITABINE | TABLET | 500MG |
| 32 | CAPTOPRIL | TABLET | 12.5MG |
| 32 | CAPTOPRIL | TABLET | 25MG |
| 32 | CAPTOPRIL | TABLET | 50MG |
| 32 | CAPTOPRIL | TABLET | 100MG |
| 33 | CARBAMAZEPINE | TABLET | 200MG |
| 33 | CARBAMAZEPINE | TABLET CHEWABLE | 100MG |
| 33 | CARBAMAZEPINE ER | TABLET | 100MG |
| 33 | CARBAMAZEPINE ER | TABLET | 200MG |
| 33 | CARBAMAZEPINE ER | TABLET | 400MG |
| 34 | CARISOPRODOL | TABLET | 350MG |
| 35 | CEFDINIR | CAPSULE | 300MG |
| 35 | CEFDINIR | SOLUTION | 125MG/5ML |
| 35 | CEFDINIR | SOLUTION | 250MG/5ML |
| 36 | CEFPODOXIME PROXETIL | ORAL SUSPENSION | 50MG/5ML |
| 36 | CEFPODOXIME PROXETIL | ORAL SUSPENSION | 100MG/5ML |
| 36 | CEFPODOXIME PROXETIL | TABLET | 100MG |
| 36 | CEFPODOXIME PROXETIL | TABLET | 200MG |
| 37 | CEFPROZIL | TABLET | 250MG |
| 37 | CEFPROZIL | TABLET | 500MG |
| 38 | CEFUROXIME AXETIL | TABLET | 250MG |

A-2

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 38 | CEFUROXIME AXETIL | TABLET | 500MG |
| 39 | CELECOXIB | CAPSULE | 50MG |
| 39 | CELECOXIB | CAPSULE | 100MG |
| 39 | CELECOXIB | CAPSULE | 200MG |
| 39 | CELECOXIB | CAPSULE | 400MG |
| 40 | CEPHALEXIN (CEFALEXIN) | SOLUTION | 125MG/5ML |
| 40 | CEPHALEXIN (CEFALEXIN) | SOLUTION | 250MG/5ML |
| 41 | CHLORPROMAZINE HCL | TABLET | 10MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 25MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 50MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 100MG |
| 41 | CHLORPROMAZINE HCL | TABLET | 200MG |
| 42 | CHOLESTYRAMINE | PACKET/ORAL SOLID | 4G |
| 42 | CHOLESTYRAMINE | POWDER | 4G |
| 43 | CICLOPIROX | CREAM | 0.77% |
| 43 | CICLOPIROX | SHAMPOO | 1% |
| 43 | CICLOPIROX | SOLUTION | 8% |
| 44 | CIMETIDINE | TABLET | 200MG |
| 44 | CIMETIDINE | TABLET | 300MG |
| 44 | CIMETIDINE | TABLET | 400MG |
| 44 | CIMETIDINE | TABLET | 800MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 100MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 250MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 500MG |
| 45 | CIPROFLOXACIN HCL | TABLET | 750MG |
| 46 | CLARITHROMYCIN ER | TABLET | 500MG |
| 47 | CLEMASTINE FUMARATE | TABLET | 1.34MG |
| 47 | CLEMASTINE FUMARATE | TABLET | 2.86MG |
| 48 | CLINDAMYCIN PHOSPHATE | GEL | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | LOTION | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | SOLUTION | 1% |
| 48 | CLINDAMYCIN PHOSPHATE | VAGINAL CREAM | 2% |
| 49 | CLOBETASOL | CREAM | 0.05% |
| 49 | CLOBETASOL | E CREAM | 0.05% |
| 49 | CLOBETASOL | GEL | 0.05% |
| 49 | CLOBETASOL | OINTMENT | 0.05% |
| 49 | CLOBETASOL | SOLUTION | 0.05% |
| 50 | CLOMIPRAMINE | CAPSULE | 25MG |
| 50 | CLOMIPRAMINE | CAPSULE | 50MG |
| 50 | CLOMIPRAMINE | CAPSULE | 75MG |
| 51 | CLONIDINE | PATCH | 0.1MG/24HR |
| 51 | CLONIDINE | PATCH | 0.2MG/24HR |
| 51 | CLONIDINE | PATCH | 0.3MG/24HR |
| 52 | CLOTRIMAZOLE | SOLUTION | 1% |
| 53 | CYPROHEPTADINE HCL | TABLET | 4MG |
| 54 | DESMOPRESSIN ACETATE | TABLET | 0.1MG |
| 54 | DESMOPRESSIN ACETATE | TABLET | 0.2MG |
| 55 | DESONIDE | CREAM | 0.05% |
| 55 | DESONIDE | LOTION | 0.05% |
| 55 | DESONIDE | OINTMENT | 0.05% |
| 56 | DESOXIMETASONE | OINTMENT | 0.05% |
| 56 | DESOXIMETASONE | OINTMENT | 0.25% |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 5MG |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 15MG |

