## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br>GENERIC PHARMACEUTICALS PRICING<br>ANTITRUST LITIGATION | MDL 2724<br>16-md-2724<br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>INDIRECT RESELLER PLAINTIFF ACTIONS | CIVIL ACTIONS: |
| THIS DOCUMENT RELATES TO ALL<br>INDIRECT RESELLER PLAINTIFF (IRP)<br>ACTIONS | 16-PV-27243<br><br>17-cv-3821<br><br>18-cv-2533<br><br>19-cv-6044 |

## MEMORANDUM OF LAW IN SUPPORT OF
## INDIRECT RESLLER PLAINTIFFS' (IRPS')
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.    CASE HISTORY .......................................................................................................... 2

II.   MATERIAL TERMS OF THE SETTLEMENT ......................................................... 4

   A.  The Settlement Class .............................................................................................. 4

   B.  The Settlement Benefits ......................................................................................... 5

   C.  Settlement Class Releases ...................................................................................... 5

   D.  Expenses and Service Awards ................................................................................ 6

III.  ARGUMENT ................................................................................................................ 7

   A.  Legal Standard ........................................................................................................ 7

   1.  Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class for Settlement Purposes .................................................................................................................... 8

   2.  The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel ........................................................................................................ 10

   3.  The Relief Under the Proposed Settlement Is Fair, Reasonable, and Adequate ............... 10

   4.  The Remaining *Girsh* Factors Are Also Satisfied ............................................................ 15

IV.   CONCLUSION ........................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Cases**

*Erheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010)............................................................... 7

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)....................................................... *passim*

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995)................................................... 13

*In re General Instruments Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) .............................................. 14

*In re Haier Freezer Consumer Litig.*,
    No. 5:11-CV-02911-EJD, 2013 WL 2237890 (N.D. Cal. May 21, 2013)................ 11, 13

*In re NFL Players' Concussion Injury Litig.*,
    821 F.3d at 440 .................................................................. 9, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11, (E.D.N.Y. 2019) ................................................. 8, 11

*In re Pet Food Prod. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010).......................................................... 15

*In re Vicuron Pharms., Inc. Secs. Litig.*,
    512 F. Supp. 2d 279 (E.D. Pa. 2007) .............................................. 11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................... 10, 11, 15

*Lake v. First National Bank*,
    900 F. Supp. 726 (E.D. Pa. 1995) ................................................. 12

*Myers v. Jani-King of Philadelphia, Inc.*,
    No. CV 09-1738, 2019 WL 4034736 (E.D. Pa. Aug. 26, 2019)...................... 7, 8

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013)......................................................... 7, 18

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ................................................. 11

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................ 14

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
    726 F.2d 956 (3d Cir. 1983) ................................................................ 14

*Weiss v. Mercedes-Benz of N. Am. Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995) ........................................................ 12

**Rules**

Fed. R. Civ. P. 23 ................................................................................... *passim*

**Treatises**

4 Newberg on Class Actions § 13:14 (5th ed.) ............................................ 7

On March 17, 2025, the Court indicated that it was satisfied with steps taken in progressing the settlement between the Indirect Reseller Class Representative Plaintiffs ("IRPs," "Plaintiffs" or "Independent Pharmacy & Hospital Plaintiffs"), and Settling Defendant Apotex Corp. ("Settling Defendant" or "Apotex"), and that it would welcome a motion for final approval of the Settlement Agreement between the IRPs and Apotex.  *See* Dkt. No. 3298.  Therefore, the IRPs, individually and on behalf of all others similarly situated, respectfully submit this Memorandum in support of their Motion for Final Approval of Class Action Settlement. For the reasons stated below, the Court should grant final approval of the proposed settlement between the IRPs and Apotex Corp. in this class action.

Plaintiffs, through undersigned counsel, have secured a final Settlement ("Settlement") with Defendant Apotex Corp. ("Apotex") that contributes $5,260,842 to a Settlement Fund to be ultimately disbursed to the Settlement Class (defined in II.A. below). The Settlement also provides other benefits to aid Plaintiffs as they continue to litigate against Apotex's alleged co-conspirators.

