# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | MDL No. 2724<br>16-MD-2724 |
| **THIS DOCUMENT RELATES TO:**<br>*All End-Payer Plaintiffs' Actions* | HON. CYNTHIA M. RUFE |

# MEMORANDUM OF LAW IN SUPPORT OF THE STATES'
# MOTION TO INTERVENE

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………….1

II. ARGUMENT……...…………………….…………………………………………….3

    A. The States Have a Right to Intervene Under Federal Rule of Civil Procedure 24(a)(2)……………………………………………………………………….…….…..3

        1. The States' Motion to Intervene Is Timely………………………………...4

        2. The Settlement Could Arguably Impair the States' Ability to Protect Their Interests……………………………………………………………………5

        3. The States' Interest in Protecting Consumers Whose Rights May Be Affected by the Settlement Is a "Significantly Protectable Interest."………..7

        4. The States' Interests Are Not Adequately Represented by the Parties……….8

    B. In the Alternative, the Court Should Grant Permissive Intervention…………...10

    C. Absent Intervention, the Court Should Accept the States' Objections as a CAFA Amicus Brief……………………………………………………………….…12

III. Conclusion……………………………………………………………………….…12

# TABLE OF AUTHORITIES

**Cases**

*Alban v. Kawasaki Kisen Kaisha, Ltd.*,
  2023 WL 3863095 (3d Cir. June 7, 2023) ..................................................................6

*Aziz v. Trump*,
  231 F. Supp. 3d 23 (E.D. Va. 2017) .....................................................................7, 11

*Benjamin ex rel. Yock v. Dep't of Public Welfare of Pennsylvania*,
  701 F.3d 938 (3d Cir. 2012) .................................................................................4, 8

*Eastern Shawnee Tribe of Oklahoma v. Ohio*,
  2006 WL 2711563 (N.D. Ohio Sep. 19, 2006) ..........................................................7

*FTC v. QT, Inc.*,
  448 F.Supp.2d 908 (N.D. Ill. 2006) ...........................................................................1

*Guenther v. BP Retirement Accumulation Plan*,
  50 F.4th 536 (5th Cir. 2022) .....................................................................................11

*Herman v. S.C. Nat'l Bank*,
  140 F.3d 1413 (11th Cir.1998) ..................................................................................9

*In re Flonase Antitrust Litig.*,
  879 F.3d 61 (3d Cir. 2017) .......................................................................................12

*In re Generic Pharms. Pricing Antitrust Litig.*,
  368 F. Supp. 3d 814 (E.D. Pa. 2019) .........................................................................7

*In re Lease Oil Antitrust Litig.*,
  570 F.3d 244 (5th Cir. 2009) .....................................................................................7

*In re Montgomery Cnty. Real Est. Antitrust Litig.*,
  1988 WL 125789 (D. Md. July 17, 1978) .................................................................6

*Kleissler v. U.S. Forest Service*,
  157 F.3d 964 (3d Cir. 1998) .......................................................................................4

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
  72 F.3d 361 (3d Cir. 1995) .........................................................................................4

*Sam Fox Publ'g Co. v. United States*,
  366 U.S. 683 (1961) ...................................................................................................2

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) .................................................................................................. 8, 10

*U.S. Commodity Futures Trading Comm'n v. Kratville*,
   796 F.3d 873 (8th Cir. 2015) ....................................................................................... 6, 9

*U.S. v. KeySpan*,
   763 F. Supp. 2d 633 (S.D.N.Y. 2011) ............................................................................. 6

*United States v. City of Los Angeles, Cal.*,
   288 F.3d 391 (9th Cir. 2002) ............................................................................................ 8

*United States v. Dentsply Int'l, Inc.*,
   190 F.R.D. 140 (D. Del. 1999) ......................................................................................... 5

*United States v. Ritchie Special Credit Invs., Ltd.*,
   620 F.3d 824 (8th Cir. 2010) ......................................................................................... 11

*Zimmerman v. GJS Grp., Inc.*,
   2017 WL 4560136 (D. Nev. Oct. 11, 2017) .................................................................. 11

