**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | : | **MDL NO. 2724** **16-MD-2724** |
| | : | **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** ***ALL ACTIONS*** | : | |

**SPECIAL MASTER LAWRENCE F. STENGEL'S REPORT AND RECOMMENDATION TO THE COURT RESOLVING ZYDUS PHARMACEUTICALS (USA) AND CERTAIN DEFENDANTS' MOTION TO COMPEL PLAINTIFFS HUMANA, INC., HEALTH CARE SERVICE CORP., AND MOLINA HEALTHCARE, INC. TO PRODUCE CUSTODIAL DOCUMENTS RELATED TO INDIRECT PURCHASES**

Before me are Zydus Pharmaceuticals (USA) Inc. and certain Defendants' (collectively, the "Defendants") letter motion to compel Plaintiffs Humana, Inc., Health Care Service Corp., and Molina Healthcare, Inc. (collectively, the "Insurer Plaintiffs") to produce custodial documents related to indirect purchases of generic drugs; the Insurer Plaintiffs' opposition thereto; and the End-Payer Plaintiffs' response to the Defendants' motion. Argument was held on March 26, 2025. As explained below, I recommend that the Defendants' motion be denied.

## I. INTRODUCTION

1. This Report and Recommendation responds to the Defendants' motion to compel, as it was captioned and against whom it was specifically directed. During briefing and argument, the scope of the motion came to be questioned. To be clear, this Report and Recommendation relates only to the Insurer Plaintiffs against whom the Defendants' letter motion was expressly directed. This Report and Recommendation does not affect Direct Action Plaintiffs United

HealthCare Services, Inc. and The Cigna Group., against whom the Defendants' motion was not directed.

2. Further, the parties disagree on whether the Defendants' motion relates to the state-actions pending in the United States District Court for the District of Connecticut. It is unclear whether the State Plaintiffs were notified of the Defendants' letter motion (which was submitted directly to me). Indeed, the State Plaintiffs did not submit any briefing and they did not appear during oral argument. Because the State Plaintiffs appear not to have received notice of this dispute and have not had an opportunity to be heard, this Report and Recommendation is not being simultaneously filed in the dockets for the state-actions, and I do not find that the Defendants' motion overlaps with the matters pending in the United States District Court for the District of Connecticut.

3. The matter has been briefed, and oral argument was held on March 26, 2025. The Defendants' motion is now ripe for disposition.

## II. DISCUSSION

### A. The Defendants' Motion to Compel Custodial Documents

4. The Defendants' ask the Court to compel the Insurer Plaintiffs to produce custodial documents related to i) the determination of insurance premiums and ii) pharmacy benefit manager ("PBM") negotiations, evaluation and selection, audits and claim reconciliation, and plan design and cost sharing (collectively, the "PBM Information"). *See* Defs' Supp. Response Letter, dated Apr. 2, 2025, at 2, 4. Defendants argue that such custodial documents are relevant for two reasons. First, insurance-premium information is relevant to determine damages and prevent the risk of double-recovery. *See*, e.g., Defs' Supp. Response Letter, dated Apr. 2, 2025, at 3-4. Second, the PBM Information is relevant for evaluating spread pricing and/or claims reconciliation. *See id*. at

2. Moreover, Defendants argue, the Court "has already permitted Dr. Erin Trish to opine on PBM-related issues in direct response to EPPs' experts[.]" *Id.*

5. After generally noting that courts "view relevance broadly in antitrust actions," the Defendants argue that insurance-premium information is related to the "passing on" of overcharges "through the distribution chain." *See* Defs. Letter Mot. at 2. Defendants also claim that the insurance-premium information will also "shed light" on the Insurers' process for setting co-pays, which is another variable related to pass-throughs. *See Id.* at 4. As to PBM Information, the Defendants argue that "PBMs used several pricing practices, like spread pricing, that affected the Insurers' drug costs." *Id.* at 3. Further, "[t]he requested documents may reflect that Insurers contributed to their alleged damages by selecting PBMs for reasons other than pricing, including pharmacy network size and formulary management." *Id.* Also, according to the Defendants, "documents related to pricing negotiations with PBMs will enable the parties to analyze the bases for the costs paid by the Insurers, and whether and to what extent those costs were the result of purported conduct by manufacturers as opposed to others in the drug distribution chain." *Id.* Regarding PBM audits, the Defendants assert that "audits might result in payments, financial adjustments, or other actions taken to rectify the errors, which are not reflected in transactional data and must be factored into Insurers' alleged damages in the MDL." *Id.*

**B. The Insurer Plaintiffs' Opposition**

6. The Insurer Plaintiffs object to producing the custodial materials described above. As to the insurance-premium information, the Insurer Plaintiffs argue that the Court has already determined that the "purported pass-on of higher drug prices through insurers' premiums is categorically irrelevant to this case." *See* Ins. Pltfs' Opp. at 2. Regarding the PBM Information, the Insurer Plaintiffs argue that such information is not relevant to damages and production of such

information would be "contrary to Judge Rufe's order on Daubert motions." *Id.* Further, HCSC and Molina have already produced their PBM contracts, and their PBMs have already produced their "spread pricing" data. *Id.* In addition, the Insurer Plaintiffs claim that the Defendants' arguments cannot apply to Humana, Inc. which used its own internal PBM. *Id.*

