**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br><br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*All End-Payer Plaintiffs' Actions* | HON. CYNTHIA M. RUFE |

**SANDOZ INC.'S RESPONSE TO THE STATES' OMNIBUS OBJECTIONS TO THE
PROPOSED SETTELMENET BETWEEN THE END-PAYER PLAINTIFFS AND
SANDOZ (MDL DOC. NO. 3380-1)**

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT .............................................................................................................. 1

   A.   Release of Claims for Monetary Relief on Behalf of Consumers Does Not Render the
   Settlement Class "Overbroad." ...................................................................................... 2

      1.   The States' objection is unsupported by law and would effectively grant the States a
      veto over consumer class settlements. .......................................................................... 2

      2.   The Settlement does not inhibit the States' ability to continue to pursue sovereign
      claims to vindicate public interests. ............................................................................ 7

      3.   Rewriting the release or imposing an "offsetting" mechanism is unsupported by law... 8

   B.   The Existence of Overlapping Claims Asserted by the States Does Not Make this
   Settlement an Inferior Method of Resolving Consumer Claims............................................ 10

   C.   The Settlement Provides a Fair, Reasonable, and Adequate Recovery............................ 13

III.  CONCLUSION........................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)................................................................................5, 6

*Braun v. Phila. Inquirer, LLC*,
No. 22-cv-4185, 2025 WL 1314089 (E.D. Pa. May 6, 2025)................................12

*Cal. v. Am. Stores Co.*,
495 U.S. 271 (1990)................................................................................11

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) ................................................................4, 7, 8, 9

*CFTC v. Com. Hedge Servs.*,
422 F. Supp. 2d 1057 (D. Neb. 2006)................................................................9

*EEOC v. U.S. Steel Corp.*,
921 F.2d 489 (3d Cir. 1990) (Alito, J.) ................................................................7

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002)................................................................................3

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)................................................................2, 15

*Esslinger v. HSBC Bank Nev., N.A.*,
No. 10-cv-3213, 2012 WL 5866074 (E.D. Pa. Nov. 19, 2012) ........................3, 8, 9

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)................................................................13, 14

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017)................................................................5

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972)................................................................................10

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
916 F. Supp. 2d 454 (S.D.N.Y. 2013) (rejecting New York AG's argument that the
settlement undervalued the claims as being "based on sheer speculation") ..........................14

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
No. 05-md-1712, 2013 WL 3463503 (E.D. Pa. July 10, 2013)................................3

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013)............................................................................13

*In re Baldwin-United Corp.*,
    770 F.2d 328 (2d Cir. 1985).........................................................................4, 8

*In re Beacon Assocs. Litig.*,
    No. 09-cv-777, 2012 WL 1569827 (S.D.N.Y. May 3, 2012) ...........................11, 15

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003).........................................................................12

*In re Montgomery Cnty. Real Est. Antitrust Litig.*,
    1988 WL 125789 (D. Md. July 17, 1978)..........................................................4, 5

*In re NFL Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016)......................................................................2, 13, 14

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
    261 F.3d 355 (3d Cir. 2001)..............................................................................6

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)................10, 12

*In re TFT-LCD Flat Panel Antitrust Litig.*,
    MDL. No. 1827, 2011 WL 13152270 (N.D. Cal. June 13, 2011) ....................13, 15

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).............................................................................2

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
    571 U.S. 161 (2014).........................................................................................8

*Mitchell v. State Farm Fire & Cas. Co.*,
    327 F.R.D. 552 (N.D. Miss. 2018)....................................................................10

*N. Am. Foreign Trad. Corp. v. Chiao Tung Bank*,
    No. 95-cv-5189, 1997 WL 193197 (S.D.N.Y. Apr. 18, 1997) ...............................7

*N.M. ex rel. King v. Capital One Bank U.S. N.A.*,
    980 F. Supp. 2d 1346 (D.N.M. 2013) ..............................................................3, 7

*Pennsylvania v. Budget Fuel Co.*,
    122 F.R.D. 184 (E.D. Pa. 1988).............................................................10, 14, 15

*Thornton v. Kroger Co.*,
    2023 WL 6378417 (D.N.M. 2023) ...................................................................10

*Weber v. Gov't Emps. Ins. Co.*,
   262 F.R.D. 431 (D.N.J. 2009) ........................................................................................10

