**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724 |
| | 16-MD-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *All End-Payer Plaintiffs' Actions* | |

**END-PAYER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF HERITAGE SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  BACKGROUND .................................................................................................4

III. MATERIAL TERMS OF THE SETTLEMENT....................................................5

IV.  IMPLEMENTATION OF THE NOTICE PLAN AND REACTION OF THE CLASS
     TO THE SETTLEMENT ....................................................................................7

V.   THE COURT SHOULD GRANT FINAL CERTIFICATION TO THE EPP HERITAGE
     SETTLEMENT CLASS ......................................................................................9

VI.  FINAL APPROVAL OF THE EPP HERITAGE SETTLEMENT IS APPROPRIATE.....10

     A.  The Settlement is Entitled to a Presumption of Fairness ......................................12

     B.  Settlement Class Counsel and the Settlement Class Representatives
         Have Adequately Represented the Settlement Class (Fed.R.Civ.P. 23(e)(2)(A)) ..12

     C.  The Settlement Was Negotiated at Arm's Length (Fed.R.Civ.P. 23(e)(2)(B)).......12

     D.  The Relief Provided for the Settlement Class Is Adequate (Fed.R.Civ.P.
         23(e)(2)(C)).............................................................................................13

         1.  The Settlement Accounts for the Costs, Risks, and Delays of Trial and Appeal
             (Fed.R.Civ.P. 23(e)(2)(C)(i))...........................................................13

         2.  The Proposed Method of Distributing Relief to the Class is Fair and Effective
             (Fed.R.Civ.P. 23(e)(2)(C)(ii))...........................................................21

         3.  The Settlement's Attorneys' Fees Provision is Reasonable (Fed.R.Civ.P.
             23(e)(2)(C)(iii))..........................................................................21

         4.  The Supplemental Agreement Is Fair, Reasonable, and Adequate(Fed.R.Civ.P.
             23(e)(2)(C)(iv)) .........................................................................23

     E.  The Settlement Treats Settlement Class Members Equitably Relative to
         Each Other (Fed.R.Civ.P. 23(e)(2)(D)) ................................................................24

VII.  THE PLAN OF ALLOCATION WARRANTS FINAL APPROVAL ........................25

VIII. THERE ARE NO OBJECTIONS TO EPP CLASS COUNSEL'S REQUEST FOR
      ATTORNEYS' FEES OR EXPENSES..........................................................................27

IX. CONCLUSION............................................................................................................28

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

Braun v. Philadelphia Inquirer, LLC,
   No. 22-CV-4185-JMY, 2025 WL 1314089 (E.D. Pa. May 6, 2025) .................................. 13, 15

Calhoun v. Invention Submission Corp.,
   No. 18-cv-1022, 2023 WL 2411354 (W.D. Pa. Mar. 8, 2023) ................................. 16

Ehrheart v. Verizon Wireless,
   609 F.3d 590 (3d Cir. 2010) ............................................................... 10

Girsh v. Jepson,
   521 F.2d 153 (3d Cir. 1975) ............................................................. 11

Gunter v. Ridgewood Energy Corp.,
   223 F.3d 190 (3d Cir. 2000) ............................................................ 28

Hacker v. Elec. Last Mile Sols. Inc.,
   No. 2:22-CV-00545(MEF)(LDW), 2024 WL 5102696 (D.N.J. Nov. 6, 2024) ....................... 23

In re Aetna Inc. Sec. Litig.,
   MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................ 18

In re AremisSoft Corp. Sec. Litig.,
   210 F.R.D. 109 (D.N.J. 2002) ........................................................... 19

In re Automotive Refinishing Paint Antitrust Litig.,
   MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ................................ 13

In re Cendant Corp. Litig.,
   264 F.3d 201 (3d Cir. 2001) ............................................................ 15

In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.,
   333 F.R.D. 364 (E.D. Pa. 2019) ..................................................... 14, 17

In re Diet Drugs Product Liab. Litig.,
   582 F.3d 524 (3d Cir. 2009) ............................................................ 28

In re Domestic Airline Travel Antitrust Litig.,
   378 F. Supp. 3d 10 (D.D.C. May 13, 2019), aff'd 3 F.4th 457 (D.C. Cir. 2021) ....................... 21

In re Elec. Carbon Prods. Antitrust Litig.,
   447 F. Supp. 2d 389 (D.N.J. 2006) ..................................................... 28

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013) ................................................................. 14, 26, 27

*In re Flonase Antitrust Litig.*,
    951 F. Supp. 2d 739 (E.D. Pa. 2013) .................................................................. 26

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ............................................................................ 10, 18

*In re Generic Pharms. Pricing Antitrust Litig.*,
    MDL No. 2724, 2023 WL 2466622 (E.D. Pa. Mar. 9, 2023) ..................... 20, 25, 27

*In re Generic Pharms. Pricing Antitrust Litig.*,
    MDL No. 2724, 2024 WL 4508950 (E.D. Pa. Oct. 25, 2024) .............. 20, 23, 25, 27

*In re Generic Pharms. Pricing Antitrust Litig.*,
    MDL No. 2724, 2025 WL 845896 (E.D. Pa. Mar. 17, 2025) ..................... 14, 16, 20

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    934 F.3d 316 (3d Cir. 2019) ........................................................................ 10, 11, 12

*In re Ikon Office Solutions Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ................................................................. 20, 25, 26

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
    No. 17-cv-341, 2022 WL 16533571 (E.D. Pa. Oct. 28, 2022) ................................ 25

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) .............................................................. 13, 20

*In re Linerboard Antitrust Litig.*,
    296 F. Supp. 2d 568 (E.D. Pa. 2003) .................................................................. 14

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ......................... 24

*In re Mercedes-Benz Emissions Litig.*,
    No. 16-CV-881, 2021 WL 8053614 (D.N.J. July 12, 2021) ................................... 17

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) ..................................................................... 13, 17

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) ........................................................................... 16, 17

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 249  (E.D. Pa. 2012) ......................................................................... 20

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ................................. 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ...................................................................11, 15, 18, 28

*In re Remeron End-Payor Antitrust Litig.*,
No. 02-cv-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ........................... 23, 27

*In re Remicade Antitrust Litig.*,
No. 17-cv-04326, 2022 WL 3042766 (E.D. Pa. Aug. 2, 2022)........................... 26, 27

*In re Remicade Antitrust Litig.*,
No. 17-CV-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) ............... 18, 19, 27

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ....................................................................................... 28

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ................................. 27

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024).................... 10, 15, 25

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002).................................................................................... 23

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ....................................................................... 12, 14, 17

*Jackson v. Wells Fargo Bank, N.A.*,
136 F. Supp. 3d 687 (W.D. Pa. 2015) ...................................................................... 15

*McDonough v. Toys "R" Us, Inc.*,
80 F. Supp. 3d 626 (E.D. Pa. 2015) .......................................................................... 14

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
No. 12-3824, 2015 WL 12791433 (E.D. Pa. Jan. 28, 2015).................................... 27

