IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br>*End-Payer Plaintiffs Class Plaintiffs' Actions* | HON. CYNTHIA M. RUFE |

MEMORANDUM OPINION

**Rufe, J.**                                                                                          September 26, 2025

End-Payer Class Plaintiffs ("EPPs")[1] seek final approval of settlements with Defendants Sandoz Inc. and Fougera Pharmaceuticals (the "Settling Defendants") for a monetary payment between $230,000,000 and $275,000,000. The Court held a hearing on July 23, 2025, to determine whether the proposed class-action settlement is "fair, reasonable, and adequate."[2] To approve the settlement, the Court must: (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was

---

[1] The named EPPs are: 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a/ Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; United Food & Commercial Workers and Employers Arizona Health & Welfare Trust; Nina Diamond; Ottis McCrary; Valerie Velardi; and Robby Johnson. On September 22, 2025, EPPs filed a statement noting the death of Plaintiff Nina Diamond. *See* Doc. No. 224 in Action No. 16-DG-27242.

[2] Fed. R. Civ. P. 23(e)(2).

adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e).[3] Preliminarily, the Court finds that Settling Defendants caused timely notice of the settlement and related materials to be sent to the Attorney General of the United States and the Attorneys General of all U.S. states, territories, and the District of Columbia pursuant to the Class Action Fairness Act of 2005 ("CAFA").[4] The Court finds that such notification complies with the applicable requirements of CAFA. No class members have objected to the settlement.

I.   RULE 23(A) AND RULE 23(B)

To certify a class, the Court first must determine under Rule 23(a) that the following factors are met: numerosity, commonality, typicality, and adequacy of representation.[5] Next, the Court must determine that the settlement class also satisfies at least one of the three requirements listed in Rule 23(b).[6] Here, the relevant factor is whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[7] The Court must consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum... ."[8]

---

[3] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014); Fed. R. Civ. P. 23(c)(2)(B).

[4] 28 U.S.C. § 1715. *See* MDL Doc. No. 3520-6.

[5] Fed. R. Civ. P. 23(a).

[6] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (citations omitted).

[7] Fed. R. Civ. P. 23(b)(3).

[8] Fed. R. Civ. P. 23(b)(3).

In the Third Circuit, Rule 23(b)(3) also requires that class be "currently and readily ascertainable based on objective criteria."[9] This ascertainability requirement is two-fold: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."[10]

The Court preliminarily approved the following Settlement Class:

> All persons and entities in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands, that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for any Drugs at Issue, other than for resale, from May 1, 2009 through December 31, 2019. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal governmental entities; (c) all state governmental entities (except for cities, towns, municipalities, counties and other local governmental entities with self-funded prescription drug plans, all of which are included in the class); (d) all governmental Medicaid agencies, private Medicaid managed care organizations, and consumers who were covered by Medicaid for their purchases of Drugs at Issue; and (e) Judges assigned to this case and any members of their immediate families. For avoidance of doubt, the class does not include (i) persons or entities who only purchased Drugs at Issue for purposes of resale or directly from Defendants; (ii) fully insured employers to the extent that they use fully-insured plans (i.e., employers that purchased insurance covering 100% of their reimbursement obligation to members); and (iii) pharmacy benefit managers. Where a putative class member has purchases that meet the definition of the EPP Settlement Class, but also has purchases that fall within one or more of the exclusions set forth in this Paragraph I.J., that putative class member is included in the EPP Settlement Class only with respect to those purchases that meet the definition of the EPP Settlement Class.
> The Drugs at Issue are those listed in Appendix A to the Settlement Agreement.[11]

No class members have objected to the settlement. Although they are not part of the class, a number of states, through their attorneys general, have raised objections to the

---

[9] *In re Niaspan Antitrust Litigation*, 67 F.4th 119, 129-30 (3d Cir. 2023) (quoting *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020)).

[10] *Hargrove*, at 469–70 (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)).

[11] MDL Doc. No. 3257.

settlement. The Court denied their motion to intervene but heard argument at the Fairness Hearing from them as *amici curiae* (the *Amici* States). The State of Florida, which has settled its sovereign claims with Sandoz, has been granted leave to file an *amicus curiae* brief in support of the settlement.[12]

The Settlement Class comprises both entities that paid for prescriptions on behalf of others (Third-Party Payors, or "TPPs") and individual consumers who paid out-of-pocket for some or all of their own prescriptions. The *Amici* States oppose the inclusion of individual consumers, arguing that approval of the settlement could "extinguish State Attorney General claims and public interest remedies, including *parens patriae* claims and claims brought pursuant to the States' enforcement authority[.]"[13] They further argue that the "allocation plan is manifestly inadequate for consumers: its documentation requirements and *pro rata* distribution mean that consumers are highly unlikely to recover meaningful relief."[14] In particular, the *Amici* States point to the requirement that consumers produce a receipt or other proof of payment, which the *Amici* States argue consumers are unlikely to have years after the fact, and therefore, the consumers are not treated equitably and are unlikely to see any real benefit from the settlement. As evidence, the *Amici* States point to the deposition of Ms. Velardi, a representative for the consumer class, who was able to obtain documentation of a single purchase from Walgreens only after several trips to the pharmacy.[15] The *Amici* States also contend that Ms.

