**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br><br> 16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*All End-Payer Plaintiffs' Actions* | HON. CYNTHIA M. RUFE |

**<u>MEMORANDUM OF LAW IN SUPPORT OF END-PAYER CLASS COUNSEL'S
MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................3

III.   ARGUMENT ......................................................................................................11

     A.    Class Counsel Are Entitled to a Fair Fee Award ...................................11

          1.    The Percentage Award Requested by Class Counsel is Reasonable ..........12

          2.    The Lodestar Cross-Check Confirms That the Percentage Award Requested by Class Counsel is Reasonable ...............................................22

     B.    The Expenses Requested by Class Counsel Are Reasonable.................................24

     C.    The Service Awards Requested Are Reasonable......................................26

IV.   CONCLUSION..................................................................................................29

i

## <u>TABLE OF AUTHORITIES</u>

**Pages(s)**

**Cases**

*Alin v. Honda Motor Co*.,
  No. 08-cv-4825, 2012 WL 8751045 (D.N.J. Apr. 13, 2012) .................................................. 29

*Fleisher v. Fiber Composites, LLC*,
  No. 12-cv-1326, 2014 WL 866441 (E.D. Pa. Mar. 5, 2014) .................................................... 23

*Galt v. Eagleville Hosp*.,
  310 F. Supp. 3d 483 (E.D. Pa. 2018) ...................................................................................... 12

*Glaberson v. Comcast Corp.,*
  No. 03-cv-6604, 2015 WL 5582251 (E.D. Pa. Sept. 22, 2015) ......................................... 23, 26

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ................................................................................... 12, 13, 15, 20

*Halley v. Honeywell Int'l, Inc*.,
  861 F.3d 481 (3d Cir. 2017) .....................................................................................................11

*Harshbarger v. Penn Mut. Life Ins. Co*.,
  No. 12-6172, 2017 WL 6525783 (E.D. Pa. Dec. 20, 2017) ............................................... 21, 27

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................. 13

*In re AT & T Corp. Sec. Litig.*,
  455 F.3d 160 (3d Cir. 2006) ............................................................................................ *passim*

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) .................................................................................................... 16

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) .............................................................................................. 24

*In re Cigna American Specialty Health Admin. Fee Litig.*,
  No. 16-cv-03967, 2019 WL 4082946 (E.D. Pa. Aug. 29, 2019) ...................................... *passim*

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009) ................................................................................... 13, 18, 20

*In re Domestic Drywall Antitrust Litig.*,
  No. 13-md-2437, 2018 WL 3439454 (E.D. Pa. July 17, 2018) ............................................... 28

*In re Fasteners Antitrust Litig.*,
  No. 08-md-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014) .................................................. 19

*In re Flonase Antitrust Litig.*,
291 F.R.D. 93 (E.D. Pa. 2013) ................................................................................ *passim*

*In re Gen. Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ............................................................................................ 16

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-cv-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .................................... 28

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
194 F.R.D. 194 (E.D. Pa. 2000) ....................................................................... 20, 21, 24

*In re Linerboard Antitrust Litig.*,
296 F.Supp.2d 568 (E.D. Pa. 2003) ............................................................................. 17

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020) ........................................................................... 10

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2012 WL 5467530 (E.D. Pa. Nov. 9, 2012) ................................................ 17

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ............................................................... 13, 18, 20, 23

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .................................................................................... 19

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. 03-cv-0085, 2005 WL 3008808 (D. N.J. Nov. 9, 2005) .................................................. 19

*In re Remicade Antitrust Litig.*,
No. 17-CV-04326, 2023 WL 2530418 (E.D. Pa. Mar. 15, 2023) ...................................... 13, 14

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ......................................................................................... 18

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) .......................................... *passim*

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024) .............................................. 10

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
No. C 07-05634 CRB, 2015 WL 3396829 (N.D. Cal. May 26, 2015) .................................... 25

*In re Viropharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .............................................. 13, 15

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    No. 20-MD-02966-RS, 2024 WL 1683640 (N.D. Cal. Apr. 17, 2024) ................................... 25

*Jackson v. Wells Fargo Bank, N.A.*,
    136 F. Supp. 3d 687 (W.D. Pa. 2015) ...................................................................... 13

*Kirsch v. Delta Dental of New Jersey*,
    534 F. App'x 113 (3d Cir. 2013) ............................................................................. 12

*McDonough v. Toys "R" Us, Inc.*,
    80 F. Supp. 3d 626 (E.D. Pa. 2015) ...................................................... 17, 21, 24, 26

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ............................................................................. 24

*Molloy v. Aetna Life Ins. Co.*, No. CV 19-3902,
    2024 WL 290283 (E.D. Pa. Jan. 25, 2024) ............................................................ 12

*N. Shore Hematology-Oncology Assocs. v. Bristol-Myers Squibb Co.*,
    No. 04-cv-248, 2004 WL 7348048 (D.D.C. Nov. 30, 2004) ................................... 19

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) .................................................................................. 25

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    No. 06-cv-1833, 2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ........................ *passim*

**Rules**

Fed. R. Civ. P. 23(h) ........................................................................................................... 11

**Treatises**

3 NEWBERG ON CLASS ACTIONS § 14.03 (3d ed. 1992) .............................................. 23

## I. INTRODUCTION

Lead Counsel for the End-Payer Plaintiffs ("EPPs"), the Plaintiffs' Steering Committee, and other EPP firms (together "EPP Class Counsel" or "Class Counsel") have actively prosecuted this action on behalf of end payers for various generic drugs for more than nine years. In eighteen individual-drug complaints, plus two multi-drug complaints, EPPs have alleged that more than thirty manufacturers of generic pharmaceuticals unlawfully conspired to inflate the prices of hundreds of drugs. This Court has presided over each step of the litigation, including denying Defendants' motions to dismiss six of EPPs' individual drug complaints; denying Defendants' motions to dismiss EPPs' first multi-drug complaint that alleged an "overarching conspiracy" among Defendants; ruling on numerous discovery motions, including one that was briefed before the Third Circuit and the United States Supreme Court; ruling on numerous *Daubert* motions; and granting motions to certify the EPP Classes in two bellwether cases. As set forth in EPP Class Counsel's fee petitions filed earlier this year, from inception until the end of 2024, EPPs spent more than 670,000 hours of professional time on this litigation. Since that time, EPP Class Counsel have continued to diligently prosecute the claims in this litigation— accruing more time and expenses—as they prepared for EPPs' bellwether trials, litigated the appeal of this Court's class certification order, and continued with non-bellwether discovery. Thus, from inception until the end of September 2025, EPPs have spent a total of over 717,000 hours of professional time on this litigation.

As the Court is aware, EPPs reached a $200,000,000 settlement with Sun Pharmaceutical Industries, Inc. ("Sun"), and Taro Pharmaceuticals U.S.A., Inc. ("Taro") ("Sun/Taro" to refer to both entities). The settlement conferred significant benefits on the settlement class members, and the Court has granted its preliminary approval.

