**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724 |
| | 16-MD-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *All End-Payer Plaintiffs' Actions* | |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYER PLAINTIFFS'
MOTION FOR RELIEF WITH RESPECT TO FALSE
AND MISLEADING COMMUNICATIONS TO CLASS MEMBERS
<u>BY CLAIMS RECOVERY FIRMS</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    BACKGROUND ........................................................................................................3

III.    ARGUMENT ........................................................................................................12

     A.     The Court Has Broad Authority to Protect Class Members From
               False and Misleading Communications Regarding the Settlement
               Class Process ........................................................................................12

     B.     The Remedies Class Counsel Seek Are Appropriate ...........................................14

             1.     Curative Notice ........................................................................15

             2.     Require Identification of Class Members Solicited .................................17

             3.     Invalidation of Opt Out Requests ...........................................18

             4.     Court Supervision of Future Communications .........................................19

IV.    CONCLUSION ........................................................................................................21

i

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*Chalian v. CVS Pharmacy, Inc.*,
   No. 16-cv-8979, 2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) ................................. 14

*County of Santa Clara v. Astra USA, Inc.*,
   No. 05-3740, 2010 WL 2724512 (N.D. Cal. July 8, 2010) ...................................... 12

*Erhardt v. Prudential Grp., Inc.*,
   629 F.2d 843 (2d Cir. 1980) ..................................................................... 13

*Fox v. Saginaw Cnty., Michigan*,
   35 F.4th 1042 (6th Cir. 2022) ............................................................. 12, 16

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ................................................................................ 12

*Haffer v. Temple Univ.*,
   115 F.R.D. 506 (E.D. Pa. 1987) ................................................................. 15

*In re Cmty. Bank of N. Virginia*,
   418 F.3d 277 (3d Cir. 2005) ................................................................... 2, 12

*In re JUUL Labs, Inc., Mktg. Sales Pracs., & Prods. Liab. Litig.*,
   No. 19-md-02913, 2023 WL 6205473 (N.D. Cal. Sept. 19, 2023) .............. 15, 17, 18

*In re Lutheran Bhd. Variable Ins. Prods. Co.*,
   No. 99-MD-1309PAMJGL, 2002 WL 1205695 (D. Minn. May 31, 2002) ............ 17

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1239 (N.D. Cal. 2000) .................................. 12, 14, 15, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   706 F. Supp. 3d 365 (E.D.N.Y. 2023) ................................................. 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   754 F. Supp. 3d 319 (E.D.N.Y. 2024) .................................... 14, 15, 16, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   No. 05-md-1720, 2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) ........................ passim

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
   778 F. Supp. 3d 539 (E.D.N.Y. 2025) ................................................... 2

*In re Sch. Asbestos Litig.*,
    842 F.2d 671 (3d Cir. 1988) ....................................................................... 16

*In re Visa Check/Mastermoney Antitrust Litig.*,
    No. CV-96-5238, 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006) ................................. 13, 14, 16

*In the Matter of VMS Ltd. Partnership Sec. Litig.*,
    138 F.R.D. 102 (N.D. Ill. 1991) ................................................................. 19

*Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*,
    No. Civ. A. 81-0436, 1985 WL 25746 (D.D.C. Oct. 10, 1985)................................. 17

*McWilliams v. Advanced Recovery Sys., Inc.*,
    176 F. Supp. 3d 635 (S.D. Miss. 2016) .......................................................... 17

*Quezada v. Schreider Logistics Transloading & Distrib.*,
    No. CV 12-2188, 2013 WL 1296761 (C.D. Cal. March 25, 2013) ......................... 20

*Ready-Mixed Concrete Antitrust Litig.*,
    2008 U.S. Dist. LEXIS 95360 (S.D. Ind. Nov. 21, 2008) ................................... 17

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*,
    No. 12-cv-944, 2016 WL 4080294 (N.D. Cal. July 29, 2016) ............................... 12

*Stark v. Patreon, Inc.*, No-22-cv-03131,
    2025 WL 1592736 (N.D. Cal. June 5, 2025)........................................... passim

*Taylor v. Shippers Transp. Express, Inc.*,
    No. CV 13-02092, 2014 WL 12561036 (C.D. Cal. July 8, 2014)........................... 20

**Statutes**

28 U.S.C. § 1651(a) ........................................................................................ 2, 13

**Rules**

Federal Rule of Civil Procedure 23(d) ........................................................... 2

**Other Authorities**

*Manual for Complex Litigation, Fourth* §§ 21.323, 21.33 ....................................... 13, 15

## I.    INTRODUCTION

The claims process has not yet begun with respect to the End-Payer Plaintiffs' ("EPPs") settlements with Apotex, Heritage, Sun/Taro, and Sandoz. Yet certain so-called "claims recovery firms" are soliciting EPP Class members to enter into contracts to "recover" money from the settlements in exchange for a share of the class members' settlement payments. Their extensive marketing campaigns, websites, social media postings, and emails are rife with false and misleading statements and material omissions. For example, one of them promises class members a chance to share in a *$600 billion* fund, which it says is part of a government program, not a class action. Another says it "has been selected to assist in processing and verifying claims related to a landmark settlement involving 45+ Drug Manufacturers and PBMs." Many of the solicitations create a false sense of urgency by warning EPP class members they must act imminently before fictitious deadlines. The claims recovery firms also misrepresent that they are working with lawyers who are part of the MDL, but the only law firm named in any of the solicitations has nothing to do with the MDL.

