# EXHIBIT B

## MASTER SUBROGATION AGENCY AGREEMENT

This Master Subrogation Agency Agreement ("Agreement") is made and entered into as of the date fully signed, by and between.

Client: _____, Tax ID: _____

Address: _____

(hereafter 'Client')

and Lightwave Solutions, Inc., a North Carolina corporation (hereafter "Agent").

**Recitals**

Client desires to engage Agent as its exclusive authorized entity, pursuant to this Agreement, to identify, pursue, and administer subrogation recoveries in cooperation with Client's legal counsel, including, without limitation, in the matter(s) set forth on the attached Exhibit A.

**Now, therefore**, in consideration of the mutual promises and covenants herein contained, the parties agree as follows:

1. **Appointment and Relationship**
   a. Client appoints Agent as its subrogation agent to provide the services described herein.
   b. Agent accepts this appointment and acts as an independent contractor, not as a law firm, attorney, or insurer.
   c. Agent may act only within the authority delegated by Client.
   d. Agent shall not provide legal advice, execute settlements, or commence litigation without Client's express written consent.
   e. All legal actions will be undertaken by licensed counsel retained by Client ("Law Firm").
   f. All settlement proceeds will be received by Law Firm into its trust account.
   g. Agent has negotiated a reduced rate for legal services with the firm David Grossman & Associates, PLLC, which becomes effective upon execution of this Agreement.

2. **Scope of Services**
   a. Identify and evaluate potential third-party recovery opportunities.
   b. Collect and analyze claim data and supporting documentation as requested by Law Firm.
   c. Coordinate with Law Firm as required to support litigation or settlement activity.

3. **Compensation**
   a. Contingent Recovery Fee: In consideration for the subrogation services provided by Agent hereunder, Agent shall receive 3% of gross recovery obtained by Law Firm on behalf of Client, payable from Law Firm at the time of recovery distributions.
   b. Agent's fee represents compensation for subrogation recovery services and is not payment for legal services or a division of legal fees.
   c. The Subrogation Fee set forth herein, and the legal services fee charged by the Law Firm, are the only fees Client will have to pay. Client will not have to pay out of pocket costs or expenses to Agent. Accordingly, the estimated net recovery to Client is 67 percent (67%) of the funds recovered.

4. **Term and Termination**
   The initial term of this Agreement shall be three years. The Agreement will auto-renew for successive one-year terms thereafter unless either Party terminates the Agreement with 30-day advance written notice. In the event of (i) termination of this Agreement by Client for any reason

other than material uncured breach by Agent, or (ii) termination of Client's agreement with any Law Firm for any reason, Agent shall remain entitled to receive the Compensation described in section 3 ("Compensation") above for recoveries on any claims initiated prior to the effective date of termination, regardless of the Law Firm that files your claim or achieves the recovery. Notwithstanding the forgoing, in the event the Agreement is terminated by Agent other than as a result of material uncured breach by Client, Agent shall not be entitled to any compensation set forth in section 3 ("Compensation") above.

5. **Independent Contractor Status**.  Agent is not an employee or partner of Client. No benefits or authority to bind Client except as expressly authorized.

6. **Coordination with Counsel**
   a. Client shall retain legal counsel directly ("Law Firm") for litigation and settlement.
   b. Client will direct Counsel to cooperate with Agent in claim development and recovery administration.
   c. Client authorizes Counsel to disburse to Agent its contractual fee from recovery proceeds.
   d. Counsel is not responsible for supervising Agent's business operations.

7. **Governing Law and Dispute Resolution**. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina with disputes resolved with binding arbitration pursuant to the AAA Commercial Arbitration rules.

8. **Best Efforts; No Guarantee of Recovery.** Agent shall perform its duties and provide the services under this Agreement in a diligent, professional, and workmanlike manner, using its best efforts to identify, pursue, and recover subrogation claims on behalf of the Client. However, Client acknowledges and agrees that the outcome of subrogation recovery efforts depends on numerous factors beyond the Agent's control, including but not limited to the existence and collectability of third-party liability, the cooperation of involved parties, and the outcomes of negotiations or litigation. Accordingly, Agent makes no representation, warranty, or guarantee of any particular result, amount, or recovery, and shall not be liable for the failure to obtain any recovery or for the amount of any recovery obtained, provided that Agent has complied with the terms of this Agreement.

9. **Limitation of Liability.** Except in cases of willful misconduct, gross negligence, Agent shall not be liable to Client or any third party for any indirect, incidental, special, consequential, or punitive damages, including but not limited to loss of profits, loss of anticipated recovery, or reputational harm, arising out of or relating to this Agreement or the performance of the services, even if advised of the possibility of such damages.

10. **Entire Agreement**. This Agreement contains the entire understanding between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter hereof.

**Signatures**

**Client** (by its authorized signer)               **Lightwave Solutions, Inc.**

By: _____            By: _____

Title: _____            Title: _____

Date: _____            Date: _____

**Exhibit A**

Per this Agreement, Client engages Subrogation Agent related to the following matters:

1. Generic Price Fixing and Insulin Price Fixing Multi District Litigations (e.g. MDLs 3080 and 2724) and any other claims related to Price fixing.

2. Multiplan - MDL 3121: for medical providers (physicians, hospitals, anesthesiologists, behavioral therapists, etc.) that have out-of-network ("OON") claims processed through MultiPlan (a.k.a. Viant and Data iSight).

3. PFAS Recovery Program - MDL 2873: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation,- claims against DuPont, 3M and others for widespread PFAS contamination.

4. Social Media - MDL 3047 and Video Game Addiction Lawsuit: claims against certain video game and social media companies for creating products intentionally designed to be addictive to youth.

5. Tobacco Product Waste (TPW) litigation: claims on behalf of cities and towns in damages arising from tobacco product waste (TPW, i.e. used cigarette filters) against the responsible parties including without limitation Phillip Morris USA, Inc., R.J. Reynolds Tobacco Company, Liggett Group, llc., and The George J. Falter Company.