# EXHIBIT K



# Price Fixing Litigation and Cost Recovery Program

## Generic Price Fixing and Insulin Price Fixing —Two Pending Claims Available Now




## Reason For The Law Suit

Insulin manufacturers Eli Lilly, Novo Nordisk, and Sanofi, in collaboration with the three largest PBMs - CVS Caremark, Express Scripts, and OptumRx, colluded to artificially inflate insulin prices by negotiating secret rebates in exchange for preferential placement on insurance formularies, effectively passing the increased costs onto patients through higher list prices.

Generic Drug Manufacturers (over 40 of them) were involved in widespread collusion to inflate prices and artificially allocate market share.

Collusion occurred through direct interactions between senior executives at industry events, trade shows, dinners, and other social gatherings.

Prices of approximately 80 generic drugs, particularly those used for dermatological conditions, were allegedly inflated due to this collusion.

The MDL is currently before Judge Rufe in the United States District Court for the Eastern District of Pennsylvania.

## Pricing Scheme Litigations against Big Pharma



**Our group is leading the charge** to ensure self-insured multi-employer groups, governmental entities and private companies recover the burdensome cost of generic drugs and insulin products.

Throughout the United States, state Attorneys General, governmental entities, direct purchasers, end payors, class action plaintiffs and other private companies have been litigating in two ongoing multidistrict litigations to seek relief due to massive price hikes implemented by pharmaceutical companies and others on a multitude of drugs. A motion for Class Certification was recently denied. *This is not a class action law suit. You must elect to participate to be part of the law suit.*

These cases include:

- MDL 2724, In re Generic Pharmaceuticals Antitrust Pricing Litigation

- MDL 3080, In re Insulin Pricing Litigation



## Who Can Qualify?

Hospitals, Governments, School Districts, Businesses that are self-insured with over 1,000 W2 employees can qualify for filing for the Insulin and generic drug settlement. **Currently the deadline is September 2025.**

As for the Generic law suit it could be as low as 500 employees to qualify.

**OVER CHARGED PERIOD**
Insulin from 2003 to present
Generic from 2010 to present





# Pricing Scheme Litigations against Big Pharma

## Comparison Between the 2 MDLs (Overview)

|  | MDL 2724, In re Generic Pharmaceuticals | MDL 3080, In re Insulin Pricing Litigation |
|---|---|---|
| Nature of the Price Fixing Conspiracy | Individual Conspiracies on Hundreds of Individual Generic Drugs, and Overarching Conspiracy on All Generic Drugs | Conspiracy on 19 Insulin Products |
| Defendants | 40+ Pharmaceutical Company Defendants | 3 Pharmaceutical Companies* and 3 Pharmacy Benefit Managers* |
| Causes of Action | Violations of Federal and State Antitrust Laws and Unjust Enrichment | RICO, Unfair and Deceptive Trade Practices, Breach of Contract, Unjust Enrichment, Injunction |
| Relevant Period of Illicit Conduct | 2010-Present | 2003-Present |

*These companies are not Defendants in MDL 2724.

## Generic Drug Industry



Generic drugs were originally created to make healthcare affordable for Americans, as manufacturers would use the identical active pharmaceutical ingredient molecule as brand drugs at lower costs.

After Congress enacted the Hatch Waxman Act in 1984, Americans enjoyed decades of low-priced generic drugs under a modern system of regulation, which facilitated and encouraged competition between drug manufacturers.

## Collusion within the Generic Drug Market

- Despite Congress's attempt to regulate the industry, generic drug companies eventually resorted to anticompetitive and collusive conduct to line their pockets.

- Critical factors that led to this conduct include:
  - High barriers to enter the market
  - Employee mobility between companies
  - The very structure of the generic drug industry
  - Individual drug markets became highly concentrated
  - The high expense for the creation of new drug companies
  - Close contacts and communications between competitors
  - Opportunities to collude in regularly scheduled trade meetings

## Price Fixing and Anticompetitive Conduct in the Generics Market



- The manufacturers' anticompetitive conduct falls principally into two categories:

  - *First*, they would avoid eroding the prices by refusing to bid, providing cover bids or otherwise not competing with one another upon entry into a given generic market or upon the entry of a new competitor into that market.

  - *Second*, competitors in a particular market communicated — either in person, by telephone, or by text message — and agreed to collectively raise and/or maintain prices for a generic drug.

- Manufacturers would regularly suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, certain generic drugs.

- Certain conduct between competitors is per se illegal – **with no exceptions** – including agreements to raise prices, allocation of customers between competitors, and allocation of market shares.

## Overarching Conspiracy on All Generic Drugs

- The manufacturers participated in an overarching conspiracy to raise prices and minimize competition on all generic drugs in the industry.

