# EXHIBIT L

*Specialists in Employee Healthcare Plan Design and Cost Containment Optimization Solutions*

# Pharma Recovery Program:

## 1. What do you mean here by the "Attorney Firm"?

<u>Answer:</u> The 'Attorney Firm' that we refer to in relation to pursuing a 'Damage' (Settlement) Claim related to the Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL), is a mass tort New York based Attorney Group, which is part of a 'Consortium' of numerous large Attorney Firms that specializes in mass tort Multi-District Litigation (MDL) cases. These are amongst the largest and most respected mass tort litigation leaders in the US. This 'Consortium' has been appointed by the Court (overseeing this particular MDL), to run this case. This Court appointment also names two of this firm's Partners as co-lead counsels. And is working directly with the Judge overseeing this case. Everything associated with this MDL goes through this Consortium Attorney Group. They have the Chairman Seat, plus 6 of the 8 total seats on the Plaintiffs' Executive Committee (PEC) to pursue damage (settlement) claims on behalf of qualified Plan Sponsors. Since 2017, the members of this Consortium Group have already spent Millions to complete all of the associated discovery related to this specific MDL case. This ensures enrolled Plaintiffs receive first and best remuneration for their claims. Specifically the firm we're working with most directly, serves as liaison counsel onboarding prospective Plan Sponsors and coordinating Plaintiffs discovery.

<u>**Note:**</u> Any for other Attorney attempting to pursue this case, those Clients will have no Representative seat at the Plaintiffs' Executive Committee (PEC) table. Such outside filing would set ideal until after the 1st round of any settlements. And as such would get a significant less settlement. Additionally, any other Attorney would need to complete their own independent Discovery, and would cost of millions.

---

## 2. Those who execute the Pearl Logic Recovery Agreement are NOT at that point a "Plaintiff", correct?

<u>Answer:</u> That is correct. Any Plan Sponsor that executes the Pearl Logic Recovery Agreement is simply agreeing to the non-circumvent and payment terms for gaining access to Pearl Logic's expertise and assistance in a joint collaboration effort to proceed towards filing a 'damage' claim pursuant to the Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL) Court Order. Pearl Logic assists in the 'Pre-Qualification', 'Registration' and 'Application' Process. No Plan Sponsor is yet a 'Plaintiff' at that point. After completing these steps, Pearl Logic will submit to the Attorney Firm for acceptance. Upon acceptance, Plan Sponsor will need to execute the Attorney's Authorization/Retainer Agreement. After that, Attorney Firm will schedule a Discovery Meeting (approximately ~60 minutes) with Plan Sponsor. A Plan Sponsor only becomes a 'Plaintiff' after the Attorney Firm Discovery Process, and an actual 'damage' claim has been filed with the Court.

---

*where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge*

*Specialists in Employee Healthcare Plan Design and Cost Containment Optimization Solutions*

## 3. Has this Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL) been put on hold for any reason?

*Answer:* This Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL) is very much active and moving forward. There is no evidence that this MDL case, associated with the Pearl Logic Pharma Recovery Program, is in any way currently on hold. Any reference to the, "Trump Administration **had the FTC halt the cases** against CVS, Express Scripts, and Optum." is totally unrelated. In **March 2025**, President Trump **fired two Democratic FTC Commissioners**—Alvaro Bedoya and Rebecca Slaughter—who were the only commissioners actively involved in the case. The two remaining Republican Commissioners, Andrew Ferguson and Melissa Holyoak, had previously recused themselves from participation. So this totally unrelated case (insulin Antitrust case) has been halted because of firings [https://www.techtarget.com/pharmalifesciences/news/366622038/FTCs-PBM-insulin-price-case-stalled-after-Trump-firings](https://www.techtarget.com/pharmalifesciences/news/366622038/FTCs-PBM-insulin-price-case-stalled-after-Trump-firings)). And nothing else. The ONLY other information that we could find relating to any Trump administration and Federal Trade Commission (FTC) involvement related to the "**FTC halt the cases** against CVS, Express Scripts, and Optum" was directly related to the FTC investigating several mergers and acquisitions involving these companies, as they were seen as potentially anti-competitive and harmful to consumers. The MDL that Pearl Logic is assisting Plan Sponsors with, has nothing to do with anything related to mergers and acquisitions.

