**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: *All End-Payer Plaintiffs' Actions* | HON. CYNTHIA M. RUFE |

**ORDER**

In connection with the settlement between End-Payer Plaintiffs ("EPPs") and Apotex and Heritage, there are disputes as to whether certain insurance companies or Third Party Administrators (TPAs) can properly request exclusion from the settlement class on behalf of their Administrative Services Only ("ASO")[1] customers, pursuant to their agreements with those clients. On October 3, 2025, the Court indicated it would approve the settlement, pending a determination of whether and what requests to exclude ASOs from the settlement.[2]  Previously, the Court required a declaration from each ASO client stating that it granted or ceded authority to act in this settlement to any other insurance company.  By order entered May 1, 2025, the Court considered the notice issue in the context of the EPPs' bellwether cases. The Court directed that the notice to potential class members in the bellwether cases:

> provide that an entity seeking to exclude another entity, e.g. an insurer seeking to exclude its ASO customers, must identify with specificity each such entity that it seeks to exclude, and must provide either (l) a declaration from each entity's authorized representative attesting to its authority to opt the entity's claims out of the Classes or (2) a declaration

---

[1] "TPAs are often granted legal authority to act on behalf of their ASO customers. TPAs routinely submit claims on behalf of their self-funded ASO customers. . . . " Opt -Out Insurers' Joint Brief in Opposition to EPPs Motion To Reject Certain Out-Out Requests. [MDL Doc 2744, p. 2].
[2] N.T. 10/3/2025, pp. 40-41.

that establishes it's authority to opt out of the classes on behalf of those entities, based on its legal rights and obligations, e.g., as detailed in an ASO contract, as to each entity it seeks to exclude. For each entity, such declaration shall include the name of the entity to be excluded and the contractual language on which the right to assert exclusion is based.[3]

The Court made clear that this requirement, which is less burdensome for the insurers to cross, governs the exclusion process in this settlement as well. On May 14, 2025, the Court approved the form and manner of Notice of the Settlements between End-Payer Plaintiffs ("EPPs") and Apotex Corp. ("Apotex"), and between EPPs and Heritage Pharmaceuticals Inc., Emcure Pharmaceuticals Ltd., and Satish Mehta ("Heritage"); and the Court set forth a procedure for class members to follow in order to opt out of the Settlement Classes.[4] The deadline for class members to submit exclusion requests was July 24, 2025.

The Court of Appeals for the Third Circuit authorized courts supervising class actions to establish precise rules for opting out of class action settlements. *Perrigo Institutional Investor Group v. Papa*.[5]  In this Circuit, "Rule 23 authorizes district courts to decide when and how class members may opt out, and nothing in it requires district courts to accept any particular form of a request for exclusion, whether through a 'reasonable indication of a desire to opt out' or otherwise."[6]  Moreover, "permitting parties to opt out through mere 'indication' rather than following the directed means of requesting exclusion promises to make administering class actions even more difficult."[7] "Endorsing the 'reasonable indication' standard thrusts on district courts the task of resolving 'dozens or hundreds of difficult questions'—each necessitating its

---

[3] [MDL Doc. No. 3354], p.6.
[4] [MDL Doc. 3392].
[5] 150 F.4th 206, 215 (3d Cir. 2025)
[6] *Id*. (quoting *In re Four Seasons Securities Laws Litig*., 493 F.2d 1288, 1291 (10th Cir. 1974).
[7] *Id*. (quoting *In re Navistar MaxxForce Engines Mktg., Sales Pracs., & Prods. Liab. Litig.,* 990 F.3d 1048, 1053 (7th Cir. 2021).

own factfinding—to determine whether class members are in or out of the class at any point during the pendency of the action."[8] Opt-out insurers' response to EPPs' October 7, 2025, motion to reject certain requests for exclusion does not cite any court decision to the contrary, nor does it cite *any* caselaw. [9]

