IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br>*End-Payer Plaintiffs Class Plaintiffs' Actions* | HON. CYNTHIA M. RUFE |

# MEMORANDUM OPINION

**Rufe, J.**                                                                                                                  **November 19, 2025**

End-Payer Plaintiffs ("EPPs")[1] seek final approval of settlements with Defendants Heritage Pharmaceuticals, Inc., Emcure Pharmaceuticals Ltd., Satish Mehta (collectively, "Heritage"), and Apotex Corp. (collectively, the "Settling Defendants") for a monetary payment of $10,000,000 from Heritage and $48,000,000 from Apotex.[2] EPP's Settlement Agreement with Apotex also includes a multimillion dollar settlement between Apotex and the Attorneys General

---

[1] The named EPPs are: 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a/ Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; United Food & Commercial Workers and Employers Arizona Health & Welfare Trust. Named EPPs for the Apotex Settlement also include Ottis McCrary, Valerie Velardi, and Robby Johnson.

[2] EPP Mot. Final Approval Heritage [MDL Doc. No. 3697]; EPP Mot. Final Approval Apotex [MDL Doc. No. 3695].

of several states on behalf of consumers.[3] The Attorneys General Settlement is not before this Court.[4]

The Court held a hearing on October 3, 2025, to determine whether the proposed Heritage and Apotex EPP class-action settlements are "fair, reasonable, and adequate."[5] To approve the settlement, the Court must: (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e).[6] Preliminarily, the Court finds that Settling Defendants caused timely notice of the settlement and related materials to be sent to the Attorney General of the United States and the Attorneys General of all U.S. states, territories, and the District of Columbia pursuant to the Class Action Fairness Act ("CAFA").[7] The Court finds that such notification complies with the applicable requirements of CAFA. No class members have objected to the settlements.

## I.    RULE 23(A)

To certify a class, the Court first must determine under Rule 23(a) that the following factors are met: numerosity, commonality, typicality, and adequacy of representation.[8]

The Court preliminarily approved the following EPP Heritage Settlement Class:

> All persons and entities in the United States (except Indiana and Ohio), as well as the District of Columbia and Puerto Rico, that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price

---

[3] EPPs Mot. Final Approval Apotex Settlement, 7 [MDL Doc. No. 3695-1].

[4] The Attorneys General settlement is under the jurisdiction of the District of Connecticut, and this Court is not asked to approve nor has the authority to grant approval of that settlement.

[5] Fed. R. Civ. P. 23(e)(2).

[6] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014); Fed. R. Civ. P. 23(c)(2)(B).

[7] 28 U.S.C. § 1715(a). *See* Settling EPP's Mot. Approval [MDL Doc. No. 3697-3]; Mot. for Approval, Apotex CAFA Decl. April Williams [MDL Doc. No. 3695-8].

[8] Fed. R. Civ. P. 23(a).

for Defendants' Named Generic Drugs for personal use by their members, and other than for resale, from March 1, 2011 through April 1, 2019.

Excluded from the End Payer [Heritage] Settlement Class are (a) natural person customers; (b) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates, (c) all federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans; (d) all persons or entities who purchased Settling Defendants' Named Generic Drugs for purposes of resale or directly from Settling Defendants; (e) fully insured health plans; and (f) pharmacy benefit managers. The Named Generic Drugs are those listed in Exhibit A to the Settlement Agreement.[9]

Additionally, the Court preliminarily approved the following EPP Apotex Settlement Class:

All persons and entities in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands, that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for any Named Generic Drugs, other than for resale, from May 1, 2009 to December 31, 2019.

Excluded from the EPP Apotex Settlement Class are (a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal governmental entities; (c) all State Entities identified by the Attorneys General in Appendix B to the Apotex Settlement Agreement; (d) all State Entities of California, Connecticut, Florida, Illinois, Maine, Oregon, Pennsylvania, Washington and Wyoming – except for those States' cities, towns, municipalities, counties and other local governmental entities with self-funded prescription drug plans, all of which are included in the class (note that the exclusion of Illinois' State Entities does not apply to public corporations, including public universities and health systems). For the avoidance of doubt, the class does not include (i) persons or entities who only purchased Drugs at Issue for purposes of resale or directly from Defendants; (ii) fully insured employers to the extent that they use fully-insured plans (i.e., employers that purchased insurance covering 100% of their reimbursement obligation to members); and (iii) pharmacy benefit managers.

