# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724** <br><br> **16-MD-2724** |
| **THIS DOCUMENT RELATES TO:** <br><br> ***End-Payer Plaintiffs Class Plaintiffs' Actions*** | **HON. CYNTHIA M. RUFE** |

## MEMORANDUM OPINION

**Rufe, J.**                                          **January 23, 2026**

End-Payer Plaintiffs ("EPPs")[1] seek final approval of a settlement with Defendants Sun

Pharmaceutical Industries, Inc. ("Sun"), and Taro Pharmaceuticals U.S.A., Inc. ("Taro")

("Sun/Taro" to refer to both entities) for a monetary payment of $200,000,000.[2] The Court held a

hearing on January 15, 2026, to determine whether the proposed Sun/Taro class-action

settlement is "fair, reasonable, and adequate."[3] To approve a settlement, the Court must: (1)

determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2)

---

[1] The named EPPs are 1199SEIU Greater New York Benefit Fund; 1199SEIU Licensed Practical Nurses Welfare Fund; 1199SEIU National Benefit Fund; 1199SEIU National Benefit Fund for Home Care Workers; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; American Federation of State, County and Municipal Employees District Council 47 Health & Welfare Fund; City of Providence, Rhode Island; Detectives Endowment Association of the City of New York; Hennepin County; Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana; Philadelphia Federation of Teachers Health and Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund; UFCW Local 1500 Welfare Fund; Uniformed Fire Officers Association Family Production Plan Local 854; and United Food & Commercial Workers and Employers Arizona Health & Welfare Trust; Ottis McCrary; Valerie Velardi; and Robby Johnson.

[2] Mem. Law Supp. Mot. for Final Approval at 2 [Doc. No. 3913-1].

[3] Fed. R. Civ. P. 23(e)(2).

assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e).[4] Preliminarily, the Court finds that Settling Defendants caused timely notice of the settlement and related materials to be sent to the Attorney General of the United States and the Attorneys General of all U.S. states, territories, and the District of Columbia pursuant to the Class Action Fairness Act ("CAFA").[5] The Court finds that such notification complies with the applicable requirements of CAFA. No class members have objected to the settlement.

## I.    RULE 23(A)

To certify a class, the Court must first determine under Rule 23(a) that the following factors are met: numerosity, commonality, typicality, and adequacy of representation.[6] The Court preliminarily approved the following Settlement Class:

> [A]ll persons and entities in each of the 50 United States (except Indiana and Ohio), as well as the District of Columbia, Puerto Rico and the U.S. Virgin Islands, that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for any Drugs at Issue, other than for resale, from May 1, 2009 through December 31, 2019. This class excludes: (a) Defendants, their officers, directors, management, employees, subsidiaries and affiliates; (b) all federal government entities; (c) all state government entities (except for cities, towns, municipalities, counties and other local government entities with self-funded prescription drug plans, all of whom are included in the class); (d) all governmental Medicaid agencies, private Medicaid manages care organizations, and consumers who were covered by Medicaid for their purchases of Drugs at Issue; and (e) Judges assigned to this case and any members of their immediate families. For avoidance of doubt, the class does not include (i) persons or entities who only purchased Drugs at Issue for purposes of resale or directly from Defendants; (ii) fully insured employers to the extent that they use fully-insured plans (i.e., employers that purchased insurance covering 100% of their reimbursement obligation to members); and (iii) pharmacy benefit managers. Where a putative class member has purchases that meet the definition of the EPP Settlement Class, but also has purchases that fall within one or more of the exclusions set forth in this Paragraph

---

[4] *See In re Nat'l Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014); Fed. R. Civ. P. 23(c)(2)(B).

[5] 28 U.S.C. § 1715(a). *See* Mot. for Final Approval, Decl. John Taladay [Doc. No. 3913-7].

[6] Fed. R. Civ. P. 23(a).

I.J., that the putative class member is included in the EPP Settlement Class only with respect to those purchases that meet the definition of the EPP Settlement Class.[7]

No class members have objected to the settlement. Although they are not part of the class, a number of states, through their attorneys general, have been granted leave to raise certain considerations as *amici curiae* (the *Amici* States).[8] The State of California has been granted leave to file a supplemental *amicus curiae* brief regarding the Settlement.[9] In ruling on the pending motion for final approval, the Court has carefully considered the positions of these states.

