**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br><br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>INDIRECT RESELLER PLAINTIFF ACTIONS | |
| *In re: Pravastatin (Indirect Reseller Plaintiffs)*<br><br>*Reliable Pharmacy et al. v. Actavis Holdco US, Inc. et al.*<br><br>*Reliable Pharmacy et al. v. Actavis Holdco US Inc. et al.* | 16-PV-27243<br><br>19-CV-06044<br><br>20-CV-06291 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE INDIRECT RESLLER PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF**
**THE IRP-LUPIN PHARMACEUTICALS, INC. CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................................................................ii

TABLE OF AUTHORITIES .............................................................................................................. iv

I.     PRELIMINARY STATEMENT ..................................................................................... 1

II.    CASE HISTORY ................................................................................................... 2

III.   THE PROPOSED SETTLEMENT........................................................................... 4

    A.    The Settlement Class................................................................................................. 4

    B.    The Settlement Benefits............................................................................................ 5

    C.    Settlement Administration and Notice.............................................................. 5

    D.    Exclusion (Opt-Out) and Objection Rights.................................................... 5

IV.   ARGUMENT............................................................................................................ 6

    A.    Legal Standard ......................................................................................................... 6

    B.    Fairness Prong: The Proposed Settlement Is Fair, Reasonable, and Adequate ............. 7

        1.    Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class for Settlement Purposes ......................................................................................... 8

        2.    The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel................................................................................. 10

        3.    The Relief Under the Proposed Settlement Is Adequate.......................................... 11

        4.    The Settlement Treats All Class Members Fairly ...................................................... 14

        5.    The Remaining *Girsh* Factors Are Also Satisfied.................................................... 15

    C.    Certification Prong: It Is Appropriate to Certify the Settlement Class for Purposes of the Settlement .................................................................................... 16

        1.    The Elements of Rule 23(a) Are Satisfied in the Present Case ................................. 17

            i.     Numerosity.............................................................................................. 18

            ii.    Commonality............................................................................................ 18

            iii.   Typicality ................................................................................................ 19

iv. Adequacy ........................................................................................................... 22

2. The Requirements of Rule 23(b)(3) Are Met in the Settlement Context .................. 23

V. CONCLUSION ............................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 16, 24

*Atis v. Freedom Mortgage Corporation*, 2018 WL 5801544 ........................................................ 21

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ..................................................... 18

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ............................................................ 20

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) ................................................................... 23

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.) ........................................................................... 17

*Eisenberg v. Gagnon, cert. denied*, 424 U.S. 946 (1985) .............................................................. 17

*Erheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ............................................................. 6

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).................................... 20, 21

Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975)............................................................................. vii, 8

*Grassy v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987)......... 21

*Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978)............................................. 24

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992)................................. 21

*Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979)................................................................... 19

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) .......................................... 19

*In re Asbestos School Litig.*, 104 F.R.D. 422 (E.D. Pa. 1984)................................... 18, 19, 20, 22

*In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL NO. 1426, 2004 WL 1068807
   (E.D. Pa. May 11, 2004) ......................................................................................................... 6

*In re Beef Indus Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979) .................................................. 17

In re Beef Indus Antitrust Litig., *cert. denied*, 452 U.S. 905 (1981)............................................ 17

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) .......................................... 13

*In Re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999)................................................ 18

*In re General Instruments Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................... 14

*In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890
(N.D. Cal. May 21, 2013) ...................................................................................................... 12

*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79 (E.D. Pa. 2003)........................ 21

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1999)........................ 14

*In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016).......................... passim

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11
(E.D.N.Y. 2019)................................................................................................................ 8, 11

*In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) .................................................... 15

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998)............ 17, 18

*In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997).......................... 19, 21, 24

*In re Vicuron Pharms., Inc. Secs. Litig.*, 512 F. Supp. 2d 279 (E.D. Pa. 2007) ........................... 11

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)........................................... 11

*Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359 (N.D. Ohio 2001).................................... 14

*Jones v. Commerce Bancorp*, Inc., 2007 WL 2085357 (D.N.J. July 16, 2007)............................. 7

*Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978) ............................................. 19

*Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995)................................................... 12

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) .............................................................................. 22

*Mack v. Suffolk Cty.*, 191 F.R.D. 16 (D. Mass. 2000) ................................................................. 19

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .................................................... 18

*Mendez v. Avis Budget Grp., Inc.*, No. 11-6537 (JLL), 2017 WL 5513691
(D.N.J. Nov. 16, 2017)............................................................................................................ 24

*Myers v. Jani-King of Philadelphia, Inc.*, No. CV 09-1738, 2019 WL 4034736
(E.D. Pa. Aug. 26, 2019)........................................................................................................... 8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001)......... 20, 24

*Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812 (D.N.J. 2018)......................... 25

*Prudential II*, 148 F.3d 283 (3d Cir. 1998)................................................................ 19, 20, 22, 25

