## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *Humana Inc. v. Actavis Elizabeth LLC, et al.* | 18-cv-03299 |

## MEMORANDUM OPINION

This matter concerns an upcoming bellwether trial in Multi-District Litigation alleging antitrust violations by several generic drug manufacturers. The bellwether trial, between a direct action plaintiff (i.e., a plaintiff who has opted out of a class action) and several defendants, is scheduled to begin, after jury selection, on September 14, 2026. In November 2025, the Plaintiff served reports from its experts—W. David Bradford[1] and William Vogt[2]—expressing opinions on why the Defendants increased prices on certain generic drugs and the impact of the price increases on the Plaintiff. On January 9, 2026, the Defendants served rebuttal reports

---

[1] 18-cv-03299, Doc. No. 433-5 (hereinafter *Bradford I.* This is a corrected copy of the original report, and the one the parties rely upon in their briefing.) Unless specified otherwise, all references to documents are from the 18-cv-03299 docket. Page numbers in this and the other expert reports shall refer to the page or paragraph numbers of the reports themselves, and not the page numbers imprinted with the ECF timestamp.

[2] Doc. No. 433-6 (hereinafter *Vogt I*).

from two experts — Pierre-Yves Cremieux[3] and Amitah Chandra[4] — upon Plaintiffs. Plaintiffs replied on February 27, 2026, with reports from Bradford[5], Vogt[6] and Richard G. Frank.[7] *Daubert* hearings on the admissibility of the reports are scheduled for June 4, 2026.

The Defendants assert that portions of the Plaintiffs' experts' second round of reports should be stricken because they exceed the scope of rebuttal by citing and relying upon economic theories or models not expressed in the November 2025 Bradford and Vogt reports. On March 23, 2026, the Defendants filed a motion to strike portions of Plaintiffs' rebuttal reports or, in the alternative, for leave to file limited expert reports in response.[8] Plaintiffs responded on April 6, 2026,[9] and Defendants replied on April 13, 2026.[10] Before the motion to strike's filing, the Defendants proposed resolving their objections to the scope of the Plaintiff's rebuttal reports by either the Plaintiffs' striking the allegedly scope-exceeding portions of the rebuttal reports, or the Defendants filing sur-rebuttal reports from Chandra and Cremieux. Plaintiff agreed to a limited response by Chandra based on data that

---

[3] Doc. No. 501, pp. 208-887 (hereinafter *Cremieux*).
[4]*Id.*, pp. 889-1187 (hereinafter *Chandra*).
[5] Doc. No. 433-2 (hereinafter *Bradford II*).
[6] Doc. No. 433-3 (hereinafter *Vogt II*).
[7] Doc. No. 433-4 (hereinafter *Frank*).
[8] Doc. No. 432.
[9] Doc. No. 501.
[10] Doc. No. 515.

Chandra did not receive before he completed his report. The Defendants rejected that limited offer.[11]

Defendants and Plaintiff cite *Meyers v. Pennypack Woods Home Ownership Ass'n*,[12] for the measure against which their motion should be judged.[13] That opinion concerned the ruling of a trial court, sitting without a jury, excluding the testimony of two expert witnesses the plaintiff wanted to call to help prove race discrimination claims. Considering whether to exclude evidence offered by a party, *Meyers* holds, requires consideration of four factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.[14]

These factors lead to the conclusion that Defendants' motion should be denied. No one complains that their opponent(s) submitted the reports in violation of the time limits, or that the reports violate the physical limitations set by this Court's scheduling order.[15] The Defendants (if they raised it) can attempt to cure any unfair prejudice

---

[11] Doc. No. 433, pp. 7-8; Doc No. 501, pp. 9-10.

[12] 559 F.2d 894 (3d Cir. 1977).

[13] Doc. No. 433, pp. 12-13; Doc. No. 501, p.13. Plaintiff does not directly rely on *Pennypack* but does cite its similarity to an order in *Nat'l Medical Imaging v. United States Bank, N.A.*, 2019 U.S. Dist. LEXIS 232918, *5-6 (E.D.Pa. 2019).

[14] 559 F.2d at 904-05.

[15] Doc. No. 4079, PTO 329, based upon their February 27,2026, stipulation.

they suffer with their *Daubert* motion. To that point, *Daubert* motions have been

filed,[16] and the schedule for the filing of the motions, responses and replies overlap

with the Defendants' instant motion. The Defendants' objections are best considered

in that round of motions and arguments. Another report or reports would

conceivably cause additional delay, even assuming Defendants have their sur-rebuttal

reports in hand and serve them on Plaintiff within minutes of receiving this order.

Though Defendants point out that trial is still four months away, the parties' carefully

negotiated schedule called for expert issues to be argued on June 4 — another report

could require relitigating of some of the issues the Court wants resolved by then.

Finally, this Court finds that no one has acted in bad faith. Rather, there is a

difference of opinion on the scope and content of the experts' reports, and that

dispute is best handled with the pending *Daubert* motions.

