**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724-CMR |
| This Document Relates to:<br><br>*American Airlines, Inc. et al. v. Actavis Holdco U.S., Inc., et al.* | Individual Case No.<br>24-1430 |

**MEMORANDUM OPINION**

This matter arises from a 2024 complaint filed by several direct action DAPs ("DAPs") who joined together to allege that several defendants engaged in illegal, conspiratorial market allocation and price manipulation in the sale of dozens of generic drugs. The genesis of this litigation and the broad outlines of the Amended Complaint now at issue are similar to those recounted in prior opinions in this MDL.[1] Those opinions generally found that several complaints filed by state, individual and class plaintiffs properly alleged that several generic pharmaceutical companies, including many of the defendants in this matter, engaged in an overarching multi-drug conspiracy to fix prices and allocate markets for generic drugs. The complaint in this matter, which contains most of the allegations contained in the other actions, includes two defendants new to this MDL, Novartis AG and Sandoz AG, companies that had, and in the case of Sandoz AG still have, a connection to an original defendant, Sandoz Inc.

---

[1] *See e.g., State AG Litig. v. Actavis Holdco U.S. (In re Generic Pharms. Pricing Antitrust Litig.),* 394 F. Supp. 3d 509, 514-23 (E.D.Pa. 2019). *See also Marion Diagnostic Ctr, LLC v. McKesson Corp. (In re Generic Pharms, Pricing Litig.),* 386 F.Supp. 3d 477 (E.D.Pa. 2019); *In re Generic Pharms, Pricing Litig.* 338 F.Supp. 3d 404 (E.D.Pa., 2018).

(hereinafter "Sandoz").  The allegations against Novartis AG and Sandoz AG are described in an earlier memorandum opinion by this Court[2], but in essence state that the two companies played a significant role in Sandoz's anti-competitive and price-fixing activities and, beginning in 2022, schemed to transfer Sandoz's assets out of this Court's reach to preserve ill-gotten gains. Following the filing of an Amended Complaint[3] on October 1, 2024, several Defendants filed motions to dismiss. This Court adjudicated those motions on May 4, 2026, with some motions granted in whole or part, and others, including Sandoz AG's,[4] denied.[5]  On May 18, 2026, Defendant Sandoz AG filed a "Motion to Reconsider the Court's Order Denying its Motion to Dismiss or, in the Alternative, Motion to Certify Order for Interlocutory Appeal Under 28 U.S.C. §1292(b)" arguing that this Court's determination that the Amended Complaint sufficiently alleged personal jurisdiction over it was erroneous.[6]  Plaintiff DAPs filed their response on June 1, 2026,[7] and Sandoz AG a reply on June 8, 2026.[8] This matter is now ripe for adjudication.

1.    **Motion for Reconsideration of Order Denying Sandoz AG's Motion to Dismiss for lack of Jurisdiction**

Sandoz AG asks this Court to reconsider its order dismissing its motion to dismiss the complaint against it for lack of specific personal jurisdiction.  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered

---

[2] 24-cv-1430, Doc. No. 186 (Memorandum Opinion, May 4. 2026). Unless specified otherwise, all document numbers referred to herein are from the 24-cv-1430 docket.

[3] Doc. No. 41.

[4] Sandoz AG raised several issues in its motion to dismiss, including lack of personal jurisdiction, failure to sufficiently state federal and state antitrust claims, statute of limitations, and failure to adequately plead fraudulent transfer claims. Doc. No. 46.

[5] Doc. Nos. 187 (order) and 186 (memorandum opinion).

[6] Doc. No. 190.

[7] Doc. No. 196.

[8] Doc. No. 198.

evidence."[9] Sandoz AG has no new evidence, but vigorously argues this Court's decision that

DAPs established specific personal jurisdiction over it was based on errors of law and fact.

