**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br><br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Humana Inc. v. Actavis Elizabeth LLC, et al.*** | **HON. CYNTHIA M. RUFE**<br><br>**18-CV-03299** |

**MEMORANDUM OPINION**

**Rufe, J.** **July 27, 2026**

This multidistrict antitrust litigation ("MDL") concerns alleged price-fixing schemes involving numerous generic drugs and generic drug manufacturers. The Court selected initial bellwether cases from actions brought by certain Direct-Action Plaintiffs ("DAPs"), including the action brought by Plaintiff Humana Inc. ("Humana") as to several generic drugs and defendants.

Humana has now filed an affirmative Motion for Partial Summary Judgment as to the violation element of Sherman Antitrust Act and state law antitrust violations as to Defendants Glenmark Pharmaceuticals Inc. ("Glenmark"), Sandoz Inc. ("Sandoz"), Taro Pharmaceuticals USA, Inc. ("Taro"), and Teva Pharmaceuticals USA, Inc. ("Teva") for clobetasol, desonide ointment, benazepril HCTZ, and pravastatin.[1] Humana moved to stay briefing deadlines as to Glenmark,[2] voluntarily dismissed the Motion against Sandoz,[3] and requested the Court delay a

[1] Humana Mot. Partial Summ. J. [MDL Doc. No. 4180; 18cv3299 Doc. No. 448].

[2] Joint Mot. to Stay Glenmark Deadlines [Doc. No. 569]; Order Granting Joint Mot. to Stay Glenmark Deadlines [Doc. No. 571].

[3] Humana Reply Supp. Mot. for Summ. J. n.2 [18cv3299 Doc. No. 648].

ruling as to Taro. Accordingly, this Court evaluates the Motion as to Teva only.[4] The Court has considered the parties' briefs and oral argument. The Motion is ripe for this Court's review as to Teva. For the reasons set forth below, Humana's Motion for Partial Summary Judgment as to Teva will be granted.

## I. Background

The history at issue in the instant motion begins with Humana originating this action by filing an Initial Complaint on August 3, 2018, in which Teva was named as a Defendant.[5] In November 2018, the case was incorporated into this MDL, wherein Teva was also a named Defendant in multiple other actions.[6] While facing civil complaints in this MDL, Teva was also subject to investigation by the United States Department of Justice, Antitrust Division ("DOJ") for violations of the Sherman Antitrust Act.

On August 25, 2020, the United States indicted Teva for three counts of violations of the Sherman Antitrust Act.[7] This second superseding indictment charged Teva with conspiring to suppress and eliminate competition with Glenmark, Apotex Corp. ("Apotex"), Taro, Sandoz, and other individuals by agreeing to increase and maintain the prices of pravastatin and other generic drugs.[8] Three years later, on August 21, 2023, Teva entered into a Deferred Prosecution Agreement ("DPA"), in which the DOJ agreed to (1) defer prosecution of Teva under the indictment for a period of three years and (2) not continue the prosecution should Teva fully

[4] In evaluating the Motion only as to Teva, the Court considers only Counts 81, 82, and 85.

[5] Initial Compl. at 1 [Doc. No. 1].

[6] 11/20/2018 Order Incorporating Humana into 16MD2725 [18cv3299 Doc. No. 24].

[7] Second Superseding Indictment, *United States v. Teva Pharm. USA, Inc. & Glenmark Pharm. Inc. USA*, Crim. Action No. 20-200 (E.D. Pa. Aug. 25, 2020) [20cr200 Doc. No. 28].

[8] *Id*.

comply with its obligations under the agreement.[9] In order to avoid prosecution and the consequences of criminal conviction, including loss of the ability to receive federal funds in payment for its products, Teva acknowledged its responsibility for the Sherman Act violations and specific allegations included in a Statement of Facts attached to the DPA.[10] Specifically for purposes of the instant motion, Teva admitted to suppressing and eliminating competition for the generic drug pravastatin by agreeing with Glenmark and Apotex not to provide a bid to supply pravastatin to a national pharmacy that was, at that time, a customer of Glenmark's.[11] The DPA also obligated Teva to cooperate with the DOJ in matters regarding its investigation into generic pharmaceuticals antitrust violations, divest pravastatin, and pay a monetary penalty of $225 million.[12] Finally, under the DPA, Teva is prohibited from making "any public statement, in litigation or otherwise, contradicting the acceptance of responsibility" in the DPA and accompanying Statement of Facts.[13] The three-year term of the DPA will expire on August 25, 2026.

After Teva entered into the DPA, on December 4, 2023, Plaintiff Humana, along with other plaintiffs in this MDL, served requests for admission ("RFAs") pursuant to Federal Rule of Civil Procedure 36 on Teva, to which Teva responded in February 2024.[14] The RFAs sought admission of language included ins the statement of facts incorporated into Teva's DPA.[15] Teva

---

[9] Humana Mem. Law Supp. Mot. for Summ. J., Ex. E, Teva DPA at ECF p. 107-16 ("Teva DPA") [18cv3299 Doc. No. 484].

[10] *Id*. at 105-07, 126-27.

