**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-MD-2724<br>HON. CYNTHIA RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*HUMANA INC. V. ACTAVIS ELIZABETH, LLC, ET AL.*, | 18-cv-3299 |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION *IN LIMINE* OF TEVA PHARMACEUTICALS USA, INC. TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING TEVA'S DEFERRED PROSECUTION AGREEMENT**

Defendant Teva Pharmaceuticals USA, Inc. (hereinafter, "Teva") respectfully moves under Federal Rules of Evidence 401, 402, 403, 408 and 410 to preclude evidence and argument concerning the deferred prosecution agreement ("DPA") entered into between Teva and the U.S. Department of Justice dated August 21, 2023 (the "Teva DPA").[1]

## PRELIMINARY STATEMENT

The Teva DPA makes very limited admissions: it admits only that a single junior Teva employee – an employee without pricing authority – engaged in a single instance of refusal to bid involving a single competitor with respect to a single drug that is at issue in this action. That DPA is set to expire, with the underlying indictment dismissed in August 2026, prior to trial in this case. That is a thin reed upon which to base liability in a massive litigation involving nearly two dozen pharmaceutical products. And it is an equally thin reed with respect to the scope of the sweeping pravastatin conspiracy – the only drug at issue identified in the Teva DPA – pled by Humana. In that conspiracy, Humana alleges that no fewer than 11 manufacturers colluded to increase the price of pravastatin between 2013 and 2014. Humana's alleged pravastatin conspiracy, according to Humana's expert, Dr. Bradford, emerged over the course of many months, a scope of allegation that far exceeds the extremely limited subject matter of the Teva DPA.

Despite all this, at nearly every turn, Humana has sought to use the Teva DPA as a shortcut to establishing liability on Teva's part. The Court should not allow Humana to do so, for three reasons.

First, the Teva DPA is irrelevant. Courts have repeatedly found that DPAs are not

[1] Attached as Exhibit 1 to the Declaration of Sheron Korpus (the "Korpus Declaration"). For the avoidance of doubt, Teva does not discredit or contest its admissions in the DPA.

binding judicial adjudications – indeed, the Teva DPA itself makes explicitly clear that it is not "a final adjudication of the matters addressed in those documents." The Teva DPA – which is in any event set to expire prior to the commencement of the trial in this case – therefore cannot be used as a shortcut to establish liability, and because it does not independently make any material fact more or less likely, it is irrelevant.

Second, allowing Humana to use the Teva DPA would be unfairly prejudicial to Teva. Numerous courts have found that DPAs, like other resolutions of criminal matters that do not involve an adjudication of guilt, pose a significant likelihood of unfair prejudice by influencing the jury to find liability based on the fact of the criminal proceedings, rather than on the factual record before it. By contrast, excluding the DPA would not prejudice Humana, as Teva does not discredit or contest its admissions in the DPA, and indeed is prepared to stipulate to them, as long as the DPA itself is not referenced in any manner before the jury.

Third, evidence of the Teva DPA concerns statements made during compromise negotiations, and is thus inadmissible under Rules 408 and 410.

Teva therefore respectfully requests that the motion in limine be granted.

## **BACKGROUND**

The DOJ filed an indictment against Teva on August 26, 2020.[2] While Teva disagreed with the DOJ regarding the conduct alleged in that indictment, the parties negotiated and ultimately entered into a DPA in August 2023. Without the DPA, Teva risked mandatory debarment from all federal healthcare programs, among other consequences. Teva DPA at ¶ 5(a). Through the DPA, the DOJ deferred prosecution of criminal charges for a period of three years. *Id.* at ¶ 4. The DPA expires on August 25, 2026, after which the court will enter an order

[2] *See* Second Superseding Indictment, *United States v. Teva Pharms. USA, Inc. and Glenmark Pharms. Inc., USA*, No. 2:20-cr-00200-RBS, ECF No. 28 (E.D. Pa. Aug. 26, 2020), attached as Exhibit 2 to the Korpus Declaration.

dismissing the indictment with prejudice. *Id.* at ¶ 20.3 By its express terms, the DPA is not a "final adjudication of the matters" addressed in either the indictment or the DPA. *Id.* at ¶ 2.

