**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>16-MD-2724<br>HON. CYNTHIA RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*HUMANA INC. v. ACTAVIS ELIZABETH, LLC, ET AL.,* | 18-cv-3299 |

**TRIAL DEFENDANTS' MEMORANDUM OF LAW
<u>IN SUPPORT OF THEIR OMNIBUS JOINT MOTIONS *IN LIMINE*</u>**

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## TRIAL DEFENDANTS' JOINT MOTIONS IN LIMINE

A. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING FBI FORMS FD-302 AND USPS OIG INTERVIEW MEMORANDA ................................. 3

B. MOTION TO PRECLUDE FIFTH AMENDMENT INVOCATIONS ........................... 14

C. MOTION TO PRECLUDE REFERENCES TO GOVERNMENT INVESTIGATIONS, PROCEEDINGS, AND STATEMENTS ..................................... 20

D. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT ABOUT ALLEGED ANTICOMPETITIVE ACTIVITY INVOLVING OTHER GENERIC DRUGS ............ 30

E. MOTION TO PRECLUDE THE USE OF INFLAMMATORY OR PEJORATIVE TERMS AND EVIDENCE OR ARGUMENT CONCERNING THE GENERAL RISING COSTS OF PRESCRIPTION DRUGS OR HEALTHCARE ............................ 40

F. MOTION TO EXCLUDE CHRISTOPHER BIHARI'S NOTEBOOKS ......................... 49

G. MOTION TO PRECLUDE HUMANA FROM PRESENTING INCORRECT, MISLEADING OR INFLAMMATORY INFORMATION ABOUT DAMAGES ......... 59

H. MOTION TO PRECLUDE PLAINTIFF FROM ARGUING THAT TRIAL DEFENDANTS' OR THEIR EMPLOYEES' PARTICIPATION IN TRADE ASSOCIATION AND INDUSTRY EVENTS WAS UNLAWFUL OR PROVIDED OPPORTUNITIES TO ENGAGE IN UNLAWFUL CONDUCT ................................... 64

I. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING IMPACT ON HUMANA PLANS AND BENEFICIARIES ................ 66

J. MOTION TO PRECLUDE ELICITING LEGAL CONCLUSIONS FROM FACT WITNESSES ................................................................................................... 71

K. MOTION TO PRECLUDE PLAINTIFF'S EXPERTS FROM RECITING A FACTUAL NARRATIVE ................................................................................................... 73

L. MOTION TO PRECLUDE REFERENCES TO DISCOVERY DISPUTES AND RESOLUTIONS ................................................................................................... 77

M. MOTION TO PRECLUDE AN ADVERSE INFERENCE BASED ON THE ABSENCE OF ANY DEFENSE WITNESSES ................................. 82

N. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING CURRENT AND FORMER EMPLOYEE COMPENSATION AND WEALTH ........... 84

O. MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING OTHER CIVIL CASES BROUGHT AGAINST TRIAL DEFENDANTS .................... 87

i

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
No. 08 Civ. 7508-SAS, 2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013)...................................90

*Accurso v. Infra-Red Servs., Inc.*,
169 F. Supp. 3d 612 (E.D. Pa. 2016) .....................................................................................80

*Aim Recycling of Fla., LLC v. Metals USA, Inc.*,
No. 18-cv-60292-BLOOM/Valle, 2020 U.S. Dist. LEXIS 6678 (S.D. Fla. Jan.
15, 2020) .................................................................................................................................18

*Animal v. Dog*,
No. 2:17-cv-03422-MEMT, 2023 U.S. Dist. LEXIS 145537 (C.D. Cal. May 1,
2023) ...........................................................................................................................15, 16, 19

*Apotex, Inc. v. Cephalon, Inc.*,
No. 2:06-cv-2768, 2017 WL 2362400 (E.D. Pa. May 31, 2017)............................................71

*In re Asacol Antitrust Litig.*,
No. 1:15-cv-12730, ECF No. 659 (D. Mass. Jan. 2, 2018)....................................................35

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999)............................................................................................64, 72

*Baker v. Firestone Tire & Rubber Co.*,
793 F.2d 1196 (11th Cir. 1986) .............................................................................................29

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
79 F.4th 1262 (10th Cir. 2023) ............................................................................................8, 9

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006)...................................................................................................71

*Bistrian v. Levi*,
448 F. Supp. 3d 454 (E.D. Pa. 2020) .....................................................................................80

*Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*,
247 F.3d 79 (3d Cir. 2001).......................................................................................................7

*Bright v. Firestone Tire & Rubber Co.*,
756 F.2d 19 (6th Cir. 1984) ..............................................................................................25, 29

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*Brill v. Marandola*,
  540 F. Supp. 2d 563 (E.D. Pa. 2008) ................................................................................76

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
  1:00-CV-2838-WBH, 2008 WL 11335088 (N.D. Ga. Apr. 29, 2008) ................................6, 7

*Catipovic v. Turley*,
  68 F. Supp. 3d 983 (N.D. Iowa 2014) ..............................................................................43

*Cavalier Clothes v. Major Coat Co.*,
  No. 89-3325, 1995 U.S. Dist. LEXIS 7023 (E.D. Pa. Apr. 6, 1995) ......................................16

*Certain Underwriters at Lloyd's, London v. Sinkovich*,
  232 F.3d 200 (4th Cir. 2000) .............................................................................................7

*Chinniah v. E. Pennsboro Twp.*,
  No. 1:08-cv-01330, 2013 U.S. Dist. LEXIS 162908 (M.D. Pa. Nov. 15, 2013) ....................79

*Citizen Dev., LLC v. Sys. Soft Techs., Inc.*,
  No. 1:23-CV-00564, 2026 WL 897373 (M.D. Pa. Mar. 30, 2026) .......................................79

*City of New York v. Pullman Inc.*,
  662 F.2d 910 (2d Cir. 1981), *cert. denied*, *Rockwell Int'l Corp. v. City of New
  York*, 454 U.S. 1164 (1982) .............................................................................................25

*Cobra Enters., LLC v. All Phase Servs., Inc.*,
  No. 20-4750-SRC, 2023 WL 3916276 (D.N.J. June 9, 2023) ..............................................71

*Coleman v. Home Depot, Inc.*,
  306 F.3d 1333 (3d Cir. 2002) ......................................................................................24, 29

*Davenport v. Goodyear Dunlop Tires N. Am., Ltd.*,
  No. 1:15-cv-03751-JMC, 2018 WL 833605 (D.S.C. Feb. 13, 2018) ....................................88

*Draper v. Airco, Inc.*,
  580 F.2d 91 (3d Cir. 1978) ...............................................................................................84

*Edwards v. City of Philadelphia*,
  860 F.2d 568 (3d Cir. 1988) .............................................................................................47

*In re Epipen (Epinephrine Injection, USP) Mktg, Sales Pracs. and Antitrust Litig.*,
  MDL No. 2785, 2021 WL 6072512 (D. Kan. Dec. 23, 2021) ..............................................36

*In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
  No. 1:15-cv-03751-JMC, 2014 WL 505234 (S.D. W.Va. Feb. 5, 2014) ..........................89, 90

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
  681 F. Supp. 2d 141 (D. Conn. 2009) ...............................................................................14

iii

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*Evans v. United States*,
No. 15-1839, 2017 U.S. Dist. LEXIS 237539 (E.D. Pa. Nov. 2, 2017) ...................................52

*Fakhoury v. O'Reilly*,
No. 16-13323, 2022 WL 909347 (E.D. Mich. Mar. 28, 2022)................................................26

*Farace v. Indep. Fire Ins. Co.*,
699 F.2d 204 (5th Cir. 1983) ...................................................................................................15

*Fast v. GoDaddy.com LLC*,
340 F.R.D. 326 (D. Ariz. 2022) ...............................................................................................80

*Fed. Deposit Ins. Corp. v. Deutsche Bank Secs., Inc.*,
1-14-cv-129-XR, 2019 WL 13191367 (W.D. Tex. Sept. 30, 2019)........................................84

*FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*,
695 F. Supp. 2d 216 (W.D. Pa. 2010)..................................................................................75, 76

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004)..............................................................................35, 37, 38, 55

*Fontenot v. Republic Nat'l Distrib.*,
No. 2:15-CV-01774, 2018 WL 1137519 (W.D. La. Mar. 2, 2018).........................................69

*In re Generic Pharms. Pricing Antitrust Litig.*,
16-MD-2724, 2023 WL 2244685 (E.D. Pa. Feb. 27, 2023) ....................................................33

*Goodman v. Pennsylvania Tpk. Comm'n*,
293 F.3d 655 (3d Cir. 2002)..............................................................................35, 48, 56

*Gumwood HP Shopping Partners v. Simon Prop. Grp., Inc.*,
3:11-cv-268 JD, 2016 WL 10706086 (N.D. Ind. Oct. 28, 2016)......................................85, 86

*Harrell v. DCS Equip. Leasing Corp.*,
951 F.2d 1453 (5th Cir. 1992) ..........................................................................................15, 16

*Harrell v. Mayer*,
No. 3:22-CV-730, 2026 WL 923616 (M.D. Pa. Apr. 6, 2026)................................................88

*Hathaway v. Idaho Pac. Corp.*,
No. 4:15-cv-00086-DCN, 2019 U.S. Dist. LEXIS 183647 (D. Idaho Oct. 21, 2019).............54

*Healthquest of Cent. Jersey, LLC v. Antares Aul Syndicate 1274*,
No. 18-12375 (ZNQ) (DEA), 2022 WL 225028 (D.N.J. Jan. 25, 2022) ................................37

*In re High Fructose Corn Syrup Antitrust Litig.*,
156 F. Supp. 2d 1017 (C.D. Ill. 2001), *rev'd on other grounds*, 295 F.3d 651
(7th Cir. 2002)...........................................................................................................................6

iv

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*Highland Capital Mgmt, L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005)........................................................................74

*In re HIV Antitrust Litig.*,
   No. 19-cv-02573-EMC, 2023 U.S. Dist. LEXIS 45939 (N.D. Cal. Mar. 19, 2023) ...............68

*Hosp. Television Inc. v. Wells Television Inc.*,
   462 F.2d 417 (8th Cir. 1972) ..................................................................................54

*Houser v. Folino*,
   No. 2:10-cv-00416, 2015 U.S. Dist. LEXIS 154530 (W.D. Pa. Nov. 16, 2015).....................88

*Humana Inc. v. Actavis Elizabeth, LLC, et al.*,
   18-cv-03299, ECF No. 589–90, 600 (E.D. Pa.) ........................................................31

*ICU Medical, Inc. v. Rymed Techs., Inc.*,
   752 F. Supp. 2d 486 (D. Del. 2010).........................................................................34

*ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
   249 F. Supp. 2d 622 (E.D. Pa. 2003), *amended*, 268 F. Supp. 2d 448 (E.D. Pa. 2003) ..........83

*Intellectual Ventures I LLC v. Symantec Corp.*,
   C.A. No. 10-1067-LPS, D.I. 615 (D. Del. Jan. 6, 2015)............................................45

*In re Intuniv Antitrust Litig.*,
   No. 16-cv-12653, 2021 WL 10363709 (D. Mass. Mar. 3, 2021) ................................36, 47, 48

*Ivanitsky v. Griffin*,
   13-cv-00823 (CBA), 2024 WL 4665263 (E.D.N.Y. Nov. 4, 2024) ........................................10

*In re Japanese Elec. Prods. Antitrust Litig.*,
   723 F.2d 238 (3d Cir. 1983), *rev'd on other grounds, Matsushita Elec. Indus.*
   *Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..............................................53

*Jo Ann Howard & Assocs., P.C. v. Cassity*,
   4:09CV01252 ERW, 2015 U.S. Dist. LEXIS 10035 (E.D. Mo. Jan. 29, 2015)..........10, 11, 13

*Johnson v. Ford Motor Co.*,
   988 F.2d 573 (5th Cir. 1993) ..................................................................................90

*Junk v. Terminix Int'l Co.*,
   No. 4:05-CV-0608-JAJ, 2008 WL 5142188 (S.D. Iowa Aug. 15, 2008) ...............................70

*Kaisinger v. Walmart Stores, Inc.*,
   No. 18-cv-855, 2024 WL 1536040 (E.D. Pa. Apr. 9, 2024)......................................................2

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
   No. 2:06-CV-1797, 2016 WL 5929051 (E.D. Pa. Jan. 21, 2016)................................43, 44, 46

v

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*King v. Banner*,
 No. 07-0704, 2010 U.S. Dist. LEXIS 97682 (E.D. Pa. Sep. 17, 2010) ...................................14

*Kinsey v. Cendant Corp.*,
 588 F. Supp. 2d 516 (S.D.N.Y. 2008)..............................................................................84, 86

*Kraft Foods Global, Inc. v. United Egg Producers, Inc.*,
 No. 11-cv-8808, 2023 U.S. Dist. LEXIS 170967 (N.D. Ill. Sept. 19, 2023) ...........................11

*Krys v. Aaron*,
 112 F. Supp. 3d 181 (D.N.J. 2015) .......................................................................................74

*LaRock v. Albany Cnty. Nursing Home*,
 1:19-CV-0604 (AMN/DJS), 2024 WL 4566362 (N.D.N.Y. Oct. 24, 2024) ...........................11

*Littlejohn v. Solar*,
 No. 1:16-CV-9446-NLH-JS, 2020 WL 2520418 (D.N.J. May 18, 2020) ...............................74

*In re Loestrin 24 FE Antitrust Litig.*,
 No. 1:13-MD-2472 WES, 2019 WL 13257216 (D.R.I. Dec. 6, 2019)....................................43

*Luce v. United States*,
 469 U.S. 38 (1984).................................................................................................................2

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
 Case No. 11-cv-681, 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015).....................................74

*Maple Flooring Mfrs.' Ass'n v. United States*,
 268 U.S. 563 (1925)..............................................................................................................64

*McBride v. Petulla*,
 No. 16-cv-256, 2020 WL 1032535 (W.D. Pa. Mar. 3, 2020) ................................................73

*McCowan v. City of Philadelphia*,
 603 F. Supp. 3d 171 (E.D. Pa. 2022) .....................................................................................2

*McLeod v. Parsons Corp.*,
 73 Fed. Appx. 846 (6th Cir. 2003).......................................................................................88

*Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*,
 No. 98-80-SLR, 2005 WL 67086 (D. Del. Jan. 5, 2005).......................................................23

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
 232 F. Supp. 3d 558 (S.D.N.Y. 2017)...................................................................................43

*Mitcham v. Americold Logistics, LLC*,
 No. 17-CV-00808-WJM-NYW, 2017 WL 4163359 (D. Colo. Sept. 20, 2017)....................58

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*Mustafa v. Superintendent, SCI Dallas*,
    No. Civ.A. 03-CV-4133, 2004 WL 1078500 (E.D. Pa. May 13, 2004), *report
    and recommendation adopted*, 2004 WL 1490399 (E.D. Pa. June 30, 2004) ........................12

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    842 F.3d 34 (1st Cir. 2016)...................................................................................................62

*Nezowy v. United States*,
    723 F.2d 1120 (3d Cir. 1983)...........................................................................................14, 15

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000)..................................................................................................73

*Odgers v. Progressive N. Ins. Co.*,
    No. 3:15-CV-329, 2023 WL 7183981 (M.D. Pa. Nov. 1, 2023) ..................................44, 47, 69

*Orexo AB v. Actavis Elizabeth LLC*,
    424 F. Supp. 3d 371 (D. Del. 2019).......................................................................................47

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994).....................................................................................................34

*Park W. Radiology v. CareCore Nat'l LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009)...............................................................................37, 89

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*,
    2:15-cv-621, 2016 WL 7743510 (E.D. Tex. Sept. 21, 2016) ...................................................45

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*,
    No. H-09-3712, 2010 WL 11661412 (S.D. Tex. July 1, 2010) ...................................................5

*Pennsylvania State Univ. v. Vintage Brand, LLC*,
    755 F. Supp. 3d 563 (M.D. Pa. 2024) ....................................................................................35

*Petrongola v. Rothman Nat'l Mgmt. Servs. Org., LLC*,
    No. CV 23-734, 2026 WL 668296 (E.D. Pa. Feb. 13, 2026), *report and
    recommendation adopted sub nom. Aleardi v. Rothman Nat'l Mgmt. Servs.
    Org., LLC*, No. CV 23-861, 2026 WL 662027 (E.D. Pa. Mar. 9, 2026) .................................82

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*,
    998 F.2d 1224 (3d Cir. 1993)..................................................................................................34

*Picard v. Sage Realty*,
    No. 20 Civ. 10109 (JFK), 2021 WL 6052422 (S.D.N.Y. Dec. 21, 2021) ..............................8, 9

*In re Processed Eggs Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) .....................................................................................64

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*Quagliarello v. Dewees*,
No. 09-cv-4870, 2011 WL 3438090 (E.D. Pa. Aug. 4, 2011) .......................................... *passim*

*Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*,
808 F.2d 271 (3d Cir. 1986).................................................................................................17

*Robertson v. McNeil-PPC, Inc.*,
2:11-cv-09050-JAK-SS, 2014 WL 12577147 (C.D. Cal. July 14, 2014)...............................23

*Romero v. Nevada Dep't of Corr.*,
No. 2:08-CV-808-JAD-VCF, 2013 WL 6206705 (D. Nev. Nov. 27, 2013) ............................9

*Ross v. Am. Express Co.*,
35 F. Supp. 3d 407 (S.D.N.Y. 2014).....................................................................................16

*Schieber v. City of Philadelphia*,
No. 98-5648, 2000 U.S. Dist. LEXIS 17952 (E.D. Pa. Dec. 13, 2000)....................................56

*In re Seroquel Prods. Liab. Litig.*,
No. 6:06-md-1769-Orl-22DAB, 2009 WL 223140 (M.D. Fla. Jan. 30, 2009).......................34

*Skillz Platform Inc. v. AviaGames Inc.*,
21-cv-02436-BLF, 2023 WL 8438738 (N.D. Cal. Dec. 5, 2023)...........................................84

*Skillz Platform Inc. v. AviaGames Inc.*,
No. 4:21-cv-02436, ECF No. 586 (N.D. Cal. Jan. 12, 2024)....................................................15

*SLSJ, LLC v. Kleban*,
277 F. Supp. 3d 258 (D. Conn. 2017).....................................................................................74

*Smith v. I-Flow Corp.*,
No. 09-C-3908, 2011 WL 12627557 (N.D. Ill. June 15, 2011).......................................23, 26

*Synopsys, Inc. v. Real Intent, Inc.*,
20-cv-02819, 2024 WL 4351870 (N.D. Cal. Sept. 30, 2024)................................................45

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial
Proc.*,
14-c-1748, MDL No. 2545, 2017 WL 2313201 (N.D. Ill. May 29, 2017).................84, 85, 86

*In re Testosterone Replacement Therapy Prods. Liability Litig. Coordinated
Pretrial Proceedings*,
14-c-1748, MDL No. 2545, 2018 WL 305503 (N.D. Ill. Jan. 6, 2018)..................................45

*Thompson v. Glenmede Tr. Co.*,
Civ. No. 92-5233, 1996 WL 529693 (E.D. Pa. Sept. 17, 1996) ........................................79, 80

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*United Healthcare Services, Inc. v. Teva Pharma. USA, Inc., et al.*,
No. 19-cv-5042, ECF No. 144 ................................................................................33

*United States v. Adam Bros. Farming, Inc.*,
No. CV-00-7409 CAS, 2005 WL 5957827 (C.D. Cal. Jan. 25, 2005) ....................................11

*United States v. Adames*,
56 F.3d 737 (7th Cir. 1995) ................................................................................12

*United States v. Almonte*,
956 F.2d 27 (2d Cir. 1992)................................................................................12

*United States v. Bailey*,
840 F.3d 99 (3d Cir. 2016)....................................................................1, 34, 48, 68

*United States v. Benson*,
961 F.2d 707 (8th Cir. 1992) ................................................................................10

*United States v. Burgess*,
576 F.3d 1078 (10th Cir. 2009) ................................................................................44

*United States v. Caldwell*,
760 F.3d 267 (3d Cir. 2014)................................................................................90

*United States v. Carpenter*,
494 F.3d 13 (1st Cir. 2007)................................................................................44

*United States v. Cartagena*,
172 F.4th 109 (1st Cir. 2026)................................................................................4, 5

*United States v. Casoni*,
950 F.2d 893 (3d Cir. 1991)................................................................................54

*United States v. Davis*,
845 F.3d 282 (7th Cir. 2016) ................................................................................5

*United States v. DaVita Inc.*,
No. 1:21-cr-00229-RBJ, 2022 WL 833368 (D. Colo. Mar. 21, 2022) ....................................12

*United States v. Fielding*,
645 F.2d 719 (9th Cir. 1981) ................................................................................55

*United States v. Gaev*,
24 F.3d 473 (3d Cir. 1994)................................................................................34

*United States v. Garcia*,
490 F. App'x 463 (3d Cir. 2012) ................................................................................39

ix

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*United States v. Gjerde,*
   110 F.3d 595 (8th Cir. 1997) ........................................................................................10

*United States v. Harrison,*
   524 F.2d 421 (D.C. Cir. 1975) ........................................................................................8

*United States v. Johnson,*
   No. 1:21-cr-39-RJC-7, 2026 U.S. Dist. LEXIS 152667 (W.D. Pa. July 10, 2026) ..............6, 7

*United States v. Leo,*
   941 F.2d 181 (3d Cir. 1991)..........................................................................................71

*United States v. Lloyd,*
   566 F.3d 341 (3d Cir. 2009)..........................................................................................52

*United States v. Loc. 560 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen,*
   *& Helpers of Am.,*
   780 F.2d 267 (3d Cir. 1985)..........................................................................................14

*United States v. Montas,*
   41 F.3d 775 (1st Cir. 1994)...........................................................................................75

