**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br><br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Humana Inc. v. Actavis Elizabeth LLC, et al.*** | **HON. CYNTHIA M. RUFE**<br><br>**18-CV-03299** |

# MEMORANDUM OPINION

**Rufe, J.** **August 19, 2026**

This matter is one case in a multidistrict litigation ("MDL") concerning price-fixing by numerous generic drug manufacturers. Plaintiffs range from individuals to pharmacies, health insurance plans and hospitals. This matter, involving Plaintiff Humana Inc. (Humana) and several defendants,[1] is set to be the MDL's initial bellwether trial. The genesis of this litigation and the broad outline of the complaints that are now at issue have been recounted in prior opinions in this MDL.[2]

---

[1] Several of the Defendants who jointly moved for summary judgment have settled with Humana. The only Defendants remaining in this matter are (1) Actavis Elizabeth LLC, Actavis Holdco U.S., Inc., Actavis Pharma, Inc., and Teva Pharmaceuticals USA, Inc., (2) Mylan, (3) Lannett, (4) Impax Laboratories, LLC.

[2] *See e.g., State AG Litig. v. Actavis Holdco U.S. (In re Generic Pharms. Pricing Antitrust Litig.)*, 394 F. Supp. 3d 509, 514-23 (E.D.Pa. 2019). ˆSee also *Marion Diagnostic Ctr, LLC v. McKesson Corp. (In re Generic Pharms, Pricing Litigation)*, 386 F.Supp. 3d 477 (E.D.Pa. 2019) *In re Generic Pharms, Pricing Litigation* 338 F.Supp. 3d 404 (E.D.Pa., 2018).

Defendants filed a "Joint Motion for Summary Judgment on Damages,"[3] seeking four distinct rulings that require exclusion of evidence Humana plans to present on damages, and pre-trial rulings on offsets from Humana's damages on account of reimbursements or Humana's success in unrelated litigation against another company. The rulings they seek are:

- a 50.8% reduction in Humana's indirect volume of commerce ("VOC") for the Drugs at Issue to exclude the full and unrebutted amount of the government's Medicare Part D payments calculated by Defendant's expert, Dr. Chandra;
- a $360 million set off of any damages award to reflect the full amount of Humana's 2024 recovery from Walgreens;
- at least an 8.5% reduction in Humana's indirect VOC to exclude transactions for which no overcharge was suffered; and
- at least a 28.4% reduction in Humana's indirect VOC to remove the amount of its double-counted direct commerce.

## I. LEGAL STANDARD

This Court in prior memorandum opinions in this MDL has recited the well-known standards for summary judgment.

> A court will award summary judgment on a claim, or part of a claim, where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A fact is 'material' if resolving the dispute over the fact 'might affect the outcome of the suit under the governing [substantive] law.' A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

[3] 18-cv-3299, Doc. No. 768. (Unless otherwise specified, all references to ECF documents are from the 18-cv-3299 docket.) Doc. No. 768 is captioned as a "corrected" memorandum of law supporting the joint summary judgment motion on damages; the original memorandum is docketed at Doc. No. 477.

> In evaluating a summary judgment motion, a court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor. Such a requirement does not mean that all facts must be viewed in favor of the nonmoving party, but only those inferences and assumptions that are reasonable. Further, a court may not weigh the evidence or make credibility determinations. Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. This requirement upholds the underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate. [4]

Further, "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and . . . it should be interpreted in a way that allows it to accomplish this purpose."[5]

---

[4] *In re Generic Pharms. Pricing Litig.*, 2025 U.S.Dist. LEXIS 167372*, *20-*22 (E.D. Pa. 2025) (internal quotations and citations omitted). *See In re Generic Pharms. Pricing Litig.*, 2026 WL 2255575, at *2 (E.D. Pa. 2026); *In re Generic Pharms. Pricing Litig.*, 16-MD-2724, Doc. No. 4779, pp. 4-5; *Connecticut v. Sandoz, Inc.*, 2025 U.S. Dist. LEXIS 214944*, *29-*30 (D. Conn. 2025).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986), *citing* Martin Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 YALE L. J. 745, 752 (1974); David Currie, Thoughts on Directed Verdicts and Summary Judgments, 45 U. CHI. L. REV. 72, 79 (1977).

