**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*Humana Inc. v. Actavis Elizabeth, LLC, et al.* | HON. CYNTHIA M. RUFE<br><br>2:18-cv-03299 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF HUMANA INC.'S OPPOSITION TO (1) TRIAL DEFENDANTS' OMNIBUS JOINT MOTIONS *IN LIMINE*, (2) TEVA PHARMACEUTICALS USA, INC.'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING TEVA'S DEFERRED PROSECUTION AGREEMENT, AND (3) LANNETT COMPANY, INC.'S MOTION *IN LIMINE* TO PRECLUDE HUMANA FROM INTRODUCING EVIDENCE OF LANNETT'S NEW CORPORATE OWNERSHIP**

**PLAINTIFF HUMANA INC.'S OPPOSITION TO (1) TRIAL DEFENDANTS' OMNIBUS JOINT MOTIONS *IN LIMINE*, (2) TEVA PHARMACEUTICALS USA, INC.'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING TEVA'S DEFERRED PROSECUTION AGREEMENT, AND (3) LANNETT COMPANY, INC.'S MOTION *IN LIMINE* TO PRECLUDE HUMANA FROM INTRODUCING EVIDENCE OF LANNETT'S NEW CORPORATE OWNERSHIP**

**INDEX OF EXHIBITS**

| Opp. Ex. No. | **Description** |
|---|---|
| 1 | Excerpts from the deposition of Erika Jensen taken February 10, 2026 |
| 2 | Declaration of Katarzyna Kozaczuk, U.S. Department of Justice Antitrust Division, dated May 18, 2026 |
| 3 | Excerpts from the deposition of Christopher Bihari v.2, dated June 1, 2023 |
| 4 | Excerpts from the deposition of Anthony Thomassey v.1 dated July 18, 2023 |
| 5 | Excerpt of Memorandum of Interview of Kevin Green by the U.S. Postal Service, Office of the Inspector General, dated September 17, 2019 (GreenK2019-09-17-Redacted-001). |
| 6 | Email dated December 5, 2013 from M. Allen to J. Adams, et al. (LANNETT-CT-0000986) |
| 7 | Email dated January 15, 2015 from L. Short to S. Cadigan, et al. (HER-AS-000002655) |
| 8 | Email dated May 1, 2013 from A. Kellum to C. Pak, et al. (SDZMDL-003359704, Plaintiffs' Depo. Ex. 2501) |
| 9 | Meeting invitation dated August 6, 2014 from P. Krauthauser (RISING-DOJ-0000089, Plaintiffs' Depo Ex. 2527) |
| 10 | Plaintiffs' Deposition Ex. 10888 - Phone Record Rule 1006 Summary Exhibit |
| 11 | Expert Report of Stacy M. Arruda, dated February 27, 2026 |
| 12 | Excerpts from the deposition of Nisha Patel v. 1, dated August 14, 2024 |
| 13 | Excerpts from the deposition of Robert Hoffman, dated July 27, 2022 |
| 14 | Excerpts from the deposition of David Rekenthaler, dated April 9, 2025 |
| 15 | Excerpts from the deposition of James Nesta v.2, dated September 29, 2022 |
| 16 | Excerpts from the deposition of Susan Knoblauch, dated July 26, 2022 |
| 17 | Email dated 10/24/2013 from A. Bedrosian to J. Farber (LANNETT-CT-0238293) |
| 18 | Excerpts from the deposition of Paul Dutra v.1, dated August 28, 2023 |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning FBI Forms FD-302 and USPS OIG interview memoranda. .......... 1

1. The 302s are reliable and admissible into evidence .......... 2

2. The 302s are not prejudicial. .......... 4

3. Humana can use the 302s for impeachment purposes. .......... 5

B. Opposition to Trial Defendants' Joint Motion to preclude Fifth Amendment invocations. 6

C. Opposition to Trial Defendants' Joint Motion to preclude references to government investigations, proceedings, and statements. .......... 8

D. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument about alleged anticompetitive activity involving other generic drugs. .......... 11

1. Trial Defendants' estoppel argument does not support exclusion. .......... 11

2. Evidence concerning related conduct involving other drugs is admissible under Federal Rules of Evidence 401, 403, and 404(b)(2). .......... 11

3. Trial Defendants' hearsay objection is premature and overbroad. .......... 13

E. Opposition to Trial Defendants' Joint Motion to preclude the use of inflammatory or pejorative terms and evidence or argument concerning the general rising costs of prescription drugs or healthcare. .......... 14

F. Opposition to Trial Defendants' Joint Motion to exclude Christopher Bihari's notebooks. .......... 18

1. The Bihari Notebooks are admissible as business records. .......... 19

2. The Bihari Notebooks are subject to the co-conspirator exception. .......... 24

3. The Bihari Notebooks are admissible as non-hearsay to demonstrate that Mr. Bihari held a particular belief or understanding at the time of writing regardless of the truth of the matter asserted. .......... 27

4. The Bihari Notebooks should not be excluded because they may qualify as recorded recollections or may be properly used to refresh Mr. Bihari's recollection. .......... 29

G. Opposition to Trial Defendants' Joint Motion to preclude Humana from presenting incorrect, misleading or inflammatory information about damages. .......... 31

H. Opposition to Trial Defendants' Joint Motion to preclude Plaintiff from arguing that trial Defendants' or their employees' participation in trade association and industry events was unlawful or provided opportunities to engage in unlawful conduct. ........ 35

I. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning impact on Humana plans and beneficiaries. ........ 37

J. Opposition to Trial Defendants' Joint Motion to preclude eliciting legal conclusions from fact witnesses. ........ 40

K. Opposition to Trial Defendants' Joint Motion to preclude Plaintiff's experts from reciting a factual narrative. ........ 42

L. Opposition to Trial Defendants' Joint Motion to preclude references to discovery disputes and resolution. ........ 48

1. Defendants improperly conflate collateral discovery disputes with independently relevant trial evidence. ........ 48

2. The challenged evidence is relevant to Humana's circumstantial proof and the evaluation of witness testimony. ........ 49

3. Rule 37(e) does not require exclusion of independently relevant evidence concerning communications and unavailable messages. ........ 51

4. Trial Defendants' generalized FRE 403 concerns do not justify categorical exclusion. ........ 53

M. Opposition to Trial Defendants' Joint Motion to preclude an adverse inference based on the absence of any Defense witnesses. ........ 54

N. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning current and former employee compensation and wealth. ........ 55

O. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning other civil cases brought against Trial Defendants. ........ 57

P. Opposition to Defendant Lannett Company, Inc.'s Motion to preclude Humana from introducing evidence of Lannett's new corporate ownership. ........ 58

Q. Opposition to Defendant Teva Pharmaceuticals USA, Inc.'s Motion to preclude evidence and argument concerning Teva's Deferred Prosecution Agreement. ........ 59

III. CONCLUSION ........ 61

## TABLE OF AUTHORITIES

**Cases**

*999 v. C.I.T. Corp.*,
776 F.2d 866 (9th Cir. 1985) ........ 60

*Apotex, Inc. v. Cephalon, Inc.*,
No. 2:06-cv-2768, 2017 WL 2362400 (E.D. Pa. May 31, 2017) ........ 41

*Baxter* v. *Palmigiano*,
425 U.S. 308 (1976) ........ 6

*BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*,
631 F. Supp. 3d 76 (S.D.N.Y. 2022) ........ 59

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ........ 41

*Bistrian v. Levi*,
448 F. Supp. 3d 454 (E.D. Pa. 2020) ........ 51, 52

*Bradley v. Pittsburgh Bd. of Educ.*,
913 F.2d 1064 (3d Cir. 1990) ........ 40, 57, 58

*Brand, LLC*,
775 F. Supp. 3d 563 (M.D. Pa. 2024) ........ 13

*Breidor v. Sears, Roebuck & Co.*,
722 F.2d 1134 (3d Cir. 1983) ........ 31

*Castillo v. Stepien*,
Civ. No. 05-1073, 2009 WL 4142725 (D.N.J. Nov. 24, 2009) ........ 10

*Coleman v. Home Depot, Inc.*,
306 F.3d 1333 (3d Cir. 2002) ........ 60

*Condus v. Howard Sav. Bank*,
986 F. Supp. 914 (D.N.J. 1997) ........ 23

*Connecticut v. Sandoz*,
No. 3:20-cv-00802, 2025 WL 3470502 (D. Conn. Dec. 3, 2025) ........ 24

*Dandy v. Ethicon, Inc.*,
No. CV20-431 (MAS) (DEA), 2023 WL 2714072 (D.N.J. Mar. 30, 2023) ........ 1, 32, 39

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........ 43

*Davis v. Healthcare Servs. Grp., Inc.*,
No. 16-2401, 2018 WL 11484946 (E.D. Pa. Nov. 30, 2018) .................................................. 51

*Doe v. N.Y.C. Dep't of Soc. Servs.*,
649 F.2d 134 (2d Cir. 1981)............................................................................................ 35

*Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*,
No. 08-CV-00578-WJM-CBS, 2012 WL 452272 (D. Colo. Feb. 13, 2012)........................... 16

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*,
No. CIVA05-6042(JBS),2008 WL 4126602 (D.N.J. Aug. 27, 2008) ..................................... 12

*Equal Emp. Opportunity Comm'n v. Proctor Fin., Inc.*,
644 F. Supp. 3d 400 (E.D. Mich. 2022).......................................................................... 39

*Evans v. United States*,
No. 15-1839 2017 WL 11674410 n.1 (E.D. Pa. Nov. 2, 2017) ............................................... 28

*Fast v. GoDaddy.com LLC*,
340 F.R.D. 326 (D. Ariz. 2022) ...................................................................................... 52

*FTC v. RGC Advances, LLC*,
695 F. Supp. 3d 368 (S.D.N.Y. 2023)............................................................................... 6

*Garvey v. Dickinson Coll.*,
763 F. Supp. 799 (M.D. Pa. 1991) ................................................................................... 18

*GN Netcom, Inc. v. Plantronics, Inc.*,
930 F.3d 76 (3d Cir. 2019).............................................................................................. 53

*Goodman v. Pa. Tpk. Comm'n*,
293 F.3d 655 (3d Cir. 2002)............................................................................................ 52

*Grayson v. Williams*,
256 F.2d 61 (10th Cir. 1958) ........................................................................................... 33

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*,
No. 3:11-CV-268 JD, 2016 WL 10706086 (N.D. Ind. Oct. 28, 2016) .................................... 56

*Highland Capital Mgmt., L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y 2005)................................................................................. 44

*Hosp. Television Inc. v. Wells Television Inc.*,
462 F.2d 417 (8th Cir. 1972) ........................................................................................... 23

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999)............................................................................................ 41

*In re Domestic Drywall Antitrust Litig.*,
163 F. Supp. 3d 175 (E.D. Pa. 2016) ........................................................................ 36

*In re Enron Corp. Sec., Derivative & "ERISA*" Litig.,
491 F. Supp. 2d 690 (S.D. Tex. 2007) ...................................................................... 10

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004)...................................................................... 12, 24, 25, 49

*In re Generic Pharms. Pricing Antitrust Litig.*,
16-MD-2774, 2023 WL 2233685 (E.D. Pa. Feb. 27, 2023) ....................................... 11

*In re Generic Pharms. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) ........................................................................ 36

*In re Generic Pharms. Pricing Antitrust Litig.*,
394 F. Supp. 3d 509 (E.D. Pa. 2019) ........................................................................ 24

*In re Generic Pharms. Pricing Antitrust Litig.*,
No. 16-CM-27241, 2025 WL 2483981 (E.D. Pa. Aug. 27, 2025)............................................ 9

*In re Generic Pharms. Pricing Antitrust Litig.*,
No. 16-md-2724, 2024 WL 4980784 (E.D. Pa. Dec. 3, 2024) ................................................ 43

*In re HIV Antitrust Litig.*,
No. 19-CV-02573-EMC, 2023 WL 5670808 (N.D. Cal. Mar. 19, 2023)................................ 15

*In re HIV Antitrust Litig.*,
No. 19-cv-2573-EMC, 2023 WL 3603732 (N.D. Cal. May 23, 2023).................................... 31

*In re Intuniv Antirust Litig.*,
No. 16-CV-12396-ADB, 2021 WL 10362709 (D. Mass. Mar. 3, 2021)........................... 15, 38

*In re Japanese Elec. Prod. Antitrust Litig.*,
723 F.2d 238 (3d Cir. 1983)........................................................................... 20, 21, 22

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Litig.*,
509 F. Supp. 3d 116 (D.N.J. 2020) ........................................................................... 31

*In re Loestrin 24 Fe Antitrust Litig.*,
No. 1:13-MD-2472 WES, 2019 WL 13257216 (D.R.I. Dec. 6, 2019).................................... 17

*In re Mushroom Direct Purchaser Antitrust Litig.*,
No. 06-0620, 2015 WL 5767415 (E.D. Pa. July 29, 2015) ..................................................... 43

*In re Namenda Direct Purchaser Antitrust Litigation*,
No. 15 Civ. 7488 (CM), 2019 WL 6242128 (S.D.N.Y., 2019) ......................................... 17, 37

*In re Paoli R.R.Yard PCB Litig.*,
916 F.2d 829 (3d Cir. 1990)........................................................................................ 18, 48

*In re Pork Antitrust Litig.*,
781 F. Supp. 3d 758 (D. Minn. 2025)........................................................................... 35

*In re Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2017 WL 5177757 (E.D. Pa. Nov. 7, 2017)........................................ 43

*In re Urethane Antitrust Litig.*,
No. 04-1616-JWL, 2013 WL 100250 (D. Kan. Jan. 8, 2013) ............................................ 7

*In re: Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543 (JMF), 2015 WL 9165341 (S.D.N.Y. Dec. 16, 2015) ................................ 60

*Jacques v. Clean-Up Grp., Inc.*,
96 F.3d 506 (1st Cir. 1996)........................................................................................ 38

*Kedra v. Schroeter*,
876 F.3d 424 (3d Cir. 2017)........................................................................................ 10

*Krys v. Aaron*,
112 F. Supp. 3d 181 (D.N.J. 2015)................................................................................ 44

*Larochelle v. Wilmac Corp.*,
769 F. App'x 57 (3d Cir. 2019) ....................................................................................... 4

*Leonard v. Stemtech Health Scis., Inc.*,
981 F. Supp. 2d 273 (D. Del. 2013)......................................................................... passim

*Macaluso v. Apple Inc.*,
No. CV 21-1361, 2023 WL 4685965 (E.D. Pa. July 21, 2023)........................................ 43

*McDermott v. Party City Corp.*,
11 F. Supp. 2d 612 (E.D. Pa. 1998)............................................................................... 33

*McKenna v. City of Philadelphia*,
304 F. App'x 89 (3d Cir. 2008) ..................................................................................... 11

*Merisant Co. v. McNeil Nutritionals, LLC*,
242 F.R.D. 303 (E.D. Pa. 2007)..................................................................................... 48

*Moore v. United States*,
344 F.2d 558 (D.C. Cir. 1965)....................................................................................... 54

*Mozingo v. Oil States Energy Servs., LLC.*,
341 F. Supp. 3d 534 (W.D. Pa. 2018).................................................................... 53, 54

*Nezowy v. U.S.*,
723 F.2d 1120 (3d Cir. 1983)........................................................................................ 7

*Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.*,
No. 05-CV-1887 (DMC), 2009 WL 3754170 ................................................................ 17, 37

*Penfield v. Venuti*,
589 F. Supp. 250 (D. Conn. 1984)................................................................................ 6

*Pennsylvania State Univ. v. Vintage Brand, LLC*,
755 F. Supp. 3d 563 (M.D. Pa. 2024)........................................................................ 33

*Pineda v. Ford Motor Co.*,
520 F.3d 237 (3d Cir. 2008)......................................................................................... 43

*Pressley v. Mack Prop. Mgmt.*,
No. CV-25-4817-KSM, 2026 WL 147432 (E.D. Pa. Jan. 20, 2026)......................................... 11

*Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*,
808 F.2d 271 (3d Cir. 1986)......................................................................................... 6, 7

*Regassa v. United States*,
613 F. Supp. 3d 880 (M.D. Pa. 2020)........................................................................ 13, 33

*Schneider ex rel. Est. of Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003)......................................................................................... 43

*Schulz v. Pennsylvania R.R. Co.*,
350 U.S. 523 (1956)....................................................................................................... 36

*SEC v. Cassano*,
99 Civ. 3822 (LAK), 2000 WL 1512617 (S.D.N.Y. Oct. 11, 2000) ......................................... 6

*SEC v. Dibella*,
No. 04 CV, 1342, 2007 WL 1395105 (D. Conn. May 8, 2007) ................................................ 6

*Sikkelee v. Precision Airmotive Corp.*,
522 F. Supp. 3d 120 (M.D. Pa. 2021)........................................................................ 33

*Sill Corp. v. United States*,
343 F.2d 411 (10th Cir. 1965) ...................................................................................... 33

*Skillz Platform Inc. v. AviaGames Inc.*,
No. 21-cv-02436-BLF, 2023 WL 8438738 (N.D. Cal. Dec. 5, 2023)...................................... 56

