# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CA NO. 16-MD-2724

---------------------------------

IN RE: GENERIC PHARMACEUTICALS
PRICING ANTITRUST LITIGATION MDL NO. 2724
THIS DOCUMENT RELATES TO:
ALL ACTIONS

---------------------------------

HIGHLY CONFIDENTIAL
DAY 2 OF 2
ZOOM VIDEO DEPOSITION
Taken on behalf of the Plaintiffs of
JAMES NESTA
Washington, D.C.
July 22, 2026
9:04 a.m.

Reported by: Audra M. Smith, RPR, CRR, FCRR
Video by: Orson Braithwaite

A I do. I do remember that I voted along with four other members of the pricing committee, yes.
BY MR. NIELSEN:
Q Okay. And the reason that you only talked to Kevin Smith on January 4, January 10, and August 6, 2013, was because you only needed to talk to him when you were implementing price increases, right?
MR. RYAN: Objection to the form.
A No. Again, we never talked about any agreement with a competitor around pricing or allocation of markets.
BY MR. NIELSEN:
Q So the timing of these phone calls, it's all just a coincidence then?
MR. RYAN: Objection to the form.
A Don't remember the phone calls. But what I do know, didn't talk to a competitor around agreements, pricing, or allocation of markets.
BY MR. NIELSEN:
Q So if you weren't talking about levothyroxine, then these phone calls -- the timing is just a coincidence, right?
MR. RYAN: Objection to the form.

MR. SOMMER: Objection to the form.
A Don't remember what we talked about, but again I know it wouldn't be about allocation of markets or pricing or pricing at all.
BY MR. NIELSEN:
Q Okay. So just to be clear then, I want to make sure the record is clear, when you talked to Kevin Smith on January 4, 2013, did you speak about the product levothyroxine?
MR. RYAN: Objection to the form.
A Don't remember the phone conversations but what I do know is never had an agreement around pricing or market allocation with a competitor.
BY MR. NIELSEN:
Q So you can't say one way or other whether you talked about levothyroxine on January 4, 2013?
MR. RYAN: Objection to the form.
A I don't remember the phone conversations, but what I do know is I didn't have any agreements around pricing or market allocation with any competitor.
BY MR. NIELSEN:
Q Is your answer going to be the same

with regard to your call with Kevin Smith on January 10, 2013?
A Yes.
Q Okay. Is there a reason that you have to give that same answer every time I ask a question about your phone calls in this case?
MR. SOMMER: Objection to the form of the question.
A There's no reason. The reason is because it's the truth. That's my answer to all your allegations.
BY MR. NIELSEN:
Q Did anyone tell you you should give that same answer every time I ask your questions repeatedly?
MR. SOMMER: Objection to the form of the question, and I will advise the witness if this touches upon any communications you had with counsel that's privileged, I will leave it to your own counsel whether to instruct you not to answer.
MR. RYAN: Repeat the question.
MR. SOMMER: Here on the screen.
BY MR. NIELSEN:
Q Did anyone tell you you should give the

same answer every time I ask a question about your phone communications in this case?

MR. RYAN: I'm instructing you not to answer that question.

A I'm not going to answer that question based on what my counsel has advised me.

BY MR. NIELSEN:

Q Okay. So the answer would implicate the attorney-client privilege?

MR. SOMMER: Objection.

MR. RYAN: We're not going to talk about attorney-client privileged communications today.

MR. NIELSEN: I'm not asking the communications, sir, I'm just asking if the basis for his refusal to answer is because his answer would implicate the attorney-client privilege.

MR. SOMMER: I'm going to object to that because I think that does invade the attorney-client privilege, and I will advise the witness not to answer, but I'll leave it to his own counsel whether to instruct him not to answer.

MR. RYAN: I am instructing him not to

answer that question.

BY MR. NIELSEN:

Q Okay. Just so the record is clear, you're not willing to tell me why you have repeatedly offered the same response when I ask you questions about your phone calls with competitors?

MR. RYAN: Objection.

MR. SOMMER: Objection. He just told you.

MR. RYAN: He gave you an answer and he's not --

MR. SOMMER: It's the truth.

MR. RYAN: He's not going to give you any other answer than he's already given you. You can ask him again if you want.

BY MR. NIELSEN:

Q So let's talk about the branded forms of levothyroxine, okay? Do you recall that there were several different branded versions of levothyroxine?

A In terms of what?

Q Do you understand what a branded drug is?

A I do.

DISTRICT OF COLUMBIA )

REPORTER'S CERTIFICATE

I, Audra Smith, Registered Professional Reporter in and for the above county and state, do hereby certify that the deposition was taken before me at the time and place hereinbefore set forth; that the witness sworn to tell the truth, the whole truth, and nothing but the truth under penalty of perjury; that the proceedings were transcribed and recorded by me by means of stenotype; which is reduced to written form under my direction and supervision, and that this is, to the best of my knowledge and belief, a true and correct transcript.

I further certify that I am neither of counsel to either party nor interested in the events of this case.

IN WITNESS WHEREOF, I have hereto set my hand this 27th day of July, 2026.

AUDRA SMITH



Audra Smith, RPR, CRR, FCRR

NOTARY PUBLIC REGISTRATION NO: 192729

MY COMMISSION EXPIRES: 1/31/30