A-3

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 20MG |
| 57 | DEXMETHYLPHENIDATE HCL ER (DEXMETH ER) (FOCALIN) | CAPSULE | 40MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 2.5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 7.5MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 10MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 15MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 20MG |
| 58 | DEXTROAMPHETAMINE SULFATE (DEX SULFATE) | TABLET | 30MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 5MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 10MG |
| 58 | DEXTROAMPHETAMINE SULFATE ER (DEX SULFATE ER) | CAPSULE | 15MG |
| 59 | DICLOFENAC POTASSIUM | TABLET | 50MG |
| 60 | DICLOXACILLIN SODIUM | CAPSULE | 250MG |
| 60 | DICLOXACILLIN SODIUM | CAPSULE | 500MG |
| 61 | DIFLUNISAL | TABLET | 500MG |
| 62 | DIGOXIN | TABLET | 0.125MG |
| 62 | DIGOXIN | TABLET | 0.25MG |
| 63 | DILTIAZEM HCL | TABLET | 120MG |
| 63 | DILTIAZEM HCL | TABLET | 30MG |
| 63 | DILTIAZEM HCL | TABLET | 60MG |
| 63 | DILTIAZEM HCL | TABLET | 90MG |
| 64 | DIPHENOXYLATE/ATROPINE | TABLET | 2.5MG;0.025MG |
| 65 | DISOPYRAMIDE PHOSPHATE | CAPSULE | 100MG |
| 65 | DISOPYRAMIDE PHOSPHATE | CAPSULE | 150MG |
| 66 | DIVALPROEX ER | TABLET | 250MG |
| 66 | DIVALPROEX ER | TABLET | 500MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 1MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 2MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 4MG |
| 67 | DOXAZOSIN MESYLATE | TABLET | 8MG |
| 68 | DOXYCYCLINE HYCLATE | CAPSULE | 50MG |
| 68 | DOXYCYCLINE HYCLATE | CAPSULE | 100MG |
| 68 | DOXYCYCLINE HYCLATE | TABLET | 100MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 75MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 100MG |
| 68 | DOXYCYCLINE HYCLATE DR | TABLET | 150MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 50MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 75MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 100MG |
| 68 | DOXYCYCLINE MONOHYDRATE | TABLET | 150MG |
| 69 | DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.02MG |
| 69 | DROSPIRENONE/ETHINYL ESTRADIOL (OCELLA) | TABLET | 3MG-0.03MG |
| 70 | ECONAZOLE | CREAM | 1% |
| 71 | ENALAPRIL MALEATE | TABLET | 2.5MG |
| 71 | ENALAPRIL MALEATE | TABLET | 5MG |
| 71 | ENALAPRIL MALEATE | TABLET | 10MG |
| 71 | ENALAPRIL MALEATE | TABLET | 20MG |
| 72 | ENTECAVIR | TABLET | 0.5MG |
| 72 | ENTECAVIR | TABLET | 1MG |
| 73 | EPLERENONE | TABLET | 25MG |
| 73 | EPLERENONE | TABLET | 50MG |
| 74 | ERYTHROMYCIN | SOLUTION | ALL STRENGTHS |
| 75 | ESTAZOLAM | TABLET | 1MG |
| 75 | ESTAZOLAM | TABLET | 2MG |