Settlement Class Counsel carried out a wide-ranging notice program, in which approximately 96.4% of potential class members were reached by mail, and 9.2 million impressions of targeted web advertisements were made.  *See* Azari Decl. ¶¶ 14, 18 (Dkt. No. 3245). A dedicated website has been set up.  No objections were made to the settlement, either during the objection and opt-out period or at the March 17, 2025 Fairness Hearing before the Court. Ultimately, only three class members not already named plaintiffs in this action elected to opt out.[1]

Plaintiffs' Counsel respectfully submits that the Settlement was reached in good faith, following extensive arms-length negotiations by experienced counsel on both sides, and was not

---

[1] The entities that requested exclusion are listed in Attachment 1 to the Supplemental Declaration of James R. Page, Esq. Regarding Requests for Exclusion (Dkt. No. 3285).

the result of any collusion or fraud, and that the terms of the Settlement are fair, adequate, and reasonable for the Settlement Class and that the requirements for final approval are satisfied. Settlement Class Counsel also submit that the proposed (and unobjected) motion for a plan of allocation before the court (Dkt. No. 3279) is fair, reasonable, and efficient.

Therefore, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), 23(e), and 54(b), IRPs respectfully request granting final approval to this settlement, entry of Judgment in the form submitted herewith, and granting of final approval to the Plan of Allocation. Settling Defendant assents to this Motion.

## I.   **CASE HISTORY**

The Defendants in MDL 2724, including Defendant Apotex and other generic drug manufacturers and distributors, are alleged to have participated in a conspiracy to arrange price increases for more than two hundred generic drugs and to allocate customers in order to assign each Defendant manufacturer its "fair share" of business while keeping prices high.

Plaintiffs are Independent Pharmacies, Clinics and Hospitals that purchased and later dispensed these drugs. They allege that, due to Defendants' antitrust violations, they paid prices for these drugs that were illegally inflated above what they would have paid in the absence of any agreement. Plaintiffs' causes of action stem from Section 1 of the Sherman Act as well as the antitrust, consumer protection, and unjust enrichment laws of various states.

In 2016, Plaintiffs began investigating allegations of price-fixing in the generic drug industry. By August 2017, Plaintiffs had filed actions relating to eighteen generic drugs and had named Apotex as a Defendant in an action regarding the drug pravastatin. As investigations continued, Plaintiffs filed additional complaints alleging that the price-fixing conspiracy extended to several dozens more drugs, and named Apotex as a Defendant in complaints filed in June 2018 and December 2019. The Court denied Defendants' motions to dismiss the federal

law claims in the August 2017 complaint and the June 2018 complaint, and granted, in part, and denied, in part, Defendants' motions to dismiss the state law claims in the August 2017 complaint.

Beginning in 2017, Plaintiffs developed and served discovery requests and interrogatories and then negotiated custodian lists, search terms, ESI protocols, and other details relating to productions of documents and transactional data as part of a global MDL discovery coordination process. Apotex participated in this MDL-wide discovery process along with its co-Defendants and also litigated several discovery issues. This process included arguments before Special Master David Marion and Special Discovery Master Bruce Merenstein.

Working together with other plaintiff groups in MDL 2724, Plaintiffs reviewed and analyzed documents generated by Apotex's employees including both external and internal emails, pricing spreadsheets, and phone logs obtained via subpoenas to phone carriers.

Plaintiffs' Counsel have substantial experience in prosecuting class actions and have specific experience litigating class actions focused on horizontal price-fixing of commodities and its effect on downstream small businesses. As part of their ongoing investigation, Plaintiffs' Counsel have consulted academic and professional experts in pharmacy payment flows and generic drug pricing, pharmacy data systems, horizontal cartel overcharges, and antitrust econometrics to assist them in the action.

Plaintiffs made productions of transactional data regarding their purchases of the Drugs at Issue[2] and obtained transactional data from Apotex, other Defendants, third parties, and commercial databases to estimate the effect of the alleged price-fixing on the Class Members.

---

[2] Unless otherwise noted, the capitalized terms used in this document have the same meanings as defined in the Settlement Agreement.

As the litigation progressed through discovery, Plaintiffs and Apotex commenced settlement negotiation, taking into account the case's strengths and weaknesses and the progress of the MDL. These negotiations—which included the exchange of information and data, numerous offers and counter offers, and numerous telephone conversations—were conducted contemporaneously with the ongoing discovery process. The parties ultimately reached agreement, and the Plaintiffs now propose this Settlement for final approval.

## II.    MATERIAL TERMS OF THE SETTLEMENT

The Settlement provides for substantial monetary relief and other valuable terms, which will assist the IRPs in continuing to prosecute the litigation against the non-settling Defendants. In exchange for this monetary relief and cooperation, the IRPs and members of the Settlement Class that have not excluded themselves will be precluded from suing the Settling Defendant for the Released Claims.