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715 .............................................................. 3, 12

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................................. *passim*

Fed. R. Civ. P 24(b) ......................................................................................................... 10

I.      **Introduction**

The States of Alaska, Arizona, California, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, the Commonwealths of the Northern Mariana Islands & Puerto Rico, the Territory of the Virgin Islands, and the District of Columbia (collectively, the "States"), by and through their respective Attorneys General, respectfully move to intervene to object to final approval of the proposed class action settlement (the "Settlement") between Defendants Sandoz Inc. and Fougera Pharmaceuticals (Sandoz) and the End-Payer Plaintiffs (EPPs) and the attendant Plan of Allocation ("Allocation Plan"). The Settlement implicates the States' ever-present interest in obtaining a fair recovery for consumers harmed by Sandoz's anticompetitive conduct, which the Settlement and Allocation Plan, especially taken together, do not provide. The Settlement also implicates additional sovereign interests the States have relating to the claims against Sandoz that States have been vigorously litigating on behalf of consumers for nearly a decade and which are currently in the District of Connecticut (the "State Claims"). The States thus have the right to intervene.

Under the Settlement, the EPPs agree to release certain claims, *see* §§ VI.A (agreeing to release "Released Claims"), that, it could be (incorrectly) argued, include the State Claims. *See* § I.Q (defining "Released Claims")). To the extent the release even arguably includes the State Claims,[1] the EPPs' agreement to the release sufficiently implicates the States' interests to warrant

---

[1] For avoidance of doubt, the States contend that the EPP class cannot and has not released the State Claims and reserve the right to so argue in this or any related proceeding. *See, e.g.*, *FTC v. QT, Inc.*, 448 F.Supp.2d 908, 970 (N.D. Ill. 2006), *amended in part*, 472 F.Supp.2d 990 (N.D. Ill. 2007), aff'd, 512 F.3d 858 (7th Cir. 2008) ("[B]arring

1

intervention. Separately from any release, the EPPs also agree to move for a "Final Approval Order" (*see* § III.H) that, *inter alia*, would "direct[] that all claims by and on behalf of the EPP Releasers be dismissed with prejudice." *See* § I.M(7). To the extent such an order could arguably include the State Claims to the extent the State Claims are brought on behalf of consumers,[2] the EPPs' agreement to seek such an order sufficiently implicates the States' interests to warrant the States' intervention.

The impact[3] (if any) of the Settlement on the State Claims affects the fairness of the Settlement to consumers. The Settlement, especially in combination with the proposed Allocation Plan, provides insufficient recovery for consumers; indeed, neither the EPPs nor Sandoz has adduced evidence that any consumer can meet the proof requirement of the Allocation Plan and, therefore, that any consumer would receive ***any*** recovery at all from the Settlement. Even under a fairer allocation plan, the amount of the recovery for consumers would be inadequate relative to that of business entities and is much more inadequate relative to greater recovery (e.g., restitution) available through the State Claims. This inadequacy is especially stark considering that the States do not face the risks posed by class certification, which the Motion for Preliminary Approval advances as a purported justification for its paltry consumer recovery. The class not only cannot but also should not release those valuable claims. Any attempt by the class to do so exacerbates the unfairness of the Settlement to consumers.

---

a federal agency from pursuing its statutorily mandated duties because of private litigants' failure would frustrate the Congressional goal of protecting the public."); *Sam Fox Publ'g Co. v. United States*, 366 U.S. 683, 689 (1961) ("[P]rivate and public actions were designed to be cumulative, not mutually exclusive.").

[2] The States reserve the right to argue that no such order should issue if and when the EPPs filed the motion contemplated by the Settlement.

[3] The maximal effect of the Settlement on the State Claims is that any moneys actually recovered by consumers should be deducted from any award to consumers in connection with a judgment obtained by the States. Given that consumers are not expected to benefit substantially from the Settlement, such an offset is expected to be minimal and easily calculable.