7. Specifically, the Insurer Plaintiffs say that the Court's order adopting Special Discovery Master Marion's Sixteenth Report and Recommendation ends the insurance-premium analysis. *See* Pltfs. Opp. at 2-3 (discussing 16-MD-2724 (ECF 3226) and asserting that "the issue is therefore dead"). Because the Court determined that insurance premiums anticipate future costs and do not capture past expenditures, such premiums are irrelevant to damages. *Id.* The Insurer Plaintiffs also argue that the risk of duplicative recovery simply does not exist: "No PBM is seeking damages in this matter. Nor is any employer or insured who claims that it paid higher premiums because of drug overcharges. Insurers as end payors are at the very end of the chain of commerce: once they have []reimbursed the pharmacy for a drug, that drug is consumed by the insured and not resold." *Id.* at 3.

8. Regarding PBM Information, the Insurer Plaintiffs point out that they have already produced PBM contracts, which include pricing terms. Also, the PBMs used by HealthCare Services Corp. and Molina, Inc. produced spread-pricing data. *Id.* at 2. The Insurer Plaintiffs also note that the Defendants have failed to explain why relevant PBM pricing information would be found in *custodial* documents, as opposed to the contracts and hard data that have already been produced. Lastly, the Insurer Plaintiffs argue that the Court also reached this PBM Information issue in its *Daubert* opinion, when the Court "rejected a defense based on the theory that PBM pricing practices are an intervening cause of harm." *Id.* (citing 16-MD-2724 (ECF 3171 at 32, 35) (where Court found defense expert's opinion "irrelevant to the present matter or unduly

prejudicial" and that possibility of PBM pricing tools and spread pricing affecting damages was "speculative").

### C. The End-Payer Plaintiffs' Response

9. The End-Payer Plaintiffs' response was submitted "to provide a fuller picture of the record in the bellwether proceedings." *See* EPP Resp., dated Feb. 25, 2025, at 1. The EPPs' response echoes the arguments set forth in the Insurer Plaintiffs' opposition.

## III. LEGAL ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) limits discovery to information "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). It is axiomatic that trial courts have broad discretion in fashioning remedies during discovery. *See Gutierrez-Rodriguez v. Cartagena,* 822 F.2d 553, 576 (1st Cir. 1989) (citing *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 643 (1976)).

### A. The Insurance-Premium Information

10. During oral argument, the Defendants vigorously argued that the Court has not previously considered whether insurance-premium information is relevant to the issue of double/duplicative recovery rather than generally calculating damages. *See also* Defs. Supp. Response Letter dated Apr. 2, 2025, at 3-4. This argument fails for two reasons. First, the Court (in adjudicating a similar motion to compel from Defendant Actavis Holdco US, Inc.) has already determined that insurance premiums are forward-looking and do not reflect an insurer's attempt to recoup past expenditures. Accordingly, the Court found that insurance-premium information is not relevant to damages. Specifically, the Court held:

> With regard to damages, courts have held that 'insurance premiums are not a 'pass on' of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past.' Actavis argues that those cases concerned the effects of single drugs and

> limited conspiracies, different from the broad conspiracies implicating many drugs over a long period of time that are included in the MDL. The Corut is not persuaded by this argument as the fundamental principle still applies.

MDL Order dated Jan. 7, 2025, adopting the Sixteenth Report and Recommendation of Special Master David Marion (16-MD-2724 (ECF 3226) at 4 (citations omitted).

Here, it is difficult to comprehend how a risk of potential *duplicative* recovery exists *vis a vis* insurance premiums, if such premiums are not relevant to damage recovery *in the first instance*. If it is a "fundamental principle" that insurance premiums do not "recover money that insurers paid in the past," then premiums cannot affect recovery (duplicative or otherwise).[1]

Second, even though the Defendants take issue with the fact that the Court's opinion did not specifically mention duplicative recovery, that exact argument was presented to the Court in Actavis Holdco US, Inc.'s objections to Special Master Marion's Sixteenth Report and Recommendation. *See* Actavis Holdco US, Inc.'s Obj. to Sixteenth Report and Recommendation of the Special Discovery Master, 16-MD-2724 (ECF 2442) at 11 ("EPPs must show that in seeking damages, they can 'avoid[] either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other.'") (citations omitted). *See also id.* at 12 ("Without the discovery sought, there is a real risk of duplicative recovery…given EPPs' inability to correctly apportion damages between the health plans and their beneficiaries, who, if left without recovery, may also pursue overlapping claims.").