**RULES**

Fed. R. Civ. P. 23(b)(3), Notes ........................................................................................10

Rule 23 ..........................................................................................................................1, 6

Rule 23(b)(3) ............................................................................................................10, 11

**STATUTES**

Clayton Act .......................................................................................................................11

ERISA ...............................................................................................................................11

**OTHER AUTHORITIES**

6 Newberg & Rubenstein on Class Actions ....................................................................4–7

18A Wright & Miller, Fed. Prac. & Proc. Juris. § 4458.1 (3d ed.) ...................................7

## I.        Introduction

Sandoz's settlement with the End Payer Plaintiffs ("EPPs") (the "Settlement") is fair, adequate, and reasonable and should be approved under Rule 23. The Settlement—the largest to date between any Defendant and plaintiff group in this litigation—was the product of arm's-length negotiations between experienced antitrust counsel and was reached after more than eight years of hard-fought litigation that has included extensive discovery and motion practice. The Settlement provides for a cash settlement fund totaling $275,000,000 (which could be reduced by a maximum of $45,000,000 to account for opt-outs) for the benefit of the Settlement Class, as well as cooperation from Sandoz. In the face of litigation risk and uncertainty, it provides meaningful compensation to the Settlement Class.

Seeking to derail this hard-fought Settlement, the States' objections misleadingly purport to speak on behalf of all consumers that will be granted relief under the Settlement. But the States' objections are driven by a paternalistic desire to control private class action settlements. The States are not class members, and they are no longer parties to the MDL, having abandoned this forum for the District of Connecticut. Instead, after taking their claims to that court with the hope of outpacing the MDL, they now seek a veto over private resolution of EPP class claims under the guise of objecting to the Settlement as overbroad or as threatening state sovereign interests. Instead of protecting consumers, the States seek to block a settlement that would benefit consumers nationwide. After a full period for notice and opting out, only a single consumer has opted out. Consumers could have opted out if they believed the Settlement was inadequate, but they did not. And not a single consumer objected to the Settlement. This undisputed fact speaks volumes. Moreover, granting the States's relief would deprive the consumers in States without any colorable parens claims of any opportunity for direct monetary relief from Sandoz. The Court should reject the States' objections and grant final approval.

## II.       Argument

The Third Circuit has recognized an "overriding public interest in settling class action litigation."

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ("[A] strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes . . . ."). The Settlement is presumptively fair because "(1) the negotiations occurred at arms length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (citation omitted). Against this presumption, the States principally argue the Court should deny final approval because the Settlement releases consumer claims some States are pursuing in parallel litigation in the District of Connecticut. (Obj. at 17–23.) The States repackage this argument in several ways, but none are availing. Indeed, the States frequently misstate or overstate their cited authority, which, in many cases, ***supports*** granting final approval. For these reasons, the Court should reject the States' objections.[1]

## A. Release of Claims for Monetary Relief on Behalf of Consumers Does Not Render the Settlement Class "Overbroad."

The States argue the Settlement's release of consumer claims renders it "overbroad." (Obj. at 17–18.) That is false. This objection is unsupported by law and would give the States an effective veto over all class settlements involving consumers. The Settlement does not interfere with the States' ability to vindicate the public interest; it merely precludes a double recovery by the consumers of certain states.

### 1. The States' objection is unsupported by law and would effectively grant the States a veto over consumer class settlements.

The States fail to cite a single case where a court found that a private settlement was overbroad because it released consumer claims being pursued by government enforcers in separate litigation.

---

[1] The States also object to the Settlement's allocation plan and notice. (Obj. at 11–17, 24–27.) EPPs' final approval motion addresses these objections, and therefore Sandoz does not address them here. But Sandoz notes that, under the Settlement, the allocation plan "is not part of this Settlement and is to be considered by the court separately from the court's consideration of the fairness, reasonableness and adequacy of the Settlement." (Settlement, § III.C.)