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ............................................................................... 15, 18

*Sweda v. Univ. of Pennsylvania*,
No. CV 16-4329, 2021 WL 5907947 (E.D. Pa. Dec. 14, 2021) ............................... 19

*Whiteley v. Zynerba Pharms., Inc.*,
No. 19-cv-4959, 2021 WL 4206696 (E.D. Pa. Sept. 16, 2021) ................................ 13

*Zanghi v. Freightcar America, Inc.*,
    No. 13-cv-146, 2016 WL 223721 (W.D. Pa. Jan. 19, 2016) .................................................. 18

*Statutes*

28 U.S.C. § 1715 ........................................................................................................ 8

*Rules*

Federal Rule of Civil Procedure ............................................................................. *passim*

*Other Authorities*

2 McLaughlin on Class Actions § 6:23 (21st ed.)...................................................... 25

Manual for Complex Litigation (Fourth) § 13.21 (2004) ............................................ 20

## I.    INTRODUCTION

Settling End-Payer Plaintiffs ("Settling EPPs"),[1] on behalf of the End-Payer Settlement Class ("EPP Settlement Class" or "Settlement Class"), seek final approval of their Settlement with Heritage Pharmaceuticals Inc., Emcure Pharmaceuticals Ltd., and Satish Mehta (collectively, "Heritage").[2] The Settlement was the product of arm's-length negotiations between experienced antitrust counsel and was reached after more than eight years of hard-fought litigation that has included extensive fact discovery and motion practice. On June 26, 2024, the Court preliminarily approved the Settlement, preliminarily certified the EPP Settlement Class, and appointed Settlement Class Counsel and Settlement Class Representatives**. MDL Doc. 3020, "Prelim. Appr. Order")**. On May 14, 2025, the Court appointed a TPP Notice Administrator, approved the form and manner of notice and directed notice to the Settlement Class, and preliminarily approved of the proposed plan of allocation. **MDL Doc. 3392 ("Notice and**

---

[1] Settling EPPs are 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; and United Food & Commercial Workers and Employers Arizona Health & Welfare Trust.

[2] A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Roberta D. Liebenberg in Support of End-Payer Plaintiffs' Motion for Preliminary Approval of Heritage Settlement. **MDL Doc. 2992-2 ("Liebenberg Declaration"); MDL Doc. 2992 ("Motion for Preliminary Approval").** Capitalized terms in this Memorandum incorporate the defined terms from the Settlement Agreement.

Allocation Order").

The Heritage Settlement, which was the first icebreaker Settlement reached in the End-Payer Litigation, provides for a Settlement Fund of $10 million ("Heritage Settlement Fund"), as well as significant and important cooperation from Heritage. In exchange, Settling EPPs and the EPP Settlement Class agree to release all claims against Heritage that arise out of or relate to the conduct alleged in this litigation. Settlement Agreement ¶¶ 12-13. The proposed Settlement is an excellent result for the Class and is well within the range of reasonableness. It is in the best interest of the proposed Settlement Class Members, is fair, reasonable, and adequate, and warrants final approval under Federal Rule of Civil Procedure 23(e)(2).

The proposed Plan of Allocation for the Settlement Fund,[3] which was developed by EPP Class Counsel and is independent of their Settlement Agreement with Heritage, also is fair, reasonable, and adequate because it distributes the funds equitably among Settlement Class Members. Each class member will be awarded a *pro rata* distribution of the Net Settlement Fund based on their dollar spend for Named Generic Drugs ("NGDs") relative to the spend of other class members. The award therefore is based on the extent of each class member's injury. That is reasonable and merits final approval under Rule 23(e)(2).

On May 19, 2025, the TPP Notice Administrator began disseminating Notice to the Class in accordance with the Court-approved Notice Plan.[4] Notice was extensive. It consisted of direct

---

[3] A copy of EPPs' Proposed Plan of Allocation for the EPP Heritage Settlement attached as Exhibit 5 to EPPs' Memorandum in Support of End-Payer Plaintiffs' Motion for Approval of Notice Plans, Appointment of Notice Administrators, and Preliminary Approval of TPP Allocation Plan and Consumer Allocation Framework. **MDL Doc. 3314-1 at 58-69 ("TPP Plan of Allocation" or "TPP Allocation Plan")**.

[4] *See* Declaration of Eric J. Miller [Senior Vice President of A.B. Data Ltd. ("A.B.

postcard notice to over 42,000 TPPs and TPP-related entities via mail and e-mail; digital notice in the form of banner ads on professional websites frequently visited by those in the TPP industry; distribution of the notice through *PR Newswire* and via A.B. Data's account on X; posting the Long-Form and Summary Notices for and relevant Settlement-related information on EPPs' dedicated Settlement Website, www.GenericDrugsEndPayerSettlement.com; and providing information and support via a dedicated phone line.

As discussed more fully below, the response has been overwhelmingly positive. ***No class members have objected to the Settlement.*** The only objections that have been received are from two opt-out insurers, (Blue Cross Blue Shield of Florida, Inc. ("BCBS FL") and Blue Cross Blue Shield of Kansas City ("BCBS KC")), who are not class members and object only to the Court's opt-out procedures (MDL Docs. 3557, 3556). These objections are the same as the ones that BCBS FL and BCBS KC raised when they objected to the Sandoz Settlement (MDL Docs. 3376, 3377). Those objections have been fully briefed. MDL Doc. 3446 (EPPs' Response); MDL Doc. 3483 (Insurers' Opposition); MDL Doc. 3526 (EPPs' Surreply). EPPs respectfully submit that, for the reasons set forth in their Reply and Surreply to BCBS FL's and BCBS KC's Objections to the Sandoz Settlement, and for the reasons set forth in EPPs' Report on Opt-Out Insurers' Submissions in Support of their Requests to Exclude ASO Clients from the Sandoz Settlement Class (MDL Doc. 3647), their Response to Opt-Out Insurers Status Report (MDL Doc. 3663),

---

Data")] Regarding (A) Mailing of the Postcard Notice; (B) Publication of Summary Notice; and (C) Report on Exclusions, Objections, and Requests to Speak at Fairness Hearing Received to Date, submitted herewith **("A.B. Data Decl.")** ¶¶ 4-10 (describing compliance with the notice plan at **MDL Doc. 3314-2, as amended by Notice and Allocation Order ¶ 1 (together, "TPP Notice Plan")**; Notice and Allocation Order ¶ 1 (approving notice plan).

their Supplemental Report on Opt-Out Insurers' Submissions (MDL Doc. 3686), and the relevant

pleadings cited therein, the opt-out insurers' objections are without merit and should be

overruled.

In addition, the Court's preliminary decision to certify the Settlement Class should be

made final. The Court's Preliminary Approval Order found that the Settlement Class met Rule

23's prerequisites for class certification. No new information has emerged to cast doubt on the

Court's preliminary certification of the Settlement Class.[5] Each of the requirements of Rule 23(a)

and 23(b)(3) remains satisfied.