---

[12] MDL Doc. No. 3551-3. The State of Montana has withdrawn its objection to the Settlement, as it has settled its claims with Sandoz. MDL Doc. No. 3628.

[13] States' Omnibus Obj. [MDL Doc. No. 3380-1] at 3.

[14] *Id.*

[15] *Id.* at 15 & n.23.

Velardi has a conflict of interest because she stands to receive a service award under the EPPs' settlement.[16]

Essentially, the *Amici* States argue that they have been at the forefront of the investigation of generic drug pricing, and that the proposed settlement undermines their enforcement authority in favor of the EPPs, who have never looked after the interests of consumers. They argue that the release is overbroad and purports to release the *parens patriae* and disgorgement claims that the EPPs have never litigated and cannot bring. The *Amici* States argue that their actions, not this settlement, represent the best outcome for the consumers, and therefore, EPPs cannot show the superiority of this settlement over the cases brought by the *Amici* States, which focus on consumers and do not have to clear the hurdle of class certification.[17]

If the settlement is approved, the *Amici* States seek a ruling that the settlement does not release the States' claims, and that offset is the proper remedy if there are duplicative claims. In other words, the Court could require that EPPs report the amounts paid to consumers or the States could subpoena the information in the ordinary course of their pending litigation. In addition, the States contend that any antisuit injunction must be narrowly tailored so as not to prejudice sovereign enforcement efforts.

In response to the objections, EPPs argue that the *pro rata* allocation plan treats all class members equitably relative to each other, and that the *Amici* States misrepresent the claims process because consumers must only produce one proof of purchase for each drug and then can

---

[16] *Id*. at 16.

[17] The *Amici* States also raise objections as to the sufficiency of the notice, which will be discussed below.

5

claim as many purchases of each drug as were made. EPPs argue this has the valid purpose to discourage fraud and will not be too difficult.[18] EPPs argue that if the Court concludes that the allocation plan is not fair, the Court can approve the settlement and order that the plan be changed. EPPs also argue that there is no need to require claims data at the time of settlement.

Next, EPPs argue that class counsel is adequate and the exclusion of consumers from the bellwether cases was for "practical and tactical reasons" that were "in the long-term interests of all class members, including consumers."[19] EPPs also argue that the Court can reduce or deny service awards without rejecting the settlement. With regard to the release issue, EPPs argue that because the *Amici* States are not class members, "their distinct sovereign and enforcement claims *cannot* be released by the Settlement, nor can their damages claims to recover on behalf of their agencies."[20] EPPs acknowledge that the settlement "does affect the States' claims based on the private interests of consumers, but only some States (19 of the 42 that object) even assert *parens patriae* damages claims on behalf of consumers."[21] EPPs also argue that the Court cannot modify the terms of the settlement to carve out certain claims or to allow for offsets.

EPPs argue that this class action is superior to the other actions, citing the Supreme Court's decision in *Hawaii v. Standard Oil Co. of California* that Rule 23 class actions "are definitely preferable" to *parens patriae* actions in antitrust cases.[22] In addition, EPPs argue that it is pure speculation to assume that the *Amici* States could obtain a greater recovery.

---

[18] In contrast to consumers, TPPs must produce proof of all their purchases.

[19] MDL Doc. No. 3522 at 35.

[20] *Id* at 38.

[21] *Id.* at 39.

[22] 405 U.S. 251, 266 (1972).

Sandoz contends that the *Amici* States essentially seek veto power over consumer class action settlements, and that the *Amici* States can continue to pursue sovereign claims to vindicate public interests. Sandoz further notes that 1) only 23 states and territories assert claims on behalf of consumers; 2) there are no consumer objections, and only one consumer opted out of the settlement; 3) any recovery by the States is years away and speculative at this point; and 4) there are no cases in which a court has rejected a private class settlement because a parallel government enforcement suit could potential result in greater damages at some unspecified time in the future.

The State of Florida is of the view that the settlement "represents a good value vis-à-vis the strength of the case against Sandoz."[23] Florida also notes that although *Amici* States do not have the hurdle of class certification, it "does not mean that a larger settlement between them and Sandoz is imminent."[24]

Upon careful consideration of the objections, the Court will certify the Settlement Class. The Rule 23(a) factors are satisfied. There is no dispute as to numerosity; there are many thousands of potential class members geographically dispersed throughout the United States. A single common issue is enough to satisfy the commonality requirement. Here, there are common issues of law and fact as to all class members: that they purchased generic pharmaceuticals that were priced higher than they should have been because of an alleged conspiracy among manufacturers, including Settling Defendants.[25]

---

[23] Amicus brief of State of Florida at 1 [MDL Doc. No. 3551-3].