For the risks undertaken, the resources invested, and the results achieved to date, EPP Class Counsel respectfully seek an award of attorneys' fees equivalent to one-third of the Sun/Taro settlement fund, inclusive of accrued interest, but ***net*** of the costs of notice and administration of the funds, any reimbursed expenses, any portion of the fund to be reserved for the payment of ongoing litigation expenses, and any service awards. This requested award is fair and reasonable based on the factors that courts in this Circuit routinely employ and is within the range of fees awarded in this District and throughout the Third Circuit.

EPP Class Counsel also respectfully request that the Court approve payment from the settlement fund of $304,954.99 to reimburse Class Counsel for reasonable expenses they advanced on behalf of the Class from January 1, 2025 through September 2025.[1] Class Counsel further request that $3,000,000 be reserved for the payment of ongoing litigation expenses.

Finally, Class Counsel request service awards of $30,000 to each of the Third-Party Payer Class Representatives and $5,000 to each of the Consumer Class Representatives in recognition of the time and effort they have expended during the course of this litigation.

Assuming a similar level of opt-outs as from the Apotex and Heritage settlements, and an award in full of the requested expenses and service awards, the net Sun/Taro settlement fund likely will total approximately $192.8 million (plus accrued interest), meaning that EPP Class Counsel's fee request would amount to approximately $64.3 million (plus one-third of accrued

---

[1] The expenses requested in this motion are expenses paid by individual firms (*e.g.*, electronic legal research, travel) from January 1, 2025 through September 2025; and expenses paid from the common litigation fund from June 2025 through September 2025. *See* Declaration of Roberta D. Liebenberg in Support of End-Payer Class Counsel's Motion for Attorneys' Fees and Expenses, submitted herewith ["Liebenberg Decl."], ¶ 14 & Ex. B. They are separate from and not included in the expenses requested in EPPs' prior motions for expenses. *See* MDL Doc. 3327 (requesting all unreimbursed expenses from inception through December 31, 2024); MDL Doc. 3486 (requesting only expenses paid from the common litigation fund from January 1, 2025 through May 2025).

interest). As set forth in greater detail in Section III.A.2, an overall lodestar cross-check (*i.e.,* one that accounts for the total lodestar incurred from inception until September 2025; the Court's order granting EPPs' request for fees, expenses and service awards from the Sandoz Settlement; the pending request for fees and expenses from the Apotex and Heritage Settlements; and the current request for fees, expenses and service awards from the Sun/Taro Settlement) would translate into a total lodestar of $365.5 million and a total fee request of approximately $149.4 million. This amount represents 41% (or a 0.41 multiplier) of the total lodestar[2] that Class Counsel have expended in this litigation.[3]

## II. BACKGROUND

From the inception of this litigation until the present, EPP Class Counsel have worked tirelessly for the benefit of the EPP Class. As detailed in EPPs' April 2025 fee petition, Class Counsel have:

- Investigated and drafted EPPs' 18 single-drug complaints, all but one of which were drafted without the benefit of a prior complaint;

- Investigated and drafted EPPs' two multi-drug complaints alleging an overarching conspiracy in the generic pharmaceutical industry and identifying drugs and Defendants that were not in the complaints of the State Attorneys General (the "States") or any other plaintiff group;

- Successfully opposed Defendants' numerous motions to dismiss;

---

[2] *See* Liebenberg Decl., Ex. A (summarizing EPP Class Counsel's time from inception through September 30, 2025).

[3] EPP Class Counsel intend to ask for additional fees out of later settlements and judgments.

- Conducted extensive work in discovery, including successfully opposing Defendants' and the U.S. Department of Justice's ("DOJ") motions to stay, litigating the primary discovery-related protocols and stipulations, negotiating access to documents that had been collected by the States, litigating numerous discovery issues, producing responsive documents and information, reviewing voluminous records produced by defendants, taking depositions, preparing EPPs for their depositions, participating in certain Defendants' bankruptcy proceedings, and negotiating and finalizing cooperation agreements with three cooperating witnesses;

- Taken a leading role in case management issues, including leading the effort to select appropriate bellwether cases;

- Successfully moved for certification of the bellwether classes; and

- Vigorously prosecuted the bellwether cases, including defeating four *Daubert* motions, filing successful *Daubert* motions against Defendants' experts, and completing briefing and oral argument in support of EPPs' motion for summary judgment on state-law issues and in opposition to Defendants' motions for summary judgment.

*See* EPPs' Memo. in Support of Fee Petition, MDL Doc. 3327-1, at 3-19 (describing EPP Counsel's work from inception through March 2025), excerpt attached hereto as **Exhibit 1**.

In addition to the work described in EPPs' April 2025 fee petition, EPP Class Counsel have continued to vigorously represent EPPs. In 2025, in addition to litigating their bellwether cases, EPP Counsel expended enormous effort on litigating the non-bellwether cases. Pursuant to this Court's Pretrial Order No. 282 (MDL Doc. 3090), Defendants filed a series of motions to

4

dismiss targeting eight different non-bellwether EPP complaints, which required EPP Counsel to file extensive briefing in each of those cases. *See* June 20, 2025 filings in Civ. A. Nos. 18-cv-2401, 19-cv-6011, 16-AM-27242, 16-BZ-27242, 16-DS-27242, 16-FL-27242, 16-LD-27242, 16-LV-27242.

EPP Counsel also played an active role in seeking further discovery relating to the many non-bellwether conspiracies alleged in the MDL. This included seeking additional depositions of Defendants' current and former employees and continuing to prepare Rule 1006 phone record summaries to be used by all plaintiffs in MDL depositions. EPP Counsel also prepared and served subpoenas and *Touhy* requests on the U.S. Department of Justice and the U.S. Postal Service seeking materials relating to their criminal and civil investigations, as well as negotiating with their counsel over privacy protective orders governing those productions. *See, e.g.*, MDL Docs. 3250, 3532. In September 2025, EPP Counsel also served contention interrogatories on Defendants relating to the EPP non-bellwether complaints.

When Defendant Taro sought to withdraw its admissions confirming the admissions of criminal conduct that it made in its Deferred Prosecution Agreement with DOJ, EPP Counsel took the lead in opposing that effort and briefing the issue before the Special Discovery Master and the Court, achieving favorable rulings at both stages. *See* MDL Docs. 3251, 3324.

EPP Counsel also participated in briefing before the Special Discovery Master and this Court concerning Defendants' motion to compel certain Direct Action Plaintiffs ("DAPs") to produce custodial documents relating to spread pricing and premiums. Defendants essentially sought a "do-over" after the Special Master and this Court ruled in EPPs' favor on the same issues. *See* MDL Docs. 2426, 3226. To preserve that victory, EPPs assisted those DAPs in securing a favorable ruling from the Special Discovery Master and in opposing Defendants'

objections to the Court. The Court recently adopted the Special Discovery Master's R&R. *See* MDL Docs. 3413, 3513, 3741.