It also appears that at least one "recovery" firm entices class members to retain its services to obtain huge sums of money that "are being made available" to them, yet one of its representatives has apprised EPP Class Counsel that it intends to exclude class members from the EPP settlements.

None of the solicitations mention the Court-approved Notices, EPP settlements website, or the identities of Lead Counsel or the Claims Administrator, *i.e.*, the official sources of actual information about the settlements and this MDL. As a result of these false and misleading solicitations, many class members are confused and a number of them have reached out to Lead Counsel for guidance. *See* Declaration of Roberta D. Liebenberg at ¶¶ 3-5. ("Decl.").

1

These deceptive schemes subvert the carefully crafted and Court-approved Notices and claims process. They also threaten to prevent class members from receiving the full settlement amounts they could receive simply by filing claims themselves (or through their ASO's), once the claims process gets underway. Also, to the extent that the solicitations are intended to induce class members to opt out, they may be misled into giving up their right to recover from the EPP settlements entirely.

As discussed more fully below, a number of courts have ordered corrective action where, as here, claims recovery firms have made false and misleading communications to class members. *See, e.g., In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 778 F. Supp. 3d 539, 544-45 (E.D.N.Y. 2025) ("It is clear to the Court that the overwhelming majority of the members of the merchant class need protection from overreaching claims filing services" and "the Court has sought to proactively protect class members from deception."). The Third Circuit has stressed that a District Court has "authority over the class action settlement process. Misleading communications by soliciting counsel have a detrimental effect on the class notice procedure and, therefore, on the fair administration of justice." *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 311 (3d Cir. 2005).

Pursuant to Federal Rule of Civil Procedure 23(d), the All Writs Act (28 U.S.C. § 1651(a)), and ample precedent, this Court should exercise its broad power to protect class members from claims recovery firms seeking to enrich themselves by misleading class members about the settlements and the claims process, which has not yet begun or even been presented to the Court.

EPPs respectfully request that the Court issue an Order that the claims recovery firms and individuals identified below be required to (1) provide to EPP Lead Counsel a list of names and

contact information for all persons and entities they have contacted about this litigation and the settlements; (2) disclose to EPP Lead Counsel all of their marketing efforts, including all written, electronic and oral communications concerning this litigation and the settlements, all websites they have established, and all social media posts they have made regarding this litigation and the settlements; (3) post corrections to all of the false, deceptive, and misleading statements and material omissions concerning this litigation and the settlements in their marketing materials, websites, and social media posts; (4) submit any proposed future communications or proposed statements on social media posts or websites concerning this litigation and the settlements to the Court for its review and approval at least fourteen (14) days before dissemination or posting on the Internet; and (5) state in their communications, websites, and social media posts about this litigation and the settlements that the claims process has not yet begun, class members need not sign up for a third-party service to participate in settlements, and no-cost assistance in filing claims will be made available from the Claims Administrator and EPP Lead Counsel. In addition, the Court should (a) direct the Claims Administrator to send curative notice to all affected EPP class members at the expense of the claims recovery firms; (b) allow any EPP class member who has entered into a contract with a claims recovery firm to rescind that contract, and direct the Claims Administrator to notify all such class members of this right, at the recovery firms' expense; and (c) invalidate all opt-out requests submitted on behalf of EPP class members by the claims recovery firms, and direct the Claims Administrator to notify any affected class members that they may opt-out within fifteen (15) days after receipt of curative notice.

## II.    BACKGROUND

The Court certified settlement classes in connection with EPP settlements with Sandoz (ECF 3257 & 3706), Apotex (ECF 3391), Heritage (ECF 3020), and Sun/Taro (ECF 3699). In the same Orders, the Court appointed Lead Counsel and Class Representatives for the EPP

Settlement Classes. In addition, after careful review, the Court approved the forms of Notice and appointed claims administrators to disseminate the Notices pursuant to Court-approved notice plans. *See* ECF Nos. 3257 (Sandoz), 3392 (Heritage and Apotex); and 3699 (Sun/Taro).

Recently, EPP Class Counsel learned that certain so-called "claims recovery firms" have engaged in a solicitation campaign directed at EPP class members, even though the claims process has not yet begun. These solicitations appear to be coming from several different sources, but given the similarity of the misrepresentations, material omissions, and shared use of unusual terms (*e.g.*, "attorney consortium"), they may be coordinated. EPP Class Counsel are aware of misleading and deceptive solicitations by the following individuals or entities (the "claims recovery firms"):

- Mark Hoffman of Lightwave Solutions, Inc.

- David Grossman, Esq. of  Grossman & Kelly, LLP, a self-described "recovery law firm" that is working with Lightwave Solutions and Pearl Logic, Inc.