- The agreement covered all generic drugs that were manufactured and/or sold since at least 2010.

- Even in markets for drugs where there was only one manufacturer, the manufacturers were able to keep prices above the competitive level because they knew that even if another manufacturer were to enter the market, it would do so cooperatively at supra competitive prices.



## Overwhelming Evidence of Price Fixing and Anticompetitive Conduct

- Evidence of these conspiracies has come to light in one of the most massive multidistrict civil antitrust cases in history, known as MDL 2724, In re Generic Pharmaceuticals Pricing Antitrust Litigation. This litigation commenced in 2016 against dozens of pharmaceutical companies.

- There is evidence of a common goal between competitors, consistent patterns of price increases and avoidance of price erosion, conduct to ensure fair market share allocation, interdependence among competitors, and a plethora of communications that evince anticompetitive conduct.

- There are also ongoing criminal cases against many of these companies and their former employees – with multiple indictments, various defendants pleading guilty to price fixing charges, deferred prosecution agreements being executed, over one billion dollars being paid in fines, and dozens of individuals invoking the Fifth Amendment to avoid incriminating themselves further.





## Litigation Status

- In MDL 2724, the District Court for the Eastern District of Pennsylvania selected three Bellwether Plaintiffs, including the state Attorneys General, Direct Purchaser and End-Payer Class Action Plaintiffs.

- Bellwether fact discovery was substantially completed in October of 2023, with additional discovery conducted and scheduled throughout 2024. The case is currently in the Bellwether expert discovery phase.

- On December 20, 2023, Hon. Judge Cynthia M. Rufe appointed Diane M. Welsh (Retired) as Settlement Master in the litigation.

- Non-Bellwether cases in the MDL are engaged in fact discovery but a schedule for its conclusion has not been established.

## Insulin Pricing Scheme

- Diabetes continues to be one of the leading causes of death in the United States. Insulin is a medication used by millions of Americans to regulate their blood sugar levels and manage this disease.

- Since 2003, it is likely that you have purchased insulin and other diabetic medication from the insulin manufacturers through pharmacy benefit managers ("PBMs"), paying exorbitantly high prices due to the insulin pricing scheme. It is well known that the price range for insulin today can range from $300 to $700, despite costing manufacturers as little as $2 to produce.





## Price Fixing on Insulin Products



- Since at least 2003, six large corporations have been able to successfully exploit the U.S. healthcare system through a conspiracy to intentionally hike insulin prices and line their pockets through kickback schemes and agreements.

- These companies include:

  - Three dominant insulin manufacturers – Eli Lilly, Novo Nordisk, and Sanofi.
  - Three major PBMs – Express Scripts, CVS Caremark and OptumRx.

- These deliberate actions placed an economic burden on self-funded health plans, impacting both their members and beneficiaries, while the manufacturers made billions, including Eli Lilly at $22.4B and Sanofi at $37B (2014-2018).




## Price Fixing on Insulin Products

The insulin pricing scheme involved two unlawful practices.

- The PBMs sought substantial, undisclosed, and continually expanding "rebates" and payments for preferred formulary positions, causing higher costs for payors and plan members over the last two decades.

- The Manufacturers raised insulin prices in sync with larger rebates to secure valuable placement on the PBMs' standard formularies, despite decreased manufacturing expenses, and insulin's longstanding history and stable formulation.

## Drugs At Issue (Insulin)

| Eli Lilly | Novo Nordisk | Sanofi |
|---|---|---|
| Basaglar<br>Humalog<br>Humulin N<br>Humulin R<br>Humulin R 500<br>Humulin 70/30<br>Trulicity | Levemir<br>Novolin N<br>Novolin R<br>Novolin 70/30<br>Novolog<br>Ozempic<br>Tresiba<br>Victoza | Apidra<br>Lantus<br>Soliqua<br>Toujeo |



## Insulin - Recently Enacted Legislation

- Private entities and nonprofits such as the American Diabetes Association have advocated to make insulin affordable for the 8.4 million Americans who rely on it.

- Congress passed the 2022 Inflation Reduction Act to impose a $35 cap per monthly prescription for Medicare enrollees. Had these caps been in effect in 2020, over $761 MM could have been saved. Many states have also enacted legislation to place caps on insulin copayments for state regulated commercial health insurance plans and state employee health plans.

- Nevertheless, additional measures must be taken to recoup the staggering toll inflicted by two decades of tumultuous spikes in insulin prices, including civil litigation.

# ThankYou

**No-Risk Representation.**
**To Schedule a call with our Legal Team Contact:**

**Shaynaz Malleck**

561-526-6202

Shaynazmalleck@gmail.com