*Bottom Line*
- The Trump administration has **not** halted, suspend, or terminated this Pharmaceutical Industry Price-Fixing MDL proceedings.
- Stays that have occurred were procedural—either to coordinate with criminal investigations (DOJ's request in early litigation) or due to class certification appeals (judicial stays in 2025).
- The MDL remains **fully active**, with settlements, class certifications, and bellwether trial planning all progressing as of mid-2025.

-------------------------------------------------------------------------------------

## 4. Who is eligible to file for a 'damage' (settlement) claim in this MDL case?

*Answer:* Damage (settlement) claims in relation to this Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL), can be filed by any Plan Sponsor (i.e., plaintiff) **who were harmed by the alleged price-fixing conspiracy** among generic drug manufacturers in collusion with those Pharmacy Benefit Managers (PBMs), and others, that engaged in **price-fixing, bid-rigging, and market allocation** to inflate the prices of generic medications. We are working with employer groups that have a minimum of 200 or more members ( employees + dependents) and that are self-insured

*Who Can Apply for Damage Claims?*
1. **Direct Purchasers**
    - **Definition**: These are the parties who directly purchased the affected generic medications from the manufacturers.

*where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge*

PEARL LOGIC

Specialists in Employee Healthcare
Plan Design and Cost Containment
Optimization Solutions

- o **Eligible Claimants**:
    - **Retailers** (e.g., pharmacies)
    - **Wholesalers**
    - **Employer Sponsored Health Plans** that cover the cost of prescription medications (i.e., those Plans where the Employer was responsible for the financial risk and liability of claims. And as such where prescription medication claims where paid for from the Plan's funding account). These types of 'Plans' therefore qualify:
        - ✓ Level-Funded Plans
        - ✓ Partially Self-Insured Plans
        - ✓ Fully Self-Insured Plans
- o **Claim Type**: Direct purchasers can claim damages based on the **overcharges** they incurred as a result of the alleged price-fixing. They may receive compensation for the **difference between the inflated price** they paid and the price they would have paid in a competitive market.

2. **Indirect Purchasers**
    - o **Definition**: These are consumers or entities who **did not directly buy the drugs from the manufacturers** but purchased them from other entities (e.g., retailers or wholesalers).
    - o **Eligible Claimants**:
        - **Consumers (individuals)** who paid for generic medications (e.g., through insurance or out-of-pocket payments).
        - **Employer Sponsored Health Plans** that cover the cost of prescription medication (i.e., those Plans where the Employer was responsible for the financial risk and liability of claims. And as such where prescription medication claims where paid for from the Plan's funding account). These types of 'Plans' therefore qualify:
            - ✓ Level-Funded Plans
            - ✓ Partially Self-Insured Plans
            - ✓ Fully Self-Insured Plans
    - o **Claim Type**: Indirect purchasers can file claims for **overcharges** resulting from inflated drug prices. Indirect purchaser classes often seek **treble damages**, as permitted under antitrust laws.

---

## 5. How are the 'damage' (settlement) claims processed and paid?

<u>Answer:</u> Damage claim distributions under these MDL settlements are **not** based on who files first. Instead, settlement payments are allocated and distributed **pro rata**, meaning each eligible class member receives a portion of the settlement fund proportional to their share of the eligible total, regardless of the order in which they file.