The Joint Opt-out insurers' requests for thousands of opt-outs, illustrate the need for the rules set forth in the May 14 order. For example, Elevance's submission contains several versions of opt-out language that might, or might not, be included in a contract now in effect. Too often, the language fails to reference either a class action or other language demonstrating a grant of authority to opt-out of an action where others are litigating some or most of the ASOs interests on their behalf, saving them from the time and expense of litigating the matters themselves. Too often, several versions of the purported authority to Elevance to opt-out the ASOs is provided for a single ASO. Defendant class actions are not a recent contrivance; they are known in the common law since the 17th Century[10] and in the United States since at least 1853.[11] Three

_____

[8] *Id.*

[9] Joint Opt-out insurers, in their October 21, 2025, filing, cite this Court's September 23, 2025 order approving, over EPPs objections, Blue Cross and Blue Shield of Alabama's  requests for exclusion from the Sandoz settlement of ASOs who contract state:

> The Claims Administrator is authorized to act on behalf of the Plan and the Employer in litigating and settling cases or controversies that involve multiple plans and plan participants," by its terms includes, but are not limited to, cases arising in contract, tort, or any other legal theory. Examples include, but are not limited to, cases arising out of defective medical devices or medicines, overpayments and provider fraud.

[MDL Doc. 3698, pp. 4-5]. This Court explained that language including "litigating and settling cases or controversies that involve multiple plans and plan participants," by its terms includes class actions." *Id.* As discussed below, none of the language cited in Elevance's templates at [MDL Doc. 3768-B] resembles this language.

[10] See, *Defendant Class Actions and Federal Civil Rights Litigation*, 33 U.C.L.A. L.Rev 286 (1985), n. 18.

[11] *Swain v. Swormstedt*, 57 U.S. 288, 302 (1853) ("The rule is well established, that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others; and a bill may also be

centuries later, drafters of contracts seeking control over, or distance from, obligations or opportunities to litigate claims of others involving tens, hundreds or thousands of dollars know that class actions are part of the universe of potential claims, and can be expected to state with precision their obligations and scope of authority with respect to them. Just as great care is required when notifying class members of their rights in class actions, so too, caution is required before accepting the representation of one class member that other class members have ceded to it the decision to step away from litigation involving, and the share of the funds due, other class members.

To manage the settlement, this Court required insurers and TPAs seeking to opt-out on behalf of ASO clients to submit a declaration identifying the contractual language that provided the basis for that authority. This required the insurer and TPA to identify the contractual language that authorizes it to exclude its clients from the settlement, and to identify the affected clients. The language must grant authority to opt-out of a class action.[12]

On October 7, 2025, EPPs filed a Motion to Reject Certain Requests to Exclude ASO Clients from the Apotex and Heritage Settlement Classes ("Motion to Reject Certain Requests")[13] challenging the requests of several insurers that submitted opt-out requests. EPPs moved to preclude some or all of the ASO exclusion requests of Blue Cross Blue Shield of Florida, Inc. ("BCBS Florida"), Blue Cross Blue Shield of Kansas City ("BCBS Kansas City"), Humana Inc., ("Humana"), Health Care Services Corporation ("HCSC"), The Cigna Group

---

maintained against a portion of a numerous body of defendants, representing a common interest.").

[12] The language need not include the words "class-action" or "opt-out" to be approved. In the Sandoz Settlement, this Court approved language that referred to "litigating and settling cases or controversies that involve multiple plans and plan participants." [MDL Doc, 3698], p. 5). See also, n. 9, *supra.*

[13] [MDL Doc. No. 3723].

("Cigna"), Aetna Inc. ("Aetna") Blue Cross Blue Shield of South Carolina ("BCBS South Carolina"), and Independence Blue Cross, LLC ("IBC"). In addition, EPPs objected to several exclusion requests submitted by two TPAs, Elevance and Highmark, totaling thousands of requests for exclusions.