Where a putative class member has purchases that meet the definition of the Settlement Class, but also has purchases that fall within one or more of the exclusions above, that putative class member is included in the Settlement

---

[9] Order EPPs' Heritage Settlement, 2 [MDL Doc. No. 3020].

Class only with respect to those purchases that meet the definition of the Settlement Class.

The Drugs at Issue are those listed in Appendix A to the Settlement Agreement.[10]

Numerosity is satisfied as to both settlement classes. The Heritage Settlement Class includes thousands of class members, making joinder impractical.[11] Likewise, the Apotex Settlement Class includes thousands, if not millions, of members and for the same reason satisfies the numerosity requirement.[12]

A single common issue is enough to satisfy the commonality requirement, and typicality is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented."[13] Here, there are common issues of law and fact as to all class members: that they purchased generic pharmaceuticals that were priced higher than they should have been because of the alleged conspiratorial acts among manufacturers, including the Settling Defendants, Heritage and Apotex.[14] EPPs also satisfy commonality because "they propose to use common evidence to demonstrate that class members sustained injury resulting from the same alleged anticompetitive behavior by [Settling] Defendants."[15] Named Plaintiffs'

---

[10] Order EPPs' Apotex and Heritage Settlements, 2-3 [MDL Doc. No. 3391].

[11] EPPs' Mot. Prelim. Approval of Heritage Settlement, 8 [Doc. No. 2992-1]; *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016) (analyzing numerosity using several factors and noting that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (citations omitted)).

[12] *See* Mem. Law Supp. EPPs' Mot. Prelim. Approval of Apotex Settlement, 21 [MDL Doc. No. 3312-1].

[13] *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

[14] *See* Mem. Law Supp. EPP's Mot. Prelim. Approval Apotex Settlement, 28 [MDL Doc. No. 3312-1].

[15] *Id*.

incentives to obtain relief from overcharges caused by the unlawful conspiracy of the Settling Defendants and others is aligned with absent class members who suffered from the same actions.

Plaintiffs have demonstrated that "the representative parties will fairly and adequately protect the interests of the class"[16] because there is no indication that the named Plaintiffs have interests antagonistic to those of the Settlement Classes; they all seek to recover overcharges caused by Settling Defendants' alleged unlawful conduct.[17]

Class counsel are qualified, experienced, and have proven to be fully capable of litigating the class members' claims. The representative Plaintiffs, and class counsel, have protected the interests of the class in crafting settlement amounts that will be allocated on a *pro rata* basis upon the submission of a claim with proof of claim to the TPP Claims Administrator, and will provide an opportunity for class members to request reconsideration or recalculation of the TPP Claims Administrator's decision.[18] In addition, the Settling Defendants have agreed to provide cooperation to the EPPs, which will facilitate the administration of the settlements and will aid the litigation against non-settling Defendants.

## II.     RULE 23(B)

The settlement classes also satisfies at least one of the three requirements listed in Rule 23(b). The Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[19] The alleged collusive conduct by Settling Defendants affected all class members in the same way with regard to the

---

[16] Fed. R. Civ. P. 23(a)(4).

[17] *See* Mem. Law Supp. EPP's Mot. Prelim. Approval Apotex Settlement, 29 [MDL Doc. No. 3312-1] ("The Court concludes [EPPs] are adequate class representatives.").

[18] TPP Plan of Allocation for Heritage and Apotex Settlements [MDL Doc. No. 3314-1] at ECF p. 58-69.

[19] Fed. R. Civ. P. 23(b)(3).