The Settlement Class comprises both entities that paid for prescriptions on behalf of others and individual consumers who paid out-of-pocket for some or all of their own prescriptions. The *Amici* States renew their concerns regarding the inclusion of individual consumers. The *Amici* States argue that "[t]he private class do[es] not adequately represent, nor were they charged with representing, the broader interest of each Amici State in law enforcement and fair dealing in the marketplace."[10] They further argue that "as a matter of comity, state government should not be bound by private litigation when the state government's action seeks to enforce a state statute that implicates both public and private interests."[11]

The *Amici* States ask this Court to mirror its ruling on EPPs' settlement with Sandoz Inc. and Fougera Pharmaceuticals.[12] That request is approved. As it has previously, the Court stresses that there is no question that the state attorneys general have played a key role in the litigation

---

[7] Order Granting Preliminary Approval at 2 [MDL Doc. No. 3699].

[8] Order Granting Leave to *Amici* States [MDL Doc. No. 3947].

[9] Order Granting Leave for California to File Supplemental *Amicus* Brief [MDL Doc. No. 3948]

[10] *Amici* States' *Amicus* Brief at 1 [MDL Doc. No. 3947].

[11] *Amici* States' *Amicus* Brief at 2 [MDL Doc. No. 3947].

[12] *Amici* States' *Amicus* Brief at 3 [MDL Doc. No. 3947]; California Supplemental Amicus Brief at 2, 7 [MDL Doc. No. 3949].

over the prices of generic pharmaceuticals, and that their lawsuits could also result in meaningful relief in some form to some of the class members here. However, as the Court previously held, *Amici* States "have not shown that their *parens patriae* authority, whether statutory or not, supplants the ability of consumers to pursue actions for damages. . . ."[13] Further, once again, this Court determines that any requests for the reporting of claims data, anti-suit injunctions, and potential offsets are premature at this stage.

Upon careful consideration, the Court will certify the Settlement Class. The Rule 23(a) factors are satisfied. Numerosity is satisfied because the Settlement Class includes thousands, if not millions, of class members, making joinder impractical.[14]

A single common issue is enough to satisfy the commonality requirement, and typicality is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented."[15] Here, there are common issues of law and fact as to all class members: that they purchased generic pharmaceuticals that were priced higher than they should have been because of the alleged conspiratorial acts among manufacturers, including the Settling Defendants Sun/Taro.[16] Named Plaintiffs' incentives to obtain relief from overcharges caused by the unlawful conspiracy of Sun/Taro and others is aligned with absent class members who suffered from the same actions.

---

[13] *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 16-md-2724, 2025 WL 2777570, at *5 (E.D. Pa. Sept. 26, 2025).

[14] Mem. Law. Supp. EPPs' Mot. Prelim. Approval at 19-20 [Doc. No. 3630-1]. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016) (analyzing numerosity using several factors and noting that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." (citations omitted)).

[15] *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

[16] Mem. Law. Supp. EPPs' Mot. Prelim. Approval at 20 [Doc. No. 3630-1].

Plaintiffs have demonstrated that "the representative parties will fairly and adequately protect the interests of the class"[17] because there is no indication that the Named Plaintiffs have interests antagonistic to those of the Settlement Classes; they all seek to recover overcharges caused by Settling Defendants' alleged unlawful conduct.[18]

Class Counsel are qualified, experienced, and have proven to be fully capable of litigating the class members' claims. The representative Plaintiffs, and class counsel, have protected the interests of the class in crafting settlement amounts that will be allocated on a *pro rata* basis upon the submission of a claim with proof of claim to the Claims Administrator, and will provide an opportunity for class members to request reconsideration or recalculation of the Claims Administrator's decision.[19] In addition, Sun/Taro have agreed to provide cooperation to the EPPs, which will facilitate the administration of the settlement and will aid the litigation against non-settling Defendants.

## II.    RULE 23(B)

The Settlement Class also satisfies at least one of the three requirements listed in Rule 23(b). The Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[20]

The alleged collusive conduct by Sun/Taro affected all class members in the same way with regard to the cost of generic pharmaceuticals.[21] Plaintiffs have shown that for the purposes

---

[17] Fed. R. Civ. P. 23(a)(4).

[18] Mem. Law. Supp. EPPs' Mot. Prelim. Approval at 21 [Doc. No. 3630-1].

[19] Plan of Allocation at 3-9 [Doc. No. 3630-7].

[20] Fed. R. Civ. P. 23(b)(3).