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) ...................................................... 6, 18

*Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) .................................. 21

*Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979) ....................................................... 21

*Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812 (D.N.J. June 28, 2018)........ 6, 8

*Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977)...................................... 19

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016)..................................................... 11

*Stewart v. Abraham*, 275 F.3d 220 (3d. Cir. 2001)....................................................................... 18

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ............................................. 14, 24

*Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A. 00-5118, 2002 WL 1773035
   (E.D. Pa. July 31, 2002).......................................................................................................... 6

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ......................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................. 19

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956 (3d Cir. 1983)...................................... 14

*Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) ................................ 12

*Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984) ............................................................ 21, 22

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)............................................... 18, 22

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................. passim

**Treatises**

7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1754
   (4th ed.)................................................................................................................................. 26

The Indirect Reseller plaintiffs Chet Johnson Drug, Falconer Pharmacy, Halliday's & Koivisto's Pharmacy, North Sunflower Medical Center, Reliable Pharmacy, and Russell's Mr. Discount Drugs (the "IRPs" or "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this Memorandum in support of their Motion for Preliminary Approval of the IRP-Lupin Pharmaceuticals, Inc. Class Action Settlement. For the reasons stated below, the Court should grant preliminary approval of the proposed settlement of this class action.

## I. PRELIMINARY STATEMENT

Plaintiffs, through undersigned counsel, have secured a Proposed Settlement ("Settlement") with Defendants Lupin Pharmaceuticals, Inc. ("Lupin") and David Berthold ("Berthold," together, the "Settling Defendants") that contributes $5,750,000 to a Settlement Fund[1] to be ultimately disbursed to a nationwide class of privately-owned pharmacies as well as hospitals. The Settlement also provides other benefits to aid Plaintiffs as they continue to litigate against Settling Defendants' alleged co-conspirators.

Plaintiffs' Counsel respectfully submits that the terms of the Settlement are fair, adequate, and reasonable for the Settlement Class and that the requirements for final approval will be satisfied.

In considering preliminary approval, the issue before the Court is whether the proposed Settlement is within the range of what may be found to be fair, adequate, and reasonable. Only after Settlement Class Members and others have had an opportunity to receive notice and present supporting or opposing evidence at a formal fairness hearing will the parties ask the Court to render a final judgment regarding the fairness of the proposed Settlement.

---

[1] Capitalized terms are to be given the meaning of their definitions in the Settlement Agreement.

At this preliminary stage of the settlement process, Plaintiffs respectfully request that the Court enter the proposed Order for Preliminary Approval filed contemporaneously herewith, which will (a) grant preliminary approval of the proposed Settlement; (b) certify the Settlement Class pursuant to the provisions of Fed. R. Civ. P. 23(b)(3), and c) appoint Christian Hudson of Cuneo Gilbert Flannery & LaDuca, LLP as Class Counsel.

## II.    CASE HISTORY

The Defendants in MDL 27214, including Defendants Lupin, Berthold, and other generic drug industry companies and figures, are alleged to have participated in a conspiracy to arrange price increases for more than two hundred generic drugs and to allocate customers in order to assign each Defendant manufacturer its "fair share" of business while keeping prices high.

Plaintiffs are independent pharmacies, clinics, and hospitals that purchased and later dispensed these drugs. They allege that, due to Defendants' antitrust violations, they paid prices for these drugs that were illegally inflated above what they would have paid in the absence of any agreement. Plaintiffs' causes of action stem from Section 1 of the Sherman Act as well as the antitrust, consumer protection, and unjust enrichment laws of various states.

In 2016, Plaintiffs began investigating allegations of price-fixing in the generic drug industry.  By August 2017, Plaintiffs had filed actions relating to eighteen generic drugs and had named Lupin as a Defendant in an action regarding the drug pravastatin. Hudson Decl. ¶6.  As investigations continued, Plaintiffs filed additional complaints alleging that the price-fixing conspiracy extended to more drugs, and named Lupin and Berthold as Defendants in additional complaints. Hudson Decl. ¶8.  The IRPs have largely defeated Defendants' motions to dismiss various complaints, albeit with certain motions against certain complaints still outstanding. *See* Hudson Decl. ¶9.

Beginning in 2017, Plaintiffs developed and served discovery requests and interrogatories and then negotiated custodian lists, search terms, ESI protocols, and other details relating to productions of documents and transactional data as part of a global MDL discovery coordination process.  Hudson Decl. ¶10.  Lupin and Berthold participated in this MDL-wide discovery process along with their co-Defendants but also independently litigated several discovery issues.  *Id*. This process has included arguments before Special Masters David Marion, Lawrence Stengel, and Morgan Birch, and Special Discovery Master Bruce Merenstein.  *Id*.

Working together with other plaintiff groups in MDL 2724, Plaintiffs reviewed and analyzed documents generated by Lupin's employees (like Berthold), including email correspondence with other manufacturers and distributors of generic drugs, internal emails, pricing spreadsheets, market share reports, and phone logs obtained via subpoenas to phone carriers. Hudson Decl. ¶11.