When examined, the portions of Plaintiff's rebuttal reports that aggrieve the

Defendants are framed as responses to Defendants' experts' analyses. For example,

Defendants complain that several portions of *Frank* improperly rely on a legal theory

---

[16] Plaintiff also claims, at Doc. No 515, p.2, that the Defendants attached a supplemental report from Chandra to a March 26, 2026, motion, but as they do not cite its place in the docket, as required by PTO 328, this Court did not review it. Defendants' reply does not dispute this point. This Court insists on strict compliance with PTO 328's mandates that references to MDL filings be accompanied by their ECF document numbers, as the MDL and associated dockets have over 5000 filings and are still growing. Locating a document without its document number is akin to searching for a book in the Philadelphia Free Library without the aid of the Dewey Decimal Classification number.

regarding government payments that should have been raised in the Plaintiff's initial expert reports.[17] *Frank* though, is a response[18] to Dr. Chandara's assertion[19] that the Plaintiff's experts did not adequately account for such payments when estimating the damage the Defendants' actions caused the Plaintiff. Defendants make the same omission with the other portions of Plaintiff's experts' rebuttal that they seek to strike or rebut.

The Defendants' reliance on *Emerick v. Suzuki Motor Corp.*[20] is misplaced as it concerns a common-sense ruling regarding failure to follow pre-trial disclosure rules. That opinion concerned a plaintiff's attempt to introduce a videotape of expert accident-site testing that was not conducted until *after* trial commenced. The plaintiff was not allowed to introduce the evidence either in its case-in-chief (because the tape and testimony violated local rules on pre-trial disclosure of evidence) or in rebuttal (because it concerned elements of their case-in-chief).[21] Other opinions the Defendants cite in their briefs include a report and recommendation and two opinions from magistrate judges[22] that, with respect to all federal magistrate judges' knowledge

---

[17] MDL Doc. 433, p.7.

[18] *Frank*, ¶¶ 15-20.

[19] *Chandra*, ¶¶ 77-79.

[20] 750 F.2d 19 (3d Cir. 1984).

[21] *Id.*, at 21.

[22] Defendants' reply refers to "Bradley v. Amazon" and "In re Asbestos Products Liability," without providing any citation to them. Doc. No. 515, p. 3. The Court believes Defendants are referring to *Bradley v. Amazon.com, Inc.*, 2023 WL 2574572 (E.D.Pa. 2023) *and Carter v. Fireboard Corp. (In re Asbestos Prods. Liab. Litig.)*, 2012 WL

and abilities, do not purport to be controlling law and concern narrowly constructed issues. Citations to or quotes from opinions often omit their context. For example, Defendants quote a district court opinion on the scope of rebuttal expert reports[23]:

> Rebuttal evidence is appropriate to "explain, repel, counteract or disprove the evidence of the adverse party" and is not "an opportunity for the correction of any oversights in the plaintiffs' case-in-chief."[24]

However, that opinion also states:

> "[Fed.] Rule [Civ. Pro.] Rule 26 "does not automatically exclude anything an expert could have included in his or her original report" because "[s]uch a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material." "All that is required is for the information to repel other expert testimony." "An opening expert report is an early salvo in the process of defining issues for trial, and thus it is more understandable at the expert discovery stage that a party may need to include significant elaboration in a rebuttal report to challenge the assertions of the opponent's expert reports."[25]

That court, in the end, denied the motion to strike the rebuttal report.[26] As with their citations to *Bradford II*, *Vogt II*, and *Frank*, the Defendants do not provide the full

---

661673 (E.D.Pa. 2012). The reply's table of citations also cites a 1984 Court of Appeals case denominated "Bradley v. Amazon" but that opinion could not be found.

[23] MDL Doc. No. 515, p.3.

[24] *Pakootas v. Teck Cominco Metals, Ltd.*, 2012 U.S. Dist. LEXIS 72137, *7 (E.D.Wa. 2012) (citations omitted).

[25] *Id.*, *5-*6 (citations omitted).

[26] *Id.*, *8.

context of the cases and documents they quote. Much of the wheat in their briefs is obscured by the chaff.

This Court, in another matter, similarly wrote:

"The admissibility of evidence in rebuttal is committed to the discretion of the trial judge. The permissible scope of expert testimony is quite broad, and district courts are vested with broad discretion in making admissibility determinations.  The Federal Rules of Civil Procedure define rebuttal evidence as 'intended solely to contradict or rebut evidence on the same subject matter identified by another party,' and district courts have construed 'same subject matter' broadly. In general, rebuttal evidence is admissible where it will 'explain, repel, counteract or disprove the evidence of the adverse party.' Courts have consequently allowed expert rebuttal reports that "cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert."[27]

The complained-of rebuttal reports meet this standard.

The Plaintiff did offer the Defendants an opportunity to supplement *Chandra's* response to address data not in hand at the time the report was prepared, and the Court encourages the parties to reach an agreement on that limited issue. However, because the Court's examination of *Bradford II*, *Vogt II*, and *Frank* found that the portions Defendants cite are proper responses to *Cremieux* and *Chandra*, the Defendants' motion will be denied.

**BY THE COURT**

**/s/ Cynthia M. Rufe**

_____

**CYNTHIA M. RUFE, J.**

---

[27] *Nat'l Medical Imaging, supra.* at *4-*6 (citations omitted).