**(a)      The DAPs Established Specific Jurisdiction Over Sandoz AG By Responding With Proof It Directed Its Activities at United States Operations of Sandoz Inc.**

Sandoz AG's motion for reconsideration accuses the Court of three mistakes. First, it

alleges the Court applied an incorrect standard for determining specific personal jurisdiction.[10] It

did not, even though Sandoz AG initially urged it to do so. Sandoz AG's motion to dismiss

asserted that DAPs bore the burden of proving specific personal jurisdiction by a preponderance

of the evidence.[11] Sandoz AG was wrong. With the filing of Sandoz AG's Rule 12(b)(2) motion

to dismiss, the burden shifted to DAPs to make a prima facie showing, by affidavits or other

evidence, that the Court has jurisdiction.[12]   The preponderance of the evidence standard applies

only if an evidentiary hearing precedes the Court's ruling.[13] Sandoz AG now concedes this.[14]

Sandoz AG's motion for reconsideration, though never acknowledges that DAPs were also

entitled to have their allegations taken as true and all factual disputes drawn in their favor,[15] the

second part of the standard.  Sandoz AG instead contends this Court erred by relying on mere

---

[9] *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (affirming a district court's refusal to reconsider a decision to grant summary judgment).
[10] Doc. No. 190-3, p. 3-7.
[11] Doc. No. 46, p. 4.
[12] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 94, n.1 (3d Cir. 2004).
[13] *ID. See also*, *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 162 (E.D. Pa. 2017) (wdthout an evidentiary hearing, a plaintiff meeting a Rule 12(b)(2) challenge need only establish a prima facie case of personal jurisdiction, and is entitled to all factual disputes being drawn in its favor and its allegations taken as true).
[14] Doc. No. 190-3, p. 4.
[15] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (*quoting Miller Yacht Sales* at 384 F.3d at 95, n.1). Sandoz AG's brief in support of its motion to reconsider and leave for interlocutory appeal never mentions this presumption.

allegations in exhibits consisting of deposition excerpts, corporate publications, letters, emails and other items obtained in discovery by other MDL plaintiffs over several years, attached to DAPs' response to the motion to dismiss and failed to accord proper weight to the two-page affidavit Sandoz AG attached to its motion.[16]

Sandoz AG's motion to dismiss alleged that the Amended Complaint did not establish specific personal jurisdiction.[17] In support of that claim, it attached a two-page affidavit from Andrea Ferrari. Mr. Ferrari's connection to Sandoz AG, according to his sworn statement, dates only to sometime in 2024, when his employment began, and at least until October 30, 2024, when he swore out the affidavit, during which time he was the company's "Chief Integrity Officer and Global Head of Corporate Legal." Mr. Ferrari states that Sandoz AG is a Swiss company that, prior to October 2023, along with Sandoz, Inc., was a subsidiary of co-defendant Novartis AG, and not a "parent" of Sandoz Inc.[18] He states that Sandoz AG was never incorporated in the United States, did not own or lease any property in the United States, and had no employees in Pennsylvania. Sandoz AG, he asserts, did not direct Sandoz's day-to-day operations in the United States, held no bank accounts in the United States, and sold nothing in the United States.  He adds that prior to 2023, Sandoz AG and Sandoz were part of the corporate structure of Novartis, and that since October 4, 2023, when Novartis spun off "Sandoz Group AG," Sandoz AG wholly owns Sandoz, and "Sandoz Group AG" wholly owns Sandoz AG. Finally, Mr. Ferrari states that since then, Sandoz AG and Sandoz have been separate and independent companies.[19] Mr. Ferrari does not state the basis for his knowledge of anything he

---

[16] Doc. No. 190-3, p. 6.
[17] Doc. No. 46, pp. 5-10.
[18] Doc. No. 46-1 (Affidavit of Andrea Ferrari).
[19]  Doc. No. 46-1.

describes that occurred before assuming his position with Sandoz AG, other than generally averring a reasonable investigation and citing an internet link to a 274-page 2010 Novartis annual report that does not contradict any allegation in the Amended Complaint nor DAPs' response to the motions to dismiss. (Mr. Ferrari does not cite any particular page or portion of the report.)[20] Mr. Ferrari's affidavit is barely more than a general denial of any connection between Sandoz AG and Sandoz. Sandoz AG's plaint that the Court "swept aside" this affidavit in favor of the Plaintiff's exhibits implies this Court gave it no consideration whatsoever.[21] That is not true, as this Court's May 4, 2026, memorandum opinion demonstrates.[22] Yet, there is only so much anyone can say about a two-page, 435-word affidavit that provides little basis for understanding how or why the affiant, to all appearances a recent employee, knew what happened at the company in the preceding thirteen years. The affidavit received the consideration and was accorded the weight it deserved.