[11] *Id*. at 126-27.

[12] *Id*. at 109-14.

[13] *Id*. at 120-21.

[14] Humana Mem. Law Supp. Mot. for Summ. J., Ex. F, Teva RFA Responses at ECF p. 152-65 ("Teva RFA") [18cv3299 Doc. No. 484].

[15] *Id*.

admitted the statements quoting the DPA and statement of facts.[16] Teva has not moved to withdraw or amend its responses, so it remains bound by its RFA Responses.

Pursuant to Pretrial Order No. 329, which set the First Amended Pretrial Schedule for the *Humana I* Bellwether, Humana filed its Motion for Partial Summary Judgment on March 26, 2026.[17] Teva filed a response in opposition to the Motion, and Humana replied in support of the Motion.[18] The Court heard oral argument on the matter on June 4, 2026.[19] The Motion is now ripe for review.

## II. LEGAL STANDARD

A court will award summary judgment on a claim, or part of a claim, where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[21] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22]

If the Court determines that a "movant shows that there is no genuine dispute as to any material fact and the movant is entitlement to judgment as a matter of law" on part of a claim, the Court shall grant summary judgment on that part.[23] Even if the Court "does not grant all the

---

[16] *Id*.

[17] PTO 329 [MDL Doc. No. 4079]; Humana Mot. Partial Summ. J. [MDL Doc. No. 4180; 18cv3299 Doc. No. 448]; *see also* PTO 340 [MDL Doc. No. 4570]; PTO 306 [MDL Doc. No. 3618].

[18] Teva Opp'n [MDL Doc. No. 4404; 18cv3299 Doc. No. 600]; Taro Opp'n [MDL Doc. No. 4395; 18cv3299 Doc. No. 590]; Humana Reply Supp. Mot. for Summ. J. [MDL Doc. No. 4479; 18cv3299 Doc. No. 648].

[19] 6/4/26 Hr'g Tr. [MDL Doc. No. 4579; 18cv3299 Doc. No. 691].

[20] Fed. R. Civ. P. 56(a).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[22] *Id*.

[23] Fed. R. Civ. P. 56(a) ("The court ***shall*** grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitlement to judgment as a matter of law.") (emphasis added).

relief requested by the motion, it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."[24]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor."[25] Such a requirement does not mean that all facts must be viewed in favor of the non-moving party, but only those inferences and assumptions that are reasonable.[26] Further, a court may not weigh evidence or make credibility determinations.[27] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[28] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[29] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[30] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[31]

---

[24] Fed. R. Civ. P. 56(g).

[25] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[26] *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir. 1995).

[27] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[29] *Anderson*, 477 U.S. at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87; citing *Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290) (internal citations omitted).

[30] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[31] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

## III. Discussion

### A. Requirements for Partial Summary Judgment on a "Violation of Antitrust Laws"

Humana seeks partial summary judgment on Counts 81, 82, and 85 as it applies to Teva. Counts 81 and 85 allege violations of Section 1 of the Sherman Antitrust Act, among other violations, and seek damages, declaratory judgments, and injunctive and equitable relief for these violations.[32] In order to prevail on an antitrust conspiracy claim for damages or under Section 4 of the Clayton Act,[33] Humana "must prove three elements: (1) an antitrust violation, in this case a violation of Section [1] of the Sherman Act; (2) fact of damage or injury; and (3) measurable damages."[34] Recovery under Section 16 of the Clayton Act for injunctive damages requires a showing of (1) an antitrust violation and (2) injury or a significant threat of injury resulting from the violation, but it does not require showing measurable damages.[35] Humana seeks summary judgment only on the first element: that Teva committed antitrust violations of the Sherman Act Section 1.

The Sherman Act Section 1 states that: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."[36] A plaintiff must satisfy two requirements to establish a violation of Section 1.[37] First, "the plaintiff must show that the defendant was a party to a

---

[32] Second Am. Compl. [18cv3299 Doc. No. 109]. The Court notes that Humana has signaled an intention to voluntarily dismiss its 22 Clayton Act § 16 declaratory and injunctive relief counts. Humana's Opp'n to Mot. for Summ. J. on Statute of Limitations and Laches at 2 n.7 [MDL Doc. No. 4401]. Because these counts have not been formally dismissed, the Court will address them.

[33] 15 U.S.C. §§ 15, 26.

[34] *American Bearing Co., Inc. v. Litton Indus., Inc.*, 729 F.2d 943, 948 (3d Cir. 1984).

[35] *See In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 399 (3d Cir. 2000).

[36] 15 U.S.C. § 1.