Teva's admissions with respect to pravastatin (the only at-issue drug in this case implicated by the DPA) are limited. The DPA's Statement of Facts states that "[a]s described below, Teva, through Employee 1, suppressed and eliminated competition for certain drugs by agreeing with competitors to refrain from submitting bids and offers to sell to certain customers." *Id.* at Attach. A, ¶ A; *see also id.* at ¶ B (Employee 1 "agreed with those individuals to refrain from submitting bids and offers to sell to certain customers . . . as described below.")

With respect to pravastatin, the specific conduct is that "[i]n or about the summer of 2013, Teva learned through Employee 1 that Glenmark Pharmaceuticals Inc., USA ('Glenmark') and Apotex Corp. ('Apotex') both intended to increase the price of pravastatin. Through Employee 1, Teva agreed not to provide a bid to supply pravastatin to a national pharmacy that at that time was a customer of Glenmark's for pravastatin." *Id.* at ¶ C. That is the extent of Teva's admitted conduct in the DPA with respect to pravastatin: one employee (without price-increase authority), declining to bid for a single customer's business, on one occasion.

## <u>ARGUMENT</u>

### I. <u>The Teva DPA is Not a Judicial Adjudication</u>

The Teva DPA is not relevant because it does not make any material fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Fundamentally, the Teva DPA is not proof of anything: a DPA lacks the legal force of a judicial determination because it is not one. *See Rochester Drug Coop., Inc. v. Hiscox Ins. Co.*, 466 F. Supp. 3d 337, 354 (W.D.N.Y. 2020) ("[because] courts should not substantively review deferred prosecution agreements, [] it cannot be said that their contents are judicially decided. Additionally, deferred

prosecution agreements do not resolve the underlying dispute because the agreement is contingent upon the defendant complying with its terms"); *see also EIG Energy Fund XIV, L.P. v. Keppel Offshore & Marine Ltd.*, 18 Civ. 1047 (PGG), 2020 WL 2319127, *7 (S.D.N.Y. May 11, 2020) ("A party that enters into a deferred prosecution agreement has not been convicted of a crime"); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 746 (D.C. Cir. 2016) ("Unlike a plea agreement—and more like a dismissal under Rule 48(a) [i.e., voluntary dismissal of an indictment on the part of the government] – a DPA involves no formal judicial action imposing or adopting its terms.")

The Teva DPA is not a judicial adjudication. The Court should therefore exclude evidence concerning the Teva DPA on relevance grounds.

## II. The Teva DPA is Unfairly Prejudical

Even if the Teva DPA is deemed to have some relevance, its probative value is far outweighed by the risk of unfair prejudice if the jury. Indeed, courts have excluded evidence of parallel criminal proceedings on the grounds of prejudice. *See, e.g., Williams v. Drake*, 146 F.3d 44, 48 (1st Cir. 1998) (finding that the "probative value of the guilty plea evidence was limited," and outweighed by prejudice because the "jury might have been tempted to find against [plaintiff] solely on the basis that he admitted guilt"); *Gil de Rebollo v. Miami Heat Assocs., Inc.*, 137 F.3d 56, 64 (1st Cir. 1998) (exclusion of conviction warranted where "admission of [the] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own").

The risk that a jury might be unduly influenced is even greater in the case of DPAs, which, as noted above, are not even judicial adjudications. *See In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2015 WL 9165341, at *1-2 (S.D.N.Y. Dec. 16, 2015)

(granting in part motion to exclude a DPA on the grounds that it would "invite the jury to impermissibly base its verdict on the fact that New GM was the subject of criminal proceedings").