*United States v. Pedroni,*
   45 Fed. App'x 103 (3d Cir. 2002), *cert. denied,* 537 U.S. 1045 (2002)...................................83

*United States v. Ramsey,*
   785 F.2d 184 (7th Cir. 1986) ........................................................................................54

*United States v. Rayapureddy,*
   No. CR 22-285, 2024 WL 278622 (W.D. Pa. Jan. 25, 2024) ...................................................54

*United States v. Romanello,*
   No. 22-CR-194(EK), 2023 WL 8480071 (E.D.N.Y. Dec. 6, 2023) .........................................6

*United States v. Romano,*
   849 F.2d 812 (3d Cir. 1988).............................................................................................2

*United States v. Saget,*
   991 F.2d 702 (11th Cir. 1993) ......................................................................................12

*United States v. Shulaya,*
   No. 1:17-cr-00350-KBF, ECF 819 (S.D.N.Y. June 11, 2018) .................................................5

*United States v. Stadtmauer,*
   620 F.3d 238 (3d Cir. 2010)..........................................................................................12

*United States v. Stahl,*
   616 F.2d 30 (2d Cir. 1980)............................................................................................84

x

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*United States v. Toner*,
    173 F.2d 140 (3d Cir. 1949)........................................................................................26, 27

*United States v. Universal Rehab. Servs. (PA), Inc.*,
    205 F.3d 657 (3d Cir. 2000)...............................................................................................27

*United States v. Vastola*,
    899 F.2d 211 (3d Cir. 1990), *vacated on other grounds*, 497 U.S. 1001 (1990)....................83

*United States v. Watts*,
    934 F. Supp. 2d 451 (E.D.N.Y. 2013) ...............................................................................69

*United States v. Williams*,
    458 F.3d 312 (3d Cir. 2006)...............................................................................................48

*United States v. Wilmington Tr. Corp.*,
    No. 15-23-RGA, 2017 U.S. Dist. LEXIS 165765 (D. Del. Oct. 6, 2017) ...............................17

*Upstate Shredding, LLC v. Ne. Ferrous, Inc.*,
    3:12-CV-1015 (LEK/DEP), 2016 U.S. Dist. LEXIS 26042 (N.D.N.Y. Mar. 2,
    2016) ..............................................................................................................................7, 10

*In re Urethane Antitrust Litig.*
    No. 2:08-5169 (WJM-MF), 2016 WL 475339 (D.N.J. Feb. 8, 2016) .........................17, 36, 89

*In re Urethane Antitrust Litig.*,
    MDL No. 1616, 2013 U.S. Dist. LEXIS 3166 (D. Kan. Jan. 8, 2013) ...................................16

*W.L. Gore & Assocs., Inc. v. C.R. Baird, Inc.*,
    No. 11–515–LPS, 2017 WL 525668 (D. Del. Feb. 8, 2017) ...................................................80

*Waters v. Genesis Health Ventures, Inc.*,
    400 F. Supp. 2d 814 (E.D. Pa. 2005) ..................................................................................79

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*,
    89 F.4th 430 (3d Cir. 2023) ...............................................................................................65

*Woods v. START Treatment & Recovery Centers*,
    864 F.3d 158 (2d Cir. 2017)...............................................................................................15

*In re Zetia Ezetimibe Antitrust Litig.*,
    No. 2:18-md-2836, 2023 U.S. Dist. LEXIS 112035 (E.D. Va. April 5, 2023)........................68

*Zucchella v. OlympUSA, et, Inc.*,
    2:19-cv-07335-HDV-SKx, 2023 U.S. Dist. LEXIS 234231 (C.D. Cal. Dec. 6, 2023) ..........37

xi

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Pursuant to Federal Rule of Evidence ("FRE") 103, Trial Defendants in the above-captioned action respectfully submit this memorandum of law in support of their Omnibus Joint Motions *In Limine*.[1]    Trial Defendants reserve the right to amend or supplement these motions, or file additional motions *in limine*, depending on the resolution of the various summary judgment and *Daubert* motions currently pending before the Court, or based on further developments before and during trial.  Unless otherwise stated herein, all Trial Defendants join in each motion, though there are certain motions as to which certain Trial Defendants do not join.

## LEGAL STANDARDS APPLICABLE TO MULTIPLE MOTIONS

Federal Rules of Evidence 401 and 402 provide that evidence which is not relevant is inadmissible.  Under Rule 401, evidence is relevant only if it (a) "has any tendency to make a fact more or less probable" than it would otherwise be without the evidence, *and* (b) "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  If these requirements are not met, the evidence is inadmissible.  Fed. R. Evid. 402 ("Irrelevant evidence is not admissible").

Rule 403 provides that evidence, even if relevant, should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.  "When the probative value of evidence is tenuous, a relatively minor risk of substantial undue prejudice should counsel against admitting it."  *United*

---

[1] As of July 22, 2026, the defendants proceeding to trial are Actavis Elizabeth LLC, Actavis Holdco U.S., Inc., and Actavis Pharma, Inc. (collectively, "Actavis"), Mylan Pharmaceuticals, Inc., Mylan Inc., Mylan, N.V., and UDL Laboratories, Inc. (collectively, "Mylan"), Breckenridge Pharmaceutical, Inc., Impax Laboratories, LLC, Lannett Company, Inc., Mayne Pharma Inc., and Teva Pharmaceuticals USA, Inc. (altogether, the "Trial Defendants"). Additional defined terms used throughout this Motion include Plaintiff Humana, Inc. ("Humana"), and Humana's Second Amended Complaint ("SAC").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*States v. Bailey*, 840 F.3d 99, 119 (3d Cir. 2016); *see also McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 184 (E.D. Pa. 2022) (same).

District courts have a "duty to limit the jury's exposure to only that which is probative and relevant," and must therefore "screen what the jury is exposed to because of the potential for jury confusion or prejudice." *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988).  To fulfill that duty, courts have "inherent authority" to issue *in limine* rulings, *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), which serve "to bar irrelevant, inadmissible, and prejudicial issues from being introduced at trial."  *Kaisinger v. Walmart Stores, Inc.*, No. 18-cv-855, 2024 WL 1536040, at *1 (E.D. Pa. Apr. 9, 2024) (internal quotation marks omitted).

2

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**A.    MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING FBI FORMS FD-302 AND USPS OIG INTERVIEW MEMORANDA**

Trial Defendants respectfully move under Rules 403, 801 and 802 to preclude the use, admission into evidence, and/or demonstration or publication to the jury (including for purposes of impeachment), of interview memoranda of witnesses (the "Interviewed Witnesses"[2]), as well as evidence (including live and/or deposition witness testimony) and argument concerning such interview memoranda, generated by agents of the Federal Bureau of Investigation ("FBI") on Forms FD-302 (hereinafter "302s"), or by agents of the U.S. Postal Service Office of the Inspector General ("OIG") (hereinafter, "OIG Interview Memoranda" and together with the 302s, "Interview Memoranda"), in connection with the U.S. Department of Justice ("DOJ") investigation into the generic pharmaceutical industry.

## PRELIMINARY STATEMENT

During the federal government's investigation into the generic pharmaceutical industry, federal law enforcement agencies interviewed current and former employees of Defendants. Over the course of 2025, Interview Memoranda prepared by FBI and OIG agents were produced in this MDL. Those memoranda are not transcripts or verbatim records and the underlying interviews were not conducted under oath. The interviews were not recorded, nor have the witnesses had a chance to correct the summaries. They are merely an impressionistic summary made by agents of federal law enforcement agencies of those interviews. The Interview Memoranda are often prepared well after the interviews themselves. Such one-sided memoranda

---

[2] Based on Plaintiff's pre-trial disclosures to date, the Interviewed Witnesses whose 302s and/or OIG Interview Memoranda Humana intends to introduce into evidence are the following: ████████████ ████████████████████████████████████████████████████████████ ████████████████████████. For the avoidance of doubt, this motion equally applies to all other Interviewed Witnesses.

3

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

of witness interviews are inherently unreliable and biased. Additionally, the Court should not allow Interview Memoranda to be admitted into evidence in this case for the following reasons.

First, they are multi-level hearsay. The memoranda themselves are hearsay. Even if the memoranda themselves can be admitted under one of the exceptions to the hearsay rule (and they cannot), the statements within them are rank hearsay. Moreover, the inherent unreliability of these memoranda means that courts regularly preclude their use at trial.

Second, interview memoranda from a criminal investigation are unfairly prejudicial. Many courts have found that documents from criminal investigations are prejudicial, in that they encourage juries to treat civil defendants as somehow "criminal," rather than making their own impartial assessments of the facts.

Moreover, these Interview Memoranda cannot be used for the purpose of impeachment as prior inconsistent statements, because the Interview Memoranda are not the statements of the witnesses themselves.

For these reasons, Trial Defendants respectfully request that the Court order that the Interview Memoranda, as well as evidence (including live and/or deposition witness testimony) and arguments concerning the Interview Memoranda, be excluded, and their use, admission into evidence, and/or demonstration or publication to the jury, including as prior inconsistent statements, be precluded.

## BACKGROUND

FBI witness interviews are generally not electronically recorded.[3] Rather, FBI agents write a summary of the interview on Form FD-302.[4] These summaries, which may be based on

---

[3] Ex. A-1 at 1 ("Perhaps surprisingly in this modern electronic age, interviews are not recorded absent express approval by the SAC of the FBI office conducting the investigation.").

[4] *See United States v. Cartagena*, 172 F.4th 109, 119 (1st Cir. 2026) (discussion of the nature of 302s).

4

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

contemporaneous notes, are not a verbatim transcription and are not produced by a court reporter or stenographer.[5]  Rather, they are "evaluative summaries of the witness interviews, expressing the agents' views of the important aspects of the witnesses' statements during the interviews."[6] These summaries may be completed days, weeks, or even months after the interviews to which they relate.[7]  Without electronic recording of the interviews, there are limited means of verifying the contents of the 302.

Similarly, interviews conducted by OIG agents are not electronically recorded; rather OIG agents write summaries on a "Memorandum of Interview" form.  As with FBI 302s, these memoranda are often completed long after the interviews to which they relate.

**ARGUMENT**

### I.        The Interview Memoranda Are Inadmissible Hearsay

The Interview Memoranda are summaries of purported out-of-court statements.  As one federal court has put it, "statements included in 302s are . . . classic hearsay."  Ex. A-2, *United States v. Shulaya*, No. 1:17-cr-00350-KBF, ECF 819 at 5 (S.D.N.Y. June 11, 2018); *see also United States v. Davis*, 845 F.3d 282, 292 n.4 (7th Cir. 2016) ("[T]he FD–302s were plainly inadmissible hearsay").  Indeed, Interview Memoranda contain multiple levels of hearsay: the document itself is one level; statements allegedly made by the interviewee are a second; and any statements purportedly made by others and reported by the interviewee constitute a third level of

---

[5] *See id.*, 172 F.4th at 119.

[6] *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, No. H-09-3712, 2010 WL 11661412, at *3 (S.D. Tex. July 1, 2010) ("302s are not factual data . . . 302s are evaluative summaries of the witness interviews, expressing the agents' views of the important aspects of the witnesses' statements during the interviews.").

[7] ███████████████████████████████████████████████████████████████

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

hearsay. *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 1:00-CV-2838-WBH, 2008 WL 11335088, at *2 (N.D. Ga. Apr. 29, 2008) (because 302 reports contain "multiple layers of hearsay, the proponent must provide an exception for every layer."); *In re High Fructose Corn Syrup Antitrust Litig.*, 156 F. Supp. 2d 1017, 1027 (C.D. Ill. 2001), *rev'd on other grounds*, 295 F.3d 651 (7th Cir. 2002) (excluding FBI 302 memorandum from consideration on summary judgment as triple hearsay).

The outer layer, *i.e.* the Interview Memorandum itself, is hearsay. Indeed, the "Guidelines Regarding Appropriate Use of 302 Forms in Criminal Trials"[8] issued by Judge Forrest in the Southern District of New York, state that "it is clear that [] 302s do not *per se* fall within any exception to the hearsay rule" and thus "[r]arely does a 302 come into evidence." Nonetheless, three hearsay exceptions are typically raised in an attempt to introduce 302s into evidence: the business records exception (Fed. R. Evid. 803(6)), the public records exception (Fed. R. Evid. 803(8)) and the residual exception (Fed. R. Evid. 807). However, none of those exceptions applies here. *See*, *e.g.*, *United States v. Johnson*, No. 1:21-cr-39-RJC-7, 2026 U.S. Dist. LEXIS 152667, at *54 (W.D. Pa. July 10, 2026). And even if one of those exceptions were satisfied, the proponent of the 302 must then show how the statements within fit into an exception to hearsay.

The Interview Memoranda do not satisfy the business records exception standard under Fed. R. Evid. 803(6), which does not encompass law enforcement reports like the Interview Memoranda. The Interview Memoranda are created in advance of potential criminal proceedings and – unlike "regular" police records – are "highly specific, narrative recitations that differ from one to the next like snowflakes." *United States v. Romanello*, No. 22-CR-194(EK), 2023 WL

---

[8] Ex. A-2 at 1-2.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

8480071, at *4 (E.D.N.Y. Dec. 6, 2023); *cf. Certain Underwriters at Lloyd's, London v. Sinkovich,* 232 F.3d 200, 205 n.4 (4th Cir. 2000) (noting that it "is well established that documents made in anticipation of litigation are inadmissible under the business records exception").

A similar hurdle applies to the public records exception in Rule 803(8). Interview Memoranda "do not contain factual findings" – which Rule 803(8)(A)(iii) requires – and thus do not fit the public records exception. *Carpenters Health & Welfare Fund*, 2008 WL 11335088 at *2 (rejecting on this basis that 302s were admissible under Rule 803(8)). Unsurprisingly, therefore, a recent Pennsylvania federal court decision found that a "302 report could not come into evidence, because it was neither a business record nor a public report." *Johnson*, 2026 U.S. Dist. LEXIS 152667, at *54.

Nor can Humana make a showing that the "residual exception" under Rule 807 applies. That "exception is 'to be used only rarely, and in exceptional circumstances,' and is meant to 'apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'" *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 112 (3d Cir. 2001). This is not such an exceptional circumstance: courts routinely find that interview memoranda lack such exceptional guarantees of trustworthiness. *See Upstate Shredding, LLC v. Ne. Ferrous, Inc.*, 3:12-CV-1015 (LEK/DEP), 2016 U.S. Dist. LEXIS 26042, at *44 (N.D.N.Y. Mar. 2, 2016) (finding residual hearsay exception inapplicable to 302).

Moreover, even if the other criteria for one of the exceptions could be made out (they cannot), the business records, public records and residual exceptions all include a "trustworthiness" component. Fed. R. Evid. 803(6)(E), (8)(B); Fed. R. Evid. 807(a)(1). There is

7

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

ample reason to be skeptical about the reliability of Interview Memoranda—which are the subjective account of the agent. *See, e.g.*, *United States v. Harrison*, 524 F.2d 421, 427–28 (D.C. Cir. 1975) ("The 302 reports contain the agent's narrative account of the witness's statement, prepared partly from the rough notes and partly from the agent's recollection of the interview. Although the agents are trained to include all the pertinent information in the 302 report, there is clearly room for misunderstanding or outright error whenever there is a transfer of information in this manner."). Judge Forrest warned of the significant reliability issues faced by 302s:

> Issues that may impact reliability include the fact that different agents have different practices regarding how much detail they choose to include in a 302, and whether to include facts learned elsewhere as part of the investigation or editorial content that were not actually stated during the interview.[9]

Indeed, in resisting Teva's motion for production of the Interview Memoranda of Nisha Patel in the MDL in 2023, the DOJ itself acknowledged that the Interview Memoranda are "only evaluative summaries of witness interviews by government agents."[10]

Given these significant reliability concerns, in order to meet the trustworthiness requirement, Humana must go beyond simply "authenticating" the documents as records, but rather it must establish the accuracy and reliability of the Interview Memoranda, including by obtaining the testimony of the agents who authored the documents. *See Picard v. Sage Realty*, No. 20 Civ. 10109 (JFK), 2021 WL 6052422, at *3 (S.D.N.Y. Dec. 21, 2021) (302 admissible as to the first level of hearsay under Rule 803(8) because the report's author testified as to the document's origin and accuracy); *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1274 (10th Cir. 2023) (same).

---

[9] Ex. A-2 at 5.

[10] 2:16-md-02724-CMR, ECF 2478 at 1 (June 6, 2023).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Humana has not taken any steps to do this.  It has not included any FBI or USPS OIG agents on its witness list, and will therefore be unable to obtain their testimony.  Indeed, the names of the agents are redacted from the Interview Memoranda, so it is not even possible to identify who is capable of testifying as to the reliability of the Interview Memoranda.  Humana has not satisfied its burden of establishing the accuracy and reliability of the Interview Memoranda.  *See Picard v. Sage Realty*, 2021 WL 6052422, at *3 (S.D.N.Y. Dec. 21, 2021).  While Humana obtained declarations from Kari A. Vitale, Assistant Special Agent in Charge of the Investigations Operations Division of the U.S. Postal Service, purportedly authenticating OIG Interview Memoranda, and William J. Harris, a Supervisory Paralegal Specialist at the FBI, purportedly authenticating 302s, neither Mr. Harris nor Ms. Vitale claims to be the author of any of the Interview Memoranda.  Nor do they claim to have been present at any of the interviews that are purportedly summarized by memoranda, contrary to cases that have admitted 302s under hearsay exceptions.[11]  *See, e.g., Barrick*, 79 F.4th at 1269 ("SA Bowen went to Mr. Johnson's home to interview him.  She prepared an FBI 302 Report [] after the interview . . . SA Bowen testified about the process of preparing such a report and how it is based upon the information and her recall of the statements provided by the interviewee."); *Picard*, 2021 WL 6052422, at *3 (Special Agent who was at interview testified as to process of creating 302).  These declarations therefore cannot support the admission of the Interview Memoranda.

Accordingly, the Court should exclude the Interview Memoranda for lack of sufficient indicia of reliability to satisfy the business records, public records or residual hearsay exceptions, as numerous other courts have done.  *See Romero v. Nevada Dep't of Corr.*, No. 2:08-CV-808-

---

[11] Notably, while Humana has listed declarations from Ms. Vitale on its list of trial exhibits (*see, e.g.*, PTX4537), it has not listed Mr. Harris' declaration (Ex. A-3) as an exhibit.

9

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

JAD-VCF, 2013 WL 6206705, at *13 (D. Nev. Nov. 27, 2013) (unsworn 302s lacked reliability to be "considered as evidence that creates genuine issues of fact to prevent summary judgment"); *Ivanitsky v. Griffin*, 13-cv-00823 (CBA), 2024 WL 4665263, at *8 (E.D.N.Y. Nov. 4, 2024) ("the trial court's exclusion of the FBI 302 report as inadmissible hearsay was not []unreasonable . . . It was not unreasonable to conclude that the report did not bear sufficient indicia of reliability to necessitate its admissibility at trial"); *Jo Ann Howard & Assocs., P.C. v. Cassity*, 4:09CV01252 ERW, 2015 U.S. Dist. LEXIS 10035, at *14-15 (E.D. Mo. Jan. 29, 2015) (302s "have hearsay problems that cannot be overcome" particularly where "no government investigators will be testifying [and accordingly] [t]he reports may not be admitted into evidence or read to the jury" and allowing use of 302s only for the limited purposes of impeachment or refreshing the witness's recollection).

Further, the reports are not admissible because their ***contents*** do not fall into an exception to hearsay. *See Upstate Shredding, LLC*, 2016 U.S. Dist. LEXIS 26042, at *42-5 (denying admission of 302 because "[t]he 302 Report contains several levels of hearsay" and the statements in the 302 did not fall into an exception). Numerous courts have found 302s to be inadmissible on hearsay grounds based on the content of the statements, and not just the document itself. *See, e.g., United States v. Benson*, 961 F.2d 707, 709 (8th Cir. 1992) (FBI report of interview of witness was "inadmissible double hearsay").[12]

---

[12] The "party admissions" exception to hearsay does not apply because nearly all Interviewed Witnesses are former employees of individual Defendants (and the majority were former employees at the time of the interview in question), *see* Fed. R. Evid. 801(d)(2)(D) (party admission must be "made by the party's agent or employee on a matter within the scope of that relationship and ***while it existed***") (emphasis added). The statements against interest exception under Fed. R. Evid. 804(b)(3) also does not apply, as Humana has not made individualized showings that the Interviewed Witnesses are unavailable for one of the reasons set out in Rule 804(a). Moreover, the coconspirator communication exception under Fed. R. Evid. 801(d)(2)(E) is inapplicable, as statements made to law enforcement after the purported conspiracies in question were not made "during and in furtherance of the conspiracy". *See United States v. Gjerde*, 110 F.3d 595, 603 (8th Cir. 1997) (statement made to FBI agent after the allegedly conspiratorial acts took place "could not have been made in furtherance" of the conspiracy).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## II.     The Interview Memoranda Are Prejudicial

Courts have found that the fact that a witness has been interviewed by federal law enforcement can render a memorandum such as a 302 prejudicial: "The use of these [302] reports, even solely for impeachment or refreshing a witness's recollection, can be highly prejudicial because of the implication the witness was involved in wrongdoing, simply because the witness was interviewed by a government investigator." *Jo Ann Howard & Assocs.*, 2015 U.S. Dist. LEXIS 10035, at \*15. This is consistent with courts that have found evidence of criminal investigations inadmissible on the grounds of prejudice. *LaRock v. Albany Cnty. Nursing Home*, 1:19-CV-0604 (AMN/DJS), 2024 WL 4566362, at \*9 (N.D.N.Y. Oct. 24, 2024) ("As previously discussed in this Court's decision to exclude the conclusions of the criminal investigation, evidence of investigations into the conduct at the heart of a case can be prejudicial because they may tell the jury what result to reach"); *Kraft Foods Global, Inc. v. United Egg Producers, Inc.*, No. 11-cv-8808, 2023 U.S. Dist. LEXIS 170967, at \*12 (N.D. Ill. Sept. 19, 2023) ("The Court agrees that any reference to a federal criminal investigation is out of bounds . . . Any mention of a criminal investigation would cast a cloud over the Defendants"); *United States v. Adam Bros. Farming, Inc.*, No. CV-00-7409 CAS (RNBx), 2005 WL 5957827, at \*6 (C.D. Cal. Jan. 25, 2005) ("It is undisputed that any reference to the criminal investigation is inadmissible at trial.").