## II. Discussion

### A. This Court Has Ruled on Humana's and Defendants' Opposing Motions On the Admissibility of Expert Evidence Describing the Effect of Medicare Part D Reimbursements

Defendants assert that this Court should determine, pretrial in a summary judgment ruling, that Humana's claims for drugs purchased for distribution pursuant to Medicare Part D payments be reduced by 50.8%. Distilled to its essentials, Defendants' motion is a critique of experts — Dr. William B. Vogt, Ph.D. and Dr. Richard G. Frank, Ph.D.[6] —Humana states it will offer at trial on the issue of damages. Defendants broadly complain that Drs. Vogt's and Frank's reports on damages fail to account for payments, reimbursements and adjustments Humana received from the federal government for Medicare and other subsidies, and complain of errors and omissions in their reports and deposition testimony.[7] At the same time Defendants filed their summary judgment motion, they filed *Daubert* motions and supporting memoranda to exclude testimony of Dr. Vogt and Dr. Frank.[8] This Court has ruled on those motions, and they guide the ruling on this issue herein.[9]

---

[6] Doc. No. 768, pp. 1-3, 5-11, 15-16.
[7] Doc. No 768, pp. 14-16, 18-21.
[8] Memorandum of Law in Support of Motion to Exclude Testimony of William B. Vogt, Ph.D., Doc. No. 475; Memorandum of Law in Support of Motion to Exclude Testimony of Richard G. Frank, Ph.D., Doc. No. 473. The simultaneous filings of the motions to exclude Humana's expert testimony and the joint summary judgment motion were a function of a previously issued scheduling order.
[9] Memorandum and Opinion on Defendant's Motion to Partially Exclude the Opinions of Richard G. Frank, Doc. No. 860; Memorandum and Opinion on

This Court's recent rulings on the *Daubert* motions seeking exclusion of Dr. Vogt's and Dr. Frank's testimony, and Humana's motion to preclude testimony that the federal government paid for or funded Humana's Medicaid Part D purchases determined what parts of both experts' reports are admissible and therefore resolve the Defendants' joint summary judgment motion's complaints about the experts' proffered testimony on Medicare Part D reimbursements and their effect on damages.[10] That Dr. Vogt did not adjust for reimbursements or other payments Humana received that mitigated or even eliminated harm from Defendants' alleged antitrust actions, this Court generally ruled, did not require limiting his testimony. This Court also ruled that Dr. Frank will not be allowed to testify about many of his findings and conclusions regarding Medicare Part D reimbursements where he offered legal opinions. The ruling also bars either party from offering at trial evidence that the Government paid for or funded Humana's Medicare Part D purchases.[11] Adjustments for government payments for Medicare Part D purchases can, and if necessary will, be assessed by the Court following the jury's determination.[12]

---

Defendants' Motion to Exclude the Opinion Dr. William B. Vogt, Doc. No. 847. The former opinion also adjudicated Humana's motion in limine to preclude evidence that the federal government paid for its Medicare Part D purchases, and reserved that issue for determination by the Court in a post-trial hearing.

[10] See Doc. No. 860, p. 14; Doc. No. 861.

[11] Doc. No. 847, p. 20.