*Smith v. Piedmont Airlines, Inc.*,
728 F. Supp. 914 (S.D.N.Y. 1989) ................................................................................. 54

*Thompson v. Glenmede Trust Co.*,
No. 92-5233, 1996 WL 529693 (E.D. Pa. Sept. 17, 1996) ..................................................... 49

*U.S. v. Boyce*,
849 F.2d 833 (3d Cir. 1988)....................................................................................................... 3

*U.S. v. Edwards*,
792 F.3d 355 (3d Cir. 2015)....................................................................................................... 4

*U.S. v. Finley*,
726 F.3d 483 (3d Cir. 2013)....................................................................................................... 5

*U.S. v. Heatherly*,
985 F.3d 254 (3d Cir. 2021)....................................................................................................... 5

*U.S. v. Johnson*,
No. 1:21-cr-39-RJC-U, 2026 WL 2001915 (W.D. Pa. July 10, 2026) ...................................... 5

*U.S. v. Lee*,
612 F.3d 170 (3d Cir. 2010)....................................................................................................... 4

*U.S. v. Lloyd*,
566 F.3d 341 (3d Cir. 2009)..................................................................................................... 29

*U.S. v. McCarthy*,
301 F.2d 796 (3d Cir. 1962)....................................................................................................... 5

*U.S. v. Nacrelli*,
468 F. Supp. 241 (E.D. Pa. 1979), *aff'd*, 614 F.2d 771 (3d Cir. 1980)...................................... 5

*United States v. Onyenso*,
No. 12-602 CCC, 2013 WL 5322686 (D.N.J. Sept. 20, 2013) ................................................ 19

*U.S. v. Palumbo*,
639 F.2d 123 (3d Cir. 1981)....................................................................................................... 3

*U.S. v. Rasmussen*,
790 F.2d 55 (8th Cir. 1986) ........................................................................................................ 3

*U.S. v. Rogers*,
549 F.2d 490 (8th Cir. 1976) ...................................................................................................... 5

*U.S. v. Stratton*,
779 F.2d 820 (2d Cir.1985)......................................................................................................... 4

*United States v. $70,150.00 in U.S. Currency*,
No. 1:02-CV-00874, 2009 WL 3614871 (S.D. Ohio Oct. 28, 2009) ...................................... 10

*United States v. Ammar*,
714 F.2d 238 (3d Cir. 1983)........................................................................................ 26

*United States v. Archie*,
No. CR 16-517, 2020 WL 4463044 (E.D. Pa. Aug. 4, 2020)................................................. 54

*United States v. Blackwell*,
954 F. Supp. 944 (D.N.J. 1997) ........................................................................................ 13

*United States v. Casoni*,
950 F.2d 893 (3d Cir. 1991)........................................................................................ 23

*United States v. Cerone*,
830 F.2d 938 (8th Cir. 1987) ........................................................................................ 26

*United States v. Console*,
13 F.3d 641 (3d Cir. 1993)........................................................................................ 23

*United States v. Curtis*,
344 F.3d 1057 (10th Cir. 2003) ........................................................................................ 18

*United States v. Dodge*,
No. 6:17-CR-323, 2024 WL 2099376 (W.D. La. Jan. 31, 2024) ............................................ 54

*United States v. Figueroa*,
818 F.2d 1020 (1st Cir. 1987)........................................................................................ 27

*United States v. Furst*,
886 F.2d 558 (3d Cir.1989)........................................................................................ 19

*United States v. Gold*,
743 F.2d 800 (11th Cir. 1984) ........................................................................................ 33

*United States v. Gonzalez*,
905 F.3d 165 (3d Cir. 2018)........................................................................................ 27

*United States v. Hill*,
309 F. Supp. 3d 266 (E.D. Pa. 2018)........................................................................................ 38

*United States v. Hyde*,
448 F.2d 815 (5th Cir. 1971) ........................................................................................ 22

*United States v. Jessamy*,
464 F. Supp. 3d 671 (M.D. Pa. 2020)........................................................................................ 38

*United States v. Kaiser*,
609 F.3d 556 (2d Cir. 2010)........................................................................................ 20

*United States v. Leo*,
941 F.2d 181 (3d Cir. 1991) ........ 41

*United States v. McMahon*,
938 F.2d 1501 (1st Cir. 1991) ........ 38

*United States v. Misle Bus & Equip. Co.*,
967 F. 2d 1227 (8th Cir. 1992) ........ 12

*United States v. Mitchell*,
365 F.3d 215 (3d Cir. 2004) ........ 43

*United States v. Mitchell*,
No. 2:09cr105, 2013 WL 12202656 (W.D. Pa. Sept. 27, 2013) ........ 13

*United States v. Ortiz*,
182 F. Supp. 2d 443 (E.D. Pa. 2000) ........ 19

*United States v. Patrick*,
959 F.2d 991 (D.C. Cir. 1992) ........ 23

*United States v. Porat*,
No. CR 21-170, 2021 WL 5139979 (E.D. Pa. Nov. 4, 2021) ........ 55

*United States v. Provenzano*,
620 F.2d 985 (3d Cir. 1980) ........ 24

*United States v. Ramsey*,
785 F.2d 184 (7th Cir. 1986) ........ 23

*United States v. Rayapureddy*,
Cr. No. 22-285, 2024 WL 278622 (W.D. Pa. Jan. 25, 2024) ........ 23

*United States v. Savage*,
No. 7-550-03, 2012 WL 5866068 (E.D. Pa. Nov. 20, 2012) ........ 24

*United States v. Tartaglione*,
228 F. Supp. 3d 402 (E.D. Pa. 2017) ........ 38

*United States v. Tse*,
375 F.3d 148 (1st Cir. 2004) ........ 38

*United States v. Turner*,
718 F.3d 226 (3d Cir. 2013) ........ 24

*United States v. Wall*,
389 F.3d 457 (5th Cir. 2004) ........ 54

*United States v Collare*,
No. 22-1551, 2023 WL 2524451 (3d Cir. Mar. 15, 2023)....................................................... 29

*United States v DeSimone*,
699 F.3d 113 (1st Cir. 2012)............................................................................................. 27

*Univac Dental Co. v. Dentsply Int'l Inc.*,
268 F.R.D. 190 (M.D. Pa. 2010)....................................................................................... 12

*Veranda Beach Club Ltd. P'ship v. W. Sur. Co.*,
936 F.2d 1364 (1st Cir. 1991)........................................................................................... 38

*Walsh v. Fusion Japanese Steakhouse, Inc.*,
585 F. Supp. 3d 766 (W.D. Pa. 2022)................................................................................ 32

*Waters v. Genesis Health Ventures, Inc.*,
400 F. Supp. 2d 814 (E.D. Pa. 2005)................................................................................. 49

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*,
89 F.4th 430 (3d Cir. 2023).............................................................................................. 36

**Rules**

Fed. R. Civ. P. 37 *et. seq.*.............................................................................. passim

Fed. R. Evid. 612 ............................................................................................................. 30

Fed. R. Evid. 703 ............................................................................................................. 46

Fed. R. Evid. 801 ............................................................................................................... 4

Fed. R. Evid. 801(c)......................................................................................................... 27

Fed. R. Evid. 801(c)(2) .................................................................................................... 26

Fed. R. Evid. 801(d)(2)(E)......................................................................................... 23, 24

Fed. R. Evid. 803 ............................................................................................................. 22

Fed. R. Evid. 803(5)................................................................................................ 19, 29, 30

Fed. R. Evid. 803(6).................................................................................................. 2, 19, 22

Fed. R. Evid. 803(8)............................................................................................................ 2

Fed. R. Evid. 807 ............................................................................................................... 2

Fed. R. Evid. 404(b)(2).................................................................................................... 12

Fed. R. Evid. 702 .......... 43

Fed. R. Evid. 804(b)(3) .......... 3

Federal Rules of Evidence 401, 403, and 404(b)(2) .......... passim

Fed. R. Evid. 404(b) .......... 4, 12

Fed. R. Evid. 613 .......... 5

Fed. R. Evid. 403 .......... passim

**Regulations**

29 CFR § 18.803(a)(6) .......... 19

# I. INTRODUCTION[1]

Plaintiff Humana Inc. ("Humana") respectfully requests this Court deny Trial Defendants' Joint Motions *in Limine*[2], Teva's Motion *in Limine* to preclude evidence and argument concerning Teva's Deferred Prosecution Agreement[3], and Lannett's Motion *in Limine* to preclude Humana from introducing evidence of Lannett's new corporate ownership[4] for the reasons expressed below and to the extent that Defendants' requests are overly broad.[5]

# II. ARGUMENT

## A. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning FBI Forms FD-302 and USPS OIG interview memoranda.

Trial Defendants seek to preclude use, admission into evidence, and/or demonstration or publication to the jury of the memoranda of witnesses ("302s") interviewed by the Federal Bureau of Investigation ("FBI"), or by agents of the U.S. Postal Service Office of Inspector General ("OIG") further to investigations conducted by the Department of Justice ("DOJ"). Defendants argue that the 302s (i) are inherently unreliable; (ii) are unfairly prejudicial; and (iii)

---

[1] All exhibits cited herein as "Opp. Ex." are to the Declaration of Noelle Ruggiero in Support of Humana's Opposition to Trial Defendants' Omnibus Joint Motions *in Limine*, Teva's Motion *in Limine* to preclude evidence and argument concerning Teva's Deferred Prosecution Agreement, and Lannett's Motion *in Limine* to preclude Humana from introducing evidence of Lannett's new corporate ownership. To the extent Defendants' exhibits are cited they are listed as "Ds' Ex." and are to the Declaration of Seth A. Moskowitz (ECF No. 799-1).

[2] ECF No. 830 (Trial Defendants' Memorandum of Law in Support of Their Omnibus Joint Motions *in Limine*) ("Trial Defendants' Omnibus Joint Motions *In Limine* Br.").

[3] ECF No. 823 (Memorandum of Law in Support of the Motion *in Limine* of Teva Pharmaceuticals USA, Inc. to Preclude Evidence and Argument Concerning Teva's Deferred Prosecution Agreement).

[4] ECF No. 793 (Lannett Company, Inc.'s Motion *in Limine* to Preclude Humana from Introducing Evidence of Lannett's New Corporate Ownership).

[5] Courts in this Circuit agree that motions *in limine* that "exclude broad categories of evidence should rarely be employed" as they are devoid of context and "too vague and overbroad to warrant a ruling." *Dandy v. Ethicon, Inc.*, No. CV20-431 (MAS) (DEA), 2023 WL 2714072, *16-17 (D.N.J. Mar. 30, 2023); *see also id.* at *17 ("In neither her initial briefing nor her supplemental briefing, however, does Plaintiff detail exactly which evidence or testimony she wishes to exclude within these categories; instead, in a two-page brief, she seeks to categorically exclude all such evidence or testimony within these categories.").

cannot be used for impeachment purposes because the 302s are not statements of the witnesses themselves. Trial Defendants' motion to exclude the use of 302s at trial on a wholesale basis, at this juncture, is entirely improper. None of their arguments have merit and Trial Defendants' Motion *in Limine* should be denied in its entirety.

**1. The 302s are reliable and admissible into evidence.**

Trial Defendants go to great lengths to refute the argument that Humana can introduce the 302s through one of three hearsay exceptions: the business records exception (Fed. R. Evid. 803(6)), the public records exception (Fed. R. Evid. 803(8)), and the residual exception (Fed. R. Evid. 807). Trial Defendants further argue that Humana must "establish the accuracy and reliability" of the 302s, claiming that it has not included any FBI or OIG agents on its witness list. But these arguments fail because (i) the hearsay exceptions identified are not the only means by which Humana can seek to admit the 302s into evidence, and (ii) the accuracy and reliability of the 302s have been established already.

As a threshold matter, Trial Defendants' contention that 302s are inherently unreliable directly contradicts statements made by Trial Defendants' own joint expert witness, ex-FBI agent Erika Jensen, who testified that "FBI agents are trained on how to write FBI 302s and that they're to be an accurate representation of the facts that are being documented."[6] In addition, Ms. Jensen testified that she believed 302s were "considered evidentiary" and that they are "like a statement of fact."[7] Ms. Jensen further testified that having "reliable" information in 302s is "always the intent."[8] Trial Defendants cannot have it both ways.

---

[6] Opp. Ex. 1 (Jensen) at 155:19-22.
[7] Opp. Ex. 1 (Jensen) at 155:3-6.
[8] Opp. Ex. 1 (Jensen) at 29:9-18.

Trial Defendants overlook the content of the declarations concerning the 302s identified on Humana's exhibit list. For example, the Declaration of Katarzyna Kozaczuk, dated May 18, 2026, states that "it was routine practice in the Division's criminal enforcement program to memorialize the sum and substance of meetings and calls" and that "the notes and memoranda were prepared either on or near the dates of the meetings and calls."[9] This squarely addresses Trial Defendants' concerns regarding accuracy and reliability and further satisfies the requirements under the Federal Rules. The declarations obviate the need for foundational testimony from an FBI or OIG agent at trial, but to the extent it is needed, Humana has reserved the right to add individual(s) to its witness list to authenticate or otherwise lay the foundation for the admission of evidence.

There are concrete instances where Humana may seek to offer the 302s as evidence, all of which would be admissible under the Federal Rules. For example, statements made by Tony Polman—a former sales representative from Perrigo who is now deceased—fall squarely within Federal Rule of Evidence ("FRE") 804(b)(3), which would permit the 302s as admissible evidence. "Rule 804(b)(3) may be invoked to admit declarations against interest by a third party which inculpate the accused." *U.S. v. Boyce*, 849 F.2d 833, 836 (3d Cir. 1988) (citation omitted). Such statements may constitute admissible evidence "if (1) the declarant is unavailable as a witness, and (2) the statement is so far contrary to his pecuniary, proprietary or penal interest that 'a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" *Boyce*, 849 F.2d at 836 citing Fed. R. Evid. 804(b)(3). The Third Circuit and other courts have identified a third requirement that the statement's trustworthiness and reliability be corroborated by the "totality of 'circumstances'" in the case. *U.S. v. Palumbo*, 639

[9] *See, e.g.*, Opp. Ex. 2 (Decl. of Katarzyna Kozaczuk) at 3.

F.2d 123, 127 (3d Cir. 1981); *see also U.S. v. Rasmussen*, 790 F.2d 55, 56 (8th Cir. 1986); *U.S. v. Stratton*, 779 F.2d 820, 828 (2d Cir.1985) (same). Here, Mr. Polman was interviewed by federal agents who memorialized those interviews—pursuant to their routine practices and procedures—and many of his statements were contrary to his self-interest. The "totality of circumstances" permits Humana to use Mr. Polman's statements from the 302s at trial and to seek their admission into evidence.

To the extent Humana seeks to admit the 302s into evidence on cross-examination of Trial Defendants' witnesses, there are numerous cases in the Third Circuit that have permitted third party statements as admissible evidence—for reasons other than the "truth of the matter asserted." Fed. R. Evid. 801. *See e.g., Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 65 (3d Cir. 2019) (district court correctly admitted third party statements from employment investigation as non-hearsay as "statements [were] 'to explain why'" and they were offered "for the statements' effect on the listener," not for their truth); *U.S. v. Edwards*, 792 F.3d 355, 357 n.2 (3d Cir. 2015) (explanatory testimony should have been permitted "for the statements' effect on the listener;" it was admissible for non-hearsay purpose). So too can the 302s be admitted under Fed. R. Evid. 404(b), which permits out-of-court statements into evidence where they show a declarant's state of mind, including motive and intent. *See e.g., U.S. v. Lee*, 612 F.3d 170, 186 (3d Cir. 2010) (statements made in interview "admissible to prove intent, knowledge and/or the absence of mistake").

**2. The 302s are not prejudicial.**

Trial Defendants argue that evidence of a criminal investigation can render a 302 memorandum prejudicial. But that is an analysis under FRE 403, and evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." To be

clear, "Rule 403 bars not all prejudice, but only unfair prejudice . . . [i]t does not protect defendants from devastating evidence in general." *U.S. v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021) (internal citation omitted). When a district court faces a Rule 403 objection, it must balance these two competing factors. *See U.S. v. Finley*, 726 F.3d 483, 490-491 (3d Cir. 2013).

This Circuit has permitted use of specific portions of 302 memoranda for cross-examination purposes at trial. *See U.S. v. Johnson*, No. 1:21-cr-39-RJC-U, 2026 WL 2001915, at *19 (W.D. Pa. July 10, 2026) (recognizing that different portions of 302 memoranda may be treated differently based upon their relevance and potential for prejudice). Accordingly, the use of 302 memoranda is permissible, and Humana should not be precluded from using them at trial.

**3. Humana can use the 302s for impeachment purposes.**

This Court has held that 302s can be used as a basis for impeachment under Fed. R. Evid. 613. *See U.S. v. Nacrelli*, 468 F. Supp. 241, 253-254 (E.D. Pa. 1979), *aff'd*, 614 F.2d 771 (3d Cir. 1980). The Court examined admissibility, as established in *U.S. v. Rogers*, 549 F.2d 490 (8th Cir. 1976), following the four requirements the Eighth Circuit held must be met before such statements may be introduced: (1) the statements must be inconsistent; (2) the inconsistency must be sufficiently relevant to the case; (3) the requirements of Fed. R. Evid. 613 must be met; and (4) the jury should be instructed that the testimony offered is for impeachment only. *See Nacrelli*, 468 F. Supp. at 254.