A-4

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 76 | ESTRADIOL | TABLET | 0.5MG |
| 76 | ESTRADIOL | TABLET | 1MG |
| 76 | ESTRADIOL | TABLET | 2MG |
| 77 | ESTRADIOL/NORETHINDRONE ACETATE (MIMVEY) | TABLET | 1-0.5MG |
| 78 | ETHAMBUTOL HCL | TABLET | 100MG |
| 78 | ETHAMBUTOL HCL | TABLET | 400MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15/0.02-0.01MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15-0.02-0.01MG |
| 79 | ETHINYL ESTRADIOL/DESOGESTREL [KARIVA] | TABLET | 0.15-0.03MG |
| 80 | ETHINYL ESTRADIOL/LEVONORGESTREL (PORTIA,JOLESSA) | TABLET | ALL STRENGTHS |
| 81 | ETHOSUXIMIDE | CAPSULE | 250MG |
| 81 | ETHOSUXIMIDE | ORAL SOLUTION | 250MG/5ML |
| 82 | ETODOLAC | CAPSULE | 200MG |
| 82 | ETODOLAC | CAPSULE | 300MG |
| 82 | ETODOLAC | TABLET | 400MG |
| 82 | ETODOLAC | TABLET | 500MG |
| 82 | ETODOLAC ER | TABLET | 400MG |
| 82 | ETODOLAC ER | TABLET | 500MG |
| 82 | ETODOLAC ER | TABLET | 600MG |
| 83 | EXEMESTANE | TABLET | 25MG |
| 84 | FENOFIBRATE | TABLET | 48MG |
| 84 | FENOFIBRATE | TABLET | 145MG |
| 85 | FLUCONAZOLE | TABLET | 50MG |
| 85 | FLUCONAZOLE | TABLET | 100MG |
| 85 | FLUCONAZOLE | TABLET | 150MG |
| 85 | FLUCONAZOLE | TABLET | 200MG |
| 86 | FLUOCINOLONE ACETONIDE | CREAM | 0.01% |
| 86 | FLUOCINOLONE ACETONIDE | CREAM | 0.03% |
| 86 | FLUOCINOLONE ACETONIDE | OINTMENT | 0.03% |
| 86 | FLUOCINOLONE ACETONIDE | SOLUTION | 0.01% |
| 87 | FLUOCINONIDE | CREAM | 0.05% |
| 87 | FLUOCINONIDE | CREAM | 0.10% |
| 87 | FLUOCINONIDE | E CREAM | 0.05% |
| 87 | FLUOCINONIDE | GEL | 0.05% |
| 87 | FLUOCINONIDE | OINTMENT | 0.05% |
| 87 | FLUOCINONIDE | SOLUTION | 0.05% |
| 88 | FLUOXETINE HCL | TABLET | 10MG |
| 88 | FLUOXETINE HCL | TABLET | 15MG |
| 88 | FLUOXETINE HCL | TABLET | 20MG |
| 88 | FLUOXETINE HCL | TABLET | 60MG |
| 89 | FLURBIPROFEN | TABLET | 50MG |
| 89 | FLURBIPROFEN | TABLET | 100MG |
| 90 | FLUTAMIDE | CAPSULE | 125MG |
| 91 | FLUTICASONE PROPIONATE | SPRAY | 50MCG |
| 91 | FLUTICASONE PROPIONATE | LOTION | 0.05% |
| 92 | FLUVASTATIN SODIUM | CAPSULE | 20MG |
| 92 | FLUVASTATIN SODIUM | CAPSULE | 40MG |
| 93 | FOSINOPRIL HCTZ | TABLET | 10-12.5MG |
| 93 | FOSINOPRIL HCTZ | TABLET | 20-12.5MG |
| 94 | GABAPENTIN | TABLET | 600MG |
| 94 | GABAPENTIN | TABLET | 800MG |
| 95 | GLIMEPIRIDE | TABLET | 1MG |
| 95 | GLIMEPIRIDE | TABLET | 2MG |
| 95 | GLIMEPIRIDE | TABLET | 4MG |
| 96 | GLIPIZIDE/METFORMIN | TABLET | 2.5-250MG |
| 96 | GLIPIZIDE/METFORMIN | TABLET | 2.5-500MG |