### A.  The Settlement Class

The "Settlement Class" includes all dispensers of drugs (including facilities providing outpatient medical treatment and advice, including urgent care clinics, community health centers, and outpatient facilities ("Clinics"), facilities that provide inpatient medical treatment with overnight accommodations ("Hospitals"), and retail pharmacies that are not owned by a publicly traded company ("Independent Pharmacies")) in the United States and its territories that purchased one or more of the Drugs at Issue from January 1, 2010 through the present, including (a) those that purchased directly from distributor AmerisourceBergen Drug Corporation, Cardinal Health, Inc., Red Oak Sourcing, LLC, The Harvard Drug Group, LLC, HD Smith LLC, McKesson Corporation, Morris & Dickson Co., or Walgreens Boot Alliance, Inc., or their subsidiaries; and (b) those that purchased indirectly from any Defendant in the MDL.

The Settlement Class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) entities owned in part by judges or justices involved in this action or any members of their immediate families (other than interests held as a passive investor in a publicly traded entity); and (c) all pharmacies owned or operated by publicly traded companies.

## B. The Settlement Benefits

The monetary component of the Settlement is $5,260,842. Apotex paid $5,537,000 into an escrow account managed by Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the Court-appointed Settlement Administrator in this action. That initial amount will be reduced by $276,158 based upon provisions in the Settlement Agreement concerning the opt outs.[3] Apotex agreed to permit a reasonable amount of the Settlement Fund, not to exceed $500,000, to be used toward notice to the Settlement Class. Additionally, Apotex will use its best efforts to provide satisfactory and timely cooperation, as deemed by the terms of the Settlement Agreement, including providing discovery that it provides to any other party in the MDL.

## C. Settlement Class Releases

In exchange for the benefits provided under the Settlement Agreement, the IRPs have agreed to releases as set forth in Section C of the Settlement Agreement. The Settlement releases the Releasees from any and all claims, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature, under any federal, state, or local law of any jurisdiction in the United States, arising out of or relating in any way to (i) any conduct alleged in the

---

[3] Pursuant to a separate letter agreement, Settling Defendant had the right to rescind the Settlement Agreement if a specified number of potential members of the Settlement Class opted out. That number was not reached, and the Settlement Agreement remains in force. The separate letter agreement was filed with the court under seal as part of the motion for preliminary approval of the Settlement.

Complaints and/or (ii) any act or omission of the Releasees concerning Drugs at Issue or other generic drugs for which claims could have been asserted based on the facts alleged in the Complaints or any overarching conspiracy. Settlement Agreement ¶ 25.  The Settlement releases all rights and benefits conferred by Section 1542 of the California Civil Code or any similar, comparable, or equivalent law.  Settlement Agreement ¶ 26.

The Settlement does not release any claims made by entities that purchased from Apotex directly or by any end user of the Drugs at Issue, various tort claims other than those based in whole or in part on any of the Released claims, claims concerning any drug other than the Drugs at Issue (except where those claims for other drugs are pled or based in whole or in part on facts alleged in the Complaints or as part of an overarching conspiracy involving any of the Drugs at Issue), or claims under laws other than those of the United States.  Settlement Agreement ¶ 25.

### D.  Expenses and Service Awards

The Settlement Agreement provides that up to $500,000 may be used to pay for reasonable expenses in connection with administering the Settlement and providing notice to the Settlement Class.  In addition, the Settlement Agreement provides that Settlement Class Counsel may request from the Settlement Fund attorneys' fees, costs, past, current, and future litigation expenses, and incentive awards for class representatives to be paid out of the Settlement Fund. Settlement Agreement ¶ 36.  These provisions were included in the Class Notice so that class members would be informed about them.

On March 13, 2025, the IRPs moved for an Order granting the allocation plan for the Settlement, in which it delineated a pro rata distribution for class members.  Concurrent with this motion for final approval, the IRPs are moving for reimbursement of past litigation expenses and

an allocation for future litigation expenses, in an amount totaling 33% of the Settlement Fund, or $1,736,077.86.

## III.    ARGUMENT

### A. Legal Standard

The Third Circuit has repeatedly "articulated a policy preference favoring voluntary settlement in class actions." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013); *see also Erheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (judicial policy strongly favors settlement in class actions).