2

The impact (if any) of the Settlement on the State Claims also affects the sovereign interests of the States beyond providing a fair recovery to consumers. As discussed in detail below, the States have several such interests including (without limitation) deterrence of future antitrust violations by Sandoz and others. The States have acted and continue to act on their interests by prosecuting the State Claims. Unsurprisingly (since the State Claims could not have been brought by the class), the Settlement does not address the States' interests at all. To the extent the Settlement (together with any motions/orders contemplated therein) would prejudice the State Claims, these interests would suffer.

For these reasons, the States have the right to intervene under Federal Rule of Civil Procedure 24(a)(2).[4] Alternatively, the States should be permitted to intervene to protect their interests in the State Claims under Federal Rule of Civil Procedure 24(b). Further, regardless of intervention, the Court should consider the States' objections to the Settlement and Allocation Plan, which are also offered by the States as *amici curiae* under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(f).[5]

**II.    ARGUMENT**

    **A. The States Have a Right to Intervene Under Federal Rule of Civil Procedure 24(a)(2).**

The Third Circuit recognizes four requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2): (1) the application is timely; (2) the applicant's ability to protect its interests would be impaired by disposition of the action; (3) the applicant's interests in

---

[4] To the extent the Court clarifies that (a) the release does not include the State Claims and (b) no order directing the dismissal of the State Claims will issue pursuant to the Settlement, or (c) the EPPs and Sandoz amend the Settlement to clarify that it will not impact the State Claims, the States would withdraw both their request to intervene and Appendix A, States' Omnibus Objections to the Proposed Settlement Between the End-Payer Plaintiffs and Sandoz.
[5] *See* S. Rep. No. 109-14, at 5 (2005) (requiring "that notice of class action settlements be sent to appropriate state and federal officials" … "so that they may voice concerns if they believe that the class action settlement is not in the best interest of their citizens"); *id.* at 35 ("[N]otifying appropriate state and federal officials ... will provide a check against inequitable settlements.").

3

the litigation are "significantly protectable"; and (4) the applicant's interest is not adequately represented by existing parties. *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998) (identifying these "four elements" to establish right to intervention and collecting cases). Importantly, where sovereign or public interests are implicated, the Third Circuit directs courts to apply a flexible policy in favor of intervention. *See id.* at 971-73. Intervention under Rule 24(a)(2) is mandatory when these requirements are satisfied. States here meet all four.

1. **The States' Motion to Intervene Is Timely.**

Intervention under Rule 24(a)(2) must be "timely," a determination that depends on "all the circumstances" and considers "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (citations omitted). Courts are "reluctant to dismiss a request for intervention as untimely." *Id.*

The States' motion is plainly timely. It is filed within 85 days after the States learned of the proposed Settlement and within the period permitted for objections. *See Benjamin ex rel. Yock v. Dep't of Public Welfare of Pennsylvania*, 701 F.3d 938, 950–51 (3d Cir. 2012) (finding intervention timely when filed promptly after receiving notice of settlement and before the objection deadline); *see* Long Form Notice, GENERICDRUGSENDPAYERSETTLEMENT.COM (setting May 9, 2025, as the deadline to object).[6]

There is no undue delay and no prejudice to the existing parties. *See Benjamin*, 701 F.3d at 951 ("[B]ecause intervention motions were filed in a timely fashion with respect to the Settlement Agreement, we do not see how [parties] could suffer any real prejudice."). Courts

---

[6] *Available at* https://genericdrugsendpayersettlement.com/assets/Docs/Notice/long-form-notice-sandoz-2025-03-06-final.pdf.

4

consistently recognize that intervention for purposes of objecting to a settlement, when sought promptly during the objection period, satisfies Rule 24(a)(2)'s timeliness requirement.

### 2. The Settlement Could Arguably Impair the States' Ability to Protect Their Interests.

To the extent the Settlement could arguably release the State Claims or lead, by operation of the "Final Approval Order," to their dismissal, the States' ability to protect their interests – in seeking a fulsome recovery for consumers; in regulating the markets for generic pharmaceuticals generally and, specifically, in deterring future bad conduct by Sandoz and others – could arguably be impaired.