11. Because the Court was already presented with the arguments regarding the purported relevance of insurance premiums as to damage-calculations and those arguments were

[1] In addition, at least one court has observed that – even if insurance premiums were backward- rather than forward-looking, it would be speculative to determine what portion of an insurance premium would be related to costs for a specific drug. *See In re HIV Antitrust Litigation*, 2023 WL 3011624 (N.D. Cal. Apr. 18, 2023). The Defendants did not offer any explanation as to how they could overcome this problem.

rejected, the Defendants cannot make the same arguments now and hope for a different result. *See, e.g., In re Pharmacy Benefits Managers Antitrust Litigation*, 582 F.3d 432, 439 (3d Cir. 2009) (discussing law of the case doctrine and observing "the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)); *Casey v. Planned Parenthood of Se. Pa.*, 14 F. 3d 848, 856 (3d Cir. 1994), *abrogated on other grounds by Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 302 (2022), (The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.' " (quoting 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, *Federal Practice and Procedure* § 4478 at 788 (2d ed.1981)). Thus, this component of the Defendants' motion is denied.[2]

**B. The PBM Information**

12. The PBM Information presents a somewhat more complicated question. Fundamentally, however, the Defendants have not adequately explained why *custodial-file productions* are necessary when PBM source data on pricing (including any spread pricing) have been produced. The lack of explanation seems particularly acute as it relates to Humana, Inc., which used its own internal PBM and, therefore, would not have engaged in any PBM selection or negotiation process.

[2] The Defendants failed to argue that any of the recognized exceptions to the law of the case doctrine apply and/or that there is any "extraordinary circumstance" that would justify deviating from the Court's prior controlling ruling. *In re Pharmacy Benefits Managers Antitrust Litigation*, 582 F.3d 432, 439 (3d Cir. 2009) (discussing potential exceptions to law of the case doctrine). Even if such exceptions and/or "extraordinary circumstances" had been argued, it is the place of the trial court to revisit its prior rulings. *See id.*

13. Indeed, during oral argument, counsel for Health Care Services Corp. and Molina Healthcare, Inc. questioned why custodial documents that may show how a health plan structures its PBM relationship would be relevant to the calculation of damages. Counsel also observed that spread-pricing is "a data issue," not an issue that would be elucidated through an individual's emails. I find these points persuasive. If a future defense expert can articulate specific reasons why PBM Information from custodial files is needed to formulate an opinion on a particular issue, that may change the discovery analysis.[3] At this point, however, I am not convinced that producing PBM Information from custodial files (with custodians and search terms as yet unidentified) would be a productive exercise that would advance the litigation.

14. With that said, I find the Defendants' arguments regarding potential PBM audits more compelling. While I do not believe that custodial email communications or other materials surrounding PBM audits would be useful,[4] it does seem like the *final results* of any PBM audits should fairly be produced. It appears that the Insurer Plaintiffs agree, as they acknowledged in their opposition that "[e]ven if reports outside the claims data reflect [claims reconciliation] adjustments, such reports should be obtained by a 'go-get' document request rather than a custodial search." *See* Defs. Supp. Response at 2 (quoting Insurer Plaintiffs' Opp. at 2). The Defendants also note that the Insurer Plaintiffs (during oral argument) "suggested that other documents sought

[3] In reviewing the Court's *Daubert* opinion, I do not find that the Court issued a blanket condemnation of the use of PBM-related information. Instead, it seems that the Court specifically determined that certain components of Dr. Trish's opinion that related to/were based on PBM data were unreliable. If the Defendants retain an expert who can explain how custodial PBM Information would be relevant and may provide the basis for a reliable opinion, I recommend that the Defendants be granted leave to raise this issue again at such time.

[4] The Defendants acknowledge in their letter motion that they served the discovery requests at issue in 2020. While the Defendants offer explanations to justify the five-year lag in seeking Court intervention, it is nevertheless true that five years have elapsed. If the materials at issue were critical, it seems that discovery efforts would have reflected a greater sense of urgency.

by Defendants may also be appropriate for production as go-gets or targeted documents." *Id.* Given the Insurer Plaintiffs' belated concessions on these points, I find that such go-get items should be identified, located, and produced to the Defendants.

15. Accordingly, I recommend that the Court grant the Defendants' motion *to the extent* that final PBM audit/claims-reconciliation data exist and can be produced through a "go-get" document request, rather than a custodial search. I also recommend that the Defendants be granted leave to re-raise their motion to compel custodial documents related to the PBM Information, if the Defendants can identify an expert in the future who can explain how custodial PBM Information would be relevant and may provide the basis for a reliable opinion.

## IV. CONCLUSION

16. Therefore, for the reasons outlined above, I recommend that the Court enter the proposed Order, which reflects the analysis above.

Respectfully submitted,

Date: May 29, 2025

*/s/ Lawrence F. Stengel*
Hon. Lawrence F. Stengel (Ret.)
*Court Appointed Special Master*
SAXTON & STUMP, LLC
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
(717) 556-1080
lfs@saxtonstump.com