Indeed, the Eastern District of Pennsylvania has granted final approval to a private settlement of consumer claims for monetary relief over the objection of several states that wished to pursue overlapping claims for damages on behalf of consumers. *Esslinger v. HSBC Bank Nev., N.A.*, No. 10-cv-3213, 2012 WL 5866074, at *1 (E.D. Pa. Nov. 19, 2012). There, the court rejected objections to the class settlement by Hawaii, Mississippi, and West Virginia AGs because "the AGs [we]re not Class members, [so] they do not have standing to object to the settlement." *Id.* at *7. The court also explained:

> [T]he AGs may continue to bring claims belonging to their respective states, such as state criminal and regulatory actions. However, the AGs are precluded from bringing claims "in a , , , representative capacity on behalf of the plaintiffs" in this class action, because doing so would allow Class members to ***double recover***. Class members were ***adequately represented*** and ***given an opportunity to opt out*** of the settlement. Allowing the Class members to recover under both this settlement and future AG-driven litigations on the basis of the same facts would ***run counter*** to well-established class action principles and would ***discourage settlements***, which are strongly favored.

*Id.* at *22 n.2 (emphasis added) (citations omitted). For identical reasons, courts have also enjoined or dismissed overlapping government claims for consumer monetary relief that have already been settled. *See, e.g.*, *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. 05-md-1712, 2013 WL 3463503, at *8 (E.D. Pa. July 10, 2013) ("Because the class members have already received certain sums in settlement, restitution above that sum could very well result in double recovery in violation of the Supreme Court's holding in *Waffle House*."[2]); *N.M. ex rel. King v. Capital One Bank U.S. N.A.*, 980 F. Supp. 2d 1346, 1356 (D.N.M. 2013) (holding that class members "should not be allowed to receive 'double recovery'" through New Mexico's suit). The fact that those settlements released overlapping government claims for consumer monetary relief did not render them "overbroad" or "unenforceable."

Taken to its logical conclusion, the States' objection would give states veto power over all consumer class actions where the states had filed parallel litigation, would hold potential consumer

---

[2] *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t 'goes without saying that the courts can and should preclude double recovery by an individual.'" (citation omitted)).

settlements hostage, and would discourage and impede settlement. This is not—and cannot be—the law. The ability of private classes to grant releases that may "preclude" overlapping government actions on behalf of consumers is "necessary to enable settlement of large class actions." 6 Newberg & Rubenstein on Class Actions § 18:23. Multiple courts have recognized that rendering state claims for consumer relief immune from preclusion or release by private settlement classes would discourage settlement and eviscerate the utility of MDLs. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1172, 1180–81 (9th Cir. 2014) (holding that allowing California's restitution claims to proceed would "undermine [the] central guarantee" of class settlements that class members cannot "obtain a duplicate recovery" and that without this guarantee, "defendants would have little incentive to agree to any settlement"); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) ("If states . . . could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement. Any substantial risk of this prospect would threaten all of the settlement efforts . . . and destroy the utility of the multidistrict forum . . . ."). This Court should reject the States' objection which would give the States an effective veto over all consumer settlements in this MDL.

In the face of this overwhelming legal authority, the States have cited a single, unpublished decision that is nearly half a century old from the District of Maryland. *See In re Montgomery Cnty. Real Est. Antitrust Litig.*, 1988 WL 125789 (D. Md. July 17, 1978).[3] There, a class action was certified to seek damages from September 5, 1974 to September 30, 1976. The Maryland AG, in contrast, brought a *parens patriae* action on behalf of persons from September 30, 1976 to April 1, 1977. *Id.* at *1.[4] After reaching a proposed settlement, the class asked the court to "extend[]" its class definition "to include

---

[3] While the Westlaw citation indicates this decision is from 1988, the order makes clear that it was issued "this 17th day of July, 1978." *In re Montgomery*, 1988 WL 125789, at *3.

[4] Unlike the States here, who object to this Settlement while pursuing their claims in a different forum, the Maryland AG's case was a part of the same consolidated proceedings as the private class action. *Id.*

those persons who were injured . . . between September 30, 1976 and April 1, 1977," which would have the effect of displacing the Maryland AG's suit. *Id.* The court rejected that request, in part, because the later group was "already represented by the Attorney General in the State's *parens patriae* action." *Id.* at *2. That court's reasoning is easily distinguished because the Settlement Class here is not attempting to alter or amend a previously certified class definition. Here, the class's consumer claims existed from the outset of the MDL, and the Settlement does not preclude the States' sovereign claims in the District of Connecticut.[5] *Infra* Section II.A.2. Further, in the nearly 50 years following that decision, a litany of courts have allowed private class actions to release overlapping damages claims being pursued by state and federal enforcers. Accordingly, the facts of *Montgomery* make it an outlier.