Accordingly, Settling EPPs respectfully request that the Court enter an Order in the form

submitted herewith **("Proposed Order")** for: (1) final approval of the Settlement Agreement; (2)

final certification of the Settlement Class for settlement purposes only; and (3) final approval of

the Plan of Allocation.

## II.    BACKGROUND

Settling EPPs incorporate by reference the discussion of the background and procedural

history of this litigation contained in their Memorandum in Support of their Motion for

Preliminary Approval. MDL Doc. 2992-1. In sum, the EPP Settlement Class consists of

thousands of class members who will benefit from this Settlement. This litigation has been

vigorously prosecuted for nine years. It includes 18 single-drug cases and two cases alleging

overarching conspiracies. It has progressed through many rounds of motions to dismiss, dozens

of discovery disputes, certification of the bellwether classes, and preparation of the bellwether

---

[5] Defendants' pending appeal of the Court's certification of the bellwether classes has no
bearing on the suitability of the Settlement Class.

cases for trial (including multiple *Daubert* and summary-judgment motions, and arguments), and preparing for appellate review of the class certification decision. EPP Class Counsel have unwaveringly represented EPPs and have invested significant time and expense in doing so. They submit that this Settlement is the best resolution the Settlement Class could achieve from these Defendants at this time, and that it is an excellent settlement for the class.

### III.   MATERIAL TERMS OF THE SETTLEMENT

The Heritage Settlement defines the EPP Settlement Class as follows:

> All persons and entities in the United States (except Indiana and Ohio), as well as the District of Columbia and Puerto Rico, that indirectly purchased, paid, and/or provided reimbursement for some or all of the purchase price for Defendants' Named Generic Drugs for personal use by their members, and other than for resale, from March 1, 2011 through April 1, 2019.

Excluded from the End Payer Settlement Class are (a) natural person consumers; (b) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (c) all federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans; (d) all persons or entities who purchased Defendants' Named Generic Drugs for purposes of resale or directly from Defendants; (e) fully insured health plans; and (f) pharmacy benefit managers.

Settlement Agreement ¶ 1.

Pursuant to the Settlement Agreement, Heritage has paid $ 10,000,000 (the "Settlement Payment") into an escrow account at Huntington Bank for the benefit of the EPP Settlement Class, and that account has been accruing interest. *Id.* ¶¶ 7, 8.b. In addition, Heritage will provide extensive cooperation in the following areas: (1) using reasonable efforts to assist Settling EPPs with understanding data produced by Heritage and providing additional data if necessary; (2) using reasonable efforts to authenticate and lay the foundation to admit as business records any

5

documents identified by Settling EPPs for use in this Action; (e) production and authentication of any customer lists of the direct purchasers of the Named Generic Drugs; (4) identification of persons who are or were working with Heritage who are likely to have relevant information about the alleged conduct in this Act; (5) attorney proffers on Heritage's, Emcure's, Mr. Mehta's, and current and former employees' knowledge and roles in the conduct alleged in this Action to the extent not already provided; (6) using best efforts to provide access to persons identified in ¶¶ 10(d) and 10(h) of the Settlement Agreement for interviews, to the extent not already provided; (7) production of witnesses identified ¶¶ 10(d) and 10(h) of the Settlement Agreement for testimony at trial; (8) identification of persons at Heritage who are likely to have relevant information concerning Heritage's pricing information in other defendants' documents, and the accuracy of this information, for drugs named in the Settling EPPs' complaints; and (9) identification of price increases implemented by Heritage during the relevant time period for each drug named in the Settling EPPs' respective complaints as to which Settling EPPs allege Heritage entered into a product-specific conspiracy. *See* Settlement Agreement ¶ 10.

In exchange for the valuable consideration described above, members of the EPP Settlement Class will release Heritage from claims "that were asserted or that could have been asserted," related to "antitrust, price fixing, market allocation, bid-rigging, unfair competition, consumer protection, 'overarching conspiracy,' unjust enrichment, disgorgement, fraud or false claims, and/or any other anticompetitive and/or unfair conduct alleged in the Action, in connection with the manufacture, sale and/or distribution of Named Generic Drugs, and/or any overarching conspiracy claims alleged in the Action (the 'Conduct')." *Id.* ¶ 12.b. Unrelated claims such as those for breach of contract, unfair marketing or advertising, and violations of

6

securities laws will not be released. *Id.* ¶ 12.d.

## IV. IMPLEMENTATION OF THE NOTICE PLAN AND REACTION OF THE CLASS TO THE SETTLEMENT

In the Notice and Allocation Order, the Court found that the proposed form and manner of notice set forth in the proposed Notice Plan satisfied the requirements of Rule 23(e) and due process and were otherwise fair and reasonable. As reflected in the A.B. Data Declaration, the Notice Plan was fully implemented as approved.

A.B. Data commenced notice on May 19, 2025 by sending direct notice by mail to over 42,000 entities and by email to over 1,000 entities who were TPPs or TPP-related entities. A.B. Data Decl. ¶¶ 4-5; *id.* **Ex. A ("TPP Postcard Notice"); *id.* Ex. B ("TPP Email Notice")**. This notice was designed to reach thousands of additional TPPs, beyond those who received direct notice, because notice is often forwarded by PBMs, TPAs, and other organizations that provide administrative services, who have a history of advising their clients of the pendency of class actions. *See* Expert Declaration of Eric J. Miller, executed November 1, 2023, 16-CB-27242, ECF 239-3 ¶ 9; 16-CM-27242, ECF 183-3 ¶ 9.

On the same day, A.B. Data began its digital ad campaign, which posted TPP Banner Ads for a period of 30 days on websites that reach those in the TPP industry. *See* A.B. Data Decl. ¶ 6; *id.* **Ex. C ("TPP Banner Ad Notices")**. A.B. Data also caused the notice, formatted as a news release, to be disseminated via *PR Newswire's US1 Newsline*, *see id.* ¶ 7; *id.* **Ex. D ("TPP Press Release")**; used its account on X to broadcast news about the Settlement, *see id.* ¶ 8; posted relevant Settlement-related information on EPPs' dedicated Settlement Website, www.GenericDrugsEndPayerSettlement.com, including the Long-Form Notice, the Settlement Agreement and Settlement-related filings, the contact information for A.B. Data and Settlement

7

Class Counsel, and a form for registering for Settlement-related updates such as when a claim form will be available, *see id.* ¶ 9; *id.* **Ex. E ("Long Form Notice for TPPs")**; *id.* **Ex. F ("TPP Settlement Website Screenshots")**; and updated EPPs' dedicated phone information line with information regarding the Settlement, *id.* ¶ 10.

In addition, Heritage has complied with its notification obligations under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See* Declaration of Mary Pat Brogan Regarding Notice of Proposed Settlement Pursuant to 28 U.S.C. § 1715, submitted herewith.