[24] *Id.* at 2.

[25] *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).

Typicality is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented."[26] Similarly, adequacy of representation looks to the qualifications of the class representatives and the class counsel to make sure that the class representatives have no conflict of interest and that the attorneys are experienced, vigorously prosecuted the action, and acted at arm's length from the defendants.[27] Plaintiffs have demonstrated that "the representative parties will fairly and adequately protect the interests of the class."[28] There is no challenge to the TPP class representatives, and the Court disagrees that the proposed service award to the individual representatives somehow results in a misalignment of interests with the consumer class members. Class counsel are qualified, experienced, and fully capable of litigating the class members' claims.[29] The Court accepts that there are strategic reasons for pursuing a non-consumer class in the initial bellwether cases while including consumers in the settlement class.

There is some burden on consumer class members, as they must present a proof of purchase showing one payment for each of the drugs claimed; however, consumers do not need proof of each purchase. Instead, a consumer who can demonstrate one payment for a drug can then make a claim for all payments for that drug.[30] Given the number of drugs at issue in the settlement, this is a reasonable requirement to deter fraudulent claims. There are multiple options

---

[26] *Baby Neal v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994).

[27] *In re Nat'l Football League Players*, 821 F.3d at 428-29; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 801 (3d Cir. 1995).

[28] Fed. R. Civ. P. 23(a)(4).

[29] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

[30] Allocation Plan ¶ 1.B.3 [MDL Doc. No. 3253-1 at 87].

for a claimant including their insurance records (which would show a co-pay), pharmacy records, and receipts. Such documentation also helps to establish membership in the class for purposes of ascertainability.

Turning to Rule 23(b), the common questions of class members predominate over any individual issues as all class members were allegedly harmed in the same way by paying increased prices for generic drugs. The Court also concludes that considering all of the relevant factors, that this class action settlement is superior to other options. In so ruling, the Court stresses that there is no question that the state attorneys general have played a key role in the litigation over the prices of generic pharmaceuticals, and that their lawsuits also could result in meaningful relief in some form to some of the class members here. However, as the Court previously held, *Amici* States "have not shown that their *parens patriae* authority, whether statutory or not, supplants the ability of consumers to pursue actions for damages. . . ." Moreover, all litigation has risks, and here the EPPs have hammered out a settlement in the neighborhood of a quarter billion dollars, while the nature and amount of relief in other lawsuits cannot be determined and may not come to fruition for some time. In addition to the monetary payment, the Settling Defendants have agreed to provide cooperation to EPPs, which will facilitate the administration of the settlements and will aid the litigation against non-settling Defendants. EPPs have shown that for the purposes of settlement a class action is a fair and efficient way to resolve the dispute "against those of alternative available methods of adjudication."[31] The Court therefore certifies the settlement class for purposes of the final settlement.

---

[31] *In re Warfarin*, 391 F.3d at 534 (citations omitted).

## II. NOTICE

As part of the preliminary settlement approval, the Court directed that notice be provided.[32] The notice for the settlement stated in plain, easily understood language: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."[33]

Notice was made through different means to reach both consumers and TPPs through the use of digital advertising for 45 days in English and Spanish on social media platforms including YouTube and Instagram, websites such as AARP.org and websites for industry professionals, and a publication notice in *People* magazine. Direct notice was sent to 42,493 TPPs.[34] This notice campaign was in conjunction with the use of a case-specific toll-free telephone number and website.[35]

Objections to the notice process have been raised by the *Amici* States as to the consumers and by certain insurers who sought to exclude their Administrative Services Only ("ASO") customers from the settlement. The *Amici* States argue that the notice was inadequate because it did not inform consumers of the actions filed by the States, which they contend will have less onerous settlement requirements, and that the notice failed to advise consumers that they would

---

[32] Fed. R. Civ. P. 23(c)(2)(B).

[33] Fed. R. Civ. P. 23(c)(2)(B).

[34] Decl. Eric J. Miller [MDL Doc. No. 3520-5] ¶ 4.

[35] Decl. Cameron R. Azari [MDL Doc. No. 3245-1] ¶¶ 10-21.

have to produce proof of purchase. To satisfy due process, "a notice must supply class members with enough information to make an informed decision about their rights and how best to protect them."[36] "That a notice could have more clearly described the effects of a settlement is not enough to demonstrate a due process violation."[37]

The Court concludes that due process did not require notifying consumers of the existence of other litigation; indeed, such information could have been confusing as the *Amici* States have not settled with Sandoz, and at this point it is impossible to determine whether and to what extent consumers could recover through that litigation.