As they have done since inception of the litigation, EPP Lead Counsel have continued to take the lead in preparing the agenda for, and taking a leading role in discussions with the Court during, each of the Court's monthly status conferences in 2025. *See* MDL Docs. 3271, 3316, 3356, 3439, 3507, 3636, 3720.

During 2025, EPP Counsel also devoted extraordinary efforts to litigation of the *Clobetasol* and *Clomipramine* bellwether cases. After securing favorable *Daubert* rulings that excluded certain of Defendants' experts' opinions (MDL Doc. 3171), EPP Counsel defended those rulings against Defendants' partial motions for reconsideration, largely defeating that effort. *See* MDL Docs. 3248, 3249.

After the Court granted EPPs' motions for certification of the bellwether litigation classes, over the objections of certain DAPs and the Bellwether Defendants, the Court approved EPPs' motion for approval of their proposed notice plan and for the appointment of a notice administrator. MDL Doc. 3354.

After summary judgment was fully briefed, Defendants were granted leave to file supplemental summary judgment briefs (MDL Doc. 3288), which required additional briefing by EPP Counsel (*see* 16-CB-27242, ECF 482; 16-CM-27242, ECF 397). In May 2025, EPP Counsel presented extensive oral argument to the Court over the course of two days concerning summary judgment. *See* MDL Docs. 3396, 3397. To date, the Court has granted in part and denied in part certain summary judgment motions in the EPP *Clomipramine* bellwether case. *See* MDL Docs. 3616, 3617. EPP Counsel filed a motion for clarification and related papers, and that motion was

granted in part and denied in part without prejudice. *See* 16-CM-27242, ECF 425, 427; MDL Doc. 3756.

At the same time, EPP Counsel continued to devote significant time and resources to preparing the EPP *Clobetasol* and EPP *Clomipramine* bellwether cases for trial. On behalf of both EPPs and DPPs, EPPs led negotiations with the Bellwether Defendants to craft a pretrial schedule that included all of the necessary steps to make four separate cases trial-ready by August 4, 2025. *See* MDL Doc. 3185 ¶ 1. Pursuant to that agreed schedule, which the Court entered as PTO 294 (MDL No. 3282), EPPs marshalled the skills and resources of counsel and support staff to compile EPPs' trial exhibit lists, designate deposition testimony, and to work toward accomplishing all of the many necessary pretrial preparations in both EPP bellwether cases. Amidst these preparations, EPP Counsel took the lead for EPPs and DPPs in litigating the key issue of trial structure, *i.e.*, whether there should be any joint EPP/DPP bellwether trials, and the sequencing of the trials. After briefing the issue and presenting oral argument during the April 10, 2025 general status conference (*see* MDL Docs. 3316, 3319, 3323), the Court granted EPPs' requested relief. *See* MDL Doc. 3347.

In the run-up to trial, EPP Counsel took the lead in seeking a Court Order to prevent gamesmanship and undue prejudice that could arise were certain witnesses to revoke their Fifth Amendment privileges on the eve of trial. On behalf of EPPs and DPPs, EPP Counsel filed a Motion to Establish a Protocol Regarding Any Further Testimony of Witnesses Who Previously Asserted the Fifth Amendment Privilege Against Self-Incrimination. *See* 16-CB-27242, ECF 448; 16-CM-27242, ECF 365. That motion was litigated before both Special Discovery Master Stengel and this Court, which ultimately approved a protocol to protect against that gamesmanship and prejudice. *See* MDL Doc. 3348. Relatedly, as MDL discovery has continued

to unfold in 2025, EPPs have taken the lead in pressing other witnesses to declare whether they would revoke their prior assertions of the privilege and testify during the Court-Ordered fact discovery period.

In preparing for trial, EPP Counsel filed a number of motions regarding disputed legal issues, such as the admissibility of co-conspirator statements, Fifth Amendment invocations, the need for additional depositions, and the whereabouts of the original copies of the Bihari Notebooks. *See* MDL Doc. 3450. And to streamline the trial (and pretrial preparations), EPP Counsel successfully negotiated a stipulation to govern the admissibility of phone records and other documents at trial, which mooted a related pending motion. *See* 16-CB-27242, ECF 524.

Over the course of the pretrial proceedings, EPP Counsel took the lead to negotiate a series of stipulations with the Bellwether Defendants to ensure the orderly management of the bellwether trials: establishing a pretrial schedule for all four EPP and DPP bellwether cases (MDL Doc. 3282); establishing a briefing schedule to govern motions *in limine* that are expected to address dozens of issues (MDL Doc. 3457); establishing a plan for subsequent trials of EPP *Clomipramine* and DPP *Clobetasol*, if necessary (MDL Doc. 3386); and once Defendants' Rule 23(f) petitions were accepted by the Third Circuit, establishing a plan for resumption of trial preparations upon remand (MDL Doc. 3478).

Finally, during 2025, EPP Counsel have devoted significant work to securing approval of their settlements with Sandoz, Apotex and Heritage for the benefit of the EPP settlement class members. This work was much more substantial than in a typical end-payer case, given the unusually zealous efforts of non-parties to erect obstacles to approval of those settlements.

First, EPP Counsel engaged in protracted litigation regarding certain opt-out insurers' efforts to exclude their ASO Clients from EPP settlements, and related objections to the Court-

approved opt-out procedures. This required extensive briefing, negotiation, a series of Court

Orders, and oral arguments before the Court. *See* MDL Docs. 3259, 3376, 3377, 3379, 3444-

3447, 3482, 3483, 3499, 3526, 3530, 3553, 3581, 3582, 3586, 3589, 3622, 3647, 3663, 3686,

3698.

Second, the EPP-Sandoz settlement faced opposition from certain State Attorneys

General, who sought to intervene in the MDL and object to the settlement. EPP Counsel opposed

the States' Motion to Intervene, which involved briefing before the Special Discovery Master

and the States' subsequent objections before the Court (MDL Docs. 3546), as well as presenting

oral argument during the July 23, 2025 fairness hearing (MDL Doc. 3566). The Court denied the

States' motion to intervene as parties on August 19, 2025, while considering their objections as

*amici*. MDL Doc. 3600.

Finally, to protect EPP Class members' ability to recover from Defendant Taro

Pharmaceuticals USA Inc. for their injuries in the MDL cases, EPP Counsel prepared and filed a

complaint against Taro and related entities challenging their possible efforts to evade Taro's

MDL liabilities. *See American Federation of State, County and Municipal Employees, District

Council 47, Health and Welfare Funds v. Taro Pharmaceuticals USA Inc.*, Civ. A. No. 25-3190

(E.D. Pa. June 23, 2025). Because the action included several foreign defendants, EPP Counsel

undertook substantial time and expense to serve them abroad. Not long afterward, EPPs and the

Sun/Taro defendants agreed to their $200 million settlement.