- Shaynaz Malleck

- Pearl Logic, Inc.

- Christine Anderson of Pearl Logic

- Christine Pierce of Pearl Logic

- Keith Anderson of Pearl Logic

- Barry Rowley of Pearl Logic

- Nelson Griswold of NextGen Benefits Network and Bottom Line Solutions, Inc.

- Andy Crawford of ENV Technologies and Pearl Logic

- Innovation Programs LLC

- Gerald F. Blaum of Innovation Programs

- Acrutiv | Hudson Planning Group

The marketing materials, websites, social media posts, and emails disseminated by these claims recovery firms make numerous false, misleading and materially incomplete statements about this MDL, EPP Class Counsel, and how class members can recover from the settlement funds. For example, one solicitation from Lightwave Solutions claims that EPP Lead Counsel (referred to as "the law firm consortium") is prohibited from "advertis[ing]" or contacting absent class members about the EPP settlements; therefore, the solicitation claims, Lead Counsel has "outsourced" to Lightwave Solutions the work of reaching out to class members "to sign up for this fund's payout." Decl. Ex. A (10/23/2025 Hoffman email). Pretending that it is working directly with EPP Lead Counsel, Lightwave Solutions presents a deceptive sense of urgency by falsely stating that class members have only until "December 1" to sign a contract with Lightwave Solutions[1] and then be added to the "last" amended complaint, suggesting that failure to hire the claims recovery firm will mean forfeiting any payment from the EPP settlement funds:

> The deadline to sign up for this is now December 1st, 2025. The consortium believes the case is close to settlement, with $250,000,000 already offered for just 5 of the many hundreds of drugs involved, as an opening offer. They will file a mass amendment to their complaint to list all new clients on that day, and that will be the last time that they are planning on amending the complaint to add new clients for generic drugs.

*Id. None of this is true.* There is no December 1 deadline, no settlement or "opening offer" that involves "just 5" drugs, no forthcoming amendment to any complaint. Indeed, there is no need for any class member to do anything at this time.

---

[1] *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2014 WL 4966072, at *25 (E.D.N.Y. Oct. 3, 2014) (finding that claims recovery firm engaged in a false and deceptive solicitation campaign, including the creation of a misleading sense of "urgency" "by the mention of a [claims] deadline–even though there was (and remains) no such deadline"; and ordering remedies).

Lightwave Solutions appears to be working with attorney David Grossman.[2] The above-described solicitation from Lightwave was sent with attachments, including a "Master Subrogation Agency Agreement" (Decl. Ex. B), a Grossman & Kelly LLP "Legal Services Contract" (Decl. Ex. C), and a PowerPoint presentation entitled "Price Fixing Litigation and Cost Recovery Program" that appears to have been created by Grossman & Kelly (Decl. Ex. G). Pursuant to the Legal Services Contract, Grossman & Kelly would receive 30% of all gross amounts a client recovered, plus expenses (Decl. Ex. C ¶ 1). Further, an additional 3% of a client's gross recovery would be paid to Lightwave Solutions (the so-called subrogation "Agent") (*Id.* ¶ 4). Mr. Grossman has also been working with another claims recovery firm, Pearl Logic, whose false and deceptive solicitations are discussed below. (Decl. ¶ 14).[3]

This false solicitation from Lightwave Solutions and others like it from other claims recovery firms conflate this MDL, which involves allegations of price-fixing by dozens of generic drugs manufacturer defendants, and *In re Insulin Pricing Litigation*, MDL 3080 (D.N.J.), which involves allegations of unfair business practices by three brand name drug manufacturers (Eli Lilly, Novo Nordisk, and Sanofi) and several pharmacy benefit managers. *See* Decl. Ex. K at

---

[2] On his LinkedIn profile, Grossman represents that he is a partner at Grossman & Kelly LLP and Kelly & Grossman, as well as Proprietor of David Grossman & Associates. (Decl. Ex. D). On its website, Kelly & Grossman claims to be the "Top Nursing Home Neglect Attorneys in New York." (Decl. Ex. E) [from https://kellyandgrossman.com/, last visited Nov. 9, 2025]. David Grossman & Associates claims as a practice area "Antitrust: Generic Drug Price Fixing," accompanied by a description that claims, among other false statements, "The drug manufacturers already plead guilty. [sic] The courts will soon decide on a final date for healthcare plans to file cases." (Decl. Ex. F). [from https://davidgrossmanandassociates.com/practice_area#sample2, last visited Nov. 9, 2025)].

[3] Mr. Grossman has sent several emails to EPP Class Counsel, offering to take some corrective action himself. However, given the breadth and duration of the solicitation campaigns by Pearl Logic and the other entities and individuals named herein, and the need for broad corrective action, Mr. Grossman's informal assurances do not and cannot provide the necessary and appropriate relief for affected class members that a Court Order affords.

1 (Pearl Logic flyer). Of course, these cases are unrelated, so class members are understandably confused by the false and deceptive solicitations.