### 1. Pro Rata Allocation

where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge

Specialists in Employee Healthcare
Plan Design and Cost Containment
Optimization Solutions

*Settlement funds are distributed proportionally among eligible class members based on their relative share of purchases or damages:*

- *For the **Indirect Reseller (IRP) settlement**, the court approved distributing the settlement proceeds pro rata among Settlement Class Members based on their purchases. This ensures equitable treatment across the class and does **not** favor earlier claim submissions.*
- *Similarly, for the **Direct Purchaser Plaintiffs (DPP) settlements**, the court explicitly referenced that the settlement funds are allocated on a **pro rata basis**, which is considered equitable under Rule 23(e).*

*2. Claim Submission Deadlines*

*While the timing of filing a claim does matter in terms of eligibility, there's no advantage to filing earlier beyond meeting the deadline:*

- *The Claim Form must be submitted by or before **December 31, 2025**. Those who file by that deadline and are otherwise eligible will participate in the pro rata distribution.*
- *For other settlements, similar deadlines apply, but again, distribution is based on the Plan Sponsor's claim amount relative to the class—not when the claim is submitted.*

---

## 6. Who actually receives paid 'Damage' (Settlement) Claim funds?

*Answer:* *Any 'Damage' (Settlement) Claim paid, will go to whoever executed the Attorney Authorization/Retainer Agreement.*

---

## 7. Are there any guidelines or restrictions related to how the received paid 'Damage' (Settlement) Claim funds can be used?

*Answer:* *Outside of any requirement of funds management associated with a Plan Sponsor governed under the Taft – Hartley Act, the Plan Sponsor can do whatever they wish with their paid Claim Settlement funds.*

---

## 8. How was this "settlement" achieved?

*Answer:* *No settlement is yet achieved. DOJ and FTC have both sued the big three pharmacy benefit management (PBM) companies, including Optum Rx, Express Scripts, and Caremark. DOJ also sued the drug manufacturers for the same drug price fixing with mark ups of 500% to 2,000% or more. **A handful of cases against the manufacturers have already been finalized totaling about $700 Million**. The money recovery phase of this litigation is now to facilitate payouts in 2026 and 2027.*

where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge

PEARL LOGIC

Specialists in Employee Healthcare
Plan Design and Cost Containment
Optimization Solutions

### 9. What authority has authorized the settlements with the drug manufactures to date?

<u>Answer:</u> **A District Court** serves as the **transferee court and centralized forum** (central hub for litigation coordination and pretrial proceedings) for the Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL), formally known as the Generic Pharmaceuticals Pricing Antitrust Litigation. In this capacity, the District Court oversees **pretrial management, discovery**, and **procedural coordination** across a large volume of consolidated actions brought by different plaintiff groups— namely 40+ state Attorneys General, Direct Purchaser Plaintiffs (DPPs), End-Payer Plaintiffs (EPPs), Indirect Reseller Plaintiffs (IRPs), and Direct Action Plaintiffs, as well as the Federal Trade Commission (FTC) and Department of Justice (DOJ) **Antitrust Division** on behalf of the employers with the drug manufactures (defendants). PBM (defendants) settlements will follow. In short – **the District Court** is the main judicial venue for this Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL)—it centralizes all pretrial procedures, resolves legal and procedural issues, supports class certification, manages settlements, and organizes bellwether proceedings across the multi-party Generic Pharmaceuticals Antitrust Litigation.

### 10. How is the estimated ~$600B+ in 'damages' distributed?

<u>Answer:</u>  The anti-competitive and price-fixing conduct undertaken by the Pharmacy Benefit Managers (PBMs) in collusion with the identified Pharmaceutical Manufacturers have created estimated damages of ~$600B+ in Plan Sponsors overpaying for prescription generic medications and insulin over the past couple of decades. For each Plan Sponsor, any award is based on the specific 'damages' directly related to <u>**that**</u> Plan Sponsor's healthcare plan (i.e., "here's what you spent with illegal drug price fixing by PBM X" and "here's what you would have spent without the drug price fixing.") The delta is the anticipated Plan Sponsor's calculated 'damage' (settlement) award amount.