On October 21, 2025, several insurance companies filed a joint response to the EPPs' motion. BCBS Florida and BCBS Kansas City jointly filed a response incorporating responses to prior requests for exclusions from the Sandoz Settlement,[14] and Elevance, Highmark, Humana, HCSC, Aetna, BCBS South Carolina, and IBC ("Joint Opt-out insurers") filed another joint response.[15] In the latter joint response, Humana, HCSC, Aetna, BCBS South Carolina and IBC stated they do not oppose EPPs' Exclusion Motion to the extent it requests this Court approve (or deny) those insurers' requests to exclude ASO Clients from the Apotex and Heritage Settlements to the same extent, and for the same reasons, that the Court approved (or denied) those insurers' requests to exclude ASO Clients from the Sandoz Settlement.[16]   (To the extent this Court overruled their objections to the EPPs' requests for exclusions of ASOs from the Sandoz Settlement, they request to reiterate herein and raise and preserve their objections to the Court's previous orders on this issue.[17]  The Court approves this request.) Joint Opt-out insurers also incorporated by reference arguments raised in their joint opposition to EPPs motion reject certain exclusions from the Sandoz settlement.[18] EPPs filed a reply to these filings on October 31,

---

[14] [MDL Doc. No. 3742]. That response, in effect, the identification of a single ASO, augments, and therefore by reference includes, their response to EPPs requests for exclusions from the Sandoz Settlement. N.T. October 3, 2025, pp. 28-31, 35. (The Court ruled on requests for exclusions from the Sandoz settlement on September 23, 2025 [MDL Doc.724.]) The October 21 response added a single ASO.
[15] [MDL Doc. No. 3744], n 2.
[16] *Id*.
[17] *Id.*
[18] [MDL Doc. 3489, pp 6-29].

2025.[19] The parties also submitted a joint report listing all of the entities, the Joint Opt-out insurers claim, ceded authority to opt-out of the Apotex-Heritage Settlement.[20]

    The Court must determine whether the requests for exclusion comply with the Court's orders. Much of the briefing on the issue focuses on whether the ASO contracts evince a "reasonable indication of intent to opt out of the settlement.[21]  Elevance cites eight examples of language in portions of templates of its contracts with the requested ASO  opt-outs that it claims allow it to opt-out on behalf of over 11,000 ASOs. Cited phrases or clauses include, e.g.:

    (a)    the "discretion and authority to compromise recoveries, including but not limited to, whether or not to seek recovery,"

    (b)    authority to "locate and investigate cases of potential fraud and abuse. . . [TPA] is responsible for developing the criteria used to identify cases, for contacting the beneficiary, pharmacy or prescribing physician, and for all appropriate corrective actions, such as collecting erroneous payments and referring potential fraud cases to appropriate authorities," and

    (c)    requires "[TPA] shall pursue recoveries related to Paid Claims processed under this Agreement. . . shall exercise discretion to determine which recoveries it will pursue. . . determine and take steps reasonably necessary and cost-effective to effect recovery. . . [and] determine and take steps reasonably necessary and cost-effective to effect recovery, , , [and] reduce any recovery obtained on behalf of the Plan by its proportionate share of the outside counsel fees and costs incurred during litigation or settlement activities to obtain such recovery; and (4) negotiate and effect any settlement of the Employer's and Plan's rights by, among other things, executing a release waiving the Employer's and Plan's rights to take any action inconsistent with the settlement.[22]

---

[19] [MDL Doc. 3763].
[20] [MDL Docs. 3761 (public version) and 3768 (sealed version)].
[21] Opt-out Insurers' Joint Opp. to EPPs' Motion to Reject Certain Requests for Exclusion [MDL Doc. No. 3744], pp. 6-12.
[22] Joint Opt-out insurers Opp. to EPP Motion to Reject Certain Requests for Exclusion, [MDL Doc. No. 3744], pp. 10-13.

None of the cited language refers to class actions or otherwise reference litigation involving multiple plans and plan participants.[23] The complete contracts, or portions of which would place the sampled language into context, are not supplied. For many ASOs, there are anywhere from three to seven different language templates provided purporting to grant authority to exclude (the full contracts or agreements are not provided, so who agreed to what is not clear).[24] More to the point, none of the eight examples' language comports with the Court's May 14 order, which required a demonstration of a grant of authority to Elevance to opt-out on behalf of the ASOs. This Court, reviewing all of Elevance's exclusion requests[25], could find none beyond the six ASOs cited by EPPs in their October 7 and 31 filings in this matter that grant authority from other insurers and ASOs to Elevance to opt-out of the Apotex-Heritage Settlement.