5

cost of generic pharmaceuticals.[20] Plaintiffs have shown that for the purposes of settlement a class action is a fair and efficient way to resolve the dispute in light of "alternative available methods of adjudication."[21] As directed by Rule 23(b)(3), the Court has considered "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. . . ."[22]

In the Third Circuit, Rule 23(b)(3) also requires that the classes be "currently and readily ascertainable based on objective criteria."[23] This ascertainability requirement is two-fold: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."[24] Here, the classes are currently and readily ascertainable.

Given the complexity of the litigation, tens of thousands of individual actions would not be a more desirable way of proceeding, and "[a] class action is therefore superior to other methods of adjudication" in the context of the settlements.[25] The Court therefore certifies the Settlement Classes for purposes of the final settlement.

---

[20] *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).

[21] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (citations omitted).

[22] Fed. R. Civ. P. 23(b)(3).

[23] *In re Niaspan Antitrust Litig.*, 67 F.4th 119, 129-30 (3d Cir. 2023) (quoting *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020)).

[24] *Hargrove*, 974 F.3d at 469-70 (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)).

[25] *McDermid v. Inovio Pharms., Inc.*, No. 20-1402, 2023 WL 227355, at *3 (E.D. Pa. Jan. 18, 2023) (citations omitted).

**III.    NOTICE**

The Heritage Settlement was first the first negotiated settlement. When it was preliminarily approved, EPPs requested that notice of the settlement to class members would be deferred until other settlements developed.[26] As part of the preliminary approval of the Apotex Settlement and after deferred notice of the Heritage Settlement, the Court directed that notice be provided.[27] The notice for the settlements clearly and concisely states in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).[28]

Notice was made to third party payers through direct mail and email, through digital banner advertisements, through distribution via *PR Newswire*, and through a case-specific website and toll-free telephone number.[29] Notice was made to consumers through a digital media campaign including English and foreign language banner ads; direct mail and email; publication of short form notice in the *AARP Bulletin*; English and foreign language notice via *PR Newswire*; contact to independent drug stores; and notice on the website providing information regarding a

---

[26] Order EPPs' Heritage Settlement, 4 [MDL Doc. No. 3020].

[27] Order Approving Proposed Notice Plan [MDL Doc. No 3392]; EPP's Mot. Approval Notice Plan [MDL Doc. No. 3314]. Fed. R. Civ. P. 23(c)(2)(B).

[28] Fed. R. Civ. P. 23(c)(2)(B).

[29] Decl. Eric J. Miller [MDL Doc. Nos. 3746-1, 3695-7, 3697-2] ¶¶ 4-10.

settlement between the Attorneys General of several states and Apotex.[30] The notice complies with the Court's Orders regarding notice and satisfied the requirements of Rule 23.

Objections to the notice process has been raised by certain insurers who seek to exclude their Administrative Services Only ("ASO") clients from the settlements. These insurers object to the requirements in the notice regarding their own ability to request exclusions on behalf of their ASO clients. The Court has issued a separate Order ruling on these requested exclusions.[31] The requirements for these exclusions are necessary to ensure that ASO clients in fact have granted the insurers the authority to determine whether they will participate in the litigation, which safeguards their due process rights.

## IV.   RULE 23(E) AND THE *GIRSH* FACTORS

The Court determines that the proposed settlements are "fair, reasonable and adequate."[32] A settlement is fair where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[33] In connection with Rule 23(e), the Court also considers the factors set forth by the Third Circuit in *Girsh v. Jepson*.[34] The *Girsh* factors are:

> (1) the complexity, expense, an likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]

---

[30] Decl. Tiffany A. Janowicz [MDL Doc. No. 3695-4].

[31] Order of November 18, 2025 [MDL Doc. No. 3811]. All exclusion requests have been resolved.

[32] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see also* Fed. R. Civ. P. 23(e).

[33] *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

[34] 521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnel Corp*. 495 F.2d 448, 463 (2d Cir. 1974)).

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[35]

The litigation is extremely complex, and, in the absence of settlement, it would likely be several years before all of the claims asserted by EPPs are resolved. No class members have objected to the settlements, and potential class members have had the opportunity to opt out of the settlements. There has been extensive motion practice and discovery through which the parties have learned of the claims. Settling Defendants have denied liability, and in the absence of the settlements, EPPs would be required to litigate issues of liability, damages, and class certification. There remain many other claims asserted against Settling Defendants and settlements at this time assure a fair payment to the EPPs on their claims against Heritage and Apotex.