[21] *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).

of settlement, a class action is a fair and efficient way to resolve the dispute in light of "alternative available methods of adjudication."[22] As directed by Rule 23(b)(3), the Court has considered "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. . . ."[23]

In the Third Circuit, Rule 23(b)(3) also requires that a class be "currently and readily ascertainable based on objective criteria."[24] This ascertainability requirement is two-fold: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."[25] Here, the class is currently and readily ascertainable.

Given the complexity of the litigation, tens of thousands of individual actions would not be a more desirable way of proceeding, and "[a] class action is therefore superior to other methods of adjudication" in the context of the settlements.[26] The Court therefore certifies the Settlement Class for purposes of the final settlement.

---

[22] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (citations omitted).

[23] Fed. R. Civ. P. 23(b)(3).

[24] *In re Niaspan Antitrust Litig.*, 67 F.4th 119, 129-30 (3d Cir. 2023) (quoting *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 477 (3d Cir. 2020)).

[25] *Hargrove*, 974 F.3d at 469-70 (quoting *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015)).

[26] *McDermid v. Inovio Pharms., Inc.*, No. 20-1402, 2023 WL 227355, at *3 (E.D. Pa. Jan. 18, 2023) (citations omitted).

III.    NOTICE

As part of its preliminary approval of the Settlement, this Court directed that notice be

provided.[27] The notice for the settlement clearly and concisely states in plain, easily understood

language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so
> desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).[28]

Notice was made to third party payors and class members who had previously registered

to receive updates through direct mail and email, through a digital and print advertising

campaign to reach consumer and third party payor settlement class members, through

distribution via *PR Newswire*, and through a case-specific website and toll-free telephone

number.[29] This notice complies with the Court's Order regarding notice and satisfies the

requirements of Rule 23.

Objections to the notice process have been raised by certain insurers who seek to exclude

their Administrative Services Only ("ASO") clients from the settlements. These insurers object

to the requirements in the notice regarding their own ability to request exclusions on behalf of

their ASO clients. clients. Blue Cross Blue Shield of Florida, Inc. and Blue Cross Blue Shield of

Kansas City submitted exclusion requests that are identical to those that they submitted when

requesting exclusion from EPPs' settlements with Sandoz Inc. and Fougera Pharmaceuticals;

---

[27] Order Prelim. Approval at 4-6 [Doc. No. 3699]; Fed. R. Civ. P. 23(c)(2)(B).

[28] Fed. R. Civ. P. 23(c)(2)(B).

[29] Decl. Eric J. Miller ¶ 3 [Doc. No. 3913-6].

Heritage Pharmaceuticals, Inc., Emcure Pharmaceuticals Ltd., Satish Mehta; and Apotex Corp. This Court already issued rulings on these requests for exclusion with regard to those settlements.[30] The Court will not diverge from its previous rulings. The requests that were approved in the Court's September 23, 2025 and November 18, 2025 Orders will accordingly be approved here.

Health Care Services Corporation ("HCSC") also submitted exclusion requests for thousands of ASO clients.[31] HSCS provided contract excerpts for 129 entities. This Court previously approved HCSC's opt-out requests "only as to entities for which the specific contract language has been identified."[32] Because HCSC previously submitted a longer list, containing contract excerpts for 504 entities in connection with other settlements,[33] this Court will permit all 504 entities to be excluded.

The requirements for these exclusions are necessary to ensure that ASO clients in fact have granted the insurers the authority to determine whether they will participate in the litigation, which safeguards their due process rights.

## IV.    RULE 23(E) AND THE *GIRSH* FACTORS

The Court determines that the proposed settlements are "fair, reasonable and adequate."[34] A settlement is fair where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation;

---

[30] Sandoz Exclusions Order [MDL Doc. No. 3698]; Heritage Apotex Exclusions Order [MDL Doc. No. 3811].

[31] Mem. Law Supp. EPPs' Mot. for Final Approval at 32 [MDL Doc. No. 3913-1].

[32] Sandoz Exclusions Order at 6, n.16 [MDL Doc. No. 3698].

[33] EPPs' Report on Opt-Out Insurers Exclusion Requests, Ex. 2 [MDL Doc. No. 3657-1].

[34] *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see also* Fed. R. Civ. P. 23(e).

and (4) only a small fraction of the class objected."[35] In connection with Rule 23(e), the Court also considers the factors set forth by the Third Circuit in *Girsh v. Jepson*.[36] The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[37]

This litigation is extremely complex, and, in the absence of settlement, it would likely be several years before all of the claims asserted by EPPs are resolved. No class members have objected to the settlement, and potential class members have had the opportunity to opt out of the settlement. There has been extensive motion practice and discovery through which the parties have learned of the claims. Sun/Taro have denied liability, and in the absence of the settlement, EPPs would be required to litigate issues of liability, damages, and class certification. Sun/Taro faces many other cases and claims in this MDL, and settlement at this time assures a fair payment to EPPs on their claims against Sun/Taro.