Plaintiffs' Counsel have substantial experience in prosecuting class actions and have specific experience litigating class actions focused on the price-fixing of commodities and its effect on downstream small businesses.  Hudson Decl. ¶12.  As part of their ongoing investigation, Plaintiffs' Counsel have consulted academic and professional experts in pharmacy payment flows and generic drug pricing, pharmacy data systems, horizontal cartel overcharges, and antitrust econometrics to assist them in the action.  *Id*.

Plaintiffs made productions of transactional data regarding their purchases of the Drugs at Issue and, conversely, obtained transactional data from Lupin, other Defendants, third parties, and commercial databases in order to estimate the effect of the alleged price-fixing on the members of the Class.  Hudson Decl. ¶13.

As the litigation progressed through discovery, Plaintiffs and Settling Defendants commenced settlement negotiation, taking into account the case's strengths and weaknesses and the progress of the MDL.  Hudson Decl. ¶16.  These negotiations—which included the exchange of information and data, written offers and counter offers, multiple meet and confers, and numerous telephone conversations—were conducted contemporaneously with the preparations for class certification and trial.  *Id*.  The parties agreed to mediate before Judge Diane W. Welsh in February 2026, which led to fundamental agreement.  *Id*.  The parties then negotiated precise language of a memorandum of understanding and a settlement agreement.  *Id*.  The agreement was fully signed by both parties on May 7, 2026.  *Id*.

## III.    THE PROPOSED SETTLEMENT

### A.  The Settlement Class

The "Settlement Class" is defined as all dispensers of drugs (including Clinics, Hospitals, and Independent Pharmacies) in the United States and its territories that purchased one or more Drugs at Issue from January 1, 2010 through the present, including (a) those that purchased directly from AmerisourceBergen Drug Corporation, Cardinal Health, Inc., Red Oak Sourcing, LLC, The Harvard Drug Group, LLC, HD Smith, LLC, McKesson Corporation, Morris & Dickson, Co., LLC, or Walgreens Boot Alliance, Inc., or their subsidiaries; and (b) those that purchased indirectly from any Defendant in the MDL.

The Settlement Class excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (b) entities owned in part by judges or justices involved in this action or any members of their immediate families; (c) all Pharmacies, Clinics, or Hospitals owned or operated by publicly traded companies; and (d) all Pharmacies, Clinics, or Hospitals owned or operated by federal government entities and any other government entities named as parties in this MDL or in related actions styled *Connecticut, et al. v. Sandoz, et al.*, No. 3:20-CV-

4

00802 (D. Conn.), *Connecticut, et al. v. Aurobindo, et al.*, No. 3:16-CV-02056 (D. Conn.), and *Connecticut, et al. v. Teva, et al.*, 3:19-CV-00710 (D. Conn.).

### B.  The Settlement Benefits

The Settlement establishes a Settlement Fund and requires Lupin to pay $5,750,000 to that fund within thirty days of its execution. As set forth in the Settlement Agreement, IRPs will endeavor to mitigate the costs of notice by disseminating notice of this settlement with notice of any other settlements reached in this multi-district litigation. Lupin and Berthold will also provide meaningful cooperation as outlined by the Settlement Agreement.

### C.  Settlement Administration and Notice

20.    The IRPs, within three months of preliminary approval of the Settlement Agreement, and subject to Settling Defendants' review and comment, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by the Settlement Agreement to all Settlement Class Members identified by IRPs ("Notice Motion"). The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice. Lupin and Berthold will be given an opportunity to review the proposed notice form, and the IRPs will in good faith consider any comments or proposed edits from them.

### D.  Exclusion (Opt-Out) and Objection Rights

Any member of the Settlement Class wishing to do so may opt out of the Settlement Class by filing a written request before the Opt-Out Deadline to be set by the Court. An opt-out form will be disseminated along with the notice to class members. Any member that files such a request shall be excluded from the Settlement Class and shall have no right to object and no other rights with respect to this settlement

Settlement Class Members may choose to remain in the Class but file a notice of intent to object to the Settlement if they wish to do so. Settlement Class Members who wish to object must

file a notice of intent with the Court, Plaintiffs' Counsel, and Settling Defendants' counsel by the date set by the Court. The statement of intent to object should include whether the objector intends to appear at the fairness hearing, a detailed statement of the specific legal and factual bases for each objection and must be signed by the objector.

## IV.  ARGUMENT

### A.  Legal Standard

The Third Circuit has repeatedly "articulated a policy preference favoring voluntary settlement in class actions." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013); *see also Erheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (judicial policy strongly favors settlement in class actions).