The DAPs' filed a combined response to Sandoz AG's and Novartis AG's motions to dismiss the complaint. To the response were appended 366 pages (including cover pages) consisting of 46 exhibits responding to the two Defendants' motions to dismiss on jurisdictional grounds. These exhibits included evidence that Sandoz AG and its employees were involved in and helped direct Sandoz's alleged anti-competitive activities.[23] The documents, included, *inter alia*, corporate records, emails, deposition excerpts, and resumes and biographies of employees of Novartis AG and Sandoz AG, that supported detailed allegations in the Amended Complaint. The exhibits that contained information concerning Sandoz AG and its employees and operations

---

[20] *Id.*
[21] Doc. No. 190-3, p. 5.
[22] The Courts' memorandum opinion discussed Mr. Ferrari's affidavit. Doc. No. 186, pp. 21-22.
[23] Doc. No. 60.

persuaded this Court that the DAPs had, for Rule 12 purposes, sufficiently alleged personal jurisdiction over Sandoz AG under the "alter-ego" theory of jurisdiction.[24] Though DAPs' exhibits had more evidence concerning Novartis AG than Sandoz AG, and some evidence concerned both defendants, the evidence concerning Sandoz AG was more than enough to support a prima facie showing that Sandoz AG's employees could and did control Sandoz at will.

The Court's memorandum opinion did not try to describe all of the DAPs' evidence showing Sandoz AG's ability to interfere with Sandoz whenever it saw fit during the operative period.[25] The Court, though, cited and described a quantum of evidence that, when viewed together and taking the DAPs' allegations as true and resolving all factual disputes in their favor, demonstrated the DAPs made a prima facie showing of personal jurisdiction. For example, DAPs demonstrated that a Sandoz AG employee was a member of Sandoz's three-man board of directors, and the CEO of Sandoz was also on Sandoz AG's executive committee:

> In at least 2011 and 2012, Jon Symonds, the CFO of Novartis AG,[94] Jeff George, who served on the Executive Committee of Novartis,[95] and Robert Pelzer, the President of Novartis Corporation[96] were the only members of Sandoz's Board of Directors.[97] Their names appear on "Action[s] by Written Consent of the Board of Directors" of Sandoz's Board to adopt the "Novartis Code of Conduct"[98] and directing certain personnel matters.[99] In 2011, Jon Symonds, sent an email to several persons, including Jeff George, directing Sandoz to take pricing actions that would raise an additional $100,000,000.[100] The next day, George forwarded the email to Don DeGolyer.[101] A resumé for Don DeGolyer states:
>> Between 2009 and 2013, he served on the Executive Committee of Sandoz AG (a Novartis company), one of the largest global generic companies, as CEO, Sandoz Inc., a $3.5bn generic pharmaceuticals and biosimilars company where he was responsible for leading over 3,000 associates in North America.[102]

> 94. Doc. No. 60, Ex. 36, p. 2 (Symonds biography).
> 95. Doc. No. 60, Ex. 39, p. 1 (George biography).
> 96. Doc. No. 60, Ex. 43, p. 1 (Pelzer biography).

---

[24] Doc. No. 186, p. 31.
[25] *Id.*, p. 23.

6

97.  Doc. No. 60, Ex. 10; Ex.12, pp. 009356058, 009356060 and 009356065.These exhibits bear signature lines but are unsigned.
98.  Id., Ex. 10; Ex.12, pp. 009356058, 009356060 and 009356065
99.  Id.,  Ex.12, pp. 009356058, 009356060 and 009356065
100.  Id., Ex. 1, p. 2; 36, p.2; Ex. 37, p.4; Ex. 38, pp 1, 4.
101.  Id., Ex. 2
102.  Id., Ex. 40.