[37] *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010).

contract, combination . . . or conspiracy, . . . [i.e.] some form of concerted action."[38] This agreement "is the hallmark of a Section 1 claim."[39] Second, "the plaintiff must show that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade."[40]

Certain forms of restraint on trade establish a per se violation of Section 1, including "horizontal agreements among competitors to fix prices or to divide markets."[41] Once a defendant's actions have been found to fall into a *per se* form of restraint, it is "conclusively presumed to unreasonably restrain competition."[42] Because Humana alleges price-fixing and market division agreements by Teva, the existence of such agreements would establish *per se* violations of the Sherman Act.[43]

**B. Applicability of RFA Admissions**

"A matter admitted under [Federal Rule of Civil Procedure 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."[44] The rule straightforwardly requires the Court to conclude a matter is established if a party has admitted it under Rule 36. These admissions must have conclusive effect unless the Court permits an admission be withdrawn or amended. Rule 36 admissions are "not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight

---

[38] *Id*. (quoting *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc*., 530 F.3d 204, 218 (3d Cir. 2008); *In re Baby Food Antitrust Litig*., 166 F.3d 112, 117 (3d Cir. 1999)) (internal quotation marks omitted).

[39] *Baby Food*, 166 F.3d at 117.

[40] *Mack Trucks*, 530 F.3d at 218.

[41] *Insurance Brokerage*, 618 F.3d at 316 (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc*., 551 U.S. 877, (2007)).

[42] *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 (3d Cir. 2004).

[43] *See Arizona v. Maricopa Cnty. Medical Soc*., 457 U.S. 332, 345-55 (1982) (reaffirming the principle that the "Court has consistently and without deviation adhered to the principle that price-fixing agreements are unlawful per se under the Sherman Act") (quoting *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 218 (1940)).

[44] Fed. R. Civ. P. 36(b).

and validity. It is, to the contrary, an *unassailable statement of fact* that narrows the triable issues in the case."[45] At summary judgment, such admissions may not be contested by contradictory evidence. Admissions may only be amended or withdrawn on a motion to the court.[46] Summary judgment is not the proper forum to contest a conclusively admitted statement. Indeed, "the failure . . . to withdraw or amend [an] admission prior to trial [or summary judgment] would, according to the first sentence of Rule 36(b), operate to waive any objection to the truth of its contents."[47]

Accordingly, Teva's Rule 36 admissions are conclusively established, despite its continued and strenuous excuses that there is some inconsistent or contradictory record evidence. These arguments fail and will not preclude Defendant from being held to its knowing admissions. Teva did not provide legal authority that would authorize this Court to disregard their Rule 36 admissions and not accept the admissions as conclusively established for purposes of summary judgment. However, as several other arguments they present that do not contest the sufficiency of the evidence are also incorrect on the merits, the Court will address them in brief.

1. <u>Teva's Arguments that its Rule 36 Admissions Are Not Conclusively Established</u>

Teva argues that its admissions in its RFA Responses regarding pravastatin, and the Teva DPA statement of facts on pravastatin, are too limited to establish the violation element of the an antitrust violation.[48] Specifically, Teva argues that Humana's Motion "ignores the limited scope" of the Teva DPA and seeks a determination that Teva violated the Sherman Act "with respect to

[45] *Airco Indus. Gases, Inc. Div. of the BOC Group, Inc. v. Teamsters Health and Welfare Pension Fund of Philadelphia and Vicinity* ("*Airco*"), 850 F.2d 1028, 1037 (3d Cir. 1988) (emphasis added).

[46] Fed. R. Civ. P. 36(b).

[47] *Airco*, 850 F.2d at 1036-37.

[48] Teva Opp'n at 1-5, 13-20 [MDL Doc. No. 4404; 18cv3299 Doc. No. 600].

the broad, sweeping pravastatin conspiracy it alleges," while Teva's admissions with respect to pravastatin are limited to (1) a ***single*** instance where (2) a ***single*** junior employee who lacked price-increase authority (3) agreed with a ***single*** competitor to (4) decline to bid on a ***single*** customer's pravastatin business."[49]

Yet, the entirety of the Teva DPA's statement of facts consists of six paragraphs. The first of which states that:

> Teva's Employee 1 [N.P.] was involved in the pricing and/or sale of generic drugs. As described below, Teva, through Employee 1, ***suppressed and eliminated competition*** for certain drugs ***by agreeing with competitors*** to refrain from submitting bids and offers to sell to certain customers.[50]

The second paragraph designates that "[N.P.] had authority to cause Teva to submit certain bids or refrain from submitting certain bids for the sale of certain generic drugs."[51] The remainder of the paragraph describes how Employee 1 (N.P.) obtained and shared information with employees of other entities and agreed with those employees to refrain from submitting bids and offers to certain customers with the purpose of increasing and maintaining the price of generic drugs.[52]

The third paragraph, discussing pravastatin, states in its entirety:

> In or about the summer of 2013, Teva learned through Employee 1 that [Glenmark] and [Apotex] both intended to increase the price of pravastatin. Through Employee 1, Teva agreed not to provide a bid to supply pravastatin to a national pharmacy that at that time was a customer of Glenmark's for pravastatin.[53]

---

[49] *Id*. at 1 (emphasis in original).

[50] Teva DPA, Statement of Facts ¶ A, at ECF p. 126 [18cv3299 Doc. No. 484] (emphasis added).

[51] *Id*. ¶ B.

[52] *Id*.

[53] *Id*. ¶ C.