While allowing Humana to refer to the DPA is likely to cause unfair prejudice to Teva, the reverse is not the case: Humana will suffer no prejudice from the Court precluding reference to the DPA because, as noted above, Teva does not discredit or contest the factual admissions in the DPA, and indeed is prepared to stipulate to them.

Due to this risk of prejudice, the Court should exclude evidence concerning the Teva DPA on the grounds of unfair prejudice.

## III. **The DPA is Inadmissible Under Rules 408 and 410**

The Teva DPA is also inadmissible under Rules 408 and 410 because it is a statement made during compromise negotiations with the DOJ. Rule 408 bars evidence of compromise offers and negotiations to prove liability of quantum of damages. Fed. R. Evid. 408(a). The policy reason for that rule is simple: "The purpose of Rule 408 is, of course, to encourage settlements and compromises of disputed claims, which would be discouraged if such evidence were admissible." *New Jersey Turnpike Auth. v. PPG Indus.*, 16 F. Supp. 2d 460, 473 (D.N.J. 1998).

Rule 410 separately bars "evidence of statements" related to bargaining over criminal pleas that do not result in an adjudication. Fed. R. Evid. 410(a)(1)-(4). The purpose of the rule is to "permit the unrestrained candor which produces effective plea discussions between the attorney for the government and the attorney for the defendant." *United States v. Stein*, No. CR. 04-269-9, 2005 WL 1377851, *7 (E.D. Pa. June 8, 2005).

Numerous courts have held that consent decrees – which are similar in nature to DPAs[3] – are "inadmissible to prove the facts of liability" under one of those two rules. *See Doe v. Schuylkill Cnty. Courthouse*, Civ. No. 3:21-CV-477, 2025 WL 566484, *2 (M.D. Pa. Feb. 20, 2025) ("not only is the consent decree akin to a settlement under Rule 408, but the introduction of the consent decree to prove the County's liability would result in unfair prejudice to the defendants"); *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 U.S. Dist. LEXIS 14021, *42 (M.D. Pa. Feb. 5, 2016) ("Courts generally have found that Rule 408 applies to consent decrees"); *L.C. v. Cent. Pa. Youth Ballet*, No. 1:09–cv–2076, 2010 WL 2650640, *7 (M.D. Pa. July 2, 2010) (striking discussion of consent decree in Plaintiffs' complaint due to inadmissibility under Rule 410); *New Jersey Turnpike Auth.*, 16 F. Supp. 2d at 473 ("Courts agree that Rule 408 applies to civil consent decrees executed with government agencies") (collecting cases). Indeed, under the same logic, at least one federal court has excluded a DPA. *See Accident Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:16-cv-02621-JMC, 2019 WL 2566950, *3-4 (D.S.C. June 21, 2019) (ruling government investigation documents, including a DPA, were inadmissible under Rule 408).

The Teva DPA is a compromise on the part of Teva and the government to resolve a criminal proceeding without a judicial adjudication. As courts have recognized, allowing such a compromise to be used against Teva in a trial would undermine the purpose of Rules 408 and 410 and disincentivize further such compromises.

## **CONCLUSION**

For the foregoing reasons, Teva respectfully requests that the Court grant its motion *in*

---

[3] *See Sullivan v. UBS AG*, 149 F.4th 206, 220 (2d Cir. 2025) (holding that "the mere recitation of statements in a DPA, without additional non-conclusory factual allegations, simply does not suffice [to state a claim]," applying law on consent decrees to DPA).

*limine* to exclude evidence and arguments concerning the Teva DPA.

Dated: July 22, 2026

Respectfully submitted,

By: */s/ Sheron Korpus*
Sheron Korpus
Seth A. Moskowitz
Seth Davis
KASOWITZ LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
skorpus@kasowitz.com
smoskowitz@kasowitz.com
sdavis@kasowitz.com

*Counsel for Defendant Teva Pharmaceuticals USA, Inc.*