The Court should therefore exclude the Interview Memoranda, and/or evidence (including deposition and/or live testimony) concerning them, on prejudice grounds.

## III.    The Interview Memoranda May Not Be Used for Impeachment

The Interview Memoranda also cannot be used for the purpose of serving as prior inconsistent statements for impeachment under Fed. R. Evid. 613. That is because they are *not*

11

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

the "witness's prior statement."  *See United States v. Stadtmauer*, 620 F.3d 238, 267 n.35 (3d

Cir. 2010) (affirming district court's exclusion of 302s for purposes of impeachment: "[s]everal

of our sister circuit courts have affirmed the exclusion, under Rule 613, of interview memoranda

prepared by law enforcement that the witness had not adopted"); *United States v. Adames*, 56

F.3d 737, 744–45 (7th Cir. 1995) (attorney could not impeach witness by reading directly from

law enforcement agent's summary of interview where witness testified "he did not adopt the

statement, did not write it and could not say that what was in it was everything he had told the

agents"); *United States v. Saget*, 991 F.2d 702, 710-11 (11th Cir. 1993) (to impeach witness with

statements in summary by FBI agents, counsel must show witness adopted the statements as his

own); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("in the absence of endorsement

by the witness, a third party's notes of a witness's statement may not be admitted as a prior

inconsistent statement unless they are a verbatim transcript of the witness's own words"); *United

States v. DaVita Inc.,* No. 1:21-cr-00229-RBJ, 2022 WL 833368, at *4 (D. Colo. Mar. 21, 2022)

("The Court is not inclined to permit the use of the Form 302 directly to impeach the original

testifying witness unless the witness signed or otherwise verified the Form 302"); *Mustafa v.

Superintendent*, *SCI Dallas*, No. Civ.A. 03–CV–4133, 2004 WL 1078500, at *4 (E.D. Pa. May

13, 2004), *report and recommendation adopted*, 2004 WL 1490399 (E.D. Pa. June 30, 2004)

("[W]hen attempting to discredit a witness' testimony by means of a prior inconsistent statement,

the statement must have been adopted by the witness whose credibility is being impeached.  A

written report which is only a summary of the words of the victim and not verbatim notes from

the victim cannot be used to impeach the witness on cross-examination.") (citation modified).

Because these documents are not the witnesses' statements, the Court should not allow

the Interview Memoranda to be admitted into evidence, published or shown to witnesses as a

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

purported prior inconsistent statement, or read from in the presence of the jury. *See Jo Ann Howard & Assocs.*, 2015 U.S. Dist. LEXIS 10035, at \*15 (ruling that the 302 "reports may not be admitted into evidence or read to the jury").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**B.     MOTION TO PRECLUDE FIFTH AMENDMENT INVOCATIONS**

Trial Defendants respectfully request that the Court preclude Humana from introducing evidence, argument, or reference during trial to the invocation of the Fifth Amendment privilege against self-incrimination.  The prejudice inflicted by informing the jury of such invocation is far greater than any possible relevance.

**FACTUAL BASIS FOR ORDER AND ARGUMENT**

At trial, Humana intends to call or introduce dozens of hours of testimony of at least nine witnesses who previously asserted their Fifth Amendment privilege: Michael Aigner (Mylan), Ara Aprahamian (Actavis/Taro), Jessica Cangemi (Glenmark), Hector Armando Kellum (Sandoz), Susan Knoblauch (Sun/Mutual/Citron), Howard Marcus (Taro), James Nesta (Mylan), Connie Pak (Sandoz), and Douglas Statler (Taro/West-Ward).[13]  Many of these individuals were employed by former defendants who are not Trial Defendants in this case.

**I.     Witnesses' Fifth Amendment Invocations Are Irrelevant and Highly Prejudicial**

Humana should not be permitted to introduce the invocations because the fact that these witnesses invoked their Fifth Amendment is irrelevant and highly prejudicial.[14]  *See Nezowy v.*

---

[13] Michael Aigner and James Nesta have revoked their Fifth Amendment invocations, and each testified at depositions in November 2025 and July 2026.  *See* Order Approving Joint Stipulation Regarding the Rule 30(b)(1) Depositions of Michael F. Aigner and James Nesta, 2:16-md-02724, Dkt. No. 4679.  Armando Kellum also withdrew his invocation and was deposed on April 7-10, 2025.

[14] Trial Defendants are aware of no case in this Circuit that would permit a plaintiff to present to the jury Fifth Amendment invocations as evidence.  To the extent that Humana intends to seek adverse inferences, Trial Defendants will oppose because there is no evidence that an adverse inference regarding the invocation by any of these nine witnesses is appropriate, especially as to Defendants who are in no way associated with these witnesses.  An adverse inference instruction requires independent evidence that directly corroborates such a conclusion, and Humana has identified none.  *See King v. Banner*, No. 07-0704, 2010 U.S. Dist. LEXIS 97682, at *14-15 n.4 (E.D. Pa. Sep. 17, 2010) (declining to draw adverse inference because of lack of independent factual support); *United States v. Loc. 560 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 780 F.2d 267, 292 (3d Cir. 1985) (finding it was inappropriate for the district court to draw an adverse inference against a deponent who invoked his or her Fifth Amendment privilege because the court lacked "sufficient independent evidence—besides the mere invocation of the privilege—upon which to base the negative inference."); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 153 (D. Conn. 2009) ("When the party and the non-party witness are claimed co-conspirators, generally courts have required there to be sufficient, independent proof of a conspiracy between them before permitting the jury to draw an adverse inference against the party.").

14

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*United States*, 723 F.2d 1120, 1124-25 (3d Cir. 1983) (finding "it difficult to imagine any circumstance where such examination [about prior invocation of the Fifth Amendment] would be relevant and appropriate").  The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]"  U.S. CONST. AMEND. V.  A witness invoking a constitutional right to silence is an "ambiguous" response.  *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1465 (5th Cir. 1992).  A witness may simply be following his or her lawyer's guidance "not to answer questions simply as a safety measure lest the client disclose information that she or he may not even know to be criminal."  *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210-11 (5th Cir. 1983).  A Fifth Amendment invocation has little probative value because it "is merely an invocation of Constitutional rights to which [a witness] is entitled[.]"  *Animal v. Dog*, No. 2:17-cv-03422-MEMT (FFMx), 2023 U.S. Dist. LEXIS 145537 at *6 (C.D. Cal. May 1, 2023); *see Skillz Platform Inc. v. AviaGames Inc.*, No. 4:21-cv-02436, ECF No. 586 (N.D. Cal. Jan. 12, 2024).  Because the nine witnesses' invocations are not evidence and have no tendency to make any fact of consequence in Humana's allegations more or less probable, Humana should be precluded from introducing evidence or advising the jury about Fifth Amendment invocations.

In addition to being irrelevant, introduction of the invocations and related questioning would also be highly prejudicial.  There is an "ever present danger" of a jury misunderstanding Fifth Amendment questioning.  *Nezowy*, 723 F.2d at 1124.  This great "danger of unfair prejudice" occurs when "a jury is told that a witness declined to answer a question by invoking the Fifth Amendment."  *Woods v. START Treatment & Recovery Centers*, 864 F.3d 158, 171 (2d Cir. 2017).  Indeed, any "minimal probative value of the witnesses' invocation of the Fifth Amendment is substantially outweighed by the danger of unfair prejudice . . . it would unduly

15

prejudice [defendant] if the jury were allowed to infer that the witnesses took the Fifth to avoid admitting to the existence of a conspiracy, and that a conspiracy therefore existed, when such an inference would not be proper or trustworthy under all of the circumstances." *See In re Urethane Antitrust Litig.*, MDL No. 1616, 2013 U.S. Dist. LEXIS 3166, at *37 (D. Kan. Jan. 8, 2013); *Animal*, 2023 U.S. Dist. LEXIS 145537 at *6 (references to the invocation of the Fifth Amendment would be "highly prejudicial" and "[t]o litigate . . . the reasons for the invocation" would "distract the jury and waste time"); *see also Harrell*, 951 F.2d at 1465 (noting prejudice exists because jury may attach undue weight to assertion of Fifth Amendment). Introducing evidence of Fifth Amendment invocations will force the jury to speculate on silence that has "little probative force" on its own. *Ross v. Am. Express Co.*, 35 F. Supp. 3d 407, 450 (S.D.N.Y. 2014).

Any potential probative value of the invocations of Fifth Amendment rights is further reduced by the fact that Humana asked inappropriate, leading, and loaded questions designed to draw adverse inferences from the witnesses' refusal to testify. That Humana previously questioned these witnesses "without fear that false assumptions or unfair characterizations will be corrected by the witness" results in particularly severe prejudice. *In re Urethane Antitrust Litig.*, 2013 U.S. Dist. LEXIS 3166, at *38 (denying use of the invocation as evidence or to support adverse inference when deposing attorney prejudicially "artfully crafted" deposition questions). Here, Humana relied on "systemic interrogation" and "calculated questioning" with the specific objective of creating adverse inferences—a tactic that has been condemned in this Circuit. *Cavalier Clothes v. Major Coat Co.*, No. 89-3325, 1995 U.S. Dist. LEXIS 7023, at *18 (E.D. Pa. Apr. 6, 1995) (denying adverse inference when deposing attorney engaged in "systematic interrogation" and "calculated questioning" that allowed him to testify for the

16

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

invoking witness); *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277-78 (3d Cir. 1986) (rejecting the practice of an examining attorney asking fact specific inquiries as a tactic in using the inquiry as the substantive means of obtaining the testimony from the witness asserting the privilege).  Permitting the Fifth Amendment testimony Humana seeks to present to the jury would not only be unduly prejudicial but also would ensure that the questions posed by Humana's counsel are granted *greater evidentiary weight* than the witnesses' answers.  With any probative value substantially outweighed by the prejudicial effect in violation of Fed. R. Evid. 403, any references to witnesses' invocation of their Fifth Amendment rights should be excluded.

## II.    Witnesses' Fifth Amendment Invocations are Even More Irrelevant and Prejudicial When Witnesses Subsequently Waived the Invocations

The invocations by Aigner, Nesta, and Kellum are especially irrelevant and prejudicial given that each subsequently withdrew the invocations and testified prior to the *Humana I* trial. In *In re Urethane Antitrust Litig.*, plaintiffs sought to preclude the defendant from introducing evidence related to plaintiffs' employees' invocation of their Fifth Amendment rights at depositions, when the employees revoked their Fifth Amendment invocations and answered questions at subsequent depositions.  No. 2:08-5169 (WJM-MF), 2016 WL 475339, at *5-6 (D.N.J. Feb. 8, 2016).  The court there granted plaintiffs' motion in limine to preclude evidence and argument related to Fifth Amendment invocations, reasoning that any "'potential probative value of [witnesses'] invocation of the Fifth Amendment is further reduced by the fact that [they] subsequently answered all of the questions,' and 'the potential prejudice . . . is high,' such that it substantially outweighs any probative value."  *Id.* at *18-19 (citing *Harrell*, 951 F.2d at 1464-65).  The same reasoning applies here.  *See also United States v. Wilmington Tr. Corp.*, No. 15-23-RGA, 2017 U.S. Dist. LEXIS 165765, at *10 (D. Del. Oct. 6, 2017) ("Evidence of a witness's

17

prior invocation of the Fifth Amendment, however, is generally inadmissible.") (citing *Nezowy*, 723 F.2d at 1124-25) (holding that "questioning of a witness by the Government as to whether he had previously claimed the constitutional right to refuse to testify at a grand jury proceeding will constitute trial error"); *Aim Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-cv-60292-BLOOM/Valle, 2020 U.S. Dist. LEXIS 6678, at *6 (S.D. Fla. Jan. 15, 2020) (finding it prejudicial to allow use of Fifth Amendment invocation after opportunity to re-depose witness).

The record is clear that during their initial depositions in 2022, both Nesta and Aigner, upon advice of counsel, invoked the Fifth Amendment in connection with ongoing government investigations. *See* Joint Stipulation Regarding Rule 30(b)(1) Depositions of Aigner and Nesta, 2:16-md-02724, Dkt. No. 4678 at 1. In November 2025, both Aigner and Nesta testified concerning the generic drug Clomipramine. *Id.* at 2. Given the scheduling of the upcoming September trial in this case, the parties, Aigner, and Nesta agreed to additional depositions on July 15, 2026 (Aigner) and July 21-22, 2026 (Nesta). *Id.* Similarly, Armando Kellum, upon advice of counsel, invoked the Fifth Amendment in connection with ongoing government investigations. He also withdrew his invocation and was questioned by all Plaintiffs on April 7-10, 2025. *See* Defendants' Opposition to Motion to Establish Protocol Regarding Further Testimony of Witnesses Who Asserted Fifth Amendment, 2:16-cb-27242, Dkt. No. 452 at 2. Humana had a full opportunity to develop a factual record through re-deposition of the witnesses.

Allowing Humana to introduce evidence or advise the jury that these witnesses previously invoked their Fifth Amendment privilege would merely serve to conjure prejudice against the witnesses and the Trial Defendants. Humana should not be permitted to rely on the witnesses' prior silence to advance its case. The invocations would merely serve to smuggle in

18

improper character evidence that would confuse and distract the jury. *Animal*, 2023 U.S. Dist.

LEXIS 145537, at \*6 (litigating the reasons for the invocation "runs the risk of causing the jury

to make judgments based upon the character of [witness]").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

C.      **MOTION TO PRECLUDE REFERENCES TO GOVERNMENT INVESTIGATIONS, PROCEEDINGS, AND STATEMENTS**

Trial Defendants[15] respectfully move under FRE 401, 402, 403, 801, 802, and 803 to preclude evidence and argument concerning any investigations or proceedings by DOJ, the United States Congress ("Congress"), or by state Attorneys General (the "AGs") regarding alleged anticompetitive conduct in the generic pharmaceutical industry ("the Investigations"), including statements made by government agencies, legislators, or AGs.

## PRELIMINARY STATEMENT

This trial should be decided on admissible evidence directly related to Humana's claims and Trial Defendants' defenses, not on the fact that government entities investigated, commented on, or brought separate proceedings concerning generic-drug pricing.  Humana must prove that each Trial Defendant joined one or more of the specific alleged agreements to fix prices or allocate customers for the drugs at issue in Humana's SAC, and if so, that such alleged conduct caused Humana (not some other entity) to pay higher prices for the generic drugs at issue.  The existence of the Investigations, subpoenas, congressional inquiries, government reports, indictments, guilty pleas, leniency materials, or agency statements does not prove those elements, nor do the investigatory materials used by the government.[16]

The danger of unfair prejudice is obvious.  References to government investigations or proceedings carry an official imprimatur that risks leading jurors to defer to government actors

---

[15] Mylan and Impax join this Motion only with respect to Congressional inquiries and State AG investigations and proceedings (portions of Sections I, II, and all of Section IV).  Mylan and Impax take no position on Section III or the portions of Sections I and II related to DOJ investigations.  Mylan and Impax reserve all rights to later move to exclude the evidence of the DOJ investigation and the evidence addressed by Section III.

[16] Trial Defendants are separately moving *in limine* to exclude all Form 302s and OIG Interview Memoranda.  Nothing in this motion waives any argument or relief sought in that motion.  Certain Trial Defendants are also separately moving *in limine* to exclude deferred prosecution agreements ("DPAs") they entered with DOJ, and likewise do not waive any argument or relief sought in those motions.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

rather than deciding this case based on the evidence admitted at trial. They also risk inviting the jury to infer guilt from the mere fact of investigation, charge, or settlement; to assume that accusations made by government officials are true; or to substitute the actions or statements of DOJ, the AGs, Congress, or other government actors for Humana's burden of proof. That is the type of unfair prejudice, jury confusion, and misleading effect that Rule 403 is designed to prevent.

The requested relief is narrow. Trial Defendants do not seek to preclude Humana from offering otherwise admissible business records, communications, testimony, or conduct evidence merely because such evidence was also collected by a government agency – assuming Humana can demonstrate that such materials are authentic and genuine business records.[17] Instead, Trial Defendants ask this Court to preclude argument and evidence regarding the fact of the Investigations. If Humana contends that any specific witness's cooperation agreement, guilty plea, or other government-related material is admissible for impeachment, bias, party-admission, or another limited purpose, Humana should be required to seek leave outside the jury's presence before referring to it. Without that safeguard, the trial will devolve into collateral disputes over what government entities did, why they did it, what they did not do, and what jurors should or should not infer from proceedings and statements not before them.

## BACKGROUND

The Investigations at issue fall into three categories: DOJ investigations and proceedings, Congress's inquiries and related federal reports, and AG investigations and

---

[17] Trial Defendants dispute that interview memoranda generated by agents of the Federal Bureau of Investigation on Form FD-302 or by agents of the U.S. Postal Service Office of the Inspector General in connection with the U.S. Department of Justice's investigation into the generic pharmaceutical industry are admissible business records. *See supra* Motion A.

21

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

proceedings. In or about 2014, DOJ began an investigation into alleged Sherman Act violations in the generic pharmaceutical industry, served subpoenas, conducted interviews with assistance from law-enforcement agencies, and ultimately brought criminal charges or resolutions involving certain manufacturers and individuals, including DPAs with certain companies, including certain Trial Defendants. SAC ¶¶ 144, 147-49, 162–63. Also in 2014 and 2015, Senator Bernie Sanders and Representative Elijah Cummings requested information about generic drugs with purported large price increases, held hearings, and later asked the Office of Inspector General ("OIG") to investigate the effect of certain price increases on Medicare and Medicaid, after which OIG issued a December 2015 report, and the Government Accountability Office ("GAO") issued an August 2016 report concerning generic-drug pricing. SAC ¶¶ 140, 142–43. At approximately the same time, certain states' AGs began investigating generic-drug pricing and later filed civil actions, including a December 2016 action concerning two drugs and later actions alleging broader conspiracies involving more than 100 generic drugs. SAC ¶¶ 164–65, 169, 171.

Those investigations and reports are not evidence that any Trial Defendant joined any alleged agreement at issue in this case. They involved different government actors, plaintiffs, and targets; they concerned different products, time periods, and theories; and they were based on varying records, witnesses, and available remedies. The outcomes of those proceedings in many instances consist of unproven allegations, policy commentary, or agency characterizations reached for reasons unrelated to or distinct from Humana's claims. Allowing Humana to refer to them would invite jurors to treat the Investigations as proof of Humana's claims, and would create collateral mini-trials about what was investigated, what evidence was collected, why certain defendants or drugs were included or excluded, and how those matters relate, if at all, to the more than 2,000 claims Humana must prove here.

22

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## ARGUMENT

**I.    Government Investigations, Proceedings, And Statements Are Irrelevant Unless Tied To Specific, Independently Admissible Evidence**

Humana should be precluded from introducing evidence and referring to the Investigations, proceedings, reports, or statements. The fact that a government body investigated generic-drug pricing does not make it more or less probable that any Trial Defendant entered any of the agreements alleged by Humana, much less that Humana paid higher prices due to Trial Defendants' alleged conduct. Nor does the fact that a government body served a subpoena, conducted an interview, convened a grand jury, received materials, issued a report, held a hearing, filed a complaint, obtained a guilty plea, or made a public statement prove any fact of consequence in Humana's case.

Courts routinely exclude references to government investigations, regulatory proceedings, and government-generated materials that do not directly bear on the claims the jury must decide. *See Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, No. 98-80-SLR, 2005 WL 67086, at *1 (D. Del. Jan. 5, 2005) (granting motion in limine to exclude "irrelevant evidence concerning governmental investigations of FDA recalls"); *Robertson v. McNeil-PPC, Inc.*, 2:11-cv-09050-JAK-SS, 2014 WL 12577147, at *2–3 (C.D. Cal. July 14, 2014) (excluding evidence of unrelated regulatory issues, congressional testimony, and consent decree); *Smith v. I-Flow Corp.*, No. 09-C-3908, 2011 WL 12627557, at *2 (N.D. Ill. June 15, 2011) (excluding FDA warning letter as irrelevant and inadmissible under Rule 403).

That principle applies with particular force here. The relevant issues are whether Humana can prove alleged agreements involving the specific drugs, defendants, customers, time periods, causation and damages at issue in this case. Broad references to Investigations, congressional proceedings, OIG or GAO reports, grand-jury materials, subpoenas, leniency

23

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

materials, or other agency records do not answer those questions. They instead would invite Humana to place before the jury a government-investigation narrative untethered to the evidence that is admissible in this civil trial.

Nor should Humana be permitted to offer government statements as a substitute for admissible proof. Statements by government agencies, government employees, legislators, investigators, prosecutors, or AGs about pharmaceutical pricing or generic-drug pricing are out-of-court assertions and often contain conclusions, characterizations, allegations, or policy judgments. They are not admissible merely because a government actor said them. *See* Fed. R. Evid. 801, 802. And even where a public record might otherwise fall within Rule 803(8), it remains subject to Rule 403. *Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1339–47 (3d Cir. 2002) (in a discrimination case, affirming exclusion of EEOC Letter of Determination under Rule 403 because, among other reasons, it states "evidence reveals" or "based on the evidence of record" without identifying or describing such evidence).