[12] *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1176 (3d Cir. 1993)("[O]ne pursuing antitrust recovery must establish that the damages suffered were caused by the defendant's participation in a scheme repugnant to the antitrust laws. Once causation is determined, however, the actual amount of damages may

This Court, in a prior summary judgment opinion in this MDL, ruled that a plaintiff class was not required to account for how and whether their damages were reduced or mitigated by the action of third parties in order to establish the harm the defendants caused.[13] This Court held, "A plaintiff sustains antitrust injury at the moment they were overcharged, regardless of their ability to later offset those overcharges through damage calculation adjustments."[14] Humana does not dispute the possibility a jury verdict and award of damages in its favor may be subject to offsets following trial.[15]

Moreover, Defendants base their request for a 50.8% reduction in Humana's VOC for the Drugs at Issue in order to exclude "the full and unrebutted amount of the government's Medicare Part D payments calculated by Dr. Chandra" set forth in a table in Dr. Chandra's June 9, 2026, rebuttal report.[16] That table lists 40 drugs and drug formulations. However, on August 7, 2026, Humana informed Defendants and

---

result from a 'reasonable estimate, as long as the jury verdict is not the product of speculation or guess work.'") (citation omitted); *Bonjourno v. Kaiser Aluminum & Chemical Corporation*, 752 F.2d 802, 813 (3d Cir. 1984) ("Once a jury has properly found causation of antitrust injury from unlawful activity, however, the damages in this case may be determined without strict proof of what act caused which injury as long as the damages are not based upon speculation or guesswork.")

[13] *In re Generic Pharms. Pricing Antitrust Litig.*, 2025 U.S. Dist. LEXIS 167372* at *83 (E.D. Pa. 2025).

[14] *Id.* (*citing In re Niaspan Antitrust Litigation*, 464 F. Supp. 3d 678, 711 (E.D. Pa. 2020)).

[15] Doc. No. 645, p. 11.

[16] Doc. No. 768, pp. 8-9; *Id.*, Ex. 6 (June 9, 2026 Supplemental Report of Amitabh Chandra, ¶ 20, pp. 9-10, Table 2).

the Court that it will not seek recovery on many of the drugs in that list.[17] Thus, the 50.8% reduction in Humana's indirect VOC Defendants seek is based on out-of-date information and calculations. This Court cannot grant summary judgment on the calculations in Dr. Chandra's supplemental report.

For the reasons cited above, Defendants' motion for partial summary judgment based on Dr. Chandra's calculations regarding reductions due to Medicare Part D payments will be denied.

**B. Defendants' Have Not Demonstrated That They Are Entitled at Summary Judgment to a $360,000,000 Set-off Due to Humana's Settlement of a Claim Against Walgreens.**

Defendants seek a $360,000,000 set-off against any damage award on account of an arbitration award matter that Humana settled with Walgreens in January 2024.[18] The settlement followed an arbitration award for $572,690,662.[19] Their argument posits that Humana bears the burden of calculating any set-off required by the $360,000,000 recovery.[20] Humana does not argue that some set-off may be required, but rather that the amount of any set-off is a matter for the post-verdict stage.[21]

[17] As of the publishing of this memorandum, the drugs to be litigated as individual conspiracies in the upcoming trial are Baclofen, Benazepril, Clobetasol, Clomipramine, Digoxin, Divalproex, Fluocinonide, Levothyroxine, Lidocaine, Pravastatin, and Theophylline. Other drugs however may be included in allegations of an overarching conspiracy.
[18] Doc. 768, pp. 11-12, 22-23.
[19] Doc. No. 768, Exhibit 13 at p. 72.
[20] *Id.*, p. 23.
[21] Doc. No. 593, p. 15.

Defendants' factual account and argument on this issue is brief, and does not describe in useful detail the allegations that gave rise to the arbitration or the reasons it bears on this lawsuit. Its supporting document is a March 28, 2023, seventy-three-page, single-spaced "Final Award" that awarded Humana $572,690,662 in damages, exclusive of interest.[22] The report notes that Humana's demand for arbitration stated claims for "(1) breach of contract; (2) fraud; (3) negligent misrepresentation; and (4) unjust enrichment."[23] Humana states that the ensuing settlement was based upon "an injury— allegations of civil fraud and breach of contract from overcharges due to Walgreens' inaccurate reporting of drugs in its prescription discount program— that is distinct from the antitrust claims Humana asserts here."[24] Although Defendants included the arbitration award as an exhibit, neither Defendants' motion nor supporting memorandum supply citations to its contents. Defendants state that Humana did not initially disclose the existence of the award, and, when asked for details, refused to disclose them.[25] Defendants do not claim they ever asked this Court to compel the documents or other information in question.[26] Nor does the Court recall such a request.