As held by the Third Circuit in *U.S. v. McCarthy*, 301 F.2d 796, 799 (3d Cir. 1962):

> "Flat contradiction between the witness' testimony and the version of the events given in his report is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony."

Established Third Circuit precedent clearly permits Humana to use 302s for impeachment purposes at trial.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* A to preclude evidence and argument concerning FBI Forms FD-302 and USPS OIG interview memoranda.

### B. Opposition to Trial Defendants' Joint Motion to preclude Fifth Amendment invocations.

Trial Defendants' Motion *in Limine* B—to preclude Fifth Amendment invocations—should be denied. Humana has filed a Motion *in Limine* to allow admission of such invocations, even where they have been subsequently revoked, and incorporates that motion as the opposition to Trial Defendants' mirror image motion.

In summary, both Supreme Court and Third Circuit precedent allow the jury to draw adverse inferences in a civil case against a party where a witness associated with that party has invoked the Fifth Amendment.[10] Furthermore, such an adverse inference can also be drawn as to that party's alleged co-conspirator.[11] Finally, Judge Shea has recently held that such an adverse inference can be drawn based on a Fifth Amendment invocation that is subsequently revoked.[12] Trial Defendants do not mention, much less attempt to distinguish, Judge Shea's order.

---

[10] *See Baxter* v. *Palmigiano*, 425 U.S. 308, 318 (1976); *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 (3d Cir. 1986).

[11] *See, e.g., FTC v. RGC Advances, LLC*, 695 F. Supp. 3d 368, 383 (S.D.N.Y. 2023).

[12] *See Connecticut et al., v. Sandoz, Inc. et al.*, 3:20-cv-00802-MPS, ECF No. 1459 at 7-8, n. 3 (D. Conn. July 8, 2026) ("…courts may draw adverse inferences from Fifth Amendment invocations even when the witness later withdraws the invocation."); *SEC v. Cassano*, 99 Civ. 3822 (LAK), 2000 WL 1512617, at *2 n. 1 (S.D.N.Y. Oct. 11, 2000) ("The fact that…these witnesses subsequently have waived the privilege in this action goes to the weight of the [adverse] inference, not to the propriety of drawing it."); *see also Penfield v. Venuti*, 589 F. Supp. 250, 256 (D. Conn. 1984) (Cabranes, J.) (allowing jury to draw adverse inference against defendant after he invoked the privilege at first deposition but later testified at subsequent deposition, noting that "[a] trier of fact could also infer that his later responses were a more recent fabrication"); *SEC v. Dibella*, No. 04 CV 1342, 2007 WL 1395105, at *4 (D. Conn. May 8, 2007)

The cases cited by Trial Defendants are readily distinguishable. First, *Nezowy v. U.S.* is a criminal case and was decided before *Rad Services.*[13] The constitutional concerns from allowing an adverse inference to be drawn from a Fifth Amendment invocation are much stronger in a criminal case than a civil case. Second, the court in *In re Urethane Antitrust Litig.* disallowed plaintiffs from using the Fifth Amendment invocations of *Bayer* employees against *Dow*, its alleged co-conspirator.[14] Here, Humana primarily seeks to use each witness' Fifth Amendment invocation against that witness' current or former employer, which is expressly allowed by *Rad Services.*[15] *In re Urethane Antitrust Litig.* is also distinguishable as to co-conspirators because there, the court found that "these witnesses have [no] actual interest in the outcome of the claims against Dow, particularly because .... all claims against Bayer have been settled."[16] Here, by contrast, the employer or former employer of each witness that has invoked the Fifth Amendment still faces claims.

Trial Defendants also claim that Rule 403 precludes such evidence. Again, *Rad Services* refutes this argument. There, the Third Circuit held that Rule 403 did not preclude evidence of Fifth Amendment invocations where other circumstantial evidence supported the adverse inference to be drawn from the invocation.[17] Here, the jury will hear ample direct and circumstantial evidence tying each of the witnesses who have invoked the Fifth Amendment to

---

(allowing jury to draw adverse inference against defendant who invoked the privilege at three investigative interviews but later waived the privilege.") (other citations omitted).

[13] *Nezowy v. U.S.*, 723 F.2d 1120 (3d Cir. 1983).

[14] *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 100250, at *2 (D. Kan. Jan. 8, 2013).

[15] *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 275 ("nothing forbids the imputing to a corporation the silence of its personnel" and "the mere fact that the witness no longer works for the corporate party should not preclude as evidence his invocation of the Fifth Amendment.").

[16] *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 100250, at *2 (D. Kan. Jan. 8, 2013).

[17] *Rad Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 274-277, 280-281 (3d Cir. 1986).

the drug-specific conspiracy or conspiracies in which they were involved and the overarching conspiracy.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* B to preclude Fifth Amendment invocations.

### C. Opposition to Trial Defendants' Joint Motion to preclude references to government investigations, proceedings, and statements.

Trial Defendants' Motion *in Limine* C—regarding evidence of government investigations, proceedings, and statements—should be denied. Trial Defendants have put government investigations, proceedings, and statements directly at issue by arguing: (1) that Humana's claims are barred by the statute of limitations; and (2) that the cessation of allegedly conspiratorial activities and reduction in prices of the drugs at issue are evidence that no conspiracy existed. Evidence relating to government investigations, proceedings, and statements is relevant to those issues and the probative value of such evidence far outweighs the prejudicial effect. Such evidence is also relevant to liability because, among other things, investigations by the U.S. government led to three guilty pleas for criminal antitrust violations relating to price-fixing of generic drugs, including one drug at issue in Humana's bellwether trial. Admissions by parties or co-conspirators that they violated the antitrust laws are among the most pertinent evidence in a case where a jury must decide if there was a conspiracy to violate the antitrust laws.

First, Trial Defendants have argued that the statute of limitations bars Humana's claims. As set forth in the briefing on Trial Defendants' summary judgment motion on that issue,[18] the timing and scope of governmental investigations and litigation relating to the same generic price-

[18] *See generally*, ECF No. 622 (Humana's Opp. to Ds Mot. For Summ. J. on Statute of Limitations).

fixing conspiracy at issue here are essential to deciding the statute of limitations issue. Among other things, the details of the State Attorney General ("State AG") complaints are highly relevant to when Humana knew or should have known of its claims. The first AG complaint filed on December 15, 2016, alleged price-fixing only as to two drugs, Doxycycline DR and Glyburide, and did not reference an overarching conspiracy. The overarching conspiracy was first referenced in the Proposed Consolidated Amended Complaint filed on October 31, 2017. This complaint also added thirteen additional drugs, including a number of drugs at issue in Humana's bellwether. Humana filed its initial complaint in this matter on August 3, 2018. Humana is entitled to argue to the jury that it could not have known of its claims until the State AGs' Consolidated Amended Complaint.

Second, Trial Defendants and their experts have argued that the fact that conspiratorial communications ceased at certain times or that prices of the generic drugs at issue decreased are evidence either that the alleged conspiracies never existed or that Trial Defendants are only liable for damages up to the time of the cessation of conspiratorial communications or price increases.[19] Humana is entitled to respond to this argument with evidence that certain publicized events in 2014 through 2016 caused Trial Defendants to cease their conspiratorial activities and in some cases destroy evidence, including: (1) the commencement of the Connecticut Attorney General's investigation in mid-2014, which became public in 2015; (2) the commencement of an investigation by Congress in 2014, which led to letters requesting information from 14 generic drug companies, including three remaining Defendants, in October 2014; and (3) the commencement of a federal criminal antitrust investigation, which led to the issuance of

[19] *See In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-CM-27241, 2025 WL 2483981, at *17 (E.D. Pa. Aug. 27, 2025) (rejecting Mylan's argument that Plaintiffs lacked evidence of a clomipramine conspiracy from 2014 through 2018).

subpoenas to generic drug companies, including three remaining Defendants, starting in late 2014, the execution of search warrants against individuals and companies in the generics industry in early 2016, and indictments against Jeffrey Glazer and Jason Malek of Heritage in late 2016. This evidence is highly relevant to explain why Defendants' conduct ceased and the prices of the generic drugs at issue decreased such that its probative value outweighs its potential for prejudice.

Humana's use of evidence regarding government investigations and proceedings to disprove Trial Defendants' defenses based on the statute of limitations and cessation of conduct does not implicate the hearsay rule. Humana does not offer such evidence to prove the truth of the matters asserted in the government proceedings, but rather to prove the effect that the disclosure of such proceedings had on Humana's knowledge of its claims and on Trial Defendants' change of conduct, which contributed to lowering prices.

Finally, the guilty pleas arising from the U.S. investigations are relevant evidence of liability in this case. Armando Kellum pleaded guilty to criminal antitrust violations relating to Clobetasol, a drug at issue in this case. And Jason Malek and Jeffrey Glazer pleaded guilty to criminal antitrust violations. Guilty pleas are admissible in a civil case arising from related facts.[20] This rule applies where the individual that pleaded guilty is a non-party.[21]

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* C to preclude references to government investigations, proceedings, and statements.

---

[20] *See Kedra v. Schroeter*, 876 F.3d 424, 443 n.14 (3d Cir. 2017) (guilty plea constitutes an admission as to all facts in the indictment); *Castillo v. Stepien*, Civ. No. 05-1073, 2009 WL 4142725, at *11 (D.N.J. Nov. 24, 2009) ("A guilty plea is admissible in a subsequent civil action as an admission.").

[21] *In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 491 F. Supp. 2d 690, 703 (S.D. Tex. 2007) (concluding that nonparties' guilty pleas were admissible against a party under Rule 803(22) as exceptions to the rule against hearsay, although not preclusive against that party); *United States v. $70,150.00 in U.S. Currency*, No. 1:02-CV-00874, 2009 WL 3614871, at *4 (S.D. Ohio Oct. 28, 2009) (holding the same and collecting similar cases).

**D. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument about alleged anticompetitive activity involving other generic drugs.**

**1. Trial Defendants' estoppel argument does not support exclusion.**

Trial Defendants' argument that Humana should be estopped from relying on evidence involving drugs outside of *Humana I* because Humana previously opposed Defendants' motion to dismiss on claim-splitting grounds fails. The purpose of claim-splitting is to ensure that plaintiffs do not use duplicative complaints to expand procedural rights, circumvent amendment rules, or receive duplicative recovery.[22] Claim-splitting is not meant to create any evidentiary prohibition—it simply allows the cases to proceed simultaneously and separately rather than being dismissed or consolidated.

Any evidentiary issues are governed by the Federal Rules of Evidence, which, as discussed in further detail below, permit evidence and argument about alleged anticompetitive activity involving other generic drugs.

**2. Evidence concerning related conduct involving other drugs is admissible under Federal Rules of Evidence 401, 403, and 404(b)(2).**

The Court has requested briefing on this issue and Humana expects this issue will be resolved in connection with that briefing rather than in this motion. Nonetheless, evidence concerning related conduct involving other drugs is relevant to *Humana I* under FRE 401.[23]

---

[22] *Pressley v. Mack Prop. Mgmt.*, No. CV-25-4817-KSM, 2026 WL 147432 (E.D. Pa. Jan. 20, 2026) (quoting *McKenna v. City of Philadelphia*, 304 F. App'x 89, 91 (3d Cir. 2008)); *see also In re Generic Pharms. Pricing Antitrust Litig.*, 16-MD-2774, 2023 WL 2233685, at *4 n.45 (E.D. Pa. Feb. 27, 2023) (holding that the argument as to the risks of duplicative recovery on the basis of improper claim-splitting is premature).

[23] *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 378 (3d Cir. 2004) (holding that evidence of defendants' involvement in conspiracy of similar glass product in different market was relevant).

Further, such evidence cannot reach the high bar of exclusion under Rule 403 because there is no risk for unfair prejudice, confusion of the issues, or waste of time.[24]

Federal Rule of Evidence 404(b)(2) permits evidence of any other crime, wrong, or act for proper non-propensity purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Courts have consistently admitted evidence of defendants' participation in similar conspiracies as proof of motive, intent, and lack of mistake under Fed. R. Evid. 404(b)(2).[25] For example, evidence that Jim Nesta of Mylan repeatedly communicated with competitors at the time he was approving price increases on drugs they sold or when Mylan was sending out notices of those price increases to its customers is permitted under FRE 404(b)(2) to demonstrate that when Mr. Nesta did the same thing on drugs at issue in *Humana I* (including Benazepril HCTZ, Clomipramine and Levothyroxine), it was intentional and planned—not a mistake, accident or coincidence.[26]

Here, evidence of Trial Defendants' involvement in conspiracies related to drugs not at issue in this case can also be used to prove intent and knowledge. For example, Trial Defendants' use of the terms "fair share," "playing nice in the sandbox," "rational" and "responsible"—even when used in the context of their actions with respect to other drugs—is relevant to demonstrate

---

[24] Fed. R. Evid. 403; *see Univac Dental Co. v. Dentsply Int'l Inc.*, 268 F.R.D. 190 (M.D. Pa. 2010) (emphasizing that disputes concerning Fed. R. Evid. 403 should be resolved in favor of admission).

[25] *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 377-378 (3d Cir. 2004) (agreeing with District Court that evidence of defendants' involvement in conspiracy of similar glass product in different market constituted "other bad acts" evidence under Fed. R. of Evid. 404(b)); *see also Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, No. CIVA05-6042(JBS), 2008 WL 4126602, at *6 (D.N.J. Aug. 27, 2008) (holding that similar cartel activities undertaken in a similar marketplace may be probative of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake); *see also United States v. Misle Bus & Equip. Co.*, 967 F. 2d 1227, 1233-34 (8th Cir. 1992) (holding that evidence that defendants engaged in separate bid-rigging and market allocation scheme was probative of defendants' knowledge and general intent of conspiracy at issue).

[26] This same logic applies to several other defense witnesses in this case who engaged in patterns of systematic, repeated collusion with competitors, including Michael Aigner (Mylan), Nisha Patel (Teva) and Kevin Green (Teva and Zydus), among others.

that Trial Defendants adopted and understood the broader agreement alleged by Humana in this case. Humana must demonstrate Trial Defendants' understanding of these broad principles, and evidence related to drugs not at issue can show that Trial Defendants were aware of an overarching conspiracy to fix prices and allocate markets, as well as their intent to enter into the overarching conspiracy.

### 3. Trial Defendants' hearsay objection is premature and overbroad.

Trial Defendants' argument that the Court should exclude ***any*** hearsay statements Humana seeks to admit (regarding other drugs) as coconspirator statements is premature and overbroad. Courts in the Third Circuit have routinely deferred ruling on motions *in limine* that target broad classes of evidence, holding that such motions should be deferred when trial context would provide necessary clarity.[27] Here, evidence regarding conduct on other drugs might at times be offered for non-hearsay purposes (including 404(b) non-propensity evidence, discussed above), or may satisfy other hearsay exceptions including the business-records exception to the hearsay rule, among others. Specifically, regarding coconspirator statements, courts have held that admissibility of these statements is properly dealt with at trial, denying motions *in limine* to exclude coconspirator hearsay statements because the court was unable to rule until specific evidence was offered.[28]

Out of the "potentially as many as 1,000" exhibits and "many hours of deposition testimony" Trial Defendants claim relate to drugs and matters not at issue in this case, Trial

---

[27] *See Pennsylvania State Univ. v. Vintage Brand, LLC*, 775 F. Supp. 3d 563, 573 (M.D. Pa. 2024) (citing *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)); *see also Regassa v. United States*, 613 F. Supp. 3d 880, 884 (M.D. Pa. 2020).

[28] *United States v. Mitchell*, No. 2:09cr105, 2013 WL 12202656, at *2 (W.D. Pa. Sept. 27, 2013) (reserving final judgment until trial and after review of specific requested testimony); *see also United States v. Blackwell*, 954 F. Supp. 944 (D.N.J. 1997) (denying a request for a pretrial evidentiary hearing and concluding that the admissibility of statements by a coconspirator may properly be addressed at trial).

Defendants point to only four phone-record examples concerning calls that they anticipate Humana will argue were made in furtherance of the alleged conspiracy at trial.[29] Providing a small number of examples is not sufficient to overcome the fact that Trial Defendants' request to exclude ***any*** hearsay statements Humana seeks to admit as coconspirator statements is an overbroad one. Further, each of these examples lacks helpful context, such as witness testimony on the subject matter, which would provide clarity on the evidence Humana is seeking to admit.

Lastly, Trial Defendants request that Humana not be allowed to "speculate" that the phone calls must be related to the conspiracies alleged in *Humana I* without supporting evidence. Trial Defendants themselves concede that it is "permissible for counsel to argue inferences" when such inferences "flow logically and convincingly from the facts in the record."[30] Trial Defendants' argument, again, targets a broad class of evidence that should be deferred to trial.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* D to preclude evidence and argument about alleged anticompetitive activity involving other generic drugs.