A-5

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 96 | GLIPIZIDE/METFORMIN | TABLET | 5-500MG |
| 97 | GLYBURIDE | TABLET | 1.25MG |
| 97 | GLYBURIDE | TABLET | 2.5MG |
| 97 | GLYBURIDE | TABLET | 5MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 1.25-250MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 2.5-500MG |
| 98 | GLYBURIDE/METFORMIN | TABLET | 5-500MG |
| 99 | GRISEOFULVIN | SUSPENSION (MICROSIZE) | 125MG/5ML |
| 99 | GRISEOFULVIN | MICROSIZE TABLET | 250MG |
| 99 | GRISEOFULVIN | MICROSIZE TABLET | 500MG |
| 100 | HALOBETASOL PROPIONATE | CREAM | 0.05% |
| 100 | HALOBETASOL PROPIONATE | OINTMENT | 0.05% |
| 101 | HALOPERIDOL | TABLET | 0.5MG |
| 101 | HALOPERIDOL | TABLET | 1MG |
| 101 | HALOPERIDOL | TABLET | 2MG |
| 101 | HALOPERIDOL | TABLET | 5MG |
| 101 | HALOPERIDOL | TABLET | 10MG |
| 101 | HALOPERIDOL | TABLET | 20MG |
| 102 | HYDRALAZINE HCL | | |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 10MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 25MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 30MG |
| 103 | HYDROCORTISONE ACETATE | SUPPOSITORIES | 50MG |
| 104 | HYDROCORTISONE VALERATE | CREAM | 0.20% |
| 105 | HYDROXYUREA | CAPSULE | 500MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 25MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 50MG |
| 106 | HYDROXYZINE PAMOATE | CAPSULE | 100MG |
| 107 | IMIQUIMOD | CREAM | 12.5MG/G |
| 107 | IMIQUIMOD | CREAM | 37.5MG/G |
| 107 | IMIQUIMOD | CREAM | 50MG/G |
| 108 | IRBESARTAN | TABLET | 75MG |
| 108 | IRBESARTAN | TABLET | 150MG |
| 108 | IRBESARTAN | TABLET | 300MG |
| 109 | ISONIAZID | TABLET | 100MG |
| 109 | ISONIAZID | TABLET | 300MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 5MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 10MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 20MG |
| 110 | ISOSORBIDE DINITRATE | TABLET | 30MG |
| 111 | KETOCONAZOLE | CREAM | 2% |
| 111 | KETOCONAZOLE | TABLET | 200MG |
| 112 | KETOPROFEN | CAPSULE | 50MG |
| 112 | KETOPROFEN | CAPSULE | 75MG |
| 113 | KETOROLAC TROMETHAMINE | TABLET | 10MG |
| 114 | LABETALOL HCL | TABLET | 100MG |
| 114 | LABETALOL HCL | TABLET | 200MG |
| 114 | LABETALOL HCL | TABLET | 300MG |
| 115 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 150-300MG |
| 115 | LAMIVUDINE/ZIDOVUDINE (COMBIVIR) | TABLET | 300-150MG |
| 116 | LATANOPROST | SOLUTION | 0.01% |
| 117 | LEFLUNOMIDE | TABLET | 10MG |
| 117 | LEFLUNOMIDE | TABLET | 20MG |
| 118 | LEVOTHYROXINE | TABLET | 0.025MG |
| 118 | LEVOTHYROXINE | TABLET | 0.05MG |
| 118 | LEVOTHYROXINE | TABLET | 0.075MG |