Federal Rule of Civil Procedure 23(e)(2) delineates the factors courts consider when determining the fairness of a class action settlement at final approval. *See* 4 Newberg on Class Actions § 13:14 (5th ed.) ("Rule 23(e)(2) in turn authorizes final approval only upon a showing that the settlement is 'fair, reasonable, and adequate,' made after a consideration of four factors."); *id*. at § 13:15 ("Congress adopted this standard for the first time at the end of 2018. Prior to that, Rule 23 did not embody a specific preliminary settlement approval process or standard"); *Myers v. Jani-King of Phila., Inc.*, 2019 WL 4034736, at *7 n.4 (E.D. Pa. Aug. 26, 2019) ("Effective December 1, 2018, Rule 23(e) was amended to list factors to guide a district court's determination of whether a proposed settlement is 'fair, reasonable, and adequate.'").  Those factors are whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Third Circuit also consider additional factors set forth in *Girsh v. Jepson*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (ellipses omitted).

Due to the significant overlap in these two lists of factors, the analysis below follows the frequently employed framework according to which the "Court first considers the Rules 23(e)(2) factors, and then considers additional [*Girsh*] factors not otherwise addressed by the Rule 23(e)(2) factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *Myers*, 2019 WL 4034736, at *7 n.4 (recognizing that Third Circuit courts apply both the *Girsh* factors and "any factor under Rule 23 that is not addressed by *Girsh*").[4] As detailed below, both the Rule 23(e)(2) factors and the applicable *Girsh* factors weigh in favor of a finding that the settlement is fair, reasonable, and adequate, and should be granted preliminary approval.[4]

### 1. Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class for Settlement Purposes

Under Rule 23(e)(2)(A), the Court should consider whether the class representative and class counsel adequately represented the class, based on "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendments.

---

[4] The Court should consider the factors set forth in both amended Rule 23(e)(2) and *Girsh*. *See* Advisory Committee Note to 2018 Amendments to Rule 23(e)(2) (stating that the 2018 amendments are not intended to "displace any factor" set forth in any prior court of appeals ruling governing final approval of class action settlements, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision").

In this case, both Plaintiffs and their Counsel are adequate representatives of the Settlement Class. Plaintiffs' interests are in alignment with those of the Settlement Class. Plaintiffs and Settlement Class Members share an overriding interest in obtaining the best claims process and benefits for Independent Pharmacies, Clinics and Hospitals. As noted above, Plaintiffs have actively participated in representing the interests of the Settlement Class prior to commencement of this matter and throughout this litigation. Furthermore, the Settlement does not grant preferential treatment to Plaintiffs, who will receive the same relief afforded to any other Settlement Class Member. The Plan of Allocation contemplates that Plaintiffs will receive a small class representative service award, upon approval by the Court, and in recognition of their near-decade of work representing the class. Plaintiffs spent time pursuing the interests of the Settlement Class, including responding to discovery requests, producing documents, and actively engaging with Plaintiffs' Counsel throughout the discovery phase. (Hudson Decl. ¶ 12.)

With respect to the adequate representation of the settlement class by Plaintiffs' Counsel, Rule 23(e)(2)(B) focuses on "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment. Here, Plaintiffs' Counsel have experience litigating antitrust class actions and have particular experience in recovering damages for classes of small businesses in horizontal price-fixing cases such as this one. (Hudson Decl. ¶ 11); *see In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (plaintiffs' counsel should be "aware of the strengths and weaknesses of their case").

Plaintiffs' Counsel have developed this case and diligently prosecuted these actions on behalf of the Settlement Class, have engaged in substantial discovery, have retained and consulted with experts, and have negotiated with Apotex's counsel to craft a deal that fairly compensates Plaintiffs and Settlement Class Members for their injuries. Plaintiffs' Counsel has

a firm "grasp of the legal hurdles that [Plaintiffs] would need to clear in order to succeed" with their claims. *Id.* at 436-439 (with respect to the third *Girsh* factor, "What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims."). This factor therefore supports granting final approval of the Settlement.

### 2. The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel

Rule 23(e)(2)(B) directs the Court to consider whether the settlement proposal was negotiated at arm's length. This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment. The settlement process in this case was negotiated at arm's length by counsel experienced in the prosecution, defense, and settlement of complex class actions.

Together, the Rule 23(e)(2)(A) and (B) factors discussed above also encompass the third *Girsh* factor, which takes into account the stage of the proceedings and the amount of discovery completed. *See* Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment ("Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"). As the Third Circuit has explained, "[t]he third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (citation omitted). As demonstrated above, this *Girsh* factor also weighs in support of preliminary approval.