As stated above, the Settlement provides an unfairly low recovery to consumers, especially in combination with the Allocation Plan. The settlement class includes "[a]ll persons … in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands." *See* § I.J. The Settlement would bind all such persons unless they affirmatively opt out, regardless of whether they receive notice or recover compensation. *See* § I.M. The States have an interest in avoiding such an unfair result for their citizens. At present, the States can still vindicate their interest in obtaining a fair recovery for consumers through the State Claims. To the extent the Settlement (or any order contemplated therein) would either release or otherwise lead to the dismissal of the State claims, the States' ability to seek a fair and adequate recovery for consumers would be impaired.

The States also have sovereign interests beyond seeking a fulsome recovery for consumers. The States have an interest in regulating the markets for pharmaceutical products in general. The States have a specific interest in the deterrent effect of remedies only available through the State Claims, including their legal and equitable claims, such as restitution and disgorgement. *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999)

(explaining that public suits serve broader deterrence goals than private damages actions); State Antitrust Enforcement Venue Act of 2022, 28 U.S.C. § 1407(a), H.R. 3460 Rep. No. 117-494, at 10 (2022) (recognizing the vital role of State AGs in "protect[ing their] residents from competitive injury by vigorously enforcing the antitrust laws to stop and deter anticompetitive conduct and illegal merger activity, thereby protecting consumers and the public.")[7]

The Settlement's release language should be understood to exclude the States Claims and, to the extent it includes them, is overbroad. It purports to release all claims "whether class, individual, or otherwise in nature" and "of any type," including claims that "were asserted or could have been asserted" based on the alleged conduct. *See id.* § I.Q. The phrase "could have been asserted" is fatally overbroad to the extent that parties would have it include States' sovereign enforcement claims for restitution, damages, disgorgement, which are not available to private plaintiffs or otherwise derivative of private consumer actions. *See Alban v. Kawasaki Kisen Kaisha, Ltd.*, 2023 WL 3863095, at *4 n.16 (3d Cir. June 7, 2023) (finding parties' ability to release claims they could not have brought extends only to "unadjudicated claims that could be brought exclusively in other forums").[8] All of these interests could arguably be impaired by an overbroad (and incorrect) application of the Settlement's release provision and/or by the Final Approval Order contemplated in the Settlement (which could arguably, but should not, issue).

---

[7] *See also U.S. v. KeySpan*, 763 F. Supp. 2d 633, 641 (S.D.N.Y. 2011) (highlighting deterrence as a public goal of disgorgement). Thus, the potential recovery available through the States' litigation is both quantitatively and qualitatively greater than that reflected in the proposed Settlement, and serves broader public deterrence interests that private settlements cannot replicate. *Cf. U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 889 (8th Cir. 2015) (holding government enforcers seek remedies, including restitution and disgorgement, that serve public integrity and deterrence goals).

[8] Further, in conferring with the States, Sandoz asserted that it views the Settlement as effectuating a "broad release" that would bar the States from recovering for consumers, and stated its intent to enforce the release against the States to the "maximum extent." If true, this interpretation of the release renders it fundamentally overbroad. *See, e.g.*, *In re Montgomery Cnty. Real Est. Antitrust Litig.*, No. B-77-513, 1988 WL 125789, at *1-2 (D. Md. July 17, 1978) (denying settlement approval where private plaintiffs and defendants, "without the concurrence of the Attorney General," entered into a settlement agreement that "would cover the entire time period of the alleged conspiracy.").

6

### 3. The States' Interest in Protecting Consumers Whose Rights May Be Affected by the Settlement Is a "Significantly Protectable Interest."

Rule 24(a)(2) requires only that an intervenor assert "an interest relating to the property or transaction that is the subject of the action." The States plainly satisfy that standard. As sovereigns, the States possess independent authority to enforce antitrust and consumer protection laws on behalf of their citizens—authority that is expressly delegated by state legislatures and historically recognized as separate and cumulative to private enforcement efforts.[9]

The States' enforcement authority is not derivative of private class claims. Rather, it arises directly from legislative grants of sovereign power to protect the public interest. Many States seek remedies unavailable to private class plaintiffs on behalf of consumers. Massachusetts, for example, empowers its Attorney General to seek restitution separately and apart from any private cause of action consumers have. *See* M.G.L. c. 93A, § 4. Similarly, only the Illinois Attorney General can recover damages, injunctive relief, and restitution under state antitrust law on behalf of Illinois indirect purchasers collectively. *See* 740 ILCS 10/7(1)-(2); *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 834 (E.D. Pa. 2019). Many other States have comparable authority.[10] States also are not subject to the procedural hurdles of class certification in securing relief for their citizens.