The States have also inaccurately asserted that the Settlement Class can only release claims that were "properly within the scope of the litigation." (Obj. at 17.) That too, is false: the Third Circuit has consistently held that a settlement class may release claims that were never—or could never have been—brought in the class action. *See Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017) ("It is not unusual for a class settlement to release all claims arising out of a transaction or occurrence."). The States' preferred treatise recognizes this black letter legal principle. *See* 6 Newberg & Rubenstein on Class Actions § 18:21 ("courts have approved settlements containing releases of claims beyond a court's jurisdictional authority"). If the States' position were adopted, it would nullify all general releases and discourage defendants from settling. The States' only cited support for its incorrect statement of law is a partial concurrence in *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), but that is not the law.[6]

---

[5] The States argue that the EPP's bellwether litigation class definitions, which do not include consumers, are evidence that the EPPs have neglected consumers. (Obj. at 7–8.) This point is inapposite: it is wholly unsurprising that bellwether litigation classes, which are intended to provide guidance for broader settlements, are narrower than the Settlement Class.

[6] Justice Breyer's concurrence also does not suggest that "[c]lass action settlements must be limited to releasing only those claims that were adequately represented and properly within the scope of the litigation." (Obj. at 17.) Justice Breyer agreed with the majority that settlement is "relevant" to

Specifically, the States assert the Settlement Class cannot release claims under certain antitrust and consumer protection statutes in Illinois, Colorado, Idaho, Washington, and Alaska because those statutes either bar class actions or authorize only the States to bring claims under those statutes. (Obj. at 18 n.26.) Here, the EPPs raised many of those statutory claims on behalf of consumers, and the States cite no cases holding that those claims cannot be released for consideration. And even for claims not specifically alleged, class settlements can release claims that "could not have been presented" in the class action as long as those released claims relate to the same underlying conduct. *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 366 (3d Cir. 2001). Without the ability to release a claim for monetary relief that can be pursued under various legal theories, including theories government enforcers can pursue, defendants would not settle consumer class actions because the government could always bring a subsequent action seeking duplicative recovery.[7] *See* 6 Newberg & Rubenstein on Class Actions § 18:21 ("If the class action judgment were not given full preclusive effect . . . a defendant would not enter a global settlement because it would just face further litigation . . . after resolution of the class suit."). Here, the EPPs asserted a host of claims on behalf of consumers in these states under varying antitrust, consumer protection, and common law legal theories that would all provide a basis for essentially the same recovery. (Dkt. 3274 at 2–3.) Even if the EPPs might not have succeeded in maintaining an action under certain state statutes, the EPPs can nonetheless release overlapping claims for monetary relief on behalf of consumers. *See* 6 Newberg & Rubenstein on Class Actions § 18:21 (noting the "widely followed" principle that settlements can release all claims that "are transactionally

---

analyzing certification under Rule 23, but he believed the Supreme Court should have given more deference to factual findings made by the district court and remanded the case for further analysis. *Amchem*, 521 U.S. at 629–30 (Breyer, J., concurring in part and dissenting in part).

[7] Underlying the States' objections appears to be their frustration that the EPPs settled before they did. Had the States reached a settlement first, they surely would have contended that their settlement precluded the EPPs from recovering monies for duplicative claims of consumers.

related to those at the heart of the case"). The claims of all consumers under each legal theory presented by the EPPs and the States all stem from the same factual predicate and, therefore, can be released.

### 2. The Settlement does not inhibit the States' ability to continue to pursue sovereign claims to vindicate public interests.