By all metrics, implementation of the Notice Plan has been successful. Over 42,000 TPPs and TPP-related entities were sent direct notice. A.B. Data Decl. ¶¶ 4-5. The media plan has resulted in the TPP Banner Ad Notices creating over 450,000 digital impressions,[6] *see id.* ¶ 6; and a press release reaching over 10,000 newsrooms, *see id.* ¶ 7. The Notice Plan is estimated to have reached a minimum of 80% of potential Class Members. *Id.* ¶ 3. This is within the 70-95% range deemed reasonable by the Federal Judicial Center's Guidelines. *See* Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist" at 3, available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Based on the notice commencement date, the deadline to object to or opt out of the Settlement was July 24, 2025. *No Settlement Class Members have objected* to any aspect of the Settlement, the Plan of Allocation, or the Motion for Attorneys' Fees and Expenses.

AB Data received exclusion requests from a total of 78 TPPs. A.B. Data Decl. ¶ 12.

---

[6] The term "digital impression" refers to a single instance in which a piece of digital content—such as an advertisement, social media post, or webpage—is displayed on a user's screen. It indicates that the content was rendered and had the potential to be seen, regardless of whether the user actively engaged with it. A.B. Data Decl. ¶ 6.

Thirteen of those requests are from insurers who are attempting to exclude not only themselves, but also some or all of their ASO Clients. In the context of the EPP-Sandoz Settlement, EPPs have disputed the validity of some of those requests. All of the insurers whose opt-out requests are subject to dispute in the Sandoz Settlement submitted identical requests in the Apotex and Heritage Settlements. Therefore, the Court's rulings in the Sandoz context likely will resolve the vast majority of the disputes EPPs would raise here.[7] Two insurers that did not opt out of the Sandoz Settlement have opted out of the Apotex and Heritage Settlements. EPPs likely will dispute one or both of these' insurers attempts to exclude ASO Clients from the Apotex and Heritage Settlements within the 14-day period ordered by the Court. MDL Doc. 3611 (extending deadline for disputing TPP opt-out requests).

## V.    THE COURT SHOULD GRANT FINAL CERTIFICATION TO THE EPP HERITAGE SETTLEMENT CLASS

The Court found in its Preliminary Approval Order that the Settlement Class met all the prerequisites for class certification under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Prelim. Appr. Order ¶ 4 (MDL Doc. 3020). Since that time, nothing has happened that

---

[7] The dispute regarding those 10 opt-out insurers' submissions has been fully briefed. *See* EPPs' Motion to Reject Certain Requests for Exclusion from the Sandoz Settlement Class (MDL Doc. 3444-3447); Opt-Out Insurers' Responses (MDL Docs. 3482, 3499); EPPs' Reply (MDL Doc. 3530); EPPs' Notice of Supplemental Authority (MDL Doc. 3589). *See also* Opt-Out Insurers' Objections to the Sandoz Opt-Out Procedure (MDL Docs. 3376, 3377); EPPs' Response (MDL Doc. 3446); Opt-Out Insurers' Opposition (MDL Doc. 3483); EPPs' Sur-Reply (MDL Doc. 3526).

On September 9, 2025, EPPs submitted a status report summarizing the arguments on both sides (MDL Doc. 3647). The opt-out insurers filed a separate report in response (MDL Doc. 3653), and following leave of Court, EPPs responded to the arguments raised in the insurers' report (MDL Doc. 3663). Some Opt-Out Insurers submitted additional information in support of their requests (MDL Doc. 3683), and EPPs filed a supplemental report regarding those submissions (MDL Doc. 3686).

would cast doubt on that decision. Accordingly, and for the reasons outlined in EPPs' Motion for

Preliminary Approval (MDL Doc. 2992) and the memoranda of law and other materials filed in

support of that motion (MDL Docs. 2992-1 to 2992-3), the Court should grant final certification

of the Settlement Class and make a final appointment of the Settlement Class Representatives

and Settlement Class Counsel per the Proposed Order.

## VI.    FINAL APPROVAL OF THE EPP HERITAGE SETTLEMENT IS APPROPRIATE

The Third Circuit has a "strong judicial policy in favor of class action settlement."

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). When reviewing a settlement, the

Third Circuit has repeatedly stressed that "we favor the parties reaching an amicable agreement

and avoiding protracted litigation. We do not wish to intrude overly on the parties' hard-fought

bargain." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326 (3d Cir.

2019) ("*In re Google Inc.*") (internal citation omitted). "Settlement agreements are to be

encouraged because they promote the amicable resolution of disputes and lighten the increasing

load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 595. "The law favors

settlement, particularly in class actions and other complex cases where substantial judicial

resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up

Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Thus, "[t]here is an

overriding public interest in settling class action litigation, and it should therefore be

encouraged." *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No.

13-MD-2445, 2024 WL 815503, at *5 (E.D. Pa. Feb. 27, 2024).

In evaluating whether a settlement is fair, reasonable and adequate, Rule 23(e)(2) requires

the Court to consider  whether  "(A) the class representatives and class counsel have adequately

represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

effectiveness of any proposed method of distributing relief to the class, including the method of

processing class-member claims; (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and (iv) any agreement required to be identified under Rule

23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ.

P. 23(e)(2). The 2018 Advisory Committee Notes to Subdivision 23(e)(2) explain that the "core

concerns" listed in the text of Rule 23(e)(2) and set forth above do not "displace" a court's

consideration of the other factors that have been adopted by each Circuit Court to assess the

fairness of a class settlement.

  In the Third Circuit, courts have traditionally considered nine factors when determining

the fairness of a proposed settlement, as set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.

1975). The *Girsh* factors, which significantly overlap with the Rule 23(e)(2) factors, are: "(1) the

complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks

of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

class action through the trial; (7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the

attendant risks of litigation." *Id.* (internal quotation marks and citation omitted); *see also In re*

*Google Inc.*, 934 F.3d at 322 n.2 (quoting *Girsh* factors); *In re Prudential Ins. Co. Am. Sales*

*Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998) (listing additional factors that the

court may consider if relevant).

### A.  The Settlement is Entitled to a Presumption of Fairness

In the Third Circuit, a class action settlement is entitled to a presumption of fairness if "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Google Inc.*, 934 F.3d at 326 (citations omitted). Here, the Settlement is the product of arm's length settlement negotiations; those negotiations were conducted by experienced counsel after extensive discovery; and not one class member has objected. Therefore, under the standards that apply in this Circuit, the Settlement is presumptively fair. Further, when examined with care in accordance with the Third Circuit's guidance for evaluating class action settlements (*see, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)), the Settlement merits final approval.