Certain insurers object to the requirements in the notice regarding their ability to opt out on behalf of their Administrative Services Only ("ASO") customers. The Court has issued a separate Order ruling on these requested exclusions.[38] The requirements for these exclusions, as later modified by the Court, are necessary to ensure that the ASO customers in fact have granted the insurers the authority to determine whether they will participate in the litigation, which safeguards their due-process rights.

### III. RULE 23(e) and the *GIRSH* FACTORS

The Court must determine that the proposed settlement is "fair, reasonable and adequate."[39] A settlement is fair where "(1) the settlement negotiations occurred at arm's length;

---

[36] *Perrigo Institutional Investor Group v. Papa*, 150 F.4th 206, 220 (3d Cir. 2025).

[37] *Id.* at 221 (internal quotation marks and citation omitted). *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.").

[38] Order of Sept. 23, 2025 [MDL Doc. No. 3698]. All exclusion requests have been resolved (including that of Centene Corporation, which EPPs agree has opted out of the settlement and its objection is dismissed as moot).

[39] *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); *see also* Fed. R. Civ. P. 23(e).

(2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[40] In connection with Rule 23(e), the Court also considers the factors set forth by the Third Circuit in *Girsh v. Jepson*.[41] The *Girsh* factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."[42]

The litigation is extremely complex and, in the absence of the settlement, it would likely be several years before all of the claims asserted by EPPs are resolved. No class members have objected to the settlement, and potential class members have been able to opt out of the settlement. There has been extensive motion practice and discovery through which the parties have learned of the claims. Settling Defendants have denied liability, and in the absence of the settlement, EPPs would be required to litigate issues of liability, damages, and class certification.

---

[40] *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 1998)). The specific factors listed in Rule 23(e)(2) are:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

[41] 521 F.2d 153, 157 (3d Cir. 1975).

[42] *Id.*

There remain many other claims asserted against Settling Defendants and settlement at this time assures a fair payment to the EPPs on their claims against Sandoz. Considering all of the attendant risks of litigation of EPPs' claims, including within the broader context of the MDL, the Court concludes that the settlement is reasonable under the *Girsh* factors.

Negotiations occurred at arm's length over a significant period of time and there has been extensive discovery in the MDL, enabling class counsel to "develop[] enough information about the [litigation] to appreciate sufficiently the value of the claims."[43] Plaintiffs' counsel is experienced and accomplished. In addition, as required by Rule 23(e)(2), the Court determines that the relief provided to the class is adequate.

The Settlement Fund consists of a $275,000,000 monetary payment, which may be reduced by up to $45,000,000 based on the number of opt-outs from the settlement. EPPs seek the following disbursements from the Settlement Fund: (1) service awards for the class representatives of $30,000 for each TPP Class Representative and $5,000 for each Consumer Class Representative, for a total of $410,000; (2) attorneys' fees of one-third of the <u>net</u> settlement fund; 3) litigation expenses of $25,700,911.41; and (4) costs of notice and claims administration, of up to $750,000.[44] In the context of the settlement award, the Court finds that these amounts are appropriate.

The relief the settlement is expected to provide class members is adequate when balanced against "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment;

---

[43] *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).
[44] Motion for Order Approving Allocation Plan [MDL Doc. No. 3327].

and (iv) any agreement required to be identified under Rule 23(e)(3)."[45] In addition to the inherent risk to recovery involved in prolonged litigation, continuing through motions regarding class certification, the dismissal of claims, and the exclusion of evidence, as well as potential trials and appeals, would only delay any recovery class members may receive.

Rule 23(e)(2)(iv) requires the Court to account for any agreements between the parties required to be identified under Rule 23(e)(3), referring to "any agreement made in connection with the [settlement] proposal."[46] The settlement documents set forth the relevant agreements, including that the Settling Defendants will provide cooperation, both in terms of effectuating the settlements and providing information to help in the continued litigation against the non-settling Defendants.

The final element of Rule 23(e)(2) requires the Court to determine whether the proposal treats the class members equitably relative to each other. The settlement funds will be allocated on a *pro rata* basis among all class members that file claims, which treats the class members equitably. The *Amici* States argue that this means the consumers will not receive a meaningful recovery, but the recovery will be proportional of the consumers' loss. This is equitable treatment for purposes of evaluating the fairness of the settlement.

As a final note, the Court has carefully considered the *Amici* States' requests regarding the reporting of claims data, anti-suit injunctions, and potential offsets and has determined that they are premature at this stage.

---

[45] Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

[46] Fed. R. Civ. P. 23(e)(3).

## IV. CONCLUSION

The Court having determined that the settlement is fair and reasonable, and that all applicable requirements have been met, the Court will approve the settlement. Appropriate orders will be entered.