EPP Class Counsel have negotiated four settlements to date: the Sun/Taro Settlement for

$200,000,000 (which may be reduced by up to $10,000,000, depending on the number of opt-

outs), plus a cooperation agreement (MDL Doc. 3630-9); the Heritage Settlement for

$10,000,000, plus a cooperation agreement (MDL Doc. 2992-2); the Apotex Settlement for

$48,000,000 (which may be reduced, depending on the number of opt-outs), plus a cooperation

agreement (MDL Doc. 3313-1); and the Sandoz Settlement for $275,000,000 (which may be

reduced by up to $45,000,000, depending on the number of opt-outs), plus a cooperation

agreement (MDL Doc. 3253-2). All four settlements have received this Court's preliminary

approval, and notice of the settlements has been disseminated. MDL Docs. 3020, 3391, 3257,

3699 (preliminary approval Orders of Heritage, Apotex, Sandoz, and Sun/Taro settlements,

respectively).

In sum, EPP Class Counsel have negotiated $533 million in settlements so far. Notably,

each of these settlements equals or exceeds the corresponding amount that DPPs negotiated. It is

exceedingly rare for end payers to achieve larger settlements than direct purchasers, especially in

pharmaceutical antitrust cases. Typically, in antitrust class actions involving pharmaceutical

products, EPPs receive much less than DPPs. *Compare, e.g., In re Suboxone (Buprenorphine*

*Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *7 (E.D. Pa.

Feb. 27, 2024) ($385 million DPP settlement)*, with In re Suboxone (Buprenorphine*

*Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2023 WL 8437034, at *2 (E.D.

Pa. Dec. 4, 2023) ($30 million EPP settlement); *In re Namenda Direct Purchaser Antitrust Litig.*,

462 F. Supp. 3d 307, 309 (S.D.N.Y. 2020) ($750 million DPP settlement), *with In re Namenda*

*Indirect Purchaser Antitrust Litig.*, No. 15-cv-06549-CM-RWL, ECF No. 975 at 1 (S.D.N.Y.

Sept. 16, 2024) ($56,438,000 EPP settlement). EPP Class Counsel were able to achieve these

significant settlement benefits for EPPs because, as described above and in their prior fee

petitions, they have aggressively prosecuted their claims, usually taking a leadership role among

the plaintiff groups in moving the litigation forward.

At this time, EPP Class Counsel respectfully request one-third of the Sun/Taro settlement fund, inclusive of accrued interest, and net of costs, expenses, reservation for ongoing litigation expenses, and service awards. Because the opt-out period has not yet expired, EPPs cannot state with certainty the size of the net settlement fund and, therefore, the exact amount of the fee request. But as described above, EPP Class Counsel estimate that the requested fee will be approximately $64.3 million (plus one-third of accrued interest). Together with their two prior fee petitions, EPP Class Counsel have requested a total fee of approximately $149.4 million, which is 41% of the lodestar that Class Counsel have expended through September 2025. In other words, at this juncture, ***EPP Class Counsel are seeking a lodestar multiplier that is substantially less than one***. *See* Liebenberg Decl., Ex. A.

## III. ARGUMENT

### A.  <u>Class Counsel Are Entitled to a Fair Fee Award</u>

Under Federal Rule of Civil Procedure 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *See also Halley v. Honeywell Int'l, Inc*., 861 F.3d 481, 496 (3d Cir. 2017). The amount of a fee award is within the district court's discretion "so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." *In re AT & T Corp. Sec. Litig.*, 455 F.3d 160, 163–64 (3d Cir. 2006) (internal quotation marks and citation omitted); *accord Suboxone*, 2023 WL 8437034, at *3.

There are generally two methods used by courts to calculate attorneys' fees: the percentage-of-recovery method, which awards a certain percentage of the settlement fund after weighing its reasonableness in light of several factors; and the lodestar method, which multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services. *AT & T*, 455 F.3d at 164. In cases such as this, where a class settlement results in a

common fund, the Third Circuit favors the percentage-of-recovery method "because it allows the court to award fees in a manner that rewards counsel for success and penalizes counsel for failure or waste." *Molloy v. Aetna Life Ins. Co.*, No. CV 19-3902, 2024 WL 290283, at *6 (E.D. Pa. Jan. 25, 2024) (Rufe, J.) (internal quotation marks and citation omitted); *Kirsch v. Delta Dental of New Jersey*, 534 F. App'x 113, 115 (3d Cir. 2013) ("The percentage of recovery method is generally favored in common fund cases.") (internal quotation marks and citation omitted). Courts may also cross-check the percentage award at which they arrive against the "lodestar" award method. *See Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018) (Rufe, J.) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

Here, the percentage-of-recovery analysis weighs in favor of approving EPP Class Counsel's fee request of one-third of the Sun/Taro settlement fund, and it is fully supported by the lodestar cross-check, which indicates that this fee award, in combination with the fee awards that EPP Class Counsel have requested from the Sandoz, Apotex and Heritage settlement funds, will provide only 41% of the $365.5 million in lodestar that EPP Class Counsel have devoted to this litigation.

### 1.    The Percentage Award Requested by Class Counsel is Reasonable

In assessing the reasonableness of a request for attorneys' fees under the percentage-of-recovery method, courts in this Circuit consider the following "*Gunter*" factors:

> (1) [T]he size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, [and] (7) the awards in similar cases.

12

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter*, 223 F.3d at 195 n.1). Courts must also consider the following "*Prudential*" factors:

> (8) [T]he value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*Diet Drugs*, 582 F.3d at 541 (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 338-40 (3d Cir. 1998)). These factors "need not be applied in a formulaic way" because each case is different, "and in certain cases, one factor may outweigh the rest." *Diet Drugs*, 582 F.3d at 545 (internal quotation marks and citations omitted).

Here, all pertinent factors support the requested fee award.

> ### a. The size of the fund created, and the number of beneficiaries, support the requested percentage award.

In awarding fees, "[t]he 'most critical factor' for the Court to weigh is 'the degree of success obtained.'" *In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). To assess this factor, courts consider "the fee request in comparison to the size of the fund created and the number of class members to be benefited." *In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL 2530418, at *24 (E.D. Pa. Mar. 15, 2023) (internal quotation marks and citation omitted). When considering the first *Gunter* factor and evaluating the "size of the fund," courts in the Third Circuit look to the gross value of the settlement, *i.e.,* inclusive of the attorneys' fees and held costs, and notice/administration costs. *See Suboxone*, 2023 WL 8437034, at *14 (citing *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 713 (W.D. Pa. 2015) (noting that "size of the fund" should include attorneys' fees, and administration expenses)).