Shaynaz Malleck has created a website, https://justice25.com/, dedicated to the Generic Price Fixing and Insulin Price Fixing Cases. Decl. Ex. H (home page). On this website is a PowerPoint presentation that is very similar to the Grossman & Kelly PowerPoint, and falsely states that "[a] motion for Class Certification was recently denied. ***This is not a class action law suit. You must elect to participate to be part of the law suit***." Decl. Ex. I at ¶ 3.

Numerous individuals, including David Grossman, Andy Crawford, Christine Anderson, Christine Pierce, Keith Anderson, Barry Rowley, and Nelson Griswold, are working on behalf of Pearl Logic's deceptive solicitation scheme. *See* Decl. ¶¶ 18-27 and Exs. J-O. In its solicitations, Pearl Logic claims: "[u]p to $600 Billion Dollars in potential Recovery Funds are being made available for Self-Insured Plan Sponsors affected by the alleged anticompetitive, price fixing & collusion industry practices." (Decl. ¶ 21; Ex. K). This wildly overblown figure appears alongside an "example" where a hypothetical employer sponsoring a plan for 600 employees could recover "$1.68M - $2.52M+" (Decl. Ex. K). Pearl Logic then falsely claims "This is a government-supported recovery program, not a class action lawsuit." *Id*. at 2.

Pearl Logic is disseminating a 9-page document with numerous FAQs entitled "Pharma Recovery Program," which concerns "the Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL), formally known as the  Generic Pharmaceuticals Pricing Antitrust Litigation." Decl. ¶ 19 & Ex. J (FAQ #9). This document falsely states:

***5.     How are the 'damage' (settlement) claims processed and paid?***

   ***2.     Claim Submission Deadlines***
*While the timing of filing a claim does matter in terms of eligibility, there's no advantage to filing earlier beyond meeting the deadline:*

- *The Claim Form must be submitted by or before **December 31, 2025**. Those who file by that deadline and are otherwise eligible will participate in the pro rata distribution.*

**6.      Who actually receives paid 'Damage' (Settlement) Claim funds?**

*Answer: Any 'Damage'(Settlement) Claim paid, will go to whoever executed the Attorney Authorization/Retainer Agreement.*

**11.      Is this a Class action Lawsuit?**

*Answer: No. This is not a Class Action Lawsuit. This is a Multi-District Litigation (MDL). In a Class Action Lawsuit many Plaintiffs join together for a share of the settlement based on damages or harm relative to the 'Tier' they are filed under (e.g., all members get the same or proportional amounts per Class Tier'). In this MDL, every Plan Sponsor needs to file a 'Damage' (Settlement) Claim Individually, based upon their calculated 'damage' amount (see Answer to Question 8 above).*

**12.      Is each case a "one off" negotiation? Or is there a class action settlement?**

*Answer: This is <u>not</u> a class action settlement. This is a Multi-District Litigation (MDL) case. Each Plan Sponsor's pursuit of their specific 'damages' is a one-off case. Any Plan Sponsor's pursuit of specific 'damages' is based on the delta of the anticipated Plan Sponsor's calculated 'damage' award amount. This is why Plan Sponsors need MDL law firm representation. Neither the DOJ nor FTC is charged with rectifying a wrong and delivering monies back to each Plan Sponsor's self-funded health plan. To greatly improve the likelihood of successfully pursuing a 'damage' (settlement) claim, MDL law firm representation is paramount. <u>It is contingency-based only.</u>*

Decl. Ex. J ¶¶ 5, 6, 11, 12 (bold and underlining in original).

Rather than disclosing the names and contact information of the Court-appointed EPP

Lead Counsel, Plaintiffs' Steering Committee ("PSC") and Claims Administrator, the document

makes misstatements about Lead Counsel and the PSC also gives the false impression that Lead

Counsel and the PSC have hired Pearl Logic:

**1.      What do you mean here by the "Attorney Firm"?**

*Answer: The "Attorney Firm" that we refer to in relation to pursuing a 'Damage' (Settlement) Claim related to the Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL) is a massive tort New York based Attorney Group, which is part of a 'Consortium' of numerous large Attorney Firms that specializes in mass tort Multi-District Litigation (MDL) cases. These are amongst the largest and most respected mass tort litigation leaders in the US. This 'Consortium'*

*has been appointed by the Court (overseeing this particular MDL) to run this case. **This Court appointment also names two of this firm's Partners as co-lead counsels. And is working directly with the Judge overseeing this case. Everything associated with this MDL goes through this Consortium Attorney Group. They have the Chairman Seat, plus 6 of the 8 total seats on the Plaintiffs' Executive Committee (PEC) to pursue damage (settlement) claims on behalf of qualified Plan Sponsors.** Since 2017, the members of this Consortium Group have already spent Millions to complete all of the associated discovery related to this specific MDL case. This ensures enrolled Plaintiffs receive first and best remuneration for their claims. **Specifically, the firm we're working with most directly, serves as liaison counsel onboarding prospective Plan Sponsors and coordinating Plaintiffs discovery.***

***Note: Any* [sic] *for other Attorney attempting to pursue this case, those Clients will have no Representative seat at the Plaintiffs' Executive Committee (PEC) table.** Such outside filing would set ideal until after the 1st round of any settlements. **And as such would get a significant** [sic] ***less settlement.*** Additionally, any other Attorney would need to complete their own independent Discovery, and would cost of millions.*

Decl. Ex. J ¶ 1. (emphasis added).