### 11. Is this a Class Action Lawsuit?

<u>Answer:</u> No. This is not a Class Action Lawsuit. This is a Multi-District Litigation (MDL). In a Class Action Lawsuit many Plaintiffs join together for a share of the settlement based on damages or harm relative to the 'Tier' they are filed under (e.g., all members get the same or proportional amounts per Class 'Teir'). In this MDL, every Plan Sponsor needs to file a 'Damage' (Settlement) Claim individually, based upon their calculated 'damage' amount (see <u>Answer</u> to Question 8 above).

where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge

PEARL LOGIC

*Specialists in Employee Healthcare Plan Design and Cost Containment Optimization Solutions*

---

## 12. Is each case a "one off" negotiation? Or is there a class action settlement?

*Answer:* This is <u>not</u> a class action settlement. This is a Multi-District Litigation (MDL) case. Each Plan Sponsor's pursuit of their specific 'damages' is a one-off case. Any Plan Sponsor's pursuit of specific 'damages' is based on the delta of the anticipated Plan Sponsor's calculated 'damage' award amount. This is why Plan Sponsors need MDL law firm representation. Neither the DOJ nor FTC is charged with rectifying a wrong and delivering monies back to each Plan Sponsor's self-funded health plan. To greatly improve the likelihood of successfully pursuing a 'damage' (settlement) claim, MDL law firm representation is paramount. <u>It is contingency-based only</u>.

---

## 13. Is there a general explanation document?

*Answer:* Very little has been published in relation to this specific Multi-District Litigation (MDL) case. Most search efforts pull information from published reports, which seem to be very limited. Most likely because the Pharmaceutical Industry is maintaining a very quiet posture, likely to limit exposure from possible Plan Sponsor's that are totally unaware of any opportunity to seek a 'damage' (settlement) claim. With the Pharmaceutical Industry's enormous Ad buying power, it may be possible that particular financial leverage could be asserted in an effort to limit such exposure.

---

## 14. Are there other entities suing over drug pricing?

*Answer:* Yes. Aetna has sued the drug manufacturers. Of course, Aetna is Caremark, one of the big 3 PBMs. They are finger pointing, in our opinion, to have the drug manufacturers pay more than them as a PBM. https://www.fiercehealthcare.com/payers/aetna-sues-drugmakers-widespread-price-fixing-and-collusion

---

## 15. Are there other big-name companies that have joined the drug price fixing MDL suit?

*Answer:* Yes, including SEIU (500k employees), Southwest Airlines (74k employees), IBEW (700k employees), UFCW (1.2M employees), General Motors (97k employees), Lowe's (300k employees), Target (400k employees), American Airlines (103k employees), Aramark Services (273k employees),

*where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge*



Lumen Technologies (29k employees), RTX (185k employees), US Foods (28k employees), O'Reilly Auto Parts (94k employees); plus Montage Health System (3k employees), Salinas Valley Health System (3k employees), Carteret Healthcare (2k employees) to name but a few.
https://www.reuters.com/legal/litigation/southwest-airlines-accuses-drugmakers-price-fixing-conspiracy-new-lawsuit-2025-07-07/

*Any entity worried about being first, should not do so. That train has long left the station.*

------------------------------------------------------------------------

## 16. Why is there drug recovery money for self-insured organizations?

*Answer:* Self-insured organizations (which includes Level-Funded, as well as Fully & Partially Self-Insured Plans) have overpaid for Generic Prescription Medications for several years due to Pharmacy Benefit Management (PBM) and Pharmaceutical Company drug price fixing.

------------------------------------------------------------------------

## 17. How long has this price fixing been ongoing?

*Answer:* The Multi-District Litigation (MDL) in question is from the year 2010 to the current time for the generic case and 2003 for the insulin case.