The Highmark requests for exclusion contain a refreshing contrast to the bulk of Elevance's. Its submission of requests for opt-outs[26] includes 85 submissions dated June and July 2025 from insurers or their representatives that explicitly grant authority to opt out of the Apotex-Heritage Settlement, demonstrating that someone took the time to ensure that the ASOs and their representatives understood they were granting authority to exclude their entities from *this* settlement. Of the other ASOs, there are no indications that the ASOs or their purported representatives can or did authorize Highmark to exclude them from the Apotex-Heritage Settlement. Without specifying or providing contracts or other documents that demonstrate their authority to act in this class action behalf of ASO clients they purport to represent, their declarations do not satisfy this Court's May 14, 2025, Order.

---

[23] *See infra*, fn 17.
[24] [MDL Doc. 3768, Exhibits A and B.]
[25] *Id.*
[26] [MDL Doc. 3768, Ex. C.]

The joint response of BCBS Florida and BCBS Kansas City to EPPs' requests for exclusions[27] maintains the same objections they raised regarding the requests to opt-out ASO clients from the Sandoz settlement.  However, they added an additional request to exclude ASO Deluxe Truck Stopp LLC. EPPs do not object to this request.

**AND NOW,** this 18th day of November, 2025,  upon consideration of EPPs' Motion to Reject Certain Requests for Exclusion from the Apotex-Heritage  Settlement Class, the objections to the settlement procedures, and the filings in support of and in opposition to the Motion, and for the reasons explained in the Memorandum Opinion approving the settlement, it is hereby ORDERED that the EPPs Motion [MDL Doc. No. 3723] is GRANTED as follows:

1.    With respect to the challenged exclusion requests submitted by insurers seeking to exclude their ASO clients, the Court rules as follows:

a. Elevance: The exclusion requests of Elevance are approved as to the following ASO Clients:

i. Carilion Clinic,

ii. Cornerstone (f/k/a/ Ply Gem Industries);

iii. Ford Motor Company;

iv. Mohegan Tribal Gaming Auth;

v. Toyota Boshoku America, Inc.; and

vi. Toyota Motor North America.

Elevance's request to exclude all of its other ASO Clients is denied.

---

[27] [MDL Doc. No. 3742]. That filing by reference includes, their response to EPPs requests for exclusions from the Sandoz Settlement. N.T. October 3, 2025, pp. 28-31, 35. (The Court ruled on requests for exclusions from the Sandoz settlement on September 23, 2025 [MDL Doc. 3968.]) The October 21 response added a single ASO.

b. Highmark: The exclusion requests of Highmark are approved as to the 85 ASO Clients that have submitted declarations. Highmark's other requests, which are supported by declarations from entities other than the ASO Clients (i.e., consortiums or trusts of which the ASO Clients are members; or the brokers, trustees, managers, administrators, or chairs of those consortiums or trusts) fail to establish that the declarant has the requisite level of authority to exclude the ASO Client from the Settlements and are denied.

c. Blue Cross Blue Shield of Florida, Inc.; Blue Cross Blue Shield of Kansas City; Blue Cross and Blue Shield of South Carolina; Independence Blue Cross, LLC; Humana Inc.; Health Care Services Corporation; Aetna Inc.; and The Cigna Group: The insurers' exclusion requests are identical to those that they submitted when requesting exclusion from the Sandoz Settlement. The requests that were approved in the Court's September 23, 2025, Order regarding the Sandoz Settlement exclusion requests [MDL Doc. 3698] are accordingly approved here. Those that were denied in the Court's September 23, 2025, Order are also denied here, with the exception of the request to exclude Deluxe Truck Stop LCC, an ASO Client of Blue Cross Blue Shield of Kansas City. The request to exclude Deluxe Truck Stop LLC is granted.

2.      EPPs shall serve its list of all validly excluded entities from the EPP Apotex-Heritage Settlement and from the EPP-Heritage Settlement, including the entities at issue in this Order, within 7 days of the date of this Order, and consult with counsel for the Insurers to ensure agreement that the list does not exclude any opt-outs approved by this order. The final list of entities to be excluded from the Settlement shall be filed with the Court within seven days of that submission, and in any event, no later than fourteen days following the entry of this order.

BY THE COURT:

/s/ Cynthia M. Rufe, J.
CYNTHIA M. RUFE, J.