In the class action of the Settling Defendant Heritage, Settling Defendant Heritage deposited $10,000,000 into a Settlement Fund with accruing interest for the benefit of named Plaintiffs and other members of the class.[36] In addition, the Settling Defendant Heritage has agreed to provide cooperation to other EPPs, which will facilitate the administration of the settlements and will aid the litigation against non-settling Defendants.[37] Regarding Settling Defendant Apotex's settlement class, that settlement agreement includes EPP's settlement as well as a multimillion dollar settlement with Attorneys General of many states on behalf of consumers.[38] Considering all of the attendant risks of litigation of EPPs' claims, including within

---

[35] *Id.*

[36] EPPs Mot. Final Approval Heritage Settlement, 5 [MDL Doc. No. 3697-1].

[37] *Id.*

[38] EPPs Mot. Final Approval Apotex Settlement, 7 [MDL Doc. No. 3695-1].

the broader context of the MDL, the Court concludes that the settlement is reasonable under the *Girsh* factors.

Negotiations occurred at arm's length over a significant period of time and there has been extensive discovery in the MDL, enabling class counsel to "develop[] enough information about the [litigation] to appreciate sufficiently the value of the claims."[39] Plaintiffs' counsel is experienced and accomplished, and there have been no objections to the settlement.[40] In addition, as required by Rule 23(e)(2), the Court determines that the relief provided to the class is adequate.[41]

The Heritage Settlement Fund consists of a $10,000,000 monetary payment. The Apotex Settlement Fund consists of a $48,000,000 monetary payment, which may be reduced by approximately $12,000,000 based on the number of opt-outs from the settlement. EPPs seek the following disbursements from the Settlement Funds: (1) attorneys' fees of one-third of the Heritage and Apotex settlement funds, inclusive of accrued interest, but *net* of the costs of notice and administration of the funds, any reimbursed expenses, and any portion of the fund to be reserved for payment of ongoing litigation expenses (2) litigation expenses of $808,470.29; and

---

[39] *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).

[40] EPPs received 78 requests for exclusions. See Decl. Eric J. Miller ¶ 12 [MDL Doc. Nos. 3695-7, 3697-2].

[41] Rule 23(e)(2) requires the Court to determine that:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of an proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

(3) $2,000,000 to be reserved for the payment of ongoing litigation expenses.[42] In the context of the settlement award, the Court finds that these amounts are appropriate.

The relief the settlements are expected to provide class members is adequate when balanced against;

>  (i) the costs, risks, and delay of trial and appeal;
>  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>  (iv) any agreement required to be identified under Rule 23(e)(3).[43]

In addition to the inherent risk to recovery involved in prolonged litigation, continuing through motions regarding class certification, the dismissal of claims, and the exclusion of evidence, as well as potential trial and appeals, would only delay any recovery class members may receive.

Rule 23(e)(2)(iv) requires the Court to account for any agreements between the parties required to be identified under Rule 23(e)(3), referring to "any agreement made in connection with the [settlement] proposal."[44] The settlement documents set forth the relevant agreements, including that the Settling Defendants will provide cooperation, both in terms of effectuating the settlements and providing information to help in the continued litigation against the non-settling Defendants.

The final element of Rule 23(e)(2) requires the Court to determine whether the proposal treats the class members equitably relative to each other. The settlement funds will be distributed

---

[42] Mot. Att'y Fees & Expenses, 2 [MDL Doc. No. 3486].

[43] Fed. R. Civ. P. 23(e)(2)(C).

[44] Fed. R. Civ. P. 23(e)(3).

on a *pro rata* basis among all class members that file claims, which treats the class members equitably.

V.  **CONCLUSION**

The Court having determined that the settlements are fair and reasonable, and that all applicable requirements have been met, the Court will approve the settlements. Appropriate orders will be entered.