Sun/Taro have deposited $200,000,000 into a Settlement Fund with accruing interest for the benefit of the Settlement Class.[38] In addition, Sun/Taro have agreed to provide cooperation to EPPs.[39] That cooperation will facilitate the administration of the settlements and will aid the

---

[35] *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

[36] 521 F.2d 153, 157 (3d Cir. 1975) (quoting *City of Detroit v. Grinnel Corp.* 495 F.2d 448, 463 (2d Cir. 1974)).

[37] *Id*.

[38] Mem. Law. Supp. EPPs' Mot. for Final Approval at 6 [Doc. No. 3913-1].

[39] *Id*.

litigation against non-settling Defendants.[40] Considering all of the attendant risks of litigation of EPPs' claims, including within the broader context of the MDL, the Court concludes that the settlement is reasonable under the *Girsh* factors.

As required by Rule 23(e)(2), the Court determines that the relief provided to the class is adequate. Negotiations occurred at arm's length over a significant period of time, and there has been extensive discovery in the MDL, enabling class counsel to "develop[] enough information about the [litigation] to appreciate sufficiently the value of the claims."[41] Plaintiffs' counsel is experienced and accomplished, and there have been no objections to the settlement.[42]

The relief the settlement is expected to provide class members is adequate when balanced against:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).[43]

In addition to the inherent risk to recovery involved in prolonged litigation, continuing through motions regarding class certification, the dismissal of claims, and the exclusion of evidence, as well as potential trial and appeals, would only delay any recovery class members may receive.

---

[40] *Id.*

[41] *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).

[42] EPPs received 67 requests for exclusion. *See* Decl. Eric J. Miller ¶ 14 [MDL Doc. No. 3913-6]. EPPs received 66 timely requests for exclusion, and one late request for exclusion from Centene Corporation. Decl. Eric J. Miller ¶ 14 [MDL Doc. No. 3913-6]; Mem. Law Supp. EPPs' Mot. for Final Approval at 10 [MDL Doc. No. 3913-1]. Neither EPPs nor Sun/Taro oppose the late, but otherwise valid, request for exclusion, and this Court accepts the request. Mem. Law Supp. EPPs' Mot. for Final Approval at 10, 33 [MDL Doc. No. 3913-1].

[43] Fed. R. Civ. P. 23(e)(2)(C).

The Settlement Fund consists of a $200,000,000 monetary payment. EPPs seek the following disbursements from the Settlement Fund: (1) attorneys' fees of one-third of the Settlement Fund, inclusive of accrued interest, but net of the costs of notice and administration of the funds, any reimbursed expenses, and any portion of the fund to be reserved for payment of ongoing litigation expenses; (2) litigation expenses of $304,954.99; (3) $3,000,000 to be reserved for the payment of ongoing litigation expenses; and (4) service awards of $30,000 for each Third Party Payor Class Representative and $5,000 for each Consumer Class Representative.[44] In the context of the settlement award, the Court finds that these amounts are appropriate.

Rule 23(e)(2)(iv) requires the Court to account for any agreements between the parties required to be identified under Rule 23(e)(3), referring to "any agreement made in connection with the [settlement] proposal."[45] The settlement documents set forth the relevant agreements, including that Sun/Taro will provide cooperation, both in terms of effectuating the settlement and in providing information to help in the continued litigation against the non-settling Defendants.

The final element of Rule 23(e)(2) requires the Court to determine whether the proposal treats class members equitably relative to each other. The Settlement Fund will be distributed on a *pro rata* basis among all class members that file claims, which treats the class members equitably.

---

[44] Mem. Law Supp. EPPs' Mot. for Final Approval at 33-34 [MDL Doc. No. 3913-1]; Mem. Law Supp. EPPs' Mot. Att'ys Fees, Expenses & Service Awards at 2 [MDL Doc. No. 3772-1].

[45] Fed. R. Civ. P. 23(e)(3).

## V.    CONCLUSION

Having determined that the Settlement is fair and reasonable, and that all applicable requirements have been met, the Court will approve the Settlement. Appropriate orders will be entered.