Federal Rule of Civil Procedure 23(e) dictates a two-stage process for judicial approval of a proposed class action settlement. A preliminary approval that triggers notice to the class is followed by a final approval involving a fairness hearing. *See* Fed. R. Civ. P. 23(e)(1)-(2).

Preliminary approval itself has two prongs. Each pertains to the likelihood of ultimate approval once the full Rule 23 process has run its course. "Giving notice is justified" if the court finds it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

This threshold for preliminary approval of a proposed class action settlement is not high, and for good reason: "[p]reliminary approval is not binding." *Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *2 (D.N.J. June 28, 2018). The court need not reach any "ultimate conclusion on the issues of fact and law that underlie the merits of the dispute." *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL NO. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (quoting *Thomas v. NCO Fin. Sys., Inc.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)). The primary purpose is to ensure that there are no obvious deficiencies

6

in the settlement that would preclude final approval. *See Jones v. Commerce Bancorp*, Inc., 2007

WL 2085357, at *2 (D.N.J. July 16, 2007).

### B.  Fairness Prong: The Proposed Settlement Is Fair, Reasonable, and Adequate

Rule 23(e)(2) requires consideration of the following fairness factors at the preliminary

approval stage:

> (1)    the class representatives and class counsel have adequately represented the class;
>
> (2)    the proposal was negotiated at arm's length;
>
> (3)    the relief provided for the class is adequate, taking into account:
>
> > (i)     the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
> >
> > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
>
> (4)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts in the Third Circuit must also consider additional factors set forth in *Girsh v. Jepson*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

7

521 F.2d 153, 157 (3d Cir. 1975) (ellipses omitted).

Due to the significant overlap in these two lists of factors, the analysis below follows the frequently employed framework according to which the "Court first considers the Rules 23(e)(2) factors, and then considers additional [*Girsh*] factors not otherwise addressed by the Rule 23(e)(2) factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *Myers v. Jani-King of Philadelphia, Inc.*, No. CV 09-1738, 2019 WL 4034736, at *7 n.4 (E.D. Pa. Aug. 26, 2019) (recognizing that Third Circuit courts apply both the *Girsh* factors and "any factor under Rule 23 that is not addressed by *Girsh*").[2] As detailed below, both the Rule 23(e)(2) factors and the applicable *Girsh* factors weigh in favor of a finding that the settlement is fair, reasonable, and adequate, and should be granted preliminary approval.[3]

### 1. Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Class for Settlement Purposes

Under Rule 23(e)(2)(A), the Court should consider whether the class representative and class counsel adequately represented the class, based on "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment.

---

[2] The Court should consider the factors set forth in both amended Rule 23(e)(2) and *Girsh*. *See* Advisory Committee Note to 2018 amendments to Rule 23(e)(2) (stating that the 2018 amendments are not intended to "displace any factor" set forth in any prior court of appeals ruling governing final approval of class action settlements, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision").

[3] As an initial matter, the second and seventh *Girsh* factors are inapplicable to this case. It would be premature to analyze the second factor, the reaction of the class to the settlement, prior to notice to the class members. *See Shapiro*, 2018 WL 3158812, at *8. Likewise, the seventh *Girsh* factor, the ability of the defendant to withstand a greater judgment, is not implicated here, since this factor is "most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 440.

In this case, both Plaintiffs and their Counsel are adequate representatives of the Settlement Class. Plaintiffs' interests are in alignment with those of the Settlement Class. Plaintiffs and Settlement Class Members share an overriding interest in obtaining the best claims process and benefits for independent pharmacies and hospitals. As noted above, Plaintiffs have actively participated in representing the interests of the Settlement Class prior to commencement of this matter and throughout this litigation. Furthermore, the Settlement does not grant preferential treatment to Plaintiffs, who will receive the same relief afforded to any other Settlement Class Member. Although the Settlement also contemplates that Plaintiffs may receive a class representative service award, approval of that award will be decided by the Court upon noticed motion. Plaintiffs spent time pursuing the interests of the Settlement Class, including responding to discovery requests, producing documents, and actively engaging with Plaintiffs' Counsel throughout the discovery phase. (Cuneo Decl., ¶13.)

With respect to the adequate representation of the settlement class by Plaintiffs' Counsel, Rule 23(e)(2)(B) focuses on "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment. Here, Plaintiffs' Counsel have experience litigating antitrust class actions and have particular experience in recovering damages for classes of small business in horizontal price-fixing cases such as this one. Hudson Decl., ¶¶1, 12.; *see In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (plaintiffs' counsel should be "aware of the strengths and weaknesses of their case").

Plaintiffs' Counsel have spent a decade developing this case and diligently prosecuting these actions on behalf of the Settlement Class, have engaged in substantial discovery, have retained and consulted with experts, and have negotiated with Settling Defendants' counsel including via mediation to craft a deal that fairly compensates Plaintiffs and Settlement Class

9

Members for their injuries. Plaintiffs' Counsel has a firm "grasp of the legal hurdles that [Plaintiffs] would need to clear in order to succeed" with their claims. *Id.* at 436-439 (with respect to the third *Girsh* factor, "What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims."). This factor therefore supports granting preliminary approval of the Settlement.