Doc. No. 186 (May 4, 2026, Memorandum Opinion), pp. 24-25that fail individually and collectively to prove any jurisdictionally significant connection between Sandoz AG and Sandoz.[26]  Sandoz AG's list of "insubstantial tidbits" and "fleeting references"[27] attesting to its involvement with Sandoz does not include the Court's citation to exhibits describing (1) alleged siphoning off of money from Sandoz as part of the spin-off from Novartis,[28] (2) Sandoz AG's and Sandoz's use of shared communications and electronic information systems,[29] (3) printed statements by Novartis AG and Sandoz AG that all Novartis subsidiaries spoke with one voice and that Sandoz and Sandoz AG were not separate legal groups of companies under the Novartis umbrella,[30] and (4) a publication of the George Family Foundation that states that prior to 2017, in addition to being on the Novartis Executive Committee, Jeff George was the CEO of Sandoz.[31]

Further, reviewing the record for the purposes of assessing whether this Court misconstrued any of the evidence attached to the Plaintiff's response to Sandoz AG's motion to dismiss, the Court reviewed, once again, a September 21, 2012, email chain discussing co-

---

[26] Doc. No. 190-3, p. 5.
[27] *Id.*
[28] Doc. No. 186 (Memorandum Opinion, May 4, 2026), pp. 27-28.
[29] *Id.*, p. 13.
[30] *Id.* p. 26.
[31] Doc. 60, Ex. 39.

defendant Mylan's plans to release Valsartan HCTZ. Jeff George and Don DeGolyer are active communicants in the exchange, with one Helmut Fabry emailing DeGolyer (and copying Jeff George and others) "Dear Don., . . . sometimes a little help from our competition is welcome as well." DeGolyer responded, "Thanks Helmut, I guess this is what they call 'co-opetition.'"[32] This electronic high-fiving among high-ranking officers of Sandoz AG and Sandoz celebrating "co-opetition" with a competitor supports the Amended Complaint's allegation that Sandoz and Novartis fixed the price and market allocation of this drug with Mylan.[33] This evidence also supports the Amended Complaints' numerous allegations that Sandoz AG's employees controlled, oversaw and directed important decisions made by Sandoz.[34]

As required by the Third Circuit,[35] this Court reviewed *all* the evidence Sandoz AG and DAPs attached to their motion to dismiss related filings and did so again to decide the motion for reconsideration. Sandoz AG and Sandoz had common officers and directors; Sandoz AG exercised control and instructed Sandoz's officers; Sandoz AG and Sandoz shared communications and information systems; and, Sandoz AG, along with Novartis is siphoning funds from and imposing liabilities and indemnification burdens on Sandoz. Beyond the general denials of the Ferrari affidavit, Sandoz AG does not dispute the above facts, and this Court, for the purposes of the motion to dismiss, is required to accept them as true. The DAPs, with the benefit of having their allegations taken as true and all factual disputes drawn in their favor,

---

[32] Doc. 60, Ex. 8.
[33] Doc. 41, ¶¶ 145, 1508.
[34] See e.g. Doc. 41, ¶¶243, 245, 281.
[35] See fn. 12 and 13, *supra.*

sustained their burden of presenting a prima facie case of specific personal jurisdiction over Sandoz AG.[36]

Sandoz AG's final ground for reconsideration is that the Court conflated the evidence of Novartis AG's involvement with Sandoz with the evidence that Sandoz AG was similarly involved, and in so doing created a new legal theory— the "enmeshed" standard.[37]  This Court did not presume to establish or advocate for a new theory for establishment of Rule 12(b)(2) jurisdiction. Cognates of "enmesh" appear twice on one page of the memorandum opinion and only described the evidence DAPs submitted in their response to Sandoz AG's and Novartis AG's motions to dismiss. Much of that evidence overlapped, showing how these companies, and Sandoz, shared employees and resources and otherwise acted at times interchangeably. The Court's May 4, 2026, Memorandum Opinion concerned not just Novartis AG's and Sandoz AG's motions, but five other motions to dismiss filed by several other defendants individually and jointly. Some motions to dismiss were granted in part or in whole; others were not. Where several motions concerned related issues and evidence, as did those of Sandoz AG and Novartis AG, they were discussed together.[38]  The ruling on Sandoz AG's jurisdictional challenge, though,