The fourth paragraph, which is two sentences long, describes actions and communications between Teva's Employee 1 and an executive at Taro regarding the pricing of clotrimazole.[54] The allegations regarding clotrimazole mirror those regarding pravastatin.[55]

The fifth paragraph, which is a singular sentence, describes actions by Employee 1, specifically declining a bid, regarding the pricing and competition relevant to tobramycin.[56]

The sixth paragraph states that all three drugs discussed traveled in interstate commerce and "the business activities of Teva and its co-conspirators in connection with the production and/or sale of these generic drugs were within the flow of, and substantially affected, interstate trade and commerce."[57]

In total, the statement of facts for Teva's DPA is less than two double-spaced pages. Only three drugs and a total of three individual actions are discussed. In its answers to the RFA, Teva admits "the facts set forth in the Statement of Facts are true and accurate."[58] Further, Teva admits that "[a]s described below, Teva . . . suppressed and eliminated competition for certain generic drugs by agreeing with competitors to refrain from submitting bids and offers to sell to certain customers."[59] With regard to this admission, Teva objects "on the ground that it selectively identifies portions of the DPA and does not accurately reflect the scope and limits of the DPA."[60] Specifically, Teva objected to the terms "competitors," "certain generic drugs," and

---

[54] *Id*. ¶ D, ECF p. 126-27.

[55] *Id*.

[56] *Id*. ¶ E, EFC p. 127.

[57] *Id*. ¶ F.

[58] Teva RFA at 6, ECF p. 157 [18cv3299 Doc. No. 484].

[59] *Id*. at 7, ECF p. 158.

[60] *Id*. at 8, ECF p. 159.

"certain customers."[61] It claimed that the request was "misleading and improper."[62] This Court disagrees.

Because Teva admits the entirety of the Statement of Facts in the DPA is factual and the Statement of Facts contains six paragraphs, less than two pages of text, and concerns just three drugs, it is not inaccurate, misleading, or selective identification to refer to the competitors, generic drugs, and customers identified in the Statement of Facts.[63]

Further, Teva admits, without additional objection,[64] that after learning Glenmark and Apotex would increase the price of pravastatin, "Teva agreed not to provide a bid to supply pravastatin to a national pharmacy that at that time was a customer of Glenmark's."[65]

Teva never moved to strike the RFAs as improper or contest them in any way, nor did it seek to amend or withdraw its admissions. Accordingly, Teva has never before asked the Court to review the propriety of the RFAs. While any objection to the admissions has been waived by the failure to move to amend or withdraw Teva's RFA Responses, the Court finds its objections to the requests meritless. The Court will find Teva's Rule 36 admissions to be conclusively established.

---

[61] *Id*.

[62] *Id*.

[63] *Id*. at 8-9, ECF p. 159-60.

[64] Teva generally objects to the Requests as premature, to the extent they impose additional or obligations inconsistent with Rules 26 and 36 of the Federal Rules of Civil Procedure, local civil rules, and other applicable rules or court orders, and objects to the extent that the Requests seek disclosure of protected or privileged information. Teva also objects to the use of its responses for any purpose regarding other non-named generic drugs or for any other time period. *Id*. at 1-3, ECF p. 152-54.

[65] *Id*. at 9-10, ECF p. 160-61.

### C. Appropriateness of Partial Summary Judgment

1. RFA Admissions Establish Violations of the Sherman Act Section 1

In its RFA Responses, Teva admitted that: (1) "[Teva] is responsible for the acts of its . . . employees;" (2) Teva "suppressed and eliminated competition for [pravastatin] by agreeing with competitors to refrain from submitting bids and offers to sell to certain customers; (3) Teva's "Employee 1 had authority to cause Teva to submit certain bids or refrain from submitting certain bids for the sale of certain generic drugs," including pravastatin; (4) Employee 1 agreed with individuals from other entities that manufactured and sold generic drugs "to refrain from submitting bids and offers to sell to certain customers, with the purpose of increasing and maintaining the price" of pravastatin and other generic drugs; (5) Teva learned that Glenmark and Apotex intended to increase the price of pravastatin, and "Teva agreed not to provide a bid to supply pravastatin to a national pharmacy that at that time was a customer of Glenmark's for pravastatin."[66]

These admissions clearly establish that Teva, through an employee for whose actions Teva is responsible, entered into an agreement with other generic drug manufacturers and sellers to increase the price of pravastatin (that is, to engage in price-fixing) by refraining from submitting bids to supply pravastatin to certain customers. These admissions also establish an agreement to continue certain market divisions of customers. An agreement to price-fix is a per se Sherman Act Section 1 violation, so Teva's RFA Responses establish such a violation. Because RFA admissions cannot be contradicted by evidence at trial, Humana is entitled to judgment as a matter of law against Teva on the violation of the Sherman Act Section 1 element of its federal claims regarding pravastatin.

---

[66] Teva RFA at 6-10, ECF p. 157-161 [18cv3299 Doc. No. 484].

2. <u>Teva's Argument that Partial Summary Judgment Will Not Simplify Trial</u>

Teva argues that partial summary judgment is unwarranted because a finding that it violated an antitrust law will not streamline or simplify trial. While "the court retains some discretion to deny a Rule 56 motion" even when the movant has met its burden, this "discretion to deny summary judgment when it otherwise appears that the movant has satisfied the Rule 56 burden should be exercised sparingly."[67] However, whether to employ a partial summary judgment is largely within the court's discretion.