## II.    Any Marginal Relevance Is Substantially Outweighed By The Risk Of Unfair Prejudice, Confusion, And Mini-Trials

Even if references to government investigations or proceedings had some marginal relevance, Rule 403 requires exclusion because the risks of unfair prejudice, confusion, and wasting time substantially outweigh any probative value. Government investigations and proceedings carry an official imprimatur that other evidence does not. Jurors may give them undue weight simply because the government investigated, issued a report, filed a complaint, brought charges, or entered a resolution. The Third Circuit has recognized that agency findings otherwise admissible under Rule 803(8) may be excluded under Rule 403 where the risk of unfair prejudice substantially outweighs the probative value. *Coleman*, 306 F.3d at 1342–47. Other courts have likewise recognized the danger that official reports may receive undue weight

24

because of their governmental character. *See Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 22-23 (6th Cir. 1984) (affirming exclusion of congressional report comprised of a committee's "subjective conclusions regarding [defendant's] culpability, rather than factual findings" and that posed "substantial danger of unfair prejudice because the jury may have been influenced by the official character of the report to afford it greater weight than it was worth"); *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (government reports may have an "aura of special reliability") (citation modified), *cert. denied*, *Rockwell Int'l Corp. v. City of New York*, 454 U.S. 1164 (1982).

The prejudice is especially acute here because the conduct at issue in the Investigations shares certain similarities to the issues and evidence that will properly be before the jury and is therefore much more likely to lead to confusion. The jury could improperly infer that a subpoena to a Trial Defendant suggests wrongdoing by that Trial Defendant, that an indictment on one of the government's claims establishes culpability for a similar (but distinct) theory of Humana's, that a guilty plea by one company's employee proves liability against another Trial Defendant, that AGs' allegations establish the facts asserted, or that government criticism of pharmaceutical pricing supplies a basis to punish Trial Defendants. None of those inferences is proper, but it is plausible that a jury could draw such inferences.

Admitting such references also would create collateral mini-trials. If Humana is permitted to refer to Investigations, subpoenas, reports, charges, leniency applications, congressional hearings, or agency statements, Trial Defendants would be entitled to explain the context, scope, limitations, and outcome of each such matter. That would require testimony and evidence about what the government investigated (including from the investigators themselves), what the government did not investigate, what evidence it collected, what it did or did not

25

conclude, why certain entities or drugs were or were not charged, what a particular DPA or plea did or did not admit, whether a government report used a reliable methodology, and whether particular statements constituted allegations, opinions, advocacy, or findings. Those collateral issues would greatly lengthen the trial while distracting from the claims actually being tried before the jury.

The risk of jury confusion and prejudice is not theoretical. Courts have excluded evidence of government investigations where the evidence would suggest illegitimate activity or invite improper inferences. *See Fakhoury v. O'Reilly*, No. 16-13323, 2022 WL 909347, at *9 (E.D. Mich. Mar. 28, 2022) (excluding evidence of DOJ investigation under Rule 403 because it would be unfairly prejudicial); *Smith*, 2011 WL 12627557, at *2 (excluding FDA warning letter under Rule 403 because the potential for unfair prejudice outweighed any limited probative value). The same reasoning applies here.

III.     **Guilty Pleas, Indictments, Leniency Materials, And Related Criminal-Process Records Are Unduly Prejudicial And Require Particularized Treatment Outside The Jury's Presence**

Humana also should be precluded from referring to guilty pleas, indictments, leniency or cooperation materials, grand-jury materials, or other criminal-process records. These materials present a distinct and heightened risk of unfair prejudice because they carry a criminal-law connotation, numerous hearsay problems, and may cause jurors to infer that liability has already been established. The materials are particularly prejudicial as to individual Trial Defendants that did not enter the guilty pleas and DPAs that Humana may seek to rely on as evidence.

The Third Circuit has repeatedly recognized that guilty pleas and plea agreements may not be used as substantive evidence of another defendant's guilt. *United States v. Toner,* 173 F.2d 140, 142 (3d Cir. 1949). Recognizing that from a commonsense point of view, one

26
**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

conspirator's guilty plea is relevant to the question of the guilt of a coconspirator, *Toner* showed that it is an example "where evidence logically probative is to be excluded because of some countervailing policy." *Id.* The court continued that every defendant has the right "to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant [has] a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *Id.* at 142 (reversing conviction because the District Court's curative instruction was insufficient); *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 664–68 (3d Cir. 2000) (guilty pleas and plea agreements are governed by Rule 403 and may be admitted only for proper purposes, with limiting instructions, where the probative value outweighs prejudice) (collecting cases).

The same principle applies here: Humana should not be permitted to use any guilty plea, indictment, leniency application, cooperation agreement, or criminal investigative record to suggest that the civil liability of any Trial Defendant has already been decided. This is particularly important in a multi-defendant antitrust case involving different alleged conspiracies joined by different groups of defendants for different drugs. A guilty plea or DPA involving one entity, individual, product, time period, or alleged agreement does not establish liability as to any other entity, product, time period, or alleged agreement. The potential for improper spillover prejudice is substantial.

Given the high likelihood of undue prejudice, guilty pleas, indictments, leniency or cooperation materials, grand-jury materials, or other criminal-process records should not be

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

admissible. Should Humana want to raise an issue with respect to any such material, the Court should therefore require Humana to identify any such material before trial and seek leave outside the jury's presence. At a minimum, Humana should be required to specify: (1) the exact document, testimony, or statement it seeks to offer; (2) the specific defendant, drug, time period, and claim to which it allegedly relates; (3) a basis for admissibility either as non-hearsay or through an identified hearsay exception; (4) the permissible purpose for which it is offered; (5) any proposed redactions; and (6) the limiting instruction, if any, Humana contends would cure the inevitable prejudice. Without that procedure, the jury will be exposed to criminal-process materials before the Court has determined whether they are relevant, admissible, and not unfairly prejudicial.

### IV. Government Reports, Congressional Materials, And Agency Statements Should Be Excluded Because They Would Invite The Jury To Outsource Its Factfinding Role

Humana also should be precluded from referring to congressional hearings, letters from members of Congress, OIG or GAO reports, government press releases, agency statements, or other public statements by government actors concerning pharmaceutical pricing or generic-drug pricing. Such statements are not trial evidence. They are, at most, allegations, policy commentary, public communications, investigative summaries, or agency conclusions developed for purposes different from this civil trial. Such evidence constitutes hearsay to which no exception applies. *See* Fed. R. Evid. 801, 802. The Congressional Letters do not meet the public-records exception under Rule 803(8), which creates an exception for records or statements of a public office that set out, as applicable here, "a matter observed while under a legal duty to report," or the "factual findings from a legally authorized investigation," and that do not indicate a lack of trustworthiness. Fed. R. Evid. 803(8)(A)(ii), (A)(iii), (B).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Here, the Senators and Representatives were under no mandate to observe and record facts, nor were their letters pursuant to any civil action or proceeding. The statements are not based on direct observations, but on inadmissible out-of-court hearsay statements in documents or in testimony at congressional hearings, and they lack trustworthiness under the Rules of Evidence. *See, e.g., Coleman*, 306 F.3d at 1342 (citing *Pearce v. E.F. Hutton Grp., Inc.,* 653 F. Supp. 810, 814 (D.D.C. 1987) (excluding findings made in a congressional report because, "[g]iven the obviously political nature of Congress, it is questionable whether any report by a committee or subcommittee of that body could be admitted under rule 803(8)(C) against a private party. There would appear to be too great a danger that political considerations might affect the findings of such a report") (citation modified); *Bright*, 756 F.2d at 22-23 ("The unverified nature of the evidence relied on by the Committee is sufficient reason for the District Court to find in its discretion that the report is not trustworthy enough to be admissible."); *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) (holding legislative report lacked trustworthiness to qualify for Rule 803(8)).

*Coleman* is instructive. There, the Third Circuit affirmed that even an agency determination otherwise admissible under the public-records exception is not automatically admissible; it remains subject to exclusion under Rule 403 when the probative value is substantially outweighed by dangers such as unfair prejudice, confusion, undue delay, or waste of time. *See Coleman*, 306 F.3d at 1342–47. The congressional, OIG, GAO, DOJ, and AG materials at issue here are even more problematic because they concern broad industry issues, separate investigations, different proceedings, and in many instances allegations rather than findings. Accordingly, this Court should follow the lead of numerous other courts in concluding that legislative reports and determinations are inadmissible in a jury trial.

29

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**D.      MOTION TO PRECLUDE EVIDENCE AND ARGUMENT ABOUT ALLEGED ANTICOMPETITIVE ACTIVITY INVOLVING OTHER GENERIC DRUGS**

Trial Defendants respectfully move under Federal Rules of Evidence 401, 402, 403, 801 and 802 to preclude Humana from introducing evidence or argument regarding Trial Defendants' alleged anticompetitive activity or conspiracy concerning any generic drug other than the drugs that are at issue in *Humana I* (*i.e.,* the "At Issue Drugs").

**PRELIMINARY STATEMENT**

This case concerns an alleged overarching anticompetitive conspiracy, as well as claims concerning 22 At Issue Drugs.  Nevertheless, and despite Humana's repeated assurance to the Court that its complaints are distinct and discrete, Humana has signaled its intent to introduce at trial evidence that relates to *other* alleged conspiracies relating to products that are not At Issue Drugs.[18]  For example, Humana has listed a substantial number of trial exhibits, potentially as many as 1,000, relating to drugs and matters that are not at issue in this case,[19] including some

---

[18] Even documents or testimony concerning an At Issue Drug are not admissible against Trial Defendants that are not accused of wrongdoing on that drug.  Trial Defendants refer the Court to their joint motion for summary judgment on Humana's overarching conspiracy claim.  Trial Defendants maintain that Humana cannot establish by a preponderance of the evidence the alleged 24-Defendant/22-drug overarching conspiracy and, therefore, that alleged conspiracy cannot form the basis for the coconspirator hearsay exclusion.

[19]



30

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

which do not relate to any specific drug.[20]  Similarly, Humana has designated many hours of deposition testimony that also relate to allegedly anticompetitive conduct concerning drugs that are not At Issue Drugs.[21]  Additionally, in its opposition to Defendants' motions for summary judgment, Humana also relied heavily on purported evidence of conspiracies involving drugs that are not At Issue Drugs.[22]  Many of the documents and deposition excerpts relate to drugs that are at issue in Humana's two other complaints, in stark contradiction to Humana's representations to this Court in opposition to Defendants' motion to dismiss on the grounds of claim-splitting that each case was about a distinct conspiracy about a distinct set of drugs.

The Court should thus preclude Humana and its counsel from attempting to support Humana's claims by introducing allegations of anticompetitive conduct with respect to generic drugs other than the At Issue Drugs.  This motion is based on four grounds.

First, as Humana resisted the MDL defendants' claim splitting motion by reassuring this Court that the conspiracies alleged in *Humana I*, *Humana II*, and *Humana III* are distinct,



[20] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[21] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[22] For example, in its omnibus opposition to Trial Defendants' individual motions for summary judgment, Humana relied upon documents concerning Captopril, Cidofovir, Warfarin, Metoprolol, Paromomycin and Nimodipine, none of which are At Issue Drugs, and also made extensive reference to Judge Shea's denial of Defendants' summary judgment motions in the State Plaintiffs' Dermatology case in the District of Connecticut.  *See, e.g.*, *Humana Inc. v. Actavis Elizabeth, LLC, et al.*, 18-cv-03299, ECF No. 589–90, 600 (E.D. Pa.).  Judge Shea also granted certain Defendants' summary judgment motions in the same action. 3:20-cv-00802-MPS, ECF No. 1395, 1410.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

discrete and do not overlap, Humana should be estopped from using evidence of drugs outside those covered by the alleged *Humana I* conspiracies.

Second, under FRE 401 and 402, evidence or argument concerning purportedly collusive conduct concerning products that are not at issue is not relevant.

Third, allowing evidence and argument about Trial Defendants' conduct with respect to generic drugs other than the At Issue Drugs would be unduly prejudicial to Trial Defendants, as well as confusing and misleading to the jury. Fed. R. Evid. 403. In addition, allowing Humana to inject irrelevant material into the trial, would waste the limited amount of time that the Court has allocated for this bellwether trial. The five and a half weeks the Court has set aside for this trial will already be highly challenging given the number of products, the thousands of claims, the size of the factual record and the number of witnesses. Adding extraneous matters to this trial will only compound the problem.

Fourth, documents and phone records relating to drugs that are not At Issue Drugs are hearsay and do not fall into the hearsay exception in Rule 801(d)(2).[23]

For these reasons, as set out further below, Trial Defendants respectfully request that the Court grant the motion.

### ARGUMENT

I.    **Humana Should be Estopped from Relying on Evidence Related to Drugs in *Humana II* and *Humana III*[24]**

Humana has represented to this Court in opposition to Defendants' motion to dismiss on the grounds of claim-splitting that "each complaint" it filed is "tethered to the specific allegations

---

[23] The parties will propose a pre-trial process to determine admissibility of specific statements that Humana intends to admit under the co-conspirator hearsay exclusion of Fed. R. Evid. 801(d)(2)(E).

[24] Humana has filed three actions: (i) 2:18-cv-03299 ("*Humana I*"); (ii) No. 2:19-cv-04862-CMR (E.D. Pa.) ("*Humana II*"); and (iii) No. 2:20-cv-6303-CMR (E.D. Pa.) ("*Humana III*").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

therein concerning distinct products and conspiracies that do not overlap across [Humana's] separate overarching conspiracy complaints." *United Healthcare Services, Inc. v. Teva Pharma. USA, Inc., et al.*, No. 19-cv-5042, ECF No. 144 at 7.  Humana asserted that it "intend[s] to rely on distinct evidence regarding each of the distinct drugs at issue to prove [its] distinct allegations" in each of the three overarching complaints it has filed. *Id.* at 10.  The Court, recognizing that "[e]ach complaint stands or falls on its own" MDL Dkt. 4073 at 5, relied on Humana's representations in denying the motion.  *See In re Generic Pharms. Pricing Antitrust Litig.*, 16-MD-2724, 2023 WL 2244685, at *4 n.45 (E.D. Pa. Feb. 27, 2023) ("Defendants also argue that these overarching claims have been brought in other cases, and constitute improper claim-splitting.  Given the nature of the MDL and the focus of the SAC on different drugs than alleged in other overarching complaints, the argument as to the risks of duplicative recovery is premature.")

Humana cannot now turn around and use evidence relating to those other cases to support its case in this trial.  The Court selected the *Humana I* Complaint as a bellwether, and effectively trying other cases in the MDL eliminates the benefit of a bellwether trial. The Court should therefore exclude those documents.  Alternatively, Trial Defendants respectfully request that the Court reconsider their motion to dismiss for improper claim splitting (*see United Healthcare Servs., Inc.*, No. 19-cv-5042, ECF 128) and order supplemental briefing.

## II. Evidence And Argument Concerning Trial Defendants' Anticompetitive Conduct With Respect to Other Generic Drugs

Evidence and argument about Trial Defendants' allegedly anticompetitive conduct with respect to generic drugs other than At Issue Drugs are irrelevant to Humana's claims in this action.  To establish liability in this case, Humana must prove that the Trial Defendants engaged in price fixing and/or market allocation with respect to the 22 individual drug conspiracies and

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

the overarching conspiracy at issue, and if so, that such conduct caused Humana to pay higher prices for those drugs.

Whether purportedly anticompetitive conspiracies existed between or among some of the Trial Defendants and/or other parties with respect to other products is irrelevant because it has no tendency to make the existence of the conspiracies alleged *in this case* any more or less probable. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1247 n.20 (3d Cir. 1993) (agreeing with the district court that evidence of discussions among the defendants concerning prices in one market was insufficient to draw an inference of conspiracy in another market); *ICU Medical, Inc. v. Rymed Techs., Inc.,* 752 F. Supp. 2d 486, 493 (D. Del. 2010) (granting motion to preclude patent infringement plaintiff from offering evidence to show alleged prior incidents of "copying" by defendant where such evidence related to products not at issue and was therefore irrelevant); *In re Seroquel Prods. Liab. Litig.*, No. 6:06–md–1769–Orl–22DAB, 2009 WL 223140, at *7 (M.D. Fla. Jan. 30, 2009) (granting motion *in limine* to exclude evidence of a 2003 settlement with the federal government relating to the pricing of an entirely different medication).

### III. Allowing Evidence And Argument Concerning Trial Defendants' Alleged Anticompetitive Conduct With Respect to Other Generic Drugs Would Be Confusing, Prejudicial and Would Waste Time

Even if evidence concerning Trial Defendants' alleged anticompetitive conduct with respect to other drugs was somehow relevant to Plaintiffs' claims concerning the At Issue Drugs (and it is not), "[t]he trial judge must balance the probative value and prejudicial effects of evidence before deciding whether to admit it." *United States v. Gaev*, 24 F.3d 473, 478 (3d Cir. 1994). *See also Bailey*, 840 F.3d at 119 ("When the probative value of evidence is tenuous, a relatively minor risk of substantial undue prejudice should counsel against admitting it."); *In re*

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 783 (3d Cir. 1994) (district court properly excluded

"minimal[ly] relevan[t]" evidence that "would create the need to have mini-trials" and "would

cause 'undue delay' given the minimal relevance of the evidence").

Here, evidence or argument concerning Trial Defendants supposedly engaging in

collusive behavior with respect to non-At Issue Drugs would invite the jury to base a verdict on

speculation that Trial Defendants must have engaged in the same conduct here, rather than on the

merits of the claims asserted in this case and therefore constitute unfair prejudice.  *See In re Flat*

*Glass Antitrust Litig.*, 385 F.3d 350, 377-78 (3d Cir. 2004) (affirming exclusion of evidence that

defendant conspired to fix the price of certain sales of glass that were not part of plaintiffs' class

action where district court found that the evidence's probative value was substantially

outweighed by the danger of unfair prejudice).  Such evidence or argument would be particularly

prejudicial because not all relevant defendants for non-At Issue Drugs are *Humana I* Defendants,

and the non-At Issue Drugs lack the benefit of a fully developed record, including expert

discovery and summary judgment briefing.  *See Goodman v. Pennsylvania Tpk. Comm'n*, 293

F.3d 655, 670 (3d Cir. 2002) (unfair prejudice occurs when evidence has a tendency to "cloud[]

impartial scrutiny and reasoned evaluation of the facts" and "inhibit[] neutral application of

principles of law") (citation modified).

In addition, admitting evidence related to Trial Defendants' allegedly anticompetitive

conduct involving other products "would be confusing to the jury . . . particularly given the

complexity of [plaintiffs] contentions."  *In re Asacol Antitrust Litig.*, No. 1:15-cv-12730, ECF

No. 659 (D. Mass. Jan. 2, 2018) (excluding evidence of defendants' alleged anticompetitive

conduct involving unrelated products); *see also Pennsylvania State Univ. v. Vintage Brand, LLC*,

755 F. Supp. 3d 563, 574-75 (M.D. Pa. 2024) (excluding evidence related to other trademark

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

lawsuits and disputes where any possible relevance was substantially outweighed by the danger of unfair prejudice, confusion of the issues, potential undue delay, and wasting of time); *In re Epipen (Epinephrine Injection, USP) Mktg, Sales Pracs. and Antitrust Litig.*, MDL No. 2785, 2021 WL 6072512, at *4 (D. Kan. Dec. 23, 2021) (excluding evidence of Mylan's settlement of lawsuit involving unrelated drug product); *In re Intuniv Antitrust Litig.*, No. 16-cv-12653, 2021 WL 10363709, at *17 (D. Mass. Mar. 3, 2021) ("Plaintiffs will not be permitted to make argument or offer evidence at trial to the effect that because Defendants have been accused of anticompetitive conduct with respect to other drugs, they have engaged in anticompetitive conduct here."); *In re Urethane Antitrust Litig.*, 2016 WL 475339, at *1 (granting Dow's motion *in limine* to preclude plaintiffs from referring to other price-fixing cases involving Dow because "[t]he prejudice that would result from such testimony substantially outweighs any probative value").

Rule 403 also allows the Court to exclude evidence for which the "probative value is substantially outweighed by a danger of . . . wasting time." Fed. R. Evid. 403. That is particularly the case here. Humana pled a complex, sprawling lawsuit that includes both overarching and drug-specific claims against 24 Defendants involving 22 At Issue Drugs, and has pled thousands of claims both as a direct and indirect purchaser. The parties have identified dozens of witnesses, designated hundreds of hours of deposition testimony, and have listed thousands of trial exhibits. And the Court has allocated just five weeks for the trial of this case. Given the size of the factual record, the number of witnesses and the number of products at issue, presenting the jury with a full trial record on the material issues concerning the allegations at issue in this case will be highly challenging in that limited amount of time. In such circumstances, allowing Humana to present evidence concerning alleged conspiracies regarding

36

non-At Issue Drugs would be highly wasteful and could prejudice the ability of the parties to present a full record to the jury.

Other courts have excluded such evidence on this basis. *See, e.g.*, *Healthquest of Cent. Jersey, LLC v. Antares Aul Syndicate 1274*, No. 18-12375 (ZNQ) (DEA), 2022 WL 225028, at *4 (D.N.J. Jan. 25, 2022) ("[I]ntroduction of evidence of the Original Dome would be a waste of the Court's time. At issue, in this case, is the cause of the Replacement Dome's collapse. If the Court were to allow evidence of the Original Dome to adjudicate the cause of the Replacement Dome's collapse, then the Court would first have to adjudicate the cause of the Original Dome's collapse"); *Zucchella v. OlympUSA, et, Inc.*, 2:19-cv-07335-HDV-SKx, 2023 U.S. Dist. LEXIS 234231, at *9 (C.D. Cal. Dec. 6, 2023) (granting motion in limine to exclude questions concerning collateral matter because "it poses a substantial danger of confusing the issues and distracting jurors from the issues in this case, as well as introducing prejudice and wasting the Court's time"); *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 324 (S.D.N.Y. 2009) (granting motion in limine to exclude evidence of prior disputes involving a party, in part because "the review of such evidence would be a waste of time").