---

[22] Doc. No. 768, Exhibit 13 at p. 72.
[23] *Id.*, at p. 3.
[24] Doc. No. 593, p. 14.
[25] *Id.*, at pp. 12, 23.
[26] Defendants do not explain what they did to obtain records about the Walgreens settlement after Humana failed to provide it to them. *See generally Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 431 (3d Cir. 1993) ("Even if one assumes that summary judgment would be appropriate [when defendants lack access

In support of their demand for a $360,000,000 set-off, Defendants cite *MCI Communications Corp. v. Am. Tel. & Tel. Co.*[27] This does not help Defendants. The cited portion of *MCI* faults the plaintiff, who won at trial, for not proving all of its losses were due to the defendant's illegal acts. But *MCI* also holds that although a case cannot proceed to a jury if the plaintiff has not established a defendant's responsibility for the harm it suffered, if a plaintiff can establish causation due to the illegal practices of the defendant, a determination of damages will follow. [28] As Defendants fail to explain how anything in the arbitration award absolves them, in part or in full, of *responsibility* for the damages Humana claims it incurred, they have not shown how any money Humana received from Walgreens requires partial summary judgment.[29]

---

to requested documents]. . . , the short answer to this contention is that we cannot find in the record any application for the production of the settlement documents before the argument and decision on the summary judgment motion. Thus, given the record, defendant cannot rely on any such refusal as the basis for holding that the court's ruling constituted error entitling it to a pretrial judgment.").

[27] 708 F.2d 1081 (7th Cir. 1983).

[28] *MCI*, 708 F.2d at 1161-63 ("Once causation of damages has been established, the amount of damages may be determined by a just and reasonable estimate as long as the jury verdict is not the product of speculation or guess work."). *See also Vernon v. Southern Cal. Edison, Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992) (approving of *MCI).*

[29] The brevity of Defendants' arguments does not help their argument either. *Versarge v. Twp. of Clinton,* 984 F.2d 1359, 1370 n.8 (3d Cir. 1993) (vague and amorphous references in the record are insufficient to create a genuine issue of material fact on summary judgment).

### C. The Differing Opinions on How to Calculate Damages, If Any, Resulting from Sales to CVS Is a Matter of How Different Experts Who Will Be Heard at Trial Calculate the Damages, and Therefore Is Not Appropriate for Summary Judgment

Defendants claim Humana seeks damages for sales that did not result in any overcharges. Based on Dr. Chandra's rebuttal report, they claim that Mylan did not increase the price of Clomipramine to CVS, and therefore Humana suffered no damage as a result of any reimbursements or other payments it made as a result of those sales.[30] Dr. Chandra's conclusion that Mylan did not subject CVS to an overcharge on Clomipramine is based on this Court's 2025 opinion in class actions in this MDL involving Direct Payor Plaintiffs ("DPPs") and End-Payor Plaintiffs' ("EPPs") against several defendants, including Mylan.[31] That opinion cannot support, in this case and in determining this motion, that the price CVS paid for Clomipramine was not affected by the Defendants' alleged conspiracy, as Humana was not a party to that litigation. Defendants do not explain how or why Humana is bound by that summary judgment ruling. Though neither party explored it, the Court believes this issue is resolved by application of collateral estoppel rules.