**E. Opposition to Trial Defendants' Joint Motion to preclude the use of inflammatory or pejorative terms and evidence or argument concerning the general rising costs of prescription drugs or healthcare.**

Trial Defendants' Motion *in Limine* E is an attempt to inappropriately censor and "word police" Humana at trial. In doing so, Trial Defendants severely overreach and ignore the record evidence in this case. For example, actions of some co-conspirators have already been found to be "criminal." And "[redacted]" is not a term Humana invented, but rather a nickname used among former Sandoz employees and referenced by former Sandoz employee Armando Kellum

---

[29] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 30-31; 38-39.
[30] *United States v. Garcia*, 490 F. App'x 463, 465 (3d Cir. 2012).

in his sworn (and designated) deposition testimony.[31] Furthermore, a ruling to generally gag Humana at trial is inappropriate at the motion *in limine* stage where it is devoid of any context, and can be more fairly decided through real-time objections during trial, where any potentially prejudicial statements can be assessed in the proper context.

*In re HIV Antitrust Litig.*, No. 19-CV-02573-EMC, 2023 WL 5670808, at *5 (N.D. Cal. Mar. 19, 2023), a recently tried pharmaceutical drug overcharge case, is instructive. There, the Court mostly denied a similar motion seeking to prevent plaintiffs' counsel from pejoratively characterizing certain facts, holding that "[t]he Court should not be the word police" but could provide some guidance. *Id*. There the court restricted plaintiffs' counsel from using words like "criminal" to refer to conduct that had not been before a criminal court, but permitted terms such as "payoff," "pay for delay," and "secret or private agreement" that directly related to the conduct at-issue in the case. *Id*. In contrast, in this case, three individuals pled *guilty* to *criminal* antitrust violations arising from the same basic facts as will be tried in this bellwether. Such conduct is criminal and is necessarily "immoral" and "unethical"—there is no reason Humana's counsel should be prevented from using such terms where they accurately describe Trial Defendants' conduct. *See In re Intuniv Antirust Litig.*, No. 16-CV-12396-ADB, 2021 WL 10362709, at *15 (D. Mass. Mar. 3, 2021) (allowing use of terms including "bribe" and "kickback" while being "watchful" of the use of those terms to disallow pejorative characterizations of counsel: "litigants are generally afforded an opportunity to present their own theories of the case, including by choosing the language they use, and should not be prohibited

[31] Ds' Ex. E-1 (Kellum) at 27:01–27:12.

from using terminology that opposing parties find unflattering.").[32] Furthermore, Humana will offer evidence that Mylan witnesses engaged in conduct that violated Mylan's company policies. Thus, whether certain individuals' conduct was "unethical" as defined by some of Trial Defendants' own standards will be directly at issue. [33]

Trial Defendants also seek to censor words such as "Big Pharma" or "big drug companies," referring to defense counsel as "drug company lawyers," and describing this case as an especially "large" antitrust case. But those terms are all accurate.[34] They are also relevant as Trial Defendants' size goes to their ability to collude and convince other companies to collude and fix prices. And the magnitude of this case is relevant to the damages Humana seeks as well as to the deterrent effect of a jury verdict in this case.

Similarly, as Trial Defendants' motion establishes, terms such as "[redacted]," "[redacted]," "[redacted]," or "[redacted]" were used by witnesses in this case.[35] Whether, for example, [redacted]

---

[32] *See also Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, No. 08-CV-00578-WJM-CBS, 2012 WL 452272, at *2–3 (D. Colo. Feb. 13, 2012) (denying motion *in limine* to prevent use of the term kickback: "If, as Plaintiff alleges, the payments to Ellis were secret transactions, they fall within the dictionary definition of 'kickback' ….").

[33] In its omnibus Motion *in Limine* brief, Humana moved to preclude both inflammatory evidence concerning health insurance companies, including the denial of health insurance claims, and evidence regarding Humana's size and financial condition. ECF No. 824 (Humana's Omnibus Motion *in Limine* Br.) at 12-15. This is distinguishable from Trial Defendants' motion because Humana's conduct is not the conduct at issue, Trial Defendants' conduct is. Not only are such inflammatory statements regarding insurance companies inaccurate and exaggerated, such statements are not tied to the evidence in this case. On the other hand, the very words Trial Defendants seek to exclude, such as "[redacted]" and "criminal," are tied directly to the evidence and Trial Defendants' conduct in this case. Trial Defendants' motion is further distinguishable from Humana's motion to preclude evidence regarding Humana's size and financial condition because such evidence is not relevant as it pertains to Humana. Evidence pertaining to Trial Defendants' size, however, is relevant as evidence of Trial Defendants' size goes to their ability to collude.

[34] While Humana does not anticipate using the specific term "Big Pharma," to limit Humana's use of the remaining words or similar alternatives amounts to a gag order and is premature and lacking any proper context at this time.

[35] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 41-43.

is for the jury to decide—it is certainly not a basis to preclude any use of the term *before* trial starts. Indeed, none of the cases cited by Trial Defendants relating to pejorative terms discuss terms used by witnesses, instead precluding potential characterizations made by parties themselves in speaking to the jury. ***See, e.g.***, ***In re Loestrin 24 Fe Antitrust Litig***., No. 1:13-MD-2472 WES, 2019 WL 13257216, at *4 (D.R.I. Dec. 6, 2019) ("Use of pejorative terms (by either side) intended to inflame the jury will be met with strong corrective directives and cautionary instructions.").

Finally, Humana's counsel should not be precluded from generally referencing rising drug prices or rising health care costs.[36] Context regarding the industry is helpful to the jury's understanding of the case, as has been found in several other pharmaceutical antitrust cases. ***See, e.g. In re Namenda Direct Purchaser Antitrust Litigation***, No. 15 Civ. 7488 (CM), 2019 WL 6242128, at *6 (S.D.N.Y., 2019) ("The motion to exclude evidence of general drug pricing trends in the pharmaceutical industry is DENIED [because] [t]his evidence 'will likely aid in the jury in understanding the context in which the case arises' and is 'background information.'" (citing *Novartis Pharm. Corp. v. Teva Pharm. USA, Inc*., No. 05-CV-1887 (DMC), 2009 WL 3754170, at *4, No. 05-cv-1887 (D.N.J. Nov. 5, 2009)); ***see also In re Solodyn Antitrust Litig***., No. 1:14-md-2503 (D. Mass. 2018) (electronic order), ECF No. 1089 (denying in part motion "to exclude evidence of rising costs of healthcare and pharmaceuticals [and] policy arguments regarding the pharmaceutical industry" because "some context is appropriate and that these

---

[36] Humana has affirmatively moved to preclude evidence and argument that Humana "passed-on" overcharges. ECF No. 824 (Humana's Omnibus Motions *in Limine* Br.) at 28-31. Unlike the general background information discussed herein, evidence of, or suggestions that, Humana "passed-on" overcharges relating to the drugs at issue is categorically prohibited in the antitrust context, is irrelevant, and would confuse the jury.

topics in and of themselves are not unduly prejudicial," so long as "the amount of 'background' evidence [does not] overcome evidence bearing more directly on the claims here.").

Furthermore, "[e]vidence should not be excluded pursuant to a motion *in limine*, unless it is clearly inadmissible on all potential grounds." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). As explained above, the characterizations which Trial Defendants seek to exclude are true, relevant and/or part of the record evidence. To the extent that Trial Defendants suggest such references are inadmissible under Rule 403, those rulings "are best made at the time of trial when the court has all relevant considerations before it." *Garvey v. Dickinson Coll.*, 763 F. Supp. 799, 802 (M.D. Pa. 1991); *see also In re Paoli R.R.Yard PCB Litig.,* 916 F.2d 829, 859 (3d Cir. 1990) ("[P]retrial Rule 403 exclusions should rarely be granted.... [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence."). Even if this evidence were to be considered at this stage, "[e]vidence is not unfairly prejudicial simply because it is damaging to an opponent's case. Rather, the evidence must have 'an undue tendency to suggest decision on an improper basis….'" *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir. 2003).

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* E to preclude the use of inflammatory or pejorative terms, and to preclude evidence or argument concerning the general rising costs of prescription drugs or health care.

### F. Opposition to Trial Defendants' Joint Motion to exclude Christopher Bihari's notebooks.

Trial Defendants' motion to exclude Mr. Bihari's two work notebooks ("the Bihari Notebooks") which contain six years of contemporaneously and regularly recorded business notes that he used in performing his sales job, should be denied because the notebooks are

admissible as business records. Moreover, the recorded statements within them are nonhearsay statements that establish Mr. Bihari's knowledge and understanding at the time they were recorded. And there should be no pretrial blanket ruling which excludes *any* use of the notebooks because the notebooks—written between ten and sixteen years ago—qualify as recorded recollections under Fed. R. Evid. 803(5) and, at a minimum, can properly be used to refresh Mr. Bihari's recollection under Fed. R. Evid. 612.

### 1. The Bihari Notebooks are admissible as business records.

The Bihari Notebooks are admissible under the business records exception. Fed. R. Evid. 803(6). The business records exception makes admissible:

> "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."[37]

The Third Circuit provides that the elements a qualified witness (such as the custodian, Mr. Bihari), must establish are: "(1) [that] the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded the statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the record in the regular course of the business activity; and (4) that such records were regularly kept by the business." *United States v. Furst*, 886 F.2d 558, 571 (3d Cir.1989); *see also United States v. Ortiz*, 182 F. Supp. 2d 443, 452-53 (E.D. Pa. 2000) (drug organization's notebook entries of narcotics sales

[37] 29 CFR § 18.803(a)(6).

qualified under the business records exception). "Rule 803(6) favors admissibility if the evidence has any probative value whatsoever." *United States v. Onyenso*, CRIM. 12-602 CCC, 2013 WL 5322686, at *1 (D.N.J. Sept. 20, 2013) (citing *United States v. Kaiser,* 609 F.3d 556, 574 (2d Cir. 2010); *In re Japanese Elec. Prod. Antitrust Litig.,* 723 F.2d 238, 289 (3d Cir. 1983)).

Here, the Bihari Notebooks qualify as business records. At his deposition, Mr. Bihari laid the foundation for the business records exception. First, he testified that he took handwritten notes as part of his business duties at Sandoz, primarily in his notebook, but sometimes on a notepad or Post-it Notes prior to contemporaneously transferring the notes over to his notebook. He testified that he took handwritten notes at meetings, including internal and customer meetings.[38] He also testified that he took notes of phone calls, including calls with competitors. He testified that he took notes on [redacted][39] And he testified that he took those types of notes in the Bihari Notebooks, which he testified were in his handwriting.[40]

Second, Mr. Bihari testified that it was his general practice to take notes at or about the time of a meeting or call "[redacted]."[41]

Third, Mr. Bihari testified that he made notes in the regular course of business, taking his notebook with him "[redacted]" when he traveled on business,[42] and recording notes at the majority of his meetings.[43]

---

[38] Opp. Ex. 3 (Bihari) at 554:15-555:20.
[39] Opp. Ex. 3 (Bihari) at 555:24-556:5.
[40] Opp. Ex. 3 (Bihari) at 560:2-4.
[41] Opp. Ex. 3 (Bihari) at 556:19-557:4.
[42] Opp. Ex. 3 (Bihari) at 558:5-8.
[43] Opp. Ex. 3 (Bihari) at 556:25-557:4.

Fourth, Mr. Bihari regularly kept his notebooks in his capacity as a Sandoz employee. He testified that [redacted][44] As such, Mr. Bihari's notebooks clearly fall within the business records exception.

Trial Defendants' arguments fail. Trial Defendants' claim that "there is no indication the notebook entries were made at the time of the occurrences" is wrong; Mr. Bihari testified to this and the dated entries themselves provide evidence of when they were recorded, and even contain facts corroborated by contemporaneous documents.[45] *See In re Japanese Elec. Products Antitrust Litig.*, 723 F.2d 238, 296 (3d Cir. 1983), *rev'd sub nom. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ("We know from the face of the document that it was prepared shortly after the meeting.").

Trial Defendants' attack on the regularity of Mr. Bihari's notetaking practices is contrary to law, including the Third Circuit's instruction that "the regular practice requirement should be generously construed to favor admission." *In re Japanese Elec. Prods.*, 723 F.2d at 289. In *Japanese Electronic Products*, the Third Circuit found that exclusion of an employee's notebooks reflecting meeting notes, "kept as a regular practice," and "deal[ing] with meetings which were regularly conducted business activity," satisfied the business records exception. *Id.* 290-91. It furthermore rejected the district court's exclusion of a diary in which its author only recorded "information relevant to his business responsibilities," *id.* at 292, noting the "evidence of regularity in entries and of reliance on the diary by Mr. Yamamoto in carrying out his duties at Hitachi." *Id*. Nor is the question whether the *company* requires its employees to keep such

---

[44] Opp. Ex. 3 (Bihari) at 557:12-17.

[45] Opp. Ex. 3 (Bihari) at 556:19-557:4; *see also, e.g.*, ECF No. 706 (Humana's Detwiler *Daubert* Reply Br.) at 9-10 (statements in notebook independently corroborated by contemporaneous emails and files).

notes,[46] but rather whether it is the ***author***'s regular practice, ***i.e.***, if it is "kept in the course of a regularly conducted business activity." Fed. R. Evid. 803(6); Advisory Cmmt. Notes to Fed. R. Evid. 803 ("The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them" and "'the course of a regularly conducted activity' as capturing the essential basis of the hearsay exception"); *see also United States v. Hyde*, 448 F.2d 815, 846 (5th Cir. 1971) (finding notes admissible where "Branum testified that he regularly kept informal notes of transactions on note cards in such situations" because "[m]aking memoranda of the details of a complicated oral business . . . would be necessary for the regular operations of the company.").

In addition to Mr. Bihari's testimony, the contents of the notebooks themselves establish this regularity, as they largely deal with rote business information Mr. Bihari needed to know to fulfill his job duties as a salesman. These include the details of calls and meetings laying out price points, the customers to which bids for business should be transmitted, and logistics such as backorders and timing of product deliveries. This information was essential to his profession and something he testified to, and clearly did, rely upon in the regular course, and throughout, his employment at Sandoz.

Nor does the frequency with which Mr. Bihari wrote entries provide grounds to undercut the notebooks' status as business records, as "it may well be that a record of a single meeting satisfied the regular practice requirement if the business in question routinely records other important meetings." *In re Japanese Elec. Prods.*, 723 F.2d at 289. Mr. Bihari's recording of

[46] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 53.

"[redacted]" information essential for his performance of his job from a "[redacted]" of his meetings suffices.

Trial Defendants' remaining potshots likewise fail. Their assertion that Mr. Bihari did not contemporaneously record entries in the notebook is contrary to Mr. Bihari's testimony, *see supra*, and reflects an erroneous view of the contemporaneity requirement, which requires only that something be recorded at or near the time of receiving the recorded information. *See e.g.*, *Condus v. Howard Sav. Bank*, 986 F. Supp. 914, 918 (D.N.J. 1997) (report completed within two months of investigation sufficient). Trial Defendants' allegations of "suspicious" circumstances nonsensically imagine a world in which Mr. Bihari was able not only to obtain confidential intel from competitors spread across multiple years but to reconstruct it, as well as 6 years of business information, *years* after he had left Sandoz and thus had no access to his Sandoz documents. Lastly, that Mr. Bihari updated his notes when he learned more information increases their indicia of reliability. *See e.g.*, *United States v. Console*, 13 F.3d 641, 657 (3d Cir. 1993) ("'it is sufficient if it is shown that ... [the] standard practice was to verify the information provided'" (quoting *United States v. Patrick*, 959 F.2d 991, 1001 (D.C. Cir. 1992))).[47]

---

[47] Trial Defendants' cases are inapposite. In *United States v. Rayapureddy*, Cr. No. 22-285, 2024 WL 278622, at *1 (W.D. Pa. Jan. 25, 2024) the relevant illegal kickbacks stemming from an insider trading scheme at one company were recorded in a diary of transactions for the writer's *other business*. In *United States v. Casoni*, 950 F.2d 893, 912-13 (3d Cir. 1991), the Third Circuit affirmed exclusion of a *proffer* written by an attorney. The notes in *United States v. Ramsey*, 785 F.2d 184, 192 (7th Cir. 1986), were "prompted by his desire to record his dealings with" the fraudulent company, whereas Mr. Bihari's notebooks span six years and contain regular business and competitive intel obtained pursuant to unlawful agreements. In *Hosp. Television Inc. v. Wells Television Inc.*, the Court excluded handwritten notes where the author did not testify at trial and "the effort to introduce the diary was to avoid placing [the author] on the stand and risking [] adverse testimony." *Hosp. Television Inc. v. Wells Television Inc.*, 462 F.2d 417, 420-21 (8th Cir. 1972).

**2. The Bihari Notebooks are subject to the co-conspirator exception.[48]**

Trial Defendants' motion should be denied because the Bihari Notebooks are or are likely to be admissible under the co-conspirator exception to hearsay. "Federal Rule of Evidence 801(d)(2)(E) provides that a statement by a party's coconspirator during and in furtherance of the conspiracy is not hearsay if it is offered against that party." *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013) (internal quotation marks omitted). "In order for an out-of-court statement to be admissible pursuant to Rule 801(d)(2)(E), the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 375 (3d Cir. 2004) (internal quotation marks and citation omitted).