|  | Molecule Name | Form | Strength |
|---|---|---|---|
| 118 | LEVOTHYROXINE | TABLET | 0.088MG |
| 118 | LEVOTHYROXINE | TABLET | 0.1MG |
| 118 | LEVOTHYROXINE | TABLET | 0.112MG |
| 118 | LEVOTHYROXINE | TABLET | 0.125MG |
| 118 | LEVOTHYROXINE | TABLET | 0.137MG |
| 118 | LEVOTHYROXINE | TABLET | 0.15MG |
| 118 | LEVOTHYROXINE | TABLET | 0.175MG |
| 118 | LEVOTHYROXINE | TABLET | 0.2MG |
| 118 | LEVOTHYROXINE | TABLET | 0.3MG |
| 119 | LIDOCAINE HCL | OINTMENT | 5% |
| 120 | LIDOCAINE/PRILOCAINE | CREAM | 2.5%-2.5% |
| 121 | LOPERAMIDE HCL | CAPSULE | 2MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 2.5MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 5MG |
| 122 | MEDROXYPROGESTERONE ACETATE | TABLET | 10MG |
| 123 | MEPROBAMATE | TABLET | 200MG |
| 123 | MEPROBAMATE | TABLET | 400MG |
| 124 | METFORMIN (F) ER | TABLET | 500MG |
| 124 | METFORMIN (F) ER | TABLET | 1000MG |
| 125 | METHADONE HCL | TABLET | 10MG |
| 125 | METHADONE HCL | TABLET | 5MG |
| 126 | METHAZOLAMIDE | TABLET | 25MG |
| 126 | METHAZOLAMIDE | TABLET | 50MG |
| 127 | METHIMAZOLE |  |  |
| 128 | METHOTREXATE | TABLET | 2.5MG |
| 129 | METHYLPHENIDATE | TABLET | 5MG |
| 130 | METHYLPHENIDATE | TABLET | 10MG |
| 130 | METHYLPHENIDATE | TABLET | 20MG |
| 130 | METHYLPHENIDATE ER | TABLET | 20MG |
| 131 | METHYLPREDNISOLONE | TABLET | 4MG |
| 132 | METRONIDAZOLE | TABLET |  |
| 132 | METRONIDAZOLE | CREAM | 0.75% |
| 132 | METRONIDAZOLE | GEL | 0.75% |
| 132 | METRONIDAZOLE | GEL | 1% |
| 132 | METRONIDAZOLE | GEL VAGINAL | 0.75% |
| 132 | METRONIDAZOLE | LOTION | 0.75% |
| 133 | MOEXIPRIL HCL | TABLET | 7.5MG |
| 133 | MOEXIPRIL HCL | TABLET | 15MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 7.5-12.5MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 15-12.5MG |
| 134 | MOEXIPRIL HCL/HCTZ | TABLET | 15-25MG |
| 135 | MOMETASONE FUROATE | CREAM | 0.10% |
| 135 | MOMETASONE FUROATE | OINTMENT | 0.10% |
| 135 | MOMETASONE FUROATE | SOLUTION | 0.10% |
| 136 | NABUMETONE | TABLET | 500MG |
| 136 | NABUMETONE | TABLET | 750MG |
| 137 | NADOLOL | TABLET | 20MG |
| 137 | NADOLOL | TABLET | 40MG |
| 137 | NADOLOL | TABLET | 80MG |
| 138 | NAFCILLIN SODIUM | INJECTABLE VIALS | ALL STRENGTHS |
| 139 | NAPROXEN SODIUM | TABLET | 275MG |
| 139 | NAPROXEN SODIUM | TABLET | 550MG |
| 140 | NEOMYCIN/POLYMYXIN/HYDROCORTISONE | SOLUTION | 3.5MG-10MU 1% |
| 141 | NIACIN ER | TABLET | 500MG |
| 141 | NIACIN ER | TABLET | 750MG |
| 141 | NIACIN ER | TABLET | 1000MG |
| 142 | NIMODIPINE | CAPSULE | 30MG |