### 3. The Relief Under the Proposed Settlement Is Fair, Reasonable, and Adequate

10

Rule 23(e)(2)(C) requires consideration of whether the relief provided for the class is adequate, taking into account several enumerated factors. As explained below, the relief provided to the Settlement Class is more than adequate to satisfy the four relevant areas of concern specified by Rule 23(e)(2)(C): (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims"; (3) "the terms of any proposed award of attorney's fees, including timing of payment"; and (4) "any agreement required to be identified under Rule 23(e)(3)." This inquiry also subsumes several *Girsh* factors, "including (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee*, 330 F.R.D. at 36. The complexity and expense of this case, in conjunction with the risks Plaintiff faced in maintaining this litigation, weigh heavily in favor of preliminary approval.

First, the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535; *In re Vicuron Pharms., Inc. Secs. Litig.*, 512 F. Supp. 2d 279, 284 (E.D. Pa. 2007). The parties also gain significantly from avoiding the costs and risks of a lengthy and complex trial. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."). In contrast to the uncertainty and delays inherent in continued litigation, the Settlement "provides a significant, easy-to-obtain benefit to class members." *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. May 21, 2013). These economic gains multiply when settlement also avoids the

11

costs of litigating class status—often a complex litigation by itself. Furthermore, a settlement may represent the best method of distributing damage awards to injured Plaintiffs, especially where litigation would delay and consume the available resources and where piecemeal settlement could result in the complete exhaustion of defendant's resources.

<u>Settlement Accounts for the Costs, Risks, and Delays of Trial and Appeal</u>.  With respect to the first factor, Apotex has vigorously denied liability and certification of a class from the outset, and Plaintiffs would thus likely have considerable risks proceeding with this litigation. Apotex's position has been clear that Plaintiffs cannot prove that it participated in an overarching conspiracy and cannot prove that price increases are attributable to an illegal agreement rather than to legitimate factors, including the entry and exit of competitors.

While Plaintiffs are confident they could overcome these hurdles, there is a real risk that they may not. Further, continued litigation would be long, complex, and expensive, and a burden to court dockets. *Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered). Continuing this litigation against Apotex would entail a lengthy and expensive litigation involving legal and factual issues specific to Apotex and not entirely resolvable on an MDL-wide basis. It is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in settlement negotiations and in Apotex's responses to discovery requests. Additionally, Apotex would assert various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on class questions of proof making the outcome of such trial uncertain for both parties. Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals. Given this

uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

The avoidance of all of these risks contributes significantly to the value and adequacy of the Settlement. *See, e.g.*, *Spann*, 314 F.R.D. at 326 ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."). In contrast to the uncertainty and delays inherent in continued litigation, the Settlement "provides a significant, easy-to-obtain benefit to class members." *In re Haier Freezer Consumer Litig.*, 2013 WL 2237890, at *4. Balancing the complexities of this litigation, the substantial risk, expense, and duration of contained litigation against Apotex and likely appeal if Plaintiffs did prevail against Apotex at trial, Plaintiffs' Counsel believe the Settlement represents a satisfactory resolution of this litigation against Apotex. (Hudson Decl. ¶ 15).

The Settlement Provides an Effective Method to Distribute Relief to the Settlement Class. The second factor is also met, as the unopposed plan of allocation will provide every member of the Settlement Class which fills out a simple Claims Form to receive a pro rata share of the Settlement Fund. *See* Motion for an Order Approving the Allocation Plan for the IRPs' Apotex Settlement (Dkt. No. 3279). Given the early stage of the litigation in terms of settlements and potential trial dates, the plan allows for immediate monetary compensation for Settlement Class Members in the most efficient way possible given that additional transactional data discovery is still being undertaken. Further, a second round of notices will be sent to class members letting them know that claims forms can be filled out, ensuring that Settlement Class Members will be aware of how to submit their claims. *Id*.

The Proposed Terms for Counsel Reimbursement are Reasonable.  As laid out in the concurrent motion for reimbursement of expenses and allocation of funds for future expenses, Settlement Class Counsel have requested a reasonable amount of the Settlement Fund to cover the costs of a near decade-long litigation and prepare for reasonably-anticipated forthcoming expenses as the IRPs gear up for a bellwether trial in the MDL.