---

[9] Courts routinely permit State Attorneys General to intervene in class actions to protect sovereign or statutory enforcement interests. *See, e.g.*, *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 249-50 (5th Cir. 2009) (reversing denial of motion to intervene in class action settlement by Texas Attorney General); *Eastern Shawnee Tribe of Oklahoma v. Ohio*, No. 3:05-cv-7267, 2006 WL 2711563, at *2-4 (N.D. Ohio Sep. 19, 2006) (allowing intervention where Ohio's "Attorney General represents an important interest of the people and the State of Ohio"); *Aziz v. Trump*, 231 F. Supp. 3d 23, 29-33 (E.D. Va. 2017).

[10] *See, e.g.*, 73 P.S. Section 201-1, et seq. (empowering Pennsylvania Attorney General to obtain remedies like injunctive relief and restitution while private actors can only recover damages, costs and reasonable attorneys' fees through a private right of action); *Compare* Idaho Code § 48-113(1) (limiting private causes of action to direct injuries); ) *with* Idaho Code § 48-108(2) (authorizing the Idaho Attorney General to bring actions, as parens patriae, on behalf of direct and indirect purchasers). So too may state law parens claims only be brought by that States' Attorney General. *See, e.g.*, Alaska Stat. §§ 45.50.562 et seq.; Cal. Bus. & Prof. Code § 16750; Colo. Rev. Stat. § 6-4-111(3); Conn. Gen. Stat. § 35-32; Me. Stat. tit. 10, §§ 1101 et seq.; Mich. Comp. Laws §§ 445.901 et seq.; Md. Code Ann. Com. Law § 11-209; Minn. Stat. Ann. § 325D.59; Mo. Rev. Stat. §§ 416.011 et seq.; New York Exec.

The States also have a protectable interest in the substantial investment they have made over nearly a decade in investigating, litigating, and building the evidentiary record supporting consumer restitution. That investment includes the development of detailed factual records, successful opposition to dispositive motions, and expert reports quantifying consumer harm. Rule 24(a)(2) requires only a "practical" impairment of interest. The risk here is more than sufficient. *See Benjamin*, 701 F.3d at 951; *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 401 (9th Cir. 2002) ("[T]he relevant inquiry is whether the consent decree 'may' impair rights 'as a practical matter' rather than whether the decree will 'necessarily' impair them.").

### 4. The States' Interests Are Not Adequately Represented by the Parties.

The States' interests are not adequately represented by any existing party to the EPP-Sandoz Settlement— at least not insofar as the States have interests separate from those of the class members. Rule 24(a)(2) imposes a modest burden: it is enough to show that existing representation "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). That threshold is plainly met here.

Sandoz, as a defendant, is an adverse party to the States and cannot be expected to protect the States' sovereign enforcement interests. And, while the End-Payor Plaintiffs (EPPs) nominally seek relief on behalf of some consumers, their representation of the States' interests is plainly inadequate to the extent the Settlement purports to release States' claims. The Settlement was negotiated without the States' participation and excludes their perspective in its structure and allocation.[11] Additionally, the EPPs lack the States' enforcement powers and are not subject to

---

Law § 63(12); R.I. Gen. Laws § 6-36-12; Tenn. Code Ann. §§ 47-25-101 et seq.; Rev. Code Wa. § 19.86.080; Wis. Stat. Ch. §§ 133.03 et seq.

[11] The settlement was negotiated separately despite EPP's suggestions to this court that they would in fact collaborate with States in negotiating with Sandoz. *See* EPP Opposition to DPP Settlement with Sandoz, Case No. 2:16-md-02724-CMR, ECF 2895 at 8.