The States assert that the EPPs are releasing "sovereign claims" or are threatening their ability to protect the "public interest." (Obj. at 1–4, 6, 17.) That is false. The Settlement will not preclude the States from pursuing their distinct "sovereign" claims that seek to vindicate public interests or that seek recovery on behalf of state governmental entities. The States will continue to pursue their non-duplicative claims in the District of Connecticut even after final approval. Courts routinely delineate between sovereign claims in the ***public*** interest, which are not precluded by private settlements, and claims that are derivative of ***private*** interests, which may be precluded to prevent double recoveries. *See IntelliGender*, 771 F.3d at 1177–1180 (holding that a private settlement "does not act as res judicata against the State in its sovereign capacity" but does bar the State from "essentially seeking a double (or at least better) recovery"); *N.M. ex rel. King*, 980 F. Supp. 2d at 1352–53 (finding that the state was not barred from "bring[ing] an enforcement action" but was precluded from "recover[ing] damages on behalf of consumers who were already compensated" because those "consumer relief claims" were "an exclusively private interest"); *N. Am. Foreign Trad. Corp. v. Chiao Tung Bank*, No. 95-cv-5189, 1997 WL 193197, at *5 (S.D.N.Y. Apr. 18, 1997) (collecting cases where government enforcers were "bound" by prior private settlements or actions where the government was seeking to enforce "derivative" or "identical" rights); 6 Newberg & Rubenstein on Class Actions § 18:23 (stating that governments are barred from "re-collecting their [citizens'] damages" where the government is enforcing its individual citizens' "own rights" but that a private class settlement "can have no effect" on the government where it is "enforcing public rights"); 18A Wright & Miller, Fed. Prac. & Proc. Juris. § 4458.1 (3d ed.) (same). The Third Circuit has likewise recognized this crucial distinction. *See EEOC v. U.S. Steel Corp.*, 921

F.2d 489, 496–97 (3d Cir. 1990) (Alito, J.) ("Private litigation . . . cannot preclude the EEOC from maintaining its own action because private litigants are not vested with the authority to represent the EEOC. But when the EEOC seeks to represent grievants by attempting to obtain private benefits on their behalf, the doctrine of representative claim preclusion must be applied." (citations omitted)).

The States cite the Supreme Court's opinion in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014), to argue that private class settlements cannot encroach on the "federal and state antitrust enforcement schemes." (Obj. at 18.) But that opinion merely notes the difference between state enforcement and private class actions. Further, Chief Justice Roberts called the States' argument into question, suggesting that if state enforcers could independently pursue consumer claims despite private class settlements, "it would make no sense for a defendant in a class action brought by consumers to ever settle the case" because they would "have to pay twice." Oral Argument Tr. at 13:17-14:2, *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2013) (No. 12-1036). He further warned that if the States could "sit[] back and wait[] until" private actions resolve, the States could bring their parens actions in follow on suits "to get the same amount of money." *Id.* at 18:2-12.

The States, as in *Esslinger*, "may continue to bring claims belonging to their respective states, such as state criminal and regulatory actions." 2012 WL 5866074, at *7 n.2; *see also, e.g.*, *IntelliGender*, 771 F.3d at 1182 ("Our decision does not deprive the State of the ability to protect its citizens—quite the contrary. . . . [T]he State may seek civil penalties and broad injunctive relief[.]"); *In re Baldwin-United Corp.*, 770 F.2d at 333 (noting the injunction did not apply to state criminal claims or claims for injunctive relief). The Settlement would merely preclude States from bringing claims that could allow consumers to recover twice for the same alleged harm.

### 3.    Rewriting the release or imposing an "offsetting" mechanism is unsupported by law.

The States ask the Court either to hold that the Settlement does not release the States' claims for

8

consumer monetary relief or to impose an offsetting mechanism on the Settlement Class's recovery for consumers. (Obj. at 27–28.) Notably, the States cite no legal authority related to private antitrust litigation finding that the Court can rewrite a settlement to omit certain claims or impose an offsetting requirement on the States' claims.  Indeed, should the release be revised as the States propose, the parties to the Settlement would each "have the option to terminate" the agreement. (Settlement § XII.A.) Instead, the States cite authority from unique regulatory structures (*e.g.*, the CFTC and EEOC). *See CFTC v. Com. Hedge Servs.*, 422 F. Supp. 2d 1057, 1061 (D. Neb. 2006) (noting that the CFTC may "later seek[] additional" remedies where "private parties settle their disputes without the approval or consent of the Commission"). Further, the States' "offsetting" argument blurs the public-versus-private distinction that courts routinely use to determine when a private settlement precludes recovery by a government enforcer. To the extent that the States are seeking monetary relief for consumers, the States are seeking a remedy for a purely ***private*** interest, and the Settlement Class can release claims for that monetary relief. But to the extent that government enforcers are pursuing ***public*** remedies, then those claims would not be released. *Esslinger*, 2012 WL 5866074, at *7 n.2.[8] Moreover, allowing the States' claims for the same monetary relief for consumers to merely be offset (rather than barred) would permit them to "essentially seek[] a double (or at least better) recovery" than the private class already "pursued." *IntelliGender*, 771 F.3d at 1177–1180.