### B.  Settlement Class Counsel and the Settlement Class Representatives Have Adequately Represented the Settlement Class (Fed. R. Civ. P. 23(e)(2)(A))

Since being appointed by the Court, EPP Settlement Class Counsel vigorously and skillfully litigated this case through extensive motion practice and discovery. Liebenberg Decl. ¶¶ 4-13. They have used their skills, prior experience, and familiarity with the facts and law in this case to negotiate the Settlement with Heritage. Likewise, the proposed Settlement Class Representatives have fulfilled their responsibilities on behalf of the Settlement Class. They have worked closely with Class Counsel on the litigation, reviewed pleadings, and responded to discovery requests; many of them also have sat for depositions. Liebenberg Decl. ¶ 9.

### C.  The Settlement Was Negotiated at Arm's Length (Fed. R. Civ. P. 23(e)(2)(B))

Courts generally give deference to settlements that result from arm's length negotiations

12

between experienced counsel. "Though the ultimate determination of the fairness of a partial settlement is left to the court, it is appropriate to give substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, in making this determination." *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645, at *2 (E.D. Pa. Sept. 5, 2003). "A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 387 (E.D. Pa. 2015) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) (internal quotation marks and alterations omitted). *See also Whiteley v. Zynerba Pharms., Inc.*, No. 19-cv-4959, 2021 WL 4206696, at *4 (E.D. Pa. Sept. 16, 2021) ("Courts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery.") (citation omitted).

Here, the parties engaged in arm's length negotiations conducted by counsel highly experienced in antitrust litigation and settlement. Liebenberg Decl. ¶ 19. The negotiations were quite lengthy and hard fought, taking place over the course of several years. *See id.* ¶¶ 14-16, 19-21. Throughout that time, EPP Settlement Class Counsel analyzed the risks and benefits of continued litigation in comparison to the proposed Settlement. *See id.* ¶ 20.

**D.  The Relief Provided for the Settlement Class Is Adequate (Fed. R. Civ. P. 23(e)(2)(C))**

**1.  The Settlement Accounts for the Costs, Risks, and Delays of Trial and Appeal (Fed. R. Civ. P. 23(e)(2)(C)(i))**

Rule 23(e)(2)(C)(i) asks the Court to consider "the costs, risks, and delay of trial and appeal." An analysis of the nine *Girsh* factors demonstrates that in light of the costs, risks, and delay of further litigation, the Settlement is fair, reasonable, and adequate. *Braun v. Philadelphia*

*Inquirer, LLC*, No. 22-CV-4185-JMY, 2025 WL 1314089, at *8 (E.D. Pa. May 6, 2025) ("Rule 23(e)(2)(C)'s requirement that the settlement provide adequate relief for the class largely overlaps with the *Girsh* factors."); *In re Generic Pharms. Pricing Antitrust Litig.*, MDL No. 2724, 2025 WL 845896, at *4 n.29 (E.D. Pa. Mar. 17, 2025) (noting overlap).

a.   Complexity, Expense, and Likely Duration of the Litigation

A settlement is favored when "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *Warfarin*, 391 F.3d at 536. Courts routinely recognize that antitrust actions are particularly complex. *See, e.g., In re Comcast Corp. Set-Top Cable Television Box Antitrust Litig.*, 333 F.R.D. 364, 380 (E.D. Pa. 2019) ("Antitrust class actions are particularly complex to litigate and therefore quite expensive. An antitrust class action is arguably the most complex action to prosecute.") (internal quotation marks and citations omitted); *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 640 (E.D. Pa. 2015) (same); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 99, 104 (E.D. Pa. 2013) (same); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute") (internal quotation marks and citation omitted). This particular antitrust class action is more complex than most, given that it involves sophisticated drug pricing mechanisms, 197 drugs at issue, and dozens of defendants.

If litigation were to continue between EPPs and Heritage, EPPs would face risks, expenses and challenges, including – in just the bellwether cases – summary judgment, the appeal of this Court's class certification decision, trials, and post-trial appeals. And then there would be the full gamut of work and risks in the cases involving the remaining 195 drugs. The

complexity, expense, and likely duration of this antitrust class action weigh in favor of approving the Settlement.

          b.   The Reaction of the Settlement Class to the Settlement

A "minimal number of objections and requests for exclusion" favors final approval. *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 321 (3d Cir. 2011). Here, the Notice Plan included direct notice to over 42,000 TPPs and TPP-related entities (A.B. Data Decl. ¶¶ 4-5); TPP banner ads that created over 450,000 digital impressions (*id*. ¶ 6); and a press release reaching approximately 10,000 newsrooms (*id*. ¶ 7). The TPP Notice Plan is estimated to have reached a minimum of 80% of potential Settlement Class Members. *Id.* ¶ 3. In response to this robust dissemination of notice, no class member has objected to the Settlement, the Allocation Plan, the request for attorneys' fees and expenses, or anything else. Only 78 TPPs have submitted requests for exclusion. The "vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." *In re Cendant Corp. Litig*., 264 F.3d 201, 235 (3d Cir. 2001).[8]

          c.   The Stage of the Proceedings and the Sufficiency of Discovery

"The third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had

---

[8] *See also Prudential*, 148 F.3d at 318 (affirming district court's conclusion that reaction of class was favorable when 19,000 out of 8 million class members opted out and 300 objected); *Braun*, 2025 WL 1314089, at *9 (no objections and only four requests for exclusion in a class of approximately 180,000 individuals favored final approval); *In re Suboxone*, 2024 WL 815503, at *7 (factor favored final approval where "in response to widespread notice, no objections have been received"); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 701-02 (W.D. Pa. 2015) (stating that objections and opt-outs constituting less than a fraction of one-percent of class size "are a positive indicator").

an adequate appreciation of the merits of the case before negotiating." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 438–39 (3d Cir. 2016), *as amended* (May 2, 2016) (internal quotation marks and citation omitted). In considering this factor, "[w]hat matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims." *Id.* at 439. This case had been pending for more than eight years by the time the Settlement was fully executed. During that time, the parties briefed numerous motions to dismiss, conducted extensive discovery, reviewed voluminous records, and took numerous depositions. As a result of the extensive litigation that has occurred to date, EPP Settlement Class Counsel possess the information necessary to evaluate the proposed Heritage Settlement in light of the costs, risks, and delays associated with litigating these cases through trials. This factor weighs in favor of final approval. *See In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 845896, at *4 (factor satisfied where "[t]here has been extensive motion practice and discovery through which the parties have learned of the claims").