13

Here, the Sun/Taro Settlement is a sizable $200,000,000 that will benefit a large class consisting of many thousands of class members. The requested attorneys' fees—one-third of the settlement fund, *net* of expenses, reservation for ongoing litigation expenses, and service awards—amounts to approximately $64.3 million (plus interest). Considering the fee request in the context of a percentage of the gross settlement fund, after the estimated reduction due to opt-outs, the "gross" Sun/Taro settlement fund will be approximately $196.5 million. ("Gross" in this context excludes the amount returned due to opt-outs.) The current fee request, therefore, amounts to approximately 32.7% of the gross Sun/Taro settlement fund. And, in combination with EPP Class Counsel's request for fees from the Sandoz, Apotex, and Heritage Settlements (with gross settlement amounts of approximately $239.2 million, $35 million, and $10 million, respectively), the combined gross settlement funds are approximately $480.7 million, and the total fees requested thus far are an estimated 31.1% of the total gross settlement proceeds. That percentage of the total recovery "is well within the range of reasonable fees, on a percentage basis, in the Third Circuit." *Suboxone*, 2023 WL 8437034, at *14 (collecting cases; approving fees representing 33 1/3% of total recovery); *see also Remicade*, 2023 WL 2530418, at *24 (factor favored requested fee where $25,000,000 settlement would benefit thousands of TPPs and consumers); *In re Flonase Antitrust Litig.,* 291 F.R.D. 93, 103 (E.D. Pa. 2013) (factor weighed in favor where attorneys requested one-third of $35,000,000 settlement fund that would be distributed *pro rata* to class members). After deducting expenses, reservation for ongoing litigation expenses, and service awards, the rest of the settlement proceeds will be distributed *pro rata* to settlement class members. MDL Doc. 3630-7 at 1; *id.* ¶ I.D.1. Accordingly, this factor weighs in favor of finding the fee request reasonable.

    *b. No objections to the requested settlement terms and/or fees have been received to date.*

On October 3, 2025 A.B. Data Ltd., the Court-appointed Notice Administrator for the Sun/Taro Settlement disseminated direct notice to TPPs per the Court-approved Notice Plan. MDL Doc. 3699 ¶¶ 8-17. The Notice disclosed that EPP Class Counsel would be seeking "an award of attorneys' fees, not to exceed one-third of the Sun/Taro settlement fund (including interest accrued thereon)" and promised that this fee petition would be posted on the Settlement Website, which it has been. Sun/Taro Settlement Notice, Question 20 (available at https://genericdrugsendpayersettlement.com/sun-taro-classes-notice) [hereinafter "Notice"]. The deadline for objections to the Sun/Taro Settlement is December 2, 2025. EPP Class Counsel will provide detailed information regarding any objections received, and responses thereto, in EPPs' motion for final approval of the Sun/Taro Settlement, to be filed by January 2, 2025. MDL Doc. 3699 ¶ 25.

    *c. The skill and efficiency of the attorneys involved supports the requested percentage award.*

In evaluating the third *Gunter* factor, courts look to the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Viropharma*, 2016 WL 312108, at *16 (internal quotation marks and citation omitted). The "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Flonase*, 291 F.R.D. at 104 (internal quotation marks and citation omitted). As recognized by the Third Circuit, when class counsel's efforts result in a settlement, those efforts should be rewarded. *Gunter*, 223 F.3d at 198 (awarding fees to "settle [a] complicated matter" serves "the stated goal in percentage fee-award

cases of ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation") (internal quotation marks and citation omitted).

Here, EPP Class Counsel have many decades of experience representing antitrust plaintiffs like the EPP classes here. Relying on that experience over the past nine years, EPPs have been able to navigate their claims through motions to dismiss, discovery, class certification, briefing and oral arguments on summary judgment, pre-trial proceedings, and the negotiation of four settlements amounting to $533,000,000. This was no easy feat, given the number of defendants, drugs at issue, and the complexities of the generic pharmaceutical industry. Indeed, the favorable settlements obtained here are attributable to the diligence, determination, hard work and skill of EPP Class Counsel. Accordingly, the third factor weighs in favor of approval of the requested fee.

> #### d. The complexity and duration of the litigation supports the requested percentage award.

The fourth factor "is intended to capture 'the probable costs, in both time and money, of continued litigation.'" *In re Cigna American Specialty Health Admin. Fee Litig*., No. 16-cv-03967, 2019 WL 4082946, at *13 (E.D. Pa. Aug. 29, 2019) (quoting *In re Gen. Motors Corp. Pick- Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 812 (3d Cir. 1995)). "'[C]omplex and/or novel legal issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the [case] by class counsel' are factors which 'increase the complexity of class litigation.'" *Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 06-cv-1833, 2020 WL 1922902, at *29 (E.D. Pa. Apr. 21, 2020) (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 741 (3d Cir. 2001)).

As the Court well knows, this case has been pending for nine years. Because it is an antitrust class action, it is inherently complex. *See McDonough v. Toys "R" Us, Inc.*, 80 F. Supp.

3d 626, 640 (E.D. Pa. 2015) ("Antitrust class actions are particularly complex to litigate and therefore quite expensive."); *Flonase*, 291 F.R.D. at 99 (same); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 WL 5467530, at *4 (E.D. Pa. Nov. 9, 2012) ("[A]ntitrust class action litigation is complex, and, especially at its early stages, inherently rife with risk and unpredictability in terms of ultimately prevailing to establish liability and damages and achieve class certification."); *In re Linerboard Antitrust Litig.*, 296 F.Supp.2d 568, 577 (E.D. Pa. 2003) ("An antitrust class action is arguably the most complex action to prosecute") (internal quotation marks and citation omitted). This particular antitrust class action is more complex than most, given that it involves sophisticated drug pricing mechanisms, 197 drugs at issue, and dozens of defendant families. Therefore, the fourth factor weighs in favor of approval of the requested fee.

### e. The risk of nonpayment supports the requested percentage award.

"Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval." *Cigna*, 2019 WL 4082946, at *13 (internal quotation marks and citation omitted); *see also Suboxone*, 2023 WL 8437034, at *15. EPP Class Counsel undertook this action on an entirely contingent basis, and for the better part of a decade, they have shouldered the substantial risk that this litigation would yield no recovery and leave them wholly uncompensated for their substantial investment of time, as well as for their significant out-of-pocket expenses. At no point was success guaranteed. Defendants have mounted a tenacious defense, and although EPPs and their counsel have confidence in EPPs' claims, were they able to bring their claims against Sun/Taro to trial and succeed, the EPPs still would face a substantial likelihood of challenge on appeal. The fifth factor therefore weighs in favor of approval of EPPs' requested fee. *See AT & T*, 455 F.3d at 171 (affirming fee award where "[h]aving accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award, Lead Counsel nonetheless maintained vigor

and dedication throughout.") (internal quotation marks and citation omitted); *Vista Healthplan*, 2020 WL 1922902, at *29 (factor favored fee award where "[e]ven in the event of recovery, the EPPs faced the substantial likelihood of challenge on appeal").