In a LinkedIn post, Keith Anderson, who is Pearl Logic's National Sales Director, falsely claims that "Pearl Logic has been selected to assist in processing and verifying claims related to a landmark settlement involving 45+ Drug Manufacturers and PBMs." (Decl. ¶ 24; Ex. N). Another of his posts says, "Number of members X $250+ per member X 14 year clawback = a huge unexpected windfall for all who file a claim!" (Decl. Ex. N). Attached to his post is an "Executive Brief" regarding the alleged "$600B+ Pharmaceutical & PBM Settlement." The Executive Brief falsely states that this is "not a class action" and:

> Pearl Logic has been selected to support claim verification in this $600B+ national enforcement action led by
>
> -   39 State Attorneys General
> -   Federal Trade Commission (FTC)
> -   U.S. Department of Justice (DOJ)

*Id.* It also states, "First come, first-served – allocation is limited." *Id.* It further states that "You may be entitled to hundreds of thousands – or millions – of dollars in recovered funds from a

federal and multi-state legal settlement involving 45+ pharmaceutical manufacturers and PBMs." *Id.*

Christine Anderson, who is a National Executive Director at Pearl Logic, has many false and misleading posts on LinkedIn about this litigation and the settlements. (Decl. Ex. L). She falsely claims that "Pearl Logic has been selected to verify claims related to a landmark settlement involving 45+ Drug Manufacturers and PBMs." (*Id.* ) She warns that "[i]f the claim is filed after December 1, 2025, the recovery drops to roughly 10%." *Id.* She further states that "[f]unds are finite and are being allocated on a first-come, first-served basis." *Id.* A Facebook post by Christine Pierce (who has the same email address as Christine Anderson), urges employers to contact her regarding potential recoveries of $300-$400 per member. (Decl. Ex. M). The post warns that there is an "end of 2025" deadline "stipulated" by DOJ, and "[f]ailure to review may create fiduciary/ERISA compliance exposure." (*Id.*). Also, other Pearl Logic executives and employees have likewise posted many false and deceptive statements about the litigation and the settlements on LinkedIn. *See* Decl. ¶ 25.

Nothing in the above solicitations is true. Taken together, they create the false impression that there is a massive recovery available to anyone who signs up with Pearl Logic in the next month or two, and that unless one signs up with Pearl Logic--which has been supposedly appointed by Lead Counsel and the government to process and verify claims--they will get nothing.

Acrutiv/Hudson Planning Group has created a webpage dedicated to the so-called "Pharmaceutical Industry Overcharging Recovery Program," https://hudsonplanninggroup.com/pharmaceutical-industry-overcharging-recovery-program/. (*See* Decl. Ex. P). Acrutiv/Hudson Planning Group appears to be working with Pearl Logic, as

the webpage says, "**No upfront costs**: Pearl Logic works on contingency only." *Id.*
Acrutiv/Hudson Planning Group uses the same inflated $600 billion figure that is featured in
other Pearl Logic materials and creates a false sense of urgency by saying, "File by November
15, 2025" and "[a]llocation is on a **First Come, First Served** basis." *Id.* It also uses the same
"Possible Recovery Amount Example" as Pearl Logic, stating that a health plan with 600
members could recover "$1.68M - $2.52M+." *Id.* Also, like Pearl Logic, it falsely states that
"This is a government-supported recovery program, not a class-action lawsuit." *Id.*

     Gerald F. Blaum of Innovation Programs LLC sent an e-mail to Paul Costa of EPP Lead
Counsel Fine, Kaplan and Black, saying he was "*working with Pearl Logic to advise self-funded
employers of their ability to opt-out of a class settlement*" in MDL 2724. Decl. Ex. Q (emphasis
added). However, the Pearl Logic materials do not mention opting out, but instead refer to the
prospect of substantial recoveries from the alleged "$600 billion" fund. *See* Decl. Ex. K
(Brochure) ("you may be owed hundreds of thousands – or even millions -- in recovery funds,
from a historical legal settlement targeting pharmaceutical industry corruption").

     None of these solicitations make **any** mention of the Court-approved EPP settlement
Notices or the website dedicated to the EPPs' settlements. In fact, Pearl Logic tries to *dissuade*
class members from looking for more information, falsely asserting that "[v]ery little has been
published in relation to this specific Multi-District Litigation (MDL) case. Most search efforts
pull information from published reports, which seem to be very limited. Most likely because the
Pharmaceutical Industry is maintaining a very quiet posture." Decl. Ex. J ¶ 13, Nor do they
identify Class Counsel or the Claims Administrator, or mention the fact that class members can
file a claim for free and without the assistance of a third party, or that the claims process has not
yet even begun. *See Payment Card Antitrust Litig*., 2014 WL 4966072, at *14 ("FRS also failed

to include on its website information about the state of the litigation, reference to the Court-approved website, 'information that class members can file claims without [FRS's] services, at no cost,' or any mention of its own fee.").[4]

## III.    ARGUMENT

### A.    The Court Has Broad Authority to Protect Class Members from False and Misleading Communications Regarding the Settlement Class Process.