------------------------------------------------------------------------

## 18. What are the estimated damages for the overpayment for insulin and generic drugs for an organization?

*Answer:* Damages have been calculated in cases to be ~$200 - $660+ per healthcare plan member per year over the past 14 years. The actual amounts per case will be based on the each employer groups member prescription profile/spend during this timeframe.

------------------------------------------------------------------------

*where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge*



Specialists in Employee Healthcare
Plan Design and Cost Containment
Optimization Solutions

---

### 19. Is there any cost for a Plan Sponsor organization to become a plaintiff and file for damages (claims settlement)?

*Answer:* No. No cost or expenses - only contingency recovery.

---

### 20. Who has sued the PBMs to help create this drug money recovery opportunity?

*Answer:* 40+ states Attorney Generals, the Department of Justice (DOJ) **Antitrust Division** and the Federal Trade Commission (FTC) have sued the generic drug manufacturers in collusion with those Pharmacy Benefit Managers (PBMs), and others, that engaged in **price-fixing, bid-rigging, and market allocation** to inflate the prices of generic medications. This litigation represents a money recovery (damage settlement) effort due to the price fixing alleged.

---

### 21. Can you name some of the PBMs and pharmaceutical companies in the suits?

*Answer:* Yes. There are 40+ manufacturer defendants and several PBMs that have been prosecuted, including OptumRx (owned by United HealthCare), Express Scripts (owned by Cigna), CVS (owns Aetna), Eli Lilly, Novo Nordisk and Sanofi, to name just a few.

---

### 22. Is this one lawsuit or two lawsuits?

*Answer:* Two lawsuits running in parallel. One for insulin price fixing and another for generic drug price fixing.

---

### 23. How do I know that my self-insured organization has been adversely affected by this drug price fixing?

where innovative *thinking*
superior *insight*
and enhanced *ROI*
converge

Specialists in Employee Healthcare
Plan Design and Cost Containment
Optimization Solutions

*Answer:* A 3rd Party pharmaceutical "data harvesting" analytics company will take each self-insured organization's prescription generic medication claims data and calculate the monetary damages over a 14 year time frame to facilitate an accurate claim amount. It is common for over 80% of all drugs prescribed for a health plan population to be generic. All self-insured health plan organizations have been adversely affected.

---

## 24. How does a Plan Sponsor sign-up to pursue a 'Damages' (Settlement) Claim under the Pharmaceutical Industry Price-Fixing Multi-District Litigation (MDL)?

*Answer:* Step 1 is to execute Pearl Logic's Recovery Agreement. After which Pearl Logic will shepherd the Plan Sponsor through the 'Pre-Qualification', 'Registration' and 'Application' Process. After completing these steps, Pearl Logic will submit to the Attorney Firm for acceptance. Upon acceptance, Plan Sponsor will need to execute the Attorney's Authorization Agreement. After that, Attorney Firm will schedule a Discovery Meeting with Plan Sponsor. A Plan Sponsor only becomes a 'Plaintiff' after the Attorney Firm Discovery Process, and an actual 'damage' claim has been filed with the Court.

---

## 25. What is the time frame to receive a 'damage (settlement) claim, after filing?

*Answer:* 12 months to 18 months. The cases are in their final phases.

---

## 26. Our Healthcare Plan Broker has not told us about this. Why not?

*Answer:* Please understand you do not have a broker - Blue Shield, United, Cigna and Aetna have brokers. That's who pays brokers. Please understand that the 3 largest pharmacy benefit management (PBM) companies are publicly traded and are part of publicly traded carriers. Note that United Healthcare owns Optum Rx. CVS owns Aetna. And Cigna owns Express Scripts.

Given the above facts, brokers paid by the carriers do not want to upset the carriers and so will not inform Plan Sponsors of this opportunity to get money back for the Plan Sponsor from the illegal drug price fixing that has been going on for decades. The brokers risk losing their contracts to be paid by the carriers.

where innovative **thinking**
superior **insight**
and enhanced **ROI**
converge