### 2. The Proposed Settlement Is the Product of Arms-Length Negotiations Among Experienced Counsel

Rule 23(e)(2)(B) directs the Court to consider whether the settlement proposal was negotiated at arm's length. This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment. The settlement process in this case was negotiated at arm's length by counsel experienced in the prosecution, defense, and settlement of complex class actions. It culminated in an agreement borne out of mediation before the Court's appointed mediation Special Master Diane M. Welsh. Hudson Decl. ¶16.

Together, the Rule 23(e)(2)(A) and (B) factors discussed above also encompass the third *Girsh* factor, which takes into account the stage of the proceedings and the amount of discovery completed. *See* Fed. R. Civ. P. 23 Advisory Committee's Notes to 2018 Amendment ("Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"). As the Third Circuit has explained, "[t]he third *Girsh* factor captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium*

10

*Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (citation omitted). As demonstrated above, this *Girsh* factor also weighs in support of preliminary approval.

### 3.    The Relief Under the Proposed Settlement Is Adequate

Rule 23(e)(2)(C) requires consideration of whether the relief provided for the class is adequate, taking into account several enumerated factors. As explained below, the relief provided to the Settlement Class is more than adequate to satisfy the four relevant areas of concern specified by Rule 23(e)(2)(C): (1) "the costs, risks, and delay of trial and appeal"; (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (3) "the terms of any proposed award of attorney's fees, including timing of payment"; and (4) "any agreement required to be identified under Rule 23(e)(3)."[4] This inquiry also subsumes several *Girsh* factors, "including (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee*, 330 F.R.D. at 36. The complexity and expense of this case, in conjunction with the risks Plaintiff faced in maintaining this litigation, weigh heavily in favor of preliminary approval.

First, the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535; *In re Vicuron Pharms., Inc. Secs. Litig.*, 512 F. Supp. 2d 279, 284 (E.D. Pa. 2007). The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial

---

[4] The parties have entered into a side agreement regarding opt-out members of the class, which will be filed with the Court under seal.

litigation risks in this case."). In contrast to the uncertainty and delays inherent in continued litigation, the Settlement "provides a significant, easy-to-obtain benefit to class members." *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. May 21, 2013). These economic gains multiply when settlement also avoids the costs of litigating class status—often a complex litigation by itself. Furthermore, a settlement may represent the best method of distributing damage awards to injured Plaintiffs, especially where litigation would delay and consume the available resources and where piecemeal settlement could result in the complete exhaustion of defendant's resources.

With respect to the first factor, Settling Defendants have vigorously denied liability and certification of a class from the outset, and Plaintiffs would thus likely have considerable risks proceeding with this litigation. Settling Defendants' position has been clear that Plaintiffs cannot prove that it participated in an overarching conspiracy and cannot prove that price increases are attributable to an illegal agreement rather than to the entry and exit of competitors

While Plaintiffs are confident they could overcome these hurdles, there is a real risk that they may not. Further, continued litigation would be long, complex, and expensive, and a burden to court dockets. *Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered). Continuing this litigation against Lupin and Berthold would entail a lengthy and expensive litigation involving legal and factual issues specific to them and not entirely resolvable on an MDL-wide basis.[5]  It is reasonable to expect that all such matters would be sharply

---

[5] For instance, the current bellwether *In re: Pravastatin (Indirect Reseller Plaintiffs)*, 17-cv-3821, 16-PV-27243 (E.D. Pa.) includes Lupin but does not include Berthold, and only has six Defendants out of dozens in the MDL.

disputed and vigorously contested, as they currently are in *IRP Pravastatin* and were in settlement negotiations.  Additionally, Settling Defendants have and would assert various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on class questions of proof making the outcome of such trial uncertain for both parties. Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals. Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

The avoidance of all of these risks contributes significantly to the value and adequacy of the Settlement. *See, e.g.*, *Spann*, 314 F.R.D. at 326 ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."). In contrast to the uncertainty and delays inherent in continued litigation, the Settlement "provides a significant, easy-to-obtain benefit to class members." *In re Haier Freezer Consumer Litig.*, 2013 WL 2237890, at *4. Balancing the complexities of this litigation, the substantial risk, expense, and duration of contained litigation against Settling Defendants and likely appeal if Plaintiffs did prevail against them at trial, Plaintiffs' Counsel believe the Settlement represents a satisfactory resolution of this litigation against Lupin and Berthold. (Cuneo Decl. ¶¶ 16-17.)