---

[36] Sandoz AG's citation to *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94 (3d Cir. 2009) does not help its argument. In that matter, the Court rejected the plaintiff's attempt to assert jurisdiction over a Swiss aircraft manufacturer that made a plane that crashed in State College, PA, during a flight from Florida to Rhode Island, killing the plaintiffs' relatives. *Id.*, 566 F.3d at 97-98. Prior to the crash, the manufacturer's only contacts with Pennsylvania were purchasing approximately $1,000,000 in goods and services from Pennsylvania vendors and sending two employees to view displays at a Pennsylvania vendor. *Id.*, 566 F.3d at 1045. The evidence in DAPs response regarding Sandoz AG was greater in quantity and quality.
[37] Doc. 190-3, p. 7.
[38] For example,  Sandoz AGs' claims regarding the tolling of the statutes of limitations were discussed with similar claims raised by other defendants. *Id.* at pp. 7-12. Its

relied only on evidence linking Sandoz AG to Sandoz, even when that evidence included references to Novartis AG. Accordingly, the motion for reconsideration will be denied.

## II.    Certification under 28 U.S.C. §1292(b)

28 U.S.C. 1292(b) allows a district court to grant a request to certify a matter for interlocutory appeal if it concerns (1) "a controlling question of law," (2) "as to which there is a substantial ground for difference of opinion" and (3) when "an immediate appeal from the order may materially advance the ultimate termination of the litigation."   All three criteria must be met.[39] Even when the statutory criteria of §1292(b) are satisfied, a court possesses discretion to deny certification of an appeal.[40]

## (a)    Controlling Question of Law

A question that encompasses factual, as well as legal, matters is not a controlling issue of law.[41]   Disagreement with the district judge's ruling is not grounds for certification of a question for appeal.[42] Even if a question appears to be a controlling question of law, questions that involve

---

claims regarding the  fraudulent transfer and conspiracy allegations were discussed with similar claims raised by Novartis AG. *Id.*, 33-35.

[39] *Katz c. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (approving interlocutory appeal of class action certification order).

[40] *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) (permission to appeal is not mandatory even if all three 1292(b) criteria are present); *Katz*, 496 F.2d at 754; *Cf. In re Chocolate Confectionary Antitrust Litig.*, 607 F. Supp. 2d 701, 708 (M.D.Pa. 2009) (declining to exercise discretion to deny certification because issue was novel and might evade appellate review if not addressed early in the litigation).

[41]  *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 862 (3d Cir. 1977) (§1292(b) is not designed for review of factual matters).

[42] *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 282 (E.D. Pa. 1983) (finding that an issue was controlling because if decided on appeal in the defendant's favor the two parties would save considerable time and litigation expenses).

the district court's application of the facts to established legal standards are not controlling

questions of law requiring the question's certification.[43]

Sandoz AG claims the issue of law this matter turns on is a "presumption of corporate

separateness." As support, it cites *In re: Diisocyanates Antitrust Litig.*[44] for the proposition that

simply having directors and officers who move from the parent to the subsidiary does not render

companies alter-egos of one another.[45] That opinion, though, also states that the plaintiffs

advocating for the application of the alter-ego theory cited *no* other evidence showing one

company's interference in the day-to-day operations of the other.[46] Sandoz AG's motion also

relied upon *In re Latex Gloves Prods. Liab. Litig.*,[47] for the proposition that shared directors do

not establish alter-ego jurisdiction. *Latex Gloves* though, had more to say on the subject:

> As to alter-ego principles, "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." Appropriate parental involvement includes: 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.'" Nevertheless, "if the parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation."

> While views have been varied, the issue may best be dealt with using a flexible, case-by-case standpoint. To prevail, plaintiffs must demonstrate that the "degree of control

---

[43] *See Howmedica Osteonics Corp. v. Howard*, 2024 U.S. Dist. LEXIS 40518, *4-*5 (D.N.J. 2024) (denying §1292(b) certification to a choice of law issue because the issue concerned factual determinations regarding the parties' contacts with two states).

[44] 2026 U.S. Dist. LEXIS 17071 (W.D.Pa., 2026) at *48.