Teva asserts that a finding of summary judgment on the violation element of Humana's claims against them will not simplify the case because the issue of violation is "intertwined with additional claims that must be decided at trial."[68] Specifically, Teva argues the motion should be denied "because it does not seek any relief which would narrow the scope of trial."[69] This is incorrect. As this Court has held, establishing that one party participated in a conspiracy does not require that each party was connected to and aware of all other parties to the conspiracy.[70]

This Court finds that the violation element of the antitrust claims are not so intertwined with the rest of the claims that it would be improper to address it separately.[71] Teva's RFA responses establish the violation element against them as to pravastatin. Teva's complaints rest on its continued denial of the facts admitted in the RFAs, which are conclusively established. Because Humana has met its burden in establishing it is entitled to judgment as a matter of law

[67] § 2728 Grounds for Summary Judgment—Judicial Discretion in Deciding a Rule 56 Motion, 10A Fed. Prac. & Proc. Civ. § 2728 (4th ed.)

[68] Taro Opp'n at 22 (quoting *Toyoshima Corp. of California v. Gen. Footwear, Inc*. 88 F.R.D. 559, 560 (S.D.N.Y. 1980)) [18cv3299 Doc. No. 590].

[69] Teva Opp'n at 13 [18cv3299 Doc. No. 600].

[70] *In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 529 (E.D. Pa. 2019) [MDL Doc. No. 1070; 18cv3299 Doc. No. 176].

[71] *See Connecticut v. Sandoz Inc.*, No. 3:20-cv-00802-MPS, 2025 WL 2028539, at *6 (D. Conn. July 21, 2025).

on the violation elements against Teva, and because entering partial summary judgment will promote efficiency at trial, the Court declines to exercise its discretion to deny summary judgment.

3. Teva's Further Arguments Regarding the RFAs

In addition to the above-addressed arguments, Teva seeks to convince this Court that it was forced to enter into DPA and subsequently plaintiffs sought to tactically hamstring their ability to defend themselves in this civil trial by requesting certain limited admissions under Rule 36. Defendant complains that it "disagreed with the DOJ regarding the conduct alleged in the indictment" and it was forced to negotiate the DPA or "risk mandatory debarment from all federal healthcare programs, among other consequences."[72] It literally whines that applying Rule 36 to its admissions based on the DPA in accordance with the law "would be incredibly unfair."[73].

It strains the imagination to believe that Teva entered into the DPA, in actions wherein it faced severe criminal penalties, without carefully investigating the government's factual allegations, particularly as Teva was well aware of the civil actions against it at that time. Teva elected to pay a $225 million monetary penalty and divest from pravastatin, serious consequences which Teva must accept by entering into these agreements.

As Judge Shea addressed in reviewing a similar motion in the States' generic pharmaceuticals antitrust action in the District of Connecticut, "the notion that the Defendants' hands are now somehow unfairly tied because they must stick by the truth of admissions they made under such circumstances is ridiculous."[74] Teva could have anticipated the results of the

---

[72] Teva Opp'n at 4 [18cv3299 Doc. No. 600].

[73] Teva Opp'n at 16 [18cv3299 Doc. No. 600].

[74] *Connecticut v. Sandoz Inc.*, 2025 WL 2028539 at *9.

DPAs and elected to fight the criminal allegations at trial. It chose not to. Now it must stand by its decisions.

4. State Law Claims in Count 82

Humana also seeks summary judgment against Teva on the violation element of several state law antitrust claims. The parties do not extensively brief the individual state law claims. However, Humana argues that many state statutes are interpreted in a manner co-extensive with the Sherman Act Section 1, and therefore, the existence of a price-fixing agreement is a *per se* violation. These states include: Arizona,[75] California,[76] Connecticut,[77] the District of

[75] Ariz. Rev. Stat. § 44-1402 (2026) (prohibiting a "contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce"); *Three Pheonix Co. v. Pace Indus., Inc.*, 659 P.2d 1258, 1260 (Ariz. 1983) (describing § 44-1402 as the Arizona counterpart to the Sherman Act Section 1 and applying federal precedent to its interpretation); Ariz. Rev. Stat. § 44-1412 ("It is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes.").

[76] Cartwright Act, Cal. Bus. & Prof. Code §§ 17200, *et seq*. (West 2026). To establish a violation of the Cartwright Act, a plaintiff must show "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 132 Cal. Rptr.3d 660, 670-71 (Cal. Ct. App. 2011) (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 77 Cal. Rptr. 2d 709, 721 (Cal. 1998)). "Under both California and federal law, agreements fixing or tampering with prices are illegal per se." *Oakland-Alameda Cnty. Builders' Exch. v. F.P. Lathrop Constr. Co*., 482 P.2d 226, 232 (Cal. 1971).