## IV.   Evidence of Trial Defendants' Alleged Anticompetitive Conduct With Respect To Other Generic Drugs Is Hearsay

Even if the Court believed there was some potential relevance to statements unrelated to the At Issue Drugs (and, respectfully, it should not) the Court should exclude any such hearsay Humana seeks to admit as coconspirator statements. For an out-of-court statement to be admissible under Rule 801(d)(2)(E)'s hearsay exclusion, a court "must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *Flat Glass*

37

*Antitrust Litig.*, 385 F.3d at 375.  Thus, Humana must show by a preponderance of the evidence that each statement it proffers as a coconspirator statement was made in the course and in furtherance of the conspiracies it has alleged in *Humana I.  Id.*  For the reasons articulated above, it cannot do so with respect to statements about any drug that is not among the 22 At Issue Drugs.[25]

Additionally, Trial Defendants anticipate that Humana's counsel will argue at trial that certain phone records reflect phone calls made in furtherance of the alleged *Humana I* conspiracies, even though there is almost no evidence connecting the phone calls to the alleged conspiracies and often direct evidence that the phone calls were *not* related to any of the alleged conspiracies.  ██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████.[27]

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[25] Admissions from non-Trial Defendants related to At Issue Drugs also constitute inadmissible hearsay. For example, any admissions from non-Trial Defendant Sandoz regarding an alleged conspiracy for Benazepril with non-Trial Defendant Rising are inadmissible as co-conspirator hearsay.  Rising was not named as a Defendant in Humana's SAC and thus alleged unlawful conduct involving Rising is inadmissible.

[26] Lance Wyatt Dep. Tr. at 115:9-117:5.

[27] Gary Skalski (Impax) – May 17, 2023 Dep. Tr. at 155:16-159:12; Thomas Kronovich (Hi-Tech) – Dep. Tr. at 185:15-186:4, 188:3-21.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████    Yet, Humana's counsel will likely argue at trial that these calls were made in furtherance of alleged *Humana I* conspiracies.

While it is "permissible for counsel to argue inferences," any inferences "must flow logically and convincingly from the facts in the record"—argument "crosses the line" when it "urg[es] the jury to speculate rather than infer." *United States v. Garcia*, 490 F. App'x 463, 465 (3d Cir. 2012) (citation modified). Given that Humana has alleged distinct conspiracies in *Humana II* and *Humana III* that purportedly occurred during the same time periods and involved some of the same parties, Humana should not be allowed to speculate that the phone calls must have related to the conspiracies alleged in *Humana I*, without supporting evidence.[30] Such argument would urge the jury to improperly and wrongly speculate and is unfairly prejudicial under Rule 403.

---

[28] Karen O'Connor (Par) – Dep. Tr. at 291:17-292:11, 332:7-334:7.

[29] Della Lubke Dep. Tr. at 401:19-402:16, 436:15-437:17.

[30] Humana should not be permitted at trial to argue that certain calls were in furtherance of an alleged *Humana I* conspiracy even though they were identified by witnesses as potentially or likely about non-*Humana I* drugs (*see, e.g.*, Lubke Tr. at 671:21-675:18 (████████████████████████████████████, 1085:13-1087:8 (████████████████████████)).

39

**E.    MOTION TO PRECLUDE THE USE OF INFLAMMATORY OR PEJORATIVE TERMS AND EVIDENCE OR ARGUMENT CONCERNING THE GENERAL RISING COSTS OF PRESCRIPTION DRUGS OR HEALTHCARE**

Trial defendants respectfully move under FRE 401, 402, and 403 to preclude the use of inflammatory or pejorative terms to describe the conduct at issue, the Trial Defendants, or the pharmaceutical industry in general, and to preclude Humana from using evidence or argument concerning rising costs of pharmaceuticals generally and negative comments about the pharmaceutical industry.

**PRELIMINARY STATEMENT**

Humana should be precluded from employing pejorative terminology – such as "criminal," "Big Pharma," "big drug companies," "the biggest antitrust case in history," "collusion cabin" or "diary of collusion" – in reference to Trial Defendants, their alleged coconspirators, cooperators, this case, or the generic pharmaceutical industry as a whole. Such evidence and characterizations should be excluded both because they are irrelevant under Rules 401 and 402, and because any possible probative value they may have is substantially outweighed by a risk of unfair prejudice, confusing the issues, and misleading the jury, under Rule 403. Humana should also be precluded from commenting on or introducing evidence concerning purported rising costs of prescription drugs or health care in general because any such commentary, evidence or arguments would only appeal to jurors' prejudices, self-interest, or bias. This trial is not a referendum on U.S. healthcare costs or pharmaceutical-industry policy. It is a trial about whether Humana can prove alleged price-fixing or customer-allocation agreements, including an overarching agreement, involving 22 specific generic drugs, and if so, whether such conduct caused Humana to pay higher prices for those drugs. Courts routinely exclude generalized policy arguments and juror self-interest appeals where, as here, they do not

40

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

help prove a fact of consequence and risk diverting the jury from the evidence.  Here, Humana

has no legitimate need to refer to rising costs of pharmaceuticals generally or healthcare costs

more broadly, and such references would only cause juror confusion and unfairly prejudice the

Trial Defendants.

**ARGUMENT**

I.      **Humana Should Be Precluded From Using Inflammatory Language**

Trial Defendants request that the Court preclude Humana's counsel and witnesses from

using pejorative or inflammatory terminology to refer to the conduct at issue at trial, Trial

Defendants, this case, or the generic pharmaceutical industry generally.  Humana should be

required to present its case through evidence and neutral terminology, not through pejorative

labels that ask the jury to condemn Trial Defendants before evaluating their conduct.  Trial

Defendants request, for example, that the Court bar Humana from using words such as

"criminal" or "unethical," and bar Humana from characterizing the case as the "largest" or

"biggest" in antitrust history.  Humana should also be precluded from characterizing Trial

Defendants, their alleged coconspirators, or the generic drug industry more broadly as "Big

Pharma," "big drug companies," "unethical," "corrupt," "dishonest," or "predatory," and from

referring to defense counsel as "drug company lawyers," or similar phrases.

Humana should also be precluded from making any reference to a so-called "



."

.  Ex. E-1 at 25:16–27:20.  Mr. Kellum testified that no collusion took place there,

and that no agreements were reached there concerning prices or customers for generic drugs.  *Id.*

41

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

at 27:21–29:11. The term "████████" is therefore not a factual description. It is a prejudicial and argumentative label that assumes facts not in evidence, and many Trial Defendants' employees never visited the cabin. If Humana contends that meetings or communications at that location are relevant, it can refer to the location neutrally and seek leave outside the jury's presence before using any loaded terminology.

Humana should also be precluded from making any reference to a "████████████" or "████████████" or "████████████" purportedly owned by Sandoz's Chris Bihari. Trial Defendants have made a separate motion to exclude Mr. Bihari's purported notebooks from admission to the evidence at trial. *See infra,* at Motion F. In addition, Humana and its counsel and witnesses, including Mr. Bihari, should be precluded from referring to that notebook in pejorative and prejudicial terms.

To be certain, MDL Plaintiffs have coaxed out deposition testimony referring to Bihari's notebook as the "████████████" or "████████████." *See* Ex. E-2 at 819:7-16 ████



(objection omitted). Vezza otherwise testified that he had some recollection of Bihari having a "████████████," but doesn't recall ever seeing it, "████████████████████████████ ████" and doesn't recall it ever being referred to as the "████████████." Ex. E-3 at 487:20-491:21. Bihari only recalls—after the suggestion was made during questioning—that he used the term "████████████," not "████████████." Ex. E-4 at 202:8-24. Even this terminology is too weighted with prejudice to be allowed before the jury.

Given the impression that Humana intends to rely heavily on Messrs. Bihari and Vezza's

42
**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

testimony, and Mr. Bihari's notebook specifically (*see* Humana Omnibus Opposition at 60-66, 85-86, 91, 102-106, 151), Humana should not be permitted to extract the same inflammatory testimony given at their depositions.  As an initial matter, the phrase "███████████" is not relevant because it is a post-hoc characterization of Bihari's notebook coined by cooperating witnesses that none of the witnesses in this case used prior to this litigation. Further, the phrase itself is not probative evidence but is simply a pejorative term.

Moreover, permitting Humana to use this term or even "███████," would not only inflame but confuse the jury, and is precisely the type of language that Rule 403 was designed to prevent. "[C]ourts often prohibit the use of certain pejorative terms when such categorizations were inflammatory and unnecessary to prove a claim and such statements do not bear on the issues being tried."  *MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 570 (S.D.N.Y. 2017) (internal quotation marks and citations omitted).  Courts routinely exclude this type of language in similar cases. *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1797, 2016 WL 5929051, at *1 (E.D. Pa. Jan. 21, 2016), (precluding the plaintiffs from "ascribing the terms 'payoff,' 'bribe' 'unethical' or 'criminal'"); *In re Loestrin 24 FE Antitrust Litig.*, No. 1:13-MD-2472 WES, 2019 WL 13257216, at *4 (D.R.I. Dec. 6, 2019) (barring plaintiffs from describing alleged reverse payments as "'payoff' or 'kickback' or the like"); *Catipovic v. Turley*, 68 F. Supp. 3d 983, 998–99 (N.D. Iowa 2014) (precluding references to "'fraud,' 'conspiracy,' 'collusion,' . . . or similar characterizations" under Rule 403 "because it could allow the jur[y] to decide the case on the basis of alleged misconduct not properly at issue").

Characterizing Bihari's notebook as the "███████████" or "███████████" has minimal probative value—if any—while on the other hand carries a substantial danger of unfair prejudice to Trial Defendants and of misleading the jury.  *See* Fed. R. Evid. 403.  Therefore,

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Humana should be precluded from eliciting testimony referring to Bihari's notebook as the

"████████████", "████████████", or otherwise pejorative and inflammatory terms.

Pejorative labels are irrelevant because they do not help the jury decide whether Humana has proved an agreement to fix prices or allocate markets. Whether Trial Defendants are labeled "corrupt," "Big Pharma," or "criminal" does not "make a fact [of consequence in the case] more or less probable," so they are irrelevant under Rule 401. They are not even evidence, and they serve only to "provoke[] an emotional response in the jury or otherwise . . . affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment" on the actual merits of the case. *United States v. Burgess*, 576 F.3d 1078, 1099 (10th Cir. 2009) (emphasis original).

Humana should also be prohibited from such "morally freighted" terminology, *United States v. Carpenter*, 494 F.3d 13, 23 (1st Cir. 2007), for the independent reason that it is unfairly prejudicial under Rule 403. Terms such as "unethical," "corrupt," or "criminal" risk misleading the jury into believing that the central issue in the case – whether Trial Defendants entered an agreement to fix prices or allocate markets for the at-issue drugs – has already been resolved. Moreover, the inflammatory nature of these terms, especially insofar as they suggest fraudulent or criminal activity, invites the jury to make decisions based on emotions rather than careful application of the Sherman Act framework and other relevant law. *See King Drug Co. of Florence, Inc.*, 2016 WL 5929051, at *1-2.

Third Circuit authority confirms that such rhetoric is improper because it asks jurors to "render a decision based on grounds of bias, passion, prejudice, or sympathy." *Odgers v. Progressive N. Ins. Co.*, No. 3:15-CV-329, 2023 WL 7183981, at *4 (M.D. Pa. Nov. 1, 2023) (quoting *United States v. Davis*, 2023 WL 195159, at *5 (3d Cir. Jan. 17, 2023)); *see also Quagliarello v. Dewees*, No. 09-cv-4870, 2011 WL 3438090, at *2 (E.D. Pa. Aug. 4, 2011)

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

("Evidence is 'unfairly prejudicial' if it . . . 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish' [] or 'may cause a jury to base its decision on something other than the established propositions in the case.'") (quoting *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980)).

The risk that pejorative characterizations will confuse the issues and inflame the jury's passions is particularly acute where, as here, the labels target companies in an industry that jurors may already view unfavorably.  *See*, *e.g.*, *Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067-LPS, D.I. 615, at 1–2 (D. Del. Jan. 6, 2015) (district court barred references to "patent troll" and "woodshedding" as irrelevant disparagement, while permitting neutral evidence); *Synopsys, Inc. v. Real Intent, Inc.*, 20-cv-02819, 2024 WL 4351870, at *1 (N.D. Cal. Sept. 30, 2024) (granting motion *in limine*, barring the parties from referring to the other party or its personnel as "corrupt," "dishonest," or "unethical"); *In re Testosterone Replacement Therapy Prods. Liability Litig. Coordinated Pretrial Proceedings*, 14-c-1748, MDL No. 2545, 2018 WL 305503, at *10 (N.D. Ill. Jan. 6, 2018) (barring plaintiff from characterizing defendant's representative as a "lobbyist" or his activities as "lobbying"); *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, 2:15-cv-621, 2016 WL 7743510, at *1 (E.D. Tex. Sept. 21, 2016) (barring defendant from referring to plaintiff with "pejorative terms such as 'patent troll,' 'pirate,' bounty hunter,' 'privateer,' 'bandit,' [and the like]").

## II. Humana Should Be Precluded From Introducing Evidence, Argument or Commentary Concerning the Rising Costs of Prescription Drugs, Healthcare or the Pharmaceutical Industry Generally

Trial Defendants also request, pursuant to Rules 401, 402, and 403, that the Court preclude Humana from introducing generalized evidence or argument at trial regarding the rising

45
**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

cost of prescription drugs or healthcare costs, or making policy arguments about the pharmaceutical industry in general.

First, rising costs in the American healthcare system in general, or of prescription drugs, and commentary or argument concerning the pharmaceutical industry, are not relevant to the issues at trial. The cost, quality, and availability of healthcare in America is the subject of intense public discussion and debate, with majorities holding negative views of the healthcare system as a whole,[31] and of the pharmaceutical industry in particular.[32] As such, there is a substantial risk that references to those costs generally, or the costs of prescription drugs in general (other than the specific drugs at issue), will appeal to bias against the Trial Defendants.

Under the plain language of Rule 401, general commentary on these background subjects is irrelevant to Humana's claims and should be precluded at trial. This trial will concern specific alleged conspiracies to fix prices or allocate customers for 22 specific generic drugs. Evidence that has no tendency to make any fact at issue here any more or less probable should be excluded. Commentary about the generalized high costs of healthcare or prescription drugs cannot properly be considered "background" evidence as it would neither be helpful nor assist in telling the story of the purported price-fixing scheme alleged here. *See, e.g., King Drug Co. of Florence, Inc.*, 2016 WL 5929051, at \*1-2 (granting defendants' MIL to preclude plaintiffs from presenting evidence and argument concerning policy issues in the pharmaceutical industry regarding the high costs of branded drugs, and precluding "wide ranging evidence and argument

---

[31] According to a November 2024 Gallup survey, 70% of Americans say the healthcare system has major problems or is in a state of crisis, and only 19% report being satisfied with the cost of obtaining healthcare. *See* https://news.gallup.com/poll/654044/view-healthcare-quality-declines-year-low.aspx (visited July 1, 2026).

[32] As reflected in an August 2025 Gallup survey, 58% of Americans have a very negative or somewhat negative view of the pharmaceutical industry, as opposed to 28% who have very positive or somewhat positive views. *See* https://news.gallup.com/poll/4708/healthcare-system.aspx (visited July 1, 2026).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

regarding policy issues"); *In re Intuniv Antitrust Litig.*, 2021 WL 10362709, at \*16 (precluding plaintiffs from arguing or suggesting "that because Defendants are involved in the pharmaceutical industry, they have engaged in wrongdoing" or that "the pharmaceutical industry is broken, flawed, or otherwise deficient.").

Second, to the extent this type of evidence could be viewed as relevant, which it cannot, it should be excluded pursuant to Rule 403 because any minimal probative value would be substantially outweighed by the dangers of jury confusion about prescription drugs in general versus the 22 specific drugs at issue here, and by the dangers of unfair prejudice to Trial Defendants. *See In re Intuniv Antitrust Litig.*, 2021 WL 10362709, at \*17 (granting defendants' MIL, holding, "[p]laintiffs will not be permitted to make argument or offer evidence at trial to the effect that because Defendants have been accused of anticompetitive conduct with respect to other drugs, they have engaged in anticompetitive conduct here"); *Orexo AB v. Actavis Elizabeth LLC*, 424 F. Supp. 3d 371, 375 (D. Del. 2019) (excluding evidence about drugs not at issue in Hatch-Waxman patent suit).

These arguments or evidence also would improperly appeal to jurors' self-interest by suggesting that the jurors would be better off as consumers of healthcare or purchasers of prescription drugs should Humana prevail. These types of emotional appeals would improperly encourage the jury "to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Edwards v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988) (citation omitted); *Odgers*, 2023 WL 7183981, at \*4 (quoting *United States v. Davis*, 2023 WL 195159, at \*5 (3d Cir. Jan. 17, 2023) (it is improper to "'invite the jury to render a decision based on grounds of bias, passion, prejudice, or sympathy.'"); *see also Quagliarello*, 2011 WL 3438090, at \*2 ("Evidence is 'unfairly prejudicial' if it . . . 'appeals to

47

the jury's sympathies, arouses its sense of horror, provokes its instinct to punish' [] or 'may cause a jury to base its decision on something other than the established propositions in the case.'") (quoting *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980)); *In re Intuniv Antitrust Litig.*, 2021 WL 10362709, at \*16 (precluding plaintiffs from arguing or suggesting that "(4) jurors will be better off as consumers or taxpayers if they find Defendants liable (or worse off as consumers or taxpayers if they do not), or [] society would benefit as a whole from a ruling in Plaintiffs' favor").  Evidence is also unfairly prejudicial when it will have "'an undue tendency to suggest decision on an improper basis.'"  *United States v. Williams*, 458 F.3d 312, 319 (3d Cir. 2006) (quoting Fed. R. Evid. 403 advisory committee's note); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (unfair prejudice "cloud[s] impartial scrutiny and reasoned evaluation of the facts" and "inhibit[s] neutral application of principles of law") (citation omitted).

Humana cannot show a genuine need to introduce evidence of or discuss the rising costs of prescription drugs or healthcare generally, and any conceivable need would be outweighed by the risk of jury confusion, prejudice, or improperly appealing to jurors' self-interest.  When weighing the Rule 403 factors, courts "must appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant."  *Bailey*, 840 F.3d at 118–19 (quoting *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014)).

48

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## F.    MOTION TO EXCLUDE CHRISTOPHER BIHARI'S NOTEBOOKS

Trial Defendants respectfully request that the Court preclude Humana from introducing evidence of the so-called "Bihari Notebooks"[33] and any copies thereof because they are neither admissible nor authentic.

### FACTS

At trial, Humana intends to rely on handwritten notes purportedly created by Christopher Bihari, a former Sandoz employee and one of Humana's cooperating witnesses, to corroborate its claims.  Humana included photocopies of these notes in its Trial Exhibit List as "Bihari NoteBook," "Bihari Notebook," and "Christopher Bihari's Notebook" (collectively, "Bihari Notebooks").  The circumstances surrounding the creation, retention, and production of the Bihari Notebooks, however, prove that Humana cannot demonstrate their authenticity or admissibility.

### I.    Bihari "Discovered" His Notebooks Only After Reaching a Settlement

A 2017 government interview memo indicates that Bihari told the FBI that he had no notes from the relevant time period, that he had thrown away any notes that he did possess, and that, at any rate, he would not have written down any pricing information in a notebook.  Ex. F-1, BIHARI-USPS-REDACTED2 at -012, -198.  Contrary to what he apparently told the FBI, Bihari now claims that in August 2018 he "          " his notebooks.  Ex. F-2, Christopher Bihari Dep. at 220:12 (May 31, 2023).  Despite testifying that he was "          " upon discovering he was in possession of notebooks purporting to contain pricing information, *id.* at

---

[33] The Bihari Notebooks refer to the following items listed on Humana's Trial Exhibit List provided July 9, 2026: Ex. F-3 and Ex. F-4 (1B276-NOTEBOOK 002-00001-1B276-NOTEBOOK 002-000133); Ex. F-5 (Bihari-000217-Bihari-000406).  Trial Defendants dispute that interview memoranda generated by agents of the Federal Bureau of Investigation on Form FD-302 or by agents of the U.S. Postal Service Office of the Inspector General in connection with the U.S. Department of Justice's investigation into the generic pharmaceutical industry are admissible business records.  *See supra* Motion A.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

222:20, he nonetheless claims that he then "███████████████" for the next eight months, *id.* at 226:14. In March 2019, Bihari again "████████████████," *id.* at 226:11-12, but this time he did so in the presence of his attorneys who happened to be with him at his residence, *id.* at 226:1-21. This discovery occurred shortly after Bihari finalized his settlement and cooperation agreement with the State Attorneys General, *id.* at 227:16-19, 228:6-22. Bihari's settlement agreement with the States "█████████████████████████████████████" for use in this litigation. *Id.* at 228:6-11.

His newly discovered notebooks have become some of Humana's most-cited evidence against certain Defendants. *See, e.g.,* Humana's Omnibus Opposition to Defendants' Individual Motions for Summary Judgment, No. 16-md-2724, ECF No. 4390, at nn.266, 271, 294-95, 444-46, 498, 574, 583, 603, 605, 609, 959.