Neither class against which this Court considered summary judgment regarding the Clomipramine sales to CVS included Humana, which, by filing its own lawsuit against Defendants, opted out of both the DPP and EPP classes. When moving for

[30] Doc. No. 768, p. 24.
[31] *In re Generic Pharms. Antitrust Pricing Litig.*, 2025 U.S. Dist. LEXIS 167372* (E.D. Pa. 2025).

summary judgment in that case, Mylan presented evidence showing it did not increase the price CVS paid for Clomipramine. EPPs, though, argued that the price CVS paid for Mylan's Clomipramine may yet have resulted from the overarching conspiracy. This Court found the evidence supporting that claim too sparse to allow that it to proceed to trial.[32] However, in this summary judgment motion, Defendants do not offer any evidence; they merely cite the 2025 ruling against the EPP class.[33] This Court has no basis for determining whether that ruling applied to Humana's transactions with CVS involving Mylan-supplied clomipramine.[34]

Whether a judgment in another case precludes a plaintiff from pursuing a claim against a defendant that benefitted from the judgment is a question of federal law. The doctrine of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate that issue in the earlier case.[35] Collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue;

---

[32] *Id.*, *62-*65.

[33] Doc. No. 786, pp. 23-24. The Defendants cite the ruling, and say nothing else about it.

[34] This Court notes that Mylan individually moved for summary judgment on Humana's claim that it conspired to raise the price of Clomipramine. Doc. No. 489, pp. 21-23. The Defendants' joint motion on damages does not reference or incorporate arguments in that motion.

[35] *Allen v. McCurry*, 449 U.S. 90, 95 (1980) (state court judgments are binding on federal courts in litigation between the same parties when they litigate the same claims in federal court).

and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."[36] As Humana was not a party to this Court's 2025 ruling, the ruling and judgment in that matter does not bind Humana.

Defendants also mischaracterize Humana's position when stating that Humana does not dispute that CVS did not suffer overcharges for Clomipramine. While Humana takes no position on whether CVS suffered overcharges on Mylan's Clomipramine, it does not agree that even if CVS was not overcharged, any reduction in damages is warranted at summary judgment. Dr. Vogt's model for assessing damages includes scenarios such as Mylan not overcharging CVS. In his rebuttal report, Dr. Vogt explained that his model calculated overcharges and damages at the market level. "If any pharmacies did not see a price increase for certain Subject Drugs, that would have effectively dampened the average price increase pharmacies have experienced in the wider market and would therefore be captured in my analysis, which is at the 'market' level.'"[37] In other words, Dr. Vogt's calculations account for whatever price CVS paid for Clomipramine, whether inflated or not. Defendants can express their reservations about Dr. Vogt's analysis of the harm or lack thereof from Mylan's Clomipramine transactions with CVS when cross-examining him. As this Court did not exclude Dr. Vogt's opinion on this point, and Defendants cite no

---

[36] *Purdy v. Zeldes*, 337 F.3d 253, 258 (3d Cir. 2003) *quoting Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997).
[37] Doc. No. 768, Exhibit 1 (February 27, 2026, Rebuttal Expert Report of Dr. William B. Vogt), ¶ 154.

evidence other than Dr. Chandra's report in support of their request for relief, Defendants' motion for partial summary judgment on this issue will be denied.

### D. Defendants Have Not Demonstrated They Are Entitled to a 28.4% Reduction in Humana's VOC on Account of Double-Counted Direct Coverage

Defendants claim, and Humana does not dispute, that Humana is seeking damages on both purchases by its pharmacy and indirect commerce damages sustained by subsidiaries that purchased drugs from Humana.[38] Humana, though, claims, and supports its claims with evidence, that it is pursuing the indirect commerce claims not on its own behalf, but its subsidiaries, who have assigned their claims to Humana.[39] Defendants do not dispute Humana's assertion that the subsidiaries are separate corporate entities entitled on their own to recover indirect damages where state law allows. Also, Defendants do not dispute the authenticity and enforceability of the assignments. Nevertheless, Defendants seek a ruling removing Humana's indirect commerce claims, which Dr. Chandra opines constitutes 28.4% of Humana's potential direct commerce claims recovery.[40]

The assignments grant Humana the right to pursue its subsidiaries' federal, state, and common law claims for purchases of named generic pharmaceuticals. After deducting litigation costs, the net recoveries will be paid to the assignor subsidiaries.