To *admit* evidence, the quantity of evidence used to prove a conspiracy need not be great. The Third Circuit Court of Appeals "has held that the trial court's determination need only be supported by 'slight evidence.'" *United States v. Savage*, No. 7-550-03, 2012 WL 5866068, at *2 (E.D. Pa. Nov. 20, 2012) (quoting *United States v. Provenzano*, 620 F.2d 985, 999 (3d Cir. 1980)). Here, where Humana need only demonstrate that Trial Defendants' motion is premature, evidence that it may be able to establish "slight" evidence suffices.

The Bihari Notebooks will likely meet the requirements of the co-conspirator exception to hearsay. First, a wealth of evidence shows that Trial Defendants entered into individual and

---

[48] Trial Defendants concede the premature nature of their improper motion to exclude the *entirety* of the Bihari Notebooks without reference to the specific facts of individual statements by acknowledging that "the parties will propose a pre-trial process to determine admissibility of specific statements that Humana intends to admit under the co-conspirator hearsay exclusion of Fed. R. Evid. 801(d)(2)(E)." *See* ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 55 n.36.

overarching conspiracies[49] that furthered and complemented each other.[50] Thus, Mr. Bihari's statements related to individual conspiracies subject to the overarching conspiracy were made in furtherance of Trial Defendants' overarching conspiracy, making the statements admissible against all Defendants, regardless of whether made to a Defendant or regarding a drug a particular Defendant sold. And at the very least, Sandoz conspired with the following Trial Defendants on the following individual drugs, providing alternative bases for the admission of statements related to these individual conspiracies for all Defendants alleged to have participated in that conspiracy: (1) Mylan, on Clomipramine, Benazepril HCTZ, and Levothyroxine; (2) Lannett, on Levothyroxine; (3) Teva, on Fluocinonide; and (4) Actavis, on Clobetasol and Desonide Ointment.[51] Thus Mr. Bihari's written statements suffice.[52] Third, the relevant statements were made in the course of the conspiracy because they all were made during the relevant time period. *See e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa. Oct. 31, 2019), ECF No. 2034 at 40 (finding all statements "dated" within the relevant time period sufficient).

---

[49] *See generally*, ECF No. 619 (Humana's Opp. to Defs.' Mot. for Summ. J. on Overarching Conspiracy) (Trial Defendants and Sandoz joined an overarching conspiracy); ECF No. 617 (Humana's Opp. to Defs.' Individual Mot. for Summ. J.) (Sandoz conspired with Trial Defendants on numerous individual drug conspiracies).

[50] *See In re Generic Pharms. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 515-517 (E.D. Pa. 2019) (individual conspiracies and overarching conspiracy alleged to be complementary and reinforcing); *Connecticut v. Sandoz*, No. 3:20-cv-00802, 2025 WL 3470502, at *17-19 (D. Conn. Dec. 3, 2025) (same).

[51] *See generally*, ECF No. 617 (Humana's Opp. to Defs.' Individual Mot. for Summ. J.) (Sandoz conspired with Trial Defendants on numerous individual drug conspiracies).

[52] Even *arguendo*, if any statements in the notebook could colorably be classified as statements of Bihari's *co-conspirators* (double hearsay) rather than his own (e.g., notes accompanied with the initials "MB", which Bihari has testified refer to statements obtained from Mitch Blashinsky, *see* Opp. Ex. 3 (Bihari) at 657:13-659:13), such statements would also necessarily qualify under the co-conspirator exception for the same reasons as Bihari's recording of the same would. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 2:08-md-2002 (E.D. Pa. Oct. 31, 2019), ECF No. 2034 at 58 (finding author's notes of what two meeting participants said were made in furtherance of the conspiracy without separate analysis).

Fourth, Mr. Bihari's statements in his notebooks were made in furtherance of the conspiracy because they memorialize communications with co-conspirators or record intel received from co-conspirators in furtherance of both the overarching and individual conspiracies. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 372-76 (3d Cir. 2004) (recognizing that statements in "notes that purportedly memorialize conversations" between conspirators can satisfy this requirement); *In re Processed Egg Prods. Antitrust Litig.*, 08-md-2002 (E.D. Pa. Oct. 31, 2019), ECF No. 2034-1 (concluding that notes and records of the alleged conspiracy and communications "made to conduct the business of the conspiracy" satisfied the "in furtherance" prong "even if not distributed"); *United States v. Cerone*, 830 F.2d 938, 949 (8th Cir. 1987) (holding that notes documenting "numerous meetings among the conspirators and other events" were in furtherance of the conspiracy). As such, the statements in the Bihari Notebooks qualify as co-conspirator statements.

Trial Defendants' arguments for non-admissibility, let alone pretrial exclusion, miss the mark. Humana has presented the necessary "slight evidence" needed to show Trial Defendants entered into an overarching conspiracy, which the individual conspiracies were in furtherance of.[53] Thus, whether Mr. Bihari had calls directly with employees at Mylan is irrelevant because Mr. Bihari's calls with Taro's Ara Aprahamian in support of the overarching conspiracy, let alone the Clomipramine conspiracy to which Mylan was a co-conspirator, qualify. Trial Defendants' arguments for non-contemporaneity fail factually because Mr. Bihari testified to their contemporaneity and fail legally because contemporaneity is not an element of the exception. *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983) (holding district court

---

[53] ECF No. 619 (Humana's Opp. to Mot. for Summ. J. on Overarching Conspiracy).

committed error by excluding statements on the basis they were "narratives of past events and thus were not in furtherance of the conspiracy.").

**3. The Bihari Notebooks are admissible as non-hearsay to demonstrate that Mr. Bihari held a particular belief or understanding at the time of writing regardless of the truth of the matter asserted.**

Independently from their admissibility as business records, the notebooks are admissible as non-hearsay statements offered as evidence of what Mr. Bihari understood or believed at the time he wrote the statements, rather than to prove the truth of the matter asserted. Fed. R. Evid. 801(c)(2); Advisory Cmmt. Notes to Fed. R. Evid. 801(c) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *United States v. Gonzalez*, 905 F.3d 165, 201 n.15 (3d Cir. 2018) ("[T]hese statements also qualify as non-hearsay under Rule 801(c) because the Government was not offering them for the truth of the matter asserted in those statements."); *United States v. Figueroa*, 818 F.2d 1020, 1026 (1st Cir. 1987) ("Statements proffered to show something other than the accuracy of their contents—to show, say, the knowledge or state of mind of the declarant or one in conversation with him—are not considered hearsay") (citing VI *Wigmore on Evidence* § 1789 at 235 (3d ed. 1940)); *see also United States v. DeSimone*, 699 F.3d 113, 126 (1st Cir. 2012) ("As to McKittrick's report of Gail's (false) statements that Johnson had visited their house, these statements were not admitted for their truth and so were not inadmissible hearsay.").

Here, Humana's primary purpose in offering Mr. Bihari's notebooks is to establish that Mr. Bihari possessed certain facts at the time of writing. The notebooks further provide circumstantial evidence of the testified-to content of phone calls because they contain

confidential competitor intelligence that Mr. Bihari testified he received from competitors in furtherance of unlawful agreements.

Trial Defendants attempt to manufacture hearsay by conflating the statements in the notebooks themselves, which do not contain assertions of what was said on phone calls or the details of agreements, with Mr. Bihari's testimony regarding the calls and notebooks. Trial Defendants' failure to identify a single example of a notebook entry purporting to record the contents of a call is telling. Rather, the notebooks contain statements of facts or anticipated actions, price points, anticipated price increases, customers, and market shares. As Trial Defendants themselves assert for an exemplar entry, the document "does not provide that the statement came from Aprahamian."[54]

Trial Defendants' complaint is not the assertions in the notebooks themselves, but rather Mr. Bihari's *testimony* asserting that the statements in the notebook were obtained from competitors (which are themselves classic examples of hearsay exceptions under the co-conspirator exception to hearsay) as part of reaching and implementing anticompetitive agreements, including on phone calls. But testimony contextualizing written assertions does not change the assertions themselves.

For instance, Mr. Bihari's notebooks contain an entry dated 4/30 that lists seven drugs as "Taro Increases" for "5/1". Those entries are not admitted to prove that Taro was going to, or ultimately did, increase those drugs on that day (facts which are separately established by emails and increase notices). Rather, it evidences Mr. Bihari's advanced knowledge of Taro's list of price increase drugs. This in turn provides circumstantial evidence of the contents of the call between Mr. Bihari and Taro's Mr. Aprahamian because the phone records indicate a call

---

[54] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 52.

between the two men occurred on the same day the confidential intelligence was memorialized in the notebook.

Nor do the notebook entries contain multiple levels of hearsay because none of the notebook entries contain out-of-court statements within them. And as Trial Defendants do not point to a single entry in the notebook that says, *e.g.*, "Ara Aprahamian told me . . .", Trial Defendants' reliance on cases with explicit out-of-court statements themselves reported in writings by third parties is inapposite. *See Evans v. United States*, No. 15-1839 2017 WL 11674410, at *1 n.1 (E.D. Pa. Nov. 2, 2017) (excluding statement within report that "Upon arrival the worker, *Damon Rush b/m 44 stated that* . . .") (emphasis added); *U.S. v. Lloyd*, 566 F.3d 341, 342 (3d Cir. 2009) (finding error to admit hearsay within report prepared by a probation officer containing statements by a sheriff "describe[ing] a physical altercation between [defendant] and his pregnant girlfriend."). Trial Defendants' mischaracterization of argument[55] in briefing cannot manufacture a hearsay issue because it says nothing about the evidence itself.

**4. The Bihari Notebooks should not be excluded because they may qualify as recorded recollections or may be properly used to refresh Mr. Bihari's recollection.**

Lastly, any order precluding *any* use of the Bihari notebooks would be premature because, depending on testimony at trial, the notebooks likely could qualify as recorded recollections. A written record may be read into evidence if it: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately

[55] The cited passages merely contain argument about the appropriate inferences a factfinder can make based upon multiple pieces of evidence, including (1) phone calls between Mr. Bihari and Mr. Aprahamian at those certain times, (2) Chris Bihari's testimony of knowledge of certain facts recorded at certain times, and (3) those facts being recorded in the notebook at—according to Mr. Bihari's testimony—those certain times.

reflects the witness's knowledge. Fed. R. Evid. 803(5). The foundation required to establish that the record accurately reflects the witness's knowledge need not be based on specifics. *See United States v Collare*, No. 22-1551, 2023 WL 2524451, at *3 (3d Cir. Mar. 15, 2023) (finding no error in crediting grand jury testimony read into the record as a recorded recollection where declarant testified she "had no reason to believe her grand jury testimony was untruthful."). Here, Mr. Bihari testified at deposition that the recorded materials are that which he learned during the course of his employment[56] but that he does not remember all the specifics,[57] that he wrote the entries,[58] and that he regularly and contemporaneously wrote down the most important things for his job that he learned,[59] thus reflecting his understanding. Thus, relevant portions of the notebooks can be, or likely will be able to be, read into the record under FRE 803(5).

Independently, any order excluding ***any*** use of the notebooks would be improper because FRE 612 allows Humana to use the notebooks, if necessary, to refresh Mr. Bihari's recollection regarding their contents. Under FRE 612, a witness may use a document to refresh the witness's recollection regarding matters the witness cannot fully recall, so long as the party produces the document to the opposing party for its inspection. As Trial Defendants have had the notebooks (even conducting forensic examinations of them), all potential prerequisites for their use under FRE 612 have been met.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* F to exclude Christopher Bihari's notebooks.

---

[56] Opp. Ex. 3 (Bihari) at 554:15-556:14.
[57] *See e.g.*, Opp. Ex. 3 (Bihari) at 339:2-11.
[58] Opp. Ex. 3 (Bihari) at 556:6-14.
[59] Opp. Ex. 3 (Bihari) at 555:3-557:17.

### G. Opposition to Trial Defendants' Joint Motion to preclude Humana from presenting incorrect, misleading or inflammatory information about damages.

Trial Defendants' "damages" Motion *in Limine* is an improper attempt to limit Humana's ability to properly respond to Defendants' argument that Medicare Part D payments will reduce any potential award of damages. Trial Defendants' motion further implies that in making its claims for damages relating to Medicare Part D payments, Humana intends to present "incorrect, misleading or inflammatory information," which is simply not true. That Trial Defendants have a different interpretation of the rules and regulations surrounding Medicare Part D, *see* ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 59, does not warrant excluding this evidence.[60]

At the outset, resolution of this Motion *in Limine* is not necessary if the Court partially grants Humana's Motion *in Limine* No. 20 (ECF No. 824)[61] which alternatively asked the Court to postpone resolution of this issue—which all parties agree is a legal question—to after trial (if there is a verdict for Humana), as was similarly done in other recent pharmaceutical overcharge cases.[62] In that motion, Humana also demonstrates why the Court should also find now (at the

---

[60] The mere fact that opposing experts disagree does not provide a basis for granting a motion *in limine*. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Litig.*, 509 F. Supp. 3d 116, 190 (D.N.J. 2020) (that two different experts reach opposing conclusions from the same information does not render their opinions inadmissible, "[i]nstead, such a situation presents a classic 'battle of the experts' scenario which is for the jury to resolve."). *See also Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) (The court held that "[w]here there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

[61] *See* ECF No. 824 (Humana's Omnibus Motions *in Limine* Br.) at 38-41 (Humana's MIL 20 seeks to preclude Defendants from arguing or presenting evidence at trial that "(a) payments from CMS to Humana as a Medicare Part D plan sponsor reduce or offset Humana's antitrust damages; (b) the federal government 'pays for' prescription drugs under Part D; or (c) Humana's damages are limited to the 'risk' Humana bears after accounting for government subsidies.").

[62] *See* ECF No. 824 (Humana's Omnibus Motions *in Limine* Br.) at n.73 citing *Humana Inc. v. Celgene Corp.*, No. 18-CI-00617 (Ky. Pike Cir. Ct. Dec. 20, 2022) Hearing Tr. at 55-59; Order, *In re Amitiza Antitrust Litig.*, (D. Mass. April 11, 2026) ECF 763; *In re HIV Antitrust Litig.*, No. 19-cv-2573-EMC, 2023 WL 3603732, at *2–3 (N.D. Cal. May 23, 2023).

pretrial phase) that generally government payments/subsidies, and risk corridors under Medicare Part D are ***legally irrelevant*** to the measure of antitrust damages and would be unduly prejudicial and confusing to the jury and should therefore be excluded from trial. Introduction of such evidence would require a mini-trial on Medicare Part D regulatory economics. If a jury returns a verdict for Humana on liability and damages, this issue can be addressed at a post-trial hearing.

However, if the Court determines that arguments regarding Medicare Part D should be addressed during the trial, Humana will need to reference the Medicare Regulations subject to Trial Defendants' instant motion in order to properly present Humana's full responsive arguments and therefore respectfully requests that the Court deny this motion in its entirety. For example, Humana has retained Dr. Richard Frank to provide context and analyze key points in Defendants' joint damages report regarding Medicare Part D coverage and policies. Dr. Frank offers an economic opinion regarding Medicare Part D and CMS's reporting rules and regulations. *See*, ECF No. 621 (Humana's SJ Damages Opp. Br.) at 6-8 (Counter-Statement of Facts).

Further, Trial Defendants' proposed Order for this motion is overly broad and asks this Court to preclude Humana from presenting evidence relating to ***"Humana's alleged damages, including but not limited to"*** **three broad, enumerated categories**,[63] which include CMS rules and regulations. Courts in this Circuit have held that motions *in limine* that "exclude broad categories of evidence should rarely be employed" as they are devoid of context and "too vague

[63] Those categories are as follows: "(1) Humana is required to report litigation recoveries to the Centers for Medicare & Medicaid Services (CMS), or that the United States government may receive a portion of litigation recoveries; (2) the United States government, by requiring Medicare Part D plan sponsors to implement compliance programs that include 'measures that prevent, detect, and correct fraud, waste, and abuse' bestowed on Humana the right or obligation to recover damages in cases like this one; and (3) Trial Defendants would obtain a windfall if Medicare Part D payments are deducted from Humana's indirect volume of commerce." *See* ECF No. 799-2 ([Proposed] Order Granting Trial Defendants' Omnibus Joint Motion *in Limine*) at 3.

and overbroad to warrant a ruling." [64] In *Walsh v. Fusion Japanese Steakhouse, Inc.*, the court explained that "a trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on *all* potential grounds."[65] This standard places the burden squarely on Trial Defendants to demonstrate that every conceivable piece of evidence within their proposed categorical exclusion is clearly inadmissible—a burden they do not and cannot meet when seeking to exclude an entire category of damages evidence.[66] Pennsylvania courts have repeatedly emphasized that certain motions *in limine*, especially ones that encompass broad classes of evidence, should generally be deferred until trial—or in this case, a potential post-trial hearing—to allow for resolution of questions of foundation, relevancy, and potential prejudice in proper context.[67]

Trial Defendants also ask this Court to exclude the use of the word "windfall" [68] if they are allowed to argue at trial that Medicare Part D payments should be deducted from Humana's damages. Courts have repeatedly held that the word "windfall" is not inherently inflammatory or

---

[64] *Dandy v. Ethicon, Inc.*, No. 20-cv-431 (MAS) (DEA), 2023 WL 2714072, at *16-17 (D.N.J. Mar. 30, 2023) ("In neither her initial briefing nor her supplemental briefing, however, does Plaintiff detail exactly which evidence or testimony she wishes to exclude within these categories; instead, in a two-page brief, she seeks to categorically exclude all such evidence or testimony within these categories.").