A-7

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 25MG |
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 50MG |
| 143 | NITROFURANTOIN/MACROCRYSTALLINE | CAPSULE | 100MG |
| 144 | NORETHINDRONE ACETATE | TABLET | 5MG |
| 145 | NORETHINDRONE/ETHINYL ESTRADIOL (BALZIVA) | TABLET | 0.4-0.035MG-MCG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 10MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 25MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 50MG |
| 146 | NORTRIPTYLINE HCL | CAPSULE | 75MG |
| 147 | NYSTATIN | CREAM | 100MU |
| 147 | NYSTATIN | OINTMENT | 100MU |
| 147 | NYSTATIN | TABLET | 500MU |
| 148 | NYSTATIN/TRIAMCINOLONE | CREAM | 0.10% |
| 148 | NYSTATIN/TRIAMCINOLONE | OINTMENT | 0.10% |
| 149 | OMEGA 3 ACID ETHYL ESTERS | CAPSULE | 1G |
| 150 | OXACILLIN SODIUM | INJECTABLE VIALS | ALL STRENGTHS |
| 151 | OXAPROZIN | TABLET | 600MG |
| 152 | OXYBUTYNIN CHLORIDE | TABLET | 5MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 5-325MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 7.5-325MG |
| 153 | OXYCODONE/ACETAMINOPHEN | TABLET | 10-325MG |
| 154 | OXYCODONE HCL | TABLET | 5MG |
| 154 | OXYCODONE HCL | TABLET | 15MG |
| 154 | OXYCODONE HCL | TABLET | 30MG |
| 155 | PARICALCITOL | CAPSULE | 1MCG |
| 155 | PARICALCITOL | CAPSULE | 2MCG |
| 155 | PARICALCITOL | CAPSULE | 4MCG |
| 156 | PAROMOMYCIN | CAPSULE | 250MG |
| 157 | PENICILLIN V POTASSIUM | TABLET | 250MG |
| 157 | PENICILLIN V POTASSIUM | TABLET | 500MG |
| 158 | PENTOXIFYLLINE ER | TABLET | 400MG |
| 159 | PERMETHRIN | CREAM | 5% |
| 160 | PERPHENAZINE | TABLET | 2MG |
| 160 | PERPHENAZINE | TABLET | 4MG |
| 160 | PERPHENAZINE | TABLET | 8MG |
| 160 | PERPHENAZINE | TABLET | 16MG |
| 161 | PHENYTOIN SODIUM ER | CAPSULE | 100MG |
| 162 | PILOCARPINE HCL | TABLET | 5MG |
| 163 | PIOGLITAZONE METFORMIN HCL | TABLET | 15MG/500MG |
| 163 | PIOGLITAZONE METFORMIN HCL | TABLET | 15MG/850MG |
| 164 | PIROXICAM | CAPSULE | 10MG |
| 164 | PIROXICAM | CAPSULE | 20MG |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 8MEQ |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 10MEQ |
| 165 | POTASSIUM CHLORIDE ER | TABLET | 20MEQ |
| 166 | PRAVASTATIN | TABLET | 10MG |
| 166 | PRAVASTATIN | TABLET | 20MG |
| 166 | PRAVASTATIN | TABLET | 40MG |
| 166 | PRAVASTATIN | TABLET | 80MG |
| 167 | PRAZOSIN HCL | CAPSULE | 1MG |
| 167 | PRAZOSIN HCL | CAPSULE | 2MG |
| 167 | PRAZOSIN HCL | CAPSULE | 5MG |
| 168 | PREDNISOLONE ACETATE | SOLUTION/LIQUID EYE | 1% |
| 169 | PREDNISONE | TABLET | 1MG |
| 169 | PREDNISONE | TABLET | 2.5MG |
| 169 | PREDNISONE | TABLET | 5MG |
| 169 | PREDNISONE | TABLET | 10MG |