The Settlement is Equitable.  Finally, there is no reason to doubt the fairness of the proposed Settlement. The Settlement was the result of good faith, arm's length negotiations between experienced and informed counsel on both sides. It is well established that significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class as here. *In re General Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001). There was no collusion between the negotiating parties. The proposed Settlement does not grant unduly preferential treatment to the class representatives or to segments of the Settlement Class, and it does not provide excessive compensation to Plaintiff's counsel. *See Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

The Third Circuit has observed that "[a] district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). The Settlement is fair and reasonable to all Settlement Class Members and treats them equally in relation to their purchases. The motion for notice to the class, to be filed by Plaintiffs at a time of their discretion, will establish a uniform, objective method for determining the value of individual claims. The claim protocol will fairly protect the interests of all

14

Settlement Class Members by providing fair, reasonable, and adequate relief through application of identical qualifying criteria to all Settlement Class Members.

Nor does the Settlement improperly grant preferential treatment to segments of the Settlement Class, notwithstanding the fact that some Settlement Class Members may be entitled to certain damages based on state statutes. *See, e.g.*, *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) ("[V]aried relief among class members with differing claims in class settlements is not unusual."). In sum, the Settlement ensures the Settlement Class Members will be treated equitably relative to each other. This factor therefore weighs strongly in favor of preliminary approval as fair, reasonable, and adequate.

### 4. The Remaining *Girsh* Factors Are Also Satisfied

Two of the remaining applicable *Girsh* factors—the eighth and ninth factors—concern whether the settlement is in the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation. As the Third Circuit has explained, "[i]n evaluating the eighth and ninth *Girsh* factors, we ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 440 (quoting *In re Warfarin*, 391 F.3d at 538).

Here, the Settlement provides valuable relief to the Settlement Class Members in the form a Settlement Fund that will ultimately be disbursed proportionally to their purchases of the Drugs at Issue. The fund model is appropriate here because Apotex is the second MDL 2724 Defendant to settle with the IRP class and the IRPs expect further recoveries, including from Defendants such as Heritage, Sandoz, and Taro, who have each already admitted their

participation in price-fixing of generic drugs.[5] Furthermore, the Settlement Fund will pay the notice costs for the Settlement, up to $500,000 of which will not be paid back to Apotex should the Settlement not meet final approval. The Settlement thus provides benefits to the Settlement Class, especially when considered in light of the litigation risks.

The Settlement is even more compelling given the substantial litigation risks the Settlement Class faced. The Settlement provides meaningful benefits to all settlement class members nationwide. In light of the obstacles to applying either a single state's law or the law of many states in the litigation context, the nationwide Settlement constitutes a significant achievement on behalf of the Settlement Class—an achievement that might not have been obtained had Plaintiffs continued litigating. Assessed against the delays and uncertainties associated with trial and appeals, the Settlement provides immediate, substantial financial benefits and clearly falls within the range of reasonableness. Indeed, it is hard to argue that an eventual trial would have guaranteed better relief being made available to Settlement Class Members, and whatever relief may be obtained at trial, it would still be many more months away from realization compared to the Settlement. Because the Settlement is therefore well within the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation, the eighth and ninth *Girsh* factors weigh heavily in favor of preliminary approval.

Finally, the second Gersh factor, the reaction of the class, underlies the fairness of the Settlement: there were no objections made to the Settlement, or to the Plan of Allocation. There

---

[5] These admissions are contained in statements of facts appended to these Defendants' deferred prosecution agreements with the Department of Justice. The admissions have been incorporated into MDL discovery via interrogatories and requests for admission directed to these Defendants.

were only three Class Members who elected to opt out of the Settlement that weren't already a Direct Action Plaintiff in the MDL.  *Compare* Page Decl. (Dkt. No. 3285) with MDL 2724 Docket.

## IV.  **CONCLUSION**

The IRPs seek Final Approval of the Apotex Settlement, which requires the Court to approve the following three motions:

- This Motion for Final Approval of Class Action Settlement;

- The unopposed Motion for an Order Approving the Allocation Plan for the IRPs' Apotex Settlement, which lays out the process for claims administration, provides for named plaintiff awards of $2,500 to each of the six named plaintiffs, and otherwise allocates the Settlement Fund; and

- The Motion for Reimbursement of Litigation Expenses and Allocation for Future Litigation Expenses from the Apotex Settlement, which allocates 33% of the Settlement Fund to reimburse the IRPs' past and future joint litigation expenses.

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval to the Apotex Settlement.

Dated: May 6, 2025                                Respectfully submitted,

*/s/ Christian Hudson*

Christian Hudson

**CUNEO GILBERT & LADUCA, LLP**
300 Cadman Plaza West, 12th Fl., Ste. 12060
(202) 789-3960
(202) 789-1819 (fax)
christian@cuneolaw.com

*Lead Counsel and Settlement Class Counsel*
*for the Indirect Reseller Plaintiffs*

17