8

the same public accountability or obligations to act in the public interest. *Cf. Kratville*, 796 F.3d at 889 (While "a private litigant 'understandably' may believe it wise 'to compromise claims to gain prompt and definitive relief,' such a settlement 'does not further the broader [] public interests represented by the [state attorneys general] and reflected in [state legislatures'] delegation of enforcement powers to the [state attorneys general].'") (quoting *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1426 (11th Cir.1998)). Further, States bring claims and seek remedies that could not have been brought by the EPPs.

Moreover, the EPPs' litigation conduct and settlement posture subordinated State consumers' interests. This divergence is not speculative, but is reflected in the record:

- In their seeking class certification in their two bellwether actions, the EPPs chose not to seek certification of classes that included consumers. *See* EPP Mot. for Class Cert. (Clobetasol), Case 2:16-md-02724-CMR, ECF 2706 at 2; EPP Mot. for Class Cert. (Clomipramine), Case 2:16-md-02724-CMR, ECF 2707 at 2. Nor did they offer any expert opinion regarding consumer-specific injury or damages. Their economic modeling and certification efforts were directed solely at corporate end-payors.

- The EPPs' proposed Plan of Allocation effectively excludes most consumers by requiring decade-old "proofs of purchase" that consumers rarely retain. Tellingly, the sole consumer of the named class representatives who was deposed, Valerie Velardi, admitted that she herself did not keep receipts. *See* Ex. C, Dep. of Valerie Velardi at 30:13-32:7; 145:7-146:8. Ms. Velardi's testimony confirms that the Settlement's claims process is illusory for the very consumers that the EPPs purport to represent, while corporate entities—who routinely preserve such records—are positioned to claim a disproportionate share of the settlement fund.[12]

---

[12] *See* Ex. C, Dep. of Valerie Velardi at 30:13-32:7; 145:7-146:8. Although Ms. Velardi obtained documentation of a single purchase from Walgreens, her testimony shows that consumers do not keep such documentation as a matter of course. Rather, Ms. Velardi only procured the document in response to Defendants' 2019 Request for Production. Tr. 145:7-149:19. Doing so was onerous, necessitating several trips to the same pharmacy where she purchased her medication. *See id.* at 145:7-24, 110:10-22, 112:19-23. And, although the document was obtained for use in litigation, Ms. Velardi had lost it by the time her deposition took place on October 24, 2024. *Id.* at 111:19-21. She also testified she no longer has access to credit card statements that could show her purchases from 2016. *Id.* Ms. Velardi's experience demonstrates that a typical consumer is unlikely to have or be able to procure documentation required to recover under the proposed plan of allocation.

These decisions reflect both a divergence of interest and a failure of advocacy on behalf of State consumers—whose interests the States are statutorily charged to protect.[13] The Supreme Court has made it clear that intervention is warranted even where an existing party claims to represent the same constituency, so long the intervening party's objectives do not fully align with current party's narrower, more focused interest. *Trbovich*, 404 U.S. at 538 n.10 (allowing intervention despite overlapping representation by the Secretary of Labor because the union member's interest might not be fully protected). Here, as in *Trbovich*, the States' interest in securing meaningful, equitable relief for consumers—and enforcing their own statutory mandates—cannot be assumed to be adequately represented by another party with divergent goals and incentives.

Nor is Rule 23(e)(2)'s fairness hearing a substitute for the States' participation. Courts assessing fairness focus primarily on whether the settlement is reasonable from the class's perspective, not on whether it protects sovereign enforcement interests or preserves the States' statutory recovery rights. As the Supreme Court made clear in *Trbovich*, even where existing parties share some overlapping goals, intervention may still be necessary to protect other statutorily authorized interests. *Id.*

### B. In the Alternative, the Court Should Grant Permissive Intervention.

If the Court concludes that the States are not entitled to intervene as of right, it should nevertheless grant permissive intervention under Rule 24(b). Permissive intervention is appropriate where: (1) the motion is timely; (2) the applicant's claims or defenses share common questions of law or fact with the main action; and (3) intervention will not unduly delay or

---

[13] In fact, Congress has long recognized that "the State's attorney general is the best representative conceivable for the State's consumers." Remarks of Rep. Rodino, Debate on H.R. No. 8532, 94th Cong., 2d Sess., 122 Cong. Rec. H. 308789 (Sept. 16, 1976).