    For these reasons, the Court should reject the States' objection that the Settlement is "overbroad" because it lacks legal support and is animated by a paternalistic desire to hold consumer class settlements hostage to the demands of state entities.

---

[8] The States also prematurely attempt to litigate whether an anti-suit injunction would be appropriate. (Obj. at 29–31.) Because Sandoz has not filed a motion for an anti-suit injunction, it will defer responding to the States' arguments.

**B.    The Existence of Overlapping Claims Asserted by the States Does Not Make this Settlement an Inferior Method of Resolving Consumer Claims.**

The States next argue that the Court should not certify the Settlement Class because the existence of parallel state litigation means the Settlement Class is not superior to other available methods for fairly and efficiently adjudicating the dispute under Rule 23(b)(3). (Obj. at 19–21.) At the outset, the superiority requirement is narrowly focused on whether the class action is superior to alternative litigation commenced **by individual class members**. *See* Fed. R. Civ. P. 23(b)(3), Notes of Advisory Committee on 1966 amendments ("The court is to consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit. . . . In this connection the court should inform itself of any litigation actually pending by or against the individuals."); *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 962 F. Supp. 450, 522 (D.N.J. 1997) (identifying "the extent of litigation commenced elsewhere **by class members**" as a consideration), *aff'd*, 148 F.3d 283 (3d Cir. 1998). Whether there are parallel state claims is not relevant to this inquiry.

None of the States' cited authority supports the assertion that certification is not proper "where other vehicles for claims are pending." (Obj. at 19.) Instead, those cases are simply examples of courts granting certification and noting that no other related litigation was pending. *See Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 443 (D.N.J. 2009) (noting that no individual "litigation appears to exist"); *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 564 (N.D. Miss. 2018) ("[T]his court is not aware of any currently pending litigation . . . involving the same proposed class members[.]"); *Thornton v. Kroger Co.*, 2023 WL 6378417, at *37 (D.N.M. 2023) (same).[9] Further, the Supreme Court has stated that class actions are "definitely preferable" to *parens patriae* actions "in the antitrust area." *Hawaii v.*

---

[9] The States also cite to *Pennsylvania v. Budget Fuel Co.*, 122 F.R.D. 184, 185–86 (E.D. Pa. 1988), for this point, but as discussed *infra* Section II.C, this case is readily distinguishable because, there, the Commonwealth had already reached settlements with most of the defendants and was in the process of resolving with the rest.  Accordingly, the class action would delay, rather than promote, resolution of those claims.

*Standard Oil Co. of Cal.*, 405 U.S. 251, 265 (1972).

The States next argue that their parallel litigation must be considered because the Settlement may "threaten or interfere with that litigation." (Obj. at 19–20.) But as explained *supra* Section II.A.2, private class actions routinely settle overlapping claims for monetary relief that reflect the purely private interests of consumers. Further, one of the cases the States cite to argue that the Settlement threatens the "public interest in enforcement" holds precisely the opposite. (Obj. at 19–20 (citing *In re Beacon Assocs. Litig.*, No. 09-cv-777, 2012 WL 1569827 (S.D.N.Y. May 3, 2012)).) In *In re Beacon*, the court **granted** class certification despite objections that a class action was not superior "given the existence of a parallel suit, brought by the Secretary of the Department of Labor ('Secretary') against many of the same defendants." 2012 WL 1569827, at *11. Importantly, both the court and the Department of Labor soundly rejected that argument for reasons that apply equally to state antitrust enforcement:

> The Secretary . . . argues that a general rule, prohibiting the certification of Rule 23(b)(3) classes **whenever there is a parallel government suit**, would "undermine ERISA's private enforcement mechanisms and impede the Secretary's exercise of her prosecutorial discretion and her ability to enforce ERISA." It would do so . . . by preventing the DOL from being able to **coordinate its enforcement efforts** with private class counsel—who . . . are **likely to be far better able of representing the interests of the class as a whole** than would the multiple plaintiffs' attorneys with whom the DOL would otherwise have to coordinate. The rule could also . . . establish a **rush to judgment** among private plaintiffs, anxious to be certified before the DOL files its suit, thereby further hampering coordination between private parties and the DOL. The existence of the parallel government suit . . . should not therefore lead the Court to conclude . . . that the class action is not a superior means of adjudicating the controversy.
>
> We agree with the Secretary that a *per se* rule, precluding certification of an ERISA class . . . whenever there exists a parallel DOL action could threaten the "interlocking, interrelated, and interdependent . . . scheme" of public and private enforcement. . . .