> d.   The Risks of Establishing Liability and Damages

The risks of establishing liability and damages also strongly support approval of the Settlement. Although EPPs and their counsel have confidence in EPPs' claims, a favorable outcome against Heritage was far from assured. *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *4 (E.D. Pa. Nov. 9, 2012) ("[A]ntitrust class action litigation is complex, and . . . inherently rife with risk and unpredictability in terms of ultimately prevailing to establish liability and damages."); No. 18-cv-1022, *Calhoun v. Invention Submission Corp.*, 2023 WL 2411354, at *13 (W.D. Pa. Mar. 8, 2023) (finding that "certainty

and immediacy of a recovery through settlement and the benefits that the Settlement Class

Members will receive" warranted preliminary approval); *In re Mercedes-Benz Emissions Litig*.,

No. 16-CV-881, 2021 WL 8053614, at *4 (D.N.J. July 12, 2021) (finding that settlement

approval was appropriate where "[e]ven if [plaintiffs] did win at trial and on appeal, relief for the

Class was likely years away as a result of the lengthy litigation process. The *Mercedes*

Settlement eliminates these risks, cuts through the delay, and provides immediate and significant

benefits to Class Members."). This factor weighs in favor of approval of the Settlement.

            e.    Likelihood of Maintaining the Class Action Through Trial

        This factor "measures the likelihood of obtaining and keeping a class certification if the

action were to proceed to trial." *Warfarin*, 391 F.3d at 537. "Because class certification is subject

to review and modification at any time during the litigation, the uncertainty of maintaining class

certification favors settlement." *In re Comcast Corp. Set-Top Cable Television Box Antitrust*

*Litig*., 333 F.R.D. at 383. The risks of obtaining and maintaining class certification through trial

are evident here, where the Third Circuit has granted the Rule 23(f) petition of the non-settling

Defendants in the bellwether cases. This factor weighs in favor of final approval.

            f.    The Ability to Withstand a Greater Judgment

        The ability of a defendant to withstand a greater judgment "is most relevant when the

defendant's professed inability to pay is used to justify the amount of the settlement." *In re Nat'l*

*Football League Players' Concussion Inj. Litig*., 821 F.3d at 440. Where, as here, a defendant

"d[oes] not cite potential financial instability as justification for the settlement's size," the factor

is neutral and irrelevant. *Id.*; *see also In re Nat. Football League Players' Concussion Inj. Litig*.,

307 F.R.D. at 394 ("However, when there is no reason to believe that [d]efendants face any

financial instability[,] ... this factor is largely irrelevant.") (internal quotation marks and citation

17

omitted); *In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *16 (E.D. Pa. Mar. 15, 2023) ("There is no reason to believe Defendants are financially unstable, but the fact that it could withstand a larger judgment weighs neither in favor of nor against approving the Settlement.). Here, Heritage does not claim inability to pay, so this factor is irrelevant.

      g.   The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation

The eighth and ninth *Girsh* factors entail an analysis of whether a settlement is reasonable in light of the best possible recovery and the attendant risks of litigation. The Settlement here warrants approval under these tests. "The last two *Girsh* factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. These factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Zanghi v. Freightcar America, Inc.*, No. 13-cv-146, 2016 WL 223721, at *19 (W.D. Pa. Jan. 19, 2016).

"The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d at 323-24 (quoting *Prudential*, 148 F.3d at 322). "While the court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it must also recognize that settlement typically represents a compromise and not hold counsel to an impossible standard." *In re Aetna Inc. Sec. Litig.*, MDL 1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001).

Courts "examine what the potential rewards (or downside) of [the] litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors*

18

*Corp.*, 55 F.3d at 814. But in doing so, the "court should avoid conducting a mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 124-25 (D.N.J. 2002) (internal quotation marks and citation omitted). *Accord Sweda v. Univ. of Pennsylvania*, No. CV 16-4329, 2021 WL 5907947, at *2 (E.D. Pa. Dec. 14, 2021) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.").

The Settlement provides substantial consideration for the benefit of the EPP Settlement Class. The non-reversionary Settlement Fund of $10,000,000, together with any accrued interest or earnings after deposit, is being held in escrow. Settlement Agreement ¶ 7. The Settlement will allow EPPs to continue to pursue the full measure of damages incurred by EPPs against the non-settling Defendants. *Id*. ¶ 14. As mentioned above, continued litigation of the claims against Heritage would be protracted and without guarantee of any recovery. The certainty and immediacy of recovery through the Settlement and the benefits that Settlement Class Members will receive warrant final approval. *See In re Remicade Antitrust Litig*., 2023 WL 2530418, at *16 ("Given the possibility that the Class would attain less than the settlement amount (and perhaps even nothing), and the likelihood that the Settlement Class would not receive the maximum amount of recovery, the Court finds that the monetary value of the Settlement falls well within the range of reasonableness.").

The $10 million cash recovery for the EPP Settlement Class is further enhanced by the significant cooperation Heritage will provide. The value of this cooperation cannot be quantified, but it is valuable, given the complexities of this case and industry. In approving settlements in complex antitrust class actions, courts within this District, including this Court, have emphasized

19

the importance of cooperation. *See In re Generic Pharms. Pricing Antitrust Litig*., 2025 WL 845896, at *2 ("[T]he Settling Defendants have agreed to provide cooperation to DPPs, which will facilitate the administration of the settlement and will aid the litigation against non-settling Defendants."; approving DPP settlement with Sandoz); *In re Generic Pharms. Pricing Antitrust Litig*., MDL No. 2724, 2024 WL 4508950, at *2 (E.D. Pa. Oct. 25, 2024) (same; approving DPP settlements with Apotex, Breckenridge and Heritage); *In re Generic Pharms. Pricing Antitrust Litig*., MDL No. 2724, 2023 WL 2466622, at *4 (E.D. Pa. Mar. 9, 2023) (same; approving DPP settlements with Sun and Taro); *In re Processed Egg Prods. Antitrust Litig*., 284 F.R.D. 249, 275 (E.D. Pa. 2012) (finding that settlement agreement's cooperation provision constituted "valuable consideration" that "confer[red] real and substantial benefits upon the Class"); *Linerboard*, 292 F. Supp. 2d at 643 ("The [cooperation provision] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."); *In re Ikon Office Solutions Inc. Sec. Litig*., 194 F.R.D. 166, 177 (E.D. Pa. 2000) ("[T]he cooperation arrangement . . . provides obvious, if non-quantifiable, benefits to the plaintiff class in the continuing litigation.").

Finally, as a so-called "ice breaker" settlement, this Settlement created the potential to "bring other defendants to the point of serious negotiations." *Linerboard,* 292 F. Supp. 2d at 643 (noting "that this settlement has significant value as an 'ice-breaker' settlement –it is the first settlement in the litigation—and should increase the likelihood of future settlements."). *See also* Manual for Complex Litigation (Fourth) § 13.21 (2004) ("[P]retrial settlements may provide funds needed to pursue the litigation, limit the extent of exposure, reduce the scope of discovery or trial, aid the parties in obtaining evidence, and facilitate later settlements on other issues and with other parties."); *In re Processed Egg Prods. Antitrust Litig*., 284 F.R.D. at 276 (approving

20

"icebreaker" settlement and noting that it may increase the likelihood of future settlements). Indeed, EPPs reached settlements with Sandoz, Apotex, Sun and Taro after the Heritage Settlement was disclosed. *See In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 18 (D.D.C. May 13, 2019) ("The Southwest Settlement also had the distinction of being an 'icebreaker settlement,' demonstrated by the fact that four months after the Southwest Settlement, American started negotiating with the Plaintiffs."), *aff'd* 3 F.4th 457 (D.C. Cir. 2021).