> f. *The amount of time devoted to the case by Plaintiffs' counsel supports the requested percentage award.*

As detailed in the Liebenberg Declaration, Class Counsel have expended hundreds of thousands of hours investigating, litigating, and resolving cases in this MDL. *See* Liebenberg Decl. ¶ 7 & Ex. A.[4] And, as described in Section II above, Class Counsel continue to diligently prosecute the class's claims. Unlike many other pharmaceutical antitrust cases that involve only one drug, EPPs' cases here include nearly 200 drugs. Unlike many other antitrust cases in general, this case involves not just a handful of defendants but dozens of defendant families. The size and scope of this case have necessitated a significant dedication of attorney resources. At all times, EPP Class Counsel performed their work with skill and efficiency and with the best interest of the EPP classes in mind. This factor thus strongly favors an award of the requested fee. *See Suboxone*, 2023 WL 8437034, at *16 ("Such expenditure of [112,000 hours] at such great risk warrants the requested thirty-two percent fee award.").

---

[4] The Liebenberg Declaration (submitted herewith) summarizes the quantity and kind of work performed by EPP attorneys. *See* Liebenberg Decl. ¶ 7 & Ex. A. If the Court requests them, EPPs can furnish detailed, daily time records, but "[i]n large cases, especially one of prodigious proportions like this, reliance on summaries is certainly within the discretion of the district court." *Diet Drugs,* 582 F.3d at 539. *See also In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306-07 (3d Cir. 2005) ("The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (citing *Prudential,* 148 F.3d at 341-42 (finding no abuse of discretion where district court relied on time summaries, rather than detailed time records)). If the Court wishes to see the detailed time records, Class Counsel would request to submit them *in camera* so that the Defendants are not given an unfair look into Class Counsel's work product and strategies.

*g. The fee request is comparable to awards in similar cases.*

"While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund. Courts have consistently approved such awards." *Vista Healthplan,* 2020 WL 1922902, at *30 (collecting cases) (internal quotation marks and citation omitted); *Cigna,* 2019 WL 4082946, at *14 (same).

Here, EPPs are seeking a one-third fee award, which is standard in complex antitrust cases, and reasonable given the size of the recovery and extraordinary effort EPPs have expended in these matters. *See Flonase,* 291 F.R.D. at 104 ("A one-third fee award is standard in complex antitrust cases of this kind. Indeed, a one-third award is consistent with awards in other complex antitrust actions involving the pharmaceutical industry.") (internal quotation marks and citation omitted) (collecting cases); *Vista Healthplan*, 2020 WL 1922902, at *31 (awarding 33 1/3% of the $66 million settlement fund); *In re Fasteners Antitrust Litig*., No. 08-md-1912, 2014 WL 296954, at *2, 3 (E.D. Pa. Jan. 27, 2014) (awarding one-third of $17.55 million settlement fund); *In re Remeron Direct Purchaser Antitrust Litig.,* No. 03-cv-0085, 2005 WL 3008808, at *15 (D. N.J. Nov. 9, 2005) (awarding 33 1/3% of $75 million settlement fund; "A one third fee from a common fund has been found to be typical by several courts within this Circuit which have undertaken surveys of awards within the Third Circuit and others."); *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 82 (D. Mass. 2005) (awarding 33.33% of $175 million settlement); *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15-cv-06549-CM-RWL, ECF No. 967 at 16 (S.D.N.Y. Mar. 23, 2023) (awarding 33 1/3% of $56,438,000 settlement); *N. Shore Hematology-Oncology Assocs. v. Bristol-Myers Squibb Co*., No. 04-cv-248, 2004 WL 7348048, at *3 (D.D.C. Nov. 30, 2004) (awarding 33 1/3% of $50 million settlement fund).

Moreover, "there is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizable fund." *AT & T*, 455 F.3d at 174 (internal quotation marks and citation omitted). To the contrary, courts within this District have refused to "reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 194, 196 (E.D. Pa. 2000). This is consistent with Third Circuit jurisprudence directing that "the declining percentage concept does not trump the fact-intensive *Prudential/Gunter* analysis." *AT & T,* 455 F.3d at 174 (internal quotation marks and citation omitted). The seventh factor therefore weighs in favor of approval of the requested fee.

> ### h. The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups supports the requested percentage award.

As the Court knows, EPPs have taken the lead or played a principal role in *every* significant aspect of this MDL, often to the benefit of all plaintiff groups. And while it is true that DOJ and the States conducted investigations into the generic pharmaceutical industry, this was far from a copycat case. Of the 18 single-drug cases in this MDL, 17 were originated by EPPs and/or DPPs, while only one (Glyburide) was a follow-on to a case filed by the States. In addition, EPPs' complaints named all of the largest and most central Defendants, including Mylan, Sandoz, Taro and Teva, before the States did. As in *Diet Drugs*, EPP Class Members' recoveries "[are] due to the 'herculean efforts' of [Class Counsel]—in developing the case against [the defendant]" and "in negotiating an agreement that allowed [the defendant] to resolve the claims against it." 582 F.3d at 544.

Here, as a result of Class Counsels' efforts, EPPs were able to negotiate  $200 million in settlement with Sun/Taro—in addition to the $333 million in settlements with Sandoz, Apotex, and Heritage. In addition, each of the settlement agreements incorporates an invaluable

cooperation agreement from the settling Defendants. This is a remarkable result that benefits all EPP class members. The eighth factor weighs heavily in favor of the requested fee.

> i. *The percentage-of-recovery is comparable to the fee that would have been negotiated in the private market.*

The Third Circuit Court of Appeals has stated that the requested fee should be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *In re AT & T*, 455 F.3d at 165. This is because "the goal of the fee setting process [is] to determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order." *Vista Healthplan,* 2020 WL 1922902, at *31 (internal quotation marks and citation omitted).

Here, EPP Class Counsel's request for one-third of the net settlement fund is well within the range of customary percentages in private contingent fee agreements. *See Suboxone*, 2023 WL 8437034, at *17 ("'[I]n private contingency fee cases … plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.'") (quoting *Ikon*, 194 F.R.D. at 194); *Vista Healthplan*, 2020 WL 1922902, at *31 (same); *Cigna,* 2019 WL 4082946, at *14 (same); *Harshbarger v. Penn Mut. Life Ins. Co*., No. 12-6172, 2017 WL 6525783, at *5 (E.D. Pa. Dec. 20, 2017) (same); *McDonough,* 80 F. Supp. 3d at 655 (same). Accordingly, this ninth factor also weighs in favor of approval of the requested fee.