The Supreme Court has held that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

Similarly, the Third Circuit has recognized that a district court's authority over the class settlement process empowers it to take action with respect to "misleading communications by soliciting counsel" because they "have a detrimental effect on the class notice procedure and, therefore, on the fair administration of justice." *In re Cmty. Bank*, 418 F.3d at 311. The Court's authority to prevent abuses of the class action process "includes the power to restrict 'abusive' communications directed at class members." *Fox v. Saginaw Cnty., Michigan*, 35 F.4th 1042, 1047 (6th Cir. 2022) (citing *Gulf Oil,* 452 U.S. at 101-102). This authority applies to "abusive communications of those – parties and nonparties alike—who threaten or interfere with a class action." *Fox*, 35 F.4th at 1047.  Abusive communications include "sharing misleading

---

[4] *See also In re McKesson HBOC, Inc. Sec. Litig.,* 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) ("The solicitations do not identify the court-appointed lead plaintiff and counsel."); *County of Santa Clara v. Astra USA, Inc.,* No. 05-3740, 2010 WL 2724512, at *2 (N.D. Cal. July 8, 2010) (Defendant's "letter did not include a copy of the complaint, contact information for plaintiffs' counsel, or information about the current status of the case"); *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.,* No. 12-cv-944, 2016 WL 4080294, at *6 (N.D. Cal. July 29, 2016) ("Nor does the letter identify the class's counsel or provide any way for the recipients to contact them.").

information, misrepresenting the nature of the class action, or coercing prospective class members to opt out of a class." *Id.*

The Court's authority to regulate misleading communications directed to class members is derived from Rule 23(d), which provides, "In conducting an action under this rule, the court may issue orders…to protect class members and fairly conduct the action…" *See also Manual for Complex Litig.*, *Fourth* § 21.12 ("Misrepresentations or other misconduct in communicating with the class … may be prohibited and penalized under the court's Rule 23(d)(2) plenary protective authority."); *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980) ("It is the responsibility of the court to direct the 'best notice practicable' to class members… and to safeguard them from unauthorized, misleading communications…").

Additionally, the All Writs Act, 28 U.S.C. § 1651(a), grants courts broad authority to issue writs that are "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238, 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006).

In a very recent class action, the court found that class members who opted out of a settlement after being solicited by a claims recovery firm "were given incomplete and misleading information about the settlement in this case and their rights under the Settlement Agreement." *Stark v. Patreon, Inc.*, No-22-cv-03131, 2025 WL 1592736, at *15 (N.D. Cal. June 5, 2025). The court held:

> '[C]ourts overseeing settlement proceedings have the authority to address improper communications sent by non-parties'…. '[I]mproper communications from non-

13

parties that attempt to do an end run around the court-approved notice of settlement are particularly concerning: the class notice is 'crucial' to the entire scheme of Rule 23 in that it provides a neutral description that enables class members to conduct an 'independent analysis of their own self-interest' in determining whether to object to or opt out of a settlement.'

*Id*. at *14 (quoting *Chalian v. CVS Pharmacy, Inc.*, No. 16-cv-8979, 2020 WL 7347866, at *4 (C.D. Cal. Oct. 30, 2020)). The court invalidated class members' claim assignments to the claims recovery firm that made the misstatements, as well as the opt-outs submitted by that firm on the class members' behalf.

In the *Payment Card Antitrust Litigation*, the court found that a claims recovery company had engaged in a misleading and deceptive solicitation campaign that required corrective action:

> I act to prevent class merchants from being misled or lied to by anyone in connection with this action. In order to protect the integrity of the litigation, I must also guard against confusion among the class that may result from misleading or false communications from third-party claims filers. Indeed, given the size of the class… the potential for confusion is massive. Furthermore, false or misleading communications frustrate the earlier orders of this Court regarding the settlement and claims filing process by muddying the waters and causing class members to doubt whether the Court-approved notices were in fact accurate or authorized.

2014 WL 4966072, at *32.

## B. The Remedies Class Counsel Seek Are Appropriate.

Courts faced with third parties providing class members with misleading information may "prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void [or voidable]." *Visa Check*, 2006 WL 1025588, at *5. "[I]t is necessary both (1) to remedy any misleading statements that have already been made; and (2) to prevent any repetition of such conduct." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1246 (N.D. Cal. 2000). *Accord In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 754 F. Supp. 3d 319, 327-28 (E.D.N.Y. 2024) ("The Court is authorized to take curative action – such as

14

requiring the distribution of corrective notices or entering injunctive relief – where misleading or

false statements are made to class members … Courts have required corrective remedies under

Rule 23(d) when class members have received unauthorized communications that contain

misleading information that could affect their decisions regarding the case.").