Payment of attorneys' fees and reimbursement of litigation expenses for Settlement Class Counsel will be determined by a separate application to the Court to be filed only after preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Agreement requires Settlement Class Counsel to file a "Notice Motion." If granted, the Notice Motion will trigger the dissemination of notice to the class members and establish a period for objections. Settlement Class Counsel will be able to file their motion for attorneys' fees and expenses before the expiration of the objection period,

13

thereby providing an opportunity for Settlement Class Member to file objections prior to the final approval hearing.

Finally, there is no reason to doubt the fairness of the proposed Settlement. The Settlement was the result of good faith, arm's length negotiations between experienced and informed counsel on both sides. It is well established that significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class as here. *In re General Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001). There was no collusion between the negotiating parties. The proposed Settlement does not grant unduly preferential treatment to the class representatives or to segments of the Settlement Class, and it does not provide excessive compensation to Plaintiff's counsel. *See Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

Considering the Rule 23(e)(2)(C) factors and the *Girsh* factors subsumed therein, the proposed settlement is fair, adequate, and reasonable.

### 4.    The Settlement Treats All Class Members Fairly

The Third Circuit has observed that "[a] district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). The Settlement is fair and reasonable to all Settlement Class Members and treats them equally in relation to their purchases. The motion for notice to the class, to be filed by Plaintiffs at a time of their discretion, will establish a uniform, objective method for determining the value of individual claims. The claim protocol will fairly protect the interests of all Settlement Class Members by

14

providing fair, reasonable and adequate relief through application of identical qualifying criteria to all Settlement Class Members.

Nor does the Settlement improperly grant preferential treatment to segments of the Settlement Class, notwithstanding the fact that some Settlement Class Members may be entitled to certain damages based on state statutes. *See, e.g.*, *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) ("[V]aried relief among class members with differing claims in class settlements is not unusual."). In sum, the Settlement ensures the Settlement Class Members will be treated equitably relative to each other. This factor therefore weighs strongly in favor of preliminary approval as fair, reasonable, and adequate.

### 5.  The Remaining *Girsh* Factors Are Also Satisfied

The remaining applicable *Girsh* factors—the eighth and ninth factors—concern whether the settlement is in the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation. As the Third Circuit has explained, "[i]n evaluating the eighth and ninth *Girsh* factors, we ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 440 (quoting *In re Warfarin*, 391 F.3d at 538).

Here, the Settlement provides valuable relief to the Settlement Class Members in the form a Settlement Fund that will ultimately be disbursed proportionally to their purchases of the Drugs at Issue. The fund model is appropriate here because Lupin is among the first MDL 2724 Defendants to settle with the IRP class and the IRPs expect further recoveries, including from Defendants such as Teva Pharmaceuticals USA, Inc., Glenmark Pharmaceuticals Inc. (USA), and

Sandoz Inc., who have each already admitted their participation in price-fixing of generic drugs.[6] Furthermore, Lupin will pay initial costs of administering the Settlement. The Settlement thus provides benefits to the Settlement Class, especially when considered in light of the litigation risks.

The Settlement is even more compelling given the substantial litigation risks the Settlement Class faced, including class certification, summary judgment, and trial. The Settlement provides meaningful benefits to all settlement class members nationwide. In light of the obstacles to applying either a single state's law or the law of many states in the litigation context, the nationwide Settlement constitutes a significant achievement on behalf of the Settlement Class— an achievement that might not have been obtained had Plaintiffs continued litigating. Assessed against the delays and uncertainties associated with trial and appeals, the Settlement provides immediate, substantial financial benefits and clearly falls within the range of reasonableness. Indeed, whatever relief may be obtained at trial, it would still be many more months or years away from realization compared to the Settlement, especially given Defendants' previous interlocutory appeals of prior MDL class certification orders. Because the Settlement is therefore well within the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation, the eighth and ninth *Girsh* factors weigh heavily in favor of preliminary approval.

### C. Certification Prong: It Is Appropriate to Certify the Settlement Class for Purposes of the Settlement

The benefits of the proposed Settlement can be realized only through the certification of a settlement class. The Supreme Court of the United States has now emphatically confirmed the viability of such settlement classes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). So,

---

[6] These admissions are contained in statements of facts appended to these Defendants' deferred prosecution agreements with the Department of Justice. The admissions have been incorporated into MDL discovery via interrogatories and requests for admission directed to these Defendants.

16

too, have the federal appeals courts. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998). In this Circuit, there is a preference for class certification: "The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.), *cert. denied*, 424 U.S. 946 (1985) In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under scrutiny of the trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R. D. 202, 205 (S.D.N.Y 1995) (quoting *In re Beef Indus Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979), *cert. denied*, 452 U.S. 905 (1981)).

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class. All the criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes. Thus, a settlement class should be certified where the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are satisfied and when one of the three subsections of Rule 23(b) is met.

### 1.   The Elements of Rule 23(a) Are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the named Plaintiffs must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). *See, e.g.*, *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998); *Prudential*, 148 F.3d at 308-09; *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975). Here, all four elements easily are satisfied.