[45] Doc. No 190-3 at 12.

[46] *In re: Diisocyanates Antitrust Litig.*, 2026 U.S. Dist. LEXIS 17071 at 48-52 (though holding company wholly owned and shared directors and officers with its subsidiary, when doing so they represented the two corporations separately and the subsidiary managed its own day-to-day operations).

[47] 2001 U.S. Dist. LEXIS 12757* (E.D.Pa. 2001)

exercised by the parent [is] greater than normally associated with common ownership and directorship." The question should be examined in terms of the legal interrelationship of the entities, the authority to control and the actual exercise of control, the administrative chains of command and organizational structure, the performance of functions, and the public's perception. In this sense, the inquiry should not be limited to traditional alter-ego jurisprudence but should encompass whether or not there is a single functional and organic identity.[48]

In other words, a court weighing a challenge must weigh parties' competing narratives and determine facts before determining whether jurisdiction exists.

As described above,[49] evidence accompanying the Plaintiff's response to the motion to dismiss demonstrated that Sandoz AG acted as if, and stated as a matter of fact, that it and Sandoz were interchangeable, and as if its employees directed and actively participated in Sandoz's operations. Factual allegations are at the heart of Sandoz AG's argument with this Court's decision. It alleges that the exhibits DAPs attached to the reply to their response to the motion to dismiss fall short of a prima facie case supporting jurisdiction.[50] Sandoz AG however never mentions that this Court must accept those allegations as true and all factual disputes drawn in DAPs' favor.[51] That omission is a gaping hole in its argument.

The jurisdictional issue is a mixed question of law and fact that requires review of the evidence in the factual record. Sandoz AG's sole exhibit, an affidavit by a recent employee, generally denied but directly answered none of the substantive allegations in the Amended Complaint. The Court had to examine the DAPs' evidence too. The 11th Circuit succinctly described the nature of a controlling issue of law:

---

[48] *Id.* at *10-12 (citations and footnote omitted).

[49] Pp. 6-10, s*upra.*

[50] Doc. No. 190-3, pp. 3-11`.

[51] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d at 316; *Miller Yacht Sales*, 384 F.3d at 95 n.1.

> The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case. In determining whether to grant review, we should ask if there is substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed. The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law. And the answer to that question must substantially reduce the amount of litigation left in the case.[52]

This Court's decision turned first and foremost on an assessment of the facts Sandoz AG and DAPs attached to their pleadings to support their respective positions, not on snippets of caselaw divorced from the facts and contexts of the cases Sandoz AG cites. Therefore, Sandoz AG has not identified a controlling issue of law.

Sandoz AG also complains that this Court created a new theory for establishing specific personal jurisdiction— the "enmeshment standard."[53] A noun is not a theory. The Court was merely prefacing a summary of some of the evidence contained in the exhibits DAPs attached to their combined response to Sandoz AG's and Novartis AG's separate motions to dismiss on jurisdictional grounds.[54] As noted above, the Court's May 4, 2026, Memorandum Opinion concerned not just those two motions, but five other motions to dismiss filed by several other defendants individually and jointly. When separate motions discussed the same issues and facts, they were discussed together, even though in the end only parts of the motions were granted. Some motions to dismiss were granted in part or whole; others were not.[55] In finding DAPs

---

[52] *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004).
[53] Doc. No. 190-3, p. 12-13.
[54] Doc. No. 186 (Memorandum Opinion, May 4. 2026), p. 23.
[55] *See* Doc. 186, pp. 7-11 (discussing tolling of the statute of limitations and granting two defendants' motions to dismiss, but not others).

established specific personal jurisdiction over Sandoz AG, the memorandum opinion cited and relied upon facts gleaned from DAPs' exhibits detailing the acts and statements of Sandoz AG and its employees.

**(b) Substantial ground for difference of opinion.**

Sandoz AG asserts there are two substantial grounds for difference of opinion. Sandoz AG again complains that this Court created a new theory for establishing specific personal jurisdiction."[56] As discussed above, no such "new theory" was created or applied.