[77] Conn. Gen. Stat. §§ 35-24 *et. seq*.; Conn. Gen, Stat. § 35-26 (2026) ("Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful."); Conn. Gen, Stat. § 35-28 ("[E]very contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of: (a) Fixing, controlling, or maintaining prices, rates, quotations, or fees in any part of trade or commerce; . . . (c) allocating or dividing customers or markets, either functional or geographical, in any part of trade or commerce; or (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person."). *See also Westport Taxi Serv., Inc. v. Westport Transit Dist*., 664 A.2d 719, 728 (Conn. 1995) ("[W]e follow federal precedent when we interpret the [Connecticut Antitrust Act] unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently.").

Columbia,[78] Florida,[79] Hawaii,[80] Illinois,[81] Iowa,[82] Kanas,[83] Maine,[84] Maryland, [85] Massachusetts,[86] Michigan,[87] Minnesota,[88] Mississippi,[89] Missouri,[90] Nebraska,[91] Nevada,[92]

---

[78] D.C. Code § 28-4502 (2026) ("Every contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all or any part of which is within the District of Columbia is declared to be illegal."); D.C. Code § 28-4515 (2026) ("It is the intent of the Council of the District of Columbia that in construing this chapter, a court of competent jurisdiction may use as a guide interpretations given by federal courts to comparable antitrust statutes."); *District of Columbia v. Amazon, Inc*., 320 A.3d 1073, 1080-81 (D.C. 2024) (applying federal precedent to per se violations of § 28-4502).

[79] Fla. Stat. § 542.18 (2026) ("Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful."); Fla. Stat. § 542.32 ("It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes."); *see St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc*., 457 So.2d 1028, 1032-33 (Fla. Dist. Ct. App. 1984) (describing § 542.18 as Florida's counterpart and "substantially identical" to Section 1 of the Sherman Act and noting that "the Florida legislature has, in effect, adopted as the law of Florida the body of antitrust law developed by the federal courts under the Sherman Act").

[80] Haw. Rev. Stat. § 480-4(a) (2026) ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the State, or in any section of this State is illegal."); Haw. Rev. Stat. § 480-4(b) (2026) ("[N]o person . . . shall agree, combine, or conspire with any other person or persons, or enter into, become a member of, or participate in, any understanding, arrangement, pool, or trust, to do, directly or indirectly, any of the following acts. . . : (1) Fix, control, or maintain the price of any commodity; (2) Limit, control, or discontinue, the production, manufacture, or sale of any commodity for the purpose or with the result of fixing, controlling or maintaining its price; . . . (4) Refuse to deal with any other person or persons for the purpose of effecting any of the acts described in paragraphs (1) to (3)."); Haw. Rev. Stat. § 480-3 (2026) ("This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes.").

[81] 740 Ill. Comp. Stat. 10/3 (2026) ("Every person shall be deemed to have committed a violation of this Act who shall: (1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person: a. for the purpose or with the effect of fixing, controlling, or maintaining the price or rate charged for any commodity sold or bought by the parties thereto; . . . c. allocating or dividing customers, territories, supplies, sales, or markets, functional or geographical, for any commodity or service; or (2) By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce. . . ."); 740 Ill. Comp. Stat. 10/11 (2026) ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act.").

[82] Iowa Code § 553.4 (2026) ("A contract, combination, or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in a relevant market."); Iowa Code § 553.2 ("This chapter shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose as this chapter. This construction . . . shall be made to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices.").

[83] Kan. Stat. Ann. § 50-101 (2026) (defining a trust as "a combination of capital, skill, or acts, by two or more persons, for either, any or all of the following purposes: First. To create or carry out restrictions in trade or commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state. Second. To increase or reduce the price of merchandise, produce or commodities, or to control the cost or rates of insurance. Third. To prevent competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities."); Kan. Stat. Ann. § 50-163 (2026) ("[T]he Kansas restraint of trade act shall be construed in harmony with ruling judicial interpretations of federal antitrust law by the United States supreme court.").

[84] Me. Rev. Stat. Ann. tit. 10, § 1101 (2026) ("Every contract, combination in the form of trusts or otherwise, or conspiracy, in restraint of trade or commerce in this State is declared to be illegal."); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 149 (1st Cir. 2000) (quoting *Tri-State Rubbish, Inc. v. Waste Management, Inc.*, 998 F.2d

1073, 1018 (1st Cir. 1993)) ("We have noted that the 'Maine antitrust statutes parallel the Sherman Act,' and thus have analyzed claims thereunder according to the doctrines developed in relation to federal law.").

[85] Md. Code Ann., Com. L. § 11-204(a)(1) (2026) ("A person may not: by contract, combination, or conspiracy with one or more other persons, unreasonably restrain trade or commerce."); Md. Code Ann., Com. L. § 11-202(a)(2) (West 2026) ("It is the intent of the General Assembly that, in construing this subtitle, the courts be guided by the interpretation given by the federal courts to the various federal statutes dealing with the same or similar matters, including [the Sherman Act Section 1].").