## II.    Bihari Testified Regarding His Haphazard Note-Keeping Practices

When questioned about how his purported notebooks were created, Bihari confirmed that the notes in question were private notes, that he had no consistent system in recording or maintaining them, and that the notes were not always contemporaneous. Ex. F-2 at 212:13 (he did not "████████████████████████"); *id.* at 212:17-18 ("████████████████ ███████████████████████████████████████"). He also admitted that he sometimes "████" have "██████████████████████████," meaning such notes were not contemporaneous and may not have reflected his real-time impressions. *Id.* at 213:24-25; *id.* at 214:12-16 ("████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████"). Bihari conceded that the notes are incomplete and that at "████████ ████████████████████████." *Id.* at 213:21-22.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Critically, Bihari testified that he interspersed notes about his calls with other manufacturers' employees *with calls he had with customers, as well as about internal meetings at his company.* *Id.* at 208:20-21 (the " ███████████████████████████ ███████ "); *id.* at 215:20-21 (sometimes he would add " ██████████████████████████ ████████████████████ "); *id.* at 207:5-7 (his notebooks contain " ██████████████ ██████████████████████████████████████████ "). Moreover, he was unable to differentiate, for each note, a competitor communication versus a communication with a customer or a Sandoz colleague. *Id.* at 203:7-19 (the notebooks " ████████████████████████ ██████████████████████████ "). He also admitted that he would " ██████████████ ██████████████████████████████████████████████████████████ ."
*Id.* at 215:25-216:3.

Further, Bihari kept these purported notebooks secret. Armando Kellum testified that he never saw Bihari's notebook during his time at Sandoz. Ex. F-6, Hector Armando Kellum Dep. Tr. at 78:7-11 (Apr. 7, 2025). Bihari did not even tell Kellum that he kept notebooks. *Id.* at 78:4-6. Michael Vezza testified that he at times saw Bihari taking notes during meetings, but testified that he never saw Bihari's notebooks or the statements contained therein. *See* Ex. F-7, Michael Vezza Dep. Tr. at 817:4-17 (May 3, 2023). There is no evidence that Bihari shared the purported notebooks with his alleged coconspirators.

## ARGUMENT

### I. The Bihari Notebooks Are Inadmissible Hearsay

#### a. The Bihari Notebooks are Hearsay

The Bihari Notebooks are hearsay because they are out-of-court statements offered for the truth of the matters asserted therein, specifically the content of alleged communications and

51

purported agreements between certain Defendants.  *See* Fed. R. Evid. 801(c).  Further, the Bihari

Notebooks themselves contain multiple levels of hearsay because they purport to reflect

statements made by unidentified third parties who supposedly communicated with Bihari. For

example, Humana has previously cited a portion of Bihari's notebook regarding an April 30,

2013 call and argued that it reflects *Ara Aprahamian's* statement to Bihari.  Humana's Omnibus

Opposition to Defendants' Individual Motions for Summary Judgment, No. 16-md-2724, ECF

No. 4390, at 85-86 n.445-46.  This constitutes double hearsay and Humana must, but cannot,

establish exceptions to each level.  *See* Fed. R. Evid. 805; *see also Evans v. United States*, No.

15-1839, 2017 U.S. Dist. LEXIS 237539, at *3 n.1 (E.D. Pa. Nov. 2, 2017) (excluding double

hearsay statements in reports that were not covered by a separate hearsay exception).  Moreover,

the document has no indicia of reliability, both because it does not provide that the statement

came from Aprahamian, and for all the reasons described above regarding the haphazard manner

in which Bihari maintained his notes.  *See United States v. Lloyd,* 566 F.3d 341, 345 (3d Cir.

2009) ("[O]ut-of-court statements. . . containing multiple levels of hearsay have been recognized

as unreliable") (citations omitted).  The Bihari Notebooks are thus inadmissible.  *See* Fed. R.

Evid. 802.

### b.  No Hearsay Exception Applies

#### i.  The Business-Records Exception Does Not Apply

The Bihari Notebooks are not admissible as business records.  To qualify for the

exception, the proponent of the evidence must show:

> (A)  the record was made at or near the time by — or from
> information transmitted by — someone with knowledge;
> (B)  the record was kept in the course of a regularly conducted
> activity of a business, organization, occupation, or calling,
> whether or not for profit;
> (C)  making the record was a regular practice of that activity;

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

(D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E)    the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Humana cannot satisfy these elements. First, there is no indication that notebook entries were made at the time of the occurrences described in the notebook.[34] Second, the notebook entries were not kept in the course of a regularly conducted activity of Sandoz. Third, maintaining such notebooks was not a regular practice at Sandoz. As Bihari testified, the notebook entries were "█████████████████████" of his, and no one at Sandoz was "███████ ██████████." Ex. F-2 at 206:13-23. Indeed, the evidence indicates that no one at Sandoz even saw Bihari's notebooks. Fourth, no testimony has confirmed the above conditions, including that the notebook entries were made contemporaneously with events described, that the note-keeping was kept in the course of a regularly conducted activity of Sandoz, and that maintaining the notebooks was a regular practice at Sandoz. Instead, Bihari testified that his note-keeping was irregular, not contemporaneous, and that sometimes he added to notes or transcribed them at some unknown later date.[35] Finally, the suspicious timing and other circumstances surrounding the notebooks' "discovery" indicate a significant lack of trustworthiness.

---

[34] Consistent with Bihari's admissions that he did not keep contemporaneous notes and later revised them, expert review of Bihari's notebooks confirmed that portions of the individual entries were added to, modified, or supplemented at a time separate from the original writing event. Ex. F-8 Detwiler Rep. at 37. Humana filed a Motion to Exclude the Opinions and Testimony of Khody R. Detwiler. 18-cv-3299, ECF No. 450. If the Court excludes Bihari's Notebooks, the Court can deny as moot Humana's *Daubert* motion of Mr. Detwiler.

[35] Although the Third Circuit has instructed that "the regular practice requirement should be generously construed to favor admission," Bihari himself conceded that his note-keeping was *not* a regular practice of his. Ex. F-2 at 212:13-18; *see In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 289 (3d Cir. 1983), *rev'd on other grounds, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

53

The Court should therefore decline to apply this exception, following other courts that have excluded diaries and notes where the proponent could not show reliability, regularity, or trustworthiness. *See*, *e.g.*, *United States v. Rayapureddy*, No. CR 22-285, 2024 WL 278622, at *3-4 (W.D. Pa. Jan. 25, 2024) (excluding diary pages not kept in the regular course of business); *United States v. Casoni*, 950 F.2d 893, 912-13 (3d Cir. 1991) (declining to treat notes as business records due to "the method and circumstances of preparation," when they detailed an interview that occurred over a year earlier and were prepared as a "tool of controversy, not a routine record of fact"); *United States v. Ramsey*, 785 F.2d 184, 192 (7th Cir. 1986) ("Miscellaneous jottings should not be admitted under Rule 803(6) just because they have some connection with a regular business."); *Hosp. Television Inc. v. Wells Television Inc.*, 462 F.2d 417, 420-21 (8th Cir. 1972) (excluding handwritten diary as hearsay, not a business record); *Hathaway v. Idaho Pac. Corp.*, No. 4:15-cv-00086-DCN, 2019 U.S. Dist. LEXIS 183647, at *7 (D. Idaho Oct. 21, 2019) (notes constituted hearsay and did not qualify as business records when movant showed the "method or circumstances of preparation lack trustworthiness"). As in *Rayapureddy*, where an employee's written diaries describing business transactions were merely "kept amid" other systematized business records, Bihari's notes were "not kept in the course of a regularly conducted activity of . . . business" and should be found inadmissible under the Rule 803(6)(B) exception. 2024 WL 278622 at *3.

### ii. The Coconspirator-Statement Exception Does Not Apply

The Bihari Notebooks are also inadmissible under the hearsay exception for coconspirator statements, which applies to statements "made by the party's coconspirator during

54

and in furtherance of the conspiracy." *See* Fed. R. Evid. 801(d)(2)(E).[36]

First, this exception does not apply because Bihari testified that he did not conspire with numerous Defendants. In fact, Bihari is accused of conspiring with only a handful of the 24 Defendant families, and as to most Defendants, there is no evidence (or allegation) that they joined any conspiracy involving Bihari. For instance, Bihari has affirmed unequivocally that he "███████████████████████████████████████████████████." Ex. F-2 at 1610:12-15. As such, his personal notes do not qualify as statements "made by [Defendants'] coconspirator during and in furtherance of the conspiracy," *see* Fed. R. Evid. 801(d)(2)(E), and the notebooks are thus not admissible as to Mylan and the other Defendants not accused of conspiring with Bihari.

Second, Bihari's notes are not even admissible as to Defendants that Bihari allegedly conspired with because Bihari's notes were not contemporaneous. Ex. F-2 at 460:6-9. As such, they are not statements made during or in furtherance of the alleged conspiracy. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 377 (3d Cir. 2004) ("If the District Court concluded that the notes were not contemporaneous, it could have concluded that the statements contained therein were not in furtherance of a conspiracy . . . that is, it could have concluded that the statements were not admissible as coconspirator statements . . . .") (remanding for the district court to determine whether the at-issue "notes appear to be non-contemporaneous"); *see also United States v. Fielding*, 645 F.2d 719, 726 (9th Cir. 1981) ("[M]erely narrative declarations" by a coconspirator concerning conspiracy activities or culpability are not considered to be in furtherance of the conspiracy.) The coconspirator-statement exception thus does not apply.

---

[36] The parties will propose a pre-trial process to determine admissibility of specific statements that Humana intends to admit under the co-conspirator hearsay exclusion of Fed. R. Evid. 801(d)(2)(E).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## II.    The Bihari Notebooks Are Unfairly Prejudicial

Even if the Bihari Notebooks were otherwise admissible (they are not), their admission at trial would be improper. *See* Fed. R. Evid. 403. Evidence is unfairly prejudicial under Rule 403 if it "clouds impartial scrutiny and reasoned evaluation of the facts." *Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002) (cleaned up). The Bihari Notebooks' irregularities, suspicious origin, and hearsay nature would require a trial within a trial regarding this evidence and mislead the jury, inviting speculation rather than impartial scrutiny. The risk of unfair prejudice and misleading the jury substantially outweighs any probative value. *See* Fed. R. Evid. 403; *Schieber v. City of Philadelphia*, No. 98-5648, 2000 U.S. Dist. LEXIS 17952, at *46 (E.D. Pa. Dec. 13, 2000) (excluding report because its "proffered use outside the context for which it was prepared will likely cause a jury unnecessary confusion and misapprehension of what is factual and what is speculative"). Humana will argue that the Bihari Notebooks evidence collusion among Defendants, but this would be unfairly prejudicial because the notes purport to be a mix of information Bihari gathered from certain competitors, customers, and other Sandoz employees—with no way to tell what a particular note was based upon. The Bihari Notebooks could contain only one-sided, unsubstantiated notes as to communications with a small number of Defendants, amplifying the extraordinary prejudice against all other Defendants with whom Bihari never communicated, and in fact denied conspiring. Accordingly, the risk of misleading the jury substantially outweighs any probative value.

## III.    Photocopies Of The Bihari Notebooks Are Inadequate

The Court should not admit the copies of Bihari Notebooks listed on Humana's exhibit list into evidence because Humana has not established that the original notebooks are unavailable, and Humana cannot establish the photocopies' authenticity. "An original writing,

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise," Fed. R. Evid. 1002, and a "duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. "An original is not required and other evidence of the content of a writing . . . is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; (b) an original cannot be obtained by any available judicial process; (c) the party against whom the original would be offered had control of the original . . . and fails to produce it at the trial . . . ; or (d) the writing, recording, or photograph is not closely related to a controlling issue." Fed. R. Evid. 1004.

First, Bihari's concealment and subsequent "discovery" of the incomplete notebooks undermine their authenticity. Government interview memos indicate that Bihari told the FBI in 2017 that he did not have any notes from the relevant period of time at Sandoz. Ex. F-1 at 12. He then claimed to have "discovered" the notebooks in 2018, and became "terrified" about having found them, then "forgot" about them, only to "discover" them again after striking a settlement agreement with State Attorneys General, serendipitously discharging an undertaking to provide them with documents for use in litigation. Other witnesses testified that they did not know that Bihari kept notebooks. *See supra* at 51.

Second, the photocopies that were used in Bihari's deposition, and the copies that Humana intends to introduce as evidence at trial, are incomplete. Ex. F-2 at 205:9-13 (noting that the photocopy was missing at least a cover page that would help identify the document). Bihari used different colors of ink, reflecting that he "███████████████████." *Id.* at 215:15-16. However, the different colors of ink are not visible in the black-and-white photocopies that Humana intends to rely upon. *See* Ex. F-5. Moreover, Bihari also claims to

57

have used Post-it Notes, which may or may not have been included in the copies that were produced—or which might cover up other content on the page.  *See*, *e.g.*, Ex. F-2 at 213:9-20 (discussing a purple Post-it Note that covered other content on a portion of a photocopied page).

Accordingly, the Court should find the photocopied Bihari Notebooks inadmissible because without the originals, Trial Defendants cannot adequately cross-examine Bihari about the known discrepancies between the photocopies and originals, and the suspicious circumstances surrounding his production of the notes.  *See Mitcham v. Americold Logistics, LLC*, No. 17-CV-00808-WJM-NYW, 2017 WL 4163359, at *5-6 (D. Colo. Sept. 20, 2017) (finding defendant was prejudiced by plaintiff's failure to produce original copy of handwritten journal because "production of the scanned copy does not necessarily provide [defendant] an opportunity to meaningful [sic] review the journal's contents").  Bihari's inconsistency in how— and even *if*—he wrote the content of the notebooks, his own admitted concealment of evidence, his suspicious "discovery" of the notebooks, his subsequent delayed production of the notebooks, and his irregular practices in keeping records (including a lack of confidence about who made certain statements written in the notebook) all cast grave doubt on the authenticity of the notes he claims to have taken to document his participation in the alleged conspiracy.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**G.    MOTION TO PRECLUDE HUMANA FROM PRESENTING INCORRECT, MISLEADING OR INFLAMMATORY INFORMATION ABOUT DAMAGES**

Trial Defendants respectfully move to preclude Humana from arguing, stating, implying, or in any way presenting incorrect, misleading or inflammatory information regarding Humana's alleged damages.  Throughout this litigation, Humana has attempted to inject improper and misleading characterizations of its alleged damages, including but not limited to stating or suggesting that (1) Humana is required to report litigation recoveries to the Centers for Medicare & Medicaid Services (CMS), or that the federal government may receive a portion of litigation recoveries; (2) the United States government, by requiring Part D plan sponsors to implement compliance programs that include "measures that prevent, detect, and correct fraud, waste, and abuse," 42 C.F.R. §§ 422.503(b)(4)(vi) & 423.504(h)(1), bestowed on Humana the right or obligation to recover damages in cases like this one, and (3) Trial Defendants would obtain a windfall if Medicare payments are deducted from Humana's indirect volume of commerce ("VOC").  Each of these misleading characterizations is irrelevant, and would serve to confuse the issues, mislead the jury, and expose Trial Defendants to unfair prejudice in violation of the Federal Rules of Evidence.  Such suggestions offer no probative value but risk misleading the jury to believe that awarding damages in this case would benefit the United States government or taxpayers.  Humana should not be permitted to do so.

**I.    Humana Should Not Be Permitted To Suggest That Humana Is Required To Report Litigation Recoveries To CMS, Or That The Federal Government May Receive A Portion Of Any Such Recoveries**

Any evidence or argument that Medicare Part D sponsors are required to report legal recoveries to CMS and account for those recoveries would be irrelevant to this case, and would mislead the jury and create significant confusion. Humana would have no obligation to report to CMS any recovery it may receive in this case because Humana's obligation to report litigation

59

recoveries and other events that result in changes to the "direct and indirect remuneration" (DIR) previously reported to CMS is limited by a six-year look back provision in the applicable regulations. *See* 42 C.F.R. § 423.360(f) (providing that "Part D sponsor must report and return any overpayment identified *within the 6 most recent completed payment years*" (emphasis added)). Similarly, the federal government may not reopen any final payment determination based on a litigation recovery after six years.[37]  42 C.F.R. § 423.346(a).  Humana's damages expert, Dr. William Vogt, calculated damages using a cartel period that ended December 1, 2018 – well over six years ago.  Ex. 25, Defs.' Joint Mot. for Summ. J. on Damages, Expert Report of Dr. William B. Vogt (Vogt Rpt.), ¶ 75.[38]  Therefore, because Humana would not be required to report any recovery to CMS or share any portion of its recovery with the federal government, CMS reporting requirements related to legal recoveries are irrelevant.  False suggestions that a potential recovery in this case would be reported to CMS, and that any recovery would be shared with the federal government, are not only irrelevant, but present significant risk of confusing the issues, misleading the jury, and imposing unfair prejudice. Such suggestions offer no probative value, especially given the risk that jurors will be misled into believing that awarding damages in this case would benefit the United States government or taxpayers.  Humana should not be

---

[37] 42 C.F.R. § 423.346(a)(2) provides that even where there is good cause for reopening, CMS may only reopen initial or reconsidered final payment determinations within six years of the date of the notice of the initial or reconsidered determination. The only exception to this rule applies "in instances of fraud or similar fault *of the Part D sponsor or any subcontractor of the Part D sponsor*." 42 C.F.R. § 423.346(a)(3). Humana does not allege any such fraud here, and the exception is inapplicable. 42 C.F.R. § 423.360 does not contain any exceptions that might require Part D sponsors to report overpayments beyond the six-year look-back period.

[38] Any alleged damages claimed for 2019 and 2020, which Dr. Vogt labels the "█████████ █████" period, Vogt Rep. ¶¶ 72–73, will also be outside the six year lookback window, because Humana's obligation to report an overpayment would not be triggered until a Defendant actually pays damages. *See* 42 C.F.R. § 423.360(c) ("The Part D sponsor has identified an overpayment when the Part D sponsor knowingly receives or retains an overpayment.").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

permitted to willfully mislead the jury concerning the allocation and retention of any potential damages.  Trial Defendants respectfully request that this Court preclude Humana from referencing, suggesting, or in any way stating that Humana is required to report litigation recoveries to CMS, or that the federal government may receive a portion of any such recoveries.

**II.    Humana Should Be Precluded From Suggesting That Federal Law Or Regulations Related To "Fraud, Waste, And Abuse" Give Humana The Right Or Obligation To Recover Damages In Cases Like This One**

Humana has brought this suit pursuant to its own self-interest to recover compensation for its own alleged injuries, and any suggestion that it was deputized by the federal government to do so is false, misleading, and irrelevant.  Humana has previously argued that, as a Part D sponsor, it is directed to implement and pursue a compliance program including "measures that prevent, detect, and correct fraud, waste and abuse."  *See* 42 C.F.R. §§ 422.503(b)(4)(vi) & 423.504(h)(1).  Humana further suggested that, because of these statutes and regulations, it is entitled to recover damages for amounts paid by the federal government on the federal government's behalf.  *See* Plaintiff Humana Inc.'s Opp'n to Defs.' Joint Mot. for Summ. J. on Damages, Dkt No. 580 (Damages Opp.) at 4-6.  However, Humana has no express or implied subrogation rights to recover damages on payments made by the government.  When Congress creates such rights, it does so expressly by statute, and it has not done so here.  Moreover, the government does not rely on plan sponsors like Humana to recover damages based on the government's Medicare Part D payments.  Indeed, the government has already obtained settlements from certain of the defendants in this MDL based in part on the government's Medicare Part D payments for the Drugs at Issue.[39]

---

[39] *See, e.g.*, Settlement Agreement, United States and Teva Pharmaceuticals USA Inc. (Oct. 10, 2024), available at https://www.justice.gov/archives/opa/media/1373086/dl ($25,000,000 settlement based on government purchases of generic Drugs at Issue during the Relevant Time

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

The unsupported suggestion that the federal government has somehow deputized Humana to bring lawsuits like this one on its behalf has no probative value but risks substantial confusion and prejudice. It implies that Humana would share some portion of any litigation recovery with the federal government, which is wrong and prejudicial for the reasons described above. Moreover, the unsupported suggestion that the federal government deputized Humana to pursue its interest is prejudicial to Trial Defendants because the federal government's interest is broader than that of a private litigant. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 60 (1st Cir. 2016) ("The interest of private plaintiffs is to remediate an injury they have suffered or may suffer. The interest of the government is to 'prevent and restrain' violations of the antitrust laws along with the attendant social costs such violations can cause."). Accordingly, Trial Defendants respectfully seek to preclude Humana from improperly arguing, implying or in any way suggesting that federal law or regulations related to fraud, waste, and abuse give Humana the right or obligation to recover damages in cases like this one.

III.    **Humana Should Not Be Permitted To Suggest That Trial Defendants Would Obtain A Windfall If Medicare Payments Are Deducted From Indirect Volume Of Commerce**

Humana should not be permitted to confuse the jury and prejudice Trial Defendants by using inflammatory language suggesting that Trial Defendants would unfairly or unjustly retain any amounts deducted from Humana's indirect VOC, as calculated by Humana's expert, Dr. Vogt, if that VOC is adjusted to remove federal government payments under the Part D program. Such a suggestion would be factually inaccurate, as several defendants in this MDL, including

---

Period, including "purchases [of the Covered Drugs]" for the Medicare program); Settlement Agreement, United States and Glenmark Pharmaceuticals Inc., USA (Aug. 30, 2024), available at https://www.justice.gov/archives/opa/media/1366326/dl?inline ($25,000,000 settlement based on government purchases of generic Drugs at Issue during the Relevant Time Period, including "purchases [of the Covered Drugs]" for the Medicare program).

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

one Trial Defendant, have already made payments to the federal government based in part on the government's Medicare Part D payments for the Drugs at Issue.[40]  In any case, the federal government's decision to *not* pursue a claim cannot fairly be characterized as a windfall to Trial Defendants.  Moreover, any suggestion that Trial Defendants would unfairly or unjustly retain any amounts deducted from Humana's indirect VOC does not tend to make any fact of consequence more or less probable.