---

[38] Doc. No. 768, p. 25; Doc. No. 593, p. 18.
[39] Doc. No. 593, p. 18; Humana Exhibits PX 1277, 1278 and 1279.
[40] Doc. 768, Ex. 3, Table 18, line 4.

Although Humana might recover damages for both its direct pharmacy purchases and claims paid on behalf of insured customers, when those overlap, the entities that suffered the damages—the subsidiaries—will receive the damages from Humana, less the cost of retrieving them.

The cases Defendants cite in support of their claim that a 28.4% reduction is required do not involve assignments of the indirect purchaser claims. *Kansas v. Utilicorp United, Inc.*,[41] concerned utility companies that supplied gas to customers who brought antitrust charges against a pipeline that supplied gas and other gas production companies. In addition to their direct claims, they brought *parens patriae* claims on behalf of the utilities' customers who suffered overcharges when the utilities, as allowed by state law, passed on the overcharges to them.[42] The Court ruled that the *parens patriae* claims could not be brought pursuant to §4 of the Sherman Act, *inter alia*, because of the prohibition, announced in *Illinois Brick Co. v. Illinois*[43] on multiple recoveries arising from direct and indirect claims.[44] Humana, though, has and relies on an assignment of state claims from its subsidiaries, not an ephemeral relationship rooted in the common law.

---

41 497 U.S. 199 (1990).
42 *Id.*, 497 U.S. at 204-06.
43 431 U.S. 720, 746-47 (1977).
44 *Id.*, 497 U.S. at 212-213.

Humana relies upon *California v. ARC America Corp.*[45] for the proposition that, though indirect claims cannot be brought under federal law, claims based on state laws that do not bar indirect claims may be allowed.[46] Federal antitrust laws do not pre-empt state antitrust law, and federal courts may exercise pendent jurisdiction over them.[47] *Illinois Brick*, which established the rule barring indirect claims in federal antitrust lawsuits,

> was concerned that requiring direct and indirect purchasers to apportion the recovery under a single statute — §4 of the Clayton Act — would result in no one plaintiff having a sufficient incentive to sue under that statute. State indirect purchaser statutes pose no similar risk to the enforcement of the federal law.[48]

Another court succinctly observed, "Duplicative recovery is, in many if not all cases alleging a nationwide conspiracy with both direct and indirect purchaser classes, a necessary consequence that flows from indirect purchaser recovery."[49]

Defendants do not challenge the authenticity of the assignments, nor the authenticity of the corporate structure Humana describes.[50] Therefore, its motion to dismiss the indirect purchaser claims will be denied.

---

[45] 490 U.S. 93 (2024).
[46] *Id.*, at 100-101, 104-05.
[47] *Id.*, at 104.
[48] *California v. Arc America.*, 490 U.S. at 104.
[49] *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F.Supp. 1072, 1093 (N.D. Cal. 2007). *See also*, *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 726 (2017) (agreeing with *Dynamic Random Access Memory*).
[50] Doc. No. 645, 18-19. One of the cases Defendants cite *approves* legitimate assignments of state law claims that a subsidiary of the insurer gave to UnitedHealthCare. As if speaking of this summary judgment in this case, that court

## III. Conclusion

WHEREFORE, for all of the foregoing reasons, Defendants' motion for partial summary judgment on damages is DENIED.

**BY THE COURT:**

**/s/ Hon. Cynthia M. Rufe**

**CYNTHIA M. RUFE, J.**

---

said, "The Court notes that, in their reply, Defendants do not make much of an argument to contest this point." *Staley v. Gilead Scis., Inc.,* 589 F. Supp. 3d 1132, 1144 (N.C. Cal. 2022).