[65] *Walsh v. Fusion Japanese Steakhouse, Inc.*, 585 F. Supp. 3d 766, 773 (W.D. Pa. 2022) (emphasis added).

[66] Medicare regulations are not the type of evidence that courts normally exclude at trial. In *United States v. Gold,* 743 F.2d 800, 815-816 (11th Cir. 1984), the court held that Medicare regulations and agency guidance materials are relevant under Federal Rules of Evidence 401 and 402 because they "directly reflected the interpretation of those statutes and regulations by the government officials who were charged with administering the programs"— making them probative on the key issues in virtually any Medicare-related dispute.

[67] *See, e.g.*, *Pennsylvania State Univ. v. Vintage Brand, LLC,* 755 F. Supp. 3d 563, 573 (M.D. Pa. 2024) ("certain motions, 'especially ones that encompass broad classes of evidence, should generally be deferred until trial…'"); *Regassa v. United States*, 613 F. Supp. 3d 880, 884 (M.D. Pa. 2020) (same); *Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 131 (M.D. Pa. 2021) (same).

[68] *See* ECF No. 799-2 ([Proposed] Order Granting Trial Defendants' Omnibus Joint Motion *in Limine*) at 3.

improper when used in legal argument or proceedings,[69] and therefore, courts have found the term permissible when it accurately describes the factual situation and is relevant to the claimed damages at hand. *See e.g.*, *Grayson v. Williams*, 256 F.2d 61, 65 (10th Cir. 1958) ("No reason in law, equity or good conscience can be advanced why a wrongdoer should benefit from part payment from a collateral source of damages caused by his wrongful act. If there must be a windfall certainly it is more just that the injured person shall profit therefrom, rather than the wrongdoer shall be relieved of his full responsibility for his wrongdoing."); *see also McDermott v. Party City Corp*., 11 F. Supp. 2d 612, 624 (E.D. Pa. 1998) (upholding damages award despite defendant's argument that it would be a "windfall to plaintiffs"). The term "windfall" occupies a recognized place in federal legal discourse as a standard damages concept. Because the term carries this established legal meaning, courts have generally not treated it as inflammatory when it is deployed in argument to describe a factually accurate situation.

Humana respectfully submits that Trial Defendants' Medicare Part D offset arguments should be precluded from trial, or postponed to after trial. However, if this Court decides otherwise, Humana must be able to defend its measure of damages and respond to Trial Defendants' offset argument. Accordingly, Humana requests that Trial Defendants' Motion *in Limine* G to preclude Humana from presenting incorrect, misleading or inflammatory information about damages be denied in its entirety.

---

[69] *See, e.g., Sill Corp. v. United States*, 343 F.2d 411 (10th Cir. 1965) ("The word 'windfall' is not opprobrious if properly used…").

### H. Opposition to Trial Defendants' Joint Motion to preclude Plaintiff from arguing that trial Defendants' or their employees' participation in trade association and industry events was unlawful or provided opportunities to engage in unlawful conduct.

Humana should not be barred from arguing that trade association or industry events offered significant opportunities to engage in unlawful conduct. As an initial matter, Trial Defendants' motion is incoherent. The motion itself requests that trade show attendance not be used to show that they "provided opportunities to engage in unlawful conduct," but in the supporting memorandum, Trial Defendants argue incongruously that trade shows are considered "evidence of opportunity" to conspire.[70] Humana should not be barred from making the very argument Trial Defendants admit this evidence demonstrates.

Trial Defendants' memorandum asserts that this evidence should be excluded because it "cannot alone support an inference of agreement."[71] However, evidence being inconclusive does not make it irrelevant or inadmissible. "[E]vidence need not be conclusive in order to be relevant. An incremental effect ... is sufficient."[72] In this case, attendance at a trade association or industry event and communications at those events do make the at-issue conspiracies more probable. The evidence is therefore relevant.

Attendance at trade association meetings is admissible to support the existence of an agreement, especially when paired with conduct following association meetings in line with furtherance of a conspiracy. *See In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 822 (D. Minn. 2025) ("[A]dditional evidence, when coupled with evidence that competitors had opportunities to collude at industry trade association meetings, could support an inference of an agreement."). In

---

[70] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 65.
[71] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 64.
[72] *Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 147 (2d Cir. 1981); *see also* Fed. R. Evid. 401 ("Evidence is relevant…if it has any tendency to make a fact more or less probable…").

this case, there is ample "additional evidence" to support the use of trade association meetings as opportunities to conspire. For example, Paul Dutra of Glenmark testified that Jim Brown, [redacted][73] There is also ample evidence of collusion near in time to the association meetings.[74] This is supported by this Court's prior opinion:

> "[T]he Group 1 Plaintiffs have sufficiently alleged that the Group 1 Defendants had an opportunity to conspire. Participation in trade organizations and their meetings demonstrates how and when Defendants had opportunities to exchange information or make agreements. While this information exchange, standing alone does not create an inference of an illegal agreement...the fact of its existence indisputably facilitates and supports an inference of an agreement."

*In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 449-450 (E.D. Pa. 2018) (internal quotations omitted). *See also In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 197 (E.D. Pa. 2016) ("opportunities to conspire may be probative of a conspiracy.").[75]

There is no risk of misleading a jury with evidence of trade show attendance. A jury is able to understand that evidence of people being in the same place at the same time gives them

[73] Opp. Ex. 18 (Dutra) at 129:11-131:21.

[74] *See, e.g.,* Opp. Ex. 4 (Thomassey) at 49:4-20 (common for competitors to exchange competitively sensitive information at trade shows); Opp. Ex. 5 (GreenK2019-09-17-Redacted-001) at -05 [redacted]; Opp. Ex. 6 (LANNETT-CT-0000986) (group dinner); Opp. Ex. 7 (HER-AS-000002655) (Girls Night Out).

[75] Trial Defendants' reference to *Winn-Dixie* is unpersuasive, *see* ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 65, as the conspiracy at issue there involved the trade association's own liability, rather than the liability of individual actors attending trade association events. *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop., Inc.*, 89 F.4th 430, 442–43 (3d Cir. 2023). The trade associations themselves are not defendants in this case, and there has been no implication of wrongdoing by the trade associations in this case.

an opportunity to conspire but does not necessarily mean that they did so. This is exactly the type of "common sense" situation which a jury is expected to handle. "Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn."[76] The concept of people interacting at a gathering does not require specialized legal or technical knowledge, and is exactly the type of information that should, alongside other evidence, be presented to a jury.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* H to preclude Humana from arguing that Trial Defendants' or their employees' participation in trade association and industry events was unlawful or provided opportunities to engage in unlawful conduct.

### I. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning impact on Humana plans and beneficiaries.

Humana objects to Motion *in Limine* I to the extent that Trial Defendants' relief sought and proposed order[77] are overbroad and confusing,[78] and would hamper Humana's ability to present its case to the jury. Humana does not intend to introduce evidence associated with many of the specific examples cited by Trial Defendants,[79] and has itself moved to preclude discussion of inflammatory statements, PBMs, pass-on (or any related downstream theory) and benefit retention.[80] However, Trial Defendants' proposed order broadly requests that "Humana may not

---

[76] *Schulz v. Pennsylvania R.R. Co.*, 350 U.S. 523, 526 (1956).
[77] *See* ECF No. 799-2 ([Proposed] Order Granting Trial Defendants' Omnibus Joint Motion *in Limine*) at 3.
[78] As discussed below, the exhibit cited by Defendants does not relate to Humana.
[79] For example, Humana does not intend to introduce evidence relating to individual member premiums, co-insurance, deductibles or co-pays, member complaints or member PHI (protected health information) such as diagnosis or treatment. *See* ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 66, 68-69.
[80] *See* ECF No. 824 (Humana's Omnibus Motions *in Limine* Br.) at Motions *in Limine* Nos. 11 and 16.

adduce any evidence, or make any argument before the jury, ***concerning any impact of price increases for generic pharmaceuticals*** on Humana plans or beneficiaries of such plans"[81] (emphasis added). The impact of generic price increases on Humana and its plans is part of the background of the case on which the jury will need to be educated, and allowing the jury to hear it will not prejudice the Defense in any way. "This evidence [of 'general drug pricing trends in the pharmaceutical industry'] 'will likely aid in the jury in understanding the context in which the case arises' and is 'background information.'"[82]

The broad categories of evidence and argument that Trial Defendants seek to exclude in this motion are relevant and non-prejudicial. "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."[83] Evidence in this category as described above is relevant because, while this general background may not be in dispute, "[e]vidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding."[84] In addition, "[t]he burden under Rule 403 is on the party opposing admission, who must show that the probative value 'is substantially outweighed by the danger of unfair

---

[81] *See* ECF No. 799-2 ([Proposed] Order Granting Trial Defendants' Omnibus Joint Motion *in Limine*) at 3 (emphasis added).
[82] *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2019 WL 6242128, at *6 (S.D.N.Y. Aug. 2, 2019) ("The motion to exclude evidence of general drug pricing trends in the pharmaceutical industry is DENIED [because] [t]his evidence 'will likely aid in the jury in understanding the context in which the case arises' and is 'background information.'"); *Novartis Pharm. Corp. v. Teva Pharm. USA, Inc.* No. 05-cv-1887, 2009 WL 3754170, at *4 (D.N.J. Nov. 5, 2009); *see also* Electronic Order, *In re Solodyn Antitrust Litig.*, No. 1:14-md-2503 (D. Mass. Mar. 8, 2018), ECF No. 1089 (denying in part motion "to exclude evidence of rising costs of healthcare and pharmaceuticals [and] policy arguments regarding the pharmaceutical industry" because "some context is appropriate and these topics in and of themselves are not unduly prejudicial," so long as '"the amount of 'background' evidence [does not] overcome evidence bearing more directly on the claims here.").
[83] *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) (citing *Leonard v. Stemtech Health Sciences, Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)).
[84] Fed. R. Evid. 401 Advisory Committee's Notes.

prejudice.'"[85] Trial Defendants have made no showing that evidence of the impact of price increases on Humana are prejudicial. In fact, this case is about the timing and coordination of price increases, and it would be virtually impossible to present the case to the jury without referencing this information. "[L]itigants are generally afforded an opportunity to present their own theories of the case, including by choosing the language they use, and should not be prohibited from using terminology that opposing parties find unflattering."[86]

In support of their motion, the Trial Defendants identify one document and a related deposition excerpt as examples of evidence they find objectionable and then use this narrow example to justify a broad categorical exclusion of the entire subject matter. *See* ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 68. Rather than detailing exactly what evidence or testimony they seek to exclude, Trial Defendants seek to categorically exclude all evidence concerning "impact of price increases for generic pharmaceuticals." This is precisely the pattern that courts have identified as improper use of the motion *in limine* device because it is "too vague and overbroad to warrant a ruling."[87] Further, the documents cited as an example of what Trial Defendants consider impermissible evidence relating to the impact on

---

[85] *United States v. Tse*, 375 F.3d 148, 164 (1st Cir. 2004) (quoting Fed. R. Evid. 403); *see also United States v. Hill*, 309 F. Supp. 3d 266, 270 (E.D. Pa. 2018) ("The prejudice against which Rule 403 guards is unfair prejudice—prejudice of the sort which clouds impartial scrutiny .... The fact that probative evidence helps one side prove its case obviously is not grounds for excluding it under Rule 403."); *Veranda Beach Club Ltd. P'ship v. W. Sur. Co.*, 936 F.2d 1364, 1372 (1st Cir. 1991) ("[T]rials were never meant to be antiseptic affairs; it is only unfair prejudice, not prejudice per se, against which Rule 403 guards."); *and see Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506, 516 (1st Cir. 1996) (quoting *United States v. McMahon*, 938 F.2d 1501, 1508 (1st Cir. 1991)) ("'Rule 403 is [also] a liberal rule . . . .'").

[86] *In re Intuniv Antitrust Litig.*, No. 16-cv-12653-ADB, 2021 WL 10362709, at *15 (D. Mass. Mar. 3, 2021); s*ee also United States v. Tartaglione*, 228 F. Supp. 3d 402 (E.D. Pa. 2017); *United States v. Jessamy*, 464 F. Supp. 3d 671 (M.D. Pa. 2020).

[87] *See e.g., Dandy v. Ethicon, Inc.*, No. 20-cv-431, 2023 WL 2714072, at *17 (D.N.J. Mar. 30, 2023); *Equal Emp. Opportunity Comm'n v. Proctor Fin., Inc*., 644 F. Supp. 3d 400 (E.D. Mich. 2022) (the court denied a motion seeking to exclude "any other anticipated testimony" as impermissibly overbroad and insufficiently specific).

Humana's plans and beneficiaries do not appear to relate to Humana or a Humana member in any way. *See* ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 68 (citing Ds' Ex. I-1, Aprahamian Dep. Tr., quoting Pltf's Depo. Ex. 9266).

This MIL seeking to exclude all evidence of "any impact of price increases for generic pharmaceuticals on Humana plans or beneficiaries of such plans" is precisely the type of overbroad, categorical exclusion request that courts in this Circuit have repeatedly identified as an improper use of the motion *in limine* device. The governing standard requires that evidence be excluded on a motion *in limine* only when it is clearly inadmissible on all potential grounds, a threshold that a sweeping categorical exclusion of an entire class of damages evidence cannot satisfy, particularly where the movant relies on specific examples to justify the broad request.

Trial Defendants cannot be allowed to prevent the jury from understanding the context of this case. Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* I to preclude evidence and argument concerning impact on Humana plans and beneficiaries.

### J. Opposition to Trial Defendants' Joint Motion to preclude eliciting legal conclusions from fact witnesses.

Trial Defendants ask the Court to bar, in advance and across the board, any fact-witness testimony that amounts to a legal conclusion. Whether a question calls for an improper legal conclusion or for a proper account of what a witness knew, did, or believed depends on the question asked and the purpose for which it is offered. Those are trial determinations, not ones the Court can make wholesale before a single witness takes the stand. Trial Defendants must show the evidence they target is clearly inadmissible on all potential grounds, and a request aimed at an entire category of testimony cannot meet that standard. The motion should be denied, with any objection to a specific question preserved for trial.

A motion *in limine* is meant to "narrow the evidentiary issues for trial," not to secure a categorical ruling detached from any specific testimony.[88] Consistent with that limited purpose, evidence "should not be excluded pursuant to a motion *in limine*, unless it is clearly inadmissible on all potential grounds."[89] The movant "bears the burden" and rulings that "encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."[90] This Court has declined similar requests for sweeping pretrial prohibitions, holding that such concerns are better "addressed in the context of a developed record and with the benefit of a concrete understanding of the proffered testimony as well as the purpose for which it is being presented," and that it would "entertain objections to specific lines of questioning at trial."[91]

Trial Defendants' own authorities do not support a blanket bar, and several cut the other way. Their principal Third Circuit cases involved expert testimony and the court's duty to instruct the jury on the law, not fact-witness testimony under Rule 701.[92] In each, the Third Circuit addressed the objection by parsing the specific testimony and admitting the permissible portions rather than excluding a category. *United States v. Leo* went further and affirmed the admission of lay opinion testimony under FRE 701 because it was "rationally based on the perception of the witness" and helpful to the jury.[93] Trial Defendants also cite *In re Baby Food Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999), which is not an evidentiary ruling, but a summary-

[88] *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).
[89] *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).
[90] *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).
[91] *Apotex, Inc. v. Cephalon, Inc.*, No. 2:06-cv-2768, 2017 WL 2362400, at *3 (E.D. Pa. May 31, 2017).
[92] *See United States v. Leo*, 941 F.2d 181, 196 (3d Cir. 1991); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217–19 (3d Cir. 2006).
[93] *United States v. Leo*, 941 F.2d at 192–93.

judgment sufficiency decision; the pages Trial Defendants cite go to the weight of testimony on a full record, not to any pretrial bar.[94]

The examples Trial Defendants offer prove the point. A witness's testimony that he "knew it was illegal" to exchange pricing with a competitor is not necessarily an opinion about what the Sherman Act requires. It may be a permissible account of the witness's own knowledge and state of mind at the time, which is proper Rule 701 testimony and probative of the agreement plaintiff must prove.[95] Where a specific question actually crosses the line into an opinion on governing law, Defendants may object and the Court may rule with the question in front of it. That is how these issues are resolved, and it is why courts decline to exclude such testimony *in limine* when the movant has not shown the statement is a legal conclusion rather than a statement of fact.[96]

Humana does not dispute that a witness may not tell the jury what the law is. But that narrow rule does not justify the sweeping order Trial Defendants seek. Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* J to preclude eliciting legal conclusions from fact witnesses, and any specific objection taken up at trial.