A-8

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 169 | PREDNISONE | TABLET | 20MG |
| 170 | PROCHLORPERAZINE | SUPPOSITORY | 25MG |
| 170 | PROCHLORPERAZINE | TABLET | 5MG |
| 170 | PROCHLORPERAZINE | TABLET | 10MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 12.5MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 25MG |
| 171 | PROMETHAZINE | SUPPOSITORY | 50MG |
| 172 | PROPRANOLOL | TABLET | 10MG |
| 172 | PROPRANOLOL | TABLET | 20MG |
| 172 | PROPRANOLOL | TABLET | 40MG |
| 172 | PROPRANOLOL | TABLET | 60MG |
| 172 | PROPRANOLOL | TABLET | 80MG |
| 172 | PROPRANOLOL ER | CAPSULE | 60MG |
| 172 | PROPRANOLOL ER | CAPSULE | 80MG |
| 172 | PROPRANOLOL ER | CAPSULE | 120MG |
| 172 | PROPRANOLOL ER | CAPSULE | 160MG |
| 173 | RALOXIFENE HCL | TABLET | 60MG |
| 174 | RANITIDINE HCL | CAPSULE | 150MG |
| 174 | RANITIDINE HCL | CAPSULE | 300MG |
| 174 | RANITIDINE HCL | TABLET | 150MG |
| 175 | SILVER SULFADIAZINE | CREAM | 1% |
| 176 | SPIRONOLACTONE/HCTZ | TABLET | 25-25MG |
| 177 | TACROLIMUS | OINTMENT | 0.03% |
| 177 | TACROLIMUS | OINTMENT | 0.10% |
| 178 | TAMOXIFEN CITRATE | TABLET | 10MG |
| 178 | TAMOXIFEN CITRATE | TABLET | 20MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 5MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 20MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 100MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 140MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 180MG |
| 179 | TEMOZOLOMIDE | CAPSULE | 250MG |
| 180 | TERCONAZOLE | VAGINAL CREAM | 0.40% |
| 180 | TERCONAZOLE | VAGINAL CREAM | 0.80% |
| 181 | THEOPHYLLINE ER | TABLET | 100MG |
| 181 | THEOPHYLLINE ER | TABLET | 200MG |
| 181 | THEOPHYLLINE ER | TABLET | 300MG |
| 181 | THEOPHYLLINE ER | TABLET | 400MG |
| 181 | THEOPHYLLINE ER | TABLET | 450MG |
| 181 | THEOPHYLLINE ER | TABLET | 600MG |
| 182 | TIMOLOL MALEATE | GEL | 0.25% |
| 182 | TIMOLOL MALEATE | GEL | 0.50% |
| 183 | TIZANIDINE HCL | TABLET | 2MG |
| 183 | TIZANIDINE HCL | TABLET | 4MG |
| 184 | TOBRAMYCIN | SOLUTION | 300MG/5ML |
| 185 | TOBRAMYCIN/DEXAMETHASONE | SOLUTION | 0.3-0.1% |
| 186 | TOLMETIN SODIUM | CAPSULE | 400MG |
| 187 | TOLTERODINE TARTRATE | TABLET | 1MG |
| 187 | TOLTERODINE TARTRATE | TABLET | 2MG |
| 187 | TOLTERODINE TARTRATE ER | CAPSULE | 2MG |
| 187 | TOLTERODINE TARTRATE ER | CAPSULE | 4MG |
| 188 | TOPIRAMATE | CAPSULE | 15MG |
| 188 | TOPIRAMATE | CAPSULE | 25MG |
| 189 | TRAZODONE HCL | TABLET | 100MG |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | CREAM | 0.50% |

A-9

| | Molecule Name | Form | Strength |
|---|---|---|---|
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | OINTMENT | 0.50% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.03% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.10% |
| 190 | TRIAMCINOLONE ACETONIDE | PASTE | 0.50% |
| 191 | TRIAMTERENE/HCTZ | CAPSULE | 37.5-25MG |
| 191 | TRIAMTERENE/HCTZ | TABLET | 37.5MG-25MG |
| 191 | TRIAMTERENE/HCTZ | TABLET | 75-50MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 1MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 2MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 5MG |
| 192 | TRIFLUOPERAZINE HCL | TABLET | 10MG |
| 193 | URSODIOL | CAPSULE | 300MG |
| 194 | VALSARTAN HCTZ | TABLET | 80-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 160-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 160-25MG |
| 194 | VALSARTAN HCTZ | TABLET | 320-12.5MG |
| 194 | VALSARTAN HCTZ | TABLET | 320-25MG |
| 195 | VERAPAMIL | TABLET | 40MG |
| 195 | VERAPAMIL | TABLET | 80MG |
| 195 | VERAPAMIL | TABLET | 120MG |
| 195 | VERAPAMIL SR | CAPSULE | 120MG |
| 195 | VERAPAMIL SR | CAPSULE | 180MG |
| 195 | VERAPAMIL SR | CAPSULE | 240MG |
| 196 | WARFARIN SODIUM | TABLET | 1MG |
| 196 | WARFARIN SODIUM | TABLET | 2MG |
| 196 | WARFARIN SODIUM | TABLET | 2.5MG |
| 196 | WARFARIN SODIUM | TABLET | 3MG |
| 196 | WARFARIN SODIUM | TABLET | 4MG |
| 196 | WARFARIN SODIUM | TABLET | 5MG |
| 196 | WARFARIN SODIUM | TABLET | 6MG |
| 196 | WARFARIN SODIUM | TABLET | 7.5MG |
| 196 | WARFARIN SODIUM | TABLET | 10MG |
| 197 | ZOLEDRONIC ACID | IV CONCENTRATE | 4MG/5ML |
| 197 | ZOLEDRONIC ACID | IV SOLUTION | 5MG/100ML |