10

prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B). Courts liberally construe Rule 24(b) in favor of intervention. *See United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 831 (8th Cir. 2010); *Guenther v. BP Retirement Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022).

Here, all elements are satisfied. First, the States' motion is timely: it was filed promptly after notice of the proposed Settlement and within the period allowed for objections. *See supra*, Part II.A. Second, the States' sovereign enforcement claims on behalf of consumers against Sandoz share common questions of law and fact with the EPPs' claims, arising from the same alleged industry-wide conspiracy to fix prices and allocate markets for generic drugs.

Permissive intervention is particularly appropriate where, as here, the intervenor contributes a distinct sovereign perspective. *See Aziz*, 231 F. Supp. 3d at 29 (granting permissive intervention to state that "has an interest in the subject matter of the litigation both as parens patriae and as the proprietor of numerous public universities"); *Zimmerman v. GJS Grp., Inc.*, No. 2:17–cv–00304–GMN–GWF, 2017 WL 4560136, at *9 (D. Nev. Oct. 11, 2017) (granting permissive intervention to state seeking to protect parens patriae interests). The States' participation would also materially aid the Court's Rule 23(e) evaluation by ensuring that broader public enforcement and consumer protection interests are fully considered.

Finally, the limited improvements the States seek to the Settlement—clarifications to protect sovereign claims and consumer interests—can be achieved without undue delay or prejudice to the parties' rights. Permitting intervention would not disrupt the existing proceedings but would enhance the fairness and legitimacy of any eventual settlement approval.

### C. Absent Intervention, the Court Should Accept the States' Objections as a CAFA Amicus Brief.

Even if the Court denies intervention, it should accept the States' objections as an amicus submission under the CAFA. CAFA requires that notice of proposed class action settlements be served on State Attorneys General and provides a 90-day period to allow state officials to raise concerns about settlements that may adversely affect their citizens. *See* 28 U.S.C. § 1715(d). This statutory notice framework reflects Congress's intent to ensure that state officials can assist the Court in evaluating the fairness, reasonableness, and adequacy of proposed settlements. The States' perspective is especially essential where a settlement "may be unfair to some or all class members or inconsistent with broader regulatory and enforcement policies." *See In re Flonase Antitrust Litig.*, 879 F.3d 61, 64 (3d Cir. 2017) (quoting S. Rep. No. 109-14, at 31).

Here, the States' objections identify serious concerns regarding the Settlement's potential impairment of sovereign enforcement rights and its practical inequities for consumers. Accepting the States' submission as a CAFA amicus would aid the Court's Rule 23(e) fairness review and advance CAFA's goal of protecting class members and public interests.[14]

## III. Conclusion

Based upon the foregoing, the States respectfully request that the Court grant their Motion for Intervention to allow the filing of States' Omnibus Objections to the Proposed Settlement Between the End-Payer Plaintiffs and Sandoz.

---

[14] If this Court finds that the Settlement does not impair States' interests because it does not release States' claims on behalf of consumers, this will similarly resolve States' concerns under CAFA. In that event, States would withdraw their amicus.

Respectfully submitted,

**STATE OF CALIFORNIA**
**ROB BONTA**
**ATTORNEY GENERAL**

By: /s/ *Mathew Simkovits*
Mathew Simkovits
Deputy Attorney General (SBN 351416)
Healthcare Rights and Access Section
California Office of the Attorney General
300 S. Spring St., Suite 1700
Los Angeles, CA 90013
Telephone: (781) 454-8580
Email: Mathew.Simkovits@doj.ca.gov

*Attorney for the State of California*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which shall send notice to all counsel of record.

Dated: May 9, 2025                                             */s/ Mathew Simkovits*

                                                                            MATHEW SIMKOVITS

14