*Id.* at *34-36 (citations omitted). As with ERISA, Congress intended the Clayton Act to be enforced both by government actors and private litigants. *Cal. v. Am. Stores Co.*, 495 U.S. 271, 284 (1990). The States' position would displace private actions in favor of parallel government suits related to the same conduct, vitiating the dual enforcement structure crafted by Congress. In contrast, approval of the

Settlement would in no way interfere with the States' public enforcement efforts. *Supra* Section II.A.2

Two reasons unique to this litigation also strongly counsel in favor of finding the Settlement Class superior to the States' parallel litigation. ***First***, only 23 of the 43 states and territories identified in the States' omnibus objections are seeking to recover damages on behalf of consumers. (*Compare* Obj. at 1, *with* MDL Dkt. No. 3427 at 5 & n.2.) If the Court accepts the States' objections and denies approval of the Settlement, the consumers in the remaining states will recover ***nothing***. *See In re Prudential Ins.*, 962 F. Supp. at 522 ("[T]he class action is not only the superior method for adjudicating this controversy, it affords the vast majority of class members the only practical avenue of redress."). Put differently, the States are seeking to derail a nationwide settlement on behalf of all consumers so they can attempt to secure a greater recovery on behalf of only some consumers. The States have not identified a shred of legal authority that would support such a result. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003) (finding the class action superior because "the 43 *parens patriae* actions will proceed on behalf of their 'class' members regardless . . . . It makes no sense, therefore, to deny class action status to the remainder.").

***Second***, the States fail to acknowledge that no consumers objected to the Settlement Class and only one opted out of the Settlement Class.[10] That fact strongly favors finding satisfaction of the superiority requirement. *See Braun v. Phila. Inquirer, LLC*, No. 22-cv-4185, 2025 WL 1314089, at *6 (E.D. Pa. May 6, 2025) ("[T]hat there were no class members who objected to this Settlement and only 4 opt-outs (representing less than 0.002 percent of the Settlement Class) also supports a finding that the superiority element has been satisfied."). To the extent consumers believed that the recovery under the Settlement was inadequate, they were freely able to opt out. The fact that only one consumer opted out

---

[10] The sole consumer opt out submitted her exclusion request late and failed to comply with other requirements to opt out. Nonetheless, EPPs have not challenged this opt out.

speaks volumes, and the States should not be permitted to supplant their views of the Settlement for the decisions of class members. *See In re TFT-LCD Flat Panel Antitrust Litig.*, MDL. No. 1827, 2011 WL 13152270, at *9 (N.D. Cal. June 13, 2011) ("To the extent that there are individual consumers who feel they would be better served by their respective AGs, those consumers can opt out.").

The States' final point on superiority is that, because Congress has allowed state antitrust enforcement to be exempted from MDL consolidation, the litigation should not be "concentrat[ed]" in this forum. (Obj. at 20–21.) Settlement approval would not "concentrate" the States' claims in this forum. Rather, the States would continue to litigate in the District of Connecticut, albeit without the ability to seek duplicative recovery for purely private consumer monetary relief that the Settlement releases.

## C.  The Settlement Provides a Fair, Reasonable, and Adequate Recovery.

Courts in the Third Circuit "apply an initial presumption of fairness in reviewing a class settlement" where the negotiations were at arms length, there was sufficient discovery, the proponents of settlement are experienced in similar litigation, and a small fraction of the class objected. *In re NFL Players*, 821 F.3d at 436. The States cannot argue that these requirements are not satisfied. Instead, the States focus on two factors: the reasonableness of the Settlement in light of "the best possible recovery" and "all the attendant risks of litigation." (Obj. at 21 (quoting *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).)[11] The States concede that the EPPs faced significant litigation risk in proceeding with their claims against Sandoz, but they use this point to argue that the States' claims face less litigation risk and, as a result, the Settlement is not "the best possible recovery" or is otherwise unreasonable in comparison to the States' lesser "risks of litigation." (Obj. at 21.) This argument is simply a repackaging of the States' superiority argument, which Sandoz rebutted *supra* Section II.B. Setting that aside, this argument fails

---

[11] The States effectively ignore the seven other *Girsh* factors that courts in the Third Circuit "must consider before approving a class settlement." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (discussing *Girsh*, 521 F.2d at 157).

on its own terms for at least four reasons.