In sum, the size and immediacy of relief from this Settlement, in contrast to the costs, risks, and delay of trial and appeal, weigh in favor of approval of the Settlement.

## 2. The Proposed Method of Distributing Relief to the Class is Fair and Effective (Fed. R. Civ. P. 23(e)(2)(C)(ii))

Rule 23(e)(2)(C)(ii) asks courts to evaluate whether a settlement is fair, reasonable, and adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." EPPs' proposed TPP Allocation Plan outlines a mechanism for processing claims, determining each class member's share, and distributing the Settlement. EPPs respectfully submit that it is fair, reasonable, and adequate. *See* Section VII, *infra*. Therefore, it weighs in favor of settlement approval.

## 3. The Settlement's Attorneys' Fees Provision is Reasonable (Fed. R. Civ. P. 23(e)(2)(C)(iii))

The Settlement Agreement provides that EPP Settlement Class Counsel may seek Court approval of up to one third of the EPP Settlement Amount (plus any interest accrued on the Amount) for attorneys' fees, plus expenses and costs, and service awards, which shall be paid

from the Heritage Settlement Fund. Settlement Agreement ¶ 16.[9] The Settlement Agreement

further provides that up to $250,000 from the Settlement Fund may be used for notice and fund

administration expenses. *Id.* ¶ 8.a.

Notice regarding these provisions, as well as notice of EPP Class Counsel's fee petition,

was given to the Settlement Class (along with Notice of EPPs' Apotex Settlement). Both the

Long-Form and Summary Notices disclosed the maximum deduction for notice and

administrative expenses; that EPP Class Counsel intended to move for attorneys' fees of up to

one third of the EPP Settlement Amount plus interest, and for litigation expenses incurred since

January 2025, plus an additional amount for future expenses in further litigation against the

remaining Defendants (up to $ 5,000,000 for past and future expenses); and that the motion

would be filed and posted to the Settlement Website by June 24, 2025. *See* TPP Long Form

Notice at Questions 11, 17; TPP Postcard Notice; TPP Email Notice.

On June 24, 2025, 30 days before the objection and opt-out deadline, EPP Class Counsel

requested attorneys' fees equivalent to one-third of the *net* Apotex and Heritage settlement funds

(*i.e.*, one-third inclusive of accrued interest but net of the costs of notice and administration of

the funds, any reimbursed expenses, and any portion of the fund to be reserved for the payment

of ongoing litigation expenses); reimbursement of litigation expenses in the amount of

$808,470.29 (to be paid proportionately from the Apotex and Heritage Settlement Funds); and

reservation of $2,000,000 for the payment of ongoing litigation expenses (to be reserved

---

[9] Although the Settlement Agreement provides that Settlement Class Counsel may seek
service awards for Settling Plaintiffs, Class Counsel have not requested service awards in
connection with the Heritage Settlement.

proportionately from the Apotex and Heritage Settlement Funds). *See* **MDL Doc. 3486-1 at 11, 24-25 ("Fee Petition")**. All of the requested amounts are less than the amounts disclosed in the Notice, and the Motion was posted on the Settlement Website on June 24, 2025. The petition describes in detail the work Class Counsel has done, notes that the requested fee is substantially smaller than Class Counsel's lodestar, and shows the reasonableness of the expenses. No one has objected. Therefore, this factor weighs in favor of settlement approval.

### 4.  The Supplemental Agreement Is Fair, Reasonable, and Adequate (Fed. R. Civ. P. 23(e)(2)(C)(iv))

Rule 23(e)(3) requires disclosure of any supplemental agreements that could affect the adequacy of the class representatives or their counsel or the fairness of the settlement. The Heritage Settlement references a confidential provision related to an exclusion provision. Specifically, Paragraph 9 of the Settlement provides that if the number of valid and timely opt-out requests exceeds a confidential percentage, then Heritage will have the option of terminating the Settlement.

Confidential calculations such as this are quite common, and they are kept confidential "to avoid creating incentives for a small group of [potential class members] to opt out solely to leverage the [confidential calculation] to extract an individual settlement." *Hacker v. Elec. Last Mile Sols. Inc*., No. 2:22-CV-00545(MEF)(LDW), 2024 WL 5102696, at *9 (D.N.J. Nov. 6, 2024) ("Supplemental agreements concerning opt-outs . . . ha[ve] no bearing on the fairness of the Settlement."). *See also In re Generic Pharms.*, 2024 WL 4508950, at *4 (confidential percentage that triggered option to terminate did not affect final approval of settlements); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) (opt-out threshold is "irrelevant to members' opt-out decision"); *In re Remeron End-*

23

*Payor Antitrust Litig.*, No. 02-cv-2007, 2005 WL 2230314, at *18, *33 (D.N.J. Sept. 13, 2005) (confidential opt-out threshold "ha[d] no legitimate bearing on a class member's decision to opt-out of the settlement, object, or file a claims form"). If requested, EPPs are prepared to submit the confidential understanding to the Court (*in camera*, if permitted by the Court).

In any event, now that the opt-out period has run, it is clear that the opt-out percentage that would have allowed Heritage to terminate the Settlement has not been reached.

### E.  The Settlement Treats Settlement Class Members Equitably Relative to Each Other (Fed. R. Civ. P. 23(e)(2)(D))

Finally, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement itself treats EPP Settlement Class Members equitably, as it provides $10,000,000 to be shared among all members of the EPP Settlement Class and significant cooperation from Heritage that will aid the Settlement Class in its continued litigation of its case against the non-settling Defendants. The Settlement Agreement does not dictate how the Settlement Fund will be allocated among the Settlement Class Members. Instead, it leaves the allocation plan to be approved by the Court and explicitly states that "Settling Defendants shall have no responsibility whatsoever for the allocation or distribution of the Settlement Fund." Settlement Agreement ¶ 8.c. Because the allocation of settlement funds is not a material term of the Settlement Agreement, the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement should be independent of its consideration of the EPPs' proposed allocation plan (which can be amended if the Court so orders). *See In re Lithium Ion Batteries Antitrust Litig.,* No. 13-MD-02420, 2020 WL 7264559, at *25 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (holding that when the allocation plan is not part of the settlement agreement, "the Court has

24

discretion to determine an appropriate plan of allocation without setting aside its orders or judgments granting final approval of the settlements themselves"; collecting cases); 2 MCLAUGHLIN ON CLASS ACTIONS § 6:23 (21st ed.) ("Because court approval of a settlement as fair, reasonable and adequate is conceptually distinct from the approval of a proposed plan of allocation . . . courts frequently approve [them] separately.").