> j. *Innovative terms within the settlement agreements support the requested percentage award.*

"In certain cases, a district court may find that class counsels' representation and the results achieved [by the settlement agreement] were nothing short of remarkable." *Vista Healthplan,* 2020 WL 1922902, at *31 (internal quotation marks and citation omitted). "Such a finding may be warranted where a settlement involved 'innovative' or unique terms." *Id.*

21

Here, EPPs' Sun/Taro Settlement has several features that are innovative in a settlement of these types of claims. First, there is an absence of a blow provision. This means that regardless of the number of class members who opt out of the settlement, the settlement will not be terminated. Second, the opt-out reduction calculation is such that the more opt-outs there are, the more each remaining class member gets (*i.e.*, the reduction is less than proportional). Third, those requesting to opt out are not being required to submit transactional data regarding the drugs at issue because Sun/Taro and EPPs have devised a more efficient method for determining the opt-out reduction. This factor, therefore, weighs in favor of the requested fee.

      2.   The Lodestar Cross-Check Confirms That the Percentage Award Requested by Class Counsel is Reasonable

The Third Circuit has "recommended that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." *AT & T*, 455 F.3d at 164. "The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services." *Id*. "The crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *Id.* This "need not entail 'mathematical precision' or 'bean-counting.'" *Id.* at 169 n.6. Cross-checking involves only an "abridged lodestar analysis," *Cigna,* 2019 WL 4082946, at *14, and "not a full-blown lodestar inquiry." *AT & T*, 455 F.3d at 169 n.6 (internal quotation marks and citation omitted).

"The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work. . . . Accordingly, when used as a cross-check in a common fund case, the lodestar calculation can be adjusted to account for particular circumstances, such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risks involved." *Id.* at 164 n.4 (internal quotation marks and citation omitted).

"[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Prudential,* 148 F.3d at 341 (citing 3 NEWBERG ON CLASS ACTIONS § 14.03 at 14-15 (3d ed. 1992)). However, the "lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT & T,* 455 F.3d at 164. Indeed, the lodestar multiplier "need not fall within any pre-defined range, provided that the District Court's analysis justifies the award." *Id.* at 172-73 (internal quotation marks and citation omitted).

Here, EPPs' lodestar from inception through September 2025 at historical billing rates is $365.5 million and represents over 717,000 hours of professional work over the course of almost a decade. *See* Liebenberg Decl., Ex. A. In this unique case, where there are nearly two hundred drugs at issue, dozens of Defendants that have produced tens of millions of documents and more than 100 witnesses for deposition, class representatives that have been required to respond to extensive discovery themselves, and countless hard-fought disputes, the significant amount of time and effort EPPs have expended is reasonable.

Moreover, EPPs' lodestar is much larger than the requested fee of one-third of the net settlement fund, and the present fee request, in combination with the fees requested from the Sandoz, Apotex and Heritage settlement funds, translates into a multiplier of only 0.41—far less than even a multiplier of 1.0. "Where the lodestar is greater than the requested fee award . . . the court may dispense with a cross-check." *Glaberson v. Comcast Corp.,* No. 03-cv-6604, 2015 WL 5582251, at *14 (E.D. Pa. Sept. 22, 2015); *see also Fleisher v. Fiber Composites, LLC,* No. 12-cv-1326, 2014 WL 866441, at *15 (E.D. Pa. Mar. 5, 2014) ("Where, as here, counsel requests a fee that represents less than their lodestar, there is no need to discuss multipliers and the appropriateness of an increase to the lodestar.") (internal quotation marks and citation omitted);

*Flonase,* 291 F.R.D. at 106 ("A negative multiplier strongly underscores the risk counsel accepted to prosecute this case to trial. . . . The lodestar crosscheck therefore provides additional support for approving the attorneys' fees request."). A lodestar cross-check, therefore, supports the reasonableness of EPPs' requested fee of one-third of the net settlement fund.

### B.  The Expenses Requested by Class Counsel Are Reasonable

"In the Third Circuit, it is standard practice to reimburse litigation expenses in addition to granting fee awards." *McDonough*, 80 F. Supp. 3d at 658 (citing *AT & T*, 455 F.3d at 169). *See also Ikon*, 194 F.R.D. at 192 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . .  reasonable litigation expenses from that fund.") (internal quotation marks and emphasis deleted; citation omitted).

Early in this MDL, this Court entered Pretrial Order No. 8, specifying appropriate categories of common benefit expenses. See Pretrial Order No. 8 ("PTO 8") at 3-6. As explained in the attached Liebenberg Declaration, EPPs have incurred and continue to incur reasonable expenses that are consistent with the framework outlined in PTO 8, including: deposition and court reporter costs; costs for electronic storage, retrieval, and searches of ESI; Court filing and service costs; expert witness and consultant fees and expenses; and data and materials provided by outside third-party vendors. *See* Liebenberg Decl. ¶¶ 12-16 & Ex. B; *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014) (finding reasonable expenses to include "mediation costs, court filing fees, hearing transcripts, experts, online research, messenger service, postage, express mail, telephone expenses, transportation, travel and other incidental expenses"); *Mehling v. New York Life Ins. Co*., 248 F.R.D. 455, 466 n.21 (E.D. Pa. 2008) (finding the following types of out-of-pocket expenses compensable: "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express services, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court

24

and witness fees, (9) overtime and temp work, (10) postage, [and] (11) the cost of hiring a mediator") (internal quotation marks and citation omitted).

As provided in Exhibit B to the attached Liebenberg Declaration, from January 2025 through September 2025, EPP Class Counsel advanced $304,954.99 in expenses for the benefit of the Class. These expenditures have been reasonably necessary to litigate EPPs' claims in this MDL and to obtain settlements. The vast majority of the expenses were for experts and for notice of the certified litigation classes.[5]

In addition, EPP Class Counsel requests that $3,000,000 of the settlement fund be reserved for the payment of ongoing litigation expenses, to be withdrawn as needed. EPP Class Counsel will maintain a detailed accounting of the amount and purpose of those expenses, and will make those details available to the Court upon request or in a future fee petition. The funds will be used for necessary expenses as EPPs continue to litigate this enormous set of cases. *See* Liebenberg Decl. ¶ 17; *In re Auto. Refinishing Paint Antitrust Litig.*, No. 2:10-md-1426, ECF No. 136 (E.D. Pa. Oct. 13, 2004) ("An amount of $1,000,000 shall be set aside for expenses incurred in the continuing prosecution of this litigation, as well as expenses related to the administration of the Settlement Fund."); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2024 WL 1683640, at *5 (N.D. Cal. Apr. 17, 2024) (granting request for future expenses of $3.4 million (entire settlement amount)); *Newby v. Enron Corp.*, 394 F.3d 296, 302 (5th Cir. 2004) (overruling objections to create a $15 million Litigation Expense Fund from a $40 million settlement).[6] These amounts are within the range disclosed in the Notice to the

---

[5] Some of the expense categories in Exhibit B to the Liebenberg Declaration reflect a credit (*i.e.*, a negative number) because EPPs have netted some credits and corrections from previous submissions against the expenses sought in this one.