### 1. Curative Notice

A curative notice to class members who received solicitations is warranted. "[T]he use of

curative notices to absent class members who may have been misled by deceptive advertising by

third parties has, under appropriate circumstances, been found to be consistent with Rule 23(d)

and the Court's obligation to protect absent class members." *Stark*, 2025 WL 1592736, at *24. In

*Stark*, the court found that it was necessary to send "a curative notice to class members to dispel

confusion that may have been caused by [the claims recovery firm's] omission of material

information about the Settlement Agreement in its advertising." *Id*. at *26. Similarly, in *Payment

Card*, the court ordered that corrective notice be sent, stating that "[C]lass members must be

alerted to the fact that they may have received inaccurate or untruthful information [from the

claims recovery firm], what this information consists of, and how they can receive truthful and

accurate information." 754 F. Supp. 3d at 329. *See also In re JUUL Labs, Inc., Mktg. Sales

Pracs., & Prods. Liab. Litig.*, No. 19-md-02913, 2023 WL 6205473, at *9-10 (N.D. Cal. Sept.

19, 2023) (requiring corrective notice to class members misled by claims recovery firm);

*McKesson HBOC,* 126 F. Supp. 2d at 1246 (finding that, in order to remedy misleading

statements, "it is necessary to provide curative notice to solicited class members, so that they are

not confused about the nature of the notice that they received"); *Haffer v. Temple Univ.*, 115

F.R.D. 506, 512 (E.D. Pa. 1987) (providing for a corrective notice where improper

communications discouraged class members from meeting with class counsel). *See also Manual*

*for Complex Litigation*, *Fourth* §§ 21.323, 21.33 n.916 ("Corrective or prophylactic notice to potential class members may be ordered under Rule 23(d)(2) at any stage of the proceedings.").

The curative notice should state that any class member who entered into a contract with a claims recovery firm may rescind the contract. This remedy "falls within the district court's broad authority to manage class-action litigation to protect against coercive communications and further 'the administration of justice generally.'" *Fox,* 35 F.4th at 1050 (citing *In re Sch. Asbestos Litig*., 842 F.2d 671, 680 (3d Cir. 1988)). *See Stark*, 2025 WL 1592736 at *23 (invalidating claims assignments by class members to claims recovery firm that engaged in false and misleading solicitation campaign); *Payment Card Antitrust Litig.*, 754 F. Supp. 3d at 329 (after misleading solicitations by claims recovery firm, court required corrective notice to advise class members that "they may cancel their contract with [claims recovery firm] and file their own claims.").

Similarly, in *Visa Check*, the court held that it was empowered by the All Writs Act to send a corrective notice to class members who had received "misleading" solicitations by a claims recovery firm in order to apprise the class members that they could void their agreements with the claims recovery firm. 2006 WL 1025588, at *4-5. The court declared:

> The settlement of a long, hard-fought case has given those class members a tangible interest in settlement funds. I have an affirmative obligation to protect those interests. … The nature of the Court's interest is as simple as it is strong: the class members must not be misled…Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud. To do otherwise – that is, to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled – would be an abdication of responsibility. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.

*Id*. at \*4. *See also In re Ready-Mixed Concrete Antitrust Litig*., 2008 U.S. Dist. LEXIS 95360 (S.D. Ind. Nov. 21, 2008) (after plaintiffs moved for relief regarding claims recovery firm's misleading solicitations, the district court entered a stipulation ordering that "any contracts between Lex Group and potential class members related to this case are null and void, and will have no effect in this litigation").

The claims recovery firms should pay for the curative notice and any other corrective communications the Claims Administrator must make in response to their false and misleading solicitations. *See McKesson HBOC*,  126 F. Supp. 2d at 1247 (ordering that "[t]he printing and mailing costs of the curative notice shall be borne by [firm that sent misleading solicitations]"); *McWilliams v. Advanced Recovery Sys., Inc*., 176 F. Supp. 3d 635, 645 (S.D. Miss. 2016) (same).

### 2.  Require Identification of Class Members Solicited

To ensure that all class members who received a misleading solicitation are provided with the curative notice, the Court should order the claims recovery firms to provide a list of the persons and entities they contacted about this litigation and the settlements. *See Stark*, 2025 WL 1592736 at \*26 (requiring claims recovery firm to provide names and contact information of class members it solicited); *Payment Card Antitrust Litig.*, 754 F. Supp. 3d at 329 (same); *JUUL*, 2023 WL 6205473, at \*9-10 (same); *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.,* No. Civ. A. 81-0436, 1985 WL 25746, at \*8 (D.D.C. Oct. 10, 1985) (ordering claims filing companies to provide the Claims Committee with agreements they entered into with class members, solicitation letters sent to class members, and lists of names and contact information for class members); *see also In re Lutheran Bhd. Variable Ins. Prods. Co*., No. 99-MD-1309PAMJGL, 2002 WL 1205695, at \*2 (D. Minn. May 31, 2002) (requiring attorney who disseminated

17

misleading advertisement to prospective class members to provide list of recipients to the court and parties).