### i.    Numerosity

There is no threshold number required to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason. *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d. Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of plaintiffs exceeds 40); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (noting that classes exceeding 40 are sufficiently numerous).

Plaintiffs estimate that there are 24,000 to 29,000 members of the Class, which easily satisfies numerosity, especially because pharmacies and hospitals are geographically dispersed throughout the United States. *In Re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 477 (W.D. Pa. 1999) (numerosity is further supported when there is "significant geographic distribution among the class members.").

### ii.    Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Commonality is established "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 426-27 (quoting *Rodriquez*, 726 F.3d at 382). A common question is one which "arises from a common nucleus of operative facts regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos School Litig.*, 104 F.R.D. 422 (E.D. Pa. 1984); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705 (D. Ariz. 1993). The rule does not require that all questions be common or even that common questions predominate. *Hummel v.*

18

*Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979); *Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978). Plaintiffs are not required to show that all class members' claims are identical to each other, and any difference between the proposed class members, "while arguably relevant as defenses to liability, do not change the fact that this class action raises the same basic claim and shares common questions of law." *Mack v. Suffolk Cty.*, 191 F.R.D. 16, 23 (D. Mass. 2000). Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See Prudential II*, 148 F.3d at 310; *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 280 (S.D. Ohio 1997); *Asbestos School Litig.*, 104 F.R.D. at 429; *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977); s*ee also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987).

The commonality requirement of subsection (a)(2) is easily met here. The claims of the Class representatives and all Settlement Class Members are premised on the same factual allegations about the "fair share" price-fixing conspiracy and the same causes of action under antitrust and consumer protection laws. On a motion for class certification, the same economic tools would be applied to the same datasets to determine the extent of economic loss Plaintiffs suffered by being illegally overcharged for the drugs they needed to fill prescriptions.

This and the other questions are common to the class, capable of class-wide resolution and "will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re NFL Players' Concussion Injury Litig.*, 821 F.3d at 427 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Given the presence of these common questions central to this litigation, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met here.

### iii.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." The typicality requirement of Rule 23(a)(3) "ensures the interests of the class and

19

the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994)). As the Third Circuit described in *Baby Neal*:

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. [Citation omitted.] The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees. [Citation omitted].
>
> Typically entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or. . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' [Citations omitted.] Commentators have noted that case challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. [Citation omitted.]

43 F.3d at 57-58.

The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative. *See, e.g.*, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982); *Prudential II*, 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litig.*, 104 F.R.D. at 429-30.

Typicality does not require that every class member "share identical Claims." *Newton*, 259 F.3d at 182-83. Instead, typicality is satisfied where the named plaintiffs and class members'

20

claims "arise from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Atis*, 2018 WL 5801544, at \*20. The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g.*, *Falcon*, 457 U.S. at 156-57; *Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984); *Scott v. University of Delaware*, 601 F.2d 76 (3d Cir. 1979); *Telectronics*, 172 F.R.D. at 280. The typicality requirement has been liberally construed by the federal courts. *See, e.g.*, *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In the present case, individual variations among Settlement Class Members do not render the named representative Plaintiffs' claims atypical of those of the Class. Accordingly, the common issues necessarily share "the same degree of centrality" to the named Plaintiffs' claims such that in litigating the liability issues the named Plaintiffs reasonably can be expected to advance the interests of all absent Settlement Class Members in a favorable determination with respect to each such issue. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992); *Grassy v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987).

Even if there are "pronounced factual differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances." *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 84 (E.D. Pa. 2003); *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J.

21

2008) ("[W]hile the Court must ensure the interest of the plaintiffs are congruent the Court will not reject the Plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future."). Accordingly, the typicality requirement of the rule is easily satisfied.

### iv.    Adequacy

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit consistently has ruled that:

> Adequate representation depends on two factors: (a) the Plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss*, 745 F.2d at 811 (quoting *Wetzel*, 508 F.2d at 247); *see also Prudential II*, 148 F.3d at 312. These two components are designed to ensure that absentee class members' interests are fully pursued.

### a.    The Class Has Been More Than Adequately Represented by Plaintiffs' Counsel

The existence of the elements of adequate representation are presumed and "the burden is on the defendant to demonstrate that the representation will be inadequate." *Asbestos School Litig.*, 104 F.R.D. at 430 (citing *Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982)).

In the present case, the presumption of adequate representation cannot be rebutted. With respect to the issue of adequacy of counsel, the Court may take judicial notice of the fact that counsel for the IRPs have substantial experience in litigating antitrust class actions. (Hudson Decl., ¶¶ 1, 12). Plaintiffs' Counsel have been lead counsel in numerous complex class actions involving allegations of horizontal price-fixing and claims by indirect purchasers of the products at issue. Plaintiffs' Counsel have and will continue to aggressively litigate this case. (*Id.*) As discussed *supra*, Counsel have diligently prosecuted this action and taken significant discovery that has

22

enabled them to negotiate an advantageous settlement on behalf of the class. Plaintiffs' Counsel negotiated the proposed Settlement from a position of knowledge, and as advocates for the entirety of the Settlement Class. The adequacy requirement is satisfied for certification.