Sandoz AG also alleges that the transfer of financial assets between Sandoz and Sandoz AG alone does not establish jurisdiction.[57] This Court agrees. That, however, was but one factor this Court relied upon when determining the degree of Sandoz AG's involvement in Sandoz. Moreover, the Court did not rely upon routine transfers of assets from Sandoz to Sandoz AG.[58] The Court rather relied upon transfers Sandoz AG made from Sandoz to their balance sheets pursuant to the 2023 spin-off. The spin-off also required Sandoz to assume all liabilities related not only to this MDL, but for opioid litigation in the United States and Canada. The asset transfers, along with Sandoz assuming the liabilities, were designed to deprive Sandoz of the ability to pay those liabilities and allow Sandoz AG to transfer the assets to Novartis AG.[59] This

---

[56] Doc. No. 190-3, p. 12-13.

[57] Doc. No. 190-3, p. 14.

[58] Sandoz AG cited *In re Chocolate Confectionary Antitrust Litig.*, 674 F.Supp. 2d 580, 610 (M.D. Pa. 2009) and *In re Chocolate Confectionary Litig.*, 641 F.Supp. 2d at 394, in support of its argument that transfer of funds such as profits and royalties between related corporate entities alone do not establish alter-ego jurisdiction. The spin-off related transfers from Sandoz though were not routine, but credibly described, for the purposes of Rule 12(b)(2), as actions undertaken to siphon Sandoz's ill-gotten gains out of the Court's jurisdiction.

[59] Doc. No. 186 (Memorandum Opinion, May 4, 2026), pp. 17-18.

Court could not look at the funds transfers in isolation from all the other evidence DAPs attached to their response to the motion to dismiss that showed Sandoz AG's entanglement with Sandoz. The two opinions Sandoz AG cites in support of this contention[60] did not describe the transfers of millions of dollars to one company that accompanied indemnification from potentially billions of dollars in liabilities. The transfers, in other words, were not part of normal business, but rather a for Novartis AG, using Sandoz AG, to avoid any financial loss from the actions Sandoz.

**(c)     Advancement of Termination of Litigation**

Should Sandoz AG successfully appeal this Court's May 4, 2026, order, the litigation against it would end the case against it, but not against the other defendants. This is a situation similar to the MDL decision DAPs cite wherein this Court denied certification to appeal the denial of a defendant's motion to dismiss because, *inter alia*, that defendant had claims regarding other drugs pending.[61] Sandoz AG is a defendant in additional complaints recently filed in this MDL. Sandoz AG will have at least one other chance, at summary judgment, to litigate this issue. Moreover, given the allegations by the DAPs against Novartis AG, other parties will seek discovery from Sandoz AG whether or not the matter is appealed or Sandoz AG is a party.

This MDL is now ten years old.  This Court, managing an MDL with numerous plaintiffs and defendants in several lawsuits, cannot consider only what benefits the litigation between Sandoz AG and the DAPs in this matter, but also the needs of all the parties in all the lawsuits to litigate their cases in an orderly manner.  This lawsuit alone has eight plaintiffs and fifty-five defendants. Considering the facts and issues underlying Sandoz AG's motion to dismiss for lack of jurisdiction, their needs, as well as those of the scores of other parties in this MDL, are best

---

[60] *See* fn. 58, *supra.*
[61] 16-md-2724, Doc No. 940, cited in DAPs' response, Doc No. 196, p. 12, fn 79.

served by Sandoz AG remaining in this matter until summary judgment, or until some other vehicle provided by the Rules of Civil Procedure, allow it to raise the issue again.

**(d)    Exercise of Discretion to Grant an Interlocutory Appeal**

Because this Court has determined that Sandoz has not met all three requirements for certification of an interlocutory appeal, this Court is without discretion to grant Sandoz AG's motion.

**WHEREFORE**, for all of the foregoing reasons, Defendant Sandoz AGs' Motion to Reconsider the Court's Order Denying its Motion to Dismiss or, in the Alternative, Motion to Certify Order for Interlocutory Appeal Under 28 U.S.C. §1292(b) will be **DENIED** in full. An appropriate order will issue.

**BY THE COURT:**

**/s/ Cynthia M. Rufe, J.**

**HONORABLE CYNTHIA M. RUFE, J.**

16