[86] Mass. Gen. Laws ch. 93 § 4 (2026) ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the commonwealth shall be unlawful."); Mass. Gen. Laws ch. 93 §1 ("This chapter shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable."); *Ciardi v. F. Hoffman-La Roche, Ltd*., 762 N.E.2d 303, 307 (Mass. 2002) (noting that Massachusetts looks to judicial interpretations of federal antitrust law to interpret 93 § 4, and stating that "Federal courts consistently have held that an agreement among competitors to raise, depress, stabilize, or fix the price of goods in commerce is illegal per se").

[87] Mich. Comp. Laws Ann. § 445.772 (West 2026) ("A contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful."); Mich. Comp. Laws Ann. § 445.784(2) (West 2026) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason.").

[88] Minn. Stat. § 325D.51 (2026) ("A contract, combination, or conspiracy between two or more persons in unreasonable restraint of trade or commerce is unlawful."); *Lorix v. Crompton Corp*., 736 N.W.2d 619, 626 (Minn. 2007) ("Minnesota antitrust law is generally interpreted consistently with federal antitrust law. . . [and] it is sensible to interpret them consistently.").

[89] Miss. Code Ann. § 75-21-1 (2026) (defining a trust or combine as "a combination, contract, understanding or agreement, expressed or implied, between two or more persons, corporations or firms or association of persons or between any one or more of either with one or more of the others, when inimical to public welfare and the effect of which would be: (a) To restrain trade; (b) To limit, increase or reduce the price of a commodity; . . . (d) To hinder competition in the production, importation, manufacture, transportation, sale or purchase of a commodity" and prohibiting such action such that a person engaged in such a trust or combine "shall be deemed and adjudged guilty of a conspiracy to defraud. . ."); *Ga. Pac. Corp. v. Cook Timber Co*., 194 So. 3d 118, 124 (Miss. 2016) (applying federal interpretation of the Sherman Act to interpretation of § 75-21-1).

[90] Mo. Rev. Stat. § 416.031(1) (2026) ("Every contract, combination or conspiracy in restraint of trade or commerce in this state is unlawful."); Mo. Rev. Stat. § 416.141 (2026) ("[Section 416.031] shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes.").

[91] Neb. Rev. Stat. § 59-801 (2026) ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal."); Neb. Rev. Stat. § 59-829 ("When any provision of section[] 59-801 . . . is the same as or similar to the language of a federal antitrust law, the courts of this state in construing such sections or chapter shall follow the construction given to the federal law by the federal courts.").

[92] Nev. Rev. Stat. Ann. § 598A.060 (West 2025) (deeming illegal and as constituting a contract, combination or conspiracy in restraint of trade: "(a) price fixing, which consists of raising, depressing fixing, pegging or stabilizing the price of any commodity or service. . . . (b) Division of markets, consisting of agreements between competitors . . . . (c) Allocation of customers, consisting of agreements not to sell to specified customers of a competitor . . . ."); Nev. Rev. Stat. Ann. § 598A.050 (West 2025) ("The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes.").

New Hampshire,[93] New Mexico,[94] North Carolina,[95] North Dakota,[96] Oregon,[97] Puerto Rico,[98] Rhode Island,[99] South Dakota,[100] Tennessee,[101] Utah,[102] Vermont,[103] West Virginia,[104] and

---

[93] N.H. Rev. Stat. Ann. § 356:2 ("I. Every contract, combination, or conspiracy in restraint of trade is unlawful. II. Every contract, combination, or conspiracy is unlawful which has the purpose or the effect of: (a) fixing, controlling or maintaining prices. . . in any part of trade or commerce; or . . . (c) Allocating or dividing customers or markets in any part of trade or commerce; or (d) Refusing to deal, or coercing, persuading or inducing any person to refuse to deal, with another person. . . ."); N.H. Rev. Stat. Ann. § 356:14 (2026) ("In any action. . . under this chapter, the courts may be guided by interpretations of the United States' antitrust laws.").

[94] N.M. Stat. Ann. § 57-1-2 (2026) ("It is hereby declared to be unlawful for any person to monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, trade or commerce, any part of which trade or commerce is within the state."); N.M. Stat. Ann. § 57-1-15 (2026) ("[T]he Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws. This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices.").

[95] N.C. Gen. Stat. § 75-1 (2026) ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal."); *Madison Cablevision, Inc v. City of Morganton*, 386 S.E.2d 200, 213 (N.C. 1989) (noting that § 75-1 is based on the Sherman Act and "[t]he body of law applying the Sherman Act, although not binding upon this Court in applying G.S. 75-1, is nonetheless instructive in determining the full reach of that statute") (quoting *Rose v. Vulcan Materials Co*., 194 S.E.2d 521, 530 (N.C. 1973)).

[96] N.D. Cent. Code § 51-08.1-02 (2026) ("A contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful."); Uniform State Antitrust Act, S.B. 2101, 50th Leg. Assemb. (N.D. 1987-88) (Testimony of Jay E. Buringrud, p.2) ("State Senate Bill No. 2101 tracks language in federal Antitrust Acts with respect to collusive conduct and monopolization, so that the standards of proscribed conduct may be determined by federal precedent.").

[97] Or. Rev. Stat. § 646.725 (2026) ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is declared to be illegal."); Or. Rev. Stat. § 646.715(2) ("The decisions of the federal courts in construction of federal law relating to the same subject shall be persuasive authority in the construction of [§ 646.725].").