Additionally, use of any provocative terms like "windfall" entails significant risk of confusing the issues and misleading the jury – including by improperly and wrongly suggesting that the United States government or taxpayers would benefit from a verdict in favor of Humana. Accordingly, Trial Defendants respectfully request that Humana be precluded from using any inflammatory language, like "windfall," to describe Trial Defendants' retention of any amounts deducted from Humana's VOC to reflect payments Humana received from the federal government through the Medicare Part D program.

---

[40] *See supra*, n.39, for relevant settlement examples.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**H.    MOTION TO PRECLUDE PLAINTIFF FROM ARGUING THAT TRIAL DEFENDANTS' OR THEIR EMPLOYEES' PARTICIPATION IN TRADE ASSOCIATION AND INDUSTRY EVENTS WAS UNLAWFUL OR PROVIDED OPPORTUNITIES TO ENGAGE IN UNLAWFUL CONDUCT**

Trial Defendants respectfully submit this Motion in Limine to preclude Plaintiff, its witnesses, and its counsel from arguing or suggesting to the jury that Defendants' or their employees' mere participation in trade association and industry events was unlawful, or that such participation establishes an agreement in violation of the Sherman Act.  Humana should be prevented from inviting the jury to equate the lawful act of attending an industry gathering with participation in an unlawful conspiracy.

As a threshold matter, participation in a trade association—without more—does not amount to a violation of the Sherman Act.  *See, e.g., Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 585–86 (1925) (holding that trade association members do not become "conspirators" simply by gathering and disseminating business information and using it to manage their own operations).  This Court has accordingly held that attending trade group meetings, even meetings where aspects of an alleged conspiracy were advanced, cannot alone support an inference of agreement.  *In re Processed Eggs Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 722 (E.D. Pa. 2011) ("Certainly, pertinent legal authority is clear that participation in a trade group association and/or attending trade group meetings, even those meetings where key facets of the conspiracy were adopted or advanced, are not enough on their own to give rise to the inference of *agreement* to the conspiracy.") (emphasis in original) (citation omitted).  Nor does the mere opportunity to conspire, arising from presence at the same event, establish that competitors have reached an agreement.  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir. 1999) (holding that evidence of isolated "shop talk" at industry gathering was insufficient to survive summary judgment).  Accordingly, the Third Circuit recently approved of a jury

64

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

instruction aimed precisely at the danger of conflating an opportunity to conspire with unlawful conduct itself, finding that the charge that "[a] business that belongs to a trade association does not become liable for violating the antitrust laws simply because the trade association is liable for such violation" is "supported by substantial precedent." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, 89 F.4th 430, 442–443 (3d Cir. 2023) (collecting cases). Together, these authorities establish that a party may not argue that attendance at or participation in industry events amounts to unlawful conduct.

Here, Plaintiff has indicated through its filings leading up to trial that it intends to rely heavily on Defendants' and their employees' attendance at trade association and industry events as evidence of a conspiracy. Plaintiff argues that "there is robust evidence of communications in furtherance of the overarching conspiracy at trade shows, dinners, and the like." Plaintiff's Omnibus Memorandum of Law in Opp. to Defendants' Individual Motions for Summary Judgment, at 11. It also argues Defendants were "being careful to do it on the telephone or face-to-face at trade shows instead of in writing"—calling such communications "the essence of traditional evidence of conspiracy." *Id.* at 7.

Statements of this kind blur the line between lawful and unlawful conduct. They invite the jury to treat the fact that Defendants attended or spoke at industry events, by itself, as proof of an unlawful agreement, rather than as neutral evidence of opportunity that must be assessed alongside other proof. Absent a limiting order, there is a substantial risk that Plaintiff's witnesses and counsel will go beyond using industry events as evidence of mere opportunity to conspire, and instead invite the jury to treat attendance at industry events as evidence of guilt.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## I.    MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING IMPACT ON HUMANA PLANS AND BENEFICIARIES

Trial Defendants respectfully move under FRE 401, 402 and 403 to preclude evidence and arguments concerning customer complaints and the alleged effects of any price increases of generic pharmaceuticals on Humana's plans and beneficiaries (*i.e.*, those entities and individuals for whom Humana provides healthcare insurance).

### PRELIMINARY STATEMENT

Humana is one of the leading health insurance and managed care organizations in the United States.  It provides health plan benefits to approximately 16 million members through individual and group medical plans, many of which include prescription drug coverage.

This motion is aimed at ensuring that Humana is not permitted to adduce evidence, or make argument, at trial regarding the purported economic effects of generic drug price increases on Humana's beneficiaries, including higher out-of-pocket costs to consumers (such as higher premiums, copays, co-insurance and/or deductibles), the dropping of medications from pharmacy benefit programs or the inability of consumers to be able to afford prescribed medicines.  Such evidence should not be permitted, for at least two reasons.

First, such evidence is not probative of any fact at issue in this case.  The core of Humana's claim is that defendants' alleged collusion led to "increased prices, and caused antitrust injury to Humana."  SAC ¶ 747.[41]  Evidence of impact on insured group medical plans and individuals does not speak to impact on Humana, and more importantly is not at all probative of what caused price increases and whether such increases impacted Humana.  Second,

[41] This description of Humana's claim for purposes of this Motion is not intended to, and does not, concede that Medicare-related amounts are properly included in Humana's antitrust injury or impact case.  Trial Defendants maintain that the treatment of Medicare Part D reimbursement is relevant to the calculation of damages, including the proper measure of volume of commerce.  Trial Defendants are not arguing, and do not concede, that any impact on Medicare Part D plans or beneficiaries is itself relevant to antitrust injury or impact.

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

to the extent that there is any probative value of such evidence, it is outweighed by the unfair prejudice arising from the emotional impact of such evidence, and potential confusion to the jury as to issues of causation.

For those reasons, as set out in more detail below, the Court should not allow any evidence or argument to the jury as to the impact of price increases on Humana beneficiaries and customer complaints.

**ARGUMENT**

### I.    Evidence of Effects on Humana Plans and Beneficiaries and Customer Complaints is Irrelevant

Argument about, and accounts of, the impact of higher prices on Humana insurance plans and the beneficiaries of those plans has no relevance to the central issues in this case. Such evidence and argument cannot explain *why* prices have increased, or illuminate the circumstances concerning decisions on pricing, much less whether price increases caused Humana to pay higher prices. All it can do is demonstrate that there were price increases, which is not even the case for certain of the drugs at issue, and that showing has no bearing on damages. Record evidence reflects numerous, legitimate reasons the prices of the drugs at issue increased, including supply disruptions, increased manufacturing costs, the effects of competitor exit, as well as (legal) oligopolistic interdependence. Thus, evidence of the effects of price increases on Humana-insured individuals, who are non-parties to this case, cannot illuminate whether the price increases are the result of legal or illegal conduct.

Moreover, customer and patient complaints are irrelevant under FRE 401 and 402 because they do not make any fact of consequence more or less probable. As a private insurance company, Humana is seeking damages for the alleged overcharge it incurred, not on behalf of individual customers and patients. That certain customers complained about higher prices has no

67

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

bearing on Humana's allegations.  Humana's exhibit list and deposition designations include references to customer complaints, including one emotionally charged email from a Clomipramine patient named ███████ to Taro noting, "████████████████████████ ████████."  PTX1920; *see also* Ex. I-1 at 268:9-21; 268:23-269:5 (questioning Aprahamian who invoked the Fifth Amendment, "████████████████████████████ ██████████████████" and "████████████████████████ ████████████████████").  Excluding such evidence is consistent with other courts' evidentiary rulings in analogous antitrust cases for lack of relevance to the plaintiff's claims. *See*, *e.g.*, *In re HIV Antitrust Litig*., No. 19-cv-02573-EMC,  2023 U.S. Dist. LEXIS 45939, at *48 (N.D. Cal. Mar. 19, 2023) ("Plaintiffs should not argue outright that individual consumers have been overcharged.  Also, under both Rule 402 and 403, evidence of consumer physical injury shall be excluded."); *In re Zetia Ezetimibe Antitrust Litig*., No. 2:18-md-2836, 2023 U.S. Dist. LEXIS 112035, at *18 (E.D. Va. April 5, 2023) (precluding plaintiffs from asserting consumer harm because "[p]urchasers are not individual consumers").

Evidence of the effects of price increases on Humana beneficiaries and customer complaints is therefore irrelevant.

## II.   Evidence of Effects on Humana Plans and Beneficiaries and Customer Complaints is Unfairly Prejudicial

Even if the Court were to determine that evidence on effects of price increases on beneficiaries and/or customer complaints had some relevance, any such relevance is minimal and outweighed by the risk of prejudice against Trial Defendants.  "When the probative value of evidence is tenuous, a relatively minor risk of substantial undue prejudice should counsel against admitting it."  *Bailey*, 840 F.3d at 119; Fed. R. Evid. 403.

68

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Compared to the minimal (if any) relevance of such evidence, the potential for unfair prejudice, and jury confusion, from allowing testimony as to the effect of price increases on Humana-insured individuals is substantial.  A jury is naturally likely to sympathize with stories of struggling patients and families, and that natural sympathy poses a threat to the jury's ability to make dispassionate determinations as to liability and (if necessary) damages.  Given the lack of relevance, customer complaints would be utilized by Humana to improperly appeal to the jurors' emotions rather than aiding their discernment with relevant facts and law.  Emotional appeals like this would improperly "'invite the jury to render a decision based on grounds of bias, passion, prejudice, or sympathy.'"  *Odgers*, 2023 WL 7183981, at \*4 (quoting *United States v. Davis*, 2023 WL 195159, at \*5 (3d Cir. Jan. 17, 2023)); *see also Quagliarello*, 2011 WL 3438090, at \*2 ("Evidence is 'unfairly prejudicial' if it . . . 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish' [] or 'may cause a jury to base its decision on something other than the established propositions in the case.'") (quoting *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980)).  Courts have likewise recognized the danger that testimony of health impacts can cause a jury to decide on the basis of emotional identification with the suffering person even when not based on facts material or relevant to the legal claim at issue.  *See e.g. Fontenot v. Republic Nat'l Distrib.*, No. 2:15-CV-01774, 2018 WL 1137519, \*5 (W.D. La. Mar. 2, 2018) (excluding evidence where the "details of the diagnosis, treatment, and death of a spouse with a terminal illness is likely to cause unfair prejudice by persuading the jury through sympathy"); *United States v. Watts*, 934 F. Supp. 2d 451, 469 (E.D.N.Y. 2013) (excluding evidence as to health problems of defendant's family due to "risk of unfairly currying sympathy from the jury" when weighted against the marginal relevance of the evidence).

69

Similarly, evidence of health impacts can pose a risk of prejudicial jury confusion as to whether the harms were actually caused by the allegedly wrongful conduct.  Thus, evidence that individual beneficiaries faced, for example, higher premiums or coinsurance payments could cause the jury to disregard the requirement that liability be based on finding a causal link between the allegedly illegal conduct and the higher costs.  This concern has also been judicially recognized.  *See Junk v. Terminix Int'l Co.*, No. 4:05-CV-0608-JAJ, 2008 WL 5142188, *4 (S.D. Iowa Aug. 15, 2008) (excluding EPA reports containing accounts of health impacts where the reports lacked proof of causation of the impacts by the chemical at issue).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**J.     MOTION TO PRECLUDE ELICITING LEGAL CONCLUSIONS FROM FACT WITNESSES**

Trial Defendants respectfully submit this Motion in Limine to preclude Humana from eliciting testimony from any witness as to a legal conclusion or their understanding of what the law requires.  Humana has demonstrated its intent to introduce such testimony and should not be permitted to do so.  For example, MDL Plaintiffs have elicited testimony from Mr. Bihari stating that " ███████████████████████████ " is " ████████ ," or that his " ████████ ███████████████ " was " █████ ."  Ex. J-1, Christopher Bihari Dep. at 517:6-24, 520:20-521:5 (June 1, 2023).  Moreover, counsel for Humana elicited testimony from Mr. Vezza that he " ████████████ " to have a conversation with a competitor.  Ex. J-2, Michael Vezza Dep. at 897:12-898:14 (May 3, 2023).  At trial, Humana's witnesses should be excluded from making statements amounting to legal conclusions or what the witnesses believe the law to be.

It is for the Court, not a witness, to explain issues of law to the jury.  *See, e.g.*, *United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991) ("[I]t is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law to the jury[.]").  Courts have routinely excluded testimony where a witness will describe the law or offer opinions amounting to legal conclusions that apply facts to the law.  *See, e.g.*, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006) (ruling that expert witness could not offer legal opinions, including testimony about whether certain conduct complied with legal duties); *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-cv-2768, 2017 WL 2362400, at *4 (E.D. Pa. May 31, 2017) (granting motion in limine to preclude fact witnesses from testifying to legal opinions going to issues to be decided by jury); *Cobra Enters., LLC v. All Phase Servs., Inc.*, No. 20-4750-SRC, 2023 WL 3916276, at *5 (D.N.J. June 9, 2023) ("Pennisi, as a fact witness, would not be competent to testify to a legal conclusion.").  Here, Mr. Bihari's and Mr. Vezza's testimony

71

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

highlight that they—or other witnesses—may testify about their opinions or conclusions as to whether antitrust violations have been committed. Such testimony is inadmissible. *See* Fed. R. Evid. 704, Advisory Committee Note (Rule 704 "stand[s] ready to exclude opinions phrased in terms of inadequately explored legal criteria.").

Witnesses' legal conclusions should be precluded especially when the conclusions are not merely unhelpful but affirmatively incorrect. Mr. Bihari's testimony—that "███████ ███████████████████████" is "██████" and Mr. Vezza's testimony that it was "██████" to have a conversation with a competitor are incorrect. The mere exchange or receipt of information between competitors is not, standing alone, unlawful, and does not constitute direct evidence of a conspiracy. *See, e.g., In re Baby Food Antitrust Litig.*, 166 F.3d 112, 124-26 (3d Cir. 1999) (concluding that testimony from sales representatives about "an exchange of information among the defendants" does "not make out a case of direct evidence."). It is not only improper for a fact witness to intrude on the role of the Court to inform the jury of the law, but this concern carries particular force here, given the demonstrated tendency of key cooperating witnesses to offer erroneous legal conclusions.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**K.      MOTION TO PRECLUDE PLAINTIFF'S EXPERTS FROM RECITING A FACTUAL NARRATIVE**

Trial Defendants respectfully move under FRE 403 and 702 to preclude Humana's expert witnesses from characterizing facts and reciting a narrative.

## PRELIMINARY STATEMENT

It is axiomatic that an expert witness must utilize specialized expertise to aid the jury in evaluating the facts in order for his or her testimony to be admissible.  In this context, that means applying economic principles and expertise to the record evidence.  Yet, in their reports, Humana's expert economists (Dr. Bradford and Dr. Kesselheim) simply recite large volumes of cherry-picked record evidence, largely in chronological order, to construct a factual narrative that suits Humana's theory of the case.  Simply regurgitating the non-expert evidence that purportedly supports Humana's claims – while ignoring the enormous quantity of evidence that does not – is not the appropriate role of expert witnesses.

For those reasons, as set out in more detail below, the Court should not allow Humana's experts to characterize facts or recite a factual narrative.

## ARGUMENT

Rule 702 demands that an "expert's scientific, technical, or other specialized knowledge" will aid in "[a]n intelligent evaluation of facts." Fed. R. Evid. 702, Notes of Advisory Committee on Proposed Rules; *see also McBride v. Petulla*, No. 16-cv-256, 2020 WL 1032535, at *2 (W.D. Pa. Mar. 3, 2020) ("[T]he expert must testify about matters requiring scientific, technical, or specialized knowledge and base his or her opinions on reliable processes and techniques.").

Thus, Rule 702 "clearly contemplates some degree of regulation of the subjects about which an expert may testify" and courts must exercise their gatekeeping role to ensure the jury does not hear improper expert testimony.  *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir.

73

2000).  For the reasons described below, permitting Humana's experts to simply recite cherry-picked record evidence and construct a factual narrative will not aid the jury's evaluation of the facts in any way and is therefore improper.

It is well-established that an expert may not "construct[] a factual narrative based on record evidence."  *Krys v. Aaron*, 112 F. Supp. 3d 181, 206 (D.N.J. 2015).  Testimony that "simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge . . . is inadmissible."  *Highland Capital Mgmt, L.P. v. Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005); *see also SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 280 (D. Conn. 2017) (finding that an "expert may not simply recite a factual narrative from one party's perspective, granting it credibility, when he has no personal knowledge of the facts addressed.").

Where an expert recites facts and "commonly interjects his opinion" about those facts, the expert "supplant[s] the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence."  *Highland*, 379 F. Supp. 2d at 469; *see also Littlejohn v. Solar*, No. 1:16-CV-9446-NLH-JS, 2020 WL 2520418, at *5 (D.N.J. May 18, 2020) ("[S]ummary conclusions drawn from [the expert's] interpretation of facts as he understands them" are impermissible because "[t]hese conclusions must be left for the jury[.]").

Simply put, reviewing testimony and documentary evidence compiled by Humana, and recounting those facts to the jury does not require specialized expertise.  Accordingly, such testimony falls outside the proper scope of expert opinion and is not an appropriate subject for expert testimony.  *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, Case No. 11-cv-681, 2015 WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) (noting that not only does "[m]ere narration...fail[] to fulfill *Daubert*'s most basic requirements" but further noting that "narration of facts of the case may easily invade the province of the jury"); *Krys*, 112 F.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Supp. 3d at 206 ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based on record evidence[.]").

Here, Dr. Bradford's and Dr. Kesselheim's reports are replete with precisely this type of impermissible recitation of record evidence. *See* Ex. K-1 (interpreting and characterizing e-mails and phone records and constructing a factual narrative); *see also* Ex. K-2. It is undisputed that neither Dr. Bradford nor Dr. Kesselheim possess any personal knowledge of any of the evidence or facts addressed in their reports. Rather, they simply recite Humana's theory of the case, at times essentially in chronological order with respect to each drug at-issue, while omitting any and all evidence favorable to Trial Defendants from their narratives. Dr. Bradford also conceded that his "███████" was to only answer if there was "████████████████████████ ███████," Ex. K-3 at 455:7-9, and he was not "███████" review any evidence inconsistent with conspiracy (i.e., evidence consistent with independent decision-making), *id.* at 443:25-444:10. None of Dr. Bradford's economic tests could distinguish between explicit collusion and oligopolistic competition (aka tacit collusion) because he "██████████████████████████ ██████████████████████████." *Id.* at 25:21-26:1.

This type of biased and haphazard narration of the evidence, where all evidence in the narrative they constructed is supportive of Plaintiff's claims, runs the risk of the jury mistakenly believing they should credit certain evidence over other evidence. *See FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.,* 695 F. Supp. 2d 216, 222 (W.D. Pa. 2010) ("It is the duty of the jury, not an expert witness, to decide credibility. . . . To allow such testimony at trial would usurp the court's duty to instruct the jury on the law and the jury's role of determining credibility of witnesses and applying the law to the evidence."). Nor can it aid the jury in evaluating the facts. Put simply, this type of expert narration does nothing to assist the trier of fact. *See United*

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

*States v. Montas*, 41 F.3d 775, 784 (1st Cir. 1994) ("[T]he risk of unfair prejudice is real. By appearing to put the expert's stamp of approval on the [Plaintiffs'] theory, such testimony might unduly influence the jury's own assessment of the inference being urged.").

Moreover, Dr. Bradford's and Dr. Kesselheim's highlighting the testimony of certain witnesses over others runs the same risk of the jury mistakenly believing they should credit that testimony over others. *See FedEx Ground Package Sys., Inc.,* 695 F. Supp. 2d at 222; *see also Brill v. Marandola*, 540 F. Supp. 2d 563, 570 (E.D. Pa. 2008) (excluding expert testimony consisting of an "extensive interpretation of the relevant legal documents and suggested credibility determinations" because it "usurp[s] the fact-finding role of the jury and distract[s] more than" it aids).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**L.    MOTION TO PRECLUDE REFERENCES TO DISCOVERY DISPUTES AND RESOLUTIONS**

Trial Defendants respectfully move under FRE 401, 402 and 403, to preclude Humana during trial from referring to or introducing evidence or argument concerning the parties' discovery process, discovery disputes and resolutions, and alleged failure to produce documents or allegations of spoliation.

**INTRODUCTION**

During the eight years since this case began, the parties have sought discovery from each other and non-parties on hundreds of subjects.  Millions of documents have been produced, hundreds of depositions have been taken, and thousands of pages of written discovery have been answered.  That discovery has engendered some disputes among the parties, with many resolved between them and some necessitating Court intervention.

One enduring dispute has revolved around the text messages of some witnesses. Humana's case for a sprawling anticompetitive conspiracy relies on misleading phone record summaries identifying text messages and phone calls between participants of the various alleged conspiracies.  Humana has marked at least 26 of these misleading summaries as potential trial exhibits.[42]  When confronting witnesses with its misleading summaries, Humana has repeatedly asked witnesses about whether they deleted text messages listed on the summary—often asserting that the witness improperly destroyed the messages to hide evidence of a conspiracy. For example, Humana's counsel engaged in the following exchange with Nisha Patel, a former Teva employee:

███████████

---

[42] *See* Humana Inc.'s Ex. List, PTX0112, PTX0282, PTX0392, PTX0415, PTX0994, PTX1135, PTX1195, PTX1208, PTX1209, PTX1336, PTX1353, PTX1493, PTX2614, PTX2615, PTX2684, PTX3526, PTX3534, PTX3765, PTX4001, PTX4170, PTX4171, PTX4172, PTX4520, PTX4562, PTX4563, PTX4564.

77



N. Patel Dep. Tr., Vol. I, at 200:20–202:3 (emphasis added).  Humana has now designated

similar deposition testimony—including this passage from Ms. Patel—for presentation at trial.