### K. Opposition to Trial Defendants' Joint Motion to preclude Plaintiff's experts from reciting a factual narrative.

Trial Defendants seek to preclude Humana's expert witnesses, specifically Dr. W. David Bradford and Dr. Aaron S. Kesselheim, from characterizing facts and reciting a factual narrative, claiming Humana's experts failed to apply their expertise to record evidence. Much like their *Daubert* motions, Trial Defendants state Humana's experts simply recite "cherry-picked record

[94] *See* ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 72.
[95] *See United States v. Leo*, 941 F.2d at 192–93.
[96] *See Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d at 279.

evidence"[97] supporting Humana's claims, while ignoring evidence Defendants assert negates Humana's theories of the case. Trial Defendants' claims are incorrect. As such, Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* K to preclude Humana's experts (who have both now passed Defendants' *Daubert* challenge) from reciting a factual narrative.

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony.[98] Exclusion of expert testimony "is the exception rather than the rule,"[99] as Rule 702 has a "liberal policy of admissibility."[100] As gatekeeper, courts in the Third Circuit evaluate each expert's "qualification, reliability and fit."[101] Trial Defendants do not challenge Drs. Bradford and Kesselheim's qualifications. The reliability inquiry is "a flexible one."[102] "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process — competing expert testimony and active cross–examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies."[103] And economic testimony, in particular, "require[s] the use of professional judgment" and therefore "is less likely to be excluded because challenges

---

[97] *See* ECF No. 542 (Defendants' Joint *Daubert* Motion to Exclude Bradford) at Section IV ("Bradford's Cherry-Picked Review of the Evidence Was Not Economic, Not Based on a Reliable Methodology, and One-Sided"); *see also* ECF No. 538 (Defendants' Joint *Daubert* Motion to Exclude Kesselheim) at 1–2 ("Instead, Dr. Kesselheim concludes that the alleged conduct would have the same effect as a market withdrawal of shortage, citing nothing more than a few *cherry-picked* examples for a handful of the 22 Subject Drugs.") (emphasis added).
[98] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587–589 (1993).
[99] *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2017 WL 5177757, at *4 (E.D. Pa. Nov. 7, 2017) (quoting Fed. R. Evid. 702 (Advisory Committee Notes to 2000 Amendments) (internal quotations marks omitted.).
[100] *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal quotation marks and citations omitted).
[101] *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted); *see also* ECF No. 811 (Memorandum Opinion denying Defendants' Joint Bradford *Daubert* Motion) at 4 ("In simple terms, there are three restrictions: qualifications, reliability, and fit.").
[102] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993).
[103] *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (citations omitted).

may ultimately be viewed as matters in which reasonable experts may differ."[104] Courts "evaluate 'the "fit" of the expert's testimony as it relates to the case at hand…' The fit requirement 'goes primarily to relevance.'"[105]

Humana's experts, Drs. Bradford and Kesselheim, apply their expertise and economic principles to record evidence, assisting the jury in evaluating the facts of this case. Noticeably absent from Trial Defendants' brief are specific cites to instances where Humana's experts purportedly provide only "factual narrative;" instead, Trial Defendants cite generally to Drs. Bradford's and Kesselheim's entire expert reports.[106] Trial Defendants claim that Humana's experts offer a factual narrative that supplants the role of counsel and the jury, lack personal knowledge of the underlying evidence, and failed to conduct a comprehensive review of the record. Trial Defendants are wrong.

*First*, Humana's experts are not providing a factual narrative; rather, Humana's experts apply their expertise and accepted economic principles to the facts of the case to assist the jury in determining whether Defendants violated the antitrust laws. Trial Defendants rely on *Krys v. Aaron* for the contention that experts may not provide a factual narrative; however, *Krys* cannot be read to be so definitive. *Krys* states "'an expert cannot be presented to the jury *solely* for the purpose of constructing a factual narrative based on record evidence.'"[107] But, that is not what either Dr. Bradford or Dr. Kesselheim do. *Krys* continues by stating admissible expert testimony

---

[104] *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 5767415, at *6 (E.D. Pa. July 29, 2015) (internal quotation marks and citation omitted).
[105] *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-md-2724, 2024 WL 4980784, at *4 (E.D. Pa. Dec. 3, 2024) (citing *Macaluso v. Apple Inc.*, No. CV 21-1361, 2023 WL 4685965, at *4 (E.D. Pa. July 21, 2023) and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)); *see also* ECF No. 811 (Memorandum Opinion denying Defendants' Joint Bradford *Daubert* Motion) at 4–5 (generally describing expert opinion and testimony admissibility requirements).
[106] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 75.
[107] *Krys v. Aaron*, 112 F. Supp. 3d 181, 206 (D.N.J. 2015) (emphasis in original) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y 2005)).

"provide[s] an in-depth analysis of the bases for [the expert's opinions] (including detailed record citations), and specifically couches his testimony upon his perceptions of industry understandings and practices."[108] This is what Drs. Bradford and Kesselheim do.

This Court recently denied Defendants' *Daubert* motions directed to Dr. Bradford and Dr. Kesselheim.[109] As to Dr. Bradford, this Court found that Dr. Bradford's opinions are admissible, disagreeing with Defendants that "Dr. Bradford's opinion was devoid of economic analysis."[110] The Court agreed that

> "[E]conomic experts are regularly permitted to opine whether conduct is 'indicative of collusion' or 'consistent with' collusion—with 'collusion' meaning an illegal conspiracy….In rendering such opinions, the expert may review documentary evidence, provided he adheres to recognized limits. Namely, an expert's 'examination of the factual record is necessary….to confirm that the stories drawn from the data and from the factual record are consistent.'"[111]

In support of his expert conclusion, the Court explained that "Dr. Bradford's record review was within the scope of his expertise, as he undertook a similar review to the experts above (referring to *Processed Egg Products* and the EPP and DPP bellwethers). Dr. Bradford analyzed emails and calls between competitors, exchanges of pricing information, scores of depositions, and internal notes and customer lists among other documentary evidence."[112] The Court determined "that Dr. Bradford (1) conducted his record review to confirm alignment between the record and his economic understandings; (2) observed that Defendants acted inconsistently with rational self-interest; and (3) provided economic context that will assist a jury. The Court finds that he deployed economic expertise."[113]

---

[108] *Krys v. Aaron*, 112 F. Supp. 3d 181, 206 (D.N.J. 2015).
[109] ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) and ECF No. 836 (Order Denying Defendants' Joint Kesselheim *Daubert* Motion).
[110] ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) at 21.
[111] ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) at 12–13.
[112] ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) at 13.
[113] ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) at 14.

As to Dr. Kesselheim, this Court agreed that Dr. Kesselheim, "a widely cited researcher whose scholarship deals with pharmaceutical policy, health law, the generic pharmaceutical industry, and related fields," offers opinions and testimony that are "[a]s with his other opinions, … sufficiently reliable and will help the jury appreciate complexities concerning the generic drug industry."[114] Additionally, the Court determined

> "Dr. Kesselheim's opinions on the 'customs and practices' of the industry offer clarity and are within the bounds of admissibility. Next, his literature review embraces accepted, well-tested methods, 'proffer[ing] [a] connection' to his opinion that a dwindling number of competitors tends to drive up drug prices, and vice versa."[115]

As such, Drs. Bradford and Kesselheim do not merely provide only a factual narrative, as Trial Defendants argue, but have applied their expertise and industry economic principles to the facts of this case to aid the jury and thus have passed Defendants' *Daubert* challenges.

*Second*, [116] Trial Defendants' claim that "[i]t is undisputed that neither Dr. Bradford nor Dr. Kesselheim possess any personal knowledge of any of the evidence or facts addressed in their reports,"[117] misses the mark as both Drs. Bradford and Kesselheim reviewed and cited extensively to the record in their reports. The Court recently ruled that "Dr. Bradford's record review was reliable and fit[s] this case" and "Dr. Bradford 'cites evidence of more than "sporadic" communications in his report.'"[118] It is clear that Dr. Bradford has knowledge of the

---

[114] ECF No. 836 (Order Denying Defendants' Joint Kesselheim *Daubert* Motion) at 4, 7.
[115] ECF No. 836 (Order Denying Defendants' Joint Kesselheim *Daubert* Motion) at 5.
[116] Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert **has been made aware of or personally observed**. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect..") (emphasis added).
[117] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 75.
[118] ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) at 14; *see id.* at 14–15 (discussing at length Bradford's review of the record and citations thereto in his expert reports).

facts addressed in his reports and testimony given "he cites fact witness testimony, emails, public notices, and internal documents revealing conduct that he found incompatible with a competitive market."[119]

As to Dr. Kesselheim, this Court recently ruled that Kesselheim's opinions challenged by Defendants' *Daubert* "met [the] requirement" "that expert opinions must 'have some basis in the record'" because Dr. Kesselheim "showed that the relationship between price and competition, outlined in scholarship, manifests in Humana's allegations for digoxin…and other drugs."[120] Confirming that Dr. Kesselheim's opinions were grounded in the evidence and facts of this case, the Court concluded that his challenged opinions "are reliable, tethered to his literature review, and well-fitted to the facts of this case."[121]

Trial Defendants also claim that Humana's experts' omission of contradictory evidence from their analysis is grounds for exclusion. Trial Defendants are wrong and their argument goes to the weight of Humana's experts' opinions and testimony, not admissibility.[122]

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* K to preclude Plaintiff's experts from reciting a factual narrative.

---

[119] ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) at 15.
[120] ECF No. 836 (Order Denying Defendants' Joint Kesselheim *Daubert* Motion) at 6.
[121] ECF No. 836 (Order Denying Defendants' Joint Kesselheim *Daubert* Motion) at 6.
[122] *See* ECF No. 811 (Memorandum Opinion Denying Defendants' Joint Bradford *Daubert* Motion) at 15 ("Although Defendants criticize Dr. Bradford for omitting an analysis of contradictory evidence, that omission is not so grave as to render his review unreliable. When faced with a voluminous record, an expert's failure to consider contradictory evidence does not call for exclusion, but instead goes to the 'weight of [the expert's] testimony.'").

### L. Opposition to Trial Defendants' Joint Motion to preclude references to discovery disputes and resolution.

#### 1. Defendants improperly conflate collateral discovery disputes with independently relevant trial evidence.

Humana does not seek to present discovery correspondence, motions to compel, or disputes among counsel for the purpose of asking the jury to punish Trial Defendants for alleged discovery misconduct. But Trial Defendants seek far broader relief. They would exclude telecommunications records and summaries, testimony concerning communications among alleged conspirators, and testimony concerning witnesses' use and retention of text messages, all as purported evidence of "discovery disputes." That categorical request cannot properly be resolved without knowing the particular evidence, its purpose, foundation, and trial context.[123] Evidence does not become inadmissible merely because it was obtained in disputed discovery, addressed during a deposition, or may explain the available contemporaneous record. Nor should Trial Defendants' motion preclude examination of whether a document existed, ordinarily would have been created or maintained, is absent from the record, or was not produced, when that examination bears on a witness's testimony, recollection, or credibility and is not offered for the purpose of inviting the jury to punish Trial Defendants for alleged discovery misconduct.

Trial Defendants' description of the evidence demonstrates that overbreadth. They characterize 26 potential trial exhibits as "misleading phone record summaries."[124] Yet many of

---

[123] *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859–60 (3d Cir. 1990) (explaining that Rule 403 is "a trial-oriented rule" and that pretrial exclusion requires a record sufficiently complete to serve as "a virtual surrogate for a trial record"); *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 303, 308–09 (E.D. Pa. 2007) (declining to exclude broad categories of evidence, or particular exhibits within those categories, "for all conceivable purposes" and reserving relevance determinations until the evidence could be evaluated in context).

[124] ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 77, n. 42.

those documents are actually emails or meeting invitations.[125] Trial Defendants neither explain how those exhibits concern discovery disputes or spoliation, nor analyze them individually.

The actual Rule 1006 summaries likewise contain no accusation of discovery misconduct. For example, Opp. Ex. 10 is a 1006 phone record summary of calls from April 2012 for Armando Kellum, which neutrally identifies telecommunications activity by date, time, telephone numbers, attributed users and companies, communication type, duration, call status, and source records.[126] It does not disclose content, characterize a communication as incriminating, assert that evidence was deleted, or direct an adverse inference. Trial Defendants' cited cases concern efforts to present discovery motion practice, attorney conduct, or alleged discovery violations to the jury, not independently relevant underlying evidence.[127] Trial Defendants' requested relief ignores that critical distinction.

**2. The challenged evidence is relevant to Humana's circumstantial proof and the evaluation of witness testimony.**

Humana does not offer discovery history as proof of an anticompetitive agreement. It offers telecommunications evidence to establish the existence and timing of communications among alleged conspirators, considered with emails, text messages, pricing decisions, bids,

---

[125] ***See, e.g.***, Opp. Ex. 8 (an email from A. Kellum to C. Pak et al. on May 1, 2013, which is referred to as PTX1135 by Trial Defendants in ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 77, n. 42) and Opp. Ex. 9 (a meeting invite from P. Krauthauser to C. Pak on August 6, 2014, which is referred to as PTX3534 by Trial Defendants in ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 77, n. 42).

[126] Opp. Ex. 10 is referred to as PTX0282 by Trial Defendants in ECF No. 830 (Trial Defendants' Omnibus Joint Motions *in Limine* Br.) at 77, n. 42.

[127] *See Waters v. Genesis Health Ventures, Inc.*, 400 F. Supp. 2d 814, 818–20 (E.D. Pa. 2005) (precluding evidence of counsel's hostility, disputes surrounding document production, and arguments about production completeness, while permitting conflicting testimony concerning whether a resignation letter existed and allowing the jury to draw reasonable inferences from that testimony); *Thompson v. Glenmede Trust Co.*, No. 92-5233, 1996 WL 529693, at *1–2 (E.D. Pa. Sept. 17, 1996) (precluding evidence concerning the course of discovery where the plaintiffs sought to portray a document redaction as part of a continuing fraudulent "coverup" and presentation of four years of discovery and counsel's "hardball" tactics risked distracting and confusing the jury).

business records, testimony, and market events. An antitrust conspiracy may be proved circumstantially, and the evidence must be assessed as a whole rather than by requiring each communication independently to establish an agreement.[128] Evidence of competitor communications may be probative when its timing and context connect it to pricing activity or other evidence of concerted conduct, even if carrier records do not disclose everything discussed.[129]

The summaries serve that limited function. Humana does not contend that carrier records alone establish every communication's participants or content. Humana's expert Stacy Arruda explains that those records identify the frequency, timing, and duration of activity between telephone numbers, while testimony, emails, texts, business records, and contemporaneous events provide context.[130] Those limitations define the permissible inference and provide subjects for cross-examination; they do not eliminate relevance.

Trial Defendants' cited testimony illustrates the same distinction.[131] Nisha Patel testified that she [redacted].[132] Robert Hoffman did not recall [redacted]

---

[128] *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004) (explaining that a court "should not tightly compartmentalize" the evidence but instead should "analyze it as a whole to see if it supports an inference of concerted action").
[129] *See id.* at 368–69 (concluding that competitor information exchanges supported an inference of concerted action where, considered with other evidence, they were "more tightly linked with concerted behavior" and reasonably could be found to have "had an impact on pricing decisions").
[130] Opp. Ex. 11 (Arruda Rebuttal) ¶¶ 10(b)–(d), 13–23, 72–74.
[131] *See generally* Trial Defendants' Omnibus Joint Motions *in Limine* Br. at 77-78 (citing testimony from Nisha Patel, Robert Hoffman, David Rekenthaler, James Nesta, and Susan Knoblauch concerning unavailable or deleted text messages).
[132] Opp. Ex. 12 (Patel Vol. 1) at 200:20–202:3.

[redacted].[133] David Rekenthaler testified that he was [redacted].[134] These answers concern contemporaneous communications, the witnesses' recollection, and their accounts of their communication practices, which may bear on the weight of the witnesses' testimony and the interpretation of the surrounding evidence. The Court may preclude a question that assumes intentional or incriminating deletion absent the required foundation, but the phrasing of an individual question does not render the underlying communications, carrier records, or witness testimony irrelevant.

Likewise, James Nesta did not [redacted].[135] Susan Knoblauch similarly did not [redacted].[136] The admissibility of those invocations is addressed separately. Neither invocation converts the underlying carrier records and contemporaneous documents into discovery-dispute evidence.

**3. Rule 37(e) does not require exclusion of independently relevant evidence concerning communications and unavailable messages.**

Trial Defendants incorrectly equate communications evidence with an adverse inference. Fed. R. Civ. P. 37(e)(2) permits an adverse-inference instruction only if Rule 37(e)'s threshold requirements are met and the party acted with intent to deprive another party of the lost

---

[133] Opp. Ex. 13 (Hoffman) at 107:17–108:15.
[134] Opp. Ex. 14 (Rekenthaler Vol. 2) at 443:11–444:14.
[135] Opp. Ex. 15 (Nesta Vol. 2) at 575:10–576:18.
[136] Opp. Ex. 16 (Knoblauch) at 85:1–87:13.

information's use in the litigation.[137] Carrier records, Rule 1006 summaries, and testimony concerning communications, recollection, or communication practices do not necessarily ask the jury to presume that unavailable content was adverse. Rule 37(e)(1), moreover, authorizes proportionate measures upon a finding of prejudice, including evidence and argument concerning the loss, so long as those measures do not have the effect of the adverse-inference remedies reserved for Rule 37(e)(2).[138]

Trial Defendants' assertion that Humana has not previously sought relief under Rule 37(e)(1) does not justify excluding evidence offered for a purpose independent of remedying lost electronically stored information ("ESI"). Any use that does seek such relief may be addressed separately under Rule 37(e) on an appropriate record.