**First**, only 23 states and territories are asserting claims on behalf of their consumers, so the States' assertion that the Settlement is "not in consumers' interests" is disingenuous because it purports to speak on behalf of all consumers nationwide, including those whose monetary claims are not being pursued by the States. (Obj. at 22.)

**Second**, the States ignore the complete lack of consumer objections to the Settlement and that only one opted out of the Settlement. The second *Girsh* factor requires the Court to consider "the reaction of the class to the settlement," and the overwhelmingly positive reaction by consumers strongly favors final approval. *In re NFL Players*, 821 F.3d at 437 (quoting *Girsh*, 521 F.2d at 157).[12]

**Third**, the States restate their argument that they have procedural advantages in litigation over the EPP class (Obj. at 22–23), but the States face similar litigation risk in prosecuting the merits of their claims. And the States' recovery, if any, is years away. The States' speculative assertion that they may recover more for consumers is not a basis to deny final approval. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 468 (S.D.N.Y. 2013) (rejecting New York AG's argument that the settlement undervalued the claims as being "based on sheer speculation"). The uncertainty and uncertain timing of recovery for the States' claims shows why the States' legal authority is distinguishable. In *Pennsylvania v. Budget Fuel Co.*, 122 F.R.D. 184, 185–86 (E.D. Pa. 1988), the court found that a pre-existing *parens patriae* claim by the Pennsylvania AG was superior to a follow-on class action where the Commonwealth had "already entered into settlement agreements with most of the nine [defendants] and [was] in the process of negotiating with the remaining [defendants]." The court reasoned that allowing a class action to proceed at that time "would only serve to delay the swift resolution of this matter and

---

[12] The States assert their objections should be more heavily weighted because they reflect the views of absent class members in their states. (Obj. at 23 n.32.) That assertion is belied by the conduct of consumers in those states: all but one chose to stay in the Settlement Class and none objected.

cause unnecessary costs to the class." *Id.* at 186. That same logic applies here: the EPP class, represented by sophisticated class counsel, has already engaged in strenuous litigation and has negotiated a favorable settlement with Sandoz. The States' objections are seeking to derail this "swift resolution" for consumers nationwide purportedly on behalf of a subset of consumers in the objecting states. *Id.*; *see also In re Beacon*, 2012 WL 1569827, at \*13 (distinguishing *Budget Fuel* for identical reasons).

Moreover, if consumers were concerned about the adequacy or reasonableness of the settlement, or believed they could obtain a greater recovery, those consumers could have opted out of or objected to the Settlement. *In re TFT-LCD Flat Panel*, 2011 WL 13152270, at \*9. As argued *supra* Section II.A.2, the only effect of final approval is to bar the States from seeking additional recovery on behalf of consumers. The States remain free to pursue distinct claims, in their sovereign capacity, that serve "broader public deterrence interests." (Obj. at 22.)

**Fourth**, the States ignore that courts in the Third Circuit have a "restricted, tightly focused role" to safeguard the interests of absent class members; they are not empowered "to intrude upon the parties' bargain." *Ehrheart*, 609 F.3d at 593. The States effectively ask this Court to displace an arm's length settlement that would provide monetary relief to consumers nationwide in favor of speculative claims being pursued by fewer than half the states and territories that make up the United States. (Obj. at 23.) It is telling that the States have not cited a ***single case*** where a court found that a private class settlement was unfair, unreasonable, or inadequate because a parallel government enforcement suit may potentially recover greater damages for some class members at an unspecified future point in time.

## III.        Conclusion

The Court should reject the States' objections and grant final approval for the Settlement.

15

Dated: July 8, 2025

Respectfully Submitted,

*/s/ Matthew D. Kent*
Matthew D. Kent
Alston & Bird LLP
1201 West Peachtree St.
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
matthew.kent@alston.com

*Settlement Counsel for Defendants Sandoz Inc.*
*and Fougera Pharmaceuticals Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2025, I caused the foregoing to be filed electronically with the Clerk of Court by using CM/ECF system which will serve a copy on all interested parties registered for electronic filing and is available for viewing and downloading from the ECF system.

*/s/ Matthew D. Kent*
Matthew D. Kent