If, nonetheless, the Court wishes to consider the allocation plan as part of its evaluation of the Settlement, it will find that the proposed allocation plan treats Settlement Class Members equitably relative to each other. *See* § VII, *infra*. The plan provides for a *pro rata* distribution of the Settlement Fund to Settlement Class Members based on their dollar spend on the Named Generic Drugs. *See* Allocation Plan ¶ I.D. EPP Settlement Class Counsel believe that the allocation proposal treats class members equitably and is fair, reasonable, and adequate. *See In re Generic Pharms.*, 2024 WL 4508950, at *4 ("[T]he settlement funds will be allocated on a *pro rata* basis, which treats the [DPP] class members equitably."); *In re Generic Pharms.*, 2023 WL 2466622, at *4 (same); *In re Suboxone*, 2024 WL 815503, at *11 ("'In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable.'") (collecting cases) (quoting *In re Ikon*, 194 F.R.D. at 184).

This factor, therefore, weighs in favor of final approval.

## VII.  THE PLAN OF ALLOCATION WARRANTS FINAL APPROVAL

"In the Third Circuit, '[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. 17-cv-341, 2022 WL 16533571, at *8 (E.D. Pa. Oct. 28, 2022)

25

(quoting *In re Ikon*, 194 F.R.D. at 184). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Remicade Antitrust Litig.*, No. 17-cv-04326, 2022 WL 3042766, at *11 (E.D. Pa. Aug. 2, 2022) (quoting *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 752 (E.D. Pa. 2013) (internal quotation marks omitted)).

EPPs' proposed Plan of Allocation will allocate the $10,000,000 received in settlement of their claims against the Heritage Defendants, the $48,000,000 in settlement of their claims against Apotex, plus any interest earned on the settlement funds, net of notice and administration expenses, any funds returned to Apotex as a result of opt-outs, and any Court-approved attorneys' fees and litigation expenses (the "Net TPP Settlement Fund") ratably among TPP Settlement Class Members who submit timely, valid claims. Plan of Allocation at 1-2. The allocation will be *pro rata*, based on Settlement Class Members' expenditures on Named Generic Drugs during the relevant time period.[10] *Id.* ¶ I.D.1. Specifically, each eligible claimant will receive a percentage of the fund that is equal to the dollar amount the claimant spent on the Named Generic Drugs, divided by the total dollar amount that all eligible claimants spent on Named Generic Drugs. *Id.* ¶ I.D.2.

---

[10] Information on expenditures will be collected using claim forms that are described in the allocation plan. *See* Plan of Allocation ¶¶ I.B.1-6. The claim form will require Claimants to submit complete NGD purchase data for the relevant time period. The form will have specific instructions for authorized agents (*e.g.*, TPAs, Administrative Service Organizations ("ASOs")) that are submitting claims on behalf of one or more Settlement Class Members. The claim form and instructions will be "clear, fair, and reasonable" and similar to those used in other pharmaceutical indirect purchaser litigation. *See, e.g., In re Flonase Antitrust Litig.*, 291 F.R.D. at 107 (approving forms); *In re Flonase Antitrust Litig.*, No. 08-3301, ECF No. 570 at 43-55 (claim forms requiring similar information).

26

No class member has objected to EPPs' proposed Plan of Allocation.

Courts within the Third Circuit have approved *pro rata* distributions such as this and have regularly held that they are reasonable and constitute equitable treatment among class members in end-payer antitrust pharmaceutical cases. *See In re Generic Pharms*., 2024 WL 4508950, at *4 ("[T]he settlement funds will be allocated on a *pro rata* basis, which treats the [DPP] class members equitably."); *In re Generic Pharms*., 2023 WL 2466622, at *4 (E.D. Pa. Mar. 9, 2023) (same); *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *4 (same); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co*., No. 12-3824, 2015 WL 12791433, at *6 (E.D. Pa. Jan. 28, 2015) (*pro rata* allocation was "fair and efficient"); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2023 WL 8437034, at *13 (E.D. Pa. Dec. 4, 2023); *In re Flonase Antitrust Litig.*, 291 F.R.D. at 110; *In re Remeron*, 2005 WL 2230314, at *25.

Because the Plan of Allocation "reimburses class members based on the type and extent of their injuries," it is fair, reasonable, and adequate, and it should be approved. *In re Remicade Antitrust Litig*., 2022 WL 3042766, at *11 (internal quotation marks and citation omitted).

## VIII. THERE ARE NO OBJECTIONS TO EPP CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OR EXPENSES

EPP Settlement Class Counsel filed their Fee Petition on June 24, 2025, asking for (1) attorneys' fees equivalent to one-third of the net Settlement Fund (*i.e.*¸ one-third inclusive of accrued interest but net of the costs of notice and administration of the fund, and net of any expenses); (2) reimbursement of litigation expenses in the amount of $808,470.29 (to be paid proportionately from the Apotex and Heritage Settlement Funds); and (3) reservation of $2,000,000 for the payment of ongoing litigation expenses (to be reserved proportionately from the Apotex and Heritage Settlement Funds). *See* Fee Petition (MDL Doc. 3846). The Fee Petition

27

briefed the Court on nine of the ten factors that "a district court must consider" "[i]n determining what constitutes a reasonable percentage fee award." *In re Diet Drugs Product Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 336-40). EPPs are now able to inform the Court that the remaining factor, "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel" weighs in favor of approval of EPP Class Counsel's requested fee award.

As set forth in Section IV above, extensive Notice was given to Settlement Class Members, informing them that EPP Class Counsel would petition the Court for up to one-third of the EPP Settlement Amount and would request past and future expenses (in an amount not to exceed $5,000,000), and that they would post the petition to the Settlement Website June 24, 2025, which they did. *See also* §§ VI.D.1.b, VI.D.3, *supra*. No class member has objected to any aspect of the petition. This weighs in favor of the petition being granted. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (two objections out of 300,000 class members was a "rare phenomenon"); *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 406 (D.N.J. 2006) ("The absence of objections to a fee request, or the imposition of minimal objections, is seen as an indicator that the fee request is fair."). Accordingly, EPP Class Counsel respectfully request that the Court enter the Proposed Order Regarding End-Payer Class Counsel's Motion for Attorneys' Fees and Expenses submitted at MDL Doc. 3486-4.

## IX.   CONCLUSION

For the foregoing reasons, EPPs respectfully request that the Court enter the Proposed

Order submitted herewith for: (1) final approval of the Settlement; (2) final certification of the

Settlement Class for settlement purposes only; and (3) final approval of the TPP Plan of

Allocation.

In addition, EPPs respectfully request that the Court enter the Proposed Order Regarding

End-Payer Class Counsel's Motion for Attorneys' Fees and Expenses submitted at MDL Doc.

3486-4.


Dated: September 22, 2025                              Respectfully submitted,


                                                      /s/ *Roberta D. Liebenberg*
                                                      Roberta D. Liebenberg

                                                      FINE, KAPLAN AND BLACK, R.P.C.
                                                      One South Broad Street, 23rd Floor
                                                      Philadelphia, PA 19107
                                                      Telephone: (215) 567-6565
                                                      rliebenberg@finekaplan.com


                                                      *Lead and Liaison Counsel for EPPs*

29