[6] *See also In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015), *aff'd*, 701 F. App'x 554 (9th Cir.

settlement class members. *See* Notice at Question 20 (informing settlement class members that EPP Class Counsel would seek "reimbursement of litigation expenses, plus an additional amount for future expenses in further litigation against the remaining Defendants (up to $4,000,000 for past and future expenses)"). Because these expenses are for the common benefit of the settlement class, are reasonable in amount, and are adequately supported by documentation in EPPs' possession, EPPs respectfully request reimbursement of $304,954.99 for expenses and reservation of $3,000,000 for ongoing litigation expenses from the Sun/Taro settlement fund.

### C.  The Service Awards Requested Are Reasonable

"Courts recognize the purpose and appropriateness of service awards to class representatives." *Glaberson,* 2015 WL 5582251, at *16 (citations omitted). "Incentive awards are not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class." *Flonase,* 291 F.R.D. at 106 (internal quotation marks and citation omitted); *McDonough,* 80 F. Supp. 3d at 665 (internal quotation marks and citation omitted).

"As a matter of practice, courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Flonase,* 291 F.R.D. at 106 (internal quotation marks and citation omitted). This is because courts recognize "that there would be no benefit to the Settlement Class

---

2017) (overruling objection to create a $3 million "future litigation fund" from a $39.5 million settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig*., No. 07-1827 SI, ECF No. 2474 (N.D. Cal. Feb. 17, 2011) (granting motion to advance $3 million in future litigation expenses from settlement fund and held that the "advanced litigation funds will benefit direct purchaser class members by assisting Class Counsel to prosecute this case effectively"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig*., No. 02-md-01486, ECF No. 1315 (N.D. Cal. Feb. 14, 2007) (authorizing the disbursement of $2 million from two settlement funds for the advancement of litigation expenses)*.

Members if Plaintiffs had not stepped forward and prosecuted this matter to the current resolution." *Cigna,* 2019 WL 4082946, at *16; *Harshbarger,* 2017 WL 6525783, at *7.

"Factors to be considered when deciding to give incentive awards include the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class." *Vista Healthplan,* 2020 WL 1922902, at * 33 (internal quotation marks and citation omitted).

Here, Class Counsel requests incentive awards in the amount of $30,000 for each of the TPP Settlement Class Representatives[7] and $5,000 for each of the Consumer Settlement Class Representatives.[8] (The court already has granted service awards once, and the total award to each Settlement Class Representative, if this request is granted, will be $60,000 for each TPP representative and $10,000 for each Consumer representative.) As in *Vista Healthplan,* the Class

---

[7] The TPP Sun/Taro Settlement Class Representatives are 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; and United Food & Commercial Workers and Employers Arizona Health & Welfare Trust. Order Granting Preliminary Approval ¶ 5 (MDL Doc. 3699).

[8] The Consumer Sun/Taro Settlement Class Representatives are Ottis McCrary; Valerie Velardi; and Robby Johnson. *Id.*

Representatives "provided significant assistance to the case." 2020 WL 1922902, at * 33. Namely, all of the Sun/Taro Settlement Class Representatives reviewed the Complaints and other substantive pleadings relevant to their claims, responded to written discovery, produced documents, actively monitored the litigation, and reviewed and approved the Sun/Taro Settlement; and over half of all Sun/Taro Settlement Class Representatives have prepared for and sat for deposition. *See* Liebenberg Decl. ¶¶ 18-21.

The sum of service awards requested here is $405,000 and is within the amount set forth in the settlement notice. *See* Notice, Question 20 ("Settlement Class Counsel intend to move for . . . service awards of up to $500,000 in total to be paid to Settlement Class Representatives who worked on behalf of the entire EPP Sun/Taro Settlement Class to achieve the results of the Settlement."). Moreover, they are consistent with service awards that Courts in this Circuit and elsewhere have awarded in litigation much smaller and less complicated than the one here. *See e.g., Vista Healthplan*, 2020 WL 1922902, at *33 (granting $50,000 service awards to each of four TPP plaintiffs) (collecting cases); *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437, 2018 WL 3439454, at *17, 20 (E.D. Pa. July 17, 2018) (awarding $50,000 and $40,000 service awards to each of two named plaintiffs); *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (approving service awards ranging from $100,000 to $140,000 for each named plaintiff).

Likewise, the awards requested for Consumer Settlement Class Representatives are consistent with what courts within the Third Circuit have awarded to individual persons in antitrust class actions. *See*, *e.g.*, *In re Railway Industry Employee No-Poach Antitrust Litig.*, No. 18-798 (W.D. Pa. Aug. 26, 2020) ECF 313 ¶4 ($15,000 service award to each plaintiff); *Vista Healthplan*, 2020 WL 1922902, at *33 ($15,000 service award to consumer class representative).

28

Though the size of the Consumer representatives' service awards is less than that of the TPP representatives, it is justified, given that they were not subject to extensive ESI searches, and they produced a much smaller volume of documents and transactional data than the TPP representatives. *See* Liebenberg Decl. ¶¶ 21-22; *Vista Healthplan*, 2020 WL 1922902, at *33 (noting that "the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities" is a factor to consider when deciding whether to approve service awards) (internal quotation marks and citation omitted); *Alin v. Honda Motor Co*., No. 08-cv-4825, 2012 WL 8751045, at *16 (D.N.J. Apr. 13, 2012) ("It is not unusual for representative plaintiffs to receive different incentive awards when their degree of participation is different.").

Accordingly, because the Settlement Class Representatives' contributions have benefited the entire EPP Class, EPPs respectfully submit this request for service awards of $30,000 for each TPP representative and $5,000 for each Consumer representative to be paid from the Sun/Taro Settlement Fund.

## IV.  CONCLUSION

For the foregoing reasons, EPP Class Counsel respectfully request that the Court grant their Motion; approve their request for an award of one-third of the net Sun/Taro settlement fund as attorneys' fees; approve their request for $304,954.99 in reimbursement of expenses advanced for the benefit of the class; approve their request to reserve $3,000,000 of the Sun/Taro settlement fund for ongoing litigation expenses; and approve their request for $405,000 in service awards.

Dated: November 3, 2025

Respectfully submitted,

/s/ Roberta D. Liebenberg
Roberta D. Liebenberg
FINE, KAPLAN AND BLACK, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com

*Lead and Liaison Counsel for End-Payer Plaintiffs*