The Court also should require the claims recovery firms to disclose all of their marketing efforts, including all written, verbal, and electronic communications concerning this litigation and the settlements, and all websites they have established and all social media posts they have made regarding the settlements and this litigation. And the Court should order them to immediately correct all false, deceptive and misleading statements and material omissions concerning the settlements and this litigation.

### 3. Invalidation of Opt Out Requests

Next, any opt out requests submitted by claims recovery firms on behalf of class members should be declared invalid, and those class members should be afforded a second opportunity to opt out after receipt of corrective notice. In *Stark*, the court invalidated claim assignments by class members to a claims recovery firm, as well as opt-out requests submitted on behalf of those class members by that firm, which provided incomplete and misleading information to class members. 2025 WL 1592736, at *15-16. And in *JUUL,* the court held that the settlement administrator had properly rejected claims filed by a claims recovery firm called "ClaimClam." *See JUUL*, 2023 WL 6205473, at *9. The court explained:

> The Court takes these steps to ensure that class members' due process rights are fully protected. Allowing en masse submissions by claims aggregators like ClaimClam raises real risks that Class Members will not receive accurate information regarding the scope of the class and the claims process. Allowing a third-party to submit hundreds or thousands of aggregated claims also hinders the ability of the Court-appointed Claims Administrator to communicate directly with claimants and conduct required follow up to identify fraudulent claims or verify the accuracy of claims and to resolve claim disputes…

*Id*.

18

### 4.  Court Supervision of Future Communications

The Court should exercise its authority to supervise the claims recovery firms' future communications and statements on websites and social media posts about the settlements and this litigation in order to prevent any further false and misleading statements and material omissions. This judicial supervision is no different from the Court's review of a proposed Class Notice to ensure its accuracy. In the *Payment Card Antitrust Litigation*, the court recognized the need to get out in front of false and misleading solicitations:

> Third-party claims filing companies are many and the means they use to communicate with class merchants are nearly instantaneous. Even if Class Counsel were in a position to know that misleading or false communications would be made by a third-party claims filing company beforehand, which it is not, the damage may be done in an instant.

> [T]he era of the Internet has enabled increasingly cheap and far ranging . . . campaigns to be launched, challenging the ability and will of the courts to protect the integrity of the class certification and settlement notification process by ensuring that only court authorized, complete and accurate communications reach class members. . . . Internet websites can be changed rapidly, enabling determined . . . campaigners *to stay one step ahead of the court and its restraining orders*. Much more damage can now be done far more quickly and far less expensively, than in the days when the only mode of . . . campaign was a limited and expensive mail campaign . . . or prohibitively expensive print media publication campaigns. A campaign involving automated phone calls, mass emails and web-based solicitations will move too fast for traditional court interventions to be effective.

2014 WL 4966072, at *33 (emphasis in original, citation omitted). Therefore, the court decided to "proactively protect class members from overreaching claims filing companies by preventing confusion and deception before they can happen, as opposed to taking remedial measures after they happen." *Id.* at *17 (internal quotation marks omitted).

In *In the Matter of VMS Ltd. Partnership Sec. Litig.*, 138 F.R.D. 102, 104 (N.D. Ill. 1991), in light of prior "deceptive" letters sent to class members concerning a class settlement, the court required that proposed future communications be submitted first to it and to the parties

for review before dissemination to class members. It stated that "[t]he material misstatements contained in the [prior] Letters demonstrate a potential for deception in future communications." *Id. Accord Quezada v. Schreider Logistics Transloading & Distrib*., No. CV 12-2188, 2013 WL 1296761, at *5-6 (C.D. Cal. March 25, 2013) (due to "misleading and deceptive" communications by defendant with class members, court required it to submit proposed future communications to the Court for review); *Taylor v. Shippers Transp. Express, Inc.*, No. CV 13-02092, 2014 WL 12561036, at *3-4 (C.D. Cal. July 8, 2014) (court found that communication sent by plaintiffs' counsel to class members created a "significant potential for confusion by the purported class members" and thus "there is good reason to supervise communications between counsel and the potential class members in order to protect the integrity of the notice and opt-out processes").

Finally, the Court should require that all third-party claims filing companies include in any communications, websites, or social media posts about the settlements and this litigation the following statements, which were required of claims filing companies in the *Payment Card Antitrust Litigation*: "1. A statement that claim[s] forms are not yet available" and "2. A statement making clear that class members need not sign up for a third-party service in order to participate in any monetary relief and explaining that no-cost assistance will be available from the Class Administrator and Class Counsel during the claims-filing period." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 706 F. Supp. 3d 365, 370 (E.D.N.Y. 2023).

## IV.    CONCLUSION

For the foregoing reasons, EPPs respectfully request that the Court grant their Motion and enter the proposed Order.

Dated: November 11, 2025                    Respectfully submitted,

                                            _/s/ Roberta D. Liebenberg_____

                                            Roberta D. Liebenberg
                                            FINE, KAPLAN & BLACK R.P.C.
                                            One South Broad Street, 23rd Floor
                                            Philadelphia, Pennsylvania 19107
                                            (215) 567-6565
                                            rliebenberg@finekaplan.com

                                            *Lead and Liaison Counsel for End-Payer
                                            Plaintiffs*