### b. The Class Representative's Interests Are Not Antagonistic to Those of the Class

There is nothing to suggest that the representative Plaintiffs have significant interests antagonistic to those of the absent Settlement Class in the vigorous pursuit claims against Settling Defendants. *See Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("gauging the adequacy of representation requires an assessment whether the class representatives have interests antagonistic to those of the class they seek to represent"). Here, both the Class representatives and Settlement Class Members are equally interested in detailing to the Court the manner by which pharmacies and hospitals suffered from increases in the prices of generics drugs from 2010 onwards.

Each of the four mandatory requirements of Rule 23(a) are satisfied here.

### 2. The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

In addition to satisfying Rule 23(a), plaintiffs must show that each putative class falls under at least one of the three subsections of Rule 23(b). Here, the settlement class qualifies under Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

23

(D) the difficulties likely to be encountered in the management of a
class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Newton*, 259 F.3d at 187. Common questions must predominate over individual questions. The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978). Rule 23(b)(3) does not require that all questions of law or fact be common. *See Telectronics*, 172 F.R.D. at 287-88. In this regard, courts generally focus on the liability issues and if these issues are common to the class, common questions are held to predominate over individual questions. *See id.*

The predominance requirement of Rule 23(b) entails "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). In the settlement context, predominance is ordinarily satisfied by claims arising out of the defendant's common conduct. *See, e.g.*, *Sullivan*, 667 F.3d at 299-300 ("[T]he focus is on whether the defendant's conduct was common as to all of the class members."); *Mendez v. Avis Budget Grp., Inc.*, No. 11-6537 (JLL), 2017 WL 5513691 (D.N.J. Nov. 16, 2017) ("[I]n cases where it is alleged that the defendant … engaged in a common course of conduct, courts have found that said conduct satisfies the commonality and predominance requirements.").

Here, Plaintiffs raise common issues of fact and law that predominate over any individual issues that might arise. The Settlement Class Members' claims for compensatory relief are founded upon a common legal theory because all Settlement Class Members have an interest in the adjudication of the topmost issues of fact and law in this MDL: whether or not there was an illegal

24

agreement between Lupin and any of its direct competitors, whether Berthold coordinated and fostered that agreement with competitors, and whether those agreements can be found to have formed part of an overarching conspiracy. Once those issues are determined on a class-wide basis, the remaining issues focus on the extent of the damages attributable to such a conspiracy, which is measured by the overcharge that flows downstream between successive levels of purchasers. This measurement is also susceptible to common proof and statistical methods in fact require pooled data from thousands of transactions of Class Member purchases and produce models that apply to all Class Members.  To the extent that questions of damages are potentially individual, this would not detract from the predominance of the numerous common issues for settlement purposes, because the "focus of the predominance inquiry is on liability, not damages." *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 845 (D.N.J. 2018) (quotation omitted).

The other requirement of Rule 23(b)(3) that must be satisfied is the superiority requirement (*i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue). "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d 316. Considerations of judicial economy underscore the superiority of the class action mechanism in this case. *See Prudential*, 148 F.3d at 316 & n.57. Settlement on a class basis is also superior to individual litigation and adjudication because settlement provides Settlement Class Members with prompt compensation for their damages. By contrast, compensation resulting from litigation is highly uncertain and may not be received before lengthy trial and appellate proceedings are complete. In addition, the Settlement obviously removes the overwhelming and redundant costs of individual trials.

Accordingly, the Settlement Agreement renders a class action superior to other potential avenues of recovery for Plaintiffs and the Settlement Class. Therefore, this case presents the paradigmatic example of a dispute that can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. 7A Fed. Prac. & Proc. Civ. § 1754 (4th ed.).

In sum, the requirements of Rule 23(b)(3) are satisfied and certification of the proposed class is appropriate.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) conditionally certifying a class action with respect to the claims against Defendants Lupin and Berthold pursuant to Fed. R. Civ. P. 23(b)(3) for the purpose of effectuating a class action settlement of certain claims against Lupin and Berthold; (2) preliminarily approving a class settlement with Lupin and Berthold; and (3) appointing the undersigned attorneys as Lead Counsel for the Settlement Class.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Christian Hudson*

Christian Hudson
Charles Barrett

**CUNEO GILBERT FLANNERY & LaDUCA, LLP**
222 Livingston Street, Unit 2

26

Brooklyn, N.Y. 11201
(202) 789-3960
(202) 789-1819 (fax)
christian@cuneolaw.com
cbarrett@cuneolaw.com


*Lead Counsel and Settlement Class Counsel
for the Indirect Reseller Plaintiffs*