[98] P.R. Laws Ann. tit. 10 § 258 (2025) ("Every contract, combination in the form of trust or otherwise, or conspiracy in unreasonable restraint of trade or commerce in the Commonwealth of Puerto Rico or in any section thereof, is hereby declared to be illegal. *. . . "); Podiatrist Ass'n v. La Cruz Azul De P. R., Inc*., 332 F.3d 6, 16 (1st Cir. 2003) ("Because [the] language [of § 258] mirrors the language of Section 1 of the Sherman Act, we have treated the two provisions as coextensive.") (citing *Pressure Vessels v. Empire Gas*, 137 P.R. Dec. 497, 508-20 (1993)).

[99] 6 R.I. Gen. Laws § 6-36-4 (2026) ("Every contract, combination, or conspiracy in restraint of, or to monopolize, trade or commerce is unlawful."); R.I. Gen. Laws § 6-36-2(b) (2026) ("This chapter shall be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practicable, except where provisions of this chapter are expressly contrary to applicable federal provisions as construed.").

[100] S.D. Codified Laws § 37-1-3.1 (2026) ("A contract, combination, or conspiracy between two or more persons in restraint of trade or commerce any part of which is within this state is unlawful."); S.D. Codified Laws § 37-1-22 (2026) ("It is the intent of the Legislature that in construing this chapter, the courts may use as a guide interpretations given by the federal or state courts to comparable antitrust statutes.").

[101] Tenn. Code Ann. § 47-25-101 (2026) ("All arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in trade or commerce affecting this state, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed or which tend to advance, reduce, or control the price or the cost to the producer or the consumer of any product or service in trade or commerce affecting this state, are declared to be against public policy, unlawful, and void."); *see* 2024 Tenn. Pub. Acts 776 (amending state antitrust statute that prohibits price

Wisconsin.[105] Based on a review of the statutes and the state laws interpreting these statutes consistently with federal interpretation of the Sherman Act, the Court determines that a *per se* violation of the Sherman Act constitutes violations for each state antitrust law claimed, and the Court will grant partial summary judgment on the violation elements of these claims in Count 82 as to Teva regarding pravastatin.

### D. Judicial Estoppel

Humana alternatively argues that it is entitled to partial summary judgment based on the principle of judicial estoppel. Because Humana has conclusively established a right to judgment

---

fixing to, inter alia, more closely align with federal law); 113 Gen. Assemb. S.B. 2391 H. Floor Session (April 8, 2024) (discussing the intent of the legislation to update Tennessee law to more closely mirror federal law and neighboring jurisdictions and pointing to federal case law in interpreting the amended statute).

[102] Utah Code Ann. § 76-16-510(1) (West 2026) ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is declared to be illegal."); Utah Code Ann. § 76-16-502(2) (West 2026) ("The Legislature intends that the courts, in construing this part, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes.").

[103] Vt. Stat. Ann. tit. 9 § 2453(a) (2026) ("Unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce are hereby declared unlawful."); Vt. Stat. Ann. tit. 9 § 2453a(c) (2026) ("It is the intent of the General Assembly that in construing this section. . . , the courts of this State shall be guided by the construction of federal antitrust law and the Sherman Act, as amended, as interpreted by the courts of the United States.").

[104] W. Va. Code § 47-18-3 (2026) ("Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in this state shall be unlawful. . . . A contract, combination or conspiracy between two or more persons: (A) for the purpose or with the effect of fixing, controlling, or maintaining the market price, rate or fee of any commodity or service; or (B) fixing, controlling, maintaining, limiting or discontinuing the production, manufacture, mining, sale or supply of any commodity, or the sale or supply of any service, for the purpose or with the effect of fixing, controlling or maintaining the market price, rate or fee of the commodity or service; or (C) allocating or diving customers or markets, functional or geographic, for any commodity or service; or (2) A contract, combination or conspiracy between two or more persons whereby, in the letting of any public or private contract: . . . (B) one or more persons submits a bid intending it to be higher than another bid and thus complementary thereto, submits a bid intending it to be substantially identical to another bid, or refrains from the submission of a bid [shall be deemed to restrain trade or commerce unreasonably and are unlawful].").

[105] Wis. Stat. § 133.03(1) ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal."); *Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.*, 529 N.W.2d 905, 910-11 (Wis. 1995) (noting that in its enactment of Wisconsin antitrust law, "the Wisconsin legislature intended to follow interpretations of the federal act for those sections of ch. 133 that were patterned after the federal Sherman Act," and observing that "over the years the courts have looked to federal antitrust decisions for guidance when the language and policy of the federal and state antitrust statutes are substantially similar. . .").

as a matter of law based on the merits of its argument, the Court need not address issues of estoppel.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Humana's Motion for Partial Summary Judgment as to the violation elements of Counts 81, 82, and 85 as to pravastatin against Teva.[106] An order will be entered.

[106] This Memorandum Opinion and Order does not preclude any rulings in the related action by the State Attorneys General before Judge Shea in the District of Connecticut.