*See, e.g.*, R. Hoffman Dep. Tr., at 107:17–108:15 ("

."); D. Rekenthaler Dep. Tr., Vol. II, at 443:22-444:14; J. Nesta Dep. Tr., Vol. II, at

575:10–576:18; S. Knoblauch Dep. Tr., at 85:1–87:13.

The jury should never hear about any of this:  Nothing is to be gained from allowing the

parties to re-hash discovery disputes in front of the factfinder.  Such disputes have no plausible

relevance to any claim or defense in this case.  Permitting their discussion at trial will only

distract and confuse the jury, creating significant danger of unfair prejudice.  And allowing

Humana to introduce incendiary evidence about the alleged deletion of text messages by some

witnesses—implying to the jury that those messages were harmful to Trial Defendants—would

allow an end-run around the limitations on remedies for alleged spoliation in FRCP 37(e).

Accordingly, any evidence of discovery disputes should be excluded for at least three reasons.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

I.    **Evidence Of The Parties' Discovery Disputes Is Irrelevant**

*First*, any such evidence is not relevant.  Presentation of any part of the eight-year history of discovery in this case does not make it more or less likely that any Trial Defendants reached an anticompetitive agreement or that any such agreement caused Humana to pay increased prices for any at-issue generic drug products.  *See* Fed. R. Evid. 401 (fact must be "of consequence in determining the action").  In other words, "[e]vidence of Counsel[s'] hostility or disputes surrounding production of documents is entirely irrelevant to" Humana's antitrust claims. *Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 814, 818 (E.D. Pa. 2005).  As this type of evidence has "no discernable probative value," courts in the Third Circuit routinely grant motions *in limine* to exclude evidence or argument regarding discovery disputes.  *See, e.g.*, *Citizen Dev., LLC v. Sys. Soft Techs., Inc.*, No. 1:23-CV-00564, 2026 WL 897373, at *11 (M.D. Pa. Mar. 30, 2026) ("Argument or evidence" indicating that a party "failed to comply with the court's orders or its obligations during the discovery process would be highly prejudicial if presented to the jury, and that evidence has no discernable probative value");  *Thompson v. Glenmede Tr. Co.*, Civ. No. 92-5233, 1996 WL 529693, at *2 (E.D. Pa. Sept. 17, 1996)*; Chinniah v. E. Pennsboro Twp.*, No. 1:08-cv-01330, 2013 U.S. Dist. LEXIS 162908, at *9 (M.D. Pa. Nov. 15, 2013) ("The Court cautions Plaintiffs against attempting to relitigate discovery disputes and invites Plaintiffs to seek a hearing outside of the jury's presence should a basis for a determination on spoliation arise during trial").  On relevance grounds alone, the Court should exclude such evidence at trial.

II.    **Evidence Of The Parties' Discovery Disputes Would Be Misleading**
       **To The Jury And Unfairly Prejudicial To Trial Defendants**

*Second*, "[a]ny minimal probative value" that the parties' discovery disputes might have "would be substantially outweighed by the countervailing concerns of Federal Rule of Evidence

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

403." *W.L. Gore & Assocs., Inc. v. C.R. Baird, Inc.*, No. 11–515–LPS, 2017 WL 525668, at *1

(D. Del. Feb. 8, 2017).  "Presenting to a jury the nuances of discovery and the 'hardball' tactics

employed by the lawyers may confuse the jury.  Rather than focus on the issues in the case, the

jury may instead be misled by the irrelevant side issues of the discovery process."  *Thompson*,

1996 WL 529693, at *2.  Because "[i]t would be improper, irrelevant, unfairly prejudicial, and

confusing to the jury for the parties to refer to or re-fight discovery disputes at trial," such

evidence should be excluded.  *W.L. Gore*, 2017 WL 525668, at *1.

### III.    Evidence Of The Parties' Dispute Over Text Messages Would Improperly Circumvent The Limitations Of The Federal Rules

*Third*, by designating testimony in which its counsel badgers witnesses about purported

destruction of evidence, without any basis for that assertion, Humana is attempting an improper

end-run around the limitations on spoliation sanctions imposed by the Federal Rules.  Federal

Rule of Civil Procedure 37(e) "provides the exclusive source of sanctions for the loss of ESI."

*Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022); *see also Bistrian v. Levi*, 448

F. Supp. 3d 454, 465 n.14 (E.D. Pa. 2020) (observing that Rule 37(e) "exclusively governs the

spoliation inquiry").  Humana has not sought the Court's permission under Rule 37(e)(1) "to

present evidence and argument to the jury regarding the loss of information," nor are sanctions

warranted.  Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.  Indeed, the

repeated assertions by Humana's counsel that deponents deleted their text messages to hide

evidence that would be harmful to Defendants invoke the "extreme remedy" of an adverse

inference, the standard for which cannot be met here.  *See Accurso v. Infra-Red Servs., Inc.*, 169

F. Supp. 3d 612, 618 (E.D. Pa. 2016) (that remedy "is appropriate *only* on a finding that the party

responsible for the destruction of the lost information *acted with the intent* to deprive another

party of access to the relevant information.").  There is no evidence that Trial Defendants were

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

responsible for the destruction of any information, let alone that any of them acted with the intent to deprive Humana of such evidence.  Humana cannot be allowed to unilaterally seize for itself sanctions that can only be imposed under the Federal Rules—let alone the "extreme remedy" of an adverse inference—without making the showing the Rules require.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

### M.    MOTION TO PRECLUDE AN ADVERSE INFERENCE BASED ON THE ABSENCE OF ANY DEFENSE WITNESSES

Trial Defendants respectfully move to preclude any adverse inference instruction based on the absence of any defense witnesses.  Further, Plaintiff's witnesses and counsel should be precluded from arguing for an adverse inference or making any statement referencing the absence of any defense witnesses at trial.

An adverse inference based on a missing witness is "only permitted in narrow circumstances."  *Petrongola v. Rothman Nat'l Mgmt. Servs. Org., LLC*, No. CV 23-734, 2026 WL 668296, at *2 (E.D. Pa. Feb. 13, 2026), *report and recommendation adopted sub nom. Aleardi v. Rothman Nat'l Mgmt. Servs. Org., LLC*, No. CV 23-861, 2026 WL 662027 (E.D. Pa. Mar. 9, 2026) (quoting *Arch Ins. Co. v. Carol & Dave's Roadhouse, Inc.*, No. 2:11-cv-801, 2013 WL 607829, at *4 (W.D. Pa. Feb. 19, 2013) (internal quotation marks omitted)).  It is reserved for the limited situation in which a party fails to call a witness who is peculiarly available to that party, where the witness possesses "special information material to the issue," and the witness's testimony "would not merely be cumulative."  *Id.*  These circumstances do not apply to any defense witnesses that may be absent from trial.  For example, Humana cannot establish these prerequisites with respect to Mylan's Jim Nesta, who is currently listed as a "may call live" witness on Trial Defendants' witness list.  Because Humana cannot show that Nesta is "peculiarly available" to Trial Defendants when Humana had a full and fair opportunity to examine him and his sworn testimony is available to both sides, Humana's argument fails at the threshold, and the Court need not reach whether his testimony would be cumulative or otherwise satisfy the doctrine's remaining requirements.  The same applies to any other potentially absent defense witness.

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Where, as here, the witnesses are available to both sides, adverse inference instructions are foreclosed altogether.  *See*, *e.g.*, *United States v. Pedroni*, 45 Fed. App'x 103, 107 (3d Cir. 2002), *cert. denied,* 537 U.S. 1045 (2002) (citing *United States v. Busic,* 587 F.2d 577, 586 (3d Cir. 1978), *rev'd on other grounds,* 446 U.S. 398 (1980)) ("It is clearly established precedent in this Circuit that a missing witness instruction is not appropriate when the witness is available to both the defense and the [other party]."); *United States v. Vastola*, 899 F.2d 211, 235 (3d Cir. 1990), *vacated on other grounds*, 497 U.S. 1001 (1990) ("A missing witness instruction is not appropriate when the witness is available to both the defense and the prosecution."); *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 678 (E.D. Pa. 2003), *amended*, 268 F. Supp. 2d 448 (E.D. Pa. 2003) (upholding a trial court's decision declining to give an adverse instruction based on uncalled witnesses and finding that a party's business partners were not peculiarly available to, or within the exclusive control of, that party).

Because any defense witnesses are available to both sides—not peculiarly within Trial Defendants' control—no adverse inference may be drawn from Trial Defendants' decision not to call them, and no instruction or argument to that effect is warranted.

83

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

### N.    MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING CURRENT AND FORMER EMPLOYEE COMPENSATION AND WEALTH

Trial Defendants respectfully move under FRE 401, 402, and 403 to preclude Humana from introducing evidence or argument concerning the compensation or wealth of their current and former directors, officers, and employees.  This information would likely inflame or mislead the jury, a risk that substantially outweighs any conceivable relevance it may have.

It is well-settled that appeals to class prejudice are improper, and that plaintiff's counsel should not refer to the wealth of defendants or financial disparity between the parties.  *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (ordering a new trial because plaintiff's counsel "repeatedly made reference to the wealth of the defendants in contrast to the relative poverty of the plaintiff.  Appealing to the sympathy of jurors through references to financial disparity is improper."); *United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1980) ("appeal[s] to class prejudice . . . are improper and have no place in a courtroom"); *see also Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) ("The parties are not permitted to argue to the [jury's] potential economic sympathies or prejudices.").  Accordingly, courts routinely bar plaintiffs from referring to the compensation or wealth of a corporate defendant's employees given the "substantial danger of unfair prejudice" to the defendant.  *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*, 14-c-1748, MDL No. 2545, 2017 WL 2313201, at *4 (N.D. Ill. May 29, 2017) (hereinafter "*In re Testosterone I*"); *see also Skillz Platform Inc. v. AviaGames Inc.*, 21-cv-02436-BLF, 2023 WL 8438738, at *4-5 (N.D. Cal. Dec. 5, 2023) (evidence of employees' compensation and wealth excluded as "irrelevant and likely to mislead the jury"); *Fed. Deposit Ins. Corp. v. Deutsche Bank Secs., Inc.*, 1-14-cv-129-XR, 2019 WL 13191367, at *2 (W.D. Tex. Sept. 30, 2019) (evidence of "employee salaries and bonuses . . . is not relevant and should also be excluded under Fed. R. Evid. 403"); *cf. Stahl*, 616

PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER

F.2d at 32-33 (reversing jury verdict due to prosecutorial misconduct, finding that prosecutor's characterization of defendant as a "multi-millionaire businessman" and making "tremendous amounts of money" were intended to arouse jury's prejudice) (citation modified).

Moreover, evidence of wealth or personal compensation of Trial Defendants' current and former directors, officers, and employees is entirely irrelevant to the issue to be tried, which is whether each defendant participated in the alleged price-fixing and market-allocation conspiracies for the 22 drugs alleged in Humana's operative complaint.  The SAC contains allegations for 22 drugs, yet many Trial Defendants each sold hundreds (if not thousands) of drug products, so even if an employee's compensation was tied to company performance, the link between company performance and an individual At Issue Drug is attenuated.  Humana may attempt to argue that such evidence is relevant to the issue of motive (under the theory that any financial gain realized by a Trial Defendant from the alleged conspiracy would also indirectly benefit its employees), but this argument has been repeatedly rejected by numerous courts. Because it is "commonly understood that employees want their company to be successful," evidence of an employee's compensation "adds little insight into their motive."  *Gumwood HP Shopping Partners v. Simon Prop. Grp., Inc.*, 3:11-cv-268 JD, 2016 WL 10706086, at *3 (N.D. Ind. Oct. 28, 2016) (granting *in limine* motion).  Thus, courts have found compensation evidence "unnecessary" where the "potential bias or interest of particular . . . employees" can be shown through other, non-inflammatory proffers.  *In re Testosterone I*, 2017 WL 2313201, at *4 (interest "sufficiently shown by their connection to the company"); *see also Gumwood*, 2016 WL 10706086, at *3 (where employees' communications showed that "they were fully committed to advancing [the company's] interests, ... the jury will already understand that the employees wanted [the company] to succeed").

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

Thus, even if the wealth and compensation of Trial Defendants' current and former directors, officers, and employees had any relevance in this case (which they do not), the minimal probative value of such evidence would be "substantially outweighed by the danger of unfair prejudice that the jury might find [Trial Defendants] liable based on something other than [the alleged] antitrust violations." *Gumwood*, 2016 WL 10706086, at *3; *see also In re Testosterone I*, 2017 WL 2313201, at *4 (same); *Kinsey*, 588 F. Supp. 2d at 518 (same); *see also Quagliarello*, 2011 WL 3438090, at *2 ("Evidence is 'unfairly prejudicial' if it . . . 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish' [] or 'may cause a jury to base its decision on something other than the established propositions in the case.'") (quoting *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980)).

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## O.    MOTION TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING OTHER CIVIL CASES BROUGHT AGAINST TRIAL DEFENDANTS

Trial Defendants respectfully move under FRE 401, 402, 403, 404, 801 and 802 to preclude Humana from introducing evidence or argument regarding other civil cases that have been brought against Trial Defendants.

### PRELIMINARY STATEMENT

This case is one of a number – both in this MDL, and in other courts in Pennsylvania, New York and Connecticut – making allegations of anticompetitive collusion against Trial Defendants.  Humana has made it clear – in its summary judgment briefing (in which it relied extensively on proceedings in the State Plaintiffs' case in the District of Connecticut),[43] and most recently by adding 38 MDL complaints to its list of trial exhibits[44] – that it intends to bolster its case by referring to other cases that have been brought against Trial Defendants.

The Court should not, however, allow Humana to present to the jury evidence or arguments concerning those civil cases.  *First*, allegations in other cases are irrelevant to the matters before the jury in this case.  *Second*, evidence or argument concerning other cases would be unduly prejudicial to Trial Defendants, confusing and misleading to the jury, and a waste of the Court's limited time.  *Third*, any evidence concerning other cases would be inadmissible propensity evidence.  *Fourth*, evidence concerning other cases is excludable hearsay.

For these reasons, as set out further below, Trial Defendants respectfully request that the Court grant the motion.

---

[43] *See* 18-cv-3299 ECF #582 (E.D. Pa. May 1, 2026) at 1 ("very similar allegations of overarching conspiracy by the State Attorneys General in Connecticut have already survived summary judgment"); *see also id.* at 4, 32, 35-38, 40-43.

[44] *See* PTX5033 through 5070.

87

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

**ARGUMENT**

I.    **Evidence And Argument Concerning Other Civil Cases
Against Trial Defendants Is Irrelevant**

Evidence concerning *other* civil cases making separate allegations against Trial

Defendants does not make any material fact *in this case* more or less probable (other than on

propensity grounds, which is prohibited under FRE 404) and such evidence is therefore

irrelevant under FRE 401.  *See Harrell v. Mayer*, No. 3:22-CV-730, 2026 WL 923616, at *4

(M.D. Pa. Apr. 6, 2026) (granting motion in limine to exclude evidence of other cases: "evidence

of other cases filed against Dauphin County would be irrelevant to whether Mayer used

excessive force in this case and would only serve to prejudice the jury against Mayer"); *Houser

v. Folino*, No. 2:10-cv-00416, 2015 U.S. Dist. LEXIS 154530, at *6-7 (W.D. Pa. Nov. 16, 2015)

(granting motion to exclude as irrelevant other lawsuits against medical defendants); *see also

McLeod v. Parsons Corp.*, 73 Fed. Appx. 846, 854 (6th Cir. 2003) (evidence of other

employment discrimination lawsuits against defendant excluded in part due to lacking

relevance).

II.    **Allowing Evidence And Argument Concerning Other Civil Cases Against Trial
Defendants Would Be Confusing, Prejudicial and Would Waste Time**

Evidence concerning other civil cases against Trial Defendants should also be excluded

under FRE 403 as it may confuse the jury as to the facts at issue in this case, and influence the

jury to base a verdict on the fact that allegations have been made against Trial Defendants by

other plaintiffs and therefore that Trial Defendants must have engaged in similar conduct here.

*Davenport v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 1:15-cv-03751-JMC, 2018 WL 833605,

at *3 (D.S.C. Feb. 13, 2018) (in product liability case against tire manufacturer, "the facts of any

other case involving Defendants, are not admissible because the probative value of the

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

information is substantially outweighed by a danger of unfair prejudice and confusing the jury")) (citation modified); *In re Urethane Antitrust Litig.*, 2016 WL 475339, at *1 (granting Dow's motion *in limine* to preclude plaintiffs from referring to other price-fixing cases involving Dow because "the prejudice that would result from such testimony substantially outweighs any probative value"); *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 1:15-cv-03751-JMC, 2014 WL 505234, at *6 (S.D. W.Va. Feb. 5, 2014) ("evidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403"); *Park W. Radiology*, 675 F. Supp. 2d at 324 ("Any probative value of the References to Prior Disputes is substantially outweighed by the likelihood of unfair prejudice, confusion of the issues, misleading the jury, and waste of time.").

Rule 403 also allows the Court to exclude evidence for which the "probative value is substantially outweighed by a danger of . . . wasting time." Fed. R. Evid. 403. That is particularly applicable here. Given the size of the factual record, the number of witnesses and the number of products at issue, presenting the jury with a full trial record on the material issues concerning the allegations at issue in *this* case will be highly challenging in that limited amount of time. In such circumstances, allowing Humana to present evidence concerning alleged conspiracies in other cases, or to present evidence of allegations of unlawful conduct by Trial Defendants in other civil cases, would constitute a waste of the Court's and parties' time. *See Park W. Radiology*, 675 F. Supp. 2d at 324 (declining to admit evidence of previous cases in part due to waste of time).

## III.    Evidence of Other Civil Cases Brought Against Trial Defendants Is Impermissible Propensity Evidence

Rule 404(b) provides that evidence of other crimes, wrongs or acts is inadmissible unless "the evidence is (1) offered for a proper non-propensity purpose that is at issue in the case; (2)

89

relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *United States v. Caldwell*, 760 F.3d 267, 277-78 (3d Cir. 2014); Fed. R. Evid. 404.  Evidence of other cases brought against Trial Defendants does not meet these criteria: Humana cannot point to a proper non-propensity purpose, such evidence has minimal probative value and it carries a high danger of unfair prejudice.  Such evidence is therefore inadmissible propensity evidence.

IV.     **Evidence of Other Civil Cases Brought Against
        Trial Defendants Is Inadmissible Hearsay**

Courts have routinely found that pleadings, allegations and evidence from other cases are hearsay statements, and therefore inadmissible.  *In re Ethicon*, 2014 WL 505234 at *6 ("evidence of lawsuits is generally considered inadmissible hearsay"); *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (plaintiff "has attempted to introduce a brief summary of claims, lawsuits, and complaints . . . which amounts to nothing more than a summary of allegations by others which constitute hearsay"); *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508-SAS, 2013 WL 1155420, at *7 (S.D.N.Y. Mar. 20, 2013) (excluding "[r]eferences to other lawsuits including their factual allegations and evidence").  Humana should therefore be precluded from presenting such material to the jury.

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

## CONCLUSION

For the foregoing reasons and those demonstrated in this memorandum, Trial Defendants respectfully request that their Omnibus Joint Motions *in Limine* be granted.

Dated: July 22, 2026

Respectfully submitted,

*/s/ Jeffrey C. Bank*
Jeffrey C. Bank
Seth C. Silber
WILSON SONSINI GOODRICH &
ROSATI
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (866) 974-7329
jbank@wsgr.com
ssilber@wsgr.com

Chul Pak
Michael Sommer
WILSON SONSINI GOODRICH &
ROSATI
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
cpak@wsgr.com
msommer@wsgr.com

*Counsel for the Mylan Defendants*

*/s/ Donald W. Hawthorne*
Donald W. Hawthorne
CARTER LEDYARD & MILBURN LLP
28 Liberty Street
New York, NY 10005
Telephone: 212-238-8689
hawthorne@clm.com

*Counsel for Defendant Breckenridge
Pharmaceutical, Inc.*

*/s/ Seth A. Moskowitz*
Seth A. Moskowitz
Sheron Korpus
Seth Davis
KASOWITZ LLP
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
smoskowitz@kasowitz.com
skorpus@kasowitz.com
sdavis@kasowitz.com

*Counsel for Defendants Actavis Elizabeth
LLC, Actavis Holdco U.S., Inc., Actavis
Pharma, Inc., and Teva Pharmaceuticals
USA, Inc.*

*/s/ George G. Gordon*
George G. Gordon
Julia Chapman
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104-2808
Tel: (215) 994-2382
Fax: (215) 944-2222
george.gordon@dechert.com
julia.chapman@dechert.com
D. Brett Kohlhofer
DECHERT LLP
1900 K Street NW
Washington, D.C.
Tel: (202) 261-3349
Fax: (202) 261-3333
d.brett.kohlhofer@dechert.com

*Attorneys for Defendant Lannett Company,
Inc.*

91

**PUBLIC VERSION – FILED WITH REDACTIONS
REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**

*/s/ Brian J. Smith*
Brian J. Smith*
Jordanne M. Steiner
WILSON SONSINI GOODRICH &
ROSATI
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Telephone: (302)502-8417
brian.smith@wsgr.com
jsteiner@wsgr.com
*Admitted only in Illinois & Maine

Angela L. Brown
WILSON SONSINI GOODRICH &
ROSATI
31 West 52nd Street, Fifth Floor
New York, NY 10019
Telephone: (212) 999-5800
Angela.brown@wsgr.com

*Counsel for Defendant Mayne Pharma Inc.*

*/s/ Robin P. Sumner*
Robin P. Sumner
Michael J. Hartman
Melissa Hatch O'Donnell
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750
robin.sumner@troutman.com
michael.hartman@troutman.com
melissa.odonnell@troutman.com

*Attorneys for Defendant Impax Laboratories, LLC*

**PUBLIC VERSION – FILED WITH REDACTIONS**
**REDACTED PURSUANT TO MDL 2724 PROTECTIVE ORDER**