Nor does Rule 37(e)'s exclusivity support categorical exclusion. *Fast* and *Bistrian* hold that Rule 37(e) provides the exclusive source of sanctions for the loss of ESI and forecloses reliance on inherent authority to impose such sanctions.[139] Neither decision addressed the admissibility of independently relevant evidence offered to establish that a communication occurred or to test a witness's recollection, rather than to remedy the loss of ESI. Whether a particular use of that evidence seeks a remedy governed by Rule 37(e) depends on the evidence and argument actually presented, and cannot be determined categorically before trial.

---

[137] Fed. R. Civ. P. 37(e)(2).
[138] *See Bistrian v. Levi*, 448 F. Supp. 3d 454, 477–78 (E.D. Pa. 2020) (distinguishing an adverse inference, which requires intent to deprive, from Rule 37(e)(1)'s broader range of curative measures); *see also Davis v. Healthcare Servs. Grp., Inc.*, No. 16-2401, 2018 WL 11484946, at *1–2 (E.D. Pa. Nov. 30, 2018) (absent intent to deprive, permitting testimony concerning the existence of unavailable text messages and allowing evidence and argument concerning their nonpreservation, while precluding proof of their specific content).
[139] *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022); *Bistrian v. Levi*, 448 F. Supp. 3d 454, 464–65 & n.14 (E.D. Pa. 2020).

### 4. Trial Defendants' generalized FRE 403 concerns do not justify categorical exclusion.

FRE 403 protects against "unfair prejudice," meaning prejudice that "clouds impartial scrutiny and reasoned evaluation of the facts," not merely damages an opponent's case.[140] Trial Defendants nevertheless group materially different exhibits and testimony together, label them "misleading" and "incendiary," and perform no evidence-specific balancing.

Any concrete concern can be addressed more narrowly. The Court may exclude or redact a question that improperly assumes intentional destruction without excluding the witness's answer, carrier records, or other evidence that a communication occurred. Cross-examination and testimony explaining the records' limitations likewise can address questions concerning attribution, content, and the permissible inferences from telecommunications activity. And if admitted evidence risks confusion or misdirection, a tailored limiting instruction can address that concern without wholesale exclusion.[141] A proffer outside the jury's presence can separately address whether any proposed use seeks a remedy governed by Rule 37(e). Those targeted measures preserve the distinction between relevant communications evidence and any impermissible argument concerning unavailable content.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* L to preclude references to discovery disputes and resolutions.

---

[140] *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002).

[141] *See GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 87 (3d Cir. 2019) (concluding that expert testimony concerning deleted emails would increase the jury's understanding and that, "if confusion or misdirection was a concern, the court could have provided a limiting instruction").

**M. Opposition to Trial Defendants' Joint Motion to preclude an adverse inference based on the absence of any Defense witnesses.**

In their memorandum, Trial Defendants argue that a jury instruction regarding a missing witness would be inappropriate for this trial. Humana does not contest this, barring unforeseeable changes in circumstances before trial. However, Trial Defendants then make the leap, *without citing a single supporting authority*, to claim that the lack of a jury instruction binds Humana's ability to make arguments to the jury regarding Trial Defendants' choices about which witnesses and evidence to present during their case. There is no precedent or justification for this broad restriction.

In fact, the available case law on the matter expressly undermines Trial Defendants' implication that the standard for these two restrictions is uniform. In *Mozingo v. Oil States Energy Servs*., L.L.C., the court rejected the defendant's argument that plaintiffs' closing reference to an uncalled witness warranted a new trial.[142] The court emphasized that "the crane operators did not request nor did we give an adverse 'missing witness' inference," and further stated "[w]e cannot locate, and Oil States does not cite, a court of appeals case holding a party commits a prejudicial error by drawing attention to the fact the other side did not call a witness equally available to both sides."[143] Similarly, in *United States v. Archie*, the court denied the defendant's request for a missing witness instruction because the evidentiary prerequisites for such an instruction were not satisfied.[144] However, the court expressly distinguished a missing witness instruction from counsel's closing argument, stating that "Defendant's counsel was free to argue to the jury that a reasonable doubt could be raised because the Government did not call

---

[142] *Mozingo v. Oil States Energy Servs., LLC*, 341 F. Supp. 3d 534 (W.D. Pa. 2018).
[143] *Mozingo v. Oil States Energy Servs., LLC.*, 341 F. Supp. 3d 534, 558 (W.D. Pa. 2018).
[144] *United States v. Archie*, No. CR 16-517, 2020 WL 4463044 (E.D. Pa. Aug. 4, 2020).

the witness."[145] Defense counsel then argued in closing that "[t]he 911 caller wasn't called to testify about that."[146] Numerous other cases follow this pattern. *See United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) ("Commenting on a failure to call witnesses generally is not an error, unless the comment implicates the defendant's right not to testify"); *Smith v. Piedmont Airlines, Inc*., 728 F. Supp. 914, 919 (S.D.N.Y. 1989) ("counsel may comment on a party's failure to call a witness under its control"); *Moore v. United States*, 344 F.2d 558, 560 (D.C. Cir. 1965) (finding that a comment on a failure to call a witness was "not prejudicial"); *United States v. Dodge,* No. 6:17-CR-323, 2024 WL 2099376, at *11 (W.D. La. Jan. 31, 2024). As in *Mozingo* and *Archie*, Humana should be free to call attention to choices made by the Trial Defendants, regardless of the absence of a specific jury instruction on the matter.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* M to preclude an adverse inference based on the absence of any defense witness.

### N. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning current and former employee compensation and wealth.

Humana does not oppose the Motion as to the personal wealth of Trial Defendants' current and former directors, officers, and employees. Humana opposes only its extension to employee compensation, which is admissible on grounds distinct from wealth and is not "clearly inadmissible on all potential grounds."[147]

Compensation tied to the drugs at issue is direct evidence of an individual's financial stake in the alleged conspiracy, and thus of motive. Income evidence is admissible when it "sheds light on the [individual's] motives for committing the charged offense."[148] Evidence in

---

[145] *United States v. Archie*, No. CR 16-517, 2020 WL 4463044, at *8 (E.D. Pa. Aug. 4, 2020).
[146] *United States v. Archie*, No. CR 16-517, 2020 WL 4463044, at *8 (E.D. Pa. Aug. 4, 2020).
[147] *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).
[148] *United States v. Porat*, No. CR 21-170, 2021 WL 5139979, at *1–2 (E.D. Pa. Nov. 4, 2021).

this case demonstrates that compensation in the form of bonuses was expressly linked to price increases. As one example, [redacted][149] Given the role performance bonuses to sales staff had in incentivizing price increases, evidence as to employee compensation should be admissible given its probative value and the lack of unfair prejudice.

Similarly, evidence of salary is relevant to a particular individual's power and status within a corporate defendant. Trial Defendants have consistently argued that certain individuals that engaged in communications with competitors lacked formal authority to raise prices. A jury could rationally conclude from the fact that, for example, a sales executive received a high salary that such executive wielded considerable influence, whether formal or informal, on the corporation's decision-making. And in specific cases, evidence of compensation is even more directly relevant. For example, Humana will introduce evidence that Jim Nesta of Mylan received substantial severance compensation from Mylan and in exchange had no responsibilities other than to cooperate with Mylan in this litigation. This goes directly to Mr. Nesta's bias.

Trial Defendants' authorities do not support a categorical bar. One case excluded compensation because the opposing party did not oppose the motion.[150] Trial Defendants' sole antitrust authority excluded compensation because it was mostly based on company-wide

---

[149] *See* Opp. Ex. 17 (LANNETT-CT-0238293, a October 24, 2013 email from Arthur Bedrosian, as cited in ECF No. 617 (Humana's Omnibus Memorandum of Law In Opposition to Defendants' Motions for Summary Judgment) at 112, n. 655).

[150] *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-cv-02436-BLF, 2023 WL 8438738, at *4-5 (N.D. Cal. Dec. 5, 2023).

earnings and the one individual with project-tied compensation was uninvolved in the challenged conduct, demonstrating that this issue turns on the specific circumstances and evidence at issue and cannot be resolved by a blanket pretrial order.[151] Any residual concern under FRE 403 is met by a limiting instruction, not wholesale exclusion.

Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* N to preclude evidence and argument concerning current and former employee compensation and wealth as to compensation.

**O. Opposition to Trial Defendants' Joint Motion to preclude evidence and argument concerning other civil cases brought against Trial Defendants.**

Trial Defendants' Motion *in Limine* addressing an entire class of evidence concerning other civil cases brought against Trial Defendants should be denied as unnecessary, premature, and overly broad. This is an improper use of a motion *in limine*. Such a motion is meant to "narrow the evidentiary issues for trial," not to secure a categorical ruling detached from any specific testimony.[152] Consistent with that limited purpose, evidence "should not be excluded pursuant to a motion *in limine*, unless it is clearly inadmissible on all potential grounds."[153] The movant "bears the burden" and rulings that "encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."[154]

Depending on the arguments and evidence Trial Defendants present at trial, arguments and evidence regarding other civil lawsuits may well be relevant. For example, the "38 MDL

[151] *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268 JD, 2016 WL 10706086, at *3 (N.D. Ind. Oct. 28, 2016).
[152] *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).
[153] *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).
[154] *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

complaints" identified by Trial Defendants that are currently on Humana's exhibit list are to rebut Trial Defendants' affirmative defense based on the statute of limitations. What was included in publicly filed complaints and when is highly relevant to that issue. If Trial Defendants do not pursue a statute of limitations defense at trial, those exhibits will be unnecessary. There are a host of other reasons why referencing other civil lawsuits might become relevant depending on what Trial Defendants argue at trial. For example, Humana expects that Trial Defendants may raise issues concerning the cooperation agreements with certain Humana witnesses, and potential issues relating to bias. Understanding the timing of when those witnesses entered agreements with Humana vis- à-vis other civil plaintiffs could become relevant. These are just examples.

For these reasons, Humana respectfully requests the Court deny Trial Defendants' Motion *in Limine* O to preclude evidence and argument concerning other civil cases brought against Trial Defendants.

**P. Opposition to Defendant Lannett Company, Inc.'s Motion to preclude Humana from introducing evidence of Lannett's new corporate ownership.**

Lannett Company, Inc.'s ("Lannett") Motion *in Limine* regarding its acquisition by Aurobindo Pharma USA, Inc. ("Aurobindo") should be denied as unnecessary, premature, and overly broad. The Aurobindo acquisition occurred well after discovery was closed in this case.[155] Accordingly, none of Humana's exhibits or deposition designations reference this transaction and Lannett has pointed to no evidence Humana would be able to offer about this transaction. Nonetheless, Lannett seeks a broad exclusion order based purely on hypothetical evidence or argument.

[155] ECF No. 793 (Lannett's Motion *in Limine*) at 1 (Lannett was acquired by Aurobindo Pharma in July 2026).

This is an improper use of a motion *in limine*. Such a motion is meant to "narrow the evidentiary issues for trial," not to secure a categorical ruling detached from any specific testimony.[156] Consistent with that limited purpose, evidence "should not be excluded pursuant to a motion *in limine*, unless it is clearly inadmissible on all potential grounds."[157] The movant "bears the burden" and rulings that "encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."[158]

Furthermore, depending on the arguments and evidence Lannett presents, rebuttal arguments and evidence may well be relevant. For example, if Lannett argues that it is relatively small compared to other Defendants or Humana, Humana would be entitled to inform the jury that its ultimate owner is one of the largest generic pharmaceutical companies in the world and (by volume of prescriptions) the largest supplier of generic drugs in the U.S.

For these reasons, Humana respectfully requests the Court deny Lannett's motion.

### Q. Opposition to Defendant Teva Pharmaceuticals USA, Inc.'s Motion to preclude evidence and argument concerning Teva's Deferred Prosecution Agreement.

Teva Pharmaceuticals USA, Inc.'s ("Teva") Motion *in Limine* regarding its deferred prosecution agreement ("DPA") should be denied. Based on this Court's order granting partial summary judgment against Teva because of the DPA,[159] Humana does not currently intend to introduce the DPA or any part of it into evidence. Humana nonetheless opposes Teva's motion

---

[156] *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).
[157] *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).
[158] *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).
[159] ECF No. 809 (Order, grant[ing] partial summary judgment on the violation elements of its Sherman Antitrust Act and state antitrust law claims as to pravastatin against Teva Pharmaceuticals USA, Inc.).

because ample authority supports introducing at least parts of DPAs into evidence, and Humana reserves the right to do so if necessary to respond to Teva's evidence and arguments.

For example, in *BDG Gotham Residential, LLC v. W. Waterproofing Co., Inc.*, 631 F. Supp. 3d 76 (S.D.N.Y. 2022), after a construction accident, the defendant entered into a DPA with the district attorney. *Id.* at 79. Rather than offering the entire DPA, the plaintiffs sought to introduce only the defendant's statement acknowledging and accepting responsibility for its employees' conduct while omitting references to the criminal investigation and prosecution. *Id.* at 84. The court held that the statement was relevant under Rules 401 and 402, admissible as an opposing-party admission under Rule 801(d)(2)(A), and not excludable under Rule 403 because the plaintiffs' limited use of the evidence avoided the unfair prejudice associated with introducing the criminal proceeding itself. *Id.* at 81-84 ("As long as it is admitted separate and apart from the rest of the DPA, and without any reference to criminal proceedings, it is simply and solely an admission against interest, and it will be admitted at trial."). Similarly, the court in *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9165341, at *2 (S.D.N.Y. Dec. 16, 2015) allowed the defendant's admissions contained in the Statement of Facts in the DPA while excluding references to the surrounding criminal proceeding, reasoning "[p]ut simply, the SOF contains New GM's own admissions, and Plaintiff is entitled to use it."

Teva's reliance on *Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002) is misplaced. There, the Third Circuit affirmed exclusion of an EEOC letter under Rule 403 because the letter was conclusory, had relatively low probative value in light of the trial evidence, and admitting it would have required a lengthy rebuttal of the EEOC's factual findings, creating a trial within a trial. *Id.* at 1346-47. None of those issues arise here. The Statement of Facts in Teva's DPA is not conclusory, has high probative value (as this Court found in granting

summary judgment in favor of Humana[160]), and admitting the Statement of Facts would not require any lengthy rebuttal by Teva—which it would not be allowed to present in any case as contrary to its admissions that mirror the DPA. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985) ("Evidence inconsistent with a Rule 36 admission is properly excluded.").

For these reasons, Humana respectfully requests the Court deny Teva's motion.

## III. CONCLUSION

For the foregoing reasons, Humana respectfully requests the Court deny each of Trial Defendants' Joint Motions *in Limine*, Teva's Motion *in Limine* to preclude evidence and argument concerning Teva's Deferred Prosecution Agreement, and Lannett's Motion *in Limine* to preclude Humana from introducing evidence of Lannett's new corporate ownership, and enter the requested orders.

Dated: August 12, 2026

Respectfully submitted,

*/s/ W. Joseph Nielsen*
Peter D. St. Phillip, Jr.
W. Joseph Nielsen
Raymond P. Girnys
Noelle Ruggiero
Uriel Rabinovitz
Deborah Rogozinski
Alexis H. Castillo
Thomas Griffith
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel. (914) 997-0500
pstphillip@lowey.com
jnielsen@lowey.com
rgirnys@lowey.com

[160] ECF No. 808 (Memorandum Opinion) at 11 ("Teva admits the entirety of the Statement of Facts in the DPA is factual…").

nruggiero@lowey.com
urabinovitz@lowey.com
drogozinski@lowey.com
acastillo@lowey.com
tgriffith@lowey.com

Matthew A. Cartwright
LOWEY DANNENBERG, P.C.
100 Front Street, Suite 520
West Conshohocken, PA 19428
mcartwright@lowey.com

Todd Schneider
J. Caleigh Macdonald
David D. Burnett
SCHNEIDER² WALLACE COTTRELL KIM LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel. 415-421-7100
tschneider@schneiderwallace.com
jmacdonald@schneiderwallace.com
dburnett@schneiderwallace.com

Jason H. Kim
SCHNEIDER² WALLACE COTTRELL KIM LLP
300 S. Grand Ave., Suite 2700
Los Angeles, CA 90071
Tel. 415-421-7100
jkim@schneiderwallace.com

*Counsel for Plaintiff Humana Inc*.

**CERTIFICATE OF SERVICE**

I, Joseph Nielsen, certify that on August 12, 2026 a copy of the foregoing document was served electronically upon Counsel of Record via electronic mail to: MDL2724plaintiffsleadsetc@ag.ny.gov; MDL2724AllDeftsService@groups.troutman.com; and GxStateCasesAllDeftsService@groups.troutman.com.

Dated: August 12, 2026 *<